UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | CIVIL ACTION NO. 4:23-CV-03560 |
| U.S. ANESTHESIA PARTNERS, INC., *et al.*, | | |
| Defendants. | | |

## NON-PARTY ENVISION HEALTHCARE CORPORATION'S OPPOSED MOTION TO SEAL

Non-party Envision Healthcare Corporation ("Envision"), by and through counsel, hereby responds to Plaintiff Federal Trade Commission's Motion for Leave of Court to File an Unredacted Complaint (Dkt. 2) by filing this Opposed Motion to Seal (the "Motion to Seal" or the "Motion") its confidential information contained in Plaintiff's Complaint for Injunctive and Other Equitable Relief (the "Complaint") (Dkt. 1). This Motion to Seal itself discusses non-public, commercially sensitive information of Envision. Accordingly, Envision respectfully requests leave of Court to file the Motion to Seal under seal.

### NATURE AND STAGE OF PROCEEDINGS

On September 21, 2023, Plaintiff Federal Trade Commission (the "FTC") filed a Complaint—a redacted public version—against U.S. Anesthesia Partners, Inc. ("USAP") and additional Defendants to redress and prevent alleged violations of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The FTC simultaneously filed a Motion for Leave of Court to File an Unredacted Complaint ("FTC's Motion") (Dkt. 2). On

October 6, 2023, this Court granted the FTC's Motion, giving third parties twenty (20) days to file motions to seal information contained in the unredacted Complaint (Dkt. 59). Non-party Envision now files this Motion to Seal its confidential information contained in the unredacted Complaint.

**ISSUES TO BE DECIDED BY THE COURT**

Whether the FTC's Complaint, including but not limited to Section VI.B, should remain redacted in order to protect non-party Envision's confidential and commercially sensitive information.

**BACKGROUND**

On January 30, 2023 the FTC issued a Civil Investigative Demand ("CID"), File No. 201-0031, to Envision regarding agreements with providers of anesthesia and pain management-related services (Anesthesia Provider Groups). *See* **Exhibit A**. On March 1, 2023 and March 22, 2023, Envision submitted its responses to the CID. Envision's responses included copies of the Strategic Alliance Agreement (or, the "Agreement," attached hereto as **Exhibit B**)—dated January 6, 2014—between USAP, Pinnacle Anesthesia Consultants, P.A. ("Pinnacle"), Envision Healthcare Holdings, Inc., MSO Newco, LLC (an affiliate of Envision's subsidiary, EmCare), and related information. Envision received no follow-up communications or inquiries from the FTC about these materials.

Six months later, on September 8, 2023, the FTC notified Envision that it may file a complaint under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18, related to the aforementioned investigation. *See* **Exhibit C**. The FTC stated that if it chose to file a complaint, the complaint could contain information that Envision provided during the FTC's investigation. This meant that the complaint would make public commercially-sensitive details of the Agreement between USAP, Pinnacle, Envision, and

EmCare, including the specific payment amounts agreed to by the parties under the Agreement. Neither Envision nor any other party to the Agreement has ever publicly disclosed these details.

Envision conferred with the FTC and expressed its concerns about the FTC's proffered language because it (1) revealed non-public, commercially sensitive information that Envision produced pursuant to statutory protections, and (2) significantly mischaracterized the Agreement by misstating the contractual terms and wrongly implying that Envision engaged in anticompetitive conduct.

Envision explained that it would need to pursue a motion to seal or seek a protective order to prevent disclosure of certain information if the language were not changed to protect Envision's privacy interests and accurately reflect the Agreement. In order to avoid the need for such measures, Envision proposed to the FTC alternative language consistent with public statements about the Agreement. However, despite confirming that Envision was neither a defendant nor being charged with any antitrust violations, the FTC rejected these proposals and used its original language when filing the Complaint (attached hereto as **Exhibit D**),[1] despite the inaccuracy and notable confidentiality concerns.

Envision has learned from the FTC that, at minimum, Section VI.B, paragraph 214 of the Complaint makes allegations concerning Envision and EmCare in connection with the Agreement and discloses the Agreement's non-public commercially-sensitive terms, including payment amounts. Envision has reason to believe that Section VI.B makes further references to Envision, EmCare, and the Agreement's terms. To the extent such references are presently redacted elsewhere in the Complaint, such redactions should also remain in place to protect Envision's

---

[1] *See* Complaint, Section VI.B at 7, 59–61.

confidential and commercially sensitive information. In particular, all of the present redactions in Section VI.B of the Complaint should remain in place.

## LEGAL STANDARD

The FTC Act expressly requires the FTC to protect confidential information that it has received. "[T]he Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential[.]" 15 U.S.C. § 45(f).

While "[c]ourts have recognized that the public has a common law right to inspect and copy judicial records[,]" the public's common law right is not absolute. *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)), *see Nixon*, 435 U.S. at 598. "[D]istrict courts have the discretion to seal documents if the interests favoring nondisclosure outweigh the presumption in favor of the public's right to access." *E.E.O.C. v. A'GACI, LLC*, No. SA:14-MC-445-DAE, 2015 WL 510254, at *2 (W.D. Tex. Feb. 5, 2015). The right of public access serves to "promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Lima v. Wagner*, No. 3:16-CV-00074, 2018 WL 11198080, at *1 (S.D. Tex. Oct. 24, 2018) (citing *Van Waeyenberghe*, 990 F.2d at 849). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598.

## ARGUMENT

Envision is not a party to this litigation. Envision worked cooperatively with the FTC when providing responses to the CID, and Envision's submitted materials were subject to confidential

treatment under applicable statutes, rules, and regulations.² In each production to the FTC, Envision stamped "Confidential Submission" on every single document due to the commercially sensitive nature of the information contained therein. The confidentiality of the information Envision provided to the FTC is statutorily protected. Furthermore, references to Envision, EmCare, and the Agreement's non-public commercially-sensitive terms within Section VI.B should remain redacted because Envision's interest in the confidentiality of its commercially sensitive information significantly outweighs the public's common-law right of access to judicial records.

In determining whether to grant a motion to seal, the court is tasked with balancing competing interests in light of the relevant facts and circumstances of the particular case. *See Nixon*, 435 U.S. at 599. Courts in this Circuit have denied motions to seal for various, recurring reasons such as that the request went beyond what was confidential, the information was already publicly available, or the public had a compelling right to know the information—none of which are applicable here.

For example, in *Lima v. Wagner*, the Plaintiff asked the court to seal his entire 132 page deposition, but the court found that all confidential information could be easily redacted from the transcript. No. 3:16-CV-00074, 2018 WL 11198080, at *2 (S.D. Tex. Oct. 24, 2018). Envision requests only that redacted references to itself, its subsidiaries, and its confidential business dealings in the Complaint remain redacted.

---

² *See* 15 U.S.C. § 45(f) ("[T]he Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential[.]"); 15 U.S.C. § 57b-2(b) ("[N]o documentary material" received by the FTC pursuant to compulsory process in an investigation "shall be available for examination by any individual other than a duly authorized officer or employee of the Commission without the consent of the person who produced the material[.]").

The redacted information at issue is not material to the FTC's case in chief and it need not be unsealed in order to adjudicate this matter. In contrast, public disclosure of this commercially sensitive information would be detrimental to Envision. The public does not have a compelling right to know the confidential contract terms or payment amounts of a company that is neither party to a lawsuit nor has engaged in any wrongdoing relating to this case or otherwise. It is inappropriate for the FTC's lawsuit against a separate party to harm Envision's business when the specific references can remain sealed from public record.

Envision filed for Chapter 11 bankruptcy in the Southern District of Texas on May 15, 2023 and is scheduled to emerge from bankruptcy in the next few weeks. Its reorganization plan is the result of extensive negotiations with numerous stakeholders, including investors, vendors, lenders, customers, and employees. The references to Envision or EmCare in Section VI.B of the Complaint—which contain wrongful and unsubstantiated insinuations of wrongdoing—cast improper aspersions on Envision and EmCare that could compromise Envision's reorganization plan and/or risk litigation consequences. Such ramifications would come unfairly at Envision's expense, especially because neither Envision nor EmCare is a named defendant in the Complaint.

In *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, the plaintiff made no assertion that the information at issue was confidential, embarrassing, or otherwise harmful, and the information discussed was already in the public domain. No. 6:12-CV-14, 2014 WL 12599343, at *1 (S.D. Tex. May 14, 2014). For example, the plaintiff's motion cited to a news article about a prior lawsuit involving its owner. The court denied the request to seal because there is no basis for sealing publicly available information. *Id.* Here, the information Envision requests to remain redacted—specifically, the terms of the Agreement and the payment amounts—have never been

made public. Envision, a non-party that has participated in no wrongdoing, should not have its confidential business dealings and contracts publicly disclosed.

This case also contrasts sharply with others in this Circuit where the public's right to know was compelling. In *Prater v. Com. Equities Mgmt. Co.*, the court denied a motion to seal information about Fair Labor Standards Act ("FLSA") wage-settlements because a "court's approval of a settlement . . . [is a matter] which the public has a right to know about and evaluate." No. CIV.A. H-07-2349, 2008 WL 5140045, at *9 (S.D. Tex. Dec. 8, 2008). In that same vein, the Fifth Circuit in *Van Waeyenberghe* held that the district court failed to consider that access to the transcript and final order of permanent injunction "allows the public to verify disclosures [the Defendant was] required to make under the securities laws." 990 F.2d at 850. The public does not have a compelling right to know the confidential payment amounts, business practices, and specific contract terms of a company that is not a party to the lawsuit. There is no compelling reason why Envision should be harmed here in the name of public access, especially when the specific information easily can be redacted without impacting any ability to adjudicate the case. If the purpose of public access is to promote fairness and transparency in the judicial process,[3] then a non-party should not be harmed as a result of its good-faith cooperation with an agency's investigation.

Furthermore, Envision and EmCare should be protected from being associated with a mischaracterization of its Agreement and wrongful insinuation of anticompetitive behavior. As a non-party, Envision does not have the opportunity to correct on the record any misrepresentations of the materials provided to the FTC during its pre-complaint investigation. Envision's inability to defend its position or accurately explain specific, *non-public* terms and conditions of the

---

[3] *See Van Waeyenberghe*, 990 F.2d at 849.

Agreement to which it was a party would unfairly burden Envision in its business operations and fragile financial position. Envision raised this concern with the FTC and provided the following language that accurately described the terms of the Agreement consistent with prior public statements about the Agreement:

> In early January 2014, USAP, Pinnacle, Envision, and EmCare signed an agreement formalizing their deal. USAP agreed to pay EmCare an annual amount until December 2019 (i) to acquire certain assets that EmCare used to provide practice support functions to Pinnacle; (ii) for consulting services; and (iii) to evaluate opportunities for future collaboration. For that same time period, Envision agreed not to compete against USAP for anesthesiology services in the Dallas-Fort Worth area. USAP, in turn, agreed to not interfere with EmCare's then-existing relationships or subsequently relationships that EmCare developed jointly with USAP for the provision of certain "outsourced facility-based physician services" in the same area.

However, the FTC did not revise its characterization of the contract. *See* Complaint at ¶ 214. As such, all presently-redacted references to Envision, EmCare, and the Agreement in the Complaint should remain redacted, because Envision's confidentiality interests outweigh any interest in public disclosure.

## CONCLUSION

For the reasons stated above, non-party Envision respectfully requests that the Court grant this Motion to Seal and order that any presently-redacted references to Envision, EmCare, or any other Envision affiliate, and all non-public terms of the Agreement within the Complaint—

including but not limited to all presently-redacted paragraphs in Section VI.B of the Complaint—remain redacted and withheld from the public record.

Dated: October 26, 2023

Respectfully submitted,

*/s/ Gary Y. Gould*
Gary Y. Gould
(*Attorney-in-Charge*)
State Bar No. 24104995
S.D. Texas Bar No. 3325232
gary.gould@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Amanda Wait (admission *pro hac vice* pending)
amanda.wait@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1000
Washington, D.C. 20001
Telephone: (202) 662-4550
Facsimile: (202) 662-4643

***Attorneys for Non-Party Envision Healthcare Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I caused the foregoing to be filed using the Court's CM/ECF system, causing counsel for all parties to be notified of this filing.

*/s/ Gary Y. Gould*
Gary Y. Gould

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 26, 2023, counsel for Envision Healthcare Corporation conferred via telephone with counsel for the FTC concerning the relief requested in this Motion. The FTC opposes this Motion.

*/s/ Gary Y. Gould*
Gary Y. Gould