**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**U.S. ANESTHESIA PARTNERS, INC. et al.**<br><br>**Defendants.** | **Case No.: 4:23-CV-03560-KH** |

**Rule 26(f) Joint Discovery/Case Management Plan**

Plaintiff Federal Trade Commission and Defendants U.S. Anesthesia Partners, Inc. and the Welsh Carson entities,[1] by and through their undersigned counsel, submit the following Joint Discovery/Case Management Plan under Rule 26(f) of the Federal Rules of Civil Procedure.

1. **State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended for each party.**

The Rule 26(f) conference occurred on March 14, 2024, at 12:00 pm Eastern Time via Microsoft Teams. The following individuals were in attendance for each party.

FTC: Kara Monahan, Tim Kamal-Grayson, Neal Perlman, Michael Arin

USAP: Ken Fetterman, Kyle Wood, Kevin Miller, David Beck

The Welsh Carson Entities: Katy Caldwell, Elena Davis, Matt Zorn, Paul Yetter

---

[1] The "Welsh Carson entities" refers to Welsh, Carson, Anderson & Stowe XI, L.P., WCAS Associates XI, LLC, Welsh Carson, Anderson & Stowe XII, L.P., WCAS Associates XII, LLC, WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC.

**2.** **List the cases related to this one that are pending in any state or federal court with the case number and court.**

*Electrical Medical Trust et al. v. U.S. Anesthesia Partners, Inc. et al.*, 4:23-cv-4398 (S.D. Tex.) (Bennett, J.).

**3.** **Briefly describe what this case is about.**

The Federal Trade Commission, a federal agency that enforces antitrust and competition laws, alleges that USAP and the Welsh Carson entities violated the FTC and Clayton Acts through a series of agreements with and acquisitions of anesthesia providers. USAP and the Welsh Carson entities deny any such violations. The suit seeks injunctive relief.

**4.** **Specify the allegation of federal jurisdiction.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

**5.** **Name the parties who disagree and the reasons.**

All parties agree that this Court has subject matter jurisdiction to resolve this dispute.

**6.** **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

No party has identified any anticipated additional parties at this time.

**7.** **List anticipated interventions.**

No party has identified any possible interventions at this time.

**8.** **Describe class-action issues.**

None.

**9.** **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.**

The parties agree to exchange initial disclosures two (2) weeks after discovery opens.

10.     **Describe the proposed agreed discovery plan, including:**

     a.     **Responses to all the matters raised in Rule 26(f).**

*The subjects and timing of discovery.* The parties expect that discovery will encompass information relevant to the claims and defenses in this case. The parties disagree about whether discovery should be stayed until the Court resolves the motions to dismiss. The parties also disagree about whether discovery should be bifurcated into liability and remedy phases. Their respective positions on these and other disputed issues are set out in Item 11, and their proposed schedules are included in Appendix A.

The parties propose that discovery may be extended by agreement of the parties without court intervention. The summary judgment motion deadline, however, may not be extended without leave of court. Any party may seek modification of the Scheduling and Case Management Order for good cause.

*Electronically stored information (ESI).* The parties agree that discovery in this case will include ESI. The parties do not anticipate any special issues in this regard and agree to work cooperatively to reach mutually acceptable protocols and standards for the production of ESI.

*Privilege.* The parties agree that the following documents and communications subject to attorney-client privilege, work product protection, or other protection shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log:

(1) documents or communications between Arnold & Porter, McDermott Will & Emery, Ropes & Gray, Kellogg, Hansen, Todd, Figel & Frederick, and/or local outside counsel in the matters

as identified in Footnote 2,[2] or related to this litigation, the investigation, or the private class action (4:23-CV-04398) on the one hand, and USAP on the other;

(2) documents or communications solely internal to Arnold & Porter, McDermott Will & Emery, Ropes & Gray, Kellogg, Hansen, Todd, Figel & Frederick, or solely between any of these law firms and/or local outside counsel in the relevant matters as identified in Footnote 2, generated as a result of the law firms' representation of USAP in the FTC's investigation and this litigation, the Colorado Attorney General's investigation, and certain disputes with UnitedHealthcare, listed in Footnote 3;[3]

(3) documents or communications related to this litigation, the investigation, or the private class action (4:23-CV-04398) sent between Hogan Lovells, Jones Day, Ropes & Gray, WilmerHale, and/or Yetter Coleman LLP, on the one hand, and the Welsh Carson entities on the other;

(4) documents or communications solely internal to Hogan Lovells, Jones Day, Ropes & Gray, WilmerHale, and/or Yetter Coleman LLP or solely between any of these law firms, generated as a result of the law firms' representation of the Welsh Carson entities in the FTC's investigation and this litigation, the private class action (4:23-CV-04398), or the Colorado Attorney General's investigation;

---

[2] (1) Recht Kornfeld PC (Colorado Attorney General CID); (2) Armstrong Teasdale LLP (*U.S. Anesthesia Partners of Colorado, Inc. v. UnitedHealthcare Ins. Co. et al.*, Denver County District Court, Case No. 2021 CV 31061); (3) Wick Phillips (*U.S. Anesthesia Partners of Texas, P.A. v. UnitedHealthcare Ins. Co. et al.*, Dallas County District Court, 14th Judicial District, Cause No. DC-21-04104; *U.S. Anesthesia Partners of Texas, P.A. v. UnitedHealthcare Ins. Co. et al.*, AAA Arbitration Case 01-20-0003-799).
[3] (1) *U.S. Anesthesia Partners of Texas, P.A. v. UnitedHealthcare Insurance Company, et al.,* AAA Claim No. 01-20-0003-7990; (2) *U.S. Anesthesia Partners of Colorado, Inc. v. UnitedHealthcare Insurance Company, et al.,* AAA Claim No. 01-20-0014-3600; (3) *U.S. Anesthesia Partners of Texas, P.A. v. UnitedHealthcare Insurance Company, et al.,* 14th Jud. Dist., Dallas County, TX, Case No. DC-21-04104; (4) *U.S. Anesthesia Partners of Colorado, Inc. v. UnitedHealthcare Insurance Company, et al.*, District Court for the City and County of Denver, CO, Case No. 2021CV31061; (5) *U.S. Anesthesia Partners, Inc. v. UnitedHealth Group, Inc., et al.*, Case No. 1:21-cv-02380-STV (D. Colo.).

(5) documents or communications sent solely among and between USAP's outside counsel identified in subparts (1)-(2) and the Welsh Carson entities' outside counsel identified in subparts (3)-(4), generated as a result of the FTC's investigation or this litigation; and

(6) documents or communications between or among FTC employees and FTC agents in the FTC's investigation and this litigation regarding this matter.

The parties agree to work cooperatively to reach a mutually acceptable protocol under Federal Rule of Evidence 502(d). The parties agree all privilege logs shall be provided in Excel format or text searchable .pdf file.

*Limitations on discovery.* The parties agree to the following limitations on discovery:

- *Interrogatories.* The parties agree to the limits in Rule 33(a)(1).

- *Requests for Production.* The parties agree that there shall be no limitations on the number of requests for production pursuant to Rule 34.

- *Requests for Admission.* The parties agree not to impose any additional limitations on requests for admission beyond those set forth in the applicable Federal Rules of Civil Procedure.

- *Depositions.* The parties disagree about the number of hours needed for depositions of fact witnesses. Their respective positions are set out in Item 11.

*Other orders.* The parties agree to work together cooperatively to reach an agreement on an appropriate order to protect the confidentiality of any proprietary or competitively sensitive information that may be discoverable in this case, as well as proposed orders governing the taking of depositions (including remotely) and expert discovery.

**b.  When and to whom the plaintiff anticipates it may send interrogatories.**

The FTC anticipates sending interrogatories to USAP and the Welsh Carson entities within the period specified for fact discovery.

**c. When and to whom the defendants anticipate they may send interrogatories.**

USAP and the Welsh Carson entities anticipate sending interrogatories to the FTC within the period specified for fact discovery.

**d. Of whom and by when the plaintiff anticipates taking oral depositions.**

The FTC anticipates taking oral depositions of individuals named in the Complaint, in its Rule 26 initial disclosures, and others it will identify during the course of discovery. The FTC anticipates taking such depositions within the period specified for fact discovery in the scheduling order.

**e. Of whom and by when the defendants anticipate taking oral depositions.**

Defendants anticipate taking oral depositions of individuals with information relevant to this action following the resolution of the motions to dismiss and within the period specified for fact discovery in the scheduling order.

**f. When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

The parties' proposed schedules in Appendix A include deadlines for the service of expert reports. The parties agree that each expert will be deposed only once.

**g. List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

The FTC anticipates taking the depositions of any responsive expert(s) designated by defendants at an appropriate time after such expert provides the report(s) required by Rule 26(a)(2)(B) and permitted under the Court's scheduling order(s).

Defendants anticipate taking the depositions of any responsive expert(s) designated by the FTC at an appropriate time after such expert provides the report(s) required by Rule 26(a)(2)(B) and permitted under the Court's scheduling order(s).

**h.   List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

The FTC anticipates taking the depositions of any initial expert(s) designated by defendants at an appropriate time after such expert provides the report(s) required by Rule 26(a)(2)(B) and permitted under the Court's scheduling order(s). Defendants anticipate taking the depositions of any initial expert(s) designated by the FTC at an appropriate time after such expert provides the report(s) required by Rule 26(a)(2)(B) and permitted under the Court's scheduling order(s).

**11.   If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

<u>Issue No. 1: Stay of Discovery.</u>

**FTC's Position.**

The court should reject Defendants' attempt to stay all discovery. "[S]uch stays are very rare, and almost never wise." *360 Mortgage Grp. LLC v. LoanCare LLC,* No. 1:18-cv-332 RP, 2018 WL 6272034, at *1 (W.D. Tex. Nov. 30, 2018); *see also Array Holdings, Inc. v. Safoco, Inc.*, No. H-12-0366, 2012 WL 12896361, at *1 (S.D. Tex. Oct. 12, 2012) (discovery stays are "the exception, not the rule"). Defendants bear the burden of showing good cause as to why all discovery should be stayed. Fed. R. Civ. P. 26(c)(1). To determine whether a defendant has met this burden, courts analyze 1) the strength of the defendants' motions to dismiss, 2) the irreparable harm to defendants absent a stay, 3) and the injury to other parties and the public interest that would result from a stay. *See Nken v. Holder*, 556 U.S. 418, 434-35 (2009); Order

7

Deny. Mot. to Stay at 2, *Fontenot v. City of Houston*, No. 4:12-cv-3503(S.D. Tex. Jan. 9, 2014), ECF No. 117 (Hoyt, J.) (assessing *Nken* factors and denying motion to stay). Here, each factor weighs against Defendants.

First, Defendants cannot make the required "strong showing" that they are likely to prevail on their motions to dismiss. *See Fontenot* at 2. As the FTC explained in its opposition briefs, the Defendants' motions advance novel readings of the FTC's statutory authority that misapprehend Supreme Court and Fifth Circuit precedent; ignore or flatly contradict the detailed facts alleged in the 105-page complaint; and recycle a constitutional challenge the Fifth Circuit foreclosed less than 4 months ago. This is a far cry from the "slam-dunk" required to stay discovery. *Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-cv-126-RWS-CMC, 2018 WL 5728515, at *3 (E.D. Tex. Apr. 25, 2018) (internal quotations omitted). Indeed, the mere presence of "substantial arguments on both sides" makes a stay unwarranted. *See Williams v. New Day Farms, LLC*, No. 2:10-cv-0394, 2010 WL 3522397, at *3 (S.D. Ohio Sept. 7, 2010).

Second, courts have rejected as "absurd" Defendants' argument that being exposed to the expense of discovery is harm enough to justify a stay. *FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1312 (S.D. Fla. 2013) ("[T]he Court is not aware of any law supporting the proposition that litigation expenses are an irreparable injury . . . ."); *see also Valenzuela v. Crest-Mex Corp.*, No. 3:16-cv-1129-D, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017) (the "usual inconveniences and costs . . . associated with discovery practice" do not justify a stay) (internal quotations omitted). Contrary to Defendants' suggestion, no different rule automatically applies in antitrust cases. *See, e.g.*, *Crownalytics, LLC v. SPINS, LLC*, No. 1:22-cv-1275-NYW-SKC, 2022 WL 17416656, at *2 (D. Colo. Dec. 5, 2022) (denying request for stay based on rote recitation of burden in antitrust cases and lack of showing burden "in *this* antitrust case"). And

8

following the default is especially sensible here because, should either defendant prevail on their leading arguments about the FTC's statutory authority, the FTC could elect to proceed with this litigation in its administrative court and seek largely the same discovery. Ultimately, whatever the burdens of discovery may be, "there are remedies that Defendants can seek short of a full stay of discovery." *Edge196 LLC v. Jointer, Inc.*, No. H-20-3417, 2021 WL 4027696, at *1 (S.D. Tex. Jan. 22, 2021).

Third, any burden to Defendants must cede to the public's and the FTC's "significant interest in resolving the issues raised by the [plaintiff's] claims with due expedition." *FTC v. Vyera Pharms., LLC*, No. 20-cv-00706 (DLC), 2021 WL 76336, at *1 (S.D.N.Y. Jan. 8, 2021) (rejecting request for stay in light of strong public interests).

**Defendants' Position.**

USAP's and the Welsh Carson entities' respective Motions to Dismiss demonstrate how the FTC lacks both the statutory and constitutional authority to obtain the relief it seeks in this case. *See* Dkt. No. 99 at 11-22; Dkt. No. 100 at 10-15, 30-35. These motions raise serious and case-dispositive arguments; it would be prudent and efficient to stay discovery until the Court determines whether this case should even proceed.

This Court retains full authority over the discovery process, including the timing and sequence of discovery. *See* Fed. R. Civ. P. 26(d)(1); *Williamson v. U.S. Dep't of Ag.*, 815 F.2d 368, 382 (5th Cir. 1987). Pursuant to that authority, this Court "may, for good cause," stay all discovery where it will present an "undue burden or expense." Fed. R. Civ. P. 26(c).[4]

---

[4] The FTC urges the Court to commit legal error by applying the *Nken* factors to Defendants' request for a stay of discovery. The Fifth Circuit has never applied those factors—which apply to motions to stay all proceedings pending an appeal—to motions to stay discovery. Instead, all the Court must find is that good cause exists to stay discovery. *See, e.g.*, *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *Smith v. Potter*, 400 F. App'x 806, 813 (5th Cir. 2010); *see also* Fed. R. Civ. P. 26(c). This Court's order in

As the Supreme Court has recognized, the cost of discovery in antitrust cases is often "unusually high" for defendants. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). Those costs present an "undue burden" justifying a stay of discovery when the defendant files a potentially case-dispositive motion to dismiss, and "[n]othing that [the plaintiff] could . . . learn[] through discovery could . . . affect[] the [motion's] resolution." *Petrus* 833 F.2d at 583 (affirming trial court's stay of discovery pending ruling on motion to dismiss); *see also Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (affirming stay of discovery where "[t]he trial court sought to resolve an issue that might preclude the need for the discovery altogether thus saving time and expense"); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) (issuing stay and observing that "staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive" (citation omitted)).

Here, there is no discovery needed to resolve Defendants' motions; they are fully briefed, and the Court has scheduled oral argument for April 8, 2024. *See Smith*, 400 F. App'x at 813 (affirming stay of discovery pending a ruling on a motion to dismiss because the issues raised were "largely legal rather than factual in nature"); *Landry*, 901 F.2d at 435-36 (similar). In addition, the FTC used its investigative authority to seek (and receive) a substantial volume of materials prior to filing its complaint in this action; there can be no claim that any additional discovery that would proceed at this stage would affect the resolution of the Motions to Dismiss. And those motions raise strong, case-dispositive arguments that the FTC lacks both the constitutional and statutory authority to bring this action. Contrary to the FTC's claim, the

---

*Fontenot* does not compel a contrary result, as there the moving defendants (wrongly) conceded that *Nken* governed their motion to stay. *See* City of Houston and Jane Doe Defendant 1's Motion to Stay the Proceedings at 3-4, *Fontenot v. City of Houston*, No. 4:12-cv-03503 (S.D. Tex. Oct. 15, 2013), ECF No. 81.

statutory arguments are not limited to just the FTC's ability to bring this case in federal court; they also show that virtually all of the conduct its Complaint targets is past conduct that cannot support a claim for equitable relief under 15 U.S.C. § 53(b).  Moreover, even if the Court were to rule that the case may proceed, its Order could substantially narrow the issues and the scope of relevant discovery. In short, allowing costly discovery on every claim in the FTC's Complaint before this Court rules on the pending motions would impose an undue burden upon Defendants, presenting "good cause" for a stay under Rule 26(c).  *See Petrus*, 833 F.2d at 583; *Landry*, 901 F.2d at 435-36; *Rio Grande Royalty Co.*, 2008 WL 8465061, at *1-2.[5]

This Court should therefore stay all discovery pending its ruling on USAP's and the Welsh Carson entities' respective Motions to Dismiss.

Issue No. 2: Phasing Discovery/Bifurcation.

**FTC's Position.**

Discovery should begin with respect to all issues in the case—including remedy. Defendants propose bifurcation, where discovery into remedy would occur only after a finding of liability, but such "[s]eparation of issues . . . is not the usual course that should be followed." *McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993). Rather, the scope of discovery encompasses all "claim[s] and defense[s]" by default "[u]nless otherwise limited by court order." *See* Fed. R. Civ. P. 26(b)(1). Here, the court should not bifurcate discovery because

---

[5] The FTC's cited cases fail to persuade otherwise.  Most, including *360 Mortgage Group*, *Array Holdings*, *Health Choice Group*, and *Edge196 LLC*, fail to perform the required undue burden analysis in the context of an antitrust dispute.  Others analyze irrelevant kinds of motions.  *See FTC v. IAB Mktg. Assocs.*, LP, 972 F. Supp. 2d 1307, 1310 (S.D. Fla. 2013) (motion to stay pending interlocutory appeal);  And *FTC v. Vyera Pharms., LLC*, No. 20-cv-00706 (DLC), 2021 WL 76336, at *1 (S.D.N.Y. Jan. 8, 2021), is inapposite: the defendant moved to stay discovery one month before fact discovery was slated to end, and simply sought a stay until he was released from incarceration.

it would be inefficient, introduce the significant risk of disputes, and delay justice for Texas consumers and employers.

First, "bifurcation would not be an efficient use of the Court's and the parties' resources" because "a significant amount of overlap exists between the facts the FTC will have to show to prove liability and the facts it will have to show to determine the appropriate remedy." *FTC v. Adept Mgmt. Inc.*, No. 1:16-cv-00720-CL, 2018 WL 893803, at *2 (D. Or. Feb. 13, 2018); *see also Brown Bottling Grp., Inc. v. Imperial Trading Co.*, No. 3:19-cv-00142-HTW-LGI, 2022 WL 4110918, at *7 (S.D. Miss. Sept. 7, 2022) (same). For example, hospitals, insurance companies, and other nonparties will provide evidence about the mechanism for competition in the hospital-only anesthesia market that will implicate both USAP's efforts to stifle competition and any remedy to restore competition.

Second, bifurcation may also lead to numerous disputes about whether material belongs in the liability or remedy phase. *See Lubrizol Spec. Prods., Inc. v. Flowchem LLC*, No. H-15-2917, 2016 WL 11745554, at *2 (S.D. Tex. June 21, 2016) (bifurcation of overlapping issues would only increase discovery disputes). For example, information about USAP's current presence at hospitals is relevant to both liability and remedy; policing that line will prove difficult and may lead to significant motions practice. *FTC v. AMG Services, Inc.*, cited in Defendants' statement, demonstrates how bifurcation results in inefficiencies. There, bifurcating discovery resulted in substantial litigation on how discovery should proceed, in part due to "unexpected" developments that "changed the context of the bifurcation order.". 29 F. Supp. 3d 1338, 1379 (D. Nev. 2014) (subsequent history omitted).

Third, "bifurcation … would seriously prejudice [Plaintiff's] right to have a prompt resolution of the claims they filed against Defendant." *Performance Aftermarket Parts Grp., Ltd.*

*v. TI Grp. Auto. Sys., Inc.*, No. H-05-4251, 2006 WL 2850061, at *1 (S.D. Tex. Oct. 3, 2006). *See also* Fed. R. Civ. P. 1 (favoring "just, speedy, and inexpensive determination of every action"). Even if the FTC prevails on liability, the parties would then proceed to a second discovery phase, substantially delaying a return to competitive healthcare markets for Texans.

Given the potential for inefficiency and delay, it is no surprise that a review of recent FTC antitrust enforcement actions reveals the ordinary course is to pursue both liability and remedy-related discovery at the same time.[6] Apart from *Meta*, which involved a stipulated bifurcation of discovery, Defendants fail to point to any other antitrust case with bifurcated discovery where, as here, the plaintiff was seeking only injunctive relief. Indeed, the minority of cases bifurcating discovery involve discrete issues not present here, such as class-wide liability, individual-specific damages,[7] or courts sitting in both equity and law.[8] Because an injunction is tailored to the defendants' impact on current competitive conditions and likely future threats to competition, not retrospective calculation of harm,[9] bifurcation of discovery is rarely appropriate in the FTC's antitrust enforcement cases. Unsurprisingly, then, we are aware of no instance in which bifurcation of discovery was ordered over the FTC's objection.

---

[6] *See, e.g.,* Amended Joint Rule 26(f) Report at 2, *FTC v. Vyera Pharms., LLC*, No. 1:20-cv-00706-DLC (S.D.N.Y. Mar. 17, 2020), ECF No. 64 (single phase discovery plan); Scheduling Order at 2-3, *FTC v. Surescripts, LLC*, No. 19-cv-1080 (JDB) (D.D.C. Feb. 28, 2020), ECF No. 54 (same); Case Management Order at 2, *FTC v. Qualcomm, Inc.*, 5:17-cv-00220-LHK (N.D. Cal. April 19, 2017), ECF No. 75; Scheduling Order at 2, *FTC v. AbbVie Inc.*, No. 2:14-cv-05151-HB (E.D. Pa. Apr. 29, 2015), ECF No. 78 (same); *FTC v. Cephalon, Inc.*, No. 2:08-cv-02141-MSG (E.D. Pa. May 12, 2008), ECF No. 2 (same).

[7] *See EEOC v. Lawler Foods, Inc.*, 128 F. Supp. 3d 972, 974 (S.D. Tex. 2015).

[8] *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. June 11, 2023), ECF No. 283 (granting in part the government's motion to decide if additional fact discovery will be needed for equitable relief after trial before jury). Defendants' reliance on the Department of Justice's agreement to address whether additional discovery was necessary to determine whether equitable relief was appropriate after a trial by jury is misplaced. The FTC seeks only equitable relief, so there is no need for this court to sit both in law and in equity, and therefore no need for bifurcation.

[9] Equitable relief in an antitrust enforcement case is measured in "reasonable relation to the unlawful practices found to exist," i.e. the trier of fact's findings on liability. *See Chicago Bridge & Iron Co. v. FTC*, 534 F.3d 410, 441 (5th Cir. 2008) (quoting *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 940 (7th Cir. 2000) (quotation omitted)).

Defendants fail to cite any law to the contrary or explain why the Court should deviate from the Federal Rules. Instead, the majority of Defendants' authority concerns bifurcation of *trial*.[10] In particular, Defendants selectively quote FTC's motion to bifurcate trial in *FTC v. Amazon*, failing to mention that the *Amazon* parties "appear to agree that fact discovery should encompass both liability and remedy issues." Pls.' Mot. to Bifurcate at 2, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 29, 2024), ECF No. 167. Bifurcating at trial presents a separate issue with separate considerations from bifurcation of discovery. Therefore, the cases Defendants cite provide little support for Defendants' position here. *See Brown Bottling*, 2022 WL 4110918, at *1-7 (analyzing the two separately and allowing bifurcation at trial but not in discovery).[11]  To be clear, the FTC does not believe it is necessary or appropriate to address whether a future trial should be bifurcated at this early stage.

**Defendants' Position.**

The Court should bifurcate these proceedings into a liability and remedies phase and permit fact and expert discovery only on liability issues at this time.

Courts regularly order bifurcation in antitrust cases, often at the urging of the FTC, in order to expedite and streamline litigation.  *See, e.g.*, Joint Civil Rule 16.3 Report to the Court at 2. *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Feb. 22, 2022), ECF No. 100 (FTC

---

[10] *See, e.g.*, Order to Bifurcate Proceedings at 1, *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF No. 264 ("The Parties in the above-captioned actions have jointly requested to bifurcate the proceedings to hold separate trials on liability and, if necessary, remedy."); Order, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. June 11, 2023), ECF No. 283 (bifurcating trial with limited possibility of additional discovery only if court ordered); *FTC v. Minutemen Press, LLC*, 53 F. Supp. 2d 248, 251 (E.D.N.Y. 1998) (bifurcating *trial* to address liability and then the amount of compensation).

[11] Bifurcating discovery is less common than bifurcating trial, see *Brown Bottling*, 2022 WL 4110918, at *1-7, and contrary to Defendants' claims that it is a common procedure, the Fifth Circuit disfavors even bifurcation of trial in antitrust actions. *See Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318-19 (5th Cir. 1978) ("In an antitrust action … this Court has also cautioned that separate trials of liability and damages 'must be approached with trepidation[.]'" (quoting *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976))).

taking the position that "[t]he parties should proceed expeditiously to a trial that deals exclusively with liability issues," with the parties to later confer on a "separate Case Management Order governing the remedy phase"); *FTC v. AMG Servs., Inc.*, 29 F. Supp. 3d 1338, 1346 (D. Nev. 2014) (noting the court bifurcated the litigation into "liability" and "relief" phases)[12]; *FTC v. Minutemen Press, LLC*, 53 F. Supp. 2d 248, 251 (E.D.N.Y. 1998) (bifurcating trial to address liability and then the amount of compensation); *see also* Order to Bifurcate Proceedings at 2, *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF No. 264 (finding that bifurcation "will be more convenient for the Court and the Parties, and will expedite and economize this litigation"); Order at 3-4, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. July 11, 2023), ECF No. 283 (deferring specification of the equitable remedies and "the schedule for exchanging expert reports addressing" those remedies until after a liability trial).

Indeed, in moving to bifurcate the liability and remedies phases in *FTC v. Amazon.com, Inc.*, the FTC explained that bifurcation "is a common and 'obvious' application of [Federal Rule of Civil Procedure] 42(b)" in antitrust cases "because 'liability must be resolved before [remedies] are considered.'"  Pls.' Motion to Bifurcate at 3,, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495 (W.D. Wash. Feb. 29, 2024), ECF No. 167 (citation omitted).  Specifically, in monopolization cases, "[t]he court cannot craft appropriate injunctive relief until it knows 'the wrong creating the occasion for the remedy.'" *Id.* at 5 (citation omitted).  But perhaps most importantly, "bifurcation may obviate the need for a remedies proceeding altogether." *Id.*

---

[12] Contrary to the FTC's assertions, the court's bifurcation order did not cause any substantial disputes over the timing of discovery.  Given that several defendants unexpectedly settled, the court's summary judgment order merely clarified when discovery on claims relating to other defendants (which had not yet occurred because of the bifurcation order) would begin.  *AMG Servs.*, 29 F. Supp. 3d at 1379-80.

Contrary to the FTC's assertions here, the fact that the same witnesses might have discoverable information about liabilities and remedies counsels *in favor* of bifurcation. As the FTC explained in *Amazon*, "[w]hen proceedings are not bifurcated in cases with a broad scope," such as this case, in which the FTC's Complaint reaches a decade's worth of acquisitions, "witnesses may have to testify about a range of potential remedies covering all possible liability outcomes." *Id.* This is more likely to be a *waste* of resources, not an efficiency: it can "result in parties litigating—and the court considering—remedies that may ultimately be foreclosed by the court's liability determinations, thereby reducing judicial economy." *Id.*

Nor should there be increased discovery disputes as a result of bifurcation; the FTC will be fully entitled to all fact discovery relevant to liability in the liabilities phase, even if some such discovery may also be relevant to the remedies phase. In fact, discovery disputes may well be reduced by bifurcation because any disputes relating to discovery into remedies will be avoided entirely in the event that the need for a remedies phase is obviated by an initial trial on liability issues.

Moreover, discovery disputes will only increase if the Court orders discovery on both liability and remedies at this stage because of the FTC's obdurate refusal to disclose the kinds of equitable relief it seeks. What the FTC effectively seeks is unprecedented, carte blanche authority to seek discovery on any remedy that it might conjure up without notifying Defendants what those remedies might be, depriving both Defendants and this Court of the ability to impose meaningful discovery limitations. Such authority not only flouts Rule 26, but is extremely wasteful of Defendants' and taxpayers' resources, because those remedies (whatever they might be) "may ultimately be foreclosed by the court's liability determinations." *Id.*

16

Simply put, just as the FTC advised the court in *Amazon*, discovery on equitable remedies will be unnecessary if the FTC does not prevail on the merits.  The Court should therefore bifurcate these proceedings to permit only discovery and a subsequent trial on liability issues first, with discovery and a trial on equitable remedies, if any, to follow thereafter.

Issue No. 3: Discovery Timeline.

**FTC's Position.**

Although the parties broadly agree on the discovery schedule, two areas of disagreement remain: (1) the length of fact discovery and (2) the inclusion of an interim deadline for substantial completion of document productions.

***Fact discovery should last for 12 (not 18) months.*** Congress has expressed a "clear intent to prioritize speedy and efficient resolution of government antitrust suits." *United States v. Google LLC*, 661 F. Supp. 3d 480, 493 (E.D. Va. 2023). Plaintiff's proposed schedule would allow the Court to set this case for trial as early as 2026, which balances a speedy resolution with sufficient time for discovery, potential dispositive motions, and pretrial proceedings. Defendants' proposed additional six months of fact discovery, along with their proposed separate discovery period related to remedy, risks pushing the resolution of this case into 2027 or later. Such a delay may benefit Defendants, but it comes at the expense of patients and employers in Texas, who will continue to pay inflated prices for anesthesia services. Given that Defendants will receive the FTC's entire investigative file shortly after the start of discovery, it is unlikely that the parties will need 17.5 months to collect the remaining relevant materials.

The schedule in the related private action underscores why 12 months is appropriate here. There, the parties agreed to 18 months of fact discovery despite the numerous additional factual

issues arising out of the class claims, including proof of causation and antitrust injury. Because this case does not include these additional issues, it warrants a shorter discovery period.

***The schedule should include a deadline for substantial completion of document productions.*** For document requests sent within the first two months of discovery, the FTC's proposed schedule requires the parties and nonparties to substantially complete document production within seven months of discovery opening. This deadline will avoid a pile-up of late document discovery that might otherwise threaten to derail depositions or the discovery schedule more generally. This provision is common in government antitrust enforcement and mirrors the requirement that the FTC produce its investigative file by a date certain.[13]

**Defendants' Position.**

**<u>Length of Fact Discovery:</u>** Defendants believe that 18 months is necessary for the full development of fact discovery given the complexity of the issues in this case.  The FTC's Complaint spans more than 100 pages and alleges ten counts against eight parties relating to conduct dating back to 2012.  And the FTC's view that the production of the investigative file will vitiate the need for extended discovery by Defendants is simply incorrect.  As an initial matter, , the FTC has conducted a lengthy pre-filing investigation; there is even less reason that it should limit discovery of Defendants, who did not have the same authority.  Moreover, as is common in these kinds of cases, the parties anticipate significant third-party discovery, and Defendants will require sufficient time to investigate the relevant information possessed by third parties (including those who have already responded to the FTC's inquiries as a part of  its pre-

---

[13] *See, e.g.*, Scheduling Order ¶¶ 6, 12, *FTC v. Vyera Pharms., LLC*, No. 1:20-cv-00706-DLC (S.D.N.Y. Mar. 24, 2020), ECF No. 74 (substantial completion of document production ~4 months after deadline to serve initial RFPs); Scheduling Order § 8, *FTC v. Surescripts, LLC*, No. 19-cv-1080 (JDB) (D.D.C. Feb. 28, 2020), ECF No. 54 (substantial completion of document production ~9.5 months after start of discovery); Scheduling Order ¶¶ 6, 7, *FTC v. Abbvie Inc.,* No. 2:14-cv-05151-HB (E.D. Pa. April 29, 2015), ECF No. 78 (production of documents due ~5 months after start of discovery).

complaint investigation).  Finally, Defendants are also named in a follow-on class action lawsuit alleging substantially similar conduct as this litigation, and the class plaintiffs in that action have agreed that 18 months is an appropriate length for fact discovery.  An aligned 18-month discovery timeline here will allow Defendants to lessen the inconvenience and burden of discovery on party and non-party witnesses by aligning the time allotted for discovery between the two cases.[14]

**Substantial Completion Deadline:** Defendants believe it is unnecessary and inefficient to set a deadline for substantial completion of document production in the scheduling order.  The parties are committed to ensuring that discovery proceeds efficiently, and Defendants are sufficiently incentivized by the ordinary operation of the discovery rules to work cooperatively towards completing document production in a timely manner.  In Defendants' experience, deadlines for the substantial completion of document production frequently result in unnecessary discovery disputes and motion practice over what constitutes "substantial completion" as the parties near the deadline and whether the deadline should be extended in light of the burden associated with the document requests at issue.  There is no need to set an artificial deadline now and invite these disputes: Defendants, who have already produced hundreds of thousands of pages of documents to the FTC in connection with its pre-litigation investigation, will produce documents to the FTC on a rolling basis, and the timing and pacing of those productions will depend in significant part on the number and breadth of the FTC's requests for production, which Defendants have not yet received. The case was filed nearly seven months ago, and there can be

---

[14] The FTC relies on the inapposite March 2023 decision in *Google*, which denied a motion to transfer under 28 U.S.C. § 1404(a) because consolidating the Government's antitrust action into an already-pending MDL action would cause unwarranted delay.  *See* 661 F. Supp. 3d at 493   Here, however, the FTC has not shown, and cannot show, how just six more months of fact discovery prevents an efficient resolution of its claims.

no prejudice to the FTC to wait until the resolution of the pending Motions to issue additional discovery.

<u>Issue No. 4: Number of Deposition Hours.</u>

**FTC's Position.**

The FTC proposes 245 hours of depositions per side, excluding expert depositions. This proposal, the equivalent of 35 7-hour depositions for both plaintiff and defendants, reflects a realistic estimate of the discovery that is proportional to the needs of the case, as required by Rule 26. Courts have adopted similar discovery caps in other major antitrust enforcement actions in the healthcare industry.[15] Defendants' examples are inapposite, involving class action issues, numerous private plaintiffs, and/or many more nonparties than are at issue in this litigation. *See, e.g., In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 228 (2d Cir. 2016) (describing plaintiffs as a class of all merchants accepting Visa or Mastercard); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12-md-2335 (LAK), 2014 WL 5392465, at *1 (S.D.N.Y. Oct. 9, 2014) (describing numerous distinct causes of action brought by multiple separate private plaintiffs, government entities, and a class); Joint Scheduling Order at 4, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (JEB) (D.D.C. March 3, 2022), ECF No. 103 (providing 840 deposition hours for fact witnesses in nationwide case).

Defendants do not and cannot explain why this case requires substantially more depositions, let alone the 175 additional hours they propose. Unlike the FTC, which will need to depose Defendants' employees and executives, Defendants can focus exclusively on nonparties.

---

[15] *See, e.g.,* Amended Joint Rule 26(f) Report at 12, *FTC v. Vyera Pharms., LLC*, No. 1:20-cv-00706-DLC (S.D.N.Y. Mar. 17, 2020), ECF No. 64 (200 hours per side); Discovery Order, *FTC v. Actavis, Inc.*, No. 1:09-md-2084-TWT (N.D. Ga. June 11, 2014), ECF No. 972 (40 witnesses per side); Fed. R. Civ. P. 26(f)(2) Report to the Court at 9, *FTC v. AbbVie, Inc.*, No. 2:14-cv-05151-HB (Dec. 23, 2014), ECF No. 50 (30 depositions per side); Scheduling Order at 4, *FTC v. Surescripts, LLC*, No. 19-cv-1080 (JDB) (D.D.C. Feb. 28, 2020), ECF No. 54 (30 depositions per side).

A cap of 245 hours would allow Defendants to identify multiple exemplars in each of the categories of witness they highlight without burdening the parties and Texas healthcare providers with potentially repetitive depositions. Further reducing the need for a higher hours cap, Defendants' interests are perfectly aligned with respect to the information that they will seek from nonparties. Although Defendants have suggested that there are unique issues related to each Defendant, the only issue they have identified—Welsh Carson's participation in the charged violations—involves information uniquely in Defendants' possession and therefore does not justify additional deposition time.

### Defendants' Position.

Defendants propose that each side of the litigation (that is, the FTC on the one hand and Defendants collectively on the other) be allotted 420 deposition hours for fact witnesses, with Defendants free to allocate those 420 deposition hours among them as they deem appropriate. To adequately prepare their defense, Defendants intend to seek discovery from a number of third parties in the health care industry across the State of Texas, including commercial payors, hospital facilities, ambulatory surgical centers, and competing anesthesia practices.  The Welsh Carson entities are likely to seek discovery distinct from USAP, given that one key issue is how—if at all—the Welsh Carson entities were involved in interactions with the third parties. And, contrary to the FTC's assertion, the third parties do not have "perfectly aligned" interests with the Defendants that would necessarily allow for streamlined depositions.  The FTC's proposal to limit *both* USAP and the Welsh Carson entities to a combined 275 hours conflates two distinct sets of parties and risks prejudicing their ability to defend themselves.

Defendants' proposal of 420 hours is far lower than the number of hours allowed in other recent antitrust cases.  *See* Joint Scheduling Order at 4, *Meta Platforms, Inc.*, No. 1:20-cv-03590

(D.D.C. Mar. 3, 2022), ECF No. 103 (providing 840 deposition hours for fact witnesses for each party); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 229 (2d Cir. 2016) (noting that "[d]iscovery included more than 400 depositions" – equivalent to 2,800 hours assuming seven-hour depositions); see also *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 2014 WL 5392465, at *2 (S.D.N.Y. Oct. 9, 2014) (in multi-district litigation containing complex civil claims, noting that "[t]he private plaintiffs and the government, on the one hand, and the defendants on the other each were permitted collectively to take up to 150 fact depositions.") (equivalent to 1,050 hours assuming seven-hour depositions).

Of course, Defendants have every incentive to be efficient in taking depositions, and having an upper limit of 420 hours (for USAP and the Welsh Carson entities combined) does not mean that all those hours will prove to be necessary. But Defendants do not yet know the entire scope of discovery the FTC has already obtained from third parties during its nearly two-year investigation, so they need to have sufficient flexibility to obtain the discovery they may require to prepare their defenses.

### 12.    Specify the discovery beyond initial disclosures that has been undertaken to date.

In its investigation, the FTC obtained documents, written narrative responses, and testimony from defendants and nonparties. This information assisted the FTC in its evaluation of whether there was reason to believe the law is being violated or is about to be violated, whether to file a complaint in court, and if so, whom and what to charge.

### 13.    State the date the planned discovery can reasonably be completed.

The parties disagree about the date that discovery can reasonably be completed, in light of their disagreements about the need to stay discovery and phasing discovery. Their respective positions are set out in Item 11, and their proposed schedules are included in Appendix A.

**14.    Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

The parties continue to explore options for resolution in this matter.

**15.    Describe what each party has done or agreed to do to bring about a prompt resolution.**

The parties have engaged in discussions about the possibility of settlement.

**16.    From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

The parties have considered the possibility of using alternative dispute resolution procedures but do not believe that the case would benefit from such procedures at this time. The parties agree to revisit the possibility of settlement and alternative methods of dispute resolution once the Court rules on the pending motions to dismiss.

**17.    Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The parties do not consent to assigning this case to a magistrate judge for trial.

**18.    State whether a jury demand has been made and if it was made on time.**

No jury demand has been made.

**19.    Specify the number of hours it will take to present the evidence in this case.**

At this time, the parties agree that it is premature to estimate the number of hours it will take to present evidence in this case in light of the dispute over bifurcation and dispositive motion practice.

**20.    List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

None.

**21.    List other motions pending.**

- Defendant U.S. Anesthesia Partners, Inc.'s Motion to Dismiss the FTC's Complaint, ECF No. 97
- Welsh Carson Entities' Motion to Dismiss, ECF No. 100

**22.    Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

None.

**23.    Certify that all parties have filed Disclosure of Interested Parties as directed in the Order for Conference and Disclosure of Interested Parties, listing the date of filing for original and any amendments.**

The FTC certifies that it is exempt from filing the Disclosure of Interested Parties. FRCP

7.1(a). USAP certifies that it filed the required disclosures on October 10, 2023, ECF No. 63.

Welsh Carson certifies that it filed the required disclosures on October 10, 2023, ECF No. 65.

**24.    List the names, bar numbers, addresses and telephone numbers of all counsel.**

Counsel for the Federal Trade Commission

Kara Monahan, 202-326-2018 (NJ Bar No. 011392010) (Attorney-in-charge)
Bradley Albert, 202-326-3670 (MD Bar)
Michael Arin, 202-326-3531 (CA Bar No. 335693)
Daniel Butrymowicz, 202-326-3692 (NY Bar)
Dylan Herts, 202-326-2771 (NY Bar)
Leah Hubinger, 202-326-3641 (CA Bar No. 324976)
Garth Huston, 202-326-2658 (TX Bar No. 24041161, SDTX Bar No. 3858253)
Timothy Kamal-Grayson, 202-326-3369 (DC Bar No. 1028502)
Patrick Kennedy, 202-326-2114 (IL Bar No. 6332905)
Neal Perlman, 202-326-2567 (NY Bar)
Gary Schorr, 202-326-3063 (NY Bar)
David Schwartz, 202-326-3748 (NY Bar)
Eric Sprague, 202-326-2101 (NY Bar)

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Counsel for U.S. Anesthesia Partners, Inc.

Mark C. Hansen, (202) 326-7900 (D.C. Bar No. 425930)
Geoffrey M. Klineberg, (202) 326-7900 (D.C. Bar No. 444503)
David L. Schwarz, (202) 326-7900 (D.C. Bar No. 471910)

Kevin B. Huff, (202) 326-7900 (D.C. Bar No. 462043)
Kenneth M. Fetterman, (202) 326-7900 (D.C. Bar No. 474220)
Kevin J. Miller, (202) 326-7900 (D.C. Bar No. 478154)
Catherine M. Redlingshafer, (202) 326-7900 (D.C. Bar No. 1659426)
Derek C. Reinbold, (202) 326-7900 (D.C. Bar No. 1656156)
Dennis D. Howe, (202) 367-7900 (D.C. Bar No. 90011114)
Kyle M. Wood, (202) 367-7900 (D.C. Bar No. 90012250)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street N.W., Suite 400
Washington, D.C. 20036

David J. Beck, (713) 951-3700 (TX Bar No. 00000070, Federal I.D. No. 16605)
Garrett S. Brawley, (713) 951-3700 (TX Bar No. 24095812, Federal I.D. No. 3311277)
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010

Counsel for the Welsh Carson Entities

David B. Hennes, (212) 596-9395 (Bar No. 2773190)
Jane E. Willis, (212) 841-0490 (Bar No. 4225611)
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Douglas Hallward-Driemeier, (202) 508-4776 (Bar No. 994052)
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006

Kathryn Caldwell, (617) 951-7335 (Bar No. 682089)
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199

R. Paul Yetter, (713) 632-8000 (Bar No. 22154200)
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002

Kenneth Field, (202) 637-5600 (Bar No. 483267)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW

Washington, DC 20004

Perry A. Lange, (202) 633-6493 (Bar No. 494339)
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20006

Respectfully submitted,

_/s/ Timothy Kamal-Grayson_ _____                         _____ April 5, 2024
Counsel for Plaintiff Federal Trade                                                     Date
Commission

_/s/ Kenneth M Fetterman_ _____                         _____ April 5, 2024
Counsel for Defendant U.S. Anesthesia                                                   Date
Partners, Inc.

_/s/ R. Paul Yetter _ _____                          _____ April 5, 2024
Counsel for Defendant Welsh Carson                                                      Date

**Appendix A: Proposed Discovery Plans**

| Event | FTC's Proposed Deadline | Defendants' Proposed Deadline |
|---|---|---|
| Discovery Opens | Resolution of the motions to dismiss, or April 16, 2024, whichever is earlier | Resolution of the motions to dismiss |
| Submission of Protective Order | Approximately April 17, 2024 | Approximately April 17, 2024 |
| Initial Disclosures | Fourteen (14) days after discovery opens | Fourteen (14) days after discovery opens |
| Production of FTC Investigative File | Fourteen (14) days after discovery opens | Fourteen (14) days after discovery opens |
| Substantial Completion of Document Production | Seven (7) months after discovery opens<br><br>Only for requests sent within first two (2) months after discovery opens | N/a |
| Fact Discovery Closes | Twelve (12) months after discovery opens | Eighteen (18) months after discovery opens |
| Initial Expert Report(s) by Party Bearing Burden | Nine (9) weeks after close of fact discovery | Nine (9) weeks after close of fact discovery |
| Rebuttal Expert Reports | Nine (9) weeks after initial reports | Nine (9) weeks after initial reports |
| Reply Expert Reports | Six (6) weeks after rebuttal reports | Six (6) weeks after rebuttal reports |
| Close of Expert Discovery | Forty-five (45) days after reply expert reports | Forty-five (45) days after reply expert reports |
| Summary Judgment Motions | Forty-five (45) days after close of expert discovery | Forty-five (45) days after close of expert discovery |
| Oppositions to Summary Judgment Motions | Forty-five (45) days after motions are filed | Forty-five (45) days after motions are filed |
| Replies in Support of Summary Judgment Motions | Thirty (30) days after oppositions are filed | Thirty (30) days after oppositions are filed |