**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | **Case No.: 4:23-CV-03560-KH** |
| **v.** | |
| **U.S. ANESTHESIA PARTNERS, INC., et al.,** | |
| **Defendants.** | |

**Plaintiff Federal Trade Commission's
Appendix of Authorities in Rule 26(f)
Joint Discovery/Case Management Plan**

## Table of Authorities

*360 Mortgage Grp. LLC v. LoanCare LLC,*
 No. 1:18-cv-332, 2018 WL 6272034 (W.D. Tex. Nov. 30, 2018) ..........................................4

*Array Holdings, Inc. v. Safoco, Inc.,*
 No. H-12-0366, 2012 WL 12896361 (S.D. Tex. Oct. 12, 2012)............................................6

*Brown Bottling Grp., Inc. v. Imperial Trading Co.,*
 No. 3:19-cv-00142-HTW-LGI, 2022 WL 4110918 (S.D. Miss. Sept. 7, 2022).....................7

*Crownalytics LLC v. SPINS, LLC,*
 No. 1:22-cv-1275-NYW-SKC, 2022 WL 17416656 (D. Colo. Dec. 5, 2022)......................14

*Edge196 LLC v. Jointer, Inc.,*
 No. H-20-3417, 2021 WL 4027696 (S.D. Tex. Jan. 22, 2021) ............................................17

Order Deny. Mot. to Stay, *Fontenot v. City of Houston,*
 No. 4:12-cv-3503, ECF No. 117 (S.D. Tex. Jan. 9, 2014) ...................................................18

Fed. R. Civ. P. 26(f)(2) Report to the Court, *FTC v. AbbVie, Inc.*,
 No. 2:14-cv-05151-HB (Dec. 23, 2014), ECF No. 50..........................................................21

Scheduling Order, *FTC v. AbbVie Inc.,*
 No. 2:14-cv-05151-HB (E.D. Pa. Apr. 29, 2015), ECF No. 78.............................................39

*FTC v. Actavis, Inc.*,
 No. 1:09-md-2084-TWT (N.D. Ga. June 11, 2014), ECF No. 972 ........................................43

*FTC v. Adept Mgmt. Inc.*,
 No. 1:16-CV-00720-CL, 2018 WL 893803 (D. Or. Feb. 13, 2018).....................................48

Pls.' Motion to Bifurcate, *FTC v. Amazon.com, Inc.*,
 No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 29, 2024), ECF No. 167...................................51

Fed. R. Civ. P.26(f)(2) Report to the Court, *FTC v. Cephalon, Inc.*,
 No. 2:08-cv-02141-MSG (E.D. Pa. May 12, 2008), ECF No. 2 ..........................................76

Joint Scheduling Order, *FTC v. Meta Platforms, Inc.*,
 No. 1:20-cv-03590 (D.D.C. Feb. 22, 2022), ECF No. 103...................................................91

Scheduling Order, *FTC v. Qualcomm, Inc.*,
 5:17-cv-00220-LHK (N.D. Cal. Jan. 24, 2018), ECF No. 75..............................................103

Scheduling Order, *FTC v. Surescripts, LLC,*
No. 19-cv-1080 (JDB) (D.D.C. Feb. 28, 2020), ECF No. 54 ...............................................105

*FTC v. Vyera Pharms., LLC,*
No. 20-cv-00706 (DLC), 2021 WL 76336 (S.D.N.Y. Jan. 8, 2021) ....................................117

Amended Joint Rule 26(f) Report, *FTC v. Vyera Pharms., LLC*,
No. 1:20-cv-00706-DLC (S.D.N.Y. Mar. 17, 2020), ECF No. 64 ......................................119

Scheduling Order, *FTC v. Vyera Pharms., LLC*,
No. 1:20-cv-00706-DLC (S.D.N.Y. Mar. 17, 2020), ECF No. 74 ......................................139

*Health Choice Grp., LLC v. Bayer Corp.*,
No. 5:17-cv-126-RWS-CMC, 2018 WL 5728515 (E.D. Tex. Apr. 25, 2018) ....................142

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
No. 12-md-2335 (LAK), 2014 WL 5392465 (S.D.N.Y. Oct. 9, 2014) ...............................146

*Lubrizol Spec. Prods., Inc. v. Flowchem LLC*,
No. H-15-2917, 2016 WL 11745554 (S.D. Tex. June 21, 2016) .........................................150

*Performance Aftermarket Parts Grp., Ltd. v. TI Grp. Auto. Sys., Inc.*,
No. H-05-4251, 2006 WL 2850061 (S.D. Tex. Oct. 3, 2006) .............................................152

*United States v. Google LLC*,
No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF No. 264 ...................................................154

*United States v. Google LLC*,
No. 1:23-cv-00108 (E.D. Va. June 11, 2023), ECF No. 283 ...............................................156

*Valenzuela v. Crest-Mex Corp.*,
No. 3:16-cv-1129-D, 2017 WL 2778104 (N.D. Tex. June 26, 2017) .................................160

*Williams v. New Day Farms, LLC*,
No. 2:10-cv-0394, 2010 WL 3522397 (S.D. Ohio Sept. 7, 2010) .......................................166

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 4 of 168

360 Mortgage Grp, LLC v. LoanCare LLC, Not Reported in Fed. Supp. (2018)

2018 WL 6272034
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

360 MORTGAGE GRP, LLC

v.

LOANCARE LLC, et al.

1:18-CV-332 RP
|
Signed 11/30/2018

**Attorneys and Law Firms**

Jason W. Snell, John-Robert Skrabanek, The Snell Law Firm, P.L.L.C., W. Lance Cawthon, Cawthon Law, P.L.L.C., Austin, TX, for 360 Mortgage Grp, LLC.

Ethan G. Ostroff, Troutman Sanders LLP, Virginia Beach, VA, Virginia Bell Flynn, Troutman Sanders LLP, Dallas, TX, for LoanCare llc, et al.

### ORDER

ANDREW W. AUSTIN, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is Defendant LoanCare LLC's Motion for Protective Order (Dkt. No. 22), 360 Mortgage's Response (Dkt. No. 25), and LoanCare LLC's Reply (Dkt. No. 26). On October 9, 2018, the District Court referred the above motion to the undersigned for a determination pursuant to 28 U.S.C. § 636(b)(1)(A), Rule 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. General Background

On March 26, 2018, 360 Mortgage Group, LLC filed this suit against LoanCare and Castle Mortgage Corp. in Travis County District Court. The case was removed to this Court on April 23, 2018, based on diversity of citizenship. Dkt. No. 1. 360 Mortgage alleges that Castle Mortgage breached a contract between the two parties, and also alleges that both Castle Mortgage and LoanCare defrauded it in relation to the handling of a particular loan that was part of a loan pool acquired by 360 Mortgage. It brings a declaratory judgment and breach of contract claim

against Castle Mortgage, and it brings fraud, fraudulent inducement, negligent misrepresentation, negligence, and conspiracy claims against Castle Mortgage and LoanCare.

Shortly after removal, LoanCare filed a motion to dismiss the claims against it under Rule 12(b)(6). In the present motion it requests that the Court stay discovery against it until the Rule 12 motion is resolved. It contends there is a high likelihood that its Rule 12 motion will be granted, and that all claims against it will be dismissed.

### II. Analysis

LoanCare requests that the Court stay discovery because the resolution of its motion to dismiss "may obviate the need for any discovery or will at least narrow the issues and allow the parties to pursue discovery in a more targeted fashion." Dkt. No. 22-1 at 2-3. Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). To show "good cause" under Rule 26, the party seeking a stay of discovery must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."

In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) ). The Court has broad discretion in determining whether to grant a motion for a protective order or stay of discovery. Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 436 (5th Cir.), cert. denied, 498 U.S. 895 (1990).

LoanCare has failed to show "good cause" to stay discovery in this case. While, in theory, a court may find good cause to stay discovery when there is a pending 12(b)(6) motion, in practice such stays are very rare, and almost never wise. Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc., 2008 WL 2930482, at \* 1 (N.D. Tex. July 23, 2008) (such stays are "the exception rather than the rule"); Von Drake v. Nat'l Broad. Co., 2004 WL 1144142, at \*1 (N.D. Tex. May 20, 2004) ("While discovery may be stayed pending the outcome of a motion to dismiss, 'the issuance of stay is by no means automatic.' "). As one district judge has noted, "[h]ad the Federal Rules contemplated that a motion to dismiss under FED. R. CIV. P. 12(b)(6) would stay discovery, the Rules

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 5 of 168

**360 Mortgage Grp, LLC v. LoanCare LLC, Not Reported in Fed. Supp. (2018)**

would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." ⚑ *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990).

 **\*2**  There are of course exceptions to these general rules, but they apply to cases in which, for example, the motion to dismiss raises a serious legal question or factual deficiency that has a reasonably high likelihood of resulting in the dismissal of the case. Notwithstanding LoanCare's view of its motion to dismiss, this is not such a case. Accordingly, LoanCare's Motion for a Protective Order Staying Discovery (Dkt. No. 22) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6272034

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

4

Array Holdings, Inc. v. Safoco, Inc., Not Reported in Fed. Supp. (2012)

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 6 of 168

2012 WL 12896361
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas,
HOUSTON TEXAS.

ARRAY HOLDINGS, INC., Plaintiff,

v.

SAFOCO, INC., et al., Defendants.

CIVIL ACTION NO. H–12–0366
|
Signed 10/12/2012

## **ORDER**

FRANCES H. STACY, UNITED STATES MAGISTRATE JUDGE

 **\*1** Before the Magistrate Judge upon referral from the District Judge is the McAfee Taft Defendants' Opposed Motion to Stay Discovery Pending Determination of Motions to Dismiss (Document No. 54). The other Defendants have joined in the Motion to Stay, but Plaintiffs are opposed. Also pending is Defendants' Motion to Quash Deposition Notices and for Protection (Document No. 87), in which Defendants seek an order quashing certain depositions, and protection from any additional discovery until such time as a ruling is made on Defendants' Motion to Stay Discovery.

Having considered Defendants' Motion to Stay, the other Defendants' joinder, Plaintiff's response and supplemental response in opposition, the Docket Control Order entered, and

the fact that the pending Motions to Dismiss have only been recently filed, there is no compelling reason, from either a efficiency or economic standpoint, for a stay of all discovery in this case until such time as the Motions to Dismiss are resolved. A stay of discovery to allow the Court to resolve purely legal issues may be warranted in some circumstances, but it is the exception, not the rule. *See* Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc., 2008 WL 2930482 (N.D. Tex. 2008) (and cases cited therein). Here, the Motions to Dismiss, while multi-faceted, are based in part on Defendants' arguments that Plaintiff has not stated a claim against under the standard(s) set forth in *Twombly* and *Iqbal*. Whether that is true or not, the Court has sufficient discretion, when claims are insufficiently pled, to allow for an amendment. Here, given that possibility, however remote, it cannot be said that the parties' interests would be served by an indefinite stay of discovery.

Accordingly, it is

ORDERED that Defendants' Opposed Motion to Stay Discovery Pending Determination of Motions to Dismiss (Document No. 54) is DENIED. Based on that determination, it is further

ORDERED that Defendants' Motion to Quash Deposition Notices and for Protection (Document No. 87) is likewise DENIED.

### **All Citations**

Not Reported in Fed. Supp., 2012 WL 12896361

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 7 of 168

Brown Bottling Group, Inc. v. Imperial Trading Co., L.L.C., Not Reported in Fed. Supp....

2022 WL 4110918
Only the Westlaw citation is currently available.
United States District Court, S.D.
Mississippi, Northern Division,
Northern Division.

BROWN BOTTLING GROUP, INC., Plaintiff

v.

IMPERIAL TRADING CO., L.L.C.; Long
Wholesale, Inc.; AAA Cash & Carry Wholesale,
Inc.; The Corr-Williams Company; The H.T.
Hackney, Co.; MS Wholesales 1 Inc.; and
W.L. Petrey Wholesale Co., Inc., Defendants

CIVIL ACTION NO.: 3:19-CV-00142-HTW-LGI
|
Signed September 7, 2022

**Attorneys and Law Firms**

Hugh Quan Gottschalk, Pro Hac Vice, Webster C. Cash, III, Pro Hac Vice, Wheeler Trigg O'Donnell, LLP, Denver, CO, Phillip S. Sykes, Haley Fowler Gregory, Butler Snow LLP, Ridgeland, MS, for Plaintiff.

Jeffrey R. Blackwood, Christina M. Seanor, Erin D. Saltaformaggio, Stevie F. Rushing, Bradley Arant Boult Cummings, LLP, Jackson, MS, for Defendants Imperial Trading Co., L.L.C., Long Wholesale, Inc., The Corr-Williams Company.

R. Andrew Taggart, Jr., Jeffrey B. Rimes, Mona Patel Graham, Sarah Lindsey Hammons, Taggart, Rimes & Wiggins, PLLC, Ridgeland, MS, Cherie R. Wade, Taggart, Rimes & Wiggins, PLLC, Pascagoula, MS, for Defendant AAA Cash & Carry Wholesale, Inc.

Cheryl G. Rice, Pro Hac Vice, Egerton, McAfee, Armistead & Davais, PC, Knoxville, TN, John H. Geary, Jr., Ian Austin, Copeland, Cook, Taylor & Bush, PA, Ridgeland, MS, for Defendant The H.T. Hackney Co.

Martin de'Porres Perkins, The Perkins Law Firm, Jackson, MS, for Defendant MS Wholesales 1 Inc.

Dudley Collier Graham, Jr., Rebecca W. Hawkins, Wise, Carter, Child & Caraway, PA, Jackson, MS, H. Dean Mooty, Jr., Pro Hac Vice, Mooty & Associates, PC, Montgomery, AL, for Defendant W.L. Petrey Wholesale Co., Inc.

**ORDER**

LaKeysha Greer Isaac, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is the Motion to Bifurcate Trial [119] filed by Defendant The H.T. Hackney Co. and joined by Defendants Imperial Trading Co., L.L.C., Long Wholesale, Inc., AAA Cash and Carry Wholesale, Inc., The Corr-Williams Company, and W.L. Petrey Wholesale Co., Inc. Also before the Court is the Motion to Bifurcate Discovery [122], filed by Imperial Trading Co., L.L.C, Long Wholesale, Inc., Corr-Williams Company, and joined by The H.T. Hackney Co., W.L. Petrey Wholesale Co., Inc. and AAA Cash & Carry Wholesale, Inc. The movant-defendants are collectively referred to hereinafter as "Defendants". [1] Plaintiff Brown Bottling Group, Inc. ("Plaintiff" or "Brown Bottling") filed a Response in Opposition to Defendants' Motion to Bifurcate Trial [129], and Defendants submitted a Reply in Support of the Motion to Bifurcate Trial [133]. Likewise, Plaintiff filed a Response in Opposition to Defendants' Motion to Bifurcate Discovery [131], and Defendants submitted a Reply in Support of the Motion to Bifurcate Discovery [135]. The Court, having considered the submissions, the record, and relevant law, finds that the Motion to Bifurcate Trial [119] is GRANTED and the Motion to Bifurcate Discovery [122] is DENIED, as discussed below.

**ANALYSIS**

**I. Defendants' Motion to Bifurcate Trial [119]**
Defendants seek to bifurcate the trial of the tortious interference claim into two phases: (1) liability and compensatory damages and (2) punitive damages. Plaintiff seeks punitive damages for its pendent state-law claim for tortious interference, with actual or prospective business relations. Defendants move for bifurcation, because they "expect [at the trial in this matter] that Brown Bottling will attempt to introduce evidence, or elicit testimony, regarding punitive damages prior to a jury finding of liability in connection with the tortious interference claim." *See* Doc. [120] at 2.

The decision to grant separate trials rests within the sole discretion of the trial court. *Guedry v. Marino,* 164 F.R.D. 181, 186 (E.D. La. 1995). Defendants' Motion [119] seeks

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 8 of 168

Brown Bottling Group, Inc. v. Imperial Trading Co., L.L.C., Not Reported in Fed. Supp....

to bifurcate the trial into a phased trial rather than into separate trials, which is consistent with Federal Rule of Civil Procedure 42(b) and the provisions of Mississippi's punitive damages statute. Rule 42(b) provides, "for convenience, to avoid prejudice, or to expedite and economize, the court *may* order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42. (Emphasis added). Mississippi Code § 11-1-65 *mandates* the bifurcation of liability and compensatory damages from that of punitive damages. While this court is not bound by the Mississippi state statute requiring bifurcation of punitive damages, federal district courts have followed the strict procedure outlined in § 11-1-65, in instances where granting the relief would be consistent with the provisions of Rule 42(b). *See James v. Antarctic Mech. Servs., Inc.*, No. 3:18-CV-678, 2021 WL 4999012, at *2 (S.D. Miss. Oct. 27, 2021); *Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 WL 1028530, at *2 (N.D. Miss. Mar. 4, 2019); and *Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-cv-76, 2018 WL 2967627, at *2 (N.D. Miss. June 12, 2018).

**\*2** "Specifically, Miss. Code Ann. § 11–1–65(1)(c) provides that '[i]f, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.' " *Boddie v. Walker*, 280 F. Supp. 3d 920, 921 (N.D. Miss. 2017) (citing Miss. Code Ann. § 11-1-65(1)(a)-(e) (Rev. 2000)). The Northern District Court has noted "one arguable interpretation of this statute is that the 'shall' language requires an evidentiary hearing on punitive damages to be held in the event that such damages are sought and an award of compensatory damages is entered against the defendant at trial." *Munson v. C.R. Bard, Inc.*, 561 F. Supp. 3d 655, 679 (N.D. Miss. 2021).

Further, "the Mississippi Supreme Court concluded in the decision of *Bradfield v. Schwartz*, 936 So. 2d 931, 938 (Miss. 2006):

> that the detailed procedure outlined [in section 11-1-65(1)(e)] must be meticulously followed because, without an evidentiary buffer at trial, juries will ultimately confuse the basic issue of fault or liability

and compensatory damages with the contingent issue of wanton and reckless conduct which may or may not ultimately justify an award of punitive damages.

*Bradfield*, 936 So. 2d at 938.

The Court analyzes this motion, regarding the tortious interference action, by weighing the parties' positions against the provisions of Rule 42(b) to determine if bifurcation will: 1) promote convenience, 2) expedite proceedings, or 3) avoid unfair prejudice to a party. The Court carefully considers each factor. However, "only one of these three factors must be met to justify bifurcation." *Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998). *See also Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996); and *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983).

*A. Prejudice*

First, the Court considers whether bifurcation will avoid unfair prejudice to the parties. Defendants argue that allowing Plaintiff to "mention or present evidence pertaining to punitive damages during the liability/compensatory damages phase on the tortious interference claim – such as evidence or discussion of Defendants' respective revenues or net worth – could lead to substantial prejudice against Defendants, especially considering Brown Bottling's strong local presence in Mississippi, which some Defendants do not have." Doc. [120] at 5. Defendants also submit that "ordering bifurcation will help to ensure that the jury does not return 'an inflated compensatory damage award based on consideration of the wrong evidence,' (i.e., evidence pertaining to punitive damages), during the liability/compensatory damages phase." *Id.* Defendants claim that Plaintiff "will not be prejudiced by bifurcation, because the punitive damages phase of trial will follow immediately after the liability and compensatory damages phase (in the event the Court determines that trial should proceed on the issue of punitive damages), and most witnesses presumably reside and/or do business in Mississippi." *Id.* Defendants further argue that bifurcation is necessary to avoid what they perceive as a "real risk of prejudice," adding:

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 9 of 168

Brown Bottling Group, Inc. v. Imperial Trading Co., L.L.C., Not Reported in Fed. Supp....

[S]ome Defendants are large companies without the sort of strong local presence Brown Bottling has. A jury could easily view this situation as out-of-towners muscling in on the local favorite's home territory, and so it is not hard to see how jury bias could arise in these circumstances. Couple that with allowing argument or evidence regarding Defendants' net worth during the liability phase, and we could see here *precisely* the type of improper jury bias the Supreme Court described in State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 417, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In other words, it is the totality of the circumstances described in *Campbell*, not net-worth evidence alone, that could lead to substantial prejudice here. Phasing the trial will avoid that prejudice.

**\*3** Doc. [133] at 4.

Plaintiff claims it would be "unduly prejudiced by not being able to present evidence regarding Defendants' improper transshipping in Brown's exclusive territory, including their revenues from that activity" because it "is central to the issues in this case and is among the bases for Brown Bottling's compensatory damages." Doc. [130] at 5. Plaintiff also rebuts Defendants' argument by asserting that net worth and revenue information are insufficient claims of undue prejudice and are insufficient to support bifurcation.

The Supreme Court has recognized that inflammatory financial evidence can be especially destructive in the context of punitive damages, because of the leeway given to juries in selecting the appropriate amount necessary to punish and deter. See State Farm Mut. Auto Ins., 538 U.S. at 417, 123 S.Ct. 1513 (explaining how "punitive damages pose an acute danger of arbitrary deprivation of property" because of the "wide discretion" given to juries "in choosing amounts"). To be sure, juries are and should be afforded substantial room to exercise their discretion, but it is the court's responsibility to ensure that the tools the jury uses to exercise that discretion are appropriate. See Mattison, 947 F.2d at 105 ("When a jury is left to its own devices to take property or mete out punishment to whatever extent it feels is best in the course of the process, our sensibilities about that process are offended.").

The Court finds Plaintiff's argument that it will be forced to try the same case twice unavailing, given the common practice of bifurcating between liability and damages phases in trial. See Wagoneka v. KT&G USA Corp., No. 4:18-CV-859, 2020 WL 6063096, at *2 (E.D. Tex. Oct. 14, 2020) ("To avoid prejudice, courts will often bifurcate claims so that the presentation of punitive-damages evidence occurs only after the jury has determined liability."); see also Johnson v. Helmerich & Payne, Inc., 892 F.2d 422, 424 (5th Cir. 1990) ("[S]eparation of issues of liability from those relating to damages is an obvious use for Rule 42(b) ...."); EEOC v. Bass Pro Outdoor World, LLC, 826 F.3d 791, 800 (5th Cir. 2016) ("Bifurcation of liability and damage is a common tool deployed by federal district courts in a wide range of civil cases").

Moreover, "[p]rejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)." Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992); Utex Indus. v. Wiegand, No. H-18-1254, 2020 WL 5879102, at *1 (S.D. Tex. Oct. 2, 2020) (finding it appropriate to bifurcate trials where defendant could suffer prejudice if the jury were allowed to hear evidence and arguments about the defendant's net worth when determining liability); Dubea v. Simpson, No. 9:07-CV-63-TH, 2009 WL 10677421, at *1 (E.D. Tex. Mar. 2, 2009) ("[T]he Court finds that evidence of [defendant's] net worth is relevant to the issue of exemplary damages. But, given the aforementioned risk of ... prejudice to [defendant], the Court will bifurcate the issue of exemplary damages from the liability portion of the trial."). Accordingly, the first factor weighs in favor of granting the motion to bifurcate trial.

*B. Convenience of the Parties*

**\*4** Second, the Court considers the convenience of the parties. Plaintiff submits that Defendants did "not offer any argument or evidence that bifurcation is convenient" and therefore "have conceded that bifurcation is not convenient." Doc. [130] at 3. Defendants explain that they "did not argue about convenience because only one of the three bifurcation

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 10 of 168

Brown Bottling Group, Inc. v. Imperial Trading Co., L.L.C., Not Reported in Fed. Supp....

criteria need be met ... and Defendants focused on the ones that are present in this case and support bifurcation (i.e., avoiding prejudice and expedition and economy, in addition to avoiding jury confusion)." Doc. [133] at 3. Because neither party argues that bifurcation will impact the convenience of the parties, the Court finds that the second factor does not weigh in favor of either conclusion.

### C. Judicial Economy and Expedition
Defendants reason that "bifurcation will expedite and economize trial by barring the presentation of punitive damages evidence and/or argument unless and until it is necessary." Doc. [120] at 5-6. Plaintiff contends that "Defendants' intentional and willful violation of Brown Bottling's exclusive rights are central to Brown Bottling's liability claim" because "[t]he same facts that support Brown Bottling's tortious interference claim will also, in part, show that Defendants willfully and maliciously violated Brown Bottling's rights and caused Brown Bottling injury." Doc. [130] at 6. Plaintiff submits that it "expects to use these same facts to show that Defendants acted with reckless disregard for Brown Bottling's rights in an effort to divert customers away from Brown Bottling." *Id.* Plaintiff argues that bifurcation would duplicate, not economize, presentation of evidence in this case, because:

> Brown Bottling sent cease and desist letters to the Defendants, notifying them of their contractual rights to exclusively distribute PepsiCo and KDP products in Brown Bottling's territory. Many Defendants even received cease and desist letters from PepsiCo. Nevertheless, they continued to sell in Brown Bottling's territory.

*Id.*

This Court recognizes that the tortious interference claims against the Defendants essentially requires that a trier of fact must consider one of the most important elements that is also necessary to prove punitive damages – malice. "Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs

in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (*which constitutes malice*); and (4) actual loss and damage resulted." *PDN, Inc. v. Loring*, 843 So. 2d 685, 688 (Miss. 2003). Notably, "under Mississippi law, a claimant must prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with *actual malice*, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others or committed actual fraud." *Cooper Tire & Rubber Co. v. Farese*, No. 3:02CV210-SA-JAD, 2008 WL 5188233, at *4 (N.D. Miss. Dec. 9, 2008) (citing Miss. Code Ann. § 11-1-65(1)(a)).

The Court finds that bifurcating the punitive damages phase of trial will support judicial economy and expedite the presentation of evidence. The Court agrees that "there is no guarantee that the Court will ultimately send the punitive damages claim to a jury, and so presenting punitive damages evidence and/or argument during the liability phase could prove a waste of time and resources." Doc. [133] at 4. "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." 🚩 *Guedry*, 164 F.R.D. at 186. Accordingly, the third factor weighs slightly in favor of granting the motion to bifurcate trial.

**\*5** After balancing the two competing claims of prejudice, the convenience of the parties and judicial economy, the Court finds that these considerations weigh in favor of Defendants' motion to bifurcate trial under Rule 42(b). The Court concludes that the goals of judicial economy and fairness will be best served if the trial is bifurcated to separate the liability and compensatory damages phase from the punitive damages phase at trial. The Court finds that a bifurcated trial is appropriate and thus, the Motion to Bifurcate Trial [119] is granted. If the jury reaches a verdict for Plaintiff after the first phase of trial, the trial will proceed to the punitive damages phase before the same jury. There will not be a need for separate witnesses. The Court will not permit any evidence of Defendants' net worth to enter evidence in the first phase of the trial.

This Court, in the exercise of its discretion, has therefore determined that trial in this case should be bifurcated into a liability and compensatory damages phase and a punitive damages phase. Where a district court has exercised its discretion to bifurcate a punitive damage phase, it follows

that evidence relevant only to an award of punitive damages is irrelevant at other stages. *See*, e.g., *Landrum v. Conseco Life Ins. Co.*, No. 1:12-cv-5, 2014 WL 28861, at *3 (S.D. Miss. Jan. 2, 2014). Of course, evidence otherwise relevant to liability or compensatory damages is not rendered inadmissible merely because it is also relevant to the issue of punitive damages. *Bossier v. State Farm Fire & Cas. Co.*, 2009 WL 3281128, at *1–2 (S.D. Miss. Oct. 9, 2009). This Court agrees that a phased trial is appropriate and thus, this motion [119] is granted.

## II. Defendants' Motion to Bifurcate Discovery [122]

Defendants also ask this Court to bifurcate the discovery phase of this case. "Trial courts are afforded 'broad discretion' in 'balancing the interests of both sides while looking for a discovery plan that reasonably fits the particular demands of the case.' " *Hawkins v. Miss. Farm Bureau Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 212445 *1 (S.D. Miss. Dec. 18, 2018) (quoting *Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789-B, 2014 WL 12596498, at *4 (N.D. Tex. July 10, 2014)). Rule 26 affords trial courts ample authority to control the sequence and timing of discovery. *EEOC v. Lawler Foods Inc.*, 128 F. Supp. 3d 972, 974 (S.D. Tex. 2015). " '[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.' This principle of judicial parsimony is often invoked, for example, to justify postponing discovery on damages until liability has been established." *Id.* (quoting 8A Wright and Miller, Federal Practice and Procedure § 2040 (3d ed. 2010)).

Under Defendants' proposal [2] to bifurcate discovery, phase one of discovery would be limited to issues involving Plaintiff's declaratory judgment claim. Following the Court's ruling on dispositive motions on this issue, the case would proceed, if necessary, to phase two, which would include all other issues, including the Plaintiff's Lanham Act claim and tortious interference claim. Defendants assert that the declaratory judgment claim is separate and distinct from all others and that bifurcated discovery saves the parties time and money and conserves judicial resources.

**\*6** Specifically, Defendants assert that bifurcation of discovery promotes efficiency and conservation of resources. Doc. [123] at 3. In support of this assertion, Defendants cite to *EEOC v. Lawler Foods, Inc.*, 128 F. Supp. 3d 972, 974 (S.D. 2015) to persuade this Court that their proposed phased discovery plan is necessary here, because there are multiple

distinct claims between different parties and bifurcation could efficiently resolve the threshold issue. *Id.* at 5-6. According to Defendants, the threshold fact issue "is whether it possesses a valid and enforceable right to sell various soft-drink refreshment products ... in designated territories based on purported exclusive licensing agreements it has with PepsiCo ("Pepsi") and Keurig Dr. Pepper ("KDP") ... to the exclusion of all others, including Defendants." *Id.* at 3. Defendants request bifurcation of discovery to permit a prioritization of discovery, so the threshold issue can be put before the Court before the parties incur significant expenses.

Further, Defendants seek to stay discovery regarding the Plaintiff's tortious interference and Lanham Act claims and defenses, as they contend these claims, unlike the declaratory judgment claim, "present different and broader questions of fact and law, for each of the seven defendants." *Id.* at 7, 9. Defendants contend that they are each individual wholesalers, with different businesses and customers, and with no connections to one another, apart from being named in the subject lawsuit. *Id.* Defendants argue that the claims against each Defendant are distinct, as neither claim has identical fact and legal issues. *Id.* Thus, they contend pursuing discovery, in the normal course, "could spiral exponentially, and unnecessarily." *Id.* Finally, Defendants claim the Plaintiff will not be prejudiced if discovery is bifurcated, as it will allow discovery to proceed on the Plaintiff's purported issue regarding exclusivity of rights and stay discovery as to the pendent issues. *Id.* at 10. Defendants also claim the Plaintiff will not be prejudiced by staying discovery on its tortious interference claims, because it cannot provide the necessary element of malicious intent, without first establishing its exclusive right to sell products in the alleged designated areas. *Id.* Similarly, Defendants contend the Plaintiff will not be prejudiced if the Court stays discovery on the false affiliation claims under the Lanham Act. *Id.*

Plaintiff vigorously opposes bifurcation of discovery. Plaintiff asserts it would be "severely and unduly prejudiced" by bifurcating discovery in this case. Doc. [132] at 2. Plaintiff argues it is prejudicial to require Brown Bottling to pursue its case at the pace and direction chosen by Defendants, which it contends gives Defendants a faster track to potential dispositive motions, while freezing Plaintiff's exploration of its own claims. *Id.* at 10. Plaintiff also submits that the phased discovery plan, presented by Defendants, "would not resolve all the claims at issue in this lawsuit, [but would instead] cause needless delay, expense, time and undue prejudice" to the Plaintiff. *Id.* Plaintiff argues the cases relied on by Defendants

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 12 of 168

Brown Bottling Group, Inc. v. Imperial Trading Co., L.L.C., Not Reported in Fed. Supp....

are distinguishable and support Brown Bottling's position that courts do not commonly bifurcate discovery, unless doing so will resolve a lawsuit. Specifically, Plaintiff points to *EEOC v. Lawler Foods, Inc.*[3], cited by Defendants, and notes that case is distinguishable from the instant action, because it involved a class action lawsuit, which involved a large class of aggrieved persons and a distinct threshold issue that, if proven, would alleviate the need for a trial altogether. *Id.* at 8. Plaintiff submits that bifurcating discovery and proceeding with discovery on the declaratory judgment claim only will not resolve this entire lawsuit.

**\*7**  Plaintiff contests Defendants' request for bifurcation of discovery, arguing that the phased plan "would be the "epitome of inefficiency, delay and waste of resources." *Id.* at 6. Plaintiff opposes Defendants plan to stay discovery as to its tortious interference and Lanham Act claims. Plaintiff contends the Exclusive Bottling Agreements ("EBAs") and license agreements help establish the first element of the tortious interference claim–that the acts were intentional and willful. *Id.* at 5. In support of its claim that Defendants acted intentionally and willfully, Plaintiff argues it sent each Defendant a cease-and-desist letter by certified mail notifying each of Plaintiff's exclusive rights under the EBAs. *Id.* Regarding the Lanham Act claims, Plaintiff argues the EBAs and license agreements are "necessary merely to show that PepsiCo and KDP have not granted Defendants rights to distribute their trademarked products." *Id.* at 6.

Plaintiff also submits that the same documents and witnesses will be involved in the declaratory judgment, Lanham Act, and tortious interference discovery. In support of this position, Plaintiff relies on two cases from this District, wherein Magistrate Judge Ball and Magistrate Judge Parker rejected requests to bifurcate discovery in insurance cases involving uninsured motorist claims and bad faith claims. *Id.* at 6-7 (citing Judge Ball's holding in *Wallace v. State Auto Prop. & Cas. Ins. Co.*, 2013 WL 1212201 at \*1 (S.D. Miss. Jan. 10, 2013) (holding "the most efficient means of resolving the instant case is for all discovery to proceed.")) and (citing Judge Parker's holding in *Hibley v. Mathis*, 2009 WL 765083, \*1 (S.D. Miss. March 19, 2009) (holding "much of the discovery involving the various claims will involve the same people and many of the same records or documents. Proceeding with discovery as to all claims at this time is more efficient than a piecemeal approach.")).

It is Plaintiff's position that "every defendant in every case would bifurcate discovery to develop its defenses to the exclusion of plaintiff's discovery supporting its own claims." *Id.* at 1. Plaintiff properly points out that this Court rarely grants the relief sought by Defendants. However, when relief is granted, it often occurs where the bifurcation would resolve the entire lawsuit. The Court finds that discovery regarding the EBAs and license agreements is necessary for the declaratory judgment, Lanham Act, and tortious interference claims. Further, the Court anticipates that many of the documents and witnesses involved will be the same for all claims, and it will be an inconvenience as well as a waste of lawyers' and witnesses' time, and other resources, to require duplicative discovery of the same documents and witnesses. *See Performance Aftermarket Parts Group, LTD. V. TI Group Auto Sys.*, 2006 U.S. Dist. LEXIS 75795 \*5, 2006 WL 2850061 (S.D. Tex. Oct. 4, 2006).

The Court determines that bifurcation of discovery in the manner sought by the Defendants is not appropriate in this action, because it will cause undue delay, inefficiency, and also waste resources. The Court further finds that the proposed sequence and timing of discovery will unfairly prejudice Plaintiff and will not further the interests of judicial economy or fairness. *See Bunch v. Metro. Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 92104 \*6, 2010 WL 3120048 (S.D. Miss. Aug. 5, 2010). The Court concludes that bifurcation of discovery would not further convenience or avoid prejudice in this case and, therefore, denies the Motion to Bifurcate Discovery [122]. As discussed above, bifurcated trials, as opposed to bifurcated discovery, would be conducive to an expedited and economical resolution of this case.


## CONCLUSION

IT IS, THEREFORE, ORDERED that the Motion to Bifurcate Trial [119] is granted.

IT IS FURTHER ORDERED that the Motion to Bifurcate Discovery [122] is denied.

SO ORDERED, this the 7th day of September, 2022.


**All Citations**

Not Reported in Fed. Supp., 2022 WL 4110918

## Footnotes

1    Defendant MS Wholesales 1 Inc. did not join in the motions (119), (122).

2    "The parties have 150 days to take discovery regarding Plaintiff's Declaratory Judgment claims and Defendants' defenses thereto, which, at a minimum, requires production of all "agreements", including amendments and communications with the licensor or trademark owner, for each trademark named in the Amended Complaint, or any Trademark under which Brown Bottling seeks to assert a declaratory judgment claim. This phase of discovery will seek to resolve the following factual and legal issues:

> 1. Whether Brown Bottling has the sole right to use each trademark and/or sell each product in a certain territory.
>
> 2. Whether Brown Bottling's rights are enforceable against third parties, such as defendants.
>
> 3. Established mechanisms for enforcing Brown Bottling's contractual agreements with Trademark Owners, and the use and effectiveness of those mechanisms.
>
> 4. Any other factual and legal basis relevant to the declaratory judgment claims or defenses.

During this phase, Defendants request that discovery regarding claims and defenses related to the Lanham Act claim and the tortious interference claim be stayed.

Defendants further request a status conference following the close of the first phase of discovery, at which the parties will report to the Court regarding whether and to what extent the above-listed issues have been resolved, and whether the parties are prepared for dispositive motions on these issues and/or this claim. If so, then discovery on the Lanham Act and tortious interference claims would remain stayed pending final resolution of such dispositive motions. If not, then the parties would proceed with discovery on the Lanham Act and tortious interference claims."

Doc. [122] at 1-2.

3    Plaintiffs also seek to distinguish *Jinro Am. Inc.*, 266 F. 3d 993, 998 (9th Cir. 2001), cited by Defendants in their brief, noting that the issue on appeal in *Jinro* was the trial judge's decision to bifurcate trial, not discovery. *See* Doc. [132] at 9; *see also* Defendants' Motion, Doc. [123] at 6.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Crownalytics, LLC v. SPINS, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 17416656
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

CROWNALYTICS, LLC, Plaintiff,
v.
SPINS, LLC, DAAP, LLC, and
Information Resources, Inc., Defendants.

Civil Action No. 1:22-cv-1275-NYW-SKC
|
Signed December 5, 2022

**Attorneys and Law Firms**

Rick D. Bailey, Law Office of Rick D. Bailey, Denver, CO, Aaron Robert Gott, Bona Law PC, Minneapolis, MN, Alexandra H. Shear, Bona Law PC, New York, NY, Kristen Amber Harris, Bona Law PC, La Jolla, CA, Patrick Joseph Pascarella, Bona Law PC, Dallas, TX, for Plaintiff.

Dylan David Smith, Matthew John O'Hara, Freeborn & Peters LLP, Chicago, IL, Raymond W. Martin, Wheeler Trigg O'Donnell LLP, Denver, CO, for Defendants SPINS, LLC, DAAP, LLC.

James Peter Denvir, III, Michael Scott Mitchell, Boies Schiller Flexner LLP, Washington, DC, Kenneth F. Rossman, IV, Lewis Roca Rothgerber Christie LLP, Denver, CO, for Defendant Information Resources, Inc.

### ORDER DENYING DEFENDANTS' JOINT MOTION TO STAY DISCOVERY

S. Kato Crews, United States Magistrate Judge

**\*1** This matter is before the Court upon referral of Defendants' Joint Motion to Stay Discovery and Pretrial Deadlines. [Dkt. 41.] Defendants seek to stay discovery pending a ruling on their respective motions to dismiss Plaintiff's Complaint for lack of standing under Fed. R. Civ. P. 12(b)(3), and failure to state a plausible claim under Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the Motion. [Dkt. 45.]

The Court, after reviewing the Motion, the response in opposition and Defendants' reply, the case docket, and applicable law, DENIES the Motion for the reasons discussed below.

### I. Procedural Background

In brief and as relevant here, this antitrust case arose after Plaintiff sued Defendants alleging they committed unlawful competitive practices under state and federal laws. [Dkt. 1.] Plaintiff then sought a temporary restraining order (TRO) and preliminary injunction (PI) against Defendants to stop them from prohibiting Plaintiff's use of Defendants' client data while servicing those clients. [Dkts. 10.] But the Court denied it. [1] [Dkt. 17.]

Subsequently, Defendants filed their motions to dismiss and their joint motion to stay discovery proceedings. [Dkts. 40-42.] Plaintiff opposes the Motion. [Dkt. 45.]

### II. Discussion

Defendants assert the Court should stay discovery pending its ruling on their motions to dismiss to avoid engaging in "notoriously expensive and burdensome" antitrust discovery because Plaintiff's claims will not survive their motions to dismiss. The Court disagrees that a stay is necessary.

Under the Federal Rules of Civil Procedure, a district court has the inherent power to administer its case docket in the interest of time, judicial economy, and the parties involved. *See Certain Underwriters at Lloyds, London v. Hartford Accident & Indemnity Co.*, 1:18-cv-01896-CMA-NYW, 2021 WL 5810712, at \*3 (D. Colo. Dec. 6, 2021) (the Federal Rules of Civil Procedure indirectly provide courts with inherent powers to stay a case). To determine whether a stay is proper, a court in this district may choose to weigh the following factors: (1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff from the delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Barrington v. United Airlines*, 565 F. Supp. 3d 1213, 1217 (D. Colo. 2021) (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 1:02-cv-01934-LTB-PA, 2006 WL 894511, at \*2 (D. Colo. Mar. 30, 2006)).

After considering the above factors in this case, the Court finds a stay is not warranted. First, Defendants' Motion does not directly address whether Plaintiff faces any potential prejudice by a delay. [2] Instead, Defendants say continuing

13

discovery based on Plaintiff's "flimsy foundation" of alleged antitrust violations weighs in their favor because the presiding judge previously denied Plaintiff's request for a TRO and Plaintiff's claims will not survive their motions to dismiss. But this District generally disfavors stays, and Defendants' mere filing of motions to dismiss which the Court may eventually grant is insufficient to permit a stay. *See Barrington*, 565 F. Supp. at 1217 (under Fed. R. Civ. P. 1, a court's role is to administer a just and speedy determination of an action; thus, stays should be the exception, not the rule); *Giuffre v. Marys Lake Lodge, LLC*, No. 11-cv-00028-PAB-KLM, 2012 WL 1361611, at *1 (D. Colo. Apr. 19, 2012) (it is within the Court's discretion to grant or deny a motion to stay).

**\*2** Moreover, the likelihood of Plaintiff's success (on the merits) is irrelevant to this Court's determination in considering the stay, especially when "motions to dismiss are denied far more often than they result in the termination of a case." [3] *Roueche v. U.S.*, No. 09-cv-00048-WDM-BNB, 2010 WL 420040, at *2 (D. Colo. Feb. 1, 2010); *cf. Barrington*, 565 F. Supp. 3d at 1217 (noting that a motion to stay "is not the appropriate context to argue the merits" of a motion to dismiss); *Breckenridge v. Vargo*, No. 16-cv-01176-WJM-MEH, 2016 WL 7015702, at *1 (D. Colo. Nov. 28, 2016) (pending a court's ruling of a dispositive motion can last several months or more and is insufficient to grant a stay on discovery).

Next, Defendants say staying discovery is appropriate to avoid a "gross undue burden" because other courts recognize that antitrust discovery is "notoriously expensive and burdensome." But the Court is unconvinced discovery in *this* antitrust case deserves any special recognition warranting a stay. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, at *2 (D. Colo. Sept. 8, 2011) (it is within the court's discretion to issue a protective order pending a ruling on a motion to dismiss, "[i]n an antitrust case, as in every case"); *cf. Prison Legal News v. Fed. Bureau of Prisons*, No. 15-cv-02184-RM-STV, 2017

WL 10619942, at *12 (D. Colo. Feb. 23, 2017) (denying defendant's motion to stay discovery because "jurisdictional and sufficiency of allegations issues are frequently raised in motions to dismiss" and thus insufficient to permit a stay). Rather, the Court agrees with Plaintiff that Defendants fail to show their burdens exceed the usual burdens on litigants in any case. *See SOLIDFX, LLC*, 2011 WL 4018207, at *3 (declining to stay discovery in an antitrust case because defendants failed to adequately show any specific discovery was "substantially greater" than required); *Prison Legal News*, 2017 WL 10619942, at *13 (same); *see also Chavez v. Young Am. Ins. Co.*, 1:06-cv-02419-PSF-BNB, ⚑ 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) (there is no special burden on a defendant because of the inherent burden that exists when sued).

Finally, although Defendants argue that staying discovery favors both public and non-party interests, these factors are arguably neutral because while Defendants point to specific non-party witnesses, there is always some burden on non-parties in litigation. *See SOLIDFX, LLC*, 2011 WL 4018207, *4 (even non-parties face some burden, and thus insufficient to justify staying discovery even when defendants argued that deposing the non-parties may prove unnecessary if the Court eventually granted the motion to dismiss).

For these reasons, the Court finds Plaintiff's interests in proceeding expeditiously with this matter and the potential prejudice to Plaintiff from the delay outweigh any burdens on the Defendants. The Court further finds it is not inconvenienced by the case proceeding. And, the public and non-party interests do not weigh in favor of a stay.

Therefore, the Motion is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17416656

---

## Footnotes

1     Plaintiff withdrew its motion requesting a PI after the Court denied the request for a TRO. [Dkts. 17, 19.]

2     The Court did not consider Defendants' newly raised arguments, in their reply brief, for why Plaintiff would not be substantially prejudiced by the requested stay. *See generally Civil Rights Educ. & Enf't Ctr. v. Sage*

*Hosp. Res. LLC*, 222 F. Supp. 3d 934, 938 (D. Colo. 2016) (declining to consider new arguments raised in a reply brief).

3      Notably, Plaintiff based the request for a TRO on only its state law claims for tortious interference. *See* [Dkt. 10 n. 1.]

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 17 of 168

Edge196 LLC v. Jointer, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 4027696
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

EDGE196 LLC and Jaikrishna Patel, Plaintiffs,

v.

JOINTER, INC. and Jude G. Regev, Defendants.

Civil Action No. H-20-3417
|
Signed 01/22/2021

**Attorneys and Law Firms**

Vineet Bhatia, Susman Godfrey LLP, Houston, TX, Jenna G. Farleigh, Suaman Godfrey LLP, Seattle, WA, for Plaintiffs.

Mo Taherzadeh, Taherzadeh, PC, Houston, TX, for Defendants.

## ORDER DENYING STAY OF DISCOVERY

Peter Bray, United States Magistrate Judge

**\*1** Pending before the court is Defendant's Opposed Motion to Stay Discovery. (D.E. 26.) The motion is DENIED.

Edge196 and Jaikrishna Patel have sued the remaining Defendants, Jointer, Inc. and Jude G. Regev for breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentations and omissions. Plaintiffs also seek a declaratory judgment. (D.E. 31.) Defendants have filed a motion to dismiss the complaint for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. (D.E. 35.) Defendants seek a stay of discovery pending the resolution of the pending dispositive motion.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order to stay discovery. Fed. R. Crim. P. 26(c). While in some circumstances a motion to stay discovery pending the outcome of a motion to dismiss is appropriate, a stay is certainly not the general rule. See Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc., No. 3-08-CV-0774-L, 2008 WL 2930482 at *1 (N.D. Tex. July 23, 2008) (noting that "such a stay is the exception rather than the rule").

Defendants urge two main points in support of a stay. First, Defendants argue that this case will ultimately be dismissed when the court rules on the pending motion and therefore any efforts to exchange discovery will be a waste of time and resources. The court will not express any opinion on the ultimate merits of the pending motion to dismiss but notes, after a brief review of the filings, that the outcome of the motion is not obvious. Moreover, Plaintiff explains that there are disputed jurisdictional facts upon which discovery is warranted. Thus, the pendency of a motion to dismiss is not, under the specific facts of this case, sufficient to show good cause for a blanket cessation of discovery.

Defendants further argue that the discovery requests served upon them and several third parties are overly broad, unduly burdensome, and seek confidential information. The court notes that a significant volume of discovery has already been turned over, and that no motions for protective order or to quash have been filed. If the discovery Plaintiffs seek is, in fact, inappropriate, there are remedies that Defendants can seek short of a full stay of discovery. The parties are encouraged to meet and confer about the pending discovery requests, and alert the court by motion if a resolution cannot be reached.

For these reasons, the motion to stay discovery (D.E. 26) is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4027696

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERTHA M FONTENOT, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-3503 |
| | § | |
| CITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTION TO STAY

### I.

On October 15, 2013, the defendants, the City of Houston and Jane Doe Defendant 1, filed a motion to stay this case. The Court initially granted the motion to stay on November 7, 2013, but upon the plaintiffs' request for reconsideration, vacated the order and permitted the plaintiffs to file a response to the motion. The plaintiffs filed their response on December 10. On December 19, 2013, the Court again stayed the case until such time as it could consider the plaintiffs' response.

The Court, having fully considered the issues raised in the motion to stay and the response thereto, lifts the stay imposed in its December 19, 2013, determining that the motion to stay should be denied.

### II.

The plaintiffs were convicted, by the City of Houston's Municipal Court, for violation of Tex. Transp. Code § 521.025. That statute provides that a person operating a motor vehicle must have in his/her possession a driver's license appropriate for the type of vehicle being operated. A conviction for this offense, however, does not subject the person to a surcharge. *See* Tex. Transp. Code § 708.001 *et. seq.* Nevertheless, the plaintiffs, and perhaps thousands of other persons

convicted of violating § 521.025, were assessed a surcharge by the state of Texas.  It is undisputed that convictions under § 529.025 are not subject to the surcharge called for in § 708.001 *et seq.* Nevertheless, the City reported the plaintiffs and others convicted of failing to display a valid license as though they had been convicted under § 521.021, a surchargeable offense.

The City of Houston's motion to stay is based on the four factors that a court considers in evaluating a motion to stay. *See Nken v. Holder*, 556 U.S. 418, 434-35 (2009); *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).  Having evaluated to City's motion,  the Court is of the opinion that the City has not made a sufficiently strong showing that it is likely to succeed on the merits of the case. *See Weingarten Realty Investors,* 661 F.3d at 910.

### III.

In four argument points, and relying on arguments in its motion to dismiss, brought pursuant to Fed. R. Civ. Pro., Rules 12(c) and 12(b)(1), the City argues that the plaintiffs' pleadings:  (a) do not identify a City policy maker responsible for the alleged violative act; (b) do not identify a municipal policy or custom; (c) do not support a finding that a policy was the "moving force" behind the alleged constitutional violation; and (d) do not state an *ultra vires* claim against Doe over which this Court has subject matter jurisdiction.

The Court need not address the merit of the plaintiffs underlying claims, or the City's motion to dismiss, in order to resolve the City's claim that the suit should be stayed.  The Court is of the opinion that the plaintiffs' second amended class action complaint speaks sufficiently to the pleadings issue thereby overcoming at least one of the City's alleged missing elements in the plaintiffs' § 1983 suit.

## IV.

In this second Amended Complaint, the plaintiffs plead that the "policy" at issue is the City's "official policy" adopted and/or ratified by City Council. In addition, the plaintiffs assert: (a) the system adopted was fraught with problems that led to litigation between the City and its chosen contractor; (b) there is no evidence that the City tested the system before implementation; (c) the City, through its chosen "group," reviewed the program to ensure proper programming; (d) that the incorrect programming was intentional and under the instruction of the city attorney; (e) the plaintiffs could not discern from plea papers whether they were cited for "failure to possess" or "failure to display", hence, they could not correct the City's error; (f) no review process was in place to catch errors or correct faulty data; and (g) after suit was filed, the City destroyed critical evidence by permitting the "back-up system" to be overwritten without preservation. As a consequence, the plaintiffs argue their "due process" rights were and continue to be violated.

## V.

Assuming these factual allegations to be true, the plaintiffs have stated a "case or controversy." *Bell Atl. Corp. v.* Twombly, 550 U.S. 544, 555 (2007). Additionally, these pleadings satisfy the elements of a § 1983 cause of action, *i.e.*, policymaker, policy, indifference, intentionality and causal connection. [Citations omitted.] Therefore, the City's motion to stay is Denied.

It is so Ordered.

SIGNED on this 9th day of January, 2014.

Kenneth M. Hoyt
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

        vs.

ABBVIE, INC., et al.,

        Defendants.

**Case Number : 1:14-CV-5151-HB**

## Fed. R. Civ. P. 26(f)(2) Report to the Court

Plaintiff Federal Trade Commission and Defendants AbbVie, Inc., Abbott Laboratories, Unimed Pharmaceuticals, LLC, Besins Healthcare, Inc., and Teva Pharmaceuticals USA, Inc. (collectively, "the Parties") respectfully submit this joint report pursuant to Rule 26(f)(2) of the Federal Rules of Civil Procedure. This joint report also incorporates topics identified in Local Civil Rule 16.1(b), Rules of the United States District Court for the Eastern District of Pennsylvania, and in this Court's Policies and Procedures Relating to Pretrial Procedure in Civil Cases.

## BACKGROUND

## Plaintiff's Preliminary Statement

The Federal Trade Commission filed Civil Action No. 14-5151 (HB) in the U.S. District Court for the Eastern District of Pennsylvania on September 8, 2014, alleging that defendants AbbVie, Inc., Abbott Laboratories, Unimed Pharmaceuticals, LLC, Besins Healthcare, Inc., and Teva Pharmaceuticals USA, Inc. engaged in a multifaceted anticompetitive scheme to obstruct

entry of lower-priced versions of AbbVie's testosterone replacement drug AndroGel. In response to the competitive threat posed by potential rivals Teva and Perrigo in 2011, AbbVie and Besins filed sham patent infringement lawsuits to trigger a regulatory provision that would block approval of the generics' products, thereby forestalling competition for up to 30 months. At the time of filing, AbbVie and Besins knew that the generics' products contained a different key ingredient than AndroGel's and that their asserted "doctrine of equivalents" infringement theory directly contradicted the repeated claims of non-equivalence they had made in other venues, including to the PTO and the FDA. Indeed, Teva filed an antitrust counterclaim alleging that the infringement action constituted sham litigation.

When the Teva litigation moved more quickly than expected and Teva's victory appeared close at hand, AbbVie decided to use its monopoly profits to buy the protection from competition that its patent could not provide. To secure Teva's agreement to settle the AndroGel infringement suit and refrain from launching its competing product for several years, AbbVie compensated Teva with an authorized generic side deal for an unrelated cholesterol drug called TriCor. Based on these facts, the FTC's complaint alleges two violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a): Count One charges that AbbVie and Besins unlawfully maintained the AndroGel monopoly through a course of conduct that included filing sham patent infringement lawsuits. Count Two alleges that AbbVie's settlement of the sham lawsuit with Teva was an illegal restraint of trade. The FTC seeks a final court judgment declaring that defendants' conduct violates Section 5(a) of the FTC Act, ordering ancillary equitable relief including restitution and disgorgement to remedy the injury caused by defendants' violations, and permanently enjoining them from engaging in similar anticompetitive tactics in the future.

2

The FTC's general position on the proposed case schedule is that prompt commencement of discovery is essential to obtain effective equitable relief for the benefit of consumers who have been forced to pay hundreds of millions of dollars more for AndroGel as a result of Defendants' conduct.

## Defendants' Preliminary Statement

In Spring and Fall 2011, respectively the AbbVie Defendants and Besins initiated patent litigation against Teva and Perrigo Pharmaceuticals, Inc., two other pharmaceutical companies that had filed applications to sell competing versions of the AbbVie Defendants' AndroGel product. The Perrigo litigation settled on December 8, 2011 before Perrigo responded to the complaint, and the FTC does not challenge the terms of that settlement. The Teva litigation settled on December 21, 2011, after the Court declined to grant Teva's motion for summary judgment, had ordered that fact and expert discovery proceed, and scheduled a trial on Teva's non-infringement defense for May of 2012. The Teva settlement provided Teva a license to sell its product more than six years before the patent at issue in the litigation expires. As a result of the parties' settlement, the patent case was dismissed on January 3, 2012.

The FTC initiated an investigation of the litigations and, after the relevant parties provided the settlements to the FTC pursuant to the federal reporting statute, expanded its investigation to include those as well. In that investigation, the FTC engaged in substantial pre-Complaint discovery, including taking investigational depositions of the parties' representatives and issuing numerous Civil Investigative Demands and document subpoenas, from which the FTC obtained almost 900,000 pages of documents. On September 8, 2014, the FTC filed the Complaint in this matter alleging two counts. Count I, which is against the AbbVie Defendants and Besins only, alleges that they engaged in sham patent litigation. Count II, which is against the AbbVie

Defendants and Teva, alleges that Defendants' settlement agreement constitutes an unreasonable restraint of trade.

On November 13, 2014, Defendants filed a motion to dismiss Count II of the Complaint, as well as Count I to the extent it relies on the settlement agreement subject to Count II. The FTC filed its opposition to Defendant's motion to dismiss on December 12, 2014. Defendants' reply brief in support of their motion to dismiss is currently due on January 9, 2015.

The Defendants named in Count I of the Complaint also plan to file a summary judgment motion in early January with respect to that Count.

Defendants address each specific topic enumerated by Rule 26(f) below and believe that negotiating appropriate protective and discovery-related orders is appropriate now:

- negotiation of an appropriate protective order governing production of confidential information,

- negotiation of a stipulation on the extent of discovery of experts,

- negotiation of a stipulation regarding inadvertently disclosed privileged information,

- negotiation of a stipulation regarding electronically stored information (ESI), and

- negotiation of a protocol for avoiding duplicative discovery efforts.

However, Defendants' general position is that considerations of efficiency and judicial economy dictate that all discovery in this case should be deferred pending resolution of (1) the motions to dismiss, which, if granted, would dismiss all claims against the Teva Defendants and would greatly limit the claims against the other defendants, and (2) the motion for summary judgment, except to the extent that the Court orders discovery under a Rule 56(d) showing by the FTC. If any claims survive those motions, the Court should then more generally address the scope and timing

4

of discovery. Defendants look forward to addressing the reasons for staying further discovery more fully during a conference with the Court and would be happy to provide separate briefing on the issue if the Court determines that it would be helpful.

**THE PARTIES' PROPOSALS**

The Parties conducted a Rule 26(f) conference on December 16, 2014, by telephone conference. The Parties report as follows:

1.    **Motions**

On September 18, 2014, and November 10, 2014, this Court entered Orders (Dkt. Nos. 8 and 35) setting forth the following schedule:

| | |
|---|---|
| Defendants shall answer or otherwise respond to the Complaint | November 12, 2014 |
| Plaintiff shall file any opposition to a motion to dismiss | December 12, 2014 |
| Defendants shall file any reply | January 9, 2015 |
| Defendants shall answer the Complaint | 14 days after this Court's decision on defendants' motion to dismiss |

2.    **Initial Disclosures**

The Parties do not agree with respect to initial disclosures.

Plaintiff proposes that the parties will exchange the information required by Fed. R. Civ. P. 26(a)(1) by January 16, 2015.

Defendants propose that initial disclosures be exchanged with respect to any remaining claims (if any) within fourteen days of a ruling on Defendants' initial motions.

5

3. **Scope of Discovery**

The Parties do not agree on the timing and scope of fact discovery.

a. **Timing of Discovery**

Plaintiff proposes that, except for requests for admissions (including requests for admissions for the authentication and admissibility of exhibits), full fact discovery shall commence on January 16, 2015, and last nine months. Prompt commencement of discovery is necessary and warranted in this case. First, a delay in discovery, as Defendants propose, is inappropriate given the significant ill-gotten gains accruing to Defendants on a daily basis and the important public interests implicated by Defendants' anticompetitive conduct and misuse of government processes. Second, a delay in the discovery schedule could prejudice the FTC's ability to gather and preserve relevant evidence, especially if, for example, employees with responsibility for the products at issue change employers or otherwise become indisposed while a stay is pending. Third, Defendants have moved only for a partial dismissal of the complaint in this case and staying discovery is "rarely appropriate when the pending motion will not dispose of the entire case." *Keystone Coke Co. v. Pasquale*, No. 97-cv-6074, 1999 WL 46622, at *1 (E.D. Pa. Jan. 7, 1999). Finally, the fact that the FTC conducted a targeted pre-complaint investigation is not a reason to stay or limit the scope of discovery in this litigation. *See, e.g., SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the [agency] had already conducted a pre-filing investigation . . . 'there is no authority which suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation into the fact underlying its case.'").

Defendants propose that fact discovery should be deferred pending a conference with the Court following its ruling on Defendants' initial motions. Defendants propose that once fact

discovery begins, it should last twelve months from the start date. The FTC already has obtained

key documents in this matter, as well as the testimony of several witnesses under oath. The FTC

also waited more than two and a half years after the agreements at issue were signed to initiate this

lawsuit. Moreover, if the motion to dismiss were granted, it would result in complete dismissal of

the Teva defendant, and the contemplated summary judgment motion would address the remainder

of the claims against the other defendants. For all these reasons, deferring discovery for the limited

additional time that would be required for the Court to rule maximizes efficiency and creates no

meaningful prejudice to the FTC.

The Parties agree that they shall serve subpoenas and discovery requests sufficiently in

advance of the discovery deadlines and that all responses or objections will be due on or before the

relevant dates, except as provided in Fed. R. Civ. P. 29(a).

The Parties request regular status conferences with the Court to facilitate the resolution of

discovery issues and to obtain rulings from the Court in an efficient way. Plaintiff suggests

scheduling a call every 30 days; Defendants suggest that initially scheduling a call every 60 days is

sufficient.

### b. Phased Discovery

The Parties agree that fact discovery precedes expert discovery.

### c. Requests for Production

The Parties agree that the production of paper and electronic documents shall be completed

8 weeks before the completion of fact discovery.

Plaintiff proposes that there should be no deviation from the number of requests for the

production of documents that any party may serve provided by Fed. R. Civ. P. 34.

7

Defendants believe that the number of requests for the production of documents should be limited to no more than 50 by each side (*i.e.*, 50 by Defendants (as a group) and 50 by Plaintiff).

Plaintiff proposes that parties make rolling productions of responsive documents with the first such production made within sixty (60) days of service of the requests. Any party unable to make an initial production of responsive documents within 60 days may move for relief from this provision for good cause, except that no motion shall be necessary if the Parties agree among themselves. Privilege logs for each production must be served within 14 days of any document production.

Defendants agree with Plaintiff's proposal that the Parties produce documents in response to discovery requests on a rolling basis to the extent feasible. Defendants do not believe it necessary or even possible to set specific timelines for each document production.

Defendants also agree that privilege logs should be served on a rolling basis, but Defendants do not believe it is possible, or appropriate, to require that all such privilege logs be served within 14 days following a document production.

The Parties agree that all documents and associated privilege logs produced to the FTC in connection with the investigation styled *In the Matter of Abbott Laboratories*, FTC File No. 121-0028, will be deemed produced in this litigation upon entry of a Protective Order in this litigation. The continued applicability of any prior confidentiality designations will be provided for in the Protective Order.

### d. Interrogatories

Although Defendants believe any consideration of this question is premature, as the scope of discovery will depend in large part on the contours of the case after this Court's ruling on the

8

motion to dismiss, the Parties at this stage are in agreement that the limits on interrogatories set forth in Fed. R. Civ. P. 33(a) are appropriate.

### e. Requests for Admission

Plaintiff proposes that there should be no deviation from the number of requests for admission that any party may serve provided by Fed. R. Civ. P. 36.

Defendants believe any consideration of this question is premature, as noted above. In any event, Defendants propose that requests for admission should be subject to the same limitations on interrogatories as set forth in Fed. R. Civ. P. 33(a).

### f. Depositions

Defendants believe that any consideration of this question is premature, as noted above, but the Parties at this stage are in agreement that depositions should be limited to 30 depositions per side (*i.e.*, Plaintiff may notice 30 depositions and all Defendants combined may notice 30 depositions). The per-side deposition limit shall include depositions of third parties.

The Parties agree to abide by the presumption expressed in Fed. R. Civ. P. 30(d) that a deposition's duration be limited to one day of seven hours, but each party reserves the right to seek more time for certain witnesses.

The Parties agree that any deposition taken pursuant to Fed. R. Civ. P. 30(b)(6) will be treated like any other deposition. If a 30(b)(6) deposition requires more than seven hours to complete, it will count as more than one deposition. However, the fact that a party designates more than one witness to testify on topics listed in the 30(b)(6) notice alone does not mean that a 30(b)(6) deposition will count as more than one deposition. The Parties agree that the deposition of an individual deposed in both their personal capacity and as a corporate designee for Rule 30(b)(6) topics shall count as a single deposition as long as it is completed in seven hours. The Parties will

9

use their best efforts to ensure that an individual will have to sit only once for a deposition. Plaintiff and Defendants reserve the right to seek leave of court to extend the presumptive seven hour duration for a 30(b)(6) deposition if the production of multiple designees unnecessarily extends the time needed to complete the noticed topics.

Plaintiff and Defendants reserve the right to seek leave of court to take additional depositions of witnesses identified during the discovery process.

The Parties agree that expert depositions are not subject to the provisions and limitations of this subparagraph.

### g. Protective Order

The Parties agree that a protective order is necessary to safeguard confidential information concerning Defendants' and third parties' business information. The Parties agree to meet and confer regarding a protective order governing the confidentiality of documents in this litigation and to submit a joint proposed order by February 6, 2015, for the Court's consideration. Any disagreement between the Parties regarding the content of the proposed protective order shall be identified in the submission to the Court, which will include a brief statement of each party's position. The Parties agree that a lack of protective order shall not prohibit or delay the production of materials in this litigation and that such materials shall be produced on an outside counsel only basis until the entry of a protective order.

### h. Electronically Stored Information

The Parties agree to address issues concerning electronically stored information ("ESI") consistent with Fed. R. Civ. P. 26 and Fed. R. Civ. P. 34. The Parties will meet and confer to develop a joint stipulation governing the scope of preservation of evidence and the format and protocols for the production of ESI to be submitted on or before February 6, 2015, for the Court's

consideration. Any disagreement between the parties regarding the content of the proposed ESI stipulation shall be identified in the submission to the Court, which will include a brief statement of each party's position.

4.     **Experts**

Subject to the following paragraphs, the Parties propose no modification of the requirements of Fed. R. Civ. P. 26(a). Although the Parties largely agree on the structure of expert discovery, the Parties disagree on the timing for expert discovery.

    **a.   Expert Reports**

The Parties agree to disclose the identity of any expert witnesses as required by Fed. R. Civ. P. 26(a)(2).  The Parties agree that there shall be a simultaneous exchange of expert reports, and then a simultaneous exchange of rebuttal expert reports, followed by depositions of the experts.

Plaintiff proposes the Parties exchange expert reports required by Fed. R. Civ. P. 26(a)(2)(B) four weeks after the close of fact discovery.

Defendants propose the Parties exchange expert reports six weeks after the close of fact discovery.

    **b.   Expert Rebuttal Reports**

The Parties agree to exchange any expert rebuttal reports six weeks after the exchange of initial expert reports.

    **c.   Expert Depositions**

The Parties agree to complete expert depositions eight weeks after the exchange of rebuttal expert reports.

5.    **Settlement**

The Parties do not believe that there is a meaningful prospect of settlement at this time. The Parties agree to meet and confer as discovery proceeds and the case develops and report to the Court regarding the appropriateness of settlement discussions and potential mechanisms to facilitate such discussions.

6.    **Summary Judgment**

The Parties disagree on the deadlines for filing summary judgment and *Daubert* motions.

Plaintiff proposes that summary judgment and *Daubert* motions be filed no later than thirty days after the close of all discovery as provided by Fed. R. Civ. P. 56(b).

Defendant proposes that summary judgment and *Daubert* motions be filed no later than sixty days after the close of expert discovery.

Plaintiff and Defendants agree that absent agreement or further order of the court on a different briefing schedule, any opposition or Rule 56(d) response shall be filed within 45 days from the filing of such motions, and replies in support of summary judgment and *Daubert* motions shall be filed within 30 days of the filing of oppositions.

7.    **Pretrial Conference**

The Parties disagree on the timing for a pretrial conference.

Plaintiff requests that the Court schedule a pretrial conference at the Court's convenience within six weeks from the completion of summary judgment briefing after the close of all discovery.

Defendants propose that the date for the pretrial conference be determined by the Court based on the time frame the Court anticipates for hearing and determining summary judgment and *Daubert* motions.

8.    **Trial Date**

The Parties agree that the Court set a trial date following the pretrial conference.

9.    **Jurisdictional Defects, If Any**

The Parties do not anticipate that issues concerning jurisdictional defects will arise in this matter, but reserve the right to raise the issue pursuant to the Federal Rules of Civil Procedure.

10.    **Service**

The Parties do not anticipate that issues concerning service will arise in this matter, but reserve the right to raise the issue pursuant to the Federal Rules of Civil Procedure. The Parties agree that all filings will be served by electronic mail.

11.    **Joinder of Parties and Amendment of Pleadings**

The Parties do not anticipate that additional parties need to be joined or that amendments to the complaint are necessary, but Plaintiff reserves the right to amend the complaint pursuant to Fed. R. Civ. P. 15.

12.    **Information Not Subject to Discovery**

The Parties will meet and confer to develop joint stipulations governing the categories of information exempt from discovery, to be submitted on or before February 6, 2015, for the Court's consideration. The stipulations will include an expert stipulation, and an agreement on the logging and inadvertent production of privileged documents. Any disagreement between the Parties regarding the content of the proposed stipulations shall be identified in the submission to the Court, which will include a brief statement of each party's position.

13.    **Magistrate Jurisdiction**

The Parties do not consent to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

14. **Other Supplemental Proposals**

The Parties agree that each party shall make reasonable efforts to produce all third party

discovery to opposing counsel within five (5) business days of receipt.

*** 

[Remainder of page intentionally left blank]

14

|  | **Plaintiff's Proposal** | **Defendants' Proposal** |
|---|---|---|
| Answer or other response to complaint | 11/12/2014 | 11/12/2014 |
|     Opposition, if any | 12/12/2014 | 12/12/2014 |
|     Reply, if any | 01/09/2015 | 01/09/2015 |
| Rule 26(f) conference | 12/16/2014 | 12/16/2014 |
| Joint 26(f) report | 12/23/2014 | 12/23/2014 |
| Initial disclosures | 01/16/2015 | Following the Court's decision on initial motions |
| Start of fact discovery | 01/16/2015 | Following the Court's decision on initial motions |
| Production deadline for paper/electronic discovery | 08/21/2015 (8 weeks prior to the close of fact discovery) | 8 weeks prior to the close of fact discovery |
| Close of fact discovery | 10/16/2015 (9 months following the start of fact discovery) | 12 months following the start of fact discovery |
| Exchange expert disclosures and reports | 11/13/2015 (4 weeks following the close of fact discovery) | 6 weeks following the close of fact discovery |
| Exchange any expert rebuttal reports | 12/28/2015 (6 weeks following the exchange of expert reports) | 6 weeks following the exchange of expert reports |
| Close expert depositions | 02/22/2016 (8 weeks following the exchange of rebuttal reports) | 8 weeks following the exchange of rebuttal reports |
| Dispositive motions | 03/23/2016 (30 days following the close of expert discovery) | 60 days following the close of expert discovery |
| Opposition | 05/09/2016 (45 days following service of opening motions) | 45 days following service of opening motions |
| Reply | 06/08/2016 (30 days following service of opposition motions) | 30 days following service of opposition motions |
| Pre-Trial conference | Within 6 weeks of completion of summary judgment briefing | Following the Court's decisions on dispositive motions |
| Trial | To be determined by the Court | To be determined by the Court |

15

Dated: December 23, 2014

Respectfully submitted,

/s/ Patricia M. McDermott

Markus H. Meier
Patricia M. McDermott
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2569
pmcdermott@ftc.gov

Counsel for Plaintiff

/s/ Joseph Wolfson

Joseph Wolfson (ID #44431)
STEVENS & LEE, P.C.
620 Freedom Business Center
Suite 200
King of Prussia, PA  19406
(610) 205-6001
jwo@stevenslee.com

Jay P. Lefkowitz, P.C. (pro hac vice)
Gregory L. Skidmore  (pro hac vice)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC  20005
(202) 879-5000
lefkowitz@kirkland.com
greg.skidmore@kirkland.com

Christopher T. Holding (pro hac vice)
Sarah K. Frederick (pro hac vice)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 570-1679
cholding@goodwinprocter.com

Counsel for Defendant Teva Pharmaceuticals USA,
Inc.

*/s/ Paul H. Saint-Antoine*
Paul H. Saint-Antoine (ID #56224)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700
paul.saint-antoine@dbr.com

*Counsel for Defendants AbbVie Inc., Abbott Laboratories, Unimed Pharmaceuticals, LLC, and Besins Healthcare, Inc.*

Jeffrey I. Weinberger  (pro hac vice)
Stuart N. Senator  (pro hac vice)
MUNGER TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
jeffrey.weinberger@mto.com
stuart.senator@mto.com

*Of Counsel for Defendants AbbVie Inc., Abbott Laboratories, and Unimed Pharmaceuticals, LLC*

Gregory E. Neppl  (pro hac vice)
FOLEY & LARDNER LLP
3000 K Street NW, Suite 500
Washington, DC 20007
Tel.: (202) 672-5451
gneppl@foley.com

*Counsel for Besins Healthcare, Inc.*

**Certificate of Service**

I hereby certify that on December 23, 2014, I filed the parties' Joint Rule 26(f) Report with the United States District Court for the Eastern District of Pennsylvania using the ECF system. I also served a copy of this report on all counsel of record via electronic mail.

/s/ Patricia M. McDermott
Patricia M. McDermott
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2569
pmcdermott@ftc.gov

Counsel for Plaintiff
Federal Trade Commission

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION      :       CIVIL ACTION
                        :
          v.                :
                        :
ABBVIE INC., et al.          :      NO. 14-5151

<u>FIRST SCHEDULING ORDER</u>

AND NOW, this 29th day of April, 2015, following a
status conference in the above-captioned matter and in
consideration of the joint report and proposed scheduling order
submitted by the parties, it is hereby ORDERED that:

1.     The parties shall file and serve, on or before
May 4, 2015, a joint proposed protective order governing the
confidentiality of information produced in the above-captioned
matter.

2.     Pending future order of court, the information
produced in this litigation may be disclosed only to outside
counsel of record, FTC trial counsel, and their respective
staffs. Such interim disclosures may be made only for purposes
of this litigation.

3.     All initial disclosures and requests for
production shall be served, noticed, and completed by May 15,
2015.

4.     Plaintiff shall file and serve, on or before
August 5, 2015, any motion challenging any claim of privilege

with respect to documents or information, including entries on the privilege logs deemed produced in this litigation, from <u>In the Matter of Abbott Laboratories</u>, FTC File No. 121-0028, <u>FTC v. Actavis</u>, No. 09-955 (N.D. Ga.), or <u>In re Androgel Antitrust Litigation (II)</u>, 09-2084 (N.D. Ga.) on which the parties are unable to reach agreement.

5.    Defendants shall file and serve, on or before August 19, 2015, any response in opposition to any such motion.

6.    The parties shall produce all paper and electronic documents on or before September 30, 2015.  Privilege logs shall be produced within 2 weeks of their associated document productions, with all privilege logs produced by September 30, 2015.

7.    All fact discovery shall proceed forthwith and continue in such a manner as will assure that all requests for, and responses to, discovery will be served, noticed, and completed by November 30, 2015.

8.    Plaintiff shall serve, on or before December 31, 2015, any reports of expert witnesses with respect to issues on which it has the burden of proof and any responsive reports of expert witnesses with respect to those declarations previously submitted by defendants in support of summary judgment (Doc. # 59).

9.    Defendants shall serve, on or before February 1, 2016, any reports of expert witnesses with respect to issues on which they have the burden of proof and any supplemental or responsive reports of expert witnesses.

10.    Plaintiffs shall serve, on or before February 29, 2016, any rebuttal reports of expert witnesses limited to those issues raised in the expert reports of defendants served pursuant to paragraph 9 above.

11.    Any depositions of expert witnesses shall be noticed and completed on or before March 31, 2016.  No more than one deposition of any expert may be conducted without leave of court or agreement of the relevant parties.

12.    Any summary judgment motion or other dispositive motion, and any motion under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), together with supporting brief, shall be filed and served on or before April 30, 2016.

13.    Any responsive brief to any dispositive motion or any Daubert motion shall be filed and served on or before May 31, 2016.

14.    Any reply brief shall be filed and served on or before June 15, 2016.

15.  No brief filed in support of or in opposition to any motion shall exceed 25 pages in length without <u>prior</u> leave of court.

16.  Every factual assertion set forth in <u>any</u> brief shall be supported by a citation to the record where that fact may be found.

BY THE COURT:


<u>/s/ Harvey Bartle III</u>
                                                           J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | Master Dkt. No. 1:09-md-2084-TWT ALL CASES |

| | |
|---|---|
| FEDERAL TRADE COMMISSION, Plaintiff, vs. ACTAVIS, INC., et al., Defendants. | Case No. 1:09-cv-955-TWT |

**Discovery Order**

Upon consideration of the Plaintiffs' Joint Proposed Discovery Plan,

Defendants' Response to Plaintiffs' Joint Discovery Plan, arguments heard at the

status conferences on April 4, 2014 and May 16, 2014, and for good cause shown,

it is hereby ORDERED that the following case schedule and limits on discovery

shall apply to the above-captioned cases.

## I.     Case Schedule

| EVENT | DUE DATE |
|---|---|
| Discovery Opens | 4/4/2014 |
| Document Productions | The parties will produce documents in response to a discovery request on a rolling basis |
| Fact Discovery Closes | 3/5/2015 |
| Plaintiffs' Expert Reports to be served on Merits and Class Certification Issues | 4/16/2015 |
| Depositions of Plaintiffs' Experts on their Expert Reports on Merits and Class Certification Issues | 4/17/2015 to 5/15/2015 |
| Defendants' Expert Reports to be served on Merits and Class Certification Issues | 6/11/2015 (8 weeks after service of Plaintiffs' Expert Reports) |
| Depositions of Defendants' Experts on their Expert Reports On Merits and Class Certification Issues | 6/12/2015 to 7/10/2015 |
| Plaintiffs' Expert Reply Reports to be served on Merits and Class Certification Issues | 8/6/2015 (8 weeks after service of Defendants' Expert Reports) |
| Depositions of Plaintiffs' Experts on their Reply Reports | 8/7/2015 to 8/28/2015 |
| Expert Discovery Closes | 8/28/2015 |

1

| **EVENT** | **DUE DATE** |
|---|---|
| Rule 16.3 Conference | 8/28/2015 to 9/11/2015 (within 14 days after the close of discovery) |
| Summary Judgment Motions to be filed | 9/28/2015 (31 days after the close of discovery) |
| Oppositions to Summary Judgment Motions to be filed | 10/28/2015 (30 days from filing of Dispositive Motion) |
| Replies in Support of Summary Judgment Motions to be filed | 11/27/2015 (30 days from filing of Opposition) |
| Plaintiffs' Class Certification Motions to be filed | 12/4/2015 (7 days from filing of Summary Judgment Replies) |
| Defendants' Opposition to Class Certification Motions to be filed[*] | 1/18/2016 (45 days from filing of Class Certification Motions) |
| Plaintiffs' Replies in Support of Class Certification Motions to be filed | 3/3/2016 (45 days from filing of Oppositions to Class Certification Motions) |

## II. Written Discovery

The FTC may serve no more than 25 interrogatories on any other party. The

Direct Purchaser Plaintiffs and the End Payor Plaintiffs collectively may serve no

more than 25 interrogatories on any other party. Defendants each may serve no

---

[*] If the Court grants any motion permitting Defendants to file a supplemental expert report on class certification, the following schedule modifications apply:

- Defendants' supplemental expert report will be served no later than 1/18/2016;
- Deposition of Defendants' expert on his/her supplemental expert report will occur between 1/19/2016 and 2/11/2016.

2

more than 25 interrogatories on the FTC and no more than 25 interrogatories on the Direct Purchaser Plaintiffs and the End Payor Plaintiffs collectively. Consistent with this Court's directive to coordinate discovery where possible, all parties will use their best efforts to avoid duplicative discovery.

## III.    Fact Depositions

Plaintiffs collectively and Defendants collectively may each notice the deposition of up to 40 fact witnesses.  Every seven (7) hours of a deposition noticed pursuant to Fed. R. Civ. P. 30(b)(6) shall constitute a single deposition regardless of the number of corporate representatives designated by a party or non-party.  The parties reserve the right to seek leave of the Court to take additional depositions of witnesses identified during the discovery process.

## IV.    Summary Judgment Motions

No party may depart from the date for filing summary judgment set forth in Section I above without first making a request and obtaining permission from the Court.

## V.    Expert Depositions

As provided in the case schedule above, Plaintiffs and Defendants are permitted to depose each other's experts after serving their respective reports.  Any party's expert addressing both class certification and merits issues will be subject to a two-day deposition.  If any party serves reply expert reports, the opposing

party shall be permitted to take an additional deposition of those experts for no more than three and a half (3.5) hours.

## VI.    Privilege Logs

The parties shall produce privilege logs within a reasonable time following service of each production.

**So ORDERED, this 11th  day of June, 2014.**

  /s/Thomas W. Thrash
Thomas W. Thrash, Jr.
United States District Judge

4

2018 WL 893803
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
Medford Division.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

ADEPT MANAGEMENT INC., et al, Defendants.

Civ. No. 1:16–cv–00720–CL

|

Signed 02/13/2018

**Attorneys and Law Firms**

Connor Shively, Krista K. Bush, Laura Marie Solis, Richard McKewen, Federal Trade Commission, Seattle, WA, for Plaintiff.

Adept Management, Inc., Adept Management, Inc., David Paul Lennon, Lennon & Klein, P.C., Express Publishers Service, Inc., Express Publishers Service, Inc. c/o Lennon & Klein, P.C., David B. Paradis, Brophy Schmor LLP, David B. Paradis, Brophy Schmor LLP, Medford, OR, Adam Alba, Pro Hac Vice, Eric K. Schnibbe, Pro Hac Vice, James Magleby, Pro Hac Vice, Magleby Cataxinos Greenwood, Salt Lake City, UT, Tyler J. King, Pro Hac Vice, The Franklin Square Law Group, Washington, DC, Kevin W. Bons, Beckley & Bons, Eugene, OR, James R. Kirchoff, Kirchoff Law Offices LLC, Grants Pass, OR, Kevin W. Bons, Beckley & Bons, Eugene, OR, Tyler J. King, Pro Hac Vice, Washington, DC, for Defendants.

Anchor Publishing Group, Inc., pro se.

Associated Publishers Network, Inc., pro se.

Atlas Business Consulting LLC, Atlas Business Consulting LLC, Eagle Point, OR, pro se.

Clarity Group, Inc., Clarity Group, Inc., Trail, OR, pro se.

Consolidated Publishers Exchange, Inc., Consolidated Publishers Exchange, Inc., Trail, OR, pro se.

Crown Resource Management LLC, Crown Resource Management LLC, Medford, OR, pro se.

Customer Access Services, Inc., pro se.

HCG, Inc., HCG, inc. c/o Lennon & Klein, P.C., Medford, OR, pro se.

Henry Cricket Group, LLC, pro se.

Publishers Payment Processing, Inc., Publishers Payment Processing, Inc. c/o Lennon & Klein, P.C., Medford, OR, pro se.

Magazine Clearing Exchange, Inc., pro se.

Magazine Link, Inc., pro se.

Maximillian, Inc., Maximillian, Inc., Medford, OR, pro se.

North West Data Services LLC, North West Data Services LLC, Eagle Point, OR, pro se.

PPP Magazines, Inc., PPP Magazines, Inc., Trail, OR, pro se.

Specialties, Inc., Specialties, Inc., Trail, OR, pro se.

Subscription House Agency, Inc., Subscription House Agency, Inc., Trail, OR, pro se.

United Publishers Exchange, Inc., pro se.

Wineoceros Wine Club, Inc., pro se.

Colleen M. Kaylor, Central Point, OR, pro se

Laura J. Lovrien, Eagle Point, OR, pro se.

Noel Parducci, Medford, OR, pro se.

Lydia J. Pugsley, Medford, OR, pro se.

William Strickler, Jacksonville, OR, pro se.

Linda Babb, Eagle Point, OR, pro se.

Shannon Bacon, Trail, OR, pro se.

## OPINION AND ORDER

MARK D. CLARKE, United States Magistrate Judge

**\*1** This case comes before the Court on a motion (#226) by the Hoyal defendants to bifurcate the issues in this case for trial. The Hoyal defendants assert that the preliminary issue that should be bifurcated and addressed first is "whether or not the mailers used to solicit newspaper subscriptions were deceptive."

## DISCUSSION

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Rule 42(b) "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). "In determining whether to bifurcate, courts consider a number of factors, including whether bifurcation would promote efficient judicial administration, promote convenience, simplify discovery or conserve resources, reduce the risk of juror confusion, and separability of the issues." Lam Research Corporation v. Schunk Semiconductor, 65 F.Supp.3d 863, 865 (N.D. Cal. 2014).

The Hoyal defendants move to bifurcate the case so that the alleged deceptiveness of the subject mailers is adjudicated first. Many of the cases cited by the defendants in support of their motion indicate that bifurcating liability from remedy issues can be cost and time efficient, and certainly this Court has seen instances where this is the case. The Hoyal defendants do not propose to bifurcate all questions of liability, however. Instead, they propose to limit the first phase of the Court's determination to whether or not the mailers used were "deceptive." The defendants claim that this is a narrow, discrete, and simple issue, which can be adjudicated quickly and may be dispositive of the case. The Court disagrees.

First, it is undisputed that the FTC's case will rest on the allegation that the defendants engaged in "unfair or deceptive acts or practices in or affecting commerce." See 15 U.S.C. § 45(a)(1). "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.' " F.T.C. v. Gill, 265 F.3d 944, 950 (9th Cir.2001) (citing F.T.C. v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir.1994)). Actual deception is not required for a Section 5 violation. Trans World Accounts, Inc. v. F.T.C., 594 F.2d 212, 214 (9th Cir.1979). Rather, Section 5 "only requires a showing that misrepresentations 'possess a

tendency to deceive.' " F.T.C. v. Commerce Planet, Inc., 878 F.Supp.2d 1048, 1073 (C.D.Cal.2012) (quoting Trans World Accounts, Inc., 594 F.2d at 214). Furthermore, the Court considers "the overall, common sense 'net impression' of the representation or act as a whole to determine whether it is misleading," and a Section 5 violation may still be found even if the fine print and legalese were technically accurate and complete. Commerce Planet, 878 F.Supp.2d at 1063 (citing Gill, 265 F.3d at 956) ); see also F.T.C. v. Cyberspace.Com LLC, 453 F.3d 1196, 1200 (9th Cir.2006) (stating that a representation "may be likely to mislead by virtue of the net impression it creates even though the [representation] also contains truthful disclosures").

**\*2** In this case, while the deceptiveness of the mailers is a key factor in the overall deceptiveness of the "practice" or business at issue, such a determination does not depend solely on the words used in each notice; the context of the mailers is just as important to liability. This includes whether or not defendants were authorized to offer or sell the subscriptions offered, whether or not the recipients were led to believe they owed money for existing subscriptions, and whether or not recipients who ordered subscriptions based on the mailers ever received the products as advertised. Such contextual considerations rely on information regarding the functional operation of the businesses at issue, and how the defendants interacted with each other and with the consumers—how they ran those operations—is at the heart of that question.

Indeed, unlike some of the cases cited by the defendants, here the complex questions regarding how the defendants are related, and how they operated individually and together, are not confined to issues of remedy, as suggested by the defendants. Instead, a significant amount of overlap exists between the facts the FTC will have to show to prove liability and the facts it will have to show to determine the appropriate remedy. Therefore, bifurcation would not be an efficient use of the Court's and the parties' resources.

Second, even if bifurcation would streamline separable issues of liability and remedy for trial, it would not simplify discovery, as claimed by the defendants. This case has already progressed through several phases of complicated discovery for the last two years. By now, the FTC, and, the Court presumes, all of the parties, have already completed a significant amount of the discovery necessary for issues of both liability and remedy. Thus, even if this motion were well

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 50 of 168

Federal Trade Commission v. Adept Management Inc., Not Reported in Fed. Supp. (2018)

taken, it would have been more appropriately posed at the start of this case.

Third, there is no risk of juror confusion in this case because it will be tried to the Court.

### ORDER

The motion for bifurcation (#226) is DENIED. Additionally the Court adopts, in part, the schedule proposed by the FTC, as indicated below. The parties should note two additional

dates on the list. First, if the FTC wishes to conduct additional depositions in this case, they must submit such a request by February 23.

Second, please note the date for "Requests to file Summary Judgment Motions." This deadline indicates that all parties will be required to request permission from the Court prior to filing a motion for summary judgment. Such request must be filed in writing and include a brief, no longer than three (3) pages, memorandum outlining the basis for the motion requested.

The Court adopts the following case schedule:

| | |
|---|---|
| FTC Request for add'l depositions | February 23, 2018 |
| Discovery Motions due | April 2, 2018 |
| Close of Fact Discovery | May 1, 2018 |
| Initial Expert Disclosures | May 15 |
| Requests to File Summary Judgment | May 25 |
| Status Conference | June 1 |
| Expert Rebuttals | June 15 |
| Close Expert Discovery | July 16 |
| Dispositive Motions due | Aug 3 |
| Pretrial Conference | October 22@ 10AM |
| Bench Trial | October 29, 2018 |

It is SO ORDERED and DATED this 13 day of February, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 893803

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | CASE NO.: 2:23-cv-01495-JHC<br><br>**PLAINTIFFS' MOTION TO BIFURCATE**<br><br>NOTE ON MOTION CALENDAR:<br>March 15, 2024<br><br>*ORAL ARGUMENT REQUESTED* |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT ...................................................................................................................... 2

I.      COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO SEPARATE

        LIABILITY AND REMEDY PHASES FOR PURPOSES OF CONVENIENCE AND

        JUDICIAL ECONOMY. ........................................................................................ 3

II.     BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE

        WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY....................... 6

III.    AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED

        FOR BIFURCATION. ............................................................................................ 8

CONCLUSION.................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*City of Anaheim v. S. Cal. Edison Co.*,
   955 F.2d 1373 (9th Cir. 1992) ........................................................................... 7

*Estate of Diaz v. City of Anaheim*,
   840 F.3d 592 (9th Cir. 2016) ............................................................................. 2

*F & G Scrolling Mouse, L.L.C. v. IBM Corp.*,
   190 F.R.D. 385 (M.D.N.C. 1999) .................................................................... 11

*Ford Motor Co. v. United States*,
   405 U.S. 562 (1972) ........................................................................................... 5

*FTC v. Meta Platforms, Inc.*,
   No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ..................................... 6

*Gaekwar v. Amica Mut. Ins. Co.*,
   2024 WL 85089 (W.D. Wash. Jan. 8, 2024) .................................................. 10

*Goldfarb v. Va. State Bar*,
   421 U.S. 773 (1975) ........................................................................................... 3

*Greening v. B.F. Goodrich Co.*,
   1993 WL 134781 (N.D. Ill. Apr. 23, 1993) .................................................... 11

*In re Data Gen. Corp. Antitrust Litig.*,
   490 F. Supp. 1089 (N.D. Cal. 1980) ................................................................. 3

*In re Google Play Store Antitrust Litig.*,
   No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 ............................... 6

*In re High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) ............................................................................. 4

*Hirst v. Gertzen*,
   676 F.2d 1252 (9th Cir. 1982) ........................................................................ 10

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
   2023 WL 5177501 (N.D. Ill. Aug. 11, 2023) ........................................... 4, 5, 7

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
   No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587 ................................. 11

*In re Master Key Antitrust Litig.*,
   528 F.2d 5 (2d Cir. 1975) ................................................................................... 3

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ........................................................................... 11

*NCAA v. Alston*,
 594 U.S. 69 (2021) ................................................................................... 9

*New York v. Microsoft Corp.*,
 224 F. Supp. 2d 76 (D.D.C. 2002) ......................................................... 10

*Oltz v. St. Peter's Cmty. Hosp.*,
 19 F.3d 1312 (9th Cir. 1994) .................................................................... 3

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
 20 F.4th 466 (9th Cir. 2021) .................................................................... 5

*Reines Distribs., Inc. v. Admiral Corp.*,
 257 F. Supp. 619 (S.D.N.Y. 1965) ....................................................... 4, 5

*Union Carbide Corp. v. Montell N.V.*,
 28 F. Supp. 2d 833 (S.D.N.Y. 1998) ........................................................ 4

*United States v. Am. Express Co.*,
 No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 ....................... 10

*United States v. Boeing Co.*,
 2023 WL 5836487 (W.D. Wash. Aug. 31, 2023) ...................................... 2

*United States v. Google LLC*,
 No. 1:20-cv-03010, (D.D.C. Dec. 6, 2021), Dkt. #264 ............................. 6

*United States v. Google LLC*,
 No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ......................... 6

*United States v. Grinnell Corp.*,
 384 U.S. 563 (1966) .................................................................................. 9

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) ........................... 5, 8

*United States v. U.S. Gypsum Co.*,
 340 U.S. 76 (1950) .................................................................................... 9

*Wall Prods. Co. v. Nat'l Gypsum Co.*,
 357 F. Supp. 832 (N.D. Cal. 1973) ........................................................... 3

*Yanni v. City of Seattle*,
 2005 WL 2180011 (W.D. Wash. Sept. 9, 2005) ..................................... 10

*Zivkovic v. S. Cal. Edison Co.*,
 302 F.3d 1080 (9th Cir. 2002) .................................................................. 2

## **Rules**

Fed. R. Civ. P. 42(b) ...................................................................................................... 2

## **Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (5th ed. 2020) ...................................................................... 3, 4

Charles A. Wright & Arthur R. Miller,
     *Federal Practice & Procedure* (3d ed. 2016) ........................................................ 3

## INTRODUCTION

Plaintiffs move to bifurcate this action into two separate proceedings: a trial solely on liability to be followed by a proceeding on remedies. By first addressing liability, Plaintiffs will be able to present a streamlined case focused on showing the Court how Amazon has violated the law and harmed competition to the detriment of shoppers and sellers. Once the Court finds Amazon liable, the Parties would then move to a remedy proceeding tailored to the Court's specific findings on liability. Bifurcation allows the Parties to make focused presentations at each stage, thereby reducing the overall burden on the Parties, the Court, and non-party witnesses alike. Given the efficiencies associated with proceeding in this manner, Plaintiffs respectfully ask this Court to order that the trial be bifurcated.

## BACKGROUND

Plaintiffs filed this suit to challenge the illegal course of exclusionary conduct Amazon deploys to block competition, stunt rivals' growth, and cement its dominance to the detriment of the tens of millions of American households who regularly shop on Amazon's online superstore and the hundreds of thousands of businesses who rely on Amazon to reach them. (¶¶ 3, 7.)[1] Plaintiffs allege that Amazon has illegally maintained monopoly power in two discrete but interrelated markets (¶¶ 117-19) through intricate schemes that span more than a decade (¶¶ 257-415). Plaintiffs collectively bring twenty claims against Amazon under the FTC Act, the Sherman Act, and state competition and consumer protection laws. (¶¶ 442-564.) Plaintiffs seek, among other relief, equitable relief necessary to "redress and prevent recurrence of Amazon's violations of the law" and "restore fair competition and remedy the harm to competition caused by Amazon's violations of the law," along with "any additional relief the Court finds just and proper."

---

[1] Citations in the form (¶ __) are to Plaintiffs' Complaint, Dkt. #114.

(Complaint, Dkt. #114 at 148-49.) Plaintiff States also seek equitable monetary relief and the costs of suit. (*Id.* at 149.)

While Plaintiffs and Amazon appear to agree that fact discovery should encompass both liability and remedy issues, Amazon opposed Plaintiffs' proposal "that trial should address only Amazon's liability under Section 5 of the FTC Act, Section 2 of the Sherman Act, and applicable state competition and consumer protection laws." (Joint Status Report, Dkt. #135 at 44-45.) Plaintiffs now move for bifurcation consistent with the Case Scheduling Order (Dkt. #159).

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) allows "the court [to] order a separate trial of one or more separate issues" "[f]or convenience, to avoid prejudice, or to expedite and economize." Rule 42(b) "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) ("It is clear that Rule 42(b) gives courts the authority to separate trials into liability and damages phases." (cleaned up)). In considering a motion for bifurcation, "[c]ourts weigh several factors, including convenience, prejudice, and judicial economy in determining whether to phase or bifurcate proceedings." *United States v. Boeing Co.*, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023). Bifurcation should "be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42(b) advisory committee's notes to 1966 amendment.

## ARGUMENT

Complex antitrust cases, like this one, are often bifurcated into separate liability and remedies proceedings to increase convenience and judicial economy. (§ I.) The rationale for bifurcation applies with particular force here given the scope of the allegations and the role the

Court's findings on liability will play in guiding the Parties' remedies arguments. (§ II.) Amazon's arguments against bifurcation are unpersuasive and actually underscore why bifurcation is especially appropriate here. (§ III.)

## I. COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO SEPARATE LIABILITY AND REMEDY PHASES FOR PURPOSES OF CONVENIENCE AND JUDICIAL ECONOMY.

Bifurcating liability and relief into separate proceedings in especially complex cases is a common and "obvious" application of Rule 42(b) because "liability must be resolved before damages are considered." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2390 (3d ed. 2016). Courts have often found complex antitrust cases well-suited for bifurcation due to the intricacy of the liability issues and the efficiencies in addressing each phase separately. *See id.* (noting that "a significant number of federal courts, in many different kinds of civil litigation, have ordered the questions of liability and damages to be tried separately, for example *in cases involving antitrust*" (emphasis added)); *accord Goldfarb v. Va. State Bar*, 421 U.S. 773, 778 (1975) (district court conducted bench trial "solely on the issue of liability" in case brought under the Sherman Act for injunctive relief and damages); *Oltz v. St. Peter's Cmty. Hosp.*, 19 F.3d 1312, 1313 (9th Cir. 1994) (bifurcated antitrust trial on liability and remedies); *In re Data Gen. Corp. Antitrust Litig.*, 490 F. Supp. 1089, 1099 (N.D. Cal. 1980) (same); *Wall Prods. Co. v. Nat'l Gypsum Co.*, 357 F. Supp. 832, 834 (N.D. Cal. 1973) (same); *see also, e.g.*, *In re Master Key Antitrust Litig.*, 528 F.2d 5, 15 (2d Cir. 1975) (recognizing that "bifurcated trials have frequently been employed with great success [including] in antitrust suits").

Resolving complex antitrust cases is often a significant undertaking. *See generally* 3B Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ("Areeda & Hovenkamp") ¶ 311a (5th ed. 2020) ("[A]n antitrust case may

involve so many issues, documents, witnesses, and lawyers as to defy comprehension . . . ."). Bifurcating remedy proceedings from the underlying resolution of liability allows the factfinder to address each of these complex issues independently, promoting the efficient development and presentation of evidence on the merits. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 666 (7th Cir. 2002) (Posner, J.) ("No doubt in view of the complexity of [this antitrust] case the judge will also want to bifurcate the trial, that is, to have a trial on liability first and only if the jury finds that the defendants violated the law to conduct a trial to determine the plaintiffs' damages."); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 5177501, at \*10-13 (N.D. Ill. Aug. 11, 2023) (recognizing that "antitrust cases are often strong candidates for bifurcation" given their complexity and granting motion to bifurcate trial into liability and damages phases in part to avoid "add[ing] another layer of complexity to an already complex trial"); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837-38 (S.D.N.Y. 1998) (ordering bifurcation to "[s]egment[] difficult issues of liability and damages" in antitrust case involving "voluminous evidence and difficult concepts lying at the crossroads of law and economics" where "[c]onfronting one complex set of issues at a time" would reduce potential confusion); *Reines Distribs., Inc. v. Admiral Corp.*, 257 F. Supp. 619, 621 (S.D.N.Y. 1965) ("The inherent complexity of an antitrust case is itself a factor promoting a separate trial of an issue in such a case where the result of the separate trial may simplify the litigation.").

Moreover, it is often efficient to address how a monopolist violated the law separately from how to appropriately remedy that violation given the wide variety of relief that may be necessary. Equitable relief may need to be much broader than simply ordering the monopolist to cease the illegal conduct. "The principal purpose of equitable relief" in monopolization cases "is not to punish violations but to restore competitive conditions—the 'undoing' of what the antitrust violation achieved." 3D Areeda & Hovenkamp ¶ 325c. Accordingly, if a district court concludes

that monopolization has occurred, "the available injunctive relief is broad" because the court must "terminate the illegal monopoly, deny to defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (en banc) (per curiam); *accord Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) (holding that antitrust relief must restore competition).

In order to efficiently carry out this broad mandate, courts often bifurcate complex antitrust cases to allow the remedies proceeding to be tailored to the specific violations found by the court. The court cannot craft appropriate injunctive relief until it knows "the wrong creating the occasion for the remedy." *Microsoft*, 253 F.3d at 107. Separate proceedings can thus be more efficient because the scope and specifics of any remedy depend on the scope and specifics of the court's liability determination. *Cf. id.* at 103-05 (vacating district court's remedy decree because court of appeals revised underlying bases of liability, requiring district court to reevaluate remedy based on new scope of liability). When proceedings are not bifurcated in cases with a broad scope, witnesses may have to testify about a range of potential remedies covering all possible liability outcomes. This could result in the parties litigating—and the court considering—remedies that may ultimately be foreclosed by the court's liability determinations, thereby reducing judicial economy. *See Kraft Foods*, 2023 WL 5177501, at *10 (bifurcation allows the parties and the court to focus on remedies that are "actually in play after [a] liability verdict"). And, as courts have recognized, bifurcation may obviate the need for a remedies proceeding altogether. *See, e.g.*, *Reines Distribs.*, 257 F. Supp. at 621 ("If plaintiff should lose on [liability], the issue[] of . . . damage[s] . . . will be out of the case and there will be neither duplication nor cumulation." (cleaned up)).

59

Given the benefits that bifurcation can bring, it is unsurprising that courts overseeing recent complex monopolization cases concerning online markets have bifurcated proceedings into bench trials on liability followed by separate tailored proceedings on remedies. *See United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), Dkt. #264 ("The Court finds that, to the extent necessary, holding separate trials on the issues of liability and remedies will be more convenient for the Court and the Parties, and will expedite and economize this litigation."); *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ("There will be a first phase that will address only the Defendant's liability under the antitrust laws. If the Court renders a decision finding the defendant liable, then the Court will hold a separate proceeding regarding any remedies for any violations of the antitrust laws that it finds."); *accord United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ("In the event plaintiffs obtain a jury verdict [in] their favor on liability and monetary damages, the court will promptly convene a status conference to discuss whether plaintiffs wish to pursue equitable relief based on the jury's verdict, what equitable relief plaintiffs intend to pursue, the schedule for exchanging expert reports addressing the specific equitable remedy or remedies being sought, the schedule for briefing by the parties, and a date for the hearing."); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 (noting court's intention to "hear from the parties' economist experts at [an] evidentiary hearing on the issue of an appropriate conduct remedy" following jury trial on liability that resulted in verdict in favor of plaintiff).

## II. BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY.

This case is broader in scope and complexity than a typical antitrust case. As such, the rationales related to convenience and judicial economy that courts have applied in other complex antitrust cases when ordering bifurcation weigh in favor of separate proceedings here.

As discussed above, remedying monopolization requires not only halting illegal conduct, but also restoring competition. (*See* § I.) To craft an appropriate remedy here, the Court will need to understand the mechanics of how Amazon has violated the law to fashion injunctive relief sufficient to return the markets to the states they would have been in absent Amazon's illegal conduct. The scope of the inquiry on remedies combined with the scope of Amazon's challenged practices heightens the benefits of holding a separate liability trial.

Plaintiffs allege Amazon has used many different programs, business units, and tactics to illegally maintain its monopolies in two separate but interrelated markets. Contractual price parity clauses, Select Competitor–Featured Offer Disqualification, Amazon Standards for Brands, Customer Experience Ambassadors, and a first-party anti-discounting algorithm all contribute to Amazon's long-term strategy of punishing online discounting. (¶¶ 272-304, 326-32.) Amazon also uses Prime eligibility, the Featured Merchant Algorithm, Fulfillment by Amazon, and Seller Fulfilled Prime to reduce seller multihoming. (¶¶ 351-60, 397-409.) And Amazon used Project Nessie to raise prices by manipulating other online stores' pricing algorithms. (¶¶ 416-32.) The Court must assess Amazon's tactics holistically and examine the cumulative impact of Amazon's unlawful behavior. *See City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) ("[I]t would not be proper to focus on the specific individual acts of an accused monopolist while refusing to consider their overall combined effects."); Plaintiffs' Opposition to Amazon's Motion to Dismiss, Dkt. #149 at 6-8. A separate trial on liability would allow the Court to make this holistic assessment in the context of focused presentations about how Amazon's various tactics fit together. Simultaneously evaluating remedy issues and Amazon's liability for its course of conduct, on the other hand, would "add another layer of complexity to an already complex trial." *Kraft Foods*, 2023 WL 5177501 at *11.

The number and variety of laws Amazon has violated also favors bifurcation. Several Plaintiff States allege that Amazon has engaged in deceptive acts or practices in addition to unfair and anticompetitive conduct. (¶¶ 513, 522(c), 541-52.) These claims differ from Plaintiffs' antitrust claims and will require independent analysis of applicable remedies. Certain Plaintiff States have also raised state law claims for equitable monetary relief, including disgorgement. (*See, e.g.*, ¶¶ 482(a), 507(a), 521(b), 523(b), 540, 552, 561.) Plaintiff FTC also alleges that Amazon has engaged in unfair methods of competition in violation of Section 5 of the FTC Act (¶¶ 454-63), a law with a broader reach than the Sherman Act. *See* Plaintiffs' Opposition to Amazon's Motion to Dismiss, Dkt. #149 at 18-20. The scope of claims advanced here thus increases the breadth of issues to be decided beyond those normally at issue in an antitrust case, and further supports streamlining an already complex trial.

In addition, bifurcation will simplify the proceedings on remedies and save the Court and the Parties significant time and resources by enabling the Parties to tailor presentations on remedies to the Court's liability findings. (*See* § I above.) For example, the Court's findings regarding how each strain of Amazon's anticompetitive conduct amplifies the effects of every other anticompetitive behavior it has engaged in will impact what equitable relief may be necessary to "unfetter [the] market[s] from anticompetitive conduct." *Microsoft*, 253 F.3d at 103 (quoting *Ford Motor Co.*, 405 U.S. at 577).

For the reasons explained above, adoption of Plaintiffs' bifurcation proposal would make the proceedings more convenient for the Parties and the Court and promote judicial economy.

## III.  AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED FOR BIFURCATION.

Amazon claims that bifurcation will result in "massive duplication" because determining liability requires "pressure testing . . . what the remedy would be" and that bifurcation would

therefore require some witnesses to testify during both phases. (February 8, 2024 Scheduling Conference Tr. at 9:23-10:11; *id*. at 11:24-12:3.) Amazon's arguments are not persuasive; in fact, they show why bifurcation would be useful and appropriate.

Amazon's argument against bifurcation confuses the remedy phase of an antitrust case with the much narrower question that may be relevant within the liability analysis of whether "substantially less restrictive means exist to achieve any proven procompetitive benefits." *NCAA v. Alston*, 594 U.S. 69, 100 (2021). (*See*, *e.g.*, Scheduling Conference Tr. at 10:5-11 ("[I]f you're attacking something that, in their words, goes to the core of our operations, which we deem to be exceptionally pro-customer, we have to talk about what is it they think should be different, and we're going to have to talk about that in the liability phase. So we're going to end up in a situation where there's just a lot of repetition, if there's a separate remedy phase.").) At the liability phase, the Court may need to probe alternative conduct Amazon could have engaged in if—and only if—Amazon proves that its anticompetitive conduct also has cognizable procompetitive benefits. But the "less restrictive alternatives" issue is very different and much more circumscribed than deciding appropriate remedies after liability is established. The purpose of the "less restrictive alternative" inquiry at the liability phase is to determine whether a restraint with anticompetitive effects is unreasonably broad—that is, broader than necessary to achieve its purported procompetitive justification. *See Alston*, 594 U.S. at 100-01. This is a fundamentally different inquiry than the one the court must engage in to fashion an appropriate equitable remedy, where its task is to "cure the ill effects of the illegal conduct, and assure the public freedom from its continuance." *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 577 (1966) ("[A]dequate relief in a monopolization case should put an end to the combination and deprive the defendants of any of the benefits of the illegal conduct, and break up or render impotent the monopoly power found to be in violation of the Act.").

Amazon's improper conflation of these issues helps to show why bifurcation is needed. *See Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (upholding bifurcation in part because "certain evidence relevant [to the second proceeding] might [have] tend[ed] to obscure the more fundamental question [in the first proceeding]").

Amazon's contention that bifurcation would require presenting the same evidence twice is without merit. The remedies phase may not require additional witness testimony. *See, e.g.*, *United States v. Am. Express Co.*, No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 (ordering, following bench trial resulting in liability for antitrust violations, that each party submit proposed remedial orders within thirty days "consistent with the analysis" in court's findings of fact and conclusions of law and accompanied by "a supporting memorandum explaining why the court should adopt its proposed remedy"). To the extent there is evidence relevant to both phases, bifurcation will not result in "massive duplication." Because the Court is acting as the factfinder, it can rely on evidence submitted at the liability bench trial during the remedies phase without repetition of testimony. *See, e.g.*, *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 98 (D.D.C. 2002) (concluding that "the district court's factual findings . . . may be relied upon during the remedy phase of this proceeding" as "it would make little sense to proceed to craft a remedy in the absence of substantial reliance upon the factual foundation which underlies the liability entered in this case"); *Yanni v. City of Seattle*, 2005 WL 2180011, at *2 (W.D. Wash. Sept. 9, 2005) (granting motion for bifurcation over defendants' objections concerning "duplicative" testimony because the factfinder can "consider testimony from the first phase in [its] deliberations in the second phase"); *Gaekwar v. Amica Mut. Ins. Co.*, 2024 WL 85089, at *2 (W.D. Wash. Jan. 8, 2024) (granting bifurcation motion and noting that "trying the case before a single [factfinder] in two phases will minimize the need for any evidence and witnesses to be presented twice, thereby undermining [the] argument that bifurcat[ion] will lengthen and increase the cost of trial").

If, however, the Court finds that it would be helpful to hear further testimony during the remedies phase, including from a witness who appeared during the liability phase, the Court can impose limits on the scope of testimony to avoid repetition. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (recognizing that "[t]rial courts have broad authority" to manage trials and "challenges to trial court management" are reviewed for "abuse of discretion"); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587 (order limiting evidence parties may present during bifurcated damages phase to avoid duplication of evidence received during liability phase). Some overlap in evidence, moreover, is not a barrier to bifurcation because the Court's dual role will ensure that Amazon is not prejudiced. *See F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 388 & n.5 (M.D.N.C. 1999) ("[A] mere minor overlap of evidence between the liability phase and the damage phase has not prevented courts from ordering an otherwise justified bifurcation.") (collecting cases); *Greening v. B.F. Goodrich Co.*, 1993 WL 134781, at *3 (N.D. Ill. Apr. 23, 1993) ("Any minimal overlap of evidence on these issues is outweighed by the potential for judicial economy through bifurcation . . . ."). Amazon's concerns that bifurcation would lead to "massive duplication" are therefore unfounded.

While a non-bifurcated proceeding may obviate the need for any witness to testify twice, the time each witness spends on the stand during that single proceeding will likely run much longer than the time they would spend testifying across two bifurcated proceedings. Absent bifurcation, such trial witnesses will need to testify not only about complex issues relevant to liability, but also about a range of potential remedies covering a constellation of conceivable liability findings. Conducting a single proceeding to avoid "duplication" of testimony—an objective also readily achievable through bifurcation—is not more economical or convenient if doing so sacrifices efficiency and makes an already complex case even more complicated.

## CONCLUSION

Plaintiffs respectfully submit that the Court should grant this motion and bifurcate the proceedings into liability and remedies phases in accordance with Plaintiffs' proposed order. To the extent the Court is not inclined to order bifurcated proceedings at this time, Plaintiffs respectfully request the Court defer resolution of this motion until this case is closer to trial. At present, the Parties agree that fact discovery should encompass both liability and remedy issues, which alleviates the need for an immediate decision on bifurcation.

Dated: February 29, 2024

*I certify that this memorandum contains*
*3,704 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

*s/ Susan A. Musser*
SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar # 1001641)
SARA M. DIVETT (DC Bar # 1736504)
COLIN M. HERD (NY Reg. # 5665740)
JAKE WALTER-WARNER (NY Reg. # 5396668)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:   (202) 326-2122 (Musser)
        (202) 326-2464 (Takashima)
Email: smusser@ftc.gov
        etakashima@ftc.gov
        sdivett@ftc.gov
        cherd@ftc.gov
        jwalterwarner@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

s/ Michael Jo
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

s/ Rahul A. Darwar
Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*

s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

s/ Caleb J. Smith
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

s/ Jennifer A. Thomson
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

s/ Michael A. Undorf
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

s/ Christina M. Moylan
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

s/ Gary Honick
Gary Honick (admitted *pro hac vice*)
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

s/ Michael Mackenzie
Michael Mackenzie (admitted *pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2369
Email: michael.mackenzie@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

s/ Scott A. Mertens
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

s/ Zach Biesanz
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

s/ Ana Atta-Alla
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

s/ Jeffrey Herrera
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

s/ Timothy D. Smith
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

s/ Stephen N. Provazza
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

_s/ Gwendolyn J. Cooley_____
Gwendolyn J. Cooley (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 261-5810
Email: cooleygj@doj.state.wi.us
*Counsel for Plaintiff State of Wisconsin*

THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | CASE NO.: 2:23-cv-01495-JHC |
| Plaintiffs, | [PROPOSED] BIFURCATION ORDER |
| v. | |
| AMAZON.COM, INC., a corporation, | |
| Defendant. | |

Plaintiffs have moved to bifurcate the proceedings to conduct separate proceedings on liability and, if necessary, remedy.

Rule 42(b) of the Federal Rules of Civil Procedure authorizes a court to conduct separate proceedings on separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Having duly considered Plaintiffs' motion and Amazon's opposition, the Court finds that holding separate proceedings on liability and remedies will be more convenient for the Court and the Parties and will expedite and economize this litigation.

IT IS THEREFORE ORDERED:

1.   The bench trial identified in the Case Scheduling Order (Dkt. #159) will address only Amazon's liability under the FTC Act, Sherman Act, and the state laws implicated by Plaintiffs' Complaint.

2.      If the Court renders a decision finding Amazon liable, the Court will schedule a

conference to address how to proceed on remedies.

3.      Nothing in this Order shall (a) alter the Parties' respective abilities to offer

evidence relevant to Amazon's liability at trial nor alter the burden of proof,

persuasion, or production to establish each and every element of liability,

justifications, or defenses, or (b) limit the scope of fact discovery in this case.

Dated this ___ day of _____, 2024

_____
THE HONORABLE JOHN H. CHUN
UNITED STATES DISTRICT JUDGE

Presented by:

s/ Susan A. Musser
SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar #
1001641)
SARA M. DIVETT (DC Bar # 1736504)
COLIN M. HERD (NY Reg. # 5665740)
JAKE WALTER-WARNER (NY Reg. #
5396668)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:    (202) 326-2122 (Musser)
         (202) 326-2464 (Takashima)
Email: smusser@ftc.gov
       etakashima@ftc.gov
       sdivett@ftc.gov
       cherd@ftc.gov
       jwalterwarner@ftc.gov


*Attorneys for Plaintiff Federal Trade
Commission*

s/ Michael Jo
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*


s/ Rahul A. Darwar
Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*


s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski (admitted *pro hac
vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*


s/ Caleb J. Smith
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

_s/ Jennifer A. Thomson_
Jennifer A. Thomson (admitted _pro hac vice_)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
_Counsel for Plaintiff Commonwealth of Pennsylvania_

_s/ Michael A. Undorf_
Michael A. Undorf (admitted _pro hac vice_)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
_Counsel for Plaintiff State of Delaware_

_s/ Christina M. Moylan_
Christina M. Moylan (admitted _pro hac vice_)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
_Counsel for Plaintiff State of Maine_

_s/ Gary Honick_
Gary Honick (admitted _pro hac vice_)
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us
_Counsel for Plaintiff State of Maryland_

_s/ Michael Mackenzie_
Michael Mackenzie (admitted _pro hac vice_)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2369
Email: michael.mackenzie@mass.gov
_Counsel for Plaintiff Commonwealth of Massachusetts_

_s/ Scott A. Mertens_
Scott A. Mertens (admitted _pro hac vice_)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
_Counsel for Plaintiff State of Michigan_

_s/ Zach Biesanz_
Zach Biesanz (admitted _pro hac vice_)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
_Counsel for Plaintiff State of Minnesota_

_s/ Lucas J. Tucker_
Lucas J. Tucker (admitted _pro hac vice_)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
_Counsel for Plaintiff State of Nevada_

*s/ Ana Atta Alla*
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Jeffrey Herrera*
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

*s/ Gwendolyn J. Cooley*
Gwendolyn J. Cooley (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 261-5810
Email: cooleygj@doj.state.wi.us
*Counsel for Plaintiff State of Wisconsin*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

                    Plaintiff,

    v.

CEPHALON, INC.
41 Moores Road
Frazer, Pennsylvania 19355

                    Defendant.

Civil Action No. 08-cv-2141-RBS

## Fed. R. Civ. P. 26(f)(2) REPORT TO THE COURT

Plaintiff Federal Trade Commission and Defendant Cephalon, Inc. respectfully submit this joint report pursuant to Rule 26(f)(2) of the Federal Rules of Civil Procedure. This joint report also incorporates topics identified in LcvR 16.1(b), Rules of the United States District Court for the Eastern District of Pennsylvania, and in this Court's Policies and Procedures Relating to Pretrial Procedure in Civil Cases.

## BACKGROUND

### Plaintiff's Preliminary Statement

The Federal Trade Commission ("FTC") filed Civil Action No. 08-cv-00244 (JDB) in the U.S. District Court of the District of Columbia on February 13, 2008, alleging that a course of conduct by Defendant Cephalon to restrain trade in the sale of generic versions of Provigil

1

violates Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). The FTC seeks a

permanent injunction and other equitable relief. On May 8, 2008, that court transferred this case

to the U.S. District Court for the Eastern District of Pennsylvania. The FTC's general position is

that prompt resolution of this enforcement action is essential to accomplish the objective of

providing consumers access to lower-cost generic drug competition. Any delay in the schedule

impairs the FTC's efforts to obtain effective equitable relief, to the detriment of consumers. The

FTC, therefore, opposes any stay in discovery pending resolution of the Defendant's motion to

dismiss.

### Defendant's Preliminary Statement

On May 2, 2008, Defendant filed a motion to dismiss on grounds that largely parallel the

pending motions to dismiss the complaints filed by Direct Purchasers, End-Payors, and Apotex,

Inc. (the "private party actions"), which raise similar claims against Cephalon in regard to the

patent settlements at issue. While Defendant responds to each of the individual items set out

below, Defendant's general position is identical to the position it took in the Rule 26(f) reports

filed in the private party actions: considerations of efficiency and judicial economy dictate that

all discovery should be deferred in this case pending resolution of the motions to dismiss and a

conference with the Court following its decision. If any claims survive those motions, the Court

should then address the extent to which coordination of discovery, protective orders, and related

issues is appropriate, as well as the scope and timing of discovery.

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, the parties

conferred on April 28, 2008 to discuss the following matters:

2

1.   <u>Motions</u>

Plaintiff advises the Court that the parties agreed to the following schedule in a stipulation approved by the District Court for the District of Columbia on February 22, 2008:

| | |
|---|---|
| -Defendant's motion to dismiss (filed) | May 2, 2008 |
| -Plaintiff 's response to motion to dismiss (if any) | June 2, 2008 |
| -Defendant's reply (if any) | June 20, 2008 |

2.   <u>Initial Disclosures</u>

The parties do not agree with respect to initial disclosures.

Plaintiff submitted initial disclosures pursuant to Rule 26(a)(1)(C), Fed. R. Civ. P.

Defendant proposes, as noted above, that initial disclosures should be deferred pending a conference with the Court following its decision on Cephalon's motion to dismiss, and be served four weeks thereafter.

3.   <u>Scope of Discovery</u>

(a)   <u>Timing of Discovery</u>

The parties do not agree on the timing of discovery.

Plaintiff proposes that, except for requests for admissions, including requests for admissions for the authentication and admissibility of exhibits and requests for admissions, fact discovery should be completed by December 19, 2008.

Defendant proposes that discovery should be deferred pending a conference with the Court following its ruling on the motion to dismiss, and that it should end at least 12 months from the date thereof.

The parties agree that they shall serve subpoenas and discovery requests sufficiently in advance of the discovery completion date that all responses or objections will be due on or before that date, except as provided in Rule 29(a) of the Federal Rules of Civil Procedure.

(b)    <u>Phased Discovery</u>

The parties agree that discovery should not be managed in phases. However, as noted above, Defendant's position is that all discovery should be deferred pending a conference with the Court following its ruling on the motions to dismiss.

(c)    <u>Limitations on Interrogatories</u>

The parties do not agree on limitations to interrogatories.

Plaintiff proposes no modification to the limits on interrogatories set forth in Rule 33(a) of the Federal Rules of Civil Procedure. Defendant believes any consideration of this question is premature, as noted above.

(d)    <u>Other Written Discovery</u>

The parties do not agree on the limitations to other written discovery.

Plaintiff proposes that there be no limitations on the number of requests for the production of documents pursuant to Rule 34, Fed. R. Civ. P., or on the number of requests for admission pursuant to Rule 36, Fed. R. Civ. P. Defendant believes any consideration of this question is premature, as noted above.

Each party reserves the right to seek a protective order pursuant to Rule 26(c), Fed. R. Civ. P., with respect to the total number of requests for the production of documents or requests for admission, as well as any objections to specific discovery requests.

4

(e)  <u>Limitations on Depositions</u>

The parties do not agree on limitations on depositions.

Plaintiff proposes that Plaintiff and Defendant each be permitted to take the depositions of the parties, the fact witnesses named on the opposing party's witness list, and no more than 20 other witnesses. Plaintiff further proposes that the parties abide by the presumption expressed in Rule 30(d), Fed. R. Civ. P, that a deposition's duration be limited to one day of seven hours, but reserves the right to seek more time for certain witnesses. Defendant believes any consideration of this question is premature, as noted above.

Plaintiff proposes to exchange proposed fact witness lists on August 18, 2008 and revised proposed fact witness lists on November 3, 2008. Defendant believes any consideration of this question is premature, as noted above. Defendant further respectfully submits that exchange of a "fact witness" list, as opposed to an identification of persons with first-hand knowledge as called for in Rule 26(a)(1)(A)(i), Fed. R. Civ. P., is not required under the discovery rules.

The parties reserve the right to seek protective orders consistent with the provisions of the final case management order.

The parties agree that expert depositions are not subject to the provisions and limitations of this subparagraph.

(f)  <u>Protective Order</u>

The parties agree that a protective order is necessary to safeguard confidential information concerning Defendant's and third parties' business information.

Plaintiff is prepared to negotiate a protective order at this time.

Defendant believes that any consideration of protective orders should be deferred pending a conference with the Court following its ruling on the motions to dismiss, and at that time, the Court should consider a common protective order governing this case and the private party actions, with the specifics to be worked out at that time.

(g)     Electronically Stored Information

The parties agree to address issues concerning electronically stored information consistent with Rules 26 and 34, Fed. R. Civ. P.

4.     Experts

Subject to the following paragraphs, the parties propose no modification of the requirements of Rule 26(a), Fed. R. Civ. P.

(a)     Expert Disclosures

The parties do not agree on the schedule for expert disclosures.

Plaintiff proposes that the parties shall disclose the identity of expert witnesses other than rebuttal experts as required by Rule 26(a)(2)(A), Fed. R. Civ. P., by November 19, 2008.

Defendant proposes that the disclosure via an initial expert report be provided four weeks from the end of fact discovery.

(b)     Expert Reports

The parties do not agree on the schedule for expert reports.

Plaintiff proposes that the parties shall exchange the expert reports required by Rule 26(a)(2)(B), Fed. R. Civ. P., by January 23, 2009.

Defendant proposes that the parties shall exchange the expert reports nine weeks after the date on which the expert disclosures are provided.

6

(c)     Expert Rebuttal Reports

The parties do not agree on the schedule for expert rebuttal reports.

Plaintiff proposes that the parties shall exchange expert rebuttal reports by February 20, 2009.

Defendant proposes that the parties shall exchange the expert rebuttal reports nine weeks after the date on which expert reports are provided.

(d)     Expert Depositions

The parties do not agree on the schedule for expert depositions.

Plaintiff proposes that expert depositions shall be completed by March 13, 2009.

Defendant proposes that expert depositions shall be completed 28 weeks from the end of fact discovery.

5.     Settlement

The parties do not believe that there is a possibility of settlement at this time.

6.     Summary Judgment

The parties do not agree on a schedule for summary judgment.

Plaintiff proposes that summary judgment motions be filed no later than April 3, 2009.

Defendant proposes that summary judgment motions be filed four weeks from the close of expert discovery.

Plaintiff further proposes that a response to any dispositive motions be filed within 30 days of the service of the motion and that the moving party shall have 15 days after service of the response to file a reply brief.

Defendant further proposes that a response to any dispositive motions be filed within six weeks of the service of the motion and that the moving party shall have four weeks after service of the response to file a reply brief.

7.   Pretrial Conference

The parties do not agree on the schedule for a pretrial conference.

Plaintiff proposes that the Court schedule a pretrial conference for June 15, 2009.

Defendant proposes that the date be determined by the Court based on the trial date.

8.   Trial Date

The parties do not agree on a date for trial.

Plaintiff proposes that the Court set a trial date beginning July 6, 2009.

Defendant feels it is premature to set a trial date for the case, for the reasons noted above.

9.   Jurisdictional Defects, If Any

The parties do not anticipate that issues concerning jurisdictional defects will arise in this matter, but reserve the right to raise the issue pursuant to the Federal Rules of Civil Procedure.

10.   Service

The parties do not anticipate that issues concerning service will arise in this matter, but reserve the right to raise the issue pursuant to the Federal Rules of Civil Procedure.

11.   Joinder of Parties and Amendment of Pleadings

The parties do not agree with respect to joinder of parties and amendment of pleadings.

Plaintiff does not anticipate that additional parties need to be joined or that amendments to the complaint are necessary, but reserves the right to amend the complaint pursuant to Rule 15, Fed. R. Civ. P.

8

Defendant believes that it is too early to determine whether additional parties need to be joined or if amendments to the complaint are necessary.

12.    Information Not Subject to Discovery

(a)    The Plaintiff proposes that the following types of information relating to experts shall not be the subject of discovery: (1) the content of communications among and between: (i) counsel and expert witnesses; (ii) expert witnesses and other expert witnesses or consultants; (iii) and/or expert witnesses and their respective staffs, and (2) notes, drafts, written communications or other types of preliminary work created by, or for, expert witnesses.  Plaintiff further proposes that the protections against discovery contained in this section will not apply to any communications or documents upon which an expert specifically relies as a basis for any of his or her opinions or reports.

Defendant believes that any consideration of the scope of discovery is premature and that the issue should be addressed at a conference with the Court following its ruling on the motions to dismiss.  At that time, Defendant believes issues related to the scope of discovery should be coordinated with the private party actions.

(b)    The parties agree that the following types of post-complaint information relating to this matter shall not be the subject of discovery and need not be retained: (1) e-mail, notes, drafts, communications, memoranda or other work product produced by or exchanged among and between: (i) Plaintiff's attorneys, management, and staff;  (ii) Defendant's outside counsel and their staff; and (iii) Defendant's outside counsel and Defendant's in-house counsel.

13.  <u>Magistrate Jurisdiction</u>

The parties do not consent to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (2000).

14.  <u>Other Supplemental Proposals</u>

(a)  Because of delays in the delivery of first class mail due to government screening procedures, the parties stipulate that correspondence between counsel shall be conducted by e-mail, with a courtesy copy delivered, upon request, by hand delivery or overnight mail. This stipulation, however, does not apply to service of Court filings, which is governed by the requirements set forth in LcvR 5.1.2.

(b)  Plaintiff proposes that pleadings delivered to counsel via the Electronic Case Filing System after 5:00 pm, on a weekend, or on a federal holiday shall be deemed served on the party the next business day for purposes of calculating the due date for any responsive pleading.

Defendant believes that any departure from the Local Rules of Civil Procedure and the Court's customary procedures with respect to electronic case filing, including any modification of the time and date provision set forth in LcvR 5.1.2(5)(b), is unwarranted.

(c)  Plaintiff proposes that each party shall produce all third party discovery to opposing counsel within ten (10) business days of receipt, absent good cause.

Defendant believes that any stipulation regarding third-party discovery is premature and that the issue should be addressed at a conference with the Court following its ruling on the motions to dismiss and in conjunction with consideration of coordination of discovery with related cases.

Plaintiff and Defendant have each submitted the following proposed scheduling orders reflecting their alternative positions.

[Remainder of page intentionally left blank.]

**PLAINTIFF Federal Trade Commission's**
**Proposed Schedule in <u>FTC v. Cephalon, Inc.</u>**

| | |
|---|---|
| Answer or Other Response to Complaint | 05/02/08 |
| Opposition, if any | 06/02/08 |
| Reply, if any | 06/20/08 |
| Start of Fact Discovery | 05/20/08 |
| Exchange Preliminary Witness List | 08/18/08 |
| Exchange Revised Witness List | 11/03/08 |
| Exchange Expert Disclosures | 11/19/08 |
| Close of Fact Discovery | 12/19/08 |
| Exchange Expert Reports | 01/23/09 |
| Exchange Expert Rebuttal Reports | 02/20/09 |
| Close Expert Depositions | 03/13/09 |
| Dispositive Motions | 04/03/09 |
| Opposition | 05/04/09 |
| Reply | 05/19/09 |
| Pretrial Conference | 06/15/09 |
| Trial | 07/06/09 |

12

**DEFENDANT Cephalon, Inc.'s**
**Proposed Schedule in <u>FTC v. Cephalon, Inc.</u>**

| | |
|---|---|
| May 2, 2008 | Cephalon's Motion to Dismiss Filed. |
| June 2, 2008 | Opposition, if any. |
| June 20, 2008 | Reply, if any. |
| Conference following Decision on Motions to Dismiss ("Conference") | Fact discovery begins. Discovery requests may be served. |
| 4 weeks from Conference | 26(a)(1) disclosures due. |
| 12 months (at least) from Conference | Completion of fact discovery. |
| 4 weeks from the end of fact discovery | Plaintiff's initial expert reports due. |
|    - 6 weeks thereafter | Depositions of Plaintiff's experts. |
|    - 3 weeks thereafter | Defendant's initial expert reports due. |
|    - 6 weeks thereafter | Deposition of Defendant's experts. |
|    - 3 weeks thereafter | Plaintiff's expert rebuttal reports due. |
|    - 6 weeks thereafter | Depositions of Plaintiff's experts on rebuttal reports. |
| 4 weeks from the close of expert discovery | Dispositive motions due. |
|    - 6 weeks thereafter | Oppositions to dispositive motions due. |
|    - 4 weeks thereafter | Replies to dispositive motions due. |

Remaining pre-trial dates to be determined by Court depending on trial date.

13

Dated:  May 12, 2008

Respectfully submitted,

Markus H. Meier
Bradley S. Albert
Saralisa C. Brau
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Telephone:  (202) 326-3759
Facsimile:  (202) 326-3384
mmeier@ftc.gov

Counsel for Plaintiff
Federal Trade Commission

Dated:  May 12, 2008

David J. Creagan
Michael N. Onufrak
David E. Edwards
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
Telephone: (215) 864-7000
Facsimile: (215) 864-7123
creagand@whiteandwilliams.com

James C. Burling
Peter A. Spaeth
Mark A. Ford
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
james.burling@wilmerhale.com

Counsel for Defendant
Cephalon, Inc.

14

# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20508<br><br>Plaintiff,<br><br>v.<br><br>CEPHALON, INC.<br>41 Moores Road<br>Frazer, Pennsylvania 19355<br><br>Defendant. | Civil Action No. 08-cv-2141 (RBS) |

## CERTIFICATE OF SERVICE

I, David J. Creagan, hereby certify that on May 12, 2008, the foregoing Fed. R. Civ. P. 26(f)(2) Report to the Court was filed electronically and served via electronic mail on the following counsel, and is available for viewing and downloading on the ECF System.

| | |
|---|---|
| Markus H. Meier, Esquire<br>**FEDERAL TRADE COMMISSION**<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br>mmeier@ftc.gov<br><br>Counsel for Plaintiff<br>Federal Trade Commission | James C. Burling, Esquire<br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>james.burling@wilmerhale.com<br><br>Counsel for Defendant<br>Cephalon, Inc. |

BY: _____

David J. Creagan
creagand@whiteandwilliams.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**,

Plaintiff,

v.

**META PLATFORMS, INC.**

Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

## JOINT [PROPOSED] SCHEDULING ORDER

Pursuant to the Initial Scheduling Conference held February 28, 2022, and the Joint Rule 16.3 Report previously submitted by the Parties, the Court ORDERS that the following schedule shall govern further proceedings:

1. The deadline for amendment of pleadings or joinder was February 15, 2022;

2. The deadline for initial disclosures was February 22, 2022;

3. The deadline for Plaintiff to substantially complete the production of its investigatory file was February 28, 2022;

4. Fact discovery shall close on May 22, 2023;

5. Plaintiff's Rule 26(a)(2) expert disclosures shall be served July 3, 2023; Defendant's Rule 26(a)(2) expert disclosures shall be served September 5, 2023; Plaintiff's rebuttal expert reports shall be served November 6, 2023; expert discovery shall close on January 5, 2024.

6. No discovery motions may be filed without leave of court. In the event that a discovery dispute arises, the Parties shall make a good faith effort to resolve or

1

narrow the areas of disagreement.  If the Parties are unable to resolve the discovery dispute, the Parties shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the issue or determine the manner in which it will be handled; and

7.     Parties may not extend any deadline by stipulation; instead, parties must seek extensions by motion.  Consent motions are generally looked upon with favor by the Court.

Upon consideration of the Parties Joint Rule 16.3 Report, the Court further ORDERS that the following provisions shall govern the proceedings:

8.     **Bifurcation.**  There will be a first phase that will address only the Defendant's liability under the antitrust laws.  If the Court renders a decision finding the Defendant liable, then the Court will hold a separate proceeding regarding any remedies for any violations of the antitrust laws that it finds.  The provisions set forth below relating to discovery shall not apply to any additional discovery to facilitate a remedy phase.

9.     **Discovery of Confidential Information.**  Discovery and production of confidential information will be governed by the Protective Order and the ESI Order to be entered by the Court in this action.  No deadline in this order shall override any deadline set forth in the Protective Order or ESI Order.  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Order in effect at the time.

10.    **Document Requests.**  The Parties must serve any objections to requests for productions of documents within **[30]** days as required by Federal Rule of Civil Procedure 34.  Within **[14]** calendar days of service of any objections to a request

2

for production, the Parties must meet and confer to attempt to resolve any objections and to agree on materials to be searched.

11. **Interrogatories.** The Parties must respond and serve any objections to interrogatories within **[30]** calendar days as required by Federal Rule of Civil Procedure 33. Within **[14]** calendar days of service of any objections, the Parties must meet and confer to attempt to resolve any objections and to discuss whether the request may be satisfied by the production of documents or structured data. Each Party is limited to **[30]** interrogatories in total (including discrete subparts). Each Party reserves the right to ask the Court for leave to serve additional interrogatories.

12. **Requests for Admission.** Each Party is limited to **[35]** requests for admission in total. Each Party reserves the right to ask the Court for leave to serve additional requests for admission. Requests for admission relating solely to the authentication of documents, data, or other evidence (which are issues that the Parties must attempt to resolve initially through negotiation) do not count against these limits. The close of fact discovery shall not preclude requests for admission regarding the authentication of exhibits.

13. **Discovery on Nonparties.** Each Party must serve upon the other Party a copy of any discovery request served electronically on any Nonparty at the same time it is served on the Nonparty. A requesting Party must provide the other Party with a written record of any oral or written modifications, extensions, or postponements to the discovery request within **[5]** business days of the modification, extension, or postponement.

14.  **Depositions.**

a.  **Number of Depositions.**  Each Party is limited to 840 total deposition hours for fact witnesses.  The hours limit refers to time of testimony actually taken on the record.  Plaintiff may take a maximum of 42 hours of Federal Rule of Civil Procedure 30(b)(6) deposition testimony from Defendant, not including any time devoted to issues regarding Defendant's data.

The following do not count against the above deposition limits: (a) depositions of the Parties' designated expert witnesses; (b) sworn testimony previously taken during the FTC's pre-Complaint investigation or in any other litigation or government investigation; and (c) depositions taken for the sole purpose of establishing the authenticity of documents, provided that such depositions must be designated at the time that they are noticed as being taken for the sole purpose of establishing authenticity.

b.  **Notice of Depositions.**  Within **[10]** calendar days of receipt of a deposition notice, the noticed Party or Nonparty must provide any objections it intends to assert in response to that deposition notice, and, if relevant, an alternative date on which witnesses will be made available for testimony.  Parties and Nonparties will use their best efforts to make witnesses available for deposition at a mutually agreeable time and location and without undue delay.  If a witness is a former employee of any Party or Nonparty, upon receipt of a deposition notice for the former employee, that Party or Nonparty shall, within **[10]** calendar days of the deposition notice, provide the date of departure and last known address of the former employee, state whether counsel for the Party or

Nonparty can accept service of the notice, and state whether the counsel for the Party or Nonparty will be representing the witness in connection with the deposition and, if not, provide the name and contact information for the witness's counsel or state that counsel for the Party or Nonparty is unaware that the witness is represented by counsel.

If a Party serves a subpoena for the production of documents or electronically stored information on a Party or Nonparty and a subpoena commanding attendance at a deposition by a witness employed by such Party or Nonparty, the Party serving those subpoenas must schedule the witness's deposition for a date at least **[14]** calendar days after the return date for the document subpoena. If the return date for the document subpoena is extended: absent consent of both Plaintiff and Defendant, the deposition must be postponed to a date at least **[14]** calendar days following the date of production of substantially all documents required by the subpoena (as modified by any negotiations regarding subpoena compliance) (a) with respect to which the witness is an author, addressee, recipient, or custodian; and (b) are contained in a shared filing location or other electronic or physical repository that the witness accessed in the ordinary course of business.

For any deposition lasting longer than **[7]** hours, either Party or the witness may demand that the time remaining after the seventh hour be carried over to be completed on the next consecutive business day, or as soon as possible consistent with the convenience of the witness and the Parties.

c. **Allocation of Time During Depositions.**

5

94

1. ***Defendant's current employees***: During the deposition of a current employee of Defendant, Plaintiff may examine the witness for up to 7 hours.

2. ***Defendant's former employees***: (a) if the deposition of a former employee of Defendant is noticed only by one Party, the non-noticing Party may question the witness for up to 1 hour at the conclusion of the noticing Party's examination, which shall last no more than 6 hours; (b) if the deposition of a former employee of Defendant is noticed by both Parties, then the deposition will be **[10]** hours and will be divided equally between the Parties. Any time allotted to one Party not used by that Party in a deposition of a former employee of Defendant may not be used by the other Party.

3. ***Nonparty witnesses who are not a former employee of Defendant***: (a) if the deposition is noticed by only one Party, the non-noticing Party may question the witness for up to 1 hour at the conclusion of the noticing Party's examination, which shall last no more than 6 hours; (b) if the deposition is noticed by both Parties, then the deposition will be **[10]** hours and will be divided equally between the Parties. Any time allotted to one Party not used by that Party in a Nonparty deposition may not be used by the other Party.

15. **Inadvertent Production of Privileged Information.** Inadvertent production of privileged information shall be governed by the terms of a Court order under Federal Rule of Evidence 502(d).

16.     **Privilege Logs.**  The Parties agree that the following privileged or otherwise
protected communications shall not be the subject of discovery, need not be
preserved, and need not be placed on a privilege log:  email, notes, drafts,
communications, memoranda, documents, or other work product produced by or
exchanged solely among and between:  (a) outside counsel[1] for the Defendant; (b)
outside counsel for Defendant and/or In-House counsel (as that term is defined in
the Protective Order in this action) employed by Defendant and counsel for
Parties with common legal interest in defending potential or current litigation
against Meta; (c) In-House Counsel (as that term is defined in the Protective
Order in this action) employed by Defendant on topics relating to potential or
current litigation against Meta; (d) counsel for the Federal Trade Commission (or
persons employed by the Federal Trade Commission); (e) counsel for the Federal
Trade Commission (or persons employed by the Federal Trade Commission) and
counsel for a plaintiff with which the FTC shares a common legal interest in
pursuing or exploring litigation against Meta; (f) counsel for the Federal Trade
Commission (or persons employed by the Federal Trade Commission) and
counsel employed by any executive-branch agency of the federal government.
When responsive or non-responsive, privileged documents described in this
Paragraph are attached to responsive non-privileged documents that are produced
in whole or in part, however, the producing Party will insert a placeholder to
indicate a document has been withheld from that family.

---

[1] As used in this Paragraph, "counsel" includes attorneys, economists or other experts
assisting counsel, paralegals, assistants, and those acting on behalf of counsel.

17. **Privilege Log Timing and Format.** If a producing party redacts documents within a production or withholds documents from a production as privileged, it shall provide a privilege log relating to those documents within **[45]** calendar days after completion of production for each set of requests for production. All privilege logs shall be provided in Excel format.

18. **Expert Witness Disclosures – Materials Protected from Disclosure.** The following information, documents, and materials are not discoverable, and need not be preserved or disclosed for purposes of complying with Federal Rule of Civil Procedure 26(a)(2), 26(b)(4), or any other rule, including testimony at deposition, hearing, or trial, unless such materials provide the only record of a fact or assumption that the expert relied on in forming the opinions to be expressed: (a) any form of oral or written communications, correspondence, or work product shared between: (i) the expert and any persons assisting the expert; (ii) Plaintiff's counsel and Plaintiff's experts, or between any agent or employee of Plaintiff's counsel and Plaintiff's experts; (iii) Meta's counsel and Meta's experts, or between any agent or employee of Meta's counsel and Meta's experts; (iv) testifying and non-testifying experts; (v) non-testifying experts; or (vi) testifying experts; (b) expert's notes, except for notes of interviews if the expert relied upon the notes in forming any opinions in his or her final report; (c) drafts of expert reports, affidavits, or declarations or comments, mark-ups, or edits prepared in connection with such drafts; and (d) data formulations, data runs, data analyses, surveys, studies, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

8

19.   **Expert Witness Disclosures – Materials To Be Disclosed**.  Subject to the limitations of the prior paragraph, the Parties agree that the following materials will be disclosed within **[2]** calendar days of when each expert report is served, or, for those materials to be made available upon request, within **[7]** calendar days of the request:  (a) a list of all documents relied upon by the expert in forming any opinions in his or her report, including Bates numbers of documents previously produced; (b) a list of all publications authored by the expert in the previous **[10]** years; (c) upon reasonable request, copies of all publications authored by the expert in the previous **[10]** years that are not readily available publicly; and (d) for all calculations or other quantitative analyses appearing in the report, the data set and programs underlying such calculations or quantitative analyses that were relied upon by the expert, including the programs and codes necessary to recreate the calculations or quantitative analyses from the data set.

20.   **Expert Depositions**.  Each expert may be deposed for **[7]** hours.  The Parties may request additional time only upon a particularized showing of good cause made to the Court.  Depositions of each Party's experts will be conducted only after disclosure of all expert reports and materials to be disclosed.

21.   **Service of Pleadings and Discovery on Other Parties**.  Service of all pleadings must be made by ECF (which will send notice to all Parties and Nonparties registered with ECF).  Service of all trial subpoenas and discovery requests on a Party (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by email to the persons whose email is listed below.  If the

9

volume of attachments makes service by email or ECF impracticable, a Party shall make service via a Secure FTP service or overnight delivery to the persons listed below. Service of trial subpoenas and discovery requests on a Nonparty (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45) may be made by email when the Nonparty or counsel for the Nonparty consents, or when service is made by email on a counsel who enters an appearance in this action on behalf of the Nonparty. Service via email will be considered equivalent to service by hand.

For Plaintiff FTC:
Daniel Matheson
Owen Masters
Michael Smith
Sunila Steepen
Dominique Wilson
Krisha Cerilli
Robert Zuver
Maggie DiMoscato
Federal Trade Commission
600 Pennsylvania Ave. N.W.
Washington D.C. 20580
Tel: 202-326-2075
dmatheson@ftc.gov
omasters@ftc.gov
msmith9@ftc.gov
dwilson1@ftc.gov
ssteephen@ftc.gov
kcerilli@ftc.gov
rzuver@ftc.gov
mdimoscato@ftc.gov


For Defendant Meta:
Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner

99

Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

22.    **Nationwide Service of Process**.  Good cause having been shown in view of the

geographic dispersion of potential witnesses in this action, the Parties will be

allowed nationwide service of process of discovery and trial subpoenas pursuant

to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23 to issue from this Court.

The availability of nationwide service of process, however, does not make a

witness who is otherwise "unavailable" for purposes of Federal Rule of Civil

Procedure 32 and Federal Rule of Evidence 804 available under these rules

regarding the use at trial of a deposition taken in this action.

23.    **Joint Status Reports**.  The Parties shall jointly submit a status report on May 31,

2022; August 31, 2022; November 30, 2022; February 28, 2023; and May 31,

2023.

SO ORDERED.

DATED: _3/3/22_

Honorable James E. Boasberg
United States District Judge

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>QUALCOMM INCORPORATED,<br><br>          Defendant. | Case No. 17-CV-00220-LHK<br><br>**CASE MANAGEMENT ORDER** |

Plaintiff's Attorneys: Jennifer Milici, Joseph Baker
Defendant's Attorneys: Gary Andrew Bornstein, Nicole Peles, Yonatan Even, Geoffrey Holtz, Richard Taffet

 An initial case management conference was held on April 19, 2017. A further case management conference is set for July 19, 2017, at 2:00 p.m. The parties shall file their joint case management statement by July 12, 2017.

 The parties shall serve on named parties no more than 20 interrogatories. The discovery limitations in the Federal Rules of Civil Procedure otherwise govern this case.

 Judge Nathanael Cousins shall be the discovery judge for both this case and the consumer Multi-District Litigation.

 Qualcomm shall respond by April 21, 2017 to the FTC's April 6, 217 draft Protective Order. The parties shall file a stipulated protective order for Judge Cousins's signature, or a protective order dispute, by April 27, 2017.

1

Case No. 17-CV-00220-LHK
CASE MANAGEMENT ORDER

The Court set the following case schedule:

| Scheduled Event | Date |
|---|---|
| Deadline to File Protective Order | April 27, 2017 |
| Plaintiff's Opposition to Defendant's Motion to Dismiss | May 12, 2017 |
| Defendant's Reply in Support of Motion to Dismiss | June 2, 2017 |
| Motion to Dismiss Hearing | June 15, 2017, at 1:30 p.m. |
| Further CMC | July 19, 2017, at 2:00 p.m. |
| Close of Fact Discovery | March 30, 2018 |
| Plaintiff's Opening Expert Reports | April 20, 2018 |
| Defendant's Expert Reports | May 25, 2018 |
| Plaintiff's Rebuttal Expert Reports | June 22, 2018 |
| Close of Expert Discovery | July 20, 2018 |
| Last Day to File Dispositive Motions and *Daubert* Motions (one per side in the entire case) | August 10, 2018 |
| Summary Judgment and *Daubert* Oppositions | September 10, 2018 |
| Summary Judgement and *Daubert* Replies | September 28, 2018 |
| Hearing on Dispositive Motions | October 18, 2018, at 1:30 p.m. |
| Final Pretrial Conference | December 13, 2018, at 1:30 p.m. |
| Bench Trial | January 4, 2019, at 9:00 a.m. |
| Length of Trial | 8 days |

**IT IS SO ORDERED.**

Dated: April 19, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

2

Case No. 17-CV-00220-LHK
CASE MANAGEMENT ORDER

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**FEDERAL TRADE COMMISSION,**

     **Plaintiff,**

          **v.**

**SURESCRIPTS, LLC,**

     **Defendant.**

**Civil Action No. 19-1080 (JDB)**

---

## SCHEDULING ORDER

Upon consideration of the parties' respective scheduling proposals, and in accordance with Rule 16.3 of the Local Civil Rules, it is hereby **ORDERED**:

1. Dispositive Motions

The Court notes that no dispositive motions are currently pending. Defendant consents to personal jurisdiction and venue in this Court. Parties shall file motions for summary judgment following the conclusion of discovery. See ¶ 6, infra.

2. Joinder of Parties, Amendment of Pleadings, and Narrowing of the Issues

The parties may join any additional parties and make any amendments to the pleadings by not later than May 29, 2020. Thereafter, the parties may seek to amend the pleadings by motion pursuant to Fed. R. Civ. P. 15.

3. Agreement to Assign to Magistrate Judge

The parties do not request assignment to a magistrate judge for all purposes, and the Court concludes that such an assignment for any purpose is not necessary in this case.

4. Possibility of Settlement

The parties do not believe that there is a realistic possibility of settlement at this time.

5. <u>Alternative Dispute Resolution</u>

     The parties have considered the possibility of using alternative dispute resolution procedures but do not believe that the case would benefit from such procedures at this time.

6. <u>Summary Judgment</u>

     Motions for summary judgment may be filed after the conclusion of discovery.

7. <u>Initial Disclosures</u>

     The parties do not stipulate to dispensing with initial disclosures required by Rule 26(a)(1).

The parties do not propose any changes to the scope or form of the initial disclosures.

8. <u>Case Schedule and Scope of Discovery</u>

     The case schedule shall proceed as follows:

| Event | Date |
| --- | --- |
| Defendant's Answer to Plaintiff's Complaint | 2/10/2020 |
| Service of Initial Disclosures | 2/12/2020 |
| Discovery Commences | 3/2/2020 |
| Status Conference | 6/16/2020 at 9:30 a.m. |
| Substantial Completion of Document Production | 11/23/2020 |
| Close of Fact Discovery | 1/20/2021 |
| Plaintiff Serves Initial Expert Report(s) | 3/22/2021 |
| Defendant Serves Expert Report(s) | 5/21/2021 |
| Plaintiff Serves Rebuttal Expert Report(s) | 6/21/2021 |
| Close of Expert Discovery | 8/20/2021 |
| Summary Judgment Motions Filed | 10/22/2021 |
| Oppositions to Summary Judgment Motions Filed | 11/22/2021 |
| Replies in Support of Summary Judgment Filed | 12/13/2021 |
| Submission of Proposed Pretrial Order | 45 Days After the Court's Order Resolving Motions for Summary Judgment |

2

(a) <u>Timing of Discovery</u>

Full discovery will commence on March 2, 2020, and proceed according to the schedule outlined above. The parties are ordered to use reasonable best efforts to cooperate with each other and other parties in <u>In re Surescripts Antitrust Litig.</u>, No. 19-cv-6627 (JJT) (N.D. Ill.), to reduce discovery burdens.

The parties shall serve subpoenas and discovery requests sufficiently in advance of the discovery completion date such that all responses or objections will be due on or before that date. The close of fact discovery shall not preclude requests for admission regarding the authentication and admissibility of exhibits.

(b) <u>Limitations on Interrogatories</u>

The parties shall serve no more than twenty-five (25) interrogatories, including all discrete subparts.

(c) <u>Other Written Discovery</u>

There shall be no limitations on the number of requests for the production of documents pursuant to Fed. R. Civ. P. 34, or on the number of requests for admission pursuant to Fed. R. Civ. P. 36. Each party may seek a protective order pursuant to Fed. R. Civ. P. 26(c), with respect to specific requests for the production of documents or requests for admission as well as any objections to specific discovery requests.

In response to any Rule 34 request for data or data compilations, the parties shall meet and confer in good faith.

In response to any document requests, the parties need not produce to each other any documents previously produced by defendant to the FTC in the course of the investigation (FTC File No. 141-0210).

(d) <u>Limitations on Depositions</u>

Each party may take up to 30 depositions of fact witnesses. Depositions taken for the sole purpose of establishing the location, authenticity, or admissibility of documents produced by any party or non-party do not count toward the limit on depositions. These depositions must be designated as such at the time that the deposition is noticed and will be noticed only after the party taking the deposition has taken reasonable steps to establish location, authenticity, or admissibility through other means.

Depositions taken during the Commission's pre-complaint investigation do not count toward the number of depositions allowed by this Order. Either party may further depose witnesses whose depositions were taken during the investigation.

All depositions shall last no more than seven (7) hours.

During nonparty depositions, the non-noticing side may examine the witness for no more than two hours of the seven-hour examination time. If the nonparty deposition is noticed by both parties, then time will be divided equally (i.e., three and one-half hours for each side), and the deposition shall count as one deposition for each noticing party. Any time allotted to one side not used by that side in a nonparty deposition may be used by the other side up to the seven-hour limit in total.

The parties may seek leave of Court to extend the duration of depositions beyond seven (7) hours for good cause.

Expert depositions are not subject to the provisions and limitations of this subparagraph.

(e) <u>Protective Order</u>

The parties agree that a protective order is necessary to safeguard confidential information concerning defendant's and nonparties' business information. The parties have negotiated a

protective order and agree on all of the terms, except as to accessibility of Confidential and Highly Confidential Material to Surescripts's in-house counsel. The Court adopts the FTC's proposal with respect to the access of Surescripts's in-house counsel to confidential and highly confidential information. The parties are directed to submit a revised proposed protective order incorporating this provision and reflecting the other matters discussed during the February 27, 2020 status conference.

9. <u>Electronically Stored Information</u>

The parties have not identified any issues at this time with respect to electronically stored information ("ESI") and agree as follows regarding the preservation and production of ESI.

The parties have established litigation holds to preserve ESI that may be relevant to the expected claims and defenses in this case. In addition, the parties have taken steps to ensure that automatic deletion systems will not destroy any potentially relevant information.

The use of Technology Assisted Review tools may assist in the efficient production of ESI. However, if a party desires to use such technologies, it shall meet and confer with the other side and negotiate in good faith on the reasonable use of such technology.

The parties will request ESI in the form or forms that facilitate efficient review of ESI. In general, the parties will produce ESI according to the same ESI technical specifications used by defendants in the FTC's pre-complaint investigation, with the exception of Instruction 4(a)(vi), which calls for production of "redacted documents in PDF format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above." The parties may produce redacted documents in image format or native format, accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) of the Instructions. The parties shall include an "Alternate

Custodian" or "All Custodians" field (or the equivalent) in the metadata associated with documents they produce. The parties may seek additional modifications to the ESI specifications used in the FTC's investigation.

10. Privilege and Work-Product Protection

If information subject to a claim of attorney-client privilege, work-product immunity, or any other applicable privilege or immunity is produced inadvertently, the parties shall comply with Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B). The parties are encouraged to negotiate a procedure to assert these claims after inadvertent production and, if agreement is reached, to include such a provision in the Protective Order.

The parties shall neither request nor seek to compel the production of any interview notes, interview memoranda, or recitation of information contained in such notes or memoranda, except as specified in the forthcoming Protective Order. Nothing in this Order requires the production of any party's attorney work product, confidential attorney-client communications, communications with or information provided to any potentially or actually retained expert (except to the extent that such communications are relied upon by the expert in formulating an opinion in this case), or materials subject to the deliberative-process or any other governmental privilege.

The parties shall abide by the following guidelines concerning the preparation of privilege logs: a general description of the litigation underlying attorney work-product claims is permitted; identification of the name and the company affiliation for each non-defendant person is sufficient identification; and there is no requirement to identify the discovery request to which each privilege document was responsive.

The following privileged or otherwise protected communications may be excluded from privilege logs:

(a) any documents or communications sent solely among outside counsel for the defendant or persons employed or retained by such counsel;

(b) any documents or communications sent solely among counsel for the Federal Trade Commission or persons employed or retained by the Federal Trade Commission;

(c) privileged documents attached to responsive documents, except that if privileged documents that are attached to responsive documents are withheld from production, the parties will insert a placeholder to indicate a document has been withheld from that family;

(d) draft litigation filings not sent to third parties;

(e) documents created after this litigation commenced (April 17, 2019) that were sent solely among Surescripts's outside counsel and in-house counsel exclusively concerning this litigation.

11. Experts

Subject to the following paragraphs, the parties will abide by the requirements of Fed. R. Civ. P. 26(a)(2) and 26(b)(4).

Because experts for both plaintiff and defendant will likely use significant amounts of data in the preparation of their expert reports and their expert testimony, a party shall produce with any initial or rebuttal expert report, subject to the requirements of the Stipulated Protective Order, (a) a list of all commercially-available computer applications used in the preparation of the report; (b) a copy of all data sets, in native file format, used or developed in the preparation of the report; (c) a copy of any customized statistical software or other customized computer programs used by the party's expert in the course of preparing the report; (d) any processed data files developed in the preparation of the report; (e) a description of how the programs and original data set(s) were employed to create a final data set(s) if requested; and (f) a description of the purpose and format

of each data file and program file with instructions on how replication can be conducted if requested.

Each party's expert shall be deposed only once and for no more than seven (7) hours.

12. Pretrial Conference

The final pretrial conference date will be set after resolution of the parties' motions for summary judgment.

13. Trial Date

A trial date in this case will be set after resolution of the parties' motions for summary judgment.

14. Other

(a) Witness Lists

The parties are required to exchange final fact witness lists. A party's final witness list may include individuals not previously identified on (i) the Rule 26(a) initial disclosures or (ii) Rule 26(e) supplemental disclosures that have been provided at least 30 days before the end of fact discovery, so long as the opposing party is provided a reasonable opportunity to take the witness's deposition before the pretrial conference. The limitation on depositions shall not include depositions of any person identified in the final trial witness list, who was not previously disclosed in (i) or (ii) above and was not previously deposed.

(b) Nationwide Service of Trial Subpoenas

The parties may move the Court to allow nationwide service of process of trial subpoenas pursuant to Fed. R. Civ. P. 45 and 15 U.S.C. § 23.

(c) Pretrial Order and Exhibit Lists

The parties shall negotiate the timing, method, and manner of the exchange of exhibit lists,

deposition designations and objections (and counter-designations thereto), final trial witness lists, motions in limine, and Daubert motions.

(d) Service of Pleadings and Discovery on Nonparties

Service of all pleadings and discovery, including Fed. R. Civ. P. 45 subpoenas for testimony or documents, and delivery of all correspondence in this matter shall be made by email or FTP to counsel of record for each party, except when the volume of attachments requires overnight delivery of the attachments or personal delivery, in which case service shall be made to the following individuals designated by the parties for each side noted below:

For plaintiff Federal Trade Commission:

Markus H. Meier
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
(202) 326-3759
mmeier@ftc.gov

David B. Schwartz
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
(202) 326-3748
dschwartz1@ftc.gov

For defendant Surescripts:

Amanda P. Reeves
Allyson M. Maltas
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Facsimile: (202) 637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr.
Elizabeth C. Gettinger
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: al.pfeiffer@lw.com
Email: elizabeth.gettinger@lw.com

Each side shall copy and produce materials obtained in discovery, in the format they were received from any nonparty, to the other side, within three business days after receipt by the side initiating the discovery request; except that if a nonparty produces materials that are not Bates-stamped, the party receiving the materials may Bates-stamp them before producing a copy to the other party and shall produce the documents or electronically stored information in a reasonable time.

Service of materials too voluminous to be sent electronically (via email or FTP transfer) shall be delivered to plaintiff:

Markus H. Meier
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
(202) 326-3759
mmeier@ftc.gov

David B. Schwartz
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
(202) 326-3748
dschwartz1@ftc.gov

Service of materials too voluminous to be sent electronically (via email or FTP transfer) shall be delivered to defendant:

Amanda P. Reeves
Allyson M. Maltas
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Facsimile: (202) 637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr.
Elizabeth C. Gettinger
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: al.pfeiffer@lw.com
Email: elizabeth.gettinger@lw.com

(e) <u>Modification of Scheduling and Case Management Order</u>

Any party may seek modification of this Order for good cause, except that the parties may also modify discovery and expert disclosure deadlines by agreement.

(f) <u>Miscellaneous</u>

As to all other discovery issues not addressed in this Scheduling Order, the parties must comply with the limitations and requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. In the event that a discovery dispute arises, the parties shall make a good faith effort to resolve or narrow the areas of disagreement. If the parties are unable to resolve the discovery dispute, the parties shall jointly call chambers at (202) 354-3430 before filing a discovery motion, at which time the Court will make a determination as to the manner in which it will handle the discovery dispute.

A status conference in this matter is set for June 16, 2020, at 9:30 a.m. in Courtroom 30.

**SO ORDERED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>February 28, 2020</u>

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 117 of 168

Federal Trade Commission v. Vyera Pharmaceuticals, LLC, Not Reported in Fed. Supp....

2021 WL 76336
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

FEDERAL TRADE COMMISSION, State of New
York, State of California, State of Ohio, Commonwealth
of Pennsylvania, State of Illinois, State of North
Carolina, and Commonwealth of Virginia, Plaintiffs,
v.

VYERA PHARMACEUTICALS, LLC, and Phoenixus
AG, Martin Shkreli, individually, as an owner and
former director of Phoenixus AG and a former
executive of Vyera Pharmaceuticals, LLC, and
Kevin Mulleady, individually, as an owner and
former director of Phoenixus AG and a former
executive of Vyera Pharmaceuticals, LLC, Defendants.

20cv00706 (DLC)
|
Signed 01/08/2021

Memorandum Opinion and Order

DENISE COTE, District Judge:

 **\*1** Defendant Martin Shkreli has moved to stay discovery
until 2023, when he is due to be released from prison. Shkreli's
motion is denied.

**Background**

This action was filed on January 27, 2020. Discovery
began shortly thereafter. An Order of June 15 denied the
defendants' motion to stay discovery pending resolution of
their motions to dismiss. An Opinion of August 18 largely
denied their motions to dismiss. See Fed. Trade Comm'n
v. Vyera Pharm., LLC, No. 20CV706 (DLC), 2020 WL
4891311, at \*14 (S.D.N.Y. Aug. 18, 2020) ("Vyera"). This
Opinion is incorporated by reference, and familiarity with it
is assumed.

Fact discovery is scheduled to end on February 26, 2021.
Shkreli's deposition is set to proceed on January 27 and
28, 2021. His recent request to delay his deposition until
late February was denied. Expert discovery is scheduled to

conclude on August 6. The pretrial order in this non-jury trial
is due on October 20.

Shkreli is currently incarcerated at the Allenwood Low
Security Federal Correctional Institution. He is due to be
released from custody on September 14, 2023. [1]

On November 25, 2020, Shkreli filed this motion to stay
discovery. The motion became fully submitted on December
11.

**Discussion**

Shkreli moves to stay this litigation, and in particular further
discovery, until he is released from prison. He asserts
difficulty in communicating with his counsel to prepare his
defense to the claims in this litigation while incarcerated.

"The power to stay proceedings is incidental to the power
inherent in every court to control the disposition of the causes
on its docket with economy of time and effort for itself, for
counsel, and for litigants." Louis Vuitton Malletier S.A.
v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) (citation
omitted). A district court has discretion to stay discovery for
"good cause" pursuant to Rule 26 of the Federal Rules of Civil
Procedure. The party seeking the stay of discovery bears the
burden of demonstrating good cause.

Shkreli has not shown "good cause" for a stay of this
complex litigation. This action is brought by the federal
government and several States. The parties and the public
have a significant interest in resolving the issues raised
by the plaintiffs' claims with due expedition. The issues
principally arise from events that began years ago, in 2014.
The core of the allegedly anticompetitive conduct underlying
the plaintiffs' claims appears to remain ongoing. Should the
plaintiffs prevail in this litigation, the impact on the generic
drug market and consumers of pharmaceuticals would be
prompt and significant. The plaintiffs also seek equitable
monetary relief. The public interest weighs strongly against
any unnecessary delay of this litigation.

Shkreli has failed to show that he will be unfairly prejudiced
by the litigation proceeding while he is incarcerated. This
litigation was filed after a lengthy administrative investigation
of Shkreli's activities. The plaintiffs promptly produced the
administrative record to the defendants, and the defendants

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 118 of 168

Federal Trade Commission v. Vyera Pharmaceuticals, LLC, Not Reported in Fed. Supp....

have had months to examine it. The protocol for discovery was entered last Spring, and the parties have relied on it and planned accordingly.

**\*2** Shkreli's application is also untimely. Shkreli's delay in bringing a motion based on his alleged lack of communication with counsel undermines his assertion that the breadth of discovery in this action requires a stay.

Shkreli has also failed to demonstrate good cause to support his request for a stay. Shkreli claims that, because of his incarceration, he has not had, and will not have, sufficient access to counsel to prepare for his deposition and participate in his own defense. He adds that a failure to stay discovery would violate his constitutional right to access to courts, and, as a corollary, his right to counsel.

Shkreli is represented by a team of experienced and able counsel from two law firms. Shkreli has at his disposal several methods for communicating with his attorneys, including sending and receiving legal mail, the availability of legal visits for much of the time this litigation has been pending, [2] unmonitored legal calls, and emails and calls over the Bureau of Prison's ("BOP") TRULINCS and TRUFONE systems. [3] Shkreli's prison consultant acknowledges that the BOP has "done a somewhat satisfactory job at arranging communication thus far." Shkreli's access to his counsel is at least as good as that provided to incarcerated defendants facing criminal charges.

### CONCLUSION

Shkreli's November 25, 2020 motion to stay discovery pending his release from prison is denied.

### All Citations

Not Reported in Fed. Supp., 2021 WL 76336

## Footnotes

1    Shkreli's prison consultant calculates that Shkreli could be released to a halfway house as early as mid-September 2021 if Shkreli earns enough credits from participation in certain programs in prison.

2    Despite invitations by the Bureau of Prisons to counsel to schedule visits to meet with Shkreli, his attorneys have not done so. While defense counsel quite rightly point to the ongoing pandemic and the risks to health posed by travel and prison visits, it nonetheless remains true that counsel have chosen not to avail themselves of this opportunity.

3    In a letter of September 25, 2020, the plaintiffs represented that they would not seek from the BOP any further communications between Shkreli and his attorneys conducted over monitored lines.

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>    and<br><br>STATE OF NEW YORK,<br><br>                    Plaintiffs,<br><br>    v.<br><br>VYERA PHARMACEUTICALS, LLC,<br><br>PHOENIXUS AG,<br><br>MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>    and<br><br>KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>                    Defendants. | Case No. 1:20-cv-00706-DLC |

## AMENDED JOINT RULE 26(f) REPORT

Plaintiffs Federal Trade Commission ("FTC") and the State of New York and Defendants Vyera Pharmaceuticals, LLC, Phoenixus AG, Martin Shkreli, and Kevin Mulleady, by and through their undersigned counsel, jointly submit the following Amended Rule 26(f) Report and Discovery Plan. This Amended Report reflects that the parties had reached agreement regarding the briefing schedule for Defendants' anticipated Motions to Dismiss.

The parties conducted the Rule 26(f) conference telephonically on February 27, 2020.

118

The parties discussed all of the matters outlined in Rule 26(f) during that conference.

The parties respectfully submit the following proposed discovery plan pursuant to Rule 26(f). Where the parties were unable to agree on an issue, each side has set forth its respective position. The parties' respective proposed schedules are attached to this Report as Exhibit A.

## A. Initial Disclosures – Rule 26(f)(3)(A)

The parties agree to exchange initial disclosures pursuant to Rule 26(a) no later than April 13, 2020. The parties agree that the initial disclosures will take the form prescribed in Rule 26(a), including that counsel for Defendants will identify whether any of them represents any individuals or entities identified pursuant to Rule 26(a)(1)(A)(i).

## B. Subjects of Discovery and Discovery Completion – Rule 26(f)(3)(B)

### 1. Subjects of Discovery

Plaintiffs anticipate the subjects of discovery will include factual and expert discovery regarding the parties' respective claims and defenses, including: (1) the relevant antitrust market; (2) Defendants' Daraprim distribution agreements, agreements regarding supply of pyrimethamine active pharmaceutical ingredient ("API"), and data-blocking agreements; (3) the alleged anticompetitive and procompetitive effects, including any consumer harm, of the conduct alleged; (4) the impact of Defendants' conduct on entry into the market of generic Daraprim (pyrimethamine); (5) Shkreli and Mulleady's individual liability; and (6) the appropriate remedy.

Defendants anticipate the subjects of discovery will include factual and expert discovery regarding the parties' respective claims and defenses, including: (1) the availability of Daraprim for sale on the open market during the relevant period; (2) the likelihood and timing of generic entry for Daraprim; (3) the ability of generic manufacturers to obtain required FDA approvals and to bring a generic form of Daraprim to market; (4) the ability of API manufacturers to obtain

FDA approvals and to sell pyrimethamine API; (5) the potential for recurrence of the alleged

conduct; (6) available substitutes for Daraprim and/or pyrimethamine API; and (6) defenses to

Messrs. Shkreli's and Mulleady's alleged individual liability, including but not limited to the

specific role and conduct of Messrs. Shkreli and Mulleady during the relevant period.

### 2. Fact Discovery

The parties do not agree about when fact discovery should close. The parties' respective

proposed schedules are attached to this Report as Exhibit A. The parties do not agree about

whether discovery should be stayed pending resolution of anticipated motions to dismiss.

**Plaintiffs' Position:**

Plaintiffs' position is that discovery should not be stayed pending resolution of the

anticipated motions to dismiss. Plaintiffs also respectfully propose that the Court resolve this

issue at the status conference scheduled for March 20, 2020. In any event, if the Court prefers

full briefing on the issue, Plaintiffs do not agree with Defendants' proposal that their anticipated

motion to stay should be delayed until the deadline for their motions to dismiss.

Defendants' proposed schedule contemplates a stay of discovery until this Court resolves

numerous motions to dismiss that have yet to be filed. Briefing for these motions to dismiss will

not be complete for about four months. Defendants provide no good cause for why the Court

should diverge from "the usual practice in federal courts—permitting discovery to continue

during the pendency of a motion to dismiss." *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F.

Supp. 2d 162, 169 (S.D.N.Y. 2001); *see also* Fed. R. Civ. P. 26(c). This well-established

principle "applies with even greater force where, as here, Defendants have not yet filed a motion

to dismiss, but merely contemplate one." *Noble Talents LLC v. Asch*, No. 19-cv-11020, 2020

U.S. Dist. LEXIS 25306, *1-2 (S.D.N.Y. Feb. 13, 2020).

To satisfy their "good cause" burden, Defendants must meet a three-factor balancing test that weighs "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17-CV-6334 (PGG) (SLC), 2020 WL 230183, at *2 (S.D.N.Y. Jan. 15, 2020) (internal quotation marks omitted). Each of the factors weighs against Defendants' request for a discovery stay.

*First*, Defendants cannot make the "strong showing" that Plaintiffs' claims are "unmeritorious." Relying on documents and testimony from their investigation, Plaintiffs' 65-page complaint sets forth detailed allegations that Defendants engaged in a multi-faceted anticompetitive scheme to block lower-cost generic competition to a life-saving medication in violation of federal and state antitrust laws. *See Guiffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016) (denying motion to stay because the complaint pleaded "concrete facts and law to support all of [Plaintiffs'] arguments").

For example, the Complaint alleges that Defendants entered two exclusive contracts intended to deny generic competitors access to Daraprim's active pharmaceutical ingredient ("API"), the key input in pharmaceutical products. Compl. ¶¶ 138-169. After securing an exclusive contract with the only supplier approved to manufacture the API for the U.S. market, Defendants then moved to sideline an API supplier that had been working with potential generic competitors. As the Complaint alleges, Defendants had no need for this second API source, and never purchased any of the API for its own product. Compl. ¶¶ 153-65. Nonetheless, Defendants paid this API supplier millions of dollars to ensure that it could not to supply its potential competitors. Compl. ¶ 60. These allegations, among many others, fully support the claims that Defendants have violated, and are continuing to violate, federal and state antitrust law. *See*

*Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495-501, 506-10 (2d Cir. 2004)

(finding that exclusive API contracts could form the basis for Sherman Act Sections 1 and 2

liability).

*Second*, Defendants cannot demonstrate that Plaintiffs' discovery is so broad and

burdensome as to merit a stay. Defendants' position is that *any* discovery would be unduly

burdensome. But instead of seeking a preemptive blanket protective order, "there is no reason

that any objections to individual requests cannot be dealt with through the meet-and-confer

process, and, if necessary, a conference with the Court." *Kirschner*, 2020 WL 230183, at *3; *see

also Mulligan v. Long Island Univ.*, No. 18-CV-2885 (ERK) (SJB), 2018 WL 8014320, at *3

(E.D.N.Y. Dec. 13, 2018) (denying motion to stay where defendants could "seek a protective

order which the Court would consider in the ordinary course of discovery practice"). Such

objections should not, however, be based solely on the pendency of the motion to dismiss.

*Third*, Plaintiffs—and the consumers we seek to protect—would suffer significant

prejudice if the Court stayed discovery. The outcome of this case directly impacts patients,

hospitals, and other organizations that would benefit from generic competition to Daraprim.

Although the FDA recently approved one generic version of Daraprim, generic entry has not yet

occurred. Moreover, consumers typically do not experience significant cost savings until

multiple generics enter and compete. Defendants' ongoing conduct has significantly delayed this

competition. *See Guiffre*, 2016 WL 254932, at *2 (denying a stay when complaint describes an

"ongoing series of events"). Plaintiffs are ready and eager to make their case at trial and to end

Defendants' anticompetitive conduct. To that end, discovery should proceed and no stay should

be issued.

> **Defendants' Position:**

Defendants' position is that it is inappropriate and improper for Plaintiffs to include advocacy briefing on this issue in a Rule 26(f) Report. Moreover, it is inconsistent with the parties' discussions during their two Rule 26(f) conferences. Defendants' position is that discovery should be stayed pending resolution of the anticipated motion(s) to dismiss. Defendants plan to file a motion to stay discovery for the Court's consideration contemporaneously with their motion(s) to dismiss.

**Areas of Agreement:**

The parties agree that they shall serve subpoenas and discovery requests sufficiently in advance of the discovery completion date such that all responses or objections will be due on or before that date. The close of fact discovery shall not preclude requests for admission regarding the authentication and admissibility of exhibits.

Parties who produce discovery shall produce a copy of the discovery to all parties. If a non-party produces discovery to a party, the receiving party shall promptly provide a copy of the non-party discovery to all parties.

The parties agree that discovery should not be conducted in phases or limited to or focused on particular issues.

The parties anticipate that discovery of foreign entities may be necessary in this case and that it may be necessary to serve discovery pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters or other international agreements.

### 3. Expert Discovery

The parties do not agree about when expert discovery should close, whether there should be reply expert reports, and whether it is appropriate to address certain expert discovery issues in this Report. The parties' respective proposed schedules are attached to this Report as Exhibit A.

**Plaintiffs' Position:**

The parties should be permitted to serve reply expert reports that respond to the opinions set forth in expert rebuttal reports. Reply reports would not be an opportunity to correct oversights in the original report. Instead, they would be limited to explaining, countering, or disproving the opinions of the other party. Allowing for reply expert reports will have several benefits in these proceedings. First, they will help narrow the issues of dispute among the experts, which promotes efficiency for both the parties and the Court. Second, they will ensure that all of an expert's opinions and analyses, including those that respond to points raised in opposing experts' rebuttal reports, are fairly disclosed before expert depositions. Third, given the Court's preference for written direct testimony of experts, providing for reply reports will reduce the possibility that an opposing side objects to written direct expert testimony on the ground that it contains undisclosed opinions. *See generally Ironshore Ins. Ltd. v. Western Asset Mgmt. Co.*, No. 11 Civ. 5954 (LTS) (JCF), 2013 WL 2051863, at *2 (S.D.N.Y. May 15, 2013) (Magistrate Mem. & Order) ("Reply expert reports may be appropriate if the rebuttal reports raise new matters not discussed in the initial reports.").

Plaintiffs also propose the following with respect to expert discovery. Because experts for both Plaintiffs and Defendants will likely use significant amounts of data in the preparation of their expert reports and their expert testimony, a party shall produce with any initial, rebuttal, or reply expert report, subject to any applicable protective order: (a) a list of all commercially-available computer applications used in the preparation of the report; (b) a copy of all data sets, in native file format, used or developed in the preparation of the report; (c) a copy of any customized statistical software or other customized computer programs used by the party's

expert in the course of preparing their report; (d) any processed data files developed in the preparation of the report; (e) a description of how the programs and original data set(s) were employed to create a final data set(s) if requested; and (f) a description of the purpose and format of each data file and program file with instructions on how replication can be conducted if requested.

**Defendants' Position:**

Defendants' position is that the parties should not be permitted to serve reply expert reports as these are neither necessary nor customary.  In addition, Defendants' position is that Plaintiffs' proposed schedule for the timing of expert reports in Exhibit A is unrealistic, unreasonable and plainly designed to unfairly advantage Plaintiffs; Plaintiffs propose two months for Plaintiffs' expert reports, only one month for Defendants' rebuttal reports, fourteen days for reply reports, but only thirty days for expert depositions.  This is in contrast to Defendants' more reasonable proposed schedule that eliminates expert reply reports and instead gives the same amount of time for Plaintiffs' and Defendants' expert reports -- two months for each of Plaintiffs' expert reports, and for Defendants' rebuttal reports -- and then two months for expert depositions.  Further, Defendants' position is that any specifics regarding expert discovery are premature and inappropriate for a Rule 26(f) Report; rather, these would be better served as part of an expert discovery protocol that the parties could negotiate at a more appropriate time in the future.

### C.     Disclosure, Discovery, or Preservation of ESI – Rule 26(f)(3)(C)

The parties anticipate that the scope of discovery will encompass Electronically Stored Information ("ESI"). The parties will request ESI in the form or forms that facilitate efficient review of ESI. In general, the parties will produce ESI either according to the same ESI technical

specifications used by Defendants in the FTC's pre-complaint investigation or in accordance with an ESI protocol as agreed among the parties or ordered by the Court.

The parties disagree about whether certain potential issues relating to ESI need be presented in this Report.

### Plaintiffs' Position:

Plaintiffs have raised several issues regarding the preservation, collection, and production of ESI and other relevant discovery materials from the personal files and email accounts of Defendants Shkreli and Mulleady and the employees of Defendants Vyera and Phoenixus. The parties are continuing to negotiate and discuss these issues, and Plaintiffs may raise with the Court unresolved issues (if any) requiring the Court's attention.

### Defendants' Position:

Defendants' position is that there is no issue with regard to preservation. Plaintiffs have not identified any specific issues or non-compliance with ESI preservation and conceded as much on the Rule 26(f) teleconference on February 27, 2020. All Defendants understand their ESI preservation obligations and made this known to Plaintiffs during that Rule 26(f) teleconference. Thus, Defendants' position is that there is no need to have a provision regarding the preservation of ESI in this Report.

### D.    Privilege – Rule 26(f)(3)(D)

The parties agree to the following guidelines concerning the preparation of privilege logs: identification of the litigation or potential litigation underlying attorney work product claims is permitted; identification of the name and the company for each non-Defendant person is sufficient identification; and there is no requirement to identify the discovery request to which each privileged document was responsive.

The parties agree that the following privileged or otherwise protected communications may be excluded from privilege logs:

(a)      any documents or communications sent solely among outside counsel for the Defendants or persons employed or retained by such counsel;

(b)      after the filing of the Complaint for Injunctive and Other Equitable Relief on January 27, 2020, any documents or communication regarding the conduct of this litigation sent solely among outside counsel for the Defendants or sent solely between outside counsel for the Defendants and (i) Defendants or (ii) Defendants' employees. Notwithstanding the foregoing, privileged documents or communications that may otherwise be exempt from logging under this subpart must nevertheless be logged if any portion of the document or communication also concerns ongoing or forward-looking business decisions, plans, actions, or practices.

(c)      any documents or communications sent solely among counsel for the Plaintiffs or persons employed or retained by the Plaintiffs for the purpose of this litigation or the pre-Complaint investigations; and

(d)      non-responsive privileged documents attached to responsive documents; however, when privileged documents that are attached to responsive documents are withheld from production, the parties will insert a placeholder to indicate a document has been withheld from that family; and

(e)      draft litigation filings.

The parties agree that, to the extent Defendants served privilege logs on the Plaintiffs during the pre-Complaint investigations, those privilege logs are deemed served in this action. The parties agree to produce documents in this matter on a rolling basis and serve privilege logs no later than 45 days after each production, unless otherwise agreed. The parties further agree

that they have reserved all rights to challenge any privilege claims, whether described on logs previously produced or otherwise.

### E. Limitations on Discovery – Rule 26(f)(3)(E)

The parties disagree about the allocation of time during non-party depositions.

**Plaintiffs' Position:**

During non-party depositions, if both sides cross-notice the deposition, then the time will be divided equally, *i.e.*, three and one-half hours for each side. Any time allotted to one side not used by that side may be used by the other side up to the seven-hour limit in total. The parties may, by mutual consent, agree to a different allocation of time for specific non-party depositions without leave of Court. Current and former employees of the Defendants do not count as non-parties for purposes of this proposal.

Plaintiffs' proposal to allocate time at non-party depositions equally between the parties is practical, fair, and reduces the likelihood that the Court will be dragged into disagreements about the proper allocation for particular depositions. The proposal also is flexible. By setting only a default rule, it allows the parties to negotiate changes in the time allocation where appropriate. Finally, allowing one side to use the other's unused time should limit any gamesmanship with cross-noticing of depositions. Defendants' proposal to rely on the Federal Rules of Civil Procedure is ineffective because the Rules do not address how to allocate time between the parties for non-party depositions. Thus, Defendants' proposal is likely to lead to disagreements that ultimately will need to be resolved by this Court.

**Defendants' Position:**

Defendants' position is that the Federal Rules of Civil Procedure governing depositions, including Fed. R. Civ. P. 30(d)(1), will apply, unless the parties agree to particular modifications,

which would be addressed on a deposition-by-deposition basis. Plaintiffs' proposal is unnecessary and could lead to gamesmanship with cross notices and time allocations being taken up strategically, especially since most of the non-parties have presumably already spoken to the Plaintiffs, whereas Defendants have had access to none of them. Moreover, Plaintiffs' unwillingness to apply their protocol to former employees of the Companies, meaning that the presumption would not apply to those individuals, substantially undermines Plaintiffs' position and supposed rationale.

**Areas of Agreement:**

The parties agree that there shall be no limitations on the number of requests for the production of documents pursuant to Rule 34 or on the number of requests for admission pursuant to Rule 36. Each party reserves the right to seek a protective order pursuant to Rule 26(c) with respect to specific discovery requests.

The parties agree that each side shall serve no more than twenty-five interrogatories, including all discrete subparts.

The parties agree that it will be necessary to take more than ten depositions as permitted under Rule 30(a)(2)(A).

The parties propose that the limitation on depositions be increased to 200 hours per side for fact depositions.

The parties agree that testimony taken in investigational hearings during the FTC's pre-Complaint investigation do not count towards the number of hours agreed above. Either party may further depose witnesses whose testimony was taken in investigational hearings during the pre-Complaint investigations. The parties also agree that expert depositions shall not count towards the number of hours allotted for depositions.

**F.** **Other Orders That the Court Should Issue – Rule 26(f)(3)(F)**

The parties are negotiating a stipulated protective order that they intend to present to the Court. The parties agree that neither side should exchange documents under Rule 26(a)(1)(A)(ii) until a protective order is entered in this case. The parties agree that they will negotiate an expert protocol that will address discovery of expert materials.

**G.** **Other Matters**

**1. Settlement**

The parties discussed settlement during the Rule 26(f) conference, and it does not appear that settlement is likely at this time.

**2. Witness Lists**

The parties disagree about the procedure for finalizing witness lists and whether there should be opportunity to depose previously unidentified witnesses.

**Plaintiffs' Position:**

A party's final witness list may include individuals not previously identified on (i) the Rule 26(a) initial disclosures or (ii) Rule 26(e) supplemental disclosures that have been provided at least 30 days before the end of fact discovery, so long as the opposing parties are provided a reasonable opportunity to take the witness's deposition before the pretrial conference. The limitation on depositions shall not include depositions of any person identified in the final trial witness list who was not previously disclosed in (i) or (ii) above and was not previously deposed.

Plaintiffs' proposed rule is consistent with a "basic purpose" of the Federal Rules of Civil Procedure to facilitate the full disclosure of relevant information during discovery and to prevent "trial by ambush." *In re Hornbeam Corp.*, No. 14 Misc. 424 (Part 1), 2015 WL 13647606, at *5 (S.D.N.Y. Sept. 17, 2015) (quoting *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966)). Rule

26(a)(1)(A) requires a litigant to identify each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses in its initial disclosures, and Rule 26(e) imposes a continuing duty to supplement such disclosures in a timely manner throughout the discovery period if the litigant learns they are incomplete or incorrect in any material respect. By ensuring that the opposing parties will have the opportunity to depose a late-identified witness, Plaintiffs' proposal both discourages gamesmanship by eliminating any unfair advantage to be gained and provides for fair and orderly discovery by the opposing parties when a witness is identified late.

**Defendants' Position:**

Defendants' position is that specifics regarding witness lists for trial are premature and improper for a Rule 26(f) Report.

### 3. Consent to Magistrate Judge

The parties do not consent to proceed before a magistrate judge.

### 4. Joinder of Parties and Amendment of Pleadings

Plaintiffs anticipate that additional states may join as Plaintiffs in this action. The parties propose June 19, 2020 as the final date by which parties may be joined. Plaintiffs reserve all of their rights to seek leave to amend the Complaint.

### 5. Service of Pleadings and Discovery

The parties agree that service of all pleadings and discovery, including copies of Rule 45 subpoenas, and delivery of all correspondence in this matter shall be made by email or FTP to counsel of record for each party, except when the volume of attachments requires overnight delivery of the attachments or personal delivery, in which case service shall be made to the following individuals designated by the parties for each side noted below:

**For Plaintiff Federal Trade Commission:**

Markus H. Meier
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Tel: (202) 326-3759
mmeier@ftc.gov

Maren Schmidt
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Tel: (202) 326-3084
mschmidt@ftc.gov

**For Plaintiff State of New York:**

Elinor R. Hoffmann
New York State Office of the Attorney General
28 Liberty St.
New York, NY 10005
Tel: (212) 416-8269
elinor.hoffmann@ag.ny.gov

Jeremy R. Kasha
New York State Office of the Attorney General
28 Liberty St.
New York, NY 10005
Tel: (212) 416-8277
jeremy.kasha@ag.ny.gov

Saami Zain
New York State Office of the Attorney General
28 Liberty St.
New York, NY 10005
Tel: (212) 416-6360
saami.zain@ag.ny.gov

**For Defendants Vyera Pharmaceuticals, LLC and Phoenixus AG:**

Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP

1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5603
steven.reed@morganlewis.com

Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6930
stacey.mahoney@morganlewis.com

Sarah E. Hsu Wilbur
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6701
sarah.wilbur@morganlewis.com

**For Defendant Martin Shkreli:**

Christopher H. Casey
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1155
chcasey@duanemorris.com

Andrew John Rudowitz
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1974
ajrudowitz@duanemorris.com

Edward T. Kang
KANG, HAGGERTY & FETBROYT LLC
123 S. Broad St. #1670
Philadelphia, PA 19109
Tel: (215) 525-5852
ekang@khflaw.com

Kandis Kovalsky
KANG, HAGGERTY & FETBROYT LLC
123 S. Broad St. #1670

Philadelphia, PA 19109
Tel: (215) 525-1993
kkovalsky@khflaw.com

**For Defendant Kevin Mulleady:**

Kevin J. Arquit
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1750
karquit@kasowitz.com

Kenneth R. David
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1893
kdavid@kasowitz.com

Anthony Macdonald Caputo
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-3302
acaputo@kasowitz.com

Each side shall copy and produce materials obtained in discovery, in the format they were received from any non-party, to the other parties, within three business days after receipt by the side initiating the discovery request; except that if a non-party produces materials that are not Bates-stamped, the party receiving the materials may Bates-stamp them before producing a copy to the other parties and shall produce the documents or electronically stored information in a reasonable time.

Dated: March 17, 2020                    Respectfully submitted,

                                         /s/ Markus H. Meier
                                         Markus H. Meier (*pro hac vice*)
                                         Federal Trade Commission

600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-3759
mmeier@ftc.gov
*Counsel for Plaintiff Federal Trade
Commission*

/s/ Elinor R. Hoffmann
Elinor R. Hoffmann
Office of the Attorney General
28 Liberty Street
New York, NY 10006
Tel: (212) 416-8269
elinor.hoffmann@ag.ny.gov
*Counsel for Plaintiff State of New York*

/s/ Steven A. Reed
Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5603
steven.reed@morganlewis.com
*Counsel for Defendants Vyera
Pharmaceuticals, LLC and Phoenixus AG*

/s/ Edward T. Kang
Edward T. Kang
KANG HAGGERTY & FETBROYT LLC
123 S. Broad Street #1670
Philadelphia, PA 19109
Tel: (215) 525-5852
ekang@khflaw.com
*Counsel for Defendant Martin Shkreli*

/s/ Kevin J. Arquit
Kevin J. Arquit
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1750
karquit@kasowitz.com
*Counsel for Defendant Kevin Mulleady*

# EXHIBIT A
## PROPOSED SCHEDULE

| Event | Plaintiffs' Proposed Deadline | Defendants' Proposed Deadline |
|---|---|---|
| Initial Disclosures Served | April 13, 2020 | April 13, 2020 |
| Initial Pretrial Conference | March 20, 2020 | March 20, 2020 |
| Defendants' Motion to Stay Discovery | Not applicable (The parties' statements in this Report suffice) | May 22, 2020 |
| Plaintiffs' Opposition to Motion to Stay Discovery | Not applicable | July 6, 2020 |
| Defendants' Reply in Support of Motion to Stay Discovery | Not applicable | July 27, 2020 |
| Defendants' Motion(s) to Dismiss or Answers | May 22, 2020 | May 22, 2020 |
| Plaintiffs' Opposition(s) to Motion(s) to Dismiss | July 6, 2020 | July 6, 2020 |
| Defendants' Reply(ies) in Support of Motion(s) to Dismiss | July 27, 2020 | July 27, 2020 |
| Deadline for Joining Additional Parties or Amending Pleadings | June 19, 2020 | June 19, 2020 |
| Close of Fact Discovery | December 18, 2020 (nine months) | 18 months after the resolution of motions to dismiss |
| Expert Reports from Parties Bearing the Burden on an Issue | February 16, 2021 (+60 days) | 2 months after the close of fact discovery |
| Rebuttal Expert Reports | March 18, 2021 (+30 days) | 4 months after the close of fact discovery |
| Reply Expert Reports | April 1, 2021 (+14 days) | Not applicable |
| Close of Expert Discovery | April 30, 2021 (+30 days) | 6 months after the close of fact discovery |
| Motion(s) for Summary Judgment | June 14, 2021 (+45 days) | [TBD] |
| Opposition(s) to Motion(s) for Summary Judgment | July 29, 2021 (+45 days) | [TBD] |
| Reply(ies) in Support of Motion(s) for Summary Judgment | August 19, 2021 (+21 days) | [TBD] |
| If no Summary Judgment Motions filed, Joint Pretrial Motion | June 30, 2021 | [TBD] |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2020, I served a true and correct copy of the foregoing

document and exhibits on all counsel of record via the Court's CM/ECF system.


Dated: March 17, 2020

                                          */s/ Markus H. Meier*
                                          Markus H. Meier (*pro hac vice*)
                                          Federal Trade Commission
                                          600 Pennsylvania Avenue, NW
                                          Washington, DC 20580
                                          Tel: (202) 326-3759
                                          mmeier@ftc.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                :       20cv00706 (DLC)

FEDERAL TRADE COMMISSION and STATE OF   :
NEW YORK,                              :         PRETRIAL
                                         :      SCHEDULING ORDER
                      Plaintiffs,   :
                                           :
            -v-                       :
                                           :
VYERA PHARMACEUTICALS, LLC, PHOENIXUS  :
AG, MARTIN SHKRELI, individually, as an:
owner and former director of Phoenixus :
AG and a former executive of Vyera     :
Pharmaceuticals, LLC, and KEVIN        :
MULLEADY, individually, as an owner and:
director of Phoenixus AG and a former  :
executive of Vyera Pharmaceuticals,    :
LLC,                                           :
                    Defendants.  :
                                           :
-------------------------------------- X

DENISE COTE, District Judge:

      As set forth at the telephonic pretrial conference held
pursuant to Rule 16, Fed. R. Civ. P., on March 20, 2020, the
following schedule shall govern the further conduct of pretrial
proceedings in this case:

1.    The parties are instructed to contact the chambers of
      Magistrate Judge Lehrburger prior to **March 27, 2020** in
      order to schedule settlement discussions under his
      supervision to occur in **June 2020.**

2.    The parties shall submit a proposed protective order by
      **April 3, 2020.**  By this date, the parties also shall file a
      proposed Order setting **April 17, 2020** as the deadline for
      third parties to seek revisions, or otherwise make
      objections, to the proposed protective order.

3.    The parties shall submit by **April 10, 2020** a proposed
      protocol for conducting electronic discovery.

4.    The parties shall comply with their Rule 26(a)(1), Fed. R.

Civ. P., initial disclosure obligations by **April 10, 2020**.

5.   No additional parties may be joined or pleadings amended after **May 1, 2020**.

6.   Initial Interrogatories and Requests pursuant to Rule 34, Fed. R. Civ. P., shall be served by **May 1, 2020**. By **May 15, 2020**, the Federal Trade Commission ("FTC") shall produce documents from its pre-complaint investigation that are responsive to the Requests.

7.   By **May 22, 2020**, the parties shall file a letter with the Court identifying any objections or disagreements that they have been unable to resolve in responding to each other's Interrogatories and Requests.

8.   By **May 22, 2020**, the parties shall file a letter with the Court that sets forth a proposed process and schedule for conducting foreign discovery.

9.   By **May 22, 2020**, the parties shall file a letter with the Court that sets forth their proposed plans and schedule for third-party discovery. By **June 5, 2020**, the parties shall begin serving their third-party document demands.

10.  By **May 22, 2020**, the parties shall file a letter that sets forth their proposed plan and schedule for the taking of fact depositions. This letter shall identify the proposed number of depositions or deposition hours sought by the parties.

     In light of the COVID-19 outbreak, counsel should consult as to whether pretrial proceedings, including depositions and mediation, may be conducted through video conference or teleconference. Pursuant to Rules 30(b)(3) and (b)(4), Fed. R. Civ. P., all depositions in this action may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means. This Order does not dispense with the requirements set forth in Fed. R. Civ. P. 30(b)(5), including the requirement that, unless the parties stipulate otherwise, the deposition be "conducted before an officer appointed or designated under Rule 28," and that the deponent be placed under oath by that officer. For

avoidance of doubt, however, a deposition will be deemed to have been conducted "before" an officer so long as that officer attends the deposition via the same remote means (<u>e.g.</u>, telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants.

11. By **May 22, 2020,** the parties shall file a letter with the Court that sets forth their proposed plan and schedule for expert discovery.

12. All document discovery must be substantially complete by **August 28, 2020.**

13. The following motion will be served by the dates indicated below.

   Any motion to dismiss

   - Motion served by **May 22, 2020**
   - Opposition served by **July 6**
   - Reply served by **July 27**

14. The next pretrial conference is scheduled as a telephone conference for **September 11, 2020** at **10:00 am.** The parties shall use the following dial-in instructions for the telephone conference:

               Dial-in:        888-363-4749
               Access code:    4324948

   The parties shall use a landline if one is available.


Dated:   New York, New York
         March 24, 2020


                        _____
                              DENISE COTE
                        United States District Judge

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 142 of 168

Health Choice Group, LLC v. Bayer Corporation, Not Reported in Fed. Supp. (2018)

2018 WL 5728515
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas, Texarkana Division.

HEALTH CHOICE GROUP, LLC and Jaime Green,
on Behalf of the United States of America, et al.
v.
BAYER CORPORATION, et al.

No. 5:17cv126-RWS-CMC
|
Signed 04/25/2018

## Attorneys and Law Firms

Samuel Franklin Baxter, Jennifer Leigh Truelove, McKool
Smith, Marshall, TX, W. Mark LaNier, Jonathan P.
Wilkerson, Christopher Lee Gadoury, The LaNier Law Firm,
PC, Houston, TX, Dana Elizabeth Vallera, Eric Brian Halper,
Radu A. Lelutiu, McKool Smith PC, New York, NY, Geoffrey
Patton Culbertson, Kelly B. Tidwell, Patton Tidwell &
Culbertson, LLP, Texarkana, TX, Karla Yahaira Valenzuela,
Noroozi PC, Santa Monica, CA, Lee Adam Cirsch, The
LaNier Law Firm, P.C., Los Angeles, CA, Ryan Daniel Ellis,
Howry Breen & Herman LLP, Austin, TX, for Health Choice
Group, LLC.

Matthew J. O'Connor, Joshua N. DeBold, Benjamin J. Razi,
Covington & Burling LLP, Washington, DC, Andrea Leigh
Fair, Claire Abernathy Henry, Thomas John Ward, Jr., Ward,
Smith & Hill, PLLC, Longview, TX, Charles Michael Moore,
DLA Piper LLP (US), Alexandra Ann Locasto, Christopher
Scott Jones, William Scott Hastings, John Patrick McDonald,
Locke Lord LLP, Dallas, TX, Lance Lee, Attorney at Law,
William David Carter, Sr., Mercy Carter Tidwell, L.L.P.,
Texarkana, TX, for Bayer Corporation, Amgen Inc., Onyx
Pharmaceuticals, Inc., AmerisourceBergen Corporation, Lash
Group.

## ORDER

CAROLINE M. CRAVEN, UNITED STATES
MAGISTRATE JUDGE

**\*1** The above-referenced cause of action was referred to
the undersigned United States Magistrate Judge for pre-

trial purposes in accordance with ⚑28 U.S.C. § 636. The
following motion is before the Court:

**Defendants' Opposed Motion to
Stay Discovery (Docket Entry #40).**

The Court, having reviewed the relevant briefing, is of the
opinion Defendants' motion should be **DENIED.**

## BACKGROUND

This is a False Claims Act ("FCA") *qui tam* action
brought against Bayer Corporation ("Bayer"), Amgen,
Inc. ("Amgen"), Onyx Pharmaceuticals, Inc. ("Onyx"),
AmerisourceBergen Corporation ("AmerisourceBergen"),
and Lash Group ("Lash") (collectively "Defendants") by
Health Care Group, LLC, and Jamie Green ("Relators"). The
federal and state governments declined to intervene. Relators'
First Amended Complaint ("FAC") filed on January 12, 2018,
alleges that, with substantial assistance from Amerisource and
Lash, Bayer and Amgen pursued three marketing schemes
that violate the Anti-Kickback Statute. ("AKS"). Relators
claim Defendants: (i) knowingly presented or caused to be
presented to the United States false or fraudulent claims
for payment; (ii) knowingly made, used, and caused to be
made and used false records and statements to get false or
fraudulent claims paid or approved by the United States; and

(iii) knowingly conspired to violate ⚑31 U.S.C. §§ 3729(a)
(1)(A) and (B) and to defraud the United States by causing
the Medicare and Medicaid Programs to pay for false claims.

Relators' remaining claims for relief rely upon the
state False Claims Act statutes in Arkansas, California,
Colorado, Connecticut, Delaware, the District of Columbia,
Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana,
Maryland, Massachusetts, Michigan, Minnesota, Montana,
Nevada, New Hampshire, New Jersey, New Mexico, New
York, North Carolina, Oklahoma, Rhode Island, Tennessee,
Texas, Vermont, Virginia, and Washington. These state law
claims are based on the same conduct as the federal FCA
claims.

## MOTION TO STAY DISCOVERY

Case 4:23-cv-03560  Document 132-1  Filed on 04/05/24 in TXSD  Page 143 of 168

Health Choice Group, LLC v. Bayer Corporation, Not Reported in Fed. Supp. (2018)

In their current motion, Defendants move the Court for a stay of discovery pending resolution of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Docket Entry # 38). In their motion to dismiss, Defendants argue Relators fail to plead their claims of fraud with particularity as required by ⬜ FED. R. CIV. P. 9(b). [1] Relying on arguments further described in their motion to dismiss, Defendants argue ⬜ Rule 9 has an important role in restricting access to discovery for plaintiffs who, as Relators here, plead problematic, generalized allegations of fraud. According to Defendants, allowing discovery to proceed while the motion to dismiss is pending would thwart ⬜ Rule 9(b)'s critical gatekeeper function.

*2 Defendants further assert a "temporary stay while the Court considers the motion to dismiss is warranted in this case for the simple reasons of fairness and efficiency." Docket Entry # 40 at pg. 2. Defendants contend, given the nature and breadth of Relators' allegations, "extensive discovery of the parties, the Government, and third-party doctors will likely be required." *Id.* According to Defendants, if third parties and Defendants are required immediately to engage in discovery in a case which the Court eventually dismisses, "they will have been put through needless expense in a case that lacks merit." *Id.*

### APPLICABLE LAW

Under Local Rule CV-26 and Federal Rule of Civil Procedure 26, the presumption is that discovery shall proceed notwithstanding the filing of a motion to dismiss. Local Rule CV-26(a), titled "No excuses," provides "a party is not excused from responding to discovery because there are pending motions to dismiss...." In the Fifth Circuit, staying discovery while a motion to dismiss is pending "is the exception rather than the rule." *Griffin v. Am. Zurich Ins. Co.*, No. 3:14-cv-2470-P, 2015 WL 11019132, at *2 (N.D. Tex. Mar. 18, 2015). A motion to stay discovery is not "automatically granted whenever a motion to dismiss is pending." *Id.* "Nor is a stay of discovery permitted merely because defendant believes it will prevail on its motion to dismiss." *Id.* "[H]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Valenzuela v. Crest-Mex Corp.*, No. 3:16-cv-1129-D, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017).

An order staying discovery should only be issued upon a showing of "good cause" by the movant. *Griffin*, 2015 WL 11019132, at *2; *see* FED. R. CIV. P. 26(c).

### DISCUSSION

The focus of Defendants' motion to stay is their claim that Relators fail to satisfy ⬜ Rule 9(b)'s pleading obligations. In their reply, Defendants state Relators' FAC "is exceedingly vague and broad in the activities, geographical locations, and timeframe it implicates, especially in light of the rigorous ⬜ Rule 9(b) standard that it must meet." Docket Entry # 67 at pg. 2. According to Defendants, if their motion to dismiss is successful, the need for discovery would be eliminated. "But this is true any time a dispositive motion is filed. Permitting a stay of discovery simply upon the filing of such a motion would allow the exception to swallow the rule." *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *2 (N.D. Ill. Nov. 1, 2007).

In their response, Relators assert the fact this is an action brought under the FCA does not alter the general rule. Docket Entry # 53 at pg. 3 (citing *United States v. Infilaw Corp.*, No. 16-cv-970, 2018 WL 889024, at *4-*5 (M.D. Fla. Feb. 14, 2018) (Even though the plaintiff's discovery was "far reaching," the court denied a motion to stay discovery pending a decision on a motion to dismiss in FCA case, noting there are discovery "rules to constrain the parties" and a stay can be "problematic because it may needlessly lengthen the litigation.") ). Relators further assert the cases cited by Defendants in support of their motion to stay "say nothing about the propriety of granting a stay pending a motion to dismiss pursuant to ⬜ Rule 9(b)," and some of the "cases do not address discovery stays at all." Docket Entry # 53 at pg. 3.

According to Relators, "in the one case that does, the discovery stay was granted pending ruling on a summary judgment motion *after* the plaintiff had been given an initial opportunity to seek discovery and an additional 6-month extension of time for discovery." *Id.* at pg. 4 (emphasis in original) (citing ⬜ *Fujita v. United States*, 416 Fed. App'x 400, 402-03 (5th Cir. 2011) ); *see also U.S. ex rel. Fla. Soc'y of Anesthesiologists v. Choudry*, Case No. 8:13-cv-2603-T-27AEP, 2016 WL 7205970, at *1, *3 (M.D. Fla. Oct. 11, 2016) (staying discovery *after* having granted the defendants' motion to dismiss and allowing leave to amend to comply

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 144 of 168

Health Choice Group, LLC v. Bayer Corporation, Not Reported in Fed. Supp. (2018)

with 🚩 Rule 9); *U.S. ex rel. Day v. UT Medical Group, Inc.*, No. 12-cv-021390JPM-tmp, 2013 WL 12149636, at *1-*2 (W.D. Ten. Aug. 15, 2013) (addressing the plaintiff's motion to compel discovery and finding that prior-granted discovery stay precluded motion to compel; no discussion concerning propriety of discovery stay); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-CV-0680-SEB/WTL, 2007 WL 4557773, at *8 (S.D. Ind. Dec. 20, 2007) (staying discovery where there was an absence of reliable allegations indicating that particulars of fraudulent claims existed); *Pennington v. Vail Products, Inc.*, No. Civ. A. 303CV1961D, 2004 WL 302298, at *3 (N.D. Tex. 2004) (addressing the merits of the defendant's motion to dismiss in non-FCA case with no discussion of discovery stays and further noting that if the plaintiffs later obtained through discovery or other means the factual grounds that would permit them to allege fraud, they may move for leave to amend).

**\*3** Relators assert their allegations are not glaringly deficient nor have they made overly broad discovery requests. Relators argue there is an obvious distinction between allowing a "fishing expedition" and allowing the parties to engage in the usual course of discovery.

The Court is well aware of the heightened pleading standard of 🚩 Rule 9(b). [2] The Court is not convinced the motion to dismiss, upon preliminary review, is so clearly meritorious and truly case dispositive as to warrant a stay of discovery.

🚩 *Southern Motors Chevrolet, Inc. v. Gen. Motors, LLC*, No. CV 414-152, 2014 WL 5644089, at *1 (S.D. Ga. Nov. 4, 2014) (citing *Alexander v. Allen*, No. 2:13-cv-885-FTM-29CM, 2014 WL 3887476, at *2 (M.D. Fla. Aug.

7, 2014) ) (noting that motion to dismiss not so "clearly meritorious" as to warrant stay of discovery). According to the court in *Chevrolet*, "while not wholly insubstantial," defendant's motion was "no slam-dunk, nor so likely to be granted that it warrants the requested discovery stay...." 🚩 2014 WL 5644089, at *2-*3.

Defendants' concerns with the potential burden on third-parties do not justify a stay of discovery. Even if these concerns were sufficient, Defendants' assertions "only detail[ ] the usual inconveniences and costs that are associated with discovery practice," and do not explain how Defendants will suffer "unique hardship if discovery proceeds in this matter." *Ashford Inc. v. Unite Here*, No. 3:15-cv-0262-M, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015). At this point, any burden on Defendants or third-parties is speculative, especially considering the parties have not exchanged discovery requests. [3] These assertions do not warrant departing from this Court's ordinary practice not to stay discovery.

**\*4** In sum, Defendants have failed to show good cause for a stay of discovery in this instance. Therefore, Defendants' motion to stay is denied. The Court advises it will issue a Report and Recommendation on the motion to dismiss as soon as practicable. Accordingly, it is

**ORDERED** that Defendants' Opposed Motion to Stay Discovery (Docket Entry #40) is hereby **DENIED**.

### All Citations

Not Reported in Fed. Supp., 2018 WL 5728515

## Footnotes

1    Additionally, Defendants assert the FAC does not describe any conduct that would render a claim "false." They argue Relators cannot satisfy the other basic elements of a False Claims Act violation—causation, materiality, and scienter. Defendants further contend the FAC asserts claims beyond the statute of limitations period and improperly attempts to add a new plaintiff relator (Jaime Green) in violation of the FCA's first-to-file rule.

2    A claim filed under the FCA must satisfy the heightened pleading standard of 🚩 Rule 9(b) of the Federal Rules of Civil Procedure. 🚩 *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed.Appx. 890, 892 (5th Cir. 2013) (footnote and citations omitted). "In alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake." 🏴 FED. R. CIV. P. 9(b). A court must implement 🏴 Rule 9(b) as a screening mechanism to prevent meritless fraud claims "with 'bite' and 'without apology.' " *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009) (quoting *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) ). The court, however, cannot use 🏴 Rule 9(b) to require fact pleading; instead, the court must ensure " 🏴 Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading." *Grubbs,* 565 F.3d at 186. 🏴 Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* In the context of the FCA, " 🏴 Rule 9(b)'s ultimate meaning is context-specific" and depends on the elements of the claim. 🏴 *Nunnally,* 519 Fed.Appx. at 891-92 (quoting 🏴 *Grubbs,* 565 F.3d at 189-90).

3    According to Relators, "any undue burden that does materialize may be avoided through discussion with Relators to narrow or amend Relators' discovery requests. As a last resort, discovery disputes can be raised with the court, but a stay is both premature and a disproportionate remedy where more tailored solutions will address Defendants' concerns when they arise, if ever." Docket Entry # 53 at pg. 7.

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 146 of 168

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

2014 WL 5392465

KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by In re Bank of New York Mellon Corp. Forex Transactions Litigation, S.D.N.Y., November 6, 2014

2014 WL 5392465
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

In re BANK OF NEW YORK MELLON CORP.
FOREX TRANSACTIONS LITIGATION.
This document relates to: All Actions.
United States of America, Plaintiff,
v.
The Bank of New York Mellon, et ano., Defendants.

No. 12 MD 2335(LAK).
|
Signed Oct. 9, 2014.

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, District Judge.

**\*1** This matter now is before the Court because the parties are at an impasse over the question whether defendants should be permitted to take depositions of certain non-party witnesses and over the scope of other such depositions. It is well at the outset to bear in mind certain basic considerations:

- Discovery is a means of obtaining evidence that is important to the resolution of cases-ideally in a "just, speedy, and inexpensive" manner. [1]

- Discovery is not an end in itself.

  - Discovery is not a means of obtaining raw material simply because that raw material, which bears some relationship to a matter in controversy, might one day be useful. "The purpose of discovery is not solely to get information .... Blindly focusing on the universe of relevant information can lead to a very expensive discovery process." [2]

- To guard against discovery abuse, the Federal Rules of Civil Procedure now provide that a "court must limit the frequency or extent of discovery otherwise allowed by these rules [i.e., discovery of information that is relevant in the broadest sense] ... if it determines[, among other things,] that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." [3]

Thus, courts must exercise practical judgment in defining the scope of pretrial discovery lest a vehicle intended to facilitate just, speedy and inexpensive determinations become an obstacle to accomplishing any of those goals.

## Facts

### The Litigation

Although they are brought on somewhat different legal theories, both the civil cases included in *In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *United States v. Bank of New York Mellon* arise out of much the same nucleus of facts, which is described in the Court's opinions on motions to dismiss in the government case [4] and in one of the private cases. [5] Briefly stated, the Bank of New York Mellon and its affiliates (collectively "BNY Mellon" or the "Bank") have custodial clients that need to engage in currency transactions. At times relevant to the present controversy, the Bank offered a so-called standing instruction service pursuant to which it automatically provided currency exchange services as needs arose. All or substantially all of the plaintiffs claim, often among other things, that the Bank, through a variety of representations to clients, conveyed the impression that it was providing its standing instruction clients with the best prices it could obtain when, in fact, it was charging considerably more.

The plaintiffs fall into several categories. First, the government, suing under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), [6] seeks the maximum civil penalty permitted by law, which the United States Attorney's Office asserts amounts to hundreds of millions of dollars. Second, various BNY Mellon customers, in some cases individually and in others on behalf of alleged classes of customers, seek damages (1) on the basis of alleged false or misleading representations with respect to the pricing of standing instruction foreign exchange transactions; (2) for breach of contract; and (3) for breach of fiduciary duties allegedly owed to them by the Bank. Third, two actions have

145

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

2014 WL 5392465

been brought on behalf of public sector customer plaintiffs under the California False Claims Act. Fourth, one or more actions has been brought under ERISA. Finally, a class action on behalf of purchasers of Bank stock during a relevant period seeks damages for alleged violations of the federal securities laws, essentially on the theory that BNY Mellon statements concerning its financial position, the results of its operations, and other matters were false or misleading because they failed to disclose what the Bank had been up to with respect to standing instruction foreign exchange trading. While the aggregate amount of the claims of the private plaintiffs, as far as the Court is aware, has not been quantified, it doubtless is a very large number.

### The Discovery Program

 **\*2** The coordination of all of these actions has involved significant effort by both counsel and the Court. After extensive consideration, the Court approved a discovery schedule and program, two aspects of which are particularly salient to the present motion. First, a deposition taken in any of the private actions may be used in the government's case and *vice versa*.[7] Second, the presumptive limits on the number of permitted depositions were eliminated. The private plaintiffs and the government, on the one hand, and the defendants on the other *each* were permitted collectively to take up to 150 fact depositions—*i.e.,* up to a total of 300 depositions—without further leave of the Court or agreement of the parties.[8]

### The Present Controversy

The Bank already has taken more than 30 depositions of named plaintiffs and their agents or representatives in the customer cases. It now seeks to depose 11 absent customer class members mentioned, if only in passing, in the government action, and an additional eight such absent class members who worked as investment managers for named plaintiffs. The Bank argues that these depositions are appropriate because the testimony of these witnesses is relevant to the government action on the theory that the government alleges that the Bank "engaged in a massive scheme to defraud its 'clients and/or their investment managers' by 'providing them confusing and misleading information.' "[9] It contends that the testimony it hopes to obtain is "critical to its defense" because it may (1) reveal that there is disagreement in the industry about what "best execution requires" and over the meaning of the term "free of

charge," and (2) show that some customers were not actually misled.[10]

The customer class plaintiffs dispute these assertions. They seek a protective order foreclosing the first 11 depositions and limiting the second group of eight.

Neither the government, the other plaintiffs, nor the proposed deponents has taken any position on this matter.

### *Discussion*

The customer class plaintiffs place principal reliance on the proposition that discovery of absent class members is permitted only upon a " 'strong showing' " that " 'the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class.' "[11] Whatever the relevance of this standard, it does not carry the day in the unusual circumstances of this case. There is no serious claim here of harassment or of attempted alteration of the membership of the class. Indeed, not one of the proposed deponents has objected to its noticed deposition or to that deposition's scope .[12] Moreover, BNY Mellon contends with some justification that the proposed deponents in fact are percipient witnesses rather than mere bystanders who are included in the class but have no relevant evidence to give. So the question comes down to the relevance of the proposed discovery and its significance in the litigation of this case. And while the customer class plaintiffs have touched on this only briefly, it is the issue at the heart of this matter.

 **\*3** BNY Mellon does not claim that any of these proposed depositions is critical to the defense of any of these cases save the government's. And the Bank has overreached even as to the government action.

The government here sues under FIRREA. As explained in *DOJ Case,* its theory is that the Bank is liable for civil penalties because it violated the mail and wire fraud statutes and thereby "affect[ed] a federally insured financial institution."[13] The government alleges, in essence, that the Bank participated in a fraudulent scheme to bilk its clients and harmed itself in the process by putting federally insured deposits at risk.[14]

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 148 of 168

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

2014 WL 5392465

The mail and wire fraud statutes "prohibit the use of mails or wires in furtherance of 'any scheme or artifice to defraud.' "[15] To prove that BNY Mellon violated these statutes, the government will have to show, among other things, that the Bank (1) affirmatively misrepresented, or failed to disclose, material information that it had a duty to disclose, and (2) acted with "fraudulent intent," defined in somewhat more specific terms as " 'a conscious knowing intent to defraud.' "[16] It will have to show also that the Bank " 'contemplated or intended some harm to the property rights of the victim[s]' " of its fraudulent scheme.[17] What it will not have to prove is that those victims actually relied on the Bank's misrepresentations or omissions.[18] Stated another way, fraudulent intent in this Circuit "comprises two principal parts: (1) intent to deceive and (2) contemplation of actual harm to the victim."[19] It does not require that the victim actually be deceived or even that the victim actually be harmed.

With these considerations in mind, testimony by Bank customers or their investment managers about their particular understandings of the term "best execution," for example, would be only tangentially relevant, if it is relevant at all, to whether the Bank acted with fraudulent intent. The Bank's intent depends on what the Bank thought, not on what these proposed witnesses thought. It is, of course, the Bank that is in the best position to produce evidence as to its understanding and the basis for it.[20] And the Bank is well situated to obtain evidence bearing on industry custom without gearing up the costly machinery of depositions. No one has suggested that the proposed deponents will testify about the alleged scheme's impact, or lack thereof, on BNY Mellon or about the Bank's intent. Nor could they.

Thus, while evidence obtained from the proposed depositions might be relevant, in the capacious sense of Federal Rules of Evidence 401 and Civil Procedure 26(b)(1), to some issue in the government's case, the Court finds that such evidence is sufficiently unimportant to resolution of the issues at hand that discovery should be circumscribed.[21]

*Conclusion*

In this Court's view, the Bank's arguments here are an attempt to take a bridge too far. This is a big case. Vast amounts of money are at stake. But the need for these depositions—significantly overstated as it is—is insufficient in light of the dubious relevance and materiality of the testimony at issue. Accordingly, customer class plaintiffs' motion for a protective order [DI 486] is granted in all respects.

**\*4** SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5392465

**Footnotes**

1     Fed.R.Civ.P. 1.

2     Sidney K. Kanazawa, *Rethinking Discovery and Document Retention in the Digital Age,* 13 (No. 1) PRAC. LITIGATOR 39, 47 (2002).

3     Fed.R.Civ.P. 26(b)(2)(C).

4     *United States v. Bank of New York Mellon,* 941 F.Supp.2d 438 (S.D.N.Y.2013) [*"DOJ Case"* ].

5     *In re Bank of New York Mellon Corp. Forex Transactions Litig.,* 921 F.Supp.2d 56 (S.D.N.Y.2013).

6     🚩12 U.S.C. § 1833a.

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 149 of 168

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

2014 WL 5392465

7    *See* Am. Scheduling Order [DI 422] § 2, ¶ 6. Notwithstanding this agreement, the parties reserved their rights to object to the use of deposition testimony on any other grounds. *See id.*

8    *See id.* § 2, ¶¶ 9–10.

9    BNY Mellon Opp'n [DI 488; filed under seal], at 1 (quoting *DOJ Case,* No. 11–cv–6969 (LAK), Compl. [DI 31] ¶ 4). The Bank refers also to the complaint of the New York Attorney General, which is pending in the state court. *See id.*

10   *Id.* at 1–2.

11   Mot. for Protective Order [DI 486], at 2 (quoting *McCarthy v.. Paine Webber Grp.,* 164 F.R.D. 309, 313 (D.Conn.1995)).

12   *See* BNY Mellon Opp'n, at 1.

13   *DOJ Case,* 941 F.Supp.2d at 451.

14   *See id.* at 463.

15   *Id.* (quoting 🚩18 U.S.C. §§ 1341, 🚩1343).

16   🚩*United States v. Autuori,* 212 F.3d 105, 116, 118 (2d Cir.2000) (quoting 🚩*United States v. Guadagna,* 183 F.3d 122, 129 (2d Cir.1999)).

17   🚩*Id.* at 116 (quoting 🚩*Guadagna,* 183 F.3d at 129).

18   🚩*See, e.g., Bridge v. Phoenix Bond & Indent. Co.,* 553 U.S. 639, 648–49 (2008) ("Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud ... even if no one relied on any misrepresentation."); 🚩*Neder v. United States,* 527 U.S. 1, 24–25 (1999) ("The common-law requirement[ ] of justifiable reliance ... plainly ha[s] no place in the federal fraud statutes." (internal quotation marks omitted)).

19   *DOJ Case,* 941 F.Supp.2d at 464 (citing 🚩*United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1180–81 (2d Cir.1970)).

20   The testimony of these witnesses might be relevant, in the broad Federal Rule of Evidence 401 sense, to the question whether there was a common understanding of the term "best execution." That in turn could bear on the Bank's intent and on the meaning of various customer contracts to the extent any such common understanding was known to the Bank. But such an attenuated chain of relevance does not justify "the burden or expense of the proposed discovery," which "outweighs its likely benefit" in large part because the testimony the Bank seeks is most likely to be available *from the Bank's own sources. See* Fed.R.Civ.P. 26(b)(2)(C). Moreover, the Bank is in the best position to provide evidence as to what the Bank thought, and it has not contended that these depositions would be necessary or even useful in proving a common understanding for the purpose of assessing the extent and nature of the Bank's knowledge.

21   *See id.* R. 26(b)(2)(C)(iii).

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 11745554
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

LUBRIZOL SPECIALTY PRODUCTS, INC., Plaintiff,

v.

FLOWCHEM LLC, Defendant.

Civil Action No. H-15-2917
|
Signed 06/21/2016

**Attorneys and Law Firms**

Aaron Huang, Weil, Gotshal & Manges LLP, Redwood Shores, CA, Claire K. Comfort, Eric S. Hochstadt, Weil, Gotshal & Manges LLP, New York, NY, Douglas W. McClellan, Weil, Gotshal Manges LLP, Houston, TX, Elizabeth S. Weiswasser, Julie A. Harris, The Lubrizol Corp., Wickliffe, OH, Suzanne Faul Day, The Lubrizol Corp., Houston, TX, for Plaintiff.

Cristina Espinosa Rodriguez, Jillian Collum Beck, Maria Wyckoff Boyce, Hogan Lovells US LLP, Houston, TX, Jeffrey S. Whittle, Mark Dewey Shelley, II, Womble Bond Dickinson (US) LLP, Houston, TX, Steven Hollman, Hogan Lovells US, L.L.P, Washington, DC, for Defendant.

**MEMORANDUM AND ORDER**

NANCY F. ATLAS, SENIOR UNITED STATES DISTRICT JUDGE

**\*1** This patent case is before the Court on the Motion to Bifurcate and Stay Discovery of Flowchem's Antitrust Counterclaim ("Motion to Bifurcate") [Doc. # 77] filed by Counterclaim Defendant Lubrizol Specialty Products, Inc. ("Lubrizol"), to which Counterclaim Plaintiff Flowchem LLC ("Flowchem") filed an Opposition [Doc. # 82], and Lubrizol filed a Reply [Doc. # 85]. Based on the Court's review of the record and the applicable legal authorities, the Court exercises its discretion to **deny** the Motion to Bifurcate at this stage of the proceedings.

**I. BACKGROUND**

Lubrizol is the owner of United States Patents No. 8,022,118 ("the '118 Patent"), No. 8,426,498 ("the '498

Patent"), No. 8,450,249 ("the '249 Patent"), and No. 8,450,250 ("the '250 Patent") (collectively, "the Patents-in-Suit"). The Patents-in-Suit claim methods for the introduction of drag reducing agents ("DRAs") into heavy, asphaltenic hydrocarbon streams to achieve drag reduction as the hydrocarbon stream flows through the pipeline. Lubrizol's ExtremePower products embody the patented methods.

Lubrizol alleges that in 2014 Flowchem began offering to supply heavy oil DRAs under the name "TURBOFLO." Lubrizol alleges that its test results on samples of Flowchem's TURBOFLO product showed that the active ingredient in Flowchem's product was the same as in Lubrizol's products. As a result, Lubrizol alleges that Flowchem will imminently infringe the Patents-in-Suit.

In its Amended Answer, Flowchem asserts counterclaims seeking a declaratory judgment that Lubrizol's patents are invalid, that Flowchem is not infringing the Lubrizol patents, and that Lubrizol's patents are unenforceable due to inequitable conduct. Additionally, Flowchem asserts a counterclaim for monopolization in violation of Section 2 of the Sherman Act ("Antitrust Counterclaim").

**II. ANALYSIS**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). A motion to bifurcate "is a matter within the sole discretion of the trial court." Conkling v. Turner, 18 F.3d 1285, 1293 (5th Cir. 1994) (quoting First Tex. Sav. Ass'n v. Reliance Ins. Co., 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)); see also Gardco Mfg. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987); Chartis Specialty Ins. Co. v. Tesoro Corp., 930 F. Supp. 2d 653, 662 (W.D. Tex. 2013). "Separation of issues, however, is not the usual course that should be followed." McDaniel v. Anheuser–Busch, Inc., 987 F.2d 298, 304 (5th Cir. 1993). An important requirement for separate trials under Rule 42(b) is that the issue to be bifurcated "must be so distinct and separate from the others that a trial of it alone may be had without injustice." Id. at 305. "This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is *the general right of a litigant to have only one jury pass on a common issue of fact.*" Id. (emphasis in original). This limitation also

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 151 of 168

Lubrizol Specialty Products, Inc. v. Flowchem LLC, Not Reported in Fed. Supp. (2016)

has a pragmatic rationale – "if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *Id.*

 **\*2**   In this case, Lubrizol seeks to bifurcate and stay discovery of Flowchem's antitrust claim until its own patent claims and Flowchem's defenses are resolved. Lubrizol argues correctly that if it prevails on its patent claims, then Flowchem's antitrust claim fails as a matter of law and there will be no need for additional discovery. It is unclear at this early stage of the proceedings, however, whether Lubrizol will ultimately prevail on its patent infringement claims. Although bifurcation and a stay of discovery on the antitrust claim could potentially be more convenient and avoid potential increased expense to Lubrizol, it would prejudice Flowchem's right to have its antitrust claim resolved promptly, economically, and by the same jury that hears and decides the patent issues.

Additionally, bifurcation and a stay of discovery could increase the expense for both parties. Bifurcation and a stay of discovery would increase the likelihood of discovery disputes due to the parties' disagreement regarding whether requested discovery is subject to the stay since much of the relevant discovery on Flowchem's defenses and its antitrust counterclaim overlap. Expenses could also be increased because of duplicative discovery. For example, some of the individuals to be deposed would be the same for all claims, and it would be an inconvenience as well as a waste of lawyers' and witnesses' time and other resources to require the same witnesses to be deposed more than once.

The Court concludes that bifurcation of discovery would not further convenience or avoid prejudice in this case and, therefore, denies the Motion to Bifurcate as to the request for a stay of discovery. It may appear later, however, that bifurcated trials, as opposed to bifurcated discovery, would be conducive to an expedited and economical resolution of this case. Because discovery will have been completed on all claims, the bifurcated claims could be presented to the same jury if Lubrizol is unsuccessful on its patent claims. This will allow the same jury to decide all fact issues and will, therefore, prevent the need to educate two separate juries on the relevant technology. Therefore, if appropriate, either party may move for a bifurcated trial after the completion of discovery.

### III. CONCLUSION AND ORDER

Bifurcation of discovery in this case would neither further convenience nor avoid prejudice. Accordingly, it is hereby

**ORDERED** that Lubrizol's Motion to Bifurcate and Stay Discovery of Flowchem's Antitrust Counterclaim [Doc. # 77] is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 11745554

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 152 of 168

Performance Aftermarket Parts Group, Ltd. v. TI Group..., Not Reported in...

2006 WL 2850061

Only the Westlaw citation is currently available.

United States District Court,

S.D. Texas,

Houston Division.

PERFORMANCE AFTERMARKET

PARTS GROUP, LTD., et al., Plaintiffs,

v.

TI GROUP AUTOMOTIVE

SYSTEMS, INC., Defendant.

Civil Action No. H-05-4251.

|

Oct. 3, 2006.

**Attorneys and Law Firms**

Stephen R. Cochell, Epstein Becker et al, Houston, TX, for Plaintiff.

John C. Blattner, J. Michael Huget, Butzel Long PC, Ann Arbor, MI, John R. Keville, Howrey LLP, Stephen R. Cochell, Epstein Becker et al, Houston, TX, for Defendant.

***MEMORANDUM AND ORDER***

NANCY F. ATLAS, District Judge.

**\*1** This patent and antitrust case is before the Court on the Motion to Bifurcate and Stay Discovery Pursuant to Rule 42(b) ("Motion to Bifurcate") [Doc. # 45] filed by Defendant TI Group Automotive Systems, LLC ("TI Group"). TI Group filed a Supplemental Brief [Doc. # 49], to which Plaintiffs Performance Aftermarket Parts Group, Ltd. ("Performance") and G & C Automotive Distributors, Inc. ("G & C") filed a response [Doc. # 54], and TI Group filed a reply [Doc. # 59]. Based on the Court's review of the record in this case and the application of governing legal authorities, the Court exercises its discretion to **deny** the Motion to Bifurcate at this stage of the proceedings.

I. *BACKGROUND*

The factual and procedural background of this case is set forth fully in the Memorandum and Order entered August 11, 2006 [Doc. # 44] addressing Defendant's Motion to Dismiss. Briefly, Plaintiffs supply automotive products to companies primarily outside the United States, and Defendant is a leading manufacturer of automotive fuel pumps and fuel pump modules. TI Group markets both original and replacement automotive fuel pumps and fuel pump modules, while Performance sells only aftermarket replacement parts.

TI Group is the owner of the three patents described in the Complaint, and it has asserted a counterclaim that Performance's replacement fuel pumps infringe those patents. Plaintiffs, maintaining that their fuel pumps are non-infringing, seek a declaratory judgment of patent invalidity and non-infringement. Plaintiffs also assert the defenses of laches and equitable estoppel, and they have antitrust and business disparagement claims. Defendant's patent infringement claims are counterclaims in this case.

After Defendant's Motion to Dismiss the antitrust and business disparagement claims was denied, Defendant filed this Motion to Bifurcate. Defendant seeks to bifurcate and stay discovery on Plaintiffs' antitrust and business disparagement claims until its counterclaim for patent infringement is decided.

II. *ANALYSIS*

The Federal Rules of Civil Procedure allow a district court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues...." FED.R.CIV.P. 42(b). A motion to bifurcate "is a matter within the sole discretion of the trial court." First Tex. Sav. Ass'n v. Reliance Ins. Co., 950 F.2d 1171, 1174 n. 2 (5th Cir.1992); *see also* Gardco Mfg. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed.Cir.1987).

Frequently, parties seek to bifurcate liability and damages phases of a trial, or to bifurcate the punitive damages phase. In this case, however, Defendant seeks to bifurcate and stay discovery of ***Plaintiffs' claims*** until its own ***counterclaims*** are resolved. This strategy would not, however, further convenience or avoid prejudice. Instead, bifurcation and a stay of discovery would seriously prejudice Plaintiffs' right to have a prompt resolution of the claims they filed against Defendant. [1]

**\*2** Defendant argues that if its patents are found to be valid and Plaintiffs' products are found to be infringing, then Plaintiffs' antitrust and business disparagement claims fail and there will be no need for additional discovery. Plaintiffs disagree with Defendant's characterization but, more importantly, it is far from clear in this case that Defendant will prevail on its patent infringement claims. Additionally, Defendant argues that the fact issues on the patent infringement claims are distinct from the fact issues on the antitrust and business disparagement claims. Even if Defendant is correct, many of the persons to be deposed and otherwise provide discovery would be the same for all claims, and it would be an inconvenience as well as a waste of lawyers' and witnesses' time and other resources to require the same witnesses to be deposed more than once. The Court concludes that bifurcation of discovery would not further convenience or avoid prejudice in this case and, therefore, denies the Motion to Bifurcate as to the request for a stay of discovery.

It may appear later, however, that bifurcated trials, as opposed to bifurcated discovery, would be conducive to an expedited and economical resolution of this case. Should that happen, either party may move for a bifurcated trial after the completion of discovery.

## III. *CONCLUSION AND ORDER*

Bifurcation of discovery in this case would neither further convenience nor avoid prejudice. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Bifurcate and Stay Discovery [Doc. # 45] is **DENIED.** Either party may, if appropriate after the close of discovery, move for bifurcated trials of the patent issues and the antitrust and business disparagement issues.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2850061

## Footnotes

1    TI Group filed its patent infringement claims against Performance in November 2005 in the Eastern District of Michigan, but dismissed the lawsuit voluntarily after Performance challenged personal jurisdiction.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

                Plaintiffs,

v.

GOOGLE LLC,

                Defendant.

Case No. 1:20-cv-03010-APM
HON. AMIT P. MEHTA

STATE OF COLORADO, *et al.*,

                Plaintiffs,

v.

GOOGLE LLC,

                Defendant.

Case No. 1:20-cv-03715-APM
HON. AMIT P. MEHTA

## ORDER TO BIFURCATE PROCEEDINGS

The Parties in the above-captioned actions have jointly requested to bifurcate the proceedings to hold separate trials on liability and, if necessary, remedy.

Rule 42(b) of the Federal Rules of Civil Procedure authorizes a court to hold a separate trial on one or more separate issues, "[f]or convenience, to avoid prejudice, or to expedite and economize." The Court has considered the Parties' requests for separate trials in this matter regarding (a) the liability of the Defendant for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, as alleged by the U.S. Plaintiffs and the Plaintiff States, and (b) the remedies for any such violations.

The Court finds that, to the extent necessary, holding separate trials on the issues of liability and remedies will be more convenient for the Court and the Parties, and will expedite and economize this litigation.

IT IS THEREFORE ORDERED

1.      There will be a liability phase in each matter that will address only the Defendant's liability under the Sherman Act, and, if the Court renders a decision finding the Defendant liable, the Court will hold separate proceedings regarding the remedies for Defendant's violation(s) of the Sherman Act.

2.      During the liability phase, expert discovery and testimony need not offer specific opinions regarding particular remedies beyond that necessary to demonstrate liability under Section 2 of the Sherman Act.

3.      Nothing in this Order shall (a) alter the Parties' respective abilities in either action to offer evidence relevant to any issue in the liability proceedings nor alter the burden of proof, persuasion, or production to establish each and every element of liability, justifications, or defenses, or (b) prohibit or limit discovery during the liability phases of these actions on issues relevant to liability under Section 2 of the Sherman Act.

Dated:

_____
Amit. P. Mehta
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA, *et al.*, )
)
               Plaintiffs, )
)
   v. )     Civil Action No. 1:23cv0108 (LMB/JFA)
)
GOOGLE LLC, )
)
               Defendant. )
_____ )

## ORDER

This matter is before the court on plaintiffs' motion to clarify scheduling order. (Docket no. 276). This motion was filed on June 30, 2023 and was noticed for a hearing on July 7, 2023. (Docket no. 278). On July 3, 2023, the court entered an order indicating this motion would be decided without argument once defendant filed its response. (Docket no. 281). On July 5, 2023, defendant filed its brief in opposition. (Docket no. 282).

As shown in the memorandum in support of this motion and defendant's opposition, the parties agree that if plaintiffs prevail on their claims before the jury and make a determination to seek equitable relief, a separate proceeding before the District Judge would be necessary. Plaintiffs' motion requests that if a hearing on equitable relief is necessary following the jury trial, the court should determine "at that time the extent to which additional fact and expert discovery related to equitable remedies is necessary". (Docket no. 276 at 1). Defendant opposes this motion on various grounds, some procedural and some substantive. Defendant argues this is not a motion to clarify but it is a motion to modify the scheduling order that would require a showing of good cause. Defendant states that the issue of conducting additional discovery as to equitable remedies following the jury trial was not discussed during the negotiations concerning

1

the scheduling order. Defendant notes there is no provision in the scheduling order addressing

how the court would proceed with determining plaintiffs' entitlement to equitable relief

following the jury trial or the bifurcation of discovery relating to potential equitable remedies.

Defendant takes the position that the deadlines in the scheduling order requiring that all fact and

expert discovery must be completed by certain dates includes all fact and expert discovery

concerning any equitable remedies that plaintiffs may seek following any verdict in plaintiffs'

favor. Defendant argues that it would be prejudicial at this stage of the proceedings to

"bifurcate" any discovery relating to potential equitable relief. Defendant relies on Judge

Payne's approach in *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 345 F. Supp. 3d 614 (E.D. Va. 2018)

in which it appears that no additional fact discovery was undertaken between the jury verdict and

the court's initial determination on plaintiff's entitlement to equitable relief. However, in that

case Judge Payne's initial and supplemental scheduling orders specifically addressed the timing

of an evidentiary hearing regarding equitable relief, if needed, following the jury trial.[1]

Given that the current scheduling order in this case does not address the procedure to be

followed if the jury finds for plaintiffs and plaintiffs then decide to pursue equitable relief,

seeking some clarification on that matter is appropriate. Plaintiffs' motion makes the seemingly

simple request that the court would determine what additional fact and expert discovery "is

necessary" if plaintiffs prevail at the jury trial and then decide to seek equitable relief based on

---

[1] A review of the docket sheet in *Steves & Sons* reveals the process followed by Judge
Payne after the initial jury trial included having the plaintiff identify the specific equitable relief
being sought, the legal basis for that relief, the witnesses to be called, and the documents
intended to be introduced. The parties were directed to provide a list of expert witnesses to be
called at the hearing and to agree on a schedule for exchanging expert reports relating to the
equitable relief being sought. (Docket no. 1132). After Judge Payne found divestiture was
appropriate, a special master was appointed to obtain information and make a recommendation
as to how that divestiture should be accomplished.

2

the jury's verdict. Justifiably, defendant is concerned that plaintiffs' request could be interpreted as an indication that additional fact discovery would be necessary which could result in another round of expensive and time-consuming fact discovery. As shown in the correspondence reflecting the consultation among counsel prior to filing this motion (Docket nos. 282-3 and 282-4) and in plaintiffs' memorandum, plaintiffs have failed to provide defendant or the court with any specific information concerning what additional discovery may be needed that is "unique to potential equitable remedies". They refer to "technical feasibility" and the potential need to review additional source code, hardware on which the source code resides, and Application Programming Interface calls made among and within defendant's systems but they do not specify how any of that information would be needed to argue what equitable remedy is appropriate based on the jury's findings. In any event, the first step in this process is that plaintiffs must obtain a jury verdict in its favor. The next step would be for plaintiffs to decide, based on the jury's findings, whether they want to seek any equitable relief and, if so, what relief they want to request. As in *Steves & Sons*, plaintiffs will need to identify the equitable relief being sought based on the outcome of the jury trial promptly and provide the legal basis for that requested relief. At that point, it is likely that the parties would need to engage in some limited, additional exchange of expert reports that would address the specific remedies being sought.

For these reasons, plaintiffs' motion is granted in part. In the event plaintiffs obtain a jury verdict is their favor on liability and monetary damages, the court will promptly convene a status conference to discuss whether plaintiffs wish to pursue equitable relief based on the jury's verdict, what equitable relief plaintiffs intend to pursue, the schedule for exchanging expert reports addressing the specific equitable remedy or remedies being sought, the schedule for briefing by the parties, and a date for the hearing. While it is unlikely that additional fact

3

discovery will be necessary for the court to decide what, if any, equitable remedies are appropriate, the parties will have the opportunity to address that issue at that status conference following any jury verdict in plaintiffs' favor.

Entered this 11th day of June, 2023.

_____ /s/ _____

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

4

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 160 of 168

Valenzuela v. Crest-Mex Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 2778104

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

Felipe VALENZUELA, et al., Plaintiffs,

v.

CREST-MEX CORPORATION, et al., Defendants.

No. 3:16-cv-1129-D

|

Signed 06/26/2017

**Attorneys and Law Firms**

Jamie Harrison Zidell, Joshua Aaron Petersen, Robert Lee Manteuffel, J.H. Zidell PC, Dallas, TX, for Plaintiffs.

Leland C. de la Garza, Barrett Christopher Lesher, Hallett & Perrin PC, Derek D. Rollins, Martha Hardwick Hofmeister, Timothy D. Zeiger, Michelle Morgan, Shackelford, Melton, McKinley & Norton, LLP, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER [1]

DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE

**\*1** Defendants Thomas Townsend, Crest-Mex Corporation d/b/a La Sierra Apartments, MTORMA Trust, Dallas Net Lease Trust, Sierra Management Trust, Sierra Management Co., La Sierra Apartments Trust, Cedar Sierra Management Co., LLC., and 3328 Cedar Plaza Lane Apartments, Inc. (collectively, the "Townsend Defendants") have filed a Motion for Temporary Stay of Discovery and Protective Order [Dkt. No. 45], and Defendant Kelly Goodwin has filed a Motion for Protective Order [Dkt. No. 47].

United States District Judge Sidney A. Fitzwater has referred both motions to the undersigned United States magistrate judge for determination under 28 U.S.C. § 636(b)(1)(A). *See* Dkt. No. 48.

Plaintiffs Felipe Valenzuela and Jose Guillermo Gandara have filed a response to each motion, *see* Dkt. Nos. 50 & 51, and the Townsend Defendants and Goodwin have filed replies, *see* Dkt. Nos. 52 & 54.

For the reasons explained below, the Court DENIES the Townsend Defendants' Motion for Temporary Stay of Discovery and Protective Order [Dkt. No. 45] and Defendant Kelly Goodwin's Motion for Protective Order [Dkt. No. 47].

## Background

In support of their Motion for Temporary Stay of Discovery and Protective Order, the Townsend Defendants explain that

> Plaintiffs sued ten defendants alleging that they all employed Plaintiffs, for purposes of the [Fair Labor Standards Act ("FLSA") ], and claiming that they were not paid $23,273.00 in wages for work as maintenance workers on the La Sierra Apartments located in Dallas, Texas. Defendants moved to dismiss because the FLSA does not cover Plaintiffs and because Defendant Townsend is not an "employer" of Plaintiffs under the FLSA. Defendants' motion to dismiss presented threshold issues that should be addressed before Defendants are subjected to the considerable expense and burden of this type of litigation. The motion to dismiss is pending. Defendants also recently filed a motion to compel arbitration based on newly discovered arbitration agreements. Defendants requested that the Court rule on the motion to compel arbitration prior to ruling on the motion to dismiss.

> Meanwhile, Plaintiffs have initiated a barrage of discovery directed at all Defendants, including hundreds of discovery requests and seeking to depose all nine defendants in this lawsuit. Much of the written discovery is subject to objection given its overbreadth, request for irrelevant material, and the undue burden that would be imposed on Defendants. If discovery is not stayed, Defendants will be forced to spend an amount complying with the discovery that exceeds Plaintiffs' damages, all before Defendants' threshold motions are ruled upon. Defendants are hereby moving for protection from such discovery by asking the Court to exercise its discretion to protect Defendants from discovery until the Court rules on Defendants' motion to compel arbitration and/or motion to dismiss. For the reasons shown below, good cause exists for the Court to exercise its discretion.

Dkt. No. 45 at 1-2 (footnote omitted).

**\*2** More specifically, the Townsend Defendants contend that their request should be granted after considering the relevant factors of "(1) the breadth of discovery sought; (2) the burden

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 161 of 168

Valenzuela v. Crest-Mex Corporation, Not Reported in Fed. Supp. (2017)

of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking the stay." *Id.* at 4. They assert, as to the first factor, that

> Plaintiffs served on the nine moving Defendants a total of 603 discovery requests: 13 requests for admission, 12 interrogatories, and 42 requests for production for each of the nine moving Defendants. These discovery requests are wide-reaching and will require much work by Defendants to comply with the requests. In addition, on April 26, 2017, Plaintiffs' counsel requested dates for the depositions of corporate representatives of the eight corporate Defendants and Defendant Townsend. .... The topics listed in Plaintiffs' counsel's letter are equally wide-reaching.

*Id.* at 4-5 (citations omitted). As to the second factor, the Townsend Defendants argue that

> Plaintiffs' counsel is seeking to conduct all of Plaintiffs' discovery while Defendants' Motions are pending, thereby subjecting Defendants to the burden of this discovery even if its motions are meritorious and are ultimately granted. The burden is substantial. The discovery has been propounded on all nine moving Defendants and in total comprise 603 discovery requests. The large number of discovery requests demonstrates the obvious burden that will be imposed on Defendants.
>
> Beyond the sheer magnitude of the discovery, as reflected in the attached declaration of Defendant Townsend, it will take Defendants at least thirty hours to comply with the discovery requests. Exhibit F, Townsend Decl., ¶ 3 (App. 46). And, as reflected in the attached declaration of Barrett Lesher, one of Defendants' counsel, it will take Defendants' counsel at least ten hours to prepare the discovery responses. Exhibit G, Lesher Decl., ¶ 3 (App. 48).
>
> The depositions of the eight corporate representatives and Defendant Townsend, a total of nine depositions, is expected to take at least eight hours of preparation and potentially as much as 63 hours of depositions (7 hours

times 9 depositions). Exhibit G, Lesher Decl., ¶ 4 (App. 48). Thus, Plaintiffs seek to impose on Defendants as much as 101 hours of discovery burden, seeking discovery on all issues in the case, while Defendants' potentially dispositive Motion is pending.

*Id.* at 5. And, as to the third factor, the Townsend Defendants assert that,

> [a]t the threshold of this case, Defendants challenged Plaintiffs' standing to bring a claim under the Fair Labor Standards Act ("FLSA") because there is no individual or enterprise coverage. And, Defendant Townsend challenged Plaintiff's right to sue him as an "employer" under the FLSA.
>
> Plaintiffs claim they worked as maintenance employees at the La Sierra Apartments in Dallas until March 1, 2006. (Complaint, ¶ 20, 21) Plaintiffs claim, in conclusory fashion, that Defendants' business and Plaintiffs' work for Defendants "affected interstate commerce" because "materials and goods that Plaintiffs used" in their job "moved through interstate commerce prior to and subsequent to Plaintiffs' use." (Complaint, ¶ 22) Plaintiffs claim that Defendant Townsend ran the apartment business primarily from California, while making trips to Texas to supervise on-site operations. (Complaint, ¶ 22) Based on these allegations, Plaintiffs assert coverage under the FLSA.

**\*3** Defendants' Motion challenges Plaintiffs' pleading of FLSA coverage, both from Plaintiffs' side and from Defendants' side. Defendants' Motion cites numerous authorities, including this Court's own decision in *Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052 (N.D. Tex. 2014), rejecting FLSA coverage allegations similar to those in Plaintiffs' complaint. The Court should rule on this threshold issue (and Townsend's "employer" issue) before Defendants are subjected to the burden of all-out discovery in this case. If the FLSA does not apply, then Plaintiffs' lawsuit based solely on the FLSA should not be allowed to proceed and Defendants should not be subjected to the burden of Plaintiffs' discovery. It would be manifestly unjust to give Plaintiffs' full discovery before they have even made it past the threshold FLSA coverage issue.

Additionally, Defendants' motion to compel arbitration is as equally strong. Defendants presented the court with two arbitration agreements that were provided to Plaintiffs, and Plaintiffs continued to work and accept pay after receiving the agreements. Additionally, Plaintiffs' claims fall within

Valenzuela v. Crest-Mex Corporation, Not Reported in Fed. Supp. (2017)

the scope of the agreements. Therefore, Defendants have provided strong arguments in support of arbitration.

*Id.* at 5-7.

Finally, the Townsend Defendants contend that a stay is appropriate where they have presented substantial arguments for dismissal, where Plaintiffs have served objectionable and harassing discovery, and where a temporary stay of discovery will not unduly delay litigation. *See id.* at 7-9.

Goodwin similarly explains that she has filed a motion to dismiss Plaintiffs' case under Federal Rule of Civil Procedure 12(b)(6), asserting "that Plaintiffs lack standing, and because Goodwin does not meet the statutory definition of 'employer,' " and that "Plaintiffs served three (3) sets of written discovery on Goodwin: (1) requests for production, (2) requests for admissions, and (3) interrogatories (collectively, the 'Discovery Requests')." Dkt. No. 47 at 1. Goodwin asserts that, "[i]f the Court does not protect Goodwin from the Discovery Requests, she will be forced to spend time and money responding to the Discovery Requests that would otherwise be unnecessary should the threshold issues made the subject of her motion to dismiss be decided in her favor and/or should the issues made the subject of her co-defendants' motions concerning arbitration (which seeks to stay this entire proceeding) be decided in their favor." *Id.* at 2. Goodwin explains that her

> dispositive motion challenges Plaintiffs' pleadings, and the cases cited therein (including this Court's own prior decision) reject FLSA coverage in cases with similar allegations. The Court should rule on this threshold issue (and Goodwin's "employer" issue) before Goodwin is subjected to the burden and expense of discovery in this case.
>
> If the FLSA does not apply, then Plaintiffs' FLSA lawsuit should not be allowed to proceed and, correspondingly, Goodwin should not be subjected to the burden or expense of responding to the Discovery Requests (or, additional discovery such as depositions). It would be manifestly unfair, costly to Goodwin, and burdensome to require Goodwin to participate in full discovery before Plaintiffs have even made it past the threshold issues described herein.

*Id.* at 3 (footnote omitted). "Notwithstanding these arguments, Goodwin concurs with her co-defendants' assertion the arguments made the subject of their motion

to compel arbitration are strong and would suffice as an independent basis on which to wholly protect Goodwin from the Discovery Requests." *Id.* at 3 n.1. "Goodwin, therefore, moves this Court for complete protection from the Discovery Requests, or at least until such time as the Court has ruled on Goodwin's motion to dismiss and/or her co-defendants' motions concerning arbitration." *Id.* at 2.

**\*4** Plaintiffs respond that the "Townsend Defendants' Motion to Dismiss does not assert an outright legal defense against the allegations in the Complaint other than the statute of limitations as to some of Plaintiffs' claims, but instead attacks the sufficiency of the pleadings under Rule 12(b)(6) and alleges that Plaintiffs have failed to plead any facts to support their individual and enterprise coverage allegations or that Defendant Townsend was their employer"; that, "even if the Court finds that Plaintiffs need to provide further factual development," the Court is likely to allow Plaintiffs to replead; that, "[a]s to the breadth of discovery sought, Plaintiffs' discovery requests in this case inquire into basic elements of Plaintiffs' FLSA claims, i.e., hours worked, identification of goods and materials used, identity of co-workers (who are witnesses with knowledge of relevant facts such as the Plaintiffs' hours worked and the Defendants' wage and hour policies and practices), amounts paid to Plaintiffs, Defendants' wage and hour policies, and issues related to FLSA coverage and employer status of the various Defendants"; that, "[w]hile the Townsend Defendants refer to a total of 603 discovery requests, this is a result of the fact that there are nine separate entities involved in the business structure created by Defendant Townsend himself," where "Plaintiffs served thirteen requests for admissions, twelve interrogatories, and forty-two requests for production on each of the Townsend Defendants"; and that, "[g]iven the relationship between the Townsend Defendants, it is likely that the majority of the Townsend Defendants will have similar, if not identical, responses to most of Plaintiffs' discovery requests." Dkt. No. 50 at 2, 3, 4-5.

Plaintiffs further respond that,

> [a]s to the burden of responding to Plaintiffs' discovery requests, the Townsend Defendants argue in conclusory fashion that the burden of responding to Plaintiffs' discovery requests would be "substantial." The Townsend Defendants' counsel

Case 4:23-cv-03560   Document 132-1   Filed on 04/05/24 in TXSD   Page 163 of 168

Valenzuela v. Crest-Mex Corporation, Not Reported in Fed. Supp. (2017)

provided an affidavit estimating that it would take at least ten hours to respond to the Plaintiffs' discovery requests. This amounts to barely over an hour per party. That the Townsend Defendants' counsel is representing nine separate entities in this litigation is a fact that is completely out of Plaintiffs' control. The Townsend Defendants' calculation of the discovery burden also incorporates a "worst case" scenario as to the requested depositions of the parties, presuming that all of the depositions will last the full seven hours provided for in the Federal Rules of Civil Procedure. Furthermore, the burden of deposing the Townsend Defendants will fall more heavily on Plaintiffs as they will be required to engage the services of a court reporter and bear the full cost associated therewith, at least until such time as they may prevail in this matter. Finally, the Townsend Defendants have already responded to Plaintiffs' discovery requests with naught but objections; albeit the responses are generally improper under *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. Nov. 12, 2014), and a motion to compel may ultimately be necessary.

*Id.* at 4 (citations omitted).

Plaintiffs also note,

[a]s one final matter, [that] Defendants previously requested that the Court stay all discovery until after deciding the Defendants' motions to dismiss when the parties filed their Joint Status Report Regarding Scheduling Proposal. The Court did not stay discovery when it entered its Scheduling Order on March 20, 2017. As this issue was previously raised

with the Court and the Court declined to enter a similar stay of discovery less than three months ago, the current request to stay discovery should be declined as well.

*Id.* at 8-9 (citations omitted).

As to Goodwin's Motion for Protective Order, Plaintiffs oppose for many of the same reasons as they raise in opposition to the Townsend Defendants' motion, but Plaintiff also note that, in her motion, Goodwin did not address any of the relevant factors in detail and that she "argues only in conclusory fashion that she should not be subjected to the burden or expense of responding to the discovery requests." Dkt. No. 51 at 3.

**Legal Standards and Analysis**

**\*5** The Court has discretion to stay discovery "for good cause shown." FED. R. CIV. P. 26(c)(1); *accord Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990); *see generally Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citations omitted); *see also E.E.O.C. v. BDO USA, L.L.P.*, 856 F.3d 356, 367 (5th Cir. 2017), as revised (May 8, 2017). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry*, 901 F.2d at 435. The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by

Case 4:23-cv-03560 Document 132-1 Filed on 04/05/24 in TXSD Page 164 of 168

Valenzuela v. Crest-Mex Corporation, Not Reported in Fed. Supp. (2017)

discovery." *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984).

In particular, "[t]he Court has broad discretion and inherent power to stay discovery' while a motion to dismiss is pending," but "[s]uch a stay is not [ ] automatically granted whenever a motion to dismiss is pending." *Stanissis v. Dyncorp Int'l LLC*, No. 3:14-cv-2736-D, 2014 WL 7183942, at *1 (N.D. Tex. Dec. 17, 2014) (internal quotation marks omitted). "[N]o federal rule, statute, or binding case law applies here to automatically stay discovery pending a ruling on" defendants' motions to dismiss. *Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 3:14-cv-257-B, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014). "In fact, such a stay is the exception rather than the rule." *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3:08-cv-774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008). "[H]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Id.* (internal quotation marks omitted).

The law is the same as to a pending motion to compel arbitration, although "[a] trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

As the Townsend Defendants note, courts in this jurisdiction have explained that relevant "factors that inform the court's discretion are: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake v. Nat'l Broad. Co.*, No. 3:04-cv-652-R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004).

Here, the Court is persuaded that the discovery requests that Plaintiffs have served and the depositions that they seek are not so voluminous and do not present such an undue burden as the defendants make them out, considering that multiple, apparently related defendants have been sued here and are jointly represented. The Court finds that the defendants' assertions—which "only detail[ ] the usual inconveniences and costs that are associated with discovery practice"—"do not suffice to show hardship or inequity" or other good cause that would justify a stay of discovery and protective order

under Rule 26(c)(1). *Ashford Inc. v. Unite Here*, No. 3:15-cv-0262-M, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015).

And, as to the pending dispositive motions, the Townsend Defendants and Goodwin raise threshold challenges to Plaintiffs' FLSA claims that are not uncommon and have not generally resulted in staying discovery—even in cases to which the defendants' briefing points—and that the Court notes, without suggesting a view on the merits of defendants' pending motions to dismiss, often have resulted in leave to replead. *See, e.g.*, *Lopez-Santiago v. Coconut Thai Grill*, No. 3:13-cv-4268-D, 2014 WL 840052, at *4–*5 (N.D. Tex. Mar. 4, 2014). That all weighs heavily in favor of the Court's "declin[ing]" in the exercise of its broad discretion to ... preclude all discovery in this case during the time it will take to decide the instant motions to dismiss and (if applicable) any motions addressed to amended pleadings." *Stanissis*, 2014 WL 7183942, at *1. And, although the motion to compel arbitration might, if granted, result in the complete dismissal of this case as pending in this Court, that possibility alone does not, considering all the other factors discussed above, justify taking the extraordinary step of staying discovery.

**\*6** Accordingly, the Court determines, in an exercise of its broad discretion, that a stay of discovery and protective order, as requested, are not appropriate here. And, after considering all of the circumstances presented, the Court further determines that the parties will bear their own expenses, including attorneys' fees, in connection with the Townsend Defendants' Motion for Temporary Stay of Discovery and Protective Order [Dkt. No. 45] and Defendant Kelly Goodwin's Motion for Protective Order [Dkt. No. 47].

### Conclusion

For the reasons explained above, the Court DENIES the Townsend Defendants' Motion for Temporary Stay of Discovery and Protective Order [Dkt. No. 45] and Defendant Kelly Goodwin's Motion for Protective Order [Dkt. No. 47].

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 2778104

## Footnotes

1    Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[ ] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3522317

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. Ohio,
Eastern Division.

Pamela D. WILLIAMS, et al., Plaintiffs,

v.

NEW DAY FARMS, LLC, et al., Defendants.

No. 2:10–cv–0394.
|
Sept. 7, 2010.

**Attorneys and Law Firms**

Shawn J. Organ, Jonathan Kent Stock, Organ Stock LLP, Columbus, OH, for Plaintiffs.

Kevin Patrick Braig, Dayton, OH, Thomas Patrick Whelley, II, Dayton, OH, Lawrence Scott Helkowski, Ohio Attorney General's Office, Columbus, OH, Aaron Scott Farmer, Columbus, OH, for Defendants.

*ORDER*

TERENCE P. KEMP, United States Magistrate Judge.

**\*1** This case is before the Court to consider the motion to stay discovery filed by defendants New Day Farms, LLC and Daybreak Foods, Inc. The motion has been fully briefed. For the following reasons, the motion to stay (# 17) will be denied.

*I. Background*

This case arises out of another action filed in this Court, *New Day Farms, LLC v. Board of Trustees of York Township,* Case No. 2:08–cv–1107, in which Pamela Williams and Northwest Neighborhood Alliance, the plaintiffs here, were named as defendants. The facts of that case, relevant for purposes of the current motion, include the following. In June 2007, New Day, a Minnesota limited liability company, purchased a poultry farm in York Township, Union County, Ohio. According to the allegations of the

complaint in Case No. 2:08–cv–1107, Ms. Williams and NNA opposed the development of poultry farms by out of state corporations and discriminated against such poultry farms and their Hispanic employees. New Day contended that the alleged discrimination was demonstrated by the actions of Ms. Williams and NNA in motivating the Board of Trustees of York Township to enact a fire code as a pretext for impermissibly regulating New Day's operations. Ms. Williams and NNA filed a motion to dismiss relying, in part, on the *Noerr–Pennington* doctrine. This Court granted the motion to dismiss filed by Ms. Williams and NNA and dismissed all claims against them by order dated November 17, 2009. New Day and Daybreak have appealed to the Sixth Circuit Court of Appeals.

In the current case, Ms. Williams and NNA contend that the previous case was a "SLAPP Suit" or Strategic Litigation Against Public Participation action designed to silence their efforts as critics of New Day and Daybreak. Ms. Williams and NNA assert claims of malicious civil prosecution, abuse of process, and claims for violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. They also assert claims for attorneys' fees pursuant to 43 U.S.C. § 1988 and injunctive relief.

*II. Legal Standard*

A stay of discovery for any reason is a matter ordinarily committed to the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.* 643 F.2d 1229 (6th Cir.1981). In ruling upon a motion for stay, the Court is required to weigh the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery. Additionally, the Court is required to take into account any societal interests which are implicated by either proceeding or postponing discovery. *Marrese v. American Academy of Orthopedic Surgeons,* 706 F.2d 1488, 1493 (7th Cir.1983). When a stay, rather than a prohibition, of discovery is sought, the burden upon the party requesting the stay is less than if he were requesting a total freedom from discovery. *Id.*

However, one argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6). As one court has observed,

**\*2** The intention of a party to move for judgment on the pleadings is not ordinarily sufficient to justify a stay of discovery. 4 J. Moore, *Federal Practice* § 26.70[2], at 461. Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.... Since motions to dismiss are a frequent part of federal practice, this provision only makes sense if discovery is not to be stayed pending resolution of such motions. Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. Although it is conceivable that a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a "fishing expedition" or for settlement value, *cf.* Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975), this is not such a case.

*Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D.Cal.1990). *See also Turner Broadcasting System, Inc. v. Tracinda Corp.,* 175 F.R.D. 554, 556 (D.Nev.1997) ("a pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery...."). Thus, unless the motion raises an issue such as immunity from suit, which would be substantially vitiated absent a stay, or unless it is patent that the case lacks merit and will almost certainly be dismissed, a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion.

### III. *Analysis*

New Day and Daybreak assert the following arguments in support of their motion to stay discovery. First, they contend that significant discovery was undertaken in Case No. 2:08–cv–1107 such that a stay of discovery will not result in any prejudice to plaintiffs in this action. On the other hand, they argue, permitting additional discovery may result in duplication of efforts and unnecessary expense. Additionally, they assert that the goals of judicial economy and preservation of the parties' resources will be met by a stay. In support of this argument they note that the Court has already recognized the importance of these goals in entering a stay during the appeal of their attorneys' fees motion in Case No. 2:08–cv–1107. Further, New Day and Daybreak assert that additional discovery is unnecessary to address the legal issues raised in their dispositive motion including the issue of *Noerr–Pennington* immunity.

To the contrary, Ms. Williams and NNA argue that the discovery undertaken in the other lawsuit is addressed to completely different issues with limited relevance to this action. Plaintiffs contend that discovery is necessary directed to issues including the motive for suing Ms. Williams and NNA, the identification of Does 1–5 named as defendants in Case No. 2:08–cv–1107, and the financial background of New Day and Daybreak. Further, they contend that, to the extent discovery was undertaken in the other action, it was "incomplete and deficient" and a stay may increase the risk that information will not be recovered. Additionally, plaintiffs contend that a pending dispositive motion is not grounds for staying discovery. Plaintiffs note that New Day and Daybreak have moved not only to dismiss but, in the alternative, for summary judgment. This circumstance, according to plaintiffs, weighs even further against a stay of discovery.

**\*3** In reply, New Day and Daybreak assert that the ability of Ms. Williams and NNA to fully respond to the motion to dismiss proves that additional discovery is not required here. According to defendants, Ms. Williams and NNA cite to various discovery materials from the other action "no less than 40 times" in the response to the motion to dismiss. Further, New Day and Daybreak argue that, to the extent spoliation of evidence based on the conduct of discovery in the other case is a concern to plaintiffs, this is the first time plaintiffs have raised it. Moreover, New Day and Daybreak contend that such a concern is unfounded because

preservation efforts were undertaken in Case No. 2:08–cv–1107 in accordance with the parties' agreed upon discovery plan. Finally, New Day and Daybreak reiterate that a stay of discovery will not prejudice plaintiffs but will prevent duplicative and harassing discovery.

While, as all parties acknowledge, significant discovery was undertaken in Case No. 2:08–cv–1107, Ms. Williams and NNA have identified additional discovery they wish to pursue for purposes of their claims in this case. In light of this, none of the arguments advanced by New Day and Daybreak persuade the Court that a stay of discovery is warranted here. To the extent that New Day and Daybreak are concerned about potentially duplicative discovery or expense, should any issues arise, the Federal Rules of Civil Procedure provide other options for addressing such situations short of a complete stay. However, the primary basis for the requested stay, the pendency of a potentially dispositive motion as to which the parties have presented substantial arguments on both sides, is simply not sufficient to warrant a complete stay of discovery. The potential prejudice to plaintiffs and the delay of the case outweigh the defendants' arguments in favor of a stay.

## IV. *Disposition*

Based on the foregoing, the motion to stay discovery (# 17) is denied.

## V. *Appeal Procedure*

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3522397

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.