**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>       Plaintiff,<br><br>       v.<br><br>U.S. ANESTHESIA PARTNERS, INC. et al.<br><br>       Defendants. | Case No.: 4:23-CV-03560-KH |

**DEFENDANTS' APPENDIX TO
RULE 26(f) JOINT DISCOVERY/CASE MANAGEMENT PLAN**

April 5, 2024

# TABLE OF CONTENTS

## CASES

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 2014 WL 5392465
(S.D.N.Y. Oct. 9, 2014) .......................................................................... DEFS001

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 2008 WL 8465061
(S.D. Tex. Aug. 11, 2008) ........................................................................DEFS005

*Smith v. Potter*, 400 F. App'x 806 (5th Cir. 2010) ...........................................DEFS007

## OTHER AUTHORITIES

City of Houston and Jane Doe Defendant 1's Motion To Stay the Proceedings,
*Fontenot v. City of Houston*, No. 4:12-cv-03503 (S.D. Tex. Oct. 15, 2013),
ECF 81 ...................................................................................................DEFS013

Joint Civil Rule 16.3 Report to the Court, *FTC v. Meta Platforms, Inc.*,
No. 1:20-cv-03590 (D.D.C. Feb. 22, 2022), ECF No. 100 (excerpted)......................DEFS028

Joint Scheduling Order, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590
(D.D.C. Mar. 3, 2022), ECF No. 103 (excerpted) ........................................DEFS031

Order, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. July 11, 2023),
ECF No. 283 ...........................................................................................DEFS034

Order to Bifurcate Proceedings, *United States v. Google LLC*, No. 1:20-cv-03010
(D.D.C. Dec. 6, 2021), ECF No. 264 ........................................................DEFS038

Pls.' Motion to Bifurcate, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495
(W.D. Wash. Feb. 29, 2024), ECF No. 167...............................................DEFS040

Case 4:23-cv-03560   Document 132-2   Filed on 04/05/24 in TXSD   Page 3 of 61

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by   In re Bank of New York Mellon Corp. Forex Transactions Litigation,   S.D.N.Y.,   November 6, 2014

2014 WL 5392465

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

In re BANK OF NEW YORK MELLON CORP.

FOREX TRANSACTIONS LITIGATION.

This document relates to: All Actions.

United States of America, Plaintiff,

v.

The Bank of New York Mellon, et ano., Defendants.

No. 12 MD 2335(LAK).
|
Signed Oct. 9, 2014.

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, District Judge.

**\*1**  This matter now is before the Court because the parties are at an impasse over the question whether defendants should be permitted to take depositions of certain non-party witnesses and over the scope of other such depositions. It is well at the outset to bear in mind certain basic considerations:

- Discovery is a means of obtaining evidence that is important to the resolution of cases-ideally in a "just, speedy, and inexpensive" manner. [1]

[1]   Fed.R.Civ.P. 1.

- Discovery is not an end in itself.

  - Discovery is not a means of obtaining raw material simply because that raw material, which bears some relationship to a matter in controversy, might one day be useful. "The purpose of discovery is not solely to get information .... Blindly focusing on the universe of relevant information can lead to a very expensive discovery process." [2]

[2]   Sidney K. Kanazawa, *Rethinking Discovery and Document Retention in the Digital Age,* 13 (No. 1) PRAC. LITIGATOR 39, 47 (2002).

- To guard against discovery abuse, the Federal Rules of Civil Procedure now provide that a "court must limit the frequency or extent of discovery otherwise allowed by these rules [i.e., discovery of information that is relevant in the broadest sense] ... if it determines[, among other things,] that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." [3]

[3]   Fed.R.Civ.P. 26(b)(2)(C).

Thus, courts must exercise practical judgment in defining the scope of pretrial discovery lest a vehicle intended to facilitate just, speedy and inexpensive determinations become an obstacle to accomplishing any of those goals.

*Facts*

*The Litigation*

Although they are brought on somewhat different legal theories, both the civil cases included in *In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *United States v. Bank of New York Mellon* arise out of much the same nucleus of facts, which is described in the Court's opinions on motions to dismiss in the government case [4] and in one of the private cases. [5] Briefly stated, the Bank of New York Mellon and its affiliates (collectively "BNY Mellon" or the "Bank") have custodial clients that need to engage in currency transactions. At times relevant to the present controversy, the Bank offered a so-called standing instruction service pursuant to which it automatically provided currency exchange services as needs arose. All or substantially all the plaintiffs claim, often among other things, that the Bank, through a variety of representations to clients, conveyed the impression that it was providing its standing instruction clients with the best prices it could obtain when, in fact, it was charging considerably more.

[4]   *United States v. Bank of New York Mellon,* 941 F.Supp.2d 438 (S.D.N.Y.2013) [ *"DOJ Case"* ].

DEFS001

Case 4:23-cv-03560   Document 132-2   Filed on 04/05/24 in TXSD   Page 4 of 61

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

5 *In re Bank of New York Mellon Corp. Forex Transactions Litig.,* 921 F.Supp.2d 56 (S.D.N.Y.2013).

The plaintiffs fall into several categories. First, the government, suing under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"),[6] seeks the maximum civil penalty permitted by law, which the United States Attorney's Office asserts amounts to hundreds of millions of dollars. Second, various BNY Mellon customers, in some cases individually and in others on behalf of alleged classes of customers, seek damages (1) on the basis of alleged false or misleading representations with respect to the pricing of standing instruction foreign exchange transactions; (2) for breach of contract; and (3) for breach of fiduciary duties allegedly owed to them by the Bank. Third, two actions have been brought on behalf of public sector customer plaintiffs under the California False Claims Act. Fourth, one or more actions has been brought under ERISA. Finally, a class action on behalf of purchasers of Bank stock during a relevant period seeks damages for alleged violations of the federal securities laws, essentially on the theory that BNY Mellon statements concerning its financial position, the results of its operations, and other matters were false or misleading because they failed to disclose what the Bank had been up to with respect to standing instruction foreign exchange trading. While the aggregate amount of the claims of the private plaintiffs, as far as the Court is aware, has not been quantified, it doubtless is a very large number.

6 12 U.S.C. § 1833a.

### The Discovery Program

**\*2** The coordination of all of these actions has involved significant effort by both counsel and the Court. After extensive consideration, the Court approved a discovery schedule and program, two aspects of which are particularly salient to the present motion. First, a deposition taken in any of the private actions may be used in the government's case and *vice versa.*[7] Second, the presumptive limits on the number of permitted depositions were eliminated. The private plaintiffs and the government, on the one hand, and the defendants on the other *each* were permitted collectively to take up to 150 fact depositions—*i.e.,* up to a total of 300 depositions—without further leave of the Court or agreement of the parties.[8]

7 *See* Am. Scheduling Order [DI 422] § 2, ¶ 6. Notwithstanding this agreement, the parties reserved their rights to object to the use of deposition testimony on any other grounds. *See id.*

8 *See id.* § 2, ¶¶ 9–10.

### The Present Controversy

The Bank already has taken more than 30 depositions of named plaintiffs and their agents or representatives in the customer cases. It now seeks to depose 11 absent customer class members mentioned, if only in passing, in the government action, and an additional eight such absent class members who worked as investment managers for named plaintiffs. The Bank argues that these depositions are appropriate because the testimony of these witnesses is relevant to the government action on the theory that the government alleges that the Bank "engaged in a massive scheme to defraud its 'clients and/or their investment managers' by 'providing them confusing and misleading information.' "[9] It contends that the testimony it hopes to obtain is "critical to its defense" because it may (1) reveal that there is disagreement in the industry about what "best execution requires" and over the meaning of the term "free of charge," and (2) show that some customers were not actually misled.[10]

9 BNY Mellon Opp'n [DI 488; filed under seal], at 1 (quoting *DOJ Case,* No. 11–cv–6969 (LAK), Compl. [DI 31] ¶ 4). The Bank refers also to the complaint of the New York Attorney General, which is pending in the state court. *See id.*

10 *Id.* at 1–2.

The customer class plaintiffs dispute these assertions. They seek a protective order foreclosing the first 11 depositions and limiting the second group of eight.

Neither the government, the other plaintiffs, nor the proposed deponents has taken any position on this matter.

### Discussion

The customer class plaintiffs place principal reliance on the proposition that discovery of absent class members is permitted only upon a " 'strong showing' " that " 'the information sought (1) is not sought with the purpose or

**DEFS002**

Case 4:23-cv-03560   Document 132-2   Filed on 04/05/24 in TXSD   Page 5 of 61

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class.' " [11] Whatever the relevance of this standard, it does not carry the day in the unusual circumstances of this case. There is no serious claim here of harassment or of attempted alteration of the membership of the class. Indeed, not one of the proposed deponents has objected to its noticed deposition or to that deposition's scope. [12] Moreover, BNY Mellon contends with some justification that the proposed deponents in fact are percipient witnesses rather than mere bystanders who are included in the class but have no relevant evidence to give. So the question comes down to the relevance of the proposed discovery and its significance in the litigation of this case. And while the customer class plaintiffs have touched on this only briefly, it is the issue at the heart of this matter.

[11]     Mot. for Protective Order [DI 486], at 2 (quoting *McCarthy v.. Paine Webber Grp.,* 164 F.R.D. 309, 313 (D.Conn.1995)).

[12]     *See* BNY Mellon Opp'n, at 1.

**\*3** BNY Mellon does not claim that any of these proposed depositions is critical to the defense of any of these cases save the government's. And the Bank has overreached even as to the government action.

The government here sues under FIRREA. As explained in *DOJ Case,* its theory is that the Bank is liable for civil penalties because it violated the mail and wire fraud statutes and thereby "affect[ed] a federally insured financial institution." [13] The government alleges, in essence, that the Bank participated in a fraudulent scheme to bilk its clients and harmed itself in the process by putting federally insured deposits at risk. [14]

[13]     *DOJ Case,* 941 F.Supp.2d at 451.

[14]     *See id.* at 463.

The mail and wire fraud statutes "prohibit the use of mails or wires in furtherance of 'any scheme or artifice to defraud.' " [15] To prove that BNY Mellon violated these statutes, the government will have to show, among other things, that the Bank (1) affirmatively misrepresented, or failed to disclose, material information that it had a duty to disclose, and (2) acted with "fraudulent intent," defined in somewhat

more specific terms as " 'a conscious knowing intent to defraud.' " [16] It will have to show also that the Bank " 'contemplated or intended some harm to the property rights of the victim[s]' " of its fraudulent scheme. [17] What it will not have to prove is that those victims actually relied on the Bank's misrepresentations or omissions. [18] Stated another way, fraudulent intent in this Circuit "comprises two principal parts: (1) intent to deceive and (2) contemplation of actual harm to the victim." [19] It does not require that the victim actually be deceived or even that the victim actually be harmed.

[15]     *Id.* (quoting 18 U.S.C. §§ 1341, 1343).

[16]     *United States v. Autuori,* 212 F.3d 105, 116, 118 (2d Cir.2000) (quoting *United States v. Guadagna,* 183 F.3d 122, 129 (2d Cir.1999)).

[17]     *Id.* at 116 (quoting *Guadagna,* 183 F.3d at 129).

[18]     *See, e.g., Bridge v. Phoenix Bond & Indent. Co.,* 553 U.S. 639, 648–49 (2008) ("Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud ... even if no one relied on any misrepresentation."); *Neder v. United States,* 527 U.S. 1, 24–25 (1999) ("The common-law requirement[ ] of justifiable reliance ... plainly ha[s] no place in the federal fraud statutes." (internal quotation marks omitted)).

[19]     *DOJ Case,* 941 F.Supp.2d at 464 (citing *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1180–81 (2d Cir.1970)).

With these considerations in mind, testimony by Bank customers or their investment managers about their particular understandings of the term "best execution," for example, would be only tangentially relevant, if it is relevant at all, to whether the Bank acted with fraudulent intent. The Bank's intent depends on what the Bank thought, not on what these proposed witnesses thought. It is, of course, the Bank that is in the best position to produce evidence as to its understanding and the basis for it. [20] And the Bank is well situated to obtain evidence bearing on industry custom without gearing up the costly machinery of depositions. No one has suggested that the proposed deponents will testify about the alleged scheme's impact, or lack thereof, on BNY Mellon or about the Bank's intent. Nor could they.

**DEFS003**

Case 4:23-cv-03560   Document 132-2   Filed on 04/05/24 in TXSD   Page 6 of 61

In re Bank of New York Mellon Corp. Forex Transactions..., Not Reported in...

[20]  The testimony of these witnesses might be relevant, in the broad Federal Rule of Evidence 401 sense, to the question whether there was a common understanding of the term "best execution." That in turn could bear on the Bank's intent and on the meaning of various customer contracts to the extent any such common understanding was known to the Bank. But such an attenuated chain of relevance does not justify "the burden or expense of the proposed discovery," which "outweighs its likely benefit" in large part because the testimony the Bank seeks is most likely to be available *from the Bank's own sources. See* Fed.R.Civ.P. 26(b)(2)(C). Moreover, the Bank is in the best position to provide evidence as to what the Bank thought, and it has not contended that these depositions would be necessary or even useful in proving a common understanding for the purpose of assessing the extent and nature of the Bank's knowledge.

Thus, while evidence obtained from the proposed depositions might be relevant, in the capacious sense of Federal Rules of Evidence 401 and Civil Procedure 26(b)(1), to some issue in the government's case, the Court finds that such evidence is sufficiently unimportant to resolution of the issues at hand that discovery should be circumscribed. [21]

[21]  See *id.* R. 26(b)(2)(C)(iii).

### Conclusion

In this Court's view, the Bank's arguments here are an attempt to take a bridge too far. This is a big case. Vast amounts of money are at stake. But the need for these depositions— significantly overstated as it is—is insufficient in light of the dubious relevance and materiality of the testimony at issue. Accordingly, customer class plaintiffs' motion for a protective order [DI 486] is granted in all respects.

**\*4**  SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5392465

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

DEFS004

2008 WL 8465061
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

RIO GRANDE ROYALTY COMPANY, INC., on
behalf of itself and all others similarly situated, Plaintiff,
v.

ENERGY TRANSFER PARTNERS, L.P.,
Energy Transfer Company, ETC Marketing, Ltd.,
and Houston Pipeline Company, Defendants.

No. H–08–cv–0857.
|
Aug. 11, 2008.

**Attorneys and Law Firms**

Bernard Persky, Gregory Asciolla, William Vincent Reiss, Labaton Sucharow LLP, New York, NY, Robert A. Chaffin, Chaffin Stiles, Houston, TX, for Plaintiff.

Charles W. Schwartz, Skadden Arps et al., Houston, TX, Jerome Hirsch, Skadden Arps et al., New York, NY, Steven Sunshine, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Defendants.

***MEMORANDUM AND ORDER***

KEITH P. ELLISON, District Judge.

**\*1**  On this day the Court considered Defendants' Motion for Protective Order Staying Discovery. Defendants have asked the Court to stay discovery in this case pursuant to Federal Rule of Civil Procedure 26(b) and (c). After considering the briefing and the arguments presented by parties at the July 22, 2008 hearing, the Court has concluded that Defendants' Motion for Protective Order Staying Discovery, Docket No. 19, should be **GRANTED.**

Plaintiff has asked Defendants to produce all documents and electronically stored information submitted to the Commodity Futures Trading Commission (CFTC), the Federal Energy Regulatory Commission (FERC), or any other government agency or investigatory body in connection with federal investigations into Defendants' natural gas trading activities. Defendants explain that the request would require

them to review millions of pages of documents that were produced to the CFTC and FERC for privilege, and would be unduly burdensome, resulting in hundreds of thousands of dollars in costs. Defendants also argue that Plaintiff's request is overly broad, because, *inter alia,* the documents produced to the CFTC and FERC relate to time periods and locations that are not within the scope of Plaintiff's complaint.

The Federal Rules of Civil Procedure presume that discovery may proceed despite the filing of a Motion to Dismiss, and this case is not governed by a statute such as the Private Securities Litigation Reform Act (PSLRA) that requires discovery to be stayed until the Court has ruled on a Motion to Dismiss. The Court does have discretion to stay discovery pending a ruling on a Motion to Dismiss, however. *See, e.g., Landry v. Air Line Pilots Ass'n Intern. AFL–CIO,* 901 F.2d 404, 435–36 (5th Cir.1990); *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). Some courts have recognized that "staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive." *Netflix Antitrust Litig.,* 506 F.Supp. 308, 321 (N.D.Cal.2007) (allowing narrowly-tailored discovery to go forward) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)); *see also In re Graphics Processing Units Antitrust Litig.,* No. C 06–07417, 2007 WL 2127577, at \*4 (N.D.Cal. July 24, 2007) (recognizing that *Twombly* did not "erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss," but noting that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly,* at least when the discovery would be burdensome.").

The Court finds that the discovery requested by Plaintiff would constitute an undue burden for Defendants. Although the documents have already been assembled and produced to government agencies, thus reducing the burden to Defendants somewhat, Defendants' need to review such a large volume of documents prior to producing them would be a significant burden. Furthermore, Plaintiff concedes that it does not need this discovery to respond to the pending Motion to Dismiss. *See Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987) (upholding a discovery stay where Plaintiff would not have learned anything that could affect the resolution of the dispositive motion). Although some courts have also considered the strength of the dispositive motion when determining whether to stay discovery, *see, e.g., Von Drake*

DEFS005

Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., Not Reported in...

*v. Nat'l Broad Co.,* No. 04–cv–0652, 2004 WL 1144142, at *1 (N.D.Tex. May 20, 2004), briefing on the Motion is not complete, and the Court does not wish to make a premature pronouncement on its merits. [1] The Court believes that discovery should be stayed given the burden to Defendant of reviewing the documents and because Plaintiff has not demonstrated any need for the documents prior to this Court's ruling on the pending Motion.

[1]    This Order should not be understood as any indication of how the Court will ultimately rule on Defendants' Motion to Dismiss.

**\*2**  Defendant's Motion is, therefore, **GRANTED.** All discovery in this case, including Rule 26 disclosures, is stayed pending the Court's ruling on Defendants' Motion to Dismiss, filed May 19, 2008.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 8465061

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**DEFS006**

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by   Ford v. Caddo Parish District Attorney's Office,
W.D.La.,  May 3, 2016

400 Fed.Appx. 806
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

Ricky SMITH, Plaintiff–Appellant

v.

Post Master General John E.
POTTER, Defendant–Appellee.

No. 09–60901
|
Summary Calendar
|
Oct. 13, 2010.

**Synopsis**
**Background:** Employee of the United States Postal Service
(USPS) brought a pro se suit against the Post Master
General, asserting violations of the Age Discrimination in
Employment Act of 1967 (ADEA), the Rehabilitation Act, the
Americans with Disabilities Act of 1990 (ADA), and portions
of the Civil Service Reform Act of 1978 (CSRA). The United
States District Court for the Southern District of Mississippi,
2009 WL 3156528, dismissed, and employee appealed.

**Holdings:** The Court of Appeals held that:

[1] employee failed to exhaust his administrative remedies as
to his ADEA claims;

[2] employee failed to exhaust his administrative remedies as
to his Rehabilitation Act claims;

[3] ADA did not allow claims against the federal government;

[4] employee failed to exhaust his administrative remedies as
to his CSRA claims; and

[5] stay of discovery pending the motion to dismiss was not
an abuse of discretion.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (5)

**[1]     Civil Rights** 👈 Scope of administrative
proceedings;  like or related claims

Employee of the United States Postal Service
(USPS) failed to exhaust his administrative
remedies as to his ADEA claims, despite his
assertion that his federal claims were separate
and apart from his claims before the Equal
Employment Office (EEO); the actions alleged
in the federal complaint were within the scope
of the administrative proceedings and there was
no final administrative determination on the
EEO formal complaint. Age Discrimination in
Employment Act of 1967, § 15(b), 29 U.S.C.A.
§ 633a(b); 29 C.F.R. § 1614.107(b).

18 Cases that cite this headnote

**[2]     Civil Rights** 👈 Scope of administrative
proceedings;  like or related claims

Employee of the United States Postal Service
(USPS) failed to exhaust administrative
remedies, as required for federal subject matter
jurisdiction over his Rehabilitation Act claims;
he had not received a final determination from
the Equal Employment Office (EEO) on his
complaint, which in any event did not encompass
all of his claims. Rehabilitation Act of 1973, §
505(a)(1), 29 U.S.C.A. § 794a(a)(1); Civil Rights
Act of 1964, § 717(c), 42 U.S.C.A. § 2000e–
16(c); 29 C.F.R. § 1614.107(b).

21 Cases that cite this headnote

**[3]     Civil Rights** 👈 Exemptions

Americans with Disabilities Act (ADA) did not
allow claims against the federal government,
thus defeating ADA claims asserted by a

**DEFS007**

United States Postal Service (USPS) employee against the Post Master General. Americans with Disabilities Act of 1990, § 101(5)(B)(i), 42 U.S.C.A. § 12111(5)(B)(i); 39 U.S.C.A. § 201.

9 Cases that cite this headnote

[4]     **Public Employment** 👉 Exhaustion of Remedies

Employee of the United States Postal Service (USPS) failed to exhaust his administrative remedies as to his claims under the Civil Service Reform Act (CSRA) where he had not received a final determination from the Equal Employment Office (EEO) or the Merit Systems Protection Board (MSPB). 5 U.S.C.A. §§ 7702, 7703(a)(1), (b)(1, 2); 29 C.F.R. §§ 1614.302(a), 1614.310.

4 Cases that cite this headnote

[5]     **Federal Civil Procedure** 👉 Proceedings to obtain

Stay of discovery pending a motion to dismiss for lack of jurisdiction or in the alternative for summary judgment was not an abuse of discretion where the issues were largely legal rather than factual in nature.

16 Cases that cite this headnote
More cases on this issue

**Attorneys and Law Firms**

**\*807**  Ricky Smith, Jackson, MS, pro se.

Edward O. Pearson, U.S. Attorney's Office, Jackson, MS, for Defendant–Appellee.

Appeal from the United States District Court for the Southern District of Mississippi, 3:08–CV–660.

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

**Opinion**

PER CURIAM: [*]

[*]     Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Plaintiff–Appellant Ricky Smith (Smith) appeals the district court's decision to grant Defendant–Appellee's motion to dismiss for lack of subject matter jurisdiction for failure to exhaust administrative remedies **\*808** or in the alternative for summary judgment. Additionally, Smith appeals the district court's decision to stay discovery pending the ruling on the Appellee–Defendant's motion to dismiss. For the following reasons, we AFFIRM the lower court's decisions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the complaint, the Appellant, Ricky Smith, was a forty year old man employed as a letter carrier for the United States Postal Service (USPS). From April through September 2008, Appellant filed eight informal complaints alleging discrimination to the Equal Employment Office (EEO). These informal complaints of discrimination concerned the failure to schedule Smith as much as other employees during a six month time frame, denial of a lunch break, and subjection to investigatory interviews.

As required by the statute, Smith submitted notice to the EEOC of his intent to file a claim in district court under the Age Discrimination in Employment Act (ADEA) on August 7, 2008. The ADEA requires a thirty day waiting period before an employee can file the claim in district court. On September 20, 2008, Smith had not yet filed a claim in district court when he filed a formal Complaint of Discrimination with the EEO alleging discrimination on the basis of age, disability, and retaliation. Specific incidents for EEO investigation included: not being given as many work hours as other employees on April 18, 2008 and during June 4–July 25, 2008; being told to report to collections and denied lunch on July 15; being given an investigative interview about scan points on July 30, 2008; being denied overtime hours on August 11, 2008; being reassigned to North Station on August 11, 2008; being denied rights to hold down a route on August 30, 2008; and being required to provide medical documentation on September 22, 2008. On October 7, 2008, the USPS sent Smith a writing partially accepting and partially dismissing Smith's EEO Formal Complaint. The writing detailed which incidents would and would not be part of the EEO's investigation.

**DEFS008**

After receiving the partial acceptance/partial denial letter, but before a final determination on the EEO formal complaint, Smith filed suit against the USPS in district court, the dismissal of which Smith now appeals. In his federal complaint, Smith alleges coercion by a supervisor in signing a statement concerning a grievance filed by another employee; a sustained campaign of "discrimination and fear" and inadequate maintenance of "standards of integrity, conduct, and concern for public safety" by Kirby Ragsdale, a supervisor; retaliation for using sick leave, and an assault by a representative of Ragsdale who tried to grab his shoulder during an investigative review on July 29, 2008.

Although Smith does not organize his federal complaint by counts, Smith cites the following statutes as a basis for jurisdiction: the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633(a); the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.;* the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12112, 12203; and portions of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 2301, 2302. Appellee moved to dismiss for failure to exhaust administrative remedies or in the alternative for summary judgment. Appellee also moved to stay discovery pending the court's ruling on the motion to dismiss, which the district court granted. The district court concluded that the scope of the EEO administrative proceedings were sufficiently broad to include the issues in the federal complaint. Because the EEO had **\*809** not yet made a final ruling on Smith's discrimination complaint, the district court granted the motion to dismiss for failure to exhaust administrative remedies.

On appeal, Smith claims that his federal complaint contained separate and distinct issues than his EEO discrimination complaint, and therefore that the dismissal for lack of subject matter jurisdiction was improper. Smith also appeals the district court's decision to stay discovery pending the motion to dismiss.

## II. DISCUSSION

### A. Subject Matter Jurisdiction and Exhaustion of Remedies

#### 1. Jurisdiction and Standard of Review

We have jurisdiction over the final judgment of the district court under 28 U.S.C. § 1291. This court reviews the grant of a 12(b)(1) motion to dismiss for lack of jurisdiction

*de novo. Taylor v. Acxiom Corp.,* 612 F.3d 325, 331 (5th Cir.2010). Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of a district court to hear a case. FED.R.CIV.P. 12(b)(1). A case must be dismissed if the court finds that it lacks subject matter jurisdiction. FED.R.CIV.P. 12(h)(3). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) (citations omitted).

A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming,* 281 F.3d at 161 (citing *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1992)). When a defendant submits a factual attack on the complaint, he must provide support with "affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981). Given the burden of proof on the party asserting jurisdiction, the plaintiff must submit evidence to prove, by a preponderance of the evidence, that the court does have jurisdiction based on the complaints and evidence. *Id.* Courts are to hold *pro se* litigants to less stringent pleading standards than other parties. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (holding that *pro se* pleadings are to be liberally construed); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

#### 2. Discussion

In his complaint, Smith lists several statutes as a basis for jurisdiction: the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a; the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.;* the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, 12203; and portions of the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 2301, 2302. We address the plaintiff-appellant's claims under each of these statutes in turn.

#### A. *ADEA Claims*

[1]    Defendant–Appellee contends that Smith had not exhausted his administrative remedies as required by the ADEA because there had been no final determination by the EEO on his discrimination claims. Smith argues that his federal claims are separate and apart from his EEO claims, and therefore that he did not need to exhaust administrative remedies for these claims.

When a federal employee pursues a claim of age discrimination under the ADEA, the individual may gain relief using one of two procedural paths. **\*810** *Stevens v. Dept. of Treasury,* 500 U.S. 1, 5, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991); *White v. Frank,* 718 F.Supp. 592, 595 (W.D.Tex.1989), *adopted by White v. Frank,* 895 F.2d 243, 243–44 (5th Cir.1990) (per curiam). If the employee forgoes his administrative remedies, he may proceed directly to federal district court. *Stevens,* 500 U.S. 1, 5–6, 111 S.Ct. 1562 (1991); *White,* 718 F.Supp. at 595; *see* 29 U.S.C. § 633a(d). Alternatively, the employee may choose the administrative route and file a formal complaint with the EEO of the federal agency. *Stevens,* 500 U.S. at 5, 111 S.Ct. 1562; *White,* 718 F.Supp. at 595; *see* 29 U.S.C. § 633a(b). Once an employee proceeds down the administrative route, he "must completely exhaust his administrative remedies before commencing suit in federal court." *White,* 718 F.Supp. at 595. Essentially, the employee must wait for a final determination from the EEO.

Where the agency notifies the employee in writing that it believes that some but not all of the claims in a complaint should be dismissed and gives its rationale, such notification is not final or appealable until final action is taken on the remainder of the complaint. *See* 29 C.F.R. § 1614.107(b); *see also Franklin v. Potter,* 600 F.Supp.2d 38, 61 (D.D.C.2009) ("when the agency only partially dismisses a complaint, there is no final action"); *Puckett v. Potter,* 342 F.Supp.2d 1056, 1065 (M.D.Ala.2004) ("The effect of an agency's dismissal ... depends on whether the agency dismisses all of the complainant's claim or only some of them.").

We agree with the government and the district court that Smith failed to exhaust his administrative remedies because the actions alleged in the federal complaint are within the scope of the administrative proceedings and there was no final determination from the EEO on the EEO formal complaint. The scope of the EEO administrative proceedings and whether a final determination was made are paramount in resolving the jurisdictional issue.

First, we examine whether the EEO administrative proceedings were broad enough to encompass Smith's federal claims. In his federal complaint, Smith alleges that his age motivated several discriminatory and retaliatory actions including: a sustained campaign of "discrimination and fear" by Kirby Ragsdale, a supervisor; inadequate maintenance of "standards of integrity, conduct, and concern for public safety" by Ragsdale and the USPS; removal of Smith from the

work schedule and limitation of hours on April 18, 2008 and May 31st through June 6th; harassing requests for medical records; an investigative interview on July 29th, 2008; and an assault by a representative of Ragsdale at the investigative interview, an incident that Smith explained in his response is intended to demonstrate discrimination and is not intended to state a separate cause of action.

Each of the incidents that Smith lists on his federal complaint falls under the purview of Smith's EEO complaint. Smith's EEO complaint generally alleges discrimination and retaliation on the basis of age. In support of his allegations, Smith lists grievances including the limitation of his scheduled hours to less than other employees by management and Ragsdale over a six month period that included the time periods listed on his federal complaint. The EEO complaint and investigation also include a request for medical documentation on September 22, 2008 that Smith implies is a result of retaliatory harassment and discrimination on his federal complaint. The EEO complaint and investigation also discuss an investigative interview about points, at which Smith alleges the assault by Ragsdale's representative took place.

**\*811** Given that the EEO complaint was broad enough to include all these claims, Smith had to exhaust his administrative remedies before pursuing judicial relief after he chose the administrative procedural path. He did not exhaust his administrative remedies because he proceeded to court only after a partial acceptance and dismissal. A partial acceptance and dismissal is not a final determination. To exhaust his remedies, Smith had to wait until final action was taken on the rest of his complaint. The district court properly granted Appellee's motion to dismiss for failure to exhaust administrative remedies under the ADEA.

### B. *Rehabilitation Act Claims*

[2]  In addition to age discrimination and retaliation, Smith alleges discrimination and retaliation because of his disability. He alleges that both the scheduling decisions and the "ineligible" grade on the postal exam were motivated by disability. Smith lists both the Rehabilitation Act and the ADA as bases for jurisdiction. As we will explore in the next section, the ADA does not allow claims against the federal government, thus Smith must assert his disability claims under the Rehabilitation Act.

The Rehabilitation Act adopts the "remedies, procedures, and rights set forth in section 717 of the Civil Rights Act

of 1964." 29 U.S.C. 794a(a)(1). Thus, "the Rehabilitation Act ... established a private right of action subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act...." *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 304 (5th Cir. Unit A 1981). In contrast to the ADEA, under the Rehabilitation Act, an employee can only pursue judicial relief by one procedural path. As a precondition to bringing an action in federal court, a complaining employee "must exhaust their administrative remedies by filing [the] charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta,* 448 F.3d 783, 788 (5th Cir.2006) (discussing the exhaustion requirement for Title VII claims).

To exhaust administrative remedies, the employee must either (1) receive notice of final action taken by the agency or by the EEOC upon an appeal from a decision or order of the agency, or (2) wait until 180 days have passed from the filing of the administrative complaint without final agency action. 42 U.S.C. § 2000e–16(c). As explained above, where the agency notifies the employee in writing that some claims in an EEO complaint should be dismissed but not all of the claims, such notification is not a final action or appealable until final action is taken on the remainder of the complaint. *See* 29 C.F.R. § 1614.107(b); *see also Franklin,* 600 F.Supp.2d at 61; *Puckett,* 342 F.Supp.2d at 1065.

Exhaustion of administrative remedies is a prerequisite to federal subject matter jurisdiction. *Tolbert v. U.S.,* 916 F.2d 245, 247 (5th Cir.1990) (citations omitted) (examining a Title VII case). A failure to comply with this requirement deprives the district court of jurisdiction. *Id.* Where an employee has prematurely filed an action in district court, the issuance of a final decision by the agency before a district court can dismiss the claim does not cure the jurisdictional defect. *Id.* at 249.

We agree with the government and the district court that Smith failed to exhaust his remedies. Though Smith does not specify which incidents are brought under each statute, it seems that Smith is claiming that his disability motivated USPS management to limit his hours, deny overtime, and give a rating of "ineligible" in the writing section of the USAP Exam 600. As we discussed above, the limitation of his hours and denial of overtime are **\*812** encompassed by his EEO complaint, which alleges discrimination on the basis of age, disability, and retaliation. Smith has failed to exhaust his remedies on these claims because he has not received a final determination from the EEO on his EEO complaint. For the "ineligible" rating and any other claims he may be raising

under the Rehabilitation Act that are not encompassed in the EEO complaint, Smith has failed to exhaust his remedies because he has not pursued administrative remedies first. The district court properly granted the motion to dismiss for lack of jurisdiction for the Rehabilitation Act claims.

### C. *ADA claims*

**[3]**   Smith also lists the ADA as a jurisdictional basis and alleges claims based on discrimination due to his disability. Under the ADA, entities covered by the statute may not discriminate on the basis of an employee's disability. 42 U.S.C. § 12112. Section 12111 defines "covered entity" as an employer or employment agency. 42 U.S.C. § 12111(2). However, section 12111 goes further to say that the term "employer" excludes the entire federal government from coverage under the ADA. 42 U.S.C. § 12111(5)(B)(i); *Henrickson v. Potter,* 327 F.3d 444, 447 (5th Cir.2003). The USPS is part of the federal government. 39 U.S.C. § 201 ("There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service."). Thus, we agree with the district court that no claim against the USPS is permitted under the ADA.

### D. *CSRA Claim*

**[4]**   Smith also cites to 5 U.S.C. section 2301 (Merit System Principles) and 5 U.S.C. section 2303 (Prohibited Personnel Practices), invoking the Civil Service Reform Act as a basis for federal question jurisdiction. As the district court notes, the basis of the plaintiff's CSRA claim is not clear but Smith seems to indicate that he is pursuing a "mixed claim"—a claim where the adverse employment action is motivated in whole or in part by prohibited discrimination that is brought before the EEO.

Under the CSRA framework, a postal service employee may pursue relief along two procedural paths: The employee may either (1) bring a mixed complaint before the EEO or (2) bring a mixed appeal before the Merit Systems Protection Board (MSPB). 29 C.F.R. § 1614.302(a) (defining "mixed case complaint" and "mixed case appeal"); 5 U.S.C. § 7702. Pursuant to subsection (b) of C.F.R. section 1614.302, the employee must elect one of these paths; he cannot do both. 29 C.F.R. § 1614.302(b). The EEO or the MSPB will decide both the issues of discrimination and the adverse employment action. 29 C.F.R. § 1614.302; 5 C.F.R. § 1201.156 ("the judge will decide both the issue of discrimination and the appealable action within 120 days after the appeal is filed").

Once the employee who initiates either of these procedural paths receives a final determination, the employee may pursue judicial review of the final determination. 29 C.F.R. § 1614.310; 5 U.S.C. § 7703(a)(1) & (b)(1)-(2). Cases of discrimination subject to provisions of section 7702 "shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16) [or] section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c))...." 5 U.S.C. § 7703(b)(2). As discussed above these provisions require exhaustion of administrative remedies before the federal court may have jurisdiction.

Smith has failed to exhaust his administrative remedies because he has not received a final determination from the EEO or the MSPB. Accordingly, we agree with **\*813** the district court that it lacks jurisdiction to hear his CSRA claims.

**B. Discovery Issue**

### 1. Standard of Review

The control of discovery "is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Mayo v. Tri–Bell Indus., Inc.,* 787 F.2d 1007, 1012 (5th Cir.1986) (citations omitted). Accordingly, we review the trial court's grant of the motion to stay discovery pending the motion to dismiss for abuse of discretion. *Richardson v. Henry,* 902 F.2d 414, 417 (5th Cir.1990).

### 2. Discussion

 **[5]**    Smith argues that the trial court's grant of the motion to dismiss was inappropriate because it did not to allow adequate time for discovery as required by Rule 56(c). Here, the issues to be examined in the motion to dismiss for lack of jurisdiction or in the alternative for grant of summary judgment were largely legal rather than factual in nature. Thus, we find no abuse of discretion in staying discovery.

AFFIRMED.

**All Citations**

400 Fed.Appx. 806

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**DEFS012**

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BERTHA M. FONTENOT, ET AL. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-CV-03503 |
| | § | |
| CITY OF HOUSTON, ET AL. | § | |

## CITY OF HOUSTON AND JANE DOE DEFENDANT 1'S
## MOTION TO STAY THE PROCEEDINGS

DAVID M. FELDMAN
City Attorney

LYNETTE K. FONS
First Assistant City Attorney

JUDITH L. RAMSEY
Chief, General Litigation Section

Darah L. Eckert
Senior Assistant City Attorney
Attorney-in-Charge
Texas Bar No. 24007141
Fed. I.D. No. 1890045
Henry N. Carnaby
Senior Assistant City Attorney
Texas Bar No. 24064014
Fed. I.D. No. 1242021
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street
Houston, Texas 77002
832.393.6491 (telephone)
832.393.6259 (facsimile)
darah.eckert@houstontx.gov
henry.carnaby@houstontx.gov

ATTORNEYS FOR DEFENDANT
CITY OF HOUSTON

## TABLE OF CONTENTS

**Section**                                                                            **Page(s)**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT OF NATURE AND STAGE PROCEEDING. . . . . . . . . . . . . . . . .  iii

ISSUE(S) PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . .  2

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.    Standard for Motion to Stay.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      B.    The Court should stay the proceedings under the present
            circumstances.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

            1.    Houston and Doe are likely to succeed on the merits.. . . . . . . . . .  4

            2.    Houston and Doe will suffer irreparable harm if a stay is not
                granted.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

            3.    Plaintiffs and the other parties interested in the proceeding
                will not be substantially injured by a stay.. . . . . . . . . . . . . . . . . .  6

            4.    The public interest is best served when a Court considers
                judicial economy and litigation economy for a governmental
                entity like Houston in order to protect the public fisc.. . . . . . . . .  6

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

i

**DEFS014**

## INDEX OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Hilton v. Braunskill*, 481 U.S. 770 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Landis v. North Am. Co.*, 299 U.S. 248 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000). . . . . . . . . . . . . . . . 4

*Nken v. Holder*, 556 U.S. 418 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

*Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**Statutes**                                                                                               **Page(s)**

TEX. CONST. art. XI, § 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. LOC. GOV'T CODE § 9.008(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. TRANSP. CODE § 521.021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. TRANSP. CODE § 521.025. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**DEFS015**

## STATEMENT OF NATURE AND STAGE PROCEEDING

**Nature of proceeding:**     Plaintiffs Bertha M. Fontenot, David Miller, and Santa Zamarron [Plaintiffs] filed suit (both individually and on behalf of an alleged class) against the City of Houston [Houston], Jane Doe Defendant 1 [Doe] (in her alleged official capacity as Surcharge Violation Reporting Coordinator for the City of Houston Municipal Courts Department), and other defendants.  Among other things, Plaintiffs purport to assert claims against Houston under Section 1983 of Title 42 of the United States Code [Section 1983] and claims against Doe under the *ultra vires* exception to governmental immunity under Texas law.  They allege that Houston and Doe incorrectly reported their municipal court convictions for failure to display a driver's license as convictions for driving without a driver's license to the Texas Department of Public Safety [DPS] and that DPS then assessed surcharges against them based on such incorrect reports.

**Stage of proceeding:**     Plaintiff Fontenot originally filed this suit against Houston and other defendants on December 3, 2012.  Plaintiffs Miller and Zamarron joined this suit as additional plaintiffs on April 22, 2013, through an amended complaint that also named Doe and others as additional defendants. The State of Texas Defendants Steve McGraw and Susan Combs ("the State of Texas") filed a motion to dismiss, which the Court granted in part and denied in part; the State of Texas has filed an interlocutory appeal and a Notice of Stay.  Houston and Doe filed their motion to dismiss on October 7, 2013, which is pending before the Court.

iii

## ISSUE(S) PRESENTED

Should the Court stay the proceedings pending both the resolution of Houston's motion to dismiss and the State's interlocutory appeal?

Yes. Staying the entire case is appropriate under the circumstances, because (1) Houston and Doe have a substantial likelihood of succeeding on the merits; (2) not granting a stay would hurt Houston and Doe; (3) granting a stay would not harm the other parties; and (4) public interest would be served by the granting of a stay.

TO THE HONORABLE KENNETH M. HOYT:

Houston[1] files this Motion to Stay proceedings and, in support thereof, would respectfully show as follows:

## SUMMARY OF ARGUMENT

The circumstances and present procedural posture of this case weigh heavily in favor of a stay of the proceedings as to all parties. Courts weigh four factors to determine whether to grant a stay: (1) the likelihood of the movant's success on the merits; (2) whether the movant will be irreparably harmed if a stay is not granted; (3) whether the other parties will be harmed if a stay is granted; and (4) whether a stay is in the public interest.

Houston and Doe have submitted a motion to dismiss which is pending before this Court and which would dispose of all issues as to them in this case if granted. The State of Texas is an indispensable party, necessary to provide the remedies which Plaintiffs seek, and its absence prejudices Houston and Doe and does not help Plaintiffs and the other parties in this case. Moving forward without knowing the State of Texas's status in this case will cause unnecessary and wasteful use of judicial and litigation

---

[1]     Houston is a Texas home-rule city operating under a municipal charter pursuant to Article XI, Section 5, of the Texas Constitution. *See* TEX. CONST. art. XI, § 5. Houston respectfully requests this Court to take judicial notice of its published charter and status thereunder as a home-rule city. *See* TEX. LOC. GOV'T CODE § 9.008(b).

**DEFS018**

resources.  In light of the State of Texas's notices of appeal and notice of stay, and the pendency of Houston and Doe's motion to dismiss, the four factors weigh heavily in favor of staying this action until the Court of Appeals rules on the State of Texas's interlocutory appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The background facts were previously set forth in Houston's Motion to Dismiss filed on October 7, 2013.  *See* Docket Entry No. 62.  To recap briefly, Plaintiffs assert claims under 42 U.S.C. section 1983 against Houston and *ultra vires* claims against Houston's unnamed employee, Jane Doe, allegedly arising from Houston's incorrect reporting of their convictions for failure to display a driver's license as convictions for driving without a driver's license to DPS.[2]  Plaintiffs seek class certification in their lawsuit against Houston, Doe, State of Texas defendants Steve McGraw and Susan Combs (collectively, "State of Texas"), Maximus, Inc., Courtview Justice Solutions, Inc., GILA LLC d/b/a Municipal Services Bureau, and Bruce E. Cummings.

---

[2]    *See* Plaintiff's Original Class Action Complaint (filed December 3, 2012); Plaintiffs' First Amended Class Action Complaint (filed April 22, 2013) [hereinafter "Am. Cmplt."].  *See also* TEX. TRANSP. CODE § 521.021 (prohibiting driving without a driver's license); § 521.025 (requiring drivers to carry and exhibit driver's license on demand by magistrate, court officer, or peace officer).

**DEFS019**

Houston and Doe filed a motion to dismiss, which is pending before this Court. The State of Texas also filed a motion to dismiss, which was granted in part and denied in part. The State of Texas has filed notices of interlocutory appeal and stay based on this Court's order signed September 18, 2013.

## ARGUMENT AND AUTHORITIES

**A.    Standard for Motion to Stay.**

A district court has broad discretion to stay proceedings pending before it and to control its docket for the purpose of "economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55 (citations omitted).

A district court must balance competing interests when deciding whether to grant a stay. In performing this balancing test, the court examines four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (quoting

3

**DEFS020**

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The party requesting a stay bears the burden to show that the circumstances justify an exercise of the court's discretion.  *Id.* at 433–34.  The Fifth Circuit reviews a district court's discovery decisions for abuse of discretion.  *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000).

**B.**     **The Court should stay the proceedings under the present circumstances.**

A stay of the proceedings is appropriate here, because the four factors weigh in favor of a stay.

**1.**     **Houston and Doe are likely to succeed on the merits.**

Pending before this Court is Houston and Doe's motion to dismiss, which sets forth the reasons why Plaintiffs' causes of action against them fail as a matter of law. The Court has discretionary authority to issue a stay pending the outcome of Defendants' motion to dismiss.  *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay until preliminary questions that may dispose of the case are determined."); *see also Moore*, 233 F.3d at 876 ("We review a district court's discovery decisions for abuse of discretion and will affirm such decisions unless they are arbitrary or clearly unreasonable.").

Houston and Doe's motions to dismiss raise legal questions regarding the merits of Plaintiffs' Section 1983 claims and this Court's jurisdiction over the subject matter

4

of Plaintiffs' *ultra vires* claims. Those motions to dismiss have been fully briefed by the parties and submitted for determination. If the Court grants the motions to dismiss, it will not be necessary for both parties and the Court to devote any time and effort to litigating these claims.  The first factor weighs heavily in favor of a stay.[3]

## 2.    Houston and Doe will suffer irreparable harm if a stay is not granted.

The State of Texas is an indispensable party to this litigation, alone possessing the power to correct Plaintiffs' driving records and the entity holding the surcharge monies. The State of Texas, through its agents, has expressed its willingness to provide both remedies the Plaintiffs seek, and, in fact, has produced proof that it has already done so with respect to all three Plaintiffs.[4]   Going forward with discovery and numerous depositions in the absence of the State of Texas ensures duplicative litigation expenses and a waste of resources for all parties involved, including the Plaintiffs. Granting a stay until all parties know the State of Texas's status with respect to this federal lawsuit is necessary in order for the parties to be able to move forward in this

---

[3]     The first two factors are the most important for this analysis.  *See Nken*, 556 U.S. at 434–35 ("The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.'") (quotation omitted).

[4]     *See* Declaration of Ms. Rebekah Hibbs, attached to State of Texas's Motion to Dismiss, at Docket Entry No. 64-1 at ¶¶ 7-13.

**DEFS022**

case.  Asking Houston and Doe to move forward in the absence of the State of Texas impermissibly exposes Houston and Doe to assessment of damages where the State of Texas holds the monies collected and is the only entity that has the power to refund those monies.  In addition, the State of Texas is the only defendant that can correct the Plaintiffs' DPS records.

> **3.    Plaintiffs and the other parties interested in the proceeding will not be substantially injured by a stay.**

In fact, knowing the status of the State of Texas as a defendant is helpful to all parties in how to move forward.  Assuming that all of the Plaintiffs' accusations are true, Houston and Doe's alleged misconduct was a one-time harm, completed when made, and the only relief available is from the State of Texas.  Allowing Plaintiffs to proceed without the State of Texas has the potential to harm Plaintiffs as they could incur duplicative litigation costs and attorneys' fees as well.

> **4.    The public interest is best served when a Court considers judicial economy and litigation economy for a governmental entity like Houston in order to protect the public fisc.**

A governmental entity has a duty to the public and to the public trust.  The governmental entity must act in the public interest and is responsible for the faithful management of the public fisc.  Requiring Houston and Doe to move forward while

6

DEFS023

their motion to dismiss is pending and the State of Texas is absent is wasteful of judicial resources and will cause duplicative litigation expenses for the non-State of Texas parties holding depositions without the State of Texas, conducting discovery and hearings without the State of Texas, and trying to fashion a remedy without the State of Texas. A stay furthers judicial economy by reducing the likelihood that the parties will have to relitigate claims over the same material in the future. Granting a stay would also promote the orderly course of justice because it would prevent unnecessary waste of judicial and litigation resources. *See Landis*, at 299 U.S. at 256 (explaining also that a delay may be required if "public welfare or convenience will thereby be protected"). In short, denying a stay under the circumstances is not a good use of the public fisc and judicial economy, particularly at a time when both of those resources are scarce. This factor also weighs heavily in favor of a stay.

## CONCLUSION AND PRAYER

FOR THESE REASONS, Houston respectfully requests the Court to grant this Motion to Stay, as all four factors presented above weigh in favor of a stay under the circumstances of this case.

Respectfully submitted,

DAVID M. FELDMAN
City Attorney

7

**DEFS024**

LYNETTE K. FONS
First Assistant City Attorney

JUDITH L. RAMSEY
Chief, General Litigation Section

*/s/ Darah L. Eckert*
Darah L. Eckert
Senior Assistant City Attorney
Attorney-in-Charge
Texas Bar No. 24007141
Fed. I.D. No. 1890045
Henry N. Carnaby
Senior Assistant City Attorney
Texas Bar No. 24064014
Fed. I.D. No. 1242021
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street
Houston, Texas 77002
832.393.6491 (telephone)
832.393.6259 (facsimile)
darah.eckert@houstontx.gov
henry.carnaby@houstontx.gov

ATTORNEYS FOR DEFENDANT
CITY OF HOUSTON

8

**DEFS025**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded via the indicated means on this 15th day of October, 2013 to the following parties and/or counsel of record:

*ECF FILING/SERVICE*
Richard E. Norman
R. Martin Weber, Jr.
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
ATTORNEYS FOR PLAINTIFFS

*ECF FILING/SERVICE*
Andrew M. Edison
Edison, Mcdowell & Hetherington, LLP
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
ATTORNEY FOR DEFENDANT
COURTVIEW JUSTICE SOLUTIONS, INC.

*ECF FILING/SERVICE*
Thomas K. Brown
Justin J. Presnal
FISHER, BOYD, BROWN HUGUENARD, L.L.P.
2777 Allen Parkway, 14th Floor
Houston, Texas 77019
ATTORNEYS FOR PLAINTIFFS

*ECF FILING/SERVICE*
Kevin W. Brown
FRITZ, BYRNE, HEAD AND HARRISON, PLLC
98 San Jacinto Boulevard, Suite 2000
Austin, Texas 78701
ATTORNEY FOR DEFENDANT
MAXIMUS, INC.

*ECF FILING/SERVICE*
Angela V. Colmenero
Amy K. Penn
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ATTORNEY FOR DEFENDANTS
STEVE MCCRAW AND SUSAN COMBS

*ECF FILING/SERVICE*
Andrew F. Sullo
SULLO & SULLO, L.L.P.
2020 Southwest Freeway, Suite 300
Houston, Texas 77098
ATTORNEYS FOR PLAINTIFF

9

**DEFS026**

***ECF FILING/SERVICE***
Justin Joseph Presnal
Fisher Boyd Brown Huguenard LLP
2777 Allen Parkway, 14th Floor
Houston, Texas 77019
ATTORNEYS FOR PLAINTIFFS


***ECF FILING/SERVICE***
Alton Lee Rigby
Smith Robertson Elliott & Douglas LLP
221 W 6th Street, Suite 1100
Austin, Texas 78703
ATTORNEYS FOR DEFENDANTS GILA LLC AND
BRUCE A. CUMMINGS


                              */s/ Darah L. Eckert*                          
                              Darah L. Eckert

**DEFS027**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**FEDERAL TRADE COMMISSION**,

                        Plaintiff,

         v.

**META PLATFORMS, INC.**

                        Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

---

**JOINT CIVIL RULE 16.3 REPORT TO THE COURT**

      In accordance with Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16.3,

Plaintiff Federal Trade Commission ("FTC") and Defendant Meta Platforms, Inc. ("Meta") have

met and conferred, and hereby submit this Joint Meet and Confer Statement and proposed

Scheduling and Case Management Order to the Court.  *See* Ex. A (FTC Proposed Scheduling

Order), Ex. B (Meta Proposed Scheduling Order).[1]

      **1.**    **Service of Complaint.**  Counsel for Meta has accepted service of the Complaint

and waived formal service of a summons.

      **2.**    **Initial Disclosures.**  The Parties exchanged initial disclosures on February 22,

2022.

      **3.**    **Local Rules 16.3(c)(1), 16.3(c)(4), 16.3(c)(5).**

      a)  <u>Likelihood of Disposal by Dispositive Motion</u>.

---

[1] Where the Parties are in agreement, their agreed position is as stated in the numbered
paragraphs.  Where they disagree, their respective positions and explanations for their positions
are set forth separately in the numbered paragraphs.

**DEFS028**

**_Plaintiff's Position_**:  Plaintiff does not anticipate that any motions for summary judgment that might be filed will impact the scope or timing of discovery.

**_Defendant's Position_**:  Meta anticipates it will file a motion or motions for summary judgment and reserves its rights as to the timing of the motion or motions.

b) <u>Settlement</u>.  The Parties do not believe that settlement discussions would be useful to engage in at this time.

c) <u>ADR</u>.  The Parties have considered the possibility of using alternative dispute resolution procedures but do not believe that ADR would be useful to engage in at this time.  At a later time, the Parties will confer regarding whether mediation may be appropriate.

d) <u>Bifurcation</u>.

**_Plaintiff's Position_**:  The parties should proceed expeditiously to a trial that deals exclusively with liability issues.  Following the liability trial, Plaintiff anticipates a separate remedy hearing. The provisions set forth below relating to discovery shall not apply to any additional discovery to facilitate a remedy phase.  The parties should meet and confer at an appropriate time and submit to the Court, no later than five weeks prior to the final pretrial conference, proposals for an amended or separate Case Management Order governing the remedy phase.

**_Defendant's Position_**:  Meta submits that only fact and expert discovery on liability issues should be scheduled at this time.  Additional scheduling is premature, including scheduling relating to a subsequent remedies phase, if any is required.  Such proceedings will be unnecessary if Plaintiff fails to prove its case

**DEFS029**

as to liability.  Plaintiff's proposal that the Parties confer on a Case Management

Order for a remedies phase "no later than five weeks prior to the final pretrial

conference" for the liability phase is unnecessary, disruptive, and premature.

Only after the Court has ruled on the liability issues should any additional

proceedings be scheduled, as the Court's rulings will likely affect the scope and

timing of any such subsequent phase if one is required.  Meta is aware of no

instance, and Plaintiff has cited none, where the Court has entered a Case

Management Order relating to a separate remedies phase prior to a liability

determination.  Plaintiff has given no reason why these additional proceedings

need to be scheduled prior to a liability determination.

    **4.**      **Discovery Conference.**  The Parties have met and conferred pursuant to Federal

Rule of Civil Procedure 26(f) and Local Rule 16.3. The Parties discussed proposals for a

Scheduling and Case Management Order, as well as proposals for an ESI Order, a 502(d) Order,

and a Protective Order.  These discussions satisfied the Parties' obligation under Federal Rule of

Civil Procedure 26(f) and Local Rule 16.3.

    **5.**      **Case Schedule.**  The Parties' respective scheduling proposals, including for fact

discovery, are set forth below.

    ***Plaintiff's Position*:**

The Federal Trade Commission seeks a prompt end to the ongoing conduct through

which Meta unlawfully maintains its monopoly power.  Accordingly, the FTC requests that the

Court set a trial date, and adopt other procedural mechanisms (described herein), to efficiently

advance discovery and expeditiously resolve the FTC's claims.  Meta – predictably – seeks

**DEFS030**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

JOINT ~~[PROPOSED]~~ SCHEDULING ORDER

Pursuant to the Initial Scheduling Conference held February 28, 2022, and the Joint Rule

16.3 Report previously submitted by the Parties, the Court ORDERS that the following schedule

shall govern further proceedings:

1.  The deadline for amendment of pleadings or joinder was February 15, 2022;

2.  The deadline for initial disclosures was February 22, 2022;

3.  The deadline for Plaintiff to substantially complete the production of its

    investigatory file was February 28, 2022;

4.  Fact discovery shall close on May 22, 2023;

5.  Plaintiff's Rule 26(a)(2) expert disclosures shall be served July 3, 2023;

    Defendant's Rule 26(a)(2) expert disclosures shall be served September 5, 2023;

    Plaintiff's rebuttal expert reports shall be served November 6, 2023; expert

    discovery shall close on January 5, 2024.

6.  No discovery motions may be filed without leave of court. In the event that a

    discovery dispute arises, the Parties shall make a good faith effort to resolve or

1

**DEFS031**

narrow the areas of disagreement.  If the Parties are unable to resolve the discovery dispute, the Parties shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the issue or determine the manner in which it will be handled; and

7.      Parties may not extend any deadline by stipulation; instead, parties must seek extensions by motion.  Consent motions are generally looked upon with favor by the Court.

Upon consideration of the Parties Joint Rule 16.3 Report, the Court further ORDERS that the following provisions shall govern the proceedings:

8.      **Bifurcation.**  There will be a first phase that will address only the Defendant's liability under the antitrust laws.  If the Court renders a decision finding the Defendant liable, then the Court will hold a separate proceeding regarding any remedies for any violations of the antitrust laws that it finds.  The provisions set forth below relating to discovery shall not apply to any additional discovery to facilitate a remedy phase.

9.      **Discovery of Confidential Information.**  Discovery and production of confidential information will be governed by the Protective Order and the ESI Order to be entered by the Court in this action.  No deadline in this order shall override any deadline set forth in the Protective Order or ESI Order.  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Order in effect at the time.

10.     **Document Requests.**  The Parties must serve any objections to requests for productions of documents within **[30]** days as required by Federal Rule of Civil Procedure 34.  Within **[14]** calendar days of service of any objections to a request

2

14.   **Depositions.**

    a.   **Number of Depositions.**  Each Party is limited to 840 total deposition hours for

fact witnesses.  The hours limit refers to time of testimony actually taken on the

record.  Plaintiff may take a maximum of 42 hours of Federal Rule of Civil

Procedure 30(b)(6) deposition testimony from Defendant, not including any

time devoted to issues regarding Defendant's data.

The following do not count against the above deposition limits: (a) depositions

of the Parties' designated expert witnesses; (b) sworn testimony previously

taken during the FTC's pre-Complaint investigation or in any other litigation or

government investigation; and (c) depositions taken for the sole purpose of

establishing the authenticity of documents, provided that such depositions must

be designated at the time that they are noticed as being taken for the sole

purpose of establishing authenticity.

    b.   **Notice of Depositions.**  Within [10] calendar days of receipt of a deposition

notice, the noticed Party or Nonparty must provide any objections it intends to

assert in response to that deposition notice, and, if relevant, an alternative date

on which witnesses will be made available for testimony.  Parties and

Nonparties will use their best efforts to make witnesses available for deposition

at a mutually agreeable time and location and without undue delay.  If a witness

is a former employee of any Party or Nonparty, upon receipt of a deposition

notice for the former employee, that Party or Nonparty shall, within [10]

calendar days of the deposition notice, provide the date of departure and last

known address of the former employee, state whether counsel for the Party or

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23cv0108 (LMB/JFA) |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

This matter is before the court on plaintiffs' motion to clarify scheduling order. (Docket no. 276). This motion was filed on June 30, 2023 and was noticed for a hearing on July 7, 2023. (Docket no. 278). On July 3, 2023, the court entered an order indicating this motion would be decided without argument once defendant filed its response. (Docket no. 281). On July 5, 2023, defendant filed its brief in opposition. (Docket no. 282).

As shown in the memorandum in support of this motion and defendant's opposition, the parties agree that if plaintiffs prevail on their claims before the jury and make a determination to seek equitable relief, a separate proceeding before the District Judge would be necessary. Plaintiffs' motion requests that if a hearing on equitable relief is necessary following the jury trial, the court should determine "at that time the extent to which additional fact and expert discovery related to equitable remedies is necessary". (Docket no. 276 at 1). Defendant opposes this motion on various grounds, some procedural and some substantive. Defendant argues this is not a motion to clarify but it is a motion to modify the scheduling order that would require a showing of good cause. Defendant states that the issue of conducting additional discovery as to equitable remedies following the jury trial was not discussed during the negotiations concerning

1

**DEFS034**

the scheduling order. Defendant notes there is no provision in the scheduling order addressing how the court would proceed with determining plaintiffs' entitlement to equitable relief following the jury trial or the bifurcation of discovery relating to potential equitable remedies. Defendant takes the position that the deadlines in the scheduling order requiring that all fact and expert discovery must be completed by certain dates includes all fact and expert discovery concerning any equitable remedies that plaintiffs may seek following any verdict in plaintiffs' favor. Defendant argues that it would be prejudicial at this stage of the proceedings to "bifurcate" any discovery relating to potential equitable relief. Defendant relies on Judge Payne's approach in *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 345 F. Supp. 3d 614 (E.D. Va. 2018) in which it appears that no additional fact discovery was undertaken between the jury verdict and the court's initial determination on plaintiff's entitlement to equitable relief. However, in that case Judge Payne's initial and supplemental scheduling orders specifically addressed the timing of an evidentiary hearing regarding equitable relief, if needed, following the jury trial.[1]

Given that the current scheduling order in this case does not address the procedure to be followed if the jury finds for plaintiffs and plaintiffs then decide to pursue equitable relief, seeking some clarification on that matter is appropriate. Plaintiffs' motion makes the seemingly simple request that the court would determine what additional fact and expert discovery "is necessary" if plaintiffs prevail at the jury trial and then decide to seek equitable relief based on

---

[1] A review of the docket sheet in *Steves & Sons* reveals the process followed by Judge Payne after the initial jury trial included having the plaintiff identify the specific equitable relief being sought, the legal basis for that relief, the witnesses to be called, and the documents intended to be introduced. The parties were directed to provide a list of expert witnesses to be called at the hearing and to agree on a schedule for exchanging expert reports relating to the equitable relief being sought. (Docket no. 1132). After Judge Payne found divestiture was appropriate, a special master was appointed to obtain information and make a recommendation as to how that divestiture should be accomplished.

2

**DEFS035**

the jury's verdict.  Justifiably, defendant is concerned that plaintiffs' request could be interpreted

as an indication that additional fact discovery would be necessary which could result in another

round of expensive and time-consuming fact discovery.  As shown in the correspondence

reflecting the consultation among counsel prior to filing this motion (Docket nos. 282-3 and 282-

4) and in plaintiffs' memorandum, plaintiffs have failed to provide defendant or the court with

any specific information concerning what additional discovery may be needed that is "unique to

potential equitable remedies".  They refer to "technical feasibility" and the potential need to

review additional source code, hardware on which the source code resides, and Application

Programming Interface calls made among and within defendant's systems but they do not

specify how any of that information would be needed to argue what equitable remedy is

appropriate based on the jury's findings.  In any event, the first step in this process is that

plaintiffs must obtain a jury verdict in its favor.  The next step would be for plaintiffs to decide,

based on the jury's findings, whether they want to seek any equitable relief and, if so, what relief

they want to request.  As in *Steves & Sons*, plaintiffs will need to identify the equitable relief

being sought based on the outcome of the jury trial promptly and provide the legal basis for that

requested relief.  At that point, it is likely that the parties would need to engage in some limited,

additional exchange of expert reports that would address the specific remedies being sought.

  For these reasons, plaintiffs' motion is granted in part.  In the event plaintiffs obtain a

jury verdict is their favor on liability and monetary damages, the court will promptly convene a

status conference to discuss whether plaintiffs wish to pursue equitable relief based on the jury's

verdict, what equitable relief plaintiffs intend to pursue, the schedule for exchanging expert

reports addressing the specific equitable remedy or remedies being sought, the schedule for

briefing by the parties, and a date for the hearing.  While it is unlikely that additional fact

**DEFS036**

discovery will be necessary for the court to decide what, if any, equitable remedies are

appropriate, the parties will have the opportunity to address that issue at that status conference

following any jury verdict in plaintiffs' favor.

      Entered this 11th day of June, 2023.

                                              /s/
                              John F. Anderson
                              United States Magistrate Judge
                              John F. Anderson
                              United States Magistrate Judge

Alexandria, Virginia

4

**DEFS037**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| | HON. AMIT P. MEHTA |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

| | |
|---|---|
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| | HON. AMIT P. MEHTA |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

**ORDER TO BIFURCATE PROCEEDINGS**

The Parties in the above-captioned actions have jointly requested to bifurcate the proceedings to hold separate trials on liability and, if necessary, remedy.

Rule 42(b) of the Federal Rules of Civil Procedure authorizes a court to hold a separate trial on one or more separate issues, "[f]or convenience, to avoid prejudice, or to expedite and economize." The Court has considered the Parties' requests for separate trials in this matter regarding (a) the liability of the Defendant for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, as alleged by the U.S. Plaintiffs and the Plaintiff States, and (b) the remedies for any such violations.

**DEFS038**

The Court finds that, to the extent necessary, holding separate trials on the issues of liability and remedies will be more convenient for the Court and the Parties, and will expedite and economize this litigation.

IT IS THEREFORE ORDERED

1.      There will be a liability phase in each matter that will address only the Defendant's liability under the Sherman Act, and, if the Court renders a decision finding the Defendant liable, the Court will hold separate proceedings regarding the remedies for Defendant's violation(s) of the Sherman Act.

2.      During the liability phase, expert discovery and testimony need not offer specific opinions regarding particular remedies beyond that necessary to demonstrate liability under Section 2 of the Sherman Act.

3.      Nothing in this Order shall (a) alter the Parties' respective abilities in either action to offer evidence relevant to any issue in the liability proceedings nor alter the burden of proof, persuasion, or production to establish each and every element of liability, justifications, or defenses, or (b) prohibit or limit discovery during the liability phases of these actions on issues relevant to liability under Section 2 of the Sherman Act.

Dated:                                                    _____

                                                                  Amit. P. Mehta
                                                     United States District Court Judge

**DEFS039**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

FEDERAL TRADE COMMISSION, *et al.*,

  Plaintiffs,

  v.

AMAZON.COM, INC., a corporation,

  Defendant.

CASE NO.: 2:23-cv-01495-JHC

**PLAINTIFFS' MOTION TO BIFURCATE**

NOTE ON MOTION CALENDAR: March 15, 2024

*ORAL ARGUMENT REQUESTED*

MOTION TO BIFURCATE
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS040**

1

## **<u>TABLE OF CONTENTS</u>**

2 INTRODUCTION ................................................................................................... 1

3 BACKGROUND ................................................................................................... 1

4 LEGAL STANDARD............................................................................................ 2

5 ARGUMENT ........................................................................................................ 2

6 I.    COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO SEPARATE

7       LIABILITY AND REMEDY PHASES FOR PURPOSES OF CONVENIENCE AND

8       JUDICIAL ECONOMY. ............................................................................ 3

9 II.   BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE

10      WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY...................... 6

11 III.  AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED

12      FOR BIFURCATION. ............................................................................... 8

13 CONCLUSION.................................................................................... 12

14

15

16

17

18

19

20

21

22

23

24

MOTION TO BIFURCATE - i
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS041**

1

## TABLE OF AUTHORITIES

2

### Cases

3   *City of Anaheim v. S. Cal. Edison Co.*,
        955 F.2d 1373 (9th Cir. 1992) ............................................................................. 7

4   *Estate of Diaz v. City of Anaheim*,
5       840 F.3d 592 (9th Cir. 2016) ............................................................................... 2

6   *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*,
        190 F.R.D. 385 (M.D.N.C. 1999) ...................................................................... 11

7   *Ford Motor Co. v. United States*,
        405 U.S. 562 (1972) ............................................................................................. 5

8
    *FTC v. Meta Platforms, Inc.*,
9       No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ........................................ 6

10  *Gaekwar v. Amica Mut. Ins. Co.*,
        2024 WL 85089 (W.D. Wash. Jan. 8, 2024) ..................................................... 10

11  *Goldfarb v. Va. State Bar*,
        421 U.S. 773 (1975) ............................................................................................. 3
12
    *Greening v. B.F. Goodrich Co.*,
13      1993 WL 134781 (N.D. Ill. Apr. 23, 1993) ...................................................... 11

14  *In re Data Gen. Corp. Antitrust Litig.*,
        490 F. Supp. 1089 (N.D. Cal. 1980) .................................................................... 3

15  *In re Google Play Store Antitrust Litig.*,
        No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 .................................. 6
16
    *In re High Fructose Corn Syrup Antitrust Litig.*,
17      295 F.3d 651 (7th Cir. 2002) ............................................................................... 4

18  *Hirst v. Gertzen*,
        676 F.2d 1252 (9th Cir. 1982) ........................................................................... 10
19
    *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
20      2023 WL 5177501 (N.D. Ill. Aug. 11, 2023) ............................................... 4, 5, 7

21  *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
        No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587 ................................... 11

22  *In re Master Key Antitrust Litig.*,
        528 F.2d 5 (2d Cir. 1975) .................................................................................... 3
23
    *Navellier v. Sletten*,
24      262 F.3d 923 (9th Cir. 2001) ............................................................................. 11

MOTION TO BIFURCATE - ii
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS042**

*NCAA v. Alston,*
   594 U.S. 69 (2021)....................................................................................................... 9

*New York v. Microsoft Corp.,*
   224 F. Supp. 2d 76 (D.D.C. 2002) ........................................................................... 10

*Oltz v. St. Peter's Cmty. Hosp.,*
   19 F.3d 1312 (9th Cir. 1994) ..................................................................................... 3

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,*
   20 F.4th 466 (9th Cir. 2021) ...................................................................................... 5

*Reines Distribs., Inc. v. Admiral Corp.,*
   257 F. Supp. 619 (S.D.N.Y. 1965) ........................................................................ 4, 5

*Union Carbide Corp. v. Montell N.V.,*
   28 F. Supp. 2d 833 (S.D.N.Y. 1998) ........................................................................ 4

*United States v. Am. Express Co.,*
   No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 ...................................... 10

*United States v. Boeing Co.,*
   2023 WL 5836487 (W.D. Wash. Aug. 31, 2023).................................................... 2

*United States v. Google LLC,*
   No. 1:20-cv-03010, (D.D.C. Dec. 6, 2021), Dkt. #264 ........................................... 6

*United States v. Google LLC,*
   No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ........................................ 6

*United States v. Grinnell Corp.,*
   384 U.S. 563 (1966)................................................................................................... 9

*United States v. Microsoft Corp.,*
   253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam).......................................... 5, 8

*United States v. U.S. Gypsum Co.,*
   340 U.S. 76 (1950)..................................................................................................... 9

*Wall Prods. Co. v. Nat'l Gypsum Co.,*
   357 F. Supp. 832 (N.D. Cal. 1973)........................................................................... 3

*Yanni v. City of Seattle,*
   2005 WL 2180011 (W.D. Wash. Sept. 9, 2005) .................................................... 10

*Zivkovic v. S. Cal. Edison Co.,*
   302 F.3d 1080 (9th Cir. 2002) .................................................................................. 2

MOTION TO BIFURCATE - iii
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS043**

1

<u>**Rules**</u>

2

Fed. R. Civ. P. 42(b) ................................................................................................... 2

3

<u>**Other Authorities**</u>

4

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and*
    *Their Application* (5th ed. 2020) .......................................................................... 3, 4

6

Charles A. Wright & Arthur R. Miller,
    *Federal Practice & Procedure* (3d ed. 2016).......................................................... 3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION TO BIFURCATE - iv
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS044**

## **INTRODUCTION**

Plaintiffs move to bifurcate this action into two separate proceedings: a trial solely on liability to be followed by a proceeding on remedies. By first addressing liability, Plaintiffs will be able to present a streamlined case focused on showing the Court how Amazon has violated the law and harmed competition to the detriment of shoppers and sellers. Once the Court finds Amazon liable, the Parties would then move to a remedy proceeding tailored to the Court's specific findings on liability. Bifurcation allows the Parties to make focused presentations at each stage, thereby reducing the overall burden on the Parties, the Court, and non-party witnesses alike. Given the efficiencies associated with proceeding in this manner, Plaintiffs respectfully ask this Court to order that the trial be bifurcated.

## **BACKGROUND**

Plaintiffs filed this suit to challenge the illegal course of exclusionary conduct Amazon deploys to block competition, stunt rivals' growth, and cement its dominance to the detriment of the tens of millions of American households who regularly shop on Amazon's online superstore and the hundreds of thousands of businesses who rely on Amazon to reach them. (¶¶ 3, 7.)[1] Plaintiffs allege that Amazon has illegally maintained monopoly power in two discrete but interrelated markets (¶¶ 117-19) through intricate schemes that span more than a decade (¶¶ 257-415). Plaintiffs collectively bring twenty claims against Amazon under the FTC Act, the Sherman Act, and state competition and consumer protection laws. (¶¶ 442-564.) Plaintiffs seek, among other relief, equitable relief necessary to "redress and prevent recurrence of Amazon's violations of the law" and "restore fair competition and remedy the harm to competition caused by Amazon's violations of the law," along with "any additional relief the Court finds just and proper."

---

[1] Citations in the form (¶ __) are to Plaintiffs' Complaint, Dkt. #114.

MOTION TO BIFURCATE - 1
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS045**

1   (Complaint, Dkt. #114 at 148-49.) Plaintiff States also seek equitable monetary relief and the costs

2   of suit. (*Id.* at 149.)

3       While Plaintiffs and Amazon appear to agree that fact discovery should encompass both

4   liability and remedy issues, Amazon opposed Plaintiffs' proposal "that trial should address only

5   Amazon's liability under Section 5 of the FTC Act, Section 2 of the Sherman Act, and applicable

6   state competition and consumer protection laws." (Joint Status Report, Dkt. #135 at 44-45.)

7   Plaintiffs now move for bifurcation consistent with the Case Scheduling Order (Dkt. #159).

8                              **LEGAL STANDARD**

9       Federal Rule of Civil Procedure 42(b) allows "the court [to] order a separate trial of one

10  or more separate issues" "[f]or convenience, to avoid prejudice, or to expedite and economize."

11  Rule 42(b) "confers broad discretion upon the district court to bifurcate a trial, thereby deferring

12  costly and possibly unnecessary proceedings pending resolution of potentially dispositive

13  preliminary issues." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also*

14  *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) ("It is clear that Rule 42(b)

15  gives courts the authority to separate trials into liability and damages phases." (cleaned up)). In

16  considering a motion for bifurcation, "[c]ourts weigh several factors, including convenience,

17  prejudice, and judicial economy in determining whether to phase or bifurcate proceedings."

18  *United States v. Boeing Co.*, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023). Bifurcation

19  should "be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42(b)

20  advisory committee's notes to 1966 amendment.

21                              **ARGUMENT**

22      Complex antitrust cases, like this one, are often bifurcated into separate liability and

23  remedies proceedings to increase convenience and judicial economy. (§ I.) The rationale for

24  bifurcation applies with particular force here given the scope of the allegations and the role the

MOTION TO BIFURCATE - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS046**

1    Court's findings on liability will play in guiding the Parties' remedies arguments. (§ II.) Amazon's

2    arguments against bifurcation are unpersuasive and actually underscore why bifurcation is

3    especially appropriate here. (§ III.)

4    **I.     COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO**

5    **SEPARATE LIABILITY AND REMEDY PHASES FOR PURPOSES OF**

6    **CONVENIENCE AND JUDICIAL ECONOMY.**

7         Bifurcating liability and relief into separate proceedings in especially complex cases is a

8    common and "obvious" application of Rule 42(b) because "liability must be resolved before

9    damages are considered." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice &*

10   *Procedure* § 2390 (3d ed. 2016). Courts have often found complex antitrust cases well-suited for

11   bifurcation due to the intricacy of the liability issues and the efficiencies in addressing each phase

12   separately. *See id.* (noting that "a significant number of federal courts, in many different kinds of

13   civil litigation, have ordered the questions of liability and damages to be tried separately, for

14   example *in cases involving antitrust*" (emphasis added)); *accord Goldfarb v. Va. State Bar*, 421

15   U.S. 773, 778 (1975) (district court conducted bench trial "solely on the issue of liability" in case

16   brought under the Sherman Act for injunctive relief and damages); *Oltz v. St. Peter's Cmty. Hosp.*,

17   19 F.3d 1312, 1313 (9th Cir. 1994) (bifurcated antitrust trial on liability and remedies); *In re Data*

18   *Gen. Corp. Antitrust Litig.*, 490 F. Supp. 1089, 1099 (N.D. Cal. 1980) (same); *Wall Prods. Co. v.*

19   *Nat'l Gypsum Co.*, 357 F. Supp. 832, 834 (N.D. Cal. 1973) (same); *see also, e.g.*, *In re Master Key*

20   *Antitrust Litig.*, 528 F.2d 5, 15 (2d Cir. 1975) (recognizing that "bifurcated trials have frequently

21   been employed with great success [including] in antitrust suits").

22        Resolving complex antitrust cases is often a significant undertaking. *See generally* 3B

23   Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and*

24   *Their Application* ("Areeda & Hovenkamp") ¶ 311a (5th ed. 2020) ("[A]n antitrust case may

MOTION TO BIFURCATE - 3
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  involve so many issues, documents, witnesses, and lawyers as to defy comprehension . . . .").

2  Bifurcating remedy proceedings from the underlying resolution of liability allows the factfinder to

3  address each of these complex issues independently, promoting the efficient development and

4  presentation of evidence on the merits. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*,

5  295 F.3d 651, 666 (7th Cir. 2002) (Posner, J.) ("No doubt in view of the complexity of [this

6  antitrust] case the judge will also want to bifurcate the trial, that is, to have a trial on liability first

7  and only if the jury finds that the defendants violated the law to conduct a trial to determine the

8  plaintiffs' damages."); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 5177501,

9  at *10-13 (N.D. Ill. Aug. 11, 2023) (recognizing that "antitrust cases are often strong candidates

10  for bifurcation" given their complexity and granting motion to bifurcate trial into liability and

11  damages phases in part to avoid "add[ing] another layer of complexity to an already complex

12  trial"); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837-38 (S.D.N.Y. 1998)

13  (ordering bifurcation to "[s]egment[] difficult issues of liability and damages" in antitrust case

14  involving "voluminous evidence and difficult concepts lying at the crossroads of law and

15  economics" where "[c]onfronting one complex set of issues at a time" would reduce potential

16  confusion); *Reines Distribs., Inc. v. Admiral Corp.*, 257 F. Supp. 619, 621 (S.D.N.Y. 1965) ("The

17  inherent complexity of an antitrust case is itself a factor promoting a separate trial of an issue in

18  such a case where the result of the separate trial may simplify the litigation.").

19      Moreover, it is often efficient to address how a monopolist violated the law separately from

20  how to appropriately remedy that violation given the wide variety of relief that may be necessary.

21  Equitable relief may need to be much broader than simply ordering the monopolist to cease the

22  illegal conduct. "The principal purpose of equitable relief" in monopolization cases "is not to

23  punish violations but to restore competitive conditions—the 'undoing' of what the antitrust

24  violation achieved." 3D Areeda & Hovenkamp ¶ 325c. Accordingly, if a district court concludes

MOTION TO BIFURCATE - 4
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   that monopolization has occurred, "the available injunctive relief is broad" because the court must

2   "terminate the illegal monopoly, deny to defendant the fruits of its statutory violation, and ensure

3   that there remain no practices likely to result in monopolization in the future." *Optronic Techs.,*

4   *Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quoting *United States v.*

5   *Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (en banc) (per curiam)); *accord Ford Motor*

6   *Co. v. United States*, 405 U.S. 562, 573 (1972) (holding that antitrust relief must restore

7   competition).

8        In order to efficiently carry out this broad mandate, courts often bifurcate complex antitrust

9   cases to allow the remedies proceeding to be tailored to the specific violations found by the court.

10  The court cannot craft appropriate injunctive relief until it knows "the wrong creating the occasion

11  for the remedy." *Microsoft*, 253 F.3d at 107. Separate proceedings can thus be more efficient

12  because the scope and specifics of any remedy depend on the scope and specifics of the court's

13  liability determination. *Cf. id.* at 103-05 (vacating district court's remedy decree because court of

14  appeals revised underlying bases of liability, requiring district court to reevaluate remedy based

15  on new scope of liability). When proceedings are not bifurcated in cases with a broad scope,

16  witnesses may have to testify about a range of potential remedies covering all possible liability

17  outcomes. This could result in the parties litigating—and the court considering—remedies that

18  may ultimately be foreclosed by the court's liability determinations, thereby reducing judicial

19  economy. *See Kraft Foods*, 2023 WL 5177501, at *10 (bifurcation allows the parties and the court

20  to focus on remedies that are "actually in play after [a] liability verdict"). And, as courts have

21  recognized, bifurcation may obviate the need for a remedies proceeding altogether. *See, e.g.*,

22  *Reines Distribs.*, 257 F. Supp. at 621 ("If plaintiff should lose on [liability], the issue[] of . . .

23  damage[s] . . . will be out of the case and there will be neither duplication nor cumulation."

24  (cleaned up)).

MOTION TO BIFURCATE - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS049**

1    Given the benefits that bifurcation can bring, it is unsurprising that courts overseeing recent

2   complex monopolization cases concerning online markets have bifurcated proceedings into bench

3   trials on liability followed by separate tailored proceedings on remedies. *See United States v.*

4   *Google LLC*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), Dkt. #264 ("The Court finds that, to the

5   extent necessary, holding separate trials on the issues of liability and remedies will be more

6   convenient for the Court and the Parties, and will expedite and economize this litigation."); *FTC*

7   *v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ("There will be a

8   first phase that will address only the Defendant's liability under the antitrust laws. If the Court

9   renders a decision finding the defendant liable, then the Court will hold a separate proceeding

10  regarding any remedies for any violations of the antitrust laws that it finds."); *accord United States*

11  *v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ("In the event plaintiffs

12  obtain a jury verdict [in] their favor on liability and monetary damages, the court will promptly

13  convene a status conference to discuss whether plaintiffs wish to pursue equitable relief based on

14  the jury's verdict, what equitable relief plaintiffs intend to pursue, the schedule for exchanging

15  expert reports addressing the specific equitable remedy or remedies being sought, the schedule for

16  briefing by the parties, and a date for the hearing."); *In re Google Play Store Antitrust Litig.*,

17  No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 (noting court's intention to "hear from

18  the parties' economist experts at [an] evidentiary hearing on the issue of an appropriate conduct

19  remedy" following jury trial on liability that resulted in verdict in favor of plaintiff).

20  **II.    BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE**

21  **WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY.**

22    This case is broader in scope and complexity than a typical antitrust case. As such, the

23  rationales related to convenience and judicial economy that courts have applied in other complex

24  antitrust cases when ordering bifurcation weigh in favor of separate proceedings here.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS050**

1   As discussed above, remedying monopolization requires not only halting illegal conduct,

2 but also restoring competition. (*See* § I.) To craft an appropriate remedy here, the Court will need

3 to understand the mechanics of how Amazon has violated the law to fashion injunctive relief

4 sufficient to return the markets to the states they would have been in absent Amazon's illegal

5 conduct. The scope of the inquiry on remedies combined with the scope of Amazon's challenged

6 practices heightens the benefits of holding a separate liability trial.

7   Plaintiffs allege Amazon has used many different programs, business units, and tactics to

8 illegally maintain its monopolies in two separate but interrelated markets. Contractual price parity

9 clauses, Select Competitor–Featured Offer Disqualification, Amazon Standards for Brands,

10 Customer Experience Ambassadors, and a first-party anti-discounting algorithm all contribute to

11 Amazon's long-term strategy of punishing online discounting. (¶¶ 272-304, 326-32.) Amazon also

12 uses Prime eligibility, the Featured Merchant Algorithm, Fulfillment by Amazon, and Seller

13 Fulfilled Prime to reduce seller multihoming. (¶¶ 351-60, 397-409.) And Amazon used Project

14 Nessie to raise prices by manipulating other online stores' pricing algorithms. (¶¶ 416-32.) The

15 Court must assess Amazon's tactics holistically and examine the cumulative impact of Amazon's

16 unlawful behavior. *See City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992)

17 ("[I]t would not be proper to focus on the specific individual acts of an accused monopolist while

18 refusing to consider their overall combined effects."); Plaintiffs' Opposition to Amazon's Motion

19 to Dismiss, Dkt. #149 at 6-8. A separate trial on liability would allow the Court to make this holistic

20 assessment in the context of focused presentations about how Amazon's various tactics fit

21 together. Simultaneously evaluating remedy issues and Amazon's liability for its course of

22 conduct, on the other hand, would "add another layer of complexity to an already complex trial."

23 *Kraft Foods*, 2023 WL 5177501 at *11.

24

MOTION TO BIFURCATE - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    The number and variety of laws Amazon has violated also favors bifurcation. Several

2  Plaintiff States allege that Amazon has engaged in deceptive acts or practices in addition to unfair

3  and anticompetitive conduct. (¶¶ 513, 522(c), 541-52.) These claims differ from Plaintiffs'

4  antitrust claims and will require independent analysis of applicable remedies. Certain Plaintiff

5  States have also raised state law claims for equitable monetary relief, including disgorgement.

6  (*See, e.g.*, ¶¶ 482(a), 507(a), 521(b), 523(b), 540, 552, 561.) Plaintiff FTC also alleges that Amazon

7  has engaged in unfair methods of competition in violation of Section 5 of the FTC Act (¶¶ 454-63),

8  a law with a broader reach than the Sherman Act. *See* Plaintiffs' Opposition to Amazon's Motion

9  to Dismiss, Dkt. #149 at 18-20. The scope of claims advanced here thus increases the breadth of

10  issues to be decided beyond those normally at issue in an antitrust case, and further supports

11  streamlining an already complex trial.

12    In addition, bifurcation will simplify the proceedings on remedies and save the Court and

13  the Parties significant time and resources by enabling the Parties to tailor presentations on remedies

14  to the Court's liability findings. (*See* § I above.) For example, the Court's findings regarding how

15  each strain of Amazon's anticompetitive conduct amplifies the effects of every other

16  anticompetitive behavior it has engaged in will impact what equitable relief may be necessary to

17  "unfetter [the] market[s] from anticompetitive conduct." *Microsoft*, 253 F.3d at 103 (quoting *Ford*

18  *Motor Co.*, 405 U.S. at 577).

19    For the reasons explained above, adoption of Plaintiffs' bifurcation proposal would make

20  the proceedings more convenient for the Parties and the Court and promote judicial economy.

21  **III.    AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED**

22       **FOR BIFURCATION.**

23    Amazon claims that bifurcation will result in "massive duplication" because determining

24  liability requires "pressure testing . . . what the remedy would be" and that bifurcation would

MOTION TO BIFURCATE - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   therefore require some witnesses to testify during both phases. (February 8, 2024 Scheduling

2   Conference Tr. at 9:23-10:11; *id.* at 11:24-12:3.) Amazon's arguments are not persuasive; in fact,

3   they show why bifurcation would be useful and appropriate.

4          Amazon's argument against bifurcation confuses the remedy phase of an antitrust case with

5   the much narrower question that may be relevant within the liability analysis of whether

6   "substantially less restrictive means exist to achieve any proven procompetitive benefits." *NCAA*

7   *v. Alston*, 594 U.S. 69, 100 (2021). (*See, e.g.*, Scheduling Conference Tr. at 10:5-11 ("[I]f you're

8   attacking something that, in their words, goes to the core of our operations, which we deem to be

9   exceptionally pro-customer, we have to talk about what is it they think should be different, and

10  we're going to have to talk about that in the liability phase. So we're going to end up in a situation

11  where there's just a lot of repetition, if there's a separate remedy phase.").) At the liability phase,

12  the Court may need to probe alternative conduct Amazon could have engaged in if—and only if—

13  Amazon proves that its anticompetitive conduct also has cognizable procompetitive benefits. But

14  the "less restrictive alternatives" issue is very different and much more circumscribed than

15  deciding appropriate remedies after liability is established. The purpose of the "less restrictive

16  alternative" inquiry at the liability phase is to determine whether a restraint with anticompetitive

17  effects is unreasonably broad—that is, broader than necessary to achieve its purported

18  procompetitive justification. *See Alston*, 594 U.S. at 100-01. This is a fundamentally different

19  inquiry than the one the court must engage in to fashion an appropriate equitable remedy, where

20  its task is to "cure the ill effects of the illegal conduct, and assure the public freedom from its

21  continuance." *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950); *see also United States v.*

22  *Grinnell Corp.*, 384 U.S. 563, 577 (1966) ("[A]dequate relief in a monopolization case should put

23  an end to the combination and deprive the defendants of any of the benefits of the illegal conduct,

24  and break up or render impotent the monopoly power found to be in violation of the Act.").

MOTION TO BIFURCATE - 9
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   Amazon's improper conflation of these issues helps to show why bifurcation is needed. *See Hirst*

2   *v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (upholding bifurcation in part because "certain

3   evidence relevant [to the second proceeding] might [have] tend[ed] to obscure the more

4   fundamental question [in the first proceeding]").

5          Amazon's contention that bifurcation would require presenting the same evidence twice is

6   without merit. The remedies phase may not require additional witness testimony. *See, e.g.*, *United*

7   *States v. Am. Express Co.*, No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 (ordering,

8   following bench trial resulting in liability for antitrust violations, that each party submit proposed

9   remedial orders within thirty days "consistent with the analysis" in court's findings of fact and

10   conclusions of law and accompanied by "a supporting memorandum explaining why the court

11   should adopt its proposed remedy"). To the extent there is evidence relevant to both phases,

12   bifurcation will not result in "massive duplication." Because the Court is acting as the factfinder,

13   it can rely on evidence submitted at the liability bench trial during the remedies phase without

14   repetition of testimony. *See, e.g.*, *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 98 (D.D.C.

15   2002) (concluding that "the district court's factual findings . . . may be relied upon during the

16   remedy phase of this proceeding" as "it would make little sense to proceed to craft a remedy in the

17   absence of substantial reliance upon the factual foundation which underlies the liability entered in

18   this case"); *Yanni v. City of Seattle*, 2005 WL 2180011, at *2 (W.D. Wash. Sept. 9, 2005) (granting

19   motion for bifurcation over defendants' objections concerning "duplicative" testimony because

20   the factfinder can "consider testimony from the first phase in [its] deliberations in the second

21   phase"); *Gaekwar v. Amica Mut. Ins. Co.*, 2024 WL 85089, at *2 (W.D. Wash. Jan. 8, 2024)

22   (granting bifurcation motion and noting that "trying the case before a single [factfinder] in two

23   phases will minimize the need for any evidence and witnesses to be presented twice, thereby

24   undermining [the] argument that bifurcat[ion] will lengthen and increase the cost of trial").

MOTION TO BIFURCATE - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS054**

1    If, however, the Court finds that it would be helpful to hear further testimony during the

2    remedies phase, including from a witness who appeared during the liability phase, the Court can

3    impose limits on the scope of testimony to avoid repetition. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d

4    923, 941 (9th Cir. 2001) (recognizing that "[t]rial courts have broad authority" to manage trials

5    and "challenges to trial court management" are reviewed for "abuse of discretion"); *Kraft Foods*

6    *Glob., Inc. v. United Egg Producers, Inc.*, No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587

7    (order limiting evidence parties may present during bifurcated damages phase to avoid duplication

8    of evidence received during liability phase). Some overlap in evidence, moreover, is not a barrier

9    to bifurcation because the Court's dual role will ensure that Amazon is not prejudiced. *See F & G*

10   *Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 388 & n.5 (M.D.N.C. 1999) ("[A] mere

11   minor overlap of evidence between the liability phase and the damage phase has not prevented

12   courts from ordering an otherwise justified bifurcation.") (collecting cases); *Greening v. B.F.*

13   *Goodrich Co.*, 1993 WL 134781, at *3 (N.D. Ill. Apr. 23, 1993) ("Any minimal overlap of

14   evidence on these issues is outweighed by the potential for judicial economy through bifurcation .

15   . . ."). Amazon's concerns that bifurcation would lead to "massive duplication" are therefore

16   unfounded.

17   While a non-bifurcated proceeding may obviate the need for any witness to testify twice,

18   the time each witness spends on the stand during that single proceeding will likely run much longer

19   than the time they would spend testifying across two bifurcated proceedings. Absent bifurcation,

20   such trial witnesses will need to testify not only about complex issues relevant to liability, but also

21   about a range of potential remedies covering a constellation of conceivable liability findings.

22   Conducting a single proceeding to avoid "duplication" of testimony—an objective also readily

23   achievable through bifurcation—is not more economical or convenient if doing so sacrifices

24   efficiency and makes an already complex case even more complicated.

MOTION TO BIFURCATE - 11
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS055**

1

<u>**CONCLUSION**</u>

2        Plaintiffs respectfully submit that the Court should grant this motion and bifurcate the

3   proceedings into liability and remedies phases in accordance with Plaintiffs' proposed order. To

4   the extent the Court is not inclined to order bifurcated proceedings at this time, Plaintiffs

5   respectfully request the Court defer resolution of this motion until this case is closer to trial. At

6   present, the Parties agree that fact discovery should encompass both liability and remedy issues,

7   which alleviates the need for an immediate decision on bifurcation.

8

9

Dated: February 29, 2024

10                                        *I certify that this memorandum contains*
                                          *3,704 words, in compliance with the Local Civil Rules.*

11
                                          Respectfully submitted,

12
                                          *s/ Susan A. Musser*

13                                        SUSAN A. MUSSER (DC Bar # 1531486)
                                          EDWARD H. TAKASHIMA (DC Bar # 1001641)

14                                        SARA M. DIVETT (DC Bar # 1736504)
                                          COLIN M. HERD (NY Reg. # 5665740)

15                                        JAKE WALTER-WARNER (NY Reg. # 5396668)
                                          Federal Trade Commission

16                                        600 Pennsylvania Avenue, NW
                                          Washington, DC 20580

17                                        Tel.:   (202) 326-2122 (Musser)
                                                  (202) 326-2464 (Takashima)

18                                        Email: smusser@ftc.gov

19                                                etakashima@ftc.gov
                                                  sdivett@ftc.gov

20                                                cherd@ftc.gov
                                                  jwalterwarner@ftc.gov

21
                                          *Attorneys for Plaintiff Federal Trade Commission*

22

23

24

MOTION TO BIFURCATE - 12                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                        600 Pennsylvania Avenue, NW
                                                  Washington, DC 20580
                                                  (202) 326-2222

**DEFS056**

1  s/ Michael Jo                                 s/ Jennifer A. Thomson
   Michael Jo (admitted *pro hac vice*)          Jennifer A. Thomson (admitted *pro hac vice*)
2  Assistant Attorney General, Antitrust Bureau  Senior Deputy Attorney General
   New York State Office of the Attorney         Pennsylvania Office of Attorney General
3  General                                       Strawberry Square, 14th Floor
   28 Liberty Street                             Harrisburg, PA 17120
4  New York, NY 10005                            Telephone: (717) 787-4530
   Telephone: (212) 416-6537                     Email: jthomson@attorneygeneral.gov
5  Email: Michael.Jo@ag.ny.gov                   *Counsel for Plaintiff Commonwealth of*
   *Counsel for Plaintiff State of New York*     *Pennsylvania*
6
   s/ Rahul A. Darwar                            s/ Michael A. Undorf
7  Rahul A. Darwar (admitted *pro hac vice*)     Michael A. Undorf (admitted *pro hac vice*)
   Assistant Attorney General                    Deputy Attorney General
8  Office of the Attorney General of Connecticut Delaware Department of Justice
   165 Capitol Avenue                            820 N. French St., 5th Floor
9  Hartford, CT 06016                            Wilmington, DE 19801
   Telephone: (860) 808-5030                     Telephone: (302) 683-8816
10 Email: Rahul.Darwar@ct.gov                    Email: michael.undorf@delaware.gov
   *Counsel for Plaintiff State of Connecticut*  *Counsel for Plaintiff State of Delaware*
11
   s/ Alexandra C. Sosnowski                     s/ Christina M. Moylan
12 Alexandra C. Sosnowski (admitted *pro hac     Christina M. Moylan (admitted *pro hac vice*)
   vice*)                                        Assistant Attorney General
13 Assistant Attorney General                    Chief, Consumer Protection Division
   Consumer Protection and Antitrust Bureau      Office of the Maine Attorney General
14 New Hampshire Department of Justice           6 State House Station
   Office of the Attorney General                Augusta, ME 04333-0006
15 One Granite Place South                       Telephone: (207) 626-8800
   Concord, NH 03301                             Email: christina.moylan@maine.gov
16 Telephone: (603) 271-2678                     *Counsel for Plaintiff State of Maine*
   Email: Alexandra.c.sosnowski@doj.nh.gov
17 *Counsel for Plaintiff State of New Hampshire*

18 s/ Caleb J. Smith                             s/ Gary Honick
   Caleb J. Smith (admitted *pro hac vice*)      Gary Honick (admitted *pro hac vice*)
19 Assistant Attorney General                    Assistant Attorney General
   Consumer Protection Unit                      Deputy Chief, Antitrust Division
20 Office of the Oklahoma Attorney General       Office of the Maryland Attorney General
   15 West 6th Street, Suite 1000                200 St. Paul Place
21 Tulsa, OK 74119                               Baltimore, MD 21202
   Telephone: (918) 581-2230                     Telephone: (410) 576-6474
22 Email: caleb.smith@oag.ok.gov                 Email: Ghonick@oag.state.md.us
   *Counsel for Plaintiff State of Oklahoma*     *Counsel for Plaintiff State of Maryland*
23

24

MOTION TO BIFURCATE - 13                    **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                      600 Pennsylvania Avenue, NW
                                                Washington, DC 20580
                                                (202) 326-2222

**DEFS057**

1   *s/ Michael Mackenzie*
    Michael Mackenzie (admitted *pro hac vice*)
2   Deputy Chief, Antitrust Division
    Office of the Massachusetts Attorney General
3   One Ashburton Place, 18th Floor
    Boston, MA 02108
4   Telephone: (617) 963-2369
    Email: michael.mackenzie@mass.gov
5   *Counsel for Plaintiff Commonwealth of*
    *Massachusetts*
6
    *s/ Scott A. Mertens*
7   Scott A. Mertens (admitted *pro hac vice*)
    Assistant Attorney General
8   Michigan Department of Attorney General
    525 West Ottawa Street
9   Lansing, MI 48933
    Telephone: (517) 335-7622
10  Email: MertensS@michigan.gov
    *Counsel for Plaintiff State of Michigan*
11
    *s/ Zach Biesanz*
12  Zach Biesanz (admitted *pro hac vice*)
    Senior Enforcement Counsel
13  Office of the Minnesota Attorney General
    445 Minnesota Street, Suite 1400
14  Saint Paul, MN 55101
    Telephone: (651) 757-1257
15  Email: zach.biesanz@ag.state.mn.us
    *Counsel for Plaintiff State of Minnesota*
16
    *s/ Lucas J. Tucker*
17  Lucas J. Tucker (admitted *pro hac vice*)
    Senior Deputy Attorney General
18  Office of the Nevada Attorney General
    100 N. Carson St.
19  Carson City, NV 89701
    Telephone: (775) 684-1100
20  Email: LTucker@ag.nv.gov
    *Counsel for Plaintiff State of Nevada*
21

*s/ Ana Atta-Alla*
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Jeffrey Herrera*
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

22

23

24

MOTION TO BIFURCATE - 14
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS058**

1   _s/ Gwendolyn J. Cooley_
    Gwendolyn J. Cooley (admitted *pro hac vice*)
2   Assistant Attorney General
    Wisconsin Department of Justice
3   Post Office Box 7857
    Madison, WI 53707-7857
4   Telephone: (608) 261-5810
    Email: cooleygj@doj.state.wi.us
5   *Counsel for Plaintiff State of Wisconsin*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION TO BIFURCATE - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**DEFS059**