<pre>
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3


 4   FEDERAL TRADE COMMISSION,      .  4:23-CV-03560
                                    .  HOUSTON, TEXAS
 5         PLAINTIFF,               .  APRIL 8, 2024
     VS.                            .  10:00 A.M.
 6                                  .
     U.S. ANESTHESIA PARTNERS,      .
 7   INC., ET AL,                   .
                                    .
 8         DEFENDANTS.              .
     ...............................

 9


10                   TRANSCRIPT OF MOTION HEARING
                  BEFORE THE HONORABLE KENNETH M. HOYT
11                   UNITED STATES DISTRICT JUDGE

12


13


14                         *APPEARANCES*

15


16

     FOR THE PLAINTIFF:
17
           David B. Schwartz
18         Timothy Grayson
           FEDERAL TRADE COMMISSION
19         BUREAU OF COMPETITION - HEALTH CARE DIVISION
           400 Seventh Street Southwest
20         Washington, DC  20024

21


22   FOR DEFENDANT U.S. ANESTHESIA PARTNERS:

23         David J. Beck
           BECK REDDEN LLP
24         1221 McKinney Street
           Suite 4500
25         Houston, Texas  77010
</pre>

1                       *APPEARANCES - CONTINUED*

2

3   ALSO FOR DEFENDANT U.S. ANESTHESIA PARTNERS:

4        Geoffrey M. Klineberg
         KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC
5        1615 M Street Northwest
         Suite 400
6        Washington, DC  20036

7

8   FOR DEFENDANT WELSH CARSON ANDERSON & STOWE XI, LP

9        R. Paul Yetter
         YETTER COLEMAN LLP
10       811 Main Street
         Suite 4100
11       Houston, Texas  77002

12  FOR AMICUS AMERICAN INVESTMENT COUNCIL:

13       Gregg J. Costa
         GIBSON DUNN CRUTCHER
14       811 Main Street
         Suite 3000
15       Houston, Texas  77002

16

17  OFFICIAL COURT REPORTER:

18       Mayra Malone, CSR, RMR, CRR
         U.S. Courthouse
19       515 Rusk
         Room 8004
20       Houston, Texas  77002
         713-250-5787
21

22

23  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
24

25

### PROCEEDINGS

09:42  1

2        THE COURT:  Good morning, ladies and gentlemen.  I

3    have got to confess, somewhere between my house and the

4    courthouse, I ran into a virus of some sort.  It may be the

10:03  5    pollen that we get down south, but it has gotten into my eyes

6    and my sinus system.  And if I need to take a short break

7    because of medication, I think you will understand that.  And I

8    appreciate that indulgence if it does occur.

9            Beyond that, the Court has before it Cause

10:04  10    Number 23-3560.  This will be the Federal Trade Commission

11    versus U.S. Anesthesia Partners, Incorporated, and the Welsh

12    Carson entities, I believe, that are also included and being

13    represented here today.

14            In a circumstance of this nature, I need to limit

10:04  15    the number of speakers and make sure we are not repeating, and

16    I know some of you -- I have seen some of you around, and I

17    know you are going to handle this right.  I suspect the

18    government has done this more than one time, so we are not

19    going to argue over the argument.  We are going to simply

10:04  20    present what we believe to be the appropriate issues and permit

21    argument from both sides, or maybe three sides, in this matter.

22    So let me see if I have an appreciation for how we go forward.

23            We will start with the government.  You have

24    indicated Grayson and Schwartz.  Who is going to be

10:05  25    representing or speaking on behalf of the government in this

10:05    1    matter?

2        MR. GRAYSON:  Yes, Your Honor, this is --

3        THE COURT:  Please stand.

4        MR. GRAYSON:  My apologies.

10:05    5        THE COURT:  You are going to have to stand.  This is a

6    big courtroom.  I have done all the architectural stuff I can

7    do for it to save our voices, but sometimes you will get lost,

8    and you may be speaking and your voice hasn't reached me yet.

9    I'm being facetious, but I want you to understand how difficult

10:05    10   it is.

11       MR. GRAYSON:  This is Timothy Grayson for the FTC.

12           Our plan is that I will be arguing on behalf of

13   the government in response to U.S. Anesthesia Partners' motion,

14   and my colleague, Mr. Schwartz, will be arguing some points

10:05    15   that are unique to the motion that Welsh Carson -- the Welsh

16   Carson entities have filed.

17       THE COURT:  What's the difference between the

18   arguments then?  That's my point.

19       MR. GRAYSON:  The defendants did file two separate

10:06    20   motions.  There are certainly overlapping issues, but I think

21   the Welsh Carson entities are presenting arguments specific to

22   why they should not be in the case.

23       THE COURT:  Correct.  I get that.  And we would need

24   to hear from you or -- who is going to speak to that?  You or

10:06    25   Mr. Schwartz?

10:06  1      MR. GRAYSON:  Mr. Schwartz will speak to the Welsh

2      Carson specific issues, Your Honor, and I will speak to the

3      issues raised in U.S. Anesthesia Partners' argument.

4           THE COURT:  I get it.

10:06  5      MR. GRAYSON:  Thank you.

6           THE COURT:  Thank you.

7              Yes?

8      MR. BECK:  Your Honor, David Beck for the defendant,

9      USAP, United States Anesthesia Partners, Inc.  With the Court's

10:06  10     permission, I will address the statutory interpretation issues,

11     13(b), spending a few minutes on that, and my colleague, Mr.

12     Geoff Klineberg, will deal with the antitrust issues raised by

13     our motion to dismiss.

14          THE COURT:  Well, let me ask you:  As it relates to

10:06  15     13(b) arguments that are going to be made, are these arguments

16     that you are going to make -- are they silver bullets as far as

17     your motion is concerned?  Or are they just simply an argument

18     that expands the scope of the presentations that I have?  I

19     have got, obviously, some lengthy briefs on these issues, but

10:07  20     I'm concerned about the context that we are doing this

21     argument.  This is a motion to dismiss.  There is no other

22     relief that I'm taking up this morning or before me, so that's

23     why I'm asking the question.

24          MR. BECK:  Your Honor, I intend to make two basic

10:07  25     points and tell you briefly the reasons why.

10:07 1    If the Court grants our position with respect to

2 Section 13(b) of the FTC Act, this case is over.

3    THE COURT:  Okay.  It makes sense.

4    Mr. Klineberg, is he going to be speaking to any

10:07 5 matters?  Or is this going to be Mr. Beck doing the --

6    MR. KLINEBERG:  As Mr. Beck explained, I will be

7 addressing briefly some of the arguments with respect to the --

8 what we call the antitrust issues in the case, the

9 insufficiency of the complaint in our view on various antitrust

10:08 10 claims.

11    THE COURT:  All right.  Then finally, I believe,

12 Mr. Yetter?  Is that right?

13    MR. YETTER:  Yes, Your Honor.  I will be the only

14 speaker on behalf of the Welsh Carson defendants, Your Honor.

10:08 15    We have three grounds.  I'm only going to spend

16 time -- or primarily spend time on -- we have a 13(b) argument.

17 It's slightly narrower than the USAP, but it is a silver

18 bullet, Your Honor.  We think it is very strong.

19    We also have a separate issue, which is the

10:08 20 corporate separateness.  My clients are just investors, at

21 best, in this company.  And the complaint, we believe, fatally

22 fails to address how they can be indirectly liable.

23    The third issue is a constitutional issue which

24 we think the Court can avoid by deciding based on the first two

10:09 25 issues.

10:09    1    So I will be very brief, but I'm going to spend
    2    most of my time on issue number one, the Section 13(b) issue,
    3    because we think this case is far beyond where the Fifth
    4    Circuit has allowed these kind of cases to go.

10:09    5    THE COURT:  All right.  Very good.  Thank you, sir.
    6    MR. COSTA:  Your Honor, if I may, Gregg Costa for the
    7    Amicus, American Investment Council, which you allowed to file
    8    a brief in this case.
    9    And with the Court's indulgence, after Mr. Yetter
10:09    10    goes, I would like to make just a few brief points.
    11    THE COURT:  I may or may not but I'll -- because I
    12    think that you're siding up, and my concern is going to be
    13    whether or not this is simply an argument that will precipitate
    14    another argument, so you can tell me that later.
10:09    15    MR. COSTA:  Sounds good, Your Honor.
    16    THE COURT:  All right.  How much time do you think you
    17    will need, Mr. Grayson, to make your opening -- or opening or
    18    complete arguments here?
    19    Here is what I think, what I'm concerned about,
10:10    20    whether or not I should proceed.  Because of the nature and
    21    scope of this motion, it may be better for a foundation to be
    22    laid by the government, FTC, in order to have a basis upon
    23    which arguments are going to be made.  And I'm saying it that
    24    way because I'm trying to make sure that I'm not putting words
10:10    25    or something on you that you are not prepared to address, but

10:10    1    what I would like to do is to spend maybe 10 or 15 minutes

2    laying the foundation, the groundwork, for what these arguments

3    are about, so the record is complete, at least as complete as

4    we need it.

10:10    5        Then I would like to see you go into your

6    arguments, but I'm almost tempted to turn the floor over to the

7    defense and permit them to argue their motion and then get your

8    response.  That might be the smart way to do it.

9        Let's assume that I let Mr. Beck to go forward

10:11    10    after you lay a little foundation there.

11        Who is going to respond to Mr. Beck's arguments?

12        MR. GRAYSON:  Your Honor, I would respond to Mr. Beck,

13    and I think the FTC is absolutely fine proceeding in the way

14    that you just outlined.

10:11    15        I'm happy to speak briefly about our complaint

16    and then turn the floor over --

17        THE COURT:  You are going to have to keep your voice

18    up.

19        All the arguments are going to be need to be made

10:11    20    from the podium, not from the table.  So when we get started --

21    I spent six years in a tank, so -- not military tank, so there

22    is a deficit here sometimes, and this room doesn't accommodate

23    that.

24        So, please, if my voice drops off, it is because

10:12    25    I have got this thing going on inside.  You let me know, and I

10:12    1    will speak up, and I'm certainly going to do the same for you.

2    So let's do that.  Let's go ahead and take a 10-

3    or 15-minute statement from the government as it -- the FTC as

4    it relates to what this case is about, without arguing any

10:12    5    particular aspects of the case itself but simply the factual

6    background.

7    We will proceed at this time.

8    Yeah.  That's it.

9    MR. GRAYSON:  Thank you, Your Honor.  This is Timothy

10:12    10    Grayson for the Federal Trade Commission.

11    Your Honor, in brief, this case is about the FTC

12    attempting to protect American consumers, specifically Texans,

13    both patients and employers, in this state from monopolistic

14    and anticompetitive business practices.

10:12    15    Our complaint alleges in detail that USAP and

16    Welsh Carson have together unlawfully amassed an anesthesia

17    empire across the state.  We have alleged that USAP acquired

18    over 15 of its competitors.  We have alleged that USAP

19    conspired with competitors that it did not acquire.  We allege

10:13    20    that the result is that USAP has obtained market power.  It's

21    obtained negotiating leverage that it uses against health

22    insurers in the state, and that as a consequence, patients and

23    their employers pay tens of millions of dollars per year more

24    for anesthesia services than they did before USAP entered the

10:13    25    market.

10:13  1         And what our complaint alleges, what we charge,

2    is that this conduct violates a host of laws enforced by the

3    Federal Trade Commission.

4         We allege that USAP and Welsh Carson have

10:13  5    unlawfully monopolized markets in Houston and Dallas.  We

6    allege that USAP's acquisitions in Houston, Dallas and Austin

7    each violate Section 7 of the Clayton Act, which is a law

8    designed to prevent mergers that may substantially lessen

9    competition or may tend to create monopolies.

10:14 10         We also allege that USAP's conspiratorial

11   agreements with its competitors violate Section 1 of the

12   Sherman Act, which prohibits unreasonable restraints of trade,

13   and we allege that USAP and Welsh Carson's overall course of

14   conduct across the state is unfair in violation of Section 5 of

10:14 15   the Federal Trade Commission Act.  That is an overall --

16         THE COURT:  That's the nature and scope?

17         MR. GRAYSON:  Yes.  And I'm happy to cede the floor

18   now to Mr. Beck, Your Honor, to give him the opportunity to

19   present USAP's arguments on --

10:14 20         THE COURT:  I said that, but I'm not sure.

21         Are you going to proceed first, Mr. Beck?

22         MR. BECK:  Your Honor, I'm willing to proceed anytime

23   the Court wants me to.

24         THE COURT:  No.  I want to know -- I don't want to

10:14 25   jump past you if you are going to make the first argument.

10:14    1          MR. BECK:  I am.

2          THE COURT:  Okay.  Very good.

3          MR. GRAYSON:  Thank you, Your Honor.

4          MR. BECK:  May it please the Court, Your Honor, David

10:15    5    Beck for the defendant USAP, Inc.

6          THE COURT:  One second.  Let's make sure we're

7    connected.

8      *(Pause)*

9          MR. BECK:  Your Honor, there is one housekeeping

10:15   10    matter that I would like to call to attention of the Court.

11              The Court may be aware that there is a related

12    antitrust case pending before Judge Bennett.  We had a

13    hearing -- a scheduling conference last Friday before Judge

14    Bennett, and, by the way, he has a motion to dismiss pending

10:15   15    before him, just as there is one pending before you.  It has

16    been fully briefed, as well.  And basically, Judge Bennett took

17    no action on Friday other than to schedule another scheduling

18    conference for July 19, 2024, out of deference to Your Honor.

19    In other words, he is aware of this hearing this morning.  He

10:15   20    is aware of the scheduling conference in your court next

21    Monday.

22          THE COURT:  That's not the kind of deference that I

23    look forward to, but go ahead.

24          MR. BECK:  In any event, we were asked to advise you

10:16   25    of what he had done, so I'm so doing, Your Honor.

10:16    1           THE COURT:  Thank you, sir.

2           MR. BECK:  Let me turn to our argument with respect to

3    statutory interpretation.

4                Your Honor, it is our position that in

10:16    5    Section 13(b) of the FTC Act, Congress gave the FTC limited

6    statutory authority to sue for a permanent.  The FTC's

7    complaint in this lawsuit, we say, exceeds its statutory

8    authority in two separate ways.

9                First way:  Section 13(b) empowers the FTC to

10:16   10    seek an injunction in federal court only to support enforcement

11    proceedings in its own administrative process, its own

12    administrative process.  And there are no pending

13    administrative proceedings with respect to this matter before

14    Your Honor.

10:16   15                The second basis is that 13(b) authorizes

16    injunctions only to halt ongoing or imminent anticompetitive

17    conduct.  But here, the FTC's complaint, by its very terms,

18    refers to a string of acquisitions that are four years past

19    due, and even longer.

10:17   20                Our position is that that is certainly not the

21    type of conduct that the statutory standard requires.

22                Now, let me turn to the question of why.  Why

23    should the FTC not be permitted to seek a permanent injunction

24    and bypass its administrative process?

10:17   25                Well, there are several reasons.  The first

10:17    1    reason is the text of Section 13(b) itself.  And the Supreme

2    Court of the United States, in the AMG Capital case, talked

3    about how the proviso that added on in 1973 a permanent

4    injunction, according to the Supreme Court, is directly related

10:17    5    to the temporary injunction permitted by 13(b).  In other

6    words, the permanent injunction in the proviso is linked to the

7    temporary or preliminary injunction in 13(b), as well.

8        Why is that important?  It's important, Your

9    Honor, because when you look at what Congress said with respect

10:18    10    to the temporary injunction, the temporary injunction will be

11    dissolved if the FTC doesn't file an administrative action

12    within 20 days after a temporary injunction.  In other words,

13    Congress put a limit on it.  They want to make sure that a

14    temporary injunction is in support of, and not in lieu of, the

10:18    15    administrative process.

16        Because the Supreme Court of the United States in

17    AMG Capital linked the permanent injunction proviso to the

18    temporary injunction language in 13(b), we say that Congress

19    intended to limit the FTC's ability to seek a permanent

10:18    20    injunction and bypass its administrative process.

21        But there's another reason why.  In AMG Capital,

22    the Supreme Court of the United States dealt with an issue

23    where the FTC was attempting to exceed its authority by going

24    directly to court, bypass its administrative process, and seek

10:19    25    some type of equitable monetary relief.  And like here, the FTC

10:19    1    came in and said, But, wait a minute, we have got circuit court

2    decisions that support our position.  And indeed they did, just

3    like they are claiming here.  But the Supreme Court of the

4    United States looked at all of those cases, rejected what the

10:19    5    analysis and rationale of those cases were and held, FTC, No,

6    you can't go directly to court.  That's not what Section 13(b)

7    allows.  That is the precise position we take here, Your Honor.

8            Even though there are certain circuits that they

9    have relied upon, the Fifth Circuit has not ruled on this issue

10:20    10    at all.  So the Fifth Circuit -- you will be writing on a clean

11    slate with respect to any circuit court decisions.

12            Then, finally, the reason why we say that 13(b)

13    supports our position is, look at the title.  Sometimes the

14    title can be informative.  If you look at the title, you will

10:20    15    see that it refers to injunctions.  It refers to both

16    injunctions in this case.  So when you consider the title, you

17    consider what Congress said, and you consider the text, we

18    respectfully submit that under 13(b), they cannot bypass their

19    administrative proceedings to go directly to court to seek a

10:20    20    permanent injunction.

21            And, in fact, what little legislative history we

22    have, Your Honor -- and it's not very helpful, to be honest

23    with you.  One of the major concerns was that if that proviso

24    was not added in 1973, there was a concern that if a court

10:21    25    entered a temporary injunction with no ability to somehow set a

10:21   1   definitive date on a permanent injunction, that that could pose

2   a real problem.  So for all of those reasons, we say that 13(b)

3   does not support what the FTC is trying to do here.

4           Let me turn to the second reason.  Again, this

10:21   5   has to do with the statutory standard itself.  So even if you

6   conclude that, well, the FTC does have the authority to seek a

7   permanent injunction and bypass its administrative proceedings,

8   our position is they can only do so if the FTC has, quote,

9   reason to believe, end of quote, that someone, quote, is

10:21  10   violating or is about to violate the law.  In other words,

11   somebody must be doing it right now or there must be some

12   imminent threat that they are going to do so.

13           If you look at the FTC's complaint in this case,

14   the FTC alleges that my client has performed unlawful

10:22  15   acquisitions from 1914 (sic) through 2020.  So basically they

16   want to go back more than four years and say that somehow that

17   satisfies the statutory standard of, is violating or about to

18   violate.  And our position is, on its face, it does not support

19   that contention by the FTC.

10:22  20           We also cite FTC versus Shire, which is a Third

21   Circuit case from 2019 where the FTC came in and said, Yes, we

22   can do this.  We can take this kind of action here.  And what

23   the Third Circuit said in FTC versus Shire -- and I want to

24   quote this because it is directly relevant to the issue before

10:22  25   Your Honor.  The Third Circuit said, quote:  We reject the

10:22    1    FTC's contention that Section 13(b)'s, quote, violating or

2    about to violate the law can be satisfied by showing a

3    violation in the distant past in a vague and generalized

4    reference of recurring conduct.

10:23    5            Again, when you look at exactly what they have

6    alleged in this case, Your Honor -- and I'm specifically

7    referring to paragraph 333 of the FTC's complaint.  They say

8    that what they have alleged satisfies this violating or about

9    to violate statutory standard.  We say it does not.

10:23    10           An allegation that conduct is at least four years

11   old, without any factual support in the complaint, is not

12   ongoing conduct as the FTC has alleged in paragraph 333.  An

13   allegation without any factual support that, as the FTC

14   alleges, that there is a, quote, reasonable likelihood that

10:23    15   USAP will engage in similar or recurrent conduct, end of quote,

16   does not satisfy Section 13(b) either.

17           Again, paragraph 333.  It does not pass the

18   Twombly well-pled complaint test in this case.  There are no

19   allegations, I might add, that there is any conduct on the part

10:24    20   of our client that is somehow about to begin.  There is no

21   allegation that any new acquisitions are on the table.  There

22   is no allegation that any new acquisition is about to take

23   place.  Their complaint is simply devoid of the factual support

24   to support the claim that they are making in this case.

10:24    25           For those two principal reasons, Your Honor, we

10:24    1    respectfully submit that Section 13(b) of the FTC Act does not

2    entitle them to come directly to court, seek a permanent

3    injunction and bypass its own administrative process.

4            THE COURT:  Appreciate it.

10:24    5            MR. BECK:  Thank you, Your Honor.

6            THE COURT:  I don't have any questions.

7                I do need a response from the government.

8                I would like to put these responses next to the

9    argument so that it's an easier read and follow-through.

10:25    10           MR. GRAYSON:  Thank you, Your Honor.  Timothy Grayson

11    for the FTC again.

12               Your Honor, contrary to what you just heard from

13    Mr. Beck, Section 13(b) of the FTC Act permits the FTC to

14    proceed in federal court in two distinct circumstances.

10:25    15               First, the FTC can obtain or seek a preliminary

16    injunction or temporary restraining order.  Section 13(b)

17    clearly ties this kind of preliminary relief to the pendency of

18    an FTC administrative proceeding.

19               Second, however, Section 13(b) of the FTC Act

10:25    20    also permits the FTC to obtain a permanent injunction.  Unlike

21    the language about preliminary injunctions in Section 13(b),

22    the permanent injunction clause -- not at the end of the

23    statute -- does not say anything about administrative

24    proceedings.  And that's why all of the courts to consider this

10:26    25    issue, every single one, has ruled that the permanent

1    injunction language does not require a parallel administrative

2    proceeding.

3           Now, according to Mr. Beck, AMG -- the Supreme

4    Court's recent AMG Capital decision came out the opposite way,

5    but, in fact, here's what the Supreme Court said in AMG.

6           Quote:  The Commission may use Section 13(b) to

7    obtain injunctive relief while administrative proceedings are

8    foreseen or are in progress or when it seeks only injunctive

9    relief.

10           Now, USAP is attempting to write that whole

11    second part of the Supreme Court statement out of the opinion.

12    So we think AMG squarely supports us.  The two Courts of

13    Appeals that have considered this issue post-AMG agree with us,

14    as does a case from -- I believe it's the Northern District of

15    Texas, Your Honor, the Neora case that we cite in our papers.

16    The judge in that case carefully considered this issue and

17    concluded, consistent with the FTC's position today, that no

18    parallel administrative proceedings are required.

19           One thing that USAP is glossing over a little bit

20    here that I want to highlight for Your Honor is their

21    interpretation of Section 13(b) does not really make clear what

22    purpose the permanent injunction language in Section 13(b)

23    plays.  That language is obviously there, and I think the

24    Supreme Court has been clear that, in interpreting the statute,

25    we should give meaning to all the words in the statute.

10:27  1          USAP would essentially either read this permanent

2     injunction clause out of the statute, or if a parallel

3     administrative proceeding is required, USAP's construction

4     would require or, at the very least, permit a situation in

10:27  5     which the FTC is proceeding in Your Honor's court as well as in

6     an administrative proceeding in Washington, D.C.  That is

7     wasteful and duplicative, and that is very unlikely to be what

8     Congress intended.

9          So, for that reason, and all the other reasons we

10:28  10    provided in our papers, Your Honor, we do think that

11    Section 13(b) allows us to proceed solely for a permanent

12    injunction in this Court without a parallel administrative

13    proceeding.

14         We also think that we satisfy Section 13(b)'s

10:28  15    requirement that USAP, quote, Is or, quote, is about to violate

16    the law.

17         Now, everybody agrees -- I think we and USAP are

18    aligned -- that ongoing conduct satisfies Section 13(b)., and

19    that's exactly what our complaint alleges.  We allege that

10:28  20    Welsh Carson built USAP to be a monopolist and that that's

21    exactly what USAP is engaged in to this very day.

22         USAP holds practices that it acquired.  It

23    continues to conspire with certain of its competitors.  It

24    continues to exercise undue negotiating leverage.  And to this

10:29  25    day, it continues to charge patients and employers inflated

10:29    1    prices for anesthesia in this state.  We are not aware of any

2    case -- and I don't think USAP has cited one -- in which an

3    ongoing scheme like that with ongoing harm to the public was

4    dismissed under Section 13(b).

10:29    5            But even if USAP's conduct were entirely in the

6    past, Your Honor, the FTC's complaint would still be well pled

7    under Section 13(b).  And that is because of the Fifth Circuit

8    case called Southwest Sunsites.

9            Now, Mr. Beck pointed out that on the parallel

10:29    10    proceeding argument, there is no Fifth Circuit authority.

11    Here, the Fifth Circuit has spoken.  And what the Fifth Circuit

12    has said is that the, quote, about to violate language in

13    Section 13(b) is satisfied by facts that give reasonable

14    inference to a likelihood that past violations will recur.  And

10:30    15    the Fifth Circuit is not alone on this issue.

16            We cite, actually in our Welsh Carson papers,

17    cases from the Second, Seventh, Ninth and Eleventh Circuits

18    that all adopt the very same approach.  This is by far the

19    majority approach to Section 13(b)., and that is what our

10:30    20    complaint pleads here, Your Honor.  We do plead a likelihood of

21    recurrence.  We plead that USAP engaged in extensive past

22    violations.  Those facts alone will warrant an inference that

23    USAP's conduct would recur absent an injunction, but we also

24    plead that USAP is well positioned to continue the kinds of

10:30    25    conduct that we allege they engaged in in the complaint.

10:30    1          And to really drive that home, I think it's

2    important to understand the differences between this case and

3    the Shire case that Mr. Beck referenced that USAP relies on so

4    heavily.  Now, Shire is an outlier.  The Third Circuit is the

10:30    5    only case that applies the standard that Mr. Beck was

6    describing.

7          In that case, the defendant had sold off the drug

8    product that was at issue, and it was under new corporate

9    control.  All of the conduct, all of the effects of the conduct

10:31    10    had ceased five years before the FTC filed its complaint.  And

11    so it's very clear that intervening events had made it quite

12    unlikely, to say the least, that the conduct was going to

13    recur.

14          Here, there has been no such change.  USAP is

10:31    15    easily able to pick up exactly where it left off, and we think

16    for that reason, the Commission's complaint suffices under

17    Section 13(b), even if Your Honor were to disagree that we

18    pleaded an ongoing violation.

19          Unless the Court has questions, I'm happy to take

10:31    20    a seat.

21          THE COURT:  Let me just ask -- I will permit Mr. Beck

22    to respond to this.  I think what you have indicated is that if

23    this were a TRO or a preliminary injunction proceeding, you

24    would be or may be constrained by the parallel proceedings

10:32    25    section in that statute.  Is that right?

10:32    1           MR. GRAYSON:  That's right, Your Honor.

    2           THE COURT:  And because you are not seeking a

    3    permanent injunction, you do not need that parallel proceeding?

    4           MR. GRAYSON:  That's right, Your Honor.

10:32    5           THE COURT:  All right.  Thank you, sir.

    6           MR. GRAYSON:  Thank you.

    7           THE COURT:  I'm going to ask Mr. Beck to respond to

    8    that.  Five minutes.

    9           MR. BECK:  First of all, they are seeking a permanent

10:32    10    injunction in this case.  It is the first paragraph of their

    11    pleading, so they are clearly seeking a permanent injunction in

    12    this case.

    13           Our position is, among other things, that the

    14    proper case, which is referenced in the proviso, specifically

10:32    15    refers, for example, to the FTC coming into court and getting a

    16    temporary injunction and then eventually converting it to a

    17    permanent injunction.  But that does not allow the FTC to come

    18    into court, bypass its administrative process, seek a permanent

    19    injunction without honoring its administrative process.  That's

10:33    20    what the text of 13(b) says.

    21           The other point that I would make is that the

    22    Fifth Circuit case they mention, the Southwest Sunsites case,

    23    we don't have any quarrel with that case.  If Your Honor looks

    24    at that case, it specifically shows that a temporary injunction

10:33    25    was entered in this case because of a defendant's ongoing

10:33   1   fraudulent sales.  So basically the statutory standard was

2   satisfied in that matter, so we have no quarrel with that

3   decision at all.

4          THE COURT:  All right.  Thank you, sir.

10:33   5          If you would state your name for the record

6   again.  I'm sure the court reporter has it, but just to

7   identify it in the record itself.

8          MR. KLINEBERG:  Of course, Your Honor.  Good morning.

9   My name is Geoffrey Klineberg, and I'm with the Kellogg Hansen

10:33   10   firm in Washington, DC, and together with Mr. Beck, I am

11   representing here the defendant, U.S. Anesthesia Partners.

12          It is our position, Your Honor, even if the FTC

13   has authority to bring this standalone case in federal court,

14   untethered to any administrative proceeding, its complaint

10:34   15   should be dismissed for the simple reason that its allegations

16   of antitrust violations are not plausible as the Supreme Court

17   required them to be in United States versus Twombly.

18          For the reasons we have argued in our motion to

19   dismiss, we believe the FTC has fallen short of this standard

10:34   20   in at least three ways.

21          One, it has failed to allege the proper market

22   for anesthesia services, and it has, therefore, misstated

23   USAP's share of that market.

24          Two, it has failed to allege that USAP has raised

10:34   25   its prices above a competitive level when its only allegations

10:34    1    with respect to pricing are that after acquiring various

2    anesthesia practices, USAP started billing those practices out

3    at USAP's existing rate, as it was entitled to do under its

4    contracts with the insurance companies.

10:35    5             And, three, it has failed to allege that USAP has

6    engaged in exclusionary conduct.  Section 2 requires something

7    more than the mere allegation that USAP acquired various

8    practices.  There has to be a claim that USAP engaged in

9    anticompetitive conduct that caused actual harm to consumers.

10:35    10    Simply acquiring practices and billing the rates they were

11    contractually entitled to charge is not enough.

12             So I would like to briefly address each of those

13    in turn.

14             Under Section 2 of the Sherman Act, the

10:35    15    government has to allege that USAP possesses monopoly power in

16    a relevant market.  Your Honor, this is not a typical situation

17    where a consumer and a producer meet to exchange a product at a

18    certain price.

19             The patient in need of anesthesia services is not

10:36    20    the one who negotiates the price for those services.  Those

21    prices are negotiated between the providers of the services and

22    the insurance companies.

23             So when considering whether an appropriate

24    antitrust market has been alleged, courts consider whether all

10:36    25    interchangeable substitute products have been included, but the

10:36    1   FTC has failed to allege that when defining its so-called

2   market for commercially insured, hospital-only anesthesia

3   services.

4          There are anesthesiologists, Your Honor, who do

10:36    5   not currently practice in hospitals, but who work, instead, in

6   outpatient facilities and in so-called ambulatory surgery

7   centers.  The FTC has made no allegation that these

8   anesthesiologists lack sufficient qualification or skill to

9   provide anesthesiology services in hospitals.

10:37   10          When insurance companies negotiate with USAP over

11   the rates their anesthesiologists may charge, the fact that

12   these other anesthesiologists may be able and willing to

13   provide the same services necessarily means that they are in

14   the same market.  The availability of non-hospital-based

10:37   15   anesthesiologists restrains whatever USAP's ability is to raise

16   prices above the competitive level.  It is simply not plausible

17   to allege otherwise.

18          As a result of this pleading failure, the FTC's

19   allegations regarding the USAP's market share are implausible,

10:37   20   and without a valid market definition, the complaint should be

21   dismissed.

22          But that is not the only problem with the

23   complaint.  There is no allegation that USAP has profitably

24   raised its own prices above a competitive level.  What kind of

10:37   25   monopolist, one might reasonably ask, increases its rates, as

10:38    1    it is contractually entitled to do, at no more than a level

2    even with inflation?  That's what the FTC itself alleges.

3              Instead of focusing on USAP's rates, the

4    complaint dwells instead on the difference between the rates of

10:38    5    an acquired practice that the acquired practice used to charge

6    and the rates that these anesthesiologists charge now that they

7    have become part of USAP.

8              Just as a law firm would start billing out newly

9    acquired lawyers at the firm's existing rate, rather than at

10:38    10    the rates they may have charged when they were practicing in a

11    different firm, USAP billed its new doctors at USAP's existing

12    rates.

13              I want to emphasize this point:  The complaint

14    alleges that USAP acquired various practices and then raised

10:38    15    prices not to some kind of supercompetitive level, something

16    that you might expect a monopolist to do, but rather to USAP's

17    existing rates.  And those existing contract rates were not the

18    result of some kind of market power exercised by USAP when

19    negotiating with powerless multibillion dollar insurance

10:39    20    companies.  But rather they were contractual rates that USAP's

21    predecessor had negotiated before USAP even existed.

22              By the complaint's own terms, then, these

23    so-called price increases are not plausibly the result of the

24    exercise of monopoly power.  And that's not all.

10:39    25              As we explained in our motion to dismiss, there

10:39     1    is another reason why it is entirely implausible that USAP

          2    could exercise monopoly power in this environment, and that is

          3    because of a law that went into effect in 2021 called the No

          4    Surprises Act.  The FTC makes a vague reference to the law in a

10:39     5    footnote of the complaint, but it is a watershed piece of

          6    legislation.  It mandates arbitration for disputes between

          7    providers and insurers over the rates that providers can bill

          8    when they are out of the insurance companies' networks.

          9              This law has thereby effectively eliminated the

10:40    10    ability of any provider, including USAP, to exercise whatever

         11    leverage it might once have had in negotiations with insurers.

         12              Again, the FTC's claims that USAP is able to

         13    exercise any monopoly power in this environment are simply not

         14    plausible.

10:40    15              And, finally, Your Honor, I just want to spend a

         16    moment on the fact that the complaint fails to allege that USAP

         17    has engaged in some kind of anticompetitive or exclusionary

         18    conduct.

         19              Even assuming USAP is able to exercise some form

10:40    20    of monopoly power, it will not be found unlawful unless it's

         21    accompanied by an element of anticompetitive or exclusionary

         22    conduct.  The FTC's principal allegation of exclusionary

         23    conduct is that USAP acquired several smaller anesthesiology

         24    practices in Texas, consolidated them under USAP's umbrella and

10:41    25    billed them out at USAP's existing contract rates.

10:41    1              The FTC is asking this Court to accept the

2       position that acquisitions alone are presumptively

3       anticompetitive, but that is not the law.

4              As we argued in our motion, courts have expressed

10:41    5       the view that plaintiffs cannot rely on the fact of the

6       acquisition alone and that the mere factor that a merger

7       eliminates competition between the firms concerned has never

8       been a sufficient basis for illegality.

9              The FTC has made no allegation that USAP's

10:41   10       acquisitions have harmed the competitive process and thereby

11       harmed consumers.  There is no allegation, for example, that

12       USAP acquired practices in order to shut them down or to

13       deprive patients of appropriate care.

14              The FTC's complaint contains no plausible

10:42   15       allegation that USAP's acquisitions caused harm to consumers in

16       any measurable way.  The only suggestion of harm is that USAP

17       has extended its existing market rates, which were negotiated

18       at arm's length, to the newly acquired practices.  That is

19       simply not a plausible basis to allege exclusionary conduct.

20              Your Honor, these are the points I wanted to

10:42   21       stress to you this morning.  There are, of course, other

22       arguments that we make in our papers, but I won't dwell on

23       those now.

24              Unless you have any questions, I will sit down.

10:42   25              THE COURT:  I don't have any questions.  Thank you,

sir.

MR. KLINEBERG:  Thank you very much.

THE COURT:  Response?

MR. GRAYSON:  Timothy Grayson for the FTC again.

Your Honor, our complaint is 105 pages long and includes over 300 paragraphs of detailed factual allegations, and most of what you heard from Mr. Klineberg just now, very respectfully, either ignores or even flatly contradicts the facts that we've alleged in our complaint.

Mr. Klineberg raised three arguments.  There was market definition, monopoly power and exclusionary conduct.

On market definition, Mr. Klineberg's argument seems to be that we are excluding certain anesthesiologists from the market entirely.  That is not the case, Your Honor.  Our market is premised around the idea of what we refer to as hospital-only procedures.  That is, procedures that must be performed in hospitals, and for those procedures, obviously, patients need to receive anesthesia at a hospital.

Now, Mr. Klineberg's argument seems to be that anesthesiologists that currently practice outside of hospitals, or that maybe predominantly practice outside of hospitals, would simply flood into the marketplace in response to USAP trying to raise its own prices.  But, Your Honor, that is not at all what we have seen.

Our complaint alleges that USAP is a dominant

10:44   1  provider of these hospital-only anesthesia services and that no

2  competition has swarmed in from outside to compete down their

3  rates.  And, Your Honor, we plead a lot of very specific facts

4  as to why that is.

10:44   5          We plead that these other anesthesiologists lack

6  the specialization that hospitals require.  We plead that these

7  other anesthesiologists may not want to work at the hospital

8  because the shifts are long and often overnight.  We plead that

9  even if they wanted to work at the hospital and were qualified,

10:44   10  they may not be able to.  Many hospitals do not simply let any

11  anesthesiologist come in off the street and start operating

12  there.  They work specifically with an exclusive group.  And

13  so, small, you know, one and two anesthesiologists, they are

14  not going to be big enough to service an entire hospital

10:45   15  exclusively.  They can't come in and displace USAP.  And even

16  if all of these other anesthesiologists could band together and

17  form a large group, we further allege that the exclusive

18  contracts that contracts have with USAP or others are what we

19  call sticky.  It's hard for hospitals simply to replace an

10:45   20  anesthesia group.

21          So those are just some of the facts in our

22  complaint that show why these other anesthesiologists cannot,

23  and have not, come in and started competing down USAP's prices.

24          Now, again, this is an intensely factual issue

10:45   25  that is not appropriate for resolution at this stage.  It is

10:45   1   rare that courts decide market definition cases on the
        2   pleadings, and particularly here, we think our complaint is
        3   well pled and that we have said more than enough about market
        4   definition.

10:45   5           But there is also another way to establish that
        6   USAP has monopoly power.  So, one way, the more common way, is
        7   to define a relevant market and show that USAP has a very high
        8   share of the market.

        9           The other way is to plead that you can directly
10:46  10   observe the deleterious effects of USAP's monopoly, and this is
       11   an independently sufficient way.  Even if Your Honor were to
       12   find -- if Your Honor were to find that our relevant market is
       13   plausibly pleaded, you don't need to reach this issue.

       14           If you find that our relevant market is flawed,
10:46  15   you do need to consider this issue.  And here, if Your Honor
       16   does reach the issue, you will find that we had indeed pleaded
       17   direct evidence of anticompetitive effects, and that is in the
       18   form of supercompetitive pricing.

       19           Now, Mr. Klineberg would have you believe that
10:46  20   these are just preexisting market rates that USAP has been
       21   charging for years, but what we allege in our complaint is that
       22   USAP charges double the median rate in Texas and by far the
       23   highest rate in Houston and Dallas.

       24           We allege that USAP's -- the groups that USAP
10:47  25   acquired could not charge similar rates or, quite frankly,

10:47  1  rates even particularly close to these until USAP acquired
       2  them.

       3          We allege that USAP's competitors have not been
       4  able to use competition to drive down USAP's prices, and we
10:47  5  allege that USAP's customers are unable to negotiate these
       6  prices down.

       7          Again, these are deeply factual issues, Your
       8  Honor, that are inapposite for resolution at this stage.

       9          Now, finally, on exclusionary conduct or
10:47  10  anticompetitive conduct, the third prong of Mr. Klineberg's
       11  attack, I want to take a step back and make clear what
       12  anticompetitive means in this connection.

       13          Antitrust law is about protecting the competitive
       14  process.  It is about making sure that the marketplace
10:47  15  functions the way it should, make sure that different
       16  buyers and sellers of goods are competing, and the result is
       17  that people obtain high quality goods at low prices, that there
       18  is rapid innovation in markets.

       19          You are not allowed to disrupt that process by
10:48  20  buying or conspiring with your competitors.  That is exactly
       21  USAP has done, and the harm to the competitive process that has
       22  resulted is that USAP is now a monopolist.

       23          Under the antitrust laws, monopoly power can
       24  exist if parties get it by offering a superior product through
10:48  25  superior business strategy or just by sheer dumb luck, but you

10:48    1    are not allowed to use the kind of tactics that USAP has used

2    to gain monopoly power.  The Supreme Court has been very clear

3    about that issue for well over a century, and that monopoly

4    that should not exist, that is in and of itself a harm to the

10:48    5    competitive process.

6         That said, our complaint goes much further than

7    that.  We allege supercompetitive prices.  We allege that

8    particularly close competitors that were competing fiercely

9    against one another have been eliminated by USAP's conduct.  We

10:49    10    have alleged that it is now harder for new entrants to enter

11    the market and compete against USAP, and we have alleged that

12    consumers have fewer choices.  So, even though we don't need to

13    allege those things, Your Honor, we have, and our complaint

14    more than suffices to get past the 12(b)(6) standard.

10:49    15         Thank you.

16         THE COURT:  Thank you, sir.

17         MR. KLINEBERG:  Thank you, Your Honor.

18         Very briefly, with respect to market definition,

19    the FTC's definition of commercially insured hospital-only

10:49    20    anesthesia services is what they have defined as their market,

21    but there is no allegation that the nature of the

22    anesthesiology services provided in ambulatory surgical

23    centers, for example, is different.  There is no allegation

24    that anesthesiologists licensed to practice in outpatient

10:50    25    settings lack sufficient qualifications to provide

10:50   1   anesthesiology services in hospitals.  Doctors of equal skill

2   and training, who currently locate their practice in

3   nonhospital settings, are apparently not competitors, even

4   though they are fully capable of providing the same services.

10:50   5   We don't think those are plausible in terms of how they have

6   defined the relevant market here.

7        With respect to monopoly power, it is the power

8   to raise prices over a competitive level, not just some mean

9   that the FTC has devised as an average rate in the state.  It

10:50   10   is above a competitive level, which they have never tried to

11   define, or to restrict output to the same effect or somehow to

12   reduce the quality.  That's what the exercise of monopoly power

13   is.  And the FTC's only claim here is that the prices of

14   anesthesiology services have increased for certain practices

10:51   15   that used to practice separate and apart from USAP.  There is

16   no allegation that those prices are above some competitive

17   level.

18        And then finally, Your Honor, Mr. Grayson did not

19   address the No Surprises Act, and I think that's for a good

10:51   20   reason, because it does really present a very serious obstacle

21   to the FTC's claim here.  We urge the Court to take a look at

22   that Act and to understand what limitations it places on the

23   ability of any provider, and USAP in particular, to exercise

24   any kind of market power in the current environment.  Whatever

10:51   25   may once have been true is no longer true, and that is a

10:51   1    serious problem for the FTC's case.

2                    THE COURT:  Thank you, sir.

3                MR. KLINEBERG:  Thank you, Your Honor.

4                THE COURT:  All right.  I think we are ready.

10:52   5                    Mr. Yetter?

6                MR. YETTER:  Thank you, Your Honor.

7                    Your Honor, I have provided -- we have a very

8    short slide deck that I provided to the government lawyers

9    before the hearing started, and I would like to provide it to

10:52   10   you and your clerk, if we could.  It has some of the relevant

11   language that I think might be helpful to the Court.

12                   May it please the Court, Paul Yetter on behalf of

13   the Welsh Carson defendants.

14                   I would like to start, Your Honor, with what is

10:52   15   not disputed.  Welsh Carson defendants, even if you look at it

16   as a single entity, is a minority investor in U.S. Anesthesia

17   Partners.  That's one of the remarkable things about this case

18   is the FTC is suing a minority investor.  It has been a

19   minority investor for seven years, since 2017.  Twelve years

10:52   20   ago, its original investment helped USAP to expand access to

21   critical medical care by hospitals here in Houston and beyond.

22                   Your Honor, this involves medically-underserved

23   areas, like Baytown, Sharpstown, Bayside, and hospitals like

24   Ben Taub and St. Joseph's.

10:53   25                   There have been real and lasting patient care

10:53  1   benefits to our city.  None of this is seriously disputed by

       2   the FTC.  Its focus is on an alleged loss of bargaining power

       3   by big insurance companies.  The reason why the FTC knows what

       4   these facts are is because, Your Honor, it did a two-year

10:53  5   investigation before filing this lawsuit.  It secured every

       6   fact it wanted, including witness interviews and a small

       7   mountain of documents, well over a million pages of documents,

       8   all with the cooperation of all of these defendants.  And this

       9   is important, Your Honor, because in light of the substantial

10:53  10  investigation, the complaint still has as to -- and I am only

       11  speaking on behalf of my clients, the Welsh Carson clients --

       12  fatal silver bullet pleading gaps.

       13          It fails to plead essential fact allegations

       14  about how an investor, a minority investor today, what the

10:54  15  Welsh Carson defendants' actual role is in any alleged

       16  antitrust violations going on now or in the future, and it

       17  ignores a core pleading element, the 13(b) element, Your Honor,

       18  necessary to give the FTC authority to file suit at all.  And

       19  that is the likelihood of future violations and the need for

10:54  20  prospective relief.

       21          Your Honor, on slide 2, my clients, the Welsh

       22  Carson defendants, have three grounds: statutory, pleading and

       23  constitutional.  I am going to focus on ground number one and

       24  talk -- as well, address ground number two pleading, but we

10:54  25  believe the Court can avoid the constitutional issue by ruling

10:54    1    on the first two grounds.

2    If we go to slide 3, Your Honor, this is the

3    language that all the counsel have been focused on.

4    THE COURT:  Excuse me.  Go ahead.

10:55    5    MR. YETTER:  Certainly.  Counsel for the government

6    forthrightly said that their gating issue, the way they can

7    come to federal court to seek any injunction, permanent

8    injunction or preliminary injunction, is by showing -- is by

9    satisfying Section 13(b).

10:55    10    This is the language, Your Honor.  The title

11    talks about TROs and preliminary injunctions.  The language of

12    the statute, this threshold pleading issue, says that the

13    Commission, when it has reason to believe that a person,

14    partnership or corporation is violating, or is about to

10:55    15    violate, any provision of the law enforced by the FTC, they can

16    then -- the government can then come to court to seek to enjoin

17    them.

18    This is the -- from the perspective of the Welsh

19    Carson defendants, Your Honor, this is the gating issue that

10:56    20    the government has not satisfied.  They haven't pleaded as

21    against our clients -- the Court might have noticed, but you

22    might not have, in the very able presentation by the FTC

23    counsel, in the beginning, about what this case is about.  He

24    lumped everybody together: the defendants, USAP and the Welsh

10:56    25    Carson defendants.  And that's not appropriate under our

10:56    1    federal pleading rules, Your Honor, because one defendant is

2    the operating company, U.S. Anesthesia Partners.

3    The other seven defendants, my clients, are

4    investors or are somehow related to an investor of the client.

10:56    5    That's what is remarkable about this case, Your Honor, is

6    because the government wants to just lump everybody together,

7    such that investors, without any pleading of -- at least their

8    current role would be liable under the FTC Act.

9    Section 13(b) says that the FTC can enjoin

10:57    10    someone that is violating, or is about to violate, the law

11    enforced by the FTC.  The only thing the FTC can get is

12    injunctive relief.

13    If we go to slide 4, Your Honor, the difference

14    between the FTC is very significant in its enforcement power.

10:57    15    The DOJ, the Department of Justice, has the power to prosecute

16    to enforce against past violations and to secure hindsight or

17    relief for past violations.  The FTC does not have that power,

18    Your Honor.

19    Under the FTC Act, as this chart reflects, the

10:57    20    only thing the FTC can seek relief against is prospective

21    relief against current or future violations.  And regardless of

22    what the FTC alleges against USAP, the operating company in

23    this case, we have to look separately to the Welsh Carson

24    defendants to see what the government has alleged against them

10:58    25    in terms of whether they are violating currently.

10:58  1        As you can see at the timeline at the bottom,

2   Your Honor, the last alleged violation, the middle box on the

3   bottom, in 2019 -- this is their complaint, paragraph 337.  The

4   last alleged violation by the Welsh Carson entities is in 2019,

10:58  5   five years ago.

6        At that time, the Welsh Carson Fund XII owned

7   23 percent, no more than 23 percent, of USAP and did not have

8   control of the board.  So five years ago is the last violation

9   against my clients, at least just one of them, and they were at

10:58 10   the time, according to the complaint, a minority investor with

11   no control.  That's a fatal gap in the complaint.  Because the

12   gating issue for the FTC is that that defendant, every single

13   defendant, is either violating today or is about to violate our

14   federal law.

10:59 15        The reason why that is significant here, Your

16   Honor, is the FTC didn't come to court, like many private

17   plaintiffs, not knowing what the full facts are.  The FTC did a

18   full investigation.  We know this because we participated in

19   it.  And, Your Honor, one of the most significant things, at

10:59 20   least we suggest, is that having done a full investigation, the

21   FTC came to this Court knowing they had to show you that there

22   is either a violation going on or about to happen by the Welsh

23   Carson defendants, and they sought no preliminary relief.

24        Your Honor, every other case -- and we will get

10:59 25   to this in one second, but every other case you have had in

10:59   1   your Court by the FTC, the government has sought preliminary

2   relief.  Every other case.

3           And the reason why -- and we are not suggesting,

4   Your Honor, that there are not circumstances that the FTC could

11:00   5   come to court and not seek a preliminary injunction for some

6   reason or another.  For example, if the defendants, the target

7   of the investigation, had voluntarily agreed to stop what it

8   was doing, then the government wouldn't have to come in and get

9   preliminary relief.  But here, Your Honor, what is so

11:00   10  significant is that after two years of investigation, more than

11  a million pages of documents, knowing everything that these

12  defendants -- most importantly, the Welsh Carson defendants --

13  did and didn't do, the government decided in good faith it had

14  no grounds to claim that there was an imminent harm or imminent

11:00   15  violation.  That's significant.

16          All they plead -- all the government pleads in

17  this case are allegations against Welsh Carson defendants that

18  happened yesterday.  In fact, many yesterdays ago, like in 2012

19  or 2014 or 2019.

11:01   20          The government does not give, under Twombly, this

21  Court specific factual allegations to plausibly conclude that

22  there is an imminent violation by the Welsh Carson defendants

23  about to happen.  And about to happen is not something that is

24  two years in the future.  It means what it says.

11:01   25          When I tell my wife, I'm about to go to work,

11:01    1    Your Honor, it's means I'm about to go out the door.  It

2    doesn't mean I may go to work in two or three or four years.

3              The government had to plead, just to come to

4    court against my clients, the Welsh Carson defendants, that

11:01    5    they, each one of these seven defendants, were about to violate

6    the federal law.

7              If we go to slide 5, Your Honor, we looked, we

8    checked your docket for every case that the FTC filed in your

9    Court.  There was one case where you enforced a subpoena.  We

11:02    10   didn't include that because they weren't seeking substantive

11   relief, but there were four cases that the FTC filed, starting

12   in 2001 and going through 2008.  Every case, Your Honor, they

13   came to court because there was an imminent or current

14   violation of federal law.  And in every one of those cases, the

11:02    15   government asked for a preliminary injunction.

16             In the Garrett case, you granted it.  In the

17   Greenwell case, you granted it.  We couldn't quite tell,

18   because of certain sealed filings in the Webb Source and Red

19   Sky Case, whether you granted it.  But, Your Honor, in

11:02    20   contrast, today, if we look at the complaint of the government,

21   at the bottom, Your Honor, that box at the bottom, is one of

22   the allegations by the FTC against the Welsh Carson defendants.

23             And I will read it.  Quote:  Nor does anything

24   prevent Welsh Carson -- and they lump them altogether into one

11:03    25   supposed entity -- quote:  From re-upping its investment in

11:03   1   USAP, retaking formal control of the company and directing yet

2   more anticompetitive acquisitions.

3           What is the problem with that allegation, Your

4   Honor?  That allegation is symptomatic and typical of the

11:03   5   entire complaint the FTC has filed against my clients.  They

6   have no factual assertions that they make against an investor,

7   a 23 percent investor of an operating company that says that

8   the investors, or companies related to the investors, are

9   currently or about to violate federal law.

11:03   10          Instead, what they say here is, Well, nothing

11   stops them in the future at some unstated date from committing

12   some undescribed federal violations.

13          There's no litigant that could come before this

14   Court and seek a federal injunction, which is the standard the

11:04   15   government must meet, that would get -- that would stay in

16   court very long by simply telling you that nothing stops the

17   defendant from committing a violation in the future.

18          And what this allegation also does, Your Honor,

19   is it reflects -- this is their complaint, the government's

11:04   20   complaint -- that the Welsh Carson defendants have no control

21   today over U.S. Anesthesia Partners, the operating company.

22          My clients are not buying anesthesia practices.

23   They are not giving patient care.  They are investors,

24   23 percent, at the most, in one fund.

11:04   25          Now, Your Honor, if you go to slide 6, all the

11:05    1    cases across the circuits are consistent that this is a

2    threshold requirement for the government.  For the FTC to come

3    to court to seek any injunctive relief, they have to show with

4    plausible factual pleadings that a violation by each defendant

11:05    5    is happening or is about to happen.  And that is, starting, as

6    the Court sees in these cases, on slide 6, under the AMG

7    Capital case, every relief they can request must be

8    prospective.  It can't be retrospective.  That's the difference

9    between the DOJ enforcement power and the FTC.

11:05    10    So if we look at the second -- counsel for the

11    government very correctly pointed out, well, there's the

12    Southwest Sunsites case, that's the fourth bullet, Your Honor,

13    and that case is exactly the kind of case in which the Federal

14    Trade Commission can come in and seek an injunction.

11:06    15    The defendants were selling land in rural Texas,

16    saying it was good for farming and ranching and everything and

17    there was utilities and water, and it was all false.  There was

18    no water.  There were no people.  There was no value.  It was a

19    scheme to defraud out-of-state buyers, and so the government

11:06    20    came in to seek a preliminary injunction, which was granted.

21    That's not the situation that we have here.

22    The government seems to suggest that proving --

23    alleging with plausible facts a reasonable expectation of

24    current or imminent violations is somehow a low standard.  Your

11:06    25    Honor, that's exactly the standard that the government -- that

11:06  1    Section 13(b) requires the government to meet.

2            Now, there is another Texas case that we suggest

3    for the Court and your staff to consider reading.  It's the

4    AdvoCare case in 2020 out of the Eastern District.  In that

11:07  5    situation, the defendant -- the person that actually operated

6    the scheme had shut down the company, and Judge Jordan in Plano

7    looked to see whether the FTC could sue for injunctive relief

8    when the deception and fraud had stopped.  The company had

9    dissolved.  And he said you couldn't.

11:07  10           Now the FTC here is saying USAP is still

11   operating, but what they are not -- what the government needs

12   to explain to the Court is my clients, the Welsh Carson

13   defendants, are only minority shareholders with no control.

14           So, in essence, this case is exactly like the

11:07  15   Third Circuit case in Shire where the defendant had sold the

16   drug over which the dispute occurred, and the Third Circuit

17   said there's no plausible grounds for an injunction and so the

18   FTC cannot seek injunctive relief.

19           Here, Your Honor, the best the government can say

11:08  20   is that at some point in the future, the Welsh Carson

21   defendants might get -- retake control and might direct a

22   future violation.

23           So, Your Honor, we believe that on the issue of

24   13(b) -- and this is a -- we believe this is a seminal gating

11:08  25   threshold issue -- for the FTC to sue the Welsh Carson

11:08    1    defendants, that their complaint fails to state under Twombly

2    facts that give a plausible expectation that the Welsh Carson

3    defendants today are violating or are about to imminently

4    violate.

11:09    5    Your Honor, I have one other ground, but I want

6    to know if you want me to pause and let the government respond

7    at this point?

8    THE COURT:  Is that the constitutional issue?

9    MR. YETTER:  The other one is the corporate

11:09    10    separateness issues, and they are just lumping everybody

11    together.  It is a separate issue, Your Honor, but I'm happy to

12    deal with it or let the government respond.

13    THE COURT:  I think the government should respond, and

14    I'm not really sure I need argument on that, but we will wait

11:09    15    and see.

16    MR. YETTER:  All right.  Thank you, Your Honor.

17    MR. DAVID B. SCHWARTZ:  May it please the Court, Your

18    Honor, I'm David Schwartz on behalf of the Federal Trade

19    Commission.

11:09    20    I would like to begin by addressing my opposing

21    counsel's point that Welsh Carson is just an investor.  I would

22    like to walk through, if I could, just some of the allegations

23    in our complaint about Welsh Carson's independent participation

24    in USAP's violations of the antitrust laws.

11:09    25    Welsh Carson came up with the original

11:09   1   anesthesiology consolidation strategy at issue, and it

2   specifically created USAP by acquiring the Greater Houston

3   Anesthesiology Group.  Welsh Carson executed multiple letters

4   of interest, letters of intent and confidentiality agreements

11:10   5   for USAP's creation, USAP's acquisition and USAP's horizontal

6   agreements, such as their market allocation agreement with

7   Envision.  In every one of those agreements, Your Honor, one

8   person signs for USAP; one person signs for Welsh Carson.  And

9   we allege that at four different places in our complaint.

11:10   10   Welsh Carson hired multiple consultants to

11   identify anesthesia practices for USAP to acquire.  Welsh

12   Carson reviewed and approved every single acquisition USAP

13   made.  Welsh Carson drafted the specific contractual language

14   at issue, the tuck-in clauses that USAP uses to raise

11:11   15   anesthesiology prices across Texas.

16   Welsh Carson selected USAP's management team,

17   including USAP's initial chief executive officer, chief

18   financial officer, chief operations officer and head of human

19   resources.  USAP's most recent CEO comes from Welsh Carson and

11:11   20   still has a role at Welsh Carson today.

21   Welsh Carson provided over $175 million of

22   funding for the creation of USAP and USAP's serial acquisition,

23   and Welsh Carson has always had, from USAP's founding until

24   today, at least two board seats on USAP's board of directors.

11:11   25   Your Honor, USAP -- I'm sorry -- Welsh Carson is

11:11   1   not a passive investor.  They are not an active investor.  They

2   are the creator of USAP, and they deserve to be held liable for

3   their independent participation in USAP's unlawful scheme.

4        Now, let me turn to the 13(b) issue that Welsh

11:12   5   Carson raised.  To win on this argument, they have to prove as

6   a matter of law both that their conduct is not ongoing and that

7   they are not about to violate the law.  They cannot win on

8   either ground.

9        Let me address each in turn.

11:12   10        First, I want to talk about ongoing conduct.

11   Your Honor, the 13(b) analysis is extremely straightforward and

12   relies on three straightforward undisputed points.

13        The first is that the complaint alleges that

14   Welsh Carson today holds about a quarter of USAP's stock and

11:12   15   remains USAP's most influential board member.

16        Second, the Supreme Court has ruled since 1957,

17   in the Dupont case cited in our papers, that the act of

18   directly or indirectly holding assets of another company, the

19   effect of which may be to substantially lessen competition,

11:12   20   violates Section 7 of the Clayton Act and that, quote, the

21   government may proceed at anytime, unquote, to challenge that

22   holding of assets.

23        And, third, Section 7 is one of the laws the FTC

24   enforces and it enforces here against Welsh Carson.  That's it.

11:13   25   That's the entire analysis.  And Welsh Carson doesn't dispute

11:13    1   any of those points.  It admits it's holding stock today in

2   USAP.  It never disputes the Dupont case or its successor, the

3   ITT Continental Baking case we talk about in our papers.  And

4   there is no disagreement between the parties about the plain

11:13    5   text of 13(b), which is that the Commission can come into court

6   and seek a permanent injunction when a company is violating the

7   laws the FTC enforces.

8            Now, of course, we still have to prove that Welsh

9   Carson's conduct substantially lessens competition, so I want

11:13    10  to be very clear.  This is not a strict liability standard, and

11  we are not seeking to hold Welsh Carson liable merely because

12  they have an ownership stake.  We are saying that we are

13  allowed to come into court and to seek a permanent injunction

14  because Welsh Carson independently participated in the ongoing

11:14    15  conduct that is happening today.

16           USAP is Welsh Carson's handcrafted vehicle, and

17  it's in the market right now.

18           The FTC is not aware of any case -- and Welsh

19  Carson cites none -- that holds that an entity's current

11:14    20  holding of assets that substantially lessen competition is time

21  barred as to a government enforcer.  In fact, the only case

22  that squarely addresses this issue is nowhere in this deck.

23  That's the FTC versus Facebook case we cite in our papers.

24  That Court followed the ITT Continental Baking and Dupont cases

11:14    25  I just referenced to hold that the ongoing holding of a

11:14  1   previous acquisition still violates the antitrust laws

2   for 13(b) today.

3           I would like to talk about their deck that they

4   just handed out because I think it is missing a couple critical

11:15  5   points.

6           First, I will just point to slide 3 and say that

7   this is not the full text of 13(b).  It is missing the

8   permanent injunction proviso that is the basis for our coming

9   into court today, so I don't think this is a complete document.

11:15  10          I would also like to turn to slide 5 for just a

11  moment.  I know Your Honor said you didn't want to hear

12  arguments on the corporate separateness.  I will just say this

13  slide is missing your FTC versus Kennedy decision from 2008,

14  which we cite in our papers.  That expressly describes why it

11:15  15  is appropriate to hold all of the Welsh Carson entities liable

16  here today.

17          I would like to talk for a few minutes about the

18  other part of 13(b), the likelihood of recurrence standard.

19          Your Honor, Welsh Carson is also about to violate

11:16  20  the FTC statutes because there is a fair inference of a

21  reasonable expectation of continued violations by Welsh Carson.

22  That quote comes from the Fifth Circuit's decision in Southwest

23  Sunsites, which controls here, and is the same as the permanent

24  injunction standard this Court routinely applies.

11:16  25          Here, the FTC's complaint easily satisfies that

11:16   1   governing standard because there are multiple well-pleaded

2   allegations of a large scale systematic scheme that is still

3   intact.  In fact, there are two of them.  First, there is the

4   entity that Welsh Carson masterminded, handcrafted and

11:16   5   maintains to the present day, namely USAP.

6            USAP has engaged in over a dozen acquisitions

7   since its founding, and who knows what else is on Welsh

8   Carson's shopping list for USAP to pick up.  And just to give

9   an example about why it is reasonable for the Court to infer

11:16   10   that there are future acquisitions in the offing, I point Your

11   Honor to paragraph 325 of our complaint where we allege that

12   USAP began to show interest in acquiring a practice called

13   Guardian Anesthesia Services in 2014, but it didn't complete

14   the acquisition until 2020.

11:17   15            You have also heard a lot from Welsh Carson about

16   our two-year investigation.  If you do the math, Your Honor,

17   that means that our investigation, by their recounting, started

18   in about 2021.  That's almost exactly when they say the last

19   conduct occurred.  There's no credit they get for stopping

11:17   20   their conduct once they realize the government is

21   investigating, and there are actually numerous cases holding to

22   that effect that is talked about in our papers.

23            Beyond USAP itself, there is also Welsh Carson,

24   and we have well-pleaded allegations in our complaint saying

11:17   25   they plan to run the same playbook with USAP in practices like

11:17      1    radiology and emergency medicine.

           2              I want to point Your Honor to paragraph 339 of

           3    our complaint, which is quoting from contemporaneous business

           4    documents within Welsh Carson admitting that, quote:  Given our

11:18      5    success to date with USAP and in emergency medicine, we would

           6    like to deploy a similar strategy to consolidate the market,

           7    unquote.  They are talking about radiology.  That's exactly the

           8    find of factual well-pleaded allegation that courts like Shire

           9    held was missing in that case.  That's not the case here.

11:18     10              And I would point Your Honor to the numerous

          11    cases throughout the Fifth Circuit that have held that when

          12    there is a large scale, intact scheme present at the filing of

          13    litigation, that satisfies Southwest Sunsites.

          14              Look at FTC versus Educare, for example, where

11:18     15    the Western District of Texas held there was a large scale

          16    fraudulent scheme with intact infrastructure at the initiation

          17    of litigation.  Or FTC versus Neora, where the Court found that

          18    the channel of wrongdoing was still open.  The channel of

          19    wrongdoing is still wide open today, Your Honor, for both Welsh

11:19     20    Carson and USAP.

          21              Does Your Honor have any questions?

          22              THE COURT:  I have no questions.

          23              MR. YETTER:  Your Honor, with your permission, I have

          24    just a brief response.

11:19     25              THE COURT:  Sure thing.

11:19    1           MR. YETTER:  Your Honor, for this, the government

2    agency timing matters.  And so as well-spoken as counsel is, it

3    is of no use to this Court to say that their complaint alleges

4    a current or imminent violation when they don't give you any

11:19    5    dates on all of the activities and events that they talked

6    about.

7           What counsel actually was talking about when they

8    say that Welsh Carson supposedly was the creator of USAP was

9    something that happened in 2012, 11, 12 years ago.  And if we

11:20    10    look at the actual complaint that the government has filed

11    against my clients, there is no date of an alleged wrongful act

12    that somehow Welsh Carson participated in any sooner than 2019.

13    The only date beyond 2019 is a date in 2020 when they say that

14    Welsh Carson got dividends.  Getting dividends is not illegal,

11:20    15    and it's not an unlawful act or imminent violation.

16           So what the government has given to the Court, at

17    least as to my client, as to the Welsh Carson defendants, is a

18    complaint that alleges no supposed unlawful activity or

19    participation beyond five years ago.  That is not a complaint

11:20    20    that gives this Court a basis to plausibly conclude that there

21    is an imminent -- excuse me -- that there is a current or

22    imminent violation.

23           Now, counsel said, Well, the company is still

24    operating.  And, yes, USAP is still operating.  But their

11:21    25    complaint alleges that the Welsh Carson defendants have no

11:21    1    control over it.  Yes.  They have two board seats out of 14.

2    That's one seventh of the board.  Their complaint does not

3    allege that Welsh Carson has control today of the board.

4         The complaint alleges that the only owner, Welsh

11:21    5    Carson Fund XII, has 23 percent of the stock.  That's not a

6    majority.  It's not control.

7         And so what the government is trying very hard to

8    do is maintain claims against a private equity firm, a group of

9    companies that invested in an operating company, by somehow

11:21    10    blurring everything together as if it were all the operating

11    company.  And that's not what Rule 12(b)(6) or Section 13(b)

12    allows.

13         Lastly, counsel said, Well, this could happen

14    somewhere else.  The FTC is coming to court to defend its

11:22    15    complaint against the Welsh Carson defendants by saying, Well,

16    I know this case is all about anesthesia, but we can sue

17    because it might happen in radiology or some other health care

18    area.  Your Honor, that's not what the pleading requirements,

19    Twombly and Rule 12(b)(6), allow the government to do.  They

11:22    20    have to give you, to get through that initial gate, factual

21    allegations, not speculation, not possibilities, not maybes,

22    but something could happen in the future, not ifs, piled on

23    ifs, factual allegations that give you an ability to plausibly

24    conclude that there is a reasonable expectation of an imminent

11:22    25    or actual violation.

11:22   1          So, Your Honor, in conclusion, what counsel gave

2      back to the Court in response to this issue was nothing of

3      substance that the Court can rely on.  There is not a case that

4      they can cite that the government has ever shown that a

11:23   5      minority, noncontrolling investor can somehow be held liable

6      because the operating company may or may not have made some

7      acquisitions that are being challenged.  That's where we are at

8      today in this case.

9              Your Honor, with that, if you would like me to

11:23  10      move to the corporate separateness point, I'm happy to do that

11      briefly.

12          THE COURT:  I believe that is sufficiently pled -- I

13      mean, sufficiently written on.

14              Is there something unique about it that I need to

11:23  15      be aware of?

16          MR. YETTER:  Your Honor, I have touched a little bit

17      on it already.

18          THE COURT:  I have heard it.  Yeah.

19          MR. YETTER:  Yes, you have.  I think -- let me just

11:23  20      check my notes.

21              The one last thing, Your Honor, slide 7, which

22      is -- which deals with the corporate separateness, that is

23      the -- so the Court can see in a schematic what the seven

24      defendants are.  And the only defendant is the yellow circle --

11:24  25      oval box to the right at the bottom that today owns any part of

11:24    1    USAP, and it's 23 percent or less.  It does not have control,

2    and it is entitled to appoint only two directors out of

3    fourteen on the USAP board.  All the rest do not have ownership

4    or any board -- rights to appoint to the board.

11:24    5            THE COURT:  Got it.

6            MR. YETTER:  Thank you, Your Honor, for your time.

7            MR. DAVID B. SCHWARTZ:  Your Honor, may I briefly be

8    heard on the corporate separateness issue for just a moment?

9            THE COURT:  What are you going to say now?  On the

11:24    10    what?

11            MR. DAVID B. SCHWARTZ:  On the corporate separateness.

12            THE COURT:  One minute maybe.

13            MR. DAVID B. SCHWARTZ:  Yes, Your Honor.

14            THE COURT:  I have got the briefs and all on it.

11:25    15            Go ahead.

16            MR. DAVID B. SCHWARTZ:  I would just point Your Honor

17    to paragraphs 31 and 32 of the complaint which allege that all

18    seven of the Welsh Carson entities are commonly located,

19    commonly branded, commonly staffed and commonly controlled.

11:25    20            We specifically allege that Mr. D. Scott Mackesy

21    is a director of numerous of these entities across both the

22    Fund XI and Fund XII defendants.  They are part of, as Your

23    Honor put it in the Kennedy decision, the same unholy alliance,

24    and you explained there why it's appropriate to hold all the

11:25    25    entities, even though the misconduct is only occurring through

11:25    1    one of them today.

2            On the control issue, very briefly, I point Your

3    Honor to the Reading International case.  It's in our papers.

4    It says that there is no numeric threshold for antitrust

11:25    5    purposes when it comes to control.  And there are numerous

6    cases that Welsh Carson themselves cite, such as Post X and

7    Top Rank, that hold that control can be found when there is a

8    minority investor.

9            Thank you, Your Honor.

11:26    10    THE COURT:  All right.  Gentlemen, I guess I have got

11    to find out what this other case is about.  So let me ask.  I

12    have not looked at the cases pending, and I wouldn't ordinarily

13    do that anyway, in Judge -- did you say Bennett's court?

14    MR. BECK:  Yes, Your Honor.  Judge Bennett.

11:26    15    THE COURT:  Let's see what I have got here.  So this

16    is an individual plaintiff as opposed to to the FTC?

17    MR. BECK:  That is correct, Your Honor.

18    THE COURT:  Versus the --

19    MR. YETTER:  It's a punitive action of insurance

11:26    20    companies against the same defendants.

21    THE COURT:  I was looking for that.  It does include

22    WC, Welsh Carson, as a defendant in the matter.  All parties

23    are the same save and except the FTC is involved in this case.

24    I say all the parties, meaning all of the defendants in the

11:27    25    case.

11:27   1           MR. BECK:  Welsh Carson and USAP.

2           MR. YETTER:  Yes, Your Honor.  Same defendants.

3           THE COURT:  All right.  Thank you.

4               Is there anything else I need to hear?  And the

11:27   5   operative term is "need to hear."

6           MR. YETTER:  Your Honor, I hope you feel better and

7   the allergies go away, and we appreciate your time and

8   patience, as always.

9           THE COURT:  They will go away and they will come back.

11:27   10          MR. YETTER:  Like clockwork every year.

11          THE COURT:  Yeah.  I look forward to it.

12              Were you saying something?

13          MR. DAVID B. SCHWARTZ:  Nothing from the government.

14          THE COURT:  Very good.

11:27   15          MR. BECK:  I have two great points, but I don't think

16   the Court is going to entertain them so...

17          THE COURT:  All right.  Wait.  I'm not going to

18   entertain them?

19          MR. BECK:  I assume you were not going to entertain

11:27   20  them.  If you will, I will quickly make them.

21          THE COURT:  No, no, no.  I think I have at least a

22   threshold command of what has been thrust upon me.  And to the

23   extent that I need some additional argument or some refinement,

24   it may be that I will do it telephonically on a specific point,

11:28   25  whatever, if I get there.  Otherwise, I will be looking not

11:28  1  only at the documents here, but I think you have also filed

2  another document having to do with scheduling, assuming that, I

3  gather, that the case is not dismissed; that there is some work

4  that you all are doing together in terms of attempting to

11:28  5  figure out what direction -- how far this is going to go, where

6  it should go, but I will be looking at this over the next 15 to

7  20 days.  It will take me that long to get through the

8  paperwork.

9         MR. BECK:  Thank you, Your Honor.

11:28  10        MR. YETTER:  Thank you, Your Honor.

11        THE COURT:  And you were about to say?

12        MR. HENNES:  Thank you for having us.  I'm standing

13  out of respect for the Court.

14        THE COURT:  All right.  Thank you very much.  Have a

11:28  15  good evening.

16             Oh, there was a question.  I don't believe there

17  is anything that the parties seek to protect in this record at

18  this proceeding, so if the public seeks the documents or the

19  record of argument, are there going to be any objections from

11:29  20  the government in that respect?

21        MR. GRAYSON:  No, Your Honor.  I don't think we heard

22  anything today that we would --

23        MR. BECK:  None from USAP.

24        MR. YETTER:  No, Your Honor.

11:29  25        THE COURT:  They may not want it, but the point is, if

11:29

1   they ask, at least I know what your positions are.

2        MR. YETTER:  Thank you, Your Honor.

3      *(Court adjourned at 11:30 AM)*

4                       * * * *

5      I certify that the foregoing is a correct transcript from

6   the record of proceedings in the above-entitled cause.

7

8   Date: April 9, 2024

9

10                    /s/ Mayra Malone
                      ---------------------------------------
11                    Mayra Malone, CSR, RMR, CRR
                      Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. BECK: **[17]**  5/8 5/24 10/22 11/1
11/4 11/9 11/24 12/2 17/5 22/9 56/14
56/17 57/1 57/15 57/19 58/9 58/23
MR. COSTA: **[2]**  7/6 7/15
MR. DAVID B. SCHWARTZ: **[6]**  45/17
55/7 55/11 55/13 55/16 57/13
MR. GRAYSON: **[16]**  4/2 4/4 4/11
4/19 5/1 5/5 8/12 9/9 10/17 11/3 17/10
22/1 22/4 22/6 29/4 58/21
MR. HENNES: **[1]**  58/12
MR. KLINEBERG: **[5]**  6/6 23/8 29/2
33/17 35/3
MR. YETTER: **[17]**  6/13 35/6 37/5
45/9 45/16 51/23 52/1 54/16 54/19
55/6 56/19 57/2 57/6 57/10 58/10
58/24 59/2
THE COURT: **[57]**  3/2 4/3 4/5 4/17
4/23 5/4 5/6 5/14 6/3 6/11 7/5 7/11
7/16 8/17 10/16 10/20 10/24 11/2 11/6
11/22 12/1 17/4 17/6 21/21 22/2 22/5
22/7 23/4 28/25 29/3 33/16 35/2 35/4
37/4 45/8 45/13 51/22 51/25 54/12
54/18 55/5 55/9 55/12 55/14 56/10
56/15 56/18 56/21 57/3 57/9 57/11
57/14 57/17 57/21 58/11 58/14 58/25

**$**

**$175 [1]**  46/21
**$175 million [1]**  46/21

**'**

**'s [2]**  16/1 19/14

**/**

**/s [1]**  59/9

**0**

**03560 [1]**  1/4

**1**

**10 [2]**  8/1 9/2
**105 [1]**  29/5
**10:00 [1]**  1/5
**11 [1]**  52/9
**11:30 [1]**  59/3
**12 [4]**  33/14 52/9 53/11 53/19
**1221 [1]**  1/24
**13 [47]**  5/11 5/15 6/2 6/16 7/2 12/5
12/9 12/15 13/1 13/5 13/7 13/18 14/6
14/12 14/18 15/2 16/1 16/16 17/1
17/13 17/16 17/19 17/21 18/6 18/21
18/22 19/11 19/14 19/18 20/4 20/7
20/13 20/19 21/17 22/20 36/17 37/9
38/9 44/1 44/24 47/4 47/11 48/5 49/2
49/7 49/18 53/11
**14 [1]**  53/1
**15 [3]**  8/1 9/18 58/6
**15-minute [1]**  9/3
**1615 [1]**  2/5
**19 [1]**  11/18
**1914 [1]**  15/15
**1957 [1]**  47/16
**1973 [2]**  13/3 14/24

**2**

**20 [1]**  58/7

**20 days [1]**  12/12
**2001 [1]**  41/12
**20024 [1]**  1/20
**20036 [1]**  2/6
**2008 [2]**  41/12 49/13
**2012 [2]**  40/18 52/9
**2014 [2]**  40/19 50/13
**2017 [1]**  35/19
**2019 [6]**  15/21 39/3 39/4 40/19 52/12
52/13
**2020 [4]**  15/15 44/4 50/14 52/13
**2021 [2]**  27/3 50/18
**2024 [3]**  1/5 11/18 59/8
**23 percent [6]**  39/7 39/7 42/7 42/24
53/5 55/1

**3**

**300 [1]**  29/6
**3000 [1]**  2/14
**31 [1]**  55/17
**32 [1]**  55/17
**325 [1]**  50/11
**333 [3]**  16/7 16/12 16/17
**337 [1]**  39/3
**339 [1]**  51/2
**3560 [1]**  3/10

**4**

**400 [2]**  1/19 2/5
**4100 [1]**  2/10
**4500 [1]**  1/24
**4:23-CV-03560 [1]**  1/4

**5**

**515 [1]**  2/19
**5787 [1]**  2/20

**7**

**713-250-5787 [1]**  2/20
**77002 [3]**  2/11 2/15 2/20
**77010 [1]**  1/25

**8**

**8004 [1]**  2/19
**811 [2]**  2/10 2/14

**A**

**A.M [1]**  1/5
**ability [6]**  13/19 14/25 25/15 27/10
34/23 53/23
**able [7]**  21/15 25/12 27/12 27/19 30/10
32/4 37/22
**about [59]**  5/20 7/19 8/3 8/15 9/4 9/11
13/3 15/10 15/17 16/2 16/8 16/20
16/22 17/21 17/23 19/15 20/12 31/3
32/13 32/14 33/3 35/17 36/14 37/11
37/14 37/23 37/23 38/5 38/8 39/17
39/22 40/23 40/23 40/25 41/1 41/5
42/9 43/5 45/3 45/23 47/7 47/10 47/14
48/3 48/4 49/3 49/17 49/19 50/9 50/15
50/18 50/22 51/7 52/6 52/7 53/16
54/14 56/11 58/11
**above [6]**  23/25 25/16 25/24 34/10
34/16 59/6
**above-entitled [1]**  59/6
**absent [1]**  20/23
**absolutely [1]**  8/13
**accept [1]**  28/1

**access [1]**  35/20
**accommodate [1]**  8/22
**accompanied [1]**  27/21
**according [3]**  13/4 18/3 39/10
**acquire [2]**  9/19 46/11
**acquired [12]**  9/17 19/22 24/7 26/5
26/5 26/9 26/14 27/23 28/12 28/18
31/25 32/1
**acquiring [4]**  24/1 24/10 46/2 50/12
**acquisition [7]**  16/22 28/6 46/5 46/12
46/22 49/1 50/14
**acquisitions [11]**  10/6 12/18 15/15
16/21 28/2 28/10 28/15 42/2 50/6
50/10 54/7
**across [5]**  9/17 10/14 43/1 46/15
55/21
**act [18]**  6/2 10/7 10/12 10/15 12/5 17/1
17/13 17/19 24/14 27/4 34/19 34/22
38/8 38/19 47/17 47/20 52/11 52/15
**action [4]**  11/17 13/11 15/22 56/19
**active [1]**  47/1
**activities [1]**  52/5
**activity [1]**  52/18
**actual [4]**  24/9 36/15 52/10 53/25
**actually [4]**  20/16 44/5 50/21 52/7
**add [1]**  16/19
**added [2]**  13/3 14/24
**additional [1]**  57/23
**address [7]**  5/10 6/22 7/25 24/12
34/19 36/24 47/9
**addresses [1]**  48/22
**addressing [2]**  6/7 45/20
**adjourned [1]**  59/3
**administrative [22]**  12/11 12/12 12/13
12/24 13/11 13/15 13/20 13/24 14/19
15/7 17/3 17/18 17/23 18/1 18/7 18/18
19/3 19/6 19/12 22/18 22/19 23/14
**admits [1]**  48/1
**admitting [1]**  51/4
**adopt [1]**  20/18
**advise [1]**  11/24
**AdvoCare [1]**  44/4
**after [5]**  7/9 8/10 13/12 24/1 40/10
**again [9]**  15/4 16/5 16/17 17/11 23/6
27/12 29/4 30/24 32/7
**against [20]**  9/21 33/9 33/11 37/21
38/16 38/20 38/21 38/22 38/24 39/9
40/17 41/4 41/22 42/5 42/6 47/24
52/11 53/8 53/15 56/20
**agency [6]**  35/20 39/5 39/8 40/18 52/9
52/19
**agree [1]**  18/13
**agreed [1]**  40/7
**agreement [1]**  46/6
**agreements [4]**  10/11 46/4 46/6 46/7
**agrees [1]**  19/17
**ahead [4]**  9/2 11/23 37/4 55/15
**aided [1]**  2/23
**AL [1]**  1/7
**aligned [1]**  19/18
**all [48]**  4/6 6/11 7/5 7/16 8/19 14/4
14/10 15/2 17/24 18/25 19/9 20/18
21/9 21/9 22/5 22/9 23/3 23/4 24/24
26/24 29/24 30/16 35/4 36/8 36/8
36/18 37/3 40/16 40/16 42/25 43/17
45/16 49/15 52/5 53/10 53/16 55/3

**A**

**all... [11]** 55/14 55/17 55/24 56/10 56/22 56/24 56/24 57/3 57/17 58/4 58/14

**allegation [18]** 16/10 16/13 16/21 16/22 24/7 25/7 25/23 27/22 28/9 28/11 28/15 33/21 33/23 34/16 42/3 42/4 42/18 51/8

**allegations [14]** 16/19 23/15 23/25 25/19 29/6 36/13 40/17 40/21 41/22 45/22 50/2 50/24 53/21 53/23

**allege [28]** 9/19 10/4 10/6 10/10 10/13 19/19 20/25 23/21 23/24 24/5 24/15 25/1 25/17 27/16 28/19 30/17 31/21 31/24 32/3 32/5 33/7 33/7 33/13 46/9 50/11 53/3 55/17 55/20

**alleged [15]** 9/17 9/18 16/6 16/8 16/12 24/24 29/9 33/10 33/11 36/2 36/15 38/24 39/2 39/4 52/11

**alleges [14]** 9/15 10/1 15/14 16/14 19/19 26/2 26/14 29/25 38/22 47/13 52/3 52/18 52/25 53/4

**alleging [1]** 43/23

**allergies [1]** 57/7

**alliance [1]** 55/23

**allocation [1]** 46/6

**allow [2]** 22/17 53/19

**allowed [5]** 7/4 7/7 32/19 33/1 48/13

**allows [3]** 14/7 19/11 53/12

**almost [2]** 8/6 50/18

**alone [4]** 20/15 20/22 28/2 28/6

**already [1]** 54/17

**also [15]** 2/3 3/12 6/19 10/10 15/20 17/20 19/14 20/23 31/5 42/18 49/10 49/19 50/15 50/23 58/1

**altogether [1]** 41/24

**always [2]** 46/23 57/8

**am [5]** 11/1 23/10 36/10 36/23 59/3

**amassed [1]** 9/16

**ambulatory [2]** 25/6 33/22

**AMERICAN [3]** 2/12 7/7 9/12

**AMG [9]** 13/2 13/17 13/21 18/3 18/4 18/5 18/12 18/13 43/6

**AMICUS [2]** 2/12 7/7

**among [1]** 22/13

**analysis [3]** 14/5 47/11 47/25

**ANDERSON [1]** 2/8

**anesthesia [26]** 1/6 1/22 2/3 3/11 4/13 5/3 5/9 9/16 9/24 20/1 23/11 23/22 24/2 24/19 25/2 29/18 30/1 30/20 33/20 35/16 38/2 42/21 42/22 46/11 50/13 53/16

**anesthesiologist [1]** 30/11

**anesthesiologists [14]** 25/4 25/8 25/11 25/12 25/15 25/6 29/13 29/20 30/5 30/7 30/13 30/16 30/22 33/24

**anesthesiology [8]** 25/9 27/23 33/22 34/1 34/14 46/1 46/3 46/15

**another [10]** 7/14 11/17 13/21 27/1 31/5 33/9 40/6 44/2 47/18 58/2

**anticompetitive [10]** 9/14 12/16 24/9 27/17 27/21 28/3 31/17 32/10 32/12 42/2

**antitrust [12]** 5/12 6/8 6/9 11/12 23/16 24/24 32/13 32/23 36/16 45/24 49/1 56/4

**any [34]** 6/4 9/4 11/24 14/11 16/11

16/13 16/19 16/21 16/22 17/6 20/1 22/23 23/14 27/10 27/13 28/16 28/24 28/25 30/14 34/23 34/24 36/15 37/7 37/15 38/7 43/3 48/1 48/18 51/21 52/4 52/12 54/25 55/4 58/19

**anything [5]** 17/23 41/23 57/4 58/17 58/22

**anytime [1]** 10/22 47/21

**anyway [1]** 56/13

**apart [1]** 34/15

**apologies [1]** 4/4

**apparently [1]** 34/3

**Appeals [1]** 18/13

**APPEARANCES [2]** 1/14 2/1

**applies [2]** 21/5 49/24

**appoint [2]** 55/2 55/4

**appreciate [3]** 3/8 17/4 57/7

**appreciation [1]** 3/22

**approach [2]** 20/18 20/19

**appropriate [7]** 3/20 24/23 28/13 30/25 37/25 49/15 55/24

**approved [1]** 46/12

**APRIL [2]** 1/5 59/8

**arbitration [1]** 27/6

**architectural [1]** 4/6

**area [1]** 53/18

**areas [1]** 35/23

**argue [2]** 3/19 8/7

**argued [2]** 23/18 28/4

**arguing [3]** 4/12 4/14 9/4

**argument [18]** 3/19 3/21 5/3 5/17 5/21 6/16 7/13 7/14 10/25 12/2 17/9 20/10 29/12 29/19 45/14 47/5 57/23 58/19

**arguments [15]** 4/18 4/21 5/15 5/15 6/7 7/18 7/23 8/2 8/6 8/11 8/19 10/19 28/22 29/10 49/12

**arm's [1]** 28/18

**around [2]** 3/16 29/15

**as [49]** 5/14 5/16 5/16 6/6 8/3 8/3 9/3 9/3 9/22 11/15 11/16 13/7 16/12 16/13 18/14 19/5 19/5 23/16 24/3 25/18 25/25 26/8 26/25 28/4 29/15 30/4 33/20 34/9 35/16 36/10 36/24 37/20 38/19 39/1 43/5 46/6 47/5 48/21 49/23 52/2 52/2 52/17 52/17 53/10 55/22 56/6 56/16 56/22 57/8

**as it [1]** 9/3

**ask [6]** 5/14 21/21 22/7 25/25 56/11 59/1

**asked [2]** 11/24 41/15

**asking [2]** 5/23 28/1

**aspects [1]** 9/5

**assertions [1]** 42/6

**assets [3]** 47/18 47/22 48/20

**assume [2]** 8/9 57/19

**assuming [2]** 27/19 58/2

**attack [1]** 32/11

**attempting [4]** 9/12 13/23 18/10 58/4

**attention [1]** 11/10

**Austin [1]** 10/6

**authority [7]** 12/6 12/8 13/23 15/6 20/10 23/13 36/18

**authorizes [1]** 12/15

**availability [1]** 25/14

**average [1]** 34/9

**avoid [2]** 6/24 36/25

**aware [6]** 11/11 11/19 11/20 20/1 48/18 54/15

**away [2]** 57/7 57/9

**B**

**back [4]** 15/16 32/11 54/2 57/9

**background [1]** 9/6

**Baking [2]** 48/3 48/24

**band [1]** 30/16

**bargaining [1]** 36/2

**barred [1]** 48/21

**based [2]** 6/24 25/14

**basic [1]** 5/24

**basically [3]** 11/16 15/15 23/1

**basis [6]** 7/22 12/15 28/8 28/19 49/8 52/20

**Bayside [1]** 35/23

**Baytown [1]** 35/23

**because [31]** 3/7 7/3 7/11 7/20 7/24 8/24 13/9 13/16 15/24 20/7 22/2 22/25 27/3 30/8 34/20 36/4 36/9 38/1 38/6 39/11 39/18 41/10 41/13 41/18 48/11 48/14 49/4 49/20 50/1 53/17 54/6

**Beck [18]** 1/23 1/23 5/8 6/5 6/6 8/9 8/12 10/18 10/21 11/5 17/13 18/3 20/9 21/3 21/5 21/21 22/7 23/10

**Beck's [1]** 8/11

**become [1]** 26/7

**been [15]** 11/16 18/24 21/14 24/24 24/25 28/8 31/20 32/3 33/2 33/9 34/25 35/18 35/25 37/3 57/22

**before [15]** 1/10 3/9 5/22 9/24 11/12 11/13 11/15 11/15 12/13 15/24 21/10 26/21 35/9 36/5 42/13

**began [1]** 50/12

**begin [2]** 16/20 45/20

**beginning [1]** 37/23

**behalf [3]** 3/25 4/12 6/14 35/12 36/11 45/18

**being [3]** 3/12 4/9 54/7

**believe [14]** 3/12 3/20 6/11 6/21 15/9 18/14 23/19 31/19 36/25 37/13 44/23 44/24 54/12 58/16

**Ben [1]** 35/24

**benefits [1]** 36/1

**Bennett [4]** 11/12 11/14 11/16 56/14

**Bennett's [1]** 56/13

**best [2]** 6/21 44/19

**better [2]** 7/21 57/6

**between [10]** 3/3 4/17 21/2 24/21 26/4 27/6 28/7 38/14 43/9 48/4

**beyond [6]** 3/9 7/3 35/21 50/23 52/13 52/19

**big [3]** 4/6 30/14 36/3

**bill [1]** 27/7

**billed [2]** 26/11 27/25

**billing [3]** 24/2 24/10 26/8

**bit [2]** 18/19 54/16

**blurring [1]** 53/10

**board [10]** 39/8 46/24 46/24 47/15 53/1 53/2 53/3 55/3 55/4 55/4

**both [6]** 3/21 9/13 14/15 47/6 51/19 55/21

**bottom [5]** 39/1 39/3 41/21 41/21 54/25

**box [3]** 39/2 41/21 54/25

**branded [1]** 55/19

**B**

break [1]  3/6
brief [5]  7/1 7/8 7/10 9/11 51/24
briefed [1]  11/16
briefly [8]  5/25 6/7 8/15 24/12 33/18 54/11 55/7 56/2
briefs [2]  5/19 55/14
bring [1]  23/13
built [1]  19/20
bullet [3]  6/18 36/12 43/12
bullets [1]  5/16
BUREAU [1]  1/19
business [3]  9/14 32/25 51/3
buyers [2]  32/16 43/19
buyers and [1]  32/16
buying [2]  32/20 42/22
bypass [7]  12/24 13/20 13/24 14/18 15/7 17/3 22/18

**C**

call [3]  6/8 11/10 30/19
called [6]  20/8 25/1 25/6 26/23 27/3 50/12
came [7]  14/1 15/21 18/4 39/21 41/13 43/20 45/25
can [31]  4/6 6/22 6/24 7/14 14/14 15/8 15/22 15/22 16/2 17/15 27/7 31/9 32/23 36/25 37/6 37/15 37/16 38/9 38/11 38/20 39/1 43/7 43/14 44/19 48/5 53/16 54/3 54/4 54/5 54/23 56/7
can't [3]  14/6 30/15 43/8
cannot [5]  14/18 28/5 30/22 44/18 47/7
capable [1]  34/4
Capital [5]  13/2 13/17 13/21 18/4 43/7
care [6]  1/19 28/13 35/21 35/25 42/23 53/17
carefully [1]  18/16
CARSON [73]
Carson's [5]  10/13 45/23 48/9 48/16 50/8
case [74]
cases [14]  7/4 14/4 14/5 20/17 31/1 41/11 41/14 43/1 43/6 48/24 50/21 51/11 56/6 56/12
cause [2]  3/9 59/6
caused [2]  24/9 28/15
ceased [1]  21/10
cede [2]  10/17
centers [2]  25/7 33/23
century [1]  33/3
CEO [1]  46/19
certain [6]  14/8 19/23 24/18 29/13 34/14 41/18
certainly [4]  4/20 9/1 12/20 37/5
certify [1]  59/5
challenge [1]  47/21
challenged [1]  54/7
change [1]  21/14
channel [2]  51/18 51/18
charge [7]  10/1 19/25 24/11 25/11 26/5 26/6 31/25
charged [1]  26/10
charges [1]  31/22
charging [1]  31/21
chart [1]  38/19
check [1]  54/20
checked [1]  41/8
chief [3]  46/17 46/17 46/18
choices [1]  33/12
circle [1]  54/24
circuit [18]  7/4 14/1 14/9 14/10 14/11 15/21 15/23 15/25 20/7 20/10 20/11 20/11 20/15 21/4 22/22 44/15 44/16 51/11
Circuit's [1]  49/22
circuits [3]  14/8 20/17 43/1
circumstance [1]  3/14
circumstances [2]  17/14 40/4
cite [7]  15/20 18/15 20/16 48/23 49/14 54/4 56/6
cited [2]  20/2 47/17
cites [1]  48/19
city [1]  36/1
claim [5]  16/24 24/8 34/13 34/21 40/14
claiming [1]  14/3
claims [3]  6/10 27/12 53/8
clause [2]  17/22 19/2
clauses [1]  46/14
Clayton [2]  10/7 47/20
clean [1]  14/10
clear [6]  18/21 18/24 21/11 32/11 33/2 48/10
clearly [2]  17/17 22/11
clerk [1]  35/10
client [4]  15/14 16/20 38/4 52/17
clients [12]  6/20 36/11 36/11 36/21 37/21 38/3 39/9 41/4 42/5 42/22 44/12 52/11
clockwork [1]  57/10
close [2]  32/1 33/8
COLEMAN [1]  2/9
colleague [2]  4/14 5/11
come [17]  17/2 22/17 30/11 30/15 30/23 37/7 37/16 39/16 40/5 40/8 41/3 42/13 43/2 43/14 48/5 48/13 57/9
comes [3]  46/19 49/22 56/5
coming [3]  22/15 49/8 53/14
command [1]  57/22
commercially [2]  25/2 33/19
COMMISSION [11]  1/4 1/18 3/10 9/10 10/3 10/15 18/6 37/13 43/14 45/19 48/5
Commission's [1]  21/16
committing [2]  42/11 42/17
common [1]  31/6
commonly [4]  55/18 55/19 55/19 55/19
companies [8]  24/4 24/22 25/10 26/20 36/3 42/8 53/9 56/20
companies' [1]  27/8
company [14]  6/21 38/2 38/22 42/1 42/7 42/21 44/6 44/8 47/18 48/6 52/23 53/9 53/11 54/6
compete [2]  30/2 33/11
competing [3]  30/23 32/16 33/8
competition [8]  1/19 10/9 28/7 30/2 32/4 47/19 48/9 48/20
competitive [10]  23/25 25/16 25/24 28/10 32/13 32/21 33/5 34/8 34/10 34/16
competitors [8]  9/18 9/19 10/11 19/23 32/3 32/20 33/8 34/3
complaint [59]  6/9 6/21 8/15 9/15 10/1
12/2 12/17 15/13 16/7 16/11 16/18 16/23 19/15 29/6 20/20 20/25 21/10 21/16 23/14 25/20 25/23 26/4 26/13 27/5 27/16 28/14 29/5 29/9 29/25 30/22 31/2 31/21 33/6 33/13 36/10 39/3 39/10 39/11 41/20 42/5 42/9 42/20 45/1 45/23 46/9 47/13 49/25 50/11 50/24 51/3 52/3 52/10 52/18 52/19 52/25 53/2 53/4 53/15 55/17
complaint's [1]  26/22
complete [5]  7/18 8/3 8/3 49/9 50/13
computer [1]  2/23
computer-aided [1]  2/23
concern [2]  7/12 14/24
concerned [4]  5/17 5/20 7/19 28/7
concerns [1]  14/23
conclude [4]  15/6 40/21 52/20 53/24
concluded [1]  18/17
conclusion [1]  54/1
conduct [32]  10/2 10/14 12/17 12/21 16/4 16/10 16/12 16/15 16/19 19/18 20/5 20/23 20/25 21/9 21/9 21/12 24/6 24/9 27/18 27/22 27/23 28/19 29/11 32/9 32/10 33/9 47/6 47/10 48/9 48/15 50/19 50/20
conference [3]  11/13 11/18 11/20
confess [1]  3/3
confidentiality [1]  46/4
Congress [6]  12/5 13/9 13/13 13/18 14/17 19/8
connected [1]  11/7
connection [1]  32/12
consequence [1]  9/22
consider [7]  14/16 14/17 14/17 17/24 24/24 31/15 44/3
considered [2]  18/13 18/16
considering [1]  24/23
consistent [2]  18/17 43/1
consolidate [1]  51/6
consolidated [1]  27/24
consolidation [1]  46/1
conspiratorial [1]  10/10
conspire [1]  19/23
conspired [1]  9/19
conspiring [1]  32/20
constitutional [4]  6/23 36/23 36/25 45/8
constrained [1]  21/24
construction [1]  19/3
consultants [1]  46/10
consumer [1]  24/17
consumers [5]  9/12 24/9 28/11 28/15 33/12
contains [1]  28/14
contemporaneous [1]  51/3
contention [2]  15/19 16/1
context [1]  5/20
Continental [2]  48/3 48/24
continue [1]  20/24
continued [2]  2/1 49/21
continues [3]  19/23 19/24 19/25
contract [2]  26/17 27/25
contracts [3]  24/4 30/18 30/18
contractual [2]  26/20 46/13
contractually [2]  24/11 26/1
contradicts [1]  29/8
contrary [1]  17/12

**C**

contrast [1] 41/20
control [14] 21/9 39/8 39/11 42/1
 42/20 44/13 44/21 53/1 53/3 53/6 55/1
 56/2 56/5 56/7
controlled [1] 55/19
controls [1] 49/23
converting [1] 22/16
cooperation [1] 36/8
core [1] 36/17
corporate [8] 6/20 21/8 45/9 49/12
 54/10 54/22 55/8 55/11
corporation [1] 37/14
correct [3] 4/23 56/17 59/5
correctly [1] 43/11
Costa [2] 2/13 7/6
could [11] 15/1 27/2 30/16 31/25
 35/10 40/4 42/13 44/7 45/22 53/13
 53/22
couldn't [2] 41/17 44/9
COUNCIL [2] 2/12 7/7
counsel [9] 37/3 37/5 37/23 43/10
 52/2 52/7 52/23 53/13 54/1
counsel's [1] 45/21
couple [1] 49/4
course [4] 10/13 23/8 28/21 48/8
court [79]
Court's [3] 5/9 7/9 18/4
courthouse [2] 2/18 3/4
courtroom [1] 4/6
courts [6] 17/24 18/12 24/24 28/4 31/1
 51/8
create [1] 10/9
created [1] 46/2
creation [2] 46/5 46/22
creator [2] 47/2 52/8
credit [1] 50/19
critical [2] 35/21 49/4
CRR [2] 2/18 59/10
CRUTCHER [1] 2/13
CSR [2] 2/18 59/10
current [8] 34/24 38/8 38/21 41/13
 43/24 48/19 52/4 52/21
currently [5] 25/5 29/20 34/2 38/25
 42/9
customers [1] 32/5
CV [1] 1/4

**D**

D.C [1] 19/6
Dallas [3] 10/5 10/6 31/23
date [7] 15/1 42/11 51/5 52/11 52/13
 52/13 59/8
dates [1] 52/5
David [5] 1/17 1/23 5/8 11/4 45/18
day [3] 19/21 19/25 50/5
days [2] 13/12 58/7
DC [3] 1/20 2/6 23/10
deal [2] 5/12 45/12
deals [1] 54/22
dealt [1] 13/22
deception [1] 44/8
decide [1] 31/1
decided [1] 40/13
deciding [1] 6/24
decision [5] 18/4 23/3 49/13 49/22
 55/23

decisions [2] 14/2 14/11
deck [3] 35/8 48/22 49/3
deeply [1] 32/7
defend [1] 53/14
defendant [16] 1/22 2/3 2/8 5/8 11/5
 21/7 23/11 38/1 39/12 39/13 42/17
 43/4 44/5 44/15 54/24 56/22
defendant's [1] 22/25
defendants [35] 1/8 4/19 6/14 35/13
 35/15 36/8 36/22 37/19 37/24 37/25
 38/3 38/24 39/23 40/6 40/12 40/12
 40/17 40/22 41/4 41/5 41/22 42/20
 43/15 44/13 44/21 45/1 45/3 52/17
 52/25 53/15 54/24 55/22 56/20 56/24
 57/2
defendants' [1] 36/15
defense [1] 8/7
deference [1] 11/18 11/22
deficit [1] 8/22
define [1] 31/7 34/11
defined [2] 33/20 34/6
defining [1] 25/1
definition [7] 25/20 29/11 29/12 31/1
 31/4 33/18 33/19
definitive [1] 15/1
defraud [1] 43/19
deleterious [1] 31/10
Department [1] 38/15
deploy [1] 51/6
deprive [1] 28/13
describes [1] 49/14
describing [1] 21/6
deserve [1] 47/2
designed [1] 10/8
detail [1] 9/15
detailed [1] 29/6
devised [1] 34/9
devoid [1] 16/23
did [10] 4/19 9/19 9/24 14/2 34/18
 36/4 39/7 39/17 40/13 56/13
didn't [5] 39/16 40/13 41/10 49/11
 50/13
difference [4] 4/17 26/4 38/13 43/8
differences [1] 21/2
different [4] 26/11 32/15 33/23 46/9
difficult [1] 4/9
direct [2] 31/17 44/21
directing [1] 42/1
direction [1] 58/5
directly [8] 13/4 13/24 14/6 14/19
 15/24 17/2 31/9 47/18
director [1] 55/21
directors [2] 46/24 55/2
disagree [1] 21/17
disagreement [1] 48/4
dismiss [5] 5/13 5/21 11/14 23/19
 26/25
dismissed [4] 20/4 23/15 25/21 58/3
displace [1] 30/15
dispute [2] 44/16 47/25
disputed [2] 35/15 36/11
disputes [2] 27/6 48/2
disrupt [1] 32/19
dissolved [2] 13/11 44/9
distant [1] 16/3
distinct [1] 17/14
DISTRICT [1] 1/1 1/1 1/11 18/14 44/4

51/15
dividends [2] 52/14 52/14
DIVISION [2] 1/2 1/19
do [30] 4/7 7/16 8/1 8/8 9/1 9/2 15/3
 15/5 15/8 15/12 15/22 17/7 19/10
 20/20 22/3 24/3 25/4 26/1 26/16 30/10
 31/15 40/13 50/16 53/8 53/19 54/10
 55/3 56/13 57/24 58/2
docket [1] 41/8
doctors [2] 26/11 34/1
document [2] 49/9 58/2
documents [6] 36/7 36/7 40/11 51/4
 58/1 58/18
does [23] 3/8 15/3 15/6 15/18 16/9
 16/16 16/17 17/1 17/23 18/1 18/14
 18/21 22/17 31/16 34/20 38/17 40/20
 41/23 42/18 51/21 53/2 55/1 56/21
doesn't [4] 8/22 13/11 41/2 47/23
doing [6] 5/20 6/5 11/25 15/11 40/8
 58/4
DOJ [2] 38/15 43/9
dollar [1] 26/19
dollars [1] 9/23
dominant [1] 29/25
don't [13] 10/24 17/6 20/2 22/23 28/25
 31/13 33/12 34/5 49/9 52/4 57/15
 58/16 58/21
done [5] 3/18 4/6 11/25 32/21 39/20
door [1] 41/1
double [1] 31/22
down [8] 3/5 28/12 28/24 30/2 30/23
 32/4 32/6 44/6
dozen [1] 50/6
drafted [1] 46/13
drive [2] 21/1 32/4
drops [1] 8/24
drug [2] 21/7 44/16
due [1] 12/19
dumb [1] 32/25
DUNN [1] 2/13
duplicative [1] 19/7
Dupont [3] 47/17 48/2 48/24
dwell [1] 28/22
dwells [1] 26/4

**E**

each [5] 10/7 24/12 41/5 43/4 47/9
easier [1] 17/9
easily [2] 21/15 49/25
Eastern [1] 44/4
Educare [1] 51/14
effect [4] 27/3 34/11 47/19 50/22
effectively [1] 27/9
effects [3] 21/9 31/10 31/17
either [6] 16/16 19/1 29/8 39/13 39/22
 47/8
element [3] 27/21 36/17 36/17
Eleventh [1] 20/17
eliminated [2] 27/9 33/9
eliminates [1] 28/7
else [3] 50/7 53/14 57/4
emergency [2] 51/1 51/5
emphasize [1] 26/13
empire [1] 9/17
employers [3] 9/13 9/23 19/25
empowers [1] 12/9
end [2] 15/9 16/15 17/22

**E**

enforce [1] 38/16
enforced [4] 10/2 37/15 38/11 41/9
enforcement [3] 12/10 38/14 43/9
enforcer [1] 48/21
enforces [3] 47/24 47/24 48/7
engage [1] 16/15
engaged [7] 19/21 20/21 20/25 24/6
24/8 27/17 50/6
enjoin [2] 37/16 38/9
enough [3] 24/11 30/14 31/3
enter [1] 33/10
entered [3] 9/24 14/25 22/25
entertain [3] 57/16 57/18 57/19
entire [3] 30/14 42/5 47/25
entirely [3] 20/5 27/1 29/14
entities [8] 3/12 4/16 4/21 39/4 49/15
55/18 55/21 55/25
entitle [1] 17/2
entitled [5] 24/3 24/11 26/1 55/2 59/6
entity [3] 35/16 41/25 50/4
entity's [1] 48/19
entrants [1] 33/10
environment [3] 27/2 27/13 34/24
Envision [1] 46/7
equal [1] 34/1
equitable [1] 13/25
equity [1] 53/8
essence [1] 44/14
essential [1] 36/13
essentially [1] 19/1
establish [1] 31/5
ET [1] 1/7
even [18] 12/19 14/8 15/5 20/5 21/17
23/12 26/2 26/21 27/19 29/8 30/9
30/15 31/11 32/1 33/12 34/3 35/15
55/25
evening [1] 58/15
event [1] 11/24
events [2] 21/11 52/5
eventually [1] 22/16
ever [1] 54/4
every [13] 12/15 36/5 39/12 39/24
39/25 40/2 41/8 41/12 41/14 43/7 46/7
46/12 57/10
everybody [4] 19/17 37/24 38/6 45/10
everything [3] 40/11 43/16 53/10
evidence [1] 31/17
exactly [10] 16/5 19/19 19/21 21/15
32/20 43/13 43/25 44/14 50/18 51/7
example [6] 22/15 28/11 33/23 40/6
50/9 51/14
exceed [1] 13/23
exceeds [1] 12/7
except [1] 56/23
exchange [1] 24/17
excluding [1] 29/13
exclusionary [7] 24/6 27/17 27/21
27/22 28/19 29/11 32/3
exclusive [2] 30/12 30/17
exclusively [1] 30/15
excuse [2] 37/4 52/21
executed [1] 46/3
executive [1] 46/17
exercise [8] 19/24 26/24 27/2 27/10
27/13 27/19 34/12 34/23
exercised [1] 26/18

exist [2] 32/4 33/4
existed [1] 26/21
existing [7] 24/3 26/9 26/11 26/17
26/17 27/25 28/17
expand [1] 35/20
expands [1] 5/18
expect [1] 26/16
expectation [4] 43/23 45/2 49/21
53/24
explain [1] 44/12
explained [3] 6/6 26/25 55/24
expressed [1] 28/4
expressly [1] 49/14
extended [1] 28/17
extensive [1] 20/21
extent [1] 57/23
extremely [1] 47/11
eyes [1] 3/5

**F**

face [1] 15/18
Facebook [1] 48/23
facetious [1] 4/9
facilities [1] 25/6
fact [10] 14/21 18/5 25/11 27/16 28/5
36/6 36/13 40/18 48/21 50/3
factor [1] 28/6
facts [9] 20/13 20/22 29/9 30/3 30/21
36/4 39/17 43/23 45/2
factual [13] 9/5 16/11 16/13 16/23
29/6 30/24 32/7 40/21 42/6 43/4 51/8
53/20 53/23
failed [4] 23/21 23/24 24/5 25/1
fails [4] 6/22 27/16 36/13 45/1
failure [1] 25/18
fair [1] 49/20
faith [1] 40/13
fallen [1] 33/8
false [1] 43/17
far [5] 5/16 7/3 20/18 31/22 58/5
farming [1] 43/16
fatal [2] 36/12 39/11
fatally [1] 6/21
federal [19] 1/4 1/18 3/10 9/10 10/3
10/15 12/10 17/14 23/13 37/7 38/1
39/14 41/6 41/14 42/9 42/12 42/14
43/13 45/18
feel [1] 57/6
few [3] 5/11 7/10 49/17
fewer [1] 33/12
fiercely [1] 33/8
Fifth [11] 7/3 14/9 14/10 20/7 20/10
20/11 20/11 20/15 22/22 49/22 51/11
FIGEL [1] 2/4
figure [1] 58/5
file [4] 4/19 7/7 13/11 36/18
filed [7] 4/16 21/10 41/8 41/11 42/5
52/10 58/1
filing [2] 36/5 51/12
filings [1] 41/18
finally [5] 6/11 14/12 27/15 32/9 34/18
financial [1] 46/18
find [6] 31/12 31/12 31/14 31/16 51/8
56/11
fine [1] 8/13
firm [4] 23/10 26/8 26/11 53/8
firm's [1] 26/9

firms [1] 28/7
first [13] 6/24 10/21 10/25 12/9 12/25
17/15 22/9 22/10 37/1 47/10 47/13
49/6 50/3
five [5] 21/10 22/8 39/5 39/8 52/19
five years [2] 21/10 52/19
flatly [1] 29/8
flawed [1] 31/14
flood [1] 29/22
floor [3] 8/6 8/16 10/17
focus [2] 36/2 36/23
focused [1] 37/3
focusing [1] 26/3
follow [1] 17/9
follow-through [1] 17/9
followed [1] 48/24
footnote [1] 27/5
foregoing [1] 59/5
foreseen [1] 18/8
form [3] 27/19 30/17 31/18
formal [1] 42/1
forthrightly [1] 37/6
forward [4] 3/22 8/9 11/23 57/11
found [3] 27/20 51/17 56/7
foundation [2] 7/21 8/2 8/10
founding [2] 46/23 50/7
four [6] 12/18 15/16 16/10 41/2 41/11
46/9
four years [1] 41/2
fourteen [1] 55/3
fourth [1] 43/12
frankly [1] 31/25
fraud [1] 44/8
fraudulent [2] 23/1 51/16
FREDERICK [1] 2/4
Friday [2] 11/13 11/17
FTC [88]
FTC's [17] 12/6 12/17 13/19 15/13
16/1 16/7 18/17 20/6 25/18 27/12
27/22 28/14 33/19 34/13 34/21 35/1
49/25
full [4] 39/17 39/18 39/20 49/7
fully [2] 11/16 34/4
functions [1] 32/15
fund [5] 39/6 42/24 53/5 55/22 55/22
funding [1] 46/22
further [2] 30/17 33/6
future [10] 36/16 36/19 38/21 40/24
42/11 42/17 44/20 44/22 50/10 53/22

**G**

gain [1] 33/2
gap [1] 39/11
gaps [1] 36/12
Garrett [1] 41/16
gate [1] 53/20
gather [1] 58/3
gating [4] 37/6 37/19 39/12 44/24
gave [2] 12/5 54/1
generalized [1] 16/3
gentlemen [2] 3/2 56/10
Geoff [1] 5/12
Geoffrey [2] 2/4 23/9
get [17] 3/5 4/7 4/23 5/4 8/7 8/20
32/24 33/14 38/11 39/24 40/8 42/15
44/21 50/19 53/20 57/25 58/7
getting [2] 22/15 52/14

**GIBSON [1]** 2/13
**give [10]** 10/18 18/25 20/13 36/18 40/20 45/2 50/8 52/4 53/20 53/23
**given [2]** 51/4 52/16
**gives [1]** 52/20
**giving [1]** 42/23
**glossing [1]** 18/19
**go [22]** 3/22 7/4 8/5 8/9 9/2 11/23 14/6 14/19 15/16 37/2 37/4 38/13 40/25 41/1 41/2 41/7 42/25 55/15 57/7 57/9 58/5 58/6
**goes [2]** 7/10 33/6
**going [36]** 3/17 3/19 3/19 3/24 4/5 4/24 5/15 5/16 6/4 6/6 6/15 7/1 7/12 7/23 8/11 8/17 8/19 8/25 9/1 10/21 10/25 13/23 15/12 21/12 22/7 30/14 36/16 36/23 39/22 41/12 55/9 57/16 57/17 57/19 58/5 58/19
**good [10]** 3/2 7/5 7/15 11/2 23/8 34/19 40/13 43/16 57/14 58/15
**goods [2]** 32/16 32/17
**got [9]** 3/3 5/19 8/25 14/1 52/14 55/5 55/14 56/10 56/15
**gotten [1]** 3/5
**governing [1]** 50/1
**government [45]** 3/18 3/23 3/25 4/13 7/22 9/3 17/7 24/15 35/8 37/5 37/16 37/20 38/6 38/24 40/1 40/8 40/13 40/16 40/20 41/3 41/15 41/20 42/15 43/2 43/11 43/19 43/22 43/25 44/1 44/11 44/19 45/6 45/12 45/13 47/21 48/21 50/20 52/1 52/10 52/16 53/7 53/19 54/4 57/13 58/20
**government's [1]** 42/19
**granted [4]** 41/16 41/17 41/19 43/20
**grants [1]** 6/1
**Grayson [8]** 1/18 3/24 4/11 7/17 9/10 17/10 29/4 34/18
**great [1]** 57/15
**Greater [1]** 46/2
**Greenwell [1]** 41/17
**Gregg [2]** 2/13 7/6
**ground [4]** 36/23 36/24 45/5 47/8
**grounds [5]** 6/15 36/22 37/1 40/14 44/17
**groundwork [1]** 8/2
**group [5]** 30/12 30/17 30/20 46/3 53/8
**groups [1]** 31/24
**Guardian [1]** 50/13
**guess [1]** 56/10

**H**
**had [18]** 11/12 11/25 21/7 21/10 21/11 26/21 27/11 31/16 39/21 39/25 40/7 40/13 41/3 44/6 44/8 44/8 44/15 46/23
**halt [1]** 12/16
**handcrafted [2]** 48/16 50/4
**handed [1]** 49/4
**handle [1]** 3/17
**HANSEN [2]** 2/4 23/9
**happen [7]** 39/22 40/23 40/23 43/5 53/13 53/17 53/22
**happened [2]** 40/18 52/9
**happening [2]** 43/5 48/15
**happy [5]** 8/15 10/17 21/19 45/11 54/10

**hard [2]** 30/18 53/7
**harder [1]** 33/10
**harm [7]** 20/3 24/9 28/15 28/16 32/21 33/4 40/14
**harmed [2]** 28/10 28/11
**has [67]**
**hasn't [1]** 4/8
**have [98]**
**haven't [1]** 37/20
**having [3]** 39/20 58/2 58/12
**he [7]** 6/4 11/14 11/19 11/19 11/25 37/23 44/9
**head [1]** 46/18
**health [3]** 1/19 9/21 53/17
**hear [4]** 4/24 49/11 57/4 57/5
**heard [6]** 17/12 29/7 50/15 54/18 55/8 58/21
**hearing [1]** 1/10 11/13 11/19 35/9
**heavily [1]** 21/4
**held [6]** 14/5 47/2 51/9 51/11 51/15 54/5
**helped [1]** 35/20
**helpful [1]** 14/22 35/11
**here [34]** 3/13 7/18 7/19 8/22 12/17 13/25 14/3 14/7 15/3 15/22 18/20 20/11 20/20 21/14 23/11 31/2 31/15 34/6 34/13 34/21 35/21 39/15 40/9 42/10 43/21 44/10 44/19 47/24 49/16 49/23 49/25 51/9 56/15 58/1
**here's [1]** 18/5
**high [2]** 31/7 32/17
**highest [1]** 31/23
**highlight [1]** 18/20
**him [2]** 10/18 11/15
**hindsight [1]** 38/16
**hired [1]** 46/10
**history [1]** 14/21
**hold [5]** 48/11 48/25 49/15 55/24 56/7
**holding [6]** 47/18 47/22 48/1 48/20 48/25 50/21
**holds [3]** 19/22 47/14 48/19
**home [1]** 21/1
**honest [1]** 14/22
**Honor [128]**
**Honor's [1]** 19/5
**HONORABLE [1]** 1/10
**honoring [1]** 22/19
**hope [1]** 57/6
**horizontal [1]** 46/5
**hospital [9]** 25/2 25/14 29/16 29/18 30/1 30/7 30/9 30/14 33/19
**hospital-only [4]** 25/2 29/16 30/1 33/19
**hospitals [11]** 25/5 25/9 29/17 29/20 29/21 30/6 30/10 30/19 34/1 35/21 35/23
**host [1]** 10/2
**house [1]** 3/3
**housekeeping [1]** 11/9
**HOUSTON [11]** 1/2 1/4 1/25 2/11 2/15 2/20 10/5 10/6 31/23 35/21 46/2
**how [8]** 3/22 4/9 6/22 7/16 13/3 34/5 36/14 58/5
**however [1]** 17/19
**HOYT [1]** 1/10
**human [1]** 46/18

**I'll [1]** 7/11
**I'm [31]** 4/9 5/20 5/22 5/23 6/15 7/1 7/19 7/23 7/24 7/24 8/6 8/15 9/1 10/17 10/20 10/22 11/25 16/6 21/19 22/7 23/6 23/9 40/25 41/1 45/11 45/14 45/18 46/25 54/10 57/17 58/12
**idea [1]** 29/15
**identify [2]** 23/7 46/11
**ifs [2]** 53/22 53/23
**ignores [2]** 29/8 36/17
**illegal [1]** 52/14
**illegality [1]** 28/8
**imminent [12]** 12/16 15/12 40/14 40/14 40/22 41/13 43/24 52/4 52/15 52/21 52/22 53/24
**imminently [1]** 45/3
**implausible [2]** 25/19 27/1
**important [4]** 13/8 13/8 21/2 36/9
**importantly [1]** 40/12
**inapposite [1]** 32/8
**INC [3]** 1/7 5/9 11/5
**include [2]** 41/10 56/21
**included [2]** 3/12 24/25
**includes [1]** 29/6
**including [3]** 27/10 36/6 46/17
**Incorporated [1]** 3/11
**increased [1]** 34/14
**increases [2]** 25/25 26/23
**indeed [2]** 14/2 31/16
**independent [2]** 45/23 47/3
**independently [2]** 31/11 48/14
**indicated [2]** 3/24 21/22
**indirectly [2]** 6/22 47/18
**individual [1]** 56/16
**indulgence [2]** 3/8 7/9
**infer [1]** 50/9
**inference [3]** 20/14 20/22 49/20
**inflated [1]** 19/25
**inflation [1]** 26/2
**influential [1]** 47/15
**informative [1]** 14/14
**infrastructure [1]** 51/16
**initial [2]** 46/17 53/20
**initiation [1]** 51/16
**injunction [47]** 12/10 12/23 13/4 13/5 13/6 13/7 13/10 13/10 13/12 13/14 13/17 13/18 13/20 14/20 14/25 15/1 15/7 17/3 17/16 17/20 17/22 18/1 18/22 19/2 19/12 20/23 21/23 22/3 22/10 22/11 22/16 22/17 22/19 22/24 37/7 37/8 37/8 40/5 41/15 42/14 43/14 43/20 44/17 48/6 48/13 49/8 49/24
**injunctions [5]** 12/16 14/15 14/16 17/21 37/11
**injunctive [6]** 18/7 18/8 38/12 43/3 44/7 44/18
**innovation [1]** 32/18
**inside [1]** 8/25
**instead [4]** 25/5 26/3 26/4 42/10
**insufficiency [1]** 6/9
**insurance [7]** 24/4 24/22 25/10 26/19 27/8 36/3 56/19
**insured [2]** 25/2 33/19
**insurers [3]** 9/22 27/7 27/11
**intact [3]** 50/3 51/12 51/16
**intend [1]** 5/24

## I

**intended [2]** 13/19 19/8
**intensely [1]** 30/24
**intent [1]** 46/4
**interchangeable [1]** 24/25
**interest [2]** 46/4 50/12
**International [1]** 56/3
**interpretation [3]** 5/10 12/3 18/21
**interpreting [1]** 18/24
**intervening [1]** 21/11
**interviews [1]** 36/6
**invested [1]** 53/9
**investigating [1]** 50/21
**investigation [8]** 36/5 36/10 39/18
39/20 40/7 40/10 50/16 50/17
**investment [4]** 2/12 7/7 35/20 41/25
**investor [14]** 35/16 35/18 35/19 36/14
36/14 38/4 39/10 42/6 42/7 45/21 47/1
47/1 54/5 56/8
**investors [6]** 6/20 38/4 38/7 42/8 42/8
42/23
**involved [1]** 56/23
**involves [1]** 35/22
**issue [34]** 6/19 6/23 6/23 7/2 7/2 13/22
14/9 15/24 17/25 18/13 18/16 20/15
21/8 30/24 31/13 31/15 31/16 33/3
36/25 37/6 37/12 37/19 39/12 44/23
44/25 45/8 45/11 46/1 46/14 47/4
48/22 54/2 55/8 56/2
**issues [11]** 3/20 4/20 5/2 5/3 5/10 5/12
5/19 6/8 6/25 32/7 45/10
**it's [20]** 6/17 9/20 13/8 14/22 17/9
18/14 21/1 21/11 27/20 30/19 41/1
44/3 48/1 48/17 52/15 53/6 55/1 55/24
56/3 56/19
**its [35]** 9/18 10/11 12/7 12/11 12/11
12/17 12/24 13/20 13/23 13/24 15/7
15/18 17/3 19/23 21/10 22/18 22/19
23/14 23/15 23/25 23/25 24/3 25/1
25/24 25/25 26/11 28/17 29/23 35/20
36/2 38/14 41/25 48/22 50/7 53/14
**itself [7]** 9/5 13/1 15/5 23/7 26/2 33/4
50/23
**ITT [2]** 48/3 48/24

## J

**Jordan [1]** 44/6
**Joseph's [1]** 35/24
**judge [8]** 1/11 11/12 11/13 11/16
18/16 44/6 56/13 56/14
**July [1]** 11/18
**July 19 [1]** 11/18
**jump [1]** 10/25
**just [32]** 5/17 6/20 7/10 8/14 11/5
14/2 17/12 21/21 23/6 26/8 27/15 29/7
30/21 31/20 32/25 34/8 38/6 39/9 41/3
45/10 45/21 45/22 48/25 49/4 49/6
49/10 49/12 50/8 51/24 54/19 55/8
55/16
**Justice [1]** 38/15

## K

**keep [1]** 8/17
**KELLOGG [2]** 2/4 23/9
**Kennedy [2]** 49/13 55/23
**KENNETH [1]** 1/10
**kind [11]** 7/4 11/22 15/22 17/17 25/24
26/15 26/18 27/17 33/1 34/24 43/13
**kinds [1]** 20/24
**Klineberg [7]** 2/4 5/12 6/4 23/9 29/7
29/10 31/19
**Klineberg's [3]** 29/12 29/19 32/10
**know [10]** 3/16 3/17 8/25 10/24 30/13
39/18 45/6 49/11 53/16 59/1
**knowing [3]** 39/17 39/21 40/11
**knows [2]** 36/3 50/7

## L

**lack [3]** 25/8 30/5 33/25
**ladies [1]** 3/2
**laid [1]** 7/22
**land [1]** 43/15
**language [11]** 13/18 17/21 18/1 18/22
18/23 20/12 35/11 37/3 37/10 37/11
46/13
**large [4]** 30/17 50/2 51/12 51/15
**last [6]** 11/13 39/2 39/4 39/8 50/18
54/21
**lasting [1]** 35/25
**Lastly [1]** 53/13
**later [1]** 7/14
**law [18]** 10/7 15/10 16/2 19/16 26/8
27/3 27/4 27/9 28/3 32/13 37/15 38/10
39/14 41/6 41/14 42/9 47/6 47/7
**laws [6]** 10/2 32/23 45/24 47/23 48/7
49/1
**lawsuit [2]** 12/7 36/5
**lawyers [2]** 26/9 35/8
**lay [1]** 8/10
**laying [1]** 8/2
**least [12]** 8/3 16/10 19/4 21/12 23/20
38/7 39/9 39/20 46/24 52/17 57/21
59/1
**left [1]** 21/15
**legislation [1]** 27/6
**legislative [1]** 14/21
**length [1]** 28/18
**lengthy [1]** 5/19
**less [1]** 55/1
**lessen [3]** 10/8 47/19 48/20
**lessens [1]** 48/9
**let [15]** 3/22 5/14 8/9 8/25 12/2 12/22
15/4 21/21 30/10 45/6 45/12 47/4 47/9
54/19 56/11
**let's [5]** 8/9 9/2 9/2 11/6 56/15
**letters [2]** 46/3 46/4
**level [8]** 23/25 25/16 25/24 26/1 26/15
34/8 34/10 34/17
**leverage [3]** 9/21 19/24 27/11
**liability [1]** 48/10
**liable [6]** 6/22 38/8 47/2 48/11 49/15
54/5
**licensed [1]** 33/24
**lieu [1]** 13/14
**light [1]** 36/9
**like [26]** 7/10 8/1 8/5 11/10 13/25 14/3
17/8 20/3 24/12 35/9 35/14 35/23
35/23 39/16 40/18 44/14 45/20 45/22
49/3 49/10 49/17 50/25 51/6 51/8 54/9
57/10
**likelihood [5]** 16/14 20/14 20/20 36/19
49/18
**limit [3]** 3/14 13/13 13/19
**limitations [1]** 34/22
**limited [1]** 12/5
**linked [2]** 13/9 13/17
**list [1]** 50/8
**litigant [1]** 42/13
**litigation [2]** 51/13 51/17
**little [4]** 8/10 14/21 18/19 54/16
**LLP [2]** 1/23 2/9
**locate [1]** 34/2
**located [1]** 55/18
**long [4]** 29/5 30/8 42/16 58/7
**longer [2]** 12/19 34/25
**look [14]** 11/23 13/9 14/13 14/14
15/13 16/5 34/21 35/15 38/23 41/20
43/10 51/14 52/10 57/11
**looked [4]** 14/4 41/7 44/7 56/12
**looking [3]** 56/21 57/25 58/6
**looks [1]** 22/23
**loss [1]** 36/2
**lost [1]** 4/7
**lot [2]** 30/3 50/15
**low [2]** 32/17 43/24
**luck [1]** 32/25
**lump [2]** 38/6 41/24
**lumped [1]** 37/24
**lumping [1]** 45/10

## M

**Mackesy [1]** 55/20
**made [8]** 5/15 7/23 8/19 21/11 25/7
28/9 46/13 54/6
**Main [2]** 2/10 2/14
**maintain [1]** 53/8
**maintains [1]** 50/5
**major [1]** 14/23
**majority [2]** 20/19 53/6
**make [16]** 3/15 5/16 5/24 7/10 7/17
7/24 10/25 11/6 13/13 18/21 22/21
28/22 32/11 32/15 42/6 57/20
**makes [2]** 6/3 27/4
**making [2]** 16/24 32/14
**Malone [3]** 2/18 59/9 59/10
**management [1]** 46/16
**mandates [1]** 27/6
**many [3]** 30/10 39/16 40/18
**market [31]** 9/20 9/25 23/21 23/23
24/16 24/24 25/2 25/14 25/19 25/20
26/18 28/17 29/11 29/12 29/14 29/15
31/1 31/3 31/7 31/8 31/12 31/14 31/20
33/11 33/18 33/20 34/6 34/24 46/24
48/17 51/6
**marketplace [2]** 29/22 32/14
**markets [2]** 10/5 32/18
**masterminded [1]** 50/4
**math [1]** 50/16
**matter [7]** 3/21 4/1 11/10 12/13 23/2
47/6 56/22
**matters [2]** 6/5 52/2
**may [28]** 3/4 4/8 7/6 7/11 7/11 7/21
10/8 10/9 11/4 11/11 18/6 21/24 25/11
25/12 26/10 30/7 30/10 34/25 35/12
41/2 45/17 47/19 47/21 54/6 54/6 55/7
57/24 58/25
**maybe [4]** 3/21 8/1 29/21 55/12
**maybes [1]** 53/21
**Mayra [1]** 2/18 59/9 59/10
**McKinney [1]** 1/24

## M

me [21]  3/22 4/8 5/14 5/22 7/14 8/25 10/23 12/2 12/22 15/4 21/21 37/4 45/6 47/4 47/9 52/21 54/9 54/19 56/11 57/22 58/7
mean [3]  34/8 41/2 54/13
meaning [2]  18/25 56/24
means [5]  25/13 32/12 40/24 41/1 50/17
measurable [1]  28/16
mechanical [1]  2/23
median [1]  31/21
medical [1]  35/21
medically [1]  35/22
medically-underserved [1]  35/22
medication [1]  3/7
medicine [2]  51/1 51/5
meet [3]  24/17 42/15 44/1
member [1]  47/15
mention [1]  22/22
mere [2]  24/7 28/6
merely [1]  48/11
merger [1]  28/6
mergers [1]  10/8
middle [1]  39/2
might [11]  8/8 16/19 25/25 26/16 27/11 35/11 37/21 37/22 44/21 44/21 53/17
military [1]  8/21
million [3]  36/7 40/11 46/21
millions [1]  9/23
minority [8]  35/16 35/18 35/19 36/14 39/10 44/13 54/5 56/8
minute [1]  9/3 14/1 55/12
minutes [4]  5/11 8/1 22/8 49/17
misconduct [1]  55/25
missing [4]  49/4 49/7 49/13 51/9
misstated [1]  23/22
moment [3]  27/16 49/11 55/8
Monday [1]  11/21
monetary [1]  13/25
monopolies [1]  10/9
monopolist [4]  19/20 25/25 26/16 32/22
monopolistic [1]  9/13
monopolized [1]  10/5
monopoly [13]  24/15 26/24 27/2 27/13 27/20 29/11 31/6 31/10 32/23 33/2 33/3 34/7 34/12
more [11]  3/18 9/23 15/16 24/7 26/1 31/3 31/6 33/14 39/7 40/10 42/2
morning [5]  3/2 5/22 11/19 23/8 28/21
most [7]  7/2 29/7 39/19 40/12 42/24 46/19 47/15
motion [12]  1/10 4/13 4/15 5/13 5/17 5/21 7/21 8/7 11/14 23/18 26/25 28/4
motions [1]  4/20
mountain [1]  36/7
move [1]  54/10
Mr [1]  5/11
Mr. [31]  4/14 4/25 5/1 6/4 6/5 6/6 6/12 7/9 7/17 8/9 8/11 8/12 10/18 10/21 17/13 18/3 20/9 21/3 21/5 21/21 22/7 23/10 29/7 29/10 29/12 29/19 31/19 32/10 34/18 35/5 55/20
Mr. Beck [14]  6/5 6/6 8/9 8/12 10/18 10/21 17/13 18/3 20/9 21/3 21/5 21/21

22/7 23/10
Mr. Beck's [1]  8/11
Mr. D [1]  55/20
Mr. Grayson [2]  7/17 34/18
Mr. Klineberg [4]  6/4 29/7 29/10 31/19
Mr. Klineberg's [3]  29/12 29/19 32/10
Mr. Schwartz [3]  4/14 4/25 5/1
Mr. Yetter [3]  6/12 7/9 35/5
much [4]  7/16 29/2 33/6 58/14
multibillion [1]  26/19
multiple [3]  46/3 46/10 50/1
must [5]  15/11 15/11 29/16 42/15 43/7 my [26]  3/3 3/5 3/6 4/4 4/14 4/18 5/11 6/20 7/2 7/12 8/24 15/14 23/9 36/11 36/21 38/3 39/9 40/25 41/4 42/5 42/22 44/12 45/20 52/11 52/17 54/20

## N

name [2]  23/5 23/9
namely [1]  50/5
narrower [1]  6/17
nature [4]  3/14 7/20 10/16 33/21
necessarily [1]  25/13
necessary [1]  36/18
need [19]  3/6 3/14 4/23 7/17 8/4 8/19 17/7 22/3 24/19 29/18 31/13 31/15 33/12 36/19 45/14 54/14 57/4 57/5 57/23
needs [1]  44/11
negotiate [2]  25/10 32/5
negotiated [3]  24/21 26/21 28/17
negotiates [1]  24/20
negotiating [3]  9/21 19/24 26/19
negotiations [1]  27/11
Neora [2]  18/15 51/17
networks [1]  27/8
never [3]  28/7 34/10 48/2
new [5]  16/21 16/22 21/8 26/11 33/10
newly [2]  26/8 28/18
next [3]  11/20 17/8 58/6
Ninth [1]  20/17
no [51]  5/21 10/24 11/17 12/12 14/5 14/25 16/18 16/20 16/22 18/17 20/10 21/14 23/2 25/7 25/23 26/1 27/3 28/9 28/11 28/14 30/1 33/21 33/23 34/16 34/19 34/25 39/7 39/11 39/23 40/14 42/6 42/13 42/20 43/18 43/18 43/18 44/13 44/17 48/4 50/19 51/22 52/3 52/11 52/18 52/25 56/4 57/21 57/21 57/21 58/21 58/24
non [1]  25/14
non-hospital-based [1]  25/14
noncontrolling [1]  54/5
none [3]  36/1 48/19 58/23
nonhospital [1]  34/3
Northern [1]  18/14
Northwest [1]  2/5
not [115]
notes [1]  54/20
nothing [4]  42/10 42/16 54/2 57/13
noticed [1]  37/21
now [26]  10/18 12/22 15/11 18/3 18/10 19/17 20/9 21/4 26/6 28/23 29/7 29/19 30/24 31/19 32/9 32/22 33/10 36/16 42/25 44/2 44/10 47/4 48/8 48/17 52/23 55/9
nowhere [1]  48/22

number [5]  3/10 3/15 7/2 36/23 36/24
Number 23-3560 [1]  3/10
numeric [1]  56/4
numerous [4]  50/21 51/10 55/21 56/5

## O

objections [1]  58/19
observe [1]  31/10
obstacle [1]  34/20
obtain [4]  17/15 17/20 18/7 32/17
obtained [2]  9/20 9/21
obviously [3]  5/19 18/23 29/17
occur [1]  3/8
occurred [2]  44/16 50/19
occurring [1]  55/25
off [4]  8/24 21/7 21/15 30/11
offering [2]  32/24
officer [3]  46/17 46/18 46/18
OFFICIAL [2]  2/17 59/11
offing [1]  50/10
often [1]  30/8
Oh [1]  58/16
Okay [2]  6/3 11/2
old [1]  16/11
once [3]  27/11 34/25 50/20
one [37]  3/18 7/2 11/6 11/9 11/15 14/23 17/25 18/19 20/2 23/21 24/20 25/25 30/13 31/6 33/9 35/17 36/23 38/1 39/9 39/19 39/25 41/5 41/9 41/14 41/21 41/24 42/24 45/5 45/9 46/7 46/7 46/8 47/23 53/2 54/21 55/12 56/1
ongoing [11]  12/16 16/12 19/18 20/3 20/3 21/18 22/25 47/6 47/10 48/14 48/25
only [26]  6/13 6/15 12/10 12/16 15/8 18/8 21/5 23/25 25/2 25/22 28/16 29/16 30/1 33/19 34/13 36/10 38/11 38/20 44/13 48/21 52/13 53/4 54/24 55/2 55/25 58/1
open [2]  51/18 51/19
opening [2]  7/17 7/17
operated [1]  44/5
operating [11]  30/11 38/2 38/22 42/7 42/21 44/11 52/24 52/24 53/9 53/10 54/6
operations [1]  46/18
operative [1]  57/5
opinion [1]  18/11
opportunity [1]  10/18
opposed [1]  56/16
opposing [1]  45/20
opposite [1]  18/4
order [3]  7/22 17/16 28/12
ordinarily [1]  56/12
original [3]  35/20 45/25
other [25]  5/21 11/17 11/19 13/5 13/12 15/10 19/9 22/13 22/21 25/12 28/21 30/5 30/7 30/16 30/22 31/9 38/3 39/24 39/25 40/2 45/5 45/9 49/18 53/17 56/11
others [1]  30/18
otherwise [2]  25/17 57/25
our [57]  4/7 4/12 5/13 6/1 6/9 8/15 9/15 10/1 10/12 12/4 12/20 14/2 14/13 15/8 15/18 16/20 18/15 19/10 19/19 20/16 20/19 22/13 23/12 23/18 26/25 28/4 28/22 29/5 29/9 29/15 29/25

**Q**

**our... [26]** 30/21 31/2 31/12 31/14
31/21 33/6 33/13 36/1 37/21 37/25
39/13 45/23 46/9 47/17 48/3 48/23
49/8 49/14 50/1 50/16 50/17 50/22
50/24 51/3 51/4 56/3
**out [19]** 11/18 18/4 18/11 19/2 20/9
24/2 26/8 27/8 27/25 41/1 43/11 43/19
44/4 49/4 53/1 55/2 56/11 58/5 58/13
**outlier [1]** 21/4
**outlined [1]** 8/14
**outpatient [2]** 25/6 33/24
**output [1]** 34/11
**outside [3]** 29/20 29/21 30/2
**oval [1]** 54/25
**over [18]** 3/19 6/2 8/6 8/16 9/18 18/9
25/10 27/7 29/6 33/3 34/8 36/7 42/21
44/16 46/21 50/6 53/1 58/6
**overall [2]** 10/13 10/15
**overlapping [1]** 4/20
**overnight [1]** 30/8
**own [6]** 12/11 12/11 17/3 25/24 26/22
29/23
**owned [1]** 39/6
**owner [1]** 53/4
**ownership [2]** 48/12 55/3
**owns [1]** 54/25

**P**

**pages [3]** 29/5 36/7 40/11
**papers [10]** 18/15 19/10 20/16 28/22
47/17 48/3 48/23 49/14 50/22 56/3
**paperwork [1]** 58/8
**paragraph [7]** 16/7 16/12 16/17 22/10
39/3 50/11 51/2
**paragraphs [2]** 29/6 55/17
**parallel [7]** 18/1 18/18 19/2 19/12 20/9
21/24 22/3
**part [6]** 16/19 18/11 26/7 49/18 54/25
55/22
**participated [3]** 39/18 48/14 52/12
**participation [3]** 45/23 47/3 52/19
**particular [2]** 9/5 34/23
**particularly [3]** 31/2 32/1 33/8
**parties [5]** 32/24 48/4 56/22 56/24
58/17
**PARTNERS [9]** 1/6 1/22 2/3 3/11 5/9
23/11 35/17 38/2 42/21
**Partners' [2]** 4/13 5/3
**partnership [1]** 37/14
**pass [1]** 16/17
**passive [1]** 47/1
**past [9]** 10/25 12/18 16/3 20/6 20/14
20/21 33/14 38/16 38/17
**patience [1]** 57/8
**patient [3]** 24/19 35/25 42/23
**patients [5]** 9/13 9/22 19/25 28/13
29/18
**Paul [2]** 2/9 35/12
**pause [2]** 11/8 45/6
**pay [1]** 9/23
**pendency [1]** 17/17
**pending [5]** 11/12 11/14 11/15 12/12
56/12
**people [2]** 32/17 43/18
**per [1]** 9/23
**percent [6]** 39/7 39/7 42/7 42/24 53/5

55/1
**performed [2]** 15/14 29/17
**permanent [26]** 12/6 12/23 13/3 13/6
13/17 13/19 14/20 15/1 15/7 17/2
17/20 17/22 17/25 18/22 19/1 19/11
22/3 22/9 22/11 22/17 22/18 37/7 48/6
48/13 49/8 49/23
**permission [2]** 5/10 51/23
**permit [4]** 3/20 8/7 19/4 21/21
**permits [2]** 17/13 17/20
**permitted [2]** 12/23 13/5
**person [4]** 37/13 44/5 46/8 46/8
**perspective [1]** 37/18
**pick [2]** 21/15 50/8
**piece [1]** 27/5
**piled [1]** 53/22
**place [1]** 16/23
**places [2]** 34/22 46/9
**plain [1]** 48/4
**plaintiff [3]** 1/5 1/16 56/16
**plaintiffs [2]** 28/5 39/17
**plan [2]** 4/12 50/25
**Plano [1]** 44/6
**plausible [10]** 23/16 25/16 27/14
28/14 28/19 34/5 43/4 43/23 44/17
45/2
**plausibly [5]** 26/23 31/13 40/21 52/20
53/23
**playbook [1]** 50/25
**plays [1]** 18/23
**plead [11]** 20/20 20/21 20/24 30/3
30/5 30/6 30/8 31/9 36/13 40/16 41/3
**pleaded [7]** 21/18 31/13 31/16 37/20
50/1 50/24 51/8
**pleading [10]** 22/11 25/18 36/12 36/17
36/22 36/24 37/12 38/1 38/7 53/18
**pleadings [2]** 31/2 43/4
**pleads [2]** 20/20 40/16
**please [5]** 4/3 8/24 11/4 35/12 45/17
**pled [4]** 16/18 20/6 31/3 54/12
**PLLC [1]** 2/4
**podium [1]** 8/20
**point [15]** 4/18 22/21 26/13 44/20 45/7
45/21 49/6 50/10 51/2 51/10 54/10
55/16 56/2 57/24 58/25
**pointed [2]** 20/9 43/11
**points [8]** 4/14 5/25 7/10 28/20 47/12
48/1 49/5 57/15
**pollen [1]** 3/5
**pose [2]** 15/1
**position [12]** 6/1 12/4 12/20 14/2 14/7
14/13 15/8 15/18 18/17 22/13 23/12
28/2
**positioned [1]** 20/24
**positions [1]** 59/1
**possesses [1]** 24/15
**possibilities [1]** 53/21
**post [2]** 18/13 56/6
**post-AMG [1]** 18/13
**power [20]** 9/20 24/15 26/18 26/24
27/2 27/13 27/20 29/11 31/6 32/23
33/2 34/7 34/7 34/12 34/24 36/2 38/14
38/15 38/17 43/9
**powerless [1]** 26/19
**practice [9]** 25/5 26/5 26/5 29/20
29/21 33/24 34/2 34/15 50/12
**practices [14]** 9/14 19/22 24/2 24/2

24/8 24/10 26/14 27/24 28/12 28/18
34/14 42/22 46/11 56/25
**practicing [1]** 26/10
**precipitate [1]** 7/13
**precise [1]** 14/7
**predecessor [1]** 26/21
**predominantly [1]** 29/21
**preexisting [1]** 31/20
**preliminary [13]** 13/7 17/15 17/17
17/21 21/23 37/8 37/11 39/23 40/1
40/5 40/9 41/15 43/20
**premised [1]** 29/15
**prepared [1]** 7/25
**present [5]** 3/20 10/19 34/20 50/5
51/12
**present USAP's [1]** 10/19
**presentation [1]** 37/22
**presentations [1]** 5/18
**presenting [1]** 4/21
**presumptively [1]** 28/2
**prevent [2]** 10/8 41/24
**previous [1]** 49/1
**price [3]** 24/18 24/20 26/23
**prices [16]** 20/1 23/25 24/21 25/16
25/24 26/15 29/23 30/23 32/4 32/6
32/17 33/7 34/8 34/13 34/16 46/15
**pricing [2]** 24/1 31/18
**primarily [1]** 6/16
**principal [2]** 16/25 27/22
**private [2]** 39/16 53/8
**problem [4]** 15/2 25/22 35/1 42/3
**procedures [3]** 29/16 29/16 29/17
**proceed [7]** 7/20 9/7 10/21 10/22
17/14 19/11 47/21
**proceeding [12]** 8/13 17/18 18/2 19/3
19/5 19/6 19/13 20/10 21/23 22/3
23/14 58/18
**proceedings [11]** 2/23 2/25 12/11
12/13 14/19 15/7 17/24 18/7 18/18
21/24 59/6
**process [14]** 12/11 12/12 12/24 13/15
13/20 13/24 17/3 22/18 22/19 28/10
32/14 32/19 32/21 33/5
**produced [1]** 2/23
**producer [1]** 24/17
**product [3]** 21/8 24/17 32/24
**products [1]** 24/25
**profitably [1]** 25/23
**progress [1]** 18/8
**prohibits [1]** 10/12
**prong [1]** 32/10
**proper [2]** 22/14 23/21
**prosecute [1]** 38/15
**prospective [3]** 36/20 38/20 43/8
**protect [2]** 9/12 58/17
**protecting [1]** 32/13
**prove [2]** 47/5 48/8
**provide [4]** 25/9 25/13 33/25 35/9
**provided [5]** 19/10 33/22 35/7 35/8
46/21
**provider [3]** 27/10 30/1 34/23
**providers [3]** 24/21 27/7 27/7
**providing [1]** 34/4
**proving [1]** 43/22
**provision [1]** 37/15
**proviso [6]** 13/3 13/6 13/17 14/23
22/14 49/8

**P**

public [2]  20/3 58/18
punitive [1]  56/19
purpose [1]  18/22
purposes [1]  56/5
put [3]  13/13 17/8 55/23
putting [1]  7/24

**Q**

qualification [1]  25/8
qualifications [1]  33/25
qualified [1]  30/9
quality [2]  32/17 34/12
quarrel [2]  22/23 23/2
quarter [1]  47/14
question [3]  5/23 12/22 58/16
questions [6]  17/6 21/19 28/24 28/25
51/21 51/22
quickly [1]  57/20
quite [3]  21/11 31/25 41/17
quote [17]  15/8 15/9 15/9 15/24 15/25
16/1 16/14 16/15 18/6 19/15 19/15
20/12 41/23 41/25 47/20 49/22 51/4
quoting [1]  51/3

**R**

radiology [3]  51/1 51/7 53/17
raise [4]  25/15 29/23 34/8 46/14
raised [7]  5/3 5/12 23/24 25/24 26/14
29/10 47/5
ran [1]  3/4
ranching [1]  43/16
Rank [1]  56/7
rapid [1]  32/18
rare [1]  31/1
rate [5]  24/3 26/9 31/22 31/23 34/9
rates [18]  24/10 25/11 25/25 26/3 26/4
26/6 26/10 26/12 26/17 26/17 26/20
27/7 27/25 28/17 30/3 31/20 31/25
32/1
rather [3]  26/9 26/16 26/20
rationale [1]  14/5
re [1]  41/25
re-upping [1]  41/25
reach [2]  31/13 31/16
reached [1]  4/8
read [3]  17/9 19/1 41/23
reading [2]  44/3 56/3
ready [1]  35/4
real [2]  15/2 35/25
realize [1]  50/20
really [4]  18/21 21/1 34/20 45/14
reason [15]  13/1 13/21 14/12 15/4
15/9 19/9 21/16 23/15 27/1 34/20 36/3
37/13 39/15 40/3 40/6
reasonable [6]  16/14 20/13 43/23
49/21 50/9 53/24
reasonably [1]  25/25
reasons [6]  5/25 12/25 15/2 16/25
19/9 23/18
receive [1]  29/18
recent [2]  18/4 46/19
record [6]  8/3 23/5 23/7 58/17 58/19
59/6
recorded [1]  2/23
recounting [1]  50/17
recur [3]  20/14 20/23 21/13

recurrence [2]  20/21 49/18
recurrent [1]  16/19
recurring [1]  16/4
Red [1]  41/18
REDDEN [1]  1/23
reduce [1]  34/12
refer [1]  29/15
reference [2]  16/4 27/4
referenced [3]  21/3 22/14 48/25
referring [1]  16/7
refers [4]  12/18 14/15 14/15 22/15
refinement [1]  57/23
reflects [2]  38/19 42/19
regarding [1]  25/19
regardless [1]  38/21
reject [1]  15/25
rejected [1]  14/4
related [4]  11/11 13/4 38/4 42/8
relates [2]  5/14 9/4
relevant [7]  15/24 24/16 31/7 31/12
31/14 34/6 35/10
relied [1]  14/9
relief [18]  5/22 13/25 17/17 18/7 18/9
36/20 38/12 38/17 38/20 38/21 39/23
40/2 40/9 41/11 43/3 43/7 44/7 44/18
relies [2]  21/3 47/12
rely [2]  28/5 54/3
remains [1]  47/15
remarkable [2]  35/17 38/5
repeating [1]  3/15
replace [1]  30/19
reporter [3]  2/17 23/6 59/11
represented [1]  3/13
representing [2]  3/25 23/11
request [1]  43/7
require [3]  18/1 19/4 30/6
required [3]  18/18 19/3 23/17
requirement [2]  19/15 43/2
requirements [1]  53/18
requires [3]  12/21 24/6 44/1
resolution [2]  30/25 32/8
resources [1]  46/19
respect [11]  6/1 6/7 12/2 12/13 13/9
14/11 24/1 33/18 34/7 58/13 58/20
respectfully [3]  14/18 17/1 29/8
respond [7]  8/11 8/12 21/22 22/7 45/6
45/12 45/13
response [7]  4/13 8/8 17/7 29/3 29/22
51/24 54/2
responses [1]  17/8
rest [1]  55/3
restraining [1]  17/16
restrains [1]  25/15
restraints [1]  10/12
restrict [1]  34/11
result [5]  9/20 25/18 26/18 26/23
32/16
resulted [1]  32/22
retake [1]  44/21
retaking [1]  42/1
retrospective [1]  43/8
reviewed [1]  46/12
right [19]  3/17 6/11 6/12 7/5 7/16
15/11 21/25 22/1 22/4 22/5 23/4 35/4
45/16 48/17 54/25 56/10 57/3 57/17
58/14
rights [1]  55/4

RMR [2]  2/18 59/10
role [1]  36/15 36/18 46/20
room [2]  2/19 8/22
routinely [1]  49/24
Rule [2]  53/11 53/19
ruled [3]  14/9 17/25 47/16
rules [1]  38/1
ruling [1]  36/25
run [1]  50/25
rural [1]  43/15
Rusk [1]  2/19

**S**

said [17]  10/20 13/9 14/1 14/17 15/21
15/23 15/25 18/5 20/12 31/3 33/6 37/6
44/9 44/17 49/11 52/23 53/13
sales [1]  23/1
same [12]  9/1 20/18 25/13 25/14 34/4
34/11 49/23 50/25 55/23 56/20 56/23
57/2
satisfied [4]  16/2 20/13 23/2 37/20
satisfies [5]  15/17 16/8 19/18 49/25
51/13
satisfy [1]  16/16 19/14
satisfying [1]  37/9
save [2]  4/7 56/23
say [22]  12/7 13/18 14/12 15/2 15/16
16/7 16/9 17/23 21/12 42/10 44/19
49/6 49/12 50/18 52/3 52/8 52/13 55/9
56/13 56/24 58/11
saying [7]  7/23 43/16 44/10 48/12
50/24 53/15 57/12
says [6]  22/20 37/12 38/9 40/24 42/7
56/4
scale [3]  50/2 51/12 51/15
schedule [1]  11/17
scheduling [4]  11/13 11/17 11/20 58/2
schematic [1]  54/23
scheme [7]  20/3 43/19 44/6 47/3 50/2
51/12 51/16
Schwartz [6]  1/17 3/24 4/14 4/25 5/1
45/18
scope [5]  5/18 7/21 10/16
Scott [1]  55/20
sealed [1]  41/18
seat [1]  21/20
seats [2]  46/24 53/1
second [9]  11/6 12/15 15/4 17/19
18/11 20/17 39/25 43/10 47/16
section [36]  6/2 7/2 10/7 10/11 10/14
12/5 12/9 13/1 14/6 16/1 16/16 17/1
17/13 17/16 17/19 17/21 18/6 18/21
18/22 19/11 19/14 19/18 20/4 20/7
20/13 20/19 21/17 21/25 24/6 24/14
37/9 38/9 44/1 47/20 47/23 53/11
Section 1 [1]  10/11
Section 13 [25]  6/2 7/2 12/5 12/9 13/1
14/6 16/1 16/16 17/1 17/16 17/19
18/21 18/22 19/11 19/14 19/18 20/4
20/7 20/13 20/19 21/17 37/9 38/9 44/1
53/11
Section 2 [2]  24/6 24/14
Section 5 [1]  10/14
Section 7 [3]  10/7 47/20 47/23
secure [1]  38/16
secured [1]  36/5
see [9]  3/22 8/5 14/15 38/24 39/1 44/7

**S**

**see... [3]** 45/15 54/23 56/15
**seek [21]** 12/10 12/23 13/19 13/24 14/19 15/6 17/2 17/15 22/18 37/7 37/16 38/20 40/5 42/14 43/3 43/14 43/20 44/18 48/6 48/13 58/17
**seeking [5]** 22/2 22/9 22/11 41/10 48/11
**seeks [2]** 18/8 58/18
**seems [3]** 29/13 29/19 43/22
**seen [2]** 3/16 29/24
**sees [1]** 43/6
**selected [1]** 46/16
**sellers [1]** 32/16
**selling [1]** 43/15
**seminal [1]** 44/24
**sense [1]** 6/3
**separate [5]** 4/19 6/19 12/8 34/15 45/11
**separately [1]** 38/23
**separateness [7]** 6/20 45/10 49/12 54/10 54/22 55/8 55/11
**serial [1]** 46/22
**serious [2]** 34/20 35/1
**seriously [1]** 36/1
**service [1]** 30/14
**services [15]** 9/24 23/22 24/19 24/20 24/21 25/3 25/9 25/13 30/1 33/20 33/22 34/1 34/4 34/14 50/13
**services and [1]** 24/21
**set [1]** 14/25
**settings [2]** 33/25 34/3
**seven [5]** 35/19 38/3 41/5 54/23 55/18
**seventh [3]** 1/19 20/17 53/2
**several [2]** 12/25 27/23
**share [3]** 23/23 25/19 31/8
**shareholders [1]** 44/13
**Sharpstown [1]** 35/23
**sheer [1]** 32/25
**Sherman [2]** 10/12 24/14
**shifts [1]** 30/8
**Shire [6]** 15/20 15/23 21/3 21/4 44/15 51/8
**shopping [1]** 50/8
**short [3]** 3/6 23/19 35/8
**should [10]** 4/22 7/20 12/23 18/25 23/15 25/20 32/15 33/4 45/13 58/6
**show [5]** 30/22 31/7 39/21 43/3 50/12
**showing [2]** 16/2 37/8
**shown [1]** 54/4
**shows [1]** 22/24
**shut [2]** 28/12 44/6
**sic [1]** 15/15
**sides [2]** 3/21 3/21
**siding [1]** 7/12
**significant [5]** 38/14 39/15 39/19 40/10 40/15
**signs [2]** 46/8 46/8
**silver [3]** 5/16 6/17 36/12
**similar [3]** 16/15 31/25 51/6
**simple [1]** 23/15
**simply [13]** 3/19 5/17 7/13 9/5 16/23 24/10 25/16 27/13 28/19 29/22 30/10 30/19 42/16
**since [3]** 35/19 47/16 50/7
**single [4]** 17/25 35/16 39/12 46/12
**sinus [1]** 3/6

**sir [7]** 7/5 12/1 22/5 23/4 29/1 33/16 33/21
**sit [1]** 28/24
**situation [4]** 19/4 24/16 43/21 44/5
**six [1]** 8/21
**skill [2]** 25/8 34/1
**Sky [1]** 41/19
**slate [1]** 14/11
**slide [11]** 35/8 36/21 37/2 38/13 41/7 42/25 43/6 49/6 49/10 49/13 54/21
**slightly [1]** 6/17
**small [2]** 30/13 36/6
**smaller [1]** 27/23
**smart [1]** 8/8
**so [55]** 3/18 3/22 5/22 7/1 7/14 8/3 8/20 8/21 8/21 8/24 9/2 11/25 11/25 14/10 14/16 15/2 15/12 15/12 15/15 17/9 18/12 19/9 21/3 21/11 22/11 23/1 23/22 24/12 24/23 25/1 25/6 26/23 30/13 30/21 31/6 33/12 39/8 40/9 43/10 43/19 44/14 44/17 44/23 48/9 49/9 52/2 52/16 53/7 54/1 54/23 56/11 56/15 57/16 58/18
**so-called [3]** 25/1 25/6 26/23
**sold [2]** 21/7 44/15
**solely [1]** 19/11
**some [26]** 3/4 3/16 3/16 4/14 5/19 6/7 13/25 15/11 26/15 26/18 27/17 27/19 30/21 34/8 34/16 35/10 40/5 42/11 42/12 44/20 45/22 53/17 54/6 57/23 57/23 58/3
**somebody [1]** 15/11
**somehow [9]** 14/25 15/16 16/20 34/11 38/4 43/24 52/12 53/9 54/5
**someone [2]** 15/9 38/10
**something [8]** 7/25 24/6 26/15 40/23 52/9 53/22 54/14 57/12
**sometimes [3]** 4/7 8/22 14/13
**somewhere [2]** 3/3 53/14
**sooner [1]** 52/12
**sorry [1]** 46/25
**sort [1]** 3/4
**sought [2]** 39/23 40/1
**Sounds [1]** 7/15
**Source [1]** 41/18
**south [1]** 3/5
**SOUTHERN [1]** 1/1
**Southwest [6]** 1/19 20/8 22/22 43/12 49/22 51/13
**speak [5]** 4/24 5/1 5/2 8/15 9/1
**speaker [1]** 6/14
**speakers [1]** 3/15
**speaking [4]** 3/25 4/8 6/4 36/11
**specialization [1]** 30/6
**specific [6]** 4/21 5/2 30/3 40/21 46/13 57/24
**specifically [7]** 9/12 16/6 22/14 22/24 30/12 46/2 55/20
**speculation [1]** 53/21
**spend [5]** 6/15 6/16 7/1 8/1 27/15
**spending [1]** 5/11
**spent [1]** 8/21
**spoken [2]** 20/11 52/2
**squarely [2]** 18/12 48/22
**St. [1]** 35/24
**St. Joseph's [1]** 35/24
**staff [1]** 44/3

**staffed [1]** 55/19
**stage [2]** 30/23 32/8
**stake [1]** 48/12
**stand [2]** 4/3 4/5
**standalone [1]** 23/13
**standard [15]** 12/21 15/5 15/17 16/9 21/5 23/1 23/19 33/14 42/14 42/24 43/25 48/10 49/18 49/24 50/1
**standing [1]** 58/12
**start [4]** 3/23 26/8 30/11 35/14
**started [5]** 8/20 24/2 30/23 35/9 50/17
**starting [2]** 41/11 43/5
**state [9]** 9/13 9/17 9/22 10/14 20/1 23/5 34/9 43/19 45/1
**statement [2]** 9/3 18/11
**STATES [8]** 1/1 1/11 5/9 13/2 13/16 13/22 14/4 23/17
**statute [6]** 17/23 18/24 18/25 19/2 21/25 27/12
**statutes [1]** 43/20
**statutory [10]** 5/10 12/3 12/6 12/7 12/21 15/5 15/17 16/9 23/1 36/22
**stay [1]** 42/15
**stenography [1]** 2/23
**step [1]** 32/11
**sticky [1]** 30/19
**still [11]** 20/6 36/10 44/10 46/20 48/8 49/1 50/2 51/18 51/19 52/23 52/24
**stock [3]** 47/14 48/1 53/5
**stop [1]** 40/7
**stopped [1]** 44/8
**stopping [1]** 50/19
**stops [2]** 42/11 42/16
**STOWE [1]** 2/8
**straightforward [2]** 47/11 47/12
**strategy [3]** 32/25 46/1 51/6
**street [6]** 1/19 1/24 2/5 2/10 2/14 30/11
**stress [1]** 28/21
**strict [1]** 48/10
**string [1]** 12/18
**strong [1]** 6/18
**stuff [1]** 4/6
**submit [2]** 14/18 17/1
**subpoena [1]** 41/9
**substance [1]** 54/3
**substantial [1]** 36/9
**substantially [4]** 10/8 47/19 48/9 48/20
**substantive [1]** 41/10
**substitute [1]** 24/25
**success [1]** 51/5
**successor [1]** 48/2
**such [4]** 21/14 38/7 46/6 56/6
**sue [4]** 12/6 44/7 44/25 53/16
**suffices [2]** 21/16 33/14
**sufficient [4]** 25/8 28/8 31/11 33/25
**sufficiently [2]** 54/12 54/13
**suggest [3]** 39/20 43/22 44/2
**suggesting [1]** 40/3
**suggestion [1]** 28/16
**suing [1]** 35/18
**suit [1]** 36/18
**Suite [4]** 1/24 2/5 2/10 2/14
**Sunsites [5]** 20/8 22/22 43/12 49/23 51/13
**supercompetitive [3]** 26/15 31/18

**S**

**supercompetitive... [1]** 33/7
**superior [2]** 32/24 32/25
**support [9]** 12/10 13/14 14/2 15/3
15/18 16/11 16/13 16/23 16/24
**supports [1]** 14/13 18/12
**supposed [2]** 41/25 52/18
**supposedly [1]** 52/8
**Supreme [12]** 13/1 13/4 13/16 13/22
14/3 18/3 18/5 18/11 18/24 23/16 33/2
47/16
**sure [10]** 3/15 7/24 10/20 11/6 13/13
23/6 32/14 32/15 45/14 51/25
**surgery [1]** 25/6
**surgical [1]** 33/22
**Surprises [2]** 27/4 34/19
**suspect [1]** 3/17
**swarmed [1]** 30/2
**symptomatic [1]** 42/4
**system [1]** 3/6
**systematic [1]** 50/2

**T**

**table [2]** 8/20 16/21
**tactics [1]** 33/1
**take [9]** 3/6 9/2 14/7 15/22 16/22 21/19
32/11 34/21 58/7
**taking [1]** 5/22
**talk [5]** 36/24 47/10 48/3 49/3 49/17
**talked [3]** 13/2 50/22 52/5
**talking [2]** 51/7 52/7
**talks [1]** 37/11
**tank [2]** 8/21 8/21
**target [1]** 40/6
**Taub [1]** 35/24
**team [1]** 46/16
**telephonically [1]** 57/24
**tell [4]** 5/25 7/14 40/25 41/17
**telling [1]** 42/16
**temporary [11]** 13/5 13/7 13/10 13/10
13/12 13/14 13/18 14/25 17/16 22/16
22/24
**tempted [1]** 8/6
**tend [1]** 10/9
**tens [1]** 9/23
**term [1]** 57/5
**terms [5]** 12/17 26/22 34/5 38/25 58/4
**test [1]** 16/18
**Texans [1]** 9/12
**TEXAS [13]** 1/1 1/4 1/25 2/11 2/15
2/20 18/15 27/24 31/22 43/15 44/2
46/15 51/15
**text [5]** 13/1 14/17 22/20 48/5 49/7
**than [14]** 3/18 6/17 9/24 11/17 15/16
24/7 26/1 26/9 31/3 33/6 33/14 39/7
40/10 52/12
**Thank [28]** 5/5 5/6 7/5 9/9 11/3 12/1
17/5 17/10 22/5 22/6 23/4 28/25 29/2
33/15 33/16 35/1 35/2 35/3 35/6
45/16 55/6 56/9 57/3 58/9 58/10 58/12
58/14 59/2
**that's [36]** 4/18 5/22 9/8 10/16 11/22
14/6 17/24 19/19 19/20 22/1 22/4
22/9 22/22 26/24 34/12 34/22 36/24
37/25 38/5 39/11 40/15 43/8 43/12
43/21 43/25 47/24 47/25 48/23 50/18
51/7 51/9 53/2 53/5 53/11 53/18 54/7

**their [24]** 8/7 9/23 14/18 16/23 18/20
22/10 25/11 30/2 33/20 34/2 37/6 38/7
39/3 42/19 45/1 46/6 47/3 47/6 49/3
50/17 50/20 52/3 52/24 53/2
**them [18]** 8/7 17/2 23/17 27/24 27/25
28/12 32/2 37/17 38/24 39/9 41/24
42/11 50/3 56/1 57/16 57/18 57/20
57/20
**themselves [1]** 56/6
**then [13]** 4/18 6/11 8/5 8/7 8/16 14/12
22/16 26/14 26/22 34/18 37/16 37/16
40/8
**there [72]**
**there's [5]** 13/21 42/13 43/11 44/17
50/19
**thereby [2]** 27/9 28/10
**therefore [1]** 23/22
**these [25]** 5/15 5/19 7/4 8/2 17/8 25/7
25/12 26/6 26/22 28/20 30/1 30/5 30/6
30/16 30/22 31/20 32/1 32/5 32/7 36/4
36/8 40/11 41/5 43/6 55/21
**they [83]**
**thing [6]** 8/25 18/19 38/11 38/20 51/25
54/21
**things [4]** 22/13 33/13 35/17 39/19
**think [31]** 3/7 4/20 6/18 6/24 7/3 7/12
7/16 7/19 8/13 18/12 18/23 19/10
19/14 19/17 20/2 21/1 21/15 21/22
31/2 34/5 34/19 35/4 35/11 45/13 49/4
49/9 54/19 57/15 57/21 58/1 58/21
**third [9]** 6/23 15/20 15/23 15/25 21/4
32/10 44/15 44/16 47/23
**this [126]**
**those [19]** 14/4 14/5 15/2 16/25 20/22
24/2 24/12 24/20 24/20 26/17 28/23
29/17 30/21 33/13 34/5 34/16 41/14
46/7 48/1
**though [4]** 14/8 33/12 34/4 55/25
**threat [1]** 15/12
**three [8]** 3/21 6/15 23/20 24/5 29/10
36/22 41/2 47/12
**threshold [5]** 37/12 43/2 44/25 56/4
57/22
**through [8]** 15/15 17/9 32/24 41/12
45/22 53/20 55/25 58/7
**throughout [1]** 51/11
**thrust [1]** 57/22
**ties [1]** 17/17
**time [11]** 3/18 6/16 6/16 7/2 7/16 9/7
39/6 39/10 48/20 55/6 57/7
**timeline [1]** 39/1
**timing [1]** 52/2
**Timothy [5]** 1/18 4/11 9/9 17/10 29/4
**title [5]** 14/13 14/14 14/14 14/16 37/10
**today [21]** 3/13 18/17 36/14 39/13
41/20 42/21 45/3 46/20 46/24 47/14
48/1 48/15 49/2 49/9 49/16 51/19 53/3
53/5 54/6 57/16 58/22
**TODD [1]** 2/4
**together [8]** 9/16 23/10 30/16 37/24
38/6 45/11 53/10 58/4
**took [1]** 11/16
**Top [1]** 56/7
**Top Rank [1]** 56/7
**touched [1]** 54/16
**trade [9]** 1/4 1/18 3/10 9/10 10/3 10/12
10/15 43/14 45/18

**training [1]** 34/2
**transcript [3]** 1/10 2/23 59/5
**transcription [1]** 2/23
**tried [1]** 34/10
**TRO [1]** 21/23
**TROs [1]** 37/11
**true [2]** 34/25 34/25
**trying [4]** 7/24 15/3 29/23 53/7
**tuck [1]** 46/14
**tuck-in [1]** 46/14
**turn [9]** 8/6 8/16 12/2 12/22 15/4 24/13
47/4 47/9 49/10
**Twelve [1]** 35/19
**two [21]** 4/19 5/24 6/24 12/8 16/25
17/14 18/12 23/24 30/13 36/4 36/24
37/1 40/10 40/24 41/2 46/24 50/3
50/16 53/1 55/2 57/15
**two years [2]** 40/10 40/24
**two-year [2]** 36/4 50/16
**Twombly [5]** 16/18 23/17 40/20 45/1
53/19
**type [2]** 12/21 13/25
**typical [2]** 24/16 42/4

**U**

**U.S [11]** 1/6 1/22 2/3 2/18 3/11 4/13
5/3 23/11 35/16 38/2 42/21
**umbrella [1]** 27/24
**unable [1]** 32/5
**under [15]** 14/18 20/4 20/7 21/8 21/16
24/3 24/14 27/24 32/23 37/25 38/8
38/19 40/20 43/6 45/1
**underserved [1]** 35/22
**understand [4]** 3/7 4/9 21/2 34/22
**undescribed [1]** 42/12
**undisputed [1]** 47/12
**undue [1]** 19/24
**unfair [1]** 10/14
**unholy [1]** 55/23
**unique [2]** 4/15 54/14
**UNITED [8]** 1/1 1/11 5/9 13/2 13/16
13/22 14/4 23/17
**unlawful [5]** 15/14 27/20 47/3 52/15
52/18
**unlawfully [2]** 9/16 10/5
**unless [3]** 21/19 27/20 28/24
**Unlike [1]** 17/20
**unlikely [1]** 19/7 21/12
**unquote [2]** 47/21 51/7
**unreasonable [1]** 10/12
**unstated [1]** 42/11
**untethered [1]** 23/14
**until [3]** 32/1 46/23 50/14
**up [7]** 5/22 7/12 8/18 9/1 21/15 45/25
50/8
**upon [3]** 7/22 14/9 57/22
**upping [1]** 41/25
**urge [1]** 34/21
**us [4]** 18/12 18/13 19/11 58/12
**USAP [91]**
**USAP's [38]** 10/6 10/10 10/19 19/3
20/5 20/23 23/23 24/3 25/15 25/19
26/3 26/11 26/16 26/20 27/24 27/25
28/9 28/15 30/23 31/10 31/24 32/3
32/4 32/5 33/9 45/24 46/5 46/5 46/5
46/16 46/17 46/19 46/22 46/23 46/24
47/3 47/14 47/15

## U

**use [4]** 18/6 32/4 33/1 52/3
**used [3]** 26/5 33/1 34/15
**uses [2]** 9/21 46/14
**utilities [1]** 43/17

## V

**vague [2]** 16/3 27/4
**valid [1]** 25/20
**value [1]** 43/18
**various [4]** 6/9 24/1 24/7 26/14
**vehicle [1]** 48/16
**versus [9]** 3/11 15/20 15/23 23/17 48/23 49/13 51/14 51/17 56/18
**very [28]** 6/18 7/1 7/5 11/2 12/17 14/22 19/4 19/7 19/21 20/18 21/11 29/2 29/7 30/3 31/7 33/2 33/18 34/20 35/7 37/22 38/14 42/16 43/11 48/10 53/7 56/2 57/14 58/14
**view [2]** 6/9 28/5
**violate [16]** 10/7 10/11 15/10 15/18 16/2 16/9 19/15 20/12 37/15 38/10 39/13 41/5 42/9 45/4 47/7 49/19
**violates [3]** 10/2 47/20 49/1
**violating [10]** 15/10 15/17 16/1 16/8 37/14 38/10 38/25 39/13 45/3 48/6
**violation [17]** 10/14 16/3 21/18 39/2 39/4 39/8 39/22 40/15 40/22 41/14 42/17 43/4 44/22 52/4 52/15 52/22 53/25
**violations [12]** 20/14 20/22 23/16 36/16 36/19 38/16 38/17 38/21 42/12 43/24 45/24 49/21
**virus [1]** 3/4
**voice [3]** 4/8 8/17 8/24
**voices [1]** 4/7
**voluntarily [1]** 40/7
**VS [1]** 1/5

## W

**wait [3]** 14/1 45/14 57/17
**walk [1]** 45/22
**want [18]** 4/9 10/24 10/24 13/13 15/16 15/23 18/20 26/13 27/15 30/7 32/11 45/5 45/6 47/10 48/9 49/11 51/2 58/25
**wanted [3]** 28/20 30/9 36/6
**wants [2]** 10/23 38/6
**warrant [1]** 20/22
**was [33]** 13/23 14/23 14/24 14/24 20/3 21/5 21/8 21/8 21/12 22/25 23/1 24/3 29/10 40/8 40/14 41/9 41/13 43/16 43/17 43/17 43/17 43/18 43/18 43/20 51/9 51/15 51/18 52/7 52/8 52/8 54/2 56/21 58/16
**Washington [4]** 1/20 2/6 19/6 23/10
**wasteful [1]** 19/7
**water [2]** 43/17 43/18
**watershed [1]** 27/5
**way [14]** 7/24 8/8 8/13 11/14 12/9 18/4 28/16 31/5 31/6 31/6 31/9 31/11 32/15 37/6
**ways [2]** 12/8 23/20
**WC [1]** 56/22
**we [134]**
**we're [1]** 11/6
**we've [1]** 29/9
**Webb [1]** 41/18

**well [22]** 5/14 11/16 12/25 13/7 15/6 16/18 19/5 20/6 20/24 31/3 33/3 36/7 36/24 42/10 43/11 50/1 50/24 51/8 52/2 52/23 53/13 53/15
**well-pleaded [3]** 50/1 50/24 51/8
**well-pled [1]** 16/18
**well-spoken [1]** 52/2
**WELSH [78]**
**Welsh Carson [1]** 4/15
**went [1]** 27/3
**were [23]** 11/24 14/5 20/5 21/17 21/23 24/10 26/10 26/17 26/20 28/17 30/9 31/11 31/12 33/8 39/9 41/5 41/11 43/15 43/18 53/10 57/12 57/19 58/11
**weren't [1]** 41/10
**Western [1]** 51/15
**what [71]**
**What's [1]** 4/17
**whatever [4]** 25/15 27/10 34/24 57/25
**when [23]** 8/20 13/9 14/16 16/5 18/8 23/25 24/23 25/1 25/10 26/10 26/18 27/8 37/13 40/25 44/8 48/6 50/18 51/11 52/4 52/7 52/13 56/5 56/7
**where [12]** 7/3 13/23 15/21 21/15 24/17 41/9 44/15 50/11 51/14 51/17 54/7 58/5
**whether [7]** 7/13 7/20 24/23 24/24 38/25 41/19 44/7
**which [24]** 6/19 6/23 7/7 7/23 10/7 10/12 15/20 19/5 20/2 22/14 28/17 34/10 42/14 43/13 43/20 44/16 47/19 48/5 49/14 49/23 51/3 54/21 54/22 55/17
**while [1]** 18/7
**who [8]** 3/24 4/24 8/11 24/20 25/4 25/5 34/2 50/7
**whole [1]** 18/10
**why [18]** 4/22 5/23 5/25 12/22 12/22 13/8 13/21 14/12 17/24 27/1 30/4 30/22 36/3 39/15 40/3 49/14 50/9 55/24
**wide [1]** 51/19
**wife [1]** 40/25
**will [40]** 3/7 3/10 3/23 4/7 4/12 4/14 5/1 5/2 5/10 5/12 6/6 6/13 7/1 7/13 7/17 9/1 9/7 13/10 14/10 14/14 16/15 20/14 20/22 21/21 27/20 28/24 31/16 39/24 41/23 45/14 49/6 49/12 57/9 57/9 57/20 57/20 57/24 57/25 58/6 58/7
**willing [2]** 10/22 25/12
**win [2]** 47/5 47/7
**within [2]** 13/12 51/4
**without [7]** 9/4 16/11 16/13 19/12 22/19 25/20 38/7
**witness [1]** 36/6
**won't [1]** 28/22
**words [6]** 7/24 11/19 13/6 13/12 15/10 18/25
**work [7]** 25/5 30/7 30/9 30/12 40/25 41/2 58/3
**would [33]** 4/23 7/10 8/1 8/5 8/12 11/10 17/8 19/1 19/4 20/6 20/23 21/24 22/21 23/5 24/12 26/8 29/22 31/19 35/9 35/14 38/8 42/15 42/15 45/20 45/21 49/3 49/10 49/17 51/5 51/10 54/9 55/16 58/22

**wouldn't [2]** 40/8 56/12
**write [1]** 18/19
**writing [1]** 14/10
**written [1]** 54/13
**wrongdoing [2]** 51/18 51/19
**wrongful [1]** 52/11

## X

**XI [2]** 2/8 55/22
**XII [3]** 39/6 53/5 55/22

## Y

**Yeah [3]** 9/8 54/18 57/11
**year [4]** 9/23 36/4 50/16 57/10
**years [15]** 8/21 12/18 15/16 16/10 21/10 31/21 35/19 35/19 39/5 39/8 40/10 40/24 41/2 52/9 52/19
**yellow [1]** 54/24
**yes [11]** 4/2 5/7 6/13 10/17 15/21 52/24 53/1 54/19 55/13 56/14 57/2
**yesterday [1]** 40/18
**yesterdays [1]** 40/18
**yet [2]** 4/8 42/1
**Yetter [6]** 2/9 2/9 6/12 7/9 35/5 35/12
**you [122]**
**you're [1]** 7/12
**your [148]**