IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. ANESTHESIA PARTNERS, INC., et al., <br><br> Defendants. | Case No.: 4:23-CV-03560-KH |

**Memorandum of Law in Support of
Plaintiff Federal Trade Commission's Motion for Entry of Protective Order**

## SUMMARY OF THE ARGUMENT

The FTC brought this case because Defendants fix competitors' prices and wield monopoly negotiating leverage against commercial insurers to the detriment of Texas employers and, ultimately, patients. *See* Compl. ¶¶ 6, 79, 314, ECF No. 62. As part of its investigation, the FTC sought confidential information—including pricing and negotiation strategies—from these insurers and other nonparties and will seek additional similar materials to prove its case at trial. Disclosure of this confidential information could result in competitive harm or improper advantage to Defendants in future negotiations. Thus, as is standard in government antitrust cases, the FTC and Defendants have negotiated and largely stipulated to a protective order to ensure that this competitively sensitive information is used only in this litigation.

Defendants insist, however, that Ki'Jhana Friday, USAP's Deputy General Counsel, and Othon Prounis, Welsh Carson's Acting General Counsel, be granted unfettered access to non-public material "that reveals a trade secret [or] confidential . . . commercial information" ("Confidential Material"), including competitors' pricing information and insurers' negotiating positions whose disclosure is "likely to cause significant competitive or commercial harm" ("Highly Confidential Material"). FTC's Proposed Protective Order § 2(a)-(b). Because Ms. Friday's position involves some competitive decision making, there is a risk that she will inadvertently disclose protected material and should therefore be limited to seeing only Confidential Material. Because Mr. Prounis is a transactional lawyer whose role inextricably demands that he engage in competitive decision making, he should not be allowed access to any Confidential or Highly Confidential Material.

Accordingly, the FTC requests the Court enter the otherwise stipulated Protective Order attached as Exhibit A and deny Defendants' additional requests for access.

1

## NATURE AND STAGE OF THE PROCEEDING

The FTC filed its Complaint for Injunctive and Other Equitable Relief on September 21, 2023. ECF No. 1. The Court issued an Order Setting Scheduling (ECF No. 143), under which discovery commences on May 13, 2024. The parties now seek an order governing disclosure of confidential information submitted in this litigation.

## ISSUES TO BE DECIDED BY THE COURT

1. Whether Ki'Jhana Friday should have access to Highly Confidential Material from nonparties, including USAP competitors and contractual counterparties, notwithstanding her role in competitive decision making as USAP's Deputy General Counsel?

2. Whether Othon Prounis should have access to Confidential and Highly Confidential Material from nonparties, including USAP competitors and contractual counterparties, notwithstanding his role in competitive decision making as Welsh Carson's General Counsel?

## ARGUMENT

Disclosure of sensitive information outside of litigation risks serious commercial and competitive harm—particularly for nonparties. *See FTC v. Peabody Energy Corp.*, No. 4:20-cv-00317-SEP, 2020 WL 1557168, at *3 (E.D. Mo. Apr. 1, 2020). That concern is especially acute here, where disclosure "may deter non-parties from producing information to the government in future cases." *United States v. Aetna Inc.*, No. 1:16-cv-01494 (JDB), 2016 WL 8738420, at *9 (D.D.C. Sept. 5, 2016)*; see also FTC v. Advoc. Health Care Network*, 162 F. Supp. 3d 666, 671-72 (N.D. Ill. 2016). Although courts assume that no attorney will intentionally disregard a protective order, they recognize that certain attorneys may *inadvertently* disclose confidential information given the nature of their roles. *See Uniloc 2017 LLC v. Cardo Sys., Inc.*, No. 2:18-cv-00510-JRG, 2019 WL 13472203, at *3 (E.D. Tex. May 22, 2019); *ST Sales Tech Holdings,*

*LLC v. Daimler Chrysler Co., LLC*, No. 6:07-cv-346, 2008 WL 5634214, at *2 (E.D. Tex. Mar. 14, 2008). "No amount of guarantees to limit the use of the information can ensure against such an inadvertent disclosure." *ST Sales Tech Holdings*, 2008 WL 5634214, at *8.

To determine whether a protective order should bar a party's attorney access to information, courts weigh "the risk of 'inadvertent or accidental disclosure'" against the "potential that the protective order may impair the other parties' ability to prosecute or defend its claims." *Id.* at *2 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). To be sure, no automatic bar applies to in-house counsel. But when the issue is litigated in government antitrust cases, courts routinely restrict or significantly condition in-house counsel access to sensitive materials. *E.g.*, *Advoc. Health Care*, 162 F. Supp. 3d at 672-673; *FTC v. Sysco Corp*. 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015). Indeed, parties routinely stipulate that in-house counsel cannot access highly confidential materials.[1]

Here, allowing Mr. Prounis to access Confidential Material or Highly Confidential Material or Ms. Friday to access Highly Confidential Material creates an unacceptably high risk of inadvertent disclosure, outweighing any minimal disadvantage to Defendants of denying such access.

I. **Ms. Friday's and Mr. Prounis's roles in competitive decision making creates an unacceptably high risk of inadvertent disclosure**

The "most critical factor" favoring denying an attorney access to confidential information is participation in "competitive decisionmaking," *Uniloc*, 2019 WL 13472203, at *3 (internal quotations omitted). Competitive decision making encompasses "advice and participation in any

---

[1] *See, e.g.*, Stipulated Protective Order ¶ 7, *FTC v. Tapestry, Inc.*, No. 1:24-cv-03109 (S.D.N.Y. May 1, 2024), ECF No. 70; Stipulated Protective Order ¶ 4, *FTC v. Vyera Pharms., LLC*, No. 1:20-cv-00706 (S.D.N.Y. April 20, 2020), ECF No. 92; Am. Protective Order Regarding Confidentiality ¶ 21, *United States v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:16-cv-00311 (W.D.N.C. Oct. 16, 2017), ECF No. 57; Stipulation and Protective Order ¶ 21, *United States v. Am. Express Co.,* No. 10-cv-04496 (E.D.N.Y. April 7, 2011), ECF No. 102.

or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). Because it is "very difficult for [] human minds to compartmentalize and selectively suppress information once learned," counsel involved in competitive decision making are likely to disclose protected information, even if inadvertently. *Uniloc*, 2019 WL 13477203, at *3. Such inadvertent disclosure poses risks even for nonparties that "do not compete directly with Defendants," because their information still "could provide the Defendants with a significant advantage in future negotiations." *Aetna*, 2016 WL 8738420, at *6; *see also ST Sales Tech Holdings*, 2008 WL 5634214, at *6 (focusing on the "ultimate potential for damaging use of the confidential information").

Both Ms. Friday and Mr. Prounis are involved in competitive decision making, creating an unacceptably high risk of inadvertent disclosure.

**Ki'Jhana Friday**. According to her LinkedIn profile, Ms. Friday "provides key guidance on corporate strategies to USAP's executive leadership team" and "advises on a host of legal issues and corporate governance matters." Arin Decl. Ex. A, *Ki'Jhana Friday*, LinkedIn, https://www.linkedin.com/in/kfriday (last visited May 9, 2024). Her involvement in strategic planning and corporate governance presents unavoidable opportunities for her to inadvertently disclose confidential information. *See Advoc. Health Care*, 162 F. Supp. 3d at 671 (denying in-house counsel access based on LinkedIn profiles claiming a role in strategic planning). Ms. Friday also "oversees *all* corporate litigation with specific expertise in complex commercial matters." Arin Decl. Ex. A (emphasis added). Litigation against nonparties presents yet another risk that information learned in this litigation may be inadvertently disclosed. *See Aetna*, 2016 WL 8738420, at *7-8 (denying access to attorneys who "supervise[s] litigation" against

4

anticipated nonparties). Indeed, USAP has represented to the Court that it has recently litigated at least five actions against UnitedHealthcare, a nonparty in this litigation. *See* Rule 26(f) Joint Discovery/Case Management Plan at 4 nn.2-3, ECF No. 132. Ms. Friday also advises USAP on employment matters, which would include hiring doctors from competitors, who may be nonparties in the litigation. *See* Arin Decl. Ex. A ("Ms. Friday also manages all legal and compliance matters related to the areas of labor and employment[.]"). *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (holding legal advice on employment matters presents opportunities for inadvertent disclosure).

**Othon Prounis.** Mr. Prounis appears even more deeply involved in competitive decision making. He is the *only* "in-house" counsel at Welsh Carson, serving as Acting General Counsel and "focus[ing] primarily on leveraged buyouts and mergers and acquisitions transactions." Arin Decl. Ex. B, *Othon Prounis*, WCAS, www.wcas.com/firm/team/othon-prounis (last visited May 9, 2024).[2] Mr. Prounis's role as general counsel puts him at the center of any acquisitions by Welsh Carson and USAP, "placing that counsel in the untenable position of having to refuse his employer legal advice . . . lest he improperly or indirectly reveal a competitor's trade secrets" learned in this litigation. *Aetna,* 2016 WL 8738420, at *5 (cleaned up). Courts often conclude that permitting a party's general counsel to access sensitive information presents too high a risk of inadvertent disclosure. *See, e.g.*, *Sysco*, 83 F. Supp. 3d at 4 (denying access to Chief Legal Officer with responsibility for mergers and acquisitions); *Peabody Energy*, 2020 WL 1557168, at

---

[2] Mr. Prounis also practices law at Ropes & Gray LLP, a firm retained by Welsh Carson in this action. Arin Decl. Ex. C, *Othon A. Prounis*, WCAS, https://www.ropesgray.com/en/people/p/othon-a-prounis (last visited May 9, 2024). He thus apparently works as both an in-house and outside counsel. But there can be no ambiguity about how the proposed protective order applies to him: Defendants have represented that Mr. Prounis is considered "in-house" counsel and cannot circumvent the order's safeguards by later recasting him as "outside counsel."

*7 (denying access to general counsel who "regularly participate in meetings of corporate leadership at which competitive decisions are at least discussed").

Welsh Carson's outside counsel has not disputed that Mr. Prounis's role presents a significant risk of inadvertent disclosure. They have instead asserted that the competitive decision-making standard should not apply to him because Welsh Carson is not itself in the anesthesia business. But Welsh Carson is not some disinterested observer. Welsh Carson designed and worked hand-in-glove with USAP to execute the anticompetitive conduct at issue in this case. *E.g.*, Compl. ¶¶ 84-86, 96-99, 125-126, 200, 211. Welsh Carson is also invested in and deploying its consolidation strategy in other similar markets—involving some of the same nonparties whose sensitive information will be disclosed here. *See id.* ¶ 339; *see also* Arin Decl. Ex. C, *Healthcare Companies*, WCAS, https://www.wcas.com/healthcare/companies (last visited May 9, 2024) (current investments in U.S. Radiology Specialists and United Musculoskeletal Partners). Thus, Mr. Prounis can be a competitive decisionmaker "even when not representing a competitor" because the information learned through this litigation, such as payors' pricing strategies and business plans, can be of competitive value to Welsh Carson, its portfolio companies, and its future investments. *See ST Sales Tech Holdings*, 2008 WL 5634214, at *6 (collecting cases).

## II. Denying access for Ms. Friday and Mr. Prounis will not impair USAP's or Welsh Carson's ability to defend this case

USAP and Welsh Carson will still have ample legal firepower at their disposal to defend this litigation. Any claim that their defense will be hampered by restricting Ms. Friday's or Mr. Prounis's access to sensitive materials rings hollow for three reasons.

First, both Defendants are represented by competent, experienced outside antitrust counsel, who will have full access to all materials produced in discovery. "Federal courts have

6

routinely found that requiring a party to rely on its competent outside counsel does not create an undue or unnecessary burden." *Uniloc*, 2019 WL 13472203, at *5 (collecting cases)*; see also Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) ("The party seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel.").

Second, Ms. Friday and Mr. Prounis can still assist in this litigation. Both can access "redacted final and draft pleadings, expert reports, affidavits, and deposition transcripts." *Peabody Energy*, 2020 WL 1557168, at *7 (concluding in-house counsel could assist outside counsel "even without access to confidential materials"). And (absent further objection) Ms. Friday can access Confidential Materials subject to the provisions of the protective order. Though neither Ms. Friday nor Mr. Prounis would be able to view certain nonparty materials, "it is difficult to see how" they "would have any special insight" into such materials from "companies they don't work for." *See Advoc. Health Care*, 162 F. Supp. 3d at 672-673.

Third, restricting access now does not restrict access indefinitely. If USAP or Welsh Carson identify other counsel removed from competitive decision making, they can follow the notice and objection procedure in the Protective Order to secure access to Confidential Material. *See* FTC's Proposed Protective Order § 8. And either defendant may request modification of or relief from the protective order to obtain access to specific material upon a showing of good cause. *See id.* § 15; *Aetna*, 2016 WL 8738420, at *9 ("To the extent that outside counsel require in-house counsel assistance with respect to particular documents, nothing prevents outside counsel from requesting that in-house counsel have access to that particular information based on more specific and compelling grounds.").

7

## CONCLUSION

For the foregoing reasons, the Court should enter the FTC's proposed protective order attached to the FTC's Motion for Entry of Protective Order. The Court should further order that Ms. Friday may only access Confidential Materials and that Mr. Prounis may not serve as Welsh Carson's designated in-house counsel under the Protective Order.

Dated: May 9, 2024

Respectfully submitted,

*/s/ Timothy Kamal-Grayson*
Timothy Kamal-Grayson (*Pro Hac Vice*)

600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3369
Email: tkamalgrayson@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*