# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| |
|---|
| **FEDERAL TRADE COMMISSION,** |
| **Plaintiff,** |
| **v.** |
| **U.S. ANESTHESIA PARTNERS, INC., et al.,** |
| **Defendants.** |

**Case No.: 4:23-CV-03560-KH**

**Plaintiff Federal Trade Commission's
Appendix of Authorities in Memorandum of Law
in Support of Motion for Entry of Protective Order**

## Table of Authorities

*FTC v. Peabody Energy Corp.*,
  No. 4:20-cv-00317-SEP, 2020 WL 1557168 (E.D. Mo. Apr. 1, 2020) ...................................3

Stipulated Protective Order, *FTC v. Tapestry, Inc.*,
  No. 1:24-cv-03109-JLR (S.D.N.Y. May 1, 2024), ECF No. 70.............................................10

Stipulated Protective Order, *FTC v. Vyera Pharmaceuticals, LLC*,
  No. 1:20-cv-00706 (S.D.N.Y. April 20, 2020), ECF No. 92.................................................19

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*,
  No. 6:07-cv-346, 2008 WL 5634214 (E.D. Tex. Mar. 14, 2008)...........................................48

*Uniloc 2017 LLC v. Cardo Systems, Inc.*,
  No. 2:18-cv-00510-JRG, 2019 WL 13472203 (E.D. Tex. May 22, 2019)............................57

*United States v. Aetna Inc.*,
  No. 1:16-cv-01494 (JDB), 2016 WL 8738420 (D.D.C. Sept. 5, 2016)..................................64

Stipulation and Protective Order, *United States v. American Express Company*,
  No. 10-cv-04496 (E.D.N.Y. April 7, 2011), ECF No. 102....................................................75

Amended Protective Order Regarding Confidentiality, *United States v. Charlotte-Mecklenburg Hospital Authority*, No. 3:16-cv-00311 (W.D.N.C. Oct. 16, 2017), ECF No. 57 ...............104

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 3 of 133

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

2020 WL 1557168
United States District Court,
E.D. Missouri, Eastern Division.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

PEABODY ENERGY CORPORATION
and Arch Coal, Inc., Defendants.

Case No. 4:20-cv-00317-SEP
|
Signed 04/01/2020

**Attorneys and Law Firms**

Amy E. Dobrzynski, Daniel Matheson, Elizabeth Arens, Jeanine Balbach, Jonathan Lasken, Joshua Goodman, Michael Anthony Franchak, Philip Kehl, Stephen Santulli, Taylor Alexander, Federal Trade Commision, Washington, DC, for Plaintiff.

Corey Roush, Pro Hac Vice, Gorav Jindal, J. Matthew Schmitten, Akin and Gump, Edward Hassi, Leah S. Martin, Debevoise and Plimpton LLP, Stephen Weissman, Andrew Thomas George, Elisa Beneze, Jarad Scot Daniels, Matthew Adler, Michael J. Perry, Steven Benjamin Pet, William Connor Lavery, Baker Botts, LLP, Washington, DC, Matthew T. Schelp, Michael Charles Martinich-Sauter, Husch Blackwell LLP, Catherine L. Hanaway, Ashcroft Hanaway LLC, St. Louis, MO Cristina R. Thrasher, Akin and Gump, Johan Robert Abraham, Michael Schaper, Tristan Myles Ellis, Debevoise and Plimpton LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

SARAH E. PITLYK, UNITED STATES DISTRICT JUDGE

**\*1** This matter is before the Court on Defendant Peabody Energy Corporation ("Peabody") and Arch Coal, Inc.'s ("Arch") (collectively, "Defendants") Unopposed Motion to Modify the Protective Order (Doc. [52]) ("Defendants' Motion"), the parties' Joint Request for a Teleconference, (Doc. [64]) ("Joint Request"), and multiple motions opposing Defendants' proposed modifications to the protective order submitted by Navajo Transitional Energy Company, LLC ("NTEC"); Ameren Corporation and Union Electric Company d/b/a Ameren Missouri ("Ameren Entities");

and Peter Kiewit Sons', Inc. ("Kiewet") (collectively, "Intervenors"). Docs. [62], [68], [73]. [1]

### I. Background

At the request of the parties, this Court entered a preliminary protective order in this case on March 4, 2020, with the understanding that Defendants would be seeking modifications to permit certain of their employees access to information designated as "confidential material" under that order. Doc. [47]. Defendants' Motion seeking a modification to that protective order was filed on March 12, 2020. Doc. [52]. Five days later, the parties filed the Joint Request indicating that Defendants would like further modifications to the protective order, but the FTC was opposed. Doc. [64]. Between March 13th and the 23rd, Intervenors all sought intervention for the purpose of opposing the proposed modifications to the protective order. [2] Docs. [62], [68], [73]. The Court held a telephonic hearing on March 24, 2020, on Defendants' Motion, the parties' Joint Request, and the Intervenors' objections thereto. In anticipation of that hearing, the Court invited Defendants to submit limited supplemental briefing. Docs. [89], [90]. At the hearing, the Court invited the FTC and Intervenors to respond to Defendants' supplemental briefing. Those responsive briefs were filed March 26, 2020. Docs. [97], [98]. This Memorandum and Order considers all of the above-described briefing and argument.

**\*2** Defendants' Motion, which the FTC did not oppose at the time that it was filed, [3] seeks a modification of the protective order that would allow one member of each of Defendants' in-house legal departments (specifically, Carol Li for Peabody and Rosemary Klein for Arch) to view documents deemed "confidential material" under the protective order. Defendants' Motion would otherwise leave the protective order unchanged. [4] Although the FTC did not oppose granting access to Ms. Li and Ms. Klein, the parties agreed—and notified the Court in Defendants' Motion—that the FTC would notify "third parties that produced Confidential Information" of the proposed modification and provide them six days to object thereto before asking that the Court enter the modified protective order. Doc. [52] at 2 n.1.

During that six-day period, not only did several third parties file such objections, but the parties themselves also submitted the Joint Request, outlining a disagreement between Defendants and the FTC over proposed further modifications

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 4 of 133

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

of the protective order. Specifically, Defendants want to allow two additional employees from each Defendant (Scott Jarboe and Alice Tharenos for Peabody; Robert Jones and Kenneth Cochran for Arch) to view confidential material under the protective order, and the FTC objects to granting such access.

Intervenors, meanwhile—coal producers and purchasers and other energy providers, all of whom have been subpoenaed by one or more parties to this litigation—object to allowing *any* of the six employees of Defendants to view confidential material they have produced or will produce in the context of this litigation. They argue that, as non-parties to this litigation, they have legitimate privacy interests, and it is unfair for their competitors or suppliers to view their most sensitive information, some of which they have developed over years and is central to their competitive business strategies.

After careful consideration of the parties' written and oral arguments, the Court will grant Defendants' Motion with two modifications, outlined below. The Court will deny Intervenors' motions insofar as they oppose *any* employee of Defendants having *any* kind of access to confidential material under the protective order, but it will grant Intervenors' motions as to the further modifications proposed by Defendants in the context of the Joint Request. None of the additional four employees proposed by Defendants in the Joint Request will have access to confidential material under the protective order. As described below, the Court will also grant NTEC's request for one additional safeguard against disclosure of confidential material.

### Legal Standard

Federal Rule of Civil Procedure 26(c) allows for the issuance of a protective order upon a showing of good cause. *see Monsanto Co. v. Pioneer Hi-Bred Int'l, Inc.,* No. 4:12-cv-1090-CEJ, 2014 WL 1211111, *1 (E.D. Mo. Mar. 24, 2014).* "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise....[T]he 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.,* 165 F.3d 952, 959–60 (D.C. Cir. 1999).

**\*3** Here, the Court must balance Defendants' interest in "a fair opportunity to help prepare their defense to the FTC's challenge," Doc. [64] at 1, and the risk of serious competitive harm to third parties, including Intervenors, who have been

compelled to produce sensitive information for inspection by Defendants, who are their competitors or suppliers. *see* Doc. [98] at 4-5; *see also F.T.C. v. Advocate Health Care Network,* 162 F.Supp.3d 666, 671-72 (N.D. Ill. 2016) ("[W]e are not talking about an exchange of documents between two sides in a lawsuit. We are talking about a number of third parties, not targets of any FTC action, who had to give up exceedingly confidential information in response to a government subpoena.").

In such situations, courts often try to balance the relevant interests by requiring third parties to produce their sensitive information for use in the lawsuit but issuing a protective order to prevent that information from falling into the hands of "competitive decision-makers"[5] at rival corporations. *Intervet, Inc. v. Merial Ltd.,* 241 F.R.D. 55, 57 (D.D.C. 2007).* In a seminal case, *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984),* the United States Court of Appeals for the Federal Circuit noted that involvement in competitive decisionmaking "may well be" grounds for disqualifying certain in-house counsel from seeing confidential material submitted by third parties, but the court stressed that these cases are highly fact-dependent and not susceptible to brightline rules. *730 F.2d at 1468.* Accordingly, the Federal Circuit rejected a categorical distinction between "in-house" and "retained" counsel and encouraged courts to focus instead on "[w]hether an unacceptable opportunity for inadvertent disclosure exists," as "determined...by the facts, on a counsel-by-counsel basis." *Id.*

Following *U.S. Steel,* courts have focused on involvement in competitive decisionmaking and, more fundamentally, on the risk of inadvertent disclosure: "The primary concern underlying the 'competitive decision-making' test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." *F.T.C. v. Sysco Corp.,* 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015) (citing *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992), and *Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D. Pa. 1990)). *See also Matsushita Elec. Indus. Co. v. United States,* 929 F.2d 1577, 1580 (Fed. Cir. 1991); *Advocate*

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 5 of 133

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

*Health Care Network*, 162 F.Supp.3d at 667-668; *United States v. Aetna Inc.*, No. 1:16-CV-01494 (JDB), 2016 WL 8738420, at *5 (D.D.C. Sept. 5, 2016); *Saint Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, No. 1:12-CV-00560-BLW-RE, 2013 WL 139324, at *4 (D. Idaho Jan. 10, 2013) ("the very nature of competitive information makes it difficult to compartmentalize.")).

Accordingly, this Court understands its task to be to assess —"by the facts, on a counsel-by-counsel basis" *U.S. Steel*, 730 F.2d at 1468—whether each of the individuals for whom Defendants seek access to confidential material presents *too great* a risk of inadvertent disclosure, keeping in mind that the risk of harm to third parties must be balanced against Defendants' very substantial interest in having access to discovery materials that may be used in the case against them.

*see* *Brown Bag Software*, 960 F.2d at 1470.

**Analysis**

 **\*4**  Defendants' six designees divide helpfully into three categories, which the Court will address in turn.

**1. Carol Li (Peabody) and Rosemary Klein (Arch)**
The Court finds that Ms. Li and Ms. Klein present minimal risk of inadvertent disclosure of confidential material, and that the risk is outweighed by the disadvantage to Defendants of inhibiting their in-house litigation counsel's involvement in their defense.

Defendants have persuaded the Court that Ms. Li and Ms. Klein are vital contributors to Defendants' litigation of this case. For Peabody, Ms. Li exercises operational oversight over this litigation and outside counsel. Doc. [90-1] ¶ 12. She is the employee who will provide outside counsel with the day-to-day detailed guidance they will need to litigate this case, and if she cannot review draft and final briefs or expert reports containing confidential information, her involvement in Peabody's defense will be substantially impaired. *Id.* ¶ 13. For Arch, Ms. Klein set up and ran the "clean team" during the FTC's investigation of the joint venture. Doc. [89-1] ¶ 13. She coordinates directly with outside counsel on a day-to-day basis regarding legal strategy and is one of only a few individuals at Arch with comprehensive knowledge of the transaction. *Id.* ¶ 9. She intends to be an active member of the trial team, which will be substantially more difficult if

she is categorically excluded from reviewing any confidential material. *Id.* ¶ 12.

On the other side of the balance, no one has contested Defendants' claims that neither Ms. Li nor Ms. Klein plays any role in competitive decisionmaking nor poses any appreciable risk of inadvertent disclosure. Doc. [90-1] ¶ 7; Doc. [89-1] ¶ 6. In fact, the FTC originally did not object to modifying the protective order to allow these two attorneys access to confidential material. *see* Doc. [52] at 2.

Intervenors' primary counterargument to Ms. Li and Ms. Klein is that their roles in the future may change such that the risk of inadvertent disclosure would be greater than it is now. Doc. [98] at 5. Of course, that is possible; the future is uncertain. But on the evidence before the Court, Ms. Li and Ms. Klein both appear to have exclusively legal experience and current portfolios. *See* Doc. [90-1] ¶ 4; Doc. [89-1] ¶ 5. There is no evidence that they have any qualifications that would suit them for competitive decisionmaking roles. Unlike the other attorneys Defendants seek access for, there is no suggestion that either Ms. Li or Ms. Klein regularly participates in strategy meetings outside her respective company's legal department. [6] The Court cannot find that the entirely speculative possibility that Ms. Li or Ms. Klein might someday be in a position to disclose confidential material to competitive decisionmakers outweighs the cost to Defendants of denying their most integrally involved in-house litigators full access to the evidence adduced against them.

 **\*5**  Li and Klein are the employees of Defendants who have the greatest operational, day-to-day involvement with this litigation. They are lawyers, not businesspeople, and neither is currently, or ever has been, involved in any competitive decisionmaking on behalf of their companies; nor have Intervenors or the FTC raised any grounds for realistic concern that they will be in the future. To deny Ms. Li and Ms. Klein access to confidential material while permitting it to outside counsel would be to apply the overly formalistic distinction between in-house and external counsel that the Federal Circuit forbade in *U.S. Steel*. 730 F.2d at 1468 (noting that in-house counsel are equally officers of the court and subject to the same codes of professional conduct as outside counsel).

Because the Court finds that permitting Ms. Li and Ms. Klein to view confidential material would not pose an undue risk of inadvertent disclosure, it will grant the proposed modification

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

of the protective order to allow them access to confidential material.

### 2. Alice Tharenos (Peabody) and Kenneth Cochran (Arch)

By contrast, the Court finds that providing Ms. Tharenos and Mr. Cochran access to confidential material would present a substantial risk of inadvertent disclosure, outweighing any disadvantage to Defendants of denying them access to confidential materials.

The second pair of prospective designees are at the opposite end of the spectrum from the first. Unlike Ms. Li and Ms. Klein, Ms. Tharenos and Mr. Cochran *are* businesspeople and are *not* lawyers. Doc. [90-3] ¶¶ 4, 13; Doc. [89-3] ¶¶ 3, 4, 9. Asked directly by the Court, Defendants were unable to cite a single instance in which a court has granted non-lawyers the kind of access to competitor and customer data that they are asking this Court to grant to Ms. Tharenos and Mr. Cochran. Transcript of Tel. Conf. at 21:14-20 (Mar. 24, 2020) (Doc. [96]).

The nearest example Defendants could provide was *F.T.C. v. Sysco*, in which, counsel claimed, the court required that the FTC provide redacted affidavits for review by businesspeople. *Id.* at 21:21-22:10 (referring to *F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1 (D.D.C. 2015)). This Court has been unable to find any order requiring the provision of affidavits stripped of confidential information to businesspeople in *Sysco*, but it did find an order requiring the FTC to provide the names of declarants to Sysco employees. Order, *FTC v. Sysco*, No. 1:15-cv-00256 (APM) (D.D.C. Mar. 18, 2015). Unfortunately, whether to provide Defendants' corporate employees with the names of declarants (or redacted affidavits, for that matter) is not the question before this Court. Instead, Defendants have asked this Court to grant Ms. Tharenos and Mr. Cochran access to *all* information designated as "confidential material" under the protective order. Doc. [64] at 1-2. *Sysco* provides no support for granting Mr. Cochran and Ms. Tharenos that level of access. In fact, the district court in *Sysco* denied such access to an attorney whose activities brought him merely "within the orbit" of competitive decisionmaking activities. *Sysco*, 83 F.Supp.3d at 4. *Sysco* certainly does not support granting full access to employees who actually *are* businesspeople.

The Court also does not find in the record any reason to conclude that the need for Ms. Tharenos and Mr. Cochran

to view confidential material outweighs the risk of harm to third parties of their competitively sensitive information being reviewed by businesspeople who work for Defendants. Both individuals claim that they will be better able to help with the litigation with such access. Doc. [90-3] ¶¶ 11-12; Doc. [89-3] ¶¶ 7-8. But like the attorney excluded in *Sysco*, Ms. Tharenos and Mr. Cochran are

> not in any way prevented from imparting [their] personal knowledge of the [coal] industry, [their] employers'] business operations or the proposed merger to assist outside counsel. Though this restriction may somewhat diminish [their] ability to advise [their employers,] the court must strike a balance between [Defendants'] ability to prepare and present [their] defense and the interest of third parties in avoiding the inadvertent use or disclosure of their confidential information.

**\*6** *Sysco*, 83 F.Supp.3d at 4. In this case, that balance weighs against granting access to businesspeople.

This is not to discount Ms. Tharenos and Mr. Cochran's promises not to disclose any confidential material, of course. *see* Doc. [89-3] ¶ 11; Doc. [90-3] ¶ 15. The probability of willful disclosure is not what this Court is bound to assess; rather, it's the risk of *inadvertent* disclosure. *see U.S. Steel*, 730 F.2d at 1468. That risk is plainly substantially higher for an employee whose experience and expertise are in "directing and overseeing [a coal] company's mining operations, procurement, safety initiatives, and development projects," Doc. [89-3] ¶ 3, even if his contact with competitive decision-makers is "on a social basis" *id.* ¶ 5, than it is for an in-house litigation attorney who has no business expertise or operational experience in the coal industry. And the risk of inadvertent disclosure is even higher for an employee whose *current* responsibilities include "integrational planning and transition services relating to acquisitions and joint ventures," Doc. [90-3] ¶ 3, and who attends "Business Performance Reviews," "Marketing Matters meetings," and "Global Development Steering Committee meetings," *id.* ¶ 6.

**Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....**

2020-1 Trade Cases P 81,155

Peabody's counsel frankly acknowledged that it could not predict what role Ms. Tharenos would play at Peabody in the future. Doc. [96] at 45:14-15. Arch stressed that Mr. Cochran is "semi-retired," as if to suggest that he is unlikely to exercise any responsibility for competitive decisionmaking in the future, Doc. [96] at 21:6, but no one asserted definitively that he certainly would not, nor could they have. There is nothing about being "semi-retired" that would prevent Mr. Cochran from being involved in competitive decisionmaking in the future, any more than it has prevented him from "being a member of the 'clean team' that was responsible for evaluating the expected synergies from the proposed joint venture." Doc. [89-3] ¶ 4; *see Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No. 12-CV-0904S(SR), 2013 WL 12238482, at *3 (W.D.N.Y. July 2, 2013) (finding good cause to preclude access to retired executive working as a consultant where he was involved in the activity underlying the dispute). As observed with respect to Ms. Li and Ms. Klein above, uncertainty about future career paths can be a reason to exclude even members of companies' legal teams from viewing confidential documents. *See, e.g.*, Order at 2, *United States v. Deere*, No. 16 C 08515 (N.D. Ill. Apr. 26, 2017). Although the Court did not find that a persuasive argument against Ms. Li and Ms. Klein on the facts presented, the Court does find it a compelling concern about Ms. Tharenos and Mr. Cochran.

For all of these reasons, the Court finds that the risk of inadvertent disclosure of third parties' sensitive information is too great to grant Defendants' request to include Ms. Tharenos and Mr. Cochran among those who may access confidential material under the proposed order.

### 3. Scott Jarboe (Peabody) and Robert Jones (Arch)

Although the third category of designees is a closer call, the Court finds that the risk of inadvertent disclosure by Mr. Jarboe and Mr. Jones is too great to allow them access to confidential materials under the protective order.

**\*7** Mr. Jarboe is the Chief Legal Officer of Peabody and Mr. Jones, the General Counsel of Arch. Both provide comprehensive legal counsel to their respective employers and Boards of Directors and have ultimate supervisory authority over all litigation. Doc. [90-2] ¶¶ 3, 13; Doc. [89-2] ¶ 3. Crucially, though, they also both claim significant industry expertise and non-legal responsibility within their companies, and both acknowledge that they regularly participate in meetings of corporate leadership at which competitive decisions are at least discussed, if not "made." Mr. Jones,

for example, has been with Arch for nearly 30 years, claims to be "knowledgeable about Arch's operations and the energy industry overall," and admits to "see[ing] various reports and attend[ing] Executive Meetings, including Board Meetings where the status of our sales commitments and production forecasts are discussed...." Doc. [89-2] ¶¶ 4, 6. Similarly, Mr. Jarboe, who has been with Arch for more than 10 years, "stay[s] informed regarding the current status of generation sources, plant closures, and announcements from utilities about power plant closures, as well as supply and demand forecasts," and he attends "weekly Executive Leadership Team meetings, the periodic Board of Directors meetings, the monthly Business Performance Reviews, the monthly Marketing Matters meetings, and the weekly Global Development Steering Committee meetings." Doc. [90-2] ¶¶ 4, 6.

Notwithstanding the above, both Mr. Jarboe and Mr. Jones deny involvement in competitive decisionmaking on behalf of their employers. Doc. [90-2] ¶¶ 5, 7; Doc. [89-2] ¶ 5. The Court has no reason to doubt either their truthfulness or their commitment to using confidential material only in the defense of this litigation. Doc. [89-2] ¶ 15; Doc. [90-2] ¶ 20. Nevertheless, given their substantial roles in the strategic leadership of their respective companies, the Court concludes that granting them access to the competitively sensitive data of competitors and customers would create an unacceptably high risk of inadvertent disclosure. *see Sysco*, 83 F.Supp.3d at 4 ("Mr. Libby's membership on the Executive Team brings him well within the orbit of Sysco's competitive decision-making activities.") (internal citation omitted); *see also PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. CV 16-403-LPS-CJB, 2017 WL 4138961, at *9 (D. Del. Sept. 18, 2017) (denying access to General Counsel after weighing risk of inadvertent disclosure against harm to movant from restriction); *Cytosport, Inc. v. Vital Pharm., Inc.*, No. CIV S-08-2632 FCDGGH, 2010 WL 728454, at *3 (E.D. Cal. Mar. 2, 2010) ("If the CEO is not a lawyer, query who will advise him on such issues. Questions such as the extent that in-house counsel will be advising the employer on such legal issues as input on contract formation, marketing, and employment are important [in this inquiry].").

Undoubtedly, Mr. Jones and Mr. Jarboe will be considerable assets to Defendants' litigation teams, even without access to confidential materials. Like Ms. Tharenos and Mr. Cochran, Mr. Jones and Mr. Jarboe will not be sidelined by this decision. They will still be "able to assist outside counsel and

7

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 8 of 133

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

advise [Defendants] on litigation strategy. [They] will have access to redacted final and draft pleadings, expert reports, affidavits, and deposition transcripts, and to discovery not designated as Confidential Material." 📙 *Sysco Corp.*, 83 F. Supp. 3d at 4. And like Tharenos and Cochran, they will still be free to impart their expertise—in their cases, both industry-related and legal—to outside counsel. *See id.* Also like their business-side colleagues, they may be marginally less effective in providing that advice due to their lack of access to confidential material. Still, the Court does not believe that the marginal advantage to Defendants of granting a second member of each in-house legal staff access to confidential material outweighs the very real risk to Intervenors from their competitively sensitive data being provided to members of Defendants' executive leadership. *Id.* (denying access to a second member of in-house counsel with close connections to executive board where court had granted access to one in-house counsel already).

### 4. Additional safeguards for confidential information

The Court expects all parties to comply strictly with every term of the protective order and believes that they will. Still, in deference to Intervenors' legitimate concerns for the security of their confidential materials, the Court will make the following two modifications to the proposed modified protective order already submitted by the parties (Doc. [52-1]):

**\*8** (1) As requested by NTEC in its motion to intervene (Doc. [62] ¶ 27), Ms. Li and Ms. Klein will be required to attest in writing that they will fully comply with the protective order. The requirement should be added to the protective order itself, and attestations completed by Ms. Li and Ms. Klein should be appended to the final protective order submitted by the parties pursuant to this Order.

(2) The final protective order will contain the following penalty provision, as an added incentive against misuse of confidential material:

Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority, and the

Court will urge that authority to suspend or disbar the violator.

### 5. No "Outside Counsel Only" designation

Intervenors and, in its supplemental briefing, the FTC have requested that, if this Court grants any of Defendants' employees access to confidential material under the protective order, it further modify the protective order to permit third parties to designate especially sensitive materials as viewable by "Outside Counsel Only." Doc. [62] ¶ 28; Doc. [68] ¶¶ 15-16; Doc. [73] at 1; Doc. [97] at 4-5. Defendants object that creating such a classification would essentially effect no change to the current, unmodified protective order, because third parties will simply shift to classifying all of their information as "Outside Counsel Only," leaving Defendants in precisely the same predicament they are in now. Doc. [96] at 30:7-15.

The Court cannot tell at this point if Defendants' prediction is cynical or sound, but it harbors its own significant concerns about the administrability of a two-tiered protective order, especially given the expedited timeline on which this case is proceeding. Those concerns, together with the Court's confidence in the ability of Ms. Li and Ms. Klein to avoid inadvertent disclosure of confidential material, persuade the Court to deny the requests for an "Outside Counsel Only" designation. *See generally United States v. Aetna Inc.*, No. 1:16-CV-01494 (JDB), 2016 WL 8738420, at \*10 (D.D.C. Sept. 5, 2016) (rejecting two-tier protective order where it would have required re-designation of large swathes of confidential materials in a case litigated on a highly expedited schedule).

### Conclusion

For the reasons outlined above, Defendants' Motion (Doc. [52]) is **GRANTED**, and their proposed modified protective order (Doc. [52-1]) will be entered, subject to the modifications described above. Intervenors' motions (Docs. [62], [68], [73]) are **GRANTED** in part and **DENIED** in part as outlined above.

**IT IS HEREBY ORDERED THAT**, no later than 5 PM CT on the date following the entry of this Order, the parties should submit a final protective order incorporating the above modifications for immediate entry by this Court.

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 9 of 133

2020-1 Trade Cases P 81,155

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1557168, 2020-1 Trade
Cases P 81,155

## Footnotes

1    ALLETE, Inc., Evergy, Inc., Indiana Michigan Power Company, Public Service Company of Oklahoma,
     Southwestern Electric Power Company, and WEC Energy Group, Inc., also moved to intervene, *see* Doc.
     [82], and they participated in the telephonic hearing and supplemental briefing in support of Intervenors'
     motions opposing the modifications, *see* Docs. [88], [98].

2    In addition to opposing Defendants' proposed modifications to the protective order, Intervenors' motions
     also seek additional relief, including their own proposed modifications of the protective order. *See, e.g.*,
     Doc. [62] ¶ 28; Doc. [68] ¶¶ 15-16; Doc. [73] at 1 (seeking "outside counsel only" designations). NTEC's
     also seeks apparent remedies for alleged non-compliance by the parties with existing provisions. *See, e.g.*,
     Doc. [62] ¶¶ 12-14, 26 (alleging that Defendants have not provided a copy of the protective order to every
     entity that has received a subpoena and requesting the Court therefore add a requirement to the protective
     order that NTEC itself be notified of all subpoenas). This Order addresses only the parties and Intervenors'
     proposed modifications to the protective order. Concerns about non- compliance with existing provisions of
     the protective order should be raised separately as they arise—first with the parties themselves, and then,
     if efforts to meet and confer fail, with the Court.

3    Later, the FTC asked the Court to impose greater limitations on Ms. Li and Ms. Klein's access to confidential
     material than the FTC had agreed to in consenting to Defendants' Motion. Doc. [97] at 4-5.

4    Counsel for the FTC originally advised this Court that they had to seek approval from the administrative
     law judge who will preside over the anticipated Part 3 administrative hearing before it could consent to any
     modification to the protective order. The Court understands the FTC's lack of opposition to Defendants' Motion
     to signify that counsel obtained that approval for the modifications proposed therein.

5    The Federal Circuit has defined "competitive decisionmaking" as "shorthand for a counsel's activities,
     association, and relationship with a client that are such as to involve counsel's advice and participation in
     any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding
     information about a competitor." 🚩 *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir.
     1984).

6    Ms. Klein reports that she has "approximately five times" attended an Executive Leadership Team meeting
     to deliver a 10-15-minute presentation. Doc. [90-1] ¶¶ 8, 9. The Court does not regard that as comparable to,
     for example, Mr. Jarboe's attendance of "weekly Executive Leadership Team meetings, the periodic Board of
     Directors meetings, the monthly Business Performance Reviews, the monthly Marketing Matters meetings,
     and the weekly Global Development Steering Committee meetings." Doc. [90-2] ¶ 6.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

TAPESTRY, INC.,

      and

CAPRI HOLDINGS LIMITED,

        Defendants.

Case No. 1:24-cv-03109-JLR

**[PROPOSED] STIPULATED PROTECTIVE ORDER**

Plaintiff Federal Trade Commission ("FTC" or "Commission") and Defendants Tapestry, Inc. and Capri Holdings Limited, by and through their respective counsel, have stipulated, pursuant to Federal Rule of Civil Procedure 26(c), to the terms of this Stipulated Protective Order. Discovery in this action may yield documents and information of a sensitive and confidential nature, including business, commercial, financial, and trade secret information of Defendants or third parties. The Court finds that good cause exists for entry of a protective order in this action (the "Litigation") to prevent unauthorized disclosure and use of such sensitive and confidential material during and after the course of the Litigation.

**IT IS HEREBY ORDERED THAT** this Stipulated Protective Order shall govern the handling of all Confidential Material, as hereafter defined.

1.     As used in this Order:

    a.     "Confidential Material" means any trade secret or other confidential research, development, or commercial information, as such terms are used in Fed. R. Civ.

P. 26(c)(1)(G), or any Document, transcript, or other material containing such information that has not been published or otherwise made publicly available, including Sensitive Personal Information.

b. "Sensitive Personal Information" shall refer to, but shall not be limited to, an individual's Social Security number, taxpayer identification number, financial account number, credit card or debit card number, driver's license number, state-issued identification number, passport number, date of birth (other than year), and any sensitive health information identifiable by individual, such as an individual's medical records.

c. "Document" means any document or electronically stored information, as the term is used in Fed. R. Civ. P. 34(a).

d. "Parties" shall refer to the Defendants and the Plaintiff.

e. "Protected Person" shall refer to any party or nonparty that produces information designated as Confidential Material.

f. "FTC Administrative Action" means *In the Matter of Tapestry, Inc. and Capri Holdings Limited.*, before the United States of America Federal Trade Commission Office of Administrative Law Judges, Docket No. 9429, and any related investigation by the Federal Trade Commission.

2. Any Document or portion thereof submitted by a Defendant or a nonparty during an FTC investigation, the FTC Administrative Action, or during the course of this proceeding that is entitled to confidentiality under the Federal Trade Commission Act, or any federal or state statute or regulation, or under any federal court or Commission precedent interpreting such statute or regulation, as well as any information taken from any portion of such Document, or

2

information that discloses the substance of the contents of any Confidential Materials derived from a Document subject to this Protective Order, shall be treated as Confidential Material for purposes of this Protective Order.

3.      The Parties and any nonparties, in complying with informal discovery requests, disclosure requirements, discovery demands, or subpoenas in this proceeding, may designate any responsive Document or portion thereof as Confidential Material, including Documents obtained by them from nonparties pursuant to discovery or as otherwise obtained.

4.      The Parties, in conducting discovery from nonparties, shall provide to each nonparty a copy of this Stipulated Protective Order so as to inform each such nonparty of their rights herein.

5.      A designation of confidentiality shall constitute a representation in good faith and after careful determination that the material is not reasonably believed to be already in the public domain that counsel believes the material so designated constitutes Confidential Material as defined in Paragraph 1 of this Order.

6.      Material may be designated as Confidential Material by placing on or affixing to the Document containing such material (in such manner as will not interfere with the legibility thereof), or if an entire folder or box of Documents is confidential by placing on or affixing to that folder or box, the designation "CONFIDENTIAL," "CONFIDENTIAL – FTC v. TAPESTRY/CAPRI", "CONFIDENTIAL–FTC v. TAPESTRY, et al., Case No. 1:24-cv-03109", or any other appropriate notice, together with an indication of the portion or portions of the Document considered to be Confidential Material. Confidential Material contained in electronic Documents may also be designated as confidential by placing the designation "CONFIDENTIAL," "CONFIDENTIAL – FTC v. TAPESTRY/CAPRI", "CONFIDENTIAL–

3

FTC v. TAPESTRY, et al., Case No. 1:24-cv-03109", or any other appropriate notice, in the Document metadata, image file, or through another mechanism that clearly identifies the Document as confidential. Masked or otherwise redacted copies of Documents may be produced where the portions masked or redacted contain privileged matter, provided that the copy produced shall indicate at the appropriate point that portions have been masked or redacted and the reasons therefor. The Party or nonparty desiring to designate any or all portions of oral testimony as Confidential Material shall do so by stating orally on the record on the day that the oral testimony is being given or by notifying the Parties in writing of the intention to designate any or all portions of oral testimony as Confidential Material after the oral testimony is given.

7.      Confidential Material shall be disclosed only to: (a) the Court presiding over this proceeding and personnel assisting the Court, including its support staff; (b) the Administrative Law Judge presiding over the FTC Administrative Action, and staff and personnel assisting the Administrative Law Judge; (c) Plaintiff and their employees; (d) judges and other court personnel of any court having jurisdiction over any appellate proceedings involving this matter or the FTC Administrative Action; (e) outside counsel of record for any Defendant, their associated attorneys and other employees of their law firm(s), provided they are not employees of a Defendant; (f) anyone retained to assist outside counsel of record for any Defendant in the preparation or hearing of this proceeding or the FTC Administrative Action including experts, consultants, contract attorneys, litigation support services, and their staff, provided they are not employees of a Defendant and have signed Exhibit A; (g) anyone retained to assist the FTC  in the preparation or hearing of this proceeding or the FTC Administrative Action including experts, consultants, contract attorneys, litigation support services, and their staff, provided they have signed Exhibit A, (h) any witness or deponent who may have authored or received the

information in question or who had access to the material in the ordinary course of their

employment; and (i) any interpreter, court reporter, shorthand reporter, typist or videographer

translating, recording, or transcribing Documents or testimony in connection with this Litigation

or the FTC Administrative Action. Nothing in this Protective Order precludes a Party from using

or disseminating its own Confidential Material, including for purposes other than litigating this

Litigation, or from showing Confidential Material that it has produced to its own employee-

witness or to anyone it deems proper.

8.      Disclosure of Confidential Material to any person described in Paragraph 7 of this

Protective Order shall be only for the purposes of the preparation and hearing of this proceeding

and the FTC Administrative Action, or any appeal of either proceeding, and any legitimate law

enforcement purpose, and for no other purpose whatsoever; provided, however, that Plaintiff

may, subject to taking appropriate steps to preserve the confidentiality of such material, use or

disclose Confidential Material as provided by the FTC's Rules of Practice; sections 6(f) and 21

of the Federal Trade Commission Act; or any other legal obligation imposed upon the

Commission.

9.      In the event that any Confidential Material is contained in any pleading, motion,

exhibit, or other paper filed or to be filed with the Court, the Court shall be so informed by the

Party filing such papers, and such papers shall be filed under seal. Confidential Material

contained in the papers shall remain under seal until further order of the Court; provided,

however, that such papers may be furnished to persons or entities who may receive Confidential

Material pursuant to Paragraph 7 or 9. Upon or after filing any paper containing Confidential

Material, the filing Party shall file on the public record a copy of the paper containing redactions,

such that the public version does not reveal Confidential Material within two business days of the sealed filing.

10.      Party Exhibits.  If a Party includes exhibits on its exhibit list that contain or discuss information that has been designated as Confidential Material by a Party, at the time designated in Exhibit A to the Case Management Order, the Party must also provide redacted versions of those exhibits.  At the time designated in Exhibit A to the Case Management Order, each Party must also (a) provide redacted versions of any exhibits on the opposing Party's exhibit list that contain information that the Party previously designated as Confidential Material and (b) exchange objections to the redacted evidentiary hearing exhibits that were provided with the exhibit lists. The Parties must exchange objections to those redactions in accordance with the Case Management Order.  The Parties' joint proposal regarding this Confidential Material and any disputes will be raised to the Court in the Parties' joint submission in accordance with the Case Management Order.

11.      Nonparty Confidential Material at Evidentiary Hearing. If counsel plans to introduce into evidence at the hearing any Document or transcript containing Confidential Material produced by a nonparty, they shall provide advance notice to the nonparty for purposes of allowing that Protected Person to seek an order that the Document or transcript be granted protection from public disclosure. If that Protected Person wishes to obtain protection from public disclosure for the Document or transcript, the Protected Person shall file an appropriate motion with the Court within seven (7) days after it receives such notice. Except where such order is granted, Documents and transcripts shall be part of the public record. Where such protection is granted, a duplicate copy of such Document or transcript with the Confidential Material deleted therefrom may be placed on the public record.

12.     If any Party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of Confidential Material submitted by another Party or nonparty, the recipient of the discovery request shall promptly notify the Protected Person of receipt of such request. Unless a shorter time is mandated by an order of a court, such notification shall be in writing and served to the Protected Person at least fifteen (15) business days before production, and shall include a copy of this Protective Order. Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material, to subject itself to any penalties for non-compliance with any such order, or to seek any relief from the Court. The recipient shall not oppose the Protected Person's efforts to challenge the disclosure of Confidential Material. In addition, nothing herein shall limit the applicability of Rule 4.11(e) of the Commission's Rules of Practice, 16 C.F.R. § 4.11(e), to discovery requests in another proceeding that are directed to the Commission.

13.     At the time that any expert, consultant, or other person retained to assist counsel in the preparation of this Litigation concludes participation in the Litigation, such person shall return to counsel or destroy all copies of Documents or portions thereof designated confidential that are in the possession of such person, together with all notes, memoranda or other papers containing confidential material. At the conclusion of this proceeding and the FTC Administrative Action, including the exhaustion of judicial review, the Parties shall return or destroy Documents obtained in this Litigation except as follows: (a) the Commission's obligation to return or destroy Documents shall be governed by the provisions of Rule 4.12 of the Rules of Practice, 16 C.F.R. § 4.12; and (b) Counsel for the Parties will be entitled to retain court papers, deposition, hearing, and evidentiary hearing transcripts, evidentiary hearing exhibits, and work

product, as may be required by the Rules of Professional Conduct provided that the Parties and their counsel do not disclose the portions of those materials containing information designated as Confidential Material except pursuant to Court order or an agreement with the party that produced the Confidential Material or as otherwise permitted by this Order.

14.     The provisions of this Protective Order, insofar as they restrict the communication and use of Confidential Material, shall, without written permission of the submitter or further order of the Court, continue to be binding after the conclusion of this proceeding.


STIPULATED AND AGREED:

S/ *Abby L. Dennis*                                      May 1, 2024
Counsel for Federal Trade Commission        Date


S/ *Alfred C. Pfeiffer*                                 May 1, 2024
Counsel for Tapestry, Inc.                            Date


S/ *Elaine P. Golin*                                    May 1, 2024
Counsel for Capri Holdings Limited            Date


SO ORDERED:

Dated: May   1  , 2024

                                                                  *Jennifer Rochon*
                                                        UNITED STATES DISTRICT JUDGE
                                                           The Honorable Jennifer L. Rochon

**EXHIBIT A ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Southern District of New York on [date] in the case of *Federal Trade Commission v. Tapestry, Inc., et al.*, Case No. 1:24-cv-03109. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

Printed name: _____

Signature: _____

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>and<br><br>STATE OF NEW YORK<br><br>                   Plaintiffs,<br><br>   v.<br><br>VYERA PHARMACEUTICALS, LLC,<br><br>PHOENIXUS AG,<br><br>MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>     and<br><br>KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC,<br><br>                Defendants. | Case No. 1:20-cv-00706-DLC |

**[PROPOSED] STIPULATED PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), the Parties to the above-captioned case (the "Litigation"), through their respective counsel, agree that the terms and conditions of this Protective Order (the "Order") shall govern the production and handling of all documents, items, or other information exchanged by the Parties and/or non-parties in the Litigation including, without limitation, responses to requests for production, interrogatories, requests for admissions, pleadings, exhibits, and deposition or other testimony, regardless of the medium or manner in

which any such materials are generated, stored, or maintained. This includes any material

produced, filed, or served by any Party or non-party during discovery in this Litigation, or any

information included in any such material. The Court finds that good cause exists for entry of a

protective order in this Litigation to prevent unauthorized disclosure and use of trade secrets and

other confidential information during and after the course of the Litigation.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      **Persons/Entities Covered.**    This Order is binding upon all current and future

Parties to this Litigation, including their respective corporate parents, subsidiaries, affiliates,

successors, or assigns and their respective counsel, agents, representatives, officers, and

employees and any others set forth in this Order. This Order shall also apply to any materials

produced in discovery in this Litigation by non-parties. This Order does not limit any Party's or

non-party's rights with respect to its own materials that it produces in discovery in this

Litigation. When conducting discovery from non-parties, the Parties to this Litigation shall

provide notice of the terms of this Order to such non-parties. Nothing in this Order supersedes

the Court's prior Orders addressing the treatment of the outside counsel eyes only material in the

Complaint.

2.      **Designation of Materials.**    Any Party or non-party responding to discovery

requests or providing materials in connection with this Litigation ("Producing Entity"), or any

Party that has an articulable confidentiality interest in the produced material choosing to

designate materials produced by any Party or non-party ("Designating Party"), may designate all,

or any part, of a document, discovery response, deposition, or other material as Confidential

Material or Highly Confidential Material (defined below) based on a good-faith belief that such

materials qualify for that designation under the terms of this Order:

a) "Confidential Material" shall mean (i) any information, testimony, or tangible thing produced during discovery that reveals a trade secret, confidential research, analysis, development, or commercial or business information that is commercially sensitive, and has not been released into the public domain (unless through unauthorized disclosure); (ii) personal identifying information, information that has the potential to subject any person to embarrassment, humiliation or ridicule, or personal information that is protected from disclosure by statute, regulation, or is otherwise entitled to protection from public disclosure; (iii) any other information for which a good faith claim of need of protection can be made under the Federal Rules of Civil Procedure and/or applicable law; or (iv) information required by agreement to be kept confidential.

b) "Highly Confidential Material" shall mean any Confidential Material that, if disclosed, is likely to cause significant competitive or commercial harm. By way of example only, Highly Confidential Material may include: trade secrets; sensitive and non-public research or analysis; competitively sensitive customer information; financial, marketing, or strategic business planning information; current or future pricing information; information relating to research, development, testing of, or plans for existing or proposed future products; information relating to the processes, apparatus, or analytical techniques used by a Party or non-party in its present or proposed commercial production of such products; information relating to pending New Drug Applications or Abbreviated New Drug Applications that have not been made available to the public; information relating to pending or abandoned patent applications that have not been made available to the public; personnel files; and communications that disclose any Highly Confidential Material. Material that is more than three (3) years old at the time of production is presumptively not entitled to protection as Highly Confidential Material; provided,

that such material may be considered Highly Confidential Material if it discloses or relates to current business practices.

      c)      Confidential and Highly Confidential Material, respectively, shall include: (i) all copies, extracts, and complete or partial summaries prepared from such Confidential or Highly Confidential Material; (ii) portions of deposition transcripts and exhibits thereto that contain or summarize the content of any such Confidential or Highly Confidential Material; (iii) portions of briefs, memoranda, or any other writings filed with the Court and exhibits thereto that contain or summarize the content of any such Confidential or Highly Confidential Material; (iv) written discovery responses and answers that contain or summarize the content of any such Confidential or Highly Confidential Material; and (v) deposition testimony designated in accordance with Paragraph 2(f) below. Nothing in this Order shall preclude or limit a Party's or their counsel's ability to summarize or characterize the nature of the Confidential or Highly Confidential Material disclosed in discovery to persons involved in the supervision of this Litigation who are not otherwise authorized to receive Confidential or Highly Confidential Material, provided that the specific contents of Confidential or Highly Confidential Material are not disclosed through such summaries or characterizations.

      d)      Information designated as Confidential Material or Highly Confidential Material shall be considered "trade secrets and commercial or financial information" under 5 U.S.C. § 552(b)(4) for the purpose of the Freedom of Information Act.

      e)      Any document produced by a Producing Entity or designated by a Designating Party in this Litigation may be designated as Confidential Material by marking it "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the face of the document at the time of production. Any document produced by a Producing Entity or designated by a

Designating Party in this Litigation may be designated as Highly Confidential Material by marking it "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the face of the document at the time of production. A Producing Entity or Designating Party may also designate electronic documents and other non-paper media as Confidential Material or Highly Confidential Material, as appropriate, by: (i) noting such designation in an accompanying cover letter; (ii) affixing the confidentiality designation to the material or its container, including the appropriate confidentiality designation in the load file provided with the electronic production; (iii) including the appropriate confidentiality designation in the name of the file(s) provided with the electronic production; or (iv) using any other means that reasonably notifies the receiving party of the designation.

    f)  Testimony provided in this Litigation may be designated as Confidential Material or as Highly Confidential Material if the testimony would reveal the Designating Party's or non-party's Confidential Material or Highly Confidential Material. The Party or non-party desiring to designate any portion of testimony as Confidential Material or Highly Confidential Material shall do so by so stating orally on the record on the day that the testimony is being given. Following any such oral designation, the confidential portions of the deposition shall be taken only in the presence of persons entitled to access to such information under this Order, provided that in-house counsel authorized to receive Confidential Material pursuant to Paragraph 3(c) below shall only be excluded from the portion of the deposition that contains questions and answers that reveal the content of information designated as Highly Confidential. A Producing Entity or Designating Party may designate any or all portions of the transcript and/or video of any deposition (or of any other testimony) as containing Confidential Material or Highly Confidential Material in accordance with this Order by notifying all other Parties in

writing within seven (7) business days of the Producing Entity's or Designating Party's receipt of the final transcript that the transcript contains Confidential Material or Highly Confidential Material and designating the specific pages and/or lines as containing Confidential Material or Highly Confidential Material. All transcripts and/or videos of testimony in this Litigation shall be treated as Highly Confidential Material and subject to this Order until seven (7) business days after a final transcript of the deposition (or other testimony) is received by the Producing Entity. Any portion of any deposition testimony that is not designated as Confidential Material or Highly Confidential Material in accordance with this Paragraph within seven (7) business days after a final transcript and/or video of the deposition (or other testimony) is received by the Producing Entity shall not be entitled to the protections afforded Confidential or Highly Confidential Material under this Order, except upon a showing of good cause.

g)      Any document produced (or material containing or summarizing information from a document produced), as well as all transcripts of any investigational hearings, during the pre-Complaint investigations by the Plaintiffs (the "Investigatory Material") shall be treated in the first instance as Highly Confidential Material under this Order for 45 (forty-five) calendar days from the date of this Order. At any time during this 45-day period, the party that provided the Investigatory Material (the "Protected Party") may designate as Confidential or Highly Confidential Material any Investigatory Material or portions thereof (identified by Bates number, transcript pages and lines, or other means of easy identification) that constitute Confidential or Highly Confidential Material, respectively. To be effective, such designations must be provided in writing to counsel for Plaintiffs and Defendants. The confidentiality of Investigatory Material may later be challenged under the provisions of section 7 below. This Order does not require any Protected Party to stamp or otherwise mark Investigatory Material as

Highly Confidential Material or Confidential Material provided that the required designations for Confidential or Highly Confidential Material are made in writing as stated above during the 45-day period. Nothing in this Order shall constitute any waiver of any applicable privileges or protections from discovery that may apply to Investigatory Materials pursuant to the FTC's Rules of Practice, the Antitrust Civil Process Act, 15 U.S.C. § 1313(c)(3), New York's Donnelly Act, N.Y. Gen. Bus. Law § 340 *et seq.*, or other legal obligation imposed upon the Plaintiffs, and Defendants reserve all rights concerning any assertions of such privileges or protections. If a Protected Party has requested that its identity not be revealed, Plaintiffs may designate its identity as Highly Confidential Material pursuant to this Order unless the Court orders otherwise; provided, however, that the Plaintiffs shall (i) provide outside counsel for the Parties to this Litigation, at the time the documents are produced, with a list of those Protected Parties who have requested confidential treatment for their identities and whose Investigatory Materials are disclosed in this Litigation; and (ii) identify on that list the specific documents produced by each such Protected Party. Defendants reserve all rights to challenge any such Highly Confidential designation.

h)       Notwithstanding any of the foregoing, information shall be deemed non-confidential material under this Order if it is in the public domain, is already known to a party through proper means and on a non-confidential basis, or is or becomes available to a party from a source rightfully in possession of such information on a non-confidential basis.

3.      **Individuals to Whom Confidential Material May Be Disclosed**.

Unless otherwise ordered by the Court or permitted in writing by the Producing Entity or the Designating Party, Confidential Material may only be disclosed to:

a)       Defendants Martin Shkreli and Kevin Mulleady;

7

b)       The Court and court personnel, including assistants, clerks, law clerks, and other support staff (this category hereinafter referred to as the "Court");

c)       Attorneys for a Party who are working on this Litigation and their employed or retained secretaries, paralegals, legal assistants, and support services (including, without limitation, copy services, jury consultants, interpreters, translators, document management services, graphics services, and similar professional services) (this category hereinafter referred to as "Attorneys"). Attorneys shall include in-house counsel actively involved in the prosecution or defense of this Litigation, provided that they have executed the agreement annexed hereto as Exhibit A;

d)       Enforcement Personnel, including Federal Trade Commission ("FTC") Commissioners, the New York Attorney General and other state attorneys general that join as plaintiff and sign on to this agreement, as well as FTC and plaintiff state attorney general office attorneys, employees, and law clerks who are working on, supervising, or being briefed about this Litigation (this category hereinafter referred to as "Enforcement Personnel");

e)       Court reporters, court videographers, and similar transcription services and their support staff providing services in court or at depositions for the purpose of assisting the Court in this Litigation (this category hereinafter referred to as "Court Reporters");

f)       Any expert or consultant (including all non-party personnel and support staff assisting such expert or consultant, but not the entity itself by which such expert or consultant and assisting personnel are employed) who is retained by or for the benefit of, or otherwise consulting with, any of the Parties in this Litigation to assist counsel in this Litigation (this category hereinafter referred to as "Experts"), provided that the Expert(s) has executed the agreement annexed hereto as Exhibit A;

g) Any mediators engaged by the Parties or appointed by the Court, and their support staff (this category hereinafter referred to as "Mediators"), provided that the Mediator(s) has executed the agreement annexed hereto as Exhibit A;

h) Any person whom Attorneys for a Party have a good faith basis to believe authored or previously received the material;

i) The Producing Entity's current directors or officers;

j) The Producing Entity's current employees;

k) Any person who has been designated as a Rule 30(b)(6) witness by the Producing Entity;

l) Any witness that has or had possession of the material or access in the ordinary course of business to the material (including if a Receiving Entity wishes to show a witness material that partially meets this criteria (e.g., an email between two entities that is later forwarded internally within one entity, and that intra-entity discussion contains Highly Confidential Material), then the Receiving Entity may redact the entirety of the material that the Receiving Entity has reason to believe that the witness did not see previously);

m) During the conduct of hearings or depositions, or in preparation specifically for a scheduled hearing or deposition, witnesses in the Litigation to whom disclosure is reasonably necessary and who have executed the agreement annexed hereto as Exhibit A (this category hereinafter referred to as "Witnesses");

n) Any person other than those listed in this section for whom a Party requests permission to disclose Confidential Material by providing counsel for the Producing Entity or Designating Party with advance written notice, via electronic mail or hand delivery, at least seven (7) business days before any such disclosure. Any request shall state the specific

9

material to be disclosed and the identity of each person to whom the material will be disclosed. The Producing Entity or Designating Party shall respond in writing within seven (7) business days of its receipt of such written request. A failure to respond within such time shall constitute consent to the request. If the Producing Entity or Designating Party objects to the disclosure, the party seeking disclosure shall not make the disclosure. The Party seeking disclosure may move the Court for an order allowing such disclosure;

        o)     Any entity with which a Party has a contract of insurance, including attorneys who serve as counsel to the insurance provider (this category hereinafter referred to as "Insurers"), provided that the Attorneys for the Party have a good faith reason to believe that the Insurer(s) has a need to review such material for purposes of effectuating the contract of insurance, and provided that the Insurer(s) (and the Insurer's counsel, if applicable) has executed the agreement annexed hereto as Exhibit A; and

        p)     Any other person to whom the Producing Entity or Designating Party consents in writing or by order of the Court.

**4.**     **<u>Individuals to Whom Highly Confidential Material May Be Disclosed.</u>**

Unless otherwise ordered by the Court or permitted in writing by the Producing Entity, Highly Confidential Material may only be disclosed to the following, as defined in Paragraph 3 above:

        a)     The Court;

        b)     Attorneys for the Parties to this Litigation other than in-house counsel;

        c)     Enforcement Personnel;

       d)     Individual defendants Kevin Mulleady and Martin Shkreli, but only with respect to material designated as Highly Confidential by Phoenixus AG and Vyera Pharmaceuticals, LLC;

       e)     Court Reporters;

       f)     Experts, provided that they have executed the agreement annexed hereto as Exhibit A;

       g)     Mediators, provided that they have executed the agreement annexed hereto as Exhibit A;

       h)     Insurers, provided that they have executed the agreement annexed hereto as Exhibit A;

       i)     Any person who has been designated as a Rule 30(b)(6) witness by the Producing Entity;

       j)     Witnesses in this Litigation; provided, however, that such disclosure shall only be made to a Witness:

            (i)     who is a current employee of the Producing Entity and who has or had an authorized right of access to the material in the ordinary course of that employment;

            (ii)     who is a former employee of the Producing Entity and who had an authorized right of access to the material in the ordinary course of that employment at the time the Highly Confidential Material was created or exchanged; or

(iii)    who is an author, addressee, or recipient of the material in question or if there are other indicia that the witness has seen the document previously during the course of his or her employment with the Producing Entity;

k)    Any Party may request permission to disclose materials designated as Highly Confidential or otherwise covered by this Order to a person other than those listed in this section by providing counsel for the Producing Entity or the Designating Party with advance written notice via electronic mail at least seven (7) business days before any disclosure. Any request shall state the specific material to be disclosed and the identity of each person to whom the material will be disclosed. Counsel for the Producing Entity or the Designating Party shall respond in writing via electronic mail within seven (7) business days of its receipt of such written request. A failure to respond within such time shall constitute consent to the request. If the Producing Entity or the Designating Party objects to the disclosure, the party seeking disclosure shall not make the disclosure. The Party seeking disclosure may move the Court for an order allowing such disclosure; and

l)    Any other person to whom the Producing Entity or the Designating Party consents in writing or by order of the Court.

**5.**    **<u>Handling of Confidential Material and Highly Confidential Material</u>**.  All material designated as Confidential or Highly Confidential shall remain in the possession of the Attorneys who receive such material through discovery in this Litigation, and they shall not release or disclose the nature, substance, or contents thereof, except that copies of such materials may be made for the use of those assisting the Attorneys to whom disclosure may be made under Paragraphs 3 and 4 above, including Experts, and copies of such materials may be submitted to the Court under seal as necessary. To the extent that Attorneys for any Party disclose

12

Confidential Material or Highly Confidential Material, as contemplated in Paragraphs 3 and 4 above, that Party shall obtain from that person a fully executed copy of the agreement annexed hereto as Exhibit A as required, and shall ensure that the person complies with the requirements contained therein, including but not limited to the destruction of Confidential Material and Highly Confidential Material upon the completion of the person's assigned duties, as required by Paragraph 5 of Exhibit A.

**6.** **Inadvertent Failure to Designate as to Confidentiality**. Except to the extent provided in Paragraph 2(f), in the event that a Producing Entity or Designating Party fails to designate confidential material as Confidential or Highly Confidential, the party in receipt of that material (the "Receiving Party") shall, upon a written request from the Producing Entity or the Designating Party, treat and preserve such information, document, paper, or other thing in accordance with the confidentiality designation that the Producing Entity or Designating Party states should have been affixed to it. Where a Producing Entity issues such written request, the Producing Entity shall re-produce the information, document, paper, or other thing with the appropriate confidentiality designation unless doing so would not be feasible (as, for example, in the case of a final deposition transcript). Each Receiving Party shall replace the incorrectly designated materials with the newly designated materials, destroy the incorrectly designated materials, and treat the materials in accord with their new designation. Where a Designating Party issues such written request, the Receiving Party shall affix a designation to the materials that is sufficient to identity them as Confidential or Highly Confidential, as appropriate, and shall treat the materials in accord with their new designation. Except as provided in Paragraph 2(f), the inadvertent failure of a Party or non-party to designate material as Confidential or Highly Confidential at the time of production shall not be deemed a waiver of the protections afforded

by this Order, either as to specific information in the material or as to any other information relating thereto or on the same or related subject matter. No Party shall be deemed to have violated this Order if, prior to notification of any later designation, such material has been disclosed or used in a manner inconsistent with the later designation. If material inadvertently not designated as confidential was filed with a court on the public record or otherwise disclosed before the time of the material's later designation, then the Producing Entity or the Designating Party shall be responsible for seeking appropriate relief, including return of the material.

      **7.**     **<u>Challenging a Confidentiality Designation.</u>**

      a)     A Receiving Party shall not be obligated to challenge the propriety of a Confidential or Highly Confidential designation at the time the designation is made. A Receiving Party may challenge a confidentiality designation at any time, and a Receiving Party's failure to have made such a challenge at any previous time, including after acceptance or receipt of material with a confidentiality designation, shall not be deemed a waiver of the Receiving Party's right to challenge any confidentiality designation.

      b)     A Receiving Party seeking to challenge a Confidential or Highly Confidential designation shall give notice in writing of such challenge to counsel for the Producing Entity or the Designating Party, specifying Bates numbers or otherwise identifying the materials at issue and setting forth the basis for the Receiving Party's challenge.

      c)     Within seven (7) days of receipt of written notice that the Receiving Party objects to the confidentiality designation, counsel for the Producing Entity or the Designating Party shall meet and confer with counsel for the Receiving Party to attempt to resolve the challenge.

d)     If the Receiving Party and Producing Entity or Designating Party are unable to resolve the challenge, then the Receiving Party may move the Court for an order removing the challenged material from the restrictions of this Order. Any papers filed in support of or in opposition to this motion shall, to the extent necessary, be filed pursuant to Paragraph 8 below of this Order. The Producing Entity or the Designating Party bears the burden of proof on the issue of the propriety of the challenged confidentiality designation.

e)     Until the parties or the Court resolves a challenge to the designation of Confidential Material or Highly Confidential Material, the asserted designation shall remain in effect.

8.     **Filing Confidential Material and Highly Confidential Material**. In accordance with Rule 7.B of Judge Cote's Individual Practices in Civil Cases, a Party shall seek leave of Court if the Party intends to file any document, including but not limited to pleadings, motions, transcripts, or other filings that disclose the substance thereof, requiring redaction of Confidential or Highly Confidential Materials. Any document containing Confidential Material or Highly Confidential Material shall be deemed timely filed when (i) a request for filing under seal is filed with the Court and (ii) an electronic version of the complete, unredacted brief or submission (including any attachments and exhibits) is served upon counsel of record for all Parties via electronic mail or other electronic transmission.

9.     **Use of Confidential Material and Highly Confidential Material**.

a)     Each Receiving Party shall only use materials produced in discovery in this Litigation, including but not limited to all materials designated Confidential and Highly Confidential, in furtherance of the prosecution, defense, or attempted settlement of this Litigation, or for legitimate law enforcement purposes, and shall not use such materials at any

15

time for any other purpose whatsoever, including, without limitation, any commercial or business purpose, and such materials shall not be disclosed to or made accessible to any person except as specifically permitted by this Order. All materials designated Confidential or Highly Confidential must be stored and maintained by the Receiving Party in a manner no less secure than a Receiving Party would store and maintain its own confidential material or that of its clients.

b)     This Order shall not restrict any attorney who is a qualified recipient under the terms of this Order from rendering advice to his or her client that is a Party with respect to these actions, and in the course thereof, from generally relying upon his or her examination of Confidential and/or Highly Confidential Material. In rendering such advice or in otherwise communicating with the client, the attorney shall not disclose directly or indirectly the specific content of any Confidential and/or Highly Confidential Material of another Party or non-party where such disclosure would not otherwise be permitted under the terms of this Order.

c)     If any Confidential Material or Highly Confidential Material is filed in the public record by the Producing Entity or the Designating Party, such public filing shall constitute the Producing Entity's or Designating Party's waiver of the designation of the publicly filed material for its use by any Party in this Litigation; provided, however, that inadvertent disclosure of Confidential or Highly Confidential Material through a public filing shall not constitute a waiver if the inadvertent disclosure is corrected within three (3) business days by withdrawing the public filing containing Confidential or Highly Confidential Material, and the filing is replaced with a filing under seal pursuant to Paragraph 8. However, such public filing will not constitute a waiver of any confidentiality designations made with respect to any

16

non-publicly filed portions of the publicly filed document or concerning any other material not actually publicly filed.

      d)     Nothing in this Order shall be construed to prejudice any Party's right to use Confidential Material or Highly Confidential Material in any hearing or other pre-trial proceeding before the Court, or any Party's right to challenge any such use. If a Party intends to use Confidential and/or Highly Confidential Material in any hearing or other pre-trial proceeding before the Court, it should alert the Court and the Designating Party or non-party in advance of the anticipated use so that the appropriate protections can be put in place. For the avoidance of doubt, this subsection shall not apply to Court filings, and the Parties will comply with all requirements as they relate to materials to be filed under seal.

      e)     Further procedures for the handling of Confidential Material and Highly Confidential Material at trial shall be addressed in a final pretrial order. The Parties shall meet and confer to negotiate a proposal for Court approval addressing the treatment of material previously designated as Confidential or Highly Confidential prior to the entry of a final pretrial order.

      f)     Nothing in this Order shall prevent the Plaintiffs from disclosing and using Confidential Material and Highly Confidential Material, subject to taking appropriate steps to preserve confidentiality, to the extent necessary to comply with Sections 6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f) and 57b-2, or any other legal obligation imposed upon the Plaintiffs.

    **10.**   **Other Proceedings**. Any person or Party subject to this Order who receives a subpoena or other request for production of information covered by this Order shall promptly notify the Producing Entity or the Designating Party so that the Producing Entity or the Designating Party may have an opportunity to appear and be heard on whether that information

17

should be disclosed. Confidential and Highly Confidential Materials shall not be produced in any other proceeding, or for any use other than in this Litigation, without an order compelling production from a court of competent jurisdiction or the agreement of the Producing Entity or the Designating Party.

11.    **Unauthorized Disclosure of Confidential or Highly Confidential Information**.

a)    If any person subject to this Order becomes aware that he or she or any other person has, either intentionally or inadvertently, disclosed Confidential Material or Highly Confidential Material to someone not authorized to receive such material under this Order, counsel for the party involved shall (i) immediately inform outside counsel for the Producing Entity or Designating Party whose Confidential or Highly Confidential Material has been disclosed of all known relevant information concerning the nature and circumstances of the disclosure and (ii) use his or her best efforts to obtain the return or destruction of all improperly disseminated copies of such materials (including hardcopies and electronic versions) and to prevent any further improper dissemination of the same. Each Party shall cooperate in good faith in efforts to ensure that no further or greater unauthorized disclosure or use of such material is made and to retrieve any material improperly disclosed.

b)    The Court has jurisdiction to enforce this Order and to grant relief, as authorized by law or in equity, for any violations thereof.

12.    **Inadvertent Production or Disclosure of Privileged Documents**.  If information subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity is produced inadvertently, Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26(b)(5)(B) shall apply.

18

13. **Non-parties**.

    a)    If information sought in a discovery request implicates a Producing Entity's obligation to a non-party not to disclose such information, the following procedures shall be followed unless an order by the Court dicates a different prodedure:

    (i)    The Producing Entity shall timely serve a written objection to the production of such information on the basis of its obligation to a non-party not to disclose the information.

    (ii)    The Producing Entity shall, no later than the date on which written objections are served, provide the non-party written notice of the pending request and a copy of this Order.

    (iii)    Unless the non-party objects to the disclosure and seeks a protective order or other appropriate relief from the Court within fourteen (14) days from which the written notice of the pending request was sent by the Producing Entity or such additional time as may be required by the Producing Entity's obligation to the non-party, the Producing Entity shall produce the materials subject to any appropriate designations under the terms of this Order.

    (iv)    Should the non-party timely seek a protective order or other appropriate relief from the Court, no disclosure shall be made or required unless disclosure is ordered by the Court.

    (v)    Nothing in this Order shall be deemed to prohibit, hinder, or otherwise affect any Party's or non-party's ability to raise any objections on any basis to requests for discovery.

(vi)     Nothing in this Order shall be deemed to require any Producing Entity to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court in connection with obligations imposed by a discovery request.

b)     Notwithstanding the foregoing, if a Producing Entity determines that it is unable to comply with the procedures set forth in section 13(a), it will notify the Party seeking the discovery at issue and meet and confer to determine an alternative procedure.

c)     If any discovery requests are served on a non-party, the Party serving the discovery request shall provide the non-party with notice of the terms of this Order.

14.     **Further Application**. Nothing in this Order shall preclude any Party or any non-party from whom discovery has been requested from applying to the Court for additional or different protective provisions with respect to specific material if the need should arise during the Litigation. The Court shall retain jurisdiction over the Parties, and over any person executing an undertaking to be bound by the terms of this Order, during the pendency of the Litigation and for such time thereafter as is needed to enforce the terms of this Order.  Nothing in this Protective Order shall operate as a waiver of any rights any Party has pursuant to the stipulation at Dkt. No. 68.

15.     **Reservation of Rights.**  By designating any material Confidential or Highly Confidential, the parties do not acknowledge that any such material is relevant or admissible in this Litigation. All parties reserve the right to seek discovery of, or alternatively to resist discovery of, such material in this Litigation.

16.     **Modification**. The Court retains the right to allow disclosure of any subject covered by this Order or to modify this Order at any time. Furthermore, nothing in this Order shall prejudice the right of the Parties to stipulate (subject to Court approval) an amendment,

modification, or supplement to this Order. Nothing in this Order shall preclude any party from seeking an order of the Court amending, modifying, or supplementing this Order.

**17.** <u>**Conclusion of This Litigation**</u>.

a) The provisions of this Order will not terminate at the conclusion of this Litigation. This Order shall remain in full force and effect unless modified, superseded, or terminated by written agreement of the parties or by an order of this Court.

b) Within ninety (90) days after such time as a Receiving Party's involvement in this Litigation is concluded, whether by final adjudication on the merits from which there remains no appeal by right or by other means, the Receiving Party shall undertake commercially reasonable efforts (i) to destroy all Confidential Material and Highly Confidential Material (including but not limited to copies in the possession or control of any Expert or employee), and/or (ii) to certify in writing to the Producing Entity or the Designating Party that all such material has been destroyed to the extent practicable. As to those materials that contain, reflect, incorporate, attach, or reference attorney work product, counsel of record for the Parties shall be entitled, without violating this Order, to retain such work product in their files, so long as the terms of this Order will continue to govern any such retained materials.

c) Notwithstanding any other provision of this Order, counsel shall be entitled to retain pleadings, affidavits, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts (including exhibits), and the trial record (including exhibits), even if such materials contain Confidential Material or Highly Confidential Material, so long as this Order will continue to govern any such retained materials. The Receiving Party's reasonable efforts shall not require the destruction of materials that (i) are

21

stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes; (ii) are located in the email archive system or archived electronic files of departed employees; (iii) are subject to litigation hold obligations; or (iv) are otherwise required by law to be retained. Backup storage media need not be restored for the purpose of returning or certifying destruction of materials, but any such materials retained in backup storage media shall continue to be treated in accordance with this Order.

d) Nothing in this Order shall preclude the FTC from complying with the provisions of Rule 4.12 of the FTC's Rules of Practice, 16 C.F.R. § 4.12.

18. **Termination of Access**.

a) In the event any person or Party permanently ceases to be engaged in the conduct of the Litigation, such person's or Party's access to Confidential and Highly Confidential Material shall be terminated, and all copies thereof shall be destroyed in accordance with the terms of Paragraph 17 above, except that such destruction shall take place as soon as practicable after such person or Party ceases to be engaged in the conduct of this Litigation.

b) The provisions of this Order shall remain in full force and effect as to any person or party who previously had access to Confidential and Highly Confidential Material, except as may be specifically ordered by the Court or consented to by the Producing Entity or the Designating Party.

```
So ordered, except that the term "testimony," as
referred to in 2(f), Designation of Materials, shall
not be construed to apply to in-court testimony.
4.20.2020.

                    _____
                          DENISE COTE
                    United States District Judge
```

22

**FEDERAL TRADE COMMISSION**

By: */s/ Markus H. Meier*

Markus H. Meier (admitted *pro hac vice*)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Tel.: (202) 326-3759
mmeier@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*

**STATE OF NEW YORK**
Letitia James
Attorney General

By: */s/ Jeremy R. Kasha*

Jeremy R. Kasha
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney General
28 Liberty St.
New York, NY, 10005
Tel.: (212) 416-8277
jeremy.kasha@ag.ny.gov

23

ON BEHALF OF **VYERA PHARMACEUTICALS, LLC** and **PHOENIXUS AG**

By: _/s/ Steven A. Reed_

Steven A. Reed
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5603
steven.reed@morganlewis.com

*Counsel for Defendants Vyera Pharmaceuticals, LLC and Phoenixus AG*

ON BEHALF OF **MARTIN SHKRELI**

By: */s/ Kandis L. Kovalsky*

Kandis L. Kovalsky
KANG, HAGGERTY & FETBROYT LLC
123 S. Broad St. #1670
Philadelphia, PA 19109
Phone: (215) 525-1993
Fax: (215) 525-5860
kkovalsky@khflaw.com

*Counsel for Defendant Martin Shkreli*

ON BEHALF OF **KEVIN MULLEADY**

By: */s/ Kenneth R. David*

Kenneth R. David
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1893
kdavid@kasowitz.com

*Counsel for Defendant Kevin Mulleady*

26

**IT IS SO ORDERED.**

Dated: _____

_____
Denise Cote
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, _____, am employed by:
_____.

I acknowledge and certify as follows:

1.      I have read the Protective Order in *Federal Trade Commission et al. v. Vyera Pharmaceuticals, LLC et al.*, Civil Action No. 20-cv-00706-DLC, United States District Court for the Southern District of New York, and agree to be bound by its terms.

2.      I will not make copies or notes of Confidential Material or Highly Confidential Material that I receive in this Litigation except as necessary to enable me to render assistance in connection with this Litigation.

3.      I will not disclose Confidential Material or Highly Confidential Material that I receive in this Litigation to any person not expressly entitled to receive it under the terms of the Protective Order, and will retain any Confidential Material or Highly Confidential Material that I receive in this Litigation in a safe place.

4.      I will not use Confidential Material or Highly Confidential Material that I receive in this Litigation for any purpose other than that authorized by the Protective Order.

5.      I will retain all Confidential Material or Highly Confidential Material that I receive in this Litigation in my custody until I have completed my assigned duties, whereupon they will be destroyed, as provided by the Protective Order. Such destruction shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order.

6.      I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

28

7.      I agree to be subject to the continuing jurisdiction of this Court for the sole purpose

of having the terms of the Protective Order enforced.


Date: _____          Signature: _____

                                               Address: _____

                                                        _____

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 48 of 133
ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

KeyCite Yellow Flag - Negative Treatment

Distinguished by  PACid Group, LLC v. Apple, Inc.,  E.D.Tex.,  February 19, 2010

2008 WL 5634214
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Tyler Division.

ST SALES TECH HOLDINGS, LLC
v.
DAIMLER CHRYSLER CO., LLC, et al.

Civil Action No. 6:07–CV–346.
|
March 14, 2008.

West KeySummary

1    Patents  🔑  Protective orders

Risk that patent holder's attorney might inadvertently disclose confidential information to patent holder that could significantly harm alleged infringer was very high, and therefore alleged infringer was entitled to a protective order precluding attorney's access to confidential information. Attorney and patent holder shared a close business relationship, and attorney's involvement in patent acquisition, litigation, and licensing underscored his importance to patent holder's businesses. Alleged infringer would be at a high risk of continued litigation, as patent holder had demonstrated a willingness to acquire and enforce patents against alleged infringer.

31 Cases that cite this headnote

**Attorneys and Law Firms**

Andrew Wesley Spangler of Spangler Law PC, Longview, TX, David Michael Pridham of Law Office of David pridham, Barrington, RI, John J. Edmonds of The Edmonds Law Firm, PC, Houston, TX, for Plaintiff.

Frank C Cimino, Jr of Dickstein Shapiro, LLP–DC, Washington, DC, J Thad Heartfield and M. Dru Montgomery of The Heartfield Law Firm, Beaumont, TX, for Defendant Daimler Chrysler Co LLC and Daimler Chrysler Corporation.

Frank A Angileri, John S Le Roy, and Marc Lorelli of Brooks & Kushman PC—Southfield, Southfield, MI, J Thad Heartfield of The Heartfield Law Firm, Beaumont, TX, Jennifer Parker Ainsworth of Wilson Sheehy Knowles Robertson & Cornelius PC, Tyler, TX, for Defendant Ford Motor Co, Land Rover of North America Inc, and Volvo Cars of North America Inc.

Andrew S Dallmann of Howrey LLP—Irvine CA, Irvine, CA, Andrew R Sommer and Matthew J Moore of Howrey LLP —Washington, Washington, DC, J Thad Heartfield of The Heartfield Law Firm, Beaumont, TX, for Defendant Mazda Motor of America Inc.

*MEMORANDUM OPINION AND ORDER*

JOHN D. LOVE, United States Magistrate Judge.

**\*1** Before the Court are Defendants' Motion For Entry of a Protective Order (Doc. No. 88), and a number of responses and replies. For the reasons that follow, Defendants' motion is **GRANTED.**

*BACKGROUND*

ST Sales Tech Holdings, LLC (hereinafter "Sales Tech") is a Texas limited liability company in the business of acquiring, licensing, and enforcing patents. Pridham Decl. ¶ 6. Sales Tech is the owner by assignment of U.S. Patent No. 6,941,305 (hereinafter "the '305 patent"), entitled "Customer management system for automobile sales industry," which it seeks to enforce through the present infringement proceedings. Compl. ¶ 15. Plaintiff Sales Tech is one of many patent holding entities owned and controlled by Erich Spangenberg and represented in some capacity by attorney David Pridham. Spangenberg's business entities, including Sales Tech, are in the business of holding intellectual property for litigation and pre-litigation activities. *See* Trial Transcript at 186:16–19 (May 23, 2007), *Orion IP LLC v. Hyundai Motor Co.,* No. 6:05–cv–322 (E.D.Tex.2007). *See also* Def.'s Mot. For Entry of Protective Order (Doc. No. 88; Ex. 1). The parties' present dispute regards whether Pridham should be

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

denied access to Defendants' confidential information under a protective order.

Although Sales Tech as an entity is relatively new, Spangenberg's many other patent holding entities have previously sued these same Defendants a number of times in just over three years.[1] The most recent lawsuits, including this one, involve similar patents and infringing conduct, specifically the operation of "build your own" tools on Defendants' websites and web-based methods for interacting with Defendants' auto dealerships. Def.'s Mot. For Entry of Protective Order at 3. A number of the lawsuits resulted in settlements, though Spangenberg's entities continue to acquire and attempt to enforce other similar patents against these same Defendants, including the '305 patent asserted herein.

Attorney David Pridham has been heavily involved in Spangenberg's activities since as early as 2003. Prior to working with Spangenberg, Pridham served as general counsel of Firepond, Inc., a Minnesota software company. Def.'s Mot. For Entry of Protective Order at 4. Spangenberg purchased Firepond's patent portfolio while Pridham served as general counsel, though Pridham himself was conflicted out of the negotiations.[2] *See* Trial Transcript at 193:1–14 (May 23, 2007), *Orion IP, LLC v. Hyundai Motor Co.,* 6:05–cv–322 (E.D.Tex.2007). *See also* Def.'s Mot. For Entry of Protective Order (Doc. No. 88; Ex. 1). Though the parties dispute small nuances of Pridham's exact role in Spangenberg's litigation-centered business entities since their acquisition of the Firepond patents, it is undisputed that Pridham has worked and continues to work extensively with Spangenberg entities in their business of acquiring, litigating, and licensing patents. Pl.'s Sur–Reply to Def.'s Mot. For Entry of Protective Order at 1.

**\*2** Based on Pridham's role in the parties' litigation history, Defendants have moved for entry of a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The proposed protective order would prevent Pridham from viewing confidential information marked for "Attorney's Eyes Only."

### ANALYSIS

Under Rule 26 of the Federal Rules of Civil Procedure, "for good cause shown ... the court ... may make any order which justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense."[3] FED. R. CIV. P. 26(c). Included in Rule 26(c)(7) is the power for the Court to enter a protective order to restrict an individual attorney's access to a trade secret or other confidential information. *See* FED. R. CIV. P. 26(c)(7).

In determining whether a protective order should bar one party's attorney access to information, the Court must focus on the risk of "inadvertent or accidental disclosure," and weigh that risk against the potential that the protective order may impair the other parties' ability to prosecute or defend its claims. *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984); *In re Papst Licensing, GmbH, Patent Litigation,* 2000 WL 554219, at \*3 (E.D.La.2000). When conducting the balancing, courts look specifically at "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *U.S. Steel Corp.,* 730 F.2d at 1468 n. 3; *Infosint S .A. v. H. Lundbeck A.S.,* 2007 WL 1467784, at \*3 (S.D.N.Y.2007). Other factors to be considered in the balancing include: (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the level of risk of inadvertent disclosure of proprietary information, (3) the hardship imposed by the restriction, (4) the timing of the remedy, and (5) the scope of the remedy. *Infosint S.A.,* 2007 WL 1467784, at \*2. The ultimate goal of the balancing is to determine whether counsel's access to the confidential information creates "an unacceptable opportunity for inadvertent disclosure."[4] *U.S. Steel Corp.,* 730 F.2d at 1468; *In re Papst Licensing, GmbH, Patent Litigation,* 2000 WL 554219, at \*3.

### Balancing The Interests

Before proceeding to the balancing, the Court begins the analysis by crediting the assurance that Pridham would abide by any "Attorney's Eyes Only" protective order that might be entered. However, as previous courts have noted, accepting that an attorney will abide by a protective order is the starting point of the inquiry, not the end of the analysis. *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,* 237 F.R.D. 405, 408 (N.D.Ill.2006) (citing *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1471 (9th Cir.1992)). Under the relevant analysis, the focus of the inquiry is not the attorney's good faith, but the risk for *inadvertent* disclosure,

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...
2008 WL 5634214

and "[j]ust as '[i]nadvertence ... is no respecter of its victims,' neither is it a respecter of the integrity of those who fall prey to it." *Autotech Techs. Ltd. P'ship,* 237 F.R.D. at 408–09 (quoting in part *U.S. Steel Corp.,* 730 F.2d at 1468). *See also Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 585–86 (S.D.Fla.2006) ( "Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create 'an unacceptable opportunity for inadvertent disclosure.' "). The Court does not question Pridham's ethics or integrity. However, Pridham's and ST Sales' assurances of compliance with the protective order are not enough on their own to deny Defendants' motion.

### A. "Competitive Decisionmaker"

**\*3** Involvement in "competitive decisionmaking" is the oft-cited most critical factor weighing in favor of denial of access.[5] *U.S. Steel Corp.,* 730 F.2d at 1468 n. 3. The Federal Circuit has stated that "competitive decisionmaking" refers to "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* Specifically, courts are concerned about the "untenable position" counsel would be in if, after viewing other litigants' technology, counsel would be forced to either refuse his client legal advice on competitive matters or violate the protective order's prohibition against revealing technical information. *In re Papst Licensing, GmbH, Patent Litigation,* 2000 WL 554219, at \*3.

Plaintiff and Defendants argue a number of points regarding whether or not Pridham's activities and association with Erich Spangenberg qualify Pridham as a "competitive decisionmaker" in Spangenberg's business enterprise. Defendants argue that Pridham's continued close relationship with Spangenberg and expansive roles in Spangenberg's businesses qualifies Pridham as a competitive decisionmaker, and increases their risk of harm should he inadvertently disclose information. In response, Sales Tech argues Pridham is outside counsel, and that he is not involved in management of Sales Tech or other entities. Sales Tech also argues that Pridham has no role in patent prosecution, which is often a key factor in courts' decisions to grant a protective order to restrict certain counsel's access to confidential information. Since the burden is on the movant to prove the necessity

of the protective order, the Court will address Defendants' arguments in favor of the protective order first.

Defendants have presented a bevy of information indicating that Pridham has served in many capacities throughout Spangenberg's many patent-holding entities since the two first met. In previous litigation, Spangenberg testified that (at that time) Pridham served as "both the general counsel at [IP Navigation Group, LLC] and then in a separate capacity he's outside counsel as well." *See* Trial Transcript at 193:15–22 (May 23, 2007), *Orion IP, LLC v. Hyundai Motor Co.,* 6:05–cv–322 (E.D.Tex.2007). IP Navigation Group, LLC (hereinafter "IP Nav") is one of the entities owned and operated by Spangenberg, and it provides consulting services to Spangenberg's other patent-holding entities. *Id.* at 184:15–24. Defendants also note that Pridham has appeared in pleadings as affiliated with Orion IP or other Spangenberg entities at least seven times between 2004 and 2006, but since 2006 Pridham has generally identified himself as affiliated with IP Nav. Def.'s Mot. For Entry Protective Order at 5. Perhaps emblematic of the confused mixing of roles within the various entities, during one patent infringement lawsuit, Pridham listed himself as Orion's in-house counsel, but with an @ipnav email address. *See* Complaint at 4, *Orion IP, LLC v. Staples, Inc.,* No. 2:04–cv–297 (E.D.Tex.2004). Aside from his role as in-house counsel and outside counsel to Spangenberg entities, Pridham has also served in at least one Spangenberg entity solely in a business capacity. Defendants cite reporting forms indicating Pridham served as a director on the board of In Store Media Systems, a company of which Spangenberg was director, CEO, treasurer, and secretary. Def.'s Mot. For Entry Protective Order at 4; (Doc. No. 88, Exs.8–9).

**\*4** In his legal roles, Pridham provides many services to Spangenberg's entities. IP Nav, the entity Pridham most often associates himself with as either general counsel or outside counsel, "manages, acquires and monetizes a diverse group of patents," and involves its attorneys with "a variety of prosecution, licensing and litigation projects." Def.'s Mot. For Entry of Protective Order at 4 (citing IP Nav attorney job posting attached as exhibit); (Doc. No. 88, Ex. 2). Whether within IP Nav or serving as outside counsel, Pridham himself focuses his practice on patent litigation, licensing, and acquisition for Spangenberg's entities. Defendants attached a chart to their motion indicating that Pridham has appeared as counsel (affiliated with IP Nav) in at least 38 different lawsuits on behalf of at least six different Spangenberg entities: Sales Tech, Orion IP, Phoenix, Polaris, Triton, and

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

Constellation.[6] *See* Def.'s Mot. For Entry Protective Order at 4 n. 7 (Doc. No. 88, Ex. 4). Sales Tech does not dispute Pridham's extensive role in its litigation ventures, and also admits to Pridham's role in the licensing of patents in settlement of litigation. Pl.'s Resp. To Def.'s Mot. For Entry of Protective Order at 2. Sales Tech specifically denies that Pridham provided any legal services related to the acquisition of the '305 patent, but it makes no denial or mention of Defendants' repeated accusations of his involvement in Spangenberg's acquisition of other patents.[7] Pridham Decl. ¶ 5. Also, despite Spangenberg's previous statements, Sales Tech now claims that Pridham is strictly outside general counsel for patent litigation and the related licensing of patents in settlement, and that he is not an employee or owner of IP Nav or involved in management of any kind. Though Sales Tech claims Pridham is not an employee, Pridham continues to use IP Nav's business mailing address and email address. Pridham claims the address is nothing more than a "a convenient mail stop" in Texas while he works in Rhode Island. Pl.'s Resp. To Def.'s Mot. For Entry of Protective Order at 2.

Aside from outlining Pridham's active role throughout Spangenberg's businesses, Defendants also argue the extent of the potential harm to them if Pridham were to inadvertently disclose confidential information to Spangenberg is apparent by the most recent litigation history among the parties. Defendants note that Pridham represented one of Spangenberg's entities (Orion) in litigation on two patents involving "build-your-own" websites. As a representative of Orion, Pridham took part in extensive discovery of the systems before most of the Defendants settled the *Orion* litigation. Reply in Supp. of Def.'s Mot. For Entry of Protective Order at 8–9. Shortly thereafter, Taurus, a different Spangenberg entity again represented by Pridham, sued many of these same Defendants in the Western District of Wisconsin for infringement of a different patent on the same accused systems at issue in the *Orion* litigation. *Id.* Finally, in May 2007, Spangenberg acquired the '305 patent in a settlement with Symeron Systems, a defendant in litigation with Spangenberg entity Triton (which was also represented by Pridham). *Id.* The '305 patent was assigned to Sales Tech, and Sales Tech, again represented by Pridham, promptly filed the present lawsuit, accusing the same systems as those accused in the *Orion* and *Taurus* litigation. *Id.* Defendants argue that Spangenberg's demonstrated willingness to acquire new patents and enforce them on the same systems presents a real danger of continuous litigation if Pridham were to inadvertently disclose confidential information.

**\*5** Based on the record before the Court, it appears that Pridham's active role in Spangenberg's business makes him a "competitive decisionmaker" as the term is defined by the Federal Circuit. Under the *U.S. Steel Corp.* definition, "competitive decisionmaking" refers to "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp.,* 730 F.2d at 1468 n. 3. Pridham's involvement in Spangenberg's business enterprise is extensive, and goes well-beyond the typical role of outside counsel, even outside counsel who might work with an entity for years. By Spangenberg's characterization, Pridham is (or was) general counsel of Spangenberg's consulting entity that "manages, acquires, and monetizes" the patents for Spangenberg's many other patent-holding entities. Pridham has also appeared on behalf of Spangenberg's patent-holding entities as general counsel or affiliated counsel at least 38 times in the past couple years. Finally, all sides agree that Pridham is also extremely involved in the licensing of Spangenberg's patents after litigation. Active involvement in these factors have troubled courts in the past. Moreover, Spangenberg's entire business model with his patent-holding companies such as Sales Tech revolves around the acquisition, enforcement (through litigation), and licensing of patents. Under such a business model, it is difficult to argue that someone such as Pridham, who is so heavily involved in these aspects of the business, is somehow not a competitive decisionmaker.

Another important aspect to consider is that there appears to be no insulation between Spangenberg and Pridham in their business. When asked if Pridham worked for him during a trial less than a year ago, Spangenberg was careful to correct the questioner to reflect that Pridham "works with [Spangenberg]," not for him. *See* Trial Transcript at 193:15–18 (May 23, 2007), *Orion IP, LLC v. Hyundai Motor Co.,* 6:05–cv–322 (E.D.Tex.2007). To any extent Pridham does not make final decisions himself, he very clearly reports directly to Spangenberg himself, who is the owner and controller of the patent-holding enterprise discussed herein. Indeed, it appears as though there is nobody else but Spangenberg that Pridham even *could* report to, and Pridham's advice affects every aspect of Spangenberg's patent acquisition, litigation and licensing business. In short, Pridham's extremely close relationship with Spangenberg, when viewed in conjunction with his activity in all of the critical aspects of the patent-

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 52 of 133

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

holding litigation and licensing business, qualifies Pridham as a competitive decisionmaker under the *U.S. Steel Corp.* definition of the term.

The cases where courts have dealt with analogous situations provide ample support for the Court's determination. *See, e.g., Infosint S.A.,* 2007 WL 1467784, at *3–4; *Nike, Inc. v. Adidas America Inc.,* No. 9:06–cv–43 (E.D.Tex.2006) (Doc. No. 58); *Autotech Techs. Ltd. P'ship,* 237 F.R.D. at 410– 11; *Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 529– 31 (N.D.Cal.2000). In *Infosint,* a defendant manufacturing company moved to have two attorneys representing a patent-holding company screened from viewing highly confidential information under a protective order. *See Infosint S.A.,* 2007 WL 1467784, at *3–4. The Court ordered that one of the attorneys be denied access to the information in part because "[f]or nearly seven years, [counsel] has provided [plaintiff] with patent advice, based on his scientific and legal expertise." *Id.* The attorney's role in patent prosecution also played a large role in the *Infosint* court's determination. While Pridham himself is not involved in patent prosecution for Sales Tech, Pridham's role in IP Nav raises all the same concerns outlined by the *Infosint* court related to an attorney's involvement in patent prosecution after viewing certain confidential information. The concern in *Infosint* was that "[p]rosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party projects] sales to be most critical.' " *Infosint S.A.,* 2007 WL 1467784, at *4. As Defendants point out in their motion, Pridham's involvement in IP Nav, which provides consulting on patent acquisition for Spangenberg's patent-holding entities, also puts Pridham in position to seek out and propose the purchase of patents that read on activities known from Pridham's involvement in confidential discovery during prior lawsuits, and then seek to enforce those patents against the same Defendants. Given Pridham's involvement from patent acquisition through litigation and claim construction, access to highly confidential information would also allow him to seek out certain patents and then propose claim constructions that read on Defendants' known use of the allegedly infringing systems. The risk of inadvertent disclosure would be high by the very nature of Pridham's duties and his connection to Spangenberg. If allowed to access the information, Pridham would be forced into what other courts have emphasized as the untenable position of having to compartmentalize his knowledge of the confidential information when asked about the acquisition or other use of patents whose claims could arguably be utilized against these Defendants. Courts have continuously determined that attempting to compartmentalize knowledge is an exercise in futility. *Autotech Techs. Ltd. P'ship,* 237 F.R.D. at 410–11. Moreover, Spangenberg and Pridham have demonstrated a willingness to sue these particular Defendants over and over as they acquire new patents, which puts Defendants at an even greater risk of suffering harm from any inadvertent disclosure.

**\*6** Pridham's active involvement in licensing and litigation, and the lack of any other persons to whom Pridham reports in the business, are also factors that other courts have considered critical to "competitive decisionmaker" analysis. One California court found that an attorney's active involvement "in licensing through litigation" constituted competitive decisionmaking in part because "advice and counsel necessarily affect licensing decisions," and licensing agreements affected the parties' strength in the marketplace. *See Intel Corp.* 198 F.R.D. at 530. The *Intel* court reiterated the overarching concern that counsel would be placed "in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information," and that counsel's close interaction with the immediate supervisors making the critical business decisions exacerbated the potential for inadvertent disclosure of the confidential information. *Id.* Yet another court denied counsel access primarily because counsel took his "ultimate instructions in the litigation from a single individual" who was "for all intents and purposes, the [client] corporation," and there were no "safeguards resulting from a layered managerial hierarchy." *Autotech Techs. Ltd. P'ship,* 237 F.R.D. at 410–11. Every aspect of Pridham's role has either been a foundation of other courts' decisions in screening attorneys such as Pridham from access to confidential information, or is highly analogous to certain aspects that have been critical to the decision, and thus, there is ample support to conclude that Pridham himself qualifies as a competitive decisionmaker.

In its response, Sales Tech argues that Pridham cannot be a competitive decisionmaker because Sales Tech does not manufacture products or design automobiles, and is therefore not a 'competitor' to Defendants. Sales Tech pulls this argument from the Federal Circuit's definition of "competitive decisionmaker," which covers counsel's association with a client involving advice or participation in any decisions

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

"made in light of similar or corresponding information about a *competitor.*" *U.S. Steel Corp.,* 730 F.2d at 1468 n. 3 (emphasis added). However, since the *U.S. Steel Corp.* decision, courts have found that a person can still be a "competitive decisionmaker" under the Federal Circuit's definition even when not representing a competitor. [8] *See, e.g.,* *Infosint S.A. v. H. Lundbeck A.S.,* 2007 WL 1467784, at *3–4 (S.D.N.Y.2007) (finding that outside counsel was a "competitive decisionmaker" even though he was "neither an officer nor employee of [plaintiff], and [was] not involved in 'business decisions regarding competitors of [his client].' "). *See also R.R. Donnelley & Sons Co. v. Quark, Inc.,* 2007 WL 61885, at *2 n. 2 (D.Del.2007) (rejecting the argument that a person cannot be a competitive decisionmaker unless the party that person is a representative of a competitor of the other parties in the litigation since trade secrets and sensitive information could potentially be of value to the plaintiff). Moreover, it is somewhat disingenuous to argue Sales Tech is not Defendants' competitor simply because Sales Tech is in the business of acquiring and enforcing patents, while Defendants manufacture and design automobiles. Plaintiff and Defendants all seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain. The fact that Sales Tech is before the Court seeking to enforce its attained intellectual property, and has sued on similar patents against these same Defendants on the same systems many times before, indicates Sales Tech views Defendants as competitors for the rights to use the accused systems. To the extent Sales Tech and Defendants are not direct competitors in the traditional understanding of the term, competitor status is not the sole relevant inquiry, and it certainly is not determinative of the matter. *See MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 500–01 (D.Kan.2007). There is little doubt Defendants' confidential information could be of value to an entity such as Sales Tech, whose business model hinges on the ability to acquire intellectual property and enforce it against other entities using the allegedly infringing technology. It is that ultimate potential for damaging use of the confidential information that underlies the concerns of Rule 26 and the *U.S. Steel Corp.* "competitive decisionmaker" analysis.

**\*7** Sales Tech also argues extensively that Pridham cannot be a competitive decisionmaker because his title is now strictly outside counsel to Sales Tech, and he is not an owner or employee of Sales Tech, IP Nav, or other Spangenberg entities. *See* Pridham Decl. ¶¶ 2–3. However, Pridham's actual title is irrelevant to the pertinent analysis, as courts have found attorneys to be competitive decisionmakers regardless of whether they are in-house and outside counsel. *See U.S. Steel Corp.,* 730 F.2d at 1467–68 (rejecting notion that in-house counsel are more of a risk to inadvertently disclose confidential information, since many outside counsel maintain long-standing relationships with clients). *See also, e.g .,* *Infosint S.A.,* 2007 WL 1467784, at *4 (finding outside counsel to be competitive decisionmaker); *Nike, Inc. v. Adidas America Inc. .,* No. 9:03–cv–43 (E.D.Tex.2006) (Doc. No. 58) (refusing to modify protective order to grant in-house counsel access because of risk for inadvertent disclosure of trade secrets). The risk of inadvertent or accidental disclosure is the focus of the issue, and that must be weighed against the potential harm to all parties, not Pridham's actual title. In *U.S. Steel Corp.,* the Federal Circuit specifically articulated that the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, *whether counsel be in-house or retained,* must govern any concern for inadvertent or accidental disclosure." *U.S. Steel Corp.,* 730 F.2d at 1468 (emphasis added).

In looking at the totality of the facts surrounding Pridham's role in Spangenberg's businesses, from patent acquisition to active involvement in litigation and licensing, all of the concerns prior courts have found critical in denying certain attorneys access to confidential information are present. The Court finds that Pridham is a competitive decisionmaker, and that his close relationship with Spangenberg presents a high risk for inadvertent disclosure that bears great potential to significantly harm Defendants through continued litigation. While determining whether counsel is a "competitive decisionmaker" is a critical factor for the Court to consider, in itself the factor is not determinative. The Court must also examine and balance the potential for harm on both sides before determining whether a protective order is ultimately necessary.

### B. Balancing The Potential Harms and Risks of Disclosure

If counsel is determined to be involved in competitive decisionmaking, the issue then becomes whether there is a demonstrated need for access to the documents sufficient to outweigh the concerns such access gives rise to. *Infosint S.A.,* 2007 WL 1467784, at *5. In their motion and replies, Defendants argue that Spangenberg's well-documented willingness to seek out similar patents and

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 54 of 133

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

assert them against these Defendants on similar technology puts them at risk of continuous litigation if Pridham is allowed continued access to their confidential information. In response, Sales Tech argues that the infringement claims in this lawsuit are based on publicly available information, and that it would already be apparent if they had misused "Attorneys' Eyes Only" information Pridham had accessed in previous cases as the bases of its claims against Defendants herein. Pl.'s Resp. To Def.'s Mot. For Entry of Protective Order at 9. Sales Tech also argues that Defendants have not sufficiently demonstrated facts showing the competitive harm that would befall them by any inadvertent disclosure of confidential information by Pridham to Spangenberg, and that Sales Tech would in fact be severely harmed if denied Pridham's services during the present proceeding. Finally, Sales Tech notes that it has agreed to include terms in the protective order that would limit the use of any confidential information gained during discovery to use in the present proceeding, and therefore any inadvertent disclosure Pridham makes would subject him to violating the protective order.

**\*8** As discussed in the competitive decisionmaker subsection above, the Court agrees with Defendants that the risk that Pridham might inadvertently disclose confidential information to Spangenberg is very high under the circumstances. Pridham and Spangenberg share a close business relationship, and it appears there are no levels of managerial hierarchy to insulate the interaction of the two. Moreover, Pridham's involvement in patent acquisition, litigation and licensing, which is the very core of Spangenberg's business, underscores his importance to Spangenberg's businesses. If Pridham were to gain continued access to confidential material, he would be in a difficult position when advising Spangenberg on everything from patent acquisition to claim construction to licensing. Defendants would ultimately be at a high risk of continued litigation, as Spangenberg has demonstrated a willingness to acquire and enforce patents on the same systems against these same Defendants when he has the capability of doing so.

In comparison, the harm to Sales Tech is relatively minor. Sales Tech has other highly competent counsel that has been involved in the case since the beginning of the present litigation (and even in previous cases). Courts have found time and again that requiring a party to rely on its competent outside counsel does not create an undue or unnecessary

burden. *Brown Bag Software,* 960 F.2d at 1471; *Autotech Techs. Ltd. P'ship,* 237 F.R.D. at 413; *Intel Corp.,* 198 F.R.D. at 529. Sales Tech has presented no credible argument for why Pridham absolutely needs access to Defendants' confidential information, or that he is critical to the prosecution of its case.

Sales Tech's other arguments are also unavailing. Sales Tech's argument that it would already be obvious if it had misused information Pridham had accessed in the prior litigation involving these Defendants misses the point of the inquiry. The question is whether the potential for inadvertent disclosure exists on a going-forward basis, and whether the potential harm from such a disclosure outweighs the potential harm to Sales Tech. Likewise, Sales Tech's agreement in its proposed protective order to limit the use of the information to use in the present litigation only also ignores the underlying law, which is the risk of *inadvertent* disclosure going forward. No amount of guarantees to limit the use of the information can ensure against such an inadvertent disclosure. See *U.S. Steel Corp.,* 730 F.2d at 1468.

On the whole, the Court finds that Pridham's relationship with Spangenberg and his role in Spangenberg's business enterprise presents un unacceptable risk of inadvertent disclosure that could significantly harm Defendants. While the Court notes that Plaintiff will be harmed by having one of its counsel screened from accessing certain information in the case, that harm is minor compared to the risk of continued harm to Defendants since Sales Tech has other highly competent attorneys that have been involved since the beginning of the case.

### CONCLUSION

**\*9** For the stated reasons, Defendants' Motion For Entry of a Protective Order (Doc. No. 88) is **GRANTED.**

**So ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5634214

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 55 of 133

ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...

2008 WL 5634214

## Footnotes

1    Specifically, this is the third lawsuit brought by entities owned and controlled by Spangenberg against Defendants Hyundai, Ford, Volvo, and Mazda; the second against Land Rover; and the fourth lawsuit brought against Mercedes and Chrysler. *See Orion IP, LLC v. Mercedes–Benz USA, LLC,* No. 6:05–cv–322 (E.D.Tex.2005); *Orion IP, LLC v. Ford Motor Co. and DaimlerChrysler Corp.,* No. 2:04–cv–313 (E.D.Tex.2004); *Orion v. Chrysler Holding LLC,* No. 6:07–cv–370 (E.D.Tex.2006); *Orion IP, LLC v. Mercedes–Benz USA, LLC,* No. 6:07–cv–451 (E.D.Tex.2007); *Taurus IP, LLC v. Ford Motor Co.,* No. 2:04–cv–313 (W.D.Wis.2007); *Taurus IP, LLC v. DaimlerChrysler Corp. and Mercedes–Benz USA, LLC,* No. 07–C–0158 (W.D.Wis.2007); *ST Sales Tech Holdings, LLC v. DaimlerChrysler Co., LLC,* No. 6:07–cv–346 (E.D.Tex.2007).

2    Defendants speculate that "the existence of an actual conflict suggests that Spangenberg was either actively negotiating to hire Pridham as of January 2004 or had already hired him." Def.'s Mot. For Entry of Protective Order at 4 n. 8.

3    The "good cause" requirement of Rule 26(c) means the burden is on the movant to show the necessity for the issuance of a protective order. *In re Papst Licensing, GmbH, Patent Litigation,* 2000 WL 554219, at *3 (E.D.La.2000).

4    The inquiry is not directed at the attorney's ethical standards, since "even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create 'an unacceptable opportunity for inadvertent disclosure.' " *Mikohn Gaming Corp. v. Acres Gaming Inc.,* 50 U.S.P.Q.2d 1783, 1784 (D.Nev.1998).

5    Determining whether counsel is a competitive decisionmaker is not the sole inquiry the Court must address in the balancing. *MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 501 (D.Kan.2007). However, if counsel is a competitive decisionmaker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present.

6    Defendants also note, and Sales Tech does not dispute, that all of the entities listed the same business address that Pridham and IP Nav were using at the time of the previous lawsuits. Def.'s Mot. For Entry Protective Order at 4.

7    Sales Tech was assigned the '305 patent as part of a litigation settlement. Pridham represented the entity in that case, though the parties do not discuss the depth of his role in the settlement, and as noted and credited by the Court, Pridham denies any involvement in the acquisition of the '305 patent itself.

8    Sales Tech argues the present circumstance is "somewhat similar" to a case decided in the District of Kansas where the fact that the parties' were not competitors played a role in denying a motion for protective order. *See MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 500–01 (D.Kan.2007). However, in *MGP Ingredients* the Defendants grounded their motion on the fact that the parties were competitors, making it a more relevant issue in that case than it is here. *Id.* Here, Defendants have based their motion for the protective order on the notion that Pridham's extensive business relationship with Spangenberg and litigation history makes him a competitive decisionmaker, and a risk to inadvertently disclose confidential information that Spangenberg could use to harm Defendants. It is also important to note that even though the issue of whether the parties were competitors was placed squarely before the Court in the *MGP Ingredients* case, the court properly noted that "whether [plaintiff] and defendants are, in fact, competitors is not the sole legally relevant inquiry as to whether the [protective order] sought by defendants is warranted," and proceeded to analyze the case under

**ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC, Not Reported in F.Supp.2d...**

2008 WL 5634214

all of the considerations outlined by the Federal Circuit in *U.S. Steel Corp. See* 🚩*MGP Ingredients, Inc.,* 245 F.R.D. at 501.

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 57 of 133

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

2019 WL 13472203
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Marshall Division.

UNILOC 2017 LLC, Plaintiff,

v.

CARDO SYSTEMS, INC., Barnes &
Noble, Inc., Terrano, LLC, Defendants.

CIVIL ACTION NO. 2:18-CV-00510-JRG,
CIVIL ACTION NO. 2:18-CV-00511-JRG,
CIVIL ACTION NO. 2:18-CV-00512-JRG
|
Signed May 22, 2019

**Attorneys and Law Firms**

Aaron Seth Jacobs, Alyssa H. Ruderman, Paul J. Hayes,
Kevin Gannon, Prince Lobel Tye LLP, Boston, MA,
Christopher G. Granaghan, Nelson Bumgardner Conroy
PC, Fort Worth, TX, Shawn A. Latchford, Bruster PLLC,
Southlake, TX, for Uniloc 2017 LLC in No. 2:18-CV-00510.

Aaron Seth Jacobs, Paul J. Hayes, Kevin Gannon, Prince
Lobel Tye LLP, Boston, MA, Christopher G. Granaghan,
Nelson Bumgardner Conroy PC, Fort Worth, TX, Shawn A.
Latchford, Bruster PLLC, Southlake, TX, for Uniloc 2017
LLC in Nos. 2:18-CV-00511, 2:18-CV-00512.

Gregory Blake Thompson, Mann, Tindel, Thompson, Tyler,
TX, James Mark Mann, Mann Tindel & Thompson,
Henderson, TX, for Barnes & Noble, Inc. in No. 2:18-
CV-00511.

David A. Loewenstein, Clyde Alvin Shuman, Pearl Cohen
Zedek Latzer Baratz, New York, NY, Justin Kurt Truelove,
Truelove Law Firm, Marshall, TX, for Terrano, LLC in No.
2:18-CV-00512.

## MEMORANDUM OPINION AND ORDER

RODNEY GILSTRAP, UNITED STATES DISTRICT
JUDGE

**\*1** Before the Court is Plaintiff Uniloc 2017 LLC ("Uniloc")
and Defendant Barnes & Noble, Inc.'s ("BNI") (collectively,
"the Parties") Joint Motion for Entry of Protective Order
with One Disputed Provision ("the Motion"). (Dkt. No.
40). Having considered the Motion, and for the reasons

described herein, the Court finds that the Motion should
be and hereby is **GRANTED-IN-PART** and **DENIED-IN-
PART**. The Motion is **GRANTED** with respect to the agreed
portions of the proposed protective order (Dkt. No. 40-1) but
**DENIED** with respect to BNI's disputed, proposed addition.

## I. Factual Background

Consistent with the Court's Docket Control Order (Dkt. No.
28), the Parties submitted a proposed Protective Order to
the Court for entry on April 22, 2019. (Dkt. No. 40-1).
The proposed Protective Order is agreed in all respects,
except one: BNI seeks to add a provision granting its Vice
President and General Counsel, Bradley J. Feuer, access
to all information marked "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY." [1] (Dkt. No. 40-1). In support
of its request, BNI submitted a sworn declaration from Mr.
Feuer that describes his role at BNI. (Dkt. No. 40-2). Mr.
Feuer's declaration represents that he is the "Vice President,
General Counsel & Corporate Secretary" of BNI, and
indicates that he is responsible for managing the conduct of
BNI's outside counsel, Quinn Emanuel Urquhart & Sullivan,
LLP ("Quinn Emanuel"). (*Id.* ¶¶ 1, 10). Mr. Feuer notes
that while he is not "a member of the board of directors"
of BNI, he is "Corporate Secretary" and thus must "attend
and prepare minutes of board meetings." (*Id.* ¶¶ 14–15).
However, Mr. Feuer generally disclaims being involved in
competitive decision-making for BNI, and notes that "to the
extent [he] provide[s] advice or information to the board, such
advice or information is limited to legal matters, and does
not include advice about business strategy, pricing, marketing
strategies, product design and development, or competitive
analysis." (*Id.* ¶¶ 12, 15).

Based on his declaration, BNI seeks to give Mr. Feuer "access
to Uniloc's license agreements," among other confidential
business information, in order to advise BNI about whether
to purchase a license to Uniloc's intellectual property rights.
(Dkt. No. 40). BNI does not dispute that Uniloc's license
agreements are highly confidential, nor does BNI argue that
they should not be subject to a protective order. BNI instead
argues that Mr. Feuer should be granted access to Uniloc's
license agreements despite their confidential nature. Uniloc
opposes BNI's request and argues that Mr. Feuer should not
be given access to such information.

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 58 of 133

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

## II. **Legal Standard**

**\*2**  The decision of whether to issue a protective order is governed by regional circuit law generally, and Fifth Circuit law in this case. [2]  The Federal Rules of Civil Procedure authorize district courts to issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Fed. R. Civ. P. 26(c)(1)(G).* The party seeking a protective order must show "good cause" for its issuance. *Id. 26(c)(1).* Once good cause is shown, the burden shifts to the party seeking the confidential information to demonstrate that a protective order would necessarily impair its "ability to prosecute or defend its claims." *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC,* No. CIV.A. 6:07-CV-346, 2008 WL 5634214, at \*2 (E.D. Tex. Mar. 14, 2008) (quoting *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984)); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.,* No. 1:09-CV-00560-LJO, 2012 WL 6160468, at \*2 (E.D. Cal. Dec. 11, 2012) ("Defendants bore the initial burden of demonstrating good cause to maintain the confidentiality designations.... Once good cause is shown, the burden shifts back to Plaintiff to demonstrate non-disclosure would prejudice Plaintiff's ability to litigate the case, and that this prejudice outweighs the risk of disclosure to competitors."); *Pfizer Inc. v. Apotex Inc.,* 744 F. Supp. 2d 758, 766–67 (N.D. Ill. 2010) ("The party seeking a protective order must also demonstrate that it will be harmed by disclosing information it believes to be confidential.... If it does so, the burden shifts to the party seeking the information to show that disclosure is relevant and necessary to its case."); *Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 528 (N.D. Cal. 2000) ("[B]ecause it seeks disclosure of information that would otherwise be confidential, Intel bears the burden of establishing a sufficient need for the information which outweighs the risk of injury to VIA."). To successfully carry its burden, BNI must prove that the risk of improper disclosure is outweighed by its need to access Uniloc's confidential information. *In re Deutsche Bank Tr. Co. Am.,* 605 F.3d 1373, 1380 (Fed. Cir. 2010) ("Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice.").

**\*3**  "The ultimate goal of the balancing [inquiry] is to determine whether counsel's access to the confidential information creates 'an unacceptable opportunity for inadvertent disclosure.' " *ST Sales,* 2008 WL 5634214, at \*2 (citing *U.S. Steel,* 730 F.3d at 1468). "[I]t is very difficult for the human minds to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Deutsche Bank,* 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980)). When in-house counsel has a role in competitive decisionmaking, simultaneous access to an opposing party's confidential information may thus place that counsel "in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information." *Intel Corp.,* 198 F.R.D. at 530 (citing *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1472 (9th Cir. 1992)). Accordingly, "[i]nvolvement in 'competitive decisionmaking' is the oft-cited most critical factor weighing in favor of denial of access." *ST Sales,* 2008 WL 5634214, at \*3 (citing *U.S. Steel.,* 730 F.2d at 1468 n.3). "Determining whether counsel is a competitive decisionmaker is not the sole inquiry the Court must address in the balancing. However, if counsel is a competitive decisionmaker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present." *Id.* at \*3 n.5 (citations omitted).

As with all discovery matters, district courts have significant discretion in weighing, analyzing, and ultimately balancing the concerns underlying the decision as to whether to issue a protective order. *Moore v. CITGO Ref. & Chemicals Co., L.P.,* 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000)); *Green v. Life Ins. Co. of N. Am.,* 754 F.3d 324, 329 (5th Cir. 2014). "As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion." *Nguyen v. Excel Corp.,* 197 F.3d 200, 209 n.27 (5th Cir. 1999). Accordingly, a district court's decision to issue a protective order "will be reversed only if it is 'arbitrary or clearly unreasonable,' and the appellant demonstrates prejudice resulting from the decision." *Moore v. Ford Motor Co.,* 755 F.3d 802, 808 (5th Cir. 2014); *accord*

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 59 of 133

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

*Deutsche Bank*, 605 F.3d at 1380 ("In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required.") (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

### III. Discussion

The parties do not dispute that the relevant documents, including the relevant patent license agreements, are highly confidential. Nor do the parties dispute that there is good cause for issuing a protective order that includes Uniloc's confidential business information within its ambit. The only dispute is whether Mr. Feuer should have access to said confidential information. Accordingly, the Court finds the first prong of the protective order inquiry is met, since Uniloc has shown good cause for issuance of a protective order. The burden thus shifts to BNI to demonstrate that its need for the information outweighs any risk of risk of inadvertent disclosure by Mr. Feuer.

#### A. Mr. Feuer Is a Competitive Decisionmaker

The Court finds there is a substantial risk of inadvertent disclosure by Mr. Feuer because BNI explicitly states that Mr. Feuer will use Uniloc's information for a competitive purpose: purchasing intellectual property rights. Federal courts have uniformly found that the business decision to purchase a license may constitute "competitive decisionmaking" for purposes of the protective order inquiry. [3] *Intel Corp.*, 198 F.R.D. at 530 *Northbrook Digital LLC v. Vendio Servs., Inc.*, No. CIV. 07-2250 PJS/JJG, 2008 WL 2390740, at *16 (D. Minn. Apr. 4, 2008); *Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-CV-283, 2012 WL 3061024, at *3 (S.D. Ohio July 26, 2012); *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, No. CIV. 08-158-PH, 2009 WL 1210638, at *10 (D. Me. Apr. 30, 2009); *Affymetrix, Inc. v. Illumina, Inc.*, No. CIV.A. 04-901-JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13202057, at *4 (N.D. Tex. Feb. 10, 2011); *THX, Ltd. v. Apple, Inc.*, No. 13CV01161HSGDMR, 2016 WL 2899506, at *2 (N.D. Cal. May 13, 2016); *ST Sales*, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008); *Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592, at *4 (D. Del. May 18,

2016); *Hyundai Motor Am. v. Clear with Computs., LLC*, No. 6:08 CV 302, 2009 WL 8657271, at *3 (E.D. Tex. May 11, 2009).

**\*4** Federal courts have identified at least five reasons why patent licensing constitutes competitive decisionmaking. First, the purchase of intellectual property rights for valuable consideration inherently affects the economic competitiveness of the licensee—the licensee has increased mobility to commercially operate, as well as a newly-imposed legal duty to furnish promised payment with attendant commercial consequences, including pricing decisions, that result. *See, e.g.*, *Intel Corp.*, 198 F.R.D. at 530; *Northbrook Digital*, 2008 WL 2390740, at *16.

Second, licensing affects the economic competitiveness of the licensor, by furnishing additional revenue while subdividing the licensor's intellectual property rights. *See, e.g.*, *Intel Corp.*, 198 F.R.D. at 530; *Northbrook Digital*, 2008 WL 2390740, at *16.

Third, particularly where an individual or party is repeatedly involved in patent litigation, licensing information from one suit might be exploited in other commercial licensure decisions. *See, e.g.*, *Info-Hold*, 2012 WL 3061024, at *3; *Fairchild Semiconductor*, 2009 WL 1210638, at *10; *Affymetrix*, 2005 WL 1801683, at *2; *Gen. Elec.*, 2011 WL 13202057, at *4; *THX, Ltd.*, 2016 WL 2899506, at *2. Indeed, in the litigation context, determination of a royalty based on comparable licenses is one of the most reliable damages methodologies in patent law. *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).

Fourth, "competition can be inferred from shared interest in a single patented technology," even when "the patentee" does not "produce the technology," because patentees are entitled to commercialize their patents in any way they choose. *Northbrook Digital*, 2008 WL 2390740, at *16 (citing *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 880 (Fed. Cir. 1995)); *see also, e.g.*, *ST Sales*, 2008 WL 5634214, at *6; *Blackbird Tech*, 2016 WL 2904592, at *4; *Hyundai Motor*, 2009 WL 8657271, at *3. As Judge Graham has explained, "[a] patentee may exploit patented technology in many ways, either by using

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 60 of 133

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

or marketing the patented technology itself; by licensing the right to use or market that technology to others; or by excluding others from using or marketing the technology."

*Northbrook Digital*, 2008 WL 2390740, at *16.

Fifth, litigation often involves competitive decisionmaking, particularly where one party's business frequently involves asserting and licensing patents. *See, e.g., Fairchild Semiconductor*, 2009 WL 1210638, at *10 ("[The in-house lawyer] is involved in *litigation-based* competitive decisionmaking for 3D.") (emphasis in original); *Affymetrix*, 2005 WL 1801683, at *2; *Gen. Elec.*, 2011 WL 13202057, at *4.

In view of the foregoing analysis, the Court concludes that Mr. Feuer is involved in competitive decisionmaking for BNI. The Court takes judicial notice that Mr. Feuer is active and experienced with respect to purchasing patent rights at BNI. *See Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC LB, 2012 WL 601806, at *3 (N.D. Cal. Feb. 23, 2012) ("Mr. Feuer was one of B[&]N's two representatives in the pre-litigation licensing negotiations with LSI ....") (alterations in original); *see also* Fed. R. Evid. 201(b); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 & n.9 (5th Cir. 2007) (taking judicial notice of documents filed in a Texas state court proceeding and stating that "it is clearly proper ... to take judicial notice of matters of public record"). Even if Mr. Feuer were not active and experienced with respect patent licensing at BNI, though, permitting him to access Uniloc's confidential licensing information would inevitably put him in the "untenable position of having to either refuse to offer crucial legal advice at times or risk disclosing protected information," *see Intel Corp.*, 198 F.R.D. at 530, in at least two respects. First, BNI states that Mr. Feuer is responsible for making competitive decisions related to the purchase of a license to Uniloc's intellectual property rights in this case. BNI further explains that Mr. Feuer intends to exploit the information contained in Uniloc's other licenses to make that competitive decision. [4] In such a situation, Mr. Feuer could not advise BNI on its decision to purchase intellectual property rights without an inherent and inevitable "risk [of] disclosing protected information." Second, if BNI is sued for patent infringement in the future by Uniloc or others (as it has been in the past, *see, e.g., Barnes & Noble, Inc.*, 2012 WL 601806, at *1), Mr. Feuer would either have to improperly exploit Uniloc's confidentially-disclosed information or refuse to "offer crucial legal advice" about

how to conduct the case. This is especially so in view of the total absence of hardship to BNI—BNI's *outside* counsel are indisputably entitled to Uniloc's other relevant licenses, and may use them for any appropriate purpose. Accordingly, the Court finds that the risk of inadvertent disclosure is severe and immitigable.

**B. BNI Fails to Carry Its Burden to Show Hardship**

 **\*5**  BNI will experience no hardship because it may rely on its competent outside counsel to handle and manage the litigation. Federal courts have routinely found that requiring a party to rely on its competent outside counsel does not create an undue or unnecessary burden. *ST Sales*, 2008 WL 5634214, at *8; *Stanislaus Food*, 2012 WL 6160468, at *2 ("Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.' ") (citing *Intel Corp.*, 198 F.R.D. at 528); *Intel Corp.*, 198 F.R.D. at 529 ("The party seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel .... The quality of the counsel representing Intel and the lack of any evidence indicating Intel will be prejudiced in prosecuting its case undermines Intel's contention that they have good cause to modify the Protective Order."); *Carpenter Tech. v. ARMCO, Inc.*, 132 F.R.D. 24, 28 (E.D. Pa. 1990) ("[T]he party seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel."); *Hirsh Inc. v. United States*, 657 F. Supp. 1297, 1305 (C.I.T. 1987) ("[I]n view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding [in-house] counsel from access"); *Gen. Elec.*, 2011 WL 13202057, at *6 ("[T]he Court has no doubt that counsel in this case have the ability and skill to provide effective representation to their client. The potential harm that General Electric will suffer from preventing Mr. McGinness from having access to the information at issue 'is minor compared to the risk of continued harm to [Mitsubishi] since [General Electric] has other highly competent attorneys that have been involved since the beginning of the case.' ") (alterations in original); *cf. U.S. Steel*, 730 F.2d at 1468 (finding undue hardship in prohibiting in-house counsel from accessing confidential information because the litigant *had no other counsel* and the case was already "at an advanced stage"). BNI's outside counsel—Quinn Emmanuel —is an established and competent national law firm and this case has barely begun to proceed through fact discovery.

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

Accordingly, the Court finds that BNI has not carried its burden to demonstrate any hardship.

## IV. <u>Conclusion</u>

Since Uniloc's licensing and business information is indisputably confidential, BNI has the burden to prove why its Vice President and General Counsel Bradley Feuer should gain access to it. BNI has not carried that burden because there is a material risk of inadvertent disclosure. BNI has identified no hardship and does not suggest that its outside counsel will otherwise be impaired by limiting Mr. Feuer's access. Accordingly, the Court **GRANTS** the Motion for entry of the proposed protective order to the extent the Motion is agreed by the parties. The Court **DENIES** BNI's request to insert an additional provision granting Mr. Feuer access to Uniloc's confidential information.

**So ORDERED and SIGNED this 22nd day of May, 2019.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 13472203

## Footnotes

1    While the text of BNI's proposed amendment to the protective order purports to generally grant access to "one representative" who is "In-house Counsel" (Dkt. No. 40-1 at 12), BNI's arguments exclusively focus on why Mr. Feuer specifically should be granted access to Uniloc's confidential business information. BNI does not identify any other in-house representative to whom it seeks disclosure. Since BNI has the burden to prove that disclosure of Uniloc's confidential information is appropriate on a "counsel-by-counsel basis," *see U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984), in light of the "factual circumstances surrounding each individual counsel's activities, association, and relationship with" BNI, *see id.*, the Court analyzes BNI's request with respect to Mr. Feuer.

2    The Federal Circuit has held that discovery issues are governed by Federal Circuit law when they are "affected by the special circumstances of the patent law setting in which those issues arise." *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1360 (Fed. Cir. 1999). For example, Federal Circuit law governs the determination that discoverable information is relevant in a patent infringement suit, because the question of relevance can only be determined by reference to the substantive patent elements to be proven. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1212 (Fed. Cir. 1987). Similarly, Federal Circuit law governs the scope of attorney-client privilege waiver between inventors and attorneys patent prosecutors because such communications inherently and inevitably implicate the patent law defense of inequitable conduct. *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803 (Fed. Cir. 2000). The Federal Circuit has considered the need to promote national uniformity in patent law as a basis for applying Federal Circuit law. *In re Deutsche Bank Tr. Co. Am.,* 605 F.3d 1373, 1377 (Fed. Cir. 2010) (holding that patent prosecution bar provisions in protective orders are subject to Federal Circuit law). By contrast, for "procedural issues" the Federal Circuit relies upon "the law of the regional circuit in which the district court sits." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1322 (Fed. Cir. 2005) (holding that determination of the timeliness of a discovery request is governed by regional circuit law); *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1181–82 (Fed. Cir. 1996) ("[W]e have generally deferred to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure.") (citing *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 857–58 (Fed. Cir. 1991)). For example, regional circuit law governs review of an order to quash a subpoena because "an order quashing a subpoena

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 62 of 133

Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 13472203

is not unique to patent law." *Truswal Sys.*, 813 F.2d at 1209. Similarly, the decision to grant a protective order for confidential information "is not unique to patent law." *See id.* A protective order further does not turn on "the special circumstances of the patent law setting" because its underlying determinants are universal across all civil litigation. *See Midwest Indus.*, 175 F.3d at 1360. For example, the determination of whether particular information is confidential or whether particular individuals should have access to such confidential information is the same in any type of civil litigation—a license agreement is no more confidential in a patent case than it is in a trade secret or breach of contract case. Further, since protective orders must be tailored to the particular circumstances of each case and access to confidential information "must be determined ... by the facts" on an individualized basis, *see U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984), protective orders do not implicate the need for a national patent-specific standard. Thus, while certain patent-specific species of protective orders—like patent prosecution bars—are certainly subject to Federal Circuit law, *see Deutsche Bank*, 605 F.3d at 1377, protective orders as a general matter are not.

3    *Intel Corp.*, 198 F.R.D. at 530 ("[A]greements reached as part of settlements directly affected Intel's competitiveness in the market by affecting Intel's ability to sell products."); *Northbrook Digital LLC v. Vendio Servs., Inc.*, No. CIV. 07-2250 PJS/JJG, 2008 WL 2390740, at *16 (D. Minn. Apr. 4, 2008) ("Perhaps the most important principle is that licensing, by itself, has an impact on the competitive posture of a business."); *Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-CV-283, 2012 WL 3061024, at *3 (S.D. Ohio July 26, 2012) ("Negotiating the terms of licensing agreements as part of settling lawsuits has been found to constitute competitive decisionmaking where ... in-house counsel's role thereby placed her 'in the untenable position of having to either refuse to offer crucial legal advice at times or risk disclosing protected information.' "); *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, No. CIV. 08-158-PH, 2009 WL 1210638, at *10 (D. Me. Apr. 30, 2009) ("Courts have found substantive involvement in negotiating settlement of patent litigation, particularly when intertwined with creation of new licensing agreements, sufficient to evidence competitive decisionmaking status."); *Affymetrix, Inc. v. Illumina, Inc.*, No. CIV.A. 04-901-JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005) ("Ms. Espinosa is part of Illumina's management team and is involved with settling patent litigation and licensing. Based on her role at Illumina which crosses over into the competitive-decision making at Illumina, the Court concludes that Ms. Espinosa is not appropriately included as a party to the protective order."); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13202057, at *4 (N.D. Tex. Feb. 10, 2011) ("In addition, Mr. McGinness's involvement in General Electric's strategy relating to licensing implicates competitive decisionmaking."); *THX, Ltd. v. Apple, Inc.*, No. 13CV01161HSGDMR, 2016 WL 2899506, at *2 (N.D. Cal. May 13, 2016) ("Access to information about Apple's licensing agreements may thus provide THX with a competitive advantage in negotiating related licenses in the future, particularly with Apple's competitors in the mobile or tablet consumer electronics field."); *ST Sales*, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008) ("Moreover, it is somewhat disingenuous to argue Sales Tech is not Defendants' competitor simply because Sales Tech is in the business of acquiring and enforcing patents, while Defendants manufacture and design automobiles. Plaintiff and Defendants all seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain."); *Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592, at *4 (D. Del. May 18, 2016) ("In bringing a patent infringement action, Blackbird is asserting that Defendants have encroached upon its exclusive right to exploit a specific technology in the marketplace. In other words, Blackbird is essentially declaring that Defendants are improperly competing with it in the marketplace, in contravention of Blackbird's patent monopoly on that technology."); *Hyundai Motor Am. v. Clear with Computs., LLC*, No. 6:08 CV 302, 2009 WL 8657271, at *3 (E.D. Tex. May 11, 2009) ("Similar to the

**Uniloc 2017 LLC v. Cardo Systems, Inc., Not Reported in Fed. Supp. (2019)**

2019 WL 13472203

situation in *ST Sales Tech*, CWC and Hyundai are competitors. CWC and Hyundai both 'seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain.' ") (citation omitted).

4     The Court's discussion does not assume or impute bad faith or other misconduct to BNI or Mr. Feuer. BNI's statement that it intends to rely on an ultimately-improper disclosure from Mr. Feuer appears to be based on a mistaken understanding of the law, rather than out of ill intent. The Court has no reason to doubt the ethics of BNI or Mr. Feuer, and does not so doubt in reaching this decision.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

2016 WL 8738420
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

UNITED STATES of America, et al., Plaintiffs,

v.

AETNA INC. and Humana Inc., Defendants.

Case No. 1:16-cv-01494 (JDB)

|

Signed 09/05/2016

**Attorneys and Law Firms**

Craig William Conrath, Dylan Matthew Carson, Eric J. Mahr, Eyitayo Oritsematosan St. Matthew-Daniel, Miriam Rose Vishio, Peter Joseph Mucchetti, Ryan M. Kantor, Barry James Joyce, Bennett Jorg Matelson, Eric Damian Welsh, Justin T. Heipp, Matthew David Siegel, Patricia Leigh Sindel, Samer Makram Musallam, Sanford Marshall Adler, Yvette F. Tarlov, U.S. Department of Justice, Catherine Anne Jackson, Elizabeth Sarah Gere, Office of the Attorney General for the District of Columbia, Washington, DC, Michael Andrew Undorf, Department of Justice, Wilmington, DE, Christopher R. Hunt, Rachel Michelle Steinman, Timothy Michael Fraser, Lizabeth A. Brady, Office of the Attorney General, Tallahassee, FL, Daniel Stephen Walsh, Monica Anne Sullivan, Office of Attorney General, Atlanta, GA, Robert W. Pratt, Elizabeth Louise Maxeiner, Office of the Attorney General, Chicago, IL, Layne M. Lindebak, Attorney General's Office for the State of Iowa, Des Moines, IA, Beth Ann Finnerty, Brian Francesco Jordan, Thomas Nathaniel Anger, Office of the Attorney General, Columbus, OH, Aaron L. Schwartz, James A. Donahue, III, Tracy Wright Wertz, Commonwealth of Pennsylvania Office of Attorney General, Jennifer Ann Thomson, Office of Attorney General/PA Litigation Section, Harrisburg, PA, Sarah Oxenham Allen, Tyler Timothy Henry, Office of the Attorney General, Richmond, VA, for Plaintiffs.

Christopher Nathan Thatch, John M. Majoras, Michael S. Fried, Geoffrey S. Irwin, Michael R. Shumaker, Jones Day, Arthur Norman Lerner, Astor Henry Lloyd Heaven, III, Kent Alan Gardiner, Shari Ross Lahlou, Shawn R. Johnson, Christie L. Stahlke, David Martin Schnorrenberg, Joseph M. Miller, Crowell & Moring LLP, Edward D. Hassi, Katrina M. Robson, Richard G. Parker, O'Melveny & Myers LLP, Washington, DC, Aaron M. Healey, Jones Day, Columbus, OH, Alex P. Middleton, Paula W. Render, Jeremy J. Gray,

Jones Day, Chicago, IL, Erin L. Shencopp, Frederick P. Santarelli, Thomas B. Helbig, Elliot Greenleaf, P.C., Blue Bell, PA, Thomas Demitrack, Jones Day, Cleveland, OH, Connor T. Lynch, Cynthia A. Merrill, Jeffrey J. Fowler, Kenneth R. O'Rourke, O'Melveny & Myers LLP, Los Angeles, CA, for Defendants.

## REPORT AND RECOMMENDATION NO. 1 OF THE SPECIAL MASTER

Hon. Richard A. Levie (Ret.), Special Master

**\*1** Pending before the Special Master is Defendants Aetna, Inc., and Humana Inc.'s Motion Seeking Modification of the Protective Order (Dkt. No. 73), in which Defendants ask that specially designated in-house counsel be permitted to view "references to and discussions of Confidential Information contained in written submissions to the Court or Special Master, in draft and final expert witness reports, and draft and final exhibits prepared by experts for potential use in their draft and final reports." For the reasons that follow, the Special Master recommends that the Court deny Defendants' Motion.

### I. **Background**

The Court entered the underlying Protective Order in this case on August 12, 2016. (Dkt. No. 54). The Protective Order [¶ E. (1)(c) ] permits Defendants to "file motions with the Special Master seeking modification of this provision [dealing with Permitted Disclosure of Confidential Information] to share Confidential Information with a very small number of specified in-house attorneys, so long as those attorneys are not involved in Defendants' competitive decision-making." [*Id.* at ¶ E(1)(c) ].

Defendants submitted the instant Motion on August 24, 2016, seeking "modification of the Protective Order to permit limited disclosure of confidential information to in-house attorneys—two each at Aetna and Humana—who are not involved in competitive decision making." [Def. Mot. (Dkt. No. 73) at 1].

More specifically, Defendants' proposed modifications would grant in-house attorneys [1] access to

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 65 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

references to and discussions of Confidential Information contained in written submissions to the Court or Special Master, in draft and final expert witness reports, and in draft and final exhibits that were prepared by the experts for potential use in their draft and final reports. This provision shall not permit In-house Attorneys to directly access or review any non-party documents that have been designated as Confidential Information.

[Def. Mot. Ex. 2 (Redlined [proposed] Amended Protective Order) at ¶ E(1)(j) ].

Defendants' proposed amendments also include provisions intended to limit the types of in-house counsel who have access to such confidential information, and to grant non-parties the right to object to disclosure of their information to in-house counsel:

Before any information designated as Confidential Information may be disclosed to any In-house Attorney pursuant to subparagraph E(1)(j) of this Order, the Defendant for whom the In-house Attorney employed must: (1) file an affidavit or declaration of the In-house Attorney certifying that the In-house Attorney does not participate in competitively sensitive decision-making for his or her employer and will abide by the provisions of this Protective Order; (2) obtain the Agreement Concerning Confidentiality in Appendix A to this Order signed by the In-house Attorney; (3) provide this amended Protective Order to non-parties who have produced Confidential Information in this matter; and (4) wait for five days after such notice to affected non-parties is provided before

making the disclosure to the In-house Attorney. Notice to a non-party of a motion for entry of this Amended Protective Order and an opportunity to object thereto shall satisfy the third requirement.

**\*2** [*Id.* at ¶ E(2) ].

In support of their proposed modifications, Defendants note that they do not ask that in-house counsel be permitted to access underlying non-party confidential information, but only "briefs, expert reports, and exhibits thereto" and written submissions to the Court and Special Master which may refer to or discuss confidential information. (Mot. at 1). According to Defendants, "such limited access is necessary to ensure that Defendants are able to participate meaningfully in their defense" because "Defendants' outside counsel need access to individuals familiar" with the healthcare insurance industry. (Mot. at 1-2). Defendants claim that denying in-house counsel access to confidential information would require outside counsel to "redact every draft and final brief and expert report for in-house counsel, depriving their review of much of its value and imposing a time-consuming burden on litigation teams in an expedited proceeding." (Mot. at 2). [2]

Defendants claim that "courts in [the District of Columbia] routinely permit parties' in-house counsel to access confidential materials if they have no role in competitive decision-making." [*Id.* at 2 (citations omitted) ]. Defendants contend that, to restrict in-house counsel access, the government must provide specific facts showing that such limitation is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." [*Id.* at 2 (citations omitted) ].

Finally, Defendants include declarations from the two Aetna in-house counsel and two Humana in-house counsel whom Defendants request be given access to confidential information: Michelle Matiski, Vice President and Head of the Corporate Legal Group at Aetna; John Edward Neugebauer, Vice President and Chief Litigation Officer at Aetna; Matthew Varzally, Senior Counsel at Humana; and Elysia Solomon, Associate General Counsel at Humana. In each declaration, the individual lists his or her responsibilities; asserts that the declarant requires access to confidential information in order to provide legal advice to the declarant's company and to assist outside counsel; states that

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 66 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

"[b]ecause I understand the Company and the questions and concerns of our management, I am better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength of the evidence in terms that the [declarant's company's] executives can understand;" and represents that he or she will not use the documents for any purpose other than supervising outside counsel and advising management in the instant case. [*See* Mot. Exh. 3 (Matiski Decl.) at ¶ 3-4, 6-7, 11; Mot. Exh. 3 (Neugebauer Decl.) at ¶ 3-4, 6-7, 11; Mot. Exh. 4 (Varzally Decl.) at ¶ 3-4, 7, 11; Mot. Exh. 4 (Solomon Decl.) at ¶ 3-4, 6-7, 11]. In their Motion, Defendants represent that these declarations ensure that the in-house counsel will not use any confidential information for any improper purpose, and that the proposed modifications therefore do not pose any risk to the nonparties who provide this information. (Mot. at 3).

**\*3** Plaintiffs oppose Defendants' request. First, Plaintiffs contend that neither of the Defendant corporations should have direct access to the confidential information because companies have an interest in protecting their sensitive information from competitors, and because Plaintiffs, who regularly conduct law enforcement investigations, have an interest in ensuring that companies forthrightly supply information during the course of such investigations without fear that their information may be disseminated to competitors. (Opp. at 1).

Plaintiffs argue that limiting the in-house counsels' access to references and discussion in draft and final briefs, expert reports, and exhibits is insufficient because proposed findings of fact and "expert reports, in particular, are likely to assemble and distill some of the most competitively significant competitor documents and information." (Opp. at 1).

Plaintiffs express particular concern about the chilling effect that disclosure in this particular case may have on Medicare Advantage insurer bids for future coverage periods. "If insurers become concerned that their bidding data could be viewed by their competitors—*i.e.*, Aetna or Humana employees—that could affect their participation or bidding." (Opp. at 1-2).

Plaintiffs assert additional concerns as to whether the particular in-house counsel identified by Defendants—Ms. Matiski and Mr. Neugebauer for Aetna, and Mr. Varzally and Ms. Solomon for Humana—"are appropriate persons to receive confidential information, particularly in this regulated

industry." (Opp. at 2). Plaintiffs cite to various entries in the Aetna and Humana privilege logs which Plaintiffs suggest indicate that these individuals may in fact be involved in competitive decision-making. (Opp. at 2-3). [3]

In reply to Plaintiffs' Opposition, Defendants argue Plaintiffs have failed to show that the in-house counsel at issue are in fact involved in competitive decision making. (Reply at 1-2).

Largely adopting language proposed by the parties, the Special Master issued Special Master Order #1 [Dkt. No. 74] affording non-parties who have already produced or have received subpoenas to produce documents an opportunity to comment, *inter alia*, on the instant Motion. The Special Master received submissions on this matter from 20 non-party Protected Persons [4] who object to Defendant's proposed modifications. These non-parties fall into two broad categories, albeit with some overlap: non-parties who have already provided information to the government and / or Defendants in response to requests issued by the government during its investigation into this matter, or in response to subpoenas issued during the pendency of this litigation; and non-parties who have received subpoenas from parties to this case but have not yet provided responsive information.

**\*4** Specific concerns raised by some, but not all, of the Protected Persons noted the exceptional importance of maintaining the confidentiality of the information sought and/or already provided, arguing that improper disclosure of this information could potentially inflict great harm on the entity which provided it. Likewise, most non-parties have expressed concern about the risk of in-house counsel inadvertently relying on this information when advising their clients regarding business decisions, noting that, once an in-house counsel has learned sensitive information, it will be impossible for that counsel to forget it. Finally, many of the objecting nonparties argue that Defendants have failed to meet the burden to show good cause justifying amending the Protective Order to include disclosure to the identified in-house counsel. These not parties contend, among other arguments, that Defendants failed to demonstrate a sufficient need for in-house counsel to have access where, as here, the Defendants are represented by very experienced antitrust lawyers who have been involved in a large number of prior merger cases.

In response to the non-party comments, Defendants assert that courts routinely grant in-house counsel access to confidential discovery materials. (Def. Resp. to Protected

2016 WL 8738420

Person's Submissions at 2). Defendants also reiterate their earlier arguments that their request seeks only limited access to confidential information. (*Id.* 2-3). In addition, Defendants argue that they require in-house counsel access to confidential material in order to litigate this case effectively because those counsel are "intimately familiar with these developments [in the health insurance industry] and with the broader [health insurance] industry," such as the procedures for obtaining funding and reimbursement from the Centers for Medicare and Medicaid Services (CMS), how organizations such as Defendants "design their benefits," and "how the industry reacts to changing requirements from CMS," and are knowledgeable as to Defendants' "penetration rates within particular geographic areas." (*Id.* at 4-5). By contrast, Defendants argue, any potential risks to non-parties are "speculative and unfounded." (*Id.* at 6-7).

Finally, Plaintiffs also submitted a response to the arguments raised by the Protected Persons in accordance with Special Master Order #1. Plaintiffs' response argues that the non-party comments "articulate the risk of serious harm that would result from Aetna's and Humana's in-house counsel having access to confidential, competitively sensitive information," and support Plaintiffs' position that the current Protective Order appropriately balances the competing interests of enabling Defendants to prepare and defend themselves in this matter, while also protecting the interests of nonparties. (Pl. Response at 1-2).

The Special Master has reviewed all submissions made by the parties and non-parties in this matter. In addition, the Special Master heard argument from the parties and from all non-parties who submitted written comments on the instant Motion and also who chose to participate in the oral argument. This matter is now ripe for resolution.

## II. Legal Standard

The party which seeks to modify a protective order—here, Defendants—bears the burden of showing that good cause exists to justify the desired change. [ *Infineon Tech. A.G. v. Green Power Tech. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005)(Bates, J.)(citing *Alexander v. F.B.I.*, 186 F.R.D. 54, 57 (D.D.C. 1998)) ]. [5]

In determining whether to grant access, the Special Master must balance Aetna and Humana's interest in defending themselves—in other words, their need for in-house counsel

to access this information—against the risk of inadvertent disclosure of that information.

**\*5** Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." [ *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984); *see FTC v. Whole Foods Market, Inc.*, 2007 WL 2059741 at *2 (D.D.C. Jul. 6, 2007) ]. "Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained." [ *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) ]. In conducting such an assessment, a court should consider "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained." ( *U.S. Steel*, 730 F.2d at 1468).

## III. Discussion

Defendants have not met their burden to show that good cause exists to modify the protective order because they have not shown that the need for in-house counsel to have access to the confidential information at issue outweighs the risk of inadvertent disclosure in this case. Additionally, Defendants have failed to demonstrate that the in-house counsel designated by Defendants are not involved in competitive decision-making.

### A. Risk of Inadvertent Disclosure

As the court noted in *F.T.C. v. Advocate Health Care Network*, —— F. Supp. 3d ——, 2016 WL 770099 at *3 (N.D. Ill. Feb. 29, 2016):

'Where in-house counsel are involved in competitive decision making ... the risk of inadvertent disclosure is obviously higher than for retained counsel.' In that context, compartmentalization of protected information from that which may be properly utilized in competitive decision-making is, to borrow Justice Cardozo's phrase used in another context, 'a feat beyond the compass of ordinary minds (citation omitted).' The inescapable reality

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 68 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

is that once an expert—or a lawyer for that matter—learns the confidential information that is being sought, that individual cannot rid himself [herself] of the knowledge he [she] has gained; he [she] cannot perform a prefrontal lobotomy on himself [herself], as courts in various contexts have recognized (citations omitted).

This is so because information, once learned, is impossible to forget. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." [ *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ]. [6]

Indeed, with respect to the type of material at issue here, "the very nature of competitive information makes it difficult to compartmentalize." [ *Saint Alphonsus Medical Ctr. V. St. Luke's Health System*, 2013 WL 139324 at *4 (D. Idaho Jan. 10, 2013) ]. Thus, granting in-house counsel access to confidential information risks placing that counsel "in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [a competitor's] trade secrets." [ *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) ].

Moreover, because of the nature of the health insurance industry and the type of information at issue in this case, the term "competitive decision making" itself should be broadly construed in this case. "The primary concern underlying the 'competitive decision-making' test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is in the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." [ *F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1, 3 (D.D.C. 2015) ]. Providing Defendants' in-house counsel with access to the confidential information of other insurers undoubtedly risks giving Defendants an unfair advantage in competition in the insurance marketplace should the counsel later rely upon that knowledge when advising his or her client with regards to a competitive situation.

**\*6** A not insignificant number of the concerned non-parties, however, do not compete directly with Defendants in the insurance marketplace but, rather, are healthcare providers with whom Defendants regularly negotiate rates for services. Knowing what reimbursement rates these providers have negotiated with other insurers, a provider's enrollment projections, or cost and profitability data for a provider could provide the Defendants with a significant advantage in future negotiations with these providers. [7] As the *Advocate* court explained, "we are not talking about an exchange of documents between two sides in a lawsuit. We are talking about a number of third parties, not targets of any [government] action, who had to give up exceedingly confidential information in response to a government subpoena." (*Advocate*, 2016 WL 770099 at \*5).

Finally, the Special Master finds unpersuasive Defendants' claim that the actual information to be disclosed is limited in scope. The language proffered by Defendants would grant in-house counsel access to any confidential information presented by a non-party, provided that the information is discussed or referenced in a "written submission[ ] to the Court or Special Master, in draft [or] final expert witness report[ ]," or "in draft and final exhibits that were prepared by the experts for potential use in their draft and final reports." [Def. Mot. Ex. 2 (Redlined Amended Protective Order) at ¶ E(1)(j) ]. As such, while Defendants have represented that they believe information to be included in such documents would be limited in scope, the actual language offered does not provide any such restriction. Rather, while in-house counsel may not have access to the actual documents produced by non-parties, nothing in the requested provision would prevent Defendants from including that exact information in a submission, expert report, or related exhibit.

**B. Appropriateness of Designated In-House Counsel** [8]

The Special Master has reviewed the declarations of each in-house counsel [9] and is unpersuaded that these individuals are sufficiently removed from the competitive decision-making process such that they may safely have access to the broad range of confidential information at issue here.

First, Ms. Matiski represents that she "is not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of confidential information in this case." (Matiski Decl. at ¶ 4). She declares that she "cannot provide informed legal advice to the Company, unless I have access to *all*

Case 4:23-cv-03560   Document 145-1   Filed on 05/09/24 in TXSD   Page 69 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

information—including Confidential Information—at issue in this matter." (*Id.* at ¶ 6)(emphasis supplied).

**\*7** Ms. Matiski does claim to be involved in, *inter alia*, "mergers and acquisitions." (*Id.*) Permitting Ms. Matiski to have access to direct competitors' information therefore creates a risk that she may inadvertently disclose such information when advising management regarding future mergers, including those that may impact these competitors.

In addition, an *in camera* review of privileged materials withheld related to Ms. Matiski [10] makes clear that she advises Aetna management regarding negotiations with non-party healthcare providers who have provided information as part of this proceeding, including with certain providers who submitted statements as part of this proceeding arguing that disclosure of their information directly to Defendants creates a risk of significant harm.

Mr. Neugebauer's declaration creates similar problems. Just like Ms. Matiski, he claims that he does "not participate in competitive decision making" and is "not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Neugebauer Dec. at ¶ 4). He does, however, state that he "supervise[s] litigation and provide[s] risk awareness counseling." (*Id.*) Aetna almost certainly litigates with providers from time to time. Indeed, as non-party UPMC pointed out in its submission to the Special Master, publications have quoted Mr. Neugebauer discussing Aetna strategy with respect to providers. [*See* Christopher Cheney, Aetna, Providers Battle Over Billing Practices, Health Leaders Media (Mar. 5, 2015), http://www.healthleadersmedia.com/health-plans/aetna-providers-battle-over-billing-practices].

In addition, an *in camera* review of Aetna privilege log entries related to Mr. Neugebauer show that he is involved in strategic discussions regarding negotiations with providers, and regarding pricing and reimbursement strategy, all of which is contained in the confidential material sought and/or provided in this case. [11] Granting Mr. Neugebauer broad access to non-party information risks creating a situation in which he may inadvertently disclose information learned in the course of this case during litigation with such providers.

Mr. Varzally, from Humana, also avers that he is "not involved in decisions regarding pricing, marketing, distribution,

product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Varzally Decl. at ¶ 2). He does state that he is involved in "litigation and investigation matters" related to "antitrust and competition; intellectual property; bankruptcy; offensive litigation and recoveries; general commercial litigation; member/provider disputes; ERISA; and the TCPA." (*Id.*) As with Ms. Matiski at Aetna, Mr. Varzally's participation in antitrust matters is troubling for purposes of this case. Granting Mr. Varzally access to direct competitors' information creates a risk that he may inadvertently disclose such information when advising management regarding future mergers with or against competitors whose information has been disclosed to him.

**\*8** More concerning, however, is Mr. Varzally's participation in disputes with healthcare providers, which he admits is a key part of his role. The *in camera* review of Mr. Varzally's privileged material confirms that he is regularly involved in litigation concerning provider contracts. [12] Granting him access to the confidential information at issue in this case thereby creates a heightened risk of inadvertent disclosure of that information in ongoing or future litigations or employment.

Finally, Ms. Solomon, like Mr. Varzally, Mr. Neugebauer, and Ms. Matiski before her, declares that she is "not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Solomon Decl. at ¶ 4). She declares, however, that she oversees all litigation matters handled by the Humana Law Department, including, presumably, all of the litigation in which Mr. Varzally is involved. An *in-camera* review of documents prepared by or addressed to Ms. Solomon confirms that she is involved in such litigation. [13]

For all of these reasons, Defendants have not met their burden to show that good cause exists to amend the Protective Order to permit any of the above-listed in-house counsel to access to confidential information in this case. This conclusion is not based on a "general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." (*U.S. Steel*, 703 F.2d at 1468). Rather, it is reflects the conclusion based on the declarations submitted that where, as here, a very significant number of non-parties have submitted highly confidential information on a wide variety of topics, "the specific facts" of this situation "indicate a probability that confidentiality ... would

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 70 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

be seriously at risk" if in-house counsel were granted access to that information in the fashion sought by Defendants in their proposed amendment. (*Id.* at 1469).

### C. In-house counsel's need for this information

As balanced against the significant risk associated with the potential for inadvertent disclosure, Defendants have not provided a sufficient showing of need to justify granting in-house counsel blanket access to any confidential material contained in submissions and expert reports and exhibits.

While the Declarations of Ms. Matiski, Mr. Neugebauer, Mr. Varzally, and Ms. Solomon all assert that the declarant is "better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength the evidence in terms that the business executives can understand," none of the declarations explain what specific benefit the in-house counsel will confer or how defense of the companies will be prejudiced or harmed by lack of access.

Defendants' Response to the Submissions of Protected Persons (non-parties) asserts that "the health-insurance industry is highly complex and highly regulated, with significant changes occurring on a regular basis." (Def. Resp. at 4). According to Defendants, the in-house counsel are "deeply knowledgeable about how the Centers for Medicare and Medicaid Services ('CMS') funds and reimburses Medicare Advantage Organizations like Defendants, how such organizations design their benefits, and how the industry reacts to changing requirements from CMS. Similarly, in-house counsel will have special insight into penetrations rates within particular geographic areas, a topic that could well be relevant to this litigation." (*Id.* at 4-5).

**\*9** Defendants' showing of need simply is not persuasive. While the Special Master does not doubt that in-house counsel have knowledge of and experience in these areas, Defendants have retained highly qualified and sophisticated outside counsel with experience in other merger cases and can be expected to retain equally qualified experts.[14] It is unclear—and Defendants do not convincingly explain—what special insight the in-house counsel will offer into such topic areas here, in the abstract, without reference to any particular information or document, particularly when the information that is being withheld concerns companies that the in-house

counsel do not represent. *See Advocate,* 2016 WL 770099 at \*6 ("It is difficult to see how [the defendant's in-house counsel] would have any special insight into confidential materials from companies they don't work for—or at least that they would have a familiarity sufficiently different from that possessed by their outside counsel that could justify the risk of exposing the highly confidential information provided by the defendants' competitors.").

All of the declarants state that they are "better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength of the evidence in terms that the business executives can understand...." (Mot. Exh. 3 at Matiski ¶ 6; Neugebauer ¶ 7; Exh. 4 at Varzally ¶ 7; Solomon ¶ 7). Again, the Special Master does not doubt that the declarants are highly qualified attorneys, but the declarants have not explained *why* they are better positioned to explain these matters to their corporate management, or why their respective "business executives" have a need to understand the legal arguments in a way that only the in-house counsel can explain. Given the quality of retained outside counsel in this case, the Special Master cannot accept this proposition of asserted need.

Moreover, while it is true, as Defendants argue, that some "courts in this District have recognized that 'it would be extremely difficult, if not impossible, for the defendants' outside counsel to prepare their case for trial without the assistance of in-house counsel,' " [Mot. at 3 (quoting *United States v. Sungard Data Sys. Inc.,* 173 F. Supp. 2d 20, 21 (D.D.C. 2001)) ],[15] preventing in-house counsel from viewing confidential information does not prevent them from assisting Defendants' retained counsel. To the contrary, in-house counsel may certainly assist outside counsel—they must just rely upon redacted versions of submissions, expert reports and exhibits. [*See* *F.T.C. v. Sysco Corp.,* 83 F. Supp. 3d 1, 3 (D.D.C. 2015)]. To the extent that outside counsel require in-house counsel assistance with respect to particular documents, nothing prevents outside counsel from requesting that in-house counsel have access to that particular information based upon more specific and compelling grounds than are present at this juncture.

### D. Other concerns

The Special Master finds persuasive Plaintiffs' argument that granting Defendants' in-house counsel access to the

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 71 of 133
United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)
2016 WL 8738420

information at issue may deter non-parties from producing information to the government in future cases. (Pl. Resp. to Non-party Submissions at 1-2; *see* 9/1/16 Tr. at 53). While this concern, standing alone, might not be a sufficient basis upon which to recommend against in-house counsel access, the government has presented valid concerns that such disclosure may impede future law enforcement investigations. [16]

**\*10** Additionally, other cases which have permitted in-house counsel to access to confidential information typically include in the protective order a penalty provision designed to deter against misuse of confidential information. The penalty provision in *Whole Foods Market*, for example, stated that:

> Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority and Judge Friedman will urge that authority to suspend or disbar the violator.

(2007 WL 2059741 at \*3). The penalty provision in *Sysco* was similar. (See 83 F. Supp. 3d at 5).

In the Response to the Protected Person's submissions and again at oral argument, however, Defendants expressed an unwillingness to accept such a provision. Defendants contend that "it is extremely unlikely that in-house counsel would gain any knowledge that would even make it possible that they could breach the Protective Order," and that "the parameters set forth in Defendants' modified Protective Order—which the designated in-house counsel agreed to under penalty of perjury—will sufficiently deter those individuals (who are all officers of the court) from violating the Order." (Def. Response at 9; see 9/1/16 Tr. at 30-31).

The Special Master does not question the integrity of the in-house counsel at issue here. Indeed, "like retained counsel ... in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." (*U.S. Steel*, 730 F.2d at 1468). Nevertheless, given the type of highly confidential information at issue here, and cognizant of the discomfort that numerous non-parties have expressed concerning the possibility of in-house counsel having access to that highly confidential information, a penalty provision at least would have at least offered a step towards mollifying (albeit not relieving) non-party concerns. To the extent that Defendants contend that a breach of the Protective Order is unlikely, the unlikeliness of a breach suggests that Defendants should be more, rather than less, willing to accept such a provision.

To be sure, while a penalty provision arguably might provide some level of deterrence against improper disclosure, it cannot "un-ring the bell" in the case of an inadvertent disclosure. Inclusion of a penalty provision therefore does not resolve all of the other above-listed and serious risks associated with granting in-house counsel access to confidential information. For this reason, even if Defendants had agreed to or even suggested including a penalty provision, it would not change the Special Master's recommendation.

Likewise, some cases and some of the Protected Persons here have suggested that the issue of in-house counsel access to confidential information might be dealt with by establishing two tiers of confidentiality—(1) confidential and (2) "highly confidential" or "highly confidential—outside counsel only." Defendants oppose creating this type of provision as well, contending that it "would require Protected Persons to re-designate large swaths of confidential material already produced to DOJ, which would consume additional time in an already-condensed schedule." (Def. Resp. to Protected Persons Submissions at 8). On this point, the Special Master agrees with Defendants. This case is being tried on a highly expedited schedule. It would be highly inefficient to require re-designation of all material already produced.

### IV. Conclusion

**\*11** For all of these reasons, the Special Master recommends that the Court deny Defendants' Motion.

### V. Certification

As noted above, Plaintiffs orally and in writing have objected to this recommendation. Given that this recommendation involves a provision in the Protective Order entered by the Court, the Special Master, pursuant to paragraph 5 of the appointment order (Dkt. 66) certifies this Report and Recommendation for appeal to the Court. The parties are urged to inform the Court within 24 hours of the issuance of this Report and Recommendation whether there will be a need for appeal. Regardless of the outcome of any appeal to the Court on this issue, there is no need for any party to delay commencement of any appropriate non-party discovery.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 8738420

## Footnotes

1    Defendants' requested modifications define "in-house attorneys" as "up to two attorneys who are employees of each Defendant, for whom the Defendant has filed the In-house Attorney's affidavit or declaration certifying that the In-house Attorney does not participate in competitively sensitive decision-making for his or her employer and will abide by the provisions of this Protective Order, and who have signed the Agreement Concerning Confidentiality" attached to the Protective Order. [Mot. Exh. 2 at ¶ A(1)(s) ].

2    Even permitting in-house counsel to view confidential information would not alleviate all of the burden associated with redactions, of course, as the parties will still be required to redact all confidential information contained in final public versions of documents.

3    Upon the request of the Special Master, Plaintiffs identified ten privilege log entries applicable to each of the four in-house counsel, and Defendant provided the relevant pages to the Special Master for *in camera* review. (See Pl. Aug. 31, 2016 email to the Special Master and parties; Def. Sept. 1, 2016 Submission to the Special Master).

4    Non-party Protected Persons objecting to Aetna's proposed modifications include: Advocate Health Care Network; Anthem Inc. (treated as a non-party for purposes of this case); Aultman Health Foundation; Baylor Scott & White Holdings; Blue Cross and Blue Shield of Florida, Inc.; Centene Corporation; Cigna, Inc. (treated as a non-party for purposes of this case); CommunityCare Managed Healthcare Plans of Oklahoma; Duke University Health Systems, Inc.; Essence Healthcare, Inc.; Guidewell Mutual Holding Corporation; Health Alliance Medical Plans, Inc.; Health Options, Inc.; Iowa Health System d/b/a UnityPoint Health; Medical Mutual of Ohio; Mercer Health and Benefits LLC; Tufts Associated Health Plans, Inc.; UPMC and UPMC Health Plan, Inc.; UnitedHealth Group Inc.; and University of Colorado Health. In response to Special Master Order No. 1, some of the above-listed Protected Persons and additional non-parties also provided comment expressing concerns with other aspects of the Protective Order and/or with other aspects related to the treatment of protected information. These other arguments and comments are not properly before the Special Master at this time. Procedures for addressing other concerns with the current Protective Order are addressed in Special Master Order No. 2, filed on September 2, 2016. (Dkt. No. 92).

5    The Special Master views the Protective Order entered by Judge Bates as affording Defendants the opportunity to seek the relief that is encompassed by the instant Motion. The Special Master does not understand the language in the Protective Order here as shifting the burden on establishing entitlement to a modification from the movants—here, the Defendants. At oral argument Defendants acknowledged that they have the burden of establishing good cause and asserted that, in their opinion, they meet the "good cause" standard. (9/1/16 Tr. at 18-19).

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 73 of 133

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420

6    Adding to the concerns is the reality that the persons for whom access is sought may be promoted up the
     corporate hierarchy or change employment to an entity having an interest in the information to which access
     is sought here.

7    At oral argument, Defendants represented that they did not intend to include such information in their
     submissions, expert reports, or related exhibits. The issue, however, is not only limited to whether, at this
     juncture, they anticipate use of such information. Rather, because the subpoenas and investigative demands
     have specifically targeted such information, under the type of blanket order that Defendants seek, any such
     information could be included in these reports and thus could potentially be available to in-house counsel.

8    During oral argument counsel for each Defendant indicated that the named individuals for whom access
     is sought are the most important persons on behalf of each Defendant to have need for the access to the
     information at issue. (9/1/16 Tr. at 76).

9    Here, as in *Advocate*, "[t]he course of the Declarations is essentially identical, with each Declaration parroting
     the language of the confidentiality order and assuring that the Declarant does not participate in the executive
     level decision-making; or business decisions regarding pricing, marketing, or design; competitive decision-
     making in areas like expansion, pricing or strategies." (⚐ 2016 WL 770099 at *4).

10   Of the ten documents provided for *in privilege* review, four strongly suggest that Ms. Matiski is involved in such
     negotiations. If this R&R is appealed to the Court and the Court wishes to review *in camera* the documents
     considered by the Special Master, the documents with respect to Ms. Matiski or any of the declarants will
     be provided to the Court.

11   Of the ten documents provided concerning Mr. Neugebauer, three provide evidence of his involvement in
     these matters.

12   Three of the ten documents provided involving Mr. Varzaly show his participation in these matters.

13   Seven of the ten documents provided regarding Ms. Solomon show her involvement in such litigation.

14   The submission of non-party UPMC provides extensive detail about the experience of the law firms and
     certain lead counsel for the firms retained by Defendants to demonstrate the experience of retained outside
     counsel. (*See* UPMC Submission at 11-12 and n.4).

15   Defendants' citation to *Sungard* must be analyzed in light of the fact that trial in that case there was set occur
     in 17 days from the date of the Court's order. [⚐ 173 F. Supp. 2d at 21] ("The lawsuit is on a track to trial
     which can only be described as heroic. Next to it, the renowned 'rocket docket' is a slow moving train.") While
     timing alone is not a dispositive factor, it clearly was significant in the decision there. The discovery timeline
     in this case, while condensed, does not come close to the situation in *Sungard*.

16   In *F.T.C. v. Sysco Corp.*, ("Sysco II"), the court determined that disclosure of the identities of various entities
     who provided comment to the FTC regarding the pending merger at issue in that case would not have a
     chilling effect on future FTC investigations. (*F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015)).
     That case is inapposite here. First, the categories of information in this case are far broader than the list of
     names at issue in *Sysco II*. Second, the court in that case noted that witness names have become public in
     other cases without resulting in a demonstrated chilling effect. (*Id.*) Finally, in that case, only one declarant
     (out of 90) declared that he would not have voluntarily offered information to the FTC had he known that
     his name would be made public. (*Id.*) By contrast, in this case, the type of information at issue is unlikely
     to become public at trial.

2016 WL 8738420

The actual information at issue here is far more detailed than that in *Sysco II*, and concerns confidential business details related to non-parties, rather than simply the names of the non-parties. Numerous non-parties have asserted that they provided information to the government based in large part upon the government's express assurances that the information would be protected. The details of this case, therefore, create a much stronger possibility that granting in-house counsel access may result in a chilling effect on future investigations.

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 75 of 133
Case 1:10-cv-04496-NGG-RER Document 102 Filed 05/03/11 Page 1 of 29 PageID #: 1266
Page 1 of 29

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, et al.

Plaintiffs,

v.

AMERICAN EXPRESS COMPANY, et al.

Defendants

Civ. No.: 10-cv-4496 (NGG)(RER)

## STIPULATION   AND   **PROTECTIVE ORDER**

In order to protect confidential business and trade secret information consistent with the public's right of access to the Court's records and processes, the Court hereby enters the following Protective Order pursuant to Fed. R. Civ. P. 26(c)(1):

I.     **Materials Which May Be Designated Confidential or Highly Confidential**

1.     Any documents, data, answers to interrogatories, responses to requests for admission, deposition testimony, deposition transcripts and exhibits, other responses to requests for information and/or other written information, produced in response to discovery requests in this litigation, including, but not limited to, (1) any such material initially produced to any Plaintiff by any party or non-party, either voluntarily or in response to a Civil Investigative Demand, in connection with any Plaintiff's pre-complaint investigation; and/or (2) any such material initially produced in any other litigation (hereinafter, collectively, "Discovery Material"), may be designated by a producing party or non-party as "Confidential" or "Highly Confidential" under this Protective Order.

1

2.    "Confidential Information" shall include any Discovery Material which the producing party or non-party reasonably believes not to be in the public domain and contains any trade secret or other confidential, strategic, research, development, commercial information, or protected personal information (e.g. social security numbers, credit card numbers, etc.).  To facilitate prompt responses to discovery, unless stated otherwise by the producing party or non-party, all Discovery Material produced by each party or non-party in the course of the litigation including deposition testimony and responses to interrogatories or requests for admission shall presumptively be considered and treated as Confidential Information under the terms of this Order during the discovery period.  This presumption of Confidential Information during pretrial discovery shall be without prejudice to, and shall be inapplicable to, the rights of any party to argue that (a) Discovery Material is not entitled to protection as Confidential Information, and (b) all or part of the pleadings filed in this action and the trial of this action, including the evidence admitted at trial, should be open to the public.

3.    "Highly Confidential Information" shall include any Confidential Information which the producing party or non-party reasonably believes to be so competitively sensitive that it is entitled to extraordinary protections.

4.    Any copies or reproductions, excerpts, summaries, or other documents or media that paraphrase, excerpt, contain or otherwise reveal the substance of (other than in general terms) Confidential Information or Highly Confidential Information shall also be treated as Confidential information or Highly Confidential Information pursuant to this Order.

II.    **Designation of Discovery Materials as Confidential or Highly Confidential**

5.    Any Discovery Materials that are to be designated "Confidential" or "Highly Confidential" may be so designated by the producing party or non-party by: (a) furnishing a

separate written notice to counsel for the party receiving such Discovery Materials at the time of their production or as soon thereafter as practicable specifically identifying the Discovery Materials as "Confidential," or "Highly Confidential" and promptly thereafter providing copies (bearing the same bates numbers as the original copies) of any such Discovery Materials bearing such designation(s); or (b) providing copies of the Discovery Materials so designated that are stamped with the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." Discovery Material stamped or designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER," including those produced, stamped or similarly designated in prior litigation or investigations and made available in this action, shall be treated as Confidential or Highly Confidential, respectively, for the purposes of this Order. However, any material initially designated as Confidential or Highly Confidential in prior litigation, which subsequently lost its designation pursuant to a court order, or was publicly filed in the prior litigation, shall be treated in this action consistent with its final status in the prior litigation. To the extent a producing party makes documents available for inspection and copying at the producing party's or counsel's location prior to confidentiality designation of the documents, such materials shall be treated as Highly Confidential until such time as they are produced and assigned confidentiality designations in accordance with this Order. To the extent that duplicate copies of documents or transcripts have been produced with inconsistent confidentiality designations, the highest level on any such copy shall apply to all such copies.

6.      If Confidential Information or Highly Confidential Information is disclosed to any person other than in the manner authorized by this Order, the party responsible for the disclosure

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 78 of 133
Case 1:15-cv-34490-RGG-REN Document 102 Filed 05/09/21 Page 4 of 29 PageID 3: 1269
Page 4 of 29

shall, immediately upon learning of such disclosure, inform the producing party or non-party of

all pertinent facts relating to such disclosure and shall make every effort to retrieve the

designated material and to prevent the occurrence of any further disclosure unauthorized by this

Order.

       7.    Inadvertent production of or failure to designate any information as Confidential

or Highly Confidential shall not be deemed a waiver of the producing party's or non-party's claim

of confidentiality as to such information, and the producing party or non-party may thereafter

designate such information as Confidential or Highly Confidential as appropriate. At such time,

arrangements shall be made for the return to the producing party or non-party of all copies of the

inadvertently misdesignated document(s) and for the substitution, where appropriate, of properly

labeled copies of such documents. All previously-produced copies of such documents that were

inadvertently misdesignated shall be destroyed by the receiving party or parties upon receipt of

replacement copies of such documents with the proper designation.

       8.    Inadvertent production of any document in this litigation in response to discovery

requests, subpoenas, or any agreement by any party or non-party, that a party or non-party later

claims should have been withheld on grounds of a privilege, including the work product doctrine

(collectively referred to hereinafter as an "Inadvertently Produced Privileged Document"), will

not be deemed to waive any privilege or work product protection, subject to the following

provisions:

         (a)  A party or non-party may request the return of any document that it

        inadvertently produced by identifying the Inadvertently Produced Privileged

        Document and stating the basis for withholding such document from production.

        If a party or non-party requests the return, pursuant to this paragraph, of such an

4

Inadvertently Produced Privileged Document then in the custody of one or more parties, the possessing parties shall, within five (5) business days, destroy or return to the requesting party or non-party the Inadvertently Produced Privileged Document and all copies thereof and shall expunge from any other document or material any information solely derived from the Inadvertently Produced Privileged Document, provided, however, that the receiving party may retain one copy of such Inadvertently Produced Privileged Document for the sole purpose of challenging the assertion of privilege by the producing party, in which case: (1) the receiving party shall notify the producing party in writing of its intention to retain a copy for such purpose within ten business days of the receipt of the notice demanding return of such Inadvertently Produced Privileged Document, and (2) either party may thereafter seek a ruling from the Court with respect to the issue of whether the Inadvertently Produced Privileged Document is indeed privileged, whether by way of a motion to compel, motion for a protective order, or otherwise. All such motions shall be submitted in camera. Absent an order from the Court, no Inadvertently Produced Privileged Document shall be used for any purpose other than for challenging an assertion of privilege in accordance with the terms of this Paragraph.

(b) No party may assert as a ground for challenging privilege the mere fact of the inadvertent production. Nothing in this Order shall preclude a party from arguing based on the underlying fact and circumstances that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a

5

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 80 of 133
Case 1:11-cv-34490-RGC-REK Document 102 Filed 05/03/11 Page 6 of 29 PageID 1271
Page 6 of 29

waiver, except that, to the extent previously-produced documents were inadvertently produced and retracted in any prior litigation, the inadvertent reproduction of such documents in this case shall not be deemed a waiver of privilege.

(c)  If the recall of a document involves redaction of the inadvertently produced document, the redacted version of the document shall be provided within ten (10) business days together with a privilege log that includes the information required by Local Civil Rule 26.2 and the identification of (1) all recipients of the document as reflected on the document and in that document's metadata, if applicable, and (2) the files or sources from which the document was collected.

(d)  If the recall of a document is made during the taking of a deposition or shortly before the occurrence of a deposition, the producing party's counsel, the examining counsel and defending counsel shall meet and confer in good faith at the earliest possible opportunity to determine appropriate steps under the circumstances, consistent with this protocol. In the event the claim of privilege is withdrawn or the Court determines the document to be not subject to a valid claim of privilege, if counsel for the parties and other defending counsel do not agree otherwise, the Court shall determine any appropriate remedy, including whether and to what extent a reopening of the deposition may be necessary. Nothing in this shall prohibit the ability of examining counsel to *voir dire* a deponent about the matters set forth in Local Civil Rule 26.2 concerning the document.

(e) If a party's expert report or expert testimony relies on a document which another party identifies as Inadvertently Produced Privileged Document after service of the expert's report or rendition of the expert's testimony, then the party sponsoring the expert report or expert testimony will, subject to the procedures in this Protective Order, and if necessary, remove any reference to the Inadvertently Produced Privileged Document from the expert's report or expert's testimony and be allowed to substitute other documents or information for the Inadvertently Produced Privileged Document. Neither the expert's report nor the expert's testimony can be stricken in whole on the ground that the expert's report or expert's testimony had previously relied on an Inadvertently Produced Privileged Document. In the event that an expert's report or expert's testimony has relied on an Inadvertently Produced Privileged Document, the parties agree to meet and confer on a schedule to allow the party propounding an implicated expert report (whether an initial, response or rebuttal report) to modify or supplement such expert report within a reasonable period of time.

9. The parties shall serve a copy of this Order simultaneously with any discovery request made to or subpoena served on any non-party in this action. Within ten (10) business days after the Court's entry of this Order, each Plaintiff shall provide a copy of this Order to any person or entity (a "Protected Person") that produced documents, material or information ("Investigation Materials") to that Plaintiff (the "Investigating Plaintiff"), either voluntarily or under compulsory process, during any Plaintiff's pre-complaint investigation of Defendants concerning the subject matter of this litigation. Within twenty (20) business days after receipt of this Order, any Protected Person or its counsel may designate as Confidential or Highly

7

Confidential, in compliance with this Order, any part or all of its Investigation Materials that were provided to any Investigating Plaintiff. Such designations constitute a representation to the Court that such Protected Person believes, in good faith, that the information so designated constitutes Confidential or Highly Confidential Information as defined in this Order. For Investigation Materials previously marked by the Protected Person as "Confidential" or "Highly Confidential" at the time of production to the Investigating Plaintiff, the Protected Person may make a designation under this Order by providing written notice to the Investigating Plaintiff that the Investigation Materials shall be designated with the same confidentiality level marked upon the documents, as those terms are defined by this Order. A prior label of "Confidential Treatment Requested" shall be treated as a label of "Confidential—Subject to Protective Order" under this Order if such Investigation Materials are designated as Confidential by the Protected Person's written notice pursuant to this Paragraph. If the Protected Person elects to designate any Investigation Materials with a confidentiality level that differs from the way they were marked at the time of production to the Investigating Plaintiff, such re-designation shall be made by delivering to the Investigating Plaintiff a replacement copy of the Investigation Materials that is identical to the previously produced version except for the confidentiality label. If a Protected Person determines that this Order does not adequately protect its Investigation Materials, it may, within twenty (20) business days after receipt of a copy of this Order, seek additional relief from the Court. If a Protected Person seeks additional relief from the Court, or otherwise objects to the requirements of this Order, the Investigation Materials for which additional protection has been sought shall not be provided to other Parties until the Court has ruled. All Investigation Materials provided by Protected Persons that are not designated by the Protected Person as Highly Confidential or Confidential pursuant to this Order (unless the Protected Person has

requested additional relief from the Court pursuant to this paragraph) will not be treated as Confidential under this Order, despite any prior designation of confidentiality. If Investigation Materials are requested from a Plaintiff in discovery, that Plaintiff shall produce such materials (subject to any objections permitted by law) only after the expiration of the time limits specified in this paragraph for providing notice to Protected Persons and an opportunity for Protected Persons to make confidentiality designations for their Investigation Materials, or to seek additional relief from the Court, as specified in this paragraph. If applicable state statutes require additional business days following a Protected Person's receipt of a copy of this Order before a Plaintiff State is permitted to provide the Protected Person's Investigation Materials to other Parties, such Plaintiff State shall comply with that state's statutory time frame as soon as feasible.

10.    Deposition testimony and the transcripts and video recordings thereof obtained during pretrial discovery shall be treated as Highly Confidential for a period of 40 days (or for as many days as the parties shall agree), after receipt of such deposition transcript and/or video recordings, to allow time for the deponent or counsel for that deponent, or any party or counsel to any party, to designate such material as Confidential or Highly Confidential. Confidential or Highly Confidential Information shall be designated by page and line number, and video cassettes, DVDs or other storage media shall be labeled in accordance with the provisions of this Order. Transcripts or parts of transcripts not designated as Highly Confidential or to contain Highly Confidential Information, or designated as Confidential or to contain Confidential Information, shall be deemed neither Confidential nor Highly Confidential, unless and until any portion of the testimony is re-designated by the Court or by the deponent or counsel for that deponent. The court reporter shall include on the cover page of each volume of each deposition a

clear indication of whether the deposition contains Confidential or Highly Confidential Information. Any document designated as Confidential or Highly Confidential that is marked as an exhibit in any deposition shall be treated according to the designation of that document prior to the deposition. Notwithstanding the foregoing, nothing in this paragraph affects the confidentiality designation of those deposition transcripts described in paragraph 5 herein.

III.   **Permissible Uses of Discovery Material**

11.   All persons obtaining access to Discovery Material produced in connection with this action shall use such Discovery Material only for the purpose of this litigation and not for any other purpose, except as provided in Paragraph 27. Any person found to have made an impermissible use of any Discovery Material may be subject to, without limitation, appropriate civil penalties including for contempt of court. Nothing in this Order shall limit or restrict a Party's rights, if any, to use its own Discovery Material or any information obtained independent of discovery in this action in any manner that the party deems appropriate.

12.   Nothing herein shall impose any restrictions on the use or disclosure by a party or witness of documents, material or information obtained by such party or witness independently of the discovery proceedings in this action, whether or not such documents, material or information are also obtained through discovery proceedings in this action. In addition, nothing herein shall alter or affect any restriction on the use or disclosure by a party or witness of documents, material or information obtained by such party or witness subject to any order of any other court in any other proceeding or subject to any contractual, statutory or other obligation.

13.   Confidential Information may be disclosed only to the following persons:

(a)   The Court;

10

(b)    Outside counsel for any party, including associated personnel necessary to assist outside counsel in the action, such as litigation assistants, paralegals, and secretarial or other clerical personnel.  For purposes of this Protective Order, counsel for the United States Department of Justice and for the Attorney General of each Plaintiff State and their associated personnel shall have the same rights as outside counsel;

(c)    Consultants, experts or litigation support services, including outside copying services, court reporters, or companies engaged in the business of supporting computerized or electronic litigation discovery or trial preparation, retained by a party for the purpose of assisting that party in this action, provided that they are not presently, and have no present plans to become, an employee or consultant (except herein) of any other party to this action.  Further, in the event a party wishes to disclose Confidential Information to a consultant or expert that is employed by, a consultant (except herein) of, or who has a present plan to become an employee or consultant of, any participant in the payment services industry (excluding economists, IT consultants, accountants, behavioral psychologists, statisticians, and attorneys, whose primary role in the industry is testifying or consulting in legal and regulatory proceedings) (an "Industry Participant"), then such party (the "Notifying Party") shall notify the party that produced such Confidential Information (the "Producing Party"), and provide ten (10) business days written notice during which the Producing Party may seek an Order from the Court precluding such disclosure. The Notifying Party shall not disclose any such Confidential Information to an Industry Participant absent either a ruling from the Court rejecting the challenge of a Producing Party or the passage of ten (10) business days without written notice from the Producing Party that it is seeking an order from the Court precluding disclosure;

11

(d)     Associated personnel of any person within categories (a) through (c) for whom access to Confidential Information is necessary to assist such persons in the action, including any Court personnel assisting the Court, secretarial or other clerical personnel, stenographers or other person involved in taking or transcribing or videotaping of testimony in this action, and principals and employees of the firm with which any consultant or expert as defined in paragraph (c) is associated;

(e)     Any other person as to whom the party or non-party producing the Confidential Information has consented to disclosure in advance and in writing, on notice to each party hereto; and

(f)     In-house counsel, legal assistants, and other legal staff for each of the parties.

14.     Highly Confidential Information may be disclosed only to any persons falling within categories (a) through (e) in paragraph 13 above.

15.     Notwithstanding the provisions in paragraphs 13 and 14 above, Confidential and Highly Confidential Information may be disclosed, at deposition or otherwise, to any employee of the party or non-party producing such information or to any author or recipient of the Confidential or Highly Confidential Information unless a different result is agreed to by counsel for the parties. Provided, however, (1) that counsel for the Plaintiffs shall confer with counsel for American Express regarding any limitations on the nature or types of American Express documents that may not be shown to American Express employees working in certain departments or divisions of American Express; and (2) that counsel for American Express shall raise with counsel for plaintiffs any objections they have to disclosure of any American Express

documents to an American Express witness three (3) business days in advance of the deposition of any such witness, absent good cause.

16.     Counsel for a party may disclose Confidential or Highly Confidential Information to any actual or potential witness provided counsel has obtained prior written consent of counsel for the party or non-party who produced such information. Such consent shall not be unreasonably withheld. Notwithstanding the provisions in paragraphs 13 and 14 above, consent need not be obtained if (i) the person is an author or recipient of the Confidential or Highly Confidential Information; or (ii) the person is a former employee of the producing party or non-party and is known to have prior knowledge of the specific document containing the Confidential or Highly Confidential Information to be disclosed; or (iii) the person is a former employee of the producing party or non-party and is reasonably likely to have had prior knowledge of the subject matter referenced in the Confidential or Highly Confidential Information to be disclosed. Information may not be disclosed under clause (iii) if the person is a current employee or consultant (excluding those retained exclusively for the purposes of this litigation and covered by Paragraph 13(c)) or reasonably expected to be a future employee or consultant (excluding those retained exclusively for the purposes of this litigation and covered by Paragraph 13(c)) of any other named party to this action or any competitor of any party to this action.

17.     Persons described in paragraph 13(b) (and their associated personnel) shall be deemed bound by the terms of this Order upon its entry by the Court. A party disclosing Confidential Information or Highly Confidential Information to a person described in paragraph 13(c) (and associated personnel) or any person described in paragraph 16 must first: (i) advise the recipient that the information is Confidential or Highly Confidential Information and may

13

only be used as specified in this Order; (ii) provide the recipient with a copy of this Order; and

(iii) have that person execute a confidentiality agreement stating the following:

"I, [name, position of employment], hereby acknowledge and agree that I am about to receive confidential information. I certify my understanding that such information is to be provided to me pursuant to the terms and restrictions of the Protective Order of [date entered] in [this action] (the "Order"). I have been given a copy of and have read this Order and agree to be bound by its terms."

## IV.    <u>Challenges to Confidential or Highly Confidential Designations</u>

18.    If any party disagrees with the designation by the producing party or non-party of any Discovery Material as Confidential or Highly Confidential Information, then the parties to the dispute, after providing notice to all parties in this action, will attempt first to resolve the dispute on an informal basis before presenting the dispute to the Court. All items objected to shall continue to be treated as Confidential or Highly Confidential pending resolution of the parties' dispute. If the dispute can be resolved, all parties shall promptly be informed of the resolution. If the dispute cannot be resolved informally, the producing party or non-party bears the burden of persuading the Court that the information is in fact Confidential or Highly Confidential within the definition(s) of those term(s) set forth above. Discovery Material shall not be entitled to a Confidential or Highly Confidential designation where the disputing party demonstrates that such material was in the public domain at the time of, or has become public since, its designation. Nothing in this order precludes any party from challenging a confidentiality designation on any other ground.

19.    Entering into, agreeing to, and/or complying with the terms of this Order shall not: (a) operate as an admission by any party that any particular documents, material or information contain or reflect trade secrets or any other type of confidential, proprietary or

commercially-sensitive information; or (b) prejudice in any way the right of a party at any time to: (i) seek a determination by the Court of whether any particular document, item of material or piece of information should be subject to the terms of this Order; (ii) seek relief on appropriate notice from any provision(s) of this Order, either generally or as to any particular document, item of material, or piece of information; (iii) object to any discovery request, including the right to assert that no discovery should be had of or relating to certain documents or information; (iv) seek a higher level of protection than provided for by this Order if the party believes that circumstances warrant that higher level of protection; (v) seek documents or other information from any source; or (vi) seek more flexible procedures at trial for the introduction and use of evidence or information designated pursuant to this Order. In any instance where a producing party or non-party asserts a higher level of protection to Discovery Material after its initial production, the higher protection level shall apply to the materials only as of the time of their redesignation. Persons who obtain access to such materials prior to their redesignation shall, from the time of notice to them of the materials' redesignation, restrict their review or use of those materials in accordance with the higher protection level.

V.  **Deposition Procedures**

20.     At any deposition, when counsel for a party or the deponent deems that the answer to a question will result in the disclosure of Confidential or Highly Confidential Information, counsel shall have the option, in lieu of taking other steps available under the Federal Rules of Civil Procedure, to request that all persons other than the reporter, counsel and individuals specified in paragraphs 13 and 14 hereof who have access to the appropriate category of information, leave the deposition room during the Confidential or Highly Confidential portion of the deposition. The failure of such other persons to comply with such requests shall constitute

15

substantial justification for counsel to advise the witness that he or she need not answer the question pending.

21.    Any deposition testimony concerning a Confidential or Highly Confidential document produced by a non-party will be marked by the court reporter or videographer as Confidential or Highly Confidential on the deposition transcript or videotape.

## VI.    Efforts by Non-Parties to Obtain Confidential Information

22.    If any party has obtained Confidential or Highly Confidential Information under the terms of this Order and receives a subpoena or other compulsory process commanding the production of such Confidential or Highly Confidential Information, such party shall notify the producing party or non-party no later than seven days following receipt of the subpoena (but in no event later than seven days prior to the date set in the subpoena for the production of such subpoenaed information), including in such notice the date set in any subpoena or other compulsory process for the production of such subpoenaed information and a copy of the subpoena, so that the producing party may file a motion for protective order or to quash the subpoena. The subpoenaed party shall not produce any Confidential or Highly Confidential Information in response to such subpoena or other compulsory process without the prior written consent of the producing party or non-party unless in response to an order of a court or an administrative tribunal of competent jurisdiction.

23.    The parties will not object to the producing party or non-party having a reasonable opportunity to appear in the litigation or other proceeding commanding disclosure of such Confidential or Highly Confidential Information for the sole purpose of seeking to prevent or restrict disclosure thereof.

VII.    **Filing Under Seal**

24.    All Confidential or Highly Confidential Information filed with the Court shall be filed under seal pursuant to the following procedures:

(a)    Where possible, only confidential portions of filings with the Court shall be filed under seal. Information filed under seal shall be placed in a sealed envelope on which it shall be endorsed with the title to this action, the words "FILED UNDER SEAL" and a statement substantially in the following form:

> "This envelope is sealed pursuant to order of the Court and contains Confidential Information [and/or Highly Confidential Information] filed in this case by [name of Party] and is not to be opened or the contents thereof to be displayed or revealed except by order of the Court."

The envelope shall not be opened without further order of the Court except by persons authorized to have access to such information pursuant to paragraph 13 or 14, as applicable, which person(s) shall return the information to the Clerk in a sealed envelope.

Any envelope containing information filed under seal that is an exhibit to a pleading shall also bear the name of the pleading. Where documents filed under seal are transmitted between or among the parties, the above message shall be placed in the electronic mail message by which such documents are transmitted or on the facsimile cover sheet or on a sheet directly following the facsimile cover sheet for the facsimile by which such documents are transmitted. A full and unredacted copy of any such submission may be provided directly to the Court's chambers, marked "Chambers Copy" and "Contains Confidential or Highly Confidential Information Subject to Protective Order."

(b)    As soon as practicable, but in no event after ten (10) business days from the filing of paper copies of the submitted materials under seal, the submitting party shall electronically

Case 4:23-cv-03560 Document 145-1 Filed on 05/09/24 in TXSD Page 92 of 133
Case 4:23-cv-03560-REP Document 102 Filed 04/11/24 Page 18 of 29

Page 18 of 29

file with the Court, for its public file, a copy of the submitted materials with the Confidential

Information and/or Highly Confidential Information redacted.

     (c)     If any party objects to identified portions of the materials remaining under seal, it

shall, within ten business days after submission of such materials to the Court, state its objections

in a letter sent by facsimile or electronic mail to counsel for all parties in this action. The

interested parties shall promptly meet and confer to attempt to resolve those objections and, if

such objections cannot be resolved, the party asserting such objections shall promptly tender

those objections to the Court for resolution. The revised public filing, if any, of that submission

shall be made by the submitting party within ten business days after the Court's decision

resolving that dispute.

### VIII.   Use of Confidential or Highly Confidential Information at Trial

    25.    In the event that any Confidential Information or Highly Confidential Information

is used in any pre-trial court hearing or proceeding in this action, and there is any dispute as to

whether such material continues to be Confidential or Highly Confidential, the parties will meet

and confer in an effort to resolve such dispute. If the Discovery Material at issue was produced

by a non-party, and/or designated by a non-party pursuant to Paragraph 9 of this Order, the

parties shall give such non-party 10 business day's written notice and an opportunity to

participate in the meet and confer.

    26.    The parties shall confer and attempt to agree, before any trial or other hearing, on

the procedures under which Confidential or Highly Confidential Information may be introduced

into evidence or otherwise used at such trial or hearing. Upon reaching agreement, the parties

shall give notice of the terms of such agreement to each non-party producing any Confidential or

Highly Confidential Information which may be used or introduced at such trial or hearing.

Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential or Highly Confidential Information at trial or hearing upon reasonable notice to all parties and non-parties who have produced such information. If the dispute cannot be resolved by agreement, the producing party or non-party bears the burden of proving the Discovery Materials at issue are Confidential or Highly Confidential within the definition(s) of those term(s) set forth above. The parties shall provide non-parties with notice of potential use at trial of any Confidential or Highly Confidential Information produced by such non-parties if and when any such materials are listed as potential exhibits in the required filings prior to commencement of trial. The parties shall give notice as soon as practicable after Confidential or Highly Confidential Information which is not listed on the exhibit list is determined to be likely to be used by counsel for a party in the course of examination or cross-examination at trial.

IX.     **Other Permitted Disclosures**

27.     Despite the provisions of this Order, nothing in this Order prevents the United States or any Plaintiff State from disclosing Confidential Information or Highly Confidential Information in this Action: (i) to duly authorized representatives of the Executive Branch of the United States Government or the Plaintiff State for law-enforcement purposes; (ii) for the purpose of securing compliance with any Final Judgment in this action; or (iii) for other law-enforcement purposes or as otherwise permitted or required by law, court order or regulation. Nothing in this Paragraph shall restrict the rights of Plaintiffs to use and disclose Investigation Materials outside the context of this litigation to the extent permitted by applicable law or regulation governing such pre-complaint discovery. Except when used for law-enforcement purposes or where prohibited by law, court order or regulation, the United States or Plaintiff State shall inform the producing party or non-party who designated the material as Confidential

19

Case 1:18-cv-03348-RDB Document 145-1 Filed 05/09/24 in TXSD Page 94 of 133
Case 4:23-cv-03560-RDB Document 102 Filed 03/09/24 Page 20 of 29 PageID #: 1285

Page 20 of 29

or Highly Confidential Information at least ten (10) business days before disclosure is made if the United States or Plaintiff State intends to make disclosure pursuant to this Paragraph. When disclosing Confidential or Highly Confidential information as authorized by this Paragraph, the United States or Plaintiff State shall seek to preserve confidentiality beyond the authorized disclosure.

X.　　**Procedures upon Termination of Action**

28.　　Within ninety (90) days after termination of this Action (including the resolution of all appeals, if any, or running of any applicable time to appeal the final judgment entered in this litigation), the parties shall meet and confer on a Stipulation and Proposed Amendment to this Order addressing the disposition and retention of Confidential or Highly Confidential Information after the conclusion of the litigation. If agreement cannot be reached, the parties will submit the dispute to the Court for resolution. Nothing in this Paragraph restricts the rights of the Plaintiffs to retain and disclose Confidential or Highly Confidential Information for law-enforcement purposes or as otherwise required by law, court order or regulation as specified in Paragraph 27.

XI.　　**Miscellaneous**

29.　　This Order shall not affect the right of any party or non-party to oppose production of Discovery Material on any ground permitted by the Federal Rules of Civil Procedure, including any applicable privilege. Moreover, the Order shall not affect the scope of discovery by any party that is not otherwise proper under the Federal Rules of Civil Procedure. Further, this Order shall not prejudice in any way the rights of any party to object to the authenticity or admissibility of any document, testimony, or other evidence.

20

30. Nothing in this Order shall prejudice the right of any party or non-party to move the Court to broaden or restrict the rights of access to and use of particular Discovery Material, or to seek modifications of this Order upon due notice to all other parties and affected non-parties.

31. The parties agree to be bound by the terms of this Order pending the entry of this Order by the Court and any violation of its terms shall be subject to the same sanctions and penalties as if this Order had been entered by the Court.

32. The provisions of this Order shall become effective upon entry by the Court; however, all material produced and designated as Confidential or Highly Confidential pursuant to this Order prior to the entry of this Order by the Court shall be subject to, and governed by, its provisions as though entered by the Court prior to such designation.

33. In the event additional parties join or are joined in this action, they shall not have access to Discovery Material until such newly joined party or its counsel on its behalf has executed and filed with the Court its agreement to be fully bound by this Order. Upon filing such agreement with the Court, such newly joined party shall be treated as a "party" as that term is used herein and shall be entitled to the same rights and subject to the same restrictions as may be imposed herein on any of the parties to this action.

XII. **Right To Seek Modification**

34. Nothing in this Order prevents any party or non-party from seeking modification of this Order upon motion made pursuant to the Rules of this Court.

21

**FOR DEFENDANTS AMERICAN EXPRESS COMPANY AND AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

s/Donald L. Flexner
DONALD L. FLEXNER
PHILIP C. KOROLOGOS
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022

s/Evan R. Chesler
EVAN R. CHESLER
KEVIN J. ORSINI
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019

**FOR PLAINTIFF**
**THE UNITED STATES OF AMERICA**

s/Craig W. Conrath
CRAIG W. CONRATH
MARK H. HAMER
Attorney for the United States of America
U.S. Department of Justice
Antitrust Division, Litigation III Section
450 Fifth Street, N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 307-0468

**STATE OF ARIZONA**
Terry Goddard
Attorney General

s/Nancy M. Bonnell
Nancy M. Bonnell (AZ Bar# 016382)
Antitrust Unit Chief
Consumer Protection and Advocacy Section
Office of the Arizona Attorney General
1275 West Washington
Phoenix, Arizona 85007
Telephone: (602) 542-7728
Fax: (602) 542-9088

22

Case 1:18-cv-04361-REC-REC Document 145-1 Filed on 05/09/24 in TXSD Page 97 of 133
Case 4:23-cv-03560 Document 102 filed 04/09/44 Page 23 of 29
Page 23 of 29

**STATE OF CONNECTICUT**
Richard Blumenthal
Attorney General

s/Michael E. Cole
Michael E. Cole
        Chief, Antitrust Department
Rachel O. Davis
Assistant Attorneys General
Antitrust Department
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5033

**ATTORNEY GENERAL OF THE**
**STATE OF HAWAII**
David M. Louie
Attorney General of Hawaii

s/Rodney I. Kimura
Deborah Day Emerson
Rodney I. Kimura
Deputy Attorneys General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii 96813
(808) 586-1180
(808) 586-1205 (fax)

**LAWRENCE G. WASDEN**
**ATTORNEY GENERAL**
**STATE OF IDAHO**

s/Brett T. DeLange
Brett T. DeLange (ISB No. 3628)
Deputy Attorney General
Consumer Protection Division
Office of the Attorney General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:    (208) 334-4114
FAX:          (208) 334-4151
brett.delange@ag.idaho.gov

**ATTORNEY GENERAL OF THE**
**STATE OF ILLINOIS**
Lisa Madigan
Attorney General of Illinois

s/Robert W. Pratt
Robert W. Pratt
Chief, Antitrust Bureau
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601
(312) 814-3722
(312) 814-4209 (fax)

**STATE OF IOWA**
Thomas J. Miller
Attorney General of Iowa

s/Layne M. Lindebak
Layne M. Lindebak
Assistant Attorney General
Special Litigation Division
Iowa Department of Justice
Hoover Office Building-Second Floor
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: 515 281-7054
Fax: 515 281-4902
Email: Layne.Lindebak@iowa.gov

**DOUGLAS F. GANSLER**
**MARYLAND ATTORNEY GENERAL**

s/Gary Honick
Ellen S. Cooper
Assistant Attorney General
Chief, Antitrust Division
Gary Honick
Assistant Attorney General
Office of the Attorney General
Antitrust Division
200 St. Paul Place, 19th Floor
Baltimore, Maryland 21202
Tel. # (410) 576-6470
Fax # (410) 576-7830

24

Case 4:23-cv-03560-REP Document 145-1 Filed on 05/09/24 in TXSD Page 99 of 133
Case 1:16-cv-03490-NGG-RER Document 102 Filed 04/09/21 Page 25 of 29 PageID #: 1290

Page 25 of 29

**STATE OF MICHIGAN**
**BILL SCHUETTE**
Attorney General

s/D.J. Pascoe
D.J. Pascoe (P54041)
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
Securities, Antitrust, and Business Section
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48933
Telephone: (517) 373-1160
Fax: (517) 335-6755
pascoedl@michigan.gov

**STATE OF MISSOURI**
**CHRIS KOSTER**
Attorney General

s/Anne E. Schneider
ANNE E. SCHNEIDER
Assistant Attorney General/Antitrust Counsel
ANDREW M. HARTNETT
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
Tel: (573) 751-7445
Tel: (573) 751-2041 (facsimile)
E-Mail: Anne.Schneider@ago.mo.gov

**ATTORNEY GENERAL**
**OF THE STATE OF MONTANA**
Steve Bullock
Attorney General of Montana

s/Chuck Munson
Chuck Munson
Assistant Attorney General
Office of the Montana Attorney General
215 N. Sanders
Helena, MT 59601
(406) 444-2026
(406) 444-3549

**ATTORNEY GENERAL OF THE
STATE OF NEBRASKA**
Jon Bruning
Attorney General of Nebraska

s/Leslie C. Levy
Leslie C. Levy (NE Bar# 20673)
Chief, Consumer Protection/Antitrust Division
Office of the Nebraska Attorney General
2115 State Capitol Building
Lincoln NE 68509
(402) 471-2811
(402) 471-2957 (fax)

**ATTORNEY GENERAL OF THE
STATE OF NEW HAMPSHIRE**
Michael A. Delaney
Attorney General of New Hampshire

s/David A. Rienzo
David A. Rienzo (NH Bar# 13860)
Assistant Attorney General, Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
33 Capitol Street
Concord, New Hampshire 03301
(603) 271-7987
(603) 223-6239 (fax)

**ATTORNEY GENERAL OF THE
STATE OF OHIO**
Michael DeWine
Attorney General of Ohio

Jennifer L. Pratt
Chief, Antitrust Section

s/Mitchell L. Gentile
Patrick E. O'Shaughnessy
Mitchell L. Gentile
Assistant Attorneys General
Office of the Ohio Attorney General
Antitrust Section
150 E. Gay Street, 23rd Floor
Columbus, Ohio 43215
(614) 466-4328

(614) 995-0266 (fax)
patrick.o'shaughnessy@ohioattorneygeneral.gov

**ATTORNEY GENERAL OF THE**
**STATE OF RHODE ISLAND**
Patrick C. Lynch
Attorney General
By His Attorney

s/Edmund F. Murray, Jr.
Edmund F. Murray, Jr. (RI Bar #3096)
Special Assistant Attorney General
Rhode Island Department of Attorney General
150 South Main Street
Providence, Rhode Island 02906
(401) 274-4400
(401) 222-2995 (fax)

**STATE OF TENNESSEE**
**ROBERT E. COOPER, JR.**
Attorney General and Reporter

s/Victor J. Domen, Jr.
Victor J. Domen, Jr. (BPR# 015803)
Senior Counsel
Office of the Tennessee Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37202
(615) 532-5732
(615) 532-2910 (fax)
Vic.Domen@ag.tn.gov

**GREG ABBOTT**
**ATTORNEY GENERAL OF TEXAS**

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

JOHN T. PRUD'HOMME
Assistant Attorney General
Chief, Antitrust Division

27

s/Kim Van Winkle
KIM VAN WINKLE
Assistant Attorney General
State Bar No. 24003104

BRET FULKERSON
State Bar No. 24032209

Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
512/463-1266 (Telephone)
512/320-0975 (Facsimile)

**ATTORNEY GENERAL OF THE
STATE OF UTAH**
Mark L. Shurtleff
Attorney General of Utah

s/Ronald J. Ockey
Ronald J. Ockey (Utah State Bar #2441)
David N. Sonnenreich (Utah State Bar #4917)
Assistant Attorney General
Office of the Attorney General of Utah
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84111
(801) 366-0359
(801) 366-0315 (fax)
rockey@utah.gov (email)

**STATE OF VERMONT**

**WILLIAM H. SORRELL
ATTORNEY GENERAL**

s/William H. Sorrell
Sarah E.B. London
Assistant Attorney General
Public Protection Division
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609-1001
ph. (802) 828-5479
fax. (802) 828-2154
slondon@atg.state.vt.us

28

SO ORDERED:

/S/ RER
HON. RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

Dated: 4/7 , 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.  3:16-CV-311-RJC-DCK**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA AND** | ) | |
| **THE  STATE OF NORTH CAROLINA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **AMENDED PROTECTIVE ORDER** |
| | ) | **REGARDING CONFIDENTIALITY** |
| | ) | |
| **THE CHARLOTTE-MECKLENBURG** | ) | |
| **HOSPITAL AUTHORITY, d/b/a** | ) | |
| **CAROLINAS HEALTHCARE SYSTEM,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**WHEREAS** the United States of America and State of North Carolina ("Plaintiffs")  filed this civil antitrust action against the Defendant;

**WHEREAS** the information relevant to the issues in this action will likely include commercially-sensitive and/or competitive health care information, such as information pertaining to present or future business strategies, costs, and margins, and may include personal health information;

**WHEREAS** Fed.R.Civ.P. 26(c)(1)(G) provides that the Court may, for good cause shown, require that a "trade secret, or other confidential research, development, or  commercial information not be revealed or be revealed only in a specified way;"

**WHEREAS** the Court and the parties seek to facilitate orderly and efficient party  and third-party discovery to "secure the just, speedy, and inexpensive determination" of this action, Fed.R.Civ.P. 1;

**WHEREAS** the parties consent to the entry of this Protective Order Regarding Confidentiality; and

**WHEREAS** the Court hereby finds that there is good cause to enter this Protective Order Regarding Confidentiality to shield commercially-sensitive, competitive health care and personal health information;

**IT IS THEREFORE ORDERED** that the following restrictions and procedures shall apply to Materials provided by any Producing Person that contain Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information as defined herein.

**A. Definitions**

For purposes of this Order, the following definitions apply:

1. "Confidential Information" means any Material which contains any "trade secret or other confidential research, development, or commercial information," Fed.R.Civ.P. 26(c)(1)(G); protected personal information including protected personal health information; Protected Health Information, as that term is defined by the Health Insurance Portability and Accountability Act, 45 C.F.R. Parts 160 and 164; and competitive health care information, as defined in Chapter 131E of the North Carolina General Statutes.

2. "Highly Confidential Information" means any Confidential Information that the Producing Person reasonably believes to be so sensitive that it is entitled to extraordinary protections.

2

2.1 "Restricted Highly Confidential" means any Highly Confidential Information that  the Producing Person reasonably believes to be so sensitive that it is entitled to extraordinary protections including limited distribution among the law firms representing the Defendant.

3.   "Investigation Materials" means any Materials provided by any Producing Person,  either voluntarily or under compulsory process, to any party in response to Plaintiffs' pre-  complaint inquiry into the matters at issue in this action, including statements under oath  and any exhibits thereto.

4.   "Materials" means any document, information, or transcript of testimony that is  either (a) Investigation Materials or (b) provided to any party in connection with the  litigation of this action.

5.   "Producing Person" means any person that provides or has provided Materials.

6.   "DiCesare v. CHS" or "state court" refers to a civil action presently pending in the Superior Court Division of the General Court of Justice of Mecklenburg County and assigned to the North Carolina Business Court entitled "Christopher DiCesare, James Little, and Johanna Macarthur, individually and on behalf of all others similarly situated,  Plaintiffs, v. The Charlotte-Mecklenburg Hospital Authority, d/b/a Carolinas HealthCare  System, Defendant" and bearing civil docket number 16-CvS-16404.

**B. Protection of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information  in Investigation Materials**

7.   Within ten business days of the Court's entry of this Order, each party must send  by email, facsimile, or overnight delivery a copy of this Order to each non-party

Producing Person (or, if represented by counsel, the non-party Producing Person's counsel) that provided to that party any Investigation Materials relevant to this action.

8. A Producing Person shall have 60 days after receiving a copy of this Order (the "Designation Period") to designate as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information any Materials to the extent the Producing Person determines, in good faith, that the Materials include Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information, and that such designation is necessary to protect the interests of the Producing Person. Such Investigation Materials may be so designated, if they have not already been designated, by providing written notice by overnight mail or email to the party to which the Investigation Materials were produced that includes (i) copies of the Investigation Materials stamped with the legend "CONFIDENTIAL INFORMATION," "HIGHLY CONFIDENTIAL INFORMATION" or "RESTRICTED HIGHLY CONFIDENTIAL INFORMATION" as appropriate or (ii) identification of the document(s) and page number(s), or page and line number of testimony, containing the Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information. Until the expiration of this Designation Period, all Investigation Materials will be treated as Highly Confidential Information in their entirety. Notwithstanding the foregoing, this Paragraph does not apply to any Producing Person of Investigation Materials who received notice of the Protective Order Regarding Confidentiality (Dkt. 45) ("Initial Protective Order") and was given the opportunity to

provide confidentiality designations for its Investigation Materials in accordance with the

Initial Protective Order.

9.   Counsel for Plaintiffs and Defendant to be notified are as follows:  For

Plaintiff United States:

John R. Read
U.S. Department of Justice
450 Fifth Street NW, Suite 4000
Washington, DC 20530
John.Read@usdoj.gov

For Plaintiff State of North Carolina:

K.D. Sturgis
Special Deputy Attorney General North
Carolina Department of Justice
P.O. Box 629 Raleigh, NC
27602
KSturgis@ncdoj.gov

For Defendant:

James P. Cooney III Suite
3500
One Wells Fargo Center 301
South College Street
Charlotte, North Carolina 28202
JCooney@wcsr.com

10. If a non-party Producing Person determines that this Order does not adequately protect

its  Confidential  Information,  Highly  Confidential  Information,  or  Restricted   Highly

Confidential Information, it may, within 30 days after receipt of a copy of this  Order, seek

additional  protection  from  the  Court  for  its  Confidential  Information,  Highly   Confidential

Information, or Restricted Highly Confidential Information. If a non-party

5

Producing Person seeks additional protection from the Court, any Investigation Materials  for which additional protection has been sought will not be provided to other persons  until the Court has ruled.

### C.  **Protection of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information in Discovery**

11. Whenever discovery is sought from any non-party in this action, a copy of this  Order must accompany the discovery request or subpoena, unless a party has already  provided the non-party with a copy of this Order. Non-parties may designate Materials as  Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information pursuant to the procedures set forth in this Order.

12. Any Producing Person (including through counsel) may designate all or any part  of any Materials as Confidential Information, Highly Confidential Information, or  Restricted Highly Confidential Information to the extent the Producing Person  determines, in good  faith, that the Materials include Confidential Information, Highly  Confidential Information, or Restricted Highly Confidential Information, and that such  designation is necessary to protect the interests of the Producing Person. For designations  of Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information that occur after entry of this  Order, the designations shall be  made by using the labels as appropriate: "CONFIDENTIAL – PRODUCED PURSUANT  TO  PROTECTIVE  ORDER", "HIGHLY CONFIDENTIAL  –  PRODUCED  PURSUANT  TO  PROTECTIVE  ORDER"  or "RESTRICTED HIGHLY CONFIDENTIAL  - PRODUCED PURSUANT TO PROTECTIVE ORDER".

13. All transcripts of depositions, including deposition exhibits, taken in this action after entry of this Order will be treated as Highly Confidential Information in their entirety for 21 days after the date a copy of the final transcript has been made available to the deponent (or to the deponent's counsel, if applicable) for review. It is the obligation of the first party that noticed the deposition to arrange for the final transcript to be furnished to the deponent within five business days of receipt, unless the deponent has arranged to receive a copy of the final transcript directly from the court reporter. During the 21 days following receipt of the final transcript, the deponent may designate all or any part of the testimony as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information. Such designations must be provided in writing by the deponent to all parties. For purposes of this paragraph, a transcript that is available for the deponent to read-and-sign is considered a final transcript.

14. Any production of Materials not designated as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information will not be deemed a waiver of any future claim of confidentiality concerning such Materials if the Producing Person later designates the Materials as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information. If at any time prior to the trial of this action, a Producing Person realizes that it should have designated as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information any of that Person's Materials previously produced during discovery in this action, including that Person's Investigation Materials produced by any party, it may so designate such Materials by notifying the parties in writing. The parties

7

shall thereafter treat the Materials pursuant to the Producing Person's new designation under the terms of this Order. The disclosure of any information for which disclosure was proper when made will not be deemed improper regardless of any such subsequent confidentiality designation.

15. Inadvertent production of any document provided by any Producing Person in this litigation, including in response to any discovery request, subpoena, or agreement by any party or non-party, that the Producing Person later determines in good faith should have been withheld from production on grounds of a privilege, including the work product doctrine (collectively referred to hereinafter as an "Inadvertently Produced Privileged Document"), will not be deemed to waive any privilege or work product protection, subject to the following provisions:

a. The Producing Person may request the return of any Inadvertently Produced Privileged Document by identifying the Inadvertently Produced Privileged Document and stating the basis for the claim that the Document should have been withheld and providing a privilege log that provides the information provided by Fed.R.Civ.P. 26(b)(5) and the identification of (1) all recipients of the document as reflected on the document and in that document's metadata, if applicable, and (2) the files or sources from which the document was collected. If a Producing Person requests the return, pursuant to this paragraph, of such an Inadvertently Produced Privileged Document then in the possession of one or more parties, the possessing parties shall, within five (5) business days, sequester, destroy, or return to the requesting party or non- party, the Inadvertently Produced Privileged Document and all copies thereof, provided,

however, that the receiving party may retain one copy of such Inadvertently Produced Privileged Document for the sole purpose of challenging the assertion of privilege by the producing party, in which case: (1) the receiving party shall notify the producing party in writing of its intention to retain a copy for such purpose within ten business days of the receipt of the notice demanding return of such Inadvertently Produced Privileged Document, and (2) either party may thereafter seek a ruling from the Court with respect to the issue of whether the Inadvertently Produced Privileged Document is indeed privileged, whether by way of a motion to compel, motion for a protective order, or otherwise. All such motions shall be submitted in camera. Absent an order from the Court, no Inadvertently Produced Privileged Document shall be used for any purpose other than for challenging an assertion of privilege in accordance with the terms of this Paragraph. Absent the Court's ruling that the Inadvertently Produced Privileged Document is not subject to a valid privilege claim, the possessing party must promptly expunge from any other document or material any information solely derived from the Inadvertently Produced Privileged Document.

b.  No party may assert as a ground for challenging privilege the mere fact of the inadvertent production. Nothing in this Order shall preclude a party from arguing based on the underlying facts and circumstances that the production of the allegedly inadvertently produced document was not inadvertent or that conduct since production of the allegedly inadvertently produced document constitutes a waiver.

c.  If the request for return of an Inadvertently Produced Privilege Document involves redaction of the Document, the redacted version of the Document must be

provided within ten (10) business days together with a privilege log that includes the information required by Fed.R.Civ.P 26(b)(5) and the identification of (1) all recipients of the document as reflected on the document and in that document's metadata, if applicable, and (2) the files or sources from which the document was collected.

    d.   If the request for return of an Inadvertently Produced Privilege Document occurs during the taking of a deposition or shortly before the occurrence of a deposition, the Producing Person's counsel, the examining counsel and defending counsel shall meet and confer in good faith at the earliest possible opportunity to determine appropriate steps under the circumstances, consistent with this protocol. In the event the claim of privilege is withdrawn or the Court determines the document to be not subject to a valid claim of privilege, if counsel for the parties and other defending counsel do not agree otherwise, the Court shall determine any appropriate remedy, including whether and to what extent a reopening of the deposition may be necessary including a reopening that would have the effect of extending the time limit for a duration of a deposition. Nothing in this Paragraph prohibits examining counsel to *voir dire* a deponent about the matters set forth in Fed.R.Civ.P. 26(b)(5) concerning the Document.

    e.   If an expert report or expert's testimony uses a document that another party identifies as an Inadvertently Produced Privileged Document after service of the expert's report or rendition of the expert's testimony, then the party sponsoring the expert report or expert testimony will, subject to the procedures in this Order, and if necessary, remove any reference to the Inadvertently Produced Privileged Document from the expert's report or expert's testimony and be allowed to substitute other documents or

10

information for the Inadvertently Produced Privileged Document. Neither the expert's report not the expert's testimony can be stricken in whole on the ground that the expert's report or expert's testimony had previously relied on an Inadvertently Produced Privileged Document. In the event that an expert's report or expert's testimony has relied on an Inadvertently Produced Privileged Document, the parties agree to meet and confer on a schedule to allow the party propounding an implicated expert report (whether an initial, response, or rebuttal report) to modify or supplement such expert report within a reasonable period of time.

15.1 The parties and third parties desire to ensure the privacy of patient records and other information that the parties have determined might contain Confidential Health Information ("CHI") and agree that a Producing Party may designate CHI as Confidential Information at a minimum and, as such, subject to the terms of this Order. The parties and third parties also seek to ensure that any person who receives and stores CHI in connection with this proceeding will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any CHI and to prevent unpermitted use or disclosure of any confidential health information they may receive from any person in connection with this proceeding. CHI will be securely returned or destroyed pursuant to the provisions of this Order. As used in this Order, Confidential Health Information or CHI shall mean any patient health information protected by any state or federal law, including but not limited to "Protected Health Information" or "PHI" as set forth in 45 C.F.R. § 160.103.

11

16. <u>Public Records Requests</u>.

a.   During the course of this litigation, and within 5 business days of the receipt by Plaintiff State of North Carolina of a request under the North Carolina Public Records Act, N.C. GEN. STAT. § 132 (2016), to inspect, examine, or copy Materials in its possession, custody, or control, counsel for the North Carolina Department of Justice must provide notice of such request to each Producing Person of such Materials. Absent an Order from this Court, the North Carolina Department of Justice must not disclose any Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information pursuant to any such request. In addition, communications between any person at the North Carolina Department of Justice and any person at the United States Department of Justice made pursuant to a privileged common-interest in the joint prosecution of this action are considered trial preparation materials. As such, Plaintiff State of North Carolina may not disclose such communications under the North Carolina Public Records Act except with the consent of the United States Department of Justice.

b.   During the course of this litigation, and within 5 business days of the receipt by Defendant, The Charlotte-Mecklenburg Hospital Authority, of a request under the North Carolina Public Records Act, N.C. GEN. STAT. § 132 (2016), to inspect, examine, or copy Materials in its possession, custody, or control, counsel for Defendant must provide notice of such request to each Producing Person of such Materials. Absent an Order from this Court, Defendant must not disclose any Producing Person's

12

Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information pursuant to any such request.

**D.  Challenges to Designation of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information**

17. Any party may challenge any designation of any Materials as Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information. In the event of such a challenge, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the party challenging the  designation may thereafter file a motion seeking resolution by the Court. The designated  information shall be treated in accordance with its confidentiality designation under this  Order until the Court rules on the motion.

18. Nothing in this Order constitutes an admission by any party that Confidential Information, Highly Confidential Information, or Restricted Highly Confidential  Information disclosed in this action is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of any Materials designated as Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information, in accordance with applicable law.

13

**E.  Disclosure of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information**

19. Unless otherwise ordered by this Court, or otherwise provided in this Order, Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information will be held and used by the person receiving the Confidential  Information, Highly Confidential Information, or Restricted Highly Confidential  Information solely in connection with the above-captioned action.

20. Any Materials that contain Confidential Information shall not be disclosed to any person, except:

a.  The Court and all persons assisting the Court in this action, including court reporters and members of the Clerk's Office.

b.  Plaintiffs' attorneys and employees, and independent contractors retained  by any Plaintiff to assist in the prosecution of this action or otherwise assist in its work  (including testifying or consulting experts and their support staff).

c.  Outside counsel acting for the Defendant in this action, and independent contractors retained by the Defendant to assist outside counsel in the litigation of this  action or otherwise assist in its work (including testifying or consulting experts and their   support staff).

d.  Outside vendors or service providers (such as copy-service providers and document-management consultants) retained by any party to assist in the prosecution or defense of this action or otherwise assist in its work only on the condition that each such  person shall be asked to sign an agreement to be bound by this Order in the form attached  as Exhibit A.

14

e.   Authors, addressees, and recipients of any particular Materials designated  as Confidential Information, solely to the extent that they have previously had lawful  access to the particular Materials disclosed or to be disclosed.

f.   Persons (and their counsel) whom any Plaintiff or Defendant believes, in  good faith, to have previously had lawful access to any Material designated as  Confidential Information, or who have been participants in a communication that is the  subject of the designated Confidential Information and from whom verification of or  other information about that access or participation is sought, solely to the extent of  disclosing such Confidential Information to which they may have had lawful access or  that is the subject of the communication in which they may have participated; provided  that, unless and until the person or their counsel confirms that the person had prior lawful  access or was a participant, only as much of the Confidential Information may be  disclosed as may be necessary to confirm the person's prior lawful access or participation; and

g.   No more than two in-house lawyers (and necessary support staff) for the  Defendant in this action ("CHS's Selected In-House Lawyers") may have access to  Confidential Information (but not Highly Confidential Information) of a Producing Person that  is not the Defendant. Defendant shall provide to Plaintiffs and to any Producing Person who  has Confidential Information that may be disclosed to CHS's Selected In-House Lawyers  (a) the identities of CHS's Selected In-House Lawyers (and all necessary support staff) and  (b) a signed declaration from each of CHS's Selected In- House Lawyers and all necessary  support staff declaring that he/she has read this

15

Protective Order, understands that he/she may use Confidential Information (that is not the Defendant's Confidential Information) only for the purpose of this litigation (or the case of DiCesare v. CHS pending in state court), and will comply with and be personally bound by this Protective Order. Neither Defendant's Executive Vice-President and General Counsel nor any lawyer who either reports directly to Defendant's Board (other than to report to the Board on this litigation or the state court litigation), or supervises, advises or counsels Managed Health Resources or any of Defendant's contracting or negotiations with any payor may serve as a CHS Selected In-House Lawyer. Necessary support staff shall not have responsibility for or participation in supporting the Executive Vice-President and General Counsel or any lawyer who either reports directly to Defendant's Board (other than to report to the Board on this litigation or the state court litigation) or in matters involving Managed Health Resources or any other contracting or negotiations with any payor.

21. Highly Confidential Information may be disclosed only to any person falling within categories (a) through (f) of Paragraph 20.

21.1 Restricted Highly Confidential Information may be disclosed only to any person falling within categories (a), (b), (c) (d), (e), and (f), subject to the restrictions set forth in this paragraph. Restricted Highly Confidential Information under (c) may be disclosed only to (I) attorneys at Womble, Carlyle, Sandridge & Rice ("WCSR team") who do not represent healthcare providers in any of (i) the direct negotiation of their payment agreements with payors or (ii) disputes with payors regarding application, interpretation, or negotiation of their payment agreements for the purpose of enforcing those

16

agreements. Provided that such prohibition applies only to payors whose Restricted Highly Confidential information the individual attorney has accessed and provided that none of the WCSR team will participate in or access non-public information related to the In re Blue Cross Blue Shield Antitrust Litigation MDL (N.D. Ala.) or any of its individual cases except with regard to currently representing third parties from whom discovery is sought in those cases; (II) Richard Feinstein; (III) any attorney, other than Richard Feinstein, at Boies Schiller Flexner LLP ("BSF team") who does not participate in or access non-public information related to the In re Blue Cross Blue Shield Antitrust Litigation MDL (N.D. Ala.) or any of its individual cases; and (IV) independent contractors retained by the Defendant to assist outside counsel in the litigation of this action or otherwise assist in its work (including testifying or consulting experts and their support staff) ("Defense Experts"). Provided that Richard Feinstein will not access any Restricted Highly Confidential Information designated by Blue Cross Blue Shield of North Carolina ("BCBSNC") or Blue Cross and Blue Shield of South Carolina ("BCBSSC") unless and until it is discussed or introduced at a deposition at which he is present, it is referenced in a dispositive motion, it is referenced in a draft expert report, or it is listed on an exhibit list for trial in this matter. It is further provided that none of the WCSR team, BSF team or Defense Experts who have accessed Restricted Highly Confidential Information produced by BCBSNC or BCBSSC may participate in or access non-public information related to the In re Blue Cross Blue Shield Antitrust Litigation MDL (N.D. Ala.) or any of its individual cases except with regard to representation by members of the WCSR team of third parties from whom discovery is sought in the MDL

proceedings. It is further provided that a Producing Person party may, before production of materials containing any Restricted Highly Confidential Information, notify counsel for Defendants of the production and request a list of counsel who will have access to Restricted Highly Confidential Information. No counsel who is not included in the list provided to a Producing Person may access the Restricted Highly Confidential Information of that Producing Person. If counsel for the Producing Person objects to disclosure of such information to a particular person or group of persons, the Producing Person will have ten business days after receiving the list of counsel to object in writing and will thereafter have five business days to file a motion for protective order seeking to restrict such access. The Producing Person will still be required to produce Restricted Highly Confidential Information but any person who is the subject of such a written objection will not access the Restricted Highly Confidential Information unless and until the Court orders that such access may be permitted in response to a timely-filed motion for protective order seeking to restrict such access. If a Producing Person transmits a timely written objection to disclosure of Restricted Highly Confidential Information to a person or persons, but fails to file a timely motion for protective order, the written objection shall be deemed waived.

22. In the event that a party intends to disclose Highly Confidential Information or Restricted Highly Confidential Information to a consultant or expert who works, or has a present plan to work, either as an employee or a consultant in the healthcare industry and who negotiates or consults on the negotiations, or has any role in the review or approval of such negotiations, between healthcare providers located in North Carolina, South

18

Carolina, and Georgia and health insurers (an "Industry Participant"), then such party (the "Notifying Party") shall notify the Producing Person, and provide ten (10) business days written notice during which the Producing Person may seek an Order from the Court precluding such disclosure. The Notifying Party must not disclose any such Highly Confidential Information or Restricted Highly Confidential Information to an Industry Participant absent either a ruling from the Court rejecting the challenge of the Producing Person or the passage of ten (10) business days without written notice from the Producing Person that it is seeking an Order from the Court precluding disclosure. In the event that a party intends to disclose Highly Confidential Information or Restricted Highly Confidential Information to an Industry Participant, before receiving any Confidential Information, the Industry Participant must sign an agreement to be bound by this Order in the form attached as Exhibit A. It is expressly understood that "Industry Participant" excludes academics, accountants, behavioral psychologists, economists, IT consultants, statisticians, and attorneys, whose primary role in the industry is testifying or consulting in legal and regulatory proceedings.

23. Prior to a party's disclosure or display of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information to any person in (b), (c), (e), or (f) of Paragraph 20, counsel for the party must**:**

     a.  Inform the person of the confidential nature of the Material; and

     b.  Inform the person that this Court has enjoined the use of the Material by him/her for any purpose other than this litigation (except as provided in this Order) and

has enjoined the disclosure of the Material to any other person (except as provided in this Order).

24. Nothing contained in this Order:

a.  Affects or restrict the rights of any party with respect to its own Materials;

b.  Prevents Plaintiffs, subject to taking appropriate steps to preserve the confidentiality of such information, from disclosing Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information (i) in the course of any other legal proceeding in which the U.S. Department of Justice or the North Carolina Department of Justice is a party; (ii) for the purpose of securing compliance with a Final Judgment in this action; or (iii) for law enforcement purposes; or

c.  Prevents Plaintiff United States' retention or use or disclosure of Investigation Materials outside the context of this action to the extent permitted by applicable law or regulation governing such pre-complaint discovery including the Hart- Scott-Rodino Act, 15 U.S.C. § 18a and the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-14, or for law enforcement purposes, or as required by law, court order or regulation.

d.  Prevents the Defendant, from utilizing Confidential, Highly Confidential, or Restricted Highly Confidential Information in connection with ongoing litigation in the case entitled "Christopher DiCesare, James Little, and Johanna MacArthur, individually and on behalf of all others similarly situated, Plaintiffs v. The Charlotte- Mecklenburg Hospital Authority, d/b/a Carolinas Healthcare System, Defendant" now pending in the Superior Court Division of the General Court of Justice of Mecklenburg

20

County in the North Carolina Business Court and bearing docket number 16 CvS 16404 ("State Litigation") provided that a Protective Order is entered in the State Litigation that  provides protections for Confidential Information, Highly Confidential Information,  Restricted Highly Confidential Information and Confidential Health Information  comparable to the protections for such information contained in this Amended Order.  Prior to such use, the Defendant must provide to all Producing Persons proof of the entry  of such order and an opportunity by a Producing Person to object on the ground that the protections provided under such an order are not comparable to the protections under this  Amended Order.

   24.1 The Parties recognize that the Defendant has received a Request for Production  of Documents in the State Litigation requesting the production of Materials received by  the Defendant in this matter. The Defendant is permitted to produce Materials it receives  that have been designated Confidential Information, Highly Confidential Information, or  Restricted Highly Confidential Information to this Amended Order on fifteen (15) days  written notice to a Producing Party that such production will occur, provided that before  any production, all counsel and all named plaintiffs in the State Litigation have executed  an agreement in the form attached as Exhibit B acknowledging that the disclosure of the  information is subject to this Amended Order and submitting themselves to the  jurisdiction of this Court in the event that the use or disclosure of the information violates  this Amended Order. This procedure applies to any and all Material designated pursuant  to this Amended Order, including Investigation Materials, deposition transcripts, Rule 26  disclosures of any kind, and documents.  Such notice shall be promptly given.  If any

21

Producing Person files a written objection and seeks a protective order to such production  with this Court prior to the expiration of the fifteen days following a written notice, production shall not occur unless and until the Court orders that such production may be  made.    While that objection remains pending, or while an objection under Paragraph

24.d remains pending, Defendant shall not use the Materials subject to the objection in  the State Litigation. Once such Materials have been produced to the plaintiffs in the State  Litigation, their use in that case and their confidential status will be governed by the  protective order in that case, so long as that order contains protections comparable to the  protections in this Amended Order, and such other orders as the presiding judge in the  State Litigation may issue regarding the use of such Materials.

   25. In the event of a disclosure of any Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information to any person(s) not authorized to receive such disclosure under this Order, the party responsible for having  made such disclosure shall promptly notify the Producing Person whose Material has  been disclosed and provide to such Producing Person all known relevant information  concerning the nature and circumstances of the disclosure. The disclosing party shall also  promptly take all reasonable measures to retrieve the improperly disclosed Material and  to ensure that no further or greater unauthorized disclosure and/or use thereof is made.  Unauthorized or inadvertent disclosure shall not change the confidential status of any  disclosed Material or waive the right to maintain the disclosed Material as containing  Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information.

22

26. Any order of this Court requiring the production of any Materials constitutes a court order within the meaning of the Privacy Act, 5 U.S.C. § 552a(b)(11).

**F.** **Use of Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information in This Action**

27. If any Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information is included in any pleading, motion, exhibit, or other paper to be filed with the Court, the party making the filing shall follow the procedures set forth in Local Civil Rule 6.1, as supplemented by this Paragraph. For purposes of this action, this Protective Order is "a previously entered Rule 26(e) Protective Order" under Local Civil Rule 6.1(B).

a.  If a Party uses any other Party's or a Third Party's Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information in any court filing (the "Using Party"), the Using Party must file a Motion To Temporarily Seal. The Using Party must submit with the motion a proposed order that if signed by the Court would have the effect of keeping the Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information under seal for 21 calendar days.

b.  Within 3 business days of filing the Motion To Temporarily Seal, the Using Party must serve the Producing Person (by e-mail or other means) with the Motion To Temporarily Seal and a copy of this Order.

c.  The Producing Person and all parties must conduct a meet-and-confer over the treatment of the Producing Person's Confidential Information, Highly Confidential

Information, or Restricted Highly Confidential Information at issue in the Motion to Temporarily Seal.

d.   Within 21 days of notification of the Producing Person, and after a meet- and-confer, the Using Party shall submit to the Court any proposed agreed-upon order that would continue the protections contained in this Order for Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information and the request that the Court should order such information to be maintained under seal.

e.   To the extent the Producing Person and the parties have disputes upon the conclusion of the meet-and-confer, the Producing Person must file a Motion to Seal that complies with Local Civil Rule 6.1. To the extent that the Producing Person and the parties are unable to schedule a meet-and-confer within the 21-day period, the Producing Person shall be entitled to file a Motion to Seal and shall inform the Court in the Motion of any circumstances that prevented a meet-and-confer.

f.   If, at the expiration of the 21-day period, the parties (including the Producing Person) have failed to submit a proposed agreed-upon order, or the Producing Person has not filed a Motion to Seal, all materials that were subject to the Motion To Temporarily Seal shall be unsealed and made available to the public. Materials that are included in any proposed agreed-upon order will remain under seal until such time as the Court signs or modifies the proposed agreed-upon order. Materials included in a Motion to Seal will remain under seal until the Court rules on the Motion.

g.   To the extent that any Party seeks to have Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information

24

contained in its own court filing protected from public disclosure, it must follow the procedures described above. It must meet-and-confer with the other Parties over the treatment of the information at issue in the Motion to Temporarily Seal.

      h.  Nothing in this Order restricts any person, including any member of the public, from challenging the filing of any Confidential Information, Highly Confidential  Information, or Restricted Highly Confidential Information under seal.

28. Any pleading that contains or refers to Confidential Information, Highly Confidential Information, or Restricted Highly Confidential Information (or attaches such  Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information), in addition to being filed Under Seal as set forth in this Order,  shall be filed publicly in a redacted form so as to eliminate or obscure all references to  Confidential Information, Highly Confidential Information, or Restricted Highly  Confidential Information. Such redacted public versions of pleadings shall be filed and  served within five (5) business days of the original filing under seal.

29. Disclosure at trial of any Materials designated as Confidential Information,  Highly Confidential Information, or Restricted Highly Confidential Information will be  governed pursuant to Court order. The parties shall meet and confer and submit a  recommended order no later than 60 days before trial, outlining those procedures. The  parties shall provide a copy of the recommended order to all Producing Persons who have  produced Confidential Information, Highly Confidential Information, or Restricted  Highly Confidential Information which the parties reasonably anticipate will be utlized at  trial.  A Producing Party who receives such notice shall be permitted to file any counter-

25

recommendations or objections no later than 30 days before trial and request a hearing.  Absent

a ruling from the Court to the contrary, any Material designated as Confidential  Information,

Highly Confidential Information, or Restricted Highly Confidential  Information that appears

on an exhibit list or in deposition designations, that is admitted  into evidence at trial, will be

disclosed on the public record, and any examination relating  to such Material will likewise be

disclosed on the public record, after compliance with  processes established by this Court.

**G.  Procedures upon Termination of This Action**

30. The obligations imposed by this Order survive the termination of this action  unless

the Court, which shall retain jurisdiction to resolve any disputes arising out of this  Order, orders

otherwise. At the conclusion of litigation, all Confidential Information,  Highly Confidential

Information, or Restricted Highly Confidential Information and any  copies thereof shall be

promptly (and in no event later than thirty (30) days after entry of  a final judgment no longer

subject to appeal) returned to the Producing Person or certified  as destroyed. Nothing in this

Order prevents any Plaintiff from retaining any Confidential  Information, Highly Confidential

Information, or Restricted Highly Confidential  Information for law enforcement purposes, or to

secure compliance with any Final  Judgment in this action.

31. The foregoing is entirely without prejudice to the right of any party or non-party  to

apply to the Court for any further Protective Order relating to Confidential  Information,

Highly Confidential Information, or Restricted Highly Confidential  Information; or to object

to the production of documents or information; or to apply to

the Court for an order compelling production of documents or information; or for modification of this Order.

**SO ORDERED.**

Signed: October 16, 2017

David C. Keesler
United States Magistrate Judge

27

**EXHIBIT A**

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled *United States of America and the State of North Carolina v. The Charlotte-Mecklenburg Hospital Authority, d/b/a/ Carolinas Healthcare System,* Case No. 3:16-cv-00311-RJC-DCK, have been designated as confidential. I have been informed that any such document or information labeled as "CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER". "HIGHLY CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER" or "RESTRICTED HIGHLY CONFIDENTIAL – PRODUCED PURSUANT TO

PROTECTIVE ORDER" (or with a similar label) are confidential by Order of the Court.

Under penalty of contempt of Court, I hereby agree that I will not disclose any information contained in such documents to any other person, and I further agree not to use any such information for any purpose other than this litigation.

DATED: _____

_____

Signed in the presence of:

_____

(Attorney)

28

**EXHIBIT B**

I have been informed that certain documents or information to be disclosed to me in connection with the matter entitled "Christopher DiCesare, James Little, and Johanna MacArthur, individually and on behalf of all others similarly situated, Plaintiffs v. The Charlotte-Mecklenburg Hospital Authority, d/b/a Carolinas Healthcare System, Defendant" now pending in the Superior Court Division of the General Court of Justice of Mecklenburg County in the North Carolina Business Court and bearing docket number 16 CvS 16404 have been designated as confidential pursuant to the Amended Protective Order issued in the matter entitled *United States of America and the State of North Carolina v. The Charlotte-Mecklenburg Hospital Authority, d/b/a/ Carolinas Healthcare System*, Case No. 3:16-cv-00311-RJC-DCK before the United States District Court for the Western District of North Carolina, Charlotte Division (the "Federal District Court"). I have been informed that any such document or information labeled as "CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER". "HIGHLY CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER" or "RESTRICTED HIGHLY CONFIDENTIAL – PRODUCED PURSUANT TO

PROTECTIVE ORDER" (or with a similar label) are confidential by the Federal District Court's Amended Protective Order of the Court. In exchange for the receipt of this information I agree to submit myself to the personal jurisdiction of the Federal District Court for purposes of the enforcement of the Federal District Court's Amended Protective Order, including any alleged violations of the Amended Protective Order. I further understand and agree with the terms and conditions set forth in the Federal

29

District Court's Amended Protective Order and understand and agree that I cannot  disclose any information contained in such documents or  the  documents themselves  except as provided for in the Amended Protective Order. I further understand and agree  that a violation of this the Federal District Court's Amended Protective Order will be  treated as contempt.

DATED: _____

_____

Signed in the presence of:

_____

(Attorney)

30