IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. ANESTHESIA PARTNERS, INC., et al. <br><br> Defendants. | Case No.: 4:23-CV-03560-KH |

**DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S RESPONSE TO PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND CROSS-MOTION FOR ENTRY OF PROTECTIVE ORDER**

## INTRODUCTION

Plaintiff Federal Trade Commission has proposed a protective order that would effectively bar USAP's in-house counsel from assisting in its defense. The FTC apparently fears that Ki'Jhana Friday, USAP's Deputy General Counsel, should be barred from accessing Highly Confidential Material because she might inadvertently use competitively sensitive information in representing USAP. Ms. Friday is a litigator; she has no day-to-day role in competitive decisionmaking. While she advises the Board of Directors, Executive Team, and regional leadership on certain strategic decisions, those decisions are all litigation related; they do not involve decisions to which the competitively sensitive information at issue here would be relevant. Restricting Ms. Friday from accessing Highly Confidential Material will prejudice USAP's ability to mount an adequate defense. The Court should therefore reject the FTC's proposed protective order and instead enter USAP's.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

The FTC filed its Complaint on September 21, 2023. *See* Dkt. No. 1. After submitting their Rule 26(f) Joint Discovery/Case Management Plan on April 5, 2024, the parties negotiated over the terms of a proposed protective order. *See* Dkt. No. 132. The parties met and conferred several times, during which USAP made significant concessions in an effort to avoid burdening the Court with motions practice. The only issue on which the parties could not agree was whether USAP in-house counsel could access "Highly Confidential Material." As the parties proposed, the FTC filed its Motion for Entry of Protective Order. *See* Dkt. No. 144. Since then, discovery has commenced, *see* Dkt. No. 143, and the Court has denied USAP's Motion To Dismiss, *see* Dkt. No. 146.

---

[1] Attached as Exhibit B is a redline comparison of the parties' proposed protective orders.

## ISSUES TO BE DECIDED BY THE COURT

Should Ki'Jhana Friday, a USAP in-house litigation attorney who does not advise USAP on matters to which competitively sensitive business information is relevant, be permitted to access Highly Confidential Material in this case, subject to her commitment to comply with all obligations under the protective order?

## ARGUMENT

Federal Rule of Civil Procedure 26(c)(1)(G) places the burden upon the FTC to prove that "good cause" supports barring Ms. Friday from accessing Highly Confidential Material. *See Tech Pharm. Servs., LLC v. Alixa RX LLC*, 2016 WL 6071601, at *1 (E.D. Tex. Oct. 17, 2016). The "good cause" standard requires the FTC to make "a particular and specific demonstration of fact[,] as distinguished from stereotyped and conclusory statements," that its proffered restriction is necessary. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted); *see also Tech Pharm.*, 2016 WL 6071601, at *1 (noting this rule holds true "when the parties agree on entry of a protective order but differ on the order's terms").[2]

"In determining whether to issue a protective order barring one party's attorney access to information, the Court must consider the risk and potential danger of 'inadvertent or accidental disclosure,' and weigh that risk against the potential burden and impairment that the protective order may have on other parties' ability to prosecute or defend against its claims." *Wi-Lan, Inc.*

---

[2] Contrary to the FTC's suggestion (at 3 and n.1), in-house counsel access to highly confidential material is in fact common. *See, e.g.*, Protective Order, *FTC v. Meta Platforms, Inc.*, No. 20-cv-03590-JEB (D.D.C. Mar. 25, 2022), Dkt. No. 134; Protective Order, *FTC v. Surescripts, LLC*, No. 19-cv-01080-JDB (D.D.C. Mar. 9, 2020), Dkt. No. 57; Protective Order, *FTC v. Qualcomm Inc.*, No. 17-cv-00220-LHK (N.D. Cal. May 1, 2017), Dkt. No. 81; Protective Order, *FTC v. AbbVie Inc.*, No. 14-cv-05151-HB (E.D. Pa. May 8, 2015), Dkt. No. 86; *cf. FTC v. Whole Foods Mkt., Inc.*, 2007 WL 2059741, at *1 (D.D.C. July 6, 2007) (the FTC agreeing to grant in-house counsel access "to unredacted draft and final versions of pleadings, deposition and hearing transcripts, and expert reports").

*v. Acer, Inc.*, 2009 WL 1766143, at *2 (E.D. Tex. June 23, 2009) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).  Relevant factors in this balancing include "(1) whether the person receiving the confidential information is involved in competitive decision making . . . relating to the subject matter [at issue], (2) the risk and potential danger of disclosure and (3) the hardship and prejudice imposed by the restriction." *Wi-Lan*, 2009 WL 1766143, at *2.  That balancing must occur "on a counsel-by-counsel basis," considering "all relevant facts surrounding counsel's actual preparation and [representation] activities." *Tech Pharm.*, 2016 WL 6071601, at *1 (quoting *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010)).

As explained below, balancing these factors compels the conclusion that Ms. Friday should be entitled to access Highly Confidential Material.  The risk of inadvertent disclosure is minimal, and without such access, USAP will be prejudiced in defending itself.

**I.     Allowing Ms. Friday Access To Highly Confidential Material Creates Little Or No Risk Of Inadvertent Disclosure**

The FTC has not made, and cannot make, "a particular and specific" showing of any risk that Ms. Friday will inadvertently disclose Highly Confidential Material that she accesses while representing USAP.  Ms. Friday is not a businessperson, or a competitive decisionmaker at USAP, and nothing that the FTC cites proves otherwise.

**A.     Ms. Friday Is Not A Competitive Decisionmaker For USAP**

An in-house counsel is a "competitive decisionmaker" if her "activities, association, and relationship with a client . . . involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp.*, 730 F.2d at 1468 n.3.  Courts will not infer that in-house counsel is a competitive decisionmaker simply from her status as in-house counsel

3

or from her involvement in a case involving competitively sensitive information. *See Wi-Lan*, 2009 WL 1766143, at *3 (rejecting the argument that in-house counsel participated in competitive decisionmaking simply because they "may be involved in managing and settling this case"); *TiVo Inc. v. Verizon Commc'ns, Inc.*, 2010 WL 9430466, at *3 (E.D. Tex. June 15, 2010) ("TiVo argues that Ms. Khoo's association with Verizon should be sufficient [to make her a competitive decisionmaker]. This is the type of generalization counseled against in *U.S. Steel* and *In re Deutsche Bank*."); *Merial Ltd. v. Virbac SA*, 2010 WL 11534378, at *3 (N.D. Tex. June 10, 2010) ("It is not appropriate to deny an attorney of record access to confidential or 'attorneys' eyes only' information under a protective order based solely on that person's status as in-house counsel.").

Ms. Friday is not involved in competitive decisionmaking. In the ordinary course, she "regularly provide[s] legal advice as it relates to employment issues." Ex. A, Declaration of Ki'Jhana Friday ("Friday Decl.") ¶ 4. She also "advise[s] the USAP Board of Directors and Executive Team on strategic matters but only to the extent that such matters pertain to contemplated, threatened, or ongoing litigation." *Id.* And Ms. Friday advises USAP's Clinical Governance Boards "on corporate governance matters and certain litigation-related issues." *Id.* Specifically, her "practice within USAP primarily relates to disputes involving both former and current employees." *Id.* ¶ 5. She does not "negotiate any business terms on USAP's behalf," *id.* ¶ 4, or regularly offer legal advice on any decisions that concern the type of competitively sensitive information that the protective order is concerned with: "trade secrets," "highly sensitive and non-public research or analysis," "strategic business planning information not more than three (3) years old," or any "current or future non-public pricing information." Proposed Protective Order § 2(b); *see* Friday Decl. ¶¶ 4-5.

4

Because Ms. Friday is not involved in competitive decisionmaking, there is no risk of inadvertent disclosure. *See Life Techs. Corp. v. Biosearch Techs., Inc.*, 2011 WL 1157860, at *2 (E.D. Tex. Mar. 29, 2011) (finding no risk of inadvertent disclosure from granting the plaintiff's lead in-house patent counsel access to outside-counsel-eyes-only information in a patent dispute because the attorney had no "substantial[ ] involve[ment]" in "[patent] prosecution related to the *patents*-at issue in th[e] case") (emphasis in original); *Tech Pharm.*, 2016 WL 6071601, at *2 (finding outside counsel for the plaintiff was not a "competitive decisionmaker," even though he represented the plaintiff "in both the present suit and ongoing patent prosecution related to the same subject matter as the patents-in-suit," because there was no evidence that the attorney "participate[d] in [the plaintiff's] decisions affecting pricing, product design, or other decisions" relating to the patents-in-suit); *Wi-Lan*, 2009 WL 1766143, at *4 (finding a minimal risk that the defendant's in-house counsel would inadvertently disclose competitively sensitive information because "[t]here [was] no allegation of involvement in either patent prosecution, research, product development, or other significant business decisions"). And even if there were some risk of disclosure, it is minimized by Ms. Friday's sworn insistence that she will abide by the protective order's terms and all applicable "Rules of Professional Conduct," and her adherence to a similar order in an arbitration against UnitedHealthcare. Friday Decl. ¶¶ 6-7; *see*, *e.g.*, *Merial*, 2010 WL 11534378, at *7 (citing counsel's ethical duties as supporting the inference that she will safeguard confidential information).

The totality of circumstances therefore show there is no risk of inadvertent disclosure.

### B. The FTC's Case For Making Ms. Friday One Of USAP's Competitive Decisionmakers Rests On Mere Speculation

The FTC attempts to stretch the language of Ms. Friday's LinkedIn profile to make her into a competitive decisionmaker and, in turn, manufacture a risk of inadvertent disclosure. But

5

the realities of Ms. Friday's practice, on which she elaborates under oath in her Declaration, belie the FTC's arguments.

*First*, the FTC relies (at 4) on the fact that Ms. Friday "provides key guidance on corporate strategies to USAP's executive leadership team" and "advises on a host of legal issues and corporate governance matters." Ms. Friday confirms the same, *see* Friday Decl. ¶¶ 4-5, but elaborates that her advice on "strategic matters" relates to "contemplated, threatened, or ongoing litigation," none of which typically "involv[e] commercial insurers[,]" "hospitals[,] or ambulatory surgical centers." *Id.* The FTC's only cited authority on this point, *FTC v. Advocate Health Care Network*, is irrelevant. There, the LinkedIn profiles of both in-house counsel revealed their involvement in business decisions and strategic planning in the very subject areas implicated by the confidentiality order. *See* 162 F. Supp. 3d 666, 671 (N.D. Ill. 2016).[3]

*Second*, the FTC cites (at 4) Ms. Friday's leadership of "all corporate litigation with specific expertise in complex commercial matters," to support its claim that "[l]itigation against nonparties presents yet another risk" of inadvertent disclosure. That is a non-sequitur. Even where parties are "direct competitors in the same markets," an in-house counsel's access to confidential materials only creates a risk of inadvertent disclosure if she participates in competitive decisionmaking "related to the same subject matter." *See Tech Pharm.*, 2016 WL 6071601, at *2; *TiVo*, 2010 WL 9430466, at *3 (finding an in-house counsel's "supervisory role over attorneys who engage in patent prosecution does not transform him into a competitive decision-maker").

---

[3] The FTC's citation (at 3 n.1) to cases in which the parties *stipulated* to the entry of a protective order denying in-house counsel access to certain confidential information does nothing to prove whether, under the specific facts here, it has shown that Ms. Friday should not be granted access to Highly Confidential Material.

6

Here, Ms. Friday's practice "primarily relates to disputes involving both former and current employees." Friday Decl. ¶ 5. In offering this legal advice, Ms. Friday "do[es] not negotiate any business terms on USAP's behalf, be it in acquiring new practices, recruiting new clinicians to join USAP, or otherwise." *Id.* ¶ 4. *Compare with United States v. Aetna Inc.*, 2016 WL 8738420, at *7 (D.D.C. Sept. 5, 2016) (finding an attorney's supervisory role over litigation, *coupled with* evidence that he was "involved in strategic discussions regarding negotiations with providers[ ] and regarding pricing and reimbursement strategy," made him a competitive decisionmaker). In fact, in a recent arbitration against UnitedHealthcare, Ms. Friday "was one of the USAP in-house counsel given access to competitively sensitive information that was designated 'Highly Confidential – Attorneys' Eyes Only' under the operative protective order." Friday Decl. ¶ 6. She abided by that order, and to this day her work "has not led [her] to disclose" any of the information she accessed. *Id.*

*Third*, the FTC acknowledges Ms. Friday's focus on employment law, but argues (at 5) that this focus means she might contribute to "hiring doctors from competitors." But the FTC, again, has not proven that Ms. Friday is involved in employee *recruitment*. Indeed, Ms. Friday only handles litigation relating to "current and former employees," and drafts employment agreements for physicians and certified registered nurse anesthetists "*who join* USAP." Friday Decl. ¶ 4 (emphasis added). She does not "negotiate any business terms on USAP's behalf" when USAP attempts to "recruit[ ] new clinicians." *Id.*

The FTC has therefore failed to prove that Ms. Friday is a competitive decisionmaker within USAP. This supports granting USAP's version of the protective order. Indeed, this jurisdiction routinely permits in-house counsel to access Highly Confidential Material in its

7

model protective order for patent matters, which typically involve highly sensitive, trade secret information. There is no reason to impose greater restrictions here.

## II. USAP Will Incur Considerable Prejudice Without Having Some In-House Counsel Access To Highly Confidential Material

Courts must also weigh "the hardship and prejudice imposed by the restriction" on access to confidential material. *Wi-Lan*, 2009 WL 1766143, at *2; *see also Deutsche Bank*, 605 F.3d at 1380 (even if some disclosure risk exists, "the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." After all, the Fourteenth Amendment's Due Process Clause guarantees every civil litigant "the right to choose the lawyer who will provide [its] representation." *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1180-81 (5th Cir. 1992), *reh'g denied*, 980 F.2d 1442 (5th Cir. 1992) (citation omitted); *see also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995) ("Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration."). Adopting the FTC's proposed protective order would prejudice USAP in three ways.

*First*, denying Ms. Friday access to Highly Confidential Material would impair USAP's ability to mount an effective defense. Non-party discovery will be a crucial aspect of USAP's defense, and given the protective order's expansive definition of "Highly Confidential Material" (per the FTC's request), much of that discovery is likely to be designated as such. Without access to this information, in-house counsel will be effectively shut out of participating in litigation strategy. *See FTC v. Peabody Energy Corp.*, 2020 WL 1557168, at *4 (E.D. Mo. Apr. 1, 2020) ("the cost to Defendants of denying their most integrally involved in-house litigators

8

full access to the evidence adduced against them" outweighed the "speculative possibility" of disclosure); *FTC v. Foster*, 2007 WL 2219410, at *9 (D.N.M. Apr. 26, 2007) (similar).

*Second*, USAP's outside counsel would lose invaluable expertise and institutional knowledge from Ms. Friday—who has been part of this case since the FTC first launched its investigation. *See* Friday Decl. ¶ 3; *Life Techs.*, 2011 WL 1157860, at *2-3 (recognizing that denying in-house counsel's access to confidential information would "impair the Plaintiffs' ability to prosecute its claims" given counsel's role as "the chief in-house strategist for this litigation"); *United States v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 21, 24 (D.D.C. 2001) (granting in-house counsel access, as it would otherwise be "extremely difficult, if not impossible, for the defendants' outside counsel to prepare [their] case for trial").

*Third*, contrary to the FTC's claims (at 7), "restricting access now *does* . . . restrict access indefinitely." (emphasis added). USAP proposed Ms. Friday to be its designated in-house counsel to access Highly Confidential Material because there are no other USAP in-house counsel who can satisfy the onerous restrictions that accessing such information entails. Depriving Ms. Friday access to Highly Confidential Material means that no lawyer at USAP can access it. The only recourse left for USAP would be to litigate in piecemeal every document that has been improperly designated as Highly Confidential. This will, of course, encourage third parties to over-designate materials as Highly Confidential, and this Court will be called upon to resolve myriad disputes over whether a particular document should be redesignated so that USAP's in-house counsel can meaningfully participate in litigating this case.

## CONCLUSION

The Court should deny the FTC's Motion for Entry of Protective Order, Dkt. No. 144, and grant USAP's Cross-Motion for Entry of Protective Order.

| | |
|---|---|
| Dated: May 14, 2024 | Respectfully submitted, |
| | /s/ *Mark C. Hansen* |
| David J. Beck (TX Bar No. 00000070)<br>  (Federal I.D. No. 16605)<br>Garrett S. Brawley (TX Bar No. 24095812)<br>  (Federal I.D. No. 3311277)<br>BECK REDDEN LLP<br>1221 McKinney Street, Suite 4500<br>Houston, TX  77010<br>Tel: (713) 951-3700<br>Fax: (713) 951-3720<br>dbeck@beckredden.com<br>gbrawley@beckredden.com | Mark C. Hansen (D.C. Bar No. 425930)<br>  (*Pro Hac Vice*)<br>Attorney-in-Charge<br>Geoffrey M. Klineberg (D.C. Bar No. 444503)<br>  (*Pro Hac Vice*)<br>David L. Schwarz (D.C. Bar No. 471910)<br>  (*Pro Hac Vice*)<br>Kenneth M. Fetterman (D.C. Bar No. 474220)<br>  (*Pro Hac Vice*)<br>Kyle M. Wood (D.C. Bar No. 90012250)<br>  (*Pro Hac Vice*)<br><br>KELLOGG, HANSEN, TODD,<br>  FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street N.W., Suite 400<br>Washington, D.C. 20036<br>Tel: (202) 326-7900<br>Fax: (202) 326-7999<br>mhansen@kellogghansen.com<br>gklineberg@kellogghansen.com<br>dschwarz@kellogghansen.com<br>kfetterman@kellogghansen.com<br>kwood@kellogghansen.com |

*Counsel for Defendant U.S. Anesthesia Partners, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for USAP conferred with counsel for the FTC concerning the entry of a protective order and were unable to agree. The parties exchanged emails and met via videoconferencing software of the dates and times below.

- April 11, 2024: 3:00 – 4:00 pm ET
- April 15, 2024: 4:00 – 4:30 pm ET
- April 23, 2024: 3:30 – 4:00 pm ET
- April 24, 2024: 12:00 – 1:00 pm ET

Respectfully submitted,

/s/ *Mark C. Hansen*
Mark C. Hansen

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2024, I filed the foregoing document with the Court and served it on opposing counsel through the Court's CM/ECF system.  All counsel of record are registered ECF users.

Respectfully submitted,

/s/ *Mark C. Hansen*
Mark C. Hansen