**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No.: 4:23-CV-03560-KH |
| U.S. ANESTHESIA PARTNERS, INC. et al. | |
| Defendants. | |

**APPENDIX TO DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S**
**RESPONSE TO PLAINTIFF FEDERAL TRADE COMMISSION'S**
**MOTION FOR ENTRY OF PROTECTIVE ORDER AND**
**CROSS-MOTION FOR ENTRY OF PROTECTIVE ORDER**

# TABLE OF CONTENTS

## CASES

*FTC v. Foster*, 2007 WL 2219410 (D.N.M. Apr. 26, 2007)............................................USAP001

*FTC v. Peabody Energy Corp.*, 2020 WL 1557168 (E.D. Mo. Apr. 1, 2020)..................USAP008

*FTC v. Whole Foods Mkt., Inc.*, 2007 WL 2059741 (D.D.C. July 6, 2007)....................USAP015

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
    2011 WL 1157860 (E.D. Tex. Mar. 29, 2011) ...........................................................USAP018

*Merial Ltd. v. Virbac SA*, 2010 WL 11534378 (N.D. Tex. June 10, 2010).......................USAP020

*Tech Pharm. Servs., LLC v. Alixa RX LLC*,
    2016 WL 6071601 (E.D. Tex. Oct. 17, 2016) .............................................................USAP027

*TiVo Inc. v. Verizon Commc'ns, Inc.*,
    2010 WL 9430466 (E.D. Tex. June 15, 2010)............................................................USAP029

*United States v. Aetna Inc.*, 2016 WL 8738420 (D.D.C. Sept. 5, 2016) .........................USAP032

*Wi-Lan, Inc. v. Acer, Inc.*, 2009 WL 1766143 (E.D. Tex. June 23, 2009) .......................USAP042

## OTHER CITED DOCUMENTS

Protective Order, *FTC v. AbbVie Inc.*,
    No. 14-cv-05151-HB (E.D. Pa. May 8, 2015), Dkt. No. 86 ......................................USAP047

Protective Order, *FTC v. Meta Platforms, Inc.*,
    No. 20-cv-03590-JEB (D.D.C. Mar. 25, 2022), Dkt. No. 134...................................USAP070

Protective Order, *FTC v. Qualcomm Inc.*,
    No. 17-cv-00220-LHK (N.D. Cal. May 1, 2017), Dkt. No. 81 .................................USAP098

Protective Order, *FTC v. Surescripts, LLC*,
    No. 19-cv-01080-JDB (D.D.C. Mar. 9, 2020), Dkt. No. 57 ......................................USAP118

2007 WL 2219410
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

Paul L. FOSTER and Western Refining,
and Giant Industries, Inc. Defendants.

No. CIV 07–352 JBACT.
|
April 26, 2007.

**Attorneys and Law Firms**

Deyonna Young, Assistant Attorney General, Special Deputy to the Federal Trade Commission, Litigation Division (Antitrust), Office of the New Mexico Attorney General, Albuquerque, New Mexico and Thomas J. Lang, Senior Litigation Counsel, Bureau of Competition, Federal Trade Commission, Washington, D.C., for the Plaintiff.

Henry M. Bohnhoff, Andrew G. Schultz, Thomas A. Outler, Patrick Shay, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for the Defendants.

Lowry Barfield, General Counsel, Western Refining, Inc., El Paso, Texas and Marc G. Schildkraut, Michael P.A. Cohen, Heller Ehrman, LLP, Washington, D.C., for Defendants Paul L. Foster and Western Refining, Inc.

Kim H. Bullerdick, General Counsel, Giant Industries, Inc., Scottsdale, Arizona and Hugh R. Whiting, Tom D. Smith, Jones Day, Houston, Texas, Washington, D.C., for Defendant Giant Industries, Inc.

*MEMORANDUM OPINION AND ORDER* [1]

[1]   The Court does not believe that this Memorandum Opinion and Order contains any sensitive information requiring filing under seal. If the parties would prefer that the filing be sealed, they may contact the Court and make that request.

BROWNING, J.

**\*1** THIS MATTER comes before the Court on: (i) the Plaintiff's Motion for Protective Order, filed April 12, 2007 (Doc. 8); and (ii) the Plaintiff's Corrected Motion for Protective Order, filed April 19, 2007 (Doc. 67). The Court held hearings on the motions on April 13, 2007 and April 23, 2007. The primary issue is whether the Court should prohibit, via protective order, the General Counsels of Defendants Western Refining, Inc. ("Western") and Giant Industries, Inc. ("Giant") from accessing confidential discovery material that Plaintiff Federal Trade Commission ("FTC") possesses. Because the Court believes that a protective order is warranted, and that one balancing the needs of Western and of Giant for information against the injury that may result from disclosure can be fashioned, the Court will adopt the Proposed Protective Order under which the parties have been laboring except insofar as its language enjoins Western's and Giant's General Counsels from viewing confidential discovery materials the FTC holds

*FACTUAL BACKGROUND*

Capable outside counsel represents the Defendants. *See* Clerk's Minutes, filed April 13, 2007 (Doc. 36). The Defendants' General Counsels are officers of their respective corporations. *See* Plaintiff's Corrected Response in Support of Plaintiff's Motion for a Protective Order at 6, filed April 22, 2007 (Doc. 99) ("Plaintiff's Response"). Western's General Counsel, Lowry Barfield, is a Vice President and Secretary of Western. *See id* . Kim Bullerdick, Giant's General Counsel, is a Senior Vice President and Secretary of Giant. *See id.* Western's legal department consists of Mr. Barfield and one relatively young attorney. *See* Hearing Transcript at 4:7–9 (Smith)(taken April 23, 2007)("April 23 Transcript"). [2] Giant's legal department consists of Mr. Bullerdick and three other attorneys. *See id.* at 4:10–14 (Smith). Because both Mr. Barfield and Mr. Bullerdick are corporate officers, each presumably owes a fiduciary duty to his company that goes beyond the law to other aspects of their businesses.

[2]   The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Certain documents have suggested to the FTC that Mr. Barfield engages in "competitive decision making." Submissions PX00017, PX00018, and PX00019 are e-mails from Mr. Barfield's file. *See* Appendix to Plaintiff's Corrected Response in Support of Plaintiff's Motion for Protective Order to Cure Deficiency in Document 54 Noticed to Plaintiff in

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

Document 57, filed April 21, 2007 (Doc. 98) ("Plaintiff's Appendix"), PX00017, E-mail from Mike Whentley to Lowry Barfield, Paul Foster, Jeff Stevens, Scott Weaver, and Ralph Schmidt (dated November 4, 2005)("PX00017"); *id.* PX00018, E-mail from Gary Dalke to Lowry Barfield (dated August 19, 2006)("PX00018"); *id.* PX00019, E-mail from Leroy Crow to Lowry Barfield (dated October 6, 2006)("PX00019"). PX00017 is an e-mail addressed to Mr. Barfield and others, discussing a possible pipeline venture and soliciting "any other finished product ideas." PX00017. PX00018 is an e-mail addressed to Mr. Barfield discussing capital expenditures. *See* PX00018. PX00019 is an e-mail addressed to Mr. Barfield, describing facilities inspection and construction progress. *See* PX00019.

**\*2**  The FTC's investigation has resulted in the production of sensitive and confidential information. *See* Plaintiff's Corrected Memorandum in Support of Motion for Protective Order at 1, filed April 19, 2007 (Doc. 68)("Plaintiff's Memo"). The Defendants have submitted documents and information pursuant to requests under the Hart–Scott–Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a. *See id.* at 3. Both Western and Giant have indicated that most of the documents submitted contain confidential material unknown to their competitors and the public in general. *See id* . Similarly, third parties have submitted and may be asked to submit additional information to the FTC that is relevant to this case and that contains non-public, competitively sensitive material. *See id.*

### *PROCEDURAL BACKGROUND*

On April 12, 2007, the FTC filed a Complaint seeking a temporary restraining order and a preliminary injunction halting Western's acquisition of Giant to preserve the competitive status quo while the FTC conducts an administrative proceeding to determine whether the transaction would violate antitrust laws. *See* Complaint for Temporary Restraining Order and Preliminary Injunction Pursuant to Section 13(b) of the Federal Trade Commission Act ("FTCA") at 1–2, filed April 12, 2007 (Doc. 1) ("Complaint"). The FTC represents that it has reason to believe that such acquisition would violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18. *See* Complaint at 4, 11.

The FTC's Complaint was filed pursuant to a Stipulated Interim Protective Order designed to protect competitively

sensitive commercial information, especially that of third parties. *See* Plaintiff's Motion for Protective Order, filed April 12, 2007 (Doc. 8)("Motion for Protective Order"), Stipulated Interim Protective Order (dated April 12, 2007)("Stipulated Order"). In accordance with D.N.M. LR–Civ. 7.1(a), the FTC represents that it discussed its Motion for a Protective Order with opposing counsel, and that the Defendants advised they would not oppose the motion. *See* Motion for Protective Order at 1–2. The FTC moves the Court, pursuant to rule 26(c) of the Federal Rules of Civil Procedure, for a protective order preserving the confidentiality of information that the Defendants or third parties have provided, or will be providing, to the FTC, and that the FTC has provided, or will be providing, to the Defendants. *See* Motion for Protective Order at 1. The FTC submitted a proposed order with its request for a protective order. *See* Stipulated Order.

In the Stipulated Interim Protective Order, counsel for the parties agree that they will abide by the terms of the Proposed Protective Order appended to the Stipulation, unless and until such time as the Court enters a protective order. *See id.* at 1. The Stipulation also states that it shall not prejudice the Defendants from opposing or seeking modification of any of the provisions of the protective order, and that it is intended only to secure confidentiality for documents related to this litigation pending the Court's acting on the Motion for Protective Order. *See id.* Thomas J. Lang, counsel for the FTC, Marc D. Schildkraut, counsel for Defendants Paul L. Foster and Western, and Tom D. Smith, counsel for Defendant Giant signed the Stipulated Interim Protective Order adopting the Proposed Protective Order on April 12, 2007, the day that it was submitted to the Court. *See id.* at 1–3.

**\*3**  Under the Proposed Protective Order, "Confidential Discovery Material" is "non-public trade secret or other research, development or commercial information, the disclosure of which would likely cause commercial harm to the Producing Party." Stipulated Order, Proposed Protective Order ¶ 4, at 2. The Proposed Protective Order includes the following examples of Confidential Discovery Material:

> strategic plans (involving pricing, marketing, research and development, corporate alliances, or mergers and acquisitions) that have not been fully implemented or revealed to the public; trade secrets; customer-specific evaluations or data (e.g., prices,

volumes, or revenues); sales contracts; system maps; personnel files and evaluations; information subject to confidentiality or non-disclosure files and evaluations; information subject to confidentiality or non-disclosure agreements; proprietary technical or engineering information; proprietary financial data or projections; and proprietary consumer, customer, or market research or analyses applicable to current or future market conditions, the disclosure of which could reveal Confidential Discovery Material.

*Id.* ¶ 4 at 2–3. Pursuant to the Proposed Protective Order, each corporate defendant may give Confidential Discovery Material to one in-house counsel who "does not have any influence over the direction of [that company's] business or its operations (in addition to outside counsel and experts or consultants retained to assist in this action)." Stipulated Order, Proposed Protective Order ¶ 8, at 9.

Specifically with regard to in-house counsel, paragraph 8 of the Proposed Protective Order provides that Confidential Discovery Material is not to be provided to any person except "one in-house counsel designated by Western who does not have any influence over the direction of Western's business or its operations," and "one in-house counsel designated by Giant who does not have any influence over the direction of Giant's business or its operations ..." *Id.* ¶ 8, at 8. Paragraph 9 of the Proposed Protective Order states that, if any party desires to disclose Confidential Discovery Material to in-house counsel for Western or for Giant not designated in paragraph 8 of the protective order, the disclosing party shall notify the producing party of its desire to disclose such Confidential Discovery Material. *See id.* ¶ 9, at 9. Paragraph 9 allows the producing party to object to the disclosure of the Confidential Discovery Material within five days of receiving notice of an intent to disclose such material. *See id.* ¶ 9, at 10. If the producing party timely objects, the disclosing party shall not disclose the Confidential Discovery Material to the identified person, absent a written agreement with the producing party or Court order permitting disclosure. *See id.* The Proposed Protective Order also permits any party to ask the Court to enter a protective order with different terms. *See id.* ¶ 18, at 14.

**\*4** The FTC requests that the Court issue an advance ruling in the form of the Proposed Protective Order. *See* Motion for Protective Order, Plaintiff's Memorandum in Support of Motion for Protective Order at 2 ("Plaintiff's Protective Order Memo"). The FTC requests that the Court enter the Proposed Protective Order to expedite the litigation of the case, to protect the parties' ability to secure and use confidential information in an appropriate matter, and to protect the interest of the Defendants and third parties against inappropriate disclosure of confidential material. *See id.* at 3–4.

On April 13, 2007, the Court granted the FTC's request for a Temporary Restraining Order. *See* Memorandum Opinion and Order at 1, 8, filed April 13, 2007 (Doc. 37). On April 16, 2007, the Court set the hearing on the FTC's request for Preliminary Injunction for May 7, 2007. *See* Hearing Transcript at 10:10 (Court)(taken April 16, 2007)("April 16 Transcript").

On April 16, 2007, the Defendants also orally moved to amend the Proposed Protective Order so that their General Counsels could access confidential information. *See id.* at 14:17–16:4 (Smith). At that time, the Court indicated that it was inclined to grant the Defendants' request, *see id.* at 17:20–21 (Court), but the parties requested to serve simultaneous briefing within forty-eight hours, *see id.* at 18:4–12 (Lang), *id.* at 18:15–19 (Smith). Both parties filed their briefs on the issue on April 18, 2007. *See* Plaintiff's Response in Opposition to Defendants' Motion to Amend the Protective Order, filed April 18, 2007 (Doc. 53); Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order, filed April 18, 2007 (Doc. 55)("Defendants' Opposition Memo").

The FTC opposes the Defendants' suggested amendments to paragraphs 8(c) and 8(d), which would appear to allow the General Counsels of Western and Giant to access all confidential discovery material produced in this litigation, including sensitive commercial information that the Defendants' competitors have supplied. *See* Plaintiff's Response at 4. The Defendants assert that the full participation of their General Counsels is essential to their defense. *See* Defendants' Opposition Memo at 1–2. They also submit that Mr. Bullerdick and Mr. Barfield, in particular, are experienced litigators, who will play a significant role in defending the contested transaction. *See* April 16 Transcript at 15:2–11 (Smith). Western and Giant also represent that Mr. Barfield and Mr. Bullerdick have no involvement in

the competitive decision making of their companies. *See* Defendants' Opposition Memo at 2–3.

At the April 23, 2007 hearing on the filings relating to the Motion for Protective Order, Western and Giant represented that Mr. Barfield and Mr. Bullerdick would submit affidavits to the Court attesting that they do not take part in competitive decision making. *See* April 23 Transcript at 5:9–13 (Smith). Further, at the hearing, Western and Giant stated that they seek to allow their General Counsels access to only deposition transcripts, transcripts of the FTC's investigative hearings, and un-redacted pleadings—not the actual documents produced to the FTC. *See id.* at 10:22–11:2.

**\*5** On April 24, 2007, Mr. Barfield and Mr. Bullerdick submitted affidavits stating that they are not involved in the competitive decision making of their companies. *See* Affidavit of Kim Bullerdick in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order ¶ 3, at 1–2, filed April 24, 2007 (Doc. 118)("Bullerdick Affidavit"); Affidavit of Lowry Barfield in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order ¶ 3, at 1, filed April 24, 2007 (Doc. 119)("Barfield Affidavit").

*FTCA*

Section 21(d)(2) of the FTCA provides:

> Any disclosure of relevant and material information in Commission adjudicative proceedings or in judicial proceedings to which the Commission is a party shall be governed by the rules of the Commission for adjudicative proceedings or by court rules or orders, except that the rules of the Commission shall not be amended in a manner inconsistent with the purposes of this section.

15 U.S.C. § 57b–2(d)(2). In furtherance of the requirements of Section 21, the FTC promulgated Rule 4.10(g). *See* 16 C.F.R. § 4.10(g)(1996). Rule 4.10(g)(3) provides that a person submitting confidential information to the FTC will be "afforded an opportunity to seek an appropriate protective or

in camera order" before the disclosure of such documents in court proceedings. *See id.*

*RULE 26(c)(7)*

Rule 26(c)(7) permits a court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...." Fed.R.Civ.P. 26(c)(7). Rule 26 creates a presumption of openness in discovery matters, and "it is well established that there is no absolute privilege for trade secrets or similar confidential information." *Sears v. Nissan Motor Co., Ltd.,* No. 90–2169, 1991 WL 80741, at \*2 (10th Cir. May 16, 1991).

> To resist discovery under Rule 26(b)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.

Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir.1981). Generally, in determining whether to require disclosure, a court should weigh the competing interests involved within the context of the total situation and consider factors such as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof. *See id.* at 326 n.6.

> It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the

appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion.

**\*6** *Id.* at 326.

With respect to distinguishing between outside and in-house counsel in protective orders that seek to guard against the disclosure of competing companies' confidential information, an important factor is whether the in-house counsel is involved in "competitive decision making." *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir.1992)(citing *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 n.3 (Fed.Cir.1984))(affirming a district court's upholding of a magistrate's protective order denying in-house counsel access to a competitor's confidential information where the in-house counsel was involved in competitive decision making and outside counsel had over six months to review the sensitive information to which the in-house counsel was not privy). Competitive decision making encompasses "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Glaxo Inc. Genpharm Pharm., Inc.,* 796 F.Supp. 872, 874 (E.D.N.C.1992)(quoting *U.S. Steel Corp. v. United States,* 730 F.2d at 1468)(internal quotations omitted). *See Akzo v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1482–83 (Fed.Cir.1986)(reviewing administrative law and upholding an administrative law judge's protective order denying in-house counsel access to confidential information about a competitor company where the party to which in-house counsel belonged failed to demonstrate that the information sought was needed). "[I]n-house counsel stand in a unique relationship to the corporation in which they are employed. Although in-house counsel serve as legal advocates and advisors for their client, their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part." *Fed. Trade Comm'n v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980)(finding that the district court did not abuse its discretion when it did not allow in-house counsel access to the competitively sensitive information of a subsidiary subject to divestment).

In *Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24 (E.D.Penn.1990), the Honorable Daniel H. Huyett III, United

States District Court Judge for the Eastern District of Pennsylvania, considered whether in-house counsel could have access to a competitor's confidential information. *See id.* at 27–29. Judge Huyett held that a senior staff attorney, who was not an officer or a director, was not related, by blood or marriage, to an officer or employee of the company, and who submitted an affidavit to the court stating that he was not involved in competitive decision making, could have access to the information in question. *See id.* at 27–28. Judge Huyett also ruled, however, that the Director of Law, who was an officer, was not a director, was not related, by blood or marriage, to another officer or company employee, and who filed an affidavit with the court declaring that he had no "direct" involvement in competitive decision making, was barred from accessing the information sought. *Id.* at 28.

**\*7** In *Glaxo Inc. v. Genpharm Pharm., Inc.,* the Honorable Terrence William Boyle, United States District Judge for the Eastern District of North Carolina, overruled a magistrate's protective order denying one of the party's in-house counsel access to confidential materials obtained from the opposing party through discovery. *See id.* at 874. The magistrate had barred the in-house counsel from accessing the information in question on the grounds that he was a high-level employee and substantial investor in the party-company, his company had retained three outside law firms that could provide adequate representation, and that the opposing party had no in-house counsel. *See id.* Judge Boyle held that the in-house counsel, who was a member of three different bars and attested in two un-controverted affidavits that he had no involvement in competitive decisions involving pricing, scientific research, sales, or marketing, could access the opposing party's confidential materials. *See id.*

## ANALYSIS

The Court believes that the nature of the confidential discovery materials in this case warrants a protective order. The Court also concludes that it can craft one that balances the need of Western and Giant for information against the injury that may result from disclosure. Accordingly, the Court will modify the Proposed Protective Order to allow Western's and Giant's General Counsel, subject to meeting certain conditions, to access certain categories of the confidential discovery information.

I. *THE COURT WILL ENTER A PROTECTIVE ORDER IN THIS CASE.*

The confidential information at issue here includes competitors' cost data, customer lists, prices, and volumes sold. *See* Affidavit of Bradley Barron, General Counsel, NuStar Energy, L.P. ¶ 5, at 1 (executed April 18, 2007); Declaration of Thomas D. Carmel, Senior Counsel, Conoco Phillips ¶ 3, at 1 (executed April 18, 2007); Declaration of Darby L. Reid, Senior Manager, Valero Energy Corporation ¶ 3, at 1 (executed April 18, 2007). Under rule 26(c)(7), such information fits within categories of information that may be protected. *See American Standard, Inc. v. Pfizer, Inc.,* 828 F.2d 734, 740 (Fed.Cir.1987)(stating that confidential information includes trade secrets and marketing plans); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.,* 157 F.R.D. 691, 697 (D.Nev.1994)(holding that confidential information includes that which would cause substantial economic harm to the competitive position of the producer); Fed.R.Civ.P. 26(c)(7). The parties do not dispute the harm that disclosure of competitively sensitive information to competitors can inflict on a business.

Litigation of this case may require that all parties engage in discovery of confidential material in the possession of third parties and may require the disclosure of confidential material to the Court. The FTC represents that, in litigating similar cases, it has found that courts frequently receive several requests for protective orders pursuant to rule 26(c), 15 U.S.C. § 57b–2(d)(2), and 16 C.F.R. § 4.10(g). In the interests of efficiency and fairness to the Defendants and to all third parties who have provided or may provide competitively sensitive information, the FTC seeks this relief to establish a uniform procedure to safeguard certain confidential material that the parties to this litigation have discovered or will discover. There is no doubt that such an order would alleviate the burden on the Court to respond to numerous requests for orders protecting confidential information on a case-by-case basis, and effect a more orderly discovery process.

**\*8** The proposed order seeks to ensure, to the extent possible, that matters raised in this proceeding will be open to the public, while simultaneously limiting the number of persons who have access to the confidential information generated during the discovery phase of the litigation and providing a mechanism for the proper dissemination of discoverable documents. Furthermore, such material submitted by the Defendants, as well as material submitted by third parties, may be entitled to confidential treatment under

Sections 6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f), 57b–2.

The Court will adopt the Proposed Protective Order subject to the amendments introduced below.

II. *THE COURT WILL AMEND THE FTC'S PROPOSED PROTECTIVE ORDER TO ALLOW WESTERN'S AND GIANT'S GENERAL COUNSEL LIMITED ACCESS TO SOME CONFIDENTIAL INFORMATION.*

The FTC seeks a protective order that would bar Mr. Barfield and Mr. Bullerdick from viewing confidential discovery materials. *See* Plaintiff's Response at 2. The FTC asserts that it is crucial that this information remain confidential and unexploited, because, if it is used to gain competitive advantage, companies will be reluctant to provide information to the FTC in the future. *See* Plaintiff's Response at 9–10.

Western and Giant assert that it is essential to their defense that their General Counsels have access to the confidential discovery material in this case. *See* Defendants' Opposition Memo at 1. Western and Giant contend that Mr. Barfield and Mr. Bullerdick are responsible for advising their management on litigation strategy, and that they cannot do so without full access to relevant information. *See id.* at 2. They also represent that Mr. Barfield is an experienced commercial litigator who desires to take a leading role in this litigation. *See* April 23 Transcript at 9:14–24. Western and Giant concede that the discovery materials should be subject to protection and that they should remain confidential. *See id.* at 1. Western and Giant seek only limited access to information for their General Counsels: they seek to allow Mr. Barfield and Mr. Bullerdick access to deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, *see* April 23 Transcript at 10:22–11:2, in their outside counsels' office(s) in a manner that would allow them to take notes but not remove the notes from the outside counsels' office(s), *see* Defendants' Opposition Memo at 1. The Court finds that the limited nature of this request substantially lessens the danger that Western and Giant will be able to view, yet alone use, any information that could provide them advantages over their competitors. Moreover, addressing the issue of in-house counsel and competitive decision making, Western and Giant represent that Mr. Barfield and Mr. Bullerdick do not take part in competitive decision making, *see* Defendants' Opposition Memo at 2–3, and Mr. Barfield and Mr. Bullerdick have submitted affidavits to the Court affirming that representation, *see* Barfield Affidavit ¶ 3, at 1; Bullerdick Affidavit ¶ 3, at 1–2.

**\*9** The FTC presents three e-mail communications, PX00017, PX00018, and PX00019, to dispute the assertion that Mr. Barfield is not involved in competitive decision making. The Defendants respond that those three e-mails were the only ones out of approximately 900,000 documents submitted to the FTC that indicate that Mr. Barfield may have a role in competitive decision making at Western. April 23 Transcript at 8:6–11. Further, the Defendants represent that PX00017 was simply a solicitation of interest sent to multiple parties, and that PX00018 and PX00019 related to due diligence concerning the Giant transaction. *See id.* at 8:11–24. The Court finds that the number and nature of the communications the FTC submits do not override the declarations regarding competitive decision making contained in the affidavits of Mr. Barfield and Mr. Bullerdick.

Acknowledging that it is within the trial Court's discretion to determine which safeguards are appropriate for protecting commercial information, *see Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d at 326, recognizing the FTC's significant interest in safeguarding information cooperating companies give it and the significant interest the Defendants have in putting on the strongest defense they can, because the FTC has not demonstrated that harm will result from allowing the limited access to confidential information that Western and Giant seek, because Western and Giant have shown that their defense would be prejudiced if their General Counsels were prohibited from providing them with well-informed strategic legal advice, noting that Western's and Giant's in-house counsel are limited in number, and because Mr. Barfield and Mr. Bullerdick attest that they do not take part, directly or indirectly, in their companies' competitive decision making, the Court will adopt the Proposed Protective Order after amending paragraphs 8(c) and 8(d) to balance Western's and Giant's need for information with the FTC's concern for potential harm from the disclosure of confidential competitive information.

Based on the foregoing, and based upon Mr. Barfield's and Mr. Bullerdick's entering affidavits declaring of which bars they are members and remaining subject to the Court's jurisdiction at all times, including after the case is concluded, the Court will amend paragraphs 8(c) and 8(d) to read:

(c) Lowry Barfield, General Counsel of Western Refining, Inc., who may have access to confidential deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, without exhibits, in the office(s) of Western's outside counsel, and who may take notes regarding such material but may not remove these notes from the office(s) of Western's outside counsel;

(d) Kim Bullerdick, General Counsel of Giant Industries, Inc., who may have access to confidential deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, without exhibits, in the office(s) of Giant's outside counsel, and who may take notes regarding such material but may not remove these notes from the office(s) of Giant's outside counsel;

**\*10** IT IS ORDERED that the Plaintiff's Motion for Protective Order and the Plaintiff's Corrected Motion for Protective Order are granted in part and denied in part. The Court adopts, based on Mr. Barfield's and Mr. Bullerdick's agreeing to meet the terms stated herein, the Proposed Protective Order with the stated amendments to paragraphs 8(c) and 8(d). Mr. Barfield and Mr. Bullerdick must enter affidavits listing the bar(s) of which they are members, acknowledge that the are subject to the Court's contempt powers, and agree to remain subject to the Court's jurisdiction at all times, including after the case is concluded. Mr. Barfield and Mr. Bullerdick are also instructed not to use the confidential information, directly or indirectly, for any purpose other than defending against this lawsuit.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2219410

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1557168

United States District Court,
E.D. Missouri, Eastern Division.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

PEABODY ENERGY CORPORATION
and Arch Coal, Inc., Defendants.

Case No. 4:20-cv-00317-SEP
|
Signed 04/01/2020

**Attorneys and Law Firms**

Amy E. Dobrzynski, Daniel Matheson, Elizabeth Arens, Jeanine Balbach, Jonathan Lasken, Joshua Goodman, Michael Anthony Franchak, Philip Kehl, Stephen Santulli, Taylor Alexander, Federal Trade Commision, Washington, DC, for Plaintiff.

Corey Roush, Pro Hac Vice, Gorav Jindal, J. Matthew Schmitten, Akin and Gump, Edward Hassi, Leah S. Martin, Debevoise and Plimpton LLP, Stephen Weissman, Andrew Thomas George, Elisa Beneze, Jarad Scot Daniels, Matthew Adler, Michael J. Perry, Steven Benjamin Pet, William Connor Lavery, Baker Botts, LLP, Washington, DC, Matthew T. Schelp, Michael Charles Martinich-Sauter, Husch Blackwell LLP, Catherine L. Hanaway, Ashcroft Hanaway LLC, St. Louis, MO Cristina R. Thrasher, Akin and Gump, Johan Robert Abraham, Michael Schaper, Tristan Myles Ellis, Debevoise and Plimpton LLP, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

SARAH E. PITLYK, UNITED STATES DISTRICT JUDGE

**\*1** This matter is before the Court on Defendant Peabody Energy Corporation ("Peabody") and Arch Coal, Inc.'s ("Arch") (collectively, "Defendants") Unopposed Motion to Modify the Protective Order (Doc. [52]) ("Defendants' Motion"), the parties' Joint Request for a Teleconference, (Doc. [64]) ("Joint Request"), and multiple motions opposing Defendants' proposed modifications to the protective order submitted by Navajo Transitional Energy Company, LLC ("NTEC"); Ameren Corporation and Union Electric Company d/b/a Ameren Missouri ("Ameren Entities");

and Peter Kiewit Sons', Inc. ("Kiewet") (collectively, "Intervenors"). Docs. [62], [68], [73]. [1]

[1]   ALLETE, Inc., Evergy, Inc., Indiana Michigan Power Company, Public Service Company of Oklahoma, Southwestern Electric Power Company, and WEC Energy Group, Inc., also moved to intervene, *see* Doc. [82], and they participated in the telephonic hearing and supplemental briefing in support of Intervenors' motions opposing the modifications, *see* Docs. [88], [98].

**I. Background**

At the request of the parties, this Court entered a preliminary protective order in this case on March 4, 2020, with the understanding that Defendants would be seeking modifications to permit certain of their employees access to information designated as "confidential material" under that order. Doc. [47]. Defendants' Motion seeking a modification to that protective order was filed on March 12, 2020. Doc. [52]. Five days later, the parties filed the Joint Request indicating that Defendants would like further modifications to the protective order, but the FTC was opposed. Doc. [64]. Between March 13 th and the 23 rd, Intervenors all sought intervention for the purpose of opposing the proposed modifications to the protective order. [2] Docs. [62], [68], [73]. The Court held a telephonic hearing on March 24, 2020, on Defendants' Motion, the parties' Joint Request, and the Intervenors' objections thereto. In anticipation of that hearing, the Court invited Defendants to submit limited supplemental briefing. Docs. [89], [90]. At the hearing, the Court invited the FTC and Intervenors to respond to Defendants' supplemental briefing. Those responsive briefs were filed March 26, 2020. Docs. [97], [98]. This Memorandum and Order considers all of the above-described briefing and argument.

[2]   In addition to opposing Defendants' proposed modifications to the protective order, Intervenors' motions also seek additional relief, including their own proposed modifications of the protective order. *See, e.g.*, Doc. [62] ¶ 28; Doc. [68] ¶¶ 15-16; Doc. [73] at 1 (seeking "outside counsel only" designations). NTEC's also seeks apparent remedies for alleged non-compliance by the parties with existing provisions. *See, e.g.*, Doc. [62] ¶¶ 12-14, 26 (alleging that Defendants have not

**Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....**

2020-1 Trade Cases P 81,155

provided a copy of the protective order to every entity that has received a subpoena and requesting the Court therefore add a requirement to the protective order that NTEC itself be notified of all subpoenas.) This Order addresses only the parties and Intervenors' proposed modifications to the protective order. Concerns about non- compliance with existing provisions of the protective order should be raised separately as they arise—first with the parties themselves, and then, if efforts to meet and confer fail, with the Court.

**\*2**  Defendants' Motion, which the FTC did not oppose at the time that it was filed,[3] seeks a modification of the protective order that would allow one member of each of Defendants' in-house legal departments (specifically, Carol Li for Peabody and Rosemary Klein for Arch) to view documents deemed "confidential material" under the protective order. Defendants' Motion would otherwise leave the protective order unchanged.[4] Although the FTC did not oppose granting access to Ms. Li and Ms. Klein, the parties agreed—and notified the Court in Defendants' Motion —that the FTC would notify "third parties that produced Confidential Information" of the proposed modification and provide them six days to object thereto before asking that the Court enter the modified protective order. Doc. [52] at 2 n.1.

[3]  Later, the FTC asked the Court to impose greater limitations on Ms. Li and Ms. Klein's access to confidential material than the FTC had agreed to in consenting to Defendants' Motion. Doc. [97] at 4-5.

[4]  Counsel for the FTC originally advised this Court that they had to seek approval from the administrative law judge who will preside over the anticipated Part 3 administrative hearing before it could consent to any modification to the protective order. The Court understands the FTC's lack of opposition to Defendants' Motion to signify that counsel obtained that approval for the modifications proposed therein.

During that six-day period, not only did several third parties file such objections, but the parties themselves also submitted the Joint Request, outlining a disagreement between Defendants and the FTC over proposed further modifications of the protective order. Specifically, Defendants want to allow two additional employees from each Defendant (Scott Jarboe and Alice Tharenos for Peabody; Robert Jones and Kenneth

Cochran for Arch) to view confidential material under the protective order, and the FTC objects to granting such access.

Intervenors, meanwhile—coal producers and purchasers and other energy providers, all of whom have been subpoenaed by one or more parties to this litigation—object to allowing *any* of the six employees of Defendants to view confidential material they have produced or will produce in the context of this litigation. They argue that, as non-parties to this litigation, they have legitimate privacy interests, and it is unfair for their competitors or suppliers to view their most sensitive information, some of which they have developed over years and is central to their competitive business strategies.

After careful consideration of the parties' written and oral arguments, the Court will grant Defendants' Motion with two modifications, outlined below. The Court will deny Intervenors' motions insofar as they oppose *any* employee of Defendants having *any* kind of access to confidential material under the protective order, but it will grant Intervenors' motions as to the further modifications proposed by Defendants in the context of the Joint Request. None of the additional four employees proposed by Defendants in the Joint Request will have access to confidential material under the protective order. As described below, the Court will also grant NTEC's request for one additional safeguard against disclosure of confidential material.

### Legal Standard

Federal Rule of Civil Procedure 26(c) allows for the issuance of a protective order upon a showing of good cause. *see Monsanto Co. v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:12-cv-1090-CEJ, 2014 WL 1211111, *1 (E.D. Mo. Mar. 24, 2014).* "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise....[T]he 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C. Cir. 1999).

**\*3**  Here, the Court must balance Defendants' interest in "a fair opportunity to help prepare their defense to the FTC's challenge," Doc. [64] at 1, and the risk of serious competitive harm to third parties, including Intervenors, who have been compelled to produce sensitive information for inspection by Defendants, who are their competitors or suppliers. *see* Doc. [98] at 4-5; *see also F.T.C. v. Advocate Health Care*

USAP009

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

*Network*, 162 F.Supp.3d 666, 671-72 (N.D. Ill. 2016) ("[W]e are not talking about an exchange of documents between two sides in a lawsuit. We are talking about a number of third parties, not targets of any FTC action, who had to give up exceedingly confidential information in response to a government subpoena.").

In such situations, courts often try to balance the relevant interests by requiring third parties to produce their sensitive information for use in the lawsuit but issuing a protective order to prevent that information from falling into the hands of "competitive decision-makers"[5] at rival corporations. *Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 57 (D.D.C. 2007). In a seminal case, *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), the United States Court of Appeals for the Federal Circuit noted that involvement in competitive decisionmaking "may well be" grounds for disqualifying certain in-house counsel from seeing confidential material submitted by third parties, but the court stressed that these cases are highly fact-dependent and not susceptible to brightline rules. 730 F.2d at 1468. Accordingly, the Federal Circuit rejected a categorical distinction between "in-house" and "retained" counsel and encouraged courts to focus instead on "[w]hether an unacceptable opportunity for inadvertent disclosure exists," as "determined...by the facts, on a counsel-by-counsel basis." *Id.*

[5]  The Federal Circuit has defined "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).

Following *U.S. Steel*, courts have focused on involvement in competitive decisionmaking and, more fundamentally, on the risk of inadvertent disclosure: "The primary concern underlying the 'competitive decision-making' test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." *F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992), and *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 27 (E.D. Pa. 1990)). *See also Matsushita*

*Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991); *Advocate Health Care Network*, 162 F.Supp.3d at 667-668; *United States v. Aetna Inc.*, No. 1:16-CV-01494 (JDB), 2016 WL 8738420, at *5 (D.D.C. Sept. 5, 2016); *Saint Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, No. 1:12-CV-00560-BLW-RE, 2013 WL 139324, at *4 (D. Idaho Jan. 10, 2013)) ("the very nature of competitive information makes it difficult to compartmentalize.")).

Accordingly, this Court understands its task to be to assess —"by the facts, on a counsel-by-counsel basis," *U.S. Steel*, 730 F.2d at 1468—whether each of the individuals for whom Defendants seek access to confidential material presents *too great* a risk of inadvertent disclosure, keeping in mind that the risk of harm to third parties must be balanced against Defendants' very substantial interest in having access to discovery materials that may be used in the case against them. *see Brown Bag Software*, 960 F.2d at 1470.

### Analysis

**\*4**  Defendants' six designees divide helpfully into three categories, which the Court will address in turn.

#### 1. Carol Li (Peabody) and Rosemary Klein (Arch)

The Court finds that Ms. Li and Ms. Klein present minimal risk of inadvertent disclosure of confidential material, and that the risk is outweighed by the disadvantage to Defendants of inhibiting their in-house litigation counsel's involvement in their defense.

Defendants have persuaded the Court that Ms. Li and Ms. Klein are vital contributors to Defendants' litigation of this case. For Peabody, Ms. Li exercises operational oversight over this litigation and outside counsel. Doc. [90-1] ¶ 12. She is the employee who will provide outside counsel with the day-to-day detailed guidance they will need to litigate this case, and if she cannot review draft and final briefs or expert reports containing confidential information, her involvement in Peabody's defense will be substantially impaired. *Id.* ¶ 13. For Arch, Ms. Klein set up and ran the "clean team" during the FTC's investigation of the joint venture. Doc. [89-1] ¶ 13. She coordinates directly with outside counsel on a day-to-day basis regarding legal strategy and is one of only a few individuals at Arch with comprehensive knowledge of the transaction. *Id.* ¶ 9. She intends to be an active member of the trial team, which will be substantially more difficult if

USAP010

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

she is categorically excluded from reviewing any confidential material. *Id.* ¶ 12.

On the other side of the balance, no one has contested Defendants' claims that neither Ms. Li nor Ms. Klein plays any role in competitive decisionmaking nor poses any appreciable risk of inadvertent disclosure. Doc. [90-1] ¶ 7; Doc. [89-1] ¶ 6. In fact, the FTC originally did not object to modifying the protective order to allow these two attorneys access to confidential material. *see* Doc. [52] at 2.

Intervenors' primary counterargument to Ms. Li and Ms. Klein is that their roles in the future may change such that the risk of inadvertent disclosure would be greater than it is now. Doc. [98] at 5. Of course, that is possible; the future is uncertain. But on the evidence before the Court, Ms. Li and Ms. Klein both appear to have exclusively legal experience and current portfolios. *See* Doc. [90-1] ¶ 4; Doc. [89-1] ¶ 5. There is no evidence that they have any qualifications that would suit them for competitive decisionmaking roles. Unlike the other attorneys Defendants seek access for, there is no suggestion that either Ms. Li or Ms. Klein regularly participates in strategy meetings outside her respective company's legal department.[6] The Court cannot find that the entirely speculative possibility that Ms. Li or Ms. Klein might someday be in a position to disclose confidential material to competitive decisionmakers outweighs the cost to Defendants of denying their most integrally involved in-house litigators full access to the evidence adduced against them.

[6]     Ms. Klein reports that she has "approximately five times" attended an Executive Leadership Team meeting to deliver a 10-15-minute presentation. Doc. [90-1] ¶¶ 8, 9. The Court does not regard that as comparable to, for example, Mr. Jarboe's attendance of "weekly Executive Leadership Team meetings, the periodic Board of Directors meetings, the monthly Business Performance Reviews, the monthly Marketing Matters meetings, and the weekly Global Development Steering Committee meetings." Doc. [90-2] ¶ 6.

**\*5** Li and Klein are the employees of Defendants who have the greatest operational, day-to-day involvement with this litigation. They are lawyers, not businesspeople, and neither is currently, or ever has been, involved in any competitive decisionmaking on behalf of their companies; nor have Intervenors or the FTC raised any grounds for realistic

concern that they will be in the future. To deny Ms. Li and Ms. Klein access to confidential material while permitting it to outside counsel would be to apply the overly formalistic distinction between in-house and external counsel that the Federal Circuit forbade in *U.S. Steel.* 730 F.2d at 1468 (noting that in-house counsel are equally officers of the court and subject to the same codes of professional conduct as outside counsel).

Because the Court finds that permitting Ms. Li and Ms. Klein to view confidential material would not pose an undue risk of inadvertent disclosure, it will grant the proposed modification of the protective order to allow them access to confidential material.

**2. Alice Tharenos (Peabody) and Kenneth Cochran (Arch)**

By contrast, the Court finds that providing Ms. Tharenos and Mr. Cochran access to confidential material would present a substantial risk of inadvertent disclosure, outweighing any disadvantage to Defendants of denying them access to confidential materials.

The second pair of prospective designees are at the opposite end of the spectrum from the first. Unlike Ms. Li and Ms. Klein, Ms. Tharenos and Mr. Cochran *are* businesspeople and are *not* lawyers. Doc. [90-3] ¶¶ 4, 13; Doc. [89-3] ¶¶ 3, 4, 9. Asked directly by the Court, Defendants were unable to cite a single instance in which a court has granted non-lawyers the kind of access to competitor and customer data that they are asking this Court to grant to Ms. Tharenos and Mr. Cochran. Transcript of Tel. Conf. at 21:14-20 (Mar. 24, 2020) (Doc. [96]).

The nearest example Defendants could provide was *F.T.C. v. Sysco*, in which, counsel claimed, the court required that the FTC provide redacted affidavits for review by businesspeople. *Id.* at 21:21-22:10 (referring to *F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1 (D.D.C. 2015)). This Court has been unable to find any order requiring the provision of affidavits stripped of confidential information to businesspeople in *Sysco*, but it did find an order requiring the FTC to provide the names of declarants to Sysco employees. Order, *FTC v. Sysco*, No. 1:15-cv-00256 (APM) (D.D.C. Mar. 18, 2015). Unfortunately, whether to provide Defendants' corporate employees with the names of declarants (or redacted affidavits, for that matter) is not the question before this Court. Instead, Defendants have asked this Court to grant Ms. Tharenos and Mr. Cochran access to *all* information

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

designated as "confidential material" under the protective order. Doc. [64] at 1-2. Sysco provides no support for granting Mr. Cochran and Ms. Tharenos that level of access. In fact, the district court in *Sysco* denied such access to an attorney whose activities brought him merely "within the orbit" of competitive decisionmaking activities. *Sysco*, 83 F.Supp.3d at 4. *Sysco* certainly does not support granting full access to employees who actually *are* businesspeople.

The Court also does not find in the record any reason to conclude that the need for Ms. Tharenos and Mr. Cochran to view confidential material outweighs the risk of harm to third parties of their competitively sensitive information being reviewed by businesspeople who work for Defendants. Both individuals claim that they will be better able to help with the litigation with such access. Doc. [90-3] ¶¶ 11-12; Doc. [89-3] ¶¶ 7-8. But like the attorney excluded in *Sysco*, Ms. Tharenos and Mr. Cochran are

> not in any way prevented from imparting [their] personal knowledge of the [coal] industry, [their employers'] business operations or the proposed merger to assist outside counsel. Though this restriction may somewhat diminish [their] ability to advise [their employers,] the court must strike a balance between [Defendants'] ability to prepare and present [their] defense and the interest of third parties in avoiding the inadvertent use or disclosure of their confidential information.

**\*6**  *Sysco*, 83 F.Supp.3d at 4. In this case, that balance weighs against granting access to businesspeople.

This is not to discount Ms. Tharenos and Mr. Cochran's promises not to disclose any confidential material, of course. *see* Doc. [89-3] ¶ 11; Doc. [90-3] ¶ 15. The probability of willful disclosure is not what this Court is bound to assess; rather, it's the risk of *inadvertent* disclosure. *see U.S. Steel*, 730 F.2d at 1468. That risk is plainly substantially higher for an employee whose experience and expertise are in "directing and overseeing [a coal] company's mining operations, procurement, safety initiatives, and development projects," Doc. [89-3] ¶ 3, even if his contact with competitive

decision-makers is "on a social basis" *id.* ¶ 5, than it is for an in-house litigation attorney who has no business expertise or operational experience in the coal industry. And the risk of inadvertent disclosure is even higher for an employee whose *current* responsibilities include "integrational planning and transition services relating to acquisitions and joint ventures," Doc. [90-3] ¶ 3, and who attends "Business Performance Reviews," "Marketing Matters meetings," and "Global Development Steering Committee meetings," *id.* ¶ 6.

Peabody's counsel frankly acknowledged that it could not predict what role Ms. Tharenos would play at Peabody in the future. Doc. [96] at 45:14-15. Arch stressed that Mr. Cochran is "semi-retired," as if to suggest that he is unlikely to exercise any responsibility for competitive decisionmaking in the future, Doc. [96] at 21:6, but no one asserted definitively that he certainly would not, nor could they have. There is nothing about being "semi-retired" that would prevent Mr. Cochran from being involved in competitive decisionmaking in the future, any more than it has prevented him from "being a member of the 'clean team' that was responsible for evaluating the expected synergies from the proposed joint venture." Doc. [89-3] ¶ 4; *see Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No. 12-CV-0904S(SR), 2013 WL 12238482, at *3 (W.D.N.Y. July 2, 2013) (finding good cause to preclude access to retired executive working as a consultant where he was involved in the activity underlying the dispute). As observed with respect to Ms. Li and Ms. Klein above, uncertainty about future career paths can be a reason to exclude even members of companies' legal teams from viewing confidential documents. *See, e.g.*, Order at 2, *United States v. Deere*, No. 16 C 08515 (N.D. Ill. Apr. 26, 2017). Although the Court did not find that a persuasive argument against Ms. Li and Ms. Klein on the facts presented, the Court does find it a compelling concern about Ms. Tharenos and Mr. Cochran.

For all of these reasons, the Court finds that the risk of inadvertent disclosure of third parties' sensitive information is too great to grant Defendants' request to include Ms. Tharenos and Mr. Cochran among those who may access confidential material under the proposed order.

### 3. Scott Jarboe (Peabody) and Robert Jones (Arch)

Although the third category of designees is a closer call, the Court finds that the risk of inadvertent disclosure by Mr. Jarboe and Mr. Jones is too great to allow them access to confidential materials under the protective order.

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

**\*7** Mr. Jarboe is the Chief Legal Officer of Peabody and Mr. Jones, the General Counsel of Arch. Both provide comprehensive legal counsel to their respective employers and Boards of Directors and have ultimate supervisory authority over all litigation. Doc. [90-2] ¶¶ 3, 13; Doc. [89-2] ¶ 3. Crucially, though, they also both claim significant industry expertise and non-legal responsibility within their companies, and both acknowledge that they regularly participate in meetings of corporate leadership at which competitive decisions are at least discussed, if not "made." Mr. Jones, for example, has been with Arch for nearly 30 years, claims to be "knowledgeable about Arch's operations and the energy industry overall," and admits to "see[ing] various reports and attend[ing] Executive Meetings, including Board Meetings where the status of our sales commitments and production forecasts are discussed...." Doc. [89-2] ¶¶ 4, 6. Similarly, Mr. Jarboe, who has been with Arch for more than 10 years, "stay[s] informed regarding the current status of generation sources, plant closures, and announcements from utilities about power plant closures, as well as supply and demand forecasts," and he attends "weekly Executive Leadership Team meetings, the periodic Board of Directors meetings, the monthly Business Performance Reviews, the monthly Marketing Matters meetings, and the weekly Global Development Steering Committee meetings." Doc. [90-2] ¶¶ 4, 6.

Notwithstanding the above, both Mr. Jarboe and Mr. Jones deny involvement in competitive decisionmaking on behalf of their employers. Doc. [90-2] ¶¶ 5, 7; Doc. [89-2] ¶ 5. The Court has no reason to doubt either their truthfulness or their commitment to using confidential material only in the defense of this litigation. Doc. [89-2] ¶ 15; Doc. [90-2] ¶ 20. Nevertheless, given their substantial roles in the strategic leadership of their respective companies, the Court concludes that granting them access to the competitively sensitive data of competitors and customers would create an unacceptably high risk of inadvertent disclosure. *see Sysco*, 83 F.Supp.3d at 4 ("Mr. Libby's membership on the Executive Team brings him well within the orbit of Sysco's competitive decision-making activities.") (internal citation omitted); *see also PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. CV 16-403-LPS-CJB, 2017 WL 4138961, at \*9 (D. Del. Sept. 18, 2017) (denying access to General Counsel after weighing risk of inadvertent disclosure against harm to movant from restriction); *Cytosport, Inc. v. Vital Pharm., Inc.*, No. CIV S-08-2632 FCDGGH, 2010 WL 728454, at \*3 (E.D. Cal. Mar. 2, 2010) ("If the CEO is not a lawyer, query who will advise him on such issues. Questions such as the extent that in-house

counsel will be advising the employer on such legal issues as input on contract formation, marketing, and employment are important [in this inquiry].").

Undoubtedly, Mr. Jones and Mr. Jarboe will be considerable assets to Defendants' litigation teams, even without access to confidential materials. Like Ms. Tharenos and Mr. Cochran, Mr. Jones and Mr. Jarboe will not be sidelined by this decision. They will still be "able to assist outside counsel and advise [Defendants] on litigation strategy. [They] will have access to redacted final and draft pleadings, expert reports, affidavits, and deposition transcripts, and to discovery not designated as Confidential Material." *Sysco Corp.*, 83 F. Supp. 3d at 4. And like Tharenos and Cochran, they will still be free to impart their expertise—in their cases, both industry-related and legal—to outside counsel. *See id.* Also like their business-side colleagues, they may be marginally less effective in providing that advice due to their lack of access to confidential material. Still, the Court does not believe that the marginal advantage to Defendants of granting a second member of each in-house legal staff access to confidential material outweighs the very real risk to Intervenors from their competitively sensitive data being provided to members of Defendants' executive leadership. *Id.* (denying access to a second member of in-house counsel with close connections to executive board where court had granted access to one in-house counsel already).

**4. Additional safeguards for confidential information**
The Court expects all parties to comply strictly with every term of the protective order and believes that they will. Still, in deference to Intervenors' legitimate concerns for the security of their confidential materials, the Court will make the following two modifications to the proposed modified protective order already submitted by the parties (Doc. [52-1]):

**\*8** (1) As requested by NTEC in its motion to intervene (Doc. [62] ¶ 27), Ms. Li and Ms. Klein will be required to attest in writing that they will fully comply with the protective order. The requirement should be added to the protective order itself, and attestations completed by Ms. Li and Ms. Klein should be appended to the final protective order submitted by the parties pursuant to this Order.

(2) The final protective order will contain the following penalty provision, as an added incentive against misuse of confidential material:

Federal Trade Commission v. Peabody Energy Corporation, Not Reported in Fed....

2020-1 Trade Cases P 81,155

Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority, and the Court will urge that authority to suspend or disbar the violator.

**5. No "Outside Counsel Only" designation**

Intervenors and, in its supplemental briefing, the FTC have requested that, if this Court grants any of Defendants' employees access to confidential material under the protective order, it further modify the protective order to permit third parties to designate especially sensitive materials as viewable by "Outside Counsel Only." Doc. [62] ¶ 28; Doc. [68] ¶¶ 15-16; Doc. [73] at 1; Doc. [97] at 4-5. Defendants object that creating such a classification would essentially effect no change to the current, unmodified protective order, because third parties will simply shift to classifying all of their information as "Outside Counsel Only," leaving Defendants in precisely the same predicament they are in now. Doc. [96] at 30:7-15.

The Court cannot tell at this point if Defendants' prediction is cynical or sound, but it harbors its own significant concerns about the administrability of a two-tiered protective order, especially given the expedited timeline on which this case is proceeding. Those concerns, together with the Court's confidence in the ability of Ms. Li and Ms. Klein to avoid inadvertent disclosure of confidential material, persuade the Court to deny the requests for an "Outside Counsel Only" designation. *See generally United States v. Aetna Inc.*, No. 1:16-CV-01494 (JDB), 2016 WL 8738420, at *10 (D.D.C. Sept. 5, 2016) (rejecting two-tier protective order where it would have required re-designation of large swathes of confidential materials in a case litigated on a highly expedited schedule).

**Conclusion**

For the reasons outlined above, Defendants' Motion (Doc. [52]) is **GRANTED**, and their proposed modified protective order (Doc. [52-1]) will be entered, subject to the modifications described above. Intervenors' motions (Docs. [62], [68], [73]) are **GRANTED** in part and **DENIED** in part as outlined above.

**IT IS HEREBY ORDERED THAT**, no later than 5 PM CT on the date following the entry of this Order, the parties should submit a final protective order incorporating the above modifications for immediate entry by this Court.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1557168, 2020-1 Trade Cases P 81,155

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   7

F.T.C. v. Whole Foods Market, Inc., Not Reported in F.Supp.2d (2007)

2007 WL 2059741
Only the Westlaw citation is currently available.
United States District Court,
District of Columbia.

FEDERAL TRADE COMMISSION, Plaintiff,
v.

WHOLE FOODS MARKET, INC., and
Wild Oats Markets, Inc., Defendants.

Civil Action No. 07-1021 (PLF).
|
July 6, 2007.

**Attorneys and Law Firms**

Michael Bloom, Amanda L. Wait, Eric Matthew Sprague,
Reid Brian Horwitz, Thomas H. Brock, Thomas J. Lang,
Federal Trade Commission, Washington, DC, for Plaintiff.

Alden Lewis Atkins, Vinson & Elkins, LLP, John Martin
Faust, John David Taurman, Neil W. Imus, Paul H. Friedman,
James A. Fishkin, Jeffrey W. Brennan, Paul T. Denis, Dechert
LLP, Gary Alan MacDonald, Skadden, Arps, Slate, Meagher
& Flom, LLP, Washington, DC, Clifford Hank Aronson,
Matthew P. Hendrickson, Thomas Pak, Skadden, Arps, Slate,
Meagher & Flom, LLP, New York, NY, Terrence J. Wallock,
Law Office of Terrence J. Wallock, Corona Del Mar, CA, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

PAUL L. FRIEDMAN, United States District Judge.

 **\*1** This lawsuit was filed on June 6, 2007. The Federal Trade
Commission ("FTC") seeks to enjoin Whole Foods Market,
Inc. from acquiring Wild Oats Markets, Inc. This case is set
to be litigated on a very fast track. *See* June 21, 2007 Case
Management Order. On June 8, 2007, the Court signed an
Interim Protective Order agreed upon by the parties. On June
11, 2007, defendant Whole Foods moved for the entry of
a Final Protective Order. The FTC opposed the motion. In
addition, a number of non-party grocery companies moved,
and were permitted by the Court, to intervene for the limited
purpose of opposing Whole Foods' motion. The dispute
centered around what access, if any, Roberta L. Lang, Esq.,
Whole Foods' General Counsel, should have to confidential

business information of Whole Foods' competitors during the
course of this litigation.

The Interim Protective Order had a two-tiered designation
system for confidential information. The Interim Protective
Order precludes *any* access by in-house counsel to so-called
"Restricted Confidential Discovery Material." *See* Interim
Protective Order, entered June 8, 2007, Definitions, ¶¶ 4,
16. Under that Order, Ms. Lang was not entitled to see
the "Restricted" material, only outside counsel was. *See id.,*
Terms and Conditions of Protective Order, ¶¶ 2, 3.

On June 29, 2007, the FTC and the defendants were
able to resolve their differences with respect to the Final
Protective Order, and they filed a joint motion for the
entry of a Final Protective Order, which is now before
the Court. [1]  The proposed protective order agreed to by
the FTC and the defendants eliminates the distinction
between "Restricted Confidential Discovery Material" and
"Confidential Discovery Material." *See* Proposed Protective
Order, Definitions, ¶ 4. It provides that Ms. Lang may
have access to some but not all "Confidential Discovery
Material," specifically "only to unredacted draft and final
versions of pleadings, deposition and hearing transcripts, and
expert reports, but shall not have access to any accompanying
exhibits or underlying discovery materials to the extent
those exhibits or discovery materials have been designated
'Confidential'[.]" Proposed Protective Order, Terms and
Conditions of Protective Order, ¶ 8(c). The Court understands
this to mean that Ms. Lang may review draft and final versions
of pleadings, motions and other briefs, deposition and hearing
transcripts, and expert reports-including portions of such
filings that quote or paraphrase "Confidential Discovery
Material"-but may not see exhibits to such filings, depositions
or reports or underlying discovery material designated as
"Confidential." This proposal is opposed by a number of the
intervening grocery companies, whose confidential business
information, previously produced to the FTC, is at issue.
Specifically, each of the following intervenors filed a brief
in opposition to the joint motion: Trader Joe's Company,
Wegmans Food Markets, Inc., Supervalu, Inc., Publix Super
Markets, Inc., Wal-mart Stores, Inc., H.E. Butt Grocery
Company, Safeway, Inc., and Kroger Co. [2]

---

[1]  On July 2, 2007, the Court denied as moot
Whole Foods' original motion for entry of a final
protective order.

USAP015

2      The Trader Joe's brief was joined or adopted by each of the other intervenors to file an opposition brief.

 **\*2** In connection with Whole Foods' original motion for entry of a final protective order, Ms. Lang submitted a sworn declaration. *See* Declaration of Roberta L. Lang, Ex. C to Whole Foods' Motion for Entry of a Final Protective Order ("Lang Decl."). She states:

> I do not participate in competitive decisionmaking at Whole Foods. I do not participate in any decisions about formulating or implementing strategies to compete with our competitors or any decisions about formulating or implementing pricing strategies. I am not involved in pricing decisions, selection of vendors, purchasing decisions, marketing, or other competition-related issues that are the subjects of confidential information in this case. I am also not involved in decisions about how much product to purchase at wholesale, the mix of products to carry, where to sell those products, or how to transport those products.

Lang Decl. ¶ 4. In addition, Ms. Lang stated in her sworn declaration that she will not make use of any confidential information, "directly or indirectly, for any purpose other than the defense of this action." *Id.* ¶ 15. She also "acknowledge[d] and agree[d] that [she is] subject to the jurisdiction of the Court and to its contempt powers." *Id.* ¶ 14. Finally, she volunteered "to remain subject to the Court's jurisdiction at all times, including after this litigation is concluded." *Id.*

Magistrate Judge Facciola recently confronted a similar situation in *Intervet, Inc. v. Merial Ltd.,* 241 F.R.D. 55 (D.D.C.2007). As he explained there:

> [T]he courts have precluded access to confidential information from those who can be described as competitive decision-makers. The "leading authority" is *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed.Cir.1984). In that case, the Federal Circuit said:

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

> *Id.* at 1468 n. 3.

> Thus, *U.S. Steel* would preclude access to information to anyone who was positioned to advise the client as to business decisions that the client would make regarding, for example, pricing, marketing, or design issues when that party granted access has seen how a competitor has made those decisions. *E.g., Brown Bag Software,* 960 F.2d [1465, 1471 (9th Cir.1992)] (counsel could not be expected to advise client without disclosing what he knew when he saw competitors' trade secrets as to those very topics); *Matsushita Elec. Indus. Co v. United States,* 929 F.2d 1577, 1579-80 (Fed.Cir.1991) (determination by agency forbidding access testified that he was not involved in pricing, technical design, selection of vendors, purchasing and marketing strategies); *Volvo Penta of the Americas, Inc. v. Brunswick Corp.,* 187 F.R.D. 240, 242 (E.D.Va.1999) (competitive decision-making involves decisions "that affect contracts, marketing, employment, pricing, product design" and other decisions made in light of similar or corresponding information about a competitor); *Glaxo Inc. v. Genpharm Pharm., Inc.,* 796 F.Supp. 872, 876 (E.D.N.C.1992) (improper to preclude inhouse counsel from access to confidential information because he gave no advice to his client about competitive decisions such as pricing, scientific research, sales, or marketing).

 **\*3** *Intervet, Inc. v. Merial Ltd.,* 241 F.R.D. at 57-58 (footnotes omitted). Because there was no evidence before Magistrate Judge Facciola in *Intervet* that the in-house counsel was a "competitive decision-maker," or "involved in competitive decision-making," he allowed her to have access to the materials in question. *See id.* at 58; *see also United States v. Sungard Data Systems,* 173 F.Supp.2d 20, 21 (D.D.C.2001) (Facciola, J.) (allowing access by in-house counsel to confidential information); *cf. Brown Bag Software v. Symantec Corp.,* 960 F.2d at 1471 (affirming order allowing access only by an independent consultant, rather than by in-house counsel).

Applying these principles, based on her declaration the Court is unable to conclude that Ms. Lang is involved in competitive decision-making, despite the intervenors' arguments to the contrary. In addition, as in other cases, the pace of the instant litigation makes any other preventative measures impracticable. Accordingly, the Court will grant the joint motion for entry of a final protective order, with one addition. In an abundance of caution, as Magistrate Judge Facciola did in each of the cases in which he allowed in-house counsel to have access to confidential information, the Court will order the parties to amend the proposed protective order so that it contains the following penalty provision, as an added incentive against inadvertent misuse of any confidential information that Ms. Lang will be privy to. The penalty provision shall state:

> Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority and Judge Friedman will urge that authority to suspend or disbar the violator.

With these principles and protections in mind, it is hereby

ORDERED that the [77] joint motion for entry of a Final Protective Order is GRANTED, with the modifications described herein. The parties shall submit a modified proposed Final Protective Order in accordance with this Memorandum Opinion and Order to the Court on or before Monday, July 9, 2007. When signed by the Court, the Final Protective Order shall supersede the Interim Protective Order entered on June 8, 2007.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2059741

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560   Document 147-3   Filed on 05/14/24 in TXSD   Page 20 of 143

Life Technologies Corp. v. Biosearch Technologies, Inc., Not Reported in F.Supp.2d...

2011 WL 1157860
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. Texas,
Marshall Division.

LIFE TECHNOLOGIES CORPORATION
and Applied Biosystems, LLC
v.

BIOSEARCH TECHNOLOGIES, INC., et al.

No. 2:09–CV–283–TJW–CE.
|
March 29, 2011.

*MEMORANDUM OPINION AND ORDER*

CHARLES EVERINGHAMIV, United States Magistrate
Judge.

 **\*1** Pending before the court is the parties' joint motion
for entry of a protective order in this case (Dkt. No. 104).
The parties have agreed to the vast majority of the terms
of the protective order. The parties, however, could not
agree as to Paragraph 6, Section i. The parties' disagreement
regarding this paragraph relates to whether two of Plaintiffs'
in-house counsel will be screened from material deemed to
be "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S
EYES ONLY." As explained below, the court, having
carefully considered the parties' arguments, ORDERS that the
two in-house counsel named in Plaintiffs' proposed protective
order are granted access to material labeled "HIGHLY
CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY."

In the present motion, Plaintiffs argue that the following two
members of their in-house counsel should be granted access to
material deemed "HIGHLY CONFIDENTIAL—OUTSIDE
COUNSEL'S EYES ONLY": (1) Mr. Kurtis MacFerrin; and
(2) Mr. Emmanuel Vacchiano. In determining whether a
protective order should deny a party's attorney access to
information, the court must focus on the risk of "inadvertent
or accidental disclosure" and weigh that risk against the
potential that the protective order may impair the other parties'
ability to prosecute or defend its claims. *U.S. Steel Corp. v.*

*United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984); *see also*
*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC,*
Civil Action No. 6:07–CV–346, 2008 WL 5634214 at *2
(E.D.Tex. March 14, 2008). When conducting this balancing
test, courts look specifically at "the factual circumstances
surrounding each individual counsel's activities, association,
and relationship with a party." *U.S. Steel Corp.,* 730 F.2d
at 1468 n. 3. Other factors to be considered include: (1)
whether the person receiving the confidential information
is involved in competitive decision making or scientific
research relating to the subject matter of the patent; (2)
the level of risk of inadvertent disclosure of proprietary
information; (3) the hardship imposed by the restriction; (4)
the timing of the remedy; and (5) the scope of the remedy.
*ST Sales Tech,* 2008 WL 5634214 at *2. The ultimate goal of
this balancing test is to determine whether counsel's access
to the confidential information creates "an unacceptable
opportunity for inadvertent disclosure." *U.S. Steel Corp.,* 730
F.2d at 1468.

**A. Mr. Kurtis MacFerrin**
Plaintiffs argue that Mr. MacFerrin should be granted access
to the material at issue because he is employed by Plaintiffs as
in-house intellectual property litigation counsel and is directly
and actively involved in litigation strategy and settlement
decisions regarding this case. Considering Mr. MacFerrin's
position, Plaintiffs argue that he must have access to the
material at issue to continue to fulfill his role. Plaintiffs also
note that Mr. MacFerrin will execute a Consent to be Bound
by the Stipulated Protective Order. In opposition, Defendants
argue that Mr. MacFerrin is involved in "competitive decision
making" and, therefore, should not be granted access to the
material at issue. Defendants contend that Mr. MacFerrin
participates in litigation strategy and licensing negotiations
and is therefore in a position to irreparably use Defendants'
confidential information to aid in those activities.

 **\*2** Defendants provide no facts or evidence to support
the contention that Mr. MacFerrin is involved in Plaintiffs'
competitive decision making and licensing negotiations.
Therefore, Defendants' reliance on *Microsoft Corp. v.*
*Common. Sci. & Indus. Research Org.,* Nos. 6:06 CV549,
6:06 CV 550, 6:06 CV 551, 6:06 CV 324, 2009 U.S.
Dist. LEXIS 13675, *20–22, 2009 WL 440608 (E.D.Tex.
Feb.23, 2009), is misplaced. In *Microsoft,* the non-party
requesting that certain individuals be barred from viewing
its confidential material identified a specific risk potentially
arising from disclosure of that material—namely, the two
individuals over which disclosure was disputed were in

active negotiations with the non-party and were in a "unique" position making it highly probably that those individuals would be unable to avoid using the non-party's confidential information in those negotiations. *Id.* Defendants, however, have not identified any specific risks arising from granting Mr. MacFerrin access to the material at issue. Therefore, considering Mr. MacFerrin's active role in this litigation and that the Defendants have not identified any specific risk of inadvertent disclosure, the court concludes that Mr. MacFerrin will be granted access to material deemed "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY."

### B. Mr. Emmanuel Vacchiano

Plaintiffs argue that Mr. Vacchiano should likewise be granted access to the information at issue because he is employed by Plaintiffs as in-house patent counsel and will also execute a Consent to be Bound by the Stipulated Protective Order. Plaintiffs also allege that Mr. Vacchiano is not now, nor has he ever been, involved in prosecution related to the *patents*-atissue in this case. In response, Defendants again argue that Mr. Vacchiano is involved in "competitive decision making" and should, therefore, be denied access to the documents at issue. Defendants argue that, as division lead patent counsel, Mr. Vacchiano has prosecuted various patents concerning the *technology*-at-issue in this case, and could potentially use Defendants' highly confidential technological information, even inadvertently, to strengthen Plaintiffs' intellectual property portfolio.

Defendants concede that Mr. Vacchiano is "apparently ... the chief in-house strategist for this litigation." Considering Mr. Vacchiano's central role in this litigation, denying him access to the material at issue will likely impair Plaintiffs' ability to prosecute its claims. Furthermore, Defendants have not stated whether Mr. Vacchiano's patent prosecution duties are substantial. As the Federal Circuit has explained:

> Some attorneys involved in patent litigation, for example, may have patent prosecution duties that involve

little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements. Similarly, some attorneys may be involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings, but have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios. There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation.

**\*3** *In re Deutsche Bank,* 605 F.3d 1373, 1379–80 (Fed.Cir.2010). Absent evidence that Mr. Vacchiano is substantially involved in the prosecution of Plaintiffs' patents, the court concludes that the likelihood of Mr. Vacchiano inadvertently disclosing or using Defendants' confidential information is outweighed by the likelihood that denying him access to such information will impair the Plaintiffs' ability to prosecute its claims.

In conclusion, the court ORDERS that Mr. MacFerrin and Mr. Vacchiano be given access to material deemed to be "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY." Neither counsel, however, shall participate in the prosecution of patents in the same field of technology as the patent-in-suit throughout the pendency of this case and for a period of eighteen months following the final disposition of this action. The parties are ORDERED to submit a protective order conforming to the ruling herein within seven days from the issuance of this order.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1157860

---

End of Document　　　　　　　　　　　　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 11534378
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

MERIAL LIMITED, et al.

v.

VIRBAC SA, et al.

CIVIL ACTION NO. 4:10-CV-181-Y
|
Signed 06/10/2010

**Attorneys and Law Firms**

Hilda C. Galvan, Jones Day, Dallas, TX, J. Patrick Elsevier, Jones Day, San Diego, CA, Joseph F. Cleveland, Jr., Brackett & Ellis PC, Fort Worth, TX, Judy Jarecki-Black, Merial Limited, Duluth, GA, for Merial Limited, et al.

Michael D. Pegues, Jason A. Wietjes, Bracewell & Giuliani LLP, Dallas, TX, Michael R. Samardzija, Bracewell & Giuliani LLP, Houston, TX, for Virbac SA, et al.

## ORDER GRANTING MOTION TO COMPEL AND ENTERING PROTECTIVE ORDER

JEFFREY L. CURETON, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is Plaintiffs' Emergency Motion to Compel, filed May 26, 2010, seeking responses to Merial Limited's First Set of Interrogatories. (doc. #29.) Also before the Court is Defendants' Motion for Protective Order, filed June 2, 2010. (doc. #35.) Having reviewed both motions and responses thereto, the Court is of the opinion that Plaintiffs' motion to compel should be GRANTED and Defendants' motion for protective order should be GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs Merial Limited ("Merial") and BASF Agro B.V., Arnhem (NL), Wadenswil Branch ("BASF") (collectively "Plaintiffs") filed this lawsuit against Defendants Virbac, S.A. and Virbac Corporation (collectively "Defendants" or "Virbac") on March 18, 2010. (Complaint, doc. #1.) Plaintiffs

seek injunctive relief and damages arising from Defendants' alleged infringement of United States Patent No. 5,232,940 ("the '940 patent"). (*Id.* at 1.) The '940 patent covers the chemical commonly known as fipronil, a pesticide used to control fleas and ticks in animals. (*Id.* at 1-2.) The most successful animal health products made by Merial and covered by the '940 patent are FRONTLINE® products used for eliminating flea and tick infestations. (*Id.* at 4.) Fipronil is the active ingredient in these products. (*Id.*) Plaintiffs allege that Defendants conducted infringing studies using fipronil-containing animal health compositions from 2007 to 2009 and engaged in other infringing activities. (*Id.* at 5-7.)

The same day they filed this case, Plaintiffs also filed a Motion to Expedite Discovery ("Motion to Expedite"), arguing that expedited discovery was necessary because the ' 940 patent only remains in effect until August 3, 2010. (Motion to Expedite, doc. #6, at 2.) The Court issued an order that day denying Plaintiffs' request without prejudice. (Order Denying Motion to Expedite, doc. #10.) The Court found that Plaintiffs had not established the requisite good cause needed to order expedited discovery because Defendants had not yet answered or otherwise responded to Plaintiffs' Complaint. (*Id.*)

On May 12, 2010, the parties filed a Joint Status Report indicating that the parties had agreed to the entry of a modified version of the Protective Order of the United States District Court of the Northern District of Texas, Dallas Division, as set forth in Miscellaneous Order No. 62, with one exception. (doc. #27, at 5.) The parties were unable to reach agreement on whether in-house counsel for Merial, Dr. Judy Jarecki-Black, Ph.D. ("Jarecki-Black"), should be given access to information that is marked "CONFIDENTIAL ATTORNEYS ONLY." (*Id.*)

On May 17, 2010, the Court entered an Initial Scheduling Order in this case. (doc. # 28.) That same day, Defendants served Merial with their responses to Merial's First Set of Interrogatories. (Plaintiffs' Brief ("Pl. Br.") at 8, App. at 45-59; 65-74.) Defendants failed to produce any documents, stating that they would only do so "after an appropriately worded protective order is entered by the Court." (*Id.*, citing Federal Rule of Civil Procedure ("FRCP") 33(d).)

**\*2** Nine days later, on May 26, 2010, Plaintiffs filed the emergency motion to compel now before the Court, (doc. #29.) Defendants responded to Plaintiffs' motion on June 2, 2010 and moved for entry

of a protective order containing language prohibiting Jarecki-Black from reviewing documents produced in discovery labeled "CONFIDENTIAL ATTORNEY EYES ONLY." (Defendants' Response and Motion to Compel ("Def. Br."), doc. #35.)

## II. DISCUSSION AND ANALYSIS

A. Whether Defendants' motion for protective order is untimely.

Plaintiffs assert that because Defendants failed to move for a protective order before the time documents and information were due to be produced, Defendants should be required to produce all responsive, non-privileged documents without entry of a protective order. (Pl. Br. at 8-9.) Plaintiffs cite a number of cases from other districts in support of their position, including *Floeter v. City of Orlando*, 2006 WL 1000306, \*2 (M.D. Fla. April 14, 2006) (holding that a party must move for a protective order before its discovery responses are due); *Stone Connection, Inc. v. Simpson*, 2008 WL 1927033, \*1 (Apr. 28, 2008) (holding that conclusory statements will not satisfy the requisite showing of good cause for entering a protective order). (Pl. Br. at 8.)

Defendants argue that their motion for protective order is not untimely due to the lack of a specific time provision in FRCP 26(c). (Def. Br. at 7-8.) The also emphasize that the Court has broad discretion to determine the timeliness of a motion for protective order. (*Id.* at 7-8.) It is undisputed that the parties have previously agreed to the entry of a protective order this case with the exception of whether Jarecki-Black can have access to documents marked "CONFIDENTIAL ATTORNEYS ONLY." (Joint Status Report at 5.) They have negotiated unsuccessfully regarding this issue. Given these facts, and given the highly sensitive nature of the information in question, the Court finds that the entry of a protective order is appropriate. *See* FRCP 26(c).

B. Whether Jarecki-Black is a competitive decision-maker.

The next issue before the Court is whether to include a provision in the protective order barring Jarecki-Black from having access to documents produced by Defendants designated "Confidential Attorney Eyes Only." Each party has provided the Court with a proposed protective order. (Pl. Br., Exhibit ("Exh.") A; Def. Br., Exh. A.) Plaintiffs' proposed order provides that documents designated "Confidential

Attorney Eyes Only" may be reviewed by various categories of persons, including "one in-house counsel who is also a counsel of record for a party in this case and who is not personally involved in the preparation or prosecution of any patent application related to fipronil during the litigation and for one year after its resolution, including any appeal." (Pl. Br., Exh. A.) Defendants' proposed order does not allow disclosure of documents labeled "Confidential Attorney Eyes Only" to in-house counsel. (Def. Br., Exh. A.)

FRCP 26(c) authorizes a district court to enter a protective order for purposes of protecting parties from undue burden or expense in discovery by ordering that certain confidential information either not be disclosed or that it be disclosed in a designated manner. *See* Fed. R. Civ. P. 26(c). Courts determining whether to issue a protective order containing a bar against one party's attorney's access to certain information must weigh the risk of "inadvertent or accidental disclosure" against the potential burden and impairment that the order may have on the other party's ability to prosecute or defend claims in the suit. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

**\*3** Courts making such a determination may consider various factors, including: "(1) whether the person receiving the confidential information is involved in *competitive decision making* or scientific research relating to the subject matter of the patent, (2) the risk and potential danger of disclosure and (3) the hardship and prejudice imposed by the restriction." *Wi-Lan, Inc. v. Acer, Inc.*, 2009 WL 1766143 (E.D. Tex. June 23, 2009) (citations omitted) (emphasis added). No single factor is dispositive, but if counsel is a "competitive decision-maker," courts will find that most policy concerns weigh in favor of denying them access to certain confidential information. *Id.* The burden of demonstrating good cause for including a bar against counsel's access rests with the movant. *Id.* (citing *In Re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).)

"Competitive decision-making" is defined by the Federal Circuit as "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product, design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp.*, 730 F.2d at 1468, n. 3. It is not appropriate to deny an attorney of record access to confidential or "attorneys' eyes only" information under a protective order based solely on that person's status as in-house counsel. *See, e.g., id.* at

Merial Limited v. Virbac SA, Not Reported in Fed. Supp. (2010)

1467-68. This is because denial of such access may not "rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id.* at 1468.

Plaintiffs argue that Defendants improperly seek to bar Jarecki-Black from having access to confidential materials produced in discovery solely on the basis of her status as in-house counsel for Merial. (Pl. Br. at 10-11.) Moreover, they assert that Defendants have failed to establish that Jarecki-Black is a competitive decision-maker. (*Id.* at 11-13.) Plaintiffs point the Court to *Intervet, Inc. v. Merial Limited*, 241 F.R.D. 55, 56 (D.D.C. Mar. 21, 2007). In that case, this exact issue was before the Federal District Court for the District of Columbia. The court in *Intervet* analyzed a motion brought by defendants Merial Limited and Merial SAS for entry of a protective order that did not preclude in-house counsel for Merial Limited, Jarecki-Black, from accessing all materials in discovery. The Court granted the motion in part, requiring a protective order that did not preclude Jarecki-Black from accessing all discovery materials. [1] *Id.* In formulating its decision, the *Intervet* Court made the following findings of fact:

1. Judy Jarecki-Black secured her doctor of philosophy from the Medical University of South Carolina in molecular, cellular, and patho-biology and her juris doctor from Georgia State University.

2. She is the head of intellectual property for Merial. She does not draft patent applications but she does manage the intellectual property division of Merial. She provides management with legal advice as to patents, drafts and files patent prosecution applications, and does "due diligence" investigations for Merial's business development group.

3. She is counsel of record in this case, as she has been in other cases involving Merial, her employer, and Intervet. She has participated in other cases and settlement discussions where confidential material was made available to her. It has never been suggested in any of those cases that she has misused or revealed confidential information made available to her. This access to all information, including the confidential information, was crucial to her obligation to advise Merial's management whether to settle those cases and she could not have adequately advised management without it.

**\*4** 4. She is an active member of the trial team in this case, where she is involved in strategy decisions and drafting the briefs to be submitted to the Court. She advises management on the status of the case and therefore it is crucial that she has access to all material so that her advice to management can be based on the best possible information. This will be especially true if management prepares or reacts to an offer to settle this case.

5. She brings to the case an expertise other counsel do not share-namely, her education and experience in molecular biology.

6. In her view, the published information on patents, available on the Internet, would permit Intervet to see if she misused any confidential information in seeking and securing a patent.

7. She is not involved in pricing decisions, product design, selection of vendors, purchasing decisions, marketing, or overall corporate strategic decision-making.

8. She does not personally prosecute patents; that is done by associates, outside counsel, and patent agents.

9. She is aware that as this litigation progresses, Intervet's personnel and lawyers will see Merial's confidential information. She is not concerned about this; she considers them persons of integrity.

10. She has the power to "pull" a product from development if she concludes that it should be licensed by the patent holder before it is manufactured.

11. She acknowledges that in two patent lawsuits involving Merial, protective orders were issued so that documents falling within the highest level of confidentiality were not shown to Merial's in-house counsel. She pointed out, however, that she was not employed by Merial when they were issued and, to her knowledge, Merial did not employ, at that time, a person who had both her legal and technical knowledge.

12. She believes, however, that it is necessary for her to see every document provided through discovery, even if outside counsel will see it also, so that she can fulfill her responsibility to Merial.

13. She concedes that she has been able to advise Merial as to whether to settle another case with Intervet without seeing all of the documents that might have been requested in Merial's document request.

14. She is listed as the corresponding attorney on patents that are pending and relate to the PCV-2 vaccine that is the subject of this infringement action.

15. She understands that the prohibition in the protective order that Merial has proposed would be related to the PCV-2 vaccine but would not prohibit her from prosecuting patents for other vaccines.

16. Her role in patent prosecution for Merial is as corresponding attorney; her only responsibility is to decide who will draft the claim that must be filed.

*Id.* at 55-56.

[1]   The Court notes that the *Intervet* court also included a penalty provision in the protective order providing that anyone who violated the order would be deemed in contempt and punished by a fine of $250,000, to be paid individually by the person who violated the order without reimbursement or indemnification. *Id.* at 58. If the violator was an attorney, the Court indicated that it would recommend disbarment to the appropriate professional disciplinary authority. *Id.*

In *Intervet,* Jarecki-Black testified that she "was not involved in pricing decisions, product design, selection of vendors, purchasing decision, marketing, or overall corporate strategic decision-making." *Id.* at 58. And the court in that case found that Intervet had failed to produce any evidence that Jarecki-Black was a competitive decision-maker. *Id.* Based on these findings, the Court held that Jarecki-Black was not a competitive decision-maker, and thus there was no reason to preclude her from access to any information that outside counsel and Merial's expert witnesses would see. *Id.* at 55.

 **\*5**   Plaintiffs assert that the facts before this Court regarding Jarecki-Black's participation in competitive decision-making are the same as those before the *Intervet* court. (Pl. Br. at 13.) Defendants, however, posit that the court's finding in *Intervet* "is wholly immaterial to the merits of Virbac's claims in this case." (Def. Br. at 9.) They argue that Jarecki-Black's participation in the negotiation of settlements and licensing agreements, as well as her participation in patent prosecution activities demonstrate that she is a competitive decision-maker for Merial. (*Id.* at 9-13.) Defendants point to Jarecki-Black's "active involvement in negotiating the licensing of patents with Merial's competitors, negotiating settlement of

her client's patent disputes, actively participating in patent prosecutions, and even securing a patent." (*Id.*)

Plaintiffs respond that while Jarecki-Black is listed as the "corresponding attorney" for a number of Merial patent applications, she "does not directly perform patent prosecution activities such as patent drafting, claim drafting or responding to Office Actions." (Plaintiffs' Reply Brief ("Pl. Reply Br."), doc. #37, at 5, Supplemental Declaration of Judy Jarecki-Black ("Jarecki-Black Supp. Decl.") ¶ 3, App. at 124.) Rather, they claim that her role is "primarily administrative," and she "assigns prosecution responsibility to other attorneys and patent agents." (*Id.*) Plaintiffs also point out that their proposed protective order contains a bar preventing Jarecki-Black from being "personally involved in the preparation or prosecution of any patent application related to fipronil during the litigation and for one year after its resolution, including any appeal." (Pl. Reply Br. at 5; Plaintiffs' Proposed Protective Order ¶ 8, Pl. Br., Exh. A.)

Moreover, Plaintiffs argue that licensing is not a regular component of Merial's business, and that "in the rare instances when Merial has licensed its patents, it was usually in conjunction with the settlement of a patent litigation or other adversarial patent proceeding." (*Id.*; *see also* Jarecki-Black Supp. Decl. ¶ 2, App. at 122-23.) Finally, Jarecki-Black states that she is not involved in decision-making "regarding the business terms of any such agreements," nor does she "make decisions regarding the financial or business terms of any such agreements." [2] (*Id.*)

[2]   Jarecki-Black also contradicts an assertion by Defendants that she represented herself to Virbac S.A. as a business representative charged with competitive decision- making activities. (*Id.*, *cf.* Def. Br. at 9-11.)

Defendants cite a number of cases in support of their position. First, in *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.,* 2009 WL 1210638, \*10 (D. Me. April 30, 2009), the court held that "substantive involvement in negotiating settlement agreements in patent litigation, particularly when intertwined with creation of new licensing agreements" is sufficient evidence that counsel is a competitive decision-maker. (Def. Br. at 9-10.) Plaintiffs argue that *Fairchild* is distinguishable because unlike counsel in *Fairchild,* Jarecki-Black is not on Merial's board, she does not have ownership interest in Merial, and does not negotiate the business terms of the license agreements. (Pl. Reply Br.

Case 4:23-cv-03560  Document 147-3  Filed on 05/14/24 in TXSD  Page 26 of 143

*Merial Limited v. Virbac SA, Not Reported in Fed. Supp. (2010)*

at 8-9; *see also generally* Jarecki-Black Supp. Decl, App. at 123, 127.)

Plaintiffs also distinguish the next case cited by Defendants, *Affymetrix, Inc. V. Illumina, Inc.,* 2005 WL 1801683 (July 28, 2005), noting that the in-house counsel in that case was part of the defendant's management team, whereas Jarecki-Black is not. (Pl. Reply Br. at 9; Declaration of Judy Jarecki-Black ("Jarecki-Black .") ¶ 9, App. at 77.)

The last case Defendants cite in support of their position is *Intel Corp. v. Via Techs,* 198 F.R.D. 525, 530 (N.D. Cal. 2000). (Def. Br. at 10.) In that case, the Federal District Court for the Northern District of California considered licensing as a factor in determining that counsel was a competitive decision-maker. *Id.* But Plaintiffs point out that other courts have rejected such reasoning. (Pl. Reply Br. at 9; citing *Trading Techs Int'l v. eSpeed, Inc.,* 2006 WL 1994541, at *2 (N.D. Ill. July 13, 2006.) In *Trading Techs Int'l,* the court stated that it "reject[ed] the notion advanced by some that licensing and settlement negotiations are necessarily part of competitive decision-making, leading to the exclusion of participating attorneys from access to information. The settlement of patent cases, usually by licensing, is part of litigation." *Id.* at *2. The Court agrees.

**\*6** The *Intervet* court likewise considered the *Intel Corp.* case and noted that in *Intel Corp.* there was testimony that "counsel's particular involvement in licensing, often achieved through litigation, constituted competitive decision-making. *Intervet,* 241 F.R.D. 55 at 58-59 (citing *Intel Corp.,* 198 F.R.D. at 530). The *Intervet* court noted that counsel for Intel actively negotiated the terms of the licensing agreements, evaluating implications of the patent on Intel's products and competitors' products. *Id.* Finally, counsel for Intel testified that the licensing agreements reached through settlement "directly affected Intel's competitiveness in the market by affecting Intel's ability to sell products." *Id.*

The *Internet* court noted that there had been no such testimony in that case and that Jarecki-Black had testified that her company had licensing teams who all participate in licensing decisions, and that she functioned as an administrative coordinator for the business development section. *Id.* at 59. Thus, the court reasoned, it could not reach the same conclusion the *Intel Corp.* court had. *Id.*

The evidence presented in this case is that (1) patent licensing is not a regular component of Merial's business nor is it

a routine part of Jarecki-Black's job at the company, (2) Jarecki-Black is not involved in the decision-making process of the business terms of any licensing agreements, as those are decided upon by the particular business unit at Merial responsible for the product at issue, and (3) Jarecki-Black's limited role in any licensing agreements is in reviewing their potential legal implications. (Jarecki-Black Supp. Decl., App. 122-23.) Based on the evidence presented, the Court finds that Jarecki-Black is not a competitive decision-maker, but rather that her responsibilities at Merial are either legal or administrative. (*See, e.g.* Jarecki-Black Decl. and Jarecki-Black Supp. Deck, App. 75-80, 122-28.)

C. Whether the risk of inadvertent disclosure by Jarecki-Black outweighs the potential harm to Defendants.

The last issue in deciding whether to prohibit Jarecki-Black from reviewing all confidential documents produced in this litigation is whether the risk of inadvertent disclosure by her outweighs the potential harm to Plaintiffs in prosecuting their claims and defending against claims in this case. The United States Constitution guarantees parties in civil matters the right to retain hired counsel under the due process clause of the Fourteenth Amendment. *Tex. Catastrophe Prop. Ins. Ass'n v. Morales,* 975 F.2d 1178, 1180-81 (5th Cir. 1992). The Fifth Circuit has held that this right " 'includes the right to choose the lawyer who will provide that representation.' " *Id.* at 1181 (5th Cir. 1992) (citing *McCuin v. Tex. Power & Light Co.,* 714 F.2d 1255, 1257 (5th Cir. 1983)).

The Court has determined that Jarecki-Black is not a competitive decision-maker. And the law is clear that she cannot be prohibited from having access to all documents produced in this litigation based solely on her status as in-house counsel for Merial. *See, e.g., U.S. Steel Corp.,* 730 F.2d at 1467-68. Plaintiffs have provided evidence that Jarecki-Black operates as a crucial part of their trial team, assisting in pleading preparation, drafting briefs, discovery requests and responses, and participating in depositions. (Pl. Br. at 11; Jarecki-Black Decl. at ¶¶ 6, 10, App. at 76-78.) She also serves as the "interface for all outside counsel on patent litigation matters," and "represents and advises Merial on patent litigation strategy, including the settlement of patent litigation matters." (*See id.* at ¶¶ 4-6, App. at 76-77.) The Court agrees with Plaintiffs' contention that if Jarecki-Black is not provided full access to all of the non-privileged documents produced by Defendants in this litigation, it will significantly impair her ability to participate as a member of Plaintiffs' trial team. (*See* Pl. Br. at 11-12.)

**\*7** Defendants argue, however, that the risk of competitive harm to Virbac outweighs any potential risk to Merial's ability to prosecute this suit. (Def. Br. at 13, 15, citing *Amsted Indus., Inc., v. Nat'l Castings, Inc.,* 1988 WL 90022 (N.D. Ill. Aug. 22, 1988) and *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465 (9th Cir. 1992).) They assert that disclosing the confidential information in question to Jarecki-Black "creates an unacceptable opportunity for inadvertent disclosure." (Def. Br. at 13, citing *U.S. Steel Corp.,* 730 F.2d at 1468.) [3]

[3]    Merial points out that Virbac has in the past allowed Jarecki-Black access to certain confidential information in order to "convince Merial not to sue Virbac for patent infringement in Europe." (Pl. Br. at 13-14.) Defendants do not deny that this occurred, but they assert that the information provided to her did not include "any confidential information regarding the process, equipments, or ingredients of the synthesis." (Def. Br. at 13-14.) Rather, those documents "were merely demonstrating the process used to produce Virbac's fipronil was exactly the process described in BASF's patent." *Id.* And because the European patent was to expire before Virbac's product would be launched, Virbac was trying to demonstrate that its actions were "completely within the law." (*Id.* at 14.) Virbac maintains that it did not "disclose any information to Merial related to any other product it may have been developing." (*Id.*)

In *Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24 (E.D. Pa. 1990), the Federal District Court for the Eastern District of Pennsylvania reviewed a motion for protective order in patent litigation involving the steel industry. The court in that case ultimately allowed one senior staff attorney access to certain confidential information, but denied access to another of the corporation's in-house counsel based on his competitive decision-making activities. *Id.* With regard to the senior staff attorney who was allowed access to the documents, the court reasoned that he was not a member of the board of directors, nor was he an officer, nor was he in any way related to an officer or employee of the company. *Id.* at 27. Additionally, his affidavit stated that he had no involvement in product pricing or marketing decision or product design or production decisions. *Id.* at 27-28. Moreover, the court found that the attorney's specialized technical knowledge of the steel industry "could be essential to the proper handling of [the] litigation by outside counsel." *Id.* at 28. Thus the court

permitted that attorney access to the confidential information under the protective order and noted that he was bound to the terms of the order by the rules of professional conduct. *Id.*

The Court finds that the facts of this case are analogous with those presented in *Carpenter Technology Corp.* Jarecki-Black has "over fifteen years of experience in the animal health field." (Pl. Reply Br. at 9, Jarecki-Black Supp. Decl. ¶ 12, App. at 127.) Her full participation as part of the trial team could be essential to the proper handling of this litigation by Plaintiffs' outside counsel. And, of course, she will be bound by the applicable codes of professional conduct not to violate the terms of the protective order.

The Court hereby **ADOPTS** the protective order proposed by Merial, attached as Exhibit A to Plaintiffs' Emergency Motion to Compel. (Pl. Br., Exh. A, doc. #29.) It is **ORDERED** that Plaintiffs' proposed Protective Order shall be entered by the clerk of the Court.

   D. Whether Defendants should be compelled to respond
   to Merial's First Set of Interrogatories.
 **\*8** Plaintiffs have moved to compel Defendants' responses to Merial's First Set of Interrogatories. (Pl. Br. at 15.) The Court finds that Plaintiffs' motion is well-taken. It is hereby **ORDERED** that, by **June 17, 2010**,

(1) Defendants shall fully respond to Interrogatory Nos. 6-10 of Merial's First Set of Interrogatories stating in detail the bases for, and identifying all facts concerning, the subject matter requested in these interrogatories. These contention interrogatories seeking the material facts supporting a defendant's affirmative defenses are not premature. *See Steadfast Ins. Co. v. Golden Rests., Inc.,* 2009 WL 1683605 (N.D. Tex. 2009). Defendants must respond to Interrogatory Nos. 6-10 with complete, responsive answers to each question, providing a general explanation for the factual basis of the contention stated in each interrogatory. Defendants must provide a complete narrative answer in response to each interrogatory and may not incorporate one interrogatory answer when answering another interrogatory. *See id.* at \*2 (citing *Alexander v. Hartford Life and Accident Ins. Co.,* 2008 WL 906786 at \*4 (N.D. Tex. Apr. 3, 2008) (citations omitted);

(2) Defendants shall amend their answers to Interrogatory Nos. 3, 4 and 11 of Merial's First Set of Interrogatories to the extent they have previously withheld information

based on an objection that such interrogatories are overly broad because they are not limited by territory, seek information relating to matters that occurred outside the United States, and/or seeks information or communications that were not intended for a United States governmental regulatory agency responsible for the regulation of fipronil or any fipronil-containing composition, and such objections are overruled;

(3) Defendants shall produce documents in response to Request Nos. 3 and 8 of Merial's First Requests for Production to the extent they have previously withheld documents based on an objection that such requests are overly broad because they seek information relating to matters that occurred outside the United States and/or outside of the protections afforded by the '940 patent, and such objection is overruled;

(4) Defendant Virbac S.A. shall amend its Answers to Interrogatory Nos. 1-3, 10-12 and shall provide substantive responses in full to the information being requested, rather than respond that it will produce documents pursuant to FRCP 33(d); and

(5) Defendant Virbac Corporation shall amend its Answers to Interrogatory Nos. 1, 4 and 10 and shall provide substantive responses in full to the information being requested, rather than respond that it will produce documents pursuant to FRCP 33(d).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11534378

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6071601
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Sherman Division.

TECH PHARMACY SERVICES, LLC

v.

ALIXA RX LLC and Golden Gate National
Senior Care LLC d/b/a Golden Livingcenters.

Civil Action No. 4:15-CV-00766
|
Signed 10/17/2016

**Attorneys and Law Firms**

Maria Wyckoff Boyce, Cristina Espinosa Rodriguez, Jeffrey S. Whittle, John Allen Yates, Hogan Lovells US LLP, Houston, TX, John Frederick Bufe, Michael E. Jones, Potter Minton, a Professional Corporation, Tyler, TX, for Tech Pharmacy Services, LLC.

Adrian Kwan, Nisha N. Patel, Stephen J. Akerley, Dechert LLP, Mountain View, CA, Andrea Leigh Fair, Jack Wesley Hill, Ward, Smith & Hill, PLLC, Longview, TX, Henry Joseph Escher, III, Dechert LLP, San Francisco, CA, Robert D. Rhoad, Dechert LLP, Princeton, NJ, for Alixa RX LLC and Golden Gate National Senior Care LLC.

## MEMORANDUM OPINION AND ORDER

AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE

**\*1** Pending before the Court is Defendant Alixa RX LLC and Defendant Golden Gate National Senior Care LLC's (collectively, "Defendants") Motion for Protective Order (Dkt. #68). After reviewing the relevant pleadings, the Court finds the motion should be denied.

## BACKGROUND

Plaintiff Tech Pharmacy Services, LLC ("Tech Pharmacy") filed its complaint against Defendants, alleging direct, indirect, and willful infringement of seven United States Patents: U.S. Patent Nos. 7,698,019 ("the '019 Patent"), 8,204,761 ("the '761 Patent"), 8,209,193 ("the '193 Patent"), 8,489,425 ("the '425 Patent"), 8,554,574 ("the '574 Patent"),

8,612,256 ("the '256 Patent"), and 8,954,338 ("the '338 Patent") (collectively, "the patents-in-suit") (Dkt. #1). In its First Amended Complaint, Tech Pharmacy added additional causes of action based in part on a non-disclosure agreement, which included breach of contract, fraud in the inducement, procurement, equitable estoppel, and misappropriation of trade secrets (Dkt. #14).

Tech Pharmacy and Defendants met and conferred about the proposed language of the Protective Order. The parties agreed upon the identity of "Affiliate" in-counsel who may view "Confidential – Attorneys' Eyes Only" documents and the number of "designated representatives" for each party who may view the "Confidential" documents. However, the parties dispute whether to include a prosecution bar as part of the Protective Order.

On August 5, 2016, Defendants filed its Motion for Protective Order (Dkt. #68). On September 26, 2016, Tech Pharmacy filed its response (Dkt. #96). The next day, Defendants filed their reply (Dkt. #97), which was followed by Tech Pharmacy's sur-reply (Dky. #98).

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure states, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense...." FED R. CIV. P. 26(c)(1). Included in Rule 26(c) is the power for the court to enter a protective order to restrict an attorney's access to a trade secret or other confidential information. FED. R. CIV. P. 26(c)(1)(G). The party seeking a protective order generally bears the burden of showing good cause. In re Terra Int'l Inc., 134 F.3d 302, 305 (5th Cir. 1998). The same is true when the parties agree on entry of a protective order but differ on the order's terms. Id. at 306.

## ANALYSIS

Federal Circuit law governs the "determination of whether a protective order should include a patent prosecution bar." In re Deutsche Bank Tr. Co. Ams., 605 F.3d 1373, 1378 (Fed. Cir. 2010). The party seeking the prosecution bar must show counsel's access to confidential information poses an unacceptable risk of inadvertent disclosure because that counsel plays a role in "competitive decisionmaking" with the

client. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The *U.S. Steel* court stated that "competitive decisionmaking" refers to "counsel's activities, associations, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n.3. However, not every patent prosecution attorney is a competitive decisionmaker. *Deutsche Bank*, 605 F.3d at 1379. In *Deutsche Bank*, the Federal Circuit distinguished between counsel with administrative and oversight duties related to patent prosecution and counsel involved "in crafting the content of patent applications or advising clients on the direction to take their portfolios." *Id.* at 1379–80. A party's counsel engaged in the latter category of activities poses a more significant risk of inadvertent disclosure than the former. *Id.* at 1380. The court is required to "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis" to determine the risk of inadvertent disclosure. *Id.*

 **\*2** Defendants contend that Tech Pharmacy's counsel participates in competitive decisionmaking and should be subject to a patent prosecution bar. Specifically, Defendants point to Jeffrey Whittle ("Whittle"), an intellectual property attorney for Hogan Lovells LLP involved in the present litigation. Whittle prosecuted the patents-in-suit, "signing nearly all of the documents submitted to the PTO over more than a decade." (Dkt. #97 at p. 5). Whittle is also prosecuting four related patent applications that are still pending before the PTO. Defendants claim that in addition to patent prosecution, Whittle is broadly involved in Tech Pharmacy's business dealings. For example, Defendants state Whittle participates in business negotiations with third parties and provides information regarding Tech Pharmacy's patents to individuals who are neither Tech Pharmacy employees nor his clients. Therefore, Defendants argue Whittle is involved in competitive decisionmaking for Tech Pharmacy. And based on this involvement, a prosecution bar is necessary to ensure Whittle does not use confidential information to craft patent claims that cover aspects of the Defendants' systems that are not public.

The Court determines that Defendants have not set forth sufficient evidence to establish that Whittle is involved in Tech Pharmacy's competitive decisionmaking as to create an unacceptable risk of inadvertent disclosure. It is

undisputed that Tech Pharmacy and Defendant Alixa are direct competitors in the same markets. Defendants object to the involvement of Whittle because he represents Tech Pharmacy in both the present suit and ongoing patent prosecution related to the same subject matter as the patents-in-suit. However, "it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking." *Deutsche Bank*, 605 F.3d at 1379. Defendants rely on two emails from a Tech Pharmacy employee to support Whittle's competitive decisionmaking. The July 2015 email states a Tech Pharmacy employee was going to arrange a call with Whittle regarding the patents (Dkt. #68, Exhibit C at p. 2). In the September 2015 email, the same employee suggests Whittle should attend a meeting "to handle the issue with Alixa." (Dkt. 68, Exhibit D at p. 2). Both emails show Tech Pharmacy seeking to consult Whittle for legal advice. It is reasonable for Tech Pharmacy to arrange meetings and communicate with Whittle, because he has been its intellectual property attorney for over twelve years (Dkt. #96, Exhibit C, ¶ 2). Defendants have not offered any specific evidence to indicate Whittle participates in Tech Pharmacy decisions affecting pricing, product design, or other decisions "made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n.3. Thus, to "deny[ ] access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel. Id.* (alteration in original).

Therefore, the Court concludes that Defendants have not met their burden of establishing good cause to include a patent prosecution bar in the protective order.

### CONCLUSION

Based on the foregoing, the Court finds is Defendants' Motion for Protective Order (Dkt. #68) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 17th day of October, 2016.**

### All Citations

Not Reported in Fed. Supp., 2016 WL 6071601

                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

TiVo Inc. v. Verizon Communications, Inc., Not Reported in F.Supp.2d (2010)

2010 WL 9430466
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Marshall Division.

TIVO INC., Plaintiff,

v.

VERIZON COMMUNICATIONS,

INC., et al., Defendant.

Civil Action No. 2:09–CV–257.

|

June 15, 2010.

**Attorneys and Law Firms**

Samuel Franklin Baxter, McKool Smith, Marshall, TX, Babak Redjaian, Irell & Manella, Newport Beach, CA, Rosemary Tyson Snider, Garret Wesley Chambers, McKool Smith, Dallas, TX, John Franklin Garvish, II, McKool Smith, PC, Austin, TX, Andrea L. Gothing, Brock J. Specht, Cyrus A. Morton, David P. Swenson, Lauren J. Galgano, Michael A. Collyard, Peter M. Routhier, Ronald J. Schutz, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, Andrei Iancu, Ben J. Yorks, Crawford MacLain Wells, Douglas Fretty, Ellisen S. Turner, Hong Annita Zhong, Joseph M. Lipner, Joshua B. Gordon, Melissa Sedrish Rabbani, Morgan Chu, Richard M. Birnholz, Samuel K. Lu, Talin Gordnia, Thomas C. Werner, Winston Liaw, Irell & Manella, Los Angeles, CA, for Plaintiff.

Caren K. Khoo, Verizon Communications, John Peter Frantz, Verizon, Basking Ridge, NJ, John Thorne, Verizon Communications, Arlington, VA, Clyde Moody Siebman, Lawrence Augustine Phillips, Siebman Reynolds Burg & Phillips LLP, Sherman, TX, Michael Charles Smith, Siebman Burg Phillips & Smith, LLP, Marshall, TX, Leonard Charles Suchyta, Hunton & Williams DC, Courtney S. Elwood, Evan T. Leo, John Christopher Rozendaal, Joseph S. Hall, Kenneth M. Fetterman, Kiran Sriram Raj, Mark Hansen, Melanie L. Bostwick, Michael E. Joffre, Michael K. Kellogg, Saritha K. Tice, Silvija A. Strikis, Wan J. Kim, Wan Joo Kim, Kellogg Huber Hansen Todd Evans & Figel, Washington, DC, for Defendants.

***ORDER***

DAVID FOLSOM, District Judge.

**\*1** Before the Court is the parties' Joint Motion for Entry of a Proposed Protective Order. Dkt. No. 86. The parties have agreed to the content of the Protective Order with one exception: the access to highly confidential information. The parties submitted competing proposals as well as responses to each other's proposals. Dkt. No. 91.

The parties have chosen to designate certain information, such as source code, pricing and promotional strategies, and market evaluations, as "highly confidential." TiVo objects to the ability of certain Verizon in-house attorneys to access this highly confidential information. Dkt. No. 86 at 2. TiVo claims that because Verizon competes with TiVo for DVR subscribers, Verizon's in-house attorneys should be prevented from accessing TiVo's highly confidential information. *Id.* According to TiVo, its proposal reduces the risk of inadvertent disclosure of each side's most sensitive information and does not impair either party's ability to present its case. *Id.* at 3. TiVo adds that Verizon will not suffer any appreciable harm if its in-house attorneys cannot view TiVo's most sensitive information. *Id.* at 6. TiVo submits that Verizon's "outside counsel and retained experts will have complete access to TiVo's highly confidential information, and Verizon will be able to prepare and defend its case through that access. *Id.* at 6–7. Finally, TiVo argues that this case is in its early stages and Verizon has been represented by outside counsel since the outset. *Id.* at 7.

Verizon argues that it relies heavily on its in-house attorneys in litigation. *Id.* According to Verizon, the in-house attorney's who seek access are not "competitive decision-makers" such that the risk of inadvertent disclosure justifies exclusion. *Id.* at 9. In attached declarations, the in-house attorneys state that they do not participate in any company decisions affecting pricing, marketing, scientific research, or any other similar decisions that Verizon makes. *Id.* at 9. Verizon adds that these attorneys have been permitted to see opposing parties' most confidential documents in other cases. *Id.* at 10. Verizon argues that it would suffer real harm because these in-house attorneys regularly perform tasks traditionally assigned to outside counsel. *Id.* Verizon submits that its in-house counsel "would be precluded, for example, from guiding litigation strategy, reviewing expert reports and dispositive motions that rely upon TiVo's confidential discovery materials, and taking or even attending depositions where highly confidential information is discussed." *Id.* at 11. Verizon contends that

TiVo cannot meet its burden to show that the in-house attorneys are competitive decision makers. *Id* at 12.

TiVo replies that the competitive climate between it and Verizon creates an unacceptable risk of disclosure, Verizon's in-house counsel appear to be competitive decision-makers, and Verizon has not shown prejudice from TiVo's suggested approach. Dkt. No. 91 at 2. Verizon replies that its in-house attorneys are not competitive decision makers and that they should be allowed access to highly confidential information even though the parties are competitors. *Id.* at 5–7.

**\*2** Rule 26(c) of the Federal Rules of Civil Procedure authorizes a district court to protect parties from "undue burden or expense" in discovery by ordering certain trade secret or other confidential information "not be disclosed or be disclosed in a designated way." FED.R.CIV.P. 26(c). In determining whether to issue a protective order barring one party's attorney access to information, the Court must consider the risk and potential danger of "inadvertent or accidental disclosure," and weigh that risk against the potential burden and impairment that the protective order may have on the other parties' ability to prosecute or defend against its claims. *See U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984); *see also In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 2010 WL 2106957, at \*5 (Fed.Cir. May 27, 2010). Whether an unacceptable opportunity for inadvertent disclosure exists is determined by the facts on a counsel-by-counsel basis and not solely by giving controlling weight to the classification of counsel as in-house rather than retained. *Id.* The specific inquiry concerns a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor, that is, whether a counsel can be a "competitve decision-maker." *Id.* at n. 3.

The relevant question here is whether four of Verizon's in-house attorneys are competitive decision-makers and thus precluded from accessing material designated as "highly confidential." The four attorneys are John Thorne, Leonard Suchyta, John Frantz, and Caren Khoo.

Mr. Thorne is Senior Vice President and Deputy General Counsel at Verizon. TiVo argues that his role in Verizon's mergers, acquisitions, and anti-trust make him a competitive decision-maker. Dkt. No. 86 at 4. TiVo submits a news article describing Mr. Thorne as primarily an anti-trust lawyer and

deeply involved in mergers. *See* Dkt. No. 86–5 at 2–3. Verizon responds with a declaration from Mr. Thorne stating that he is responsible for litigation of antitrust, intellectual property, and telecommunications cases. Dkt. No. 86–9 at 1. Mr. Thorne is also a director of two Verizon affiliated companies: Bell Atlantic Entertainment and Information Services Group, Inc., ("Bell Atlantic Entertainment") and Bell Atlantic Global Wireless, Inc. *Id.* at 3. Bell Atlantic Entertainment is the original assignee of U.S. Patent No. 7,561,214, one of the Verizon patents-in-suit, but subsequently assigned its ownership interest to Verizon Communications, Inc. *See* Dkt. No. 27 at 19. While Mr. Thorne may not directly participate in the competitive decisions of Verizon, his position on the board of two of its one of which is related to at least one of the patents-in-suit—creates an unacceptable opportunity for the inadvertent disclosure of information. *See Norbrook Laboratories Ltd. v. G.C. Hanford Mfg. Co.,* No., 2003 WL 1956214, at \*5 (N.D.N.Y. Apr.24, 2003) (denying defendant's board member access to confidential material). Additionally, allowing Mr. Thorne access could create a situation where his obligations as an attorney directly compete with his fiduciary duty to Bell Atlantic Entertainment or Bell Atlantic Global Wireless. *Id.* Further, Verizon will not be unduly prejudiced by Mr. Thorne's restricted access because its outside counsel have been involved in the litigation from the outset, and they are fully familiar with the facts and disputes at issue.

**\*3** TiVo also argues that Messrs. Suchyta and Frantz are competitive decision-makers. TiVo submits that Mr. Suchyta participated in the prosecution of at least on of the patents-in-suit as well as 84 other patents where he was the attorney of record. Dkt. No. 86 at 4. Verizon responds that Mr. Suchyta's supervisory role over attorneys who engage in patent prosecution does not transform him into a competitive decision-maker. *Id.* at 10. This Court agrees. *In re Deutsche Bank,* 605 F.3d 1373, 2010 WL 2106957, at \*5 ("Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking.").

Mr. Frantz's status as a competitive decision-maker was litigated before the Federal Communications Commission, which found that he was not a competitive decision-maker. *See* Order on Join Objections, *Applications for Consent to the Transfer of Control of Licenses from Comcast Corp. and AT & T Corp., Transferors, to AT & T Comcast Corp., Transferee,* MB Dkt. No. 02–70 (FCC Aug. 8, 2002). While not binding, the FCC's ruling is persuasive.

TiVo argues that Ms. Khoo's association with Verizon should be sufficient. Dkt. No. 86 at 4. This is the type of generalization counseled against in *U.S. Steel* and *In re Deutsche Bank*. TiVo plainly has not met its burden as to Ms. Khoo.

Even though Messrs. Suchyta and Frantz and Ms. Khoo do not appear to be competitive decision-makers, there is an inherent increase in the risk and potential danger disclosure, inadvertent or otherwise, when a greater number of in-house attorneys have access to a competitor's confidential information. Here, Verizon seeks access for four in-house lawyers. The Court finds that the potential burden and impairment on Verizon's ability to prosecute or defend against its claims does not outweigh the risk of disclosure when only two in-house attorneys have access. Accordingly, Verizon

may choose two (2) attorneys from the group of Messrs. Suchyta and Frantz and Ms. Khoo to have access to "highly confidential" information.

For the foregoing reasons, the parties' Joint Motion for Entry of a Proposed Protective Order, Dkt. No. 86, is hereby **GRANTED AS MODIFIED.** The Court accepts Verizon's proposal with the modification that Mr. Thorne is denied access and Verizon must choose two (2) from the group of Messrs. Suchyta and Frantz and Ms. Khoo to have access to "highly confidential" information.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 9430466

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

USAP031

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

2016 WL 8738420
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

UNITED STATES of America, et al., Plaintiffs,

v.

AETNA INC. and Humana Inc., Defendants.

Case No. 1:16-cv-01494 (JDB)
|
Signed 09/05/2016

**Attorneys and Law Firms**

Craig William Conrath, Dylan Matthew Carson, Eric J. Mahr, Eyitayo Oritsematosan St. Matthew-Daniel, Miriam Rose Vishio, Peter Joseph Mucchetti, Ryan M. Kantor, Barry James Joyce, Bennett Jorg Matelson, Eric Damian Welsh, Justin T. Heipp, Matthew David Siegel, Patricia Leigh Sindel, Samer Makram Musallam, Sanford Marshall Adler, Yvette F. Tarlov, U.S. Department of Justice, Catherine Anne Jackson, Elizabeth Sarah Gere, Office of the Attorney General for the District of Columbia, Washington, DC, Michael Andrew Undorf, Department of Justice, Wilmington, DE, Christopher R. Hunt, Rachel Michelle Steinman, Timothy Michael Fraser, Lizabeth A. Brady, Office of the Attorney General, Tallahassee, FL, Daniel Stephen Walsh, Monica Anne Sullivan, Office of Attorney General, Atlanta, GA, Robert W. Pratt, Elizabeth Louise Maxeiner, Office of the Attorney General, Chicago, IL, Layne M. Lindebak, Attorney General's Office for the State of Iowa, Des Moines, IA, Beth Ann Finnerty, Brian Francesco Jordan, Thomas Nathaniel Anger, Office of the Attorney General, Columbus, OH, Aaron L. Schwartz, James A. Donahue, III, Tracy Wright Wertz, Commonwealth of Pennsylvania Office of Attorney General, Jennifer Ann Thomson, Office of Attorney General/ PA Litigation Section, Harrisburg, PA, Sarah Oxenham Allen, Tyler Timothy Henry, Office of the Attorney General, Richmond, VA, for Plaintiffs.

Christopher Nathan Thatch, John M. Majoras, Michael S. Fried, Geoffrey S. Irwin, Michael R. Shumaker, Jones Day, Arthur Norman Lerner, Astor Henry Lloyd Heaven, III, Kent Alan Gardiner, Shari Ross Lahlou, Shawn R. Johnson, Christie L. Stahlke, David Martin Schnorrenberg, Joseph M. Miller, Crowell & Moring LLP, Edward D. Hassi, Katrina M. Robson, Richard G. Parker, O'Melveny & Myers LLP, Washington, DC, Aaron M. Healey, Jones Day, Columbus, OH, Alex P. Middleton, Paula W. Render, Jeremy J. Gray,

Jones Day, Chicago, IL, Erin L. Shencopp, Frederick P. Santarelli, Thomas B. Helbig, Elliot Greenleaf, P.C., Blue Bell, PA, Thomas Demitrack, Jones Day, Cleveland, OH, Connor T. Lynch, Cynthia A. Merrill, Jeffrey J. Fowler, Kenneth R. O'Rourke, O'Melveny & Myers LLP, Los Angeles, CA, for Defendants.

**REPORT AND RECOMMENDATION
NO. 1 OF THE SPECIAL MASTER**

Hon. Richard A. Levie (Ret.), Special Master

**\*1** Pending before the Special Master is Defendants Aetna, Inc., and Humana Inc.'s Motion Seeking Modification of the Protective Order (Dkt. No. 73), in which Defendants ask that specially designated in-house counsel be permitted to view "references to and discussions of Confidential Information contained in written submissions to the Court or Special Master, in draft and final expert witness reports, and draft and final exhibits prepared by experts for potential use in their draft and final reports." For the reasons that follow, the Special Master recommends that the Court deny Defendants' Motion.

### I. Background

The Court entered the underlying Protective Order in this case on August 12, 2016. (Dkt. No. 54). The Protective Order [¶ E. (1)(c) ] permits Defendants to "file motions with the Special Master seeking modification of this provision [dealing with Permitted Disclosure of Confidential Information] to share Confidential Information with a very small number of specified in-house attorneys, so long as those attorneys are not involved in Defendants' competitive decision-making." [*Id.* at ¶ E(1)(c) ].

Defendants submitted the instant Motion on August 24, 2016, seeking "modification of the Protective Order to permit limited disclosure of confidential information to in-house attorneys—two each at Aetna and Humana—who are not involved in competitive decision making." [Def. Mot. (Dkt. No. 73) at 1].

More specifically, Defendants' proposed modifications would grant in-house attorneys [1] access to

references to and discussions of Confidential Information contained in written submissions to the Court or Special Master, in draft and final expert witness reports, and in draft and final exhibits that were prepared by the experts for potential use in their draft and final reports. This provision shall not permit In-house Attorneys to directly access or review any non-party documents that have been designated as Confidential Information.

[Def. Mot. Ex. 2 (Redlined [proposed] Amended Protective Order) at ¶ E(1)(j) ].

[1]     Defendants' requested modifications define "in-house attorneys" as "up to two attorneys who are employees of each Defendant, for whom the Defendant has filed the In-house Attorney's affidavit or declaration certifying that the In-house Attorney does not participate in competitively sensitive decision-making for his or her employer and will abide by the provisions of this Protective Order, and who have signed the Agreement Concerning Confidentiality" attached to the Protective Order. [Mot. Exh. 2 at ¶ A(1)(s) ].

Defendants' proposed amendments also include provisions intended to limit the types of in-house counsel who have access to such confidential information, and to grant non-parties the right to object to disclosure of their information to in-house counsel:

Before any information designated as Confidential Information may be disclosed to any In-house Attorney pursuant to subparagraph E(1)(j) of this Order, the Defendant for whom the In-house Attorney employed must: (1) file an affidavit or declaration of the In-house Attorney certifying that the In-house Attorney does not participate in competitively sensitive

decision-making for his or her employer and will abide by the provisions of this Protective Order; (2) obtain the Agreement Concerning Confidentiality in Appendix A to this Order signed by the In-house Attorney; (3) provide this amended Protective Order to non-parties who have produced Confidential Information in this matter; and (4) wait for five days after such notice to affected non-parties is provided before making the disclosure to the In-house Attorney. Notice to a non-party of a motion for entry of this Amended Protective Order and an opportunity to object thereto shall satisfy the third requirement.

**\*2**  [*Id.* at ¶ E(2) ].

In support of their proposed modifications, Defendants note that they do not ask that in-house counsel be permitted to access underlying non-party confidential information, but only "briefs, expert reports, and exhibits thereto" and written submissions to the Court and Special Master which may refer to or discuss confidential information. (Mot. at 1). According to Defendants, "such limited access is necessary to ensure that Defendants are able to participate meaningfully in their defense" because "Defendants' outside counsel need access to individuals familiar" with the healthcare insurance industry. (Mot. at 1-2). Defendants claim that denying in-house counsel access to confidential information would require outside counsel to "redact every draft and final brief and expert report for in-house counsel, depriving their review of much of its value and imposing a time-consuming burden on litigation teams in an expedited proceeding." (Mot. at 2). [2]

[2]     Even permitting in-house counsel to view confidential information would not alleviate all of the burden associated with redactions, of course, as the parties will still be required to redact all confidential information contained in final public versions of documents.

Defendants claim that "courts in [the District of Columbia] routinely permit parties' in-house counsel to access confidential materials if they have no role in competitive

decision-making." [*Id.* at 2 (citations omitted) ]. Defendants contend that, to restrict in-house counsel access, the government must provide specific facts showing that such limitation is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." [*Id.* at 2 (citations omitted) ].

Finally, Defendants include declarations from the two Aetna in-house counsel and two Humana in-house counsel whom Defendants request be given access to confidential information: Michelle Matiski, Vice President and Head of the Corporate Legal Group at Aetna; John Edward Neugebauer, Vice President and Chief Litigation Officer at Aetna; Matthew Varzally, Senior Counsel at Humana; and Elysia Solomon, Associate General Counsel at Humana. In each declaration, the individual lists his or her responsibilities; asserts that the declarant requires access to confidential information in order to provide legal advice to the declarant's company and to assist outside counsel; states that "[b]ecause I understand the Company and the questions and concerns of our management, I am better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength of the evidence in terms that the [declarant's company's] executives can understand;" and represents that he or she will not use the documents for any purpose other than supervising outside counsel and advising management in the instant case. [*See* Mot. Exh. 3 (Matiski Decl.) at ¶ 3-4, 6-7, 11; Mot. Exh. 3 (Neugebauer Decl.) at ¶ 3-4, 6-7, 11; Mot. Exh. 4 (Varzally Decl.) at ¶ 3-4, 7, 11; Mot. Exh. 4 (Solomon Decl.) at ¶ 3-4, 6-7, 11]. In their Motion, Defendants represent that these declarations ensure that the in-house counsel will not use any confidential information for any improper purpose, and that the proposed modifications therefore do not pose any risk to the nonparties who provide this information. (Mot. at 3).

**\*3** Plaintiffs oppose Defendants' request. First, Plaintiffs contend that neither of the Defendant corporations should have direct access to the confidential information because companies have an interest in protecting their sensitive information from competitors, and because Plaintiffs, who regularly conduct law enforcement investigations, have an interest in ensuring that companies forthrightly supply information during the course of such investigations without fear that their information may be disseminated to competitors. (Opp. at 1).

Plaintiffs argue that limiting the in-house counsels' access to references and discussion in draft and final briefs,

expert reports, and exhibits is insufficient because proposed findings of fact and "expert reports, in particular, are likely to assemble and distill some of the most competitively significant competitor documents and information." (Opp. at 1).

Plaintiffs express particular concern about the chilling effect that disclosure in this particular case may have on Medicare Advantage insurer bids for future coverage periods. "If insurers become concerned that their bidding data could be viewed by their competitors—*i.e.*, Aetna or Humana employees—that could affect their participation or bidding." (Opp. at 1-2).

Plaintiffs assert additional concerns as to whether the particular in-house counsel identified by Defendants—Ms. Matiski and Mr. Neugebauer for Aetna, and Mr. Varzally and Ms. Solomon for Humana—"are appropriate persons to receive confidential information, particularly in this regulated industry. (Opp. at 2). Plaintiffs cite to various entries in the Aetna and Humana privilege logs which Plaintiffs suggest indicate that these individuals may in fact be involved in competitive decision-making. (Opp. at 2-3). [3]

[3]     Upon the request of the Special Master, Plaintiffs identified ten privilege log entries applicable to each of the four in-house counsel, and Defendant provided the relevant pages to the Special Master for *in camera* review. (See Pl. Aug. 31, 2016 email to the Special Master and parties; Def. Sept. 1, 2016 Submission to the Special Master).

In reply to Plaintiffs' Opposition, Defendants argue Plaintiffs have failed to show that the in-house counsel at issue are in fact involved in competitive decision making. (Reply at 1-2).

Largely adopting language proposed by the parties, the Special Master issued Special Master Order #1 [Dkt. No. 74] affording non-parties who have already produced or have received subpoenas to produce documents an opportunity to comment, *inter alia*, on the instant Motion. The Special Master received submissions on this matter from 20 non-party Protected Persons [4] who object to Defendant's proposed modifications. These non-parties fall into two broad categories, albeit with some overlap: non-parties who have already provided information to the government and / or Defendants in response to requests issued by the government during its investigation into this matter, or in response to subpoenas issued during the pendency of this litigation; and

non-parties who have received subpoenas from parties to this case but have not yet provided responsive information.

4       Non-party Protected Persons objecting to Aetna's proposed modifications include: Advocate Health Care Network; Anthem Inc. (treated as a non-party for purposes of this case); Aultman Health Foundation; Baylor Scott & White Holdings; Blue Cross and Blue Shield of Florida, Inc.; Centene Corporation; Cigna, Inc. (treated as a non-party for purposes of this case); CommunityCare Managed Healthcare Plans of Oklahoma; Duke University Health Systems, Inc.; Essence Healthcare, Inc.; Guidewell Mutual Holding Corporation; Health Alliance Medical Plans, Inc.; Health Options, Inc.; Iowa Health System d/b/a UnityPoint Health; Medical Mutual of Ohio; Mercer Health and Benefits LLC; Tufts Associated Health Plans, Inc.; UPMC and UPMC Health Plan, Inc.; UnitedHealth Group Inc.; and University of Colorado Health. In response to Special Master Order No. 1, some of the above-listed Protected Persons and additional non-parties also provided comment expressing concerns with other aspects of the Protective Order and/or with other aspects related to the treatment of protected information. These other arguments and comments are not properly before the Special Master at this time. Procedures for addressing other concerns with the current Protective Order are addressed in Special Master Order No. 2, filed on September 2, 2016. (Dkt. No. 92).

 *4   Specific concerns raised by some, but not all, of the Protected Persons noted the exceptional importance of maintaining the confidentiality of the information sought and/or already provided, arguing that improper disclosure of this information could potentially inflict great harm on the entity which provided it. Likewise, most non-parties have expressed concern about the risk of in-house counsel inadvertently relying on this information when advising their clients regarding business decisions, noting that, once an in-house counsel has learned sensitive information, it will be impossible for that counsel to forget it. Finally, many of the objecting nonparties argue that Defendants have failed to meet the burden to show good cause justifying amending the Protective Order to include disclosure to the identified in-house counsel. These not parties contend, among other arguments, that Defendants failed to demonstrate a sufficient need for in-house counsel to have access where, as here, the Defendants are represented by very experienced antitrust

lawyers who have been involved in a large number of prior merger cases.

In response to the non-party comments, Defendants assert that courts routinely grant in-house counsel access to confidential discovery materials. (Def. Resp. to Protected Person's Submissions at 2). Defendants also reiterate their earlier arguments that their request seeks only limited access to confidential information. (*Id.* 2-3). In addition, Defendants argue that they require in-house counsel access to confidential material in order to litigate this case effectively because those counsel are "intimately familiar with these developments [in the health insurance industry] and with the broader [health insurance] industry," such as the procedures for obtaining funding and reimbursement from the Centers for Medicare and Medicaid Services (CMS), how organizations such as Defendants "design their benefits," and "how the industry reacts to changing requirements from CMS," and are knowledgeable as to Defendants' "penetration rates within particular geographic areas." (*Id.* at 4-5). By contrast, Defendants argue, any potential risks to non-parties are "speculative and unfounded." (*Id.* at 6-7).

Finally, Plaintiffs also submitted a response to the arguments raised by the Protected Persons in accordance with Special Master Order #1. Plaintiffs' response argues that the non-party comments "articulate the risk of serious harm that would result from Aetna's and Humana's in-house counsel having access to confidential, competitively sensitive information," and support Plaintiffs' position that the current Protective Order appropriately balances the competing interests of enabling Defendants to prepare and defend themselves in this matter, while also protecting the interests of nonparties. (Pl. Response at 1-2).

The Special Master has reviewed all submissions made by the parties and non-parties in this matter. In addition, the Special Master heard argument from the parties and from all non-parties who submitted written comments on the instant Motion and also who chose to participate in the oral argument. This matter is now ripe for resolution.

### II. Legal Standard

The party which seeks to modify a protective order—here, Defendants—bears the burden of showing that good cause exists to justify the desired change. [*Infineon Tech. A.G. v. Green Power Tech. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005)(Bates,

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

J.)(citing *Alexander v. F.B.I.*, 186 F.R.D. 54, 57 (D.D.C. 1998)) ]. [5]

[5]    The Special Master views the Protective Order entered by Judge Bates as affording Defendants the opportunity to seek the relief that is encompassed by the instant Motion. The Special Master does not understand the language in the Protective Order here as shifting the burden on establishing entitlement to a modification from the movants—here, the Defendants. At oral argument Defendants acknowledged that they have the burden of establishing good cause and asserted that, in their opinion, they meet the "good cause" standard. (9/1/16 Tr. at 18-19).

In determining whether to grant access, the Special Master must balance Aetna and Humana's interest in defending themselves—in other words, their need for in-house counsel to access this information—against the risk of inadvertent disclosure of that information.

**\*5**   Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." [*U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984); *see FTC v. Whole Foods Market, Inc.*, 2007 WL 2059741 at *2 (D.D.C. Jul. 6, 2007) ]. "Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained." [*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) ]. In conducting such an assessment, a court should consider "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained." (*U.S. Steel*, 730 F.2d at 1468).

### III. Discussion

Defendants have not met their burden to show that good cause exists to modify the protective order because they have not shown that the need for in-house counsel to have access to the confidential information at issue outweighs the risk of inadvertent disclosure in this case. Additionally, Defendants have failed to demonstrate that the in-house counsel designated by Defendants are not involved in competitive decision-making.

#### A. Risk of Inadvertent Disclosure

As the court noted in *F.T.C. v. Advocate Health Care Network*, —— F. Supp. 3d ——, 2016 WL 770099 at *3 (N.D. Ill. Feb. 29, 2016):

'Where in-house counsel are involved in competitive decision making ... the risk of inadvertent disclosure is obviously higher than for retained counsel.' In that context, compartmentalization of protected information from that which may be properly utilized in competitive decision-making is, to borrow Justice Cardozo's phrase used in another context, 'a feat beyond the compass of ordinary minds (citation omitted).' The inescapable reality is that once an expert—or a lawyer for that matter—learns the confidential information that is being sought, that individual cannot rid himself [herself] of the knowledge he [she] has gained; he [she] cannot perform a prefrontal lobotomy on himself [herself], as courts in various contexts have recognized (citations omitted).

This is so because information, once learned, is impossible to forget. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." [*F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ]. [6]

[6]    Adding to the concerns is the reality that the persons for whom access is sought may be promoted up the corporate hierarchy or change employment to an entity having an interest in the information to which access is sought here.

Indeed, with respect to the type of material at issue here, "the very nature of competitive information makes it difficult to compartmentalize." [*Saint Alphonsus Medical Ctr. V. St. Luke's Health System*, 2013 WL 139324 at *4 (D. Idaho Jan. 10, 2013) ]. Thus, granting in-house counsel access to confidential information risks placing that counsel "in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [a competitor's] trade secrets." [*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) ].

Moreover, because of the nature of the health insurance industry and the type of information at issue in this

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

case, the term "competitive decision making" itself should be broadly construed in this case. "The primary concern underlying the 'competitive-decision-making' test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is in the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." [*F.T.C. v. Sysco Corp.,* 83 F. Supp. 3d 1, 3 (D.D.C. 2015) ]. Providing Defendants' in-house counsel with access to the confidential information of other insurers undoubtedly risks giving Defendants an unfair advantage in competition in the insurance marketplace should the counsel later rely upon that knowledge when advising his or her client with regards to a competitive situation.

**\*6** A not insignificant number of the concerned non-parties, however, do not compete directly with Defendants in the insurance marketplace but, rather, are healthcare providers with whom Defendants regularly negotiate rates for services. Knowing what reimbursement rates these providers have negotiated with other insurers, a provider's enrollment projections, or cost and profitability data for a provider could provide the Defendants with a significant advantage in future negotiations with these providers. [7] As the *Advocate* court explained, "we are not talking about an exchange of documents between two sides in a lawsuit. We are talking about a number of third parties, not targets of any [government] action, who had to give up exceedingly confidential information in response to a government subpoena." (*Advocate*, 2016 WL 770099 at \*5).

[7]
> At oral argument, Defendants represented that they did not intend to include such information in their submissions, expert reports, or related exhibits. The issue, however, is not only limited to whether, at this juncture, they anticipate use of such information. Rather, because the subpoenas and investigative demands have specifically targeted such information, under the type of blanket order that Defendants seek, any such information could be included in these reports and thus could potentially be available to in-house counsel.

Finally, the Special Master finds unpersuasive Defendants' claim that the actual information to be disclosed is limited in scope. The language proffered by Defendants would grant in-house counsel access to any confidential information presented by a non-party, provided that the information is discussed or referenced in a "written submission[ ] to the Court or Special Master, in draft [or] final expert witness report[ ]," or "in draft and final exhibits that were prepared by the experts for potential use in their draft and final reports." [Def. Mot. Ex. 2 (Redlined Amended Protective Order) at ¶ E(1)(j) ]. As such, while Defendants have represented that they believe information to be included in such documents would be limited in scope, the actual language offered does not provide any such restriction. Rather, while in-house counsel may not have access to the actual documents produced by non-parties, nothing in the requested provision would prevent Defendants from including that exact information in a submission, expert report, or related exhibit.

## B. Appropriateness of Designated In-House Counsel [8]

[8]
> During oral argument counsel for each Defendant indicated that the named individuals for whom access is sought are the most important persons on behalf of each Defendant to have need for the access to the information at issue. (9/1/16 Tr. at 76).

The Special Master has reviewed the declarations of each in-house counsel [9] and is unpersuaded that these individuals are sufficiently removed from the competitive-decision-making process such that they may safely have access to the broad range of confidential information at issue here.

[9]
> Here, as in *Advocate*, "[t]he course of the Declarations is essentially identical, with each Declaration parroting the language of the confidentiality order and assuring that the Declarant does not participate in the executive level decision-making; or business decisions regarding pricing, marketing, or design; competitive decision-making in areas like expansion, pricing or strategies." (2016 WL 770099 at \*4).

First, Ms. Matiski represents that she "is not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of confidential information in this case." (Matiski Decl. at ¶ 4). She declares that she "cannot provide informed legal advice to the Company, unless I have access to *all* information—including Confidential Information—at issue in this matter." (*Id.* at ¶ 6)(emphasis supplied).

USAP037

**\*7** Ms. Matiski does claim to be involved in, *inter alia*, "mergers and acquisitions." (*Id.*) Permitting Ms. Matiski to have access to direct competitors' information therefore creates a risk that she may inadvertently disclose such information when advising management regarding future mergers, including those that may impact these competitors.

In addition, an *in camera* review of privileged materials withheld related to Ms. Matiski [10] makes clear that she advises Aetna management regarding negotiations with non-party healthcare providers who have provided information as part of this proceeding, including with certain providers who submitted statements as part of this proceeding arguing that disclosure of their information directly to Defendants creates a risk of significant harm.

[10]     Of the ten documents provided for *in privilege* review, four strongly suggest that Ms. Matiski is involved in such negotiations. If this R&R is appealed to the Court and the Court wishes to review *in camera* the documents considered by the Special Master, the documents with respect to Ms. Matiski or any of the declarants will be provided to the Court.

Mr. Neugebauer's declaration creates similar problems. Just like Ms. Matiski, he claims that he does "not participate in competitive decision making" and is "not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Neugebauer Dec. at ¶ 4). He does, however, state that he "supervise[s] litigation and provide[s] risk awareness counseling." (*Id.*) Aetna almost certainly litigates with providers from time to time. Indeed, as non-party UPMC pointed out in its submission to the Special Master, publications have quoted Mr. Neugebauer discussing Aetna strategy with respect to providers. [*See* Christopher Cheney, <u>Aetna, Providers Battle Over Billing Practices</u>, Health Leaders Media (Mar. 5, 2015), http://www.healthleadersmedia.com/health-plans/ aetna-providers-battle-over-billing-practices].

In addition, an *in camera* review of Aetna privilege log entries related to Mr. Neugebauer show that he is involved in strategic discussions regarding negotiations with providers, and regarding pricing and reimbursement strategy, all of which is contained in the confidential material sought and/ or provided in this case. [11] Granting Mr. Neugebauer broad access to non-party information risks creating a situation in which he may inadvertently disclose information learned in the course of this case during litigation with such providers.

[11]     Of the ten documents provided concerning Mr. Neugebauer, three provide evidence of his involvement in these matters.

Mr. Varzally, from Humana, also avers that he is "not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Varzally Decl. at ¶ 2). He does state that he is involved in "litigation and investigation matters" related to "antitrust and competition; intellectual property; bankruptcy; offensive litigation and recoveries; general commercial litigation; member/provider disputes; ERISA; and the TCPA." (*Id.*) As with Ms. Matiski at Aetna, Mr. Varzally's participation in antitrust matters is troubling for purposes of this case. Granting Mr. Varzally access to direct competitors' information creates a risk that he may inadvertently disclose such information while advising management regarding future mergers with or against competitors whose information has been disclosed to him.

**\*8** More concerning, however, is Mr. Varzally's participation in disputes with healthcare providers, which he admits is a key part of his role. The *in camera* review of Mr. Varzally's privileged material confirms that he is regularly involved in litigation concerning provider contracts. [12] Granting him access to the confidential information at issue in this case thereby creates a heightened risk of inadvertent disclosure of that information in ongoing or future litigations or employment.

[12]     Three of the ten documents provided involving Mr. Varzally show his participation in these matters.

Finally, Ms. Solomon, like Mr. Varzally, Mr. Neugebauer, and Ms. Matiski before her, declares that she is "not involved in decisions regarding pricing, marketing, distribution, product design, or other competitively sensitive issues that are the subjects of Confidential Information in this case." (Solomon Decl. at ¶ 4). She declares, however, that she oversees all litigation matters handled by the Humana Law Department, including, presumably, all of the litigation in which Mr. Varzally is involved. An *in-camera* review of documents prepared by or addressed to Ms. Solomon confirms that she is involved in such litigation. [13]

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

13      Seven of the ten documents provided regarding Ms. Solomon show her involvement in such litigation.

For all of these reasons, Defendants have not met their burden to show that good cause exists to amend the Protective Order to permit any of the above-listed in-house counsel to access to confidential information in this case. This conclusion is not based on a "general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." (*U.S. Steel*, 703 F.2d at 1468). Rather, it is reflects the conclusion based on the declarations submitted that where, as here, a very significant number of non-parties have submitted highly confidential information on a wide variety of topics, "the specific facts" of this situation "indicate a probability that confidentiality ... would be seriously at risk" if in-house counsel were granted access to that information in the fashion sought by Defendants in their proposed amendment. (*Id.* at 1469).

**C. In-house counsel's need for this information**

As balanced against the significant risk associated with the potential for inadvertent disclosure, Defendants have not provided a sufficient showing of need to justify granting in-house counsel blanket access to any confidential material contained in submissions and expert reports and exhibits.

While the Declarations of Ms. Matiski, Mr. Neugebauer, Mr. Varzally, and Ms. Solomon all assert that the declarant is "better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength the evidence in terms that the business executives can understand," none of the declarations explain what specific benefit the in-house counsel will confer or how defense of the companies will be prejudiced or harmed by lack of access.

Defendants' Response to the Submissions of Protected Persons (non-parties) asserts that "the health-insurance industry is highly complex and highly regulated, with significant changes occurring on a regular basis." (Def. Resp. at 4). According to Defendants, the in-house counsel are "deeply knowledgeable about how the Centers for Medicare and Medicaid Services ('CMS') funds and reimburses Medicare Advantage Organizations like Defendants, how such organizations design their benefits, and how the industry reacts to changing requirements from CMS. Similarly, in-

house counsel will have special insight into penetrations rates within particular geographic areas, a topic that could well be relevant to this litigation." (*Id.* at 4-5).

**\*9**  Defendants' showing of need simply is not persuasive. While the Special Master does not doubt that in-house counsel have knowledge of and experience in these areas, Defendants have retained highly qualified and sophisticated outside counsel with experience in other merger cases and can be expected to retain equally qualified experts. [14] It is unclear—and Defendants do not convincingly explain—what special insight in-house counsel will offer into such topic areas here, in the abstract, without reference to any particular information or document, particularly when the information that is being withheld concerns companies that the in-house counsel do not represent. *See Advocate*, 2016 WL 770099 at *6 ("It is difficult to see how [the defendant's in-house counsel] would have any special insight into confidential materials from companies they don't work for—or at least that they would have a familiarity sufficiently different from that possessed by their outside counsel that could justify the risk of exposing the highly confidential information provided by the defendants' competitors.").

14      The submission of non-party UPMC provides extensive detail about the experience of the law firms and certain lead counsel for the firms retained by Defendants to demonstrate the experience of retained outside counsel. (*See* UPMC Submission at 11-12 and n.4).

All of the declarants state that they are "better able than outside counsel alone to advise the Company about the arguments being raised, the strength of the arguments, and the strength of the evidence in terms that the business executives can understand...." (Mot. Exh. 3 at Matiski ¶ 6; Neugebauer ¶ 7; Exh. 4 at Varzally ¶ 7; Solomon ¶ 7). Again, the Special Master does not doubt that the declarants are highly qualified attorneys, but the declarants have not explained *why* they are better positioned to explain these matters to their corporate management, or why their respective "business executives" have a need to understand the legal arguments in a way that only the in-house counsel can explain. Given the quality of retained outside counsel in this case, the Special Master cannot accept this proposition of asserted need.

Moreover, while it is true, as Defendants argue, that some "courts in this District have recognized that 'it would be extremely difficult, if not impossible, for the defendants'

USAP039

outside counsel to prepare their case for trial without the assistance of in-house counsel,' " [Mot. at 3 (quoting *United States v. Sungard Data Sys. Inc.*, 173 F. Supp. 2d 20, 21 (D.D.C. 2001)) ],[15] preventing in-house counsel from viewing confidential information does not prevent them from assisting Defendants' retained counsel. To the contrary, in-house counsel may certainly assist outside counsel— they must just rely upon redacted versions of submissions, expert reports and exhibits. [*See F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1, 3 (D.D.C. 2015) ]. To the extent that outside counsel require in-house counsel assistance with respect to particular documents, nothing prevents outside counsel from requesting that in-house counsel have access to that particular information based upon more specific and compelling grounds than are present at this juncture.

[15]   Defendants' citation to *Sungard* must be analyzed in light of the fact that trial in that case there was set occur in 17 days from the date of the Court's order. [173 F. Supp. 2d at 21] ("The lawsuit is on a track to trial which can only be described as heroic. Next to it, the renowned 'rocket docket' is a slow moving train.") While timing alone is not a dispositive factor, it clearly was significant in the decision there. The discovery timeline in this case, while condensed, does not come close to the situation in *Sungard*.

### D. Other concerns

The Special Master finds persuasive Plaintiffs' argument that granting Defendants' in-house counsel access to the information at issue may deter non-parties from producing information to the government in future cases. (Pl. Resp. to Non-party Submissions at 1-2; *see* 9/1/16 Tr. at 53). While this concern, standing alone, might not be a sufficient basis upon which to recommend against in-house counsel access, the government has presented valid concerns that such disclosure may impede future law enforcement investigations.[16]

[16]   In *F.T.C. v. Sysco Corp.*, ("*Sysco II*"), the court determined that disclosure of the identities of various entities who provided comment to the FTC regarding the pending merger at issue in that case would not have a chilling effect on future FTC investigations. (*F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015)). That case is inapposite

here. First, the categories of information in this case are far broader than the list of names at issue in *Sysco II*. Second, the court in that case noted that witness names have become public in other cases without resulting in a demonstrated chilling effect. (*Id.*) Finally, in that case, only one declarant (out of 90) declared that he would not have voluntarily offered information to the FTC had he known that his name would be made public. (*Id.*) By contrast, in this case, the type of information at issue is unlikely to become public at trial.

The actual information at issue here is far more detailed than that in *Sysco II*, and concerns confidential business details related to non-parties, rather than simply the names of the non-parties. Numerous non-parties have asserted that they provided information to the government based in large part upon the government's express assurances that the information would be protected. The details of this case, therefore, create a much stronger possibility that granting in-house counsel access may result in a chilling effect on future investigations.

**\*10**   Additionally, other cases which have permitted in-house counsel to access to confidential information typically include in the protective order a penalty provision designed to deter against misuse of confidential information. The penalty provision in *Whole Foods Market*, for example, stated that:

> Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority and Judge Friedman will urge that authority to suspend or disbar the violator.

(2007 WL 2059741 at *3). The penalty provision in *Sysco* was similar. (See 83 F. Supp. 3d at 5).

United States v. Aetna Inc., Not Reported in Fed. Supp. (2016)

In the Response to the Protected Person's submissions and again at oral argument, however, Defendants expressed an unwillingness to accept such a provision. Defendants contend that "it is extremely unlikely that in-house counsel would gain any knowledge that would even make it possible that they could breach the Protective Order," and that "the parameters set forth in Defendants' modified Protective Order—which the designated in-house counsel agreed to under penalty of perjury—will sufficiently deter those individuals (who are all officers of the court) from violating the Order." (Def. Response at 9; see 9/1/16 Tr. at 30-31).

The Special Master does not question the integrity of the in-house counsel at issue here. Indeed, "like retained counsel ... in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." (*U.S. Steel*, 730 F.2d at 1468). Nevertheless, given the type of highly confidential information at issue here, and cognizant of the discomfort that numerous non-parties have expressed concerning the possibility of in-house counsel having access to that highly confidential information, a penalty provision at least would have at least offered a step towards mollifying (albeit not relieving) non-party concerns. To the extent that Defendants contend that a breach of the Protective Order is unlikely, the unlikeliness of a breach suggests that Defendants should be more, rather than less, willing to accept such a provision.

To be sure, while a penalty provision arguably might provide some level of deterrence against improper disclosure, it cannot "un-ring the bell" in the case of an inadvertent disclosure. Inclusion of a penalty provision therefore does not resolve all of the other above-listed and serious risks associated with granting in-house counsel access to confidential information. For this reason, even if Defendants had agreed to or even suggested including a penalty provision, it would not change the Special Master's recommendation.

Likewise, some cases and some of the Protected Persons here have suggested that the issue of in-house counsel access to confidential information might be dealt with by establishing two tiers of confidentiality—(1) confidential and (2) "highly confidential" or "highly confidential—outside counsel only." Defendants oppose creating this type of provision as well, contending that it "would require Protected Persons to re-designate large swaths of confidential material already produced to DOJ, which would consume additional time in an already-condensed schedule." (Def. Resp. to Protected Persons Submissions at 8). On this point, the Special Master agrees with Defendants. This case is being tried on a highly expedited schedule. It would be highly inefficient to require re-designation of all material already produced.

### IV. Conclusion

**\*11** For all of these reasons, the Special Master recommends that the Court deny Defendants' Motion.

### V. Certification

As noted above, Plaintiffs orally and in writing have objected to this recommendation. Given that this recommendation involves a provision in the Protective Order entered by the Court, the Special Master, pursuant to paragraph 5 of the appointment order (Dkt. 66) certifies this Report and Recommendation for appeal to the Court. The parties are urged to inform the Court within 24 hours of the issuance of this Report and Recommendation whether there will be a need for appeal. Regardless of the outcome of any appeal to the Court on this issue, there is no need for any party to delay commencement of any appropriate non-party discovery.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 8738420

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

USAP041

2009 WL 1766143
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Marshall Division.

WI–LAN, INC., Plaintiff,
v.
ACER, INC., et al., Defendants.
Wi–Lan, Inc., Plaintiff,
v.
Westell Technologies, Inc., et al., Defendants.

Civil Action Nos. 2:07–CV–
473 (TJW), 2:07–CV–474 (TJW).
|
June 23, 2009.

## Attorneys and Law Firms

Samuel Franklin Baxter, McKool Smith, Marshall, TX, Jason Alan Blackstone, McKool Smith, Dallas, TX, Michael G. McManus, McKool Smtih, Washington, DC, Robert A. Cote, Jr., McKool Smith PC, New York, NY, Seth Raymond Hasenour, McKool Smith, Austin, TX, for Plaintiff.

Alex Verbin Chachkes, Orrick Herrington & Sutcliffe, Lewis V. Popovski, Matthew J. Faust, Kenyon & Kenyon, Gregory S Arovas, Kirkland & Ellis, LLP, New York, NY, G. Hopkins Guy, III, Michael C. Spillner, Michael C. Ting, Orrick Herrington & Sutcliffe, Mark Yeh-Kai Tung, Latham & Watkins, Menlo Park, CA, Chris Holm, Jennifer Miremadi, Mark C. Scarsi, Milbank Tweed Hadley & McCloy, Robert Steinberg, Latham & Watkins LLP, Los Angeles, CA, Clyde Moody Siebman, Siebman Reynolds Burg & Phillips LLP, Sherman, TX, James Scott,Hacker, Albritton Law Firm, Guy N. Harrison, Attorney at Law, Rickey Lawrence Faulkner, Rickey L. Faulkner, P.C., Longview, TX, Thomas Ray Jackson, Chijioke E. Offor, Daniel T. Conrad, Jones Day, Eric Joseph Klein, Akin Gump Strauss Hauer & Feld, Dallas, TX, David Jack Levy, Morgan Lewis & Bockius, Ira R. Hatton, Manoj S. Gandhi, Akin Gump Strauss Hauer & Feld, Houston, TX, Fred Irvin Williams, Akin Gump Strauss Hauer & Feld LLP, Austin, TX, Benjamin L. Singer, Kevin P.B. Johnson, Quinn Emanuel Urquhart Oliver & Hedges, Redwood Shores, CA, Paul T. Qualey, Kenyon & Kenyon, John J. Feldhaus, Pavan K. Agarwal, Foley & Lardner, Washington, DC, Michael Woodrow Devries, Eli Ticatch, Joseph K. Liu, Latham & Watkins LLP, Costa

Mesa, CA, Adam R. Alper, Bao Nguyen, Christian Chadd Taylor, Jared D. Edgar, Kirkland & Ellis LLP, John P. Bovich, Jonah D. Mitchell, Scott D. Baker, William R. Overend, Reed Smith LLP, San Francisco, CA, Allen Franklin Gardner, John Frederick Bufe, Michael Edwin Jones, Potter Minton PC, Andrew Thompson Gorham, Charles Ainsworth, Robert Christopher Bunt, Robert M. Parker, Parker Bunt & Ainsworth, Tyler, TX, Avinash S. Lele, Kirkland & Ellis, LLP, Palo Alto, CA, Harry Lee Gillam, Jr., Gillam & Smith, LLP, Marshall, TX, Linda Jean Thayer, Finnegan Henderson Farabow Garrett & Dunner, Cambridge, MA, Aroger D. Taylor, Ffinnegan Henderson Farabow Garrett & Dunner, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION AND ORDER

T. JOHN WARD, District Judge.

**\*1** Pending before the Court is plaintiff Wi–Lan, Inc., defendant Acer, Inc., and various other defendants' (collectively, "defendants") joint request to enter a Protective Order in this case pursuant to Federal Rule of Civil Procedure 26(c). (Dkt. No. 322). The parties agree that an order is necessary to protect the confidential information being exchanged. The parties have been able to resolve all disputes pertaining to the provisions of the proposed Protective Order, save for one. After carefully considering the parties' written submissions, the Court grants the parties' motion and enters the Protective Order submitted by the defendants for the reasons set forth in this opinion.

### I. Background

The parties have spent a year negotiating the terms of the Protective Order and have resolved all disputes but one. The parties have agreed to an "Attorneys' Eyes Only" designation in the Protective Order. The "Attorneys' Eyes Only" provision limits access to a party's confidential documents to outside counsel and up to three in-house counsel for each of the nineteen defendants as well as for Wi–LAN. Wi–LAN has also agreed to place further restrictions on its own in-house counsel by way of a unilateral "Prosecution Bar" which precludes access to (i) defendants' source code and other technical documents describing the structure and operation of defendants' products, (ii) defendants' research and development activities, and (iii) defendants' business plans and strategies, including plans and strategies for its products and intellectual property. The "Prosecution Bar" prevents Wi–LAN employees, officers, directors, in-house

counsel, experts or consultants who personally receive any material designated "Attorneys' Eyes Only" from using that information in the prosecution of patents. Wi–LAN represents to the court that it has agreed to these restrictions to help facilitate entry of a protective order and to address defendants' concern that such information could potentially be used, even inadvertently, to further strengthen Wi–LAN's intellectual property position with respect to the defendants. Under Wi–LAN's current organizational structure, Wi–LAN's in-house attorneys managing the litigation are also involved in the prosecution of its patent applications. The "Prosecution Bar," therefore, takes away Wi–LAN's in-house counsel's access to defendants' documents relating to their research and development efforts, business plans and strategies, and other documents describing the structure and operation of the defendants' products.

Wi–LAN neither contends, nor do defendants admit that defendants' in-house counsel is involved in the prosecution of patent applications. A bi-lateral "Prosecution Bar," therefore, would allow defendants' in-house counsel more access to Wi–LAN's confidential information than Wi–LAN's in-house counsel has to defendants' confidential information. In an effort for reciprocity, Wi–LAN attempts to limit what confidential information defendants' in-house counsel may have access to by requesting a provision whereby documents labeled "Attorneys' Eyes Only" are further subjected to an "Employee Bar."[1] The "Employee Bar" provision concerns whether defendants' in-house attorneys may have access to Wi–LAN's documents relating to Wi–LAN's ongoing research and development and its current and future business plans and strategies. The parties are unable to agree on the inclusion of the "Employee Bar" provision in the Protective Order and have looked to the Court for resolution.

[1]     Plaintiff's "Employee Bar" provision provides:
7. "ATTORNEYS' EYES ONLY-oSUBJECT TO EMPLOYEE BAR" OR "SUBJECT TO PROSECUTION BAR": these designations may be used only for ATTORNEYS' EYES ONLY information, documents, and things the Designating Party believes in good faith would create a substantial risk of serious injury if known to in-house attorneys or other employees of a Receiving Party, including, but not limited to, among the following categories of documents:
(a) a Designating Party's source code and other technical documents describing the

structure and operation of the Designating Party's products;
(b) a Designating Party's research and development activities; and
(c) a Designating party's business planning, development, and strategy documents.
These designations, however, shall not be used for a Designating Party's sales records regarding its products, license agreements or related communications with parties to the agreements. In addition, the "ATTORNEYS' EYES ONLY—SUBJECT TO EMPLOYEE BAR" designation shall not be used for any document created prior to January 1, 2006.'
Proposed Order of Plaintiff, Joint Mtn, Dkt. No. 322, Ex. 6, at 3.

## II. Legal Standard

**\*2** Rule 26(c) of the Federal Rules of Civil Procedure authorizes a district court to protect parties from "undue burden or expense" in discovery by ordering certain trade secret or other confidential information "not be disclosed or be disclosed in a designated way." *See* Fed.R.Civ.P. 26(c). In determining whether to issue a protective order barring one party's attorney access to information, the Court must consider the risk and potential danger of "inadvertent or accidental disclosure," and weigh that risk against the potential burden and impairment that the protective order may have on the other parties' ability to prosecute or defend against its claims. *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984).

In balancing the aforementioned considerations, the Court must evaluate the facts on a case by case basis, focusing specifically on the "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *U.S. Steel Corp.,* 730 F.2d at 1468. Factors that may be considered in the balancing include: (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the risk and potential danger of disclosure and (3) the hardship and prejudice imposed by the restriction. *Infosint S.A. v. H. Lundbeck A.S.,* 2007 WL 1467784, 2 (S.D.N.Y.2007); *see also Intel Corp. v. Via Technologies, Inc.,* 198 F.R.D. 525, 528–29 (N.D.Cal.2000) (finding that in absence of evidence indicating actual prejudice, the movant failed to show good cause to modify a Protective Order). While no factor is dispositive, "if counsel is a

Wi-Lan, Inc. v. Acer, Inc., Not Reported in F.Supp.2d (2009)

competitive decision maker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present." *S.T. Sales Tech Holdings, LLC. v. Daimler Chrysler Co., LLC,* No. 6:07–CV–346, 2008 WL 5634214, 3 n. 5. (E.D.Tex. Mar.14, 2008). The risk of disclosure is determined by assessing whether "an unacceptable opportunity for inadvertent disclosure" is created by counsel's access to the confidential information. *U.S. Steel Corp.,* 730 F.2d at 1468. The movant bears the burden of demonstrating that good cause exists for including its proposed restriction. *See In Re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir.1998).

### III. Analysis

The Court finds that Wi–LAN has not met its burden to demonstrate that good cause exists for its proposed "Employee Bar" restriction. Wi–LAN has failed to show that defendants' in-house counsel are "competitive decision makers." Further, it has not specifically demonstrated any potential harm that would result from not including the "Employee Bar" provision in the Protective Order. These findings counsel the Court to not include the "Employee Bar" restriction in the Protective Order. Wi–LAN's proposed "Employee Bar" provision is not prejudicial to defendants' ability to litigate this case even though it may cause inconvenience. The absence of this factor is insufficient to outweigh the other findings.

### 1. Competitive Decision Makers

**\*3** The Federal Circuit has stated that a "competitive decision maker" refers to counsel's "activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.." *U.S. Steel Corp.,* 730 F.2d at 1468, n. 3. Wi–LAN argues that defendants' in-house counsel are "competitive decision makers" because of their role in managing the defense and settlement of Wi–LAN's intellectual property claims in this litigation, and because "it is their job to see that the company is successful in competing with Wi–LAN regarding intellectual property rights." Joint Motion at 8. Wi–LAN further analogizes its position as a non-practicing entity with the situation in *S.T. Sales* where a party which manufactured and sold products was found to be a competitor of a non-practicing entity. This argument is unpersuasive.

In *S.T. Sales,* the counsel in question had an expansive role in many of the business owner's other business ventures which extended well-beyond the typical role of counsel, even counsel who might work with an entity for years. *Id.* at 5. The counsel in question had served as a director, outside counsel and in-house counsel in companies whose business models revolved around the acquisition, enforcement, through litigation, and licensing of patents. *Id.* In *S.T. Sales,* the court closely analyzed the counsel's "activities, association, and relationship with [the] client" and concluded that he was a "competitive decision maker." The court found important that counsel in question was someone who had sued on similar patents against the same defendants many times before. *Id.* In the current case, however, Wi–LAN has not presented substantive allegations that would rise to the level of the factors before the Court in *S.T. Sales.* Wi–LAN has not alleged that defendants' in house counsel are involved in advising and participating in defendants' decision making to the extent necessary to consider them "competitive decision makers."

In addition, courts have found that a company's sole legal advisor and personnel manger "advising his employer on a gamut of legal issues, including contracts, marketing, and employment" is sufficiently involved with the company to be a "competitive decision maker." *See, e.g., Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1471 (9th Cir.1992). Here, Wi–LAN has not shown defendants' in-house counsel's involvement in anything other than litigation and settlement negotiations. *Brown Bag,* therefore, is also distinguishable from the instant case.

Unlike the situations in *S.T. Sales* and *Brown Bag,* Wi–LAN does not allege that the defendants' in house counsel are involved as directors, in patent prosecution, or that specific individuals are extensively involved in enforcing and licensing patents. Wi–LAN has neither produced affidavits nor put forward any other evidence indicating that any of defendants' in-house counsel has extensive involvement in decision making. Instead, Wi–LAN simply argues that because in-house counsel may be involved in managing and settling this case, they are "competitive decision makers." Because Wi–LAN has not specifically addressed the factual circumstances surrounding each of defendants' individual counsel's activities, association, and relationship with defendants, this factor counsels against inclusion of Wi–LAN's proposed "Employee Bar".

### 2. Potential for Harm and Risks of Disclosure

USAP044

**\*4** Next the Court addresses the potential for harm and risks of disclosure. Wi–LAN has not specifically identified any of defendants' in-house counsel that pose a risk of inadvertent disclosure. Instead, Wi–LAN has broadly identified the harm from disclosure of confidential material and argued that the risk of disclosure outweighs defendants' need for confidential information. Wi–LAN argues that defendants must rely more heavily on the advice and understanding of their in-house counsel in making competitive decisions because the in-house counsel better understand the legal and financial motivations underlying Wi–LAN's decision making. Joint Motion at 12. Such a conclusory argument will not carry the day. Nothing before the Court suggests defendants' in-house counsel plays an imperative role in defendants' business strategies. There is no allegation of involvement in either patent prosecution, research, product development, or other significant business decisions. Wi–LAN, therefore, has failed to specifically show sufficient harm that would result from not including its proposed "Employee Bar" provision in the Protective Order.

Wi–LAN relies extensively on a passage from the *Intel* opinion, where the court denied in-house counsel access to certain documents in part because it would put in-house counsel "in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information." *Intel Corp.,* 198 F.R.D. at 531. The *Intel* court, however, found that in-house counsel's extensive involvement in licensing made counsel a "competitive decision maker," "involved in types of decision making that create an unacceptable risk of disclosure." *Id.* at 530. As discussed above, here, the Court finds that Wi–LAN has not been able to show that defendants' in-house counsel are "competitive decision makers" or show that their involvement in specific decisions creates an unacceptable risk of disclosure.

Wi–LAN also compares the risk of inadvertent disclosure in this case to the potential risk in *Brown Bag,* where the Ninth Circuit found that a protective order was properly issued. *Brown Bag,* however, is also distinguishable as almost a year into that suit, Brown Bag's retained counsel withdrew and was replaced by in-house counsel necessitating further restrictions on confidential information. *Brown Bag,* 960 F.2d at 1469. The instant case does not present circumstances similar to *Brown Bag* that would merit inclusion of the "Employee Bar" provision.

The Court finds that Wi–LAN's broad and conclusory suggestion that the harm from inadvertent disclosure of

confidential material necessitates inclusion of the "Employee Bar" provision is insufficient to show the requisite clearly defined, particular, and specific demonstration of the risk of harm. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). This consideration, therefore, also counsels against inclusion of Wi–LAN's proposed "Employee Bar."

### 3. Prejudice to Defendants' In–House Counsel's Ability to Litigate this Case

**\*5** Defendants have alleged that inclusion of the "Employee Bar" would impede their ability to litigate this case. They contend that "in addition to issues concerning the alleged infringement, invalidity and unenforceability of the patents-in-suit, numerous other legal and factual issues will be litigated. These issues would include technical standards, corporate conduct in standards-setting organizations, and corporate promises to license on fair, reasonable and non-discriminatory ("FRAND") terms." Joint Motion at 27. Defendants contend that the "Employee Bar" would hinder their case on these relevant issues. However, in order to prevail on this factor, defendants must show that the protective order would actually prejudice the presentation of their case, not merely increase the difficulty of managing the litigation. *Intel Corp.,* 198 F.R.D. at 528. As Wi–LAN has pointed out, defendants are represented by competent counsel capable of handling the technical nature of the case and have not been presented with any other extenuating circumstances by which their ability to manage the case has been prejudiced. Joint Motion at 14. While defendants have described the inconvenience that adopting plaintiff's proposed provision would have on managing their case, they have failed to show any potential prejudice. *Intel Corp.,* 198 F.R.D. at 529. This consideration, therefore, only slightly favors the inclusion of Wi–LAN's proposed "Employee Bar."

### IV. Conclusion

Wi–LAN has neither identified defendants' particular in-house counsel that pose a risk of disclosure nor demonstrated how defendants' in-house counsel could be considered "competitive decision makers." It is not enough that defendants have failed to show prejudice by inclusion of the "Employee Bar." The Court finds, therefore, Wi–LAN has not met its burden of showing that good cause exists for the inclusion of its proposed "Employee Bar" provision. There is no need to impose further restrictions on discovery at this time. The Court, therefore, adopts defendants' proposed Protective Order.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1766143

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FEDERAL TRADE COMMISSION,

          Plaintiff,                   Case No. 14-cv-5151

       v.

ABBVIE INC. et al.,

          Defendants.

**PROTECTIVE ORDER**

    Pursuant to Fed. R. Civ. P. 26(c), the parties to the above-captioned case and any other matters subsequently consolidated with this case (the "Litigation"), through their respective counsel, agree that the terms and conditions of this Protective Order (the "Order") shall govern the production and handling of all documents, items, or other information exchanged by the parties or non-parties in the Litigation (including, without limitation, responses to requests for production, interrogatories, requests for admissions, pleadings, exhibits, and deposition or other testimony), regardless of the medium or manner in which any such materials are generated, stored, or maintained.  This includes any material produced, filed, or served by any party or non-party during discovery in this Litigation or any information included in any such material.  The Court finds that good cause exists for entry of a protective order in this Litigation to prevent unauthorized disclosure and use of the parties' trade secrets and other confidential information during and after the course of the Litigation.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    **Persons/Entities Covered**  This Order is binding upon all current and future parties to this Litigation, including their respective corporate parents, subsidiaries, affiliates,

successors or assigns, and their respective counsel, agents, representatives, officers and employees and any others set forth in this Order. A non-party that responds to any discovery request, or otherwise participates, in this Litigation may avail itself of, and agree to be bound by, the terms and conditions of this Order. When conducting discovery from non-parties, the parties to this Litigation shall attach a copy of this Order to any discovery request.

      2.    **Designation of Materials**  Any party or non-party responding to discovery requests or providing materials in connection with this Litigation ("Producing Entity") may designate all, or any part, of a document, discovery response, deposition, or other material as Confidential Material or Highly Confidential Material (defined below) based on a good faith belief that such materials qualify for that designation under the terms of this section:

      (a)    "Confidential Material" shall mean any information, testimony, or tangible things obtained during discovery that reveals confidential research, analysis, development, or commercial or business information that is commercially sensitive, that is maintained as confidential in the normal course of business and has not been released into the public domain, and that is entitled to protection under Fed. R. Civ. P. 26(c); personal information that is protected from disclosure by statute, regulation, or is otherwise entitled to protection from public disclosure; and any other information for which a good faith claim of need of protection can be made under the Federal Rules of Civil Procedure and/or applicable law.

      (b)    "Highly Confidential Material" shall mean any Confidential Material that, if disclosed to another party or non-party, is likely to create a substantial risk of significant competitive or commercial disadvantage. Highly Confidential Material includes, but is not limited to: trade secrets; highly sensitive and non-public research or analysis; customer information; current (not more than five (5) years old as of January 1 of the year of production)

2

financial, marketing, or strategic business planning information; current (not more than five (5) years old as of January 1 of the year of production) or any future pricing information; information relating to research, development, testing of, or plans for, existing or proposed future products; information relating to the processes, apparatus, or analytical techniques used by a party or non-party in its present or proposed commercial production of such products; information relating to pending or abandoned patent applications which have not been made available to the public; personnel files; or communications regarding any Highly Confidential Material.

   (c) Information designated as Confidential Material or Highly Confidential Material shall be considered "trade secrets and commercial or financial information" that is "privileged or confidential" under 5 U.S.C. § 552(b)(4) for the purpose of the Freedom of Information Act.

   (d) Any document produced by a Producing Entity in this Litigation may be designated as Confidential Material by marking it "CONFIDENTIAL" on the face of the document at the time of production. Any document produced by a Producing Entity in this Litigation may be designated as Highly Confidential Material by marking it "HIGHLY CONFIDENTIAL" on the face of the document at the time of production. A Producing Entity may also designate electronic documents and other non-paper media as Confidential Material or Highly Confidential Material, as appropriate, by noting such designation in an accompanying cover letter, including the appropriate confidentiality designation in the load file provided with the electronic production, including the appropriate confidentiality designation in the name of the file(s) provided with the electronic production, or using any other means that reasonably notifies the receiving party of the designation.

3

(e)     Testimony provided in this Litigation may be designated as Confidential

Material or as Highly Confidential Material by a Producing Entity if the testimony concerns or

relates to that party's or non-party's Confidential Material or Highly Confidential Material.  The

person desiring to designate any portion of testimony as Confidential Material or Highly

Confidential Material shall do so by so stating orally on the record on the day that the testimony

is being given, either personally or through counsel.  If any person makes such oral designation,

the confidential portions of the deposition shall be taken only in the presence of persons entitled

to access to such information under this Order. Additionally, a Producing Entity may designate

any or all portions of the transcript and/or video of any deposition (or of any other testimony) as

containing Confidential Material or Highly Confidential Material in accordance with this Order

by notifying all other parties in writing, within thirty (30) days of receipt of the transcript and/or

video that it contains Confidential Material or Highly Confidential Material and, if appropriate,

designating the specific pages and/or lines as containing Confidential Material or Highly

Confidential Material.  All transcripts and/or videos shall be treated as Highly Confidential

Material and subject to this Order until thirty (30) days after a final, official (non-draft) transcript

or video of the deposition (or other testimony) is received.  Any portion of any deposition

testimony that is not designated as Confidential Material or Highly Confidential Material in

accordance with this paragraph, within thirty (30) days after a final, official (non-draft) transcript

and/or video of the deposition (or other testimony) is received shall not be entitled to the

protections afforded under this Order, except upon a showing of good cause.

(f)     Any document produced (or material containing information from a

document produced) as well as all transcripts of any investigational hearings during the

precomplaint investigation by the Federal Trade Commission ("FTC") (the "Investigatory

Material") shall be treated as Highly Confidential Material under this Order, notwithstanding any designation or lack thereof on the documents as originally produced, unless either the original source of the document agrees or the Court orders otherwise.  In any event, such materials remain subject to the confidentiality requirements of the FTC's Rules of Practice and any other legal obligation imposed upon the Commission.  If a non-party which has produced documents to the FTC has requested that its identity not be revealed, its identity shall be kept Highly Confidential, unless such non-party agrees or the Court orders otherwise; provided, however, that the FTC shall provide outside counsel at the time the documents are produced with a list of those non-parties who have requested confidential treatment for their identities and whose Highly Confidential Materials are disclosed to counsel under this Order, and shall identify on that list the specific documents produced by each such non-party.

       (g)    Any document produced (or material containing information from a document produced), any deposition transcripts or exhibits, any expert reports, any filings, and other materials from underlying patent litigations involving any of the parties in this Litigation, that were designated therein as confidential or highly confidential shall be treated as Highly Confidential Material under this Order, unless the original source of the document agrees to a different designation, the document is now public, or the Court orders otherwise. Any Producing Entity who has designated material Confidential or Highly Confidential may change or remove that designation by notifying all counsel of record in this Litigation in writing.

       (h)    Notwithstanding any of the foregoing, information shall be presumed nonconfidential material under this Order if it is in the public domain, is already known to a party through proper means and on a non-confidential basis, or is or becomes available to a party from a source rightfully in possession of such information on a nonconfidential basis.

5

**USAP051**

3.      **Individuals to Whom Confidential Material May Be Disclosed** Unless otherwise ordered by the Court or permitted in writing by a Producing Entity, Confidential Material may be used only in connection with this Litigation, and disclosure of Confidential Material may be made only to:

(a)      The Court and court personnel, including assistants, clerks, law clerks, and other support staff (this category hereinafter referred to as "Court").

(b)      Attorneys for a party who are working on this Litigation and their employed or retained secretaries, paralegals, legal assistants, and support services (including, without limitation, copy services, jury consultants, interpreters, translators, document management services, graphics services, and similar professional services) (this category hereinafter referred to as "Attorneys"). Attorneys shall include in-house counsel actively involved in the prosecution or defense of this Litigation, provided that they have executed the agreement annexed hereto as Exhibit A ("In-House Counsel").

(c)      FTC personnel, including FTC Commissioners, as well as Commission attorneys, employees, and law clerks who are actively working on this Litigation ("FTC Personnel").

(d)      Court reporters, court videographers, and similar transcription services and their support staff providing services in court or at depositions for the purpose of assisting the Court in this Litigation (this category hereinafter referred to as "Court Reporters").

(e)      Any expert or consultant (including all non-party personnel and support staff assisting such expert or consultant, but not the entity itself by which such expert or consultant and assisting personnel are employed) who is retained by or for the benefit of any of the parties in this Litigation to assist counsel in this Litigation (this category hereinafter referred

6

to as "Experts"), provided that the expert or consultant has executed the agreement annexed hereto as Exhibit A.

      (f)    Any mediators engaged by the parties or appointed by the Court, and their support staff ("Mediators").

      (g)    Any person who Attorneys have a good faith basis to believe authored or previously received the material.

      (h)    Any person who (i) has or had an authorized right of access to the material and (ii) has signed the agreement annexed hereto as Exhibit A.

      (i)    The Producing Entity's current directors, officers, or employees.

      (j)    Any person who has been designated as a Rule 30(b)(6) witness by the Producing Entity.

      (k)    During the conduct of hearings or depositions, witnesses in the Litigation to whom disclosure is reasonably necessary and who have signed the agreement annexed hereto as Exhibit A (this category hereinafter referred to as "Witnesses").

      (l)    Any person other than those listed in this section for whom a party requests permission to disclose Confidential Material by providing counsel for the Producing Entity with advance written notice, via electronic mail/PDF, or hand delivery, at least four (4) business days before any disclosure. Any request shall state the specific material to be disclosed and the identity of the person to whom it will be disclosed. The Producing Entity shall respond within four (4) business days of its receipt of such written request. A failure to respond within such time shall constitute consent to the request. If the Producing Entity objects to the disclosure, the party seeking disclosure shall not make the disclosure unless authorized to do so by the Court or pursuant to the procedures described in paragraph 7.

7

USAP053

(m)     Any other person the Providing Entity agrees to in writing or by Order of the Court.

4.     **Individuals to Whom Highly Confidential Material May Be Disclosed** Unless otherwise ordered by the Court or permitted in writing by the Producing Entity, Highly Confidential Material may be used only in connection with this Litigation, and disclosure of Highly Confidential Material may be made only to:

(a)     The Court (as defined in paragraph 3(a) above).

(b)     Attorneys, except that disclosure may be made to In-House Counsel only on the following conditions: (i) access will be available to two (2) designated In-House Counsel for each party, who are the in-house legal representatives with primary responsibility for managing this Litigation, do not have a material role in competitive decision-making (except that with respect to Besins, such person(s) may have a material role in competitive decision-making with respect to products other than testosterone-based products or dyslipidemia products), and did not have any direct personal involvement in the prosecution of U.S. Patent No. 6,503,894 (the "'894 Patent") and any continuing patent applications claiming priority thereto, the decisions whether to file a lawsuit against Perrigo or Teva for infringement of the '894 Patent in either 2009 or 2011, the filing of citizen petition numbers FDA-2010-P-0196 and FDA-2011-P-0610 and any submissions or supplements in support thereof, or the negotiation or execution of the agreements referenced in paragraphs 116, 117, and 136 of the complaint in this action; (ii) each In-House Counsel must execute the Agreement To Be Bound By Protective Order annexed hereto as Exhibit A, and the party providing access to Highly Confidential Material must serve the executed Exhibit A on the Producing Entity at least five (5) days before each In-House Counsel first receives access to Highly Confidential Material; and (iii) if a Producing Entity

8

gives written notice that it objects to disclosure of its Highly Confidential Material to a specific

individual In-House Counsel, within two (2) days of receiving the executed Exhibit A, then no

disclosure to that specific individual In-House Counsel shall be made until after the objection is

resolved either by agreement of the parties or by Court Order.

      (c)    FTC Personnel (as defined in paragraph 3(c) above).

      (d)    Court Reporters (as defined in paragraph 3(d) above).

      (e)    Experts (as defined in paragraph 3(e) above, and subject to all of the

restrictions and conditions set forth in paragraph 3(e), including the requirement that the expert

or consultant execute the agreement annexed hereto as Exhibit A).

      (f)    Mediators (as defined in paragraph 3(f) above).

      (g)    Any person who has been designated as a Rule 30(b)(6) witness by the

Producing Entity.

      (h)    Witnesses (as defined in Paragraph 3(k) above); provided, however, that

such disclosure shall only be made to a witness:

         (1)    who is a current employee of the Producing Entity and who has or

had an authorized right of access to the material in the ordinary course of that employment;

         (2)    who is a former employee of the Producing Entity and who

originally had an authorized right of access to the material in the ordinary course of that

employment; or

         (3)    who is an author, addressee, or recipient of the material in

question, or if there are other indicia that the witness has seen the document previously.

      (i)    Any party may request permission to disclose materials designated as

Highly Confidential or otherwise covered by this Order to a person other than those listed in this

9

section by providing counsel for the Producing Entity with advance written notice, via electronic

mail/PDF, at least three (3) business days before any disclosure. Any request shall state the

specific material to be disclosed and the identity of the person to whom it will be disclosed.

Counsel for the Producing Entity shall respond in writing, via electronic mail/PDF, within two

(2) business days of its receipt of such written request. A failure to respond within such time

shall constitute consent to the request. If the Producing Entity objects to the disclosure, the party

seeking disclosure shall not make the disclosure unless authorized to do so by the Court or

pursuant to the procedures described in paragraph 7.

(j) Any other person the Providing Entity agrees to in writing or by Order of

the Court.

5. **Handling of Confidential Material and Highly Confidential Material** All

material designated Confidential or Highly Confidential shall remain in the possession of the

Attorneys who receive such material through discovery in this Litigation, and they shall not

release or disclose the nature, substance, or contents thereof, except that copies of such materials

may be made for the use of those assisting the Attorneys to whom disclosure may be made under

paragraphs 3 and 4 above, and copies may be submitted to the Court under seal as necessary.

Persons who have been shown Confidential Material or Highly Confidential Material pursuant to

this Order and have not otherwise obtained or maintained the material in the normal course of

business shall not retain copies of that material.

6. **Inadvertent Failure to Designate as to Confidentiality** In the event that a

Producing Entity produces a confidential document, paper, or thing without having previously

marked it Confidential or Highly Confidential, the party in receipt of that material (the

"Receiving Party") shall, upon a written request from the Producing Entity, treat and preserve

10

such document, paper, or thing in accordance with the confidentiality designation that the

Producing Entity states should have been affixed to it. The Producing Entity must re-produce the

document, paper, or thing with the appropriate confidentiality designation, unless doing so would

not be feasible (as, for example, in the case of a final deposition transcript). Each Receiving

Party will then replace the incorrectly designated materials with the newly designated materials

and will destroy the incorrectly designated materials. The inadvertent failure of a party or person

to designate a document as Confidential or Highly Confidential at the time of production shall

not be deemed a waiver of the protections afforded by this Order, either as to specific

information in the document or as to any other information relating thereto or on the same or

related subject matter. Nevertheless, no party shall be deemed to have violated this Order if, prior

to notification of any later designation, such material has been disclosed or used in a manner

inconsistent with the later designation. Once a designation is made, however, the relevant

documents or materials shall be treated as Confidential or Highly Confidential in accordance

with this Order. If material inadvertently not designated is, at the time of the later designation,

already filed with a court on the public record, the party or person that failed to make the

designation shall move for appropriate relief.

      7.    **<u>Challenge to a Confidentiality Designation</u>**

      (a)    A Receiving Party shall not be obligated to challenge the propriety of a

Confidential or Highly Confidential designation at the time the document is received.  A

Receiving Party may challenge a confidentiality designation or insufficient designation at any

time, and a Receiving Party's failure to have made such a challenge at any previous time,

including after acceptance or receipt of material with a confidentiality designation, shall not

prejudice its right to do so.

11

(b)      A Receiving Party wishing to challenge a Confidential or Highly Confidential designation assigned by the Producing Entity shall give notice by written communication of such challenge to counsel for the Producing Entity, specifying Bates number(s) or other form of identification (if Bates number(s) are not on such materials) with the specific reasons that party believes the materials should not be subject to the designation.

(c)      Within seven (7) days of receipt of written notice that the Receiving Party objects to the confidentiality designation, counsel for the Producing Entity shall meet and confer with counsel for the Receiving Party to attempt to resolve the designation dispute.

(d)      If no resolution is reached, the Receiving Party may move the Court for an order removing the challenged material from the restrictions of this Order, and any papers filed in support of or in opposition to this motion shall, to the extent necessary, be filed under seal to preserve the claimed confidentiality of the material.  Upon the filing of such a motion, the burden rests upon the Producing Entity to demonstrate the propriety of the confidentiality designation.

(e)      Until the parties or the Court resolves a challenge to the designation of Confidential Material or Highly Confidential Material, the asserted designation shall remain in full force and effect.

8.    **Filing Confidential Material and Highly Confidential Material**

No Confidential or Highly Confidential materials, including any documents, pleadings, motions, transcripts, or other filings that disclose the contents or substance thereof, shall be filed in the public record of the Litigation. All papers filed with the Court that contain or make reference to material designated as Confidential or Highly Confidential shall be filed in a sealed envelope and kept under seal by the Clerk of this Court until (i) further written order of the Court specifically directing that the material be unsealed or (ii) unsealed pursuant to the procedures

USAP058

specified in Local Rule of Civil Procedure 5.1.5. To facilitate compliance with this Order by the

Clerk's office, material filed under these designations shall be contained in a sealed envelope

bearing the appropriate designation on its front face, of either "CONFIDENTIAL – FILED

UNDER SEAL" or "HIGHLY CONFIDENTIAL – FILED UNDER SEAL." Any Confidential

Material or Highly Confidential Material will be deemed timely filed when (i) a notice of filing

under seal is filed with the Clerk of Court; (ii) a public, redacted version of the brief or

submission is filed via ECF; and (iii) an electronic version of the complete, unredacted brief or

submission (including any attachments and exhibits) is served upon counsel of record for all

parties via electronic mail, PDF, or other electronic transfer. On the following business day, the

materials to be filed under seal may be lodged with the Court via overnight delivery or hand

delivery.

        9.      **Use of Confidential Material and Highly Confidential Material**

        (a)      All documents produced in discovery, and all materials designated

Confidential and Highly Confidential, shall be used solely in furtherance of the prosecution,

defense, or attempted settlement of this Litigation, shall not be used at any time for any other

purpose whatsoever, and shall not be disclosed to or made accessible to any person except as

specifically permitted by this Order.  All materials designated Confidential or Highly

Confidential must be stored and maintained by the Receiving Party in a manner no less secure

than a Receiving Party would store and maintain its own confidential material or that of its

clients.

        (b)      Notwithstanding any contrary provision in this Order, a party is permitted

to disclose Confidential Material and Highly Confidential Material to the extent required by a

valid subpoena or other valid legal process, provided that the procedures in this stipulation are

13

followed. The party that receives a valid subpoena or other valid legal process (the "Subpoenaed Party") must provide the Producing Entity with written notice of such subpoena or other legal process, via electronic mail/PDF, within five (5) business days of the date on which counsel of record in this Litigation receives the subpoena or a lesser period if ordered by a court (the "Response Period"), in order to afford the Producing Entity an opportunity to object. The Subpoenaed Party shall also inform the persons seeking discovery in writing (with copy to the Producing Entity) that providing the information may be a violation of this Order. After receipt of the notices specified by this Paragraph, the Producing Entity shall be responsible for obtaining any order it believes necessary to prevent disclosure of the confidential information that has been subpoenaed or requested. If the Producing Entity does not move to quash and/or for a protective order within the time allowed for production by the subpoena or request (or within such times as a court may direct or as may be agreed upon by the parties) or notifies the Subpoenaed Party in writing that it will not file a motion, the Subpoenaed Party may commence production in response to the subpoena or request. The Subpoenaed Party will not produce any of the Confidential Material or Highly Confidential Material while a Producing Entity's motion to quash and/or for a protective order is pending, or while an appeal from or request for appellate review of such motion is pending, unless a court orders production of the confidential material that is subject to this Order. Production of any confidential material pursuant to a court order shall not be deemed a violation of this Order. Nothing herein shall be construed as requiring the Subpoenaed Party to subject itself to any penalties for non-compliance with any subpoena, access request, or legal process or to seek any relief from the Court.

(c)    Nothing in this Order shall prevent a party to this Litigation from using its own Confidential Material or Highly Confidential Material.

14

(d)      If any Confidential Material or Highly Confidential material is filed in the public record by the Producing Entity, such public filing shall constitute the Producing Entity's waiver of the designation of that material for its use by any party in this Litigation.

(e)      Nothing in this Order shall be construed to prejudice any party's right to use Confidential Material or Highly Confidential Material in any hearing or other pre-trial proceeding before the Court, or any party's right to challenge any such use. Prior to disclosure of Confidential Material or Highly Confidential Material in any hearing or other pre-trial proceeding before the Court, the parties agree to meet and confer to negotiate a proposal for the Court addressing the procedures for treatment of such Confidential Material or Highly Confidential Material during the hearing or other pre-trial proceeding. The Producing Entity reserves the right to seek additional relief from the Court with respect to Confidential Material or Highly Confidential Material that may be presented in any hearing or other pre-trial proceeding before the Court.

(f)      Further procedures for the handling of Confidential Material and Highly Confidential Material at trial shall be addressed in a final pretrial order.  The parties shall meet and confer to negotiate a proposal for Court approval addressing the treatment of material previously designated Confidential or Highly Confidential prior to the entry of a final pretrial order.

(g)      Nothing in this Order shall prevent the FTC from disclosing and using Confidential Material and Highly Confidential Material, subject to taking appropriate steps to preserve confidentiality, to the extent necessary to comply with Sections 6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f) and 57b-2, or any other legal obligation imposed upon the Commission,

15

provided that any disclosure to any state or foreign law enforcement agency shall not be made

absent a further order of this Court.

10.   **Unauthorized Disclosure of Confidential or Highly Confidential Information**

(a)   If any person subject to this Order becomes aware that he or she or any

other person has, either intentionally or inadvertently, disclosed Confidential Material or Highly

Confidential Material to someone not authorized to receive such material under this Order,

counsel for the party involved shall use his or her best efforts to obtain the return or destruction

of all improperly disseminated copies of such materials (including hardcopies and electronic

versions) and to prevent any further improper dissemination of the same.  If the materials are not

returned or destroyed, the party shall also notify the Producing Entity's counsel in writing of the

unauthorized disclosure and, if the Producing Entity so requests, provide a copy of this Order to

the unauthorized person and request such person to sign the agreement annexed hereto as Exhibit

A.

(b)   The Court has jurisdiction to enforce this Order and to grant relief, as

authorized by law or in equity, for any violations thereof.

11.   **Inadvertent Production or Disclosure of Priveleged Documents**

(a)   Consistent with Federal Rule of Evidence 502(b), the inadvertent

production of any document, by any party or person, that such party or person later claims should

have been withheld on grounds of a privilege (an " Inadvertently Produced Privileged

Document"), including but not limited to the attorney-client privilege, the work product doctrine,

the joint defense or common interest doctrine, or other applicable privilege will not be deemed,

16

in itself, to waive any privilege or work product protection either as to specific information in the

Inadvertently Produced Privileged Document or as to any other information relating thereto or on

the same or related subject matters if (i) the disclosure was inadvertent, (ii) the holder of the

privilege or protection took reasonable steps to prevent disclosure, and (iii) the holder promptly

took reasonable steps to rectify the error, including (if applicable) following Federal Rule of

Civil Procedure 26(b)(5)(B). A party or person claiming privilege or other protection for an

Inadvertently Produced Privileged Document must notify in writing any party that received the

document of the claim and the basis for it. Treatment of such material shall be in accordance

with Federal Rule of Civil Procedure 26(b)(5)(B).

       (b)     If a Receiving Party learns that it has disclosed privileged material to any

person or in any circumstance not authorized under this Order, the Receiving Party shall, as soon

as is practicable: (a) notify in writing the Producing Entity of the unauthorized disclosure; (b) use

its best efforts to retrieve all copies of the privileged materials (including any hardcopies or

electronic versions); and (c) inform the person or persons to whom unauthorized disclosures

were made, to the extent the person or persons are identifiable, of all the terms of this Order.

       (c)     If the substance of any materials that are subsequently determined by the

Court to be privileged was discussed or introduced in a deposition or court filing before

discovery or notification of the disclosure, any party may seek an order from the Court that such

testimony or discussion be stricken and not be used for any purpose.

17

12.    **Non-Parties**

(a)    If information sought in a discovery request implicates a Producing Party's obligation to a non-party not to disclose such information, the following procedures shall be followed:

(1)    The Producing Party shall timely serve a written objection to the production of such information on the basis of its obligation to a non-party not to disclose the information.

(2)    The Producing Party shall, no later than the date on which written objections are served under section 12(a)(i), provide the non-party written notice of the pending request and a copy of this Order.

(3)    If the non-party does not object to the disclosure within fourteen (14) days from which the written notice of the pending request was sent by the party or such additional time as may be required by the Producing Party's obligation to the non-party, the Producing Party shall produce the materials subject to any appropriate designations under the terms of this Order.

(4)    If the non-party objects to the disclosure, the non-party shall timely seek a protective order or other appropriate relief from the Court.  Should the non-party timely seek relief, no disclosure shall be made or required unless disclosure is ordered by the Court.

18

(5)     Nothing in this Order shall be deemed to prohibit, hinder, or otherwise affect any party's or non-party's ability to raise any objections on any basis to requests for discovery.

(6)     Nothing in this Order shall be deemed to require any Producing Party to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court in connection with obligations imposed by a discovery request.

(7)     Notwithstanding the foregoing, if a Party determines that it is unable to comply with the procedures set forth in section 12(a), it will notify the party seeking the discovery at issue, and meet and confer to determine an alternative procedure.

(b)     If any discovery requests are served on a non-party, the party serving the discovery request(s) shall, at the time of service, provide the non-party with a copy of this Order. Documents produced by non-parties in this Litigation that consist of or contain portions of documents originally created or generated by a party shall be treated as Highly Confidential until the expiration of a reasonable amount of time (not to exceed thirty (30) days) days after the production. During that period, if any party believes a non-party has produced information which the party believes should be designated as Confidential or Highly Confidential, that party may notify the non-party and other parties of the designation that it believes should apply. The party providing such notification will then be deemed a Producing Entity with respect to such documents and such documents shall be treated as Confidential Material or Highly Confidential Material, as designated by the party.

13.     **Further Application** Nothing in this Order shall preclude any party, or any non-party from whom discovery has been requested, from applying to the Court for additional or different protective provisions with respect to specific material if the need should arise during the

19

Litigation.  The Court shall retain jurisdiction over the parties, and over any person executing an undertaking to be bound by the terms of this Order, during the pendency of the Litigation and for such time thereafter as is needed to carry out the terms of this Order.

     14.   **Reservation of Rights**

     (a)   By designating any material Confidential or Highly Confidential, the parties do not acknowledge that any such material is relevant or admissible in this Litigation.  All parties reserve the right to seek discovery of, or alternatively to resist discovery of, such material in this Litigation.

     (b)   Nothing in this Order shall prohibit a party from using or disclosing publicly available or independently discovered information, unless the party is aware that the information has become public improperly or inadvertently.

     (c)   Nothing in this Order prevents any party from seeking a further order of this Court pursuant to Federal Rule of Civil Procedure 26(c).

     15.   **Modification**  The Court retains the right to allow disclosure of any subject covered by this Order or to modify this Order at any time in the interest of justice.  Furthermore, nothing in this Order shall prejudice the right of the parties to stipulate (subject to Court approval), or to move to amend or modify this Order in the interest of justice.

     16.   **Conclusion of this Litigation**

     (a)   The provisions of this Order will not terminate at the conclusion of this Litigation.  This Order shall remain in full force and effect unless modified, superseded, or terminated by written agreement of the parties or by an order of this Court.

     (b)   Within ninety days (90) days after such time as this Litigation is concluded, whether by final adjudication on the merits from which there remains no right of

20

appeal or by other means, each Receiving Party shall undertake commercially reasonable efforts (i) to return to the Producing Entity or destroy all Confidential Material and Highly Confidential Material (including but not limited to copies in the possession or control of any Expert or employee), and (ii) to certify in writing to the Producing Entity that all such material has been returned or destroyed to the extent practicable.  As to those materials that contain, reflect, incorporate, attach, or reference attorney work product, counsel of record for the parties shall be entitled, without violating this Order, to retain such work product in their files, so long as the terms of this Order will continue to govern any such retained materials.

(c)     In addition, counsel shall be entitled, without violating this Order, to retain pleadings, affidavits, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts (including exhibits), and the trial record (including exhibits) even if such materials contain Confidential Material or Highly Confidential Material, so long as this Order will continue to govern any such retained materials.  The Receiving Party's reasonable efforts shall not require the return or destruction of materials that (i) are stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes; (ii) are located in the email archive system or archived electronic files of departed employees; (iii) are subject to litigation hold obligations; or (iv) are otherwise required by law to be retained. Backup storage media need not be restored for purpose of returning or certifying destruction of materials, but any such materials retained in backup storage media shall continue to be treated in accordance with this Order.

21

USAP067

(d)     Nothing in this Order shall preclude the FTC from complying with the

provisions of Rule 4.12 of the FTC's Rules of Practice, 16 C.F.R. § 4.12, in disposing of

Investigatory Material.

17.     **Notices**  All notice called for by this Order shall be sent by e-mail to the

following counsel at the time of such notice:

For the Federal Trade Commission:

Markus H. Meier
Bradley S. Albert
Patricia M. McDermott
Rebecca L. Egeland
Kara L. Monahan
Peter J. Taylor
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
mmeier@ftc.gov
balbert@ftc.gov
pmcdermott@ftc.gov
regeland@ftc.gov
kmonahan@ftc.gov
ptaylor@ftc.gov

For Abbott Laboratories or AbbVie Inc.:

Jeffrey I. Weinberger
Stuart N. Senator
Adam R. Lawton
Munger, Tolles & Olson LLP
355 S. Grand Ave., 35th Floor
Los Angeles, CA 90071
jeffrey.weinberger@mto.com
stuart.senator@mto.com
adam.lawton@mto.com

For Besins Healthcare, Inc.:

Gregory E. Neppl
Melinda F. Levitt
Foley & Lardner LLP
3000 K Street NW, Suite 500
Washington, DC 20007
gneppl@foley.com
mlevitt@foley.com

IT IS SO ORDERED.

DATED:  May 8, 2015

Harvey Bartle, III
United States District Judge

22

## EXHIBIT A

### AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, _____, am employed by

_____. I acknowledge and certify as follows:

1.     I have read the Protective Order in *Federal Trade Commission v. AbbVie Inc.*,

Case No. 2:14-cv-5151-HB, United States District Court for the Eastern District of Pennsylvania,

and agree to be bound by its terms.

2.     I will not make copies or notes of Confidential Material or Highly Confidential

Material except as necessary to enable me to render assistance in connection with this Litigation.

3.     I will not disclose Confidential Material or Highly Confidential Material to any

person not expressly entitled to receive it under the terms of the Protective Order, and will retain

any such material in a safe place.

4.     I will not use Confidential Material or Highly Confidential Material for any

purpose other than that authorized by the Protective Order.

5.     I will retain all Confidential Material or Highly Confidential Material in my

custody until I have completed my assigned duties, whereupon they will be returned to the party

that provided them to me or destroyed, as provided by the Protective Order.  Such delivery or

destruction shall not relieve me from any of the continuing obligations imposed upon me by the

Protective Order.

6.     I agree to be subject to the continuing jurisdiction of this Court for the sole

purpose of having the terms of the Protective Order enforced.

Date:                                        Signature:

                                             Address:

23

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20−cv−03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

### [PROPOSED] PROTECTIVE ORDER

In the interests of (i) ensuring efficient and prompt resolution of this Action; (ii) facilitating discovery by the Parties litigating this Action; and (iii) protecting confidential information from improper disclosure or use, the Court, upon good cause shown and pursuant to Fed. R. Civ. P. 26(c)(1), ORDERS as follows:

A. <u>Definitions</u>

1.  As used herein:

    (a) "Action" means the above-captioned action pending in this Court, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

    (b) "Confidential Information" means any trade secret or other confidential research, development, or commercial information, as such terms are used in Fed. R. Civ. P. 26(c)(1)(G), or any document, transcript, or other material containing such information that has not been published or otherwise made publicly available. In addition, a Designating Party may designate as Confidential any information or items made publicly available in violation of a court order to keep such information confidential, that the Designating Party believes should receive Confidential

1

treatment.  This includes (i) information copied or extracted, summarized or compiled from Confidential Information, and (ii) testimony, conversations, or presentations that might reveal Confidential Information.

(c) "Competitive Decision-Making" means decision-making relating to a competitor, potential competitor, customer, or distribution partner including decisions regarding contracts, marketing, pricing, product or service development or design, product or service offerings, research and development, mergers and acquisitions, or licensing, acquisition, or enforcement of intellectual property rights.

(d) "Defendant" means Meta Platforms, Inc., and its and their predecessors, divisions, subsidiaries, affiliates, partnerships, successors, and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing, including but not limited to, Instagram and WhatsApp.

(e) "Disclosed" means shown, divulged, revealed, produced, described, transmitted or otherwise communicated, in whole or in part.

(f) "Document" means any document or electronically stored information, as the term is used in Fed. R. Civ. P. 34(a).

(g) "Highly Confidential Information," as defined herein, shall only include Confidential Information that, if disclosed, is likely to cause material and significant harm to a Protected Person.

Highly Confidential Information includes trade secrets, including algorithms and source code; non-public, commercially sensitive customer lists; non-public financial, marketing, or strategic business planning information; current or future non-public information regarding prices, costs, or margins; information relating to research,

2

development, testing of, or plans for existing or proposed future products; evaluation

of the strengths and vulnerabilities of a Protected Person's product offerings,

including non-public pricing and cost information; confidential contractual terms,

proposed contractual terms, or negotiating positions (including internal deliberations

about negotiating positions) taken with respect to Defendant or competitors to

Defendant; information relating to pending or abandoned patent applications that

have not been made available to the public; personnel files; sensitive personally

identifiable information; sensitive health information; and communications that

disclose any Highly Confidential Information.  Highly Confidential Information also

includes information that a Non-Party believes would expose it or new business

ventures with which it is associated to potential retribution or harm if the information

were disclosed to Defendant.  If a Protected Person (i) has produced Investigation

Materials or (ii) is required by subpoena or court order to produce information that

would cause it material and significant competitive or commercial harm, but that

information does not specifically fall into one of the categories of information listed

in this paragraph, upon a compelling showing, it may seek a court order that such

information is Highly Confidential and should be withheld from In-House Counsel,

subject to the exception in paragraph D(1)(d) below.  If a motion is made pursuant to

this paragraph and is related to Investigation Materials, it must be filed co-currently

with its Highly Confidential Designations under paragraph B(2)(a).  If a motion is

made pursuant to this paragraph and is related to a subpoena or court order, it must be

filed no later than the due date to respond to the subpoena or court order.  If a

Protected Person seeks additional protection pursuant to this paragraph from the

USAP072

Court, the materials for which additional protection has been sought will not be provided to other Persons, aside from outside counsel, until the Court has ruled.

(h) "In-House Counsel" means attorneys employed by Defendant for the purpose of rendering legal services, as well as paralegals, secretaries, and clerical and administrative personnel that are employed by Defendant for the purpose of assisting attorneys employed by Defendant for the purpose of rendering legal services.

(i) "Investigation" means the pre-Complaint inquiry by Plaintiff, marked as Federal Trade Commission File No. 191-0134, regarding potential anticompetitive conduct by Defendant.

(j) "Investigation Materials" means non-privileged documents, testimony or other materials that (i) any Non-Party provided to the Federal Trade Commission, either voluntarily or under compulsory process, relating to the Investigation; (ii) constitute any communication between the Federal Trade Commission and any Non-Party relating to and during the Investigation; or (iii) Defendant, or affiliated person or entity, provided to the Federal Trade Commission relating to the Investigation.

(k) "Litigation Materials" means non-privileged documents, testimony, or other materials that (i) any Non-Party provides to any Party, either voluntarily or under compulsory process, in connection with and during the pendency of this Action; (ii) constitute any communication between any Party and any Non-Party in connection with and during the pendency of this Action; (iii) Defendant provides to Plaintiff in connection  with and during the pendency of this Action; and/or (iv) Plaintiff provides to Defendant in connection with and during the pendency of this Action.

(l) "Non-Party" means any Person not named as a Party to this Action.

4

(m) "Outside Counsel of Record" means the attorneys employed by outside law firms

representing Defendant in this proceeding, as well as attorney support staff.

(n) "Party" means the Plaintiff or Defendant in this Action. "Parties" means collectively

Plaintiff and Defendant in this Action.

(o) "Plaintiff" means the U.S. Federal Trade Commission and all of its employees,

agents, and representatives.

(p) "Person" means any natural person, corporate entity, business entity, partnership,

association, joint venture, governmental entity, trust, or other legal entity.

(q) "Protected Person" means any Person (including a Party or Non-Party) that either

voluntarily or under compulsory process, has provided or provides (i) Investigation

Materials in connection with the Investigation, or (ii) Litigation Materials.

**B.** **Designation of Highly Confidential Information and Confidential Information**

1.  Within 5 business days of the Court's entry of this Order, Plaintiff shall send by email,

facsimile, or overnight delivery a copy of this Order to each Non-Party Protected Person

(or, if represented by counsel, the Non-Party Protected Person's counsel) that provided

Investigation Materials to the Federal Trade Commission.

2.  DESIGNATION OF INVESTIGATION MATERIALS AS HIGHLY CONFIDENTIAL

BY PROTECTED PERSONS.  A Protected Person may designate any Investigation

Materials they produced as Highly Confidential pursuant to the following procedures:

(a) Defendant is not required to re-designate Investigation Materials as Confidential or

Highly Confidential: all Investigation Materials produced by Defendant

presumptively shall be treated as Highly Confidential, subject to the Challenge

process described below in Section C, and any further relevant orders or procedures

5

the Court adopts governing the designation and use in this Action of Investigation Materials produced by Defendant (e.g., procedures governing the designation of trial exhibits as Highly Confidential).

(b) Other than Defendant, each Protected Person shall have 60 days after receiving a copy of this Order (the "Designation Period") to designate as Highly Confidential Information any Investigation Materials to the extent the Protected Person determines, in good faith, that the Investigation Materials include Highly Confidential Information, and that such designation is necessary to protect the interests of the Protected Person.  Such Investigation Materials may be so designated, if they have not already been designated, by providing written notice by overnight mail or email and a replacement production to the party to which the Investigation Materials were produced that includes copies of the Investigation Materials stamped with the legend "HIGHLY CONFIDENTIAL," in a manner that will not interfere with legibility, including page numbering, or audibility.  If a Non-Party is unable to submit a replacement production due to burden, it may instead provide written notice by overnight mail or email to the party to which the Investigation Materials were produced that includes detailed designations of every document that includes Highly Confidential Information.

Any document that contains Highly Confidential Information may be designated Highly Confidential Information in its entirety.

(c) Until the expiration of this Designation Period, all Investigation Materials will be treated as Highly Confidential Information in their entirety.

6

Investigation Materials—other than Investigation Materials produced by Defendant—

that are not designated as Highly Confidential by the end of the expiration of this

Designation Period shall be treated as Confidential Information for purposes of this

Order pursuant to the Antitrust Civil Process Act, or any other federal or state statute

or regulation, or under any federal or state court precedent interpreting such statute or

regulation, as well as any information that discloses the substance of the contents of

any Highly Confidential Information or Confidential Information derived from a

document subject to this Order, and any information taken from any portion of such

material.

The identity of a Non-Party submitting such Highly Confidential Information or

Confidential Information shall also be treated as Highly Confidential Information or

Confidential Information for the purposes of this Order; unless or until such a time as

the Non-Party informs a Party that such treatment is not required.

3.  If a Non-Party Protected Person believes that this Order does not adequately protect its

Highly Confidential Information or Confidential Information, it may, within 10 days after

receipt of a copy of this Order, seek additional protection from the Court for the Non-

Party Protected Person's Highly Confidential Information or Confidential Information.  If

a Non-Party Protected Person seeks additional protection from the Court, the

Investigation Materials for which additional protection has been sought will not be

provided to other Persons, aside from outside counsel, until the Court has ruled.

4.   Any production of documents or testimony not designated as Confidential or Highly

Confidential Information will not be deemed a waiver of any future claim of

confidentiality concerning such information if it is later designated as Confidential or

USAP076

Highly Confidential Information.  If at any time before trial of this Action, a Protected Person realizes that it should have designated as Highly Confidential or Confidential any Investigation Materials or Litigation Materials that Person previously produced during discovery in this Action, it may so designate such documents, testimony, or other materials by notifying the Parties in writing and providing a  replacement production to the party to which the Investigation Materials or Litigation Materials were produced that includes copies of the Investigation Materials or Litigation Materials stamped with the legend "HIGHLY CONFIDENTIAL," or "CONFIDENTIAL", in a manner that will not interfere with legibility, including page numbering, or audibility.  The Parties shall thereafter treat the Investigation Materials or Litigation Materials pursuant to the Protected Person's new designation under the terms of this Order.  However, the disclosure of any information for which disclosure was proper when made will not be deemed improper regardless of any such subsequent confidentiality designation.

5. If a Party learns that, by inadvertence or otherwise, it has disclosed a Protected Person's Confidential Information or Highly Confidential Information in any circumstance not authorized under this Order, the Party must immediately (i) notify in writing the Protected Person of the unauthorized disclosure, (ii) use its best efforts to retrieve all unauthorized copies of the disclosed material, (iii) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (iv) request such person or persons acknowledge and agree to be bound by Appendix A.

6. DESIGNATION OF LITIGATION MATERIALS AS HIGHLY CONFIDENTIAL OR CONFIDENTIAL BY PROTECTED PERSONS.  The following procedures govern the process for Protected Persons to designate as Highly Confidential or Confidential any

information that they disclose in this Action after this Order is entered based on a good-faith belief that such materials qualify for that designation under the terms of this Order, including but not limited to information in response to requests under Fed. R. Civ. P. 30, 31, 33, 36, and 45, and documents disclosed in response to Fed. R. Civ. P. 33(d), 34(b)(2) and (c), or 45:

(a) <u>Testimony.</u>  All transcripts of depositions taken in this Action after entry of this Order will be treated as Highly Confidential Information in their entirety for 30 days after the date when a complete and final copy of the transcript has been made available to the deponent (or the deponent's counsel, if applicable).  Within five (5) business days of receipt of the final transcript, the Party who noticed the deposition shall provide the final transcript to the deponent.  Within 30 days following receipt of the final transcript, the deponent may designate as Highly Confidential Information any portion of the deposition transcript, by page(s) and line(s), and any deposition exhibits provided by the deponent or the deponent's employer.  To be effective, such designations must be provided in writing to Plaintiff's and Defendant's counsel.  Any portion of the transcript or exhibits not so designated pursuant to this subparagraph 6(a) shall be treated as Confidential Information, subject to the Challenge process described below in Section C.

When a Party is entitled under this Order to question a deponent about a document or information that has been designated by a different Protected Person as Highly Confidential or Confidential, the Party that asked such questions shall designate as either Highly Confidential or Confidential the portion of the transcript relating to such Highly Confidential or Confidential document or information.

USAP078

(b) <u>Documents.</u>  A Protected Person who designates as Highly Confidential Information

any document that it produces in this Action must stamp or otherwise mark each

document containing said information with the designation "HIGHLY

CONFIDENTIAL" in a manner that will not interfere with legibility, including page

numbering, or audibility.

A Protected Person who designates as Confidential Information any document that it

produces in this Action must stamp or otherwise mark each document containing said

information with the designation "CONFIDENTIAL" in a manner that will not

interfere with legibility, including page numbering, or audibility.

Any document that contains Confidential Information may be designated Confidential

Information in its entirety.  Any document that contains Highly Confidential

Information may be designated Highly Confidential Information in its entirety.

(c) <u>Electronic Documents and Data</u>.  Where a Protected Person produces electronic files

and documents in native electronic format, such electronic files  and documents shall

be designated by the Protected Person for protection under this Order by appending to

the file names or designators information indicating whether the file contains Highly

Confidential Information or Confidential Information, or by any other reasonable

method for appropriately designating such information produced in electronic format,

including by making such designations in reasonably accessible metadata associated

with the files.  Where Highly Confidential Information or Confidential Information is

produced in electronic format on a disk or other medium that contains exclusively

Confidential Information, the "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL"

designation may be placed on the disk or other medium.

10

When electronic files or documents in native form are printed for use at deposition, in a court proceeding, or for provision in printed form to any person described in subparagraph D(2)(g), the Party printing the electronic files or documents shall affix a legend to the printed document saying, "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" and include the production number and designation associated with the native file.

Any electronic file or document that contains Confidential Information may be designated Confidential Information in its entirety. Any electronic file or document that contains Highly Confidential Information may be designated Highly Confidential Information in its entirety.

7.  DESIGNATION OF LITIGATION MATERIALS FROM NON-PARTIES.  In the event that a Party receives a discovery request in this Action to produce a Non-Party's Highly Confidential Information or Confidential Information in its possession, then the Party shall:

   (a) promptly notify in writing the Party seeking the Highly Confidential Information or Confidential Information that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

   (b) promptly notify the Non-Party that its Highly Confidential Information or Confidential Information is being requested and either provide a reasonably specific description of the information or make the information requested available for inspection by the Non-Party; and

   (c) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation and the relevant discovery request(s).

11

8. If the Non-Party fails to seek a protective order from this Court within 14 days of

   receiving the notice and accompanying information, the Non-Party's Highly Confidential

   Information or Confidential Information responsive to the discovery request may be

   produced.  If the Non-Party timely seeks a protective order, its Highly Confidential

   Information or Confidential Information that is subject to the confidentiality agreement

   shall not be produced before a determination by the Court.[1]

9. The terms of this Order are applicable to information produced by a Non-Party in this

   action and designated as Highly Confidential Information or Confidential Information.

   Such information produced by Non-Parties in connection with this litigation is protected

   by the remedies and relief provided by this Order.  Nothing in these provisions should be

   construed as prohibiting a Non-Party from seeking additional protections.

**C.  Challenges to Highly Confidential or Confidential Designation**

1. Any Party who objects to any designation of confidentiality (the "Objecting Party") may

   at any time provide a written notice to the Protected Person who made such designation

   (the "Designating Party") and all Parties to this Action stating with particularity the

   grounds for the objection.  Objections to a confidentiality designation may be made to

   any portion of a document that is designated Confidential or Highly Confidential,

   including any particular statement or information contained within a document.  All

   materials objected to shall continue to be treated as Confidential Information or Highly

   Confidential Information pending resolution of the dispute.  Within 10 days of the

   Objecting Party's written notice, the Objecting Party and the Designating Party shall

---

[1] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this Court.

12

attempt to confer to discuss their respective positions.  If the Objecting Party and Designating Party cannot reach agreement on the objection within 14 days of the Objecting Party's written notice service (or another deadline agreed to by the Objecting Party and the Designating Party), the Objecting Party may address the dispute to this Court by filing a letter motion and/or motion in accordance with applicable rules.  If the Court finds that any portion of the document or statement at issue does not constitute Highly Confidential Information or Confidential Information, the challenged designation shall be considered rescinded with respect to that portion of the document or statement.

**D.** **Disclosure of Highly Confidential Information or Confidential Information**

1. Highly Confidential Information may be disclosed only to the following persons:

   (a) the Court and all persons assisting the Court in this Action, including law clerks, court reporters, and stenographic or clerical personnel;

   (b) U.S. Federal Trade Commission attorneys, paralegals and other professional personnel (including support and IT staff), and agents or independent contractors retained by Plaintiff to assist in this Action whose functions require access to the information;

   (c) Outside Counsel of Record for Defendant, including any attorneys (but not In-House Counsel for the Defendant except as provided in paragraph D(1)(d) and subject to the procedure in Section E), paralegals, and other professional personnel (including support and IT staff) that such outside counsel assigns to this Action whose functions require access to the information (but not any employee of the Defendant);

   (d) Two In-House Counsel of Defendant with responsibilities for the litigation of this Action who do not, as of the time of executing an In-House Counsel Agreement

13

Concerning Confidentiality in the form of Appendix B, and for a period of two (2) years following the last occasion on which Highly Confidential Information is disclosed to such In-House Counsel, shall not (a) participate in or advise on Defendant's Competitive Decision-Making, whether such In-House Counsel are still employed by Defendant or are employed by a different employer, (b) participate in or advise on Competitive Decision-Making involving a Protected Person whose Highly Confidential Information they accessed during the course of this Action at any employer, or (c) participate in or advise on litigation or other legal actions (aside from litigation arising from or related to the allegations in the Complaint in this action) on behalf of Defendant or any other employer where a Protected Person is a genuinely adverse party (i.e., a party whose interests are more than merely nominally adverse, typified by responding to a Protected Party's subpoena) and whose Highly Confidential Information Designated In-House Counsel accessed in the course of this Action; to qualify for access under this subpart, in-house litigation counsel shall first execute an In-House Counsel Agreement Concerning Confidentiality in the form of Appendix B attached hereto (which executed versions shall be maintained by Outside Counsel for the relevant Defendant and available for inspection upon the request of the Court, any Party, or any non-Party Protected Person) and only access Highly Confidential Information in person at the offices of Defendant's Outside Counsel of Record, or using a secure electronic data room or document review platform using an individual login identification and password.

Defendant shall promptly report any confirmed or suspected unauthorized use or disclosure of Highly Confidential Information to the Court and Plaintiff.  Any counsel

14

subject to this subsection who leaves the employment of Defendant to work in an

industry unrelated to the decisions associated with Defendant's Competitive

Decision-Making shall be presumed to be exempt from the post-employment limits of

this provision absent a showing by Plaintiff or any interested Protected Person that

such a person engaged in Competitive Decision-Making;

(e) outside vendors or service providers (such as copy-service providers, eDiscovery

vendors and similar service providers, outside court reporters retained for depositions,

and document-management consultants) retained by a Party to assist that Party in this

Action provided that they shall first execute an Agreement Concerning

Confidentiality in the form of Appendix A attached hereto;

(f) any mediator, arbitrator, or special master that the Parties engage in this Action or

that this Court appoints;

(g) persons who the Highly Confidential Information itself indicates, or who the

receiving party has a good-faith basis to believe, were the author, addressee, recipient,

custodian, or source of the document, to the extent they have previously had lawful

access to the document disclosed or to be disclosed; in addition, during a deposition

or trial, a witness who is a current or former employee of a Party may be shown any

portion of a document produced by that Party that purports to quote, recount, or

summarize said employee's statements or communications (for the avoidance of

doubt, other portions of a document may be shown to the current or former employee

where necessary to orient said employee's deposition or trial testimony regarding the

relevant statements);

15

(h) any person retained by a Party to serve as a testifying or consulting expert in this Action, including employees of the firm with which the expert or consultant is associated or independent contractors who assist the expert's work in this Action, provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto; and

(i) outside trial consultants (including, but not limited to, graphics consultants) provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto.

2. Confidential Information may be disclosed only to the following persons:

(a) the Court and all persons assisting the Court in this Action, including law clerks, court reporters, and stenographic or clerical personnel;

(b) U.S. Federal Trade Commission attorneys, paralegals and other professional personnel (including support and IT staff), and agents or independent contractors retained by Plaintiff to assist in this Action whose functions require access to the information;

(c) Outside Counsel of Record for Defendant, including any attorneys (but not In-House Counsel for the Defendant except as provided in paragraph D(2)(d) and subject to the procedure in section E), paralegals, and other professional personnel (including support and IT staff) that such outside counsel assigns to this Action whose functions require access to the information (but not any employee of the Defendant);

(d) Four In-House Counsel of Defendant with responsibilities for the litigation of this Action who do not currently, and for a period of two (2) years following the last occasion on which Confidential Information is disclosed to such In-House Counsel

16

shall not (a) participate in or advise on Defendant's Competitive Decision-Making, whether such In-House Counsel are still employed by Defendant or are employed by a different employer, (b) participate in or advise on Competitive Decision-Making involving a Protected Person whose Confidential Information they accessed during the course of this Action at any employer, or (c) participate in or advise on litigation or other legal actions (aside from litigation arising from or related to the allegations in the Complaint in this action) on behalf of Defendant or any other employer where a Protected Person is a genuinely adverse party (i.e., a party whose interests are more than merely nominally adverse, typified by responding to a Protected Party's subpoena) and whose Confidential Information Designated In-House Counsel accessed in the course of this Action; to qualify for access under this subpart, in-house litigation counsel shall first execute an In-House Counsel Agreement Concerning Confidentiality in the form of Appendix B attached hereto (which executed versions shall be maintained by Outside Counsel for the relevant Defendant and available for inspection upon the request of the Court, any Party, or any non-Party Protected Person) and only access Confidential Information in person at the offices of Defendant's Outside Counsel of Record, or using a secure electronic data room or document review platform using an individual login identification and password.

Defendant shall promptly report any confirmed or suspected unauthorized use or disclosure of Confidential Information to the Court and Plaintiff.  Any counsel subject to this subsection who leaves the employment of Defendant to work in an industry unrelated to the decisions associated with Competitive Decision-Making

17

shall be presumed to be exempt from the post-employment limits of this provision

absent a showing by Plaintiff or any interested Protected Person that such a person

engaged in Competitive Decision-Making;

(e) outside vendors or service providers (such as copy-service providers, eDiscovery

vendors and similar service providers, outside court reporters retained for depositions,

and document-management consultants) retained by a Party to assist that Party in this

Action provided that they shall first execute an Agreement Concerning

Confidentiality in the form of Appendix A attached hereto;

(f) any mediator, arbitrator, or special master that the Parties engage in this Action or

that this Court appoints;

(g) persons who the Confidential Information itself indicates, or who the receiving party

has a good-faith basis to believe, were the author, addressee, recipient, custodian, or

source of the document, to the extent they have previously had lawful access to the

document disclosed  or to be disclosed; any current or former employee  of a Party

whose statements or communications are quoted, recounted, or summarized in said

Party's document; or persons for whom counsel for Plaintiff or Defendant believes in

good faith previously received or had access to the document, unless the person

indicates that he or she did not have access to the document;

(h) any person retained by a Party to serve as a testifying or consulting expert in this

Action, including employees of the firm with which the expert or consultant is

associated or independent contractors who assist the expert's work in this Action,

provided that they shall first execute an Agreement Concerning Confidentiality in the

form of Appendix A attached hereto; and

18

    (i)  outside trial consultants (including, but not limited to, graphics consultants) provided

       that they shall first execute an Agreement Concerning Confidentiality in the form of

       Appendix A attached hereto.

3.  Counsel for the Party making the disclosure must retain the original of the Agreement

     Concerning Confidentiality in the form of Appendix A attached hereto for a period of at

     least one (1) year following the final resolution of this Action.

4.  Each individual described in paragraphs D (1) and D (2) of this Order to whom

     information designated as Highly Confidential Information or Confidential Information is

     disclosed must not disclose that Highly Confidential Information or Confidential

     Information to any other individual, except as provided in this Order.

5.  Nothing in this Order prevents Plaintiff, subject to taking appropriate steps to preserve

     the confidentiality of such information, from disclosing such information designated as

     Highly Confidential Information or Confidential Information (i) in the course of any

     other legal proceeding in which the U.S. Federal Trade Commission is a party; (ii) for the

     purpose of securing compliance with a Final Judgment in this Action; or (iii) for law

     enforcement purposes.  Such disclosures shall be limited to disclosures by the U.S.

     Federal Trade Commission.

6.  Nothing in this Order:

    (a)  limits a Protected Person's use or disclosure of its own information designated as

       Highly Confidential Information or Confidential Information;

    (b)  prevents disclosure of Highly Confidential Information or Confidential Information

       with the consent of the Protected Person that designated the material as confidential;

**USAP088**

(c)  prevents disclosure by a Party of Highly Confidential Information or Confidential

Information (i) that is or has become publicly known through no fault of that Party;

(ii) lawfully acquired by or known to that Party independent of receipt during the

Investigation or in discovery in this Action; (iii) previously produced, disclosed

and/or provided to that Party without an obligation of confidentiality and not by

inadvertence or mistake; or (iv) pursuant to an order of a court or (v) as may be

required by regulation; or

(d)  prevents the U.S. Federal Trade Commission's retention, use, or disclosure of

Investigation Materials outside the context of this Action to the extent permitted by

applicable law or regulation governing such pre-complaint discovery including the

Hart-Scott-Rodino Act, 15 U.S.C. § 18a, and the Antitrust Civil Process Act, 15

U.S.C. §§ 1311-14, or for law enforcement purposes, or as required by law, court

order, or regulation.  Any such disclosures shall be limited to those permitted by

applicable law or regulation, including, in the case of materials obtained under the

Antitrust Civil Process Act, 15 U.S.C. § 1313(d).  Plaintiff will not disclose any

Litigation Material produced only during the pendency of this Action to any Non-

Party, except as ordered by a court or as may be required by regulation and with

seven (7) days written notice to Defendant or interested Protected Person.  If

Investigation Materials or Litigation Materials are requested for disclosure under a

state's public information act or the equivalent, this Order prohibits disclosure to the

extent the state's public information act or the equivalent provides an exception for

disclosure of information protected by court order.  If a Party is served with a

subpoena or court order issued in other litigation that compels disclosure of any

20

**USAP089**

Confidential Information or Highly Confidential Information, the Party will promptly notify the Designating Party and the Designating Party shall bear the burden and expense of seeking protection in that court.

(e) permits the disclosure of Highly Confidential or Confidential Information in another Action.

E. **Challenges to In-House Counsel**

1.   Unless otherwise ordered by the Court or agreed to in writing by the Protected Person, seven (7) days before disclosing any information designated as Highly Confidential Information or Confidential Information to the Defendant's designated In-House Counsel, Defendant must submit in writing to Plaintiff and the Protected Person a written statement that (i) sets forth the full name of the Designated In-House Counsel and the city and state of his or her residence, (ii) describes the In-House Counsel's past, current, and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if In-House Counsel is involved, or may become involved, in any Competitive Decision-Making; and (iii) lists the litigations or other legal actions in which the In-House Counsel participates or advises on behalf of Defendant or any other employer.

2.   Defendant may disclose Highly Confidential Information and/or Confidential Information to its designated In-House Counsel unless the Defendant receives a written objection from Plaintiff or any Protected Person within 10 days of receiving the Defendant's written statement pursuant to paragraph E(1) above.  Any such objection must set forth in detail the grounds on which it is based.

3.   If Defendant receives a timely written objection it must meet and confer with the Plaintiff or any Protected Person to try to resolve the matter by agreement within seven

21

(7) days of the written objection.  If no agreement is reached, Plaintiff and/or any

Protected Person will have seven (7) days to file a motion with the Court, objecting to

designated In-House Counsel.  Defendant will not disclose any Highly Confidential

Information or Confidential Information to its In-House Counsel pending resolution of

the dispute.  If the Court finds that the designated In-House Counsel qualifies under the

provisions of paragraph D(1)(d) or D(2)(d), Defendant will be able to disclose Highly

Confidential Information or Confidential Information, as appropriate, to its designated In-

House Counsel in accordance with paragraph D(1)(d) or D(2)(d).

**F.  Use of Information Designated Highly Confidential or Confidential in This Action**

1.  In the event that any Highly Confidential Information or Confidential Information is

   contained in any pleading, motion, exhibit or other paper filed or to be filed with the

   Court, the Court shall be so informed by the party filing such papers, and such papers

   shall be filed under seal, in accordance with Local Rule 5.1(h).  This Order hereby grants

   the Parties and any Non-Party Protected Person leave to file such properly designated

   Highly Confidential Information or Confidential Information under seal.  Highly

   Confidential Information and Confidential Information contained in the papers shall

   continue to be maintained under seal until further order of the Court, provided, however,

   that such papers may be furnished to persons or entities who may receive Highly

   Confidential Information or Confidential Information pursuant to paragraphs D(1) and

   D(2).  Upon or after filing any paper containing Highly Confidential Information or

   Confidential Information, the filing Party or Non-Party Protected Person shall file on the

   public record a duplicate copy of the paper that does not reveal Highly Confidential

   Information or Confidential Information.  Further, if the protection for any such material

22

expires, a Party or Non-Party Protected Person may file on the public record a duplicate copy that also contains the formerly protected material.  Nothing in this Order shall restrict the Parties or any interested member of the public from challenging the filing of any Highly Confidential Information or Confidential Information under seal.

2. Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Highly Confidential Information or Confidential Information so that the other parties can ensure that only authorized individuals are present at those proceedings.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as Highly Confidential Information or Confidential Information.

G. **Use of Highly Confidential Information or Confidential Information at Trial**

1. Disclosure at trial or at any evidentiary hearing of any document, testimony, or other material designated as Highly Confidential Information or Confidential Information will be governed pursuant to a separate court order.  In advance of the filing of a proposed order governing the disclosure of Highly Confidential Information or Confidential Information at trial or any evidentiary hearing, the Parties shall provide notice of such order to third parties whose Highly Confidential Information or Confidential Information is expected to be used at trial or any evidentiary hearing.

2. Unless otherwise provided for in this Order, all Highly Confidential Information and Confidential Information produced by a Party or a Non-Party as part of this proceeding shall be used solely for the conduct of this Action and shall not be used for any business, commercial, competitive, personal, or other purpose.

23

H.  **Procedures upon Termination of This Action**

1.  The obligations imposed by this Order survive final disposition of this Action unless the

Court, which shall retain jurisdiction to resolve any disputes arising out of this Order,

orders otherwise.  Within 90 days after the expiration of the time for appeal of an order,

judgment, or decree terminating this litigation, all persons having received information

designated as Highly Confidential Information or Confidential Information must either

make a good faith effort to return such material and all copies thereof to the Protected

Person (or the Protected Person's counsel if represented by counsel) that produced it, or

certify that it has destroyed or deleted all such Highly Confidential Information or

Confidential Information in writing to the Party or Protected Person.

2.  Counsel for the Parties will be entitled to retain court papers and exhibits, deposition

transcripts and exhibits, trial transcripts and exhibits, and work product, provided that the

Parties and their counsel do not disclose the portions of court papers and exhibits,

deposition transcripts and exhibits, trial transcripts and exhibits, or work product

containing information designated as Highly Confidential Information or Confidential

Information  to any person except pursuant  to court order or agreement with the

Protected Person that produced the Highly Confidential Information or  Confidential

Information or as otherwise permitted  herein.  All Highly Confidential Information and

Confidential Information returned to the Parties or their counsel by the Court likewise

must be disposed of in accordance with this paragraph.  Nothing in this paragraph,

however, restricts the rights of the Parties under paragraphs D (5) or D (6) of this Order.

24

I.  **Right to Seek Modification**

    1.  Nothing in this Order limits any Person, Party, or a Protected Person, from seeking (i) further or additional protections of any of its materials, or (ii) modification of this Order upon motion duly made pursuant to the Rules of this Court, including, without limitation, an order that certain material not be produced at all or is not admissible evidence in this Action or any other proceeding.

J.  **The Privacy Act**

    1.  Any order of this Court requiring the production of any document, information, or transcript of testimony constitutes a court order within the meaning of the Privacy Act, 5 U.S.C.§ 552a(b)(11).

K.  **Persons Bound by This Order**

    1.  This Order shall be binding on the Parties to this Action, their attorneys, and their successors, personal representatives, administrators, assigns, parents, subsidiaries, divisions, affiliates, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.  This Order shall also be binding on every person who signs Appendix A or Appendix B.

    2.  All persons subject to this Order are reminded that this Order may be enforced by the Court's full powers of criminal and civil contempt.

**SO ORDERED.**

DATED: ___3/25/22___

_____
Honorable James E. Boasberg
United States District Judge

25

<u>APPENDIX A</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20−cv−03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

### <u>AGREEMENT CONCERNING CONFIDENTIALITY</u>

I, _____, am employed by _____ as _____.

I hereby certify that:

1.   I have read the Protective Order entered in the above-captioned action and understand its terms.

2.   I agree to be bound by the terms of the Protective Order entered in the above-captioned action.  I agree to use the information provided to me only as explicitly provided in this Protective Order.

3.   I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

4.   I submit to the jurisdiction of the United States District Court for the District of Columbia solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said court.

_____ SIGNATURE

_____ DATE

**USAP095**

**APPENDIX B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20−cv−03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

**IN-HOUSE LITIGATION COUNSEL AGREEMENT CONCERNING CONFIDENTIALITY**

I, _____, am employed as _____ by _____.

I hereby certify that:

1. I have read the Protective Order entered in the above-captioned action and understand its terms.

2. I agree to be bound by the terms of the Protective Order entered in the above-captioned action, agree that in my role as in-house litigation counsel for the above Defendant company I meet the requirements of paragraph D(2)(d) of this Protective Order, and agree to use the information provided to me only as explicitly provided in this Protective Order.

3. I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

4. I submit to the jurisdiction of the United States District Court for the District of Columbia solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said Court.

_____ SIGNATURE

_____ DATE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

FEDERAL TRADE COMMISSION,

                                          Plaintiff,

          v.

QUALCOMM INCORPORATED, a
Delaware corporation,

                                          Defendant.

Case No. 5:17-cv-00220-LHK

**PROTECTIVE ORDER GOVERNING**
**CONFIDENTIAL MATERIAL**

1.     PURPOSES AND LIMITATIONS

          Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 13.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.     DEFINITIONS

          2.1     Challenging Party:  a Party or Non-Party that challenges the designation of information or items under this Order.

          2.2     Commission or FTC:  the Federal Trade Commission, or any of its employees,

United States District Court
Northern District of California

1    agents, attorneys, and all other persons acting on its behalf.

2         2.3    "CONFIDENTIAL" Information or Items:  information (regardless of how it is

3    generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of

4    Civil Procedure 26(c).

5         2.4    Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well

6    as their support staff).

7         2.5    Designated House Counsel:  House Counsel who seek access to "HIGHLY

8    CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter under Section 7.4 of

9    this Order.

10        2.6    Designating Party:  a Party or Non-Party that designates information or items that it

11   produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY

12   CONFIDENTIAL – ATTORNEYS' EYES ONLY."

13        2.7    Disclosure or Discovery Material:  all items or information, regardless of the

14   medium or manner in which it is generated, stored, or maintained (including, among other things,

15   testimony, transcripts, and tangible things), that are produced or generated in disclosures or

16   responses to discovery in this matter.

17        2.8    Expert:  a person, who is not an employee of a Defendant or of any firm engaged in

18   the design, manufacture or sale of cellular technology, cellular products or cellular subscriber

19   services, with specialized knowledge or experience in a matter pertinent to the litigation who has

20   been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action,

21   as well as employees of the firm with which the Expert is associated or independent contractors who

22   are necessary to assist the Expert's work.

23        2.9    HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:

24   extremely sensitive "Confidential Information or Items," disclosure of which to another Party or

25   Non-Party would create a substantial risk of serious harm that could not be avoided by less

26   restrictive means.

27        2.10   House Counsel:  attorneys who are employees in the Corporate Legal Department of

28

---

PROTECTIVE ORDER GOVERNING
CONFIDENTIAL MATERIAL                        2                    CASE NO. 5:17-CV-00220-LHK

1   Qualcomm Incorporated (and their support staff). House Counsel does not include Outside Counsel

2   of Record or any other outside counsel.

3        2.11   <u>Non-Party</u>:  any natural person, partnership, corporation, association, or other legal

4   entity not named as a Party to this action.

5        2.12   <u>Outside Counsel of Record</u>:  attorneys who are not employees of a party to this action

6   but are retained to represent or advise a party to this action, and have appeared in this action on

7   behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, as well

8   as such attorneys' support staffs.

9        2.13   <u>Party</u>:  any party to this action, including all of its officers, directors, employees,

10  consultants, retained experts, and Outside Counsel of Record (and their support staffs).

11       2.14   <u>Producing Party</u>:  a Party or Non-Party that produces Disclosure or Discovery

12  Material in this action.

13       2.15   <u>Professional Vendors</u>:  persons or entities that provide litigation support services

14  (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing,

15  storing, or retrieving data in any form or medium) and their employees and subcontractors.

16       2.16   <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as

17  "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

18       2.17   <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a

19  Producing Party.

20  3.   <u>SCOPE</u>

21       The protections conferred by this Stipulation and Order cover not only Protected Material (as

22  defined above), but also (1) any information copied or extracted from Protected Material; (2) all

23  copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony,

24  conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

25  However, the protections conferred by this Stipulation and Order do not cover the following

26  information:  (a) any information that is in the public domain at the time of disclosure to a Receiving

27  Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of

28

publication not involving a violation of this Order, including becoming part of the public record

through trial or otherwise; and (b) any information known to the Receiving Party prior to the

disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the

information lawfully and under no obligation of confidentiality to the Designating Party. Any use of

Protected Material at trial shall be governed by a separate agreement or order.

4.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this

Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order

otherwise directs. Final disposition shall be deemed to be the later of (a) dismissal of all claims and

defenses in this action, with or without prejudice; and (b) final judgment herein after the completion

and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time

limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or

Non-Party that designates information or items for protection under this Order must take care to

limit any such designation to specific material that qualifies under the appropriate standards. To the

extent it is practical to do so the Designating Party must designate for protection only those parts of

material, documents, items, or oral or written communications that qualify – so that other portions of

the material, documents, items, or communications for which protection is not warranted are not

swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited except as provided specifically

in this order or any federal statute or regulation. Designations that are shown to be clearly unjustified

or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or retard the case

development process or to impose unnecessary expenses and burdens on other parties) expose the

Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for

protection do not qualify for protection at all or do not qualify for the level of protection initially

1    asserted, that Designating Party must promptly notify all other parties that it is withdrawing the

2    mistaken designation.

3          5.2    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order

4    (*see, e.g.*, second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered,

5    Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

6    designated before the material is disclosed or produced. For the avoidance of doubt, Section 5.2

7    does not apply to Non-Party documents submitted or produced to the FTC prior to entry of this

8    Order and subject to Section 5.4 of this Order.

9                Designation in conformity with this Order requires:

10         (a)  for information in documentary form (*e.g.*, paper or electronically stored information

11    ("ESI"), but excluding transcripts of depositions or other pretrial or trial proceedings), that the

12    Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

13    ATTORNEYS' EYES ONLY" to each page that contains protected material and also, for ESI, in the

14    metadata field assigned to indicate the confidentiality designation.

15             A Party or Non-Party that makes original documents or materials available for

16    inspection need not designate them for protection until after the inspecting Party has indicated which

17    material it would like copied and produced. During the inspection and before the designation, all of the

18    material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –

19    ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants

20    copied and produced, the Producing Party must determine which documents, or portions thereof,

21    qualify for protection under this Order. Then, before producing the specified documents, the

22    Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY

23    CONFIDENTIAL – ATTORNEYS' EYES ONLY") as set forth in the preceding paragraph.

24         (b)  for testimony given in deposition or in other pretrial or trial proceedings, that the

25    Designating Party identify, either verbally on the record or in a writing served on all Parties and the

26    court reporter within 21 days after the close of the deposition, hearing, or other proceeding, all

27    protected testimony and specify the level of protection being asserted.  Only those portions of the

28

1  testimony that are appropriately designated for protection shall be covered by the provisions of this

2  Stipulated Protective Order.

3  Each Party shall give the other Party notice if it reasonably expects a deposition,

4  hearing or other proceeding to include Protected Material so that the other Party can ensure that only

5  authorized individuals are present at those proceedings. The use of a document as an exhibit at a

6  deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY

7  CONFIDENTIAL – ATTORNEYS' EYES ONLY."

8  Transcripts containing Protected Material shall have an obvious legend on the title

9  page that the transcript contains Protected Material, and the title page shall be followed by a list of

10  all pages (including line numbers as appropriate) that have been designated as Protected Material

11  and the level of protection being asserted by the Designating Party. The Designating Party shall

12  inform the court reporter of these requirements. Any transcript that is prepared before the expiration

13  of the 21-day period for designation shall be treated during that period as if it had been designated

14  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise

15  agreed. After the expiration of that period, the transcript shall be treated only as and to the extent

16  actually designated.

17  (c) for all other information or tangible items, that the Producing Party affix in a

18  prominent place on the exterior of the container or containers in which the information or item is

19  stored the label "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

20  ONLY."  If only a portion or portions of the information or item warrant protection, the Producing

21  Party, to the extent practicable, shall identify the protected portion(s) and specify the level of

22  protection being asserted.

23  5.3  Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to

24  designate qualified information or items does not, standing alone, waive the Designating Party's

25  right to secure protection under this Order for such material. Upon timely correction of a

26  designation, the Receiving Party must make reasonable efforts to assure that the material is treated

27  in accordance with the provisions of this Order. Following a correction of a designation, the

28

1  Producing Party shall provide re-labeled copies of the information or items to each Receiving Party

2  reflecting the change in designation.

3        5.4    Information Obtained During Commission Investigation.  Any document or portion

4  thereof submitted or produced to the FTC by a Non-Party prior to entry of this Order, and all

5  transcripts of investigational hearings of Non-Parties taken during the Commission's pre-complaint

6  investigation, as well as any other documents in the FTC's possession, custody or control that

7  disclose the substance of such documents or transcripts, shall be treated as follows:

8        (a)  Upon production by the Commission in this action, such information shall be

9  initially treated by the Parties as information designated "HIGHLY CONFIDENTIAL –

10  ATTORNEYS' EYES ONLY."

11        (b)  Within three (3) business days of the entry of this Protective Order, the Commission

12  shall provide all Non-Parties who submitted or produced information to the FTC with notice that

13  Qualcomm has requested information provided by the Non-Party, together with a copy of this

14  Protective Order. This notice shall inform the Non-Party that (a) it may, within fourteen (14) days of

15  such notice, seek a protective order from this court regarding the FTC's production of its

16  confidential information; and (b) it may, within thirty (30) days of such notice designate any

17  materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

18  pursuant to the terms of this Protective Order.  All such materials shall be treated by the Parties as

19  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the expiration of such thirty

20  (30) day period.

21        (c)  If the Non-Party fails to seek a protective order from this court within fourteen (14)

22  days of receiving the notice and accompanying information, the FTC shall promptly produce the

23  Non-Party's confidential information. If the Non-Party timely seeks a protective order, the FTC

24  shall not produce any information in its possession or control covered by the protective order sought

25  by the Non-Party before a determination by the court.  Absent a court order to the contrary, the

26  Non-Party shall bear the burden and expense of seeking protection in this court of its Protected

27  Material.

28

1      (d) If the Non-Party who submitted the information to the Commission fails to designate

2  such materials within thirty (30) days of receiving the notice and accompanying information, any

3  information submitted by the Non-Party to the Commission and produced by the Commission in this

4  action shall be re-designated as "CONFIDENTIAL."

5  6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6      6.1    <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of

7  confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

8  designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

9  burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

10  challenge a confidentiality designation by electing not to mount a challenge promptly after the

11  original designation is disclosed.

12      6.2    <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process

13  by providing written notice of each designation it is challenging and describing the basis for each

14  challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must

15  recite that the challenge to confidentiality is being made in accordance with this specific paragraph

16  of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must

17  begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication

18  are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the

19  Challenging Party must explain the basis for its belief that the confidentiality designation was not

20  proper and must give the Designating Party an opportunity to review the designated material, to

21  reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the

22  chosen designation. A Challenging Party may proceed to the next stage of the challenge process

23  only if it has engaged in this meet and confer process first or establishes that the Designating Party is

24  unwilling to participate in the meet and confer process in a timely manner.

25      6.3    <u>Judicial Intervention</u>.  If the Parties cannot resolve a challenge without court

26  intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil

27  Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within twenty-one (21)

28

1   days of the initial notice of challenge or within fourteen (14) days of the parties agreeing that the

2   meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must

3   be accompanied by a competent declaration affirming that the movant has complied with the meet

4   and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to

5   make such a motion including the required declaration within twenty-one (21) days (or fourteen (14)

6   days, if applicable) shall automatically waive the confidentiality designation for each challenged

7   designation. The parties may stipulate without court order to amend the time period within which a

8   motion shall be filed. In addition, the Challenging Party may file a motion challenging a

9   confidentiality designation at any time if there is good cause for doing so, including a challenge to

10  the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to

11  this provision must be accompanied by a competent declaration affirming that the movant has

12  complied with the meet and confer requirements imposed by the preceding paragraph.

13          The burden of persuasion in any such challenge proceeding shall be on the Designating

14  Party. Frivolous challenges and those made for an improper purpose (*e.g.*, to harass or impose

15  unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.

16  Unless the Designating Party has waived the confidentiality designation by failing to file a motion to

17  retain confidentiality as described above, all parties shall continue to afford the material in question

18  the level of protection to which it is entitled under the Producing Party's designation until the court

19  rules on the challenge.

20  7.      ACCESS TO AND USE OF PROTECTED MATERIAL

21          7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or

22  produced by another Party or by a Non-Party in connection with this case only for prosecuting,

23  defending, or attempting to settle this litigation, including any related appellate proceeding. Such

24  Protected Material may be disclosed only to the categories of persons and under the conditions

25  described in this Order. When the litigation has been terminated, a Receiving Party must comply

26  with the provisions of Section 14 below.

27          Protected Material must be stored and maintained by a Receiving Party at a location and in a

28

1  secure manner that ensures that access is limited to the persons authorized under this Order.

2         7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered

3  by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any

4  information or item designated "CONFIDENTIAL" only to:

5         (a)  the Receiving Party's Outside Counsel of Record in this action, as well as employees of

6  said Outside Counsel of Record (1) who do not provide commercial advice (as opposed to legal

7  advice) to a Defendant and (2) to whom it is reasonably necessary to disclose the information for this

8  litigation;

9         (b)  House Counsel, identified in Exhibit B, (1) who have no involvement in competitive

10  decision-making for a Defendant, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3

11  (Fed. Cir. 1984), (2) to whom disclosure is reasonably necessary for this litigation, and (3) who have

12  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), as well as their support

13  staff, provided that such support staff are not involved in competitive decision-making and have

14  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

15         (c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is

16  reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to

17  Be Bound" (Exhibit A);

18         (d)  the court and its personnel;

19         (e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and

20  Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have

21  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

22         (f)  during their testimony or in preparation for their testimony, witnesses in the action and

23  their counsel to whom disclosure is reasonably necessary and who have signed the "Acknowledgment

24  and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or

25  ordered by the court. Such disclosure may only occur for the purpose of assisting the preparation or

26  examination of the witness. Pages of transcribed deposition testimony or exhibits to depositions that

27  reveal Protected Material must be separately bound by the court reporter and may not be disclosed to

28

PROTECTIVE ORDER GOVERNING
CONFIDENTIAL MATERIAL           10           CASE NO. 5:17-CV-00220-LHK

1   anyone except as permitted under this Stipulated Protective Order;

2          (g)   the Designating Party or its employees, the author or recipient of a document

3   containing the information, or a custodian or other person who otherwise possessed or knew the

4   information; and

5          (h)   FTC Commissioners and FTC counsel who have appeared in this action, as well as

6   other Commission employees to whom it is reasonably necessary to disclose the information for this

7   litigation.

8          7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

9   Information or Items. Unless otherwise ordered by the court or permitted in writing by the

10  Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY

11  CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

12         (a)   the Receiving Party's Outside Counsel of Record in this action, as well as employees of

13  said Outside Counsel of Record (1) who do not provide commercial advice (as opposed to legal

14  advice) to a Defendant and (2) to whom it is reasonably necessary to disclose the information for this

15  litigation;

16         (b)   Designated House Counsel of the Receiving Party (1) who have no involvement in

17  competitive decision-making for a Defendant, as defined by *U.S. Steel v. United States*, 730 F.2d

18  1465, 1468 n.3 (Fed. Cir. 1984), (2) to whom disclosure is reasonably necessary for this litigation,

19  (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to

20  whom the procedures set forth in paragraph 7.4, below, have been followed;

21         (c)   Experts (as defined in this Order) of the Receiving Party to whom disclosure is

22  reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to

23  Be Bound" (Exhibit A);

24         (d)   the court and its personnel;

25         (e)   court reporters and their staff, professional jury or trial consultants, mock jurors, and

26  Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have

27  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

28

PROTECTIVE ORDER GOVERNING
CONFIDENTIAL MATERIAL                          11                      CASE NO. 5:17-CV-00220-LHK

1    (f)  the Designating Party or its employees, the author or recipient of a document

2    containing the information or a custodian or other person who otherwise possessed or knew the

3    information; and

4    (g)  FTC Commissioners and FTC counsel who have appeared in this action, as well as

5    other Commission employees to whom it is reasonably necessary to disclose the information for this

6    litigation.

7    7.4    Procedures for Approving or Objecting to Disclosure of "HIGHLY

8    CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.

9    (a)  Unless otherwise ordered by the court or agreed to in writing by the Designating

10   Party, a Party that seeks to disclose to Designated House Counsel any information or item that has

11   been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to

12   paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full

13   name of the Designated House Counsel and the city and state of his or her residence, and (2)

14   describes the Designated House Counsel's current and reasonably foreseeable future primary job

15   duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may

16   become involved, in any competitive decision-making and (3) identifies with reasonable

17   particularity the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that

18   the Receiving Party seeks permission to disclose;

19   (b)  A Party that makes a request and provides the information specified in paragraph

20   7.4(a) may disclose the subject Protected Material to the identified Designated House Counsel

21   unless, within 14 days of delivering the request, the Party receives a written objection from the

22   Designating Party. Any such objection must set forth in detail the grounds on which it is based.

23   (c)  A Party that receives a timely written objection must meet and confer with the

24   Designating Party (through direct voice-to-voice dialogue) to try to resolve the matter by agreement

25   within seven days of the written objection. If no agreement is reached, the Party seeking to make the

26   disclosure to Designated House Counsel may file a motion as provided in Civil Local Rule 7 (and in

27   compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so.

28

1   Any such motion must describe the circumstances with specificity, set forth in detail the reasons

2   why the disclosure to Designated House Counsel is reasonably necessary, assess the risk of harm

3   that the disclosure would entail, and suggest any additional means that could be used to reduce that

4   risk. In addition, any such motion must be accompanied by a competent declaration describing the

5   parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and

6   confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to

7   approve the disclosure.

8          In any such proceeding, the Party opposing disclosure to Designated House Counsel

9   shall bear the burden of proving that the risk of harm that the disclosure would entail (under the

10  safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its

11  Designated House Counsel.

12         7.5     Notwithstanding this Protective Order, the Commission may, subject to taking

13  appropriate steps to preserve confidentiality, disclose and use "CONFIDENTIAL" or "HIGHLY

14  CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items in responding to either:

15  (a) a formal request from either House of Congress or from any committee or subcommittee of

16  Congress, consistent with applicable law, including Sections 6(f) and 21 of the FTC Act, 15 U.S.C.

17  §§ 46(f) and 57b-2; or (b) a federal or state access request pursuant to Commission Rules 4.11(c)

18  and (d), 16 C.F.R. § 4.11(c) and (d).  In such instances, the Commission shall provide the

19  Designating Party with fourteen (14) days prior written notice unless the applicable statute or

20  regulation prohibits providing such notice, in which case the Commission shall comply with the

21  applicable statute or regulation.

22  8.   COMPETITIVE DECISION-MAKING BAR

23         Absent written consent from the Designating Party, any individual who receives access to

24  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items shall not be

25  involved in competitive decision-making for a Defendant, as defined by *U.S. Steel v. United States*,

26  730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), relating to the subject matter of the Information or Items

27  accessed by the individual.  This bar shall begin when access to "HIGHLY CONFIDENTIAL –

28

1  ATTORNEYS' EYES ONLY" Information or Items is first received by the affected individual and

2  shall end one (1) year after access to such "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

3  ONLY" Information or Items is first received by the affected individual.

4  9.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER

5        LITIGATION

6        If a Party is served with a subpoena or a court order issued in other litigation that compels

7  disclosure of any information or items designated in this action as "CONFIDENTIAL" or

8  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY,"  that Party must:

9        (a)  promptly notify in writing the Designating Party. Such notification shall include a copy

10  of the subpoena or court order;

11        (b)  promptly notify in writing the party who caused the subpoena or order to issue in the

12  other litigation that some or all of the material covered by the subpoena or order is subject to this

13  Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

14        (c)  cooperate with respect to all reasonable procedures sought to be pursued by the

15  Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a

16  protective order, the Party served with the subpoena or court order shall not produce any information

17  designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'

18  EYES ONLY" before a determination by the court from which the subpoena or order issued, unless

19  the Party has obtained the Designating Party's permission. The Designating Party shall bear the

20  burden and expense of seeking protection in that court of its confidential material. Nothing in these

21  provisions should be construed as authorizing or encouraging a Receiving Party in this action to

22  disobey a lawful directive from another court.

23  10.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS

24        LITIGATION

25        10.1    The terms of this Order are applicable to information produced by a Non-Party in this

26  action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'

27  EYES ONLY." Such information produced by Non-Parties in connection with this litigation is

28

1   protected by the remedies and relief provided by this Order.  Nothing in these provisions should be

2   construed as prohibiting a Non-Party from seeking additional protections.

3       10.2    For the avoidance of doubt, Sections 10.3 and 10.4 do not apply to documents

4   submitted or produced by Non-Parties that are subject to Section 5.4 of this Order.

5       10.3    In the event that a Party is required, by a valid discovery request, to produce a

6   Non-Party's confidential information in its possession, custody or control, and the Party has a

7   contractual or legal obligation not to produce the Non-Party's confidential information, then the

8   Party shall:

9           (a)  promptly notify in writing the Requesting Party and the Non-Party that some or all of

10  the information requested is subject to a confidentiality agreement with a Non-Party;

11          (b)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in

12  this litigation and the relevant discovery request(s); and

13          (c)  make the information requested available for inspection by the Non-Party.

14      10.4    If the Non-Party fails to object or seek a protective order from this court within

15  fourteen (14) days of receiving the notice and accompanying information, the Receiving Party may

16  produce the Non-Party's confidential information responsive to the discovery request. If the

17  Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in

18  its possession or control that is subject to the confidentiality agreement with the Non-Party before a

19  determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden

20  and expense of seeking protection in this court of its Protected Material.

21  11.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

22      If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

23  Material to any person or in any circumstance not authorized under this Stipulated Protective Order,

24  the Receiving Party must immediately (a) notify in writing the Designating Party of the

25  unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected

26  Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the

27  terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and

28

1   Agreement to Be Bound" that is attached hereto as Exhibit A.

2   12.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED

3         MATERIAL.

4         When a Producing Party gives notice to Receiving Parties that certain inadvertently

5   produced material is subject to a claim of privilege or other protection, the obligations of the

6   Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). Any

7   inadvertent production of privileged or otherwise protected material that satisfies Federal Rule of

8   Evidence 502(b) shall not be deemed to have waived the privilege or protection.

9   13.   MISCELLANEOUS

10        13.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek

11   its modification by the court in the future.

12        13.2   Right to Assert Other Objections. By stipulating to the entry of this Protective Order

13   no Party waives any right it otherwise would have to object to disclosing or producing any

14   information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

15   Party waives any right to object on any ground to use in evidence of any of the material covered by

16   this Protective Order.

17        13.3   Filing Protected Material. Without written permission from the Designating Party or

18   a court order secured after appropriate notice to all interested persons, a Party may not file in the

19   public record in this action any Protected Material. A Party that seeks to file under seal any

20   Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

21   under seal pursuant to a court order authorizing the sealing of the specific Protected Material at

22   issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing

23   that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to

24   protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant

25   to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected

26   Material in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed by the

27   court.

28

14.     <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (a) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (b) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


DATED: April 27, 2017                    /s/  Jennifer Milici
                                                    Attorney for Plaintiff Federal Trade Commission


DATED: April 27, 2017                    /s/  Gary A. Bornstein
                                                    Attorney for Defendant Qualcomm Incorporated

USAP114

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: May 1, 2017



Honorable Nathanael

GRANTED

Judge Nathanael M. Cousins

PROTECTIVE ORDER GOVERNING
CONFIDENTIAL MATERIAL

18

CASE NO. 5:17-CV-00220-LHK

USAP115

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of *Federal Trade Commission v. Qualcomm Incorporated*, Case No. 17-cv-00220-LHK. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____


Printed name: _____


Signature: _____

---

PROTECTIVE ORDER GOVERNING
CONFIDENTIAL MATERIAL                    19                    CASE NO. 5:17-CV-00220-LHK

**USAP116**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>EXHIBIT B</u>

Kevin Kelly

Kurt Kjelland

Carol Lam

John Scott

Mark Snyder

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

        **v.**

**SURESCRIPTS, LLC,**

    **Defendant.**

**Civil Action No. 19-1080 (JDB)**

## <u>PROTECTIVE ORDER</u>

Pursuant to Federal Rule of Civil Procedure 26(c), the parties to the above-captioned case (the "Litigation"), through their respective counsel, agree that the terms and conditions of this Protective Order (the "Order") shall govern the production and handling of all documents, items, or other information exchanged by the parties and/or nonparties in the Litigation including, without limitation, responses to requests for production, interrogatories, requests for admissions, pleadings, motions, briefs, exhibits, expert reports (and exhibits thereto), and deposition or other testimony, regardless of the medium or manner in which any such materials are generated, stored, or maintained.  This includes any material produced, filed, or served by any party or nonparty during discovery in this Litigation, documents produced by any party (or material containing or summarizing information from a document produced), as well as all transcripts of any investigational hearings, during the investigation by the Federal Trade Commission ("FTC") (the "Investigatory Material"), or any information included in any such material.  The Court finds that good cause exists for entry of a protective order in this Litigation to prevent unauthorized disclosure and use of confidential information during and after the course of the Litigation.

Accordingly, it is hereby **ORDERED** as follows:

1

1. **Persons/Entities Covered**. This Order is binding upon all current and future parties to this Litigation, including their respective corporate parents, subsidiaries, affiliates, successors, or assigns and their respective counsel, agents, representatives, officers, and employees and any others set forth in this Order (the "Parties"). This Order shall also apply to any materials produced in discovery in this Litigation by nonparties, provided that such nonparties comply with all terms and conditions of this Order and sign Exhibit A agreeing to be bound by the terms of the Order; and further provided that this Order does not limit any nonparty's rights with respect to its own materials that it produces in discovery in this Litigation. When conducting discovery from nonparties, the Parties to this Litigation shall provide notice of the terms of this Order to such nonparties.

2. **Designation of Materials**. Any party or nonparty responding to discovery requests or providing materials in connection with this Litigation ("Producing Entity") may designate all, or any part, of a document, discovery response, deposition, or other material as Confidential Material or Highly Confidential Material (defined below) based on a good-faith belief that such materials qualify for that designation under the terms of this Order:

   (a) "Confidential Material" shall mean any information, testimony, or tangible thing produced during discovery that reveals a trade secret; competitively sensitive research, analysis, technical, financial, development, or commercial information, which is maintained as confidential and has not been released into the public domain (unless through unauthorized disclosure); other information entitled to protection in accordance with Federal Rule of Civil Procedure 26(c); personal information that is protected from disclosure by statute, regulation, or is otherwise entitled to protection from public disclosure; and any other information for which a good-faith claim of need of protection

2

can be made under the Federal Rules of Civil Procedure and/or applicable law.

(b) "Highly Confidential Material" shall mean any Confidential Material that is currently highly sensitive, the disclosure of which would cause injury to current commercial or financial interests of the Producing Entity, including current trade secrets; current highly sensitive and nonpublic research or analysis; current customer information; current financial, marketing, or strategic business planning information which, if disclosed, could cause current competitive harm or reasonably threaten any party's current commercial interests; current or future margin, cost or pricing information; information relating to research, development, testing of, or plans for existing or proposed future products; information relating to the processes, apparatus, or analytical techniques used by a party or nonparty in its present or proposed commercial production of such products; information relating to pending or abandoned patent applications which have not been made available to the public or other intellectual property; personnel files; current contract terms and negotiation strategies; current projections or plans regarding performance, budgets, production, output, sales, marketing, or distribution practices; and communications regarding any Highly Confidential Material.

(c) Confidential and Highly Confidential Material, respectively, shall include: (i) all copies, extracts, and complete or partial summaries prepared from such Confidential or Highly Confidential Material; (ii) portions of deposition transcripts and exhibits thereto that contain or summarize the content of any such Confidential or Highly Confidential Material; (iii) portions of briefs, memoranda, or any other writings filed with the Court and exhibits thereto that contain or

USAP120

summarize the content of any such Confidential or Highly Confidential Material;

(iv) written discovery responses and answers that contain or summarize the content

of any such Confidential or Highly Confidential material; and (v) deposition

testimony designated in accordance with paragraph 2(e) below.

(d) Any document produced by a Producing Entity in this Litigation may be

designated as Confidential Material by marking it "CONFIDENTIAL" on the face

of the document at the time of production.  Any document produced by a Producing

Entity in this Litigation may be designated as Highly Confidential Material by

marking it "HIGHLY CONFIDENTIAL" on the face of the document at the time

of production.  A Producing Entity may also designate electronic documents and

other nonpaper media as Confidential Material or Highly Confidential Material, as

appropriate, by (i) noting such designation in an accompanying cover letter; (ii)

affixing the confidentiality designation to the material or its container, including

the appropriate confidentiality designation in the load file provided with the

electronic production; (iii) including the appropriate confidentiality designation in

the name of the file(s) provided with the electronic production; or (iv) using any

other means that reasonably notifies the party in receipt of that material in this

Litigation (the "Receiving Entity") of the designation.

(e) Testimony provided in this Litigation may be designated as Confidential

Material or as Highly Confidential Material if the testimony concerns or relates to

the designating party's or nonparty's Confidential Material or Highly Confidential

Material.  The party or nonparty desiring to designate any portion of testimony as

Confidential Material or Highly Confidential Material shall do so by so stating

USAP121

orally on the record on the day that the testimony is being given.  Following any

such oral designation, the Confidential and Highly Confidential portions of the

deposition shall be taken only in the presence of persons entitled to access to such

information under this Order, provided that In-House Counsel authorized to receive

Confidential material pursuant to Paragraph 3(b) below, but not Highly

Confidential material, shall only be excluded from the portion of the deposition that

contains questions and answers that reveal the content of information designated

Highly Confidential, absent consent by the Producing Entity.  A Producing Entity

may designate any or all portions of the transcript and/or video of any deposition

(or of any other testimony) as containing Confidential Material or Highly

Confidential Material in accordance with this Order by notifying all other parties

in writing within sixty (60) days of the Producing Entity's receipt of the final

transcript that the transcript contains Confidential Material or Highly Confidential

Material and designating the specific pages and/or lines as containing Confidential

Material or Highly Confidential Material.   All transcripts and/or videos of

testimony in this Litigation shall be treated as Highly Confidential Material and

subject to this Order until sixty (60) days after a final transcript of the deposition

(or other testimony) is received by the Producing Entity.  Any portion of any

deposition testimony that is not designated as Confidential Material or Highly

Confidential Material in accordance with this paragraph, within sixty (60) days

after a final transcript and/or video of the deposition (or other testimony) is received

by the Producing Entity, shall not be entitled to the protections afforded under this

Order.

(f) All Investigatory Material shall be treated as Highly Confidential Material under this Order, notwithstanding any designation or lack thereof on the documents as originally produced, unless either the original source of the document agrees that the document need not be treated as Highly Confidential Material under this Order, or the Court orders otherwise.  Nothing in this Order shall constitute any waiver of any applicable privileges or protections from discovery that may apply to Investigatory Materials pursuant to the FTC's Rules of Practice or other legal obligation imposed upon the Commission.  If a nonparty, which has produced documents to the FTC, has requested that its identity not be revealed, its identity shall be treated as Highly Confidential Material under this Order unless such nonparty agrees that the document need not be treated as Highly Confidential Material under this Order, or the Court orders otherwise; provided, however, that the FTC shall (i) provide outside counsel for the Parties to this Litigation, at the time the documents are produced, with a list of those nonparties who have requested confidential treatment for their identities and whose Investigatory Materials are disclosed in this Litigation and (ii) identify on that list the specific documents produced by each such nonparty.

(g) Notwithstanding any of the foregoing, information shall be deemed nonconfidential material under this Order if it is in the public domain, is already known to a party through proper means and on a nonconfidential basis, or is or becomes available to a party from a source rightfully in possession of such information on a nonconfidential basis.

USAP123

3. **Individuals to Whom Confidential Material May Be Disclosed**. Unless otherwise ordered by the Court or permitted in writing by a Producing Entity, Confidential Material may be used only in connection with this Litigation, and disclosure of Confidential Material (or specific Confidential Material, as described below) may be made only to:

(a) The Court and court personnel, including assistants, clerks, law clerks, and other support staff (this category hereinafter referred to as the "Court").

(b) Outside attorneys for a party who are working on this Litigation and their employed or retained secretaries, paralegals, legal assistants, and support services (including, without limitation, copy services, jury consultants, interpreters, translators, document management services, graphics services, and similar professional services) (this category hereinafter referred to as "Outside Attorneys").

(c) Surescripts in-house counsel on the following conditions:

(i) access will be available only to Surescripts in-house attorneys with primary responsibility for day-to-day support, management, and oversight regarding this Litigation, and who are not involved in Surescripts's competitive decision-making; and

(ii) these individuals must execute the Agreement To Be Bound By Protective Order annexed hereto as Exhibit A.

(d) FTC personnel, including FTC Commissioners, as well as Commission attorneys, employees, and law clerks who are working on, supervising, or being briefed about this Litigation (this category hereinafter referred to as "FTC Personnel").

(e) Court reporters, court videographers, and similar transcription services and their support staff providing services in court or at depositions for the purpose of assisting the

USAP124

Court in this Litigation (this category hereinafter referred to as "Court Reporters").

(f) Any expert or consultant (including all nonparty personnel and support staff assisting such expert or consultant, but not the entity itself by which such expert or consultant and assisting personnel are employed) who is retained by or for the benefit of any of the Parties in this Litigation to assist counsel in this Litigation (this category hereinafter referred to as "Experts"), provided that the expert or consultant has executed the agreement annexed hereto as Exhibit A.

(g) Any mediators engaged by the Parties or appointed by the Court, and their support staff (this category hereinafter referred to as "Mediators").

(h) Any person whom Attorneys for a party have a good-faith basis to believe authored or previously received the material.

(i) The current or former directors, officers, employees, or outside counsel of the Producing Entity that produced the material, provided that any such former director, officer, employee, or outside counsel has executed the agreement annexed hereto as Exhibit A and (i) authored or received the material or (ii) there are other indicia that the individual has seen the document previously.

(j) Any person who has been designated as a Rule 30(b)(6) witness by the Producing Entity that produced the material.

(k) A witness that has or had possession of the material or access in the ordinary course of business to the material (including if a Receiving Entity wishes to show a witness material that partially meets this criteria (e.g., an e-mail between two entities that is later forwarded internally within one entity, and that intra-entity discussion contains Highly Confidential material), then the Receiving Entity may redact the entirety of the material

USAP125

that the witness did not see previously).

(l) During the conduct of hearings or depositions, or in preparation specifically for a scheduled hearing or deposition, witnesses in the Litigation to whom disclosure is reasonably necessary and who have signed the agreement annexed hereto as Exhibit A (this category hereinafter referred to as "Witnesses").

(m) The Receiving Entity's current officers and directors, who have primary responsibility for day-to-day support, management, and oversight regarding this Litigation and who have signed the agreement annexed hereto as Exhibit A.

(n) Any person other than those listed in this section for whom a party requests permission to disclose Confidential Material by providing counsel for the Producing Entity with advance written notice via electronic mail at least four (4) business days before any such disclosure.  Any request shall state the specific material to be disclosed and the identity of each person to whom the material will be disclosed.  The Producing Entity shall respond in writing via electronic mail within four (4) business days of its receipt of such written request.  A failure to respond within such time shall constitute consent to the request.  If the Producing Entity objects to the disclosure, the party seeking disclosure shall not make the disclosure unless pursuant to the procedures described in paragraph 7.

(o) Any other person to whom the Producing Entity consents in writing or by Order of the Court.

4. **Individuals to Whom Highly Confidential Material May Be Disclosed.**  Unless otherwise ordered by the Court or permitted in writing by the Producing Entity, Highly Confidential Material may be used only in connection with this Litigation, and disclosure of Highly Confidential Material may be made only to the following, as defined in paragraph 3 above:

USAP126

(a) The Court;

(b) Outside Attorneys for the Parties to this Litigation;

(c) Two Surescripts in-house attorneys on the following conditions:

(i) access will be available only to Daniel Kim and one other individual to be named at a later date, Surescripts in-house attorneys with primary responsibility for day-to-day support, management, and oversight regarding this Litigation, and who are not involved in Surescripts's competitive decision-making; and

(ii) these individuals must execute the Agreement To Be Bound By Protective Order annexed hereto as Exhibit A.  A Surescripts in-house attorney performing similar roles to those identified in Paragraph 4(c)(i) may be substituted for one of the above identified in-house attorneys by consent of the Parties without need to amend this Order;

(d) FTC Personnel;

(e) Court Reporters;

(f) Experts;

(g) Mediators;

(h) Any person who has been designated as a Rule 30(b)(6) witness by the Producing Entity that produced the material;

(i) Witnesses in this Litigation; provided, however, that such disclosure shall only be made to a Witness:

(i) who is a current officer, director, or employee of the Producing Entity and who has or had an authorized right of access to the material in the ordinary course of that employment;

10

(ii) who is a former officer, director, or employee of the Producing Entity and who had an authorized right of access to the material in the ordinary course of that employment at the time the Highly Confidential Material was created or exchanged;

(iii) who is an author, addressee, or recipient of the material in question or if there are other indicia that the Witness has seen the document previously (including if a Receiving Entity wishes to show a Witness material that partially meets this criteria (e.g., an e-mail between two entities that is later forwarded internally within one entity and that intra-entity discussion contains Highly Confidential material), then the Receiving Entity may redact the entirety of the material that the Witness did not see previously); or

(iv) who is a custodian of records that has or had possession of the material or access in the ordinary course of business to the material;

(j) Any person who is an author, addressee, or recipient of the material in question, or where other indicia exist that the person has seen the document previously, and to whom disclosure is reasonably necessary for a party's development of its claims or defenses or for the preparation of witnesses in this Litigation, provided that the person is only shown that portion of the material that he or she authored or previously received;

(k) Any party may request permission to disclose materials designated as Highly Confidential or otherwise covered by this Order to a person other than those listed in this section by providing counsel for the Producing Entity with advance written notice via electronic mail at least four (4) business days before any disclosure. Any request shall state the specific material to be disclosed and the identity of each person to whom the material

USAP128

will be disclosed.  Counsel for the Producing Entity shall respond in writing via electronic

mail within four (4) business days of its receipt of such written request.  A failure to respond

within such time shall constitute consent to the request.  If the Producing Entity objects to

the disclosure, the party seeking disclosure shall not make the disclosure unless pursuant

to the procedures described in paragraph 7;

(l) Any other person to whom the Producing Entity consents in writing or by Order

of the Court.

5.  **Handling of Confidential Material and Highly Confidential Material**. All material

designated Confidential or Highly Confidential shall remain in the possession of the Attorneys

who receive such material through discovery in this Litigation, and they shall not release or

disclose the nature, substance, or contents thereof, except that copies of such materials may be

made for the use of those assisting the Attorneys to whom disclosure may be made under

paragraphs 3 and 4 above, including Experts, and copies of such materials may be submitted to the

Court under seal as necessary.  Persons who have been shown Confidential Material or Highly

Confidential Material pursuant to this Order and have not otherwise obtained or maintained the

material in the normal course of business shall not retain copies of that material.

6.  **Inadvertent Failure to Designate as to Confidentiality**. Except to the extent provided

in paragraph 2(e), in the event that a Producing Entity fails to designate confidential material as

Confidential or Highly Confidential, the Receiving Entity shall, upon a written request from the

Producing Entity, treat and preserve such information, document, paper, or other thing in

accordance with the confidentiality designation that the Producing Entity states should have been

affixed to it.  The Producing Entity shall reproduce the information, document, paper, or other

thing with the appropriate confidentiality designation unless doing so would not be feasible (as,

USAP129

for example, in the case of a final deposition transcript).  Each Receiving Entity shall replace the incorrectly designated materials with the newly designated materials, destroy the incorrectly designated materials, and treat the materials in accord with their new designation.  Except as provided in paragraph 2(e), the inadvertent failure of a party or nonparty to designate material as Confidential or Highly Confidential at the time of production shall not be deemed a waiver of the protections afforded by this Order, either as to specific information in the material or as to any other information relating thereto or on the same or related subject matter.  No party shall be deemed to have violated this Order if, prior to notification of any later designation, such material has been disclosed or used in a manner inconsistent with the later designation.  If material inadvertently not designated as Confidential or Highly Confidential was filed with a court on the public record or otherwise disclosed before the time of the material's later designation, then the Producing Entity shall be responsible for seeking appropriate relief, including return of the material.

7. **Challenging a Confidentiality Designation**.

(a) A Receiving Entity shall not be obligated to challenge the propriety of a Confidential or Highly Confidential designation at the time the designation is made.  A Receiving Entity may challenge a confidentiality designation at any time, and a Receiving Entity's failure to have made such a challenge at any previous time, including after acceptance or receipt of material with a confidentiality designation, shall not be deemed a waiver of the Receiving Entity's right to challenge any confidentiality designation.

(b) A Receiving Entity seeking to challenge a Confidential or Highly Confidential designation shall give notice in writing of such challenge to counsel for the Producing Entity, specifying Bates numbers or otherwise identifying the materials at issue with

USAP130

particularity and setting forth the basis for the Receiving Entity's challenge.

(c) Within five (5) business days of receipt of written notice that the Receiving Entity objects to the confidentiality designation, counsel for the Producing Entity shall meet and confer with counsel for the Receiving Entity to attempt to resolve the challenge.

(d) If the Receiving Entity and Producing Entity are unable to resolve the challenge, then the Receiving Entity may move the Court for an order removing the challenged material from the restrictions of this Order within thirty (30) days of service of the written notice referenced in ¶ 7(b) above.  Any papers filed in support of or in opposition to this motion shall, to the extent necessary, be filed under seal to preserve the claimed confidentiality of the material at issue.

(e) Until the Parties or the Court resolve a challenge to the designation of Confidential Material or Highly Confidential Material, the asserted designation shall remain in effect.

8. **<u>Filing Confidential Material and Highly Confidential Material</u>**. Except as provided for below, no Confidential or Highly Confidential materials, including, but not limited to, any documents, pleadings, motions, transcripts, or other filings that disclose the contents or substance thereof, shall be filed in the public record of the Litigation unless otherwise ordered by the Court. The Parties will meet and confer regarding a process for documents filed pursuant to Federal Rule of Civil Procedure 56 containing Confidential or Highly Confidential material.

9. **<u>Use of Confidential Material and Highly Confidential Material</u>**.

(a) All documents produced in discovery, and all materials designated Confidential and Highly Confidential, shall be used solely in furtherance of the prosecution, defense, or attempted settlement of this Litigation, shall not be used at any time for any other purpose

whatsoever, including, without limitation, any commercial or business purpose, and shall not be disclosed to or made accessible to any person except as specifically permitted by this Order.  All materials designated Confidential or Highly Confidential must be stored and maintained by the Receiving Entity in a manner no less secure than a Receiving Entity would store and maintain its own confidential material or that of its clients.

(b) This Order shall not restrict any attorney who is a qualified recipient under the terms of this Order from rendering advice to his or her client that is a party with respect to this Litigation, and in the course thereof, from generally relying upon his or her examination of Confidential or Highly Confidential Material. In rendering such advice or in otherwise communicating with the client, the attorney shall not disclose directly or indirectly the specific content of any Confidential or Highly Confidential Material of another party or nonparty where such disclosure would not otherwise be permitted under the terms of this Order.

(c) If any Confidential or Highly Confidential Material is filed in the public record by the Producing Entity, such public filing shall constitute the Producing Entity's waiver of the designation of the publicly filed material for its use by any party in this Litigation; provided, however, that inadvertent disclosure of Confidential or Highly Confidential Material through a public filing shall not constitute a waiver if the inadvertent disclosure is corrected within sixty (60) days by withdrawing the public filing containing Confidential or Highly Confidential Material and the filing is replaced with a filing under seal pursuant to Paragraph 6.  Such public filing will not constitute a waiver of any confidentiality designations made with respect to any nonpublicly filed portions of the publicly filed document or concerning any other material not actually publicly filed.

USAP132

(d) Nothing in this Order shall be construed to prejudice any party's right to use Confidential or Highly Confidential Material in any hearing or other pretrial proceeding before the Court, or any party's right to challenge any such use.

(e) Further procedures for the handling of Confidential and Highly Confidential Material at trial shall be addressed in a final pretrial order.  The Parties shall meet and confer to negotiate a proposal for addressing the treatment of material previously designated Confidential or Highly Confidential prior to the entry of a final pretrial order.

(f) Nothing in this Order shall prevent the FTC from disclosing and using Confidential and Highly Confidential Material, subject to taking appropriate steps to preserve confidentiality, to the extent necessary to comply with Sections 6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f) and 57b-2, or any other legal obligation imposed upon the FTC.

10. **Other Proceedings**. Any person or party subject to this Order who receives a subpoena or other request for production of information covered by this Order shall promptly notify the Producing Entity so that the Producing Entity may have an opportunity to appear and be heard on whether that information should be disclosed.  Confidential and Highly Confidential Material shall not be produced in any other proceeding, or for any use other than in this Litigation, without an order compelling production from a court of competent jurisdiction or the agreement of the Producing Entity.

11. **Unauthorized Disclosure of Confidential or Highly Confidential Information**.

(a) If any person subject to this Order becomes aware that he or she or any other person has, either intentionally or inadvertently, disclosed Confidential or Highly Confidential Material to someone not authorized to receive such material under this Order,

16

counsel for the party involved shall (i) as soon as is practicable notify in writing outside counsel for the Producing Entity of the unauthorized disclosure; (ii) use best efforts to obtain the return or destruction of all copies of the protected materials; and (iii) inform the person or persons to whom unauthorized disclosures were made, to the extent the person or persons are identifiable, of the terms of this Order.

(b) The Court has jurisdiction to enforce this Order and to grant relief, as authorized by law or in equity, for any violations thereof.

12. **Inadvertent Production or Disclosure of Privileged Documents**. If information subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity is produced inadvertently, the Parties shall comply with Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B).   For the following sentence within Federal Rule of Civil Procedure 26(b)(5)(B), the Parties agree to define the term "promptly" to mean ten (10) business days: "After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has . . . ."

13. **Nonparties**.

(a) If information sought in a discovery request implicates a Producing Entity's legal or contractual obligation to a nonparty to maintain that information's confidentiality, the following procedures shall be followed:

(i) The Producing Entity shall timely serve a written objection to the production of such information on the basis of its obligation to a nonparty not to disclose the information.

(ii) The Producing Entity shall undertake best efforts to contact the nonparty and provide the nonparty written notice of the pending request and a copy of this

USAP134

Order no later than the date on which written objections are served under section 13(a)(i).

(iii) If the nonparty does not object to the disclosure within fourteen (14) calendar days from which the written notice of the pending request was sent by the Producing Entity or such additional time as may be required by the Producing Entity's legal or contractual obligation to the nonparty, the Producing Entity shall thereafter produce the materials subject to any appropriate designations under the terms of this Order or serve revised objections stating the bases upon which the Producing Entity continues to object to production of the material.

(iv) If the nonparty objects to the disclosure, the nonparty shall within fourteen (14) calendar days seek a protective order or other appropriate relief from the Court.  Should the nonparty timely seek relief, no disclosure shall be made or required unless disclosure is ordered by the Court.

(v) Nothing in this Order shall be deemed to prohibit, hinder, or otherwise affect any party's or nonparty's ability to raise any objections on any basis to requests for discovery.

(vi) Nothing in this Order shall be deemed to require any Producing Entity to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court in connection with obligations imposed by a discovery request.

(vii) Notwithstanding the foregoing, if a Producing Entity determines that it is unable to comply with the procedures set forth in section 13(a), it will notify the party seeking the discovery at issue, and meet and confer to determine an

alternative procedure.

(b) If any discovery requests are served on a nonparty, the party serving the discovery request shall provide the nonparty with notice of the terms of this Order. Documents produced by nonparties in this Litigation that consist of or contain portions of documents originally created or generated by a party shall be treated as Highly Confidential until the expiration of sixty (60) days after the date the document is produced. During that period, if any party believes a nonparty Producing Entity has produced information which the party believes should be designated as Confidential or Highly Confidential, that party may notify the nonparty Producing Entity and other Parties of the designation that it believes should apply. The party providing such notification will then be deemed a Producing Entity with respect to such documents and such documents shall be treated as Confidential Material or Highly Confidential Material, as designated by the party. A party's inadvertent failure to designate material produced by a nonparty as Confidential or Highly Confidential shall not be deemed waiver of the protections provided by this Order if the party follows the procedures outlined in paragraph 6.

14. **Stipulation Regarding Expert Discovery**. Expert disclosures will comply with Federal Rules of Civil Procedure 26(a)(2) and 26(b)(4), except that testifying experts are required only to identify documents and other written materials relied upon by the expert in formulating an opinion in this case. Materials considered by the testifying expert that are not relied upon by the expert in formulating opinions in this case need not be disclosed. Moreover, as provided below, neither side is required to preserve or disclose the following, except as required by Federal Rule of Civil Procedure 26(b)(4)(C):

(a) Any form of communication or work product shared between any of the Parties'

19

counsel and experts, or between any of the experts themselves;

(b) Any form of communication or work product between an expert and a person or persons assisting that expert;

(c) Experts' notes, unless they constitute the only record of a fact or an assumption relied upon by the expert in formulating an opinion in this case that is disclosed pursuant to Federal Rules of Civil Procedure 26(a)(2) or 26(b)(4);

(d) Drafts of expert reports, analyses, or other work product; or

(e) Data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in the opinions contained in his or her final expert report.

15. **Further Application**. Nothing in this Order shall preclude any party, or any nonparty from whom discovery has been requested, from applying to the Court for additional or different protective provisions with respect to specific material if the need should arise during the Litigation. The Court shall retain jurisdiction over the Parties, and over any person executing an undertaking to be bound by the terms of this Order, during the pendency of the Litigation and for such time thereafter as is needed to enforce the terms of this Order.

16. **Reservation of Rights**.

(a) By designating any material Confidential or Highly Confidential, the Parties do not acknowledge that any such material is relevant or admissible in this Litigation.  All Parties reserve the right to seek discovery of, or alternatively to resist discovery of, such material in this Litigation.

(b) Nothing in this Order shall prohibit a party from using or disclosing publicly available or independently discovered information, unless the party is aware that the information has become public improperly or inadvertently.

20

(c) Nothing in this Order prevents any party from seeking a further order of this Court pursuant to Federal Rule of Civil Procedure 26(c).

17. **Modification**. The Court retains the right to allow disclosure of any subject covered by this Order or to modify this Order at any time.  Furthermore, nothing in this Order shall prejudice the right of the Parties to stipulate (subject to Court approval) an amendment, modification, or supplement to this Order.  Nothing in this Order shall preclude any party from seeking an order of the Court amending, modifying, or supplementing this Order.

18. **Conclusion of this Litigation**.

(a) The provisions of this Order will not terminate at the conclusion of this Litigation.  This Order shall remain in full force and effect unless modified, superseded, or terminated by written agreement of the Parties or by an order of this Court.

(b) Within sixty (60) days after such time as this Litigation is concluded, whether by final adjudication on the merits from which there remains no right of appeal, or by other means, any party or person producing Confidential or Highly Confidential Material may request the return of all materials and copies thereof containing Confidential or Highly Confidential Material (including but not limited to copies in the possession or control of any Expert or employee), and all reasonable costs of such return shall be borne by the requesting party.  Alternatively, the Producing Entity may allow all other counsel to certify in writing to the Producing Entity that all such information has been destroyed.  As to those materials that contain or reflect attorney work product, counsel of record for the Parties shall be entitled to retain such work product in their files, so long as such materials, in accordance with the provisions of this Protective Order, are clearly marked to reflect that they contain information subject to this Order, and are maintained as such.

21

(c) Notwithstanding any other provision of this Order, Attorneys shall be entitled to retain pleadings, affidavits, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts (including exhibits), and the trial record (including exhibits) even if such materials contain Confidential or Highly Confidential Material, so long as this Order will continue to govern any such retained materials.  The Receiving Entity's reasonable efforts shall not require the return or destruction of materials that (i) are stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes; (ii) are located in the e-mail archive system or archived electronic files of departed employees; (iii) are subject to litigation hold obligations; or (iv) are otherwise required by law to be retained.  Backup storage media need not be restored for the purpose of returning or certifying destruction of materials, but any such materials retained in backup storage media shall continue to be treated in accordance with this Order.

(d)  Nothing in this Order shall preclude the FTC from complying with the provisions of Rule 4.12 of the FTC's Rules of Practice, 16 C.F.R. § 4.12.

19. **Termination of Access**.

(a) In the event any person or party permanently ceases to be engaged in the conduct of this Litigation, such person's or party's access to Confidential and Highly Confidential material shall be terminated, and all copies thereof shall be returned or destroyed in accordance with the terms of paragraph 18 above, except that such return or destruction shall take place as soon as practicable after such person or party ceases to be engaged in the conduct of this Litigation.

USAP139

(b) The provisions of this Order shall remain in full force and effect as to any person or party who previously had access to Confidential and Highly Confidential Material, except as may be specifically ordered by the Court or consented to by the Producing Entity

**DEFENDANT**                                    **FEDERAL TRADE COMMISSION**

By:                                              By:

Alfred C. Pfeiffer, Jr. (Pro hac vice)           David B. Schwartz
Latham & Watkins LLP                             Federal Trade Commission
505 Montgomery Street, Suite 2000                400 Seventh Street SW
San Francisco, CA 94111-6538                     Washington, DC 20024
Tel: 415-391-0600                                Tel: 202-326-3748

      **SO ORDERED.**

                                                          /s/
                                           JOHN D. BATES
                              United States District Judge

Dated: <u>March 9, 2020</u>

**USAP140**

**EXHIBIT A**
**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, _____, am employed by
_____. I acknowledge and certify as follows:

1. I have read the Protective Order in Federal Trade Commission v. Surescripts, LLC, Civil Action No. 19-cv-1080 (JDB), United States District Court for the District of Columbia, and agree to be bound by its terms.

2. I will not make copies or notes of Confidential or Highly Confidential Material that I receive in this Litigation except as necessary to enable me to render assistance in connection with this Litigation.

3. I will not disclose Confidential or Highly Confidential Material that I receive in this Litigation to any person not expressly entitled to receive it under the terms of the Protective Order, and will retain any such material in a safe place.

4. I will not use Confidential or Highly Confidential Material that I receive in this Litigation for any purpose other than that authorized by the Protective Order.

5. I will retain all Confidential or Highly Confidential Material that I receive in this Litigation in my custody until I have completed my assigned duties, whereupon the materials will be returned to the party that provided them to me or destroyed, as provided by the Protective Order. Such delivery or destruction shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order.

6. I agree to be subject to the continuing jurisdiction of this Court for the sole purpose of having the terms of the Protective Order enforced.

Date: _____          Signature: _____
                                       Address: _____
                                                _____

1