IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. ANESTHESIA PARTNERS, INC., et al.,<br><br>    Defendants. | Case No.: 4:23-CV-03560-KH |

**Reply in Support of Plaintiff Federal Trade Commission's
Motion for Entry of Protective Order**

USAP's response merely confirms that Ki'jhana Friday should not have access to Highly Confidential Material in this litigation. Despite USAP's semantics about what Ms. Friday's job "regularly" or "primarily" involves, ECF No. 147 ("Resp.") 4, her declaration confirms she advises USAP's leadership, oversees all of its corporate litigation, and leads the enforcement of employment agreements it uses to stymy competitors. These responsibilities involve competitive decision making, and they create a substantial risk that Ms. Friday will inadvertently disclose the sensitive information of USAP's competitors and counterparties. Avoiding that risk by limiting Ms. Friday's access to Confidential Information will not prejudice USAP, which can still rely on her and its outside counsel to defend this litigation. The Court should grant the FTC's motion.

**I.     USAP admits Ms. Friday is involved in USAP's competitive decision making.**

The FTC has no reason to doubt the sincerity of Ms. Friday's "sworn insistence" to abide by the protective order, Resp. 5, but that is not the relevant inquiry. Instead, as USAP recognizes (Resp. 2-3), Ms. Friday's access hinges on whether her role is likely to result in the *inadvertent* disclosure of the Highly Confidential Materials from USAP's competitors, and the hospitals and insurance companies with which USAP contracts. And USAP's response underscores that Ms. Friday's role in competitive decision making at USAP presents an unacceptably high risk of inadvertent disclosure.

First, Ms. Friday has confirmed that she advises USAP's board and executives on a routine basis, which presents unavoidable opportunities for inadvertent disclosure. *See* Friday Decl. ¶ 4; ECF No. 145 ("FTC Mem.") 4. USAP attempts to downplay the risk by asserting that Ms. Friday is not the "competitive decision*maker*." Resp. 5, 7 (emphasis added). But the test "is not strictly limited to decision-making responsibility; it more broadly encompasses a lawyer's 'activities, association, and relationship' with a client and its competitive decision-making

1

activities." *FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015) (citation omitted). Because Ms. Friday "regularly participate[s] in meetings of corporate leadership at which competitive decisions are at least discussed," the risk of inadvertently disclosing Highly Confidential Materials warrants denying her access to such information. *Cf. FTC v. Peabody Energy Corp.*, No. 4:20-cv-00317-SEP, 2020 WL 1557168, at *7 (E.D. Mo. Apr. 1, 2020).

Second, Ms. Friday "oversees all corporate litigation," including against likely nonparties in this litigation. FTC Mem. 4; Friday Decl. ¶¶ 4-5. Courts in other government antitrust cases have denied sensitive information access to in-house counsel who "oversee[] all litigation matters." *See United States v. Aetna Inc.*, No. 1:16-cv-01494 (JDB), 2016 WL 8738420, at *7-8 (D.D.C. Sept. 5, 2016).[1] Here, there is specific reason to believe Ms. Friday's responsibilities will result in inadvertent disclosure. As Ms. Friday describes, Friday Decl. ¶ 6, her portfolio has included litigation against insurers like UnitedHealthcare, which USAP has sued or arbitrated against at least four other times in the last few years alone. FTC Mem. 5. Allowing her access to insurers' (and other nonparties') Highly Confidential information in this case thus presents a significant risk of disclosure in other USAP litigations involving the same companies.

Third, even what Ms. Friday calls her "primar[y]" role—employment law—implicates her in competitive decision making. Friday Decl. ¶ 5; *see* FTC Mem. 5. The employment agreements Ms. Friday "craft[s]," Friday Decl. ¶ 4, routinely include non-compete clauses that USAP uses to "prevent physicians from splitting off" and to "prevent rivals from gaining scale." Compl. ¶ 301. Ms. Friday helps to enforce those agreements. *See* Friday Decl. ¶¶ 4-5. For example, she tried to prevent physicians acquired through USAP's anticompetitive purchase of

---

[1] USAP tries to distinguish *Aetna*, pointing out that the court there denied access to an in-house litigator who was also "involved in strategic discussions regarding negotiations." Resp. 7 (quoting 2016 WL 8738420, at *7). But the *Aetna* court suggested that supervising other litigation against nonparties was, on its own, reason to deny a counsel access; indeed, it denied access to two other in-house counsel on those grounds. *See* 2016 WL 8738420, at *7-8.

2

Star Anesthesia from working for what USAP itself described as "one of [its] major competitors."[2] USAP is likely to subpoena many of these competitors during this litigation. Ex. F at Ex. A, p. 3 (listing "anesthesia practice groups" as likely subjects of discovery by USAP). Granting Ms. Friday access to their Highly Confidential Materials—including their business strategy, hiring decisions, and relationships with hospitals—will put her in the "untenable position" of having to "refuse [USAP] legal advice" on matters involving those competitors, "lest [s]he improperly or indirectly reveal" their information. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (internal quotations omitted).[3]

### II. Limiting Ms. Friday's access will not impair USAP's ability to defend itself.

USAP's claims of prejudice are overblown for three reasons. *See* Resp. 8-9.

First, USAP fails to address the authority in the FTC's motion rejecting the notion that in-house access is necessary to defend this action. FTC Mem. 6-7.[4] USAP's experienced outside antitrust counsel will have full access to all materials produced in discovery. Just because Ms. Friday is USAP's in-house counsel who purportedly participates the least in competitive decision making does not entitle her to access sensitive information. *See* Resp. 9. If none of USAP's in-house counsel can see Highly Confidential Materials, that result is hardly uncommon. *See Brown Bag*, 960 F.2d at 1469, 1471 (affirming denial of access for a party's "sole legal advisor" who had replaced its outside counsel as the attorney of record); *U.S. Steel Corp. v. United States*,

---

[2] *See* Am. Pet. ¶¶ 13, 30-31, 38, *U.S. Anesthesia Partners of Texas, P.A. v. Conlin et al.* (DC-22-15482) (Tex. Dist. Ct. Dallas Cty., Aug. 22, 2023) (attached as Exhibit E); *see, e.g., id.* Ex. B Sch. 9 (non-compete agreement); *see id.* Ex. H (letter from Ms. Friday).

[3] Ms. Friday's role thus goes beyond the mere supervisory role played by in-house counsel in cases cited by USAP. *See Merial Ltd. v. Virbac SA*, No. 4:10-cv-181-Y, 2010 WL 11534378, at *5 (N.D. Tex. June 10, 2010 ("primarily administrative"); *TiVo Inc v. Verizon Commc'ns, Inc.*, No. 2:09-cv-257, 2010 WL 9430466, at *3 (E.D. Tex. June 15, 2010) ("supervisory role").

[4] Although USAP gestures at the Fourteenth Amendment (Resp. 8), "[t]he right to counsel does not, however, entail absolute freedom of choice. . . . [Counsel]'s employment must not entail disclosure of confidential information. The choice is never completely unfettered." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983).

730 F.2d 1465, 1468 (Fed. Cir. 1984) ("[I]t may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed."); FTC Mem. 3 & n.1. Indeed, this District's model protective order for patent matters, upon which USAP attempts to rely, grants Highly Confidential access to one in-house counsel only "if agreed by the parties." *See* Protective Order § 6(C), https://www.txs.uscourts.gov/sites/txs/files/protectorder.pdf (last visited May 17, 2024).

Second, USAP does not explain how, as a lawyer who focuses on matters of "state employment law," Ms. Friday is essential to help USAP defend this federal antitrust litigation. *See* Friday Decl. ¶ 4. This is not like the cases USAP cites, where in-house counsel must have the full picture to provide specialized knowledge on topics such as computer technology or patent prosecution.[5] *See FTC v. Advoc. Health Care Network*, 162 F. Supp. 3d 666, 672 (N.D. Ill. 2016) (distinguishing patent cases, which require access for "in-house attorneys who were intimately familiar" with the subject matter). Apart from "very general, boilerplate language regarding attorneys needing to share facts with their clients," USAP fails to specify any reason why Ms. Friday needs access to Highly Confidential Materials—particularly from nonparties. *Id.* at 671.

Third, Ms. Friday can still assist USAP's outside counsel using Confidential Materials, non-designated materials, and most importantly, USAP's own materials. *See* FTC Mem. 7. This will allow her to provide the same "expertise and institutional knowledge" she did during the FTC's investigation, *see* Resp. 9, when she could access only USAP's own materials. The Highly Confidential Materials from which she would remain restricted in this case are a specific,

---

[5] *Compare United States v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 21, 24 (D.D.C. 2001); *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 2:09-cv-283-TJW-CE, 2011 WL 1157860, at *2 (E.D. Tex. Mar. 29, 2011).

limited subset of Confidential materials and is presumptively time-limited to the last three years. Revised[6] Proposed Protective Order § 2(b). Although USAP suggests that nonparties will disobey the protective order and improperly designate large swaths of materials as Highly Confidential, Resp. 9, the Court need not credit such speculation.

## CONCLUSION

For the foregoing reasons, the Court should enter the FTC's revised proposed protective order restricting Ms. Friday from accessing Highly Confidential Material.

Dated: May 17, 2024

Respectfully submitted,

*/s/ Timothy Kamal-Grayson*
Timothy Kamal-Grayson (*Pro Hac Vice*)

600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3369
Email: tkamalgrayson@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*

---

[6] The FTC's revised proposed protective order makes changes in light of the Court granting Welsh Carson's motion to dismiss. A redline to the FTC's original proposed order (ECF No. 144-1) is attached as Exhibit G.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the Plaintiff Federal Trade Commission's Reply in Support of Motion for Entry of Protective Order, Revised Proposed Protective Order, Second Declaration of Michael Arin and accompanying exhibits to be served on all counsel of record using the ECF system of the United States District Court for the Southern District of Texas.

Dated: May 17, 2024

                                                        */s/ Timothy Kamal-Grayson*
                                                        Timothy Kamal-Grayson (*Pro Hac Vice*)

                                                        600 Pennsylvania Avenue, N.W.
                                                        Washington, D.C. 20580
                                                        Tel: (202) 326-3369
                                                        Email: tkamalgrayson@ftc.gov

                                                        *Counsel for Plaintiff Federal Trade Commission*