**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No.: 4:23-CV-03560-KH |
| U.S. ANESTHESIA PARTNERS, INC. et al. | |
| Defendants. | |

**APPENDIX TO DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S
MOTION FOR STAY PENDING INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

Page

**CASES**

*Brown v. Taylor*, 2024 WL 1600314 (C.D. Cal. Apr. 3, 2024) ........................................ USAP001

*Harrington v. Cracker Barrel Old Country Store Inc.*, 2024 WL 342440
    (D. Ariz. Jan. 30, 2024), *appeal filed*, No. 24-00072 (9th Cir. Feb. 12, 2024) .......... USAP005

*United States v. Trump*, 2023 WL 8615775 (D.D.C. Dec. 13, 2023) .............................. USAP018

*Wilhoite v. Hou*, 2024 WL 2869986 (S.D. Cal. June 6, 2024) ........................................ USAP020

2024 WL 1600314
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Clinton BROWN, Plaintiff,

v.

Clark R. TAYLOR, AICP, The Los Angeles County
Department of Regional Planning, Defendant.

Case No.: 2:22-cv-09203-MEMF-KS
|
Signed April 3, 2024

**Attorneys and Law Firms**

Clinton Brown, Pacific Palisades, CA, Pro Se.

Thomas C. Hurrell, Jonathan Fang, Hurrell Cantrall LLP,
Los Angeles, CA, Thomas R Parker, Los Angeles, CA, for
Defendant.

**ORDER DENYING MOTION TO STAY [ECF NO. 116]**

MAAME EWUSI-MENSAH FRIMPONG, United States
District Judge

 **\*1**  Before the Court is a Motion for Stay Pending
Interlocutory Appeal filed by Plaintiff Clinton Brown. ECF
No. 116. The Court deems this matter appropriate for
resolution without oral argument, *See* C.D. Cal. L.R. 7-15,
and notes that Brown waived oral argument. *See* Reply at 1.
For the reasons stated herein, the Court DENIES the Motion
to Stay.

### I. Factual Background and Procedural History

The factual background and procedural history have been
described at length in the Court's previous Orders. *See* ECF
Nos. 105, 145. The Court will only address aspects relevant
to this Order.

Plaintiff Clinton Brown ("Brown") filed suit in this Court
on December 17, 2022. *See* ECF No. 1 ("Complaint" or
"Compl."). Brown's suit relates to his efforts to develop a
solar farm on a property located at 27250 Agoura Road in
unincorporated Los Angeles County ("the Agoura Property").
*Id.* at 3. Defendant Clark Taylor ("Taylor"), in his capacity
as a Senior Planner for the Los Angeles County Department
of Building and Safety ("LACDBS"), rejected Brown's

application for a proposed solar farm on the Agoura Property.
*See id.* at 3–4. Brown alleges that the restrictions on the
use of the Agoura Property constitute a taking that requires
compensation under the Fifth Amendment to the United
States Constitution. *See* Compl.

Brown filed a series of motions for injunctive relief. ECF
Nos. 42, 62. On December 5, 2023, the Court issued an Order
denying Brown's motions for preliminary injunctions. *See*
ECF No. 105 ("PI Order"). The Court held that Brown had
failed to show a likelihood of success on the merits of his
takings claim, as required for a preliminary injunction. *See id.*
at 8–10. This holding was in part based on counsel for Taylor's
statements regarding what exactly the County prohibits at
the Agoura Property—"that while the County would have
the right to prohibit the construction of any structure on the
Agoura Property, it has not done so, and at [the time of the PI
Order] *only prohibits Brown from constructing a solar farm.*"
*See id.* at 9 (emphasis added). The Court explained that under
relevant precedent, a regulation that "deprives land of all
economically beneficial use" is generally a taking (with some
exceptions), but a regulation that prohibits only "a certain
type of land use" is generally not a taking. *See id.* at 7. The
Court then held that, based on the understanding that other
uses were not prohibited, "[p]rohibition of *solar farms only* on
the Agoura Property would almost certainly not be a taking."
*Id.* at 9 (emphasis added). The Court also noted that there
was some evidence suggesting that Brown was aware of the
restrictions when he purchased the property, which would
further undermine his takings claim. *See id.* at 10.

Brown appealed the Court's PI Order, and the appeal is
currently pending. *See* ECF No. 108 (Notice of Appeal); *see
also Brown v. Taylor*, Ninth Circuit Case No. 23-4131. Brown
also filed a Motion for Costs [1] which is currently pending.
See ECF No. 137.

---

[1]     The Motion for Costs seeks costs purportedly
        related to opposing a Motion to Compel filed by
        Taylor, which the Court denied. See ECF Nos. 137
        (Motion for Costs), 112 (Order Denying Motion to
        Compel).

 **\*2**  Brown later filed an Application for a Temporary
Restraining Order, in which he stated that he would soon be
evicted from his home (a property distinct from the Agoura
Property) by a non-party landlord. *See* ECF No. 138 ("TRO
Application"). Brown sought to stay the eviction and order
the government to post a bond, based on the argument that the

eviction would not occur but for the government's restrictions on his use of the Agoura Property. *Id.* The Court denied Brown's TRO Application, noting that Brown had still not shown the requisite likelihood of success on the merits, and that the Court lacks power to stay the state court unlawful detainer action between Brown and his landlord (who is not a party to this action). ECF No. 145 ("TRO Order"). However, the Court noted that at the hearing, Taylor clarified the County's position regarding the Agoura Property—per Taylor's counsel, "the relevant County Ordinance prohibits *any improvements* to the Agoura Property, and *does not only prohibit solar farms.*" *See id.* at 6. Brown argued that denying him the right to live at the Agoura Property would be a taking. *See id.* at 5. The Court did not reach this question, noting that it was not included in Brown's complaint and therefore it would not be appropriate to grant a temporary restraining order on this theory. *See id.* at 6.

Taylor has filed a Motion for Summary Judgment ("MSJ") which is currently pending. *See* ECF No. 82. That Motion has been referred to the Magistrate Judge for a report and recommendation but will ultimately be decided by this Court. *See* ECF No. 98.

Brown filed the instant Motion for Stay Pending Interlocutory Appeal on December 25, 2023. ECF No. 116 ("Motion" or "Mot."). Taylor filed an Opposition to the Motion on February 9, 2024. ECF No. 134 ("Opposition" or "Opp'n"). Brown filed a Reply in support of the Motion on February 13, 2024. ECF No. 135 ("Reply"). Brown clarified in his reply that he seeks only a stay of the pending MSJ, not of the action as a whole. *See id.* at 1.

## II. Applicable Law

Generally, only "final decisions of the district courts of the United States" may be appealed. *See* 28 U.S.C.A. § 1291. However, there is an exception for orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C.A. § 1292. Appellate courts have jurisdiction to hear interlocutory appeals have orders denying preliminary injunctions. *See id.*; *see also Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 966 (9th Cir. 2024).

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). This judge

made rule [2] exists to "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984). In some instances, "the entire case is essentially 'involved in the appeal,' " and so all proceedings at the district court should be stayed pending the interlocutory appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023). One such circumstance is when the issue up for interlocutory appeal is "whether the case belongs in arbitration or instead in the district court," which plainly affects the entire action. *See id.*

[2]      Although "*Griggs* referred to the 'divestiture rule' as jurisdictional, the Supreme Court has since made clear that only Congress may determine a lower federal court's subject-matter jurisdiction." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018). The rule divesting district courts of jurisdiction while an interlocutory appeal is pending is thus not a "true jurisdictional rule[ ]" and can be applied in a "less stern manner." *Id.*

The Ninth Circuit has further held that where an interlocutory order "is immediately appealable," the filing of an appeal "divests the district court of jurisdiction to proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). There is an exception to this rule if the appeal is certified by the district court as "frivolous" or "waived." *See id.*; *see also Rodriguez*, 891 F. 3d at 790. This exception stems from a concern that "the appeals process might be abused to run up an adversary's costs or to delay trial." *Rodriguez*, 891 F. 3d at 790. But "[i]n the absence of such certification," the district court cannot proceed with trial. *Id.*

## III. Discussion

**\*3** The Court finds that the pending interlocutory appeal does not warrant a stay of the pending MSJ, and so the Motion will be DENIED.

The Court must first clarify the rule governing the Court's determination of the Motion in light of the parties' discussions of *Landis v. North American Company*, 299 U.S. 248 (1936), and similar cases. *See* Mot. at 3; Opp'n at 4. *Landis* and its progeny held that district court may stay cases as an exercise of their discretion and should weigh various interests in doing so. *See Landis*, 299 U.S. at 254–55 (1936); *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (courts should consider "the competing interests which will be affected by the granting or refusal to grant a stay") (citing

*Landis*, 299 U.S. at 254–55). This line of cases does not consider the impact of the filing of an interlocutory appeal. As described above, the filing of an interlocutory appeal generally deprives the Court of jurisdiction over "aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. This creates a significantly different situation than that described in *Landis*. Thus, the Court will apply the rule described in the applicable law section above and will not use the *Landis* test.

Here, Brown is appealing the Court's PI Order, which denied Brown's Motion for a Preliminary Injunction. Brown now seeks a stay of the pending MSJ. *See* Mot. The key issue for this Motion is whether the MSJ involves "aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58.

Courts have provided some guidance on what matters do or do not involve aspects of the case involved in the appeal. A motion to seal a filing need not be stayed pending an appeal. *Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015). Similarly, a motion for attorneys' fees need not necessarily be stayed pending an appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 n.2 (2023) ("Coinbase concedes that the district court may still proceed with matters that are not involved in the appeal, such as the awarding of costs and attorney's fees."). The Court is aware of no binding precedent addressing whether an MSJ implicates the issues involved in the appeal of an order denying a preliminary injunction.

A review of the MSJ suggests that there is little overlap between the issues raised in the MSJ and in the PI Order. As discussed above, the factual record at the time of the PI Order suggested that the County "only prohibits Brown from constructing a solar farm." *See* PI Order at 9. That record has now changed, as Taylor now concedes that the County prohibits "any improvements to the Agoura Property, and does not only prohibit solar farms." TRO Order at 6. The MSJ reflects this change—Taylor states as fact that the relevant zoning ordinance prohibits "residential and/or commercial structures." *See* MSJ at 14. This significantly changes the takings analysis. Taylor does not argue that the restrictions are not a taking because they only prohibit solar farms, which was the crux of the Court's reasoning in the PI Order. *See* MSJ. Instead, Taylor argues that the restrictions which require the Agoura Property to "remain essentially unimproved" predated Brown's purported purchase of the land. *See id.* at 14. Taylor also raises other arguments not addressed at all in the Court's PI Order, including that Brown does not actually own the land and thus lacks standing. In sum, the issues raised in the MSJ are very different than those raised in the PI Order.

*See id.* at 6–9. Although there are superficial similarities between the appeal of the PI Order and the MSJ in that both consider whether there was a taking requiring compensation at the Agoura Property, the factual record has changed, and the specific arguments raised and issues to decide are entirely different.

**\*4** Beyond just the changes in the factual record, the legal issues raised in the appeal are distinct from those in the MSJ. As the Court explained in its PI Order, the PI Order "only determin[ed] whether Brown ha[d] met his burden for a preliminary injunction," and was "not a final decision on the merits of Brown's claims." PI Order at 6. The Court reached the conclusions in its PI Order based on its analysis of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). As Brown explains in his papers regarding this Motion, Brown's argument on appeal will in part be that the Court improperly applied the *Winter* factors—in that the Court first determined that Brown had not shown a likelihood of success and then did not reach the other factors. On appeal, the Ninth Circuit will presumably consider whether Brown showed that he was entitled to a preliminary injunction under *Winter*. This issue, importantly, will be entirely absent from the MSJ.

The Court thus finds that the MSJ is not an "aspect[ ] of the case involved in the appeal." *Griggs*, 459 U.S. at 58. The devestiture rule is meant to prevent "confusion or waste of time resulting from having the same issues before two courts at the same time." *Claiborne*, 727 F.2d at 850. Here, that will not occur—the factual record and legal issues are significantly different, and there is no risk of conflicting decisions. It is possible that Brown might win his appeal based on a finding that the Court improperly applied *Winter*, but still lose his MSJ on the merits. Alternatively, it is possible that Brown might lose his appeal based on findings that the Court properly applied *Winter* and the record at the time did not support a preliminary injunction, but still win the MSJ. Accordingly, there will be no waste of judicial recourses or risk of contradictory orders if the two motions are heard in parallel.

This is not a situation like the one in *Coinbase* where "the entire case is essentially 'involved in the appeal.' " *See Coinbase*, 599 U.S. at 741. There, the issue being appealed was whether the case should be litigated in the district court at all, and so the appeal implicated the entire action. *See id.* Here, the appeal concerns only whether Brown should be entitled to injunctive relief based on the factual record at the time of

USAP003

2024 WL 1600314

the PI Order, and regardless of whether he won that relief, the case would have eventually proceeded to the MSJ stage.

The Court also notes that Brown has argued that a decision on the MSJ might render his appeal moot. *See* Reply at 4 ("If the Court decides the MSJ before the Ninth Circuit rules on the appeal regarding the preliminary injunction, it could effectively render the appeal moot, or at least complicate the appellate court's consideration of the case."). But this is not the relevant question. Nothing in *Griggs* suggests that a court should stay a case pending appeal if there is evidence that further developments in the case might moot the appeal. *See Griggs*, 459 U.S. at 58–61. Thus, the Court need not consider whether Brown is correct that the MSJ may moot the appeal—even assuming this is true, it would not necessitate a stay.

Further, the Court finds that because of the changes in the factual record, a stay would actually be inefficient. It is in both parties' interests to expeditiously determine whether the fully developed factual record constitutes a taking. It would be inefficient to delay resolution of the MSJ to allow an appeal that focuses on different issues and an outdated factual record.

**IV. <u>Conclusion</u>**

For the reasons stated herein, the Motion for Stay Pending Interlocutory Appeal is DENIED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1600314

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 342440
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

Andrew HARRINGTON, et al., Plaintiffs,

v.

CRACKER BARREL OLD COUNTRY
STORE INCORPORATED, Defendant.

No. CV-21-00940-PHX-DJH
|
Signed January 30, 2024

**Synopsis**

**Background:** Employees brought action against employer
for alleged violations of the Fair Labor Standards Act (FLSA)
provisions governing wages for tipped employees. The
United States District Court for the District of Arizona, Diane
J. Humetewa, J., 2023 WL 2734459, granted employees'
motion for preliminary certification of the matter as a
collective action under the FLSA and denied employer's
motion to dismiss and to compel arbitration. Employer filed a
motion for reconsideration, a motion to certify interlocutory
appeal, and motions to strike employee's request for equitable
tolling and notice of supplemental authority.

**Holdings:** The District Court, Diane J. Humetewa, J., held
that:

the proper statute of limitations under the FLSA was three
years before the court certified the matter as a collective
action;

statute of limitations would be equitably tolled to reflect
district court's delay in ruling on certification and employer's
motions;

whether opt-in members of the collective action were subject
to arbitration was properly determined at the second stage of
the FLSA certification process;

employer was entitled to interlocutory appeal of questions
regarding arbitration and personal jurisdiction;

interlocutory appeal was not appropriate to address the
question of process used by district court to preliminarily
certify the collective action;

employees' notice of supplemental authority would be
stricken as improper and unnecessary; and

a stay of proceedings pending appeal was warranted .

Ordered accordingly.

**Procedural Posture(s):** Motion for Reconsideration; Motion
for Equitable Tolling; Motion to Strike; Motion for Certificate
of Appealability; Motion to Stay Proceedings.

**Attorneys and Law Firms**

Monika Sud-Devaraj, Law Offices of Monika Sud-Devaraj
& Marshall G. Whitehead PLL, Phoenix, AZ, Nitin Sud, Pro
Hac Vice, Sud Law PC, Bellaire, TX, for Plaintiffs.

James Matthew Coleman, Pro Hac Vice, Jason Daniel
Friedman, Pro Hac Vice, Constangy Brooks Smith &
Prophete LLP, Fairfax, VA, Jeffrey Stephen Hunter, William
W. Drury, Jr., Weinberg Wheeler Hudgins Gunn & Dial LLC,
Phoenix, AZ, Miles M. Masog, Renaud Cook Drury Mesaros
PA, Phoenix, AZ, for Defendant.

## ORDER

Diane J. Humetewa, United States District Judge

**\*1** On March 31, 2023, the Court conditionally certified this
matter as a collective action under the Fair Labor Standards
Act, 29 U.S.C. §§ 201 et seq. ("FLSA") (the "Collective
Certification Order") (Doc. 82). Pending before the Court are
five motions filed by Defendant Cracker Barrel Old Country
Store Incorporated ("Cracker Barrel"), each of which concern
rulings that stem from the Collective Certification Order:

(1) Cracker Barrel's "Motion for Clarification, or, in
the Alternative, Reconsideration" (Doc. 83) [1] ("Motion
for Reconsideration") regarding the putative collective
definition that was established in the Collective
Certification Order;

(2) Cracker Barrel's "Motion to Certify Interlocutory
Appeal" (Doc. 84) [2] of four questions arising out of the
Collective Certification Order;

(3) Cracker Barrel's "Motion to Strike Plaintiffs' Request
for Equitable Tolling" (Doc. 93) [3], where the contended

USAP005

request appeared in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration (Doc. 90);

(4) Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96)[4] of the Collective Certification Order to the Ninth Circuit (Doc. 91);

(5) Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101)[5] regarding *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023).

For the following reasons, the Court will modify the putative collective definition, certify for interlocutory appeal questions regarding arbitration and personal jurisdiction in FLSA collective actions, and stay the matter pending the Ninth Circuit's review.

[1]   The matter is fully briefed. Plaintiffs filed a Response (Doc. 90) in accordance with the Court's April 17, 2023, Order (Doc. 88).

[2]   The matter is fully briefed. Plaintiffs did not file a Response, and the time to do so has passed. *See* LRCiv 7.2(c) (opposing party has 14 days after service within which to serve and file a responsive memorandum).

[3]   The matter is fully briefed. Plaintiffs filed a Response (Doc. 94). Cracker Barrel did not file a reply brief and the time to do so has passed. *See* LRCiv. 7.2(c).

[4]   The matter is fully briefed. Plaintiffs filed a Response (Doc. 97) and Cracker Barrel filed a Reply (Doc. 98).

[5]   The matter is fully briefed. Plaintiffs filed a Response (Doc. 102). Cracker Barrel did not file a reply brief and the time to do so has passed. *See* LRCiv. 7.2(c).

## I. Procedural History[6]

[6]   The Court incorporates by reference the Background Section of its Collective Certification Order (Doc. 82 at 2–4), which contains a comprehensive history of Plaintiffs' prior amended complaints (Docs. 1; 57; 74) and prior motions for certification (Docs. 8; 58; 76).

Cracker Barrel filed most of the pending motions within the span of twenty-one days, creating a complex procedural history. Below is a brief overview of the relevant rulings, motions, and arguments:

In August 2022, Cracker Barrel filed its "Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice" (Doc. 77). Plaintiffs Andrew Harrington, Katie Liammaytry, Jason Lenchert, and Dylan Basch (collectively "Plaintiffs' ") also filed their "Second Amended Motion For Conditional Certification" (Doc. 76). In March 2023, the Court issued its Collective Certification Order, which denied Cracker Barrel's Motion but granted Plaintiffs' Motion. (*See generally* Doc. 82). In so doing, the Court conditionally certified the present action as a collective under Section 216(b) of the FLSA. (*Id.*) The Court defined the following putative collective for notice purposes: "all current and former Cracker Barrel servers who worked for Cracker Barrel from May 28, 2018, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme." (*Id.* at 28).[7] The Court also authorized Plaintiffs' Notice and Consent to Join forms (Docs. 76-13; 76-14) (the "Notice Forms") to be disseminated in compliance with the Court's directives. (Doc. 82 at 19–28).

[7]   The Court used the proposed putative collective definition as stated in Plaintiffs' Motion to Certify Class (*see* Doc. 76 at 2). (Doc. 82 at 11 n.8).

**\*2**  On April 14, 2023, Cracker Barrel filed its Motion for Reconsideration on the bounds of the putative collective for notice purposes. (Doc. 83). Cracker Barrel concurrently filed a Motion to Certify Interlocutory Appeal (Doc. 84) and a "Motion to Stay Deadlines for Answer and Production of Employee Data" (Doc. 85).

In its April 17, 2023, Order, the Court noted some merit in Cracker Barrel's position on the defined putative collective, and thus ordered the parties to meet and confer on possible stipulated language for the terms of notice. (Doc. 88 at 1). If no agreement could be reached, the Court ordered Plaintiffs to respond to Cracker Barrel's Motion for Reconsideration. (*Id.*) Consequently, the Court stayed the notice deadlines established in the Collective Certification Order pending a ruling on Cracker Barrel's Motion for Reconsideration. (*Id.* at 2).

On April 28, 2203, Plaintiffs filed their Response to Cracker Barrel's Motion for Reconsideration (Doc. 90) agreeing to a

"slight modification" of the Collective Certification Order. (*Id.* at 1).

On April 30, 2023, instead of waiting for the Court to review the parties' arguments on the Collective Certification Order and rule on the related Motion for Reconsideration, Cracker Barrel appealed the Collective Certification Order to the Ninth Circuit. (Doc. 91). Thereafter, Cracker Barrel moved to strike Plaintiffs' request for equitable tolling as set forth in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration. (Doc. 93). Cracker Barrel also moved to stay the case pending the appeal of the Collective Certification Order. (Doc. 96).

On June 25, 2023, Plaintiffs file a notice of new United States Supreme Court authority that relates to issues in the present matter. (Doc. 99). Cracker Barrel moved to strike Plaintiffs' notice. (Doc. 99).

On October 4, 2023, Cracker Barrel's then-counsel moved to withdraw as counsel of record. (Doc. 103). Cracker Barrel has since retained new counsel. (Doc. 105).

## II. Discussion

The Court will address together Cracker Barrel's Motion for Reconsideration and Motion to Strike Plaintiffs' Request for Equitable Tolling because both relate to the bounds of the putative collective. The Court will then turn to Cracker Barrel's Motion to Certify Interlocutory Appeal. The Court will conclude with Cracker Barrel's Motion to Stay Proceedings Pending Appeal and Motion to Strike Plaintiffs' Notice of Supplemental Authority because both relate to whether a stay in this case is proper.

### A. Cracker Barrel's Motion for Reconsideration (Doc. 83) and Motion to Strike Plaintiffs' Request for Equitable Tolling (Doc. 93)

Cracker Barrel seeks reconsideration of the putative collective definition due to concerns regarding the scope of data it must produce on the individuals who will be sent notice. Cracker Barrel represents the putative collective currently encompasses 159,934 individuals. (Doc. 83 at 3). Cracker Barrel seeks clarification of the definition "to make sure FLSA conditional certification notice is not sent to individuals whose FLSA claims are already time-barred or who this Court has previously determined cannot join this court action." (*Id.* at 2). First, Cracker Barrel argues the Court should reconsider the time frame of the putative

collective in light of the opt-in standard for FLSA collective actions. (*Id.* at 4–6). Cracker Barrel seeks to strike Plaintiffs' request that the statute of limitations be equitably tolled. (*See generally* Doc. 93). Second, Cracker Barrel argues the Court should reconsider the scope of the putative collective so that it expressly excludes servers who signed Cracker Barrel's Arbitration Agreement after turning 18 years old. (Doc. 83 at 10, 6–9).

**\*3** The Court will set forth the applicable legal standard for motions for reconsideration before turning to Cracker Barrel's arguments.

### 1. Legal Standards

Motions for reconsideration should be granted only in rare circumstances. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Similarly, Arizona Local Rule of Civil Procedure 7.2 provides "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). The movant must specify "[a]ny new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier." *Id.* Whether to grant a motion for reconsideration is left to the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003). Such motions should not be used for the purpose of asking a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

### 2. The Time Frame of the Putative Collective

Cracker Barrel first argues the Court should reconsider the time frame of the putative collective because it does not

accurately reflect the opt-in standard for FLSA collective actions. The Collective Certification Order defined the putative collective for notice purposes as follows: "all current and former Cracker Barrel servers who worked for Cracker Barrel *from May 28, 2018, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme." (Doc. 82 at 28) (emphasis added). In so defining, the Court settled that Plaintiffs may use the three-year statutory time period for Cracker Barrel's allegedly willful violations of the FLSA. (*Id.* at 25) (citing 29 U.S.C. § 225(a)). Cracker Barrel does not take issue with the Court's decision to do so. The Court further explained that because the original complaint in this matter was filed on May 28, 2021, the putative collective time frame is three years before the filing of the complaint on May 18, 2018. (*Id.*) Cracker Barrel argues this decision was error.

Cracker Barrel posits the time frame should start on March 31, 2020—or, three years before the Court certified this matter as a collective action. (Doc. 83 at 6). Cracker Barrel maintains that collective actions under the FLSA differ from other class actions under Federal Rule of Civil Procedure 23 in that an FLSA opt-in plaintiff's action is considered commenced from the date their opt-in form is filed with the district court. (*Id.* at 4). Cracker Barrel asserts the Court's error resulted in a defined collective that includes an extra 64,216 individuals whose claims would otherwise be time-barred. (*Id.* at 5). In response, Plaintiffs admit that "a three-year statute of limitations from the date a plaintiff opts-in is generally the rule" in FLSA cases. (Doc. 90 at 2). However, Plaintiffs argue the statute of limitations should be equitably tolled due to Cracker Barrel's efforts to prolong case proceedings. (*Id.* at 5–8). Cracker Barrel moves to strike Plaintiffs' request on the basis that it is improper to raise new claims or grounds for relief in a response brief. (Doc. 93 at 2).

**\*4** The Courts agrees with Cracker Barrel that the Collective Certification Order erred when setting the time frame of the putative collective as three years prior to the filing of the complaint. The Court also finds that Plaintiffs' request for equitable tolling—although procedurally improper—is meritorious. The time frame of the putative collective will be modified accordingly.

### a. The Putative Collective Should Reflect the FLSA's Opt-in Standard

Section 255(a) of the FLSA states that "a cause of action arising out of a willful violation may be *commenced* within three years after the cause of action accrued." 29 U.S.C. § 255(a) (emphasis added). Section 256 further defines when a cause of action has been "commenced" for statute of limitation purposes:

> In determining when an action is commenced for the purposes of section 255 of [the FLSA], an action commenced on or after May 14, 1947 [under the FLSA] shall be considered to be commenced on the date when the complaint is filed; *except that in the case of a collective or class action instituted under the [FLSA],* it shall be considered to be commenced in the case of any individual claimant—
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear—*on the subsequent date on which such written consent is filed in the court in which the action was commenced.*

*Id.* § 256 (emphasis added). In other words, in an FLSA collective action such as here, an opt-in plaintiff's action is deemed "commenced" from the date her opt-in form is filed, not from the date the complaint was filed. *Campbell v. City of L.A.*, 903 F.3d 1090, 1104 (9th Cir. 2018) (citing 29 U.S.C. § 256). The Northern District of California has highlighted the FLSA's distinct opt-in standard in *Coppernoll v. Hamcor, Inc.*:

> For purposes of calculating the timeliness of a FLSA claim, the statute of limitations is tolled for each putative class member individually upon filing a written consent to become a party plaintiff. This opt-in standard differs from the opt-out standard in a Rule 23 class action, where the statute of limitations is tolled for all putative class members when the complaint is filed. Thus, without equitable tolling, the statute of limitations on a putative class member's FLSA claim continues to run in the time between the filing of

USAP008

the collective action complaint and the filing of their written consent opting-in.

2017 WL 1508853, at *1 (N.D. Cal. Apr. 27, 2017).

Because this is an FLSA collective suit, the Court should not have applied the opt-out standard; rather, the putative collective should be framed based on the opt-in standard under Section 256. The Collective Certification Order erred when it set the time frame of the putative collective as May 28, 2018, on the basis that an FLSA opt-in plaintiff's action is commenced on the date the complaint is filed. (Doc. 82 at 25). Section 256 of the FLSA rather establishes that an FLSA opt-in plaintiff's action is "commenced" from the date her opt-in form is filed. 29 U.S.C. § 256. Plaintiffs certainly concede to this general rule. (Doc. 90 at 2). Therefore, the Court agrees with Cracker Barrel that it is more appropriate to set the time frame of the putative collective as three years before the Court certified this matter as a collective action. The remaining issue, however, is Plaintiffs' request to equitably toll the applicable statute of limitations.

### b. Plaintiffs' Request for Equitable Tolling

**\*5** Plaintiffs request that the Court toll the statute of limitations on the putative collective's FLSA claims due to (1) Cracker Barrel's efforts to prolong case proceedings and (2) other delays in this case. (Doc. 90 at 5–8). Cracker Barrel moves to strike Plaintiffs' request as procedurally deficient, arguing it is "inappropriate [ ] to imbed in a response brief." (Doc. 93 at 2). Even so, Cracker Barrel submitted a proposed "Response in Opposition" regarding Plaintiffs' equitable tolling arguments in the event the Court construes Plaintiffs' request as a new motion. (Doc. 93-2). Plaintiffs have no objection to the Court considering Cracker Barrel's Response in Opposition and have submitted a reply brief thereto. (See Doc. 94). The Court will address Cracker Barrel's procedural arguments before turning to the merits of Plaintiffs' request for tolling.

### i. Plaintiffs' Request for Tolling is Construed as a Motion

At the outset, to request a new claim for relief for the first time in a response brief is not the appropriate procedure. See

Allen v. Beard, 2019 WL 2501925, *2 n.3 (S.D. Cal. June 17, 2019) (explaining "a defendant must have 'fair notice' of the claims and the grounds for relief" and so a plaintiff "may not raise new claims or new grounds for relief in opposition to [a] motion") (citing Pickern v. Pier I Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006)); Griego v. Cnty. of Maui, 2017 WL 2882695, at *5 (D. Haw. July 6, 2017) ("The regular briefing protocol for a motion would be undermined if a new motion (other than a mirror-image motion such as a cross- or counter-motion) were countenanced if mentioned in an opposition memorandum."). Plaintiffs indeed recognize they have failed to file a motion for equitable tolling. (Doc. 90 at 8 n.3). Nonetheless, because Cracker Barrel preemptively submitted a Response in Opposition to Plaintiffs' tolling arguments, to which Plaintiffs have replied, any notice concerns are remedied. In the interest of judicial economy, the Court will proceed by construing Plaintiffs' request for equitable tolling as a fully briefed motion.[8] Plaintiffs, however, are admonished for this unconventional procedure.

[8]     (Doc. 90 at 5–8 (Plaintiffs' Request for Equitable Tolling)); (Doc. 93-1 (Cracker Barrel's Response)); (Doc. 94 (Plaintiffs' Reply)).

### ii. Plaintiffs' Request for Tolling has Merit

As to the merits of Plaintiffs' request, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The Ninth Circuit has stated that courts have discretion to apply equitable tolling on a case-by-case basis, but that such relief is to be applied "sparingly" and in "extreme" scenarios. Scholar v. Pac. Bell, 963 F.2d 264, 267 (9th Cir. 1992); see also Partlow v. Jewish Orphans' Home of Southern Cal., Inc., 645 F.2d 757, 760-61 (9th Cir. 1981), abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (stating the statute of limitations under Section 255 of the FLSA may be tolled "when equity warrants". For example, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999), as amended (Mar. 22, 1999). The Court finds the latter warrants tolling here.

Plaintiffs argue equitable tolling should apply from either September 3, 2021—the date Plaintiffs' initial Motion to Certify Class (Doc. 8) was fully briefed—or October 4, 2021 —the date the Court granted Cracker Barrel's Motion to Stay Discovery (Docs. 41; 45). (Doc. 90 at 7–8). Plaintiffs point to (1) Cracker Barrel's efforts to prolong the case and (2) the Court's discretionary case management decisions as circumstances beyond their control that give rise to equitable tolling. (*Id.* at 8.) Cracker Barrel contends Plaintiffs cannot rely on their previously failed litigation attempts to seek tolling, as the Court ultimately denied Plaintiffs' initial Motion to Certify Class and dismissed the complaint that was connected to the Court's stay of discovery. (Doc. 93-2 at 4).

**\*6** The Court agrees with Cracker Barrel that failed litigation efforts are hardly the type of extreme circumstances that justify equitable tolling. However, the Court is persuaded by Plaintiffs' line of authorities that have applied equitable tolling "where the court's discretionary case management decisions have led to procedural delay beyond the control of the putative collective action members." *Koval v. Pac. Bell Tel. Co.*, 2012 WL 3283428, at \*7 (N.D. Cal. Aug. 10, 2012); (*see* Doc. 90 at 7–8). Those authorities have found delays beyond a plaintiff's control include the time a court requires to rule on a motion to certify a collective action under the FLSA. *See Winningham v. Rafeal's Gourmet Diner, LLC*, 2022 WL 18359485, at \*2 (D. Or. Dec. 19, 2022), *report and recommendation adopted*, 2023 WL 197005 (D. Or. Jan. 17, 2023); *Small v. Univ. Med. Ctr. of S. Nevada*, 2013 WL 3043454, at \*3 (D. Nev. June 14, 2013)); *Helton v. Factor 5, Inc.*, 2011 WL 5925078, \*2 (N.D. Cal. Nov. 28, 2011). Here, the Court took under advisement Plaintiffs' Second Motion to Certify Class for six months before conditionally certifying this action as a collective. The Court required an additional ten months to resolve Cracker Barrels' five pending motion, all of which has been delaying the dissemination of notice to the putative collective despite this action being conditionally certified under the FLSA. Given that these delays are outside of Plaintiffs' control, the Court will equitably toll the statute of limitations from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review— until the date on which notice is sent to the putative collective. *See Winningham*, 2022 WL 18359485, at \*2; *Koval v. Pac. Bell Tel. Co.*, 2012 WL 3283428, at \*7.

In sum, to account for (1) the applicable three-year statute of limitations under the FLSA, (2) the opt-in standard under the FLSA, (3) the equitable tolling period that will run from September 6, 2022, until the date that notice is disseminated

to the putative class, and (4) the policy that the broadest notice possible be approved on conditional certification of FLSA collective actions, [9] the time frame of the putative collective class for notice purposes shall include: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

[9]      (*See* Doc. 82 at 24) (citing *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at \*3 (D. Ariz. Mar. 8, 2022)).

### 3. The Scope of the Putative Collective

Cracker Barrel next argues the Court erred when it included individuals who are subject to arbitration in the putative collective. (Doc. 83 at 6–10). The Court directly addressed this issue in the Collective Certification Order. (Doc. 82 at 20–21). In denying Cracker Barrel's Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice, the Court further examined Cracker Barrel's Arbitration Agreement and clarified which employees are subject to arbitration versus those who are not:

> Employees who have signed the Agreement, including through Cracker Barrel's online training program, while the majority age are subject to the Agreement. By contrast, employees are not subject to the Agreement if they: (1) did not sign the Agreement; (2) signed the Agreement when they were a minor and are still a minor; or (3) signed the Agreement when they were a minor and voided the Agreement after turning the majority age.

(*Id.* at 20). Due to these nuanced circumstances, the Court found it best to address whether certain opt-in plaintiffs were subject to arbitration at the second stage of the certification process. (*Id.* at 21 (noting other courts in the Ninth Circuit that have found the same)). The Court concluded that— even though some of the notified members of the putative collective may be subject to arbitration—it was improper to

USAP010

reference the Arbitration Agreement in the putative collective definition because "[o]nly after the FLSA plaintiffs join this action, may the court entertain [a] defendants' arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively." (*Id.* at 21) (quoting *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018)). The Court further acknowledged that other areas of the Notice Forms would sufficiently alert potential opt-in plaintiffs that they can only join the action if they are not subject to arbitration. (*Id.* at 20 (citing Doc. 76-13 at 1, 2)).

**\*7** Cracker Barrel contends the Court contradicted its prior orders when it did not account for a potential opt-in plaintiff's "arbitration signing status" in the putative collective for notice purposes. (Doc. 83 at 7). In Cracker Barrel's opinion, by determining which employees are subject to arbitration and which are not, the Court fully resolved the issue of enforceability in this matter and failed to tailor the putative collective definition accordingly. (*Id.*) Cracker Barrel complains that "while 53,750 individuals either have not signed the Agreement or [were] minors at the time of signing, a staggering 108,184 individuals have signed the Agreement as adults and, per the Court's previous Orders, cannot bring their claims in Court and are ineligible to participate." (*Id.*) Cracker Barrel cites to *Droesch v. Wells Fargo Bank* for the proposition that it should be allowed to present evidence on which employees are bound to arbitrate their claims. (*Id.*) (citing 2021 WL 2805604 (N.D. Cal. July 6, 2021)). Cracker Barrel further argues the Court should revise the putative collective to expressly exclude individuals "who signed the [Arbitration] Agreement after turning 18 years old." (*Id.* at 10). This is because any inclusion in the putative collective of individuals who are potentially subject to arbitration "greatly offends" the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). (*Id.* at 9–10).

In opposition, Plaintiffs contend that the Court did not misapply any of its prior orders because the Collective Certification Order is the first time the Court had addressed the issue of which potential plaintiffs should get notice. (Doc. 90 at 9). They argue that all other prior orders had discussed the enforceability of the Arbitration Agreements as to specific named plaintiffs only. (*Id.*) Plaintiffs further maintain that sorting through which potential opt-in plaintiffs are subject to arbitration is more appropriate for the second stage of the FLSA certification process due to outstanding factual and legal disputes. (*Id.* at 9–10). The Court agrees with Plaintiffs in all regards.

As noted in Cracker Barrel's primary authority, the Ninth Circuit has not yet considered whether FLSA notice should be provided to individuals who signed arbitration agreements. *See Droesch*, 2021 WL 2805604, *2. So, district courts have taken varying approaches when handling arbitration issues in FLSA collective actions. In concluding that remaining disputes over which potential opt-in plaintiffs are subject to arbitration are better addressed at the second stage of the certification process, the Court pointed to other courts in this circuit in accord. (Doc. 82 at 21 citing *Monplaisir v. Integrated Tech Grp.*, LLC, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) ("[T]o avoid putting the cart before the horse, this inquiry [of arbitration] is best left for step two"); *Mejia v. Bimbo Bakeries USA Inc.*, 2018 WL 11352489, at *4 n.7 (D. Ariz. May 7, 2018); *Campanelli*, 2018 WL 6727825, at *8–9; *Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020)). Although Cracker Barrel invokes a number of out-of-circuit authorities [10] and persuasive, in-circuit authorities [11] to argue a contrary approach, Cracker Barrel has not pointed to any binding authority that precludes the Court from addressing arbitrability issues at the second stage of certification. Nor is the Court aware of any. Therefore, the Court did not commit clear error. That Cracker Barrel merely disagrees with the Court's decision to follow suit with other courts in this circuit is an insufficient basis for reconsideration. *See Leong*, 689 F. Supp. at 1573.

[10]   For example, Cracker Barrel relies on *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) and *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019). (Doc. 83 at 9–10).

[11]   For example, Cracker Barrel relies on *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604 (N.D. Cal. July 6, 2021) and *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944 (N.D. Cal. June 17, 2019). (Doc. 83 at 8–9).

Moreover, Plaintiffs' list of remaining factual issues illustrates why the enforceability of Cracker Barrel's Arbitration Agreement must be determined on a case-by-case basis. Plaintiffs identify the following disputes among the parties: (1) whether an employee signed the Agreement when they were a minor depends on the state in which the Agreement was signed; (2) there may be adult employees who signed the Agreement as minors who still need to be given the opportunity to void the Agreement; and (3) employees who signed the Agreement, ended their employment with Cracker

Barrel, and then were later rehired by Cracker Barrel may not be subject to arbitration. (Doc. 90 at 9–10). Indeed, the Court had to perform fact-intensive analysis to determine that Plaintiff Dylan Basch is not subject to arbitration because he had voided the Agreement within a reasonable time [12] after turning the majority age. (Doc. 82 at 6–10). The Court cannot possibly define which opt-in plaintiffs are certainly subject to arbitration at this juncture. Separate analyses will need to be performed on each putative collective member based on the facts of their employment with Cracker Barrel.

[12]     Based on Plaintiff Dylan Basch's circumstances, the Court found that eighteen months was a reasonable time for him to disaffirm Cracker Barrel's Arbitration Agreement. (Doc. 82 at 8–9).

 **\*8**  Cracker Barrel is reminded that we are still at the first preliminary certification stage of the Ninth Circuit's two-step approach to FLSA collective actions, which is called "preliminary" for a reason. *Campbell*, 903 F.3d at 1100. It is not the court's role to resolve factual disputes, decide substantive issues relating to the merits of the claims, or make credibility determinations at this first stage of certification— yet, that is exactly what Cracker Barrel asks this Court to do. *See Lee v. Asurion Ins. Servs. Inc.*, 2016 WL 9525665, at *2 (D. Ariz. Dec. 2, 2016) (citing *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010)); *see also Thornsbury v. Pet Club LLC*, 2016 WL 11602764, at *2 (D. Ariz. Nov. 22, 2016). Although the Court has identified nuanced circumstances in which a Cracker Barrel employee *may* not be subject to arbitration, a final determination requires further fact inquiries that are better resolved at the second stage of certification. *See Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *10 (D. Nev. Jan. 12, 2009) (stating that "disparities in the factual employment situations of any plaintiffs who choose to opt in should be considered during the court's second tier analysis"). Furthermore, the putative collective does not run afoul of the FAA because the Notice Forms adequately alerts potential opt-in plaintiffs that they can only join the action if they are not subject to arbitration. (*See* Doc. 76-13 at 1, 2). [13] And, "[a]t this stage, all putative collective members remain potential plaintiffs." *Monplaisir*, 2019 WL 3577162, at *3 (emphasis added).

[13]     For example, the Notice is addressed to "All Cracker Barrel servers, *not subject to arbitration*, who were paid on a "tip credit" basis or less than minimum wage by Cracker Barrel at any time in the last three (3) years, or worked off-the-clock." (Doc.

76-13 at 1) (emphasis added). The Notice further states in the lawsuit description that "only servers *who are not subject to arbitration* may join this lawsuit." (*Id.* at 2) (emphasis added).

### 4. Conclusion

In sum, Cracker Barrel's Motion for Reconsideration is granted to the extent it relates to the time frame of the putative collective, but denied to the extent it relates to the scope of the putative collective. Plaintiffs' request for equitable tolling is granted in part, and the Court will toll the statute of limitations on the putative collective's FLSA claims from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to the putative collective. Cracker Barrel's Motion to Strike Plaintiffs' Request for Equitable Tolling will therefore be denied. To reflect these findings, the putative collective for notice purposes shall be modified to the following definition: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019*, *to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme. Final determinations as whether certain opt-in plaintiffs are subject to arbitration will be reserved for the second stage of certification.

### B. Cracker Barrel's Motion to Certify Interlocutory Appeal (Doc. 84)

Cracker Barrel next requests the Court to certify the Collective Certification Order for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b). (Doc. 84 at 8–15). Cracker Barrel argues the Collective Certification Order gives rise to the following four questions that are appropriate for appeal:

1. Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement.

2. Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period.

3. Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), prevents a District Court from sending notice under Section 216(b) of the

FLSA to individuals over whom the Court lacks specific personal jurisdiction.

**\*9** 4. Whether a District Court, in determining whether putative plaintiffs are "similarly situated" to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), or instead should "rigorously enforce the similarly situated requirement" through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021).

(*Id.* at 7). Plaintiffs did not file a response in opposition to Cracker Barrel's Motion. Under Rule 7.2 of the Local Rules of Civil Procedure, if a party "does not serve and file the required answering memoranda, ... such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv. 7.2(i); *see also Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994). However, because requests for interlocutory appeals are to be granted "only in exceptional circumstances," the Court will nonetheless proceed to evaluate the merits of Cracker Barrel's Motion. *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 12250532, at \*2 (D. Ariz. June 5, 2013) (citing *U.S. v. Woodbury*, 263 F. 2d 784, 799 n.11 (9th Cir. 1959)).

### 1. Legal Standards

Generally, "parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (internal citations omitted). A "narrow exception" to the final judgment rule allows a non-final order to be certified for interlocutory appeal provided that three statutory requirements are met: the non-final order "(1) involves a controlling question of law" as to which "(2) there is substantial ground for difference of opinion" and where "(3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Cracker Barrel, as "[t]he party seeking certification[,] has the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (internal citations omitted).

The first statutory requirement is that an order must involve a controlling question of law. "While Congress did not specifically define what it meant by 'controlling,' the legislative history of [28 U.S.C. §] 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "Examples of controlling questions of law include fundamental issues such as the determination of who are necessary and proper parties, whether a court to which a case has been transferred has jurisdiction, or whether state or federal law should be applied." *Villarreal*, 85 F. Supp. 3d at 1068 (internal citations omitted).

As to the second statutory requirement to determine if a "substantial ground for difference of opinion" exists under 28 U.S.C. § 1292(b), [14] courts must examine to what extent the controlling law is unclear. Courts traditionally will find this requirement is satisfied where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633. However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.*

[14]     Unless where otherwise noted, all Section references are to Title 28 of the United States Code.

**\*10** Last, the third statutory requirement "that the appeal must be likely to materially speed the termination of the litigation [ ] is closely linked to the question of whether an issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case." *L.H. Meeker v. Belridge Water Storage District*, 2007 WL 781889, at \*6 (E.D. Cal. March 13, 2007) (citing *In re Cement*, 673 F.2d at 1026). Where "a substantial amount of litigation remains in th[e] case regardless of the correctness of the Court's ruling ... arguments that interlocutory appeal would advance the resolution of th[e] litigation are unpersuasive." *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at \*7 (C.D. Cal. May 15, 2014).

28 U.S.C. § 1292(b) "is to be applied sparingly" and is not intended "merely to provide review of difficult rulings in

hard cases." *City of Glendale*, 2013 WL 12250532, at *2 (citing *Woodbury*, 263 F. 2d at 799 n.11). "Even when all three statutory requirements are satisfied, district court judges have 'unfettered discretion' to deny certification." *Id.* (internal citations omitted). Therefore, "a district court's denial of a motion to certify a decision for immediate appeal under section 1292(b) is not reviewable by the appellate court." *Environmental Protection Information Center v. Pacific Lumber Co.*, 2004 WL 838160, at *2, n. 6 (N.D. Cal. April 19, 2004) (citing *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1550 (9th Cir. 1994)). By the same token, "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *Villarreal*, 85 F. Supp. 3d at 1068.

### 2. Question Regarding Arbitration

Cracker Barrel's first proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the statutory requirement is met because this question would "dramatically affect the number of persons who will be invited to file consents to join as plaintiffs." (Doc. 84 at 9). Thus, this issue goes to the fundamental determination of who the necessary and proper parties are in this matter. *See Villarreal*, 85 F. Supp. 3d at 1068. The Court further agrees the second statutory requirement is met because the Ninth Circuit has not yet opined on the issue, and there are cases displaying that "other courts both within and outside the Ninth Circuit are hostile to such an approach." (Doc. 84 at 11); (*see also* Doc. 82 at 20–21; *see also supra* Section II.A(3).

Lastly, the Court finds the third statutory requirement is met because resolution of the issue would materially affect the manner and speed in which litigation is terminated against those individuals who are subject to arbitration. Although courts across the nation have found that FLSA conditional class certification orders are not generally proper for interlocutory appeal due to their preliminary nature, *see Villarreal*, 85 F. Supp. 3d at 1069–70 (collecting cases), the Court finds the split decisions among circuit courts and inner-circuit district courts on how to approach arbitration issues in FLSA collective actions present the type of exceptional

circumstances that warrant interlocutory appeal. *See Couch*, 611 F.3d at 633.

Therefore, the Court will certify Cracker Barrel's proposed question regarding arbitration in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

### 3. Question Regarding FLSA Statute of Limitations

**\*11**  Cracker Barrel's second proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period." (Doc. 84 at 7). Because the Court will grant Cracker Barrel's request to modify the time frame of the putative collective so that it reflects the opt-in standard under Section 256 of the FLSA, this issue is moot. *See supra* Section II.A(2).

### 4. Question Regarding Specific Personal Jurisdiction

Cracker Barrel's third proposed question for interlocutory appeal is: "Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction." (Doc. 84 at 7). The Court agrees with Cracker Barrel that this question meets all three statutory requirements. This is a controlling question of law that would materially speed the termination of litigation because it concerns a jurisdictional issue that would fundamentally "change the nature of this action from a nationwide action to one focused only on claims with connection to the State of Arizona." (*Id.* at 9). An outcome narrowing this matter as such would indeed avoid protracted and expensive litigation. *See Villarreal*, 85 F. Supp. 3d at 1068. Furthermore, there is clearly a substantial ground for difference of opinion as the circuit courts are split on the issue. And, because the Ninth Circuit has yet to weigh in on this issue, inner-circuit courts have consequently applied varying approaches. (Doc. 84 at 12). The Court has certainly noted these issues in its Certification Order. (Doc. 82 at 21–23).

Therefore, the Court will certify Cracker Barrel's proposed question on specific personal jurisdiction in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

USAP014

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d --- (2024)

### 5. Question Regarding Certification
### Process for FLSA Collective Actions

Cracker Barrel's fourth and last proposed question for interlocutory appeal is: "Whether a District Court, in determining whether putative plaintiffs are 'similarly situated' to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), or instead should 'rigorously enforce the similarly situated requirement' through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021)." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the first statutory requirement is met because this question would replace the certification framework as followed in the Ninth Circuit. (*Id.* at 10). However, the Court disagrees that the second statutory requirement is met. Cracker Barrel argues a substantial ground for difference of opinion exists because "[t]he Ninth Circuit has used the two-step *Lusardi* approach but has never decided whether the approach follows the FLSA, or whether *Swales* reflects the proper approach." (*Id.* at 12). But, as stated in the Collective Certification Order, the Ninth Circuit has explicitly established the two-step approach to FLSA collective action certification in *Campbell*, 903 F.3d at 1108–09, which addresses "preliminary certification" at step one and "decertification" at step two. (Doc. 82 at 11–13). *Swales* has no binding effect on the Ninth Circuit. Therefore, Cracker Barrel's fourth proposed question is not proper for interlocutory appeal. *See Couch*, 611 F.3d at 633 (holding that "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal").

### 6. Conclusion

**\*12**  In sum, Cracker Barrel's Motion to Certify Interlocutory Appeal is denied as to proposed questions two and four, but granted as to questions one and three. The Court will permit Cracker Barrel to seek appeal of the Collective Certification Order under 28 U.S.C. 1292(b) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

### C. Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96) and Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101)

The final issue is whether the Court should stay all proceedings in this matter pending Cracker Barrel's various appeals of the Collective Certification Order. Cracker Barrel argues that, under the United States Supreme Court's June 23, 2023, decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023), [15] an automatic stay is required because Cracker Barrel appealed the Collective Certification Order under Section 16 of the FAA. [16] (Doc. 96 at 5–7). Alternatively, Cracker Barrel argues the Court should exercise its discretion to issue a stay under either test set forth in *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) [17] and *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). [18] (*Id.* at 7–14). In opposition, Plaintiffs argue that *Coinbase* has no bearing on this matter because it applies to non-frivolous appeals, whereas Cracker Barrel's appeal is frivolous. (Doc. 97 at 4–7). Plaintiffs further contend *Coinbase* is distinguishable because the decision concerns a Federal Rule of Civil Procedure 23 class action while this matter concerns an FLSA collective action. (*Id.* at 7–9). Last, Plaintiffs argue both the *Nken* and *Landis* tests favor litigation to proceed. (*Id.* at 9–17).

[15]   At the time Cracker Barrel filed its Motion to Stay Proceedings Pending Appeal, *Coinbase* was not yet issued. On June 25, 2023, Plaintiffs file a Notice of New Authority (Doc. 99) alerting the Court that *Coinbase* had published. Cracker Barrel moved to strike Plaintiffs' Notice on the basis that it contained improper, additional legal arguments. (Doc. 101). The Court agrees, and will strike Plaintiffs' Notice from the record. In any event, Plaintiffs' Notice of New Authority is not necessary for the Court to consider the implications of *Coinbase* on this matter.

[16]   Section 16 of the FAA provides that "[a]n appeal may be taken from an order denying an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1) (C). The Collective Certification Order denied Cracker Barrel's "Motion to Compel Arbitration and Dismiss Second Amended Complaint with

Prejudice." (Doc. 96 at 5–7), and Cracker Barrel indeed filed its Notice of Appeal (Doc. 91).

[17]    Under the *Nken* test, a court should consider the following four-factors when deciding whether to stay proceedings: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." 556 U.S. at 434, 129 S.Ct. 1749 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

[18]    Under the *Landis* test, a court should consider the following three-factors when deciding whether to stay proceedings: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and question of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

 *13    The Court need not weave through the parties' tangled, technical arguments to conclude a stay of proceedings in this matter is warranted. In holding that district courts are required to stay its proceedings when a party appeals the denial of its motion to compel arbitration, *Coinbase* emphasized the long-standing principle that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" 599 U.S. at 740, 143 S.Ct. 1915 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). Accordingly, a stay is required pending Cracker Barrel's appeal of the Collective Certification Order under Section 16 of the FAA because (a) Cracker Barrel's appeal is non-frivolous, *see supra* Section II.B; and (b) whether this litigation may move forward in this Court is precisely what the Ninth Circuit must decide. *See Coinbase*, at 599 U.S. at 741, 143 S.Ct. 1915. Likewise, at this juncture, the Court's control over dissemination of notice to the putative collective is divested because fundamental questions regarding arbitration and personal jurisdiction in

FLSA collective actions stand to be resolved on interlocutory appeal. *See supra* Section II.B.

Turning to the parties' individual interests, it is evident that Cracker Barrel would face irreparable harm absent a stay. Cracker Barrel represents that of the 159,934 individuals in the putative collective, 106,184 are potentially subject to arbitration. (Doc. 96 at 10). So, Cracker Barrel would incur significant discovery expenses should the certification process proceed. Indeed, the size of the putative collective makes it likely that *both* parties would suffer irreparable harm in spending substantial time and resources on litigation that might otherwise be narrowed on appeal. *See Salhotra v. Simpson Strong-Tie Co., Inc.*, 2022 WL 1091799, at *2 (N.D. Cal. Apr. 12, 2022) (collecting cases). By comparison, the issuance of a stay would not pose injury to Plaintiffs—or the putative collective as potential opt-in plaintiffs—because the applicable statute of limitations will be equitably tolled from September 6, 2022, until the date on which notice is sent to the putative collective. *See supra* Section II.A(2)(b). This tolling period would necessarily include any duration the proceedings are stayed pending appeal.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254, 57 S.Ct. 163. In light of *Coinbase* and the *Nken* and the *Landis* tests, the Court finds it appropriate to stay all proceedings in this matter pending Cracker Barrel's appeals to the Ninth Circuit.

Accordingly,

**IT IS ORDERED** that Cracker Barrel's "Motion for Clarification, or, in the Alternative, Reconsideration" (Doc. 83) is **granted in part and denied in part** as stated herein. Lines 8–12 on page 28 of the March 31, 2023, Order (Doc. 82 at 28) is **stricken** and **amended** as follows:

> **IT IS FURTHER ORDERED** the collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of all current and former Cracker Barrel servers who (a) worked for Cracker Barrel from September 6, 2019, to the present in states where Cracker Barrel pays

its employees under the 29 U.S.C. § 203(m) tip credit scheme.

The remainder of the March 31, 2023, Order (Doc. 82) is otherwise **affirmed**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for equitable tolling (Doc. 90 at 5–8) is construed as a motion and is **granted**. The three-year statute of limitations on the putative collective's FLSA claims shall be tolled from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to disseminated to the putative collective. Cracker Barrel's "Motion to Strike Plaintiffs' Request for Equitable Tolling" (Doc. 93) is therefore **denied**.

**IT IS FURTHER ORDERED** that Cracker Barrel's "Motion to Certify Interlocutory Appeal" (Doc. 84) is **granted in part**

**and denied in part** as stated herein. Cracker Barrel may seek appeal under 28 U.S.C. § 1292(b) of the March 31, 2023, Order (Doc. 82) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

**\*14  IT IS FURTHER ORDERED** that Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101) is **GRANTED**. The Notice of Supplemental Authority at Doc. 99 shall be stricken and disregarded.

**IT IS FINALLY ORDERED** that Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96) is **granted**. As set forth herein, the proceedings in this matter are **stayed** until the Ninth Circuit resolves Cracker Barrel's appeals of the March 31, 2023, Order (Doc. 82).

**All Citations**

--- F.Supp.3d ----, 2024 WL 342440

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8615775
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

UNITED STATES of America,
v.
Donald J. TRUMP, Defendant.

Criminal Action No. 23-257 (TSC)
|
Signed December 13, 2023

**Synopsis**

**Background:** Defendant, a former President of the United States, filed motion to dismiss, on constitutional grounds and ground of absolute presidential immunity, indictment charging him with conspiracy to defraud the United States, conspiracy to obstruct an official proceeding, obstruction of, and attempt to obstruct, an official proceeding, and conspiracy against federal civil rights, stemming from defendant's allegedly knowingly false claims regarding 2020 election. The District Court, Tanya S. Chutkan, J., 2023 WL 8359833, denied the motion. Defendant appealed and filed in the District Court a motion to stay proceedings pending appeal.

**Holdings:** The District Court, Tanya S. Chutkan, J., held that:

filing of notice of appeal for interlocutory immunity appeal automatically stayed any further proceedings in district court that would move the case towards trial or impose additional burdens of litigation on defendant; but

stayed deadlines and proceedings would be held in abeyance rather than being permanently vacated; and

as a matter of apparent first impression, district court was not divested of jurisdiction to enforce protective measures it had already imposed to safeguard the integrity of the proceedings.

Motion to stay proceedings granted in part and denied in part.

**Procedural Posture(s):** Pre-Trial Hearing Motion.

**Attorneys and Law Firms**

J.P. Cooney, Molly Gulland Gaston, Assistant U.S. Attorneys, U.S. Attorney's Office for the District of Columbia, Washington, DC, James Pearce, Assistant U.S. Attorney, U.S. Department of Justice, Criminal Division Appellate Section, Washington, DC, Thomas Windom, Assistant U.S. Attorney, Washington, DC, John M. Pellettieri, Assistant U.S. Attorney, Special Counsel's Office, Washington, DC, for United States of America.

John F. Lauro, Filzah I. Pavalon, Pro Hac Vice, Lauro & Singer, Tampa, FL, Emil Bove, Pro Hac Vice, Todd Blanche, Pro Hac Vice, Blanche Law, New York, NY, for Defendant.

## OPINION AND ORDER

TANYA S. CHUTKAN, United States District Judge

**\*1** On December 4, 2023, the court issued a Memorandum Opinion and Order denying Defendant's motions to dismiss based on Presidential immunity and constitutional grounds. ECF Nos. 171, 172. Defendant has appealed that decision, ECF No. 177, and filed a Motion to Stay Proceedings Pending Appeal, ECF No. 178 ("Motion"). For the reasons set forth below, the court will GRANT in part and DENY in part Defendant's Motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). In *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 739–44, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023), the Supreme Court applied the *Griggs* principle to an interlocutory appeal of the denial of a motion to compel arbitration, holding that any further proceedings before the district court must automatically be stayed. The Court reasoned that because "whether the litigation may go forward in the district court is precisely what the court of appeals must decide[,] ... it makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." *Id.* at 741, 143 S.Ct. 1915 (quotations omitted). And the Court analogized its holding to similar decisions in the context of appeals involving immunity and double jeopardy. *Id.* at 742, 143 S.Ct. 1915.

As the D.C. Circuit recently made clear, a former President's absolute immunity would constitute "an entitlement not to stand trial or face the other burdens of litigation," such as discovery obligations. *Blassingame v. Trump*, No. 22-5069, —— F.4th ——, ——, 2023 WL 8291481, at \*22 (D.C. Cir.

Dec. 1, 2023) (citation omitted). Thus, because Defendant has appealed this court's denial of that immunity, "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Coinbase*, 599 U.S. at 741, 143 S.Ct. 1915 (quotation omitted). Consequently, the court agrees with both parties that Defendant's appeal automatically stays any further proceedings that would move this case towards trial or impose additional burdens of litigation on Defendant. Motion at 1; Gvt.'s Opp'n to Def.'s Mot. to Stay Proceedings Pending Appeal at 3, ECF No. 182. Accordingly, and for clarity, the court hereby STAYS the deadlines and proceedings scheduled by its Pretrial Order, as amended. *See* ECF No. 39; *see also* Def.'s Reply in Supp. of Mot. to Stay Proceedings Pending Appeal at 3, ECF No. 185 ("Reply").

The court emphasizes two limits on that stay. First, as Defendant notes, the stayed deadlines and proceedings are "held in abeyance," Motion at 1, rather than permanently vacated. If jurisdiction is returned to this court, it will—consistent with its duty to ensure both a speedy trial and fairness for all parties—consider at that time whether to retain or continue the dates of any still-future deadlines and proceedings, including the trial scheduled for March 4, 2024.

Second, the court does not understand the required stay of further proceedings to divest it of jurisdiction to enforce the measures it has already imposed to safeguard the integrity of these proceedings, including: Defendant's conditions of release, ECF No. 13; the protective orders governing discovery materials, ECF No. 28, 37; the restrictions on extrajudicial statements, ECF No. 105, as modified by the D.C. Circuit's decision in *United States v. Trump*, No. 23-3190, —— F.4th ——, ——, 2023 WL 8517991, at *28

(D.C. Cir. Dec. 8, 2023); and protective jury procedures, ECF No. 130. Unlike, for example, requiring additional discovery or briefing, maintaining those measures does not advance the case towards trial or impose burdens of litigation on Defendant beyond those he already carries. And if a criminal defendant could bypass those critical safeguards merely by asserting immunity and then appealing its denial, then during the appeal's pendency, the defendant could irreparably harm any future proceedings and their participants.

**\*2** That said, there is little precedent guiding the application of *Griggs* to such protective measures. The Ninth Circuit, at least, has transferred a "motion to enforce" a "protective order" back to the district court, even though the Circuit had taken "jurisdiction over the merits of the decision below, including the judgment," reasoning that "the district court has not been divested of its jurisdiction over ancillary matters, such as protective orders." *Perry v. City & Cnty. of S.F.*, No. 10-16696, 2011 WL 2419868, at *1 (9th Cir. Apr. 27, 2011) (citing, among others, *Griggs*, 459 U.S. at 58, 103 S.Ct. 400). But the parties have not identified—and the court is not aware of—any guiding precedent in this Circuit on that issue, much less instructive cases in the context of an interlocutory immunity appeal. In addition, Defendant does not appear to argue that the protective measures are themselves stayed. *See* Reply at 3. Nonetheless, if he asks the court reviewing his immunity appeal to also take temporary jurisdiction over the enforcement of those measures, and that court agrees to do so, this court of course will be bound by that decision.

**All Citations**

--- F.Supp.3d ----, 2023 WL 8615775

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2869986
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

NORMAN WILHOITE and JUDITH
WILHOITE, derivatively on behalf of
TuSimple Holdings, Inc., Plaintiffs,

v.

XIAODI HOU, MO CHEN, CHENG LU, GUOWEI
"CHARLES" CHAO, and HYDRON, INC., Defendants.

and

TUSIMPLE HOLDINGS, INC., Nominal Defendant.

Case No.: 3:23-cv-02333-BEN-MSB

|

Filed 06/06/2024

|

FILED JUNE 05, 2024

**ORDER: (1) STAYING CASE PENDING
RESOLUTION OF APPEALS; AND (2) EXTENDING
TEMPORARY RESTRAINING ORDER**

HON. ROGER T. BENITEZ United States District Judge

### 1. BACKGROUND

**\*1  A. Factual Background.** The facts of this particular
case have been outlined extensively in the parties' briefing
and summarized in previous Orders. This Order assumes
familiarity with the factual background of this case.

**B. Procedural Background.** This case involves a lengthy
procedural history. Below is a summary of filings and
arguments pertinent to the issue of this Court's jurisdiction
pending TuSimple's appeals to the Ninth Circuit.

1. Original TRO. Plaintiffs filed a Motion for Temporary
Restraining Order ("TRO") on January 5, 2024. ECF
No. 8. TuSimple opposed Plaintiffs' TRO motion raising
two arguments relevant here: Plaintiffs were not likely to
succeed on the merits because: (1) Plaintiffs brought suit
in contravention of a valid forum selection clause; and
(2) Plaintiffs had not demonstrated "demand futility[,]" a
preliminary requirement to proceed with a derivative lawsuit
under Delaware law. ECF No. 28. [1]

[1]  TuSimple filed its motion to dismiss the same day
it filed its Opposition to the TRO. *See* ECF Nos.
27-28. The motion to dismiss raised the FSC and
demand futility arguments in greater detail.

After briefing and a hearing, the Court issued the original
TRO on January 23, 2024. ECF No. 36 ("TRO"). The TRO
did not address the merits of TuSimple's forum selection
clause argument, indicating it did not "directly relate to
the merits of [Plaintiffs'] DTSA claim" and that "the Court
may address TuSimple's [FSC] arguments in considering the
briefing already underway related to TuSimple's motion to
dismiss." *Id.* at 5-6. The TRO's duration was set for forty-five
(45) days and was set to expire March 8, 2024. *Id.* at 8.

The TRO also ordered Defendant TuSimple to produce,
within fourteen (14) days, "documents sufficient to show
the location of TuSimple's trade secrets" and "documents
sufficient to identify any proprietary information and/or
intellectual property belonging to TuSimple that has been
disclosed or transferred to Hydron." *Id.* at 7.

2. The Discovery Dispute. On February 9, 2024, Plaintiffs
filed an *ex parte* motion to compel TuSimple to produce
certain documents. ECF No. 70. Plaintiffs argued that
TuSimple had not searched for or requested documents in
China, in violation of the expedited discovery ordered by the
TRO. *Id.* at 4. The Court referred this motion to Magistrate
Judge Michael Berg. ECF No. 77. After a hearing on March 7,
2024, Judge Berg ordered TuSimple to "search for documents
located in China that are responsive to the January 23, 2024
Order and produce any such documents by April 22, 2024."
ECF No. 122.

3. Preliminary Injunction Hearing. The Court held a
preliminary injunction hearing on March 12, 2024. ECF No.
129. Plaintiffs indicated while they felt they could succeed
on the evidence in their possession, TuSimple had not yet
produced any responsive documents from China. ECF No.
131, ("Hrg. Trans.") at 19:20-25. The Court agreed that a
more developed record would assist the Court evaluating
Plaintiffs' motion. *Id.* at 68:11-14. The Court indicated it
would extend the TRO thirty (30) days and allow Plaintiffs
to depose certain individuals as an alternative means of
developing the record. *Id.* [2]

[2]  Plaintiffs also requested a longer extension
to accommodate completion of the (disputed)
document discovery. *Id.* at 68:19-23. The Court

was skeptical of this request in view of the ordered depositions. *Id.* at 68:24-25.

**\*2** On March 13, 2024, the Court modified and extended the TRO. ECF No. 130 ("March 13 TRO"). The March 13 TRO modified four of the original TRO's conditions, generally lessening some restrictions on transfers of assets outside of the United States. *Id.* at 3. The March 13 TRO extended the duration an additional twenty-seven (27) days and was set to expire April 8, 2024. *Id.* at 4.[3]

[3]    This was the second time the TRO was extended; the first extension was only four (4) days to accommodate a change in the date of the preliminary injunction hearing (from March 8th to March 12th). *See* ECF No. 115.

4. TuSimple's Interlocutory Appeals & Further TRO Extensions. On March 15, 2024, TuSimple filed a Notice of Interlocutory Appeal. ECF No. 135. The Notice of Appeal cited the March 13 TRO, and "all prior rulings incorporated within the [Order]." *Id.* at 1.[4] On March 20, 2024, TuSimple filed a document with the Ninth Circuit describing the case and the basis for its appeal. *See* Case No. 24-1608, Dkt 7.1 at 2. TuSimple "anticipate[d] challenging at least: (1) the district court's implicit finding that Plaintiffs demonstrated a likelihood of success because: (a) TuSimple's forum selection clause requires suit be brought in the Delaware Court of Chancery, (b) Plaintiffs have not established standing to sue derivatively, and...(4) the district court's conclusion that expedited discovery was appropriate." *Id.*

[4]    This same day, TuSimple filed a motion to set aside Magistrate Judge Berg's March 7th Order on the parties' discovery dispute. *See* ECF No. 134.

On March 26, 2024, the Ninth Circuit denied TuSimple's motion to stay the March 13 TRO and related orders. Case No. 24-1608, Dkt. 16.1 at 2. The Ninth Circuit also denied the Plaintiffs' request to dismiss the appeal for lack of jurisdiction without prejudice. *Id.* Finally, the Ninth Circuit granted the request to expedite the appeal. *Id.*

On March 28, 2024, Plaintiffs filed an *ex parte* motion to extend the TRO and reset the supplemental preliminary injunction briefing schedule to accommodate the depositions ordered at the preliminary injunction hearing. ECF No. 152. The next day, Judge Berg held a discovery conference regarding the depositions ordered by the Court at the

preliminary injunction hearing. ECF No. 154. On March 29, 2024, the Court extended the TRO an additional twenty-one (21) days. ECF No. 160 ("March 29 TRO"). The March 29 TRO was set to expire April 29, 2024. *Id.* TuSimple filed its second Notice of Interlocutory Appeal citing the March 29 TRO extension and "all previous orders" connected therewith. ECF No. 161 at 1.

5. Appeal Jurisdiction Briefing. On April 3, 2024, the Court ordered parties to brief the issue of the Court's jurisdiction given the scope of TuSimple's appeal arguments. ECF No. 169. The briefing was completed on April 11, 2024. *See* ECF Nos. 180-181, 186-187.

On April 17, Plaintiffs filed another *ex parte* motion to extend the TRO. ECF No. 190. Plaintiffs requested an additional fourteen (14) day extension of the TRO, again citing the need to complete the depositions ordered at the preliminary injunction hearing. *Id.* at 1. The Court granted this motion on April 22nd, extending the TRO fourteen (14) days. ECF No. 194 ("April 22 TRO"). The April 22 TRO re-set the preliminary injunction hearing to May 13, 2024. *Id.* at 2. TuSimple filed a third Notice of Interlocutory Appeal citing the April 22 TRO. ECF No. 200.

**\*3** On May 9, 2024, the Court continued the Preliminary Injunction hearing to June 10, 2024, and extended the TRO a further twenty-eight (28) days in order to accommodate the change of hearing. ECF No. 216 ("May 9 TRO"). TuSimple filed a fourth Notice of Interlocutory Appeal regarding the May 9 TRO. ECF No. 217. All four appeals have been consolidated at the Ninth Circuit. *See* Case No. 24-1608, Dkt. 45. The Ninth Circuit is currently considering hearing oral argument on all four appeals in September 2024. *Id.* at Dkt. 39.

6. Current Pending Motions. The Court has eight (8) substantive motions currently pending in this case. First, TuSimple's motion to dismiss, filed in January 2024. ECF No. 27. Second, Plaintiffs' motion for preliminary injunction, filed in February 2024, which has undergone supplemental briefing. ECF No. 73, 208, 215. Third, TuSimple's motion to set aside Magistrate Judge Berg's order regarding responsive documents in China. ECF No. 134. Fourth, Defendant Charles Chao filed a motion to quash service and dismiss the complaint. ECF No. 32. Finally, Defendants Cheng Lu, Mo Chen and Xiaodi Hou have each filed motions to dismiss. *See* ECF Nos. 172, 184, 234.

## II. LEGAL STANDARDS & DISCUSSION

### A. Court's Jurisdiction & Stay Pending Appeals

The Court must now determine whether it retains jurisdiction to rule on any of the pending motions, or whether, as Defendant TuSimple argues, the interlocutory appeals have divested all jurisdiction from this Court.

In general, an appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Loan Discount Co.*, 459 U.S. 56, 58 (1982). The principle outlined in *Griggs* was a judge-made rule to "promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Natural Res. Def. Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). An exception to this jurisdictional transfer principle was that "[t]he district court retain[ed] jurisdiction during the pendency of an appeal to act to preserve the status quo." *Natural Res. Def. Council*, 252 F.3d at 1166. This exception was codified by Federal Rule of Civil Procedure 62(c). *Id.* Notably this exception "does not restore jurisdiction to the district court to adjudicate anew the merits of the case[,]" and the district court may not "materially alter the status of the case on appeal." *Id.* (citations omitted). "The status quo is measured at the time the appeal is filed." *Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*, 182 F.Supp.3d 1065, 1072-73 (E.D. Cal. 2016) (citing *Natural Res. Def. Council*, at 1166).

In *Coinbase Inc. v. Bielski*, the Supreme Court applied *Griggs* in the arbitration context. 599 U.S. 736 (2023). The Court ruled the district court was required to stay pretrial and trial proceedings during an appeal from an order denying a motion to compel arbitration. *Coinbase*, at 741-42. The Court reasoned, "[b]ecause the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.' " *Id.* at 741.

TuSimple argues that the principle articulated in *Coinbase* is applicable here because an arbitration clause is essentially just a "specialized kind of forum selection clause." Because the forum selection clause and derivative standing issues are central to TuSimple's appeals, TuSimple argues *Coinbase* directs this Court to stay the entire case pending resolution of these appeals. Plaintiffs argue *Coinbase* in apposite because the mandatory stay contemplated by the Supreme Court applies to a statutory provision of the Federal Arbitration Act, which allows a party to appeal a district court's denial

of a motion to compel arbitration. The Supreme Court commented:

**\*4** "[U]nlike § 16(a) arbitrability appeals, Congress has not created a right to an interlocutory appeal for cases involving forum selection clauses. So, a stay in the forum selection context could be required only in those cases where there is a certified 1292(b) interlocutory appeal of the forum selection clause issue."

*Coinbase*, 599 U.S. at 746. Plaintiffs also argue that TuSimple's appeals are improper because the forum selection clause and derivative standing issues are not yet ripe, and accordingly the Court is not divested of any jurisdiction.[5] This argument is not without logical appeal given the original TRO declined to address the merits of TuSimple's forum selection clause arguments.[6] Nonetheless, these are the issues being briefed and under consideration at the Ninth Circuit. Given the above, and in the abundance of caution, the Court agrees with Defendant TuSimple that ruling on the pending motions could impermissibly alter the status of the core issues on appeal. The Court concludes a stay of proceedings in this case is appropriate.

[5]    Plaintiffs concede that TROs are appealable under certain conditions. ECF No. 181 at 4.

[6]    In the original TRO briefing, both parties referenced raising the forum selection clause issue in more detail in the forthcoming motion to dismiss briefing. *See* ECF Nos. 28, TuSimple's Opposition to Motion for Temporary Restraining Order at 10 f.n. 6; ECF No. 33, Plaintiffs' Reply In Support of Temporary Restraining Order at 11, "...as will be set forth in detail in Plaintiffs' forthcoming opposition to TuSimple's motion to dismiss their complaint."

In *Flores v. Bennett*, Judge Thurston authored a published opinion considering the applicable test for a stay of a case at the district court level pending appeal. 675 F.Supp.3d 1052 (E.D. Cal. 2023). The court in *Flores* noted a split in authority regarding the applicable test for a stay of proceedings pending appeal which the Ninth Circuit had not definitively resolved. *Flores*, 675 F.Supp.3d at 1056-57 (noting differences and use of *Nken*[7] test and *Landis*[8] test). *Flores* ultimately concluded, persuasively, that the *Landis* test is appropriate for a district court considering a stay of proceedings, and the *Nken* test was applicable to stay an injunction pending appeal. *Id.* at 1057.[9]

7   *Nken v. Holder*, 556 U.S. 418, 422 (2009).

8   *Landis v. N. Am. Co.*, 299 U.S. 248, 249-50 (1936).

9   Here, while TuSimple cites to *Flores*, it urges the Court to apply the *Nken* factors for a stay pending appeal.

When considering a stay of proceedings under the *Landis* test, a court considers: (1) the possible damage that may result from the grant of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice. *Id.* at 1056-57 (citations omitted). The Court concludes the balance of these factors weigh in favor of issuing a stay. The potential balance of harms considered in the first two factors is offset in this case by the Court's ability to maintain the TRO. With the TRO in place during the pendency of TuSimple's appeals, Plaintiffs' concerns regarding dissipation of assets should be diminished. Additionally, the Court concludes Plaintiffs will not be substantially harmed from the delay of discovery, given some expedited discovery has already taken place (even with unresolved issue regarding documents located in China). *Cf Flores*, 675 F.Supp.3d at 1061-62. Regarding the third *Landis* factor, as noted in *Flores*, "courts typically stay cases when the outcome of another proceeding will have preclusive effect on the pending issues." *Id.* at 1063 (citing *Safari Club Int'l v. Bonta*, No. 22-cv-01395-DAD-JDP, 2023 WL 3505373 at *1 (E.D. Cal. May 17, 2023)). This is exactly the case here, where the Ninth Circuit's decision regarding either the forum selection clause issue or the derivative standing issue would effectively dismiss the case from this Court.

**\*5**   Accordingly, the Court hereby orders that this case be **STAYED** pending resolution of TuSimple's consolidated Ninth Circuit Appeals. All pending deadlines and hearings are hereby **VACATED**.

**B. Maintenance of the TRO**

Noted above, both parties appear to agree that the Court retains jurisdiction to renew time-bound injunctions which would "preserve the status quo" but not "materially alter[ ] the status of the appeal." ECF Nos. 180 at 1, 181 at 5; *see Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) ("[T]he present case involves defendants who were subject to an injunction at the time of appeal, and the renewed injunction was identical to the original one."). Here, although the TRO has been extended, it has not been modified since TuSimple's first appeal, nor does the Court currently anticipate any changes during the stay pending resolution of TuSimple's appeals.

**IV. ORDER**

For the reasons set forth above, the Court ORDERS as follows:

1. This case is hereby STAYED and all hearings VACATED pending the resolution of TuSimple's Ninth Circuit Appeals (Case No. 24-1608); and

2. The TRO shall be extended to September 15, 2024.

**IT IS SO ORDERED.**

Dated: June 5, 2024

**All Citations**

Slip Copy, 2024 WL 2869986

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

USAP023