**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>              **Plaintiff,**<br><br>       **v.**<br><br>**U.S. ANESTHESIA PARTNERS, INC., et al.,**<br><br>              **Defendants.** | **Case No.: 4:23-CV-03560-KH** |

**Appendix of Authorities in Plaintiff Federal Trade
Commission's Opposition to USAP's Motion for Stay
Pending Interlocutory Appeal**

## Table of Authorities

### Cases

*Battie v. Davis,*
    No. 3:17-CV-1191-D, 2018 WL 4773258 (N.D. Tex. Oct. 3, 2018) .................................3

*Davis v. Matagorda Cnty.,*
    No. 3:18-cv-00188, 2019 WL 1924532 (S.D. Tex. Apr. 30, 2019) .................................4

*Foret v. Waste Connections Bayou, Inc.,*
    844 F. App'x 776 (5th Cir. 2021) ......................................................................................8

*Harrington v. Cracker Barrel Old Country Store Inc.,*
    No. 2:21-cv-940, 2024 WL 342440 (D. Ariz. Jan. 30, 2024) ...........................................10

*Space Expl. Techs. Corp. v. Bell,*
    No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ...................................23

*United States v. Trump,*
    No. 1:23-cr-257, 2023 WL 8615775 (D.D.C. Dec. 13, 2023) .........................................29

*Wilson v. Suffolk Cnty. Dist. Att'y,*
    No. 21-CV-04815(EK)(ST), 2024 WL 862236 (E.D.N.Y. Feb. 27, 2024) .....................31

### Secondary Sources

15A Wright & Miller, Fed. Prac. & Proc. § 3911 (3d ed.) ..........................................................33

Battie v. Davis, Not Reported in Fed. Supp. (2018)

2018 WL 4773258

2018 WL 4773258
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Oliver BATTIE, Jr., #02049453, Petitioner,

v.

Lorie DAVIS, Director TDCJ-CID, Respondent.

CIVIL NO. 3:17-CV-1191-D
|
Signed 10/03/2018

**Attorneys and Law Firms**

Oliver Battie, Jr., Gatesville, TX, pro se.

Sarah Miranda Harp, Office of the Attorney General of Texas, Austin, TX, for Respondent.

### <u>ORDER</u>

SIDNEY A. FITZWATER, SENIOR JUDGE

**\*1** The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. Petitioner filed objections on September 28, 2018, [\*] and the undersigned district judge has made a *de novo* review of those portions of the proposed findings, conclusions, and recommendation to which objection was made. The objections are overruled, and the court adopts the findings, conclusions, and recommendation of the United States Magistrate Judge. It is therefore ordered that the petition for writ of habeas corpus under 28 U.S.C. § 2254 is denied.

Considering the record in this case and pursuant to Fed. R. App. P. 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the court denies a certificate of appealability. The court adopts and incorporates by reference the magistrate judge's findings, conclusions, and recommendation filed in this case in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

If petitioner files a notice of appeal,

( ) petitioner may proceed *in forma pauperis* on appeal.

(**X**) petitioner must pay the $505.00 appellate filing fee or submit a motion to proceed *in forma pauperis.*

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4773258

### Footnotes

[\*]    On September 28, 2018 petitioner also filed a notice of appeal from final judgment, purporting to appeal the August 27, 2018 findings, conclusions, and recommendation of the United States Magistrate Judge. The court is not deprived by that notice of appeal of jurisdiction to act on the magistrate judge's findings, conclusions, and recommendation because an appeal from an unappealable order does not have this effect. *See United States v. Green,* 882 F.2d 999, 1001 (5th Cir. 1989) (notice of appeal from nonappealable order does not render void for lack of jurisdiction acts of trial court taken in the interval between filing of the notice and dismissal of the appeal); *United States v. Hitchmon,* 602 F.2d 689, 694 (5th Cir. 1979) (en banc) (contrary rule would leave district court powerless to prevent intentional dilatory tactics). Accordingly, the court now proceeds to consider the portions of the proposed findings, conclusions, and recommendation to which objection was made.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1924532

2019 WL 1924532
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Galveston Division.

Kevin Bernard DAVIS Plaintiff,

v.

MATAGORDA COUNTY, et al. Defendants.

Civil Action No. 3:18-CV-00188
|
Signed 04/30/2019

**Attorneys and Law Firms**

Mark W. Frasher, Reaud Morgan and Quinn LLP, Beaumont, TX, for Plaintiff.

Vanessa Ann Gonzalez, Bickerstaff Heath Delgado Acosta, LLP, Austin, TX, Jamie Lynn Houston, Richard A. Morris, Rogers, Morris & Grover, L.L.P., Houston, TX, Casey Terrence Cullen, Cullen Carsner Seerden And Cullen LLP, Victoria, TX, for Defendants.

## ORDER

ANDREW M. EDISON, UNITED STATES MAGISTRATE JUDGE

**\*1** The issue before the Court is whether to stay all discovery in this case or allow certain discovery to proceed while the two individual defendants appeal this Court's denial of their motions to dismiss on qualified immunity grounds. For the reasons set forth below, the Court holds that Plaintiff Kevin Bernard Davis ("Davis") and Matagorda County may proceed with written discovery against each other, but all other discovery is stayed until the Fifth Circuit issues a ruling on the interlocutory appeal.

## BACKGROUND

Davis worked for Matagorda County on the Precinct 3 Road and Bridge Maintenance crew. After Matagorda County fired Davis from his position in early 2018, he filed this lawsuit against Matagorda County, Precinct 3 County Commissioner James Gibson ("Gibson") and Precinct 3 foreman William David Anders ("Anders"). Davis claims that during his tenure with Matagorda County he was subjected to a workplace filled with discriminatory intimidation, ridicule, and insult, all based on his race. He alleges that Gibson and Anders were both aware of, participated in, and encouraged others to participate in creating a hostile work environment. In the First Amended Complaint, Davis asserts causes of action for violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, the First Amendment, and the Fourteenth Amendment.

Matagorda County, Gibson, and Anders each moved to dismiss the lawsuit in its entirety. In seeking dismissal, Gibson and Anders both asserted the defense of qualified immunity from Davis's claims. The Court denied Matagorda County's Motion to Dismiss and granted in part and denied in part Gibson's and Davis's Motions to Dismiss. With respect to Gibson, the Court denied him qualified immunity from Davis's First Amendment and Fourteenth Amendment claims. As far as Anders is concerned, the Court denied him qualified immunity from Davis's Section 1981 and Fourteenth Amendment claims.

Gibson and Anders have each filed a notice of interlocutory appeal with the Fifth Circuit, challenging the denial of their motions to dismiss based on qualified immunity.

Davis recently noticed depositions for 16 current and former Matagorda County employees and officials, including Gibson and Anders. In response to this flurry of activity, Matagorda County filed a Motion for Protection, Motion to Stay Discovery, and Motion to Quash Depositions and Subpoenas Duces Tecum, asking this Court to stay all discovery. See Dkt. 73. Likewise, Gibson and Anders have each filed their own motions to stay the case pending the interlocutory appeal. See Dkts. 89 and 90.

## ANALYSIS

Once a notice of appeal is filed from a district court's order denying a motion to dismiss based on qualified immunity, the district court loses jurisdiction with respect to any matters involved in the appeal. [1] See Alice L. v. Dusek, 492 F.3d 563, 564 (5th Cir. 2007). This does not mean that all proceedings in the district court come to an abrupt stop. Instead, "the district court may still proceed with matters not involved in the appeal." Id. at 564–65 (quoting Taylor v. Sterrett, 640 F.2d 663, 667–68 (5th Cir. 1981) ).

2019 WL 1924532

*2  Courts across the nation often issue a blanket stay of all discovery pending an interlocutory appeal in qualified immunity cases. *See, e.g., Sosa v. Hames*, No. 05-23079-CV-ALTONAGA, 2006 WL 1284927, at *1 (S.D. Fla. May 3, 2006) (staying proceedings as to all parties during interlocutory appeal by one officer based on qualified immunity "in the interest of conserving the parties' and judicial resources"); *Summit Medical Assocs., P.C. v. James*, 998 F. Supp. 1339, 1342 (M.D. Ala. 1998) ("[A] stay of proceedings in the district court is required where a public official takes an interlocutory appeal to assert a non-frivolous claim to absolute or qualified immunity."). These stays are designed to protect public officials from "unnecessary and burdensome discovery or trial proceedings" while the interlocutory appeal is being decided. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). *See also Williams v. Brooks*, 996 F.2d 728, 730 n.2 (5th Cir. 1993) ("Immunity, whether qualified or absolute, is an entitlement to be free from the burdens of time-consuming pre-trial matters and the trial process itself.") (citation omitted). That being said, a complete stay of all discovery pending an interlocutory appeal in a qualified immunity case is neither mandated nor automatic.

Because a district court retains jurisdiction to proceed on unrelated claims, it is fully within a judge's discretion to permit discovery to continue on claims separate and apart from those at issue in the interlocutory appeal, as well as those claims brought against parties who have not moved for dismissal based on qualified immunity. [2] Indeed, examples abound of judges staying selected discovery during the pendency of an interlocutory appeal on qualified immunity while allowing other discovery to proceed unabated. *See, e.g., R.F.J. v. Fla. Dep't of Children and Families*, No. 3:15-CV-1184-J-32JBT, 2017 WL 11004970, at *1–2 (M.D. Fla. Feb. 24, 2017) (staying discovery against two individual defendants on select causes of action while an interlocutory appeal is pending, but authorizing discovery to proceed against those same individual defendants and a governmental entity on claims not subject to the interlocutory appeal); *Stumpf v. City of Dallas*, No. 3:15-CV-1944-N, 2016 WL 10749149, at *1–2 (N.D. Tex. May 25, 2016) (staying discovery pending appeal against an individual defendant asserting qualified immunity claims, but allowing discovery against a municipality to proceed as to other remaining claims); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733–34 (N.D. Tex. 2014) (same); *KM. v. Ala. Dep't of Youth Servs.*, 209 F.R.D. 493, 495–96 (M.D. Ala. 2002) (staying discovery as to supervisors who appealed denial of qualified immunity, but allowing plaintiffs to collect limited information from those supervisors who did not appeal the denial of qualified immunity).

The defense of qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.' ") (citation omitted). To this end, there is no question Davis is foreclosed from pursuing any and all discovery aimed at Gibson and Anders relating to the claims currently subject to the qualified immunity appeal. To his credit, Davis does not quarrel with this basic premise. Instead, Davis argues that he should be able to proceed with full-fledged discovery relating to his claims against Matagorda County since the qualified immunity defense is unavailable to the County. *See Owen v. City of Independence*, 445 U.S. 662, 638 (1980). In making this argument, Davis readily acknowledges that the discovery he seeks would include depositions of Gibson and Anders since they are key fact witnesses with respect to his claims against Matagorda County.

*3  A careful review of the First Amended Complaint reveals that the allegations brought against Matagorda County are inextricably intertwined with the factual allegations and legal claims raised against Gibson and Anders. This is not contested. The parties fully agree that the fundamental premise of this lawsuit is that Gibson and Anders, as Matagorda County policymakers, engaged in improper conduct and/or failed to prevent improper conduct from occurring. Given these allegations, Gibson and Anders ask "the Court to stay all proceedings because the claims against [them] and Matagorda County are so interwoven that [they] would likely be forced to participate in depositions to protect [their interests] while the Fifth Circuit considers [their] interlocutory appeal." Dkt. 89 at 2. *See also* Dkt. 90 at 5–6 ("[B]ecause Plaintiff complexly intertwines his factual allegations and claims against all defendants[,] ... Defendant Anders must participate in any discovery in order to adequately defend himself and preserve his rights. Therefore, only a stay of all proceedings preserves the benefits of qualified immunity for Defendant Anders.").

The Court certainly recognizes that the testimony of Gibson and Anders will be required no matter what happens with respect to the interlocutory appeal. If the Fifth Circuit

Davis v. Matagorda County, Not Reported in Fed. Supp. (2019)

2019 WL 1924532

determines that Gibson and Anders are not entitled to qualified immunity, they will remain as defendants, with Davis fully entitled to take their depositions as part of the discovery process. And even if the Fifth Circuit finds that Gibson and Anders are entitled to qualified immunity, they would nonetheless remain material witnesses with respect to the claims against the County.

The Court also understands and appreciates Davis's argument that any stay of discovery, accompanied by the inexorable passage of time, will "increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton v. Jones*, 520 U.S. 681, 707–08 (1997). Although this fear is always present when a court contemplates entering a discovery stay, it is less of a concern in this case since only a year has passed since the underlying events giving rise to this lawsuit actually occurred.

Ultimately, however, the Court is persuaded by the argument that allowing full-scale discovery to proceed against Matagorda County will put an enormous burden on Gibson and Anders, forcing them and their counsel to actively participate in the discovery process while their qualified immunity appeal is pending before the Fifth Circuit. This burden, in the Court's mind, outweighs any potential risk of a loss of records or witnesses occasioned by the delay caused by the appeal of the district court's immunity ruling. As the Supreme Court has forcefully explained:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Iqbal*, 556 U.S. at 685–86. Given that the factual claims against all the defendants in this case are so closely interwoven, Gibson and Anders would, unquestionably, be entitled to re-take those depositions that take place while the interlocutory immunity appeal is pending. In the Court's view, it defies common sense to allow such wide-ranging and intrusive discovery when such discovery will simply have to be repeated if the Fifth Circuit affirms this Court's qualified immunity determination. In the interest of conserving resources (both the resources of the parties and the judicial system), the Court believes that all discovery on claims related to those made the subject of the interlocutory appeal shall be stayed until the Fifth Circuit issues a ruling on the qualified immunity appeal. *See Wilson v. Sharp*, No. 17-84-SDD-EWD, 2017 WL 4685002, at *2 (M.D. La. Oct. 18, 2017) ("[S]taying all discovery to permit resolution of the qualified immunity defense that has been asserted by [the individual defendants] furthers their interests in being shielded from the burdens of being required to participate in discovery (even discovery that is not directed specifically at them), pending resolution of the defense.").

**\*4** That leaves open the question whether any discovery at all should proceed against Matagorda County since the County cannot rely on the qualified immunity defense. Matagorda County argues that "it is most efficient to stay all discovery against all defendants until the qualified immunity issues on interlocutory appeal are resolved." Dkt. 76 at 3. [3] The Court disagrees. The case against Matagorda County will proceed no matter how the Fifth Circuit comes out on the immunity issue. In light of this outcome, the Court sees no reason to preclude Davis from pursuing written discovery—requests for production, requests for admission and interrogatories—against Matagorda County. Such discovery will allow Davis to obtain relevant information regarding his claims against Matagorda County and ensure that all relevant, responsive documents are timely exchanged and not lost to time nor space. *See Imani v. City of Baton Rouge*, No. 17-439-JWD-EWD, 2018 WL 2208221, at *7 (M.D. La. May 14, 2018) (staying most discovery pending a determination of the qualified immunity defense, but allowing the plaintiff and those defendants who did not assert a qualified immunity defense to engage in written discovery).

## CONCLUSION

Davis v. Matagorda County, Not Reported in Fed. Supp. (2019)

2019 WL 1924532

For the reasons identified above, the Court holds that Davis and Matagorda County may proceed with written discovery against each other, but all other discovery is stayed until the Fifth Circuit issues a ruling on the interlocutory appeal. The Court further vacates the current docket control dates, including the trial date of this case, and will put a new schedule in place once the Fifth Circuit issues a ruling resolving the qualified immunity issue.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1924532

## Footnotes

1    A district court order denying a motion to dismiss based on qualified immunity is immediately appealable. *See, e.g., Richardson v. McKnight*, 521 U.S. 399, 402 (1997) (allowing interlocutory appeal of denial of motion to dismiss based on qualified immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' ").

2    "The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). At the same time, the Fifth Circuit has noted that while district courts have general discretionary power to stay proceedings, it is an abuse of this discretion to issue stay orders of an indefinite duration. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

3    Matagorda County also argues that discovery should be stayed until the Equal Employment Opportunity Commission ("EEOC") completes its investigation into the Charge of Discrimination Davis filed with the EEOC in May 2018. This Court will follow Fifth Circuit precedent directly on point and reject the request for a stay on these grounds. *See Hines v. D'Artois*, 531 F.2d 726, 736 (5th Cir. 1976) (an order staying Section 1981 and Section 1983 claims pending completion of EEOC Title VII proceedings is immoderate and unlawful because it imposes on the parties a requirement that Congress had rejected: that the plaintiff exhaust Title VII remedies before pursuing remedies under Section 1981 or Section 1983).

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

844 Fed.Appx. 776 (Mem)
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

Christopher FORET, Plaintiff—Appellant,

v.

WASTE CONNECTIONS BAYOU, INCORPORATED,
formerly known as Progressive Waste
Solutions of LA, Incorporated; Ace American
Insurance Company, Defendants—Appellees.

No. 20-30685
|
Summary Calendar
|
FILED April 21, 2021

Appeal from the United States District Court for the Eastern
District of Louisiana, USDC No. 2:20-CV-467

**Attorneys and Law Firms**

Vanessa Motta, Motta Law, L.L.C., New Orleans, LA, Dane
S. Ciolino, Metairie, LA, for Plaintiff-Appellant

Guice Anthony Giambrone, III, Esq., Blue Williams, L.L.P.,
Metairie, LA, Jacob Kenneth Best, Metairie, LA, for
Defendants-Appellees

Before Jolly, Elrod, and Graves, Circuit Judges.

**Opinion**

Per Curiam: *

**\*777** For this court to exercise appellate jurisdiction, we
must first determine whether the district court's order staying
Mr. Foret's case was a final appealable judgment for purposes
of 28 U.S.C. § 1291. An order staying judicial proceedings
is ordinarily not considered final and is hence not appealable.
*Kershaw v. Shalala*, 9 F.3d 11, 13–14 (5th Cir. 1993) (citing
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460
U.S. 1, 10 n.10, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Since
we find no applicable exception to that rule, we dismiss the
appeal for lack of jurisdiction.

I.

The district court learned of an ongoing criminal investigation
potentially involving the counsel or parties to this action, the
details of which are not widely known. At a status conference,
the district court suggested that defendant-appellee file a
motion to stay. Defendant-appellee did so. The district
court then issued a written order that provided a detailed
explanation of why a stay was warranted, granted the motion,
and stayed the case pending completion of the criminal
investigation.

This case was one of twelve or thirteen cases involving similar
car accidents on Interstate Ten in New Orleans where several
judges in the Eastern District of Louisiana issued stays due
to an ongoing criminal investigation. The fact patterns all
involve alleged collisions with commercial vehicles on I-10
and plaintiff-appellant's counsel in this case represents or
represented the plaintiffs in those cases.

II.

As mentioned, a grant of a motion to stay is not typically
considered a final order and is hence not appealable. *Kershaw*,
9 F.3d at 13–14; § 3914.13 Finality—Orders Prior to Trial
—Stay Orders, 15A FED. PRAC. & PROC. JURIS. §
3914.13 (2d ed.). Even so, Mr. Foret contends that we have
jurisdiction under the collateral order doctrine and argues in
the alternative that his motion should be considered a petition
for a writ of mandamus. Neither argument convinces.

For the collateral order doctrine to apply, (1) the order
must finally dispose of an issue so that the district court's
decision may not be characterized as tentative, informal, or
incomplete; (2) the question must be serious and unsettled;
(3) the order must be separable from, and collateral to, the
merits of the principle case; and (4) there must be a risk of
important and irreparable loss if an immediate appeal is not
heard because the order will be effectively unreviewable on
appeal from final judgment. *Kershaw*, 9 F.3d at 14; *Equal
Emp. Opportunity Comm'n v. Kerrville Bus Co., Inc.*, 925 F.2d
129, 134 (5th Cir. 1991); *Acosta v. Tenneco Oil Co.*, 913 F.2d
205, 207–08 (5th Cir. 1990).

Mr. Foret makes no argument as to how the motion to
stay qualifies for review as a collateral order. In conclusory

Foret v. Waste Connections Bayou, Incorporated, 844 Fed.Appx. 776 (2021)

fashion, he **\*778** simply says it does. Regardless, we fail to see how the stay either risks irreparable loss or presents a need for this court to immediately review the order because it disposes of an issue or presents a serious question in need of a prompt answer. At this point, the case has been stayed for only a few months and Mr. Foret does not argue that the stay will prejudice him or put him in a position where he will be unable to pursue his case once the stay has been lifted.

Further, a writ of mandamus is a drastic and extraordinary remedy, and a writ may issue only if Mr. Foret has shown a clear and indisputable right to it. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019). "Satisfying this condition 'require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion.' " *Id.* (citing *In re Lloyd's Register*, 780 F.3d 283, 290 (5th Cir. 2015)). Instead, Mr. Foret must demonstrate a " 'clear abuse[ ] of discretion that produce[s] patently erroneous results.' " *Id.* Put differently, Mr. Foret must show not only that the district court erred but that it clearly and indisputably erred. *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000).

The district court here provided several reasons why it felt a stay was needed. Though there is no date certain for lifting the stay, Mr. Foret fails to show that the district court clearly and indisputably erred in concluding that this case presents "special circumstances" such that a stay would "prevent a party from suffering substantial and irreparable prejudice." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 592 (5th Cir. 2008) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)). The court provided a point-by-point analysis of six factors commonly considered when deciding whether to stay a case in light of a pending criminal investigation. *See Alcala v. Tex. Webb Cty.*, 625 F.Supp.2d 391, 399 (S.D. Tex. 2009) (collecting district court cases from within the Fifth Circuit applying these factors). It then concluded that a stay was justified and in the best interest of the parties considering the ongoing investigation and told the parties that it would lift the stay upon the investigation's completion. There is no indication that the investigation is dragging on unnecessarily. If it becomes apparent that the investigation is taking an excessive amount of time, and that any party is suffering from substantial and irreparable prejudice as a result, then the district court may need to reassess whether the stay is still warranted.

III.

Accordingly, we DISMISS the appeal for lack of jurisdiction.

**All Citations**

844 Fed.Appx. 776 (Mem)

## Footnotes

\*     Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

End of Document     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

2024 WL 342440
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

Andrew HARRINGTON, et al., Plaintiffs,
v.
CRACKER BARREL OLD COUNTRY
STORE INCORPORATED, Defendant.

No. CV-21-00940-PHX-DJH
|
Signed January 30, 2024

**Synopsis**

**Background:** Employees brought action against employer for alleged violations of the Fair Labor Standards Act (FLSA) provisions governing wages for tipped employees. The United States District Court for the District of Arizona, Diane J. Humetewa, J., 2023 WL 2734459, granted employees' motion for preliminary certification of the matter as a collective action under the FLSA and denied employer's motion to dismiss and to compel arbitration. Employer filed a motion for reconsideration, a motion to certify interlocutory appeal, and motions to strike employee's request for equitable tolling and notice of supplemental authority.

**Holdings:** The District Court, Diane J. Humetewa, J., held that:

the proper statute of limitations under the FLSA was three years before the court certified the matter as a collective action;

statute of limitations would be equitably tolled to reflect district court's delay in ruling on certification and employer's motions;

whether opt-in members of the collective action were subject to arbitration was properly determined at the second stage of the FLSA certification process;

employer was entitled to interlocutory appeal of questions regarding arbitration and personal jurisdiction;

interlocutory appeal was not appropriate to address the question of process used by district court to preliminarily certify the collective action;

employees' notice of supplemental authority would be stricken as improper and unnecessary; and

a stay of proceedings pending appeal was warranted .

Ordered accordingly.

**Procedural Posture(s):** Motion for Reconsideration; Motion for Equitable Tolling; Motion to Strike; Motion for Certificate of Appealability; Motion to Stay Proceedings.

**Attorneys and Law Firms**

Monika Sud-Devaraj, Law Offices of Monika Sud-Devaraj & Marshall G. Whitehead PLL, Phoenix, AZ, Nitin Sud, Pro Hac Vice, Sud Law PC, Bellaire, TX, for Plaintiffs.

James Matthew Coleman, Pro Hac Vice, Jason Daniel Friedman, Pro Hac Vice, Constangy Brooks Smith & Prophete LLP, Fairfax, VA, Jeffrey Stephen Hunter, William W. Drury, Jr., Weinberg Wheeler Hudgins Gunn & Dial LLC, Phoenix, AZ, Miles M. Masog, Renaud Cook Drury Mesaros PA, Phoenix, AZ, for Defendant.

## ORDER

Diane J. Humetewa, United States District Judge

**\*1** On March 31, 2023, the Court conditionally certified this matter as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (the "Collective Certification Order") (Doc. 82). Pending before the Court are five motions filed by Defendant Cracker Barrel Old Country Store Incorporated ("Cracker Barrel"), each of which concern rulings that stem from the Collective Certification Order:

(1) Cracker Barrel's "Motion for Clarification, or, in the Alternative, Reconsideration" (Doc. 83) [1] ("Motion for Reconsideration") regarding the putative collective definition that was established in the Collective Certification Order;

(2) Cracker Barrel's "Motion to Certify Interlocutory Appeal" (Doc. 84) [2] of four questions arising out of the Collective Certification Order;

(3) Cracker Barrel's "Motion to Strike Plaintiffs' Request for Equitable Tolling" (Doc. 93) [3], where the contended

request appeared in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration (Doc. 90);

(4) Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96)[4] of the Collective Certification Order to the Ninth Circuit (Doc. 91);

(5) Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101)[5] regarding *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023).

For the following reasons, the Court will modify the putative collective definition, certify for interlocutory appeal questions regarding arbitration and personal jurisdiction in FLSA collective actions, and stay the matter pending the Ninth Circuit's review.

### I. Procedural History[6]
Cracker Barrel filed most of the pending motions within the span of twenty-one days, creating a complex procedural history. Below is a brief overview of the relevant rulings, motions, and arguments:

In August 2022, Cracker Barrel filed its "Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice" (Doc. 77). Plaintiffs Andrew Harrington, Katie Liammaytry, Jason Lenchert, and Dylan Basch (collectively "Plaintiffs' ") also filed their "Second Amended Motion For Conditional Certification" (Doc. 76). In March 2023, the Court issued its Collective Certification Order, which denied Cracker Barrel's Motion but granted Plaintiffs' Motion. (*See generally* Doc. 82). In so doing, the Court conditionally certified the present action as a collective under Section 216(b) of the FLSA. (*Id.*) The Court defined the following putative collective for notice purposes: "all current and former Cracker Barrel servers who worked for Cracker Barrel from May 28, 2018, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme." (*Id.* at 28).[7] The Court also authorized Plaintiffs' Notice and Consent to Join forms (Docs. 76-13; 76-14) (the "Notice Forms") to be disseminated in compliance with the Court's directives. (Doc. 82 at 19–28).

**\*2** On April 14, 2023, Cracker Barrel filed its Motion for Reconsideration on the bounds of the putative collective for notice purposes. (Doc. 83). Cracker Barrel concurrently filed a Motion to Certify Interlocutory Appeal (Doc. 84) and a

"Motion to Stay Deadlines for Answer and Production of Employee Data" (Doc. 85).

In its April 17, 2023, Order, the Court noted some merit in Cracker Barrel's position on the defined putative collective, and thus ordered the parties to meet and confer on possible stipulated language for the terms of notice. (Doc. 88 at 1). If no agreement could be reached, the Court ordered Plaintiffs to respond to Cracker Barrel's Motion for Reconsideration. (*Id.*) Consequently, the Court stayed the notice deadlines established in the Collective Certification Order pending a ruling on Cracker Barrel's Motion for Reconsideration. (*Id.* at 2).

On April 28, 2203, Plaintiffs filed their Response to Cracker Barrel's Motion for Reconsideration (Doc. 90) agreeing to a "slight modification" of the Collective Certification Order. (*Id.* at 1).

On April 30, 2023, instead of waiting for the Court to review the parties' arguments on the Collective Certification Order and rule on the related Motion for Reconsideration, Cracker Barrel appealed the Collective Certification Order to the Ninth Circuit. (Doc. 91). Thereafter, Cracker Barrel moved to strike Plaintiffs' request for equitable tolling as set forth in Plaintiffs' Response to Cracker Barrel's Motion for Reconsideration. (Doc. 93). Cracker Barrel also moved to stay the case pending the appeal of the Collective Certification Order. (Doc. 96).

On June 25, 2023, Plaintiffs file a notice of new United States Supreme Court authority that relates to issues in the present matter. (Doc. 99). Cracker Barrel moved to strike Plaintiffs' notice. (Doc. 99).

On October 4, 2023, Cracker Barrel's then-counsel moved to withdraw as counsel of record. (Doc. 103). Cracker Barrel has since retained new counsel. (Doc. 105).

### II. Discussion
The Court will address together Cracker Barrel's Motion for Reconsideration and Motion to Strike Plaintiffs' Request for Equitable Tolling because both relate to the bounds of the putative collective. The Court will then turn to Cracker Barrel's Motion to Certify Interlocutory Appeal. The Court will conclude with Cracker Barrel's Motion to Stay Proceedings Pending Appeal and Motion to Strike Plaintiffs' Notice of Supplemental Authority because both relate to whether a stay in this case is proper.

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

### A. Cracker Barrel's Motion for Reconsideration (Doc. 83) and Motion to Strike Plaintiffs' Request for Equitable Tolling (Doc. 93)

Cracker Barrel seeks reconsideration of the putative collective definition due to concerns regarding the scope of data it must produce on the individuals who will be sent notice. Cracker Barrel represents the putative collective currently encompasses 159,934 individuals. (Doc. 83 at 3). Cracker Barrel seeks clarification of the definition "to make sure FLSA conditional certification notice is not sent to individuals whose FLSA claims are already time-barred or who this Court has previously determined cannot join this court action." (*Id.* at 2). First, Cracker Barrel argues the Court should reconsider the time frame of the putative collective in light of the opt-in standard for FLSA collective actions. (*Id.* at 4–6). Cracker Barrel seeks to strike Plaintiffs' request that the statute of limitations be equitably tolled. (*See generally* Doc. 93). Second, Cracker Barrel argues the Court should reconsider the scope of the putative collective so that it expressly excludes servers who signed Cracker Barrel's Arbitration Agreement after turning 18 years old. (Doc. 83 at 10, 6–9).

**\*3** The Court will set forth the applicable legal standard for motions for reconsideration before turning to Cracker Barrel's arguments.

### 1. Legal Standards

Motions for reconsideration should be granted only in rare circumstances. *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). Similarly, Arizona Local Rule of Civil Procedure 7.2 provides "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). The movant must specify "[a]ny new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier." *Id.* Whether to grant a motion for reconsideration is left to the "sound discretion" of the

district court. *Navajo Nation v. Norris,* 331 F.3d 1041, 1046 (9th Cir. 2003). Such motions should not be used for the purpose of asking a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)). A mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F. Supp. 1572, 1573 (D. Haw. 1988).

### 2. The Time Frame of the Putative Collective

Cracker Barrel first argues the Court should reconsider the time frame of the putative collective because it does not accurately reflect the opt-in standard for FLSA collective actions. The Collective Certification Order defined the putative collective for notice purposes as follows: "all current and former Cracker Barrel servers who worked for Cracker Barrel *from May 28, 2018, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme." (Doc. 82 at 28) (emphasis added). In so defining, the Court settled that Plaintiffs may use the three-year statutory time period for Cracker Barrel's allegedly willful violations of the FLSA. (*Id.* at 25) (citing 29 U.S.C. § 225(a)). Cracker Barrel does not take issue with the Court's decision to do so. The Court further explained that because the original complaint in this matter was filed on May 28, 2021, the putative collective time frame is three years before the filing of the complaint on May 18, 2018. (*Id.*) Cracker Barrel argues this decision was error.

Cracker Barrel posits the time frame should start on March 31, 2020—or, three years before the Court certified this matter as a collective action. (Doc. 83 at 6). Cracker Barrel maintains that collective actions under the FLSA differ from other class actions under Federal Rule of Civil Procedure 23 in that an FLSA opt-in plaintiff's action is considered commenced from the date their opt-in form is filed with the district court. (*Id.* at 4). Cracker Barrel asserts the Court's error resulted in a defined collective that includes an extra 64,216 individuals whose claims would otherwise be time-barred. (*Id.* at 5). In response, Plaintiffs admit that "a three-year statute of limitations from the date a plaintiff opts-in is generally the rule" in FLSA cases. (Doc. 90 at 2). However, Plaintiffs argue the statute of limitations should be equitably tolled due to Cracker Barrel's efforts to prolong case proceedings. (*Id.* at 5–8). Cracker Barrel moves to strike Plaintiffs' request on the

basis that it is improper to raise new claims or grounds for relief in a response brief. (Doc. 93 at 2).

**\*4** The Courts agrees with Cracker Barrel that the Collective Certification Order erred when setting the time frame of the putative collective as three years prior to the filing of the complaint. The Court also finds that Plaintiffs' request for equitable tolling—although procedurally improper—is meritorious. The time frame of the putative collective will be modified accordingly.

### a. The Putative Collective Should Reflect the FLSA's Opt-in Standard

Section 255(a) of the FLSA states that "a cause of action arising out of a willful violation may be *commenced* within three years after the cause of action accrued." 29 U.S.C. § 255(a) (emphasis added). Section 256 further defines when a cause of action has been "commenced" for statute of limitation purposes:

> In determining when an action is commenced for the purposes of section 255 of [the FLSA], an action commenced on or after May 14, 1947 [under the FLSA] shall be considered to be commenced on the date when the complaint is filed; *except that in the case of a collective or class action instituted under the [FLSA],* it shall be considered to be commenced in the case of any individual claimant—

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

> (b) if such written consent was not so filed or if his name did not so appear—*on the subsequent date on which such written consent is filed in the court in which the action was commenced.*

*Id.* § 256 (emphasis added). In other words, in an FLSA collective action such as here, an opt-in plaintiff's action is deemed "commenced" from the date her opt-in form is filed, not from the date the complaint was filed. *Campbell v. City of L.A.*, 903 F.3d 1090, 1104 (9th Cir. 2018) (citing 29 U.S.C. § 256). The Northern District of California has highlighted the FLSA's distinct opt-in standard in *Coppernoll v. Hamcor, Inc.*:

> For purposes of calculating the timeliness of a FLSA claim, the statute of limitations is tolled for each putative class member individually upon filing a written consent to become a party plaintiff. This opt-in standard differs from the opt-out standard in a Rule 23 class action, where the statute of limitations is tolled for all putative class members when the complaint is filed. Thus, without equitable tolling, the statute of limitations on a putative class member's FLSA claim continues to run in the time between the filing of the collective action complaint and the filing of their written consent opting-in.

2017 WL 1508853, at \*1 (N.D. Cal. Apr. 27, 2017).

Because this is an FLSA collective suit, the Court should not have applied the opt-out standard; rather, the putative collective should be framed based on the opt-in standard under Section 256. The Collective Certification Order erred when it set the time frame of the putative collective as May 28, 2018, on the basis that an FLSA opt-in plaintiff's action is commenced on the date the complaint is filed. (Doc. 82 at 25). Section 256 of the FLSA rather establishes that an FLSA opt-in plaintiff's action is "commenced" from the date her opt-in form is filed. 29 U.S.C. § 256. Plaintiffs certainly concede to this general rule. (Doc. 90 at 2). Therefore, the Court agrees with Cracker Barrel that it is more appropriate to set the time frame of the putative collective as three years before the Court certified this matter as a collective action. The remaining issue, however, is Plaintiffs' request to equitably toll the applicable statute of limitations.

### b. Plaintiffs' Request for Equitable Tolling

**\*5** Plaintiffs request that the Court toll the statute of limitations on the putative collective's FLSA claims due to (1) Cracker Barrel's efforts to prolong case proceedings and (2) other delays in this case. (Doc. 90 at 5–8). Cracker Barrel moves to strike Plaintiffs' request as procedurally deficient, arguing it is "inappropriate [ ] to imbed in a

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

response brief." (Doc. 93 at 2). Even so, Cracker Barrel submitted a proposed "Response in Opposition" regarding Plaintiffs' equitable tolling arguments in the event the Court construes Plaintiffs' request as a new motion. (Doc. 93-2). Plaintiffs have no objection to the Court considering Cracker Barrel's Response in Opposition and have submitted a reply brief thereto. (*See* Doc. 94). The Court will address Cracker Barrel's procedural arguments before turning to the merits of Plaintiffs' request for tolling.

### i. Plaintiffs' Request for Tolling
### is Construed as a Motion

At the outset, to request a new claim for relief for the first time in a response brief is not the appropriate procedure. *See Allen v. Beard,* 2019 WL 2501925, *2 n.3 (S.D. Cal. June 17, 2019)* (explaining "a defendant must have 'fair notice' of the claims and the grounds for relief" and so a plaintiff "may not raise new claims or new grounds for relief in opposition to [a] motion") (citing *Pickern v. Pier I Imports (U.S.), Inc.,* 457 F.3d 963, 968 (9th Cir. 2006)); *Griego v. Cnty. of Maui,* 2017 WL 2882695, at *5 (D. Haw. July 6, 2017)* ("The regular briefing protocol for a motion would be undermined if a new motion (other than a mirror-image motion such as a cross- or counter-motion) were countenanced if mentioned in an opposition memorandum."). Plaintiffs indeed recognize they have failed to file a motion for equitable tolling. (Doc. 90 at 8 n.3). Nonetheless, because Cracker Barrel preemptively submitted a Response in Opposition to Plaintiffs' tolling arguments, to which Plaintiffs have replied, any notice concerns are remedied. In the interest of judicial economy, the Court will proceed by construing Plaintiffs' request for equitable tolling as a fully briefed motion.[8] Plaintiffs, however, are admonished for this unconventional procedure.

### ii. Plaintiffs' Request for Tolling has Merit

As to the merits of Plaintiffs' request, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." *Wallace v. Kato,* 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The Ninth Circuit has stated that courts have discretion to apply equitable tolling on a case-by-case basis, but that such relief is to be applied "sparingly" and in "extreme" scenarios. *Scholar v. Pac. Bell,* 963 F.2d 264, 267 (9th Cir. 1992); *see also Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760-61 (9th Cir.

1981), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (stating the statute of limitations under Section 255 of the FLSA may be tolled "when equity warrants"). For example, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999). The Court finds the latter warrants tolling here.

Plaintiffs argue equitable tolling should apply from either September 3, 2021—the date Plaintiffs' initial Motion to Certify Class (Doc. 8) was fully briefed—or October 4, 2021—the date the Court granted Cracker Barrel's Motion to Stay Discovery (Docs. 41; 45). (Doc. 90 at 7–8). Plaintiffs point to (1) Cracker Barrel's efforts to prolong the case and (2) the Court's discretionary case management decisions as circumstances beyond their control that give rise to equitable tolling. (*Id.* at 8). Cracker Barrel contends Plaintiffs cannot rely on their previously failed litigation attempts to seek tolling, as the Court ultimately denied Plaintiffs' initial Motion to Certify Class and dismissed the complaint that was connected to the Court's stay of discovery. (Doc. 93-2 at 4).

**\*6** The Court agrees with Cracker Barrel that failed litigation efforts are hardly the type of extreme circumstances that justify equitable tolling. However, the Court is persuaded by Plaintiffs' line of authorities that have applied equitable tolling "where the court's discretionary case management decisions have led to procedural delay beyond the control of the putative collective action members." *Koval v. Pac. Bell Tel. Co.,* 2012 WL 3283428, *7 (N.D. Cal. Aug. 10, 2012);* (*see* Doc. 90 at 7–8). Those authorities have found delays beyond a plaintiff's control include the time a court requires to rule on a motion to certify a collective action under the FLSA. *See Winningham v. Rafeal's Gourmet Diner, LLC,* 2022 WL 18359485, at *2 (D. Or. Dec. 19, 2022), *report and recommendation adopted,* 2023 WL 197005 (D. Or. Jan. 17, 2023); *Small v. Univ. Med. Ctr. of S. Nevada,* 2013 WL 3043454, at *3 (D. Nev. June 14, 2013)); *Helton v. Factor 5, Inc.,* 2011 WL 5925078, *2 (N.D. Cal. Nov. 28, 2011). Here, the Court took under advisement Plaintiffs' Second Motion to Certify Class for six months before conditionally certifying this action as a collective. The Court required an additional ten months to resolve Cracker Barrels' five pending motion, all of which has been delaying the dissemination of notice to the putative collective despite this action being conditionally

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

certified under the FLSA. Given that these delays are outside of Plaintiffs' control, the Court will equitably toll the statute of limitations from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to the putative collective. *See Winningham*, 2022 WL 18359485, at *2; *Koval v. Pac. Bell Tel. Co.*, 2012 WL 3283428, at *7.

In sum, to account for (1) the applicable three-year statute of limitations under the FLSA, (2) the opt-in standard under the FLSA, (3) the equitable tolling period that will run from September 6, 2022, until the date that notice is disseminated to the putative class, and (4) the policy that the broadest notice possible be approved on conditional certification of FLSA collective actions, [9] the time frame of the putative collective class for notice purposes shall include: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

### 3. The Scope of the Putative Collective

Cracker Barrel next argues the Court erred when it included individuals who are subject to arbitration in the putative collective. (Doc. 83 at 6–10). The Court directly addressed this issue in the Collective Certification Order. (Doc. 82 at 20–21). In denying Cracker Barrel's Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice, the Court further examined Cracker Barrel's Arbitration Agreement and clarified which employees are subject to arbitration versus those who are not:

> Employees who have signed the Agreement, including through Cracker Barrel's online training program, while the majority age are subject to the Agreement. By contrast, employees are not subject to the Agreement if they: (1) did not sign the Agreement; (2) signed the Agreement when they were a minor and are still a minor; or (3) signed the Agreement when they were a minor and voided the

Agreement after turning the majority age.

(*Id.* at 20). Due to these nuanced circumstances, the Court found it best to address whether certain opt-in plaintiffs were subject to arbitration at the second stage of the certification process. (*Id.* at 21 (noting other courts in the Ninth Circuit that have found the same)). The Court concluded that—even though some of the notified members of the putative collective may be subject to arbitration—it was improper to reference the Arbitration Agreement in the putative collective definition because "[o]nly after the FLSA plaintiffs join this action, may the court entertain [a] defendants' arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively." (*Id.* at 21) (quoting *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018)). The Court further acknowledged that other areas of the Notice Forms would sufficiently alert potential opt-in plaintiffs that they can only join the action if they are not subject to arbitration. (*Id.* at 20 (citing Doc. 76-13 at 1, 2)).

**\*7** Cracker Barrel contends the Court contradicted its prior orders when it did not account for a potential opt-in plaintiff's "arbitration signing status" in the putative collective for notice purposes. (Doc. 83 at 7). In Cracker Barrel's opinion, by determining which employees are subject to arbitration and which are not, the Court fully resolved the issue of enforceability in this matter and failed to tailor the putative collective definition accordingly. (*Id.*) Cracker Barrel complains that "while 53,750 individuals either have not signed the Agreement or [were] minors at the time of signing, a staggering 108,184 individuals have signed the Agreement as adults and, per the Court's previous Orders, cannot bring their claims in Court and are ineligible to participate." (*Id.*) Cracker Barrel cites to *Droesch v. Wells Fargo Bank* for the proposition that it should be allowed to present evidence on which employees are bound to arbitrate their claims. (*Id.*) (citing 2021 WL 2805604 (N.D. Cal. July 6, 2021)). Cracker Barrel further argues the Court should revise the putative collective to expressly exclude individuals "who signed the [Arbitration] Agreement after turning 18 years old." (*Id.* at 10). This is because any inclusion in the putative collective of individuals who are potentially subject to arbitration "greatly offends" the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). (*Id.* at 9–10).

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

In opposition, Plaintiffs contend that the Court did not misapply any of its prior orders because the Collective Certification Order is the first time the Court had addressed the issue of which potential plaintiffs should get notice. (Doc. 90 at 9). They argue that all other prior orders had discussed the enforceability of the Arbitration Agreements as to specific named plaintiffs only. (*Id.*) Plaintiffs further maintain that sorting through which potential opt-in plaintiffs are subject to arbitration is more appropriate for the second stage of the FLSA certification process due to outstanding factual and legal disputes. (*Id.* at 9–10). The Court agrees with Plaintiffs in all regards.

As noted in Cracker Barrel's primary authority, the Ninth Circuit has not yet considered whether FLSA notice should be provided to individuals who signed arbitration agreements. *See Droesch*, 2021 WL 2805604, *2. So, district courts have taken varying approaches when handling arbitration issues in FLSA collective actions. In concluding that remaining disputes over which potential opt-in plaintiffs are subject to arbitration are better addressed at the second stage of the certification process, the Court pointed to other courts in this circuit in accord. (Doc. 82 at 21 citing *Monplaisir v. Integrated Tech Grp.*, LLC, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) ("[T]o avoid putting the cart before the horse, this inquiry [of arbitration] is best left for step two"); *Mejia v. Bimbo Bakeries USA Inc.*, 2018 WL 11352489, at *4 n.7 (D. Ariz. May 7, 2018); *Campanelli*, 2018 WL 6727825, at *8–9; *Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020)). Although Cracker Barrel invokes a number of out-of-circuit authorities [10] and persuasive, in-circuit authorities [11] to argue a contrary approach, Cracker Barrel has not pointed to any binding authority that precludes the Court from addressing arbitrability issues at the second stage of certification. Nor is the Court aware of any. Therefore, the Court did not commit clear error. That Cracker Barrel merely disagrees with the Court's decision to follow suit with other courts in this circuit is an insufficient basis for reconsideration. *See Leong*, 689 F. Supp. at 1573.

Moreover, Plaintiffs' list of remaining factual issues illustrates why the enforceability of Cracker Barrel's Arbitration Agreement must be determined on a case-by-case basis. Plaintiffs identify the following disputes among the parties: (1) whether an employee signed the Agreement when they were a minor depends on the state in which the Agreement was signed; (2) there may be adult employees who signed the Agreement as minors who still need to be given the

opportunity to void the Agreement; and (3) employees who signed the Agreement, ended their employment with Cracker Barrel, and then were later rehired by Cracker Barrel may not be subject to arbitration. (Doc. 90 at 9–10). Indeed, the Court had to perform fact-intensive analysis to determine that Plaintiff Dylan Basch is not subject to arbitration because he had voided the Agreement within a reasonable time [12] after turning the majority age. (Doc. 82 at 6–10). The Court cannot possibly define which opt-in plaintiffs are certainly subject to arbitration at this juncture. Separate analyses will need to be performed on each putative collective member based on the facts of their employment with Cracker Barrel.

**\*8** Cracker Barrel is reminded that we are still at the first preliminary certification stage of the Ninth Circuit's two-step approach to FLSA collective actions, which is called "preliminary" for a reason. *Campbell*, 903 F.3d at 1100. It is not the court's role to resolve factual disputes, decide substantive issues relating to the merits of the claims, or make credibility determinations at this first stage of certification—yet, that is exactly what Cracker Barrel asks this Court to do. *See Lee v. Asurion Ins. Servs. Inc.*, 2016 WL 9525665, at *2 (D. Ariz. Dec. 2, 2016) (citing *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010)); *see also Thornsbury v. Pet Club LLC*, 2016 WL 11602764, at *2 (D. Ariz. Nov. 22, 2016). Although the Court has identified nuanced circumstances in which a Cracker Barrel employee *may* not be subject to arbitration, a final determination requires further fact inquiries that are better resolved at the second stage of certification. *See Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *10 (D. Nev. Jan. 12, 2009) (stating that "disparities in the factual employment situations of any plaintiffs who choose to opt in should be considered during the court's second tier analysis"). Furthermore, the putative collective does not run afoul of the FAA because the Notice Forms adequately alerts potential opt-in plaintiffs that they can only join the action if they are not subject to arbitration. (*See* Doc. 76-13 at 1, 2). [13] And, "[a]t this stage, all putative collective members remain potential plaintiffs." *Monplaisir*, 2019 WL 3577162, at *3 (emphasis added).

### 4. Conclusion

In sum, Cracker Barrel's Motion for Reconsideration is granted to the extent it relates to the time frame of the putative collective, but denied to the extent it relates to the scope of the putative collective. Plaintiffs' request for equitable tolling is granted in part, and the Court will toll the statute of limitations

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

on the putative collective's FLSA claims from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to the putative collective. Cracker Barrel's Motion to Strike Plaintiffs' Request for Equitable Tolling will therefore be denied. To reflect these findings, the putative collective for notice purposes shall be modified to the following definition: all current and former Cracker Barrel servers who worked for Cracker Barrel from *September 6, 2019, to the present* in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme. Final determinations as whether certain opt-in plaintiffs are subject to arbitration will be reserved for the second stage of certification.

### B. Cracker Barrel's Motion to Certify Interlocutory Appeal (Doc. 84)

Cracker Barrel next requests the Court to certify the Collective Certification Order for interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b). (Doc. 84 at 8–15). Cracker Barrel argues the Collective Certification Order gives rise to the following four questions that are appropriate for appeal:

1. Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement.

2. Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period.

3. Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction.

*9 4. Whether a District Court, in determining whether putative plaintiffs are "similarly situated" to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), or instead should "rigorously enforce the similarly situated requirement" through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021).

(*Id.* at 7). Plaintiffs did not file a response in opposition to Cracker Barrel's Motion. Under Rule 7.2 of the Local Rules of Civil Procedure, if a party "does not serve and file the required answering memoranda, ... such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv. 7.2(i); *see also Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994). However, because requests for interlocutory appeals are to be granted "only in exceptional circumstances," the Court will nonetheless proceed to evaluate the merits of Cracker Barrel's Motion. *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 12250532, at *2 (D. Ariz. June 5, 2013) (citing *U.S. v. Woodbury*, 263 F. 2d 784, 799 n.11 (9th Cir. 1959)).

### 1. Legal Standards

Generally, "parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (internal citations omitted). A "narrow exception" to the final judgment rule allows a non-final order to be certified for interlocutory appeal provided that three statutory requirements are met: the non-final order "(1) involves a controlling question of law" as to which "(2) there is substantial ground for difference of opinion" and where "(3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Cracker Barrel, as "[t]he party seeking certification[,] has the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (internal citations omitted).

The first statutory requirement is that an order must involve a controlling question of law. "While Congress did not specifically define what it meant by 'controlling,' the legislative history of [28 U.S.C. §] 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "Examples of controlling questions of law include fundamental issues such as the determination of who are necessary and proper parties, whether a court to which a case has been transferred has jurisdiction, or whether state or federal law should be

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

applied." *Villarreal*, 85 F. Supp. 3d at 1068 (internal citations omitted).

As to the second statutory requirement to determine if a "substantial ground for difference of opinion" exists under 28 U.S.C. § 1292(b), [14] courts must examine to what extent the controlling law is unclear. Courts traditionally will find this requirement is satisfied where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633. However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.*

*10 Last, the third statutory requirement "that the appeal must be likely to materially speed the termination of the litigation [ ] is closely linked to the question of whether an issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case." *L.H. Meeker v. Belridge Water Storage District*, 2007 WL 781889, at *6 (E.D. Cal. March 13, 2007) (citing *In re Cement*, 673 F.2d at 1026). Where "a substantial amount of litigation remains in th[e] case regardless of the correctness of the Court's ruling ... arguments that interlocutory appeal would advance the resolution of th[e] litigation are unpersuasive." *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at *7 (C.D. Cal. May 15, 2014).

28 U.S.C. § 1292(b) "is to be applied sparingly" and is not intended "merely to provide review of difficult rulings in hard cases." *City of Glendale*, 2013 WL 12250532, at *2 (citing *Woodbury*, 263 F. 2d at 799 n.11). "Even when all three statutory requirements are satisfied, district court judges have 'unfettered discretion' to deny certification." *Id.* (internal citations omitted). Therefore, "a district court's denial of a motion to certify a decision for immediate appeal under section 1292(b) is not reviewable by the appellate court." *Environmental Protection Information Center v. Pacific Lumber Co.*, 2004 WL 838160, at *2, n. 6 (N.D. Cal. April 19, 2004) (citing *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1550 (9th Cir. 1994)). By the same token, "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *Villarreal*, 85 F. Supp. 3d at 1068.

## 2. Question Regarding Arbitration

Cracker Barrel's first proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whom the Court has determined to be bound by an enforceable arbitration agreement." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the statutory requirement is met because this question would "dramatically affect the number of persons who will be invited to file consents to join as plaintiffs." (Doc. 84 at 9). Thus, this issue goes to the fundamental determination of who the necessary and proper parties are in this matter. *See Villarreal*, 85 F. Supp. 3d at 1068. The Court further agrees the second statutory requirement is met because the Ninth Circuit has not yet opined on the issue, and there are cases displaying that "other courts both within and outside the Ninth Circuit are hostile to such an approach." (Doc. 84 at 11); (*see also* Doc. 82 at 20–21); *see also supra* Section II.A(3).

Lastly, the Court finds the third statutory requirement is met because resolution of the issue would materially affect the manner and speed in which litigation is terminated against those individuals who are subject to arbitration. Although courts across the nation have found that FLSA conditional class certification orders are not generally proper for interlocutory appeal due to their preliminary nature, *see Villarreal*, 85 F. Supp. 3d at 1069–70 (collecting cases), the Court finds the split decisions among circuit courts and inner-circuit district courts on how to approach arbitration issues in FLSA collective actions present the type of exceptional circumstances that warrant interlocutory appeal. *See Couch*, 611 F.3d at 633.

Therefore, the Court will certify Cracker Barrel's proposed question regarding arbitration in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

## 3. Question Regarding FLSA Statute of Limitations

*11 Cracker Barrel's second proposed question for interlocutory appeal is: "Whether a District Court may allow sending a notice under Section 216(b) of the FLSA to individuals whose claims would be time-barred by the FLSA's most-inclusive three year statute of limitations period." (Doc. 84 at 7). Because the Court will grant Cracker Barrel's request

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

to modify the time frame of the putative collective so that it reflects the opt-in standard under Section 256 of the FLSA, this issue is moot. *See supra* Section II.A(2).

**4. Question Regarding Specific Personal Jurisdiction**

Cracker Barrel's third proposed question for interlocutory appeal is: "Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction." (Doc. 84 at 7). The Court agrees with Cracker Barrel that this question meets all three statutory requirements. This is a controlling question of law that would materially speed the termination of litigation because it concerns a jurisdictional issue that would fundamentally "change the nature of this action from a nationwide action to one focused only on claims with connection to the State of Arizona." (*Id.* at 9). An outcome narrowing this matter as such would indeed avoid protracted and expensive litigation. *See Villarreal*, 85 F. Supp. 3d at 1068. Furthermore, there is clearly a substantial ground for difference of opinion as the circuit courts are split on the issue. And, because the Ninth Circuit has yet to weigh in on this issue, inner-circuit courts have consequently applied varying approaches. (Doc. 84 at 12). The Court has certainly noted these issues in its Certification Order. (Doc. 82 at 21–23).

Therefore, the Court will certify Cracker Barrel's proposed question on specific personal jurisdiction in FLSA collective actions for interlocutory appeal under 28 U.S.C. § 1292(b).

**5. Question Regarding Certification Process for FLSA Collective Actions**

Cracker Barrel's fourth and last proposed question for interlocutory appeal is: "Whether a District Court, in determining whether putative plaintiffs are 'similarly situated' to named plaintiffs under Section 216(b) of the FLSA, must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987), or instead should 'rigorously enforce the similarly situated requirement' through a period of preliminary discovery as held in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021)." (Doc. 84 at 7). The Court agrees with Cracker Barrel that the first statutory requirement is

met because this question would replace the certification framework as followed in the Ninth Circuit. (*Id.* at 10). However, the Court disagrees that the second statutory requirement is met. Cracker Barrel argues a substantial ground for difference of opinion exists because "[t]he Ninth Circuit has used the two-step *Lusardi* approach but has never decided whether the approach follows the FLSA, or whether *Swales* reflects the proper approach." (*Id.* at 12). But, as stated in the Collective Certification Order, the Ninth Circuit has explicitly established the two-step approach to FLSA collective action certification in *Campbell*, 903 F.3d at 1108–09, which addresses "preliminary certification" at step one and "decertification" at step two. (Doc. 82 at 11–13). *Swales* has no binding effect on the Ninth Circuit. Therefore, Cracker Barrel's fourth proposed question is not proper for interlocutory appeal. *See Couch*, 611 F.3d at 633 (holding that "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal").

**6. Conclusion**

**\*12** In sum, Cracker Barrel's Motion to Certify Interlocutory Appeal is denied as to proposed questions two and four, but granted as to questions one and three. The Court will permit Cracker Barrel to seek appeal of the Collective Certification Order under 28 U.S.C. 1292(b) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

**C. Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96) and Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101)**

The final issue is whether the Court should stay all proceedings in this matter pending Cracker Barrel's various appeals of the Collective Certification Order. Cracker Barrel argues that, under the United States Supreme Court's June 23, 2023, decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023), [15] an automatic stay is required because Cracker Barrel appealed the Collective Certification Order under Section 16 of the FAA. [16] (Doc. 96 at 5–7). Alternatively, Cracker Barrel argues the Court should exercise its discretion to issue a stay under either test set forth in *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) [17] and *Landis v. N. Am. Co.*, 299 U.S.

Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)

2024 WL 342440

248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). [18] (*Id.* at 7–14). In opposition, Plaintiffs argue that *Coinbase* has no bearing on this matter because it applies to non-frivolous appeals, whereas Cracker Barrel's appeal is frivolous. (Doc. 97 at 4–7). Plaintiffs further contend *Coinbase* is distinguishable because the decision concerns a Federal Rule of Civil Procedure 23 class action while this matter concerns an FLSA collective action. (*Id.* at 7–9). Last, Plaintiffs argue both the *Nken* and *Landis* tests favor litigation to proceed. (*Id.* at 9–17).

 **\*13** The Court need not weave through the parties' tangled, technical arguments to conclude a stay of proceedings in this matter is warranted. In holding that district courts are required to stay its proceedings when a party appeals the denial of its motion to compel arbitration, *Coinbase* emphasized the long-standing principle that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.' " 599 U.S. at 740, 143 S.Ct. 1915 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). Accordingly, a stay is required pending Cracker Barrel's appeal of the Collective Certification Order under Section 16 of the FAA because (a) Cracker Barrel's appeal is non-frivolous, *see supra* Section II.B; and (b) whether this litigation may move forward in this Court is precisely what the Ninth Circuit must decide. *See Coinbase,* at 599 U.S. at 741, 143 S.Ct. 1915. Likewise, at this juncture, the Court's control over dissemination of notice to the putative collective is divested because fundamental questions regarding arbitration and personal jurisdiction in FLSA collective actions stand to be resolved on interlocutory appeal. *See supra* Section II.B.

Turning to the parties' individual interests, it is evident that Cracker Barrel would face irreparable harm absent a stay. Cracker Barrel represents that of the 159,934 individuals in the putative collective, 106,184 are potentially subject to arbitration. (Doc. 96 at 10). So, Cracker Barrel would incur significant discovery expenses should the certification process proceed. Indeed, the size of the putative collective makes it likely that *both* parties would suffer irreparable harm in spending substantial time and resources on litigation that might otherwise be narrowed on appeal. *See Salhotra v. Simpson Strong-Tie Co., Inc.*, 2022 WL 1091799, at \*2 (N.D. Cal. Apr. 12, 2022) (collecting cases). By comparison, the issuance of a stay would not pose injury to Plaintiffs—or the putative collective as potential opt-in plaintiffs—because the applicable statute of limitations will be equitably tolled from September 6, 2022, until the date on which notice is

sent to the putative collective. *See supra* Section II.A(2)(b). This tolling period would necessarily include any duration the proceedings are stayed pending appeal.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254, 57 S.Ct. 163. In light of *Coinbase* and the *Nken* and *Landis* tests, the Court finds it appropriate to stay all proceedings in this matter pending Cracker Barrel's appeals to the Ninth Circuit.

Accordingly,

**IT IS ORDERED** that Cracker Barrel's "Motion for Clarification, or, in the Alternative, Reconsideration" (Doc. 83) is **granted in part and denied in part** as stated herein. Lines 8–12 on page 28 of the March 31, 2023, Order (Doc. 82 at 28) is **stricken** and **amended** as follows:

> **IT IS FURTHER ORDERED** the collective class of potential plaintiffs is conditionally certified under 29 U.S.C. § 216(b) and shall consist of all current and former Cracker Barrel servers who (a) worked for Cracker Barrel from September 6, 2019, to the present in states where Cracker Barrel pays its employees under the 29 U.S.C. § 203(m) tip credit scheme.

The remainder of the March 31, 2023, Order (Doc. 82) is otherwise **affirmed**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for equitable tolling (Doc. 90 at 5–8) is construed as a motion and is **granted**. The three-year statute of limitations on the putative collective's FLSA claims shall be tolled from September 6, 2022—the date Plaintiffs' meritorious certification motion became ripe for review—until the date on which notice is sent to disseminated to the putative collective. Cracker Barrel's "Motion to Strike Plaintiffs' Request for Equitable Tolling" (Doc. 93) is therefore **denied**.

**IT IS FURTHER ORDERED** that Cracker Barrel's "Motion to Certify Interlocutory Appeal" (Doc. 84) is **granted in part and denied in part** as stated herein. Cracker Barrel may seek

appeal under 28 U.S.C. § 1292(b) of the March 31, 2023, Order (Doc. 82) regarding arbitration and specific personal jurisdiction in FLSA collective actions.

**\*14  IT IS FURTHER ORDERED** that Cracker Barrel's Motion to Strike Plaintiffs' Notice of Supplemental Authority (Doc. 101) is **GRANTED**. The Notice of Supplemental Authority at Doc. 99 shall be stricken and disregarded.

**IT IS FINALLY ORDERED** that Cracker Barrel's Motion to Stay Proceedings Pending Appeal (Doc. 96) is **granted**. As set forth herein, the proceedings in this matter are **stayed** until the Ninth Circuit resolves Cracker Barrel's appeals of the March 31, 2023, Order (Doc. 82).

**All Citations**

--- F.Supp.3d ----, 2024 WL 342440

## Footnotes

1    The matter is fully briefed. Plaintiffs filed a Response (Doc. 90) in accordance with the Court's April 17, 2023, Order (Doc. 88).

2    The matter is fully briefed. Plaintiffs did not file a Response, and the time to do so has passed. *See* LRCiv 7.2(c) (opposing party has 14 days after service within which to serve and file a responsive memorandum).

3    The matter is fully briefed. Plaintiffs filed a Response (Doc. 94). Cracker Barrel did not file a reply brief and the time to do so has passed. *See* LRCiv. 7.2(c).

4    The matter is fully briefed. Plaintiffs filed a Response (Doc. 97) and Cracker Barrel filed a Reply (Doc. 98).

5    The matter is fully briefed. Plaintiffs filed a Response (Doc. 102). Cracker Barrel did not file a reply brief and the time to do so has passed. *See* LRCiv. 7.2(c).

6    The Court incorporates by reference the Background Section of its Collective Certification Order (Doc. 82 at 2–4), which contains a comprehensive history of Plaintiffs' prior amended complaints (Docs. 1; 57; 74) and prior motions for certification (Docs. 8; 58; 76).

7    The Court used the proposed putative collective definition as stated in Plaintiffs' Motion to Certify Class (*see* Doc. 76 at 2). (Doc. 82 at 11 n.8).

8    (Doc. 90 at 5–8 (Plaintiffs' Request for Equitable Tolling)); (Doc. 93-1 (Cracker Barrel's Response)); (Doc. 94 (Plaintiffs' Reply)).

9    (*See* Doc. 82 at 24) (citing *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at \*3 (D. Ariz. Mar. 8, 2022)).

10    For example, Cracker Barrel relies on *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) and *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019). (Doc. 83 at 9–10).

11    For example, Cracker Barrel relies on *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604 (N.D. Cal. July 6, 2021) and *Sandbergen v. Ace Am. Ins. Co.*, 2019 WL 13203944 (N.D. Cal. June 17, 2019). (Doc. 83 at 8–9).

12    Based on Plaintiff Dylan Basch's circumstances, the Court found that eighteen months was a reasonable time for him to disaffirm Cracker Barrel's Arbitration Agreement. (Doc. 82 at 8–9).

13    For example, the Notice is addressed to "All Cracker Barrel servers, *not subject to arbitration*, who were paid on a "tip credit" basis or less than minimum wage by Cracker Barrel at any time in the last three (3) years, or

**Harrington v. Cracker Barrel Old Country Store Incorporated, --- F.Supp.3d ---- (2024)**

2024 WL 342440

worked off-the-clock." (Doc. 76-13 at 1) (emphasis added). The Notice further states in the lawsuit description that "only servers *who are not subject to arbitration* may join this lawsuit." (*Id.* at 2) (emphasis added).

14     Unless where otherwise noted, all Section references are to Title 28 of the United States Code.

15     At the time Cracker Barrel filed its Motion to Stay Proceedings Pending Appeal, *Coinbase* was not yet issued. On June 25, 2023, Plaintiffs file a Notice of New Authority (Doc. 99) alerting the Court that *Coinbase* had published. Cracker Barrel moved to strike Plaintiffs' Notice on the basis that it contained improper, additional legal arguments. (Doc. 101). The Court agrees, and will strike Plaintiffs' Notice from the record. In any event, Plaintiffs' Notice of New Authority is not necessary for the Court to consider the implications of *Coinbase* on this matter.

16     Section 16 of the FAA provides that "[a]n appeal may be taken from an order denying an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(C). The Collective Certification Order denied Cracker Barrel's "Motion to Compel Arbitration and Dismiss Second Amended Complaint with Prejudice." (Doc. 96 at 5–7), and Cracker Barrel indeed filed its Notice of Appeal (Doc. 91).

17     Under the *Nken* test, a court should consider the following four-factors when deciding whether to stay proceedings: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." 556 U.S. at 434, 129 S.Ct. 1749 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

18     Under the *Landis* test, a court should consider the following three-factors when deciding whether to stay proceedings: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and question of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)).

---

**End of Document**        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8885128
Only the Westlaw citation is currently available.
United States District Court, S.D.
Texas, Brownsville Division.

SPACE EXPLORATION TECHNOLOGIES,
CORP. aka SpaceX, "Plaintiff,"

v.

Carol BELL, et al., "Defendants."

Civil Action No. 1:23-cv-00137
|
Signed November 8, 2023

**Synopsis**
**Background:** Space exploration corporation filed lawsuit against administrative law judge (ALJ) of the Office of the Chief Administrative Hearing Officer (OCAHO), the Chief Administrative Hearing Officer, and the United States Attorney General, alleging that administrative action brought against corporation by the Department of Justice's (DOJ) Immigrant and Employee Rights Section (IER), asserting a violation of statute prohibiting unfair immigration-related employment practices, violated the Appointment Clause, notwithstanding interim final rule (IFR) published by the Executive Office of Immigration Review (EOIR) providing that the Attorney General had the discretion to review decisions and orders in such actions. Corporation moved for a preliminary injunction to halt the administrative proceeding.

**Holdings:** The District Court, Rolando Olvera, J., held that:

corporation had Article III standing;

corporation was likely to succeed on the merits of its claim that statute prohibiting unfair immigration-related employment practices violated the Appointments Clause;

corporation was likely to succeed on the merits of its claim that IFR allowing Attorney General to review OCAHO ALJ decisions was unlawful under the Appointments Clause;

corporation was likely to obtain the remedy it sought, supporting its motion for preliminary injunction;

corporation was likely to suffer irreparable harm absent a preliminary injunction staying administrative action;

the balance of harms and public interest weighed in favor of granting preliminary injunction;

corporation was not likely to succeed on its claim that OCAHO ALJs were unconstitutionally insulated from removal at will in violation of the Appointments Clause; and

corporation was not likely to succeed on its claim that action brought by IER was a suit at common law required under the Seventh Amendment to be heard by an Article III court with right to trial by jury.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion for Preliminary Injunction.

**Attorneys and Law Firms**

Charles Connolly, Pro Hac Vice, James Tysse, Pro Hac Vice, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, Laura Page Warrick, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Plaintiff.

Christopher D. Pineda, United States Attorneys Office, Brownsville, TX, Kuntal Cholera, Cynthia Liao, DOJ-Civ, Civil Division, Washington, DC, for Defendants.

<u>ORDER</u>

Rolando Olvera, United States District Judge

**\*1** Before the Court is Plaintiff's "Motion for Preliminary Injunction" ("Motion") (Dkt. No. 11), Defendant's "Response to Plaintiff's Motion" (Dkt. No. 20), Plaintiff's "Reply in Support of its Motion" (Dkt. No. 24), and Defendant's "Surreply in Opposition to Plaintiffs Motion" (Dkt. No. 26). Plaintiff's Motion (Dkt. No. 11) is **GRANTED in part** for these reasons:

**I. BACKGROUND**
Congress made it unlawful for an employer to discriminate based on national origin or citizenship status in the hiring or firing of any applicant or employee in 8 U.S.C. § 1324b. The Department of Justice's ("DOJ") Immigrant and Employee Rights Section ("IER") enforces § 1324b by bringing administrative proceedings against an alleged wrongdoer. Dkt. No. 11 at 10; Dkt. No. 20 at 3. The Office of the Chief

Administrative Hearing Officer ("OCAHO") administrative law judges ("ALJ") adjudicate § 1324b proceedings. Dkt. No. 11 at 10; Dkt. No. 20 at 3. The U.S. Attorney General appoints OCAHO ALJs. Dkt. No. 11 at 10; Dkt. No. 20 at 3. An ALJ assigned to hear a § 1324b action has "all appropriate powers necessary to conduct fair and impartial hearings." 28 C.F.R. § 68.28. After a hearing ends, the ALJ issues a "final" decision that may be appealed only to a U.S. court of appeals. 8 U.S.C. § 1324b(g)(1); 28 C.F.R. § 68.57.

The IER filed an administrative complaint (Dkt. No. 11-2) against Plaintiff in August 2023 alleging Plaintiff violated 8 U.S.C. § 1324b. Id. OCAHO ALJ Defendant Carol Bell presides over these administrative proceedings. Dkt. No. 11-1 at ¶ 18. The IER seeks civil penalties, backpay, and the reinstatement of aggrieved applicants from Plaintiff. Dkt. No. 11-2 at 16.

In October 2023, almost a month after Plaintiff sued, the Executive Office of Immigration Review ("EOIR") published an interim final rule ("IFR") "to provide that the Attorney General may, in his discretion, review decisions and orders of ALJs in the OCAHO in cases arising under § 1324b". 88 Fed. Reg. 70,586-01 (Oct. 12, 2023) (to be codified at 28 C.F.R. pt. 68). The IFR became effective immediately. Id.

Plaintiff now moves for a preliminary injunction to halt the administrative proceedings.

## II. LEGAL STANDARD

Granting a preliminary injunction is the "exception rather than the rule." House of the Homeless, Inc. v. Widnall, 94 F.3d 176, 180 (5th Cir. 1996). "A plaintiff seeking a preliminary injunction must clearly show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." Planned Parenthood of Gulf Coast, Inc. v. Gee, 862 F.3d 445, 457 (5th Cir. 2017). The moving party bears the burden of proving each element. Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011).

## III. DISCUSSION

### a. Plaintiff's request for a hearing is denied.

Plaintiff requests that the Court hold a hearing. The Court rules on opposed motions by submission, L.R. 6(B), and it need not hold a hearing on a motion for preliminary injunction if there is no dispute of fact. Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996). Finding no dispute of fact, Plaintiff's request for a hearing is **DENIED**.

### b. Plaintiff has standing to bring its Appointments Clause and removal claims.

**\*2**  Defendants argue Plaintiff lacks standing to bring its Appointments Clause and removal claims because Plaintiff has failed to show an injury-in-fact. Dkt. Nos. 20 & 26.

To establish Article III standing, Plaintiff must show, among other things, that it has suffered an injury in fact. Wendt v. 24-Hour Fitness USA, Inc., 821 F.3d 547, 550 (5th Cir. 2016). An injury-in-fact constitutes "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

To have standing to bring Plaintiff's removal claim, Plaintiff must show that "the unconstitutional removal provision inflicted harm." Collins v. Yellen, ––– U.S. ––––, 141 S. Ct. 1761, 1783, 1788-89, 210 L.Ed.2d 432 (2021). Proceeding before "an unaccountable ALJ" "is a here-and-now injury" "that is impossible to remedy once the proceeding is over." Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175, 191, 143 S.Ct. 890, 215 L.Ed.2d 151 (2023). Thus, if Plaintiff can show that OCAHO ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ. Plaintiff therefore has standing to bring its removal claim.

Similarly, Plaintiff's injury-in-fact in its Appointments Clause claim is also facing unlawful agency authority because § 1324b does not provide for the Attorney General's review of OCAHO ALJs' decisions. Defendants argue that the IFR cures the constitutional defect with § 1324b, and thus Plaintiff is not harmed by the IFR. Dkt. No. 20. But Plaintiff alleges the IFR expressly conflicts with § 1324b, and thus Plaintiff is still ultimately subjected to unconstitutional agency authority. Id. Plaintiffs injury must be traceable "to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." Collins, 141 S. Ct. at 1779. Plaintiff's "concrete injury flows directly from" the allegedly unlawful

Space Exploration Technologies, Corp. v. Bell, --- F.Supp.3d ---- (2023)

administrative proceedings, and the IFR does not "operate independently" from those proceedings. *Id.; Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301, 142 S.Ct. 1638, 212 L.Ed.2d 654 (2022). Plaintiff has therefore alleged an injury-in-fact and has standing to bring its Appointments Clause claim.

### c. Plaintiff is entitled to an injunction on its Appointments Clause claim.

#### *i. Plaintiff is likely to succeed on the merits of its claim that Section 1324b violates the Appointments Clause because OCAHO ALJs' decisions are not subject to review by the Attorney General.*

Under the Appointments Clause, the President must appoint all federal "principal officers" with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. But Congress may allow the head of a department to appoint "inferior officers." *United States v. Arthrex, Inc.*, ––– U.S. ––––, 141 S. Ct. 1970, 1979, 210 L.Ed.2d 268 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 660, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997)). An inferior officer must be "directed and supervised" by a principal officer. *Arthrex, Inc.*, 141 S. Ct. at 1980 (citing *Edmond*, 520 U.S. at 662, 117 S.Ct. 1573).

OCAHO ALJs are appointed by the Attorney General (a principal officer), so they are "inferior officers" who must be "directed and supervised" by the Attorney General. Dkt. No. 11 at 5; Dkt. No. 20 at 3. In other words, the Attorney General must be able to review the decisions of OCAHO ALJs to comply with the Appointments Clause. *Arthrex, Inc.*, 141 S. Ct. at 1980-82 (holding that it violated the Appointments Clause for inferior adjudicative officials to render decisions that are not subject to review by a principal officer). Based on § 1324b's plain language, broader context, and legislative history, it is clear the decisions of OCAHO ALJs are not subject to the Attorney General's review.

**\*3** Section 1324b requires an OCAHO ALJ to issue "an order, which shall be final unless appealed as provided under subsection (i)." 8 U.S.C. § 1324b(g)(1). Subsection (i) provides that the forum for an aggrieved party to "seek a review of such order" lies exclusively "in the United States court of appeals" "60 days after the entry of such final order." *Id.* § 1324b(i). It does not affirmatively provide for the Attorney General to review OCAHO ALJ decisions. *Id.*

The broader context of the statute also reinforces the plain text interpretation. Section 1324b is between Sections 1324a (governing unlawful employment of aliens) and 1324c (governing document fraud), which specifically provide for "administrative appellate review" of ALJ decision by the Attorney General. 8 U.S.C. §§ 1324a(e)(7), 1324c(d)(4). Congress' decision not to provide for "administrative appellate review" by the Attorney General in 1324b must therefore be viewed as intentional. *See, e.g., Ysleta Del Sur Pueblo v. Texas*, ––– U.S. ––––, 142 S. Ct. 1929, 1939, 213 L.Ed.2d 221 (2022).

The statute's legislative history also clarifies that Congress did not intend for the Attorney General to have the authority to review OCAHO ALJ decisions. H.R. Rep. No. 99-682, 14 (1986) ("[T]he amendment makes clear that an [ALJ]'s order in a discrimination case ... is a final agency order and is enforceable immediately unless appealed in accordance with provisions specified."). Congress made clear that "once an ALJ issues his/her order, it becomes a final agency order," and it did not mention further review by the Attorney General. *Id.*

Indeed, until recently the DOJ advised that ALJ orders in § 1324b cases were not subject to the Attorney General's review. 88 Fed. Reg. 70,586-01; *see Amazon Web Servs. Inc.*, 14 OCAHO no. 1381h, 2 (2021). Defendants argue that the recently published IFR saves § 1324b because it advises that § 1324b should be read to "expressly account for review of ALJ decisions by the Attorney General." Dkt. No. 20; 88 Fed. Reg. 70586-01. But the new IFR conflicts with the plain language of § 1324b, which only provides for review in an Article III court.[1] Thus, the IFR is unlawful, and § 1324b proceedings are unconstitutional because the Attorney General is not allowed to review OCAHO ALJs' decisions. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (holding that an agency could not "cure" an unlawful statute "by adopting in its discretion a limiting construction of the statute").

For these reasons, Plaintiff has shown that it is likely to succeed on the merits of its Appointments Clause claim.

#### *ii. Plaintiff is likely to obtain the remedy it seeks because the unconstitutional provisions of § 1324b are not severable.*

Plaintiff has also shown that it is necessary to stay the administrative proceedings because the unconstitutional

Space Exploration Technologies, Corp. v. Bell, --- F.Supp.3d ---- (2023)

provisions of § 1324b are not severable. Section 1342b contains no express severability clause. The Court "cannot rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole." *Murphy v. Nat'l Collegiate Athletic Ass'n*, —— U.S. ——, 138 S. Ct. 1461, 1482, 200 L.Ed.2d 854 (2018) (quoting *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 362, 55 S.Ct. 758, 79 L.Ed. 1468 (1935)).

Section 1324b provides for "Review of final orders." 8 U.S.C. § 1324b(i). "[A]ny person aggrieved by such final order may seek review of such order in the United States court of appeals." *Id.* There is no provision that affirmatively authorizes the Attorney General to review OCAHO ALJ decisions under Section 1324b. Thus, no provision exists that could be severed to enable administrative review. *Compare with Arthrex, Inc.*, 141 S. Ct. at 1987 (holding that the appropriate remedy for administrative patent judges whose decisions were not subject to review by the Director of the Patent and Trademark Office was to sever the provision of the statute that affirmatively provided for review by Patent Trial and Appeal Board members).

**\*4** Interpreting § 1324b to not provide for further administrative review also reflects Congress' intent. H.R. Rep. No. 99-682, 14 (1986) ("[T]he amendment makes clear that an [ALJ]'s order in a discrimination case ... is a final agency order and is enforceable immediately unless appealed in accordance with provisions specified."). Congress made clear that "once an ALJ issues [their] order, it becomes a final agency order" and did not mention further review by the Attorney General. *Id.* "A textual judicial supplementation is particularly inappropriate when, as here, Congress has shown it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, —— U.S. ——, 140 S. Ct. 355, 361, 205 L.Ed.2d 291 (2019).

For these reasons, Plaintiff has shown it is likely the statute cannot be severed in a way to provide for further administrative review. Thus, an injunction is an appropriate remedy.

### iii. Plaintiff will likely suffer irreparable injury if the administrative proceedings are not enjoined.

Plaintiff has also shown that without an injunction it is "likely to suffer irreparable harm." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013).

Irreparable harm refers to harm for which there is no adequate remedy at law. *Id.* The party seeking a preliminary injunction must prove irreparable harm is likely, not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns, 427* U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice, and Procedure § 2948.1 at 160-161 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Plaintiff is being subjected "to unconstitutional agency authority," which "is impossible to remedy once the proceeding is over." *Axon Enterprise, Inc.*, 598 U.S. at 191, 143 S.Ct. 890.

For these reasons, Plaintiff has shown it is likely to suffer irreparable harm absent an injunction.

### iv. The balance of the harms and the public interest weigh in Plaintiff's favor.

The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

Defendants do not allege any harm that they would suffer if an injunction were issued. Dkt. No. 20. By contrast, Plaintiff will have to participate in unconstitutional proceedings. The balance of harms thus weighs Plaintiff's favor.

The public interest factor also weighs in Plaintiff's favor. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *Burgess v. Fed. Deposit Ins. Corp.*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022) (quoting *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 840 (N.D. Tex. 2022)) ("An injunction does not disserve the public interest when it prevents constitutional deprivations."). Because OCAHO ALJ decisions are not subject to the Attorney General's review, Plaintiff is being subjected to unlawful agency action. There is thus no public interest in the ALJ administrative hearing.

Space Exploration Technologies, Corp. v. Bell, --- F.Supp.3d ---- (2023)

For these reasons, the Court finds that Plaintiff is entitled to an injunction staying the ALJ administrative proceedings.

### d. Plaintiff is not entitled to an injunction on its removal claims because the unconstitutional provisions, if any, are severable.

The Constitution gives the President the general authority to remove executive branch officers at will. *Seila*, 140 S. Ct. at 2191 (quoting *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 130 S. Ct. 3138, 177 L.Ed.2d 706 (2010)). But Congress may provide tenure protections to certain inferior officers with narrowly defined duties. *Id.* at 2129.

**\*5** OCAHO ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board ["MSPB"] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a); *see* 28 C.F.R. § 68.26. The MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Plaintiff argues this unconstitutionally insulates OCAHO ALJs from removal because they are the types of officers the President must be able to remove at will.

Even if this is true, [2] the Court can sever the unconstitutional statutory provisions. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, —— U.S. ——, 140 S. Ct. 2335, 2350, 207 L.Ed.2d 784 (2020); *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006). Statutes are generally severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 140 S. Ct. at 2353. It is "unusual" for the remaining law to be inoperative. *Id.* at 2352.

Severing both removal restrictions would make OCAHO ALJs accountable to the President, so there is no need to stay proceedings an OCAHO ALJ may conduct. Dkt. No. 11 at 27. *See Collins*, 141 S. Ct. at 1788 (holding that a properly appointed officer's insulation from removal does not undermine the officer's authority "to carry out the functions of the office.").

For these reasons, the Court finds that Plaintiff has not shown it is entitled to an injunction instead of severance on its removal claim.

### e. Plaintiff is not entitled to an injunction on its Article III and Seventh Amendment claims because it is unlikely to succeed on the merits of these claims.

Under Article III, the judicial power of the United States is vested in the Supreme Court, "and in such inferior Courts" Congress may establish. U.S. Const. art. III, § 1. The Seventh Amendment guarantees a right to civil jury trials over "suits at common law" where the value in controversy exceeds twenty dollars. U.S. Const. amend. VII. But Congress may create new statutory duties for civil penalties to enforce "public rights" that are not subject to the Seventh Amendment. *Atlas Roofing Co., Inc. v. OSHA*, 430 U.S. 442, 450, 460-61, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).

Even if claims under § 1324b are "suits at common law," Congress created a new statutory duty that protects public rights. Finding that existing statutory and common law remedies were insufficient, Congress enacted § 1324b to "augment the goals found in Title VII of the Civil Rights Act" "by extending the prohibition against national origin discrimination to employers with less than fifteen, but more than three, employees." *Gen. Dynamics Corp. v. United States*, 49 F.3ed 1384, 1385 (9th Cir. 1995). Section 1324b also "prohibits employer discrimination based on citizenship status, a proscription not encompassed by other anti-discrimination statutes." *Id.*

Section 1324b also protects public rights. Other courts have found that administrative claims in which immigration and employment laws are intertwined, like § 1324b claims, implicate public rights. *E.g., Frank's Nursery, LLC v. Walsh*, No. CV H-21-3485, 2022 WL 2757373, at \*8 (S.D. Tex. July 14, 2022) (rejecting Article III challenge to agency adjudication of alleged violations of immigrant workplace protections); *Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, No. 1:21-CV-16625, 2023 WL 4784204, at \*6 (D.N.J. July 27, 2023) (same); *Noriega-Perez v. United States*, 179 F.3d 1166, 1175 (9th Cir. 1999) (rejecting Article III challenge to agency adjudication of violations of 8 U.S.C. § 1324c); *see also Curtis*, 415 U.S. at 193, 94 S.Ct. 1005 (recognizing that the Seventh Amendment does not apply to Title VII cases). Because § 1324b proceedings concern both immigration and employment law, the Court finds § 1324b proceedings protect public rights and are thus excepted from the Seventh Amendment.

**\*6** For these reasons, Plaintiff is not likely to succeed on the merits of its Article III and Seventh Amendment claims.

### IV. CONCLUSION

For these reasons, Plaintiff's Motion (Dkt. No. 11) is **GRANTED in part and DENIED in part.** The Court holds that 8 U.S.C. § 1324b does not allow "administrative appellate review" by the Attorney General of OCAHO ALJ final orders. The Court **STAYS** the following administrative proceedings:

*United States of America v. Space Exploration Technologies Corp. d/b/a SpaceX*, 2023-B-00082. The injunction becomes effective immediately and remains in effect pending the final disposition of this lawsuit. The Court waives the security requirement of Fed. R. Civ. P. 65(c). [3]

**All Citations**

--- F.Supp.3d ----, 2023 WL 8885128

### Footnotes

1    "Review outside Article II ... cannot provide the necessary [executive] supervision" to comply with the Appointments Clause. *Arthrex*, 141 S. Ct. at 1982.

2    *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 148–149 (4th Cir.2023) (recognizing the split between the Fifth and Ninth circuits about whether the dual for-cause limitations on the removal of ALJs in 5 U.S.C. §§ 1202(d) and 7521 are constitutional).

3    Neither party raised the security requirement, so no security is ordered. *See Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, —— F.Supp.3d ——, , 2023 WL 6613080, at \*22 (N.D. Tex. Oct. 7, 2023).

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States v. Trump, --- F.Supp.3d ---- (2023)

2023 WL 8615775
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

UNITED STATES of America,
v.
Donald J. TRUMP, Defendant.

Criminal Action No. 23-257 (TSC)
|
Signed December 13, 2023

**Synopsis**
**Background:** Defendant, a former President of the United States, filed motion to dismiss, on constitutional grounds and ground of absolute presidential immunity, indictment charging him with conspiracy to defraud the United States, conspiracy to obstruct an official proceeding, obstruction of, and attempt to obstruct, an official proceeding, and conspiracy against federal civil rights, stemming from defendant's allegedly knowingly false claims regarding 2020 election. The District Court, Tanya S. Chutkan, J., 2023 WL 8359833, denied the motion. Defendant appealed and filed in the District Court a motion to stay proceedings pending appeal.

**Holdings:** The District Court, Tanya S. Chutkan, J., held that:

filing of notice of appeal for interlocutory immunity appeal automatically stayed any further proceedings in district court that would move the case towards trial or impose additional burdens of litigation on defendant; but

stayed deadlines and proceedings would be held in abeyance rather than being permanently vacated; and

as a matter of apparent first impression, district court was not divested of jurisdiction to enforce protective measures it had already imposed to safeguard the integrity of the proceedings.

Motion to stay proceedings granted in part and denied in part.

**Procedural Posture(s):** Pre-Trial Hearing Motion.

**Attorneys and Law Firms**

J.P. Cooney, Molly Gulland Gaston, Assistant U.S. Attorneys, U.S. Attorney's Office for the District of Columbia, Washington, DC, James Pearce, Assistant U.S. Attorney, U.S. Department of Justice, Criminal Division Appellate Section, Washington, DC, Thomas Windom, Assistant U.S. Attorney, Washington, DC, John M. Pelletieri, Assistant U.S. Attorney, Special Counsel's Office, Washington, DC, for United States of America.

John F. Lauro, Filzah I. Pavalon, Pro Hac Vice, Lauro & Singer, Tampa, FL, Emil Bove, Pro Hac Vice, Todd Blanche, Pro Hac Vice, Blanche Law, New York, NY, for Defendant.

## OPINION AND ORDER

TANYA S. CHUTKAN, United States District Judge

**\*1** On December 4, 2023, the court issued a Memorandum Opinion and Order denying Defendant's motions to dismiss based on Presidential immunity and constitutional grounds. ECF Nos. 171, 172. Defendant has appealed that decision, ECF No. 177, and filed a Motion to Stay Proceedings Pending Appeal, ECF No. 178 ("Motion"). For the reasons set forth below, the court will GRANT in part and DENY in part Defendant's Motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). In *Coinbase, Inc. v. Bielski,* 599 U.S. 736, 739–44, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023), the Supreme Court applied the *Griggs* principle to an interlocutory appeal of the denial of a motion to compel arbitration, holding that any further proceedings before the district court must automatically be stayed. The Court reasoned that because "whether the litigation may go forward in the district court is precisely what the court of appeals must decide[,] ... it makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." *Id.* at 741, 143 S.Ct. 1915 (quotations omitted). And the Court analogized its holding to similar decisions in the context of appeals involving immunity and double jeopardy. *Id.* at 742, 143 S.Ct. 1915.

As the D.C. Circuit recently made clear, a former President's absolute immunity would constitute "an entitlement not to stand trial or face the other burdens of litigation," such as discovery obligations. *Blassingame v. Trump,* No. 22-5069, ---- F.4th ----, ----, 2023 WL 8291481, at \*22 (D.C. Cir.

United States v. Trump, --- F.Supp.3d ---- (2023)

Dec. 1, 2023) (citation omitted). Thus, because Defendant has appealed this court's denial of that immunity, "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Coinbase*, 599 U.S. at 741, 143 S.Ct. 1915 (quotation omitted). Consequently, the court agrees with both parties that Defendant's appeal automatically stays any further proceedings that would move this case towards trial or impose additional burdens of litigation on Defendant. Motion at 1; Gvt.'s Opp'n to Def.'s Mot. to Stay Proceedings Pending Appeal at 3, ECF No. 182. Accordingly, and for clarity, the court hereby STAYS the deadlines and proceedings scheduled by its Pretrial Order, as amended. *See* ECF No. 39; *see also* Def.'s Reply in Supp. of Mot. to Stay Proceedings Pending Appeal at 3, ECF No. 185 ("Reply").

The court emphasizes two limits on that stay. First, as Defendant notes, the stayed deadlines and proceedings are "held in abeyance," Motion at 1, rather than permanently vacated. If jurisdiction is returned to this court, it will—consistent with its duty to ensure both a speedy trial and fairness for all parties—consider at that time whether to retain or continue the dates of any still-future deadlines and proceedings, including the trial scheduled for March 4, 2024.

Second, the court does not understand the required stay of further proceedings to divest it of jurisdiction to enforce the measures it has already imposed to safeguard the integrity of these proceedings, including: Defendant's conditions of release, ECF No. 13; the protective orders governing discovery materials, ECF No. 28, 37; the restrictions on extrajudicial statements, ECF No. 105, as modified by the D.C. Circuit's decision in *United States v. Trump*, No. 23-3190, ––– F.4th ––––, ––––, 2023 WL 8517991, at *28

(D.C. Cir. Dec. 8, 2023); and protective jury procedures, ECF No. 130. Unlike, for example, requiring additional discovery or briefing, maintaining those measures does not advance the case towards trial or impose burdens of litigation on Defendant beyond those he already carries. And if a criminal defendant could bypass those critical safeguards merely by asserting immunity and then appealing its denial, then during the appeal's pendency, the defendant could irreparably harm any future proceedings and their participants.

**\*2** That said, there is little precedent guiding the application of *Griggs* to such protective measures. The Ninth Circuit, at least, has transferred a "motion to enforce" a "protective order" back to the district court, even though the Circuit had taken "jurisdiction over the merits of the decision below, including the judgment," reasoning that "the district court has not been divested of its jurisdiction over ancillary matters, such as protective orders." *Perry v. City & Cnty. of S.F.*, No. 10-16696, 2011 WL 2419868, at *1 (9th Cir. Apr. 27, 2011) (citing, among others, *Griggs*, 459 U.S. at 58, 103 S.Ct. 400). But the parties have not identified—and the court is not aware of—any guiding precedent in this Circuit on that issue, much less instructive cases in the context of an interlocutory immunity appeal. In addition, Defendant does not appear to argue that the protective measures are themselves stayed. *See* Reply at 3. Nonetheless, if he asks the court reviewing his immunity appeal to also take temporary jurisdiction over the enforcement of those measures, and that court agrees to do so, this court of course will be bound by that decision.

**All Citations**

--- F.Supp.3d ----, 2023 WL 8615775

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Wilson v. Suffolk County District Attorney, Slip Copy (2024)

2024 WL 862236

---

2024 WL 862236
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Robert WILSON, Plaintiff,

v.

The SUFFOLK COUNTY DISTRICT
ATTORNEY, et al., Defendant.

21-CV-04815(EK)(ST)
|
Signed February 27, 2024

**Attorneys and Law Firms**

Robert Wilson, Southampton, NY, Pro Se.

Toni E. Logue, NYS Attorney General's Office, Mineola, NY, for Defendant Andrew M. Cuomo.

Vincent Lipari, United States Attorneys Office, Central Islip, NY, for Defendant Vincent F. DeMarco.

## MEMORANDUM & ORDER

ERIC KOMITEE, United States District Judge:

**\*1** The court has received Magistrate Judge Tiscione's Report and Recommendation ("R&R") dated May 15, 2023. ECF No. 74. Judge Tiscione recommends that I grant motions to dismiss by Vincent DeMarco (the United States Marshal for the Eastern District of New York) and former governor Andrew Cuomo.

Judge Tiscione recommends that I dismiss plaintiff Wilson's claims against DeMarco under Rule 12(b)(1), (5) and (6) because: (1) the claims against him in his official capacity are barred by sovereign immunity; (2) Wilson did not state a claim against him in his personal capacity; and (3) Wilson did not properly serve him. R&R 6, 8, 10. Judge Tiscione further recommends that I dismiss Wilson's claims against Cuomo under Rule 12(b)(1) and (6) because: (1) claims against him for money damages in his official capacity are barred by Eleventh Amendment immunity; (2) Wilson did not state a claim against him for injunctive relief in his official capacity; and (3) Wilson did not state a claim against him in his personal capacity. R&R 6–9, 6 n.2. Wilson has objected. *See* Pl.'s Obj. 1–2, ECF No. 77.[1]

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court reviews *de novo* those portions of an R&R to which a party has specifically objected. *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) ("A proper objection is one that identifies the specific portions of the R&R that the objector asserts are erroneous and provides a basis for this assertion."), *aff'd*, 578 F. App'x 51 (2d Cir. 2014).[2] When considering the objections of a *pro se* litigant, the Court interprets those objections to raise the strongest arguments that they suggest. *See Spaulding v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 143, 144 (E.D.N.Y. 2017).

Wilson argues that Judge Tiscione "has no legitimate right to even be employed by" the Eastern District of New York, citing *Lucia v. S.E.C.*, 585 U.S. 237 (2018). Pl.'s Obj. 1. He also argues that the R&R improperly relied on the Federal Rules of Civil Procedure instead of "1791 Common law." *Id.* He further contends that DeMarco and Cuomo are liable as supervisors for the actions of their "subrogates." *Id.* He additionally argues that the Department of Justice is unconstitutional, and that the only constitutional federal law enforcement agency is "the Militia." *Id.* at 1–2.

Wilson's objection includes additional contentions that are inapposite to the R&R and are thus improper objections.

**\*2** Having conducted a *de novo* review of the R&R, I adopt the R&R in substantial part, with one modest change.

The R&R recommends that Wilson's claims for injunctive relief against Cuomo, in both his official and individual capacities, be dismissed for failure to state a claim. *See* R&R 6 n.2, 8. Specifically, the R&R recommends dismissing these claims because Wilson does not allege Cuomo's personal involvement. *See id.*

As to claims against Cuomo in his official capacity, Cuomo's lack of personal involvement is not necessarily a valid basis for dismissal. As numerous district courts have held, personal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983. *See, e.g.*, *Puccinelli v. S. Conn. State Univ.*, No. 21-CV-763 (SVN), 2023 WL 4838291, at \*13 (D. Conn. July 28, 2023); *see also, e.g.*,

Wilson v. Suffolk County District Attorney, Slip Copy (2024)

2024 WL 862236

*Mercer v. Schriro*, 337 F. Supp. 3d 109, 137 (D. Conn. 2018) (collecting cases).

Nevertheless, these claims against Cuomo are dismissed for a separate, jurisdictional reason: on the existing record, Wilson lacks standing to seek injunctive relief against Cuomo. *See Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Standing to obtain an injunction requires "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "That is, a plaintiff must demonstrate a certainly impending future injury." *Id.* Wilson has alleged only discrete instances in which purportedly unconstitutional laws were enforced against him. *See* Compl. 12–33, ECF No. 1.[3] He has not alleged that future injury is certainly impending, and he has "expressed no intent to violate any law in the future." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015).

Accordingly, DeMarco's and Cuomo's motions to dismiss are granted.

In addition, on February 15, 2024, Wilson filed a brief and exhibits styled as a motion for an order to show cause why summary judgment should not enter in his favor. This filing amounts to a further, yet untimely, set of objections to the R&R, which Wilson did not seek the court's leave to file. ECF No. 78. Objections to the R&R were due on May 29, 2023. *See* R&R 11 (citing 28 U.S.C. § 636(b)(1) and Fed R. Civ. P. 72(b)(2)). In any event, this submission provides no legal or factual basis warranting rejecting or amending the R&R.

Wilson also submitted a letter postmarked February 15, 2024 seeking a conference in this matter. Pl.'s Letter 2, ECF No. 79. That request is denied as moot.

The complaint is dismissed as to defendants DeMarco and Cuomo. Wilson has not filed executed returns of service of his complaint as to any other defendants. By April 1, 2024, Wilson shall show cause why the remaining named defendants should not be dismissed under Fed R. Civ. P. 4(m). If he does not make this showing, the remaining defendants will be so dismissed, and this case will be closed.

**\*3** SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 862236

## Footnotes

1    Wilson served his objections on DeMarco by mail postmarked May 25, 2023, but they were not docketed by the May 29 objection deadline. *See* DeMarco Letter, ECF No. 76. After DeMarco apprised the court that Wilson's objections had been served but not filed, I deemed Wilson's objections to be timely filed and ordered that they be docketed. July 19, 2023 Order.

2    Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

3    As the internal numbering of Wilson's complaint stops after the first section, this pinpoint citation refers to ECF pagination.

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)**

**Federal Practice and Procedure (Wright & Miller)**     June 2024 Update

**Jurisdiction and Related Matters**

**Chapter 9. Jurisdiction of the Courts of Appeals**
Edward H. Cooper

**B. Final Judgment Rule**

# § 3911 Collateral Orders

---

**Primary Authority**

- 🚩 **28 U.S.C.A. §§ 1291, 1292**
- **Fed. R. App. P. 4**
- **Fed. R. Civ. P. 50**
- **Fed. R. Civ. P. 52**
- **Fed. R. Civ. P. 54**
- **Fed. R. Civ. P. 58**
- **Fed. R. Civ. P. 59**
- 🚩 **Fed. R. Civ. P. 60**

---

In Cohen v. Beneficial Industrial Loan Corporation [1] the Supreme Court announced an expansive interpretation of the finality requirement in 🚩 28 U.S.C.A. § 1291 that has come to be known as the "collateral order" doctrine. Appeals are allowed from orders characterized as final under this doctrine even though it may be clear that they do not terminate the action or any part of it. [1.50] The only finality required is that the district court have made its final determination of the matter in question. Once such finality has been achieved, appeal is available as from a final decision if certain additional requirements can be met. Statements defining these additional requirements vary, and it is easy to point to cases that ignore some of them or twist them into unrecognizable shapes. [2] In one form or another, however, at least three elements are commonly required. The matter involved must be separate from and "collateral to" the merits of the claims pursued in the litigation, it must be too important to be denied review, and effective review must be in doubt if appeal is delayed until entry of a more conventionally final order. [3] A fourth element, added in some statements and omitted from others, would require that the appeal involve a serious and unsettled question of law.

The several Supreme Court decisions that establish the major outlines of the collateral order doctrine are explored in this section, with observations about the ways in which they alternately support and twist or ignore the pronounced elements of the doctrine. This section also explores the general and incidental characteristics of collateral order appeals, including the scope of the appeal, time for appeal, continuation of trial court proceedings pending appeal, and the relationship between collateral order appeals and final judgment appeals under Federal Rule of Civil Procedure 54(b) or interlocutory appeals by permission under 28 U.S.C.A. § 1292(b). The succeeding sections explore in greater detail each of the major elements of collateral order doctrine. Most of the many cases that reckon with collateral-order reasoning, either to accept or deny jurisdiction, however, are scattered throughout the exploration of finality for specific types of orders. The "death knell" doctrine that in part has been spun out of the collateral

Case 4:23-cv-03560    Document 159-1    Filed on 07/05/24 in TXSD    Page 34 of 60

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

order cases will be explored in a later section, [4] as a bridge to the increasingly rare decisions that have most openly balanced the circumstances of individual cases in developing finality into a "pragmatic" requirement subject to ad hoc definition. [5]

The Cohen case was a derivative action brought in federal diversity jurisdiction. The defendants demanded that plaintiffs post a $125,000 bond, invoking a New Jersey statute that made derivative action plaintiffs holding small amounts of stock liable for the expenses and attorney fees incurred by successful defendants, and required security for payment. The district court ruled that the statute was not applicable in a diversity action. The court of appeals reversed, and was affirmed by the Supreme Court. Before addressing the merits of the question, the Supreme Court ruled that the order denying the request for security was a final decision, appealable under 🚩 § 1291, even though the case itself was far from ultimate disposition. After noting that 🚩 § 1291 allows appeals only from final decisions, the Court continued that

> Section 1292 allows appeals also from certain interlocutory orders, decrees and judgments, not material to this case except as they indicate the purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties. It is obvious that, if Congress had allowed appeals only from those final judgments which terminate an action, this order would not be appealable.

> The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken.

> Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than technical construction. Bank of Columbia v. Sweeny, 1 Pet. 567, 569, 7 L.Ed. 265; 🚩 United States v. River Rouge Improvement Co., 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339; 🚩 Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783.

We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question. [6]

The three cases relied upon to establish the "practical" construction of the finality requirement provide only remote support for this result. [7] The collateral order doctrine, however, has become well settled and has enjoyed both modest growth and occasional retrenchment. The Cohen decision itself suggested the several requirements that have formed the focus of collateral order doctrine. It is convenient to group these requirements around four loose headings. [8]

First, the matter to be reviewed must have been finally disposed of by the district court, so that its decision is not "tentative, informal or incomplete." The Court's further statement that appeal gives a power of review, not intervention, underscores the purpose of this requirement. So long as there is a plain prospect that the trial court may itself alter the challenged ruling, there is little justification for immediate appellate intrusion. [9] The bare fact that the court has power to change its ruling, however, does not preclude review. It is enough that no further consideration is contemplated. [10]

Second, the matter to be reviewed must be "separable from, and collateral to, rights asserted in the action." This requirement was voiced in other ways as well, but apparently the various phrases refer to the same basic criterion. Thus the matter raised by the appeal must not be a step toward final judgment, in which it would "merge"; it must not "affect, or * * * be affected by, decision of the merits"; and it must be "so independent of the cause itself" that appellate decision need not await disposition of other matters. The purposes of this requirement relate closely to the basic purposes of the final judgment rule itself. In part, it helps protect against repetitive consideration of the same matters by the court of appeals [11]—so long as the matter is so collateral that it need not entail consideration of the merits, it may be reviewed immediately with no greater cost in appellate time than if review were postponed. In addition, this requirement helps improve the quality of appellate review [12]—if the matter is one whose decision is "affected by" decision on the merits, review before trial of the merits might reach a result that would not be accepted on later appeal. Finally, this requirement may minimize the intrusion on continuing trial court proceedings, since it may often prove possible for trial preparation and even trial to continue pending appeal of the separable question. [13]

Third, there must be a risk of important loss if present review is not available. In Cohen, the Court noted that the right to security for expenses of defense would not be "merged in final judgment," and could be lost, "probably irreparably," if the defendants should win after trial on the merits. The asserted right was found "too important to be denied review." Since the purpose of the security requirement clearly was to ensure effective implementation of the right to collect defense expenses, which might otherwise prove uncollectible even in amounts far less than the $125,000 projected by the defendants in this case, it is easy to understand the element of possible irreparable injury. It is not as clear whether the Court meant that such irreparability was alone enough. It would be possible to find a further requirement that the irreparable injury affect an "important" right, so that irreparable injury to some less important rights would not qualify. The fact that the right involved was merely monetary might suggest that there is no abstract scale of importance, and the fact that the Court did not suggest that finality depended on the amount of money involved might suggest that there is no monetary scale of importance. Subsequent evolution of collateral order doctrine, however, has shown that both likely answers are correct. Collateral order appeal is not always available merely because denial of appeal means that there never will be an opportunity for effective appellate review. [14] On the other hand, some interests are found so important that collateral order appeal is available even though the appeal requires substantial consideration of the merits. [15]

Finally, the Court stated that not every question affecting security would be appealable, and noted that the present case involved "a serious and unsettled question." It clearly distinguished cases involving an exercise of discretion in fixing the amount of security on the basis of an "admitted or clear" right to security in some amount. Some courts have since read this requirement to allow appeal only if the result would be to settle an important question that could affect many other cases. [16] Certainly the applicability of the New Jersey statute to diversity litigation presented just such a question. This approach would sharply limit the collateral order doctrine, and would mean that many questions would present an appealable collateral order once, but not thereafter, at least in the same circuit. Other decisions tacitly ignore this interpretation; the most frequently quoted Supreme Court restatement of the elements of collateral order doctrine does not require that there be a serious and unsettled question that would affect other cases, [17] and some well-settled bases for collateral order appeal clearly rest on the desire to protect individually important interests in circumstances that have no general legal significance. [18]

The Cohen decision remains the most important guide to the purposes of collateral order doctrine. A number of subsequent Supreme Court decisions must be recounted, however, to show the process that has weakened all of the requirements announced

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

in the Cohen opinion other than the requirement that the district court have made a final determination of the matter offered for review. When sufficient need for immediate appeal has been found, significant entanglement with the merits of the litigation is tolerated, and the prospect of an effective remedy on final judgment appeal is put aside.

One year after Cohen was decided, the Court was confronted with an appeal from an order that vacated the attachment of a vessel that apparently would have afforded the sole effective means of implementing a decree in an in personam admiralty action. In Swift & Company Packers v. Compania Colombiana Del Caribe, [19] the Court concluded that the order was final under Cohen reasoning. The question was readily found "fairly severable" from the merits of the case, and appellate review at a later date was thought to be "an empty rite after the vessel had been released and the restoration of the attachment [was] only theoretically possible." [20] The Court pointed out that a quite different question would be presented if the order had upheld the attachment, since then the rights of all the parties could be adequately protected pending further proceedings. And the opinion on the merits of the attachment question indicates that it was both difficult and important. All of the requirements of the Cohen opinion were thus met. [21]

In Roberts v. United States District Court, [22] Cohen was relied upon for the assertion that an order denying leave to proceed in forma pauperis is appealable. The question was before the Supreme Court indirectly, on an original petition for mandamus to compel the district court to allow the proceeding. The court of appeals had earlier ruled that it lacked power to allow an appeal. Denying mandamus, the Court observed that a sufficient remedy by way of appeal was available. Denial in the district court had rested on the ground that only "citizens" are allowed to proceed in forma pauperis, and that Roberts, a state prisoner, was deprived of citizen status by state law. This basis for decision was separable from the merits of the underlying suit, and might well be found to present a serious and unsettled question, although the Supreme Court found little difficulty in announcing that the district court was wrong. Irreparable injury to the important right to proceed with the action was likewise apparent. The fact that the injury resulted directly from the order of the court, rather than possible practical inability to enforce rights against the appellant's adversary, does not seem an important distinction. The decision, however, may well take on a life of its own, leading to a conclusion that orders denying leave to proceed in forma pauperis are immediately appealable because of the injury involved, even if denial and review involve consideration of the merits of the claim asserted. [23]

Stack v. Boyle [24] again presented the collateral order question in tangential fashion. Criminal defendants, whose bail had been set at $50,000 each, filed a motion to reduce bail, which was denied. They then brought habeas corpus proceedings to challenge the denial. The Supreme Court ruled that habeas corpus was not a suitable method of challenge, since there was an unexhausted remedy available in the criminal proceeding itself by appeal from denial of the motion. The motion was characterized as one that challenged the bail amount as violating statutory and constitutional standards, rather than merely invoking discretion within a zone of reasonableness. Denial of the motion was found a final decision, in reliance on the Cohen decision, "[a]s there is no discretion to refuse to reduce excessive bail." The right to bail pending trial can easily be found important, and plainly cannot be effectively secured by appeal after conviction. It is not so clear that a claim of excessiveness automatically raises a "serious and unsettled question." And it would be difficult to suppose that the zone of lawful discretion can be fixed without some reference to the merits of the case against the defendants. If there is some relaxation of the Cohen requirements, however, it is easy to understand the emphasis on the impossibility of later review that is responsible for it. Today, appeals are largely governed by the Bail Reform Act of 1984, but interpretation of the Act may still require reliance on collateral order reasoning. [25]

Collateral order doctrine was again reviewed in Eisen v. Carlisle & Jacquelin. [26] Originally, the district court had denied class action treatment in a suit brought under the antitrust laws on behalf of millions of odd-lot investors. Appeal from the denial was allowed by the Court of Appeals for the Second Circuit under the "death knell" doctrine, [27] and the case was remanded for reconsideration of the class action question with appellate jurisdiction "retained." The district court then determined that class action treatment was appropriate, held a "minihearing" on the merits, and ruled that in light of the plaintiff's probable success on the merits, the defendants must bear ninety percent of the costs of providing notice to a sampling of the class members. The Court of Appeals allowed an appeal from these determinations, relying not only on the retention of jurisdiction but also on a conclusion that orders granting class action status should be appealable under Cohen reasoning. [28] The Supreme Court ruled that there was indeed jurisdiction to review the order imposing the costs of notice on the defendants, and that such jurisdiction carried with it jurisdiction to review all of the questions surrounding notice to class members. It refused to determine whether jurisdiction might be found on any theory to review the remaining questions of class action treatment. [29]

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

Appealability was placed squarely on collateral order grounds. Initially, Justice Powell noted that there is no simple formula to define finality, which instead requires a practical construction. He then continued that

> [t]he inquiry requires some evaluation of the competing considerations underlying all questions of finality—"the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." 🗋 Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S. Ct. 322, 94 L. Ed. 299 (1950) * * *.[30]

The Cohen decision was then reviewed, noting that it required final determination by the district court of the matter offered for review, that the matter be one that could not be reviewed effectively on appeal from the final judgment, and that it must involve a claim of right "'separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred * * *.'"[31]  These statements were applied to the order imposing on the defendants ninety percent of the costs of notifying the class, finding that it had "conclusively rejected" the claim that they should not have to bear such costs, and that it involved a "collateral matter unrelated to the merits" of the plaintiff's claims.[32]  Although the passage applying the tests to this order did not mention it, it could easily be concluded that as in Cohen, defendants might not have an effective remedy to recover their share of the costs, estimated at nearly $20,000, on appeal from a truly final judgment.

It would be possible to read the Court's introductory quotation from the Dickinson Petroleum case[33] as approving an ad hoc balancing approach under which finality is determined in each case by weighing individualized estimates of the costs of piecemeal review against individualized estimates of the danger of delayed review. The remainder of the opinion, however, made it clear that the Court continued to insist at least upon the requirements that the district court have reached a final determination, and that the matter be unrelated to the merits of the underlying claims.[34]  The requirements attributed to the Cohen decision, moreover, leave it reasonably clear that in addition some danger of irreparable harm must be shown, even though the Court did not pause to identify specifically the nature of the potential harm nor the importance of the largely financial interest it selected as the predicate for appealability. Finally, although there was no mention of the "serious unsettled question" requirement, it is clear that the problems of notice in class actions addressed by the Court were both serious and unsettled.

Criminal cases came back into the mainstream of collateral order doctrine with Abney v. United States.[35]  Denial of a pretrial motion to dismiss on double jeopardy grounds was held appealable. The Court found that all requirements of collateral order doctrine were satisfied. The double jeopardy claim is separable from the issue on the merits; there must be a fully consummated decision by the trial court on the double jeopardy claim; and immediate appeal is the only means to preserve the double jeopardy right, which is intended to protect against the financial and emotional burdens of trial as well as the risk of conviction. The decision provides a strong illustration of the tendency to permit immediate appeal to foster favored interests, since it is clear that double jeopardy claims often will require a close look at the merits of both prior and present proceedings.[36]

The next important pronouncement on collateral order appeals came in another class action setting, Coopers & Lybrand v. Livesay.[37]  The district court first certified, then decertified, a class action. The named plaintiffs sought to appeal the decertification order. Their first argument, relying on collateral order doctrine, was quickly rejected. The Court restated the elements of collateral order appeals in a three-part test that since has been said to have "refined"[38] the doctrine:

> To come within the "small class" of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.[39]

None of these elements was satisfied. Certification and decertification orders are inherently subject to revision as the case progresses. The certification determination is enmeshed with the factual and legal merits of the claim. And denial of certification is subject to effective review after final judgment.

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

The remaining important cases are best described in two groups. The first group deals with orders granting or denying motions to disqualify opposing counsel. The second group—actually a pair—deals with orders denying pretrial motions asserting absolute or qualified official immunity.

The Supreme Court cases dealing with motions to disqualify opposing counsel began with Firestone Tire & Rubber Company v. Risjord. [40] The district court ruled that counsel for the plaintiffs could continue to represent them if it obtained consent from the plaintiffs and the insurance company for the defendant. After consents were obtained, the defendant sought to appeal the resulting denial of its motion to disqualify. The Supreme Court stated that the denial of disqualification could be treated as a conclusive determination of the disputed question, [41] and would be assumed to resolve an important issue completely separate from the merits. It held that collateral order appeal was improper, however, because effective review could be had on appeal from the final judgment. In some ways the opinion is not fully satisfying. There are cogent arguments that significant harm can be done by continuing participation of counsel who should have been disqualified, and that this harm cannot be corrected effectively on appeal from a final judgment. [42] The strongest arguments for denying appeal, clearly articulated by the courts of appeals that had come to deny appeal, depended on practical experience with the rule permitting appeal. Several courts of appeals had allowed appeals, and found that motions to disqualify were used more and more frequently as means of harassment and delay. [43] The Court's bland abstract reassurance that any prejudicial error could be cured on appeal from final judgment bypassed an opportunity to enrich the body of collateral appeal lore. The abstract character of the Court's opinion had one further consequence. The court of appeals had concluded that appeal was not proper, but in light of its own previous decisions permitting appeal limited its decision to prospective effect. The Court reversed, concluding that since the final judgment requirement goes to the jurisdiction of the court of appeals there was no room for prospective effect. This sterile insistence on the jurisdictional character of the statute has been criticized in an earlier section. [44] It would have been much better to recognize frankly the flexible character of finality determinations, particularly under collateral order doctrine, and to address the merits of the disqualification question that had been decided in this case by the district court, appealed, decided by the court of appeals, and argued before the Supreme Court itself. The denial of collateral order appeal from orders denying disqualification of opposing counsel was soon extended to orders granting disqualification. In Flanagan v. United States [45] disqualification of defense counsel in a criminal case was held not appealable. The Court relied in part on the proposition that the policy against piecemeal appeals is particularly strong in criminal cases. In addition, it determined that one element or another of collateral order requirements was missing, depending on the test that might eventually be chosen for reviewing disqualification orders. If actual prejudice must be shown, the question can be reviewed only when the substance of the prosecution and defense is known, and is not separable from the merits. If prejudice is presumed, effective review is possible on appeal from a judgment of conviction; should the defendant be acquitted, the defendant's interests are adequately protected by the acquittal and the interests of disqualified counsel are not sufficiently important to justify immediate appeal. The same alternative approach was taken in Richardson-Merrell, Incorporated v. Koller, [46] holding that collateral order appeal could not be taken from disqualification of counsel in a civil case. The disqualification order is not separable from the merits if actual prejudice must be shown, and can be reviewed effectively on appeal from the final judgment if there is no need to show prejudice. In addition, the Court responded to the policy arguments for permitting immediate appeal, stating that disqualification orders are more likely to be affirmed than reversed; that the personal interest of counsel cannot justify appeal despite the prospect that the client may choose not to appeal the final judgment; and that the undesirable tactical use of disqualification motions cannot of itself justify appeal. The Court also emphasized the need to restrict the use of collateral order appeals.

The cases dealing with denial of pretrial motions asserting official immunity began with Nixon v. Fitzgerald. [47] Suit was brought by a management analyst for the Air Force, claiming damages for termination of his employment. Former President Nixon asserted a defense of absolute immunity by motion for summary judgment, which was denied. The Court held that an order denying a claim of absolute immunity is subject to collateral order appeal, citing the decisions allowing criminal defendants to appeal denial of claims of immunity under the Speech and Debate Clause or under the Double Jeopardy Clause. [48] The explanation of collateral order doctrine focused entirely on the proposition that the appeal presented a serious and unsettled question of law. No attempt was made to expand on the other requirements of collateral order doctrine. The citation of the criminal cases, however, provided the obvious explanation that absolute immunity is intended to protect against the burdens of trial as well as the risk of liability. Appeal after trial cannot effectively protect against submitting to the burdens of trial.

The conclusion that official immunity is intended to protect against the burdens of trial was made explicit in the opinion in Mitchell v. Forsyth, [49] which allowed collateral order appeal from pretrial denial of a defense of qualified official immunity. On remand from an earlier appeal, the district court had denied a motion for summary judgment made by former Attorney

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

General John Mitchell, who asserted both absolute immunity and qualified immunity against claims that he had authorized an unlawful wiretap. The court of appeals ruled that it had jurisdiction of Mitchell's appeal as to the claim of absolute immunity, but denied jurisdiction as to the claim of qualified immunity. The Supreme Court, noting that the courts of appeals had split on the question, ruled that appeal is proper.

The core of the qualified immunity appeal ruling is plain. The Court concluded that the purposes served by granting qualified immunity to government officials include as an important value protection against the burdens of litigation. This protection is so important as to justify pretrial appeal. The balance of the opinion is much less convincing in attempting to explain the reasons for finding that the question is collateral to the merits. The opinion would have been more compelling had it simply recognized that collateral order doctrine can be shaped to the perceived needs of the situation. If important values are served by interlocutory appeal, appeal is permitted. The formal requirements of collateral order doctrine are adjusted accordingly. The effort to cover the other bases, as comforting as it may seem for doctrinal continuity, could cause new uncertainty if generalized to other settings.

As to the finality of the pretrial ruling on qualified immunity, the Court recognized that collateral order doctrine requires that the ruling " 'conclusively determine the disputed question.' " It found that denial of either a motion to dismiss or a motion for summary judgment "easily satisfies" this requirement. By way of further explanation, it first described a situation that seemed to invoke the standards for ruling on a motion to strike the defense. [50] Then it observed that if the ruling is only that the defendant violated a clearly established rule of law if the facts are as asserted by the plaintiff, so that the defendant may establish immunity at trial, the ruling finally determines the right not to stand trial. This observation simply returns the decision to the central point —qualified immunity defenses should be eligible for appellate review prior to trial.

Turning to the requirement that a collateral order involve a claim separable from the rights asserted in the action, the Court adopted a new test: the immunity defense "is conceptually distinct from the merits of the plaintiff's claim." The test of conceptual distinctness clearly can be satisfied even though the qualified immunity defense is intimately bound up with the facts underlying the claim. What is important is that it "is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." [51] Again, the explanation amounts to a repeated statement that appeal should be permitted before trial.

The end result is a tolerably clear rule. Some issues have remained to cause difficulty in the courts of appeals. The opinion concludes by observing that denial of a claim of qualified immunity is an appealable final decision "to the extent that it turns on an issue of law." This final reference to the discussion of conceptual distinctness has led to frequent dismissals of appeals that raise only fact questions, but the line between fact and law is more a zone than a line, and some appeal decisions clearly examine the sufficiency of the evidence in reviewing denials of summary judgment. Literally, the Court's opinion also seems to permit two pretrial appeals on the qualified immunity defense, one from denial of a motion to dismiss and a second from denial of a motion for summary judgment. The Court expressly left open the question whether appeal can be taken if the defendant must in any event bear the burden of trial on a claim for injunctive or declaratory relief growing out of the same facts. These and other matters are explored in the section on immunity appeals. [52]

Whether the opinion written in the Mitchell case to enable qualified immunity appeals will generate new confusion in application of general collateral order doctrine remains to be seen. The emphasis on a "right not to be tried" could easily be extended to embrace many other theories, such as challenges to personal jurisdiction. Expansion by easy extension of this label, however, has been resisted effectively. [53] In many other ways, the opinion invites expansion of collateral order doctrine into a generalized "pragmatic finality" approach, treating matters as separate and finally decided when it is convenient to treat them so. Since there is independent authority for such an approach, [54] the primary danger to guard against is that increased familiarity may expand this approach to a point at which many of the rules that now seem clear become confused. The Court has guarded against this danger with some vigor in the area of criminal appeals, [55] and has done so with respect to civil appeals as well.

The last in the line of the most important Supreme Court pronouncements came in Mohawk Industries, Incorporated v. Carpenter. [56] The defendant appealed an order compelling discovery of information on finding that although it was initially protected by the attorney-client privilege, the privilege had been waived. The Court affirmed dismissal of the appeal because "post judgment appeals generally suffice to protect the rights of litigants an ensure the vitality of the attorney-client privilege. [57] Exceptional needs could be met by such alternatives as disobedience and contempt, interlocutory appeal by certification under 28 U.S.C.A. § 1292(b), or in truly pressing cases by mandamus. The lasting general impact of the opinion arises from the Court's

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

repeated emphasis on limiting collateral-order appeals to a "small class" of rulings. "[W]e do not engage in an 'individualized jurisdictional inquiry.'" A collateral-order appeal is to be found justified, or not justified, by looking to "the class of claims, taken as a whole." The cost of allowing immediate appeal must be measured by "the entire class of relevant orders." Collateral-order doctrine is a "'blunt, categorical instrument.'" The upshot has been an approach that at least nominally requires a determination that appeal is available only if all cases in a described "category" qualify. As noted below, the trick lies in defining the "category" that covers the particular order involved with the attempted appeal.

Taken together, these Supreme Court decisions establish the general contours of collateral order doctrine, even as one element or another may be subordinated to reach a desired result. Detailed discussion of the specific elements is provided in the following five sections. The general contours of the doctrine are summarized below.

The most certain aspect of collateral order appeals is that they depend on 28 U.S.C.A. § 1291, and thus must be characterized as appeals from "final decisions." Some of the opinions rely on the fact that the statute refers to final decisions rather than final judgments, stating that the doctrine operates as an "exception" to the "final judgment rule," or characterizing it as involving a "collateral final order." [58] At times collateral order appeals are frankly referred to as interlocutory. [59] Section 1291 nonetheless remains the only available foundation, and surely exerts a restraining force on the more exuberant arguments for expansion. Recognition that collateral order appeals do not fit the traditional final judgment concept may remain useful for some purposes, however, such as supporting the rule that trial court proceedings can continue pending decision of a collateral order appeal. [60]

By far the most common formulation of collateral order doctrine is the three-part formula quoted earlier from the Coopers & Lybrand case. The order "must conclusively determine the disputed question, resolve an important question completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." [61] The earlier discussion of the leading Supreme Court cases shows that this formula is no more than a useful starting point for analysis. Some cases add a fourth element, requiring that the appeal present an unsettled legal question of general importance. More than a few cases permit appeals on issues that require significant consideration of the merits, in order to protect interests thought deserving of immediate appellate consideration. It was fair for Judge Posner to observe of this formula that "as with so many multi-'pronged' legal tests it manages to be at once redundant, incomplete, and unclear." [62] The First Circuit has substituted a four-part formula that in some ways seems more accurate, even if it needs greater annotation. Under this formula, the requirements of collateral order appeal are "separability, finality, urgency, and importance." [63] Whatever formula may be used, it must be used with caution. Yet there are values in the formulaic approach. However elastic the words of the formula may be, and however true it may be that some elements of the formula are occasionally disregarded, a formula serves as a reminder that collateral order theory does not justify an ad hoc balancing of the arguments for and against immediate appeal on a case-by-case basis. [63.50] Although some earlier opinions in the courts of appeals spoke as if collateral order theory justified such balancing, [64] that does not really fit the theory. Ad hoc balancing occasionally emerges from the "pragmatic" approach to finality, [65] but at best lives in tension with the "categorical" approach clearly articulated in 2009 and described below.

Alongside the attempts to capture collateral order theory in a formula are many statements that the theory must not be too much expanded, lest the exception swallow the basic finality requirement and swamp dockets with collateral order appeals. [66] This reluctance is particularly great in criminal cases. [67] It is shown in a variety of ways.

Attempts to narrow the scope of collateral order appeal doctrine have an impact on the general character of the doctrine. One result is that the availability of appeal is apt to depend not only on the nature of the issue but also on the disposition made. An order denying pretrial security, for example, is more likely to be appealable than an order granting pretrial security. [68] Another result is that an issue that warrants collateral appeal before it is authoritatively resolved may not warrant appeal thereafter. Thus an arguable claim that double jeopardy attaches in certain circumstances was held to justify collateral order appeal, at the same time as the Court's ruling that there was no double jeopardy meant that future defendants could not appeal denial of the same double jeopardy argument. [69] To the extent that courts adhere to a requirement that collateral order appeals involve legal questions of some general importance, there are likely to be more cases in which an issue supports appeal once, but not again.

Attempts to narrow the scope of collateral order appeal doctrine may be checked in part, on the other hand, by the desire to avoid creation of an ad hoc balancing test that requires independent resolution of appealability in each case. Substantial values

are served by ruling that appeal is always available, or never available, as to identifiable categories of orders. As noted above, the Court has explicitly recognized the value of clear rules for collateral-order appeals, suggesting that it is better to determine appealability with respect to categories of orders rather than on a case-by-case basis. [70] Such clear rules are established with respect to orders granting or denying disqualification of counsel, [71] or denying pretrial claims of double jeopardy. [72] There is more uncertainty at the edges, but equally clear rules may one day emerge with respect to denial of official immunity claims. [73] The list could be extended. To the extent that clear rules can be achieved, collateral order doctrine may do considerably more good than harm. There are increasing signs that the "categorical" approach, by displacing an evaluation of the harm that may be caused by denying immediate appeal in a particular case, will substantially narrow the availability of collateral-order appeals. The common admonition that this doctrine is a narrow "exception" to the final-judgment doctrine may be revised to warn that it is a very narrow exception. [74] On the other hand, courts can manage to define a "category" of orders with a nearly surgical provision that restores some measure of flexibility to the finality calculation. [75]

Collateral order appeals do not fit easily within the appeal time provisions established by Federal Rule of Appellate Procedure 4. Rule 4 has been drafted in terms that fit the truly final judgment that ends a lawsuit, or a judgment under Civil Rule 54(b) that finally decides a discrete portion of a lawsuit. Although collateral order appeals rest on the "final decisions" appeal statute, they are interlocutory with respect to the real course of the lawsuit. Yet it is important to ensure that collateral order appeals cannot be taken long after entry of the challenged order, and the time limits of Rule 4 have properly been invoked to cut off the right of appeal [76] just as they have been invoked with respect to interlocutory appeals under 28 U.S.C.A. § 1292(a). [77] The question that remains is how far collateral order appeals should be governed by the other incidents of Rule 4. The question most obviously related to the appeal time question is whether the time starts to run before entry of a formal "judgment" in compliance with Federal Rule of Civil Procedure 58. It has been held, quite correctly, that appeal is available without regard to Rule 58. [78] There is no reason to complicate collateral order appeals with the provisions of Rule 58, which is designed primarily to provide a clear signal that the litigation has been completed and that the final judgment will stand unless appeals are promptly taken.

A related question is whether the time to appeal a collateral order can be suspended by a motion to reconsider. Appellate Rule 4(a)(4) provides in general terms that appeal time is suspended by a timely motion under Federal Rules of Civil Procedure 50(b), 52(b), 59(b), 59(e), and some motions under 🔖 Federal Rule of Civil Procedure 60. The Sixth Circuit has suggested that this provision applies to collateral order appeals. [79] The most obvious approach would be to say that a motion to reconsider an appealable collateral order is a motion under Civil Rule 59(e) to "alter or amend the judgment." Collateral orders, however, are frequently referred to as "decisions" rather than judgments, [80] and there is a potentially difficult problem with the provision that a Rule 59(e) motion may be filed "no later than 28 days after the entry of the judgment." It will not do to permit a collateral order appeal to be taken at any time, perhaps years after entry of the underlying order, by the simple device of moving to amend. The sensible accommodation of the competing forces is plain. It should not be required that collateral order appeal be taken or lost without providing reasonable opportunity for reconsideration by the trial court. Extending the time for appeal throughout the course of the litigation will not do. By analogy to Rule 59(e), an appellant should be permitted to suspend appeal time by a motion for reconsideration filed within 28 days of the order. Perhaps Rule 59(e) can be read in this way; [81] perhaps instead Appellate Rule 4 should be read in this way. The conclusion, however, should be the same.

Another consequence of appeal time limits ordinarily is that failure to appeal in time forfeits the right of review. If application of Appellate Rule 4 to collateral order appeals is to have any force, it must mean that the right to take a collateral order appeal is lost upon expiration of appeal time. That conclusion does not mean that review also should be denied on appeal from a truly final judgment, or for that matter on appeal by certification under 28 U.S.C.A. § 1292(b), an independently authorized interlocutory appeal, or perhaps by extraordinary writ. To the contrary, if it is possible to provide an effective remedy on appeal from the final judgment, review should be allowed. The strongest argument for denying later review, apart from rote reliance on Rule 4, would be that an obligation to take an earlier appeal would protect the opposing party against the burden of wasted proceedings in cases in which the trial court would have stayed proceedings pending appeal, and in which the order is not so far collateral as to allow appellate relief without requiring further proceedings. This argument, by its terms, reaches only a portion of collateral order appeals. The countervailing arguments are similar to those urged against requiring immediate appeal of orders that might be appealed under the hardship doctrine of Forgay v. Conrad. [82] Any rule that requires forfeiture of appellate opportunities for guessing wrong about doctrines of appealability that often are obscure would greatly increase the costs of collateral order doctrine by forcing protective appeals in many situations in which appealability is uncertain and in which all parties might prefer to await review on appeal from the final judgment. Forfeiture, moreover, would trap some parties in a box framed by a rule designed to alleviate untoward risks, not to create them. The system can live easily with a double opportunity for appeal. And

in fact several courts of appeals have held explicitly, across a wide range of collateral order appeal circumstances, that failure to take an available collateral order appeal does not forfeit the right to review the order on appeal from a final judgment. [83] The only consequences of forgoing a collateral order appeal opportunity should be the risk that further proceedings may moot the issue, [84] and that in some circumstances the standard of review may be different. [85]

A further consequence of ordinary final judgment appeals is that filing the notice of appeal transfers jurisdiction of the case to the court of appeals. The trial court loses power to undertake further proceedings. [86] This rule too should not apply to collateral order appeals, [87] except perhaps to foreclose the trial court from directly reconsidering the order that has been appealed absent permission from the court of appeals. [88] Reconsideration of the order that is before the court of appeals could disrupt the orderly disposition of the appeal. There is no reason, however, to treat the appeal as transferring the entire case to the court of appeals. Instead, the district court should have the same power to proceed as it enjoys pending frankly interlocutory appeals under 28 U.S.C.A. § 1292(a) [89] or § 1292(b). [90] If these proceedings moot the appeal, that is small loss.

The power to proceed does not necessarily mean that the court should proceed. Continued proceedings are most likely to be justified when the order is truly collateral. Indeed in some circumstances, such as denial of security pending trial, continued proceedings may help reduce the risk of injury that justifies the appeal. If reversal of the collateral order is likely to vitiate subsequent trial court proceedings, however, the trial court often should order a stay pending appeal. Thus it has been noted that there is a great risk of reversal when a trial judge "puts a party who has appealed from an order denying him pauper status to trial in the interim." [91] Continued trial court proceedings also are undesirable when the purpose of permitting appeal is to protect against the burden of trial, as with double jeopardy and official immunity claims, although even then it is settled that appeal on a merely colorable claim does not oust the jurisdiction of the trial court. [92] These examples suggest that while there is force to the observation that the possibility of continuing trial court proceedings provides a good test of the collateral character of an order, [93] it does not provide a sufficient test even of collateral character, much less of the availability of appeal with respect to orders that are not truly collateral.

Once a collateral order appeal is taken, it remains necessary to determine the scope of the appeal. So long as due care is taken to avoid interference with the progress of trial court proceedings and to put aside issues that may have changed because of such proceedings, it may be sensible to extend the appeal to consideration of matters that would not independently have supported appeal. This question is explored in a later section. [94]

Wise administration of collateral order appeal doctrine depends in part on other appeal doctrines. Appeals may be taken from final disposition of one claim, or all claims as to any party, upon entry of judgment under Civil Rule 54(b), even though many other claims or parties remain. Avowedly interlocutory appeals can be taken by permission of the district court and agreement of the court of appeals under 28 U.S.C.A. § 1292(b). Extraordinary writs purport not to be appeals, but provide another means of interlocutory review. The alternative opportunities for review created by these means must be considered in defining the contours of collateral order doctrine.

Civil Rule 54(b) has the most obvious relationship to collateral order doctrine, both because each provides a means of final decision appeal and also because collateral order doctrine has been rested in part on the notion of separability that underlies Rule 54(b). [95] Some parts of the relationship are easily stated. Collateral order appeal is available under 🚩 § 1291 without any need for entry of judgment under Rule 54(b). [96] Conversely, the mere fact that the trial court has finally disposed of all parts of a single claim, or of all claims as to a particular party, does not support collateral order appeal; [97] such dispositions are dispositions on the merits, not collateral rulings, and become final only upon entry of judgment in compliance with Rule 54(b) or entry of a judgment that concludes all claims among all parties. Beyond these points, however, matters soon become confused. Collateral order doctrine has been relied upon to find finality as to orders that finally dispose of all disputes as to parties whose role in the litigation is itself subordinate and collateral to the merits. [98] No harm was done by permitting appeal in these cases, and careful use of this doctrine may provide a worthy supplement to Rule 54(b).

The cases involving parties who have played a subordinate and collateral role throughout the litigation find an echo in Boeing Co. v. Van Gemert. [99] The judgment of the district court fixed the amount of damages to be paid into court by the defendant in a class action, and ordered that fees for the plaintiff class attorneys be assessed both against the shares of class members

who filed claims and against the shares of class members who never filed claims. The defendant appealed only to challenge the ruling that attorney fees could be collected out of the share of class members who failed to file claims. Justice Rehnquist wrote a vigorous dissenting opinion to argue that the judgment of the district court was not final, since it had not yet even determined the amount of attorney fees. The Court, however, responded with a footnote observation that the judgment had concluded any interest the defendant might have in the litigation, apart from its contingent hope that it might be able to reclaim unclaimed portions of the damage award undiminished by any payment to class attorneys. Thus "it was a final judgment on the only issue in which [the defendant] still had an interest." [100]

The Court's disposition of the finality question makes sense as a principle that the defendant should not be forced to await perhaps lengthy proceedings in which it was at least largely uninterested before appealing. This pragmatic approach to a party whose interests are rather clearly separable from the disputes that may remain to be decided has a close kinship to collateral order doctrine. At the same time, it fits awkwardly with the basic principle of Civil Rule 54(b) that final disposition as to fewer than all parties is not an appealable final judgment absent an express entry of final judgment as to the separate parties. It seems premature to suppose that any general principle of separable party interests will emerge from this brief footnote decision. In like fashion, it is difficult to guess whether other decisions will take so relaxed an approach to the manifest possibility that the appealing party may in fact remain interested in other matters, such as the possibly disputable right to recapture unclaimed portions of the judgment. Finally, it is far from clear whether the defendant really was uninterested in the remaining issues even as to attorney fees. If it should indeed be entitled to recapture unclaimed shares of the judgment, it would be interested not only in the right to charge fees against unclaimed shares but also in the amount of the fees to be charged.

Rule 54(b) must remain the primary device for achieving finality as to final but partial disposition of multiclaim or multiparty actions. Collateral order doctrine, however, seems to have secured a toehold that is likely to be limited to cases in which there would be no reason to deny entry of judgment under Rule 54(b), and either no one thought of the need for entry of judgment or it was unreasonable for the district court to refuse to enter judgment. [101]

The adoption of 28 U.S.C.A. § 1292(b) in 1958, several years after the Cohen decision, likewise has an impact on the proper role of collateral order doctrine. Section 1292(b) permits interlocutory appeal upon certification of the district court, and acceptance by the court of appeals, that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." [102] This procedure has not supplanted collateral order appeals for several reasons. The more truly collateral an order is, the less likely it is to involve a controlling question of law within the meaning of § 1292(b), and the less likely it is that an immediate appeal will materially advance ultimate termination of the litigation. The starting point, moreover, is a discretionary certification of the district court, and the court of appeals has equally unfettered discretion. [103] Thus it is clear that failure to secure certification for appeal under § 1292(b) does not prevent appeal on collateral order theory. [104]

While the enactment of § 1292(b) has not affected the core of collateral order appeal doctrine, it properly has an impact on the contours of the doctrine. As noted above, and as will be explored further in the following sections, the urge to achieve immediate appeal from rulings on important matters occasionally leads courts to subordinate some elements of full-scale collateral order analysis. The availability of § 1292(b) makes it possible to resist this temptation in some measure. If it seems likely that most cases within a general category are unsuitable for collateral order appeal, appeal can be denied, relying on § 1292(b) to meet the prospect that a few cases may deserve immediate appeal. [105] In earlier days, it may have been in keeping with the flexible character assumed by collateral order doctrine to use it for appeal if the court of appeals thinks the district court acted unreasonably in denying § 1292(b) certification. [106] That may happen still, but is likely to be camouflaged in a strained definition of an appealable "category" of appealable orders. [107]

Finally, it is possible to consider extraordinary writs as an alternative means of review that reduces the need to expand collateral order doctrine. It would be a poor trade, however, to rely on expansion of writ review as an alternative to collateral order appeal. Writ procedure is unnecessarily cumbersome, and should be used as an escape from appeal procedure only to address specific ad hoc needs that can be reached by appeal only at undue cost to appeal doctrine. [108]

**Footnotes**

1          **Cohen case**

           337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).

1.50       **Action not terminated**

           The courts of appeals possess only such jurisdiction as is conferred by statute. Section 1291 final-decision jurisdiction establishes collateral-order finality, even from orders that do not terminate the action or any part of it. Tucker v. Faith Bible Chapel International, 36 F.4th 1021, 1033 (10th Cir. 2022), **quoting Wright, Miller & Cooper.**

2          **Requirements vary**

           Henry v. Lake Charles American Press, L.L.C., 566 F.3d 164, 172 (5th Cir. 2009), **quoting Wright, Miller & Cooper**. The court went on to suggest that the three common criteria—an order that is conclusive, separate, and unreviewable—are less "strict preconditions" than "guidelines in making the pragmatic determination of whether to allow an order to be immediately appealed." The pragmatic approach does not degenerate to a case-by-case determination; the Supreme Court has directed that the determination be made on a categorical basis. In the process, the Court has come to emphasize the importance of the rights at issue. For an order denying dismissal under a state anti-SLAPP statute, "importance weights profoundly in favor of appealability."

           "No one can make a seamless web out of all of the decisions on collateral orders. The circuits are not unanimous in every nuance, * * * and even within circuits, a wider scope of review may be available for some interlocutory orders * * *." U.S. v. Billmyer, 57 F.3d 31, 35 (1st Cir. 1995), **citing Wright, Miller & Cooper.**

3          **Three elements**

           Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1945, 173 L. Ed. 2d 868 (2009).

           These three elements were restated in Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-469, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978). See the text at notes 37-39 below.

           Will v. Hallock, 546 U.S. 345, 126 S. Ct. 952, 957, 163 L. Ed. 2d 836 (2006).

4          **Death knell appeals**
           See § 3912.

5          **Pragmatic finality**
           See § 3913.

6          **Collateral orders**

           337 U.S. at 545-547, 69 S. Ct. at 1225-1226 (per Jackson, J.).

7          **Early cases**
           Bank of Columbia v. Sweeny, 26 U.S. 567, 1 Pet. 567, 7 L. Ed. 265, 1828 WL 3035 (1828), involved denial of an application for a writ of mandamus to define the issues to be tried in a case pending in the circuit court. The Court noted that if this mode of interposition were allowed, the result would be to retard proceedings below, and invite repeated appearances of the case before it prior to final judgment.

U.S. v. River Rouge Improvement Co., 269 U.S. 411, 46 S. Ct. 144, 70 L. Ed. 339 (1926), allowed review on writ of error of a court of appeals judgment that affirmed condemnation awards as to fifteen parcels of riparian property, and remanded for new trial on the award to a different party who owned a gas main passing under the river. The awards as to the fifteen parcels were found final, on the ground that they involved matters and parties entirely distinct from the remaining question as to the gas main. Unlike Cohen, these awards were final within themselves under the traditional test that nothing but execution remained to be accomplished, and involved parties who had no interest in the matters remaining to be resolved.

Cobbledick v. U.S., 309 U.S. 323, 60 S. Ct. 540, 84 L. Ed. 783 (1940), affirmed dismissal of an appeal from an order denying a motion to quash subpoenas duces tecum issued in grand jury proceedings. In the part of the opinion cited by the Court in the Cohen opinion, it was noted that appellate review would be available to any witness who chose to be held in contempt by disobeying the subpoena, since at that point the witness' situation "becomes so severed from the main proceeding as to permit an appeal." 209 U.S. at 328, 60 S. Ct. at 542. The special considerations underlying contempt appeals are discussed in § 3917. Although the notion of severability affords some support for the collateral order doctrine, the specific context of contempt appeals does not.

These early cases raised an echo in Boeing Co. v. Van Gemert, 444 U.S. 472, 481 n.7, 100 S. Ct. 745, 751 n.7, 62 L. Ed. 2d 676 (1980). See the discussion at notes 99-100 below.

8      **Four headings**

In re Kemble, 776 F.2d 802, 806 (9th Cir. 1985), **quoting Wright, Miller & Cooper.**

9      **Prospect of change**

"The requirement that the district court's order 'conclusively determine' the question means that appellate review is likely needed to avoid [significant] harm." Johnson v. Jones, 515 U.S. 304, 310, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995), **citing Wright, Miller & Cooper.**

"The mere power to revisit an order * * * is insufficient to preclude a finding of conclusivity [for collateral-order appeal]; it should be unlikely that the court will revisit the order." It is enough that no further consideration is contemplated. Henry v. Lake Charles American Press, L.L.C., 566 F.3d 164, 174 (5th Cir. 2009), **quoting Wright, Miller & Cooper**.

Southern Ute Indian Tribe v. Amoco Production Co., 2 F.3d 1023, 1028-1029 (10th Cir. 1993), **citing Wright, Miller & Cooper.**

The final disposition element of collateral order doctrine is discussed in § 3911.1

10      **No change contemplated**

"The 'bare fact' that every order short of a final decree is theoretically 'subject to reopening at the discretion of the district judge' is insufficient to preclude review" under collateral order doctrine.

Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 345, 105 S. Ct. 3180, 3202, 87 L. Ed. 2d 220 (1985), **citing Wright, Miller & Cooper** (Brennan, J., dissenting).

NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C., 745 F.3d 742, 748 (5th Cir. 2014), **quoting Wright, Miller & Cooper**.

In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106, 1118 (7th Cir. 1979), **citing Wright, Miller & Cooper**.

11      **Avoid duplication**

Collateral order appeal cannot be taken from an order expunging a lis pendens notice filed under California law. California law requires consideration of the probable validity of the claim, mingling the

expunction order with the merits of the action. Orange County v. Hongkong and Shanghai Banking Corp. Ltd., 52 F.3d 821, 823-824 (9th Cir. 1995), **quoting Wright, Miller & Cooper.**

Denial of a motion to dismiss on forum non conveniens grounds cannot be appealed on collateral order theory since the factors relevant to forum non conveniens dismissal overlap the merits. Partrederiet Treasure Saga v. Joy Mfg. Co., 804 F.2d 308, 310 (5th Cir. 1986), **citing Wright, Miller & Cooper.**

**12**     **Quality of review**
Consideration of the factors involved in denial of a forum non conveniens dismissal by collateral order appeal would not only risk repetitive review of the same matters, but would involve increased uncertainty because of the absence of a developed factual record. Partrederiet Treasure Saga v. Joy Mfg. Co., 804 F.2d 308, 310 (5th Cir. 1986), **citing Wright, Miller & Cooper.**

**13**     **Continued trial proceedings**
"The requirement that the matter be separate from the merits of the action itself means that review now is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending)." Johnson v. Jones, 515 U.S. 304, 310, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995), **citing Wright, Miller & Cooper.**

Judge Posner took the view that a central test for determining whether an order is "collateral" is whether trial court proceedings can continue without interference while an appeal from the order remains pending.

Under this test, an order directing immediate payment of interim attorney fees is collateral. Palmer v. City of Chicago, 806 F.2d 1316, 1319-1320 (7th Cir. 1986).

See text at notes 86-90 below.

**14**     **Review evaded**
"The requirement that the issue underlying the order be ' "effectively unreviewable" ' later on * * * means that failure to review immediately may well cause significant harm." Johnson v. Jones, 515 U.S. 304, 310, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995), **citing Wright, Miller & Cooper.**

Martin v. Brown, 63 F.3d 1252, 1261 (3d Cir. 1995), **citing Wright, Miller & Cooper.**

See § 3911.3.

**15**     **Hardship factor**
See § 3911.4.

**16**     **Important question**
See § 3911.5.

**17**     **Frequent statement**
Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-469, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978). See text at notes 37-39 below.

**18**     **Individual importance**
Two examples are conclusive. Public officials are allowed to appeal denial of pretrial motions claiming qualified immunity, and criminal defendants are allowed to appeal denial of pretrial motions asserting double jeopardy. Many, and probably most, of these appeals involve fact-bound questions of interest only to the appellants. See text at notes 35-36 and 47-55 below, § 3911.4, § 3914.10, and § 3918.5.

The element of collateral-order doctrine that looks for a serious and unsettled question does not defeat an immunity appeal. This language "does not define when an issue is important under this Cohen factor. Rather, it is a completely separate consideration, and is not normally cited as one of the elements of

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

the collateral order doctrine." 🚩Burlington Northern & Santa Fe Ry. Co. v. Vaughn, 509 F.3d 1085, 1090-1091 (9th Cir. 2007), **citing Wright, Miller & Cooper**.

"The courts have not clearly determined whether the fourth factor—that the issue presents a 'serious and unsettled question'—is necessary to the determination" of collateral-order appeal. 🚩Carolina Power and Light Co. v. U.S. Dept. of Labor, 43 F.3d 912, 916 n.3 (4th Cir. 1995), **quoting Wright, Miller & Cooper.**

19      **Swift & Co. case**
        🚩339 U.S. 684, 70 S. Ct. 861, 94 L. Ed. 1206 (1950).

20      **Review an empty rite**
        🚩339 U.S. at 689, 70 S. Ct. at 865.

21      **Requirements met**
        An earlier decision had reached a comparable result upon vacation of an attachment in an in rem proceeding. Appeal was allowed because "[t]he vessel by the decree below is released from arrest. This in effect terminates the proceeding as against her. Counsel upon both sides seem to be at one that, as a practical matter, if this decree remains unreversed, nothing else can be done in the court below which would be worth doing." The Attualita, 238 F. 909, 910 (C.C.A. 4th Cir. 1916).

22      **Roberts case**
        🚩339 U.S. 844, 70 S. Ct. 954, 94 L. Ed. 1326 (1950).

23      **Forma pauperis denial**
        See § 3914.4.

24      **Stack case**
        🚩342 U.S. 1, 72 S. Ct. 1, 96 L. Ed. 3 (1951)

25      **Bail appeals**
        See § 3918.2.

26      **Eisen case**
        🚩417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

27      **Death knell**
        🚩Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966). The rise and fall of death knell appeals from orders with respect to class certification is traced in § 3912.

28      **Orders granting class status**
        🚩Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1007 n.1 (2d Cir. 1973). See § 3912.

29      **Class action treatment**
        See §§ 3912, 3914.19.

30      **Competing considerations**
        🚩417 U.S. at 171, 94 S. Ct. at 2149.

31      **Separable rights**
        🚩417 U.S. at 171-172, 94 S. Ct. at 2149-2150.

32      **Test applied**

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

| | |
|---|---|
| | 🚩 417 U.S. at 172, 94 S. Ct. at 2150. |
| 33 | **Dickinson Petroleum case**<br>🚩 Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S. Ct. 322, 94 L. Ed. 299 (1950). The Dickinson case is discussed in § 3909. |
| 34 | **Added requirements**<br>Some appellate decisions since the Eisen decision have suggested that it allows a finding of finality to rest directly on a balancing of the competing considerations underlying all questions of finality as applied to the particular facts of an individual case. See text at notes 64-65 below. |
| 35 | **Abney case**<br>🚩 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). |
| 36 | **Double jeopardy and merits**<br>See § 3918.5. |
| 37 | **Coopers & Lybrand case**<br>🚩 437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978). |
| 38 | **Doctrine refined**<br>🚩 Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S. Ct. 1945, 1949, 100 L. Ed. 2d 517 (1988). |
| 39 | **Three-part test**<br>🚩 437 U.S. at 468, 98 S. Ct. at 2458 (per Stevens, J.). |
| 40 | **Firestone Tire case**<br>🚩 449 U.S. 368, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981). |
| 41 | **Conclusive determination**<br>Justice Rehnquist concurred, protesting that denial of the motion to disqualify might well be reconsidered as the case progressed toward trial. 🚩 449 U.S. at 380-382, 101 S. Ct. at 676-677. |
| 42 | **Harm beyond correction**<br>See § 3914.21. |
| 43 | **Motions misused**<br>Several cases are described in § 3914.21. Two deserve mention here as well.<br><br>The Court of Appeals for the Second Circuit sat en banc to overrule its decisions that had permitted collateral order appeal from orders denying motions to disqualify opposing counsel. Initially, it noted that the practical effects of appealability seemed to have been that motions to disqualify had proliferated as a tactical device, and that they had been rewarded by the anticipated benefit—district court proceedings had been frozen for protracted periods pending disposition of appeals. For the case before it, however, it concluded that it would be better to resolve the issues on the merits in light of the heavy investment already made in appeal and the benefits to the parties and the court below from finally resolving the particular disqualification presented. 🚩 Armstrong v. McAlpin, 625 F.2d 433, 434-442 (2d Cir. 1980). The Supreme Court reversed with directions that the appeal be dismissed, relying on the ruling in the Firestone Tire case that a rule that there is no appellate jurisdiction cannot be made prospective only. McAlpin v. Armstrong, 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981).<br><br>🚩 Community Broadcasting of Boston, Inc. v. F.C.C., 546 F.2d 1022 (D.C. Cir. 1976). |
| 44 | **Jurisdictional character** |

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

See § 3905.

**45**      **Flanagan case**

⚑ 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984).

**46**      **Richardson-Merrell case**

⚑ 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985).

**47**      **Nixon case**

⚑ 457 U.S. 731, 741-743, 102 S. Ct. 2690, 2697-2698, 73 L. Ed. 2d 349 (1982)

**48**      **Criminal immunity cases**

⚑ Abney v. U. S., 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), is summarized at note 35 above. The principle of the Abney case was held to establish the appealability of an order that denied a motion to dismiss an indictment of a former member of Congress on the ground of immunity under the Speech or Debate Clause in ⚑ Helstoski v. Meanor, 442 U.S. 500, 99 S. Ct. 2445, 61 L. Ed. 2d 30 (1979).

**49**      **Mitchell case**

⚑ 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Assuming that, as suggested, the Mitchell decision implicitly recognized that the need to protect official defendants against the burdens of trial justifies relaxation of ordinary collateral order appeal doctrine, still it could not be expanded to support appeal from a denial of summary judgment based entirely on the presence of genuine issues of material fact. ⚑ Johnson v. Jones, 515 U.S. 304, 314, 115 S. Ct. 2151, 2157, 132 L. Ed. 2d 238 (1995), **citing Wright, Miller & Cooper.**

**50**      **Motion to strike**
Denial of a defendant's motion to dismiss or for summary judgment "may represent the trial court's conclusion that even if the facts are as asserted by the defendant, the defendant's actions violated clearly established law and are therefore not within the scope of the qualified immunity. In such a case, there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant is not immune." ⚑ 472 U.S. at 527, 105 S. Ct. at 2816. In the next paragraph, the Court probably made it clear that it was referring to a denial of a defendant's motion for summary judgment in referring to "the facts * * * as asserted by the defendant." ⚑ 472 U.S. at 528, 105 S. Ct. at 2816. Of course this reference encompasses only a fraction—and probably a small fraction—of decisions denying motions for summary judgment. Motions for summary judgment also are denied on the ground that the moving party has not carried the summary judgment burden of showing that there is no genuine issue as to the version of the material facts asserted by the moving party. The Court's language reaches only the case in which summary judgment is denied for reasons that parallel grant of a motion to strike a defense; of course the language is equally appropriate to describe a decision granting a motion to strike a defense. Denial of a motion for summary judgment on these grounds could be followed by events at trial establishing facts more favorable to the defendant than those asserted in the motion for summary judgment. The only circumstances that would clearly fit the Court's description of a disposition that could not be altered in subsequent proceedings would be grant of a plaintiff's motion to strike the defense or grant of a plaintiff's motion for summary judgment as to the defense. Although such dispositions could be undone before entry of final judgment, they would meet the traditional test of finality applied in other collateral order decisions; see § 3911.1.

**51**      **Separate for test**

⚑ 472 U.S. at 527-529, 105 S. Ct. at 2816-2817.

**52**      **Immunity appeals**

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

---

See § 3914.10.

53    **Right not to be tried**
Sufficient illustration for present purposes is provided by the ruling that collateral order appeal cannot be taken from denial of a motion to dismiss for lack of personal jurisdiction. The Court explained that the rules of personal jurisdiction protect only against the entry of judgment, a matter that can be corrected on appeal from the final judgment, and do not protect against the often considerable burdens of submitting to trial in a court that lacks personal jurisdiction before appeal can be taken. Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S. Ct. 1945, 100 L. Ed. 2d 517 (1988). See §§ 3911.3, 3914.6.

54    **Balancing approach**
See text at notes 64-65 below.

55    **Criminal appeals**
See § 3918.5.

56    **Mohawk Industries case**
558 U.S. 100, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009).

57    **Postjudgment appeals suffice**
558 U.S. at 109, 130 S. Ct. at 606.

58    **Final decisions**
Historically, the Court has ruled that the "final decisions" phrase of § 1291 is interchangeable with the "final judgment" phrase. See § 3906.

"Although 'final decisions' typically are ones that trigger the entry of judgment, they also include a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 103, 130 S. Ct. 599, 603, 175 L. Ed. 2d 458 (2009).

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1945-1946, 173 L. Ed. 2d 868 (2009).

Osborn v. Haley, 549 U.S. 225, 127 S. Ct. 881, 892, 166 L. Ed. 2d 819 (2007).

Collateral-order doctrine is not an exception to the § 1291 final decision rule but a practical construction of it. Will v. Hallock, 546 U.S. 345, 126 S. Ct. 952, 957, 163 L. Ed. 2d 836 (2006).

Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 203, 119 S. Ct. 1915, 1920, 144 L. Ed. 2d 184 (1999).

In Cohen v. Beneficial Industrial Loan Corp., "as in all of our cases following it, we were construing the federal statutory language of 28 U.S.C.A. § 1291," determining what is a "final decision." Johnson v. Fankell, 520 U.S. 911, 117 S. Ct. 1800, 1804, 138 L. Ed. 2d 108 (1997).

Swint v. Chambers County Com'n, 514 U.S. 35, 40-42, 115 S. Ct. 1203, 1207-1208, 131 L. Ed. 2d 60 (1995).

"The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 866, 868 n.3, 114 S. Ct. 1992, 1995, 1996 n.3, 128 L. Ed. 2d 842 (1994).

---

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269, 111 S. Ct. 648, 651 n.3, 112 L. Ed. 2d 743 (1991).

Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978).

The decision in Abney v. U. S., 431 U.S. 651, 658-659, 97 S. Ct. 2034, 2039-2040, 52 L. Ed. 2d 651 (1977), appears to rely on the "final decision" phrasing of § 1291 to explain the collateral order doctrine, without discussing the earlier decisions noted in § 3906. The collateral order doctrine was referred to as an "exception to the final judgment rule," which rests on finding that an order is a " 'final decision' for purposes of § 1291" even though it is not a final judgment that terminates an action. And collateral orders are referred to as "the 'small class of cases' that Cohen has placed beyond the confines of the final judgment rule." This phrasing probably characterizes the doctrine better than any alternative exegesis of the statutory phrase.

U.S. v. Moussaoui, 483 F.3d 220, 230 (4th Cir. 2007).

Davis v. East Baton Rouge Parish School Bd., 78 F.3d 920, 925 (5th Cir. 1996), **citing Wright, Miller & Cooper.**

**Matter of right**

Because collateral order appeals are taken under § 1291, satisfaction of the tests for collateral order appeal means that appeal is available as a matter of right; see § 3901. This fact does not disguise the opportunity to adopt flexible approaches to measuring the tests.

"If the matter in dispute satisfies the Cohen test, we must hear it * * *." U.S. v. Weissberger, 951 F.2d 392, 397 (D.C. Cir. 1991).

59      **Interlocutory**
Witherspoon v. White, 111 F.3d 399, 401 (5th Cir. 1997), **citing Wright, Miller & Cooper.**

Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996).

**See also**
Collateral order appeal doctrine permits appeal from "district court decisions that, although short of final judgment, are immediately appealable * * *." Behrens v. Pelletier, 516 U.S. 299, 304, 116 S. Ct. 834, 838, 133 L. Ed. 2d 773 (1996).

"Under the collateral order exception, an appellate court 'may exercise its § 1291 jurisdiction to review a district court order that is not a final decision.'" McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1140 (9th Cir. 2007).

"At least in the present context, the distinction between a final order and an interlocutory order that is nonetheless appealable under the collateral order doctrine is, as a practical matter, purely terminological." Occidental Petroleum Corp. v. S.E.C., 873 F.2d 325, 331 (D.C. Cir. 1989).

60      **Continue proceedings**
See text at notes 86-90 below.

61      **Three-part formula**
Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978).

Case 4:23-cv-03560    Document 159-1    Filed on 07/05/24 in TXSD    Page 52 of 60

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

The small category of appealable collateral orders "'includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action.'" Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S. Ct. 599, 605, 175 L. Ed. 2d 458 (2009).

Osborn v. Haley, 549 U.S. 225, 127 S. Ct. 881, 892, 166 L. Ed. 2d 819 (2007).

Sell v. U.S., 539 U.S. 166, 175, 123 S. Ct. 2174, 2182, 156 L. Ed. 2d 197 (2003).

Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 203, 119 S. Ct. 1915, 1920, 144 L. Ed. 2d 184 (1999).

Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 710-712, 116 S. Ct. 1712, 1718-1719, 135 L. Ed. 2d 1 (1996).

Johnson v. Jones, 515 U.S. 304, 310, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995).

Swint v. Chambers County Com'n, 514 U.S. 35, 42, 115 S. Ct. 1203, 1208, 131 L. Ed. 2d 60 (1995).

Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 866-869, 114 S. Ct. 1992, 1995-1996, 128 L. Ed. 2d 842 (1994).

62    **Faults of test**

Palmer v. City of Chicago, 806 F.2d 1316, 1318 (7th Cir. 1986), **citing Wright, Miller & Cooper**.

**See also**

Southern Ute Indian Tribe v. Amoco Production Co., 2 F.3d 1023, 1028 n.6 (10th Cir. 1993), **quoting Wright, Miller & Cooper.**

63    **First Circuit test**

The four-part formula was quoted in In re Continental Inv. Corp., 637 F.2d 1, 4-7 (1st Cir. 1980), where Chief Judge Coffin coined the "separability, finality, urgency, and importance" phrase. He went on to suggest that importance ordinarily is not a proper criterion for determining appealability in a particular case, and that the separability and finality requirements seem to be mere aspects of the urgency requirement. Both the policy considerations and the internal logic of the collateral order decisions "suggest that the possibility of irreparable harm resulting from a delay in appellate review is the dispositive criterion of interlocutory appealability."

In re Insurers Syndicate for Joint Underwriting of Medico-Hospital Professional Liability Ins., 864 F.2d 208, 210 (1st Cir. 1988).

63.50    **No ad hoc balancing**

SmileDirectClub, LLC v. Battle, 4 F.4th 1274, 1278 (11th Cir. 2021), **quoting Wright, Miller & Cooper**.

64    **Balancing approach**

A balancing approach was clearly articulated in Bender v. Clark, 744 F.2d 1424, 1426-1428 (10th Cir. 1984), **citing Wright, Miller & Cooper;** First Wisconsin Mortg. Trust v. First Wisconsin Corp., 571 F.2d 390, 393 (7th Cir. 1978); and Shakur v. Malcolm, 525 F.2d 1144, 1147 (2d Cir. 1975).

More recent cases are cited in § 3911.5, note 29.

**See also**

The determination whether a category of orders is eligible for collateral-order appeal jurisdiction may be expressed as balancing: "we must weigh the benefit of an immediate appeal against the cost and disruption of allowing appeals amid ongoing litigation." That is not the same as case-specific balancing.

See 🚩 Tucker v. Faith Bible Chapel International, 36 F.4th 1021, 1025 (10th Cir. 2022), described in § 3914.10.9, n.73.

**65**     **Pragmatic finality**
See § 3913.

**66**     **Reluctance to expand**
The admonition that collateral-order doctrine must not be allowed to swallow the general insistence on deferring appeal until final judgment "reflects a healthy respect for the virtues of the final judgment rule. Permitting piecemeal, prejudgment appeals * * * undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role'in managing ongoing litigation." 🚩 Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 106, 130 S. Ct. 599, 605, 175 L. Ed. 2d 458 (2009).

"The conditions [of collateral-order doctrine] are 'stringent,' * * * and unless they are kept so, the underlying doctrine will overpower the substantial finality interests 🚩 § 1291 is meant to further * * *."
🚩 Will v. Hallock, 546 U.S. 345, 126 S. Ct. 952, 957, 958, 163 L. Ed. 2d 836 (2006).

🚩 Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S. Ct. 1712, 1718, 135 L. Ed. 2d 1 (1996).

"[W]e have repeatedly stressed that the 'narrow' exception [created by collateral order doctrine] should stay that way and never be allowed to swallow the general [final decision] rule * * *. We have accordingly described the conditions for collateral order appeal as stringent * * *." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S. Ct. 1992, 1996, 128 L. Ed. 2d 842 (1994).

🚩 Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430, 105 S. Ct. 2757, 2761, 86 L. Ed. 2d 340 (1985).

**67**     **Criminal cases**
Collateral order doctrine provides a narrow exception to the normal application of the final judgment rule that is interpreted with the utmost strictness in criminal cases. 🚩 Midland Asphalt Corp. v. U.S., 489 U.S. 794, 797-799, 109 S. Ct. 1494, 1497-1498, 103 L. Ed. 2d 879 (1989).

"Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases."
🚩 Flanagan v. U.S., 465 U.S. 259, 265, 104 S. Ct. 1051, 1055, 79 L. Ed. 2d 288 (1984).

The requirements of collateral-order doctrine are interpreted with utmost strictness in criminal cases. But the government could appeal a pretrial order that prohibited taking a DNA sample from the defendant. The order raised questions important in a jurisprudential sense. 🚩 U.S. v. Mitchell, 652 F.3d 387, 393 (3d Cir. 2011).

U.S. v. Moussaoui, 483 F.3d 220, 226-233 (4th Cir. 2007).

U.S. v. Austin, 416 F.3d 1016, 1020 (9th Cir. 2005).

🚩 U.S. v. Green, 407 F.3d 434, 438 (1st Cir. 2005).

🚩 U.S. v. Brown, 218 F.3d 415, 421 (5th Cir. 2000).

**68**     **Security orders**

See § 3914.2.

69 **Appealability lost**
"It follows logically from our holding today that claims of double jeopardy such as petitioner's are no longer 'colorable' double jeopardy claims which may be appealed before final judgment. * * * Since no set of facts will support the assertion of a claim of double jeopardy like petitioner's in the future, there is no possibility that a defendant's double jeopardy rights will be violated by a new trial, and there is little need to interpose the delay of appellate review before a second trial can begin." Richardson v. U.S., 468 U.S. 317, 326 n.6, 104 S. Ct. 3081, 3086 n.6, 82 L. Ed. 2d 242 (1984).

70 **Categorical approach**
The importance of defining collateral-order appeals by categories of rulings that are always—or never—immediately appealable played an important role in Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S. Ct. 599, 605, 608, 175 L. Ed. 2d 458 (2009), **quoting Wright, Miller & Cooper**, described at note 56 above.

Counsel could not appeal an order imposing discovery sanctions on counsel alone, even though counsel also had been disqualified from further proceedings. Discovery sanctions often are inextricably intertwined with the merits of the underlying litigation. "Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 205, 119 S. Ct. 1915, 1921, 144 L. Ed. 2d 184 (1999).

The conditions for collateral-order appeal are stringent, and must be determined for the entire category to which the claim on appeal belongs. "[W]e do not focus on the exigencies presented by any individual case." United States v. Academy Mortgage Corporation, 968 F.3d 996, 1002, 1004 (9th Cir. 2020).

Robinson v. Hartzell Propeller, Inc., 454 F.3d 163, 168 (3d Cir. 2006), quoting the Digital Equipment Corp. case quoted in note 66 above.

"Appealability must be decided for classes of orders, ignoring injustices peculiar to the case at hand." U.S. v. Quintana-Aguayo, 235 F.3d 682, 685 (1st Cir. 2000).

71 **Disqualification of counsel**
See text at notes 40 to 46 above; § 3914.21.

72 **Double jeopardy**
See text at notes 35 to 36 above; § 3918.5.

73 **Immunity**
See text at notes 47 to 55 above; § 3914.10.

74 **Substantial narrowing**
SmileDirectClub, LLC v. Battle, 4 F.4th 1274, 1278 (11th Cir. 2021), **quoting Wright, Miller & Cooper**.

An illustration is provided by the lengthy opinion, and equally lengthy dissent, in U.S. v. Guerrero, 693 F.3d 990 (9th Cir. 2012). The court dismissed the defendant's appeal from an order refusing to close a competency hearing in a death-penalty murder prosecution. Judge Reinhardt dissented, arguing that collateral-order appeal should always be available in this class of cases. He urged that the class of cases could be examined by considering this case. He urged that the public interest in access thwarted by an order granting closure, and the privacy interests thwarted by an order denying closure, cannot be cured by other means. "[T]here is no remedy for the individuals whose personal tragedies and histories of abuse may be revealed in the course of a defendant's competency hearing, or even those family members or others who are objects of false and malicious accusations." 693 F.3d at 1004-1011.

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

75     **Narrow categories**

"[T]he issue of appealability under 🚩 § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted * * *." Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S. Ct. 1992, 1996, 128 L. Ed. 2d 842 (1994).

The government, without explicitly moving to intervene, moved to dismiss a qui tam action under the False Claims Act. The court established jurisdiction of the government's appeal from denial of the motion by construing it as a motion both to intervene—the government should have done that—and to dismiss. This approach avoided the need to decide whether to recognize collateral-order appeal over the refusal to dismiss. The rule that collateral-order appeal lies only as to an entire category of orders "is difficult here because the type of order appealed here is very rare." 🚩 United States v. UCB, Inc., 970 F.3d 835, 842 (7th Cir. 2020), cert. denied, 141 S. Ct. 2878, 210 L. Ed. 2d 977 (2021).

In 🚩 Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission, 896 F.3d 520, 526-530 (D.C. Cir. 2018), the court applied collateral-order doctrine to permit appeal under the Hobbs Act from the aspect of an NRC order that allowed a licensee to continue developing a uranium mining operation before, as the NRC recognized, the NRC had complied with the National Environmental Policy Act. The category was all claims "that challenge (and will challenge) NRC's legal position that it may leave a license in full effect despite the agency's failure to comply with NEPA."

Appeal was allowed from an order that the state reimburse a habeas corpus petitioner for expenses to be incurred in taking depositions requested by the petitioner from two out-of-state witnesses. The "category" is an order "requiring the expenditure of public funds to reimburse an indigent habeas petitioner for certain litigation expenses." The issue was finally decided. It was collateral to the merits. And it would be effectively unreviewable, since the petitioner as imprisoned and could not be expected to "come into funds sufficient to reimburse the State." 🚩 Copeland v. Ryan, 852 F.3d 900, 904-905 (9th Cir. 2017).

76     **Time limits apply**

In 🚩 S.E.C. v. Capital Consultants LLC, 453 F.3d 1166, 1173 (9th Cir. 2006), for additional opinion, see, 185 Fed. Appx. 705 (9th Cir. 2006), the court correctly observed: "As with all final decisions, the time for appeal of an appealable collateral order begins to run on the date the court enters the order." It went on, however, to imply that the right to appellate review is lost forever if appeal is not timely taken from the time the order is entered. That view is wrong under the cases described in note 83 below.

Appellate Rule 4(a) time periods apply to collateral-order appeals, including appeals from orders that deny official immunity. If the deadline is missed, the appellant must await entry of the next appealable order that supports review of the collateral order—usually the final judgment that terminates the action.

The appeal in this case was timely. 🚩 In re Montgomery County, 215 F.3d 367, 372 (3d Cir. 2000).

Mille Lacs Band of Chippewa Indians v. State of Minn., 48 F.3d 373, 375 (8th Cir. 1995).

🚩 U.S. v. Moats, 961 F.2d 1198, 1203 (5th Cir. 1992), **citing Wright, Miller & Cooper.**

🚩 People Who Care v. Rockford Bd. of Educ. Dist. No. 205, 921 F.2d 132, 135 (7th Cir. 1991).

🚩⚠ Kenyatta v. Moore, 744 F.2d 1179, 1186-1187 (5th Cir. 1984), **citing Wright, Miller & Cooper**.

77     **§ 1292(a) appeals**
See § 3920.

78     **Rule 58 inapplicable**

In 🗀 Berrey v. Asarco Inc., 439 F.3d 636, 641-642 (10th Cir. 2006), the court analyzed the timeliness of a collateral-order appeal without considering the time provisions of Civil Rule 58. In a footnote it observed that the district court did not enter a separate Rule 58 judgment on its order refusing to strike a counterclaim, and that the Advisory Committee Note to the 2002 Rule 58 amendments observed that appeal time should start to run on a collateral order when the order is entered, "without regard to creation of a separate document and without awaiting expiration of the 150 days provided by Rule 58(b)(2)."

Stevens v. Security Pac. Nat. Bank, 538 F.2d 1387 (9th Cir. 1976), **citing Wright, Miller & Cooper.**

**But see**

🗀 Abdulwali v. Washington Metropolitan Area Transit Authority, 315 F.3d 302, 303-304 (D.C. Cir. 2003), demonstrates the unsatisfactory interplay among Civil Rule 54, Civil Rule 58, and Appellate Rule 4(a).

79    **Suspend appeal time**

🗀 Kennedy v. City of Cleveland, 797 F.2d 297, 301, 304-305 (6th Cir. 1986).

80    **Decisions**
See text at notes 58-59 above.

81    **Rule 59(e)**
This interpretation of Rule 59(e) would have to be custom-made for purposes of regulating collateral order appeals. Ordinarily a Rule 59(e) motion can be made before entry of judgment and up to 28 days after entry of judgment. See §§ 2812, 3950. The case would be that Rule 54(a) defines "judgment" to include "any order from which an appeal lies." Rule 59(e) sets the time to move to alter or amend a judgment "no later than 28 days after the entry of judgment." An appealable collateral order thus is a judgment for Rule 59(e). The trick then comes with Appellate Rule 4(a)(1), which should be read to set the appeal time at 30 days after entry of an appealable collateral order, but not to prevent review on appeal from a later "judgment" if the collateral-order appeal is not taken.

In 🗀 Berrey v. Asarco Inc., 439 F.3d 636, 641-642 (10th Cir. 2006), the court—without citing the Southern Ute decision noted below—ruled that a "motion for reconsideration" filed within the 10 days then allowed by Rule 59(e) suspends the time for appealing a collateral order.

Southern Ute Indian Tribe v. Amoco Production Co., 2 F.3d 1023, 1028 (10th Cir. 1993).

82    **Forgay doctrine**
See § 3910.

83    **Appeal not mandatory**
Denial of a California anti-SLAPP motion to strike a counterclaim could have been appealed as a collateral order, but the failure to appeal did not bar review on appeal from the final judgment. "'We have never held that failure to appeal an interlocutory order barred raising the decided issue after entry of a final judgment.'" 🗀 Langer v. Kiser, 57 F.4th 1085, 1104-1105 (9th Cir. 2023).

Weimer v. County of Fayette, Pennsylvania, 972 F.3d 177, 184-186 (3d Cir. 2020), **quoting Wright, Miller & Cooper.**

🗀 Keshner v. Nursing Personnel Home Care, 747 F.3d 159, 163 (2d Cir. 2014), **quoting Wright, Miller & Cooper.**

Failure to take an available collateral-order appeal from an order directing Iran to appear to assert immunity of its assets from attachment by judgment creditors did not prevent review on collateral-order

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

appeal from a later order directing general discovery of all Iranian assets in the United States. Rubin v. The Islamic Republic of Iran, 637 F.3d 783, 789-792 (7th Cir. 2011).

Singleton v. Apfel, 231 F.3d 853, 856-857 (11th Cir. 2000), **citing Wright, Miller & Cooper.**

U.S. v. Michelle's Lounge, 39 F.3d 684, 692 (7th Cir. 1994), **quoting Wright, Miller & Cooper** (abrogated on a different issue by, Kaley v. U.S., 571 U.S. 320, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014)).

Jamison v. Wiley, 14 F.3d 222, 231 n.11 (4th Cir. 1994).

Taylor v. Carter, 960 F.2d 763 (8th Cir. 1992).

In re Agent Orange Product Liability Litigation MDL No. 381, 818 F.2d 179, 181 (2d Cir. 1987), **quoting Wright, Miller & Cooper**.

| 84 | **Issue mooted** |
|---|---|

**Issue mooted**

Mootness may occur even as to issues that are truly collateral. The defendant's claim for security for the costs of defense in the Cohen case itself would not present a live issue on appeal after a judgment for the plaintiff that was affirmed. As to issues that are not really collateral to the merits, mootness is an obvious prospect. The defendant who claims official immunity may prevail on the merits; the defendant who claims double jeopardy may be acquitted.

85    **Standard of review**

The obvious opportunities for differences in the standard of review occur with respect to issues that are not truly collateral to the merits. Failure to appeal pretrial denial of a motion for summary judgment based on official immunity, for example, may be followed by a trial that produces information different from the information made available on the summary judgment motion. Review after trial should be based on the sufficiency of the evidence at trial, not the sufficiency of the evidence on the summary judgment record. See § 3914.28. There also may be more abstract opportunities for differences in the standard of review.

86    **Loss of trial power**

See § 3949.

87    **87 Proceedings continue**

Judge Posner has taken the view that a central test for determining whether an order is "collateral" is whether trial court proceedings can continue without interruption while an appeal from the order remains pending. Under this test, an order directing immediate payment of interim attorney fees is collateral.

Palmer v. City of Chicago, 806 F.2d 1316, 1319-1320 (7th Cir. 1986).

U.S. v. Bastanipour, 697 F.2d 170, 173 (7th Cir. 1982).

U.S. v. Crozier, 674 F.2d 1293, 1296-1297 (9th Cir. 1982), cert. granted, judgment vacated on other grounds, 468 U.S. 1206, 104 S. Ct. 3575, 82 L. Ed. 2d 873 (1984).

88    **Reconsideration barred**

An order denying a motion to dismiss on the basis of absolute judicial immunity was properly appealed. Because the appeal was proper, the district court lacked jurisdiction to reconsider the order and grant dismissal. Venen v. Sweet, 758 F.2d 117 (3d Cir. 1985).

89    **§ 1292(a) appeals**

See § 3921.

90    **§ 1292(b) appeals**

See § 3929.

| 91 | **Risk of reversal** |
| | Flowers v. Turbine Support Division, 507 F.2d 1242, 1244 (5th Cir. 1975). |

92  **Jurisdiction not ousted**
See §§ 3914.10. 3918.5§§ 3914.10. 3918.5.

93  **Test of collateral character**
Palmer v. City of Chicago, 806 F.2d 1316, 1319-1320 (7th Cir. 1986). quoted in note 87 above.

94  **Scope of appeal**
See § 3911.2.

95  **Separability**
The role of early cases involving concepts of separability in the Cohen decision is discussed in note 7 above. The tests of separability applied under Civil Rule 54(b) are discussed in § 3914.7.

96  **No need for Rule 54(b)**
A Rule 54(b) judgment is not necessary to appeal a denial of intervention as of right, "* * * and indeed Rule 54(b) does not apply to otherwise appealable collateral orders." Valley Ranch Development Co., Ltd. v. F.D.I.C., 960 F.2d 550, 556 (5th Cir. 1992).

Crowder v. Housing Authority of City of Atlanta, 908 F.2d 843, 847 (11th Cir. 1990).

In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106, 1118 n.12 (7th Cir. 1979).

Swanson v. American Consumer Industries, Inc., 517 F.2d 555, 560-561 (7th Cir. 1975).

See § 2658.4.

97  **Rule 54(b) needed**
Collateral order appeal could not be taken from an order dismissing the action as to one of several defendants, since the order could be reviewed adequately upon appeal from a judgment disposing of all parties. Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378 n.8 (5th Cir. 1980).

Huckeby v. Frozen Food Exp., 555 F.2d 542 (5th Cir. 1977).

**See also**
The role of Rule 54(b) is discussed in § 3914.7, and at greater length in §§ 2653 to 2661.

98  **Subordinate parties**
It has been noted that Civil Rule 54(b) and collateral-order doctrine "may overlap in rare circumstances." Whatever overlap there may be, the court had jurisdiction of the appeal from the final judgment entered as to some plaintiffs under Rule 54(b), but lacked collateral-order jurisdiction over the appeal from a similar judgment for other plaintiffs that was not made final under Rule 54(b). S.E.C. v. Capital Consultants LLC, 453 F.3d 1166, 1174 n.35 (9th Cir. 2006), **quoting Wright, Miller & Cooper**.

An order that directed Pennsylvania to transport prisoners who were to testify at a civil trial not involving Pennsylvania, so as to hold them in the state prison facilities nearest the federal courthouse, was a final order collateral to the main action "[s]ince it fully resolves a dispute between the Commonwealth and the United States Marshal's Service * * *." Story v. Robinson, 689 F.2d 1176, 1177 (3d Cir. 1982).

Wiggins v. Alameda County, 717 F.2d 466, 467-468 (9th Cir. 1983).

99      **Boeing case**

444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).

100     **Final judgment**

444 U.S. at 481 n. 7, 100 S. Ct. at 751 n. 7.

101     **Unreasonable refusal**
There does not appear to be any effective remedy by way of appeal from refusal of a district court to direct entry of judgment under Rule 54(b). See § 3914.7. Resort to an extraordinary writ is theoretically possible, but not likely.

102     **§ 1292(b)**
See §§ 3929 to 3931.

103     **Discretion**
See § 3929.

104     **Lack of certification**
"[D]efendants * * * are not precluded from relying on the collateral order doctrine merely because they were unsuccessful in their attempts to have the question of absolute immunity certified under 28 U.S.C.A. § 1292(b) * * *. [I]nstitutional efficiency is a major purpose of the certification provision. * * * A central goal of the collateral order doctrine, however, is to prevent the loss of rights merely because appellate review is delayed * * *." Forsyth v. Kleindienst, 599 F.2d 1203, 1208 (3d Cir. 1979).

105     **Rely on § 1292(b)**
In Van Cauwenberghe v. Biard, 486 U.S. 517, 527-530, 108 S. Ct. 1945, 1952-1954, 100 L. Ed. 2d 517 (1988), the Court ruled that collateral order appeal cannot be taken from denial of a motion to dismiss on forum non conveniens grounds because in most cases the forum non conveniens determination will be bound up with consideration of the merits of the case. The fact that some cases will not involve this blending with the merits, and may deserve prompt appeal, did not change the collateral order ruling, since the rules of appealability must be framed for categories of cases. This conclusion was "fortified by the availability of interlocutory review pursuant to * * * § 1292(b)."

Ruiz v. Estelle, 609 F.2d 118, 119 (5th Cir. 1980), **quoting Wright, Miller & Cooper.**

106     **Denial unreasonable**
The central focus of collateral order appeal should be the likelihood of irreparable harm resulting from delayed appellate review. To the extent that attention is paid to the importance of the issues presented, appeal ordinarily should proceed under § 1292(b), which "involves a relatively simple and discrete question." "As a result, a court of appeals should hear an interlocutory appeal under [collateral order reasoning] to settle a question of controlling law only where it finds the district court's denial of certification to be unreasonable." In re Continental Inv. Corp., 637 F.2d 1, 7 (1st Cir. 1980). This approach was followed in In re San Juan Star Co., 662 F.2d 108, 112 (1st Cir. 1981). The court concluded, however, that the case before it presented issues of clear importance, involving unsettled questions of law, so that collateral order appeal was warranted even if it should be required that the appeal present important and unsettled questions of law.

107     **Camouflaged category**
See text at note 75 above.

108     **Writ procedure**

§ 3911 Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (3d ed.)

Review by extraordinary writs is discussed in §§ 3932 to 3936.3.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.