IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. ANESTHESIA PARTNERS, INC. et al.<br><br>    Defendants. | Case No.: 4:23-CV-03560-KH |

**APPENDIX TO DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S
<u>REPLY IN SUPPORT OF MOTION FOR STAY</u>**

# TABLE OF CONTENTS

Page

**CASES**

*Battie v. Davis,* 2018 WL 4773258 (N.D. Tex. Oct. 3, 2018) .......................................... USAP024

*FTC v. Cardiff*, 2021 WL 3616071 (C.D. Cal. June 29, 2021) ......................................... USAP025

**OTHER AUTHORITIES**

Order, *FTC v. Walmart Inc.*, No. 22-cv-3372 (N.D. Ill. July 20, 2023), Dkt. No. 68 ...... USAP033

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 3 of 13

Battie v. Davis, Not Reported in Fed. Supp. (2018)

2018 WL 4773258
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Oliver BATTIE, Jr., #02049453, Petitioner,
v.
Lorie DAVIS, Director TDCJ-CID, Respondent.

CIVIL NO. 3:17-CV-1191-D
|
Signed 10/03/2018

**Attorneys and Law Firms**

Oliver Battie, Jr., Gatesville, TX, pro se.

Sarah Miranda Harp, Office of the Attorney General of Texas, Austin, TX, for Respondent.

### ORDER

SIDNEY A. FITZWATER, SENIOR JUDGE

**\*1** The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. Petitioner filed objections on September 28, 2018,[*] and the undersigned district judge has made a *de novo* review of those portions of the proposed findings, conclusions, and recommendation to which objection was made. The objections are overruled, and the court adopts the findings, conclusions, and recommendation of the United States Magistrate Judge. It is therefore ordered that the petition for writ of habeas corpus under 28 U.S.C. § 2254 is denied.

[*] On September 28, 2018 petitioner also filed a notice of appeal from final judgment, purporting to appeal the August 27, 2018 findings, conclusions, and recommendation of the United States Magistrate Judge. The court is not deprived by that notice of appeal of jurisdiction to act on the magistrate judge's findings, conclusions, and recommendation because an appeal from an unappealable order does not have this effect. *See United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989) (notice of appeal from nonappealable order does not render void for lack of jurisdiction acts of trial court taken in the interval between filing of the notice and dismissal of the appeal); *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) (contrary rule would leave district court powerless to prevent intentional dilatory tactics). Accordingly, the court now proceeds to consider the portions of the proposed findings, conclusions, and recommendation to which objection was made.

Considering the record in this case and pursuant to Fed. R. App. P. 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the court denies a certificate of appealability. The court adopts and incorporates by reference the magistrate judge's findings, conclusions, and recommendation filed in this case in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

If petitioner files a notice of appeal,

   ( ) petitioner may proceed *in forma pauperis* on appeal.

   (**X**) petitioner must pay the $505.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4773258

---

End of Document                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 4 of 13

Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)

2021 WL 3616071
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

FEDERAL TRADE COMMISSION
v.
Jason CARDIFF, et al.

Case No. ED CV 18-2104-DMG (PLAx)
|
Filed 06/29/2021

**Attorneys and Law Firms**

Stacy Rene Procter, Federal Trade Commission, Los Angeles, CA, Edwin Rodriguez, Pro Hac Vice, Elizabeth J. Averill, Pro Hac Vice, Elizabeth Jones Sanger, Pro Hac Vice, James A. Prunty, Pro Hac Vice, Shira D. Modell, Pro Hac Vice, Federal Trade Commission, Washington, DC, for Federal Trade Commission.

Allan Howard Grant, Grant Law Firm, Riverside, CA, James D. White, James D. White Law Offices, Bellevue, ID, Stephen R. Cochell, Pro Hac Vice, The Cochell Law Firm PC, Houston, TX, for Jason Cardiff, Eunjung Cardiff.

Jesse James Thaler, Thaler Law, Huntington Beach, CA, for Danielle Cadiz.

**Proceedings: IN CHAMBERS—ORDER RE REMEDIES IN PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [423] AND JASON AND EUNJUNG CARDIFF'S MOTION FOR SUMMARY JUDGMENT [441]**

DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

### I.

### INTRODUCTION

*1 On October 9, 2020, the Court granted summary judgment to Plaintiff the Federal Trade Commission ("FTC") on all 16 counts of the FTC's Complaint against Defendants Jason Cardiff and Eunjung Cardiff under the FTC Act, Restore Online Shoppers' Confidence Act ("ROSCA"), Electronic Fund Transfer Act ("EFTA"), and the Telemarketing Sales Rule ("TSR"). Motion for Summary Judgment ("MSJ") Order at 27-28 [Doc. # 511.][1] The Court reserved ruling on the appropriate remedies until after the United States Supreme Court decided the consolidated appeals in *F.T.C. v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019), *cert. granted*, 2020 WL 3865251 (U.S. July 9, 2020), and *F.T.C. v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018), *cert. granted*, 2020 WL 3865250 (U.S. July 9, 2020), and thus the remedies portions of both the FTC's and the Cardiffs' MSJs remain pending. *See* FTC MSJ [Doc. # 423]; Cardiff MSJ [Doc. # 441]. Also pending is the FTC's Motion for Default Judgment against Defendants Redwood Scientific Technologies Inc. (CA); Redwood Scientific Technologies (NV); Redwood Scientific Technologies (DE); Identify, LLC; Advanced Mens Institute Prolongz LLC; Run Away Products LLC; Carols Place Limited Partnership (the "Entity Defendants"), business entities controlled by the Cardiffs. [Doc. # 422.]

[1]  All page references herein are to page numbers inserted by the CM/ECF system.

On April 22, 2021, the Supreme Court issued its decision on the consolidated appeals in *AMG Capital Management v. F.T.C.* ("*AMG*"), 141 S. Ct. 1341 (2021), holding that the FTC cannot seek equitable monetary relief such as restitution or disgorgement under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). *See AMG*, 141 S. Ct. at 1352. But the Court in *AMG* also specified that "[n]othing" in its opinion "prohibits the Commission from using its authority under § 5 and § g> 19 [of the FTC Act] to obtain restitution on behalf of consumers." *Id.* And the FTC still "may use § 13(b) to obtain injunctive relief ... when it seeks only injunctive relief." *Id.* at 1349.

In light of the *AMG* ruling, the FTC no longer seeks any monetary relief under Section 13(b). But the parties dispute whether the FTC may seek monetary relief under Section 19 of the FTC Act and what injunctive relief is still available. In accordance with the briefing schedule the Court set on May 4, 2021, the FTC filed its supplemental brief regarding remedies on May 21, 2021. [Doc. # 596.] The Cardiffs filed their response on June 8, 2021. [Doc. # 607.] Also responding to the FTC are non-parties True Pharmastrip, Inc. ("TPI") and Jacques Poujade [Doc. # 604] and Inter/Media Time Buying Corporation ("Inter/Media") [Doc. # 606]. The FTC filed its reply on June 21, 2021. [Doc. # 620.] The Court held a hearing on June 28, 2021.

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 5 of 13

**Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)**

For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** each side's MSJ with respect to remedies.

## II.

### DISCUSSION

**A. ROSCA and Sections 18 and 19 of the FTC Act**

The FTC asserts that it may seek, and the Court may award, injunctive and monetary relief for the Cardiffs' violations of ROSCA. As the Court noted in its MSJ order, Congress passed ROSCA, 15 U.S.C. §§ 8401-05, to promote consumer confidence in online commerce. MSJ Order at 26 [Doc. # 511]. Section 4 of ROSCA generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, which is defined as "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w); *see* 15 U.S.C. § 8403. A seller may only use a negative option feature if the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. 15 U.S.C. § 8403. The Court found no genuine dispute of material fact that the Cardiffs and their companies employed a negative option feature in which consumers were enrolled in a monthly autoship program that shipped the smoking cessation product TBX-FREE to them without consent. Consumers had to take an affirmative step to cancel the autoship program, and even when they took such a step, they were not always able to effectuate a cancellation. Accordingly, the Court granted summary judgment to the FTC on its cause of action for violation of ROSCA. MSJ Order at 26.

**\*2** ROSCA authorizes the FTC to enforce ROSCA and to treat violations of the statute as a rule violation under Section 18 of the FTC Act, 15 U.S.C. § 57a, which authorizes the FTC to prescribe rules defining unfair or deceptive acts or practices. 15 U.S.C. § 8404(a). When consumers are injured by violations of rules prescribed by Rule 18, the FTC may pursue recovery for those consumers in a suit under Section 19 of the FTC Act, 15 U.S.C. § 57b.

Section 19, in turn, specifies when the FTC may bring suit against individuals or entities for unfair or deceptive acts or practices and what relief the FTC may seek. The FTC may commence a civil action against any person or entity that violates a *rule* respecting unfair or deceptive acts or practices prescribed by the FTC, without first issuing a cease-and-desist letter. 15 U.S.C. § 57b(a)(1). The FTC may also commence a civil action against a person or entity committing *any* unfair or deceptive act or practice, but only after first issuing a cease-and-desist letter. Id. § 57b(a)(2). Because Congress designated a violation of ROSCA as a rule violation under the FTC Act, it may be enforced via a direct suit under the language of Section 19, without the need for a final cease-and-desist letter. Id. at §§ 8404(a) and 57b(a)(1).

Section 19 provides that a court in an enforcement action may "grant such relief as the court finds necessary to redress injury to consumers ... resulting from the rule violation." Id. § 57b(b). The available relief is broadly defined:

> Such relief may include, but shall not be limited to, *rescission or reformation of contracts, the refund of money or return of property, the payment of damages*, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

Id. (emphasis added). This language plainly authorizes the FTC to seek equitable monetary relief to redress consumer injury resulting from ROSCA violations.

The key questions now are whether the FTC adequately pled or waived its request for equitable monetary relief under Section 19 for ROSCA violations, and whether it may rely on late-disclosed evidence at a trial on damages.

**B. Availability of ROSCA Remedies**

The Cardiffs argue that remedies for ROSCA violations are unavailable because the FTC (1) failed to specifically invoke Section 19 remedies in its Complaint; (2) failed to timely disclose its damages calculations and new witnesses

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 6 of 13

**Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)**

under Federal Rule of Civil Procedure 26, thereby justifying sanctions under Rule 37; and (3) is judicially estopped from altering its position expressed in oral argument before the Ninth Circuit. Cardiff Br. at 10-22 [Doc. # 607]. The Court first determines whether the ROSCA remedies are adequately pled or judicially estopped before turning to the impact of the FTC's late disclosure of evidence.

### 1. Adequacy of Pleading

The Complaint gave notice of the facts underlying the FTC's ROSCA claim and specifies that a ROSCA claim qualifies as a rule violation under Section 18 of the FTC Act. Compl. at ¶¶ 109, 111 [Doc. # 1]. Although the Complaint does not cite the portion of Section 18 that authorizes the FTC to file an action and seek relief under Section 19, the Prayer for Relief specifically mentions Section 5 of ROSCA, 15 U.S.C. § 8404, as authority for a permanent injunction to prevent future violations of ROSCA, as well as "rescission or reformation of contacts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies." *Id.* at 51 (Prayer for Relief). Because Section 19 merely provides for methods of enforcement and the nature of relief for violations under Section 18, the FTC did not need to specifically cross-reference Section 19 to put Defendants on notice of the factual basis for the ROSCA claim and the remedy sought thereunder. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (holding that notice pleading requires a plaintiff to set forth claims for relief, not to cite specific statutes or legal theories). The Complaint therefore sufficiently ties the FTC's factual allegations and claims for relief to the ROSCA violation, and invocation of Section 18 put Defendants on notice of the methods of enforcement and nature of relief available under Section 19. Moreover, Federal Rule of Civil Procedure 54 provides that "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir. 1992).

**\*3** No pleading deficiency bars the FTC from seeking rescission of autoship and damages from the Cardiffs under Section 19 of the FTC Act.

### 2. Judicial Estoppel

The Cardiffs argue that the FTC is judicially estopped from pursuing remedies under Section 19 due to statements made by its appellate counsel Mark Hegedus before the Ninth Circuit. During the oral argument of Jason Cardiff and Intervenor VPL Medical, Inc.'s ("VPL") appeal of the preliminary injunction against VPL, a member of the panel asked Hegedus if the FTC had invoked Section 19 in the case as a "safety net." *FTC v. Cardiff*, Recording of Oral Argument, No. 20-55858, at 20:00, (9th Cir. March 2, 2021) available at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000018909 (last accessed June 25, 2021). He responded, "We have not invoked Section 19 in this, Your Honor." *Id.* at 20:10. Although the Cardiffs characterize Hegedus' statement as a "judicial admission," judicial admissions are generally conceded issues of fact, not of law. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (*en banc*) ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court.").

Hegedus' statement is more accurately analyzed under the doctrine of judicial estoppel, which prohibits a party from assuming a certain position in a legal proceeding, succeeding in maintaining that position, and then adopting a contrary position after his interests have changed. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The rule "generally prevents a party from *prevailing* in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000) (emphasis added). Courts have discretion to apply judicial estoppel and are generally guided by three factors: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) judicial acceptance of an inconsistent later position would "create the perception that either the first or the second court was misled"; and (3) the party asserting the inconsistent position would derive an "unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (citations omitted).

It is not clear that judicial estoppel applies in this context, where the FTC did not prevail in that appeal. In addition, ROSCA remedies were identified in the Complaint and, if anything, the appellate attorney's representation at oral argument was inconsistent with the Complaint. The FTC also argues that its new emphasis on Section 19 is in response to *AMG*'s change in law. The Ninth Circuit and numerous other courts permit a party to alter its theory of recovery or otherwise change its position in response to a change in law. *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984); *see also Longaberger Co. v. Kolt*, 586 F.3d 459, 470 (6th Cir. 2009), *abrogated on other grounds by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016) (collecting cases).

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 7 of 13

Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)

**\*4** Absent a stronger showing of the usual factors supporting judicial estoppel, the Court's acceptance of the FTC's current position does not "undermin[e] the integrity of the judicial process" in any way. New Hampshire, 532 U.S. 742, 755 (2001).

### 3. The FTC's Failure to Timely Disclose Evidence

There is no question that the FTC relies on a late-disclosed witness and evidence to support its ROSCA damages calculation. The Cardiffs correctly note that the FTC cites only to Section 13(b) of the FTC Act, not Sections 18 or 19, in the parties' initial Joint Rule 26 Disclosure and the FTC's Supplemental Rule 26 Disclosure served on March 13, 2020. *See* Joint Rule 26 Report at 12 [Doc. # 101]; Cochell Decl., Ex. 1 (FTC Supp. Rule 26 Disclosure) at 13 [Doc. # 607-1] (computing the monetary relief for the FTC Act violations as "the total amount consumers paid for TBX-Free, Prolongz, Eupepsia Thin, and the Rengalife program"). The FTC did not offer a separate calculation of damages for violations of ROSCA or any other statutes or rules aside from the FTC Act. Furthermore, only in May 2021, long after the close of discovery, did the FTC request and then receive Defendant Redwood Scientific's customer relationship management ("CRM") database from Redwood Scientific's third-party CRM vendor, Limelight, even though such databases also appear relevant to the FTC's Section 13(b) damages calculation. Bernat Decl. at ¶¶ 2-3. Then, on May 21, 2021, the FTC disclosed for the first time its data analyst Elizabeth Miles as a witness for the ROSCA damages calculation, relying on the CRM database provided to the FTC by Limelight. *See* Sands Decl. at ¶¶ 2-7, Att. 1 [Doc. # 596-4]; Miles Decl. at ¶¶ 1-7 [Doc. # 96-5].

Under Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 26(a) imposes a duty to disclose "a computation of *each category of damages* claimed by the disclosing party" and to "make available for inspection and copying ... the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) requires a party to supplement or correct its disclosure in a timely manner if its disclosure is incomplete. Fed. R. Civ. P. 26(e)(1)(A). The burden is on the party facing sanctions for belated disclosure to prove that its failure to comply was substantially justified or harmless. Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). Some of the factors that courts consider to determine whether a violation of a discovery deadline is justified or harmless are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Lanard Toys Ltd. v. Novelty, Inc., 375 F. App'x 705, 713 (9th Cir. 2010).

**\*5** The Court is not persuaded by the FTC's arguments that its late disclosure of the CRM database and Miles' calculations regarding ROSCA damages is substantially justified or harmless. First, the FTC asserts that the change in law with respect to Section 13(b) remedies announced in *AMG* substantially justifies their failure to provide a computation of the smaller amount of damages associated only with the ROSCA violation. FTC Reply at 17-19 [Doc. # 620]. It is true that in some situations, as a matter of fairness, "it would be unjust to allow [a party's] mistake about a previously unsettled point of law to be the *coup de grâce* to her case." Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011). But the change in law regarding remedies under Section 13(b) had no effect on the availability of ROSCA Section 19 remedies in this case.

As discussed above, the FTC pled the ROSCA theory of liability and damages in its Complaint, and it obtained summary judgment on ROSCA liability. Under similar circumstances, Ninth Circuit has held that plaintiffs were not substantially justified in failing to disclose individualized computation of damages for their state-law causes of action, even though the law was unsettled regarding the need to disclose individualized computation of damages for their central federal cause of action. Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008). The Ninth Circuit therefore affirmed the district court's exclusion of previously undisclosed individualized damages computations under Rule 37. *Id*. Analogizing to this case, the FTC was required to timely disclose computations of damages for all causes of action, including the ROSCA violation, notwithstanding that the law changed with respect to the computation of damages for equitable monetary relief under its wholly separate and distinct Section 13(b) cause of action. In other words, as the Cardiffs put it, the FTC should not have "put all its eggs in the Section 13(b) basket." Cardiff Br. at 18. The omission of

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 8 of 13

**Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)**

the computation of ROSCA damages under Rule 26(a)(iii) may have been a tactical decision, but it was not substantially justified or harmless.

Second, the FTC argues that failing to disclose the CRM database to Defendants is harmless, since they are Defendants' own sales records. FTC Reply at 17. But Rule 26(a) does not relieve a party of its duty to disclose evidence or documents underlying its computation of damages merely because that evidence is or was once in the other side's possession. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). In any event, under the terms of the 2018 TRO, the Receiver took physical possession of all documents related to the Cardiffs' businesses, and Jason Cardiff states that he was not provided a copy of the CRM spreadsheets after the Receivership was imposed. Cardiff Decl. at ¶ 3 [Doc. # 607-3]. His counsel also attests that they never received copies of the CRM records. Cochell Decl. at ¶ 2 [Doc. # 607-1]; White Decl. at ¶ 2 [Doc. # 607-2]. The FTC also fails to explain why relying on a previously undisclosed witness, who was never made available to the Cardiffs for discovery, is harmless.[2] In fact, the Cardiffs argue that additional document discovery and depositions are necessary to defend against the FTC's ROSCA damages calculation. Cardiff Br. at 14-15. Where late disclosure of damages would likely require the Court "to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date," a failure to disclose is not harmless. *Hoffman*, 541 F.3d at 1180; *see also Yeti by Molly*, 259 F.3d at 1107 (finding harm to party that would have had to depose and prepare to question late-disclosed expert witness one month before trial). Thus, the FTC's late disclosure is not harmless.[3]

---

[2] It is true that Federal Rule of Evidence 1006 permits a government witness to summarize documents, but only if the opposing party has had an opportunity to examine or copy the original documents, "at a reasonable time and place." Fed. R. Evid. 1006; *see F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993). The FTC has not provided the CRM database to the Cardiffs for examination and copying, and it has not shown that the timing of introducing summary evidence at this late juncture is reasonable.

[3] In its July 7, 2020 Order, the Court noted that "[a]t that pre-discovery stage, the FTC provided sufficient notice of the basis of its equitable monetary relief, given the 'evidence necessary to determine Defendants' gross receipts for the purpose of assessing disgorgement was in the hands of Defendants.' " July 7, 2020 Order at 6 [Doc. # 388] (quoting *United States v. RaPower-3, LLC*, 960 F.3d 1240, 1254 (10th Cir. 2020)). That finding applied *pre-discovery*. Now that one year has passed and discovery has closed without any indication that the FTC would rely on this ROSCA damages calculation, it is not harmless to require Defendants to reopen discovery and litigate this new theory of damages.

Furthermore, the Court disagrees with the FTC that *RaPower-3* stands for the proposition that Rule 26 is not applicable to the government's calculation of equitable remedies. As the Tenth Circuit noted, "the advisory committee note to the 1993 amendments to Rule 26 (addressing 26(a)(1)(C), which became 26(a)(1)(A)(iii) in the 2007 amendment restyling the Rule) says: 'A party claiming damages *or other monetary relief* must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying....' " *Id.* at 1253 (quoting Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment (emphasis added)). The court noted that Rule 26 therefore appeared to require disclosures of calculations of equitable monetary relief. *Id.*

**\*6** At the hearing, the FTC argued that the Court must also apply a five-factor test to determine whether the "drastic" Rule 37 sanction of excluding late-disclosed evidence is proper, citing to *Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997). *See id.* at 814 (holding that exclusion of expert testimony as a sanction for late disclosure of expert witnesses and damages calculations was not proper where "[l]ess drastic sanctions are available" and no prejudice ensued to the other party because the expert disclosure process had been reopened). *Wendt* relied on *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990), to set forth the five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Wendt*, 125 F.3d at 814. Subsequent Ninth Circuit cases do not always apply these factors under similar circumstances. *See, e.g., Yeti by Molly*, 259 F.3d at 1106 (noting that Rule 37(c)(1) sanctions are designed to be "harsh," and "[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 9 of 13

**Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)**

been precluded."). But even if the factors apply here, all of them except perhaps the availability of less drastic sanctions weigh in favor of excluding the late damages evidence. The public's interest in expeditious resolution of this litigation and the Court's interest in managing its docket weigh decisively in favor of excluding the late-blooming ROSCA damages evidence. The Cardiffs would be prejudiced by reopening discovery at this late date, when the only remaining issue for trial should have been the amount of damages on the existing record. The public's interest in resolving this case on the merits has already been vindicated, as the Court has ruled in the FTC's favor on all 16 counts it brought against the Cardiffs. *See id.* While a lesser sanction, such as requiring the FTC to pay for reopened discovery, is theoretically available here, the Court finds, as a practical matter, that it would not be cost effective to require the expenditure of more money and time on litigating damages in a case where any actual monetary recovery for consumers will be substantially offset by the cost of the Receivership. Thus, even the *Wendt* factors weigh in favor of granting the Rule 37 sanctions. [4]

[4]  An argument the FTC did not raise, but the Court nonetheless addresses, is whether exclusion of ROSCA damages "amount[s] to dismissal of a claim," and therefore requires the Court to consider whether the FTC acted willfully, with fault, or in bad faith. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012); *see also Yeti by Molly*, 259 F.3d at 1107 (noting that a district court must identify willfulness, fault, or bad faith before dismissing a case outright as a discovery sanction). The Court does not find that excluding evidence of ROSCA damages is equivalent to dismissing the case outright, where the FTC has already prevailed on liability and will obtain a broad permanent injunction against the Cardiffs in order to protect the public from their future unfair or deceptive practices. Regardless, as discussed above, the FTC is not blameless in failing to timely disclose its computations of damages and conducting relevant discovery within the ample period of time allotted for discovery.

For the foregoing reasons, under Rule 37, the FTC cannot rely on the CRM database or the calculations based on that data by FTC analyst Miles in any briefing or at trial. The FTC may proceed to trial on damages for ROSCA violations based only on evidence and witnesses that have been properly disclosed. Because none of the FTC's prior disclosures described its computation of damages for ROSCA violations, however, it appears that the FTC has no evidence to present at trial to support its nascent theory of damages. In the absence of any other theory of monetary relief after *AMG*, the Court concludes that the FTC cannot recover damages for consumers in this action. No issues regarding monetary relief remain for trial.

### C. Permanent Injunction

Lastly, the Cardiffs argue that the FTC cannot seek a permanent injunction against them or, at the least, that the proposed permanent injunction should be narrowed.

#### 1. Administrative Proceeding Requirement

The Cardiffs assert that Section 13(b) does not authorize a permanent injunction in this case because the FTC did not file an administrative complaint "within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction." 15 U.S.C. § 53(b)(2). But that subsection also provides "[t]hat in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." *Id.* And the Ninth Circuit has long held that Section 13(b)'s language "does not on its face condition the issuance of a permanent injunction upon the initiation of administrative proceedings." *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1110 (9th Cir. 1982).

The Supreme Court in *AMG* did not directly address this interpretation of the "permanent injunction" proviso. It merely stated, in *dicta*, that the "permanent injunction" proviso "might also be read, for example, as granting authority for the Commission to go one step beyond the provisional and ('in proper cases') *dispense with administrative proceedings to seek what the words literally say (namely, an injunction)*." *AMG*, 141 S. Ct. at 1348 (emphasis added). Indeed, although the *AMG* holding eliminated the use of Section 13(b) to obtain *monetary* relief without first initiating administrative proceedings, the Court affirmatively stated that "the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, *or when it seeks only injunctive relief*." *Id.* at 1349 (emphasis added); *see also id.* at 1357 ("Our task here is not to decide whether this substitution of § 13(b) for the administrative procedure contained in § 5 and the consumer redress available under § 19 is desirable."). In addition, after the *AMG* decision, a Ninth Circuit panel considering an FTC action for monetary and injunctive

Case 4:23-cv-03560   Document 163-1   Filed on 07/12/24 in TXSD   Page 10 of 13

Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)

relief under Section 13(b) cited *Singer* approvingly for the proposition that the FTC can obtain injunctive relief without first initiating administrative proceedings. *F.T.C. v. Hoyal & Assocs.*, No. 19-35668/35669, —— F. App'x ——, 2021 U.S. App. LEXIS 17481 at *5-6 (9th Cir. June 9, 2021). The court affirmed the permanent injunction while vacating the monetary relief in light of *AMG. Id.*

**\*7** Because *Singer*'s holding is undisturbed, the FTC may still seek a permanent injunction against the Cardiffs under Section 13(b) without first initiating administrative proceedings.

### 2. Scope of Injunction

*Singer* also established that Section 13(b) gave the district court authority to grant a permanent injunction against "violations of any provisions of law enforced by the Commission." 668 F.2d at 1113; *see* 15 U.S.C. § 53(b)(1) (authorizing the FTC to seek a temporary restraining order or preliminary injunction whenever it has reason to believe that any person "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission"). But injunctions under this section cannot be used to remedy past behavior and can only be granted where wrongdoing is ongoing or likely to recur. *F.T.C. v. Evans Prod. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985).

The Court's MSJ Order has already made the factual finding that the Cardiffs' unfair and deceptive acts relating to the sales of untested thinstrip products are likely to recur. *See* MSJ Order at 19-20. Indeed, the Cardiffs' plans to continue in the thinstrip manufacturing and distribution business are well documented, and they now argue that the permanent injunction should not bar them from engaging in the manufacture and distribution of thinstrip products to sophisticated business entities, in addition to barring the Cardiffs from direct retail sales and advertisement to consumers. They request that the Court permit them to work on the manufacturing and wholesale side of the thinstrip industry, so long as they perform proper testing of thinstrip products before distributing to retailers. Cardiff Br. at 26-27.

In response, the FTC argues that the Cardiffs' thinstrip retail business was wholly fraudulent, as evidenced by the judgment against them on 16 separate counts, and they "simply cannot be trusted" to make truthful claims about thinstrip products to any purchasers, sophisticated or not. FTC Reply at 27. The Court agrees that the Cardiffs' prior business practices and history of contempt in this litigation do not inspire much confidence in their future endeavors. But the FTC's proposed permanent injunction bans the Cardiffs from making any misrepresentations or unsubstantiated claims about any products and also requires the Cardiffs to engage in randomized, double-blind, and placebo-controlled testing by qualified researchers for any products they sell. These provisions, combined with a ban on the Cardiffs' participation in any direct-to-consumer sales of thinstrip products, appear sufficiently tailored to prevent unfair or deceptive acts or practices from recurring.

Accordingly, the Court will slightly narrow the FTC's proposed preliminary injunction such that the Cardiffs' participation in the manufacture and distribution of thinstrip products is not categorically banned—only the unfair, deceptive, and fraudulent manufacture and distribution of thinstrip products without scientific substantiation.

### D. Asset Freeze, Receivership, and Stays of Actions

Finally, the Court turns to the contentious Asset Freeze, Receivership, and Stay of Actions provisions of the 2018 Preliminary Injunction. [Doc. # 59.] In light of the lack of available monetary relief, the Court must resolve the Poujade/TPI motion, determine whether any of the Poujade/TPI funds are part of the Receivership Estate, resolve the pending motion for default judgment against defaulting entities, and then order the Receiver to commence the claims process and wind up the Receivership prior to the entry of judgment.

**\*8** Upon the entry of judgment and the permanent injunction, the Asset Freeze will be dissolved, and the Stay of Action will also be lifted, permitting movant Inter/Media to enforce its claims against Defendants.

In the interim, the Court **DENIES** the Cardiffs' request for the Receiver to pay their living expenses from the portion of Jason Cardiff's VPL salary held as part of the Receivership Estate. The language of the Court's November 20, 2020 Order assumes that the living expenses will be released from each monthly salary as it is paid by VPL (as stipulated to by the parties and the Receiver), not from the withheld portion. [Doc. # 525.] But because the Preliminary Injunction over VPL has been dissolved, any future salary Jason Cardiff receives from VPL will not be part of the Receivership Estate and can be used to pay the Cardiffs' living expenses.

Case 4:23-cv-03560 Document 163-1 Filed on 07/12/24 in TXSD Page 11 of 13

**Federal Trade Commission v. Cardiff, Not Reported in Fed. Supp. (2021)**

### III.

### CONCLUSION

In light of the foregoing, the Court **ORDERS** the following:

1. Under Rule 37(c), the FTC is barred from relying on its newly disclosed evidence and witness in support of monetary relief for the Cardiffs' ROSCA violation. Finding no other evidence or grounds for monetary relief, the Court concludes that no triable issues remain as to monetary damages. The Cardiffs' MSJ, stayed with respect to remedies, is **GRANTED in part** to the extent that the FTC cannot obtain a monetary award. [Doc. # 441.] The FTC's MSJ is **DENIED in part** as to monetary relief. [Doc. # 423.]

2. Because the FTC has authority to pursue a permanent injunction and has shown the likelihood of recurrence of violations of the FTC Act, the Court **GRANTS in part** the FTC's MSJ to the extent it seeks a permanent injunction against future enumerated unfair and deceptive acts or practices by the Cardiffs. The Court also **GRANTS in part** the Cardiffs' MSJ to the extent it seeks to narrow the permanent injunction to permit them to engage in the manufacture and distribution of thinstrip products as wholesalers, provided they comply with other provisions of the permanent injunction.

3. The parties and the Receiver shall meet and confer forthwith about what personal effects of the Cardiffs currently held as part of the Receivership Estate, such as passports, personal papers, and costume jewelry, may be released by mutual agreement without need for briefing.

4. Because the FTC and the Cardiffs have not substantively responded to Poujade/TPI's contention in their motion for release of deposited funds [Doc. # 576] that the Poujade/TPI funds held by the Receiver were never controlled by or belonged to the Cardiffs, the Court orders the FTC and the Cardiffs to file supplemental responses on the merits of that argument by **July 7, 2021**. Poujade/TPI may file a supplemental reply, if any, by **July 14, 2021**. Thereafter, the Court will determine whether the Poujade/TPI funds are part of the Receivership Estate and issue its ruling on Poujade/TPI's motion. If the Court deems an evidentiary hearing necessary to resolve the issue, such a hearing will be scheduled.

5. After the Court issues its ruling on the Poujade/TPI motion, the Receiver shall commence the final claims process and shall file its final fee application and accounting, which shall take into account the Court's ruling on the Poujade/TPI's motion and delineate to whom various assets in the Receivership Estate shall be disbursed, and in what amounts. The Receiver may opine, if it wishes, on what party or parties should be responsible for paying its final fees and costs and whether prior fees paid solely by VPL should be allocated *pro rata* to any other funds determined to be available in the Receivership Estate. The Court will set a briefing schedule for that process at the time it issues its ruling on the Poujade/TPI motion.

**\*9** 6. The Court will rule on the pending Motion for Default Judgment against the Entity Defendants and enter Judgment and the Permanent Injunction, including dissolution of the Asset Freeze and Stay of Actions, after resolving the Receiver's final accounting.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3616071

---

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>WALMART INC.,<br><br>  Defendant. | No. 22 CV 3372<br><br>Judge Manish S. Shah |

### ORDER

Defendant's motion for certification under 28 U.S.C. § 1292(b) [54] is denied.

### STATEMENT

I granted in part, denied in part Walmart's motion to dismiss the Federal Trade Commission's complaint. [52].* Walmart now asks me to certify parts of that decision for interlocutory appeal under 28 U.S.C. § 1292(b). If the decision "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation," I must alert the court of appeals and it will then decide whether to allow an appeal. 28 U.S.C. § 1292(b); *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000).

Walmart has identified contestable controlling legal questions. Whether Congress unconstitutionally granted executive power to the Federal Trade Commission when it allowed the FTC to bring certain lawsuits is one. Another is the issue of what remedy follows from a separation-of-powers violation of the sort alleged here (while *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), remains binding precedent). Whether Section 13(b)'s requirement that a defendant "is about to violate" the law is materially different than the traditional common-law test for injunctive relief is contestable only insofar as one court said "is about to violate" requires a defendant "to be poised" to violate the law, something more imminent than the "likely to recur" standard. *See FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 159, 161 (3d Cir. 2019). I'm not convinced that that's enough to make my interpretation of Section 13(b) contestable or controlling, especially here where the complaint alleged that Walmart was "about to violate" the law, was actively processing money transfers, and had inadequate fraud-prevention efforts as recently as 2019. *See* [52] at 49–50 &

---

* Bracketed numbers refer to entries on the district court docket.

n.35. But even if it were, an appeal is not likely to materially advance the litigation, for reasons discussed below. Whether "unfair" under Section 5 requires more than proof that a practice causes substantial injury to consumers that was not reasonably avoidable by consumers and not outweighed by the benefits to consumers or competition is a controlling, contestable legal question. Legal questions are controlling if the answers are "quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enterprise Corp. v. Tushie–Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). And these answers would affect the course of this litigation, by limiting if not outright jettisoning the FTC's Section 5 claim.

But not all controlling questions need immediate answers, and interlocutory appeal is only appropriate if the appeal may materially advance the resolution of the case. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). The FTC has filed an amended complaint and is trying again to state a distinct claim under the Telemarketing Sales Rule. If I dismiss the TSR claims again, it will likely be with prejudice. Then the Section 5 issues will necessarily be the whole ball game. And if I don't dismiss the amended TSR claims, then Walmart likely will have arguments to take that up to the court of appeals too. The parties could petition for interlocutory review now, and if accepted, brief the merits while also briefing the second motion to dismiss here in the district court. But it would be more orderly to wait. Whatever happens to the TSR claims, the briefing on the second motion to dismiss might lead to a clearer analysis and record for appellate review on both the TSR and Section 5 claims. Until then, the risk of piecemeal appeals and duplicative effort is too great to certify my order. After I resolve the second motion to dismiss, then the benefits of an immediate interlocutory appeal might be apparent. For now, though, the parties should finish the next round of briefing.

ENTER:

                                                         Manish S. Shah
                                                         United States District Judge

Date: July 20, 2023