# EXHIBIT A

to FTC's Notice of Motion to Dismiss Appeal Filed in Fifth Circuit

# No. 24-20270

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FEDERAL TRADE COMMISSION,

*Plaintiff – Appellee,*

v.

U.S. ANESTHESIA PARTNERS, INCORPORATED,

*Defendant – Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:23-CV-03560
Hon. Kenneth M. Hoyt

## MOTION OF THE FEDERAL TRADE COMMISSION
## TO DISMISS INTERLOCUTORY APPEAL
## FOR LACK OF APPELLATE JURISDICTION

HENRY LIU
    *Director, Bureau of Competition*

BRADLEY S. ALBERT
    *Acting Assistant Director*

DANIEL W. BUTRYMOWICZ
TIMOTHY KAMAL-GRAYSON
DYLAN HERTS
PATRICK KENNEDY
    *Attorneys*
FEDERAL TRADE COMMISSION
Washington, DC 20580

ANISHA S. DASGUPTA
    *General Counsel*

MATTHEW M. HOFFMAN
IMAD D. ABYAD
    *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-3579
iabyad@ftc.gov

## CERTIFICATE OF INTERESTED PERSONS

A Certificate of Interested Persons is not required, as appellee is a government agency. 5th Cir. R. 28.2.1.

# TABLE OF CONTENTS

Certificate of Interested Persons ....................................................i

Table of Authorities ................................................................iv

Introduction ........................................................................1

Background ..........................................................................3

A.  The FTC's Enforcement Authority ................................................3

B.  The FTC's Allegations .........................................................5

C.  USAP's Motion to Dismiss and the District Court's Rulings ......................7

Legal Standards .....................................................................9

Argument ...........................................................................11

I.   The District Court Ruling That the FTC Can Bring This Action Without First Initiating Administrative Proceedings Is Not Collaterally Reviewable. .................12

   A.  The Ruling Is Effectively Reviewable on Appeal from Final Judgment ..........12

   B.  Whether Section 13(b) Authorizes a Standalone Court Action for a Permanent Injunction Is Not a "Serious and Unsettled" Question of Law. ..............16

II.  The District Court Ruling on USAP's Constitutional Argument Is Not Collaterally Reviewable. .............18

   A.  The Constitutional Ruling Is Effectively Reviewable on Appeal from Final Judgment. ..........18

   B.  The Constitutional Ruling Does Not Raise Serious and Unsettled Questions of Law. ..........23

Conclusion .........................................................................26

Certificate of Service

Certificate of Compliance

Certificate of Conference

Exhibit A

# TABLE OF AUTHORITIES

CASES PAGE

*AMG Cap. Mgmt., LLC v. FTC,*
 593 U.S. 67 (2021) ........................................................................... 5, 17

*Axon Enter., Inc. v. FTC,*
 598 U.S. 175 (2023) ...................................................................... 21, 22

*Cohen v. Beneficial Indus. Loan Corp.,*
 337 U.S. 541 (1949) ......................................................................... 9, 10

*Collins v. Yellen,*
 594 U.S. 220 (2021) ...................................................................... 20, 23

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer
Fin. Prot. Bureau,* 51 F.4th 616 (5th Cir. 2022) ........................... 20, 21

*Consumers' Research v. Consumer Prod. Safety Comm'n,*
 91 F.4th 342 (5th Cir. 2024) ................................................ 8, 23, 24, 25

*Digital Equip. Corp. v. Desktop Direct, Inc.,*
 511 U.S. 863 (1994) ........................................................... 11, 12, 13, 14

*Flanagan v. United States,*
 465 U.S. 259 (1984) .............................................................................. 19

*FTC v. Am. Nat'l Cellular, Inc.,*
 810 F.2d 1511 (9th Cir. 1987) .............................................................. 26

*FTC v. Cement Inst.,*
 333 U.S. 683 (1948) ................................................................................ 4

*FTC v. H. N. Singer, Inc.,*
 668 F.2d 1107 (9th Cir. 1982) .............................................................. 18

**CASES (CONT'D)** **PAGE**

*FTC v. Kochava Inc.,*
    671 F.Supp.3d 1161 (D. Idaho 2023) ................................................... 26

*FTC v. Syngenta Crop Protection AG,*
    No. 22-828, 2024 WL 149552 (M.D.N.C. Jan. 12, 2024) ................... 26

*FTC v. U.S. Oil & Gas Corp.,*
    748 F.2d 1431 (11th Cir. 1984) .......................................................... 18

*FTC v. Walmart Inc.,*
    664 F.Supp.3d 808 (N.D. Ill. 2023) .................................................... 26

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,*
    485 U.S. 271 (1988) ............................................................................ 11

*Henry v. Lake Charles Am. Press LLC,*
    566 F.3d 164 (5th Cir. 2009) .............................................................. 14

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ....................................................................... 3, 23

*Illumina, Inc. v. FTC,*
    88 F.4th 1036 (5th Cir. 2023) ................................................ 3, 8, 23, 24

*In re Deepwater Horizon,*
    793 F.3d 479 (5th Cir. 2015) ......................................................... 10, 16

*Lauro Lines S.R.L. v. Chasser,*
    490 U.S. 495 (1989) ........................................................ 10, 13, 14, 15

*Leonard v. Martin,*
    38 F.4th 481 (5th Cir. 2022) .................................................. 9, 10, 12, 16

## CASES (CONT'D)                  PAGE

*Matter of Greene Cnty. Hosp.*,
  835 F.2d 589 (5th Cir. 1988)................................................................ 15

*McClanahan v. Wilson*,
  852 Fed. App'x 145 (5th Cir. 2021)..................................................... 15

*Midland Asphalt Corp. v. United States*,
  489 U.S. 794 (1989)..................................................................... 14, 19

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)............................................................................ 11

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982)..................................................................... 10, 16

*Poirrier v. Nicklos Drilling Co.*,
  648 F.2d 1063 (5th Cir. 1981)............................................................ 16

*Richardson-Merrell Inc. v. Koller*,
  472 U.S. 424 (1985)............................................................................ 13

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020)............................................................................ 23

*United States v. JS & A Grp., Inc.*,
  716 F.2d 451 (7th Cir. 1983)................................................... 8, 17, 18

*United States v. Valencia*,
  940 F.3d 181 (5th Cir. 2019)................................................. 19, 20, 21

*United States v. Wampler*,
  624 F.3d 1330 (10th Cir. 2010).......................................................... 26

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988).......................................................................... 16

**CASES (CONT'D)**                                                   **PAGE**

*Will v. Hallock*,
    546 U.S. 345 (2006) ................................................................. 10, 11, 13

**STATUTES, RULES, & REGULATIONS**                   **PAGE**

15 U.S.C. § 1 ................................................................................. 4

    § 2 ......................................................................................... 4

    § 18 ....................................................................................... 4

    § 21(a) .................................................................................. 4

    § 21(b) .................................................................................. 4

    § 21(c) .................................................................................. 4

    § 41 ....................................................................................... 3

    § 45(a) .................................................................................. 26

    § 45(a)(2) ............................................................................. 3

    § 45(b) .................................................................................. 4

    § 45(c) .................................................................................. 4

    § 53(b) ................................................................ 1, 5, 14, 17, 26

28 U.S.C. § 1291 ................................................................... 1, 9

    § 1292(b) ............................................................................. 16

# INTRODUCTION

The Federal Trade Commission moves to dismiss this appeal for want of appellate jurisdiction. Appellant, U.S. Anesthesia Partners, Inc. (USAP), seeks to appeal an interlocutory decision of the district court denying its motion to dismiss the FTC's complaint against it. Because neither of the rulings that USAP challenges falls within the narrow scope of the collateral order doctrine, this Court lacks jurisdiction under 28 U.S.C. § 1291, and the appeal must be dismissed.

The FTC has sued USAP for injunctive relief under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), alleging that USAP violated the antitrust laws by acquiring at least fifteen competitors since 2012 and executing anticompetitive agreements with others. USAP moved to dismiss, arguing that Section 13(b) does not permit the FTC to seek a permanent injunction in court unless it first initiates an administrative proceeding to adjudicate the same claims. In a footnote, USAP also joined a co-defendant's argument that Section 13(b) is unconstitutional because the FTC Commissioners (who authorized the filing of suit) are not removable at will by the President. The district court rejected both arguments and denied USAP's motion to

1

dismiss. USAP now seeks to raise the same arguments before this Court via an interlocutory appeal.

Neither of the challenged rulings meets the strict standards for application of the collateral order doctrine. That doctrine applies to a small class of rulings that (1) conclusively determine a disputed question, (2) resolve an important issue completely separate from the merits, and (3) are effectively unreviewable on appeal from final judgment. To meet these requirements, the ruling under review must present a serious and unsettled question of law, and involve an important right that would be irreparably lost if review had to await final judgment.

The issues that USAP raises are not effectively unreviewable on appeal from a final judgment. USAP cannot show that it will suffer any cognizable harm if its arguments are not reviewed immediately. Furthermore, neither of USAP's claims on appeal presents a serious and unsettled question of law. To the contrary, USAP's arguments have been soundly rejected by every court that has confronted them, including the Supreme Court and this Court. Because the collateral order doctrine does not apply, USAP's appeal must be dismissed.

2

## BACKGROUND

### A.    The FTC's Enforcement Authority

The FTC is a bipartisan agency charged with enforcing the antitrust laws, among other responsibilities. It consists of five Commissioners appointed by the President and confirmed by the Senate, who serve staggered terms of seven years. 15 U.S.C. § 41. No more than three Commissioners may be members of the same party. *Id.* Commissioners may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." The Supreme Court held that this for-cause removal restriction is constitutional in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and this Court recently recognized that *Humphrey's Executor* remains binding on the lower courts, notwithstanding the fact that Congress has granted the FTC additional powers since 1935. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046-47 (5th Cir. 2023).

As relevant here, Congress "empowered and directed" the FTC to "prevent" the use of "unfair methods of competition." 15 U.S.C. § 45(a)(2). Unfair methods of competition include, but are not limited to, any conduct that violates the Sherman Act, including agreements in restraints of trade and attempts or conspiracies to monopolize a market.

3

*FTC v. Cement Inst.*, 333 U.S. 683, 694 (1948); *see* 15 U.S.C. §§ 1, 2.

Congress also directed the FTC to enforce the Clayton Act, which

prohibits acquisitions the effect of which "may be substantially to lessen

competition, or to tend to create a monopoly." 15 U.S.C. § 18; *see also id.*

§ 21(a).

When Congress initially established the FTC in 1914, it directed

the Commission to carry out its enforcement responsibilities through

administrative adjudication. Specifically, Section 5 of the FTC Act

authorizes the FTC to initiate an administrative proceeding whenever it

has reason to believe that a person or company has been or is using an

unfair method of competition. 15 U.S.C. § 45(b); *see also id.* § 21(b)

(analogous Clayton Act procedure). Following a hearing, if the claims

are proven, the Commission will issue an appropriate cease and desist

order, which is then reviewable in the federal courts of appeals. *Id.*

§§ 45(b), (c); 21(b), (c).

In 1973, Congress concluded that the FTC required additional

enforcement powers and enacted Section 13(b) of the FTC Act, which

authorizes the Commission to sue in federal district court for injunctive

relief whenever it has reason to believe a defendant "is violating, or is

about to violate, any provision of law enforced by the [FTC]." 15 U.S.C.
§ 53(b). Section 13(b) authorizes two kinds of injunctive relief actions.
The bulk of the statute concerns actions for a preliminary injunction
pending an administrative determination (*e.g.*, to block a corporate
merger while the Commission considers its legality). But a separate
proviso states that the Commission also "may seek, and after proper
proof, the court may issue, a permanent injunction." *Id*. As the Supreme
Court and every other court to consider the issue has recognized, this
proviso authorizes the Commission to "dispense with administrative
proceedings" and seek a standalone injunction in appropriate cases.
*AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 76-77 (2021); *see also id.* at
78 ("[T]he Commission may use § 13(b) to obtain injunctive relief while
administrative proceedings are foreseen or in progress, *or* when it seeks
only injunctive relief.") (emphasis added).

## B. The FTC's Allegations

The FTC brought this action under Section 13(b) against USAP
and its private equity sponsors (collectively referred to as "Welsh
Carson"), alleging an anticompetitive scheme to consolidate the Texas
hospital anesthesia market and drive up the price of anesthesia services

for patients in Texas. *Cmplt.* ¶1. Welsh Carson founded USAP in 2012. USAP then began a "roll-up" strategy by acquiring nearly every large anesthesia practice in Texas, beginning in Houston and then expanding to Dallas, San Antonio, Austin, Amarillo, and Tyler. To date, USAP has acquired at least 15 anesthesia practice groups with over 1,000 doctors and 750 nurses. *Id.* ¶¶3-4.

The FTC alleges that USAP enhanced the anticompetitive impact of its roll-up strategy by entering or maintaining price-setting arrangements with other, independent anesthesia groups with whom USAP shared key hospitals in Houston and Dallas. *Cmplt.* ¶6. Under these arrangements, USAP charged its own, higher prices for services that in fact were provided by those independent groups, and shared the resulting extra revenue with each independent group. *Id.* In addition, the FTC alleges that USAP entered into a market-allocation agreement with another large anesthesia services provider, thereby sidelining a significant USAP rival. *Id.* ¶7.

According to the Complaint, as a result of USAP's multi-pronged anticompetitive conduct, USAP is now the dominant provider of hospital anesthesia services in Texas as a whole, and in many of the

state's major metropolitan areas (controlling nearly 70% of the market in Houston and Dallas, for example, and over 52% in Austin). *Id*. ¶¶8, 162, 261. As of 2021, USAP has outsized its second-largest rival group by four times in Houston; six times in Dallas; and nearly seven times in Texas as a whole. *Id*. ¶8. Moreover, USAP's insurance reimbursement rates are double the median rate of other anesthesia providers in Texas. *Id*. In other words, USAP has been able to extract monopoly profits while simultaneously growing its monopoly power. *Id*. ¶9.

## C. USAP's Motion to Dismiss and the District Court's Rulings

USAP and Welsh Carson both moved to dismiss the complaint pursuant to Rule 12(b)(6). ECF 97, 100. As relevant to this interlocutory appeal, USAP argued that Section 13(b) of the FTC Act does not authorize the agency to sue for a permanent injunction without first initiating an administrative proceeding. ECF 97 at 12-18. In a footnote, USAP "join[ed] and incorporate[d] by reference" Welsh Carson's argument that by enacting Section 13(b), Congress "unconstitutionally vested executive law-enforcement power in an agency whose members are not removable at will by the President." *Id*. at 16 n.7.

7

The district court rejected both arguments.[1] The court noted that USAP's claim of a required parallel administrative proceeding is precluded by "[t]he statutory language of [S]ection 13(b)," which "limits the availability of preliminary injunctive relief to situations 'pending issuance of a complaint by the Commission'," but contains "[n]o similar language … relating to permanent injunctive relief." Op. 16 (quoting *United States v. JS & A Grp., Inc.*, 716 F.2d 451, 456 (7th Cir. 1983)). The court further noted that its reading of Section 13(b) was consistent with the Supreme Court's analysis in *AMG*. Op. 17.

The district court also rejected the constitutional argument that USAP had borrowed "with no elaboration" from Welsh Carson's motion. Op. 21 n.5. The court held that the argument is foreclosed by *Humphrey's Executor* and decisions of this Court, including *Illumina*, 88 F.4th at 1047, and *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342 (5th Cir. 2024). Op. 21.

USAP has appealed these interlocutory rulings, asserting that this Court has appellate jurisdiction under the collateral order doctrine.

---

[1] The district court granted Welsh Carson's motion to dismiss on other grounds not relevant to this appeal. Op. 9-16.

8

The notice of appeal frames the issues as (1) "whether the [FTC] has statutory authority to file this federal court action for permanent injunctive relief without first initiating administrative proceedings," and (2) "if so, whether the exercise of that quintessentially executive power is constitutional given that the FTC is an independent agency whose Commissioners cannot be removed at will by the President." ECF 153 at 1 (internal quotation marks and citations omitted).

## LEGAL STANDARDS

Under 28 U.S.C. § 1291—the only basis for appellate jurisdiction USAP asserts here—this Court has jurisdiction over appeals from "final decisions" of the district courts. *See, e.g.*, *Leonard v. Martin*, 38 F.4th 481, 485 (5th Cir. 2022). In general, a "final decision" is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* (cleaned up). Nonetheless, there is a "small class" of rulings that "finally determine claims of right separable from, and collateral to, rights asserted in the action" that are deemed final decisions. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Although not disposing of the litigation, these collateral orders are immediately appealable because they are "too important to be

denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.*; *see also Will v. Hallock*, 546 U.S. 345, 349-51 (2006).

To qualify for appeal under the collateral order doctrine, the district court's ruling "must" (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits"; and (3) "be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349; *accord Leonard*, 38 F.4th at 486. Additionally, "a collateral appeal of an interlocutory order must present a 'serious and unsettled question'." *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (quoting *Cohen*, 337 U.S. at 547); *accord In re Deepwater Horizon*, 793 F.3d 479, 490 (5th Cir. 2015). This requirement, which goes to the importance of the issue, "has sometimes been characterized as a discrete fourth requirement and other times been wrapped up in an analysis of both the second and third requirements." *Deepwater Horizon*, 793 F.3d at 484; *see also Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 502 (1989) (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of [the] collateral order doctrine.").

10

These conditions for collateral review are "stringent." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). An order that "fails to satisfy any one of these requirements … is not appealable under the collateral-order exception to § 1291." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988). Otherwise, the collateral order exception will "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip.*, 511 U.S. at 868. Accordingly, "the class of collaterally appealable orders must remain 'narrow and selective in its membership'." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (quoting *Will*, 546 U.S. at 350).

## ARGUMENT

USAP's interlocutory appeal should be dismissed because the district court's order denying USAP's motion to dismiss does not end the case, and neither of the two district court rulings that USAP challenges is a "final decision" under the collateral order doctrine.

## I. THE DISTRICT COURT RULING THAT THE FTC CAN BRING THIS ACTION WITHOUT FIRST INITIATING ADMINISTRATIVE PROCEEDINGS IS NOT COLLATERALLY REVIEWABLE.

The first district court ruling that USAP challenges—the holding that the FTC can seek a permanent injunction under Section 13(b) without first initiating administrative proceedings—is not a final decision under the collateral order doctrine because it can be effectively reviewed on appeal from a final judgment and does not involve a serious and unsettled question of law.

### A. The Ruling Is Effectively Reviewable on Appeal from Final Judgment.

USAP's argument that the FTC cannot sue under Section 13(b) without first initiating an administrative action is not effectively unreviewable on appeal from a final judgment, and USAP will not lose any important rights if the appeal does not proceed now. Even if USAP could show it is burdened by being required to litigate only in a federal forum rather than in a federal forum *and* an administrative forum, "[a]n order is not 'effectively unreviewable' just because it 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment'." *Leonard*, 38 F.4th at 486 (quoting *Digital Equip.*, 511 U.S. at 872). Rather, the "decisive

12

consideration is whether delaying review until the entry of final

judgment 'would imperil a substantial public interest' or 'some

particular value of a high order'." *Id.* (quoting *Will*, 546 U.S. at 352-53).

This is the case only "where the order at issue involves an asserted

right the legal and practical value of which would be destroyed if it were

not vindicated before trial." *Id.* (internal quotation marks and citations

omitted). Courts "must make this determination on a categorical basis,

looking only at whether the class of claims, taken as a whole, can be

vindicated by other means than immediate appeal." *Id.* (internal

quotation marks and citations omitted).

   The fact that the appellant may incur additional legal costs—even

substantial ones—if review proceeds in the ordinary course after final

judgment is not enough to justify interlocutory review. The Supreme

Court has "declined to find the costs associated with unnecessary

litigation to be enough to warrant allowing the immediate appeal of a

pretrial order." *Lauro Lines*, 490 U.S. at 499; *see also Richardson-*

*Merrell Inc. v. Koller*, 472 U.S. 424, 436 (1985) ("[T]he possibility that a

ruling may be erroneous and may impose additional litigation expense

13

is not sufficient to set aside the finality requirement imposed by Congress" in § 1291).

The quintessential example of an issue that is effectively unreviewable and hence appealable under the collateral order doctrine is where the appellant claims immunity from suit—*i.e.*, the right not to be tried at all. *See, e.g.*, *Lauro*, 490 U.S. at 499.[2] But USAP is not claiming an immunity from suit. It does not argue that it should not have to answer the FTC charges at all. Rather, USAP's argument is that the FTC lacks authority to sue for a permanent injunction in district court under Section 13(b) unless the FTC also files a parallel administrative proceeding—raising the same claims and seeking the same relief.[3]

USAP's argument boils down to a claim that the FTC failed to comply with a purported procedural requirement to issue an

---

[2] The Supreme Court has cautioned that "claims of a 'right not to be tried'" should be viewed "with skepticism, if not a jaundiced eye." *Digital Equip.*, 511 U.S. at 873. "A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 178 (5th Cir. 2009) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989)).

[3] Under Section 13(b), initiation of an administrative case neither precludes nor suspends ongoing judicial proceedings. 15 U.S.C. § 53(b).

administrative complaint before going to court. USAP does not contest that the court proceedings could then still go on all the way to final judgment. That is not an issue that imperils a substantial public interest or some other order of a high value. It is a garden-variety claim of procedural error that is properly addressed on appeal from a final judgment. Indeed, even if the issuance of an administrative complaint were viewed as a jurisdictional requirement (which it is not), that would not make the order immediately appealable. Questions of subject matter jurisdiction are "far from unreviewable on appeal from a final judgment." *Matter of Greene Cnty. Hosp.*, 835 F.2d 589, 596 (5th Cir. 1988); *accord McClanahan v. Wilson*, 852 Fed. App'x 145 (5th Cir. 2021).

Insofar as USAP contends that adjudication of the FTC charges should take place administratively *instead of* in district court—an argument that cannot be squared with Section 13(b)'s text—the order is still not effectively unreviewable. A claimed entitlement not to be sued in a particular court is "different in kind" than "a right not to be sued at all." *Lauro Lines*, 490 U.S. at 501. Thus, courts do not permit immediate appeal from orders denying motions to enforce a contractual forum

15

selection clause, *id.* at 500, or denying motions to dismiss on *forum non conveniens* grounds, *Van Cauwenberghe v. Biard*, 486 U.S. 517, 527 (1988); *see also Leonard*, 38 F.4th at 487; *Deepwater Horizon*, 793 F.3d at 485. Likewise, an "order denying remand of a case removed to federal court is not a final order within the meaning of 28 U.S.C. § 1291" and is not collaterally reviewable. *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1064-65 (5th Cir. 1981) (denial of motion to remand to state court "cannot be appealed unless certified" under 28 U.S.C. § 1292(b)). Similarly here, insofar as USAP is arguing that the FTC's claims must be adjudicated in an administrative forum rather than a court, that is not an issue that is effectively unreviewable on appeal from a final judgment.

### B. Whether Section 13(b) Authorizes a Standalone Court Action for a Permanent Injunction Is Not a "Serious and Unsettled" Question of Law.

The district court's ruling that the FTC can sue for a permanent injunction under Section 13(b) without first initiating an administrative action is also collaterally unreviewable because it presents no "serious and unsettled question." *Nixon*, 457 U.S. at 742; *Deepwater Horizon*, 793 F.3d at 490. To begin with, the Supreme Court recognized in *AMG*

16

that the language of Section 13(b) reasonably can be read as allowing the Commission to "dispense with administrative proceedings." 593 U.S. at 76-77. The Court observed that "the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, *or* when [the Commission] seeks only injunctive relief." *Id.* at 78 (emphasis added). That is, the Court recognized that the FTC may seek permanent injunctive relief in court even where administrative proceedings are not "foreseen or in progress."

Every court of appeals to have considered the issue has likewise concluded that the plain text of Section 13(b)'s "permanent injunction" proviso allows the FTC to sue in court without also filing a duplicative administrative case. As the Seventh Circuit has explained, "[t]he statutory language of section 13(b) limits the availability of preliminary injunctive relief to situations 'pending issuance of a complaint by the Commission'," but "[n]o similar language is found in the second proviso relating to permanent injunctive relief." *JS & A Grp.,* 716 F.2d at 456 (quoting 15 U.S.C. § 53(b)). "Had Congress intended the initiation or not of an administrative cease and desist proceeding to affect the ability of the Commission to seek permanent injunctive relief, it undoubtedly

17

would have included language similar to that found in the provision governing preliminary injunctive relief." *Id*. Other courts of appeals have reached the same conclusion. *See, e.g.*, *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434-35 (11th Cir. 1984); *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1110-11 (9th Cir. 1982). And no court has reached the opposite conclusion.

## II. THE DISTRICT COURT RULING ON USAP'S CONSTITUTIONAL ARGUMENT IS NOT COLLATERALLY REVIEWABLE.

USAP's other claim on interlocutory appeal—that the FTC's exercise of executive power violates Article II of the Constitution because the FTC "is an independent agency whose Commissioners cannot be removed at will by the President," ECF 153 at 1—is collaterally unreviewable for the same reasons. The issue is not effectively unreviewable on appeal from a final judgment and does not present a serious and unsettled question.

### A. The Constitutional Ruling Is Effectively Reviewable on Appeal from Final Judgment.

USAP's argument that Section 13(b) is unconstitutional because the FTC is prohibited from exercising executive power (*i.e.*, filing suit under Section 13(b)) is not effectively unreviewable on appeal from a final judgment. Constitutional challenges like this are commonplace,

18

but unless they fit into the narrow class of collaterally reviewable claims (*e.g.*, claims of immunity from trial), they must adhere to the rule of finality in appeals. As the Supreme Court has emphasized, not "every violation of [constitutional] protections" amounts to "a defect so fundamental" that it warrants collateral review. *Midland Asphalt*, 489 U.S. at 802. "There is a crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges." *Id.* at 801 (internal quotation marks and citations omitted); *see also Flanagan v. United States*, 465 U.S. 259, 259-60 (1984) (despite Sixth Amendment rights at risk, order disqualifying counsel in criminal case not collaterally reviewable). Here, even if the FTC's action were deemed unconstitutional, USAP will suffer no cognizable and irreparable harm from denial of an immediate appeal, for the reasons discussed above.

Insofar as USAP is arguing that the FTC Commissioners lack any enforcement authority because they are not removable at will, that claim likewise is effectively reviewable on appeal from a final judgment. This Court addressed a similar issue in *United States v. Valencia*, 940 F.3d 181 (5th Cir. 2019), where a criminal defendant sought to appeal the denial of his motion to dismiss his indictment on the grounds that

19

the Acting Attorney General was unconstitutionally appointed. The Court held that the order was not effectively unreviewable and the defendant would "have the opportunity to raise these same issues when appealing any adverse final judgment per § 1291." *Id.* at 183.

USAP's argument for collateral review is even weaker than the claim in *Valencia* because, here, USAP does not and cannot argue that any of the FTC Commissioners were improperly appointed. Unlike an improper appointment, an improper removal restriction voids agency action only when the challenging party shows that the removal restriction actually caused harm. *Collins v. Yellen*, 594 U.S. 220, 257-260 (2021); *see also Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 631 (5th Cir. 2022) ("[T]he challenging party must demonstrate not only that the removal restriction violates the Constitution but also that 'the unconstitutional removal provision inflicted harm'.") (quoting *Collins*, 594 U.S. at 260), *rev'd on other grounds*, 144 S. Ct. 1474 (2024).[4]

---

[4] To secure relief from allegedly improper removal restrictions, the challenging party must demonstrate "three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove

If claims of unconstitutional appointments of federal enforcement officials are collaterally unreviewable, *see Valencia*, 940 F.3d at 183, then challenges like USAP's to the removal protections for such officials are certainly collaterally unreviewable. Whereas challenges to the appointment of officials typically raise a purely legal question that courts could easily address on an interlocutory appeal, challenges to officials' removal restrictions are inextricably connected to the underlying facts. Specifically, proving harm from an allegedly improper removal protection implicates, at a minimum, the factual circumstances of an attempted presidential removal, *see supra* note 4, which renders the issue altogether inappropriate for collateral review.

The Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), does not alter the collateral review analysis here. *See* ECF 153 (Notice of Appeal), at 1 (USAP invoking *Axon*). In *Axon*, the respondent in an FTC administrative proceeding brought a freestanding declaratory judgment action in federal district court against the FTC,

---

the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs.*, 51 F.4th at 632. USAP never even alleged below any of these requisites for proving harm.

21

asserting facial constitutional challenges to the FTC's administrative process. *Axon*, 598 U.S. at 183. The Court noted the "extraordinary" nature of Axon's claims, *id*. at 180, describing them as "far-reaching," *id*. at 185, attacking a "fundamental aspect of the Commission's structure," *id*. at 182, and going "to the core of the FTC's existence," *id*. at 189. The Court held that claims of that nature—"fundamental, even existential" challenges to the very structure of administrative agencies—were not precluded by the judicial review scheme in the FTC Act, which would have channeled those claims through the agency to the courts of appeals, on review of a cease and desist order. *Id*. at 180.

But the collateral order doctrine was not at issue in *Axon* and indeed the Court specifically cautioned: "Nothing we say today portends newfound enthusiasm for interlocutory review." *Id*. at 192. *Axon* thus did not purport to alter the longstanding rules limiting the application of the collateral order doctrine in appeals from interlocutory orders of district courts. Moreover, unlike Axon, USAP is not asserting a right not to be tried in an administrative proceeding; to the contrary, USAP's argument (discussed above) is that the Commission should be *required* to issue an administrative complaint. USAP also does not challenge the

22

district court's jurisdiction to try the case. Nor is USAP challenging the Commission's existence—merely its authority to proceed under a particular statute. *Axon*, therefore, does not aid USAP's cause.

### B. The Constitutional Ruling Does Not Raise Serious and Unsettled Questions of Law.

USAP's argument that Section 13(b) is unconstitutional because the FTC Commissioners are not removable at will also does not present a serious and unsettled question of law. First, as the district court has noted, Op. 21, both the Supreme Court and this Court have upheld the constitutionality of the FTC Commissioners' removal restrictions. The Supreme Court first upheld those restrictions in *Humphrey's Executor*, 295 U.S. at 625, and has since expressly declined to overrule that decision on many occasions, most recently in *Collins*, 594 U.S. at 255-56 & n.21, and *Seila Law LLC v. CFPB*, 591 U.S. 197, 203-04 (2020). And this Court, twice in the past year, has held that *Humphrey's Executor* remains binding on the lower courts. *Consumers' Research*, 91 F.4th at 352 & n.51, *reh'g en banc denied*, 98 F.4th 646 (5th Cir. 2024); *Illumina*, 88 F.4th at 1047.

USAP's argument that the FTC's exercise of executive powers is unconstitutional is just a repackaging of the arguments this Court

rejected in *Illumina* and *Consumers' Research*. Specifically, the *Illumina* petitioners argued that "the FTC unconstitutionally exercised executive powers while insulated from presidential removal in violation of Article II." *Illumina*, 88 F.4th at 1046-47. They acknowledged *Humphrey's Executor*, but argued that subsequent decisions by Congress granting the FTC additional executive authority meant that the statutory scheme now violated Article II. This Court rejected the argument, explaining that "although the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Id.* at 1047. Thus the Court found no Article II violation based on existing and controlling Supreme Court precedent.

The Court reached the same conclusion in *Consumers' Research*. That case involved the Consumer Product Safety Commission (CPSC), which has a statutory structure that is the "mirror image" of the FTC's, including the provision that the President may remove Commissioners only for cause. 91 F.4th at 346. The plaintiffs argued that this scheme violates Article II because the CPSC exercises executive powers—

24

including the power to "commence civil actions in federal court"—even though the Commissioners are not removable at will. *Id.* at 346-47. This Court agreed that the CPSC "exercises substantial executive power (in the modern sense)," *id.* at 353-54, but nonetheless held that *Humphrey's Executor* still controlled. *Id.* 354-56. The Court thus again found no Article II violation under existing and controlling Supreme Court precedent.

Here, USAP is making the same argument that the Court has twice rejected. It contends that by enacting Section 13(b) in 1973, Congress conferred new executive power on the FTC, and that the exercise of this authority violates Article II because the Commissioners are not removable at will. But *Illumina* makes clear that *Humphrey's Executor* remains binding on the lower courts notwithstanding the fact that the Commission's powers have changed since 1935. And *Consumers' Research* holds that even where an independent agency like the CPSC or the FTC exercises "substantial executive power," the fact that Commissioners are not removable at will does not violate Article II. USAP's argument in this case cannot be squared with these recent precedents. Likewise, all other courts presented with USAP's argument

25

that Section 13(b) is unconstitutional because of the Commissioners' removal protections have rejected the argument.[5] Against this background, there is no plausible argument for interlocutory review.

* * * * *

"In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying [the collateral order doctrine's] stringent test should be understood as small, modest, and narrow." *United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) (internal quotation marks and citations omitted). Neither of USAP's claims satisfies that test, and thus neither qualifies for interlocutory review.

## CONCLUSION

For the foregoing reasons, USAP's appeal must be dismissed.

---

[5] The Ninth Circuit, for example, has held "the enforcement statutes of the [FTC] Act, 15 U.S.C. §§ 45(a) and 53(b)" to be "constitutional, under *Humphrey's Executor*." *FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1513-14 (9th Cir. 1987); *accord FTC v. Syngenta Crop Prot. AG*, No. 22-828, 2024 WL 149552, *27-*28 (M.D.N.C. Jan. 12, 2024); *FTC v. Kochava Inc.*, 671 F.Supp.3d 1161, 1178-79 (D. Idaho 2023); *FTC v. Walmart Inc.*, 664 F.Supp.3d 808, 843-45 (N.D. Ill. 2023).

26

Respectfully submitted,

HENRY LIU
*Director, Bureau of Competition*

BRADLEY S. ALBERT
*Acting Assistant Director*

DANIEL W. BUTRYMOWICZ
TIMOTHY KAMAL-GRAYSON
DYLAN HERTS
PATRICK KENNEDY
*Attorneys*


FEDERAL TRADE COMMISSION
Washington, DC 20580

ANISHA S. DASGUPTA
*General Counsel*

MATTHEW M. HOFFMAN
*Attorney*


 /s/ Imad Abyad
IMAD D. ABYAD
*Attorney*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-3579
iabyad@ftc.gov

# CERTIFICATE OF SERVICE

I certify that on July 19, 2024, I served the foregoing motion on counsel of record using the Court's electronic case filing system. All counsel of record are registered ECF filers.

July 19, 2024

/s/ Imad Abyad
IMAD D. ABYAD
*Attorney*
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20580

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing motion complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 5,139 words, excluding the parts exempted by Fed. R. App. P. 32(f). I certify further that it complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it was prepared using Microsoft Word 2010 in 14-point Century Schoolbook.

July 19, 2024                          /s/ Imad Abyad
                                       IMAD D. ABYAD
                                       *Attorney*
                                       FEDERAL TRADE COMMISSION
                                       600 PENNSYLVANIA AVENUE, N.W.
                                       WASHINGTON, D.C. 20580

## CERTIFICATE OF CONFERENCE

Pursuant to 5th Cir. Rule 27.4, I certify that I have attempted to contact the counsel of record for appellant U.S. Anesthesia Partners, Inc. (USAP). I have not heard back from USAP's counsel as of the time of this filing. In light of the dispositive nature of this mation, it is reasonable to assume that USAP plans to file an opposition.


July 19, 2024                    /s/ Imad Abyad
                                 IMAD D. ABYAD
                                 *Attorney*
                                 FEDERAL TRADE COMMISSION
                                 600 PENNSYLVANIA AVENUE, N.W.
                                 WASHINGTON, D.C. 20580

**EXHIBIT A**

**[DISTRICT COURT'S MEMORANDUM OPINION AND ORDER]**

United States District Court
Southern District of Texas

**ENTERED**

May 13, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-03560 |
| | § | |
| U.S. ANESTHESIA PARTNERS, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.     INTRODUCTION

Before the Court are the defendants', U.S. Anesthesia Partners, Inc. ("USAP")

and Welsh Carson,[1] motions to dismiss (DEs 99 & 100). The plaintiff, the Federal Trade

Commission ("FTC"), has responded to the motions (DEs 119 & 120), and the

defendants have replied (DEs 124 & 126). After reviewing the filings and the applicable

law, the Court determines that Welsh Carson's motion should be **GRANTED**, and

USAP's motion should be **DENIED**.

## II.     FACTUAL BACKGROUND

This antitrust case concerns the monopolization of Texas' hospital anesthesia

market. We begin with a brief explanation of the hospital anesthesia market, as provided

by the FTC. Hospitals need anesthesiologists on-hand 24/7 for surgical procedures.

---

[1] Seven defendants are Welsh Carson entities. Because their distinction is not crucial to this analysis, the Court frequently refers to them all as "Welsh Carson" for ease of reference.

Some hospitals directly employ anesthesiologists, but many contract with outside groups to be their exclusive providers. Anesthesiologists are primarily compensated through reimbursement by insurers or insurers' clients (employers). Insurers' main leverage while negotiating reimbursement rates is the threat of network exclusion. Insurers select favored anesthesia groups to join their networks. Anesthesia groups strive to participate in these networks because network exclusion can endanger hospital relationships and make it more difficult to obtain payment. Thus, if groups raise their rates too high, the insurance company will remove them from the network. But this threat is credible only if the insurer has feasible alternatives with which to replace them. If a group grows so large that it becomes indispensable, the threat of network removal loses its bite, leaving patients with the burden of paying higher rates. That is what the FTC alleges has happened regarding USAP.

*USAP*

In 2012, USAP was created by a private equity firm called Welsh Carson and several physician partners. USAP's goal was to drive profits by consolidating Texas' hospital anesthesia market. Accordingly, USAP quickly began an aggressive acquisition strategy. Its first target, Greater Houston Anesthesiology, was the largest practice in Houston, billing itself as "20 times the size of the second largest local competitor." Welsh Carson put $100 million toward the purchase, with third-party lenders providing the rest. After this first acquisition, USAP started planning more,

2

targeting groups that already had exclusive contracts with hospitals. Through "tuck-in clauses," USAP would apply its higher rates to the same services already offered by its acquisitions.

Thus, USAP soon bought three other practices in Houston. Each had strong relationships with important hospitals, and each had previously competed with USAP. After each acquisition, USAP raised the acquired group's rates to match its own higher rates. In 2014, USAP took this strategy to Dallas, buying the area's largest practice, followed by six more. USAP soon expanded to Tyler, Austin, Amarillo, and San Antonio. In each of these markets, the FTC alleges that USAP used its dominance to raise prices at patients' expense. To date, USAP has acquired at least fifteen anesthesia groups in Texas.

Apart from USAP's acquisitions and price increases, the FTC also alleges that USAP maintains price-setting agreements with several competitors. Under these agreements, USAP bills for work that its competitors perform, but it bills under USAP's higher rates, as if the competitors' anesthesiologists were USAP's. This practice has the effect of increasing USAP's bargaining power and eliminating potential savings for patients. USAP inherited two such ongoing agreements and executed a third agreement that has since expired.

Finally, the FTC alleges that USAP paid Envision Healthcare to stay out of the Dallas market. Envision is a national healthcare company that also provides anesthesia

services to hospitals. While USAP initially sought to persuade Envision not to compete anywhere in Texas, Envision limited its agreement to not competing in Dallas for five years in return for $9 million.

Today, USAP is the largest anesthesia practice in Texas, including in many of its metro areas.[2] It controls nearly 70% of the commercially insured, hospital-only anesthesia market in Houston, a similar share in Dallas, and over 52% in Austin. USAP handles nearly half of all hospital-only anesthesia cases in Texas, and earns almost 60% of all hospital anesthesia revenue paid by Texas insurers, employers, and patients. USAP's negotiating leverage has grown along with its market share, and USAP has used this leverage to raise prices across Texas. The FTC alleges that this has resulted in patients and their employers paying tens of millions of dollars more each year for anesthesia than they otherwise would pay.

*Welsh Carson*

The mastermind behind USAP is allegedly Welsh Carson, a private equity firm that invests in healthcare and technology. Welsh Carson operates through various corporate entities that share personnel and resources. Hence, one set of entities houses the firm's employees and manages its investments, while another set, known as "funds," makes and holds Welsh Carson's investments, while a separate set controls these funds.

---

[2] USAP currently operates in eight states, with Texas remaining its largest market.

The FTC alleges that all of these corporations operate together, as a single company, to hatch and carry out USAP's monopolization scheme.

In early 2012, Welsh Carson decided to enter Texas' hospital-based anesthesia market. Brian Regan, a partner at Welsh Carson, spearheaded this strategy. He explained that the plan was to "consolidate practices with high market share in a few key markets," which would offer "negotiating leverage with commercial payors." Over the next few months, Welsh Carson employees set up the company that would effect this scheme—USAP. Welsh Carson initially owned 50.2% of USAP, and saw itself as USAP's "control investors." Welsh Carson chose USAP's leadership, including its CEO, CFO, COO, and head of human resources. Each of these officers had previously been employed at other Welsh Carson entities. USAP's CEO, Kristen Bratberg, had led a previous Welsh Carson consolidation strategy in the neonatology sector. Brian Regan, himself, served as a USAP director from its creation until 2022.

After creating USAP, Welsh Carson actively participated in its acquisitions. USAP's internal rules required that proposed acquisitions be approved by Welsh Carson. Welsh Carson employees researched anesthesia practices for USAP to acquire. Welsh Carson also worked with a consultant to develop a modeling tool for identifying promising acquisition targets. Welsh Carson funded USAP's first acquisition. Welsh Carson negotiated USAP's first acquisition in Dallas, and Brian Regan led the negotiations for USAP's agreement with Envision, initially proposing that USAP pay

Envision $9 million annually to not provide anesthesia services in Texas. This ultimately became the price tag for Envision's exclusion from Dallas.

In 2017, Welsh Carson sold about half its stake in USAP. A Welsh Carson entity This left Fund XII, a Welsh Carson entity with 23% ownership of USAP. Fund XII appoints two of the fourteen board seats in USAP. In 2021, the FTC began a two-year investigation of Welsh Carson and USAP. It brought this suit on September 21, 2023 to permanently enjoin the defendants' anticompetitive conduct under Section 13(b) of the FTC Act. The Court held a hearing on the present motions to dismiss on April 8, 2024.

## III.  CONTENTIONS OF THE PARTIES

Welsh Carson argues that the FTC cannot bring this suit under Section 13(b) of the FTC Act because Welsh Carson is not violating antitrust laws, nor is it about to. USAP makes the same argument, adding that Section 13(b) requires a concomitant administrative proceeding, which the FTC has not begun. USAP further asserts that the FTC is unconstitutional because its commissioners are not removable at will by the President. Finally, USAP argues that the FTC's claims are based on a myopic market definition, and that USAP has not raised prices above competitive levels.

The FTC responds that both Welsh Carson and USAP are currently violating antitrust laws, and that both are about to violate antitrust laws. The FTC insists that 13(b) does not require an administrative proceeding before a suit can be filed.

Regarding the argument that it is unconstitutional, the FTC points to Fifth Circuit precedent holding otherwise. The FTC defends its market definition of commercially insured hospital-only anesthesia, asserting that non-hospital anesthesia is not an available substitute. Finally, the FTC maintains that it has alleged super-competitive pricing due to the defendants' uncompetitive behavior.

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Under the difficult standard of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents attached to a defendant's motion to dismiss, if they are both referred to in the complaint and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## V.    ANALYSIS & DISCUSSION

*Section 13(b)*

The FTC's statutory authority for seeking this injunction lies in 15 U.S.C. § 53(b) (commonly referred to as "Section 13(b)"). Section 13(b) allows the FTC to "bring suit in a district court of the United States to enjoin" allegedly unlawful conduct only where it has "reason to believe . . . that any person, partnership, or *corporation is violating, or is about to violate*, any provision of law enforced by the [FTC]." (Emphasis added). Section 13(b) is not a catch-all statute. Rather, Section 13(b) "addresses a specific problem, namely, that of stopping seemingly unfair practices from taking place while the [FTC] determines their lawfulness [through its own administrative proceedings]." *AMG Cap. Mgmt.,* 593 U.S. at 76. *See* S. Rep. No. 93-151, at 30 (1973). The FTC is authorized to conduct its agency actions through Section 5(b) of the FTC Act, which is a much broader grant of antitrust authority, and looks backward, while Section 13(b) looks forward. Section 13(b) therefore "does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation." *Federal Trade Commission v. Shire ViroPharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019). If "the FTC wants to recover for a past violation — where an entity 'has been' violating the law — it must use Section 5(b)." *Id.* at 159 (quoting 15 U.S.C. § 45(b)).[3] What the FTC cannot do is "use the most advantageous

---

[3] Of course, the FTC is not alone in enforcing antitrust law. The Department of Justice has broad authority to enforce antitrust law, including for past acts. *See* 15 U.S.C. §§ 4, 25.

aspects of each statutory provision—to punish [a defendant] for a past violation using the less onerous enforcement mechanism [of Section 13(b)]." *Id*.

A) *Welsh Carson*

A) 1) *The FTC Has Not Adequately Alleged that Welsh Carson "is violating" Antitrust Law*

The FTC argues that Welsh Carson is currently violating antitrust laws. The FTC insists that "USAP continues to hold the illegally acquired practices, uses the resulting leverage to raise prices, and shares its profits with Welsh Carson." But the FTC does not cite any authority for the proposition that receiving profits from an entity that may be violating antitrust laws is itself a violation of antitrust laws. Indeed, "profits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as 'independent acts.'" *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014). Thus, the act of receiving profits from USAP is not an ongoing antitrust violation.

The FTC also argues that Welsh Carson commits ongoing antitrust violations by continuing to hold stock in USAP. The FTC insists that "an injunction under Section 13(b) is a theoretically available remedy in a Section 2 challenge to long-ago mergers so long as the defendant still holds the purchased assets or stock." *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 32 (D.D.C. 2021). Thus, the FTC's argument that

9

Welsh Carson is committing ongoing antitrust violations boils down to this: 1) Welsh Carson holds stock in USAP; 2) holding assets that result in reduced competition is an ongoing violation of antitrust laws; and 3) Section 13(b) permits the FTC to address ongoing violations.

The first and third steps are not in serious dispute. The substance therefore is in the second step of the argument. The FTC is correct that holding assets can constitute an ongoing violation of antitrust laws: "[A]ny acquisition by one corporation of all or any part of the stock of another corporation, competitor or not, is within the reach of [Section 2] whenever the reasonable likelihood appears that the acquisition will result in a restraint of commerce or in the creation of a monopoly of any line of commerce." *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 592 (1957). Section 7 of the Clayton Act prohibits mergers or acquisitions, "directly or indirectly," if the effect "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18 (2000). In *du Pont*, the Court determined that a supplier to General Motors leveraged stock that it had bought to entrench itself as General Motors' primary supplier. 353 U.S. at 592. The differences between *du Pont* and the present case, though, are that *du Pont* involved a direct acquisition, Section 13(b) was not in play, and *du Pont* did not involve a defendant with a minority, noncontrolling stake in the purchasing entity.

10

Since 2017, only one of the Welsh Carson entities—Fund XII—has owned stock in USAP. Fund XII's 23% ownership entitles it to appoint two of the fourteen directors to the USAP board: one-seventh of the board, disproportionately small compared to its almost one-quarter ownership. The FTC does not explain how Fund XII's minority stake—as distinct from USAP's acquisitions of anesthesiology practices—is a violation of Section 2 of the Sherman Act or Section 7 of the Clayton Act. Indeed, at oral argument, the FTC conceded "we still have to prove that Welsh Carson's conduct substantially lessens competition . . . we are not seeking to hold Welsh Carson liable merely because they have an ownership stake." But that ownership stake is the FTC's only hook for an "ongoing violation" under Section 13(b). Section 13(b) requires more than the FTC's concession; *Welsh Carson's ongoing* conduct must reduce competition. It is not clear how owning a minority share in a company that reduces competition satisfies the statute.

What *du Pont* and *Facebook* indicate is that if an acquisition was *itself* a violation of antitrust laws, the FTC may use Section 13(b) to address it. Indeed, the "Clayton Act is concerned with whether an acquisition or merger *itself* may cause antitrust injury." *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 511 (2d Cir. 2004) (citing *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 115–17 (1986)). The FTC's authorities discuss only one merger to roll back, where rolling back the merger resolves the ongoing violation. Not so here; The FTC's theory would require rolling

11

back Welsh Carson's acquisition of USAP stock and USAP's *own* acquisitions. The analogous merger to *du Pont* is not USAP's acquisitions, but Fund XII's 2017 purchase of 23% of USAP. And there is no allegation that that acquisition itself violated antitrust laws. Thus, the FTC's conflation of Fund XII's stake in USAP with USAP's acquisitions of anesthesia groups is unavailing.

The closest case to the present one appears to be *Cmty. Publishers, Inc. v. Donrey Corp.*, 882 F. Supp. 138 (W.D. Ark. 1995). There, the court determined that Section 7 applied to a parent company that acquired stock through its subsidiarity. The key difference, though, is that the parent and subsidiary had "substantially overlapping ownership." *Id.* at 139. Indeed, 99% of the parent stock was owned by an entity called "SGI," which was owned entirely by a family trust. The subsidiary, meanwhile, was owned 95.5% by the very same family trusts. Furthermore, the parent, the subsidiary, and SGI were all chaired by the same man, who was a member of the family who owned the trusts.

There is a stark contrast between *Donrey* and the present case, in which Fund XII owns 23% of USAP and has only two out of fourteen board seats. The fact that other Welsh Carson entities that do not own stock in USAP helped create both USAP and its acquisition strategy does not change the analysis. The FTC has not cited a case in which a minority, noncontrolling investor—however hands-on—is liable under Section 13(b) because the company it partially owned made anticompetitive acquisitions. Such a

construal of Sections 7 and 13(b) would expand the FTC's reach further than any court has yet seen fit; it would also expand liability to minority investors whose subsidiaries reduce competition. This Court will not adopt this novel interpretation.

### A) 2) The FTC Has Not Adequately Alleged that Welsh Carson Is "About To Violate" Antitrust Law

The second stage of the Section 13(b) analysis is whether the FTC has adequately pled that Welsh Carson is "about to" violate antitrust law. The FTC alleges that nothing "prevent[s] Welsh Carson from re-upping its investment in USAP, retaking formal control of the company, and directing yet more anticompetitive positions." The FTC also points to Welsh Carson's investments in the emergency medicine and radiology markets as evidence of intent to further consolidate the anesthesia market.

The parties disagree as to the proper interpretation of Section 13(b)'s "about to violate." The FTC insists that the Fifth Circuit held that Section 13(b)'s "about to violate" requirement can be satisfied by alleging facts that give a "fair inference of a reasonable expectation of continued violations." *F.T.C. v. Sw. Sunsites, Inc.*, 665 F.2d 711, 723 (5th Cir. 1982) (citing *Securities and Exchange Commission v. Manor Nursing Center, Inc.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972)). It is not clear that this was the holding of *Sunsites*. The court mentioned this standard without analysis, discussion of the statute, or any other support. The entire relevant paragraph reads:

> The district court acted well within its discretion in ordering appellees to cease and desist from further violations of the Act. This is particularly true

13

when the evidence developed to date suggests a large-scale systematic
scheme tainted by fraudulent and deceptive practices, giving rise to a "fair
inference of a reasonable expectation of continued violations" absent
restraint.

*Id.* Regardless, it is unclear how much light is shined by interpreting "about to
violate" as "giving rise to a fair inference of a reasonable expectation of continued
violations." Indeed, the consensus is that "[a]side from analyzing the facts at issue, the
*Sunsites* court did not provide extensive guidance to district courts on applying § 13(b)'s
threshold requirement." *Fed. Trade Comm'n v. Educare Ctr. Servs., Inc.*, 433 F. Supp.
3d 1008, 1014 (W.D. Tex. 2020). The facts at issue in *Sunsites* were quite distinct from
those before this Court. There, the FTC sought to enjoin a party from *persisting* in a
"continuing" fraudulent scheme executed *by that party*. Here, there is no allegation of
fraud, and Welsh Carson's activity is not continuing. Indeed, the FTC does not allege
any conduct by Welsh Carson in the past six years that is a plausible antitrust violation.

Instead, the FTC argues that Welsh Carson designed and implemented a large,
systematic scheme that still exists. This argument is to mean, if anything, that the
violation is ongoing, rather than likely to recur. The only sense in which the scheme
still exists is that USAP still exists, and that USAP still consolidates the market and
reduces competition. But that goes to USAP's violations, not Welsh Carson's; *Sunsites*
said nothing about derivate liability for another company's actions.

Besides, this long-past conduct does not raise a fair inference that Welsh Carson
will soon do so again, even if such conduct were an antitrust violation. Indeed, it is

.

unclear what an act of recurrence would mean: creating another vehicle for anesthesia consolidation to compete with USAP? The FTC insists that Welsh Carson's having the "blueprints, finances, and personnel to continue this scheme" satisfy Section 13(b)'s "about to violate" standard. But the mere capacity to do something does not meet the requirement that the thing is likely to recur. As in *Facebook*, "[t]here are no facts alleged . . . suggesting that the antitrust 'scrutiny' the company is facing is 'about to' pass or indeed will pass at any time in the foreseeable future." *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26–27 (D.D.C. 2021). *See Shire ViroPharma*, 917 F.3d at 153, 160 (finding allegation that "[a]bsent an injunction, there is a cognizable danger that [defendant] will engage in similar conduct" because it has the "incentive and opportunity" to do so. Such an argument, without evidence, is "woefully inadequate to state a claim under Section 13(b).").

The Court will quickly address two more arguments from the FTC. First, comments from Welsh Carson executives indicating a desire to consolidate other healthcare markets do not show that Welsh Carson is about to violate antitrust laws. The FTC has not sufficiently pled information about those plans to pursue a Section 13(b) case to enjoin Welsh Carson from activities in those non-anesthesia markets. Second, Welsh Carson's "lack of contrition" does not indicate an impending violation, either; the law does not require defendants to admit liability and apologize in order to avoid an injunction.

15

The Court repeats that Congress' purpose in enacting Section 13(b) was to "address[] a specific problem, namely, that of stopping seemingly unfair practices from taking place while the [FTC] determines their lawfulness." *AMG Cap. Mgmt.,* 593 U.S. at 76. Again, this Court will not be the first to use this specialized statute to expand antitrust liability to reach active investors in companies that are alleged to violate antitrust law. The FTC does not articulate why it cannot return with a new lawsuit under Section 13(b) if and when Welsh Carlson signals—beyond mere speculation and conjecture—that it is actually about to violate the law. The Court's analysis should not be construed to offer any opinion on Welsh Carson's conduct except as Section 13(b) applies to it.

### B) USAP

### B) 1) The FTC Need Not Bring A Concomitant Administrative Proceeding

USAP's first argument is that the FTC overreached its authority under Section 13(b) by bringing this suit without initiating a concomitant administrative proceeding. USAP marshals eloquent and thorough arguments of statutory interpretation to this end. But as far as the Court is aware, every court to consider this issue has disagreed that such a proceeding is necessary, including three circuit courts. As the Seventh Circuit explained:

> The statutory language of section 13(b) limits the availability of preliminary injunctive relief to situations 'pending issuance of a complaint by the Commission.' No similar language is found in the second proviso relating to permanent injunctive relief . . . Had Congress intended the

16

initiation or not of an administrative cease and desist proceeding to affect the ability of the Commission to seek permanent injunctive relief, it undoubtedly would have included language similar to that found in the provision governing preliminary injunctive relief.

*United States v. JS & A Grp., Inc.*, 716 F.2d 451, 456 (7th Cir. 1983). *See F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) & *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984).

USAP invokes *AMG* to argue that this Court should resist these authorities. *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 593 U.S. 67 (2021). The problem is that *AMG* indicates the opposite. There, the Supreme Court held that the FTC may not use Section 13(b) to authorize monetary relief. While the Court thus focused on a different issue than the present one, its analysis included several observations on the FTC's injunction authority. Interpreting Section 13(b), the Court opined that the words "permanent injunction" "might also be read, for example, as granting authority for the Commission to . . . dispense with administrative proceedings to seek what the words literally say (namely, an *injunction*)." *Id.* at 76. Lest there be any doubt, two pages later, the Court declared: "the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, *or when it seeks only injunctive relief*." *Id*. at 78 (emphasis added). The FTC seeks only injunctive relief in this case.

Undaunted, USAP brushes this aside as dicta. Even if it is dicta, dicta acquires a certain luster when it comes from the U.S. Supreme Court. Indeed, "we are generally bound by Supreme Court dicta, especially when it is 'recent and detailed.'" *Hollis v.*

*Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quoting *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)). *AMG* is only three years old, and the Court repeated the point twice. This Court will not gainsay it.

### B) 2) The FTC Alleges Ongoing Violations Under Section 13(b)

Next, like Welsh Carson, USAP argues that the FTC has not alleged that USAP is currently or about to violate antitrust laws. USAP therefore argues that Section 13(b) is not the appropriate vehicle for these claims, and that the FTC has exceeded its statutory authority. The Court has already laid out the framework of this analysis above with regard to Welsh Carson. Applying it to USAP, however, yields a different result.

The FTC alleges multiple instances of ongoing conduct: USAP continues to own the anesthesia groups it unlawfully acquired and continues to charge high prices; USAP currently maintains two price-setting arrangements that result in higher prices; and USAP's overall monopolization scheme remains intact.

USAP's acquisitions constitute ongoing conduct. USAP acquired at least 15 anesthesia groups over the last 12 years. USAP continues to hold these companies. Even though the acquisitions themselves have closed, maintaining the assets of these companies could constitute a violation of antitrust law appropriately pursued under Section 13(b). As explained above, "an injunction under Section 13(b) is a theoretically available remedy in a Section 2 challenge to long-ago mergers so long as the defendant still holds the purchased assets or stock." *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F.

Supp. 3d 1, 32 (D.D.C. 2021). This is because, for antitrust purposes, acquisitions do not always end with the close of the deal:

> We need not go beyond the Clayton Act itself to conclude that 'acquisition' as used in [§] 7 of the Act means holding as well as obtaining assets. The Act provides that the FTC, if it finds a violation of [§] 7, can require a party to 'divest itself of the stock, or other share capital, or assets, held . . . contrary to the provisions of ([§] 7).' Thus, the framers of the Act did not regard the terms 'acquire' and 'acquisition' as unambiguously banning only the initial transaction of acquisition; rather, they read the ban against 'acquisition' to include a ban against holding certain assets.

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 240–41 (1975) (cleaned up). USAP seeks to distinguish *ITT* because it concerned "materially different factual circumstances." USAP highlights that *ITT* upheld a fine for an ongoing violation of a consent decree, rather than an antitrust violation. The consent decree is different, USAP says, because it covered "both the initial transaction and the maintenance of the rights" acquired in the transaction. But this is misleading, and indeed begs the whole question. The consent decree did not say that it covered the maintenance of the rights. Rather, the Supreme Court *decided* that it covered the maintenance of those rights based on its own definition of "acquisition" in *Du Pont*. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 241 (1975) (citing *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 592 (1957)). Thus, the distinction USAP points to is not a valid difference.

On the other hand, USAP's authorities illustrate a distinction with a true difference. USAP points to cases from the 8th and 6th circuits for the proposition that mergers do not constitute continuing violations once they are complete: *Midwestern*

*Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004); *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014). How do these cases coexist with *Du Pont* and *ITT*? The titles of these cases provide the answer: they do not involve the FTC. Instead, they feature private plaintiffs, and thus implicate the statute of limitations. The government, however, is not constrained by a statute of limitations. *See Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 783 (7th Cir. 2019) ("[S]ection 13b has no statute of limitations."). Thus, these cases are neither binding nor superior to the United States Supreme Court's opinion. Moreover, their reasoning was based on a statutory mechanism not in play here.

Because these acquisitions constitute ongoing activity and plausibly contribute to the monopoly power and unfair competition that the FTC's complaint alleges, the FTC is within its statutory authority to bring claims I-VIII. The FTC's ninth claim of price fixing and tenth claim of market allocation are plausibly part of the "large-scale systematic scheme" alleged by the FTC and supported by the alleged acquisitions. *F.T.C. v. Sw. Sunsites, Inc.*, 665 F.2d 711, 723 (5th Cir. 1982). Thus, the FTC is within its statutory authority to bring these claims.[4]

*B) 3) The FTC Is Not An Unconstitutionally Constituted Entity*

---

[4] It is worth distinguishing USAP's conduct from Welsh Carson's. Welsh Carson owned a noncontrolling piece of a company that acquired another company; the acquisitions at issue here were thus derivative of a company in which one Welsh Carson entity owned 23% and had disproportionally few board seats. That is very different from the direct, wholesale acquisition of one company by its competitor.

The Court need not spend many words on the constitutional argument.[5] The defendants ask this Court to declare the FTC is unconstitutionally constituted because its commissioners are not removable at will by the President. Precedent forecloses this argument.

Almost 90 years ago, the Supreme Court held that the President's inability to remove FTC commissioners at will was constitutional. *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935). The defendants argue that the FTC's authority has grown such that *Humphrey's* no longer makes sense. But just last year, the Fifth Circuit rejected this argument: "[A]lthough the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1047 (5th Cir. 2023). *See also Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342 (5th Cir. 2024). It is not for this Court to answer, either.

*C) The Merits*

On the merits, USAP argues that the FTC's market definition of "hospital-only anesthesia services" is improper and unsupported by the factual allegations. Specifically, USAP argues that the FTC does not address interchangeability or cross-elasticity of demand, and that the market should also include out-of-hospital

---

[5] USAP did not spend many words, either. Instead, USAP incorporated Welsh Carson's constitutional argument into its own brief with no elaboration.

anesthesiologists. But the FTC's complaint does address this by saying that hospital patients get no say in their anesthesiologist; "Patients requiring hospital care cannot switch to outpatient anesthesia regardless of price." Thus, it does not matter if, theoretically, out-of-patient anesthesiologists could perform the same services within the hospital, because as a practical matter once a patient requires treatment in a hospital, out-of-hospital anesthesiology services are off the table. The complaint alleges that industry participants, including USAP and insurers, recognize the distinctions between in- and out-patient anesthesia care. The complaint also alleges that out-patient anesthesia services do not adequately constrain prices for in-patient care because anesthesiologists face significantly different working conditions in hospitals, and hospitals often have sticky and exclusive anesthesia services contracts. At this stage, the Court cannot say the FTC has failed to allege a plausible market definition.

Next, USAP argues that the FTC has not sufficiently alleged that USAP enjoys monopoly power. The FTC quotes an insurance executive describing USAP's consolidation strategy as "tak[ing] the highest rate of all . . . and then peanut butter spread that across the entire state of Texas." The FTC alleges that USAP has raised prices significantly, charging the highest rates in Houston and Dallas, and double the median rate in Texas. No anesthesia group could achieve this before USAP began its consolidation strategy. USAP also alleges that payors tried to constrain USAP's high rates but failed due to insufficient alternatives. Whether USAP charges above a

competitive price or enjoys monopoly power are factual disputes. These considerations also apply to USAP's argument that the FTC has failed to allege anticompetitive conduct under the Sherman Act or the Clayton Act. The FTC has plausibly alleged acquisitions resulting in higher prices for consumers, along with a market allocation and price-setting scheme. It would be premature to dismiss these claims at this stage.

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, the Court **GRANTS** Welsh Carson's motion to dismiss and **DENIES** USAP's motion to dismiss.

It is so **ORDERED**.

SIGNED on May 13, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

23