# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 15, 2024
Lyle W. Cayce
Clerk

No. 24-20270

FEDERAL TRADE COMMISSION,

*Plaintiff—Appellee*,

*versus*

U.S. ANESTHESIA PARTNERS, INCORPORATED,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-3560

_____

UNPUBLISHED ORDER

Before STEWART, HAYNES, and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

    Appellant U.S. Anesthesia Partners ("USAP"), Texas's largest hospital-based anesthesiology provider and a subject of a Federal Trade Commission ("FTC") antitrust lawsuit, appeals the district court's denial of its Rule 12(b)(6) motion to dismiss for failure to state a claim. Appellee, the FTC, moves to dismiss USAP's appeal for lack of appellate jurisdiction. We lack appellate jurisdiction and must dismiss the appeal.

I.  **Background**

In 2023, the FTC brought suit in federal court against USAP and a private equity firm called Welsh Carson, seeking injunctive relief for alleged violations of Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). In its 106-page complaint, the FTC alleged that Welsh Carson and USAP had violated antitrust laws in their pursuit of a "roll-up" of hospital anesthesiology practices in Texas, beginning in Houston in 2012. According to the complaint, employees of Welsh Carson, a New York-based private equity firm, originally pitched the creation of USAP to their superiors as an opportunity to "consolidat[e] practices with high market share in a few key markets" in an industry in which consumers—hospital patients undergoing surgeries—have little choice in which providers they see. That year, USAP acquired Houston's largest hospital anesthesiology practice, which was "20 times the size of the second largest local competitor." Subsequently, USAP purchased three more Houston hospital anesthesiology groups and expanded to Dallas, San Antonio, Austin, Amarillo, and Tyler.

In its complaint, the FTC alleged that USAP and Welsh Carson presentations showed that USAP would conduct a series of "tuck-in acquisitions," through which it would buy practices with existing hospital contracts and then raise the prices it charged insurers and other payors. Additionally, the FTC alleged that USAP undertook price-setting agreements with competitor anesthesiology providers that billed at lower rates than USAP. Through these agreements, the FTC alleged, USAP began billing insurers and other payors for work completed by the competitor providers at its own higher rates, sharing with the competitor providers some of the markup. Finally, the FTC alleged that USAP paid one provider to stay out of the Dallas market entirely.

The FTC alleged that, as a result of the anticompetitive practices of

Case 4:23-cv-03560  Document 163-2  Filed on 15/24 in TXSD  Page 3 of 8
Case: 24-20270  Document: 116-1  Page: 3  Date Filed: 08/15/2024

No. 24-20270

USAP and Welsh Carson, USAP had come to control nearly 70% of the commercially insured, hospital-only anesthesia market in Houston and Dallas, and over 60% of the hospital anesthesia revenue paid by Texas insurers, employers, and patients. The FTC further alleged that this monopolistic growth had allowed USAP to extract monopoly profits, "cost[ing] Texans tens of millions of dollars more each year than they did before USAP was created" to see the same exact anesthesiologists.

The FTC alleged that Welsh Carson and USAP were liable for violations of the Sherman Act, the Clayton Act, and the FTC Act, and sought a permanent injunction under Section 13(b) of the FTC Act. Welsh Carson and USAP both filed motions to dismiss, on which the district court held oral argument. Subsequently, it granted the motion as to Welsh Carson, holding that Welsh Carson could not fit the Section 13(b) requirement that it "is violating, or is about to violate" any law enforced by the FTC because, at the time the FTC filed its complaint, one of its entities had only 23 percent ownership and one-seventh of the seats on the board.

As to USAP, however, the district court denied its motion to dismiss. First, the district court rejected USAP's statutory interpretation argument that the FTC overreached its Section 13(b) authority by suing it in federal court without bringing a concomitant administrative proceeding. The district court noted that "every single court" to have considered USAP's argument had rejected it, including the Seventh, Ninth, and Eleventh Circuits. *See United States v. JS & A Grp., Inc.*, 716 F.2d 451, 456 (7th Cir. 1983); *FTC. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1110 (9th Cir. 1982); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). The district court also rejected USAP's argument that *AMG Capital Management, LLC v. FTC* helped its case. In that case, the Supreme Court held that the FTC cannot use Section 13(b) to authorize monetary relief, but it specifically stated that "the Commission may use § 13(b) to obtain injunctive relief while administrative

Case 4:23-cv-04035 Document 163-2 Filed on 08/15/24 in TXSD Page 4 of 8
Case: 24-20270 Document: 16-3 Page: 4 Date Filed: 08/15/2024

No. 24-20270

proceedings are foreseen or in progress, or when it seeks only injunctive relief." *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 78 (2021).

The district court also rejected as foreclosed by precedent USAP's argument that the FTC is unconstitutionally constituted because its commissioners are not removable at will by the President. *See Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935). As an initial matter, the district court noted that USAP did not present this argument itself, but rather "incorporated Welsh Carson's constitutional argument into its own brief with no elaboration." As to the merits of the claim, the district court pointed to two recent Fifth Circuit cases that uphold *Humphrey's Executor* in the face of the same arguments made by defendants here. *See Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) ("[A]lthough the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer."); *see generally Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342 (5th Cir. 2024).

Finally, the district court found that the FTC had pleaded sufficient allegations of ongoing activity contributing to monopoly power and unfair competition, and that it was within the FTC's statutory authority to bring these claims.

USAP subsequently filed a notice of appeal, stating that the district court's order was an immediately appealable collateral order because the court's order "conclusively determined the disputed issues, separate from the merits" that it sought to appeal: 1) whether the FTC could bring its action in federal court without a concurrent administrative proceeding and 2) whether the FTC's exercise of power is constitutional despite its authority expanding post-*Humphrey's Executor*. The FTC then filed its motion to

4

dismiss, arguing that neither of these rulings USAP seeks to challenge in this appeal are unreviewable from a final order, nor does either involve a serious or unsettled question of law.

## II. The Collateral Order Doctrine

As an initial matter, 28 U.S.C. § 1291 provides that the courts of appeal have "jurisdiction of appeals from all final decisions of the district courts." But the Supreme Court has recognized that there is a "small class" of district court rulings "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

In order to fall into this collateral order exception, an order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits[,]" and (3) "be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006). "[T]he conditions for collateral order appeal" are "stringent." *Dig. Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 868 (1994). Additionally, "collateral appeal of an interlocutory order must 'present a serious and unsettled question.'" *Nixon v. Fitzgerald*, 457 U.S. 731, 742, (1982) (citing *Cohen*, 337 U.S. at 547).

## III.   The Present Appeal

We need not consider the first two factors articulated in *Will v. Hallock* because USAP has failed to show that either ruling would be "unreviewable on appeal from final judgment." 546 U.S. at 347. USAP argues that the rulings that it seeks to appeal here would be unreviewable from final judgment because it has a statutory right under Section 13(b) "not to be tried" and a constitutional right "not to stand trial" brought by an

Case 4:23-cv-03670 Document 166-2 Filed on 08/15/24 in TXSD Page 6 of 8
Case: 24-20270 Document: 163-1 Page: 6 Date Filed: 08/15/2024

No. 24-20270

"illegitimate decisionmaker."

To determine if an order is "effectively unreviewable" on appeal, the "decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 100-01 (2009)). Because "almost any right can be characterized as a right not to be confronted with the burdens of trial," we instead "proceed on a categorical basis, looking only at whether 'the class of claims, taken as a whole, can be vindicated by other means' than immediate appeal." *Martin v. Halliburton*, 618 F.3d 476, 483 (5th Cir. 2010).

Categories of cases that the Fifth Circuit has recognized as immediately appealable collateral orders include those that involve some forms of qualified and absolute immunity. *See Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 177-78 (5th Cir. 2009) ("A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur." (citation omitted)). And the Supreme Court and the Fifth Circuit have declined to find that appeals were appropriately brought under the collateral order doctrine when they involved *where* the party would be sued rather than *if* the party should face suit at all. "[A]n entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989); *see also Lake Eugenie Land Dev., Inc. v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 793 F.3d 479, 485 (5th Cir. 2015) (listing "orders generally not immediately appealable under the collateral order doctrine," including "denial of a motion to enforce a forum selection clause or to dismiss on forum non conveniens grounds").

USAP's contention that it has a statutory and constitutional "right

6

Case 4:23-cv-02670 Document 163-2 Filed on 08/15/24 in TXSD Page 7 of 8
Case: 24-20270   Document: 16-3   Page: 70   Date Filed: 08/15/2024

No. 24-20270

not to be tried" relies heavily on *Axon Enterprises v. FTC* for the proposition that it is suffering a "here-and-now injury" because in its appeal it challenges "the Commissions' power to proceed at all." 598 U.S. 175, 192 (2023).

First, *Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331—it does not address what constitutes a final order under 28 U.S.C. § 1291. In that case, the Supreme Court considered whether review schemes set out in the Securities Exchange Act and Federal Trade Commission Act could displace federal question jurisdiction, and whether the targets of SEC and FTC enforcement actions could sue those agencies directly in a district court. *Axon*, 598 U.S. at 183. In its holding that district courts had jurisdiction to hear those parties' lawsuits, *Axon* implicates nothing related to the collateral order doctrine.

Second, with regard to USAP's statutory argument, the "illegitimate proceedings" to which the plaintiffs in that case claimed they were being subjected were proceedings in agency tribunals that they argued were illegitimate—not, as in this case, lawsuits brought against them in Article III courts, the jurisdiction of which USAP does not question. *Id.* at 191. USAP argues that the FTC is required to initiate an action in its own administrative process prior to suing in federal court. By its own interpretation of Section 13(b), then, USAP argues not that it has a "right not to be tried," but a right to be tried first in a different, additional forum—the kind of challenge the Supreme Court has rejected in *Lauro Lines*. 490 U.S. at 501.

Finally, as to the constitutional infirmity USAP sees with the structure of the FTC, the challenge to *Humphrey's Executor* at issue in *Illumina* stemmed from a final order of the Federal Trade Commission, 88 F.4th at 1046, and the issue came to this court in *Consumers' Research* through a final order of a district judge, 91 F.4th at 347. USAP does not demonstrate that its challenge to the structure of the FTC will be "unreviewable" from a final

7

order.

**IV.     Conclusion**

Because nothing will prevent Appellant from presenting its arguments to this court after a final judgment has been issued in this matter, IT IS ORDERED that Appellee's Opposed Motion to dismiss appeal for lack of jurisdiction is GRANTED.