United States District Court
Southern District of Texas
**ENTERED**
October 03, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ANESTHESIA PARTNERS, INC., *et al.*,<br><br>Defendants. | Case No.: 4:23-CV-03560-KH |

**Order and Stipulation Regarding Electronic
Discovery Procedure**

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must confer about a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the parties are aware of the importance of cooperation and recognize that cooperation does not require nor does it always result in agreement. Nonetheless, the parties agree to cooperate in good faith throughout the matter as long as that cooperation promotes the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce

1

relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). The parties' anticipated areas of cooperation include identifying limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery, and other parameters to limit and guide preservation and eDiscovery issues;

WHEREAS, the parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I. GENERAL PROVISIONS

1. **Applicability.** The procedures and protocols set forth in this order shall govern the search for, disclosure of, and format of documents, tangible things, and ESI (collectively "discovery materials") produced for use in this litigation.

2. **Limitations & Non-Waiver.** This order does not define the scope of production nor the relevance, discoverability, confidentiality, or admissibility of any particular discovery materials. Nothing in this order establishes any agreement as to either the temporal or subject-matter scope of discovery in this litigation. Compliance with this order does not constitute a waiver of any objection to the production of particular discovery materials, including as irrelevant, undiscoverable, inadmissible, unduly burdensome or not reasonably accessible, or privileged. Nothing in this order shall be construed to affect the authenticity or admissibility of any discovery materials, and all objections to authenticity or admissibility of any discovery material are preserved. Except as specifically set forth herein, this order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of Texas. Nothing in this order is intended to be an exhaustive list of discovery obligations or rights.

3. **Prior Productions.** If any producing entity previously produced discovery materials to the FTC in connection with the FTC's investigation (FTC File No. 201-0031), the producing entity need not produce another copy of such discovery materials in response to any discovery requests (as the FTC has agreed to provide copies of those previously produced materials to Defendant). Any such discovery materials are deemed produced in this litigation. No producing entity is obligated to reformat any discovery materials produced during the investigation in accordance with the production specifications in this order.

## II. PRESERVATION

1. **Materials To Be Preserved.** Each party will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Civil Procedure. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:
   a) Parties shall preserve non-duplicative, relevant information currently in their possession, custody, or control;
   b) Subject to and without waiving any protection described above, the parties agree that the parties will endeavor to agree upon date limitation(s) for the preservation of ESI and to identify relevant custodians from whom relevant ESI will be preserved.
2. Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that certain categories of Documents or ESI are not reasonably accessible.
3. **Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving discovery materials for the purpose of this litigation, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege or other protection.

### III. COLLECTION AND REVIEW

1. **Cooperation.** The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search discovery materials in order to identify discovery material that is subject to production in discovery and filter out discovery material that is not subject to discovery.

2. **System Files.** Each producing entity will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Examples of hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Each producing entity will provide a list of additional document types, if any, used as a filter to the receiving entity as soon as practicable.

3. **Deduplication.** Each producing entity is required to produce only a single copy of a responsive document and each producing entity may remove exact duplicate documents (based on MD5 or SHA-1 hash values at the family level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. To the extent that deduplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. A producing entity must make reasonable effort to identify all agreed upon custodians who were in possession of any deduplicated documents in the "Alternative Custodian" field. In the event of rolling productions of discovery materials, the producing entity will, as needed, supplement the load files with updated

Alternative Custodian information. Duplicate custodian information may be provided by a metadata overlay and will be provided by a producing party on an ongoing basis.

4. **Email Threading.** Where multiple email messages are part of a single chain or "thread," a producing entity is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and inline objects (including inline images and hyperlinks) and including identical text, identical subject(s), identical senders and recipients (including in "to," "cc," and "bcc" fields), within the Last In Time Email. Only email messages (including inline objects, text, subject(s), and senders and recipients) and all attachments that are fully contained in and identical to the Last In Time Email will be considered less inclusive email messages that need not be produced.

5. **Filtering.** If a producing entity proposes to apply other filters to limit discovery materials that are collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files or pictures in signature files or embedded objects), the producing entity shall advise the requesting party and the parties shall meet and confer regarding such additional proposed filters.

## IV.   CLAIMS OF PRIVILEGE

1. **Privilege Logs.** For documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege or protection (collectively "privilege"), the producing entity shall prepare a summary log containing, for each document (except as agreed upon by the parties) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the parties) to the extent such information exists and has not been suppressed or redacted for privilege. The

export should include, at a minimum, the following information from the top line email and from any attachment, in separate entries:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE
- REDACTED

2. **Document and Claim Descriptions.** In addition to the fields described in paragraph IV.1, the producing entity's log should include two additional fields for each document on the summary log: (a) the subject matter of the document and (b) the basis of the privilege claim.

3. **List of Counsel.** The producing entity must also provide a list of all counsel identified in the summary log.

4. **Prior Claims of Privilege.** Privilege logs and counsel lists provided to the FTC during the investigation are deemed served in this litigation. The FTC reserves all rights to challenge any privilege claims.

5. **Rolling Privilege Logs.** The parties agree to provide rolling privilege logs. Privilege logs are due forty-five (45) days after production for the set of requests is substantially

complete. However, the privilege log for documents responsive to requests issued before June 1, 2024 is due by February 14, 2025.

## V.   REDACTION

1. **Initial Categories.** Discovery material may be redacted on the following bases: privilege, sensitive PII, and SHI. Discovery materials redacted for sensitive PII and SHI need not be logged.

2. **Additional Categories.** If, during the course of discovery, the producing entity identifies other kinds of information that it has a reasonable basis for redacting, the parties will meet and confer before such redactions are made. If the issue cannot be resolved, the parties will seek resolution from the Court.

3. **Sensitive PII or Sensitive Health Information.** A Producing Entity shall make reasonable efforts not to produce unredacted sensitive personally identifiable information ("Sensitive PII") or Confidential Health Information, as defined in the Protective Order (ECF No. 149-1). If a receiving party determines that a producing entity has produced unredacted Sensitive PII or CHI, the receiving party shall request the producing entity provide a redacted version, which shall be provided as soon as practicable.

## VI.   PRODUCTION FORMAT

1. **Format.** The parties agree to produce documents in the formats described in Appendix 1 to this order, unless otherwise agreed in writing by a requesting party. The parties agree to produce privilege logs in Excel.

2. **Format of Materials Collected During the Investigation.** Notwithstanding the foregoing, materials collected by USAP during the investigation and materials produced to the FTC by nonparties during the investigation may be produced in the same format as

7

originally collected or produced, respectively. A producing entity may exclude metadata and coding fields set forth in Appendix 1 when producing data for documents collected during the investigation and for which those fields are not available in the form collected.

3. **Cooperation on Format.** If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

4. **Searchability.** The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

## VII. MISCELLANEOUS PROVISIONS

1. **Amendment.** Nothing herein shall preclude the parties from seeking to amend this order, provided that the parties first meet and confer before seeking relief from the Court.

2. **Costs of Document Production.** Unless this Court orders otherwise for good cause shown, each party and nonparty shall bear the costs of collecting, processing, reviewing, and producing its own documents provided they are reasonably accessible.

3. **Integration/Appendices.** The following documents are incorporated herein by reference:

    a.  "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.

Pursuant to stipulation, **IT IS SO ORDERED.**

Dated: October 3, 2024

Kenneth M. Hoyt
United States District Judge

## APPENDIX 1: PRODUCTION FORMAT

A. **Cover Letter.** A cover letter shall be included with each production and shall include (1) the producing entity's name; (2) the production date; (3) the production volume name or number (e.g. VOL001); (4) information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, Secure FTP); and (5) the Bates number range of the materials contained in the production volume.

B. **Entire Document.** Except for privileged material, the producing entity will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. Notwithstanding this paragraph embedded links without attachments or references to linked documents which are not attached (by way of example only, a website on the public internet) need not be included. Attachments must be produced along with the document to which they are attached, regardless of whether they have been produced separately. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately.

C. **Production Components.** Except as otherwise provided below, discovery materials shall be produced in accordance with the following specifications:

  1. An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

  2. An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3. TIFF images single-page: Black and White, Compression Group 4 300dpi and a party can make a reasonable good faith and limited request for production of a color JPEG file after conferring with opposing counsel;

4. Document level.TXT files for all documents containing extracted full text or OCR text;

5. Parent-child relationships will be maintained in production;

6. Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user created content routinely excluded during processing (for example embedded images), and (2) documents that are withheld on the basis of attorney-client privilege or work product protection;

If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

D. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media. Nothing in this order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmital of produced documents. Any copies made of produced data must be kept on media or hardware employing

whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

E. **Data Load Files/Image Load Files.** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

F. **Metadata Fields.** With the exception of the hard copy paper documents, which are separately addressed in paragraph N below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document to the extent reasonably practicable. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) ALTERNATIVE

CUSTODIAN(S), (g) CONFIDENTIALITY (except for documents already produced to the FTC during the investigation and which by agreement of the parties and the Protective Order in this case are automatically Highly Confidential if previously designated Confidential), (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH, which should be populated by the producing entity or the entity's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name[1] | Field Description (when applicable/available) |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PARENT ID | Document ID or Beginning Bates number of the parent email |
| CUSTODIAN | Individual identified for collection and from whom the document originated |
| ALT CUSTODIAN(S) | Identified Custodian(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI protocol order.

| Field | Description |
|---|---|
| HASHVALUE | MD5 or SHA1 hash value of document (only if no deuplicaiton is utilized) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| ORIGINATING PATH | File path of the file as it resided in its original environment |
| REDACTIONS | Indicate Yes if a document is redacted. If no leave blank. |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use |

|  | of email threading. (Microsoft application documents only) (only if no email threading is utilized) |
|---|---|
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAILSUBJECT | Subject Line of email |
| TIMESENT | Time email was sent |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |
| RECEIVETIME | Time email was received |
| FILENAME | File Name of the edoc or email |
| TITLE | Any value populated in Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |

G. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and

necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF forma, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing entity retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats. Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing entity shall provide a higher quality TIFF image or the native or original file.

H. **Color.** A party that received a production may make reasonable good faith and limited requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI protocol order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the producing entity. If a producing entity wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

I. **Text Files.** A single multi-page, document-level text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted

portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

J. **Native Files.** Spreadsheets (e.g. MS Excel) and presentations (e.g. MS PowerPoint) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced as native redactions or in TIFF, with OCR Text Files post redaction. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph F above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

K. **Request for Other Native Files.** Other than as specifically set forth above, a producing entity need not produce documents in native format. If a party would like a particular document produced in native format and this ESI protocol order does not require the production of that document in its native format, the party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. The producing party need only produce such a document in native format if reasonably practicable. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

L. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with any order regarding confidentiality entered in this matter. Each responsive document produced in native format will have its

confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

M. **Databases and Other Structured Data.** Data compilations should be submitted separately from document productions. The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the requesting party and that its production does not impose an undue burden on the producing entity. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

N. **Paper Documents.** A producing entity may scan paper documents using OCR technology and searchable ASCII text files shall be produced, unless otherwise agreed by the parties. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) Beg Bates, (b) End Bates, (e) Custodian, (f) Confidentiality, and (g) Redacted. Paper documents should be logically unitized for production to the extent reasonably practicable. When scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The parties will make reasonable efforts to unitize documents correctly. Where a document or a document group – such as folder, clipped bundle, or binder has an identification spine or other label, the information on the label

shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

O. **Date and Time.** No party shall modify the date or time as contained in any original ESI. This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

P. **Time Zone.** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g. Central Standard Time) and the time zone shall be disclosed to the requesting party.

Q. **Auto Date/Time Stamps.** To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

R. **Hidden Text.** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

S. **Password-Protected, Encrypted, or Proprietary-Software Files.** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing entity will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing entity shall advise the requesting party by producing a placeholder TIFF image stating "Technical Issue." ESI that cannot be reviewed because proprietary software is

necessary to view the ESI will be disclosed to a requesting party, and the parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

T. **Submission Guidelines.**

1. Where possible, productions should be submitted via secure File Transfer Protocol, such as Accellion. Where not possible, adhere to the following guidelines:

    a. For productions over 10 gigabytes that cannot be submitted via a secure File Transfer Protocol, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

    b. For productions under 10 gigabytes that cannot be submitted via a secure File Transfer Protocol, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

2. Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.