# EXHIBIT A

# KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

---

(202) 326-7900

FACSIMILE:
(202) 326-7999

September 9, 2024

*Via Hand-Delivery*

Horizon Medical Center
c/o Kim Uskovich
1722 Routh Street, Suite 900
Dallas, Texas 75201

      Re:    *FTC v. U.S. Anesthesia Partners, Inc.*, No. 4:23-cv-03560-KH (S.D. Tex.)

Dear Sir/Madam:

     I write on behalf of my client U.S. Anesthesia Partners, Inc., which is a defendant in the above-captioned litigation. Enclosed is a subpoena that USAP has served concurrent with the transmission of this letter. USAP appreciates that responding to this subpoena may impose a burden, but it has determined that the requested information is important to its defenses. We hope to work with you to simplify the process associated with your response to the subpoena as much as possible, and we stand ready to discuss these matters with you at your convenience.

                                                               Sincerely,

                                                               /s/ *Kenneth M. Fetterman*

                                                               Kenneth M. Fetterman

Enclosures

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| Federal Trade Commission <br> *Plaintiff* <br> v. <br> U.S. Anesthesia Partners, Inc. <br> *Defendant* | ) ) ) ) ) ) Civil Action No. 4:23-CV-03560-KH |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Horizon Medical Center c/o
Kim Uskovich, 1722 Routh Street, Suite 900, Dallas, Texas 75201

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Appendix A

| Place: Veritext Dallas <br> 600 North Pearl Street, Suite 2230 <br> Dallas, Texas 75201 or a mutually agreed-upon location | Date and Time: <br> 10/09/2024 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/09/2024

*CLERK OF COURT*

OR

_____         /s/ Kenneth M. Fetterman
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* U.S. Anesthesia Partners, Inc._____, who issues or requests this subpoena, are:

Kenneth M. Fetterman, 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, kfetterman@kellogghansen.com, (202) 326-7988

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-CV-03560-KH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# APPENDIX A

# DEFINITIONS

1. "Action" means the case captioned *Federal Trade Commission v. U.S. Anesthesia Partners, Inc.*, No. 23-cv-03560 (S.D. Tex.), including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

2. "Acquired Practices" means and includes each of Greater Houston Anesthesiology, P.A.; Lake Travis Anesthesiology; Pinnacle Anesthesia Consultants; North Houston Anesthesiology; Anesthesia Consultants of Dallas; Excel Anesthesia, P.A.; BMW Physicians; Medical City Physicians; East Texas Anesthesiology Associates, P.A.; Sugarland Anesthesia PLLC; Metrowest Anesthesia Care PLLC; Capital Anesthesiology Association; Amarillo Anesthesia Consultants, P.A.; Star Anesthesia P.A.; Guardian Anesthesia Services, Inc.; and Guardian Anesthesia Services, PLLC.

3. "Agreement" means any oral or written contract, arrangement, or understanding, whether formal or informal, between two or more Persons, together with all addenda or amendments thereto.

4. "Anesthesia Services" means all services offered by Clinicians to patients undergoing surgical or nonsurgical procedures in an outpatient or inpatient setting requiring the administration of an anesthetic or analgesic. These types of services include preoperative visits, the administration of medication, fluids, and/or blood during surgery, monitoring services during surgery, and postoperative visits. The type of anesthesia offered during surgery includes general anesthesia, regional anesthesia, and local anesthesia. The term "Anesthesia Services" also includes any pain management services offered to a patient by Clinicians, including postoperative pain management services, or services designed to manage pain resulting from acute or chronic injuries or conditions.

1

5. "Anesthesia Service Provider" means an entity engaged in employing and/or contracting of anesthesia Clinicians, and providing, by or under the supervision of physicians, Anesthesia Services in either an inpatient or outpatient setting.

6. "Balance Billing" means the practice of a healthcare service provider (including any Anesthesia Services Provider) billing a patient for the difference between the provider's charge for a service and the amount the patient's insurance has paid. This includes when a patient receives care from an Out-of-Network provider, and the Commercial Healthcare Insurer pays only a portion of the billed amount based on their Out-of-Network Reimbursement Rates.

7. "Clinicians" means physician anesthesiologists, certified registered nurse anesthetists ("CRNA"), certified anesthesiology assistants ("CAAs"), nurse practitioners, or registered nurses.

8. "Coinsurance" means the set percentage of covered charges (i.e., the charges recognized by the Health Plan) that a Health Plan enrollee must pay out-of-pocket for each episode of healthcare covered by the enrollee's Health Plan.

9. "Commercial Healthcare Insurer" means a publicly or privately held entity that provides businesses and individuals with healthcare insurance coverage and/or administrative services necessary to utilize the healthcare insurance coverage it offers. Such administrative services may include benefits enrollment, premiums collection, claims processing and adjudication, healthcare provider network establishment, negotiation of Reimbursement Rates with healthcare providers, and compliance measures.

10. "Communication" means the transmittal of information or request for information, including, but not limited to, any written contact between two or more people by such means as letters, memoranda, facsimile transmissions, text messages, instant messages, and

emails, as well as any oral discussion by such means as face-to-face meetings and telephone or video conversations.

11.  "Complaint" means the Complaint filed in the Action by Plaintiff Federal Trade Commission on September 21, 2023.

12.  "Concern" or "Concerning" means relating to, in relation to, comprising, constituting, containing, regarding, referring to, describing, discussing, embodying, evidencing, exhibiting, identifying, memorializing, mentioning, recording, showing, studying, analyzing, reflecting, pertaining to, supporting, refuting, responsive to, or with respect to a given subject matter.

13.  Copay" means the set fee that a Health Plan enrollee must pay out-of-pocket for each episode of healthcare covered by the enrollee's Health Plan."

14.  "Date" means the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

15.  "Deductible" means the set amount that a Health Plan enrollee must pay out-of-pocket each year for healthcare services before the enrollee's Health Plan benefits go into effect.

16.  "Document" or "Documents" means all documents or Electronically Stored Information or data as defined in Federal Rule of Civil Procedure 34(a), including all copies where the copy is not identical to the original. For the avoidance of doubt, "Document" or "Documents" shall be construed to include Communications.

17.  "Electronically-Stored Information" or "ESI" means all Documents or data that are stored in any electronic medium from which information can be obtained.

18. "Federal No Surprises Act" refers to the legislation enacted by Congress in 2020, at Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (2020), and codified at 42 U.S.C. §§ 300gg-11, 300gg-131, 300gg-132, with implementing regulations at 45 C.F.R. § 149.

19. "FTC Investigation" means the Federal Trade Commission's investigation undertaken pursuant to the July 1, 2021 Resolution of the Commissioners, File No. P210100, pursuant to which it issued Civil Investigative Demand ("CID") No. 2010031 to USAP, and includes all activities taken in connection with that investigation, including obtaining information and testimony from non-parties to the investigation.[1]

20. "Fully Insured" means any arrangement by which a Health Plan is directly responsible for paying the provider claims generated by the healthcare consumption of its members.

21. "Health Plan" means any health maintenance organization, managed healthcare organization, preferred provider arrangement or organization, managed healthcare plan of any kind, Fully Insured health benefit plan, Self-Insured health benefit plan, other employer or union health benefit plan, Medicare, Medicaid, TRICARE, or private or governmental healthcare plan, or health insurance of any kind.

22. "Hospital" means an institution or group of institutions engaged in providing, by or under the supervision of physicians, inpatient and outpatient diagnostic, therapeutic, and rehabilitation services.

23. "In-Network" means that a healthcare provider has an Agreement with a Commercial Healthcare Insurer under which the healthcare provider agrees to provide services to

---

[1] The FTC has at times referred to the FTC Investigation as File Nos. 201003 and 20100031. For the avoidance of doubt, the definition of "FTC Investigation" includes those file numbers, whether or not they describe matters that differ from that authorized through the July 1, 2021 Resolution of the Commissioners.

the Commercial Healthcare Insurer's members at pre-negotiated rates and are part of the Commercial Healthcare Insurer's healthcare provider network.

24. "Inpatient Services" (as characterized in the FTC's Complaint and for purposes of this litigation only) means the provision of medical services that require at least one overnight stay in a Hospital or other facility, including observation stays, or at least 24-hour nursing care.

25. "Network Status" means a healthcare provider's status with Commercial Healthcare Insurers, and whether the healthcare provider is In Network or Out of Network with a particular Commercial Healthcare Insurer.

26. "Out-of-Network" means that a healthcare provider does not have an Agreement with a Commercial Healthcare Insurer under which the healthcare provider agrees to provide services to the Commercial Healthcare Insurer's members at pre-negotiated rates and are not part of the Commercial Healthcare Insurer's healthcare provider network.

27. "Outpatient Services" (as characterized in the FTC's Complaint and for purposes of this litigation only) means the provision of medical services that do not require an overnight stay in a Hospital or other facility.

28. "Payor" means any Person that pays or reimburses in whole or in part for the administration, provision, or sale of healthcare services (including Anesthesia Services), including, but not limited to, federal and state government programs such as TRICARE, Medicare, and Medicaid, Commercial Healthcare Insurers, employee health and welfare plans, and individual patients that are Self-Insured.

29. "Person" means any person and includes natural persons, corporations, firms, partnerships, proprietorships, associations, joint ventures, States, Territories, government agencies or entities, and other enterprises or legal entities.

30. "Reimbursement Rates" mean the money a Payor provides to an Anesthesia Service Provider to compensate the Anesthesia Service Provider for providing Anesthesia Services to patients.

31. "Relating to," "relate to," "related to," or "in relation to" mean concerning, constituting, regarding, referring to, describing, discussing, embodying, evidencing, memorializing, mentioning, recording, studying, analyzing, reflecting, pertaining to, supporting, refuting, responsive to, or with respect to.

32. "Self-Insured" means any arrangement by which an employer or other Health Plan customer is directly responsible for paying Provider claims generated by the healthcare consumption of its employees or other members. The term includes and refers to, without limitation, Administrative Services Only ("ASO") arrangements.

33. "Subsidy" means an amount paid by a Hospital to an Anesthesia Service Provider to cover shortfalls or anticipated shortfalls between the provider's revenue and the costs of providing the Anesthesia Services required by the Hospital, whether paid annually, semi-annually, quarterly, or monthly, including any financial arrangement under which a hospital agrees to ensure that the Anesthesia Service Provider receives a minimum level of net revenue.

34. "Texas Surprise Billing Law" means the legislation entitled Elimination of Surprise Billing for Certain Health Benefit Plans, S.B. No. 1264 (2019), Act of June 14, 2019, 86th Leg., R.S., ch. 1342 § 5.01, 2019 Tex. Sess. Law Serv. 3977.

35. "USAP" means U.S. Anesthesia Partners, Inc., and any predecessors thereof, including, but not limited to, the Acquired Practices.

36. "Welsh Carson" means Welsh, Carson, Anderson & Stowe XI, L.P., WCAS Associates XI, LLC, Welsh, Carson, Anderson & Stowe XII, L.P., WCAS Associates XII, LLC,

6

WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC, any and all of them, and to any and all of their respective subsidiaries, divisions, affiliates, predecessors and successors, their past and present directors, officers, employees, agents, representatives, consultants, attorneys and assignees, and to all Persons either acting or purporting to act on their behalf.

37. "You" and "Your" refers to Horizon Medical Center, including, but not limited to, any related entities; its domestic and foreign parents, predecessors, successors, divisions, components, subsidiaries, affiliates, partnerships, joint ventures, agents, representatives, consultants, contractors, employees, attorneys, experts, economists, and any other Person(s) acting or purporting to act with or on its behalf. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between You and any other Person.

The definitions set forth above shall apply to all requests.

## GENERAL INSTRUCTIONS

1. In answering each request, You shall produce all responsive Documents, however held or obtained, that are in Your possession, custody, or control, including, but not limited to, legal (de jure), actual (de facto), constructive, and practical possession, custody, or control of Your officers, directors, employees, contractors, counsel, auditors, insurers, investigators, consultants, agents, or other representatives acting for or on Your behalf, or that are maintained in Your records, including, but not limited to, Documents obtained through discovery or pre-suit investigation in this or any other proceeding. A Document is deemed to be in Your possession, custody, or control if You have possession of the Document, have the right to secure such Document or Communication from another Person having possession thereof, or the Document or Communication is reasonably available to You (including those Documents and

7

Communications in the custody or control of Your present employees, attorneys, agents, or other Persons acting on Your behalf).

2. Each request that seeks Documents concerning Communications to, from, or within a governmental, business, or corporate entity means all Communications to, from, between, or among representatives, officers, officials, directors, employees, agents, servants, and anyone acting on behalf of such entity.

3. The singular form shall include the plural and vice versa wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

4. The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

5. The words "any," "each," and "every" shall be construed to mean individually and collectively wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

6. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of a request all information that might otherwise be construed to be outside of its scope.

7. Each request seeks production of all Documents and things described, along with any addenda, attachments, appendices, drafts, and non-identical copies, as found or located in Your files, together with a copy of the descriptive file folder or database category in its entirety.

8. All Documents should be produced in the order in which they appear in Your files, organized by source, and should contain a clear indication of where each Document ends and the next begins. Documents that are found in boxes, file folders, bindings, or other containers are to be left intact as kept. Documents maintained in a file folder or binding should be preceded by the file folder or binding label, if one exists, and should contain a clear indication of where the file folder or binding begins and ends. All attachments to a Document should be produced with the Document. A unique Bates number should be affixed to each page, except as otherwise provided for by any protocols ordered by the Court in this Action.

9. If any request cannot be responded to completely, respond to it to the extent possible, specify the portion(s) that cannot be responded to, and explain why any such portion(s) cannot be responded to.

10. If Documents are withheld under any claim of privilege, including, but not limited to, attorney-client privilege, work product doctrine, deliberative process privilege, investigative files privilege, and/or law enforcement privilege, provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) and any protocols ordered by the Court in this Action. Such log shall, at a minimum, identify each such Document, state the specific basis for the claim of privilege for each Document withheld, and provide the following information: (1) the date appearing on the Document; (2) a description of the subject matter and general nature of the Document (e.g., whether it is a letter, memorandum, email, etc.); (3) the author of the Document; and (4) the identity of each Person to whom the Document was addressed and the identity of each Person to whom a copy was sent.

11. If You object to any request made herein as unduly broad, identify the categories of Documents within the scope of the request that You believe are properly discoverable,

produce all such Documents, and state, with particularity, Your reason for asserting that the remainder of the request seeks Documents that are beyond the scope of permissible discovery.

12. Each request shall be construed independently and, therefore, no request shall be construed to limit any other request.

13. All Documents produced should comply with the ESI Protocol attached hereto as Exhibit 1 or otherwise adhere to any Order entered in this Action, with the exception that any responsive ESI that has already been produced to any government agency or entity by a third party may be produced in the same format in which it was produced to that government agency or entity and with the same confidentiality designation.

14. These requests are continuing in nature. If further information, evidence, or documentation comes into Your possession, custody, or control or is brought to the attention of You or Your attorneys or agents at any time subsequent to the service of any responses to these requests or the production of any Documents, prompt and complete supplementation of the responses to these requests and the corresponding production is required pursuant to the Federal Rules of Civil Procedure.

15. Unless otherwise stated, the relevant time period for all requests is from January 1, 2012, to the present.

16. Please contact USAP counsel Kenneth Fetterman of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. at kfetterman@kellogghansen.com or (202) 326-7988 to discuss how You intend to produce the Documents.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications – including, but not limited to, Communications between You and Your representatives, on the one hand, and any third party, including

10

governmental entities, on the other – relating to the Complaint, the Action, the FTC Investigation, or any purported anticompetitive conduct by USAP or Welsh Carson. This request includes, but is not limited to, all Documents produced in response to any subpoena, civil investigative demand, information request, informal request, or document request or any other request for information (voluntary or compelled) issued or made in any investigation, the FTC Investigation, the Action, or any related action.

**REQUEST FOR PRODUCTION NO. 2:**

For January 1, 2010, to the present, Documents sufficient to identify, on an annual basis, each Anesthesia Services Provider that has provided Anesthesia Services at Your facility/facilities. For each such provider, provide the following:

a. The provider's name;

b. The provider's address (including zip code);

c. The provider's medical specialty and subspecialty (whether formal or informal);

d. The provider's unique identifier, such as National Provider Identifier, UPIN (Unique Provider Identification Number);

e. The tax identification used for any billing or charging by or on behalf of the provider;

f. The name, address (including zip code) and Medicare Provider Number of each of Your facilities at which the provider has offered services or maintains medical staff privileges; and

g. All contracts and Agreements with any Anesthesia Service Provider (other than USAP) with which You have contracted, including any amendments or addenda thereto.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and Communications reflecting any evaluation or analysis (whether by You or by a consultant or other third party acting on Your behalf) of any Anesthesia Service Provider in connection with any decision to contract with, renew, extend, or terminate a contract with that

provider or in connection with the process of changing to or adding a new Anesthesia Service Provider, including any difficulties involved in doing so.

**REQUEST FOR PRODUCTION NO. 4:**

Documents and Communications reflecting any evaluation or analysis (whether by You or by a consultant or other third party acting on Your behalf) relating to You directly employing Clinicians instead of or in addition to contracting with third-party Anesthesia Service Providers.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications relating to any Subsidy You paid to any Anesthesia Service Provider from January 1, 2010, to the present, including any negotiations over the amount of the Subsidy, any proposals made by You or the Anesthesia Service Provider regarding the Subsidy, and any analysis, evaluation or calculation related to any such proposal (whether by You or by a consultant or third party acting on Your behalf).

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to show how You calculate, evaluate, or assess the amount of any Subsidy that You have considered paying, or proposed or agreed to pay, to any Anesthesia Service Provider.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the amount of Subsidy that You paid to any Anesthesia Service Provider, on an annual basis, from January 1, 2010, to the present, including the identity of the Anesthesia Service Provider(s) and the Subsidy paid to each.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications relating to any shortage of Clinicians or Anesthesia Service Providers in the state of Texas.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show the payor mix and sources of volume and revenue at Your facility/facilities – i.e., the percentage of volume and revenues that arise from federal and state government programs such as TRICARE, Medicare, and Medicaid; Commercial Health Insurers; health-and-welfare funds; and individual patients.

**REQUEST FOR PRODUCTION NO. 10:**

For each request for proposal, invitation to bid, or analogous solicitation (collectively, "RFP") You issued for Anesthesia Services, provide the following:

   a. The RFP;

   b. The responses You received to the RFP;

   c. Your evaluations or assessments of the responses You received, the factors You considered in deciding which Anesthesia Service Provider(s) to retain, and all Communications related to any such evaluation or assessment; and

   d. Documents sufficient to identify the Anesthesia Service Provider You selected for Your facility/facilities.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents or data (whether prepared by You or by a consultant or third party acting on Your behalf) evaluating, assessing, or comparing the quality of Anesthesia Services provided by any Anesthesia Service Provider, including any evaluation, assessment, or comparison of the quality of the Anesthesia Service Providers with which You contract.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents or data showing, identifying, or defining the quality reporting You require from Anesthesia Service Providers, as well as any quality metrics relating to the provision of Anesthesia Services that You capture or measure, including any changes over time.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents or data showing the methods of quality reporting You use in connection with Anesthesia Services, including any changes over time.

**REQUEST FOR PRODUCTION NO. 14:**

All Communications with Commercial Healthcare Insurers regarding Reimbursement Rates provided to Anesthesia Service Providers.

**REQUEST FOR PRODUCTION NO. 15:**

Documents and Communications reflecting any terms in Your contracts with Commercial Health Insurers that impact Reimbursement Rates based on whether Your Hospital-based providers are In-Network and/or contingent on Your Hospital-based provider having a "reasonable" Reimbursement Rate.

**REQUEST FOR PRODUCTION NO. 16:**

All Communications with Commercial Healthcare Insurers regarding any Subsidy that You offer or pay to Anesthesia Service Providers in connection with the Anesthesia Services provided at Your facility/facilities.

**REQUEST FOR PRODUCTION NO. 17:**

All Communications with any Commercial Healthcare Insurer concerning Your actual or potential relationship with any Anesthesia Service Provider, including, but not limited to, whether the Anesthesia Service Provider is In-Network or Out-of-Network with the Commercial Healthcare Insurer.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications referring or relating to the Network Status of those Anesthesia Service Providers that provide Anesthesia Services at Your facility/facilities,

including any internal policies requiring Anesthesia Service Providers to be In Network with any Commercial Healthcare Insurer.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications relating to, evaluating, or assessing an exclusive arrangement for the provision of Anesthesia Services at Your facility/facilities between You and an Anesthesia Service Provider, including, but not limited to, any advantages or disadvantages associated with an exclusive arrangement.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications discussing, evaluating, or assessing USAP, including, but not limited to, the pricing or quality of USAP's Anesthesia Services.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications referring or relating to USAP's or any other Anesthesia Service Provider's actual or potential acquisition of the Acquired Practices or any other Anesthesia Service Provider, including assessments of advantages or disadvantages, including any Communications with USAP, the relevant Acquired Practices, Commercial Healthcare Insurers, or any Anesthesia Service Provider regarding such acquisitions.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications analyzing, evaluating, measuring, or assessing the actual or potential impact of the Federal No Surprises Act or the Texas Surprise Billing Law on You, other Hospitals, Commercial Healthcare Insurers, and/or healthcare service providers, including, but not limited to, any impact on negotiations or negotiating strategy among Hospitals, Commercial Healthcare Insurers, and/or healthcare service providers.