IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ANESTHESIA PARTNERS, INC., et al.<br><br>Defendants. | Case No.: 4:23-CV-03560-KH |

**DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S MOTION TO COMPEL
NORTHWEST ANESTHESIOLOGY & PAIN SERVICES, P.A.
TO PRODUCE ITS FACILITY AND PAYOR CONTRACTS**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..............................................................1

ISSUE TO BE DECIDED BY THE COURT..........................................................................4

LEGAL STANDARD...............................................................................................................4

ARGUMENT............................................................................................................................5

I. NWAP's facility and payor contracts are highly relevant to USAP's defenses. .................5

II. Any burden to NWAP is reasonable under the circumstances. ..........................................7

III. NWAP's supposed costs of compliance are unreasonable. ................................................9

IV. NWAP has no valid confidentiality objection. ..................................................................11

CONCLUSION.........................................................................................................................12

## TABLE OF AUTHORITIES

Page

**CASES**

*Application of Michael Wilson & Partners, Ltd., for Jud. Assistance Pursuant to 28 U.S.C. § 1782*, In re, 2012 WL 1901218 (D. Colo. Mar. 19, 2012), *report and recommendation adopted*, 2012 WL 1901217 (D. Colo. May 24, 2012), *aff'd*, 520 F. App'x 736 (10th Cir. 2013) .................................................................. 10

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 200 F.R.D. 586 (W.D. Tex. 2000) ............. 10

*Dexon Comput., Inc. v. Cisco Sys., Inc.*, 2023 WL 2730656 (E.D. Tex. Mar. 31, 2023) ........ 5-6, 7

*Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, In re, 555 F.2d 1306 (5th Cir. 1977) ......... 9

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005) ...................................................... 4

*Pandora Media, LLC v. Spoken Giants, LLC*, 2023 WL 9421132 (C.D. Cal. Dec. 6, 2023) ....... 11

*Peskoff v. Faber*, 233 F.R.D. 207 (D.D.C. 2006) ........................................................................... 8

*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) .................................................................... 4, 6

*Shields v. Elevated Energy Sols., LLC*, 2020 WL 5658499 (S.D. Tex. Sept. 23, 2020) ............ 9-10

*Sines v. Kessler*, 325 F.R.D. 563 (E.D. La. 2018) ........................................................................ 10

*Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979) ................................................. 4

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ..................................... 4, 5, 7

*United States ex rel. Eichner v. Ocwen Loan Servicing LLC*, 2024 WL 2922979 (E.D. Tex. June 10, 2024) ...................................................................... 11

**RULES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 4, 5

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................................................................... 10

# INTRODUCTION

U.S. Anesthesia Partners, Inc. ("USAP") brings this motion to compel Northwest Anesthesiology & Pain Services, P.A. ("NWAP") to produce a discrete set of contracts with medical facilities and health insurance companies.

This case involves a claim by the Federal Trade Commission ("FTC") that Defendant USAP has monopolized the market for "commercially insured hospital-only anesthesia services" in Houston and elsewhere. The FTC alleges that USAP used its supposed market power to obtain favorable terms in its contracts with insurance companies, and to win exclusive services contracts with Houston-area hospitals. *E.g.*, Compl. ¶¶ 118, 311. To support its defenses, USAP subpoenaed NWAP, the owner of one of the competing anesthesia providers identified in the complaint, *id.* ¶ 272, seeking production of NWAP's contracts with facilities and insurers. USAP expects that these contracts will show that the terms the FTC ascribes to USAP's alleged market power are common in the industry regardless of market power, and that there is robust competition to service Houston-area hospitals.

NWAP refuses to produce the contracts at issue. There is no serious dispute about their relevance. Instead, NWAP principally asserts that it is unduly burdensome to produce them and that it will withhold even the 70 or so current versions of these contracts unless USAP commits to reimburse NWAP up to $75,000 of costs.

The Court should grant USAP's motion to compel. NWAP's purported costs of compliance are neither credible nor justifiable as a matter of law, and none of its other excuses outweighs the probative value of the evidence sought.

## NATURE AND STAGE OF THE PROCEEDINGS

The FTC filed its complaint on September 21, 2023, claiming that USAP monopolized the alleged market for the provision of "commercially insured hospital-only anesthesia services"

1

in the Houston, Dallas, and Austin Metropolitan Service Areas. It alleges that USAP's "scheme began" in Houston with its acquisition of Greater Houston Anesthesiology in 2012. Compl. ¶ 4. The FTC alleges that USAP's monopolization of the Houston area is shown by, among other things, USAP's ability to maintain a "broad network of exclusive facility contracts in Houston" as well as "the highest contracted reimbursement rates of any provider in Houston." *Id.* ¶ 118.

NWAP is a major competitor to USAP in Houston. NWAP was formed in 1995, and currently has five wholly owned subsidiaries: Best Choice Anesthesia & Pain PLLC, Bayou Anesthesia & Pain PLLC, Lonestar Anesthesia Solutions, Lonestar Spine & Pain Consultants, and Spring Woodlands Anesthesia. Ex. 1 (2024 Texas Franchise Public Information Report). NWAP represents on its website that it has served the Houston market for more than 28 years, operates more than 30 clinical sites, employs more than 120 anesthesia providers, and covers more than 60,000 cases annually.[1]

Discovery in this case began on May 13, 2024. To refute the FTC's account of the industry in which USAP competes, USAP issued subpoenas to NWAP and other competing anesthesia service providers in Houston and elsewhere in Texas. USAP issued its subpoena to NWAP on September 9, 2024. Ex. 2 (USAP Subpoena to NWAP). The subpoena sets forth a default "relevant time period" from January 1, 2012, to the present. *Id.* The subpoena contained 27 Requests for Production ("RFP"), but, in an effort to minimize the burden on NWAP, USAP has narrowed its subpoena to seek only two categories of documents and information: (1) NWAP's contracts with healthcare facilities (RFP No. 2), and (2) agreements between NWAP and commercial healthcare insurers (RFP No. 18). *Id.*

---

[1] *See* https://www.nwapservices.com/ (last visited Feb. 26, 2025 at 3:00pm ET).

2

NWAP produced 11 documents on November 12, 2024, including lists of NWAP's current facility and payor contracts, but none of the contracts themselves. *See* Ex. 3 (NWAP000011) (list of facility contracts); Ex. 4 (NWAP000016) (list of payor contracts).[2] USAP and NWAP have subsequently met and conferred a number of times. USAP has explained that it needs NWAP's actual contracts, not just lists of them. Ex. 5 (Email from D. Howe to A. Wirmani, Dec. 10, 2024) ("USAP needs NWAP to produce its facility and payor contracts in their entirety."). On December 12, 2024, NWAP indicated that it would seek consent from its contract counterparties to produce their respective contracts, and informed USAP that it had "begun the process of making written requests of the facilities and providers" to obtain those consents. Ex. 6 (Email from A. Wirmani to D. Howe, Dec. 12, 2024).

USAP sought updates from NWAP regarding its anticipated timing for production of its facility and payor contracts throughout January. Ex. 7 (Email from D. Howe to A. Wirmani, Jan. 7, 2025); Ex. 8 (Email from D. Howe to A. Wirmani, Jan. 17, 2025). On January 20, 2024, NWAP abruptly reversed course and informed USAP that producing its facility and payor contracts would be "too onerous for third-party discovery," and that NWAP would therefore "stand on [its] objections for the time being." Ex. 9 (Email from A. Wirmani to D. Howe, Jan. 20, 2024).

In response, USAP informed NWAP that it intended to file a motion to compel production of these contracts. Ex. 10 (Email from D. Howe to A. Wirmani, Feb. 19, 2025). NWAP then changed its position again, offering to produce the current versions of its facility and

---

[2] The remaining documents were various components of NWAP's billing policy, in purported response to USAP's RFP No. 17, and several emails between an NWAP anesthesiologist and the FTC regarding the FTC's antitrust lawsuit against USAP, in response to USAP's RFP No. 1. A subsequent production in December consisted of 41 documents responsive to a different RFP that is not at issue here.

3

payor contracts but only on the condition that USAP "agree to pay the costs associated with such a production, which would include efforts to obtain consent if required by the underlying contract, counsel time, and administrative costs." Ex. 11 (Email from A. Wirmani to D. Howe, Feb. 19, 2025). NWAP estimated those costs to be in the range of $50,000 to $75,000. Ex. 12 (Email from A. Wirmani to D. Howe, Feb. 20, 2025). USAP refused that demand, and the parties reached impasse.

## ISSUE TO BE DECIDED BY THE COURT

Whether the Court should compel NWAP, one of USAP's major competitors in Houston, to produce its contracts with medical facilities and health insurance companies pursuant to USAP's subpoena to NWAP.

## LEGAL STANDARD

Federal Rules of Civil Procedure 26(b) and 45 allow a party to a lawsuit to obtain discovery from a non-party if the requested discovery is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Under the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004) (quoting *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979)). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).

Whether the discovery sought is "proportional to the needs of the case" turns on a consideration of "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Whether a burdensome subpoena is reasonable must be

4

determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (cleaned up).  In determining whether a subpoena is unduly burdensome, courts consider "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* at 818.

## ARGUMENT

The Court should compel NWAP to produce its facility and payor contracts, which are a discrete set of contracts that are plainly relevant to this litigation.  The FTC's central allegations concern purportedly anticompetitive aspects of USAP's own contracts with facilities and payors.  Accordingly, evidence that those features are similarly present in competing providers' contracts would show that such provisions are commonplace, not driven by alleged market power, and fully consistent with a dynamic and competitive market.  That probative value outweighs the burden to NWAP of producing these contracts, including any supposed burden from the process of obtaining the requisite consents from its counterparties.  There is no support for NWAP's demand that USAP guarantee its costs of compliance, to the tune of potentially over $1,000 per contract.  Finally, the stringent Protective Order in this case addresses all of NWAP's confidentiality concerns.

## I. NWAP's facility and payor contracts are highly relevant to USAP's defenses.

USAP's requests for NWAP's facility and payor contracts easily meet the modest threshold for discoverability.  *See* Fed. R. Civ. P. 26(b)(1).  That standard is particularly permissive in a complex antitrust case, like this one, requiring wide-ranging and fact-intensive inquiries into multiple different industries.  *See, e.g.*, *Dexon Comput., Inc. v. Cisco Sys., Inc.*, 2023 WL 2730656, at *27 (E.D. Tex. Mar. 31, 2023) ("a transaction's effect on competition is

5

often a fact-intensive inquiry that requires discovery"). The facility and payor contracts of USAP's competitors are central to those inquiries: far beyond a mere "possibility" of relevance to the FTC's claims, *Brady*, 238 F.R.D. at 437, they bear directly on key factual issues in the case.

The FTC's complaint is replete with allegations concerning USAP's own facility and payor contracts. With respect to facility contracts, the FTC alleges that USAP negotiates exclusivity agreements with hospitals that squeeze out competing anesthesia providers. *See, e.g.*, Compl. ¶¶ 311 ("USAP has amassed exclusive or nearly exclusive contracts at hospitals throughout Houston, Dallas, and across Texas."), 270 ("Despite charging the highest rates in Houston, USAP did not lose exclusive contracts with any high-volume hospitals or hospital systems."). With respect to payor contracts, the FTC alleges that USAP leverages its market power to negotiate above-market reimbursement rates and employs "tuck-in clauses" to extend these rates to newly acquired practices. *Id.* ¶¶ 118 ("USAP also continues to have the highest contracted reimbursement rates of any provider in Houston."), 155 ("In the end, one insurer after another relented to adding tuck-in clauses into contracts to avoid USAP leaving their networks."). These supposedly anticompetitive features of USAP's facility and payor contracts are core aspects of the FTC's theory of antitrust liability and thus essential to many of its claims.

Discovery into the facility and payor contracts of competing anesthesia providers in Texas is highly relevant to USAP's ability to defend itself against those claims. Evidence that USAP's facility and payor contracts reflect industry-standard practices, as shown by comparison to similar terms in the facility and payor contracts of a major competitor, would be highly probative and exculpatory. Specifically, NWAP's contracts will show that USAP's competitors enter into exclusive arrangements of their own with other hospitals, negotiate comparable

6

reimbursement rates, and similarly integrate new physicians and practice groups into their businesses. They will also help demonstrate the footprint and capacity of these competing practices, many of which are poised to make inroads on USAP's business at the slightest opportunity. *See*, *e.g.*, *Dexon*, 2023 WL 2730656, at *27.

Among the competing anesthesia providers that USAP has subpoenaed, NWAP is a particularly appropriate target for third-party discovery. The FTC's complaint expressly alleges that Best Choice Anesthesia & Pain, one of NWAP's wholly owned subsidiaries, is one of USAP's significant competitors in Houston. *See* Compl. ¶ 272. Moreover, looking beyond the complaint, NWAP is a significant competitor in the Houston metropolitan area and ███████ ███████████████████████████████████████████████ ████████████████████████████████ The Houston area is central to the FTC's narrative: it is the competitive arena where the FTC claims USAP has the highest market share and where USAP's purportedly anticompetitive "scheme began." Compl. ¶¶ 272, 4. Accordingly, exculpatory evidence from competitors in Houston, like NWAP, will be particularly powerful.

## II.   Any burden to NWAP is reasonable under the circumstances.

NWAP has objected to producing its facility and payor contracts principally on "undue burden" grounds. That objection lacks merit. To begin with, the Fifth Circuit's "undue burden" standard incorporates the "relevance of the information requested" and "the need of the party for the documents" as the first two factors of the analysis. *Wiwa*, 392 F.3d at 818. For the reasons explained above, NWAP's facility and payor contracts are centrally relevant to the core issues in this case, and USAP needs discovery into its competitors' contracting practices in order to defend itself from the FTC's claims.

7

While the documents at issue are highly probative and USAP's need for them is strong, any burden of producing them is relatively minor. USAP seeks production of a discrete set of core documents that govern NWAP's business—setting the terms under which it provides its anesthesia services (to healthcare facilities) and the terms under which it receives payment for those services (from commercial insurance payors). NWAP should have no trouble identifying and collecting those documents. Indeed, with respect to the currently operative versions of these contracts, NWAP has already compiled and produced lists that identify *precisely* which facility and payor contracts it would need to produce.

NWAP therefore cannot assert that it is difficult to collect and review these documents. The only burden NWAP has asserted is that "the logistics of getting consent to produce the provider and insurance contracts" are "too onerous for third party discovery." Ex. 9 (Email from A. Wirmani to D. Howe, Jan. 20, 2025). It has offered no support for that alleged burden, and that alone is fatal to its position. *See*, *e.g.*, *Sines v. Kessler*, 325 F.R.D. 563, 565-66 (E.D. La. 2018) ("Proof actually establishing the extent of the alleged undue burden is required to obtain relief, not mere unsupported generalizations, conclusory statements or assertions.").

Moreover, consent to production may not even be required for some of these contracts. Many common confidentiality provisions state that no consent is necessary where disclosure "is required by law." Production of evidence in compliance with a duly issued subpoena is "required by law" under that language, *see*, *e.g.*, *Peskoff v. Faber*, 233 F.R.D. 207, 209 (D.D.C. 2006), so counterparty consent would not be required for any contracts with such terms.

In any event, to the extent production of the contracts requires a counterparty's consent, *requesting* consent to produce these documents entails a minimal burden. NWAP has the contact information for these counterparties, with whom it negotiated the relevant contracts and with

8

whom it presumably maintains regular contact for issues like staffing (of healthcare facilities) and claims processing (by commercial payors). If NWAP had reported to USAP that several of its counterparties had refused their consent to production of the contracts, the situation might be different. But NWAP's claim that even *requesting* consent to produce the contracts is "too onerous for third party discovery" does not stand to reason.

Other non-parties' productions confirm that simply requesting consent is not an undue burden. USAP has subpoenaed other competing anesthesia service providers in Texas, and at least a dozen of these competing providers have now produced at least some of their facility or payer contracts, after obtaining all requisite consents to do so. There is no reason that this process is manageable for other Texas providers, but "too onerous" for NWAP.

**III.    NWAP's supposed costs of compliance are unreasonable.**

Most recently, NWAP has conditioned an offer to produce the current versions of its facility and payor contracts on USAP's agreement "to pay the costs associated with such a production, which would include efforts to obtain consent if required by the underlying contract, counsel time, and administrative costs." Ex. 11 (Email from A. Wirmani to D. Howe, Feb. 19, 2025). NWAP asserts that those costs—for the production of around 70 contracts—could be as high as $75,000. It has provided no support for that assertion; but even if it did, the Court should reject NWAP's demand.

To begin with, the Fifth Circuit has long held that "[a]s a general rule, a witness or the recipient of a subpoena duces tecum is required to bear the costs of compliance." *In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977). Courts reason "that in the main run of cases the cost of compliance will be assumed as part of the public duty of providing evidence." *Id.* "Since some costs can be anticipated in complying with any subpoena duces tecum," courts have quashed a subpoena or shifted costs only "if compliance

9

subjects a person to undue burden." *Shields v. Elevated Energy Sols., LLC*, 2020 WL 5658499, at *4 (S.D. Tex. Sept. 23, 2020) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).

For the reasons explained above, USAP's subpoena does not present an undue burden on NWAP. "This is not a case where the cost of compliance on the non-party is particularly large or excessive—at least with respect to the subpoena at issue. Far from it." *Id.* at *3. USAP seeks production of NWAP's facility and payor contracts—documents to which NWAP has ready access. To the extent production requires the consent of NWAP's counterparties—an uncertain proposition for reasons stated above, at 8-9—NWAP can simply reach out and request that consent. "While there might be some costs associated with this task, they are certainly not overwhelming." *Id.* The Federal Rules do not permit NWAP to force USAP "to pay a standard processing fee, no matter how small, as a precondition to obtaining documents for which [it] has properly issued a subpoena." *Id.* at *4, *3; *see British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 592 (W.D. Tex. 2000) (declining to recommend that the requesting party "pre-pay expected costs or . . . that reimbursement be ordered in any specific amount").

That result is particularly appropriate here, where NWAP has provided no support for its claim that production of approximately 70 current contracts would generate up to $75,000 in costs. *See British Int'l Ins. Co.*, 200 F.R.D. at 592 (denying request for costs where "the present record contain[ed] no specific information"); *In re Application of Michael Wilson & Partners, Ltd., for Jud. Assistance Pursuant to 28 U.S.C. § 1782*, 2012 WL 1901218, at *9 (D. Colo. Mar. 19, 2012) (declining to recommend an award of costs based on respondents' "blanket and conclusory number on a piece of paper"), *report and recommendation adopted*, 2012 WL 1901217 (D. Colo. May 24, 2012), *aff'd*, 520 F. App'x 736 (10th Cir. 2013). Those claimed costs beggar belief. NWAP essentially claims that production of around 70 documents could

require 150 hours of attorney time (assuming a billing rate of $500/hour). This is instead a case where NWAP's costs of production "could potentially be insignificant," *United States ex rel. Eichner v. Ocwen Loan Servicing LLC*, 2024 WL 2922979, at *9 (E.D. Tex. June 10, 2024), as the work entailed would require little more than (1) checking the confidentiality clauses in the contracts; (2) contacting the counterparty if consent is required; and (3) preparing 70 documents for production. *See also Pandora Media, LLC v. Spoken Giants, LLC*, 2023 WL 9421132, at *7 (C.D. Cal. Dec. 6, 2023) (denying a request to shift costs because "[a]bsent evidentiary support, the [court could not] determine what expenses would result from typical costs of compliance, and which may result from unnecessary expenses").

## IV. NWAP has no valid confidentiality objection.

NWAP initially objected to producing its facility and payor contracts on the ground that they contain "confidential and proprietary information." Ex. 14 (NWAP responses and objections). It is not clear whether NWAP continues to rely on that objection. *Compare* Ex. 9 (email asserting that NWAP will "stand on its objections"), *with* Ex. 12 (email offering to produce the documents if USAP pays up to $75,000, without any suggestion that a confidentiality issue would remain). To the extent it does seek to invoke that objection, it is meritless. This Court has entered a robust, two-tiered Protective Order including a designation for "Highly Confidential" material that, "if disclosed, is likely to cause significant competitive or commercial harm." Dkt. No. 149-1 at 2. Material designated "Highly Confidential" is kept confidential from *any* USAP employee, including the Designated In-House Counsel who is authorized to view only "Confidential" material. This provision was specifically tailored to curtail USAP's "access to non-public material that reveal trade secrets and/or highly confidential, commercial information that will likely include competitors' pricing information and insurers' negotiating positions." Dkt. No. 152 at 1 (Order on Protective Order).

If NWAP has concerns with disclosing the "confidential and proprietary material" that it claims appears in its facility and payor contracts, it may employ the appropriate designation in the Protective Order to protect that information. While NWAP complains that "[t]he current protective order in this case is far from sufficient to protect NWAP's legitimate confidentiality concerns," that Protective Order was the product of careful consideration by the parties and this Court, *see* Dkt. No. 152, and NWAP has not articulated any specific deficiencies with it. Nor can it: the Protective Order more than adequately protects any confidentiality interest NWAP may have in the documents at issue.

## CONCLUSION

The Court should therefore enforce NWAP's discovery obligations, compel production of NWAP's facility and payor contracts in response to RFP Nos. 2 and 18 of USAP's subpoena, and reject NWAP's apparent demand for prepayment of exorbitant costs supposedly associated with production.

Dated: February 26, 2025                                  Respectfully submitted,

/s/ *Mark C. Hansen*

| | |
|---|---|
| David J. Beck (TX Bar No. 00000070) | Mark C. Hansen (D.C. Bar No. 425930) |
|   (Federal I.D. No. 16605) |   (*Pro Hac Vice)* |
| Garrett S. Brawley (TX Bar No. 24095812) | Attorney-in-Charge |
|   (Federal I.D. No. 3311277) | Geoffrey M. Klineberg (D.C. Bar No. 444503) |
| BECK REDDEN LLP |   (*Pro Hac Vice*) |
| 1221 McKinney Street, Suite 4500 | Dennis D. Howe (D.C. Bar No. 90011114) |
| Houston, TX  77010 |   (*Pro Hac Vice*) |
| Tel: (713) 951-3700 | Anthony R. Guttman (D.C. Bar No. 1754586) |
| Fax: (713) 951-3720 |   (*Pro Hac Vice*) |
| dbeck@beckredden.com | KELLOGG, HANSEN, TODD, |
| gbrawley@beckredden.com |   FIGEL & FREDERICK, P.L.L.C. |
| | 1615 M Street N.W., Suite 400 |
| | Washington, D.C. 20036 |
| | Tel: (202) 326-7900 |
| | Fax: (202) 326-7999 |
| | mhansen@kellogghansen.com |
| | gklineberg@kellogghansen.com |
| | dhowe@kellogghansen.com |
| | aguttman@kellogghansen.com |

*Counsel for Defendant U.S. Anesthesia Partners, Inc.*

**CERTIFICATE OF CONFERENCE**

      I hereby certify that on February 19, 20, and 21 of this year, the undersigned counsel for USAP conferred via telephone and electronic mail with Andrew Wirmani, counsel for Northwest Anesthesiology & Pain Services, P.A., concerning the relief requested in this Motion To Compel. Mr. Howe and Mr. Wirmani previously met and conferred by videoconference several times throughout October, November, and December, and corresponded via electronic email throughout October, November, December, and January regarding these requests. *See* Motion pp. 2-4, *supra*. Northwest Anesthesiology & Pain Services, P.A. does oppose this Motion To Compel and the relief sought herein.

Dated: February 26, 2025                  /s/ *Dennis D. Howe*
                                                  Dennis D. Howe

## CERTIFICATE OF SERVICE

  I hereby certify that on February 26, 2025, I filed the foregoing document with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsel of record are registered ECF users.

              /s/ *Mark C. Hansen*
              Mark C. Hansen

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ANESTHESIA PARTNERS, INC., et al.<br><br>Defendants. | Case No.: 4:23-CV-03560-KH |

**[PROPOSED] ORDER GRANTING DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S MOTION TO COMPEL NORTHWEST ANESTHESIOLOGY & PAIN, P.A. TO PRODUCE ITS PAYOR AND FACILITY CONTRACTS**

The Court has considered Defendant U.S. Anesthesia Partners, Inc.'s Motion To Compel Northwest Anesthesiology & Pain Services, P.A. to produce its facility and payor contracts. It is hereby **ORDERED** that the Motion To Compel (Dkt. No. [XX]) is **GRANTED**.

It is so ORDERED.

SIGNED ON _____, in Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge