# Exhibit 2

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900
FACSIMILE:
(202) 326-7999

September 9, 2024

*Via Hand-Delivery*

Northwest Anesthesiology & Pain Services, P.A.
c/o Dennis Mundy
311 Holderrieth Boulevard
Tomball, Texas 77375

Re:    *FTC v. U.S. Anesthesia Partners, Inc.*, No. 4:23-cv-03560-KH (S.D. Tex.)

Dear Sir/Madam:

I write on behalf of my client U.S. Anesthesia Partners, Inc., which is a defendant in the above-captioned litigation. Enclosed is a subpoena that USAP has served concurrent with the transmission of this letter. USAP appreciates that responding to this subpoena may impose a burden, but it has determined that the requested information is important to its defenses. We hope to work with you to simplify the process associated with your response to the subpoena as much as possible, and we stand ready to discuss these matters with you at your convenience.

Sincerely,

/s/ *Kenneth M. Fetterman*

Kenneth M. Fetterman

Enclosures

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | | |
|---|---|---|
| Federal Trade Commission | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 4:23-CV-03560-KH |
| U.S. Anesthesia Partners, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Northwest Anesthesiology & Pain Services, P.A. c/o
Dennis Mundy, 311 Holderrieth Boulevard, Tomball, Texas 77375

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Appendix A

| Place: Veritext Houston | or a mutually | Date and Time: |
|---|---|---|
| 3811 Main Street, Suite 4675 | agreed-upon | |
| Houston, Texas 77002 | location | 10/09/2024 |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    09/09/2024

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| | | /s/ Kenneth M. Fetterman |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
U.S. Anesthesia Partners, Inc. _____, who issues or requests this subpoena, are:

Kenneth M. Fetterman, 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, kfetterman@kellogghansen.com, (202) 326-7988

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-CV-03560-KH

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

  ❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

  ❏ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____     _____

                *Server's signature*

           _____

                *Printed name and title*

           _____

                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## APPENDIX A

## DEFINITIONS

1.      "Action" means the case captioned *Federal Trade Commission v. U.S. Anesthesia Partners, Inc.*, No. 23-cv-03560 (S.D. Tex.), including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

2.      "Acquired Practices" means and includes each of Greater Houston Anesthesiology, P.A.; Lake Travis Anesthesiology; Pinnacle Anesthesia Consultants; North Houston Anesthesiology; Anesthesia Consultants of Dallas; Excel Anesthesia, P.A.; BMW Physicians; Medical City Physicians; East Texas Anesthesiology Associates, P.A.; Sugarland Anesthesia PLLC; Metrowest Anesthesia Care PLLC; Capital Anesthesiology Association; Amarillo Anesthesia Consultants, P.A.; Star Anesthesia P.A.; Guardian Anesthesia Services, Inc.; and Guardian Anesthesia Services, PLLC.

3.      "Agreement" means any oral or written contract, arrangement, or understanding, whether formal or informal, between two or more Persons, together with all addendum or amendments thereto.

4.      "Ambulatory Surgical Center" or "ASC" means a facility licensed by the State of Texas as an ASC to provide surgical and endoscopic procedures, including facilities that are operated by or affiliated with Hospitals, in which procedures that do not require admission to a Hospital as an inpatient or an overnight stay are performed on an outpatient basis.

5.      "Anesthesia Services" means all services offered by physician anesthesiologists, certified registered nurse anesthetists ("CRNA"), or certified anesthesiologist assistants ("CAAs") to patients undergoing surgical or nonsurgical procedures in an outpatient or inpatient setting requiring the administration of an anesthetic or analgesic. These types of services include preoperative visits, the administration of medication, fluids, and/or blood during surgery,

1

monitoring services during surgery, and postoperative visits. The type of anesthesia offered during surgery includes general anesthesia, regional anesthesia, and local anesthesia. The term "Anesthesia Services" also includes any pain management services offered to a patient by a physician anesthesiologist or CRNA, including postoperative pain management services, or services designed to manage pain resulting from acute or chronic injuries or conditions.

6.      "Anesthesia Service Provider" means an entity engaged in providing, by or under the supervision of physicians, Anesthesia Services in either an inpatient or outpatient setting.

7.      "Balance Billing" means the practice of a healthcare service provider (including any Anesthesia Services Provider) billing a patient for the difference between the provider's charge for a service and the amount the patient's insurance has paid. This includes when a patient receives care from an Out-of-Network provider, and the Commercial Healthcare Insurer pays only a portion of the billed amount based on their Out-of-Network Reimbursement Rates.

8.      "Clinicians" means physician anesthesiologists, CRNAs, CAAs, nurse practitioners, or registered nurses.

9.      "Coinsurance" means the set percentage of covered charges (i.e., the charges recognized by the Health Plan) that a Health Plan enrollee must pay out-of-pocket for each episode of healthcare covered by the enrollee's Health Plan.

10.      "Commercial Healthcare Insurer" means a publicly or privately held entity that provides businesses and individuals with healthcare insurance coverage and/or administrative services necessary to utilize the healthcare insurance coverage it offers. Such administrative services may include benefits enrollment, premiums collection, claims processing and adjudication, healthcare provider network establishment, negotiation of Reimbursement Rates with healthcare providers, and compliance measures.

2

11.     "Communication" means the transmittal of information or request for information, including, but not limited to, any written contact between two or more people by such means as letters, memoranda, facsimile transmissions, text messages, instant messages, and emails, as well as any oral discussion by such means as face-to-face meetings and telephone or video conversations.

12.     "Complaint" means the Complaint filed in this Action by Plaintiff Federal Trade Commission on September 21, 2023.

13.     "Concern" or "Concerning" means relating to, in relation to, comprising, constituting, containing, regarding, referring to, describing, discussing, embodying, evidencing, exhibiting, identifying, memorializing, mentioning, recording, showing, studying, analyzing, reflecting, pertaining to, supporting, refuting, responsive to, or with respect to a given subject matter.

14.     "Copay" means the set fee that a Health Plan enrollee must pay out-of-pocket for each episode of healthcare covered by the enrollee's Health Plan."

15.     "Date" means the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

16.     "Deductible" means the set amount that a Health Plan enrollee must pay out-of-pocket each year for healthcare services before the enrollee's Health Plan benefits go into effect.

17.     "Document" or "Documents" means all documents or Electronically Stored Information or data as defined in Federal Rule of Civil Procedure 34(a), including all copies where the copy is not identical to the original. For the avoidance of doubt, "Document" or "Documents" shall be construed to include Communications.

3

18.    "Electronically Stored Information" or "ESI" means all Documents or data that are stored in any electronic medium from which information can be obtained.

19.    "Episode of Care" means the healthcare services provided to a patient at a particular facility to treat a health condition, for the period from the patient's first encounter with the health care provider through discharge from the facility.

20.    "Federal No Surprises Act" refers to the legislation enacted by Congress in 2020, at Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (2020), and codified at 42 U.S.C. §§ 300gg-11, 300gg-131, 300gg-132, with implementing regulations at 45 C.F.R. § 149.

21.    "FTC Investigation" means the Federal Trade Commission's investigation undertaken pursuant to the July 1, 2021 Resolution of the Commissioners, File No. P210100, pursuant to which it issued Civil Investigative Demand ("CID") No. 2010031 to USAP, and includes all activities taken in connection with that investigation, including obtaining information and testimony from non-parties to the investigation.[1]

22.    "Fully Insured" means any arrangement by which a Health Plan is directly responsible for paying the provider claims generated by the healthcare consumption of its members.

23.    "Health Plan" means any health maintenance organization, mánaged healthcare organization, preferred provider arrangement or organization, managed healthcare plan of any kind, Fully Insured health benefit plan, Self-Insured health benefit plan, other employer or union health benefit plan, Medicare, Medicaid, TRICARE, or private or governmental healthcare plan, or health insurance of any kind.

---

[1] The FTC has at times referred to the FTC Investigation as File Nos. 201003 and 20100031. For the avoidance of doubt, the definition of "FTC Investigation" includes those file numbers, whether or not they describe matters that differ from that authorized through the July 1, 2021 Resolution of the Commissioners.

24.     "Hospital" means an institution or group of institutions engaged in providing, by or under the supervision of physicians, inpatient and outpatient diagnostic, therapeutic, and rehabilitation services.

25.     "Inpatient Services" (as characterized in the FTC's Complaint and for purposes of this litigation only) means the provision of medical services that require at least one overnight stay in a Hospital or other facility, including observation stays, or at least 24-hour nursing care.

26.     "In-Network" means that a healthcare provider has an Agreement with a Commercial Healthcare Insurer under which the healthcare provider agrees to provide services to the Commercial Healthcare Insurer's members at pre-negotiated rates and are part of the Commercial Healthcare Insurer's healthcare provider network.

27.     "Network Status" means an a healthcare provider's status with Commercial Healthcare Insurers, and whether the healthcare provider is In Network or Out of Network with a particular Commercial Healthcare Insurer.

28.     "Outpatient Services" (as characterized in the FTC's Complaint and for purposes of this litigation only) means the provision of medical services that do not require an overnight stay in a Hospital or other facility.

29.     "Out-of-Network" means that a healthcare provider does not have an Agreement with a Commercial Healthcare Insurer under which the healthcare provider agrees to provide services to the Commercial Healthcare Insurer's members at pre-negotiated rates and are not part of the Commercial Healthcare Insurer's healthcare provider network.

30.     "Payor" means any Person that pays or reimburses in whole or in part for the administration, provision, or sale of healthcare services (including Anesthesia Services), including, but not limited to, federal and state government programs such as TRICARE,

Medicare, and Medicaid, Commercial Healthcare Insurers, employee health and welfare plans, and individual patients that are Self-Insured.

31.    "Person" means any person and includes natural persons, corporations, firms, partnerships, proprietorships, associations, joint ventures, States, Territories, government agencies or entities, and other enterprises or legal entities.

32.    "Reimbursement Rates" mean the amount of money a Payor provides to an healthcare provider to compensate the healthcare provider for providing services to patients.

33.    "Relating to," "relate to," "related to," or "in relation to" mean concerning, constituting, regarding, referring to, describing, discussing, embodying, evidencing, memorializing, mentioning, recording, studying, analyzing, reflecting, pertaining to, supporting, refuting, responsive to, or with respect to.

34.    "Self-Insured" means any arrangement by which an employer or other Health Plan customer is directly responsible for paying provider claims generated by the healthcare consumption of its employees or other members.  The term includes and refers to, without limitation, Administrative Services Only ("ASO") arrangements.

35.    "Subsidy" means an amount paid by a Hospital to an Anesthesia Service Provider to cover shortfalls or anticipated shortfalls between the provider's revenue and the costs of providing the Anesthesia Services required by the Hospital, whether paid annually, semi-annually, quarterly, or monthly, including any financial arrangement under which a hospital agrees to ensure that the Anesthesia Service Provider receives a minimum level of net revenue.

36.    "Texas Surprise Billing Law" means the legislation entitled Elimination of Surprise Billing for Certain Health Benefit Plans, S.B. No. 1264 (2019), Act of June 14, 2019, 86th Leg., R.S., ch. 1342 § 5.01, 2019 Tex. Sess. Law Serv. 3977.

6

37.     "Tier" and "Tiering" means the classification of some or all of a Health Plan's in-network providers into two or more Tiers based on each provider's costs, quality, other attributes, or some combination of the foregoing, such that each Health Plan member faces different out-of-pocket costs across the various Tiers for the same Treatment, service, or procedure.

38.     "Tuck-in Clause" means a contractual provision negotiated between a healthcare service provider or Hospital, on the one hand, and a Commercial Healthcare Insurer, on the other, pursuant to which the parties agree that, should the healthcare service provider or Hospital acquire or merge with another entity, the acquired or merged group will, at a contractually agreed-upon time, begin to provide services pursuant to the terms negotiated and agreed to by the healthcare service provider or Hospital and the Commercial Healthcare Insurer.

39.     "USAP" means U.S. Anesthesia Partners, Inc., and any predecessors thereof, including, but not limited to, the Acquired Practices.

40.     "Welsh Carson" means Welsh, Carson, Anderson & Stowe XI, L.P., WCAS Associates XI, LLC, Welsh, Carson, Anderson & Stowe XII, L.P., WCAS Associates XII, LLC, WCAS Management Corporation, WCAS Management, L.P., and WCAS Management, LLC, any and all of them, and to any and all of their respective subsidiaries, divisions, affiliates, predecessors and successors, their past and present directors, officers, employees, agents, representatives, consultants, attorneys and assignees, and to all Persons either acting or purporting to act on their behalf.

41.     "You" or "Your" refers to Northwest Anesthesiology & Pain Services, P.A., including, but not limited to, any predecessors, components, subsidiaries, joint ventures, agents,

7

representatives, consultants, contractors, employees, attorneys, experts, economists, and any other Person(s) acting or purporting to act with or on its behalf.

The definitions set forth above shall apply to all requests.

## GENERAL INSTRUCTIONS

1.      In answering each request, You shall produce all responsive Documents, however held or obtained, that are in Your possession, custody, or control, including, but not limited to, legal (de jure), actual (de facto), constructive, and practical possession, custody, or control of Your officers, directors, employees, contractors, counsel, auditors, insurers, investigators, consultants, agents, or other representatives acting for or on Your behalf, or that are maintained in Your records, including, but not limited to, Documents obtained through discovery or pre-suit investigation in this or any other proceeding. A Document is deemed to be in Your possession, custody, or control if You have possession of the Document, have the right to secure such Document or Communication from another Person having possession thereof, or the Document or Communication is reasonably available to You (including those Documents and Communications in the custody or control of Your present employees, attorneys, agents, or other Persons acting on Your behalf).

2.      Each request that seeks Documents concerning Communications to, from, or within a governmental, business, or corporate entity means all Communications to, from, between, or among representatives, officers, officials, directors, employees, agents, servants, and anyone acting on behalf of such entity.

3.      The singular form shall include the plural and vice versa wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

8

4.    The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

5.    The words "any," "each," and "every" shall be construed to mean individually and collectively wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

6.    The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of a request all information that might otherwise be construed to be outside of its scope.

7.    Each request seeks production of all Documents and things described, along with any addenda, attachments, appendices, drafts, and non-identical copies, as found or located in Your files, together with a copy of the descriptive file folder or database category in its entirety.

8.    All Documents should be produced in the order in which they appear in Your files, organized by source, and should contain a clear indication of where each Document ends and the next begins. Documents that are found in boxes, file folders, bindings, or other containers are to be left intact as kept. Documents maintained in a file folder or binding should be preceded by the file folder or binding label, if one exists, and should contain a clear indication of where the file folder or binding begins and ends. All attachments to a Document should be produced with the Document. A unique Bates number should be affixed to each page, except as otherwise provided for by any protocols ordered by the Court in this Action.

9.      If any request cannot be responded to completely, respond to it to the extent possible, specify the portion(s) that cannot be responded to, and explain why any such portion(s) cannot be responded to.

10.     If Documents are withheld under any claim of privilege, including, but not limited to, attorney-client privilege, work product doctrine, deliberative process privilege, investigative files privilege, and/or law enforcement privilege, provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) and any protocols ordered by the Court in this Action. Such log shall, at a minimum, identify each such Document, state the specific basis for the claim of privilege for each Document withheld, and provide the following information: (1) the date appearing on the Document; (2) a description of the subject matter and general nature of the Document (e.g., whether it is a letter, memorandum, email, etc.); (3) the author of the Document; and (4) the identity of each Person to whom the Document was addressed and the identity of each Person to whom a copy was sent.

11.     If You object to any request made herein as unduly broad, identify the categories of Documents within the scope of the request that You believe are properly discoverable, produce all such Documents, and state, with particularity, Your reason for asserting that the remainder of the request seeks Documents that are beyond the scope of permissible discovery.

12.     Each request shall be construed independently and, therefore, no request shall be construed to limit any other request.

13.     All Documents produced should comply with the ESI Protocol attached hereto as Exhibit 1 or otherwise adhere to any Order entered in this Action, with the exception that any responsive ESI that has already been produced to any government agency or entity by a third

10

party may be produced in the same format in which it was produced to that government agency or entity and with the same confidentiality designation.

14.    These requests are continuing in nature. If further information, evidence, or documentation comes into Your possession, custody, or control or is brought to the attention of You or Your attorneys or agents at any time subsequent to the service of any responses to these requests or the production of any Documents, prompt and complete supplementation of the responses to these requests and the corresponding production is required pursuant to the Federal Rules of Civil Procedure.

15.    Unless otherwise stated, the relevant time period for all requests is from January 1, 2012, to the present.

16.    Please contact USAP counsel Kenneth Fetterman of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. at kfetterman@kellogghansen.com or (202) 326-7988 to discuss how You intend to produce the Documents.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All Documents and Communications – including, but not limited to, Communications between You and Your representatives, on the one hand, and any third party, including governmental entities, on the other – relating to the Complaint, the Action, the FTC Investigation, or any purported anticompetitive conduct by USAP or Welsh Carson. This request includes, but is not limited to, all Documents produced in response to any subpoena, civil investigative demand, information request, informal request, or document request or any other request for information (voluntary or compelled) issued or made in any investigation, the FTC Investigation, the Action, or any related action.

11

**REQUEST FOR PRODUCTION NO. 2:**

All contracts or Agreements with Hospitals, ASCs, or other facilities in the State of Texas

where You have provided Anesthesia Services, including, but not limited to, the following:

    a.    Documents sufficient to show any Subsidy You received from a Hospital, ASC, or other facility for the provision of Anesthesia Services;

    b.    Documents sufficient to show Your coverage obligations between You and any Hospital, ASC, or other facility, including any obligations relating to the availability of physicians or CRNAs; whether in-house or on-call coverage is needed; and whether specialized coverage is required for specific departments within Your facility/facilities (e.g., trauma or cardiac care);

    c.    Documents sufficient to show any nonmedical or administrative services (including, but not limited to, scheduling and billing) provided by You to any Hospital, ASC, or other facility, including any changes over time;

    d.    Documents sufficient to identify whether You acted as the exclusive Anesthesia Provider at any Hospital, ASC, or other facility; and

    e.    Documents sufficient to show the identity of each Hospital, ASC, or other facility at which You provided Anesthesia Services, including its address, zip code, and facility identification number (e.g., Medicare Provider Number), and whether it offered Inpatient Services, Outpatient Services, or both.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications relating to the termination of any contractual

relationship between You and a Hospital, ASC, or other facility located in the State of Texas.

This request includes, but is not limited to, Documents or Communications discussing,

analyzing, or assessing the reason(s) why any such contractual relationship ended (and if You

terminated the relationship, the reasons why You did so), as well as feedback or complaints You

have received relating to (i) Your Network Status, (iii) any Subsidy You requested or required,

or (iii) the quality of Your Anesthesia Services or other services You provided.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to show, on an annual basis, the number of Clinicians who worked

at Your practice and the number of Clinicians who were physicians, CRNAs, and CAAs.

**REQUEST FOR PRODUCTION NO. 5:**

Documents Relating to any attempt You have made to establish a new relationship with a Hospital, ASC, or other facility or to maintain any existing relationship, including, but not limited to, the following:

a.    Any bids or responses to requests for proposals from Hospitals, ASCs, or other facilities that You prepared or submitted; and

b.    Documents or Communications reflecting any challenges or competition You face in seeking to establish or maintain a relationship with a Hospital, ASC, or other facility.

**REQUEST FOR PRODUCTION NO. 6:**

Documents and Communications with Hospitals, ASCs, or other facilities relating to any Subsidy You or the Hospital, ASC, or other facility negotiated, calculated, requested, or agreed to between January 1, 2010, and the present.

**REQUEST FOR PRODUCTION NO. 7:**

Documents concerning any evaluation or analysis (whether conducted by You or by a consultant or other third party) of the Subsidies You receive, have requested, or plan to request from any Hospital, ASC, or other facility, or of how those Subsidies compare to those received or requested by any other Anesthesia Service Provider.

**REQUEST FOR PRODUCTION NO. 8:**

Documents or data sufficient to identify how You track, measure, or assess the quality of Your Anesthesia Services, including, but not limited to, the following:

a.    Documents assessing or reflecting Your performance under those metrics;

b.    Documents and Communications with Hospitals, ASCs, or other facilities concerning the quality of Your Services or Your quality reporting; and

c.    Documents and data from third parties assessing the quality of Your Anesthesia Services or Your quality reporting practices, protections, and protocols, including Communications, presentations, audits, and reports from any third party reflecting any such evaluation or assessment.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to identify all complaints You have received concerning the

Anesthesia Services You have provided in the State of Texas.

**REQUEST FOR PRODUCTION NO. 10:**

All Merit-based Incentive System ("MIPS") performance reports You have received for

Anesthesia Services You provided in the State of Texas.

**REQUEST FOR PRODUCTION NO. 11:**

All data You provided to the Centers for Medicare & Medicaid as part of the Physician

Quality Reporting System, MIPs, or MIPS Value Pathways relating to Anesthesia Services You

provided in the State of Texas.

**REQUEST FOR PRODUCTION NO. 12:**

All data related to quality measures and quality reporting You provided to the Anesthesia

Quality Institute relating to Anesthesia Services You provided in the State of Texas.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show the results of any patient surveys, including, but not

limited to, those generated by SurveyVitals (Qualtrics), that You have performed or solicited

relating to Your Anesthesia Services or other services You provided in the State of Texas.

**REQUEST FOR PRODUCTION NO. 14:**

Documents concerning actual or potential competition You face in the provision of

Anesthesia Services in the State of Texas, including:

    a.    Documents sufficient to show who You view as actual or potential competitors;

    b.    Documents concerning Your share of any market for Anesthesia Services in the
        State of Texas, including Documents identifying or discussing third-party
        estimates or analyses of Your market share;

14

     c.     Documents sufficient to identify all methods and metrics You use to assess whether and to what extent other Anesthesia Service Providers are actual and/or potential competitors;

     d.     Documents concerning actual or perceived barriers to entry or expansion for Anesthesia Service practices; and

     e.     Documents and Communications reflecting any analysis, evaluation, or assessment of how often and why any Hospital, ASC, or other facility selected You or a competing Anesthesia Service Provider.

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to show the time period(s) when You have been In Network and when You have been Out of Network in the State of Texas (or any MSA within the State of Texas) with any Commercial Healthcare Insurer.

**REQUEST FOR PRODUCTION NO. 16:**

Documents and Communications discussing or evaluating any potential benefits or downsides of being In Network or Out of Network State of Texas (or any MSA within the State of Texas) with any Commercial Healthcare Insurer.

**REQUEST FOR PRODUCTION NO. 17:**

Documents or data sufficient to show whether and, if so, under what circumstances, You engaged in Balance Billing.

**REQUEST FOR PRODUCTION NO. 18:**

All Agreements between You and any Commercial Healthcare Insurer between January 1, 2010, and the present.

**REQUEST FOR PRODUCTION NO. 19:**

Documents and Communications relating to Tuck-in Clauses, including, but not limited to, any Documents and Communications concerning negotiations with Commercial Healthcare Insurers about Tuck-in Clauses in a contract or Agreement.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications analyzing, evaluating, measuring, or assessing the actual or potential impact of the Federal No Surprises Act or the Texas Surprise Billing Law on You, other Anesthesia Service Providers, Hospitals, ASCs, other facilities and/or Commercial Healthcare Insurers, including, but not limited to, any impact on Your negotiations or negotiating strategy with Commercial Healthcare Insurers and/or Hospitals, ASCs, or other facilities.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient (i) to identify each arbitration or independent dispute resolution proceeding involving You and a Commercial Healthcare Insurer in the State of Texas that raises claims under the Federal No Surprises Act or the Texas Surprise Billing Law; (ii) to show which side prevailed in the proceeding; and (iii) to show the time period (in days) between the issuance of any award and Your receipt of payment from the Commercial Healthcare Insurer.

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to identify each acquisition (of or by You), partnership, or merger You have made or considered making with another Anesthesia Service Provider, including: (i) the purpose of the acquisition, partnership, or merger; (ii) the amount You paid or accepted, or considered paying or accepting, in connection with the acquisition, partnership, or merger; and (iii) any analyses relating to potential acquisitions, partnerships, or mergers.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to show Your employment Agreements with Clinicians, including any changes in those Agreements over time.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications relating to any shortage of Clinicians or Anesthesia Service Providers in the State of Texas.

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to show Your efforts to recruit Clinicians to Your practice, including Documents sufficient to show online job postings, email campaigns, or showcases at medical schools or nursing schools that You participated in in order to recruit Clinicians.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show the ownership interest in Your practice, including changes over time.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Communications discussing or referring to USAP, including, but not limited to, Documents and Communications concerning the pricing or quality of USAP's Anesthesia Services.