**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. ANESTHESIA PARTNERS, INC.<br><br>    Defendant. | **Case No.: 4:23-CV-03560-KH** |

**Supplemental Appendix of Authorities in Plaintiff
Federal Trade Commission's Motion to Compel
Deposition of Non-Party Dr. Paul Klotman**

## Table of Authorities

### Cases

*In re Tylenol (Acetominophen) Marketing, Sales Pracs. and Prods. Liab. Litig.,*
  No. 14–mc–00072, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014)....................................3

*Murillo Modular Group, Ltd. v. Sullivan,*
  No. 3:13-cv-3020-M, 2016 WL 6139096, at *9 (N.D. Tex. Oct. 20, 2016) ...........................9

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 3 of 19

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...

2014 WL 3035791

2014 WL 3035791
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

In re TYLENOL (ACETAMINOPHEN)
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION.
This Document Relates to All Cases.

Civil Action No. 14–mc–00072.
|
MDL No. 2436.
|
No. 2:13–md–02436.
|
Signed July 1, 2014.

**Attorneys and Law Firms**

Dean N. Panos, Jenner & Block LLP, Chicago, IL, for W.
Anthony Vernon.

Laurence S. Berman, Michael M. Weinkowitz, Levin,
Fishbein, Sedran & Berman, Philadelphia, PA, for Plaintiffs
Steering Committee.

*MEMORANDUM*

STENGEL, District Judge.

**\*1**  As part of the Tylenol Multi–District Litigation (MDL),
the Plaintiffs Steering Committee (PSC) seeks to depose W.
Anthony Vernon, a former President of Defendant McNeil.
H e is not a party to this litigation. Mr. Vernon has moved
to quash the subpoena to compel his deposition or, in
the alternative, to modify the subpoena to make it less
burdensome. For the reasons stated below, I will deny Mr.
Vernon's motion in its entirety.

**I. PROCEDURAL BACKGROUND**
On February 4, 2014, the Plaintiffs served W. Anthony
Vernon, a former President of Defendant McNeil and non-
party to this litigation, with a subpoena to compel his
deposition on March 4, 2014. Vernon was served in Illinois,
where he currently resides; the deposition was scheduled
to take place at a location near where he lives and works.
The subpoena also requested that Vernon produce certain

documents that he may possess related to the litigation.
On February 29, 2014, Vernon filed a motion to quash the
subpoena or for a protective order in the Northern District
of Illinois, pursuant to Federal Rules of Civil Procedure 26
and 45. The PSC then filed a motion to transfer venue to this
district, which Vernon did not oppose. The motion to quash
was transferred to the Eastern District of Pennsylvania on
March 17, 2014.

Subsequently, the PSC filed a response in opposition to
the motion and then submitted additional documents *in
camera* per my Order. On April 16, 2014, I held a telephone
conference on-the-record with counsel for the PSC, counsel
for Mr. Vernon, and counsel for Defendants McNeil and
Johnson & Johnson to discuss the motion.

**II. VERNON'S EMPLOYMENT AT MCNEIL/
JOHNSO N & JOHNSON**
Vernon was employed at various Johnson & Johnson
companies from 1982 until 2006. From 1982 to 1995, Vernon
worked in various managerial roles in McNeil's marketing
department; his positions during this ti meframe involved
marketing for Tylenol Sinus, Tylenol Cold, and adult single-
ingredient products.[1]  In June 1984, he became a Product
Director.[2]  In 1988, he was promoted to Group Product
Director, overseeing multiple brands and supervising several
Product D i rectors.[3]  In 1990, he became Director of Product
Management and supervised the Group Product Directors for
al l of McN ei l's consumer products.[4]

From March 1995 until December 1998, he left McNeil
to work in another Johnson & Johnson company. From
December 1998 until April 2001, Vernon came back
to McNeil to serve as President of McNeil Consumer
Healthcare. Thereafter, Vernon served in executive positions
at other Johnson & Johnson companies before leaving
Johnson & Johnson all together in 2006.

**III. DISCUSSION**
Vernon asserts that "he has limited, if any, information
relevant to Plaintiffs' claims" because he has not worked for
McNeil since 2001, has not worked in McNeil's marketing
department since 1995, and was not responsible for directions
or labels for Tylenol products. Because the majority of claims
in this action involve Plaintiffs' ingestion of Tylenol after
Mr. Vernon's time at McNeil, Mr. Vernon argues that any
knowledge he might have about his time at McNeil would

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...

Case 4:23-cv-03560    Document 235    Filed on 02/28/25 in TXSD    Page 4 of 19

2014 WL 3035791

not to be relevant to the claims asserted in this case. H e also argues that the "apex doctrine" applies and that the deposition imposes an "undue burden."

**\*2** "Courts have significant discretion when resolving discovery disputes." *Reif v. CNA,* 248 F.R.D. 448, 451 (E.D.Pa.2008) (citing *Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 778 (3d Cir.2000) (stating a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible")). "It is rare for a court to issue a protective order that prohibits a deposition." *U.S. v. Mariani,* 178 F.R.D. 447, 449 (M.D.Pa.1998) (citations omitted). [5] The party moving to quash the subpoena has a heavy burden of persuasion. *Id.* Overall, a court "must balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from the deposition." *Adelphia Recovery Trust v. Bank of America,* N.A., No. 4:09–MC–00139, 2009 WL 1794992, at \* 1 (M.D.Pa. Jun.23, 2009) (citations omitted).

### a. Relevance of Vernon's Deposition

As a threshold matter, Mr. Vernon argues that his deposition is not relevant to the litigation at hand. He claims that "[e]ven during his early years at McNeil, as he was promoted within the marketing department, [he] became more focused on high-level strategy such as profit and loss and authoring business plans" and that he never had direct responsibility for warnings or labels on Tylenol products. According to Mr. Vernon, decisions about warnings and labels were made by a "review committee," which included representatives from the regulatory group, medical group, and legal department at McNeil. Mr. Vernon asks me to believe that because he was not a member of the committee, he doesn't have any knowledge about warnings or labels that would be relevant to this case. In Mr. Vernon's view, because he doesn't know anything relevant to the claims or defenses in this case, I should quash the subpoena under Federal Rule of Civil Procedure 26. [6]

Information is discoverable if it is relevant to the issues in the case or if it is "reasonably calculated to lead to discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). I have already ruled in this case that information about the efforts and strategies to market Tylenol prior to when the Plaintiffs ingested it is relevant to the Plaintiffs' clai ms. [7] For many years, the defendants sold Tylenol as the safest, most effective pain reliever on the market, building a trusted household brand. The Plaintiffs contend that this "branding" was not consistent with the drug's risks. Because Mr. Vernon was a marketing manager for Tylenol products, his testimony is clearly relevant to the claims and defenses in this case.

### b. The So–Called Apex Doctrine

Mr. Vernon argues that because he was a high-ranking executive while at McNeil he need not testify in a deposition under the so-called "apex doctrine." Federal courts have the ability to prohibit the depositions of high-level executives in cases where the executive has no firsthand knowledge of the facts, under a theory which has come to be known as the "apex doctrine." [8] This doctrine relates to the Rule 26 mandate for courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2) (C). [9] "Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." *Harris v. Computer Assocs. Int'l., Inc.,* 204 F.R.D. 44, 46 (E.D.N.Y.2001). Simply stated, the apex doctrine applies when those at the top of the company, i.e. men and women at the "apex," really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court.

**\*3** Courts in this circuit consider two factors when deciding if the deposition of a high-ranking corporate officer or executive is appropriate: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods. *See, e.g., Ford Motor Co. v. Edgewood Properties, Inc.,* No. 06–1278, 2011 WL 677331, at \* 2 (D.N.J. Feb.15, 2011); *Reif v. CNA,* 248 F.R.D. 448, 451 (E.D.Pa.2008).

On April 1, 2014, I ordered the PSC to submit documents they have received during discovery which they believe tend to show Vernon's personal involvement in the day-to-day decision-making about Tylenol products and which would be relevant to the issues in this litigation. [10] I reviewed these documents *in camera.* These documents, which have been produced by the defendants during discovery, show very clearly that Vernon was actively involved in decision making

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 5 of 19

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...

2014 WL 3035791

regarding the marketing and product development of Tylenol products while working both as a marketing manager and later as President of McN ei l. [11] They also indicate that Vernon has knowledge that is unique to hi m and which could not be obtained through the depositions of those other McNeil employees not quite at the "apex." [12] I find that the apex doctrine does not preclude Mr. Vernon's deposition. [13]

### c. Undue Burden on a Non-party

Mr. Vernon argues that he should not be deposed because he is not a party in this case and is entitled to more protection from "unduly burdensome discovery." "Discovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." *Northeast Women's Ctr., Inc. v. Mc Monagle,* Civ. A. No. 85–4845, 1987 WL 6665, at * 5 (E.D.Pa. Feb.10, 1987) (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir.1980)). [14] A court may quash a subpoena under Federal Rule of Civil Procedure 45 that amounts to an "undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv).

Mr. Vernon is currently the President, Chief Executive Officer, and a Director of Kraft Foods Group, Inc. He argues that he is unable to appear for a deposition. Beyond his busy work schedule, he offers no other reason for preferring not to appear for a deposition. I find his argument unpersuasive. Having to answer questions about the twenty or so years he worked for the defendants hardly seems like an "undue burden." He was in a high level managerial position within McNeil and Johnson & Johnson with responsibilities that appear directly relevant to the issues in this case. [15]

Since November 2013, the PSC has attempted to coordinate with Vernon's counsel to find a convenient time for his deposition. [16] The PSC has already agreed to take the deposition in Illinois and to schedule it at a mutually convenient date. [17] The PSC has met its burden of minimizing inconvenience to Mr. Vernon as a non-party deponent.

### d. Protective Order Request

**\*4** In the alternative, Vernon requests that the following modifications be made: 1) he be permitted to respond via

written questions pursuant to Federal Rule of Civil Procedure 31; or 2) an oral deposition be limited to three hours. [18]

The first "modification" would be neither efficient nor productive. Given the highly complex nature of this litigation, it does not seem likely that the PSC will be able to provide Mr. Vernon with written questions which could or would cover the full scope of the information being sought. Allowing the PSC to depose Mr. Vernon in person, to provide the opportunity for follow-up questions, would be a better use of the time and resources of al l concerned.

Limiting the deposition to three hours would likely be too constricting. Mr. Vernon worked for the defendants for twenty-four years. For thirteen of those years, Vernon worked at McNeil in marketing Tylenol products. For three of those years, he served as McNeil's President. It appears unlikely that a limit of three hours for both parties to examine Mr. Vernon will be sufficient. See *Adelphia Recovery Trust v. Bank of America, N.A.,* No. 4:09–MC–00139, 2009 WL 1794992, at *2 (M.D.Pa. Jun.23, 2009) (denying request for limiting third-party deposition of executive with "some knowledge" related to litigation because the complexity of the case called for a lengthy examination).

### IV. CONCLUSION

For the reasons stated above, I will deny Vernon's motion to quash and compel his deposition to go forward as set out in the subpoena served hi m on February 4, 2014. [19]

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 1st day of July, 2014, upon consideration of W. Anthony Vernon's motion to quash subpoena (Doc. No. 1) and the Plaintiffs' Steering Committee's Response in Opposition (Doc. No. 5) and after a telephone conference with counsel for the parties, it is hereby **ORDERED** that the motion is **DENIED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 3035791

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...
2014 WL 3035791

---

### Footnotes

1    *See* Vernon Declaration, Doc. No. 1, Ex. B at ¶ 9.

2    *See id.* at ¶ 10.

3    *See id.*

4    *See id.*

5    *See, e.g., Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc.,* No. 3:10–CV–02513, 2013 WL 5797639, at *3 (M.D.Pa. Oct.28, 2013)* ("The federal courts clearly favor the taking of depositions and will prohibit their use only on a heightened showing of good cause."); *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979).

6    Federal Rule of Civil Procedure 26 states:

> DISCOVERY SCOPE AND LIMITS. (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. A l l discovery is subject to the limitations imposed by Rule 26(b)(2) (C).

> FED. R. CIV. P. 26(b)(1).

7    *See* Tylenol MDL, 13–md–2436, Order Denying Defendants' Motion to Quash Marketing Deposition Notice for Lack of Relevance, Doc. No. 139, and Transcript of March 18, 2014 Monthly Status Conference, Doc. No. 140.

8    *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979) (affirming grant of protective order to bar deposition of Upjohn's President, when the plaintiff planned to depose employees of the corporation with more firsthand knowledge related to the issues in the case); *Roman v. Cumberland Ins. Grp.,* No. 07–CV–1201, 2007 WL 4893479, at * 1 (E.D.Pa. Oct. 26, 2007) (preventing deposition of high-ranking officials because lower-ranking employee with firsthand knowledge was available for deposition); *Piontek v. I.C. Sys.,* No. 1:08–1207, 2008 WL 7674787, at * 1 (M.D.Pa. Oct.22, 2008) (prohibiting the deposition of CEO when two other employees with superior knowledge were available to be deposed); *Taggart v. Wells Fargo Home Mortg., Inc.,* No. 10–cv–00843, 2012 WL 4462633, at *3 (E.D.Pa. Sept.27, 2012) (Stengel, J.) (granting motion for protective order to prevent deposition of former vice president of defendant corporation who had no first-hand knowledge of plaintiff's mortgage and individual with such knowledge was already deposed).

> The Third Circuit has not yet set forth an analytical framework on when use of the apex doctrine is appropriate. *See Ford Motor Co. v. Edgewood Properties, Inc.,* No. 06–1278, 2011 WL 677331, at *2 (D.N.J. Feb.15, 2011); *Reif v. CNA,* 248 F.R.D. 448, 451 (E.D.Pa.2008).

9    It is also in line with the Advisory Committee's Notes on Federal Rule of Civil Procedure 45(c)(3)(A)(iv) which state:

> Clause (c)(3)(A)(iv) requires the court to protect all persons from undue burden imposed by the use of the subpoena power. Illustratively, it might be unduly burdensome to compel an adversary to attend trial

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 7 of 19

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...

2014 WL 3035791

as a witness if the adversary is known to have no personal knowledge of matters in dispute, especially so if the adversary would be required to incur substantial travel burdens.

FED. R. CIV. P. 45, Advisory Committee's Notes, 1991 Amendment.

10    These documents showed, among other things, that Vernon was involved with: efforts to develop an acetaminophen product without hepatotoxic properties, interactions with European authorities when they began to question the safety of acetaminophen, and interactions with European companies when they began to implement different packaging methods for acetaminophen. *See* Doc. No. 6; Doc. No. 5 at 8 n. 14. The PSC requested that these documents be submitted *in camera* in order to protect their work product and deposition strategy.

11    *See Otsuka Pharm. Co., Ltd. v. Apotex Corp.,* No. 07–1000(MLC), 2008 WL 4424812, at *5 (D.N.J. Sept.25, 2008) (denying a motion for protective order regarding an executive's deposition because executive possessed "unique knowledge" related to litigation claims).

12    Mr. Vernon was involved in marketing during a highly relevant time period-one which preceded the time of Ashley McEvoy, who was already deposed in this case, and of Colleen Goggins, who I already ruled should be deposed in this case. *See* Tylenol MDL, 13–md–2436, Order Permitting Deposition of Colleen Goggins, Doc. No. 122. During Ashley McEvoy's deposition, she stated that she could not speak to certain subjects because they were before her time as a McNeil executive.

Vernon also argues that transcripts from prior depositions from 1994 to 2008, which are available to the Plaintiffs, should be a sufficient substitute for a deposition in this case. I do not find this argument persuasive. As had been noted previously in this case, the claims in this Tylenol MDL differ from other products liability claims previously asserted against the defendants. The depositions Mr. Vernon underwent previously would not necessarily speak to claims in this case for that reason.

13    In addition, I am not persuaded that those persons to be deposed for the Rule 30(b)(6) Marketing Notice will have the same knowledge which Mr. Vernon has regarding the issues in this case, as shown by the documents presented *in camera. See* Tylenol MDL, 13–md–2436, Doc. No. 139. *See also Bank of the Ozarks v. Capital Mortg. Corp.,* No. 4:12–mc–00021, 2012 WL 2930479, at *2 (E.D.Ark. Jul.18, 2012) (quashing subpoena for corporate deposition when no showing that executive had unique knowledge had been made). I will note that the Third Circuit has not adopted the wait-and-see approach discussed in *Ozarks.*

14    *See, e.g., In re Fosamax Products Liability Litigation,* No. 1:06–MD–1789 (JFK)(JCF), 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009) ("In general, third parties are afforded more sympathy in weighing the burden of discovery because they have no personal stake in the litigation."); *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,* No. 07–133, 2008 WL 597711, at *2 (E.D.Pa. Mar.4, 2008) (explaining how subpoena's recipient's status as a nonparty is a factor to consider under Rule 45(c)(3)(A)(iv)).

15    *See* PR Newswire, *Kraft Foods Names Tony Vernon President, Kraft Foods North, Former J & J Leader Brings Exceptional CPG, Marketing and Innovation Experience to Role* (Press Release Regarding Vernon's Appointment as President of Kraft), Jun. 22, 2012, *available at* http: // www.bloomberg.com/apps/news?pid=newsarchive & sid=aDUqG0ZWY77A ("At J & J, Vernon ran multibillion-dollar independent business units and led many of that company's largest consumer brands, including Tylenol, Motrin, Pepcid AC, Imodium and Splenda.").

16    *See* Doc. No. 6, Ex. A.

In re Tylenol (Acetaminophen) Marketing, Sales Practices..., Not Reported in...

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 8 of 19

2014 WL 3035791

17    The PSC asserts that the March 4, 2014 date was chosen after Vernon's counsel did not respond to the PSC's request for a convenient date. The PSC was willing to depose Vernon in or around March 4, 2014 in Washington, D.C. Vernon, instead, filed this motion to quash.

18    Vernon also asked that the deposition be rescheduled for a more convenient date. Vernon contested the original date of the deposition because he was scheduled to attend a Kraft Board of Directors meeting on March 4, 2014 in Washington, D.C. The PSC asserts that the March 4, 2014 date was chosen after Vernon's counsel did not respond to the PSC's request for a convenient date. The PSC is willing to depose Vernon at a later date, which works with his schedule. Since the original deposition date has passed, the last request is moot.

19    In addition, I find no reason why Mr. Vernon should not be required to produce those documents in his "possession, custody, or control" as requested in the subpoena; he has offered no showing of "undue burden" to prevent their production at his deposition. *See* FED. R. CIV. P. 45(a)(1)(A)(iii). Obviously, he cannot bring documents he does not possess; however, he should comply with this part of the subpoena as well as he is able.

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6139096

2016 WL 6139096
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

MURILLO MODULAR GROUP, LTD., Plaintiff,

v.

Ann SULLIVAN and Crenshaw,
Ware & Martin, P.L.C., Defendants.

No. 3:13-cv-3020-M
|
Signed 10/20/2016

**Attorneys and Law Firms**

Evan L. Van Shaw, David Welch, Janet R. Randle, Law
Offices of Van Shaw, Michael S. Alfred, Hallett & Perrin,
Dallas, TX, for Plaintiff.

D. Craig Brinker, E. Stratton Horres, Jr., Wilson, Elser,
Moskowitz, Edelman & Dicker, LLP, Susan A. Schwartz,
Henslee Schwartz LLP, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER [1]

DAVID L. HORAN, UNITED STATES MAGISTRATE
JUDGE

**\*1** Plaintiff Murillo Modular Group, Ltd. ("Murillo" or
"Plaintiff") has filed a Motion to Compel Defendants to
Comply with Their Discovery Obligations [Dkt. No. 64] (the
"Discovery MTC") and a Motion to Compel Ann Sullivan to
Respond to Deposition Questions [Dkt. No. 69] (the "Sullivan
Deposition MTC"), both of which Chief Judge Barbara M. G.
Lynn has referred to the undersigned United States magistrate
judge for determination pursuant to 28 U.S.C. § 636(b). *See*
Dkt. Nos. 66 & 71. Defendants Crenshaw, Ware & Martin,
P.L.C. ("CWM") and Ann Sullivan ("Sullivan"; collectively
with CWM, "Defendants") have filed responses to each
motion, *see* Dkt. Nos. 75 & 76, and Murillo has filed replies,
*see* Dkt. Nos. 80 & 81.

Defendants have also filed a Motion for Protective Order
[Dkt. No. 77] (the "MPO"), which Judge Lynn has also
referred to the undersigned for determination. *See* Dkt. No.
78.

The Court heard oral argument on all three motions on
October 18, 2016. *See* Dkt. No. 90.

For the reasons and to the extent explained below, the
Court DENIES Murillo's Motion to Compel Ann Sullivan
to Respond to Deposition Questions [Dkt. No. 69] and
GRANTS in part and DENIES in part Murillo's Motion
to Compel Defendants to Comply with Their Discovery
Obligations [Dkt. No. 64] and Defendants' Motion for
Protective Order [Dkt. No. 77].

## Background

Murillo has sued Defendant Sullivan and her former law firm
of 35 years, CWM, for professional negligence and breach
of contract "regarding various litigation where Defendants
represented Plaintiff, including a lawsuit that ended in an
unfavorable settlement for Plaintiff." Dkt. No. 80 at 1; *see*
Dkt. No. 36. "Specifically, and as set forth in Plaintiff's
Third Amended Complaint, Plaintiff claims that Defendants
committed malpractice with respect to entering into a flawed
and grossly inadequate settlement agreement, as well as with
respect to a commercially-unreasonable foreclosure sale of
certain HVAC Equipment." Dkt. No. 69 at 1.

On September 6, 2016, CWM served objections to Plaintiff's
Second Request for Production Nos. 1, 2, 3, 5, 6, 9, 10,
15, and 16 and to Plaintiff's First Set of Interrogatories Nos.
14, 15, 16, 17, 18, and 19. In the Discovery MTC, Murillo
asserts that Defendants' objections are improper and that the
Court should compel Defendants to properly respond to the
discovery requests.

Murillo took Sullivan's deposition at her counsel's law firm
on July 20, 2016. In their Sullivan MTC, Murillo asserts
that, "[d]uring the deposition, Sullivan was evasive, non-
responsive, and refused to answer many critical questions
related to the prosecution of Plaintiff's claims and the defenses
thereto" and that, "[d]espite efforts by Plaintiff's counsel
to convey the necessity and relevancy of the information
requested during Sullivan's deposition, Sullivan and her
counsel refused to cooperate." Dkt. No. 69 at 1-2. Murillo
contends that Sullivan "and her counsel impeded, delayed,
and frustrated her fair examination on repeated occasions
in violation of Rule 30's requirements as shown in the full
and complete transcript of Sullivan's deposition." *Id.* at 2.
The Sullivan MTC enumerates 12 "specific instances of

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 10 of 19
Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

misconduct by Sullivan and her counsel during the July 20, 2016 deposition." *Id.* at 3.

**\*2** Murillo "requests that, after reviewing the [cited] testimony, the Court compel Sullivan to re-appear for the resumption of her deposition for a reasonable period of time to answer these remaining questions in a forthright, accurate, and complete manner without improper obstruction or disruption by herself or her counsel." *Id.* at 6. Murillo "believes that an additional deposition period of ninety minutes will be sufficient, and proposes that her deposition be scheduled to re-open immediately following the conclusion of the deposition of Ryan Snow, for which the parties are tentatively trying to schedule for during the month of October." *Id.*

Murillo also reports that it "is concerned that such deposition tactics will be repeated with the upcoming deposition of Mr. Snow and other of Defendants' witnesses that are in the process of being set" and "respectfully requests that the Court address this behavior in the context of providing an admonishment against any future such conduct during the depositions of Defendants' witnesses." *Id.* Murillo "further requests that the Court consider awarding Plaintiff its legal fees and costs incurred in connection with this motion, including the costs for re-opening Sullivan's deposition (meaning, the attorneys' fees for the additional deposition preparation and examination time as well as the costs associated with the court reporter and videographer)." *Id.* at 7.

More specifically, Murillo explains that its two motions to compel each "seek[ ] financial information regarding Defendants and their financial motivations to induce Plaintiff to settle the underlying lawsuit" and that Defendants' "financial motivations are completely relevant to determine if Defendants breached their duties owed to Plaintiff." Dkt. No. 80 at 1; Dkt. No. 81 at 1.

In their MPO, Defendants move the Court for a protective order directing Plaintiffs to restrain from "examining W. Ryan Snow, Ann K. Sullivan, or any 30(b)(6) witness of Defendants, in a manner designed or tending to embarrass, annoy, or oppress." Dkt. No. 77 at 1. "If Defendants are ordered to produce further information, Defendants request a protective order to permit Defendants to provide Plaintiff with Defendants' financial[,] personal[,] and business information with protection from unnecessary and inappropriate dissemination," but "[t]his request is made without waiving the objections asserted by Defendants as

to any discovery, written or oral, in this case." *Id.* at 1-2. Defendants also request "that any information disclosed by Defendants which reveals any proprietary business or personal information be treated as "Confidential Material" under a proposed protective order." *Id.* at 2.

More specifically, Defendants

- "seek a protective order [under Federal Rules of Civil Procedure 26(c)(1) and 30(d)(3)] in response to [written] discovery request[s] from Plaintiff [and deposition questioning of Sullivan] that exceed the scope of discovery regarding Ann Sullivan's compensation with Crenshaw, Ware, & Martin, and Crenshaw, Ware, & Martin's financial information" and, specifically, "forbidding the disclosure or discovery of Ann Sullivan's compensation from Crenshaw, Ware, & Martin," "forbidding any inquiry into Ann Sullivan's compensation from Crenshaw, Ware, & Martin," "forbidding the disclosure or discovery of Crenshaw, Ware, & Martin's financial information; or in the alternative prescribing a discovery method other than the one selected by the party seeking discovery," and "forbidding inquiry into Crenshaw, Ware, & Martin's financial information";

- seek a protective order from discovery regarding Sullivan's departure from CWM, which Defendants assert exceeds the scope of [Federal Rule of Civil Procedure] 26(b)(1) and, specifically, "forbidding the disclosure or further discovery of Ann Sullivan's basis for ending her employment with Crenshaw, Ware, & Martin";

- **\*3** • seek "a protective order prohibiting the distribution of any financial, business, proprietary or personal information to any person not specifically employed by counsel in this litigation or designated as the corporate representative for this action";

- seek a protective order from further dissemination of "portions of a report by Plaintiff's expert, which contain inflammatory comments designed to harass, annoy and otherwise impermissibly threaten Defendants" and which Defendants have moved to strike – or, more specifically, seek a protective order "[s]ealing any portion of the Daniel's report which is struck pursuant to this Court's order";

- seek "a protective order designating pages 16-17 of Ann Sullivan's deposition 'confidential' for the reason that it relates to a Complaint which was summarily dismissed, has

Case 4:23-cv-03560    Document 235    Filed on 02/28/25 in TXSD    Page 11 of 19

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

no bearing on any relevant issues in this case, but could be harmful and prejudicial to the reputation of Ann Sullivan";

• seek a protective order to "mark the Expert Report of Rhetta Daniel – the opinions stated therein, on their face, are so obviously lacking in relevance and reliability and are so prejudicial they can never meet the requisites of the Federal Rules of Evidence"; and

• seek an order to quash the deposition of Ryan Snow, which Murillo noticed "for October 21, 2016 without consulting Defendant or defense counsel for availability," where "defense counsel is unable to present Mr. Snow on this date."

*Id.* at 4-9.

### Legal Standards

#### Murillo's Discovery MTC

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See* McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990). In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). And, in response to an interrogatory under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath"; "[t]he grounds for objecting to an interrogatory must be stated with specificity"; and "[a]ny ground not stated in a timely

objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(3)-(4).

**\*4** Federal Rules of Civil Procedure Rules 26(b), 26(c), and 34 have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The amendments to Rules 26 and 34 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended, to these motions is both just and practicable.

Further, for the reasons the Court has previously explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See* Carr v. State Farm Mutual Automobile Insurance Company, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See* Crosby v. La. Health Serv. & Indem. Co., 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed

Case 4:23-cv-03560    Document 235    Filed on 02/28/25 in TXSD    Page 12 of 19

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Federal Rule of Civil Procedure 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

 *5  And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; that party is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:...(B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1) (B), 26(g)(3); *see generally* Heller v. City of Dallas, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or

expense or is otherwise objectionable. *See* McLeod, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party...whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party...who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a) (5)(B)-(C).

Murillo's Sullivan MTC

Federal Rule of Civil Procedure 30 governs the conduct or counsel, parties, and deponents in connection with a party's deposition as an initial matter, and Rule 30(c)(2) governs objections to deposition questions and when a party must answer. *See* FED. R. CIV. P. 30(c)(2). "An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." *Id.* "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." *Id.*

And Rule 30(c)(2) provides only three situations in which a deponent may properly be instructed not to answer a question

Case 4:23-cv-03560 Document 235 Filed on 02/28/25 in TXSD Page 13 of 19
Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)
2016 WL 6139096

– "only when necessary" (1) to preserve a privilege, (2) to enforce a limitation previously ordered by a court, or (3) to present a motion under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. *Id.* ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). " 'Directions to a deponent not to answer a question can be even more disruptive than objections.' " *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 n.7 (S.D. Tex. 2011) (quoting FED. R. CIV. P. 30(d) 1993 Advisory Committee's Note). "Because the plain language of Rule 30 is rather clear on what types of objections counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection. However, if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (i.e., in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3)." *Id.* at 591 (footnote and citations omitted).

**\*6** "The only ground for [a Rule 30(d)(3)] motion to limit or terminate the deposition is that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Mayberry v. Wal-Mart La., LLC*, Civ. A. No. 14-cv-478, 2015 WL 420284, at \*3 (W.D. La. Jan. 29, 2015). And Rule 30(d)(3)(A) expressly limits the timing for a Rule 30(d)(3) motion: "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FED. R. CIV. P. 30(d)(3)(A); *see Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 WL 4608718, at \*2 (S.D. Cal. Sept. 15, 2014) ("If counsel for Plaintiff believed that counsel for Defendant was asking the same question repeatedly in bad faith or to unreasonably annoy, embarrass or oppress Plaintiff, counsel's option was to move to terminate or limit the deposition under Rule 30(d)(3). Plaintiff's current motion to terminate the deposition is untimely for that purpose as Rule 30(d)(3) requires the motion be made during the deposition."); *see also Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ("Webber gave no reason beyond his

declaration that the questions were designed to harass rather than obtain information – which may well have been their point, but Fed. R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, *see* Rule 30(d)(4), but must not instruct the witness to remain silent. 'Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).' Fed. R. Civ. P. 30(d)(1). Webber violated this rule repeatedly by telling Gerstein not to answer yet never presenting a motion for a protective order. The provocation was clear, but so was Webber's violation."). But Murillo does not contend that any Rule 30(d)(3) motion is untimely, perhaps because Murillo contends that Sullivan's deposition testimony is incomplete and seeks itself to continue or reopen the deposition.

Rule 30(d)(3) further provides that "[t]he motion may be filed in the court where the action is pending or the deposition is being taken"; that, "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order"; that "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in [Federal Rule of Civil Procedure] 26(c)"; that, "[i]f terminated, the deposition may be resumed only by order of the court where the action is pending"; and that Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses" in connection with a Rule 30(d)(3) motion. FED. R. CIV. P. 30(d)(3)(A)-(C).

Once a deponent has appeared for a deposition, Federal Rule of Civil Procedure 37(a)(3)(B)(i) governs a motion to compel a deponent to answer a question. *See* FED. R. CIV. P. 37(a)(3)(B)(i) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30...."). And Rule 37(a)(2) provides that "[a] motion for an order to a party must be made in the court where the action is pending." FED. R. CIV. P. 37(a)(2).

For Rule 37(a)(3)(B)'s purposes, "an evasive or incomplete...answer...must be treated as a failure to...answer." FED. R. CIV. P. 37(a)(4). And Rule 37(a)(5) provides, in pertinent part, that, on a Rule 37(a)(3)(B)(i) motion to compel an answer from a deponent, including a non-party:

Case 4:23-cv-03560    Document 235    Filed on 02/28/25 in TXSD    Page 14 of 19

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

- "If the motion is granted...the court must, after giving an opportunity to be heard, require the...deponent whose conduct necessitated the motion, the... attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

- "If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

**\*7** • "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."

FED. R. CIV. P. 37(a)(5)(A)-(C).

Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). "The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule." Howell v. Avante Servs., LLC, Civ. A. No. 12-293, 2013 WL 824715, at \*5 (E.D. La. Mar. 6, 2013) (internal quotation marks omitted). "Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." S. La. Ethanol, L.L.C. v. Fireman's Fund Ins. Co., Civ. A. Nos. 11-2715 & 12-0379, 2013 WL 1196604, at \*8 (E.D. La. Mar. 22, 2013) (citing cases). "The broad scope of appropriate sanctions under Rule 30(d)(2) includes, where appropriate, an award of expenses associated with a deposition's continuation that is necessitated by a [person's] conduct that impedes, delays, or frustrates the fair examination of the deponent." Nieman v. Hale, No. 3:12-

cv-2433-L-BN, 2014 WL 4375669, at \*5 (N.D. Tex. Sept. 4, 2014). The movant bears the burden on any Rule 30(d)(2) motion that it makes. See Kleppinger v. Tex. Dep't of Transp., 283 F.R.D. 330, 333 (S.D. Tex. 2012).

Defendants' MPO

As amended effective December 1, 2015, Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. See Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." Cazorla v. Koch Foods of Mississippi, L.L.C., ___ F.3d ____, No. 15-60562, 2016 WL 5400401, at \*10 (5th Cir. Sept. 27, 2016) (footnotes and internal quotation marks omitted); see also id. at \*18 ("Rule 26(d) gives that court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)).

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

**\*8** The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

### Analysis

#### I. Discovery regarding Sullivan's compensation and departure and CWM's finances

With regard to Murillo's Interrogatory Nos. 14, 15, and 16 to CWM and Murillo's Second Request for Production Nos. 1, 2, 3, 4, 5, 6, 9, and 10, the Court has carefully considered the parties' arguments regarding whether discovery is proper under Rules 26(b) and 26(c) as to Sullivan's compensation with and departure from CWM and CWM's finances for certain years.

Murillo argues that discovery on these topics may show that Defendants acted in their self-interest when recommending that it settle the case. For instance, if CWM was experiencing financial difficulty, CWM may have had a motive to encourage Murillo to settle and collect any outstanding fees that Murillo owed. Similarly, if Sullivan's compensation or employment status depended on the fees that she collected for her cases, she may have had a motive to encourage CMW to settle and collect any outstanding fees.

But Murillo's relevance theories assume that CWM and Sullivan were especially eager to collect any outstanding fees owed. But Defendants note that Murillo continued to owe Defendants money for their services well after Murillo agreed to settle the case and that this did not impact the parties working relationship. Defendants continued to represent Murillo in other matters even though Murillo 's bill was still outstanding'.

Defendants' proffered evidence also indicate that Sullivan's employment status was not connected to the date that CWM collected its fees for the lawsuit. Sullivan left the firm two-and-a-half years after the settlement was concluded. CWM has already responded to an interrogatory request on the matter by explaining that it has no personal knowledge about why Sullivan decided to leave the firm; and Sullivan herself testified that the amount CWM owed is "not an issue that caused [her] to leave the firm." Dkt. No. 70, Ex. 1 at 296. Defendants have also responded to an interrogatory explaining that "there were no documents referencing any criticism of [Sullivan's] representation of Plaintiff." Dkt. No. 75 at 4.

Further, Defendants note that Sal Murillo, acting as the principal person in charge of Murillo, has already "testified he was willing to enter into the agreement if it was the best deal they could reach with AMC." Dkt. 75 at 6.

In the face of Sullivan's and Murillo's deposition testimony, and Defendants' showing of why this requested information is not relevant to the claims and defenses in this case, Murillo has not shown any factual basis to suggest that discovery into these matters will show that Defendants' representation of Murillo in connection with the settlement agreement at issue was influenced or driven by a concern for Murillo's receivable with CWM or Sullivan's compensation or that Sullivan's departure from CWM was motivated or caused by her representation of Murillo. Murillo's speculation that discovery could be relevant to its claims to corroborate or impeach Sullivan's deposition testimony is not sufficient.

**\*9** Accordingly, the Court determines, under Rules 26(b)(1), 26(b)(3), and 26(c)(1), that the requested discovery into these matters is not proportional to the needs of the case, considering the importance of the issues at stake in the action and the importance of the discovery in resolving the issues. The Court will deny Murillo's motion to compel, and grant Defendants their requested protective order, as to these discovery requests.

#### II. Discovery regarding Defendants' involvement in other lawsuits

As to Murillo's Interrogatory Nos. 16, 17, 18, and 19 to CWM and Murillo's Second Request for Production No. 15, the Court determines that the information requested as to Sullivan's alleged role in a related lawsuit is within the proper scope of discovery under Rule 26(b)(1) and denies Defendants' request for a protective order.

Information relevant to a party's or likely witness's credibility may fall within Rule 26(b)(1)'s scope. *See* FED. R. CIV. P. 26, 2015 comm. note ("The amendment deletes the former provision authorizing the court, for good cause, to

Case 4:23-cv-03560   Document 235   Filed on 02/28/25 in TXSD   Page 16 of 19

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)
2016 WL 6139096

order discovery of any matter relevant to the subject matter involved in the action. The Committee has been informed that this language is rarely invoked. Proportional discovery relevant to any party's claim or defense suffices, given a proper understanding of what is relevant to a claim or defense. The distinction between matter relevant to a claim or defense and matter relevant to the subject matter was introduced in 2000. The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were 'other incidents of the same type, or involving the same product'; 'information about organizational arrangements or filing systems'; and 'information that could be used to impeach a likely witness.' Such discovery is not foreclosed by the amendments."); *see also S.E.C. v. Cuban*, No. 3:08-cv-2050-D, 2012 WL 456532, at *1 (N.D. Tex. Feb. 10, 2012) ("Cuban has at least shown that the nonprivileged portions of the SEC's investigative file for the investigation of Mamma.com, and documents pertaining to the relationship between the Mamma.com investigation and the investigation of Cuban, are relevant to the credibility of Mamma.com witnesses, including CEO Guy Faure ('Faure'), and are therefore within the scope of Rule 26(b)(1). Cuban has established that he is doing more than engaging in a fishing expedition in seeking this discovery."). "Although the rules pertaining to initial and pretrial disclosures allows a party to withhold impeachment evidence, *see* FED. R. CIV. P. 26(a)(1) and (3), the rules regarding the discovery of evidence, *see* FED. R. CIV. P. 26(b), do not preclude impeachment materials from being subject to a discovery request." *Baxter v. Anderson*, No. CV 16-142-JWD-RLB, 2016 WL 4443178, at *5 (M.D. La. Aug. 19, 2016) (emphasis removed; citing Wright, Miller, Kane, Marcus, & Steinman, Federal Practice and Procedure § 2015 (3d ed. 1998) ('[T]he intention of the party from whom discovery is sought to use materials for possible impeachment does not narrow discovery of items that are relevant.' The initial disclosure requirements exclude items that the disclosing party may use 'solely for impeachment,' but no such categorical limitation applies to material sought through discovery.")). Impeachment evidence is thus discoverable when relevant – in other words, when "disclosure may reveal information affecting the credence afforded to a witness' trial testimony." *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 462 (S.D.N.Y. 2010).

**\*10** The impeachment evidence Plaintiff seeks is plainly discoverable here. Plaintiff seeks discovery relating to a sanctions order that was entered in a related case where Sullivan allegedly allowed Sal Murillo to sign a false

affidavit. Any such allowance speaks to Sullivan's credibility as a witness since it "demonstrate[s] a propensity for deception...in a context where there is a premium on veracity." *See id.* at 462-63 (noting that "sworn statements to a court or government agency, employment applications, and even applications for credit carry an obligation for truthfulness, so that falsehoods in such situations may be probative of a lack of credibility").

In their response, Defendants do not dispute that discovery on these topics could lead to evidence that challenges Sullivan's credibility. Defendants instead insist that Plaintiff should not be entitled to discovery on the prior lawsuit since it concerns Sullivan's actions as an attorney in a different matter that pertains only to parties indirectly related to this action. The prior lawsuit specifically concerns Sullivan's representation of Lonestrella – an entity set up by the principals of Murillo to obtain credit and own property for the benefit of Murillo. But "permit[ting] discovery only of matters otherwise relevant to the case...improperly limits the scope of discovery given the frequent admissibility for purposes of impeachment of matters not otherwise admissible." 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 2 (3d ed. 2016).

While evidence discovered pursuant to these requests may prove to be inadmissible to the extent it improperly suggests guilt based on Sullivan's past actions, *see Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 656 (N.D. Tex. 2014), "[i]nformation within [its] scope of discovery need not be admissible in evidence to be discoverable," FED. R. CIV. P. 26(b)(1).

The Court thus determines that Murillo is entitled to discovery on requests concerning Sullivan's representation of Lonestrella, subject to any attorney-client privilege or attorney-work product protections that may apply and are properly asserted as required by Federal Rule of Civil Procedure 26(b)(5), and ORDERS Defendants to fully respond to Murillo's Interrogatory Nos. 16, 17, 18, and 19 to CWM and Murillo's Second Request for Production No. 15 by **November 3, 2016**.

### III. Ann Sullivan's deposition

Murillo's complaints about Sullivan's deposition answers do not merit relief under Rules 37(a)(3)(B)(i) and 37(a)(4) or Rule 30(d)(2). The Court has reviewed the testimony on which Murillo relies and determines that Sullivan did not give incomplete or evasive answers that amount to a failure to

Case 4:23-cv-03560    Document 235    Filed on 02/28/25 in TXSD    Page 17 of 19

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

answer deposition questions and did not impede, delay, or frustrate Murillo's counsel's fair examination of Sullivan.

More specifically, as to Murillo's complaint numbers 1, 2, 5, and 11, Sullivan testified as to what she recalled. Nothing in Sullivan's answers at issue suggests or evidences a "feigned inability to remember." *Redwood*, 476 F.3d at 469; *see also Peterson v. Burris, No. 14-CV-13000, 2016 WL 1458107, at *2 (E.D. Mich. Apr. 14, 2016)* ("As noted by the magistrate judge, there is nothing extraordinary about the fact that Burris could not remember events that took place over three years ago, and the circumstantial evidence did not suggest Burris was being evasive within the meaning of Rule 37(a)(4).").

As to Murillo's complaint numbers 3, 7, 8, 9, 10, and 12, the Court determines that, for purposes of Rules 37(a)(3)(B)(i) and 37(a)(4), Sullivan gave a complete and non-evasive answer to the questions asked. Insofar as Murillo complains that Sullivan's counsel took a break and inappropriately conferred with his client about a pending question, Murillo's counsel did not object when Sullivan said, "Why don't you give me a minute to confer with my counsel." Dkt. No. 70-1 at 21 of 305.

 *11  And, as to Murillo's complaint number 6, the Court determines that Sullivan should not be required to answer further questions as to why her attorney might have asked Sal Murillo a particular question as his deposition, particularly where any further answers may require her to testify to confidential attorney-client communications or attorney work-product.

As to Murillo's complaint number 4, for the reasons explained above, the Court will not require Sullivan to answer the question regarding her compensation with CWM because it is beyond the scope of proper discovery under Rule 26(b)(1) in this case and will grant Defendants' request for a protective order as to this line of questioning.

## IV. Proposed confidentiality order

Because the Court is denying Murillo's Discovery MTC and Sullivan MTC and is correspondingly granting Defendants' MPO as to the matters at issue in these three motions, the Court denies as moot Defendants' request for a protective order to permit Defendants to provide Plaintiff with Defendants' financial personal and business information with protection from unnecessary and inappropriate dissemination.

## V. Requests to seal or mark depositions or expert reports as confidential

The Court has not yet ruled on Defendants' motion to strike portions of the report of Murillo's expert Rhetta Daniel. And Defendants' request to seal and mark as confidential portions of that report relies entirely on conclusory statements. The Court therefore denies without prejudice Defendants' motion for protective order as to this report.

Defendants likewise have not sufficiently shown that pages 16-17 of Sullivan's deposition could be harmful and prejudicial to her reputation, particularly given the limited information to which she testified there. The Court denies Defendants' motion seeking to mark these pages as confidential.

## VI. Deposition of Ryan Snow

At oral argument, the parties' counsel reported that they have agreed to reschedule Mr. Snow's deposition from October 21, 2016 and would confer to work out a mutually agreeable date.

## VII. Award of expenses

Under Rules 26(c)(3) and 37(a)(5), the Court determines that, under all of the circumstances presented here, Murillo and Defendants should bear their own expenses, including attorneys' fees, in connection with each of these motions.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Murillo's Motion to Compel Ann Sullivan to Respond to Deposition Questions [Dkt. No. 69] and GRANTS in part and DENIES in part Murillo's Motion to Compel Defendants to Comply with Their Discovery Obligations [Dkt. No. 64] and Defendants' Motion for Protective Order [Dkt. No. 77].

SO ORDERED.

DATED: October 20, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6139096

Murillo Modular Group, Ltd. v. Sullivan, Not Reported in Fed. Supp. (2016)

2016 WL 6139096

## Footnotes

1    Under Section 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[ ] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2025, I electronically filed a true and correct copy of the foregoing document using the United States District Court for the Southern District of Texas's CM/ECF System.

I FURTHER CERTIFY that I served the foregoing document on the following counsels via electronic mail:

| | |
|---|---|
| Sara Brinkmann | Kenneth M. Fetterman |
| Mandie Cash | Rebecca A. Beynon |
| King & Spalding LLP | Kellogg, Hansen, Todd, |
| 1100 Louisiana Street, Suite 4100 | Figel & Frederick, P.L.L.C. |
| Houston, Texas 77002 | 1615 M Street, NW, Suite 400 |
| Tel: 713-751-3279 | Washington, D.C. 20036 |
| sbrinkmann@kslaw.com | Tel: 202-326-7900 |
| mcash@kslaw.com | kfetterman@kellogghansen.com |
| | rbeynon@kellogghansen.com |
| *Counsel for Baylor College of Medicine* | *Counsel for U.S. Anesthesia Partners* |

*/s/* Laura R. Hall
Laura R. Hall
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3282
Email: lhall1@ftc.gov