# Exhibit H (Excerpt)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | **Case No.: 4:23-CV-03560-KH** |
| v. | |
| U.S. ANESTHESIA PARTNERS, INC., | |
| Defendant. | |

**FEDERAL TRADE COMMISSION'S RESPONSES AND OBJECTIONS TO USAP's**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("FTC") submits these Responses and Objections to Defendant U.S. Anesthesia Partners, Inc.'s ("USAP") First Set of Interrogatories to the Federal Trade Commission ("Interrogatories"), dated October 16, 2024. The FTC responds to these Interrogatories to the best of its present ability after a reasonably diligent inquiry. Discovery in this matter, however, is ongoing, and the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e), and to present at trial additional evidence or witnesses as they may be discovered or produced.

**General Objection**

The FTC objects to the Interrogatories to the extent they purport to represent six discrete interrogatories. Counted properly, USAP has served 25 separate interrogatories, each of which can be fully answered without reference to the others. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*,

1

## Interrogatory No. 5

For each acquisition or agreement that You contend constitutes any part of the alleged "multi-year anticompetitive scheme to consolidate anesthesia practices in Texas, drive up the price of anesthesia services provided to Texas patients, and increase [USAP's] own profits" (Compl. ¶ 1), identify USAP's purported share of any Relevant Market both before and after that acquisition or agreement, and each fact supporting any such contention (including the identity, nature, and (if applicable) Date range of each source of data or other information used in calculating such market-share figure, and the manner in which You processed or otherwise manipulated that data or information to arrive at the figures alleged in the Complaint (including but not limited to any manual or automated method, computer programs, or formulas You used to arrive at such market share allegations)).

## Answers and Objections to Interrogatory No. 5

The FTC objects to Interrogatory No. 5 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 5 asks the FTC to respond to four separate questions, each of which can be fully answered without reference to the others: (1) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Houston MSA; (2) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Dallas MSA; (3) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Austin MSA; and (4) the source of data or other information used in calculating the market share figures in the Complaint, including the manner in which such data was processed. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if the first question can be answered fully and completely without answering the second question.").

The FTC further objects to Interrogatory No. 5 to the extent that it seeks information underlying the FTC's methodology for "process[ing] or otherwise manipulat[ing]…data or information to arrive at the figures alleged in the Complaint," which is the product of legal and

economic analyses performed by FTC counsel and their agent. Such analyses are protected from disclosure under the attorney work product doctrine and deliberative process privilege.

The FTC further objects to Interrogatory No. 5 as premature to the extent it seeks information and evidence subject to ongoing fact and expert discovery, which is not scheduled to close until October 22, 2025. *See, e.g.*, *Werner Enterprises, Inc. v. Picus S.A. De C.V.*, No. 5:14-CV-104, 2016 WL 11736166, at *2 (S.D. Tex. Apr. 29, 2016) ("[C]ontention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information.") (quoting *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010)); *id.* ("[B]efore litigants have exchanged 'substantial documentary or testimonial discovery,' courts hesitate to compel parties to respond to contention requests.") (quoting *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992)). The FTC will respond to this Interrogatory No. 5 based on the market share calculations identified in the Complaint.

The FTC further objects to Interrogatory No. 5 as overbroad and unduly burdensome to the extent it purports to require the FTC to identify "each fact" supporting its position. *See TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020 WL 12573285, at *2 (S.D. Tex. Apr. 7, 2020) ("[C]ontention interrogatories should not request a detailed and exhaustive list of all evidence that may be offered." (internal quotation omitted)). "By requesting [the FTC] to identify each fact … that supports your contention … [USAP] is effectively requesting a detailed exhaustive list of all evidence." *Id.* (cleaned up)). The FTC has conducted a reasonable search and provided non-privileged information responsive to Interrogatory No. 5 that is within its custody and control.

Subject to and without waiving the above objections, the FTC responds as follows:

27

1.   **Market share information for each challenged acquisition in the Houston MSA**

The FTC's Complaint alleges that USAP perpetrated a "multi-year anticompetitive scheme to consolidate anesthesia practices in Texas, drive up the price of anesthesia services provided to Texas patients, and increase [USAP's] own profits." Compl. ¶ 1. The Complaint alleges that, with each subsequent acquisition, USAP increased its market share and further concentrated the market for hospital-only anesthesia services in the Houston MSA, and that USAP helped insulate its high market shares in Houston from competition through two price-setting arrangements. Compl. ¶¶ 261-73 & Tables 1-2. The Complaint alleges that the following acquisitions are part of the "multi-year anticompetitive" consolidation scheme in the Houston MSA: (1) Greater Houston Anesthesiology; (2) North Houston Anesthesiology; (3) MetroWest Anesthesia Care; and (4) Guardian Anesthesia.

The FTC analyzed the level of market concentration before and after these acquisitions, including through the use of the Herfindahl-Hirschman Index (HHI), a commonly accepted measure of market concentration. Merger Guidelines § 2.1. HHI is calculated by summing the squares of the market share of each market participant. Courts routinely employ the HHI to assess whether a transaction will cause a change in market concentration and, if that change is impermissibly high, whether the transaction is likely to result in a substantial lessening of competition. *See, e.g., Chi. Bridge & Iron Co. v. FTC*, 534 F.3d 410 (5th Cir. 2008) (citing Merger Guidelines). The Merger Guidelines, and cases in this Circuit, state that a merger is presumed to substantially lessen competition if the market HHI is greater than 1,800 and if the change in market HHI caused by the merger is greater than 100. *Id.* at 431 ("Where the post-merger HHI exceeds 1,800, and the merger produces an increase in the HHI of more than 100 points, the merger guidelines create a presumption of adverse competitive consequences.");

*Illumina, Inc. v. FTC*, 88 F.4th 1036, 1057 (5th Cir. 2023) ("In horizontal merger cases, the government can 'use a short cut to establish [its prima facie case] through statistics about the change in market concentration.'" (citations omitted)). The FTC's HHI analysis is summarized in the Complaint in Tables 1 and 2, and found that at least three of USAP's acquisitions in the Houston MSA meet this structural presumption, measured by either cases or revenue: North Houston Anesthesiology; MetroWest Anesthesia Care; and Guardian Anesthesia Services.

In the Houston MSA, USAP's consolidation scheme combined four significant anesthesia practices. In addition to the acquisitions identified above that meet the structural presumption, USAP's initial platform acquisition of Greater Houston Anesthesiology is part of this unlawful scheme to monopolize the Houston MSA. Following its roll-up, USAP had a nearly 70% market share, by revenue, of hospital-only anesthesia services in the Houston MSA. USAP has demonstrated its ability to increase prices while retaining its market share in the Houston MSA. As of the time of the Complaint, USAP charged approximately double the median reimbursement rate for anesthesia services in the Houston MSA. Despite charging the highest prices in the Houston MSA, USAP's volume of cases has grown significantly.

Based on the allegations in the Complaint, the following table identifies USAP's market share of hospital-only anesthesia services, before and after the acquisitions in the Houston MSA. The FTC reserves the right to update these numbers as discovery progresses, including expert discovery. *See* FTC's Response to Interrogatories No. 3 and No. 6 for additional facts that support the FTC's position that the identified acquisitions are unlawful.

| **Table 1** **Houston Acquisitions – Hospital-Only Anesthesia Services** | | | | | |
|---|---|---|---|---|---|
| Date | Acquired Group | USAP Pre-Acquisition Market Share | | USAP Post-Acquisition Market Share | |
| | | By Cases | By Revenue | By Cases | By Revenue |
| 12/27/2012 | Greater Houston Anesthesiology | 0% | 0% | 39.0% | 50.5% |
| 6/24/2014 | North Houston Anesthesiology | 38.75% | 51.1% | 43.2% | 54.3% |
| 3/1/2017 | MetroWest Anesthesia Care | 46.4% | 55.7% | 53.4% | 61.8% |
| 1/1/2020 | Guardian Anesthesia Services | 56.7% | 69.5% | 60.8% | 73.4% |

### 2. Market share information for each challenged acquisition in the Dallas MSA

The FTC's Complaint alleges that USAP perpetrated a "multi-year anticompetitive scheme to consolidate anesthesia practices in Texas, drive up the price of anesthesia services provided to Texas patients, and increase [USAP's] own profits." Compl. ¶ 1. The Complaint alleges that, with each subsequent acquisition, USAP increased its market share and further concentrated the market for hospital-only anesthesia services in the Dallas MSA, and that USAP helped insulate its high market shares in Dallas from competition through a market-allocation arrangement and a price-setting arrangement. Compl. ¶¶ 274-85 & Tables 3-4. The Complaint alleges that the following acquisitions are part of the "multi-year anticompetitive" consolidation

scheme in the Dallas MSA: (1) Pinnacle Anesthesia Consultants; (2) Anesthesia Consultants of

Dallas; (3) Excel Anesthesia Consultants; (4) Southwest Anesthesia Associates; (5) BMW

Anesthesiology; (6) Medical City Physicians; and (7) Sundance Anesthesia.

The FTC analyzed the level of market concentration before and after these acquisitions,

including through the use of the Herfindahl-Hirschman Index (HHI), a commonly accepted

measure of market concentration. Merger Guidelines § 2.1. HHI is calculated by summing the

squares of the market share of each market participant. Courts routinely employ the HHI to

assess whether a transaction will cause a change in market concentration and, if that change is

impermissibly high, whether the transaction is likely to result in a substantial lessening of

competition. *See, e.g., Chi. Bridge & Iron Co. v. FTC*, 534 F.3d 410 (5th Cir. 2008) (citing

Merger Guidelines). The Merger Guidelines, and cases in this District, state that a merger is

presumed to substantially lessen competition if the market HHI is greater than 1,800 and if the

change in market HHI caused by the merger is greater than 100. *Id.* at 431 ("Where the post-

merger HHI exceeds 1,800, and the merger produces an increase in the HHI of more than 100

points, the merger guidelines create a presumption of adverse competitive consequences.");

*Illumina, Inc. v. FTC*, 88 F.4th 1036, 1057 (5th Cir. 2023) ("In horizontal merger cases, the

government can 'use a short cut to establish [its prima facie case] through statistics about the

change in market concentration.'" (citations omitted)). The FTC's HHI analysis for the Dallas

MSA is summarized in the Complaint in Tables 3 and 4, and found that at least four of USAP's

acquisitions in the Dallas MSA meet this structural presumption, measured by cases, revenue, or

both: Anesthesia Consultants of Dallas; Excel Anesthesia Consultants; Southwest Anesthesia

Associates; and Sundance Anesthesia. Association. Compl. ¶¶ 274-85 & Tables 3-4.

Some acquisitions which do not meet the HHI structural presumption identified above are also unlawful as part of USAP's anticompetitive scheme to monopolize the Dallas MSA. In the Dallas MSA, USAP's consolidation scheme combined seven significant anesthesia practices. In addition to the acquisitions identified above that meet the structural presumption, USAP's initial platform acquisition of Pinnacle Anesthesia Consultants, as well as its acquisitions of BMW Anesthesiology and Medical City Physicians, are part of this unlawful scheme to monopolize the Dallas MSA. Following its roll-up, USAP had a 68% market share, by revenue, of hospital-only anesthesia services in the Dallas MSA. USAP has demonstrated its ability to increase prices while retaining its market share in the Dallas MSA. Specifically, as of the time of the Complaint, USAP charged approximately double the median reimbursement rate for anesthesia services in the Dallas MSA. Despite charging the highest prices in the Dallas MSA, USAP's volume of cases has grown significantly.

Based on the allegations in the Complaint, the following table identifies USAP's market share of hospital-only anesthesia services, before and after the acquisitions in the Dallas MSA. The FTC reserves the right to update these numbers as discovery progresses, including expert discovery. *See* FTC's Response to Interrogatories No. 3 and No. 6 for additional facts that support the FTC's position that the identified acquisitions are unlawful.