# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ANESTHESIA PARTNERS, INC.,<br><br>Defendant. | Case No.: 4:23-CV-03560-KH |

**FEDERAL TRADE COMMISSION'S RESPONSES AND OBJECTIONS TO USAP's**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("FTC") submits these Responses and Objections to Defendant U.S. Anesthesia Partners, Inc.'s ("USAP") First Set of Interrogatories to the Federal Trade Commission ("Interrogatories"), dated October 16, 2024. The FTC responds to these Interrogatories to the best of its present ability after a reasonably diligent inquiry. Discovery in this matter, however, is ongoing, and the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e), and to present at trial additional evidence or witnesses as they may be discovered or produced.

**General Objection**

The FTC objects to the Interrogatories to the extent they purport to represent six discrete interrogatories. Counted properly, USAP has served 25 separate interrogatories, each of which can be fully answered without reference to the others. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*,

1

No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if the first question can be answered fully and completely without answering the second question"); *see also Dimitrijevic*, 2005 WL 8164073 at *2 (describing other tests as producing "a rubric sufficiently elastic to cover the most disparate of topics").

**Definition No. 7**

"Electronically Stored Information" or "ESI" means all Documents or data that are stored in any electronic medium from which information can be obtained.

**Objection to Definition No. 7**

The FTC objects to the definition of "electronically-stored information" or "ESI" to the extent it is inconsistent with, or purports to require the FTC to take measures above and beyond, the requirements of the Federal Rules of Civil Procedure, any Local Rules, applicable case law, any Court Rules, Orders, or Stipulations entered in this case, including, but not limited to, the Order and Stipulation Regarding Electronic Discovery Procedure in this case (Dkt. No. 172).

**Instruction No. 5**

These interrogatories call for all information (including any information contained in or on any Document or writing) that is known or available to You or any other Person acting under Your behalf or under Your direction or control.

**Objection to Instruction No. 5**

The FTC objects to this Instruction on the grounds that it is overly broad and unduly burdensome to the extent it seeks to require the FTC to provide "all information." *See TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020 WL 12573285, at *2 (S.D. Tex. Apr. 7, 2020) ("[C]ontention interrogatories should not request a detailed and exhaustive list of all evidence that may be offered." (internal quotation omitted)). Consistent with its obligations

substitutes when it comes to hospital-only anesthesia. For example, hospitals often prefer an anesthesia group that can cover all of their long shifts and overnight call needs. This requires a larger set of providers. In addition, hospitals may require specific anesthesia services, such as cardiac, pediatric, or transplant anesthesia; groups that provide services in other settings are less likely to have all of these specialized service providers. Outpatient settings are more likely to cover a more limited set of pre-scheduled surgeries, so a broader set of alternative provider groups may be available to provide anesthesia services at ASCs. While hospital-only anesthesia services are provided only at hospitals, other anesthesia services are provided at a wider range of facilities, which are different in number and have different entry conditions.

**Interrogatory 2**

Identify each fact supporting Your position (see Compl. ¶¶ 226, 234, 243, 251, 259) that any Person has recognized any of the Relevant Markets (as You have defined and populated those Relevant Markets) as a distinct market, in ordinary course business Documents or otherwise, including by identifying when and how each such Person recognized the Relevant Market as a distinct market.

**Answers and Objections to Interrogatory No. 2**

The FTC objects to Interrogatory No. 2 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 2 asks the FTC to respond to five separate questions, each of which can be fully answered without reference to the others: (1) support for the position that hospital-only anesthesia services are distinct from non-hospital-only anesthesia services; (2) support for the position that commercial insurance markets are distinct from government insurance markets; (3) support for the position that the Houston metropolitan statistical area ("MSA") is relevant geographic market for hospital-based anesthesia services; (4) support for the position that the Dallas MSA is a relevant geographic market for hospital-based anesthesia services; and (5) support for the position that the Austin MSA is a relevant geographic market for

hospital-based anesthesia services. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if the first question can be answered fully and completely without answering the second question.").

The FTC further objects to Interrogatory No. 2 to the extent that it seeks information that is protected by attorney-client privilege, the work product doctrine, the common interest doctrine, the deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

The FTC further objects to Interrogatory No. 2 as premature because it seeks information and evidence subject to ongoing fact and expert discovery, which is not scheduled to close until October 22, 2025. *See, e.g.*, *Werner Enterprises, Inc. v. Picus S.A. De C.V.*, No. 5:14-CV-104, 2016 WL 11736166, at *2 (S.D. Tex. Apr. 29, 2016) ("[C]ontention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information.") (quoting *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010)); *id.* ("[B]efore litigants have exchanged 'substantial documentary or testimonial discovery,' courts hesitate to compel parties to respond to contention requests.") (quoting *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992)). The FTC will respond to this Interrogatory based on the allegations in the Complaint, and reserves its right to supplement or amend its response in the event that additional or different relevant information is obtained or developed. *See* Fed. R. Civ. P. 26(e)(1).

The FTC further objects to Interrogatory No. 2 as overbroad and unduly burdensome to the extent it purports to require the FTC to identify "each fact" supporting its position. *See TIG*

11

systems such as Ascension operate hospital network brands in Austin that serve the Austin MSA, such as Seton. Similarly, when discussing alternative groups to replace USAP or other anesthesia providers, Austin hospitals most frequently consider groups already providing services in the Austin MSA. USAP organized its Texas (Central) region with roughly the Austin MSA as its boundary. USAP's ordinary course documents likewise discuss market penetration in terms of percentage of business within a hospital system in an MSA.

**Interrogatory No. 3**

Identify each fact supporting Your allegations regarding the market share of any Market Participant in any Relevant Market (e.g., Compl. Tables 1-6), including for each market-share figure the factual basis for including or excluding any Person as a Market Participant; the factual basis for including or excluding any Service as "hospital-only"; the identity, nature, and (if applicable) Date range of each source of data or other information used in calculating such market-share figure; and the manner in which You processed or otherwise manipulated that data or information to arrive at the figures alleged in the Complaint (including but not limited to any manual or automated method, computer programs, or formulas You used to arrive at such market share allegations).

**Answers and Objection to Interrogatory No. 3**

The FTC objects to Interrogatory No. 3 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 3 asks the FTC to respond to three separate questions, each of which can be fully answered without reference to the others: (1) the factual basis for including or excluding any Person as a Market Participant; (2) the factual basis for including or excluding any Service as "hospital-only"; and (3) the source of data or other information used in calculating the market share figures in the Complaint, including the manner in which such data was processed. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if

17

the first question can be answered fully and completely without answering the second question.").

The FTC further objects to Interrogatory No. 3 to the extent that it seeks information underlying the FTC's methodology for "process[ing] or otherwise manipulat[ing]…data or information to arrive at the figures alleged in the Complaint," which is the product of legal and economic analyses performed by FTC counsel and their agent. Such analyses are protected from disclosure under the attorney work product doctrine and deliberative process privilege.

The FTC further objects to Interrogatory No. 3 as premature to the extent it seeks information and evidence subject to ongoing fact and expert discovery, which is not scheduled to close until October 22, 2025. *See, e.g.*, *Werner Enterprises, Inc. v. Picus S.A. De C.V.*, No. 5:14-CV-104, 2016 WL 11736166, at *2 (S.D. Tex. Apr. 29, 2016) ("[C]ontention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information.") (quoting *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010)); *id.* ("[B]efore litigants have exchanged 'substantial documentary or testimonial discovery,' courts hesitate to compel parties to respond to contention requests.") (quoting *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992)). The FTC will respond to this Interrogatory No. 3 based on the market share calculations identified in the Complaint.

The FTC further objects to Interrogatory No. 3 as overbroad and unduly burdensome to the extent it purports to require the FTC to identify "each fact" supporting its position. *See TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020 WL 12573285, at *2 (S.D. Tex. Apr. 7, 2020) ("[C]ontention interrogatories should not request a detailed and exhaustive list of all evidence that may be offered." (internal quotation omitted)). "By requesting [the FTC] to

18

reimbursement. These hospital-only codes include certain procedures which subject the patient to an elevated risk such that they require quick access to emergency medical service, even if the procedure might otherwise be considered outpatient or not require an overnight stay. Commercial payors use CMS's reimbursement policies as a model for their reimbursement policies.

### 3. The source of data or other information used to calculate market shares

During its investigation, the FTC analyzed data from 2012-2020 received from Blue Cross/Blue Shield of Texas, Aetna, Cigna, and United HealthCare. The FTC produced this data to USAP on May 28, 2024. To calculate market shares in the Complaint, the FTC relied on data from Blue Cross/Blue Shield of Texas, and to check the robustness of those shares, the FTC relied on data from Aetna, Cigna, and United HealthCare. The FTC calculated the share for each firm in each geographic market for each quarter. As the Complaint demonstrates, the FTC assessed market share separately by cases and by revenue. *See, e.g.,* Compl. ¶¶ 261-62, 272, 274-75, 284, 286-87, Tables 1-6. In conducting this analysis, the FTC used standard, publicly available statistical software, primarily STATA and R. Market participants, including Blue Cross and United HealthCare have both calculated similar market shares for USAP in the ordinary course of their business.

**Interrogatory No. 4**

For each Person who provides (or ever has provided) any Service in any Geographic Market, explain whether that Person is (or ever has been) a Market Participant in any Relevant Market, including by identifying each fact supporting Your position.

**Answers and Objections to Interrogatory No. 4**

The FTC objects to Interrogatory No. 4 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 4 poses three separate and discrete questions, each of which can be fully answered without reference to the others: (1) identifying the market

20

participants in the hospital-only commercial anesthesia market in Houston; (2) identifying the market participants in the hospital-only commercial anesthesia market in Dallas; and (3) identifying the market participants in the hospital-only commercial anesthesia market in Austin. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if the first question can be answered fully and completely without answering the second question.").

The FTC further objects to Interrogatory No. 4 to the extent that it seeks information that is protected by attorney-client privilege, the work product doctrine, the common interest doctrine, the deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

The FTC further objects to Interrogatory No. 4 as premature because it seeks information and evidence subject to ongoing fact and expert discovery, which is not scheduled to close until October 22, 2025. *See, e.g.*, *Werner Enterprises, Inc. v. Picus S.A. De C.V.*, No. 5:14-CV-104, 2016 WL 11736166, at *2 (S.D. Tex. Apr. 29, 2016) ("[C]ontention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information.") (quoting *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010)); *id.* ("[B]efore litigants have exchanged 'substantial documentary or testimonial discovery,' courts hesitate to compel parties to respond to contention requests.") (quoting *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992)). The FTC reserves its right to supplement or amend its response in the event that additional or different relevant information is obtained or developed. *See* Fed. R. Civ. P. 26(e)(1).

**Interrogatory No. 5**

For each acquisition or agreement that You contend constitutes any part of the alleged "multi-year anticompetitive scheme to consolidate anesthesia practices in Texas, drive up the price of anesthesia services provided to Texas patients, and increase [USAP's] own profits" (Compl. ¶ 1), identify USAP's purported share of any Relevant Market both before and after that acquisition or agreement, and each fact supporting any such contention (including the identity, nature, and (if applicable) Date range of each source of data or other information used in calculating such market-share figure, and the manner in which You processed or otherwise manipulated that data or information to arrive at the figures alleged in the Complaint (including but not limited to any manual or automated method, computer programs, or formulas You used to arrive at such market share allegations)).

**Answers and Objections to Interrogatory No. 5**

The FTC objects to Interrogatory No. 5 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 5 asks the FTC to respond to four separate questions, each of which can be fully answered without reference to the others: (1) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Houston MSA; (2) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Dallas MSA; (3) USAP's market share of hospital-only anesthesia service both before and after each challenged acquisition in the Austin MSA; and (4) the source of data or other information used in calculating the market share figures in the Complaint, including the manner in which such data was processed. *See Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021) (quoting *Dimitrijevic v. TV & C GP Holding Inc.*, No. H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005)) (to determine the number of discrete interrogatories, "a court asks if the first question can be answered fully and completely without answering the second question.").

The FTC further objects to Interrogatory No. 5 to the extent that it seeks information underlying the FTC's methodology for "process[ing] or otherwise manipulat[ing]…data or information to arrive at the figures alleged in the Complaint," which is the product of legal and

26

**Interrogatory 6**

For each acquisition or agreement that You contend constitutes any part of the alleged "multi-year anticompetitive scheme to consolidate anesthesia practices in Texas, drive up the price of anesthesia services provided to Texas patients, and increase [USAP's] own profits" (Compl. ¶ 1), state whether You contend that, if USAP had not entered into that acquisition or agreement, prices would be lower, quality would be better, or output would be greater in any Relevant Market, and identify each fact supporting any such contention. For the avoidance of doubt, this Interrogatory seeks the definition of "price" (e.g., id. at ¶ 1), "quality" (id. at ¶¶ 268, 280, 293, 309, & 329), and output in any Relevant Market that underlies any such contention, each fact the FTC contends supports that definition, and each fact the FTC contends supports any purported adverse effect of each challenged acquisition or agreement.

**Answers and Objections to Interrogatory No. 6**

The FTC objects to Interrogatory No. 6 to the extent it purports to represent one discrete interrogatory. Instead, Interrogatory No. 6 asks the FTC to respond to nine separate questions, each of which can be fully answered without reference to the others: (1) whether the FTC contends that USAP's conduct resulted in higher prices of anesthesia services in the Houston MSA, and the facts supporting that contention; (2) whether the FTC contends that USAP's conduct resulted in lower quality of anesthesia services in the Houston MSA, and the facts supporting that contention; (3) whether the FTC contends that USAP's conduct resulted in lower output of anesthesia services in the Houston MSA, and the facts supporting that contention; (4) whether the FTC contends that USAP's conduct resulted in higher prices of anesthesia services in the Dallas MSA, and the facts supporting that contention; (5) whether the FTC contends that USAP's conduct resulted in lower quality of anesthesia services in the Dallas MSA, and the facts supporting that contention; (6) whether the FTC contends that USAP's conduct resulted in lower output of anesthesia services in the Dallas MSA, and the facts supporting that contention; (7) whether the FTC contends that USAP's conduct resulted in higher prices of anesthesia services in the Austin MSA, and the facts supporting that contention; (8) whether the FTC contends that USAP's conduct resulted in lower quality of anesthesia services in the Austin MSA, and the facts

supporting that contention; and (9) whether the FTC contends that USAP's conduct resulted in lower output of anesthesia services in the Austin MSA, and the facts supporting that contention.

The FTC further objects to Interrogatory No. 6 to the extent that it seeks information that is protected by attorney-client privilege, the work product doctrine, the common interest doctrine, the deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

The FTC further objects to Interrogatory No. 6 as premature because it seeks information and evidence subject to ongoing fact and expert discovery, which is not scheduled to close until October 22, 2025. *See, e.g.*, *Werner Enterprises, Inc. v. Picus S.A. De C.V.*, No. 5:14-CV-104, 2016 WL 11736166, at *2 (S.D. Tex. Apr. 29, 2016) ("[C]ontention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information.") (quoting *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *3 (S.D. Fla. Dec. 16, 2010)); *id.* ("[B]efore litigants have exchanged 'substantial documentary or testimonial discovery,' courts hesitate to compel parties to respond to contention requests.") (quoting *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992)). The FTC reserves its right to supplement or amend its response in the event that additional or different relevant information is obtained or developed. *See* Fed. R. Civ. P. 26(e)(1).

The FTC further objects to Interrogatory No. 6 as overbroad and unduly burdensome to the extent it purports to require the FTC to identify "each fact" supporting its position. *See TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020 WL 12573285, at *2 (S.D. Tex. Apr. 7, 2020) ("[C]ontention interrogatories should not request a detailed and exhaustive list of all evidence that may be offered." (internal quotation omitted)). "By requesting [the FTC] to identify each fact … that supports your contention … [USAP] is effectively requesting a detailed

### 9. Output Effects of USAP's Conduct in the Austin MSA

At this time, the FTC also does not contend that USAP's anticompetitive conduct has resulted in lower output of hospital-only anesthesia services. As the FTC is not at this time contending that USAP's anticompetitive conduct had a specific effect on output, the FTC does not take a position on how output should be defined. The FTC reserves its right to supplement or amend its response in the event that additional or different information is obtained or developed during discovery. *See* Fed. R. Civ. P. 26(e)(1).

Dated: December 2, 2024

*/s/ Kara Monahan*
Kara Monahan
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Ph: 202-326-2018
Email: kmonahan@ftc.gov

*Counsel for Plaintiff*
*Federal Trade Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served a true and correct copy of Plaintiff Federal Trade Commission's Responses and Objections to U.S. Anesthesia Partners, Inc's First Set of Interrogatories via email to the following counsel of record.

- Geoffrey Klineberg (gklineberg@kellogghansen.com)
- Kenneth Fetterman (kfetterman@kellogghansen.com)
- Kyle Wood (kwood@kellogghansen.com)
- David Beck (dbeck@beckredden.com)

Dated: December 2, 2024    */s/ Kara Monahan*
Kara Monahan
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Ph: 202-326-2018
Email: kmonahan@ftc.gov

*Counsel for Plaintiff*
*Federal Trade Commission*