**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. ANESTHESIA PARTNERS, INC.,<br><br>          Defendant. | **Case No.: 4:23-CV-03560-KH** |

**Appendix of Authorities in Plaintiff Federal Trade
Commission's Opposition to Defendant U.S. Anesthesia
Partners, Inc.'s Motion to Compel Interrogatory Responses**

**Cases**

*Antero Res. Corp. v. C&R Downhole Drilling, Inc.,*
No. 4:16-CV-668-Y, 2018 WL 11430788 (N.D. Tex. June 27, 2018) ........................... 1

*Attilio v. United States,*
No. CV H-17-1319, 2018 WL 7253958 (S.D. Tex. Sept. 12, 2018) .............................. 5

*Citro-Rey S. De R.L. De C.V. v. L&M Cos.,*
No. CV 7:07-154, 2009 WL 1227821 (S.D. Tex. May 5, 2009) .................................... 7

*Davaco, Inc. v. AZ3, Inc.,*
No. 3:07-CV-803-B, 2008 WL 11350014 (N.D. Tex. Apr. 30, 2008) ......................... 10

*De Hoyos v. C.R. England,*
No. 5:15-CV-60, 2016 WL 11575123 (S.D. Tex., Apr. 19, 2016) ............................... 13

*Dimitrijevic v. TV&C GP Holding Inc.,*
No. CV H-04-3457, 2005 WL 8164073 (S.D. Tex. Aug. 24, 2005) ............................ 19

*EEOC v. Big Lots Stores, Inc.,*
No. 9:08-CV-177, 2009 WL 10677442 (E.D. Tex. Oct. 21, 2009) .............................. 28

*Gray v. Experian Info Sols., Inc.,*
No. 1:23-CV-545-RP, 2024 WL 4932539 (W.D. Tex. July 25, 2024) ......................... 31

*HF Sinclair Refining & Marketing, LLC v. Nextera Energy Mktg., LLC,*
No. 3:23-CV-1798-X, 2025 WL 1150682 (N.D. Tex. Apr. 17, 2025) ......................... 32

*Moser v. Navistar Int'l Corp.,*
No. 4:17-cv-00598, 2018 WL 3614012 (E.D. Tex. July 27, 2018) .............................. 36

*Nexus Display Techs. LLC v. Dell Inc.,*
No. 2:14-CV-762, 2015 WL 13544186 (E.D. Tex. Nov. 2, 2015) ............................... 45

*Reeves v. Wells Fargo Bank, NA,*
No. EP-14-CV-00187-DCG, 2015 WL 11598710 (W.D. Tex. June 26, 2015) ............. 47

*Simon v. State Farm Lloyds,*
No. 7:14-CV-251, 2015 WL 12777219 (S.D. Tex. Apr. 9, 2015) ................................ 50

*Taylor v. Turner Indus. Grp., LLC,*
No. 2:11-CV-57-JRG, 2012 WL 4092492 (E.D. Tex. Sept. 17, 2012) ......................... 57

*Torralba v. Napolitano,*
No. CV L-08-83, 2010 WL 11671745 (S.D. Tex. Feb. 9, 2010) .................................. 59

*TravelPass Grp., LLC v. Caesars Entm't Corp.,*
    No. 5:18-CV-153-RWS-CMC, 2021 WL 2492858 (E.D. Tex. May 4, 2021) .............. 70

*White v. Diamond Offshore Drilling Inc.,*
    No. 4:16-CV-3634, 2018 WL 11471473 (S.D. Tex. Mar. 5, 2018) ............................. 88

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 4 of 92

Antero Resources Corporation v. C&R Downhole Drilling, Inc., Not Reported in Fed....

2018 WL 11430788
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

ANTERO RESOURCES CORPORATION, Plaintiff,

v.

C&R DOWNHOLE DRILLING, INC., C&R, Downhole
Drilling, LLC, Black Diamond Hot Shot, LLC, STRC
Oilfield Techonology, LLC, Big Tex Well Services,
LLC, and Tommy Robertson, Individually, Defendants.

CIVIL ACTION NO. 4:16-CV-668-Y
|
Signed June 27, 2018

**ORDER PARTIALLY GRANTING PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER AND
DENYING DEFENDANT'S MOTION TO
COMPEL RESPONSES TO THIRD AND
FOURTH SETS OF INTERROGATORIES
AND REQUEST FOR ADMISSION**

JEFFREY L. CURETON, UNITED STATES MAGISTRATE
JUDGE

**\*1** Pending before the Court are two motions. First, on
March 5, 2018, Plaintiff Antero Resources Corporation
("Antero") filed a Motion for Protective Order [doc. 249]
against Defendant Tommy Robertson ("Robertson"), in
his individual capacity. [1] Robertson responded to Antero's
motion by filing both a response, as well as filing a
Motion to Compel Responses to Third and Fourth Sets
of Interrogatories and Request for Admission [doc. 257]
("Motion to Compel"). [2] Having carefully reviewed the
motions, responses, and replies, the Court concludes that
Plaintiffs motion should be **PARTIALLY GRANTED** and
Defendant's motion should be **DENIED.**

**I. BACKGROUND**

On December 7, 2015, Plaintiff filed suit against Tommy
Robertson, and companies under his control, alleging that
Defendants orchestrated a scheme to overbill for goods and
services related to Antero's oil and gas operations in West
Virginia. On May 12, 2016, Defendants C&R Downhole

Drilling, Inc., C&R Downhole Drilling, LLC, Black Diamond
Hot Shot, LLC, STRC Oilfield Technology, LLC, Big Tex
Well Services, LLC, and Tommy Robertson, individually
(hereinafter collectively referred to as the "Robertson
Defendants") served on Antero its First Set of Discovery
Requests, which contained ten interrogatories. (Pl.'s Mot. at
2; *see* Appendix to Antero's Motion for Protective Order
("Pl.'s App.") at 2-19.) Thereafter, on November 23, 2016,
the Robertson Defendants served on Antero its Second
Discovery Requests, which contained fourteen additional
interrogatories. (Pl.'s Mot. at 2; *see* Pl.'s App. at 21-36.)
On February 1, 2018, Robertson, in his individual capacity,
served on Antero his Third Set of Interrogatories, which
contained six additional interrogatories. (Pl.'s Mot. at 3; *see*
Pl.'s App. at 38-44.) Later, on February 8, 2018, Robertson,
again in his individual capacity, served on Antero his Fourth
Set of Interrogatories, which contained three additional
interrogatories. (Pl.'s Mot. at 3; *see* Pl.'s App. at 38-50.)

**II. ANALYSIS**

**A. Interrogatories**

In its Motion for Protective Order, Antero requests, *inter
alia*, that the Court "protect[ ] it from responding to the
[third and fourth set of] interrogatories on the grounds that
Robertson has exceeded" the permitted limit of twenty-
five interrogatories set forth in Federal Rule of Civil
Procedure ("Rule") 33(a)(1) by serving Antero with thirty-
three interrogatories. (Plaintiffs Motion for Protective Order
("Pl.'s Mot.") at 1.) Specifically, Antero argues that, because
Robertson has failed to comply with the limitations on the
number of interrogatories set forth in the Rules and also failed
to seek leave of Court to increase the maximum allowable
number of interrogatories, Antero is entitled to a protective
order. Antero "requests that the interrogatories be stricken
without leave to amend or revise them." (Pl.'s Mot. at 1.)

**\*2** As noted above, Robertson responded to Antero's
Motion for Protective Order by filing a response as well
as a Motion to Compel. Robertson, noting Antero has
already answered twenty-four interrogatories, argues, *inter
alia*, that the Court should compel Antero to answer the
nine additional interrogatories contained in the third and
fourth sets of interrogatories because the interrogatories
ask questions that should have been answered in Antero's
pleadings. (Defendant's Motion to Compel ("Def. Mot. to
Compel") at 5.) In addition, Robertson argues that Antero
should answer more than twenty-four interrogatories because

this is a complex lawsuit in which "Antero has brought at least six different claims for relief and seeks more than $200 million in damages." (Def.'s Mot. to Compel at 3.)

As set forth above, Rule 33(a)(1) limits the number of written interrogatories that may be served by one party on another party to twenty-five, including discrete subparts. Fed. R. Civ. P. 33(a)(1). "Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." *Id.* The seeking party must show why the benefits of additional interrogatories outweigh any burden to the opposing party. *See Shaw Group, Inc. v. Zurich Am. Ins. Co.*, No. 12-257-JJB-RLB, 2014 WL 1816494, at *2 (M.D. La. May 7, 2014) (denying request for leave to serve additional interrogatories because party had not timely requested leave and made no "particularized showing" of good cause "why the court should grant it leave to re-serve" the unanswered interrogatories); 🚩 *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996) (denying request to exceed number of allowed interrogatories where plaintiff "did not explain why additional interrogatories were necessary, beyond stating that the information related to [defendant's] defenses in some unspecified way").

Further, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" when the party seeking it demonstrates good cause. Fed. R. Civ. P. 26(c)(1); *see* ⚠️ *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." 🚩 *In re Terra Int'l Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citations omitted). Once a trial court has determined a protective order is justified, the court "enjoys wide discretion in setting the parameters of a protective order" because Rule 26(c) allows the "court to decide when a protective order is appropriate and what degree of protection is required." *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, 2017 WL 1426933 (E.D. La. 2017); *see* 🚩 *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

After review, it is clear that Robertson has exceeded the written interrogatory limit of twenty-five as set forth in Rule 33(a)(1) by requesting a total of thirty-three written interrogatories from Antero, without seeking leave from the Court to request more. Although, under the rules, each of

the six Defendants could have separately served twenty-five interrogatories on Antero, the Robertson Defendants chose to collectively serve twenty-four interrogatories—ten interrogatories served in the First Set on May 12, 2016 and the fourteen interrogatories served in the Second Set on November 23, 2016. Therefore, the Court agrees with Antero that eight of the nine additional interrogatories—six interrogatories served in the Third Set on February 1, 2018 and three interrogatories served in the fourth set on February 8, 2018—that were from Robertson in his individual capacity exceed Robertson's twenty-five written interrogatory limit. Thus, Robertson is entitled to specify which one of the nine additional interrogatories in the third and fourth sets that he desires to have answered by Antero, bringing his total interrogatories served on Antero to twenty-five. In addition, the remaining Robertson Defendants (other than Robertson individually) each have one remaining written interrogatory available because Antero has only answered twenty-four interrogatories from each Defendant. Therefore, Plaintiffs Motion for Protective Order should be **PARTIALLY GRANTED** in that Antero is protected from answering eight of the nine interrogatories contained in the Third and Fourth Sets and Robertson shall notify Antero which one interrogatory he wants answered.

### B. Request for Admission

**\*3**  In his Motion to Compel, Robertson also requests this Court to compel Antero to fully respond to his request for Admission No. 3, which states, "Admit that Antero could have used other vendors or service providers to perform all work charged in each Disputed Invoice." (Def.'s Mot. at 7; *see* Defendant's Appendix in Support of Motion to Compel ("Def. App.") at 93.) On March 12, 2018, Antero responded to such request for admission as follows:

> This request violates the Robertson defendant's duty to forth [sic] their requests simply and directly and to avoid vague and ambiguous requests that prohibit Antero from answering the request with a simple admit or deny without an explanation, especially when this request is phrased as a hypothetical. Antero is unable to admit or deny this request for admission the way it is presented.

(Def.'s App. at 93.) Antero later amended its response as follows:

Antero is claiming damages relating to around 10,500 unique charges. Counsel for the Robertson defendants, Laura Fontaine, wrote that this request demands that Antero provide unique responses as to each disputed service, which in effect turns this request for admission into 10,500 unique requests covering the time period between 2013 and 2015. A request for 10,500 separate requests is patently overbroad and unduly burdensome. Moreover, Antero has insufficient knowledge at this time to admit or deny these 10,500 requests. John Kawcak, Jeff Partridge, and Landon West decided on vendors to use, and they no longer work for Antero. In fact, some or all of them are currently cooperating with the Robertson defendants. So, the Robertson defendants actually have better access to the people with the relevant information to answer this response, but there is no way to expect Kawcak, Partridge, and West would be able to provide specific responses as to 10,500 separate charges. Further, the term "Antero could have used other vendors" is unclear. The Robertson defendants were chosen because, using payments and benefits totaling over $1 million, they corrupted the Antero personnel responsible for vendor selection. Because of these corrupting payments, it is not clear whether Antero "could have used" other vendors.

(Def.'s App. at 99.)

Robertson asserts in his motion that, if Antero intends to prove at trial that 10,500 unique charges were each separately, individually, and uniquely wrongful, then evidence relating to each charge is individually discoverable. (Def's. Mot. to Compel at 8.) Antero, in its response, argues that such request is vague and unclear. Specifically, Antero states:

During the meet and confer process, Antero noted that Request for Admission No. 3 was not sufficiently clear. Antero noted that the term "could have used other vendors "was unclear because Robertson has corrupted the Antero personnel charged with hiring vendors through millions of dollars in cash payment and other benefits. If Robertson bought off Antero's personnel, it is not clear whether Antero "could have used other vendors." Counsel for Robertson didn't substantively respond to Antero's argument that the term "could have used other vendors" was vague because in the context of the kickback scheme,

instead responding, "I think I'm using phrases we can all understand."

In addition to the vagueness objection, Antero noted that the payments for its pricing claim "relat[e] to tens if not thousands of goods and services." Antero further stated that it was not clear if Robertson was asking "Antero to admit or deny [that Antero could have used other vendors] as to every single service or good it was ever provided." Robertson responded that Request for Admission No. 3 required Antero to provide individual responses to every single good and service that is at issue in this case.

**\*4** (Plaintiff's Brief in Opposition to Defendant's Motion to Compel ("Pl.'s Br. in Opposition") at 4) (internal citations omitted).)

Rule 36(a)(1) provides that a party may serve written requests for admission pertaining to the truth of any matters within the scope of Rule 26(b)(1) relating to, as relevant here, "facts, the application of law to fact, or opinions about either; and [ ] the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A). Admissions should only include matters that will not later be subject to challenge or are facts in dispute.

🚩 *In re* Carney, 258 F. 3d 415 (5th Cir. 2001). Rule 36(a)(4), which details the requirements of an answer to a request for admission, states:

If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Fed. R. Civ. P. 36(a)(4).

Although this Court does not agree with all of Plaintiff's arguments, it is clear that whether other vendors were available is disputed in this case. In fact, it the very foundation in which Plaintiff rests its case—Plaintiff argues that Defendants became the only vendor available when they allegedly created a kickback scheme with Antero's

Antero Resources Corporation v. C&R Downhole Drilling, Inc., Not Reported in Fed....

employees such that Defendants had a monopoly over Antero's operations. Consequently, the Court concludes that the portion of Defendant's Motion to Compel relating to the request for admission should be **DENIED.**

### III. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion for Protective Order [doc. 249] is **PARTIALLY GRANTED** in that Antero is protected from answering eight of the nine interrogatories contained in the Third and Fourth Sets.

It is further **ORDERED** that Robertson, **no later than July 6, 2018,** shall notify Antero which one interrogatory in the Third and Fourth Sets that he wants answered.

It is further **ORDERED** that Antero, **no later than July 16, 2018,** shall serve its answer to such specified interrogatory.

It is further **ORDERED** that Defendant's Motion to Compel Responses to Third and Fourth Sets of Interrogatories and Request for Admission [doc. 257] is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11430788

---

**Footnotes**

1    Plaintiff states it is seeking a protective order on the basis that some federal courts have held, or suggested, that a responding party must seek a protective order before responding to the interrogatories or their objection is waived. (Plaintiff's Motion to Compel at 1, fn. 1.)

2    Robertson filed a timely response to Antero's objection by generally referencing his Motion to Compel Responses to Third and Fourth Sets of Interrogatories and Request for Admission.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appendix of Authorities: 4 of 89

Case 4:23-cv-03560      Document 272-6      Filed on 06/20/25 in TXSD      Page 8 of 92

Attilio v. United States, Not Reported in Fed. Supp. (2018)

2018 WL 7253958
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

Donald Ernest ATTILIO II, Plaintiff,
v.
UNITED STATES of America Defendant.

Civil Action No. H-17-1319
|
Signed 09/12/2018

**Attorneys and Law Firms**

Tobias Anthony Cole, The Cole Law Firm, Bryant S. Banes, Neel Hooper Banes, Houston, TX, for Plaintiff.

Julia Thompson Attilio, Shriner, TX, pro se.

Richard Wesley Bennett, Annalisa L. Cravens, United States Attorney's Office, Houston, TX, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Peter Bray, United States Magistrate Judge

**\*1** Pending before the court is Plaintiff's Motion to Compel the Defendant's Written Discovery Responses. (Docket Entry No. 35.) For the reasons stated below the motion is denied.

Donald Ernest Attilio II filed this lawsuit under the Federal Tort Claims Act on April 27, 2017, alleging he sustained injuries when surgeons left a plastic reservoir inside of his body during surgery at the VA hospital. The court entered a scheduling order on August 2, 2017, and ordered that discovery be completed by March 1, 2018. The parties filed a joint motion for continuance, which the court granted on February 21, 2018. The court ordered that discovery be completed by June 8, 2018.

Attilio served his first set of interrogatories and first set of requests for production on June 30, 2017, to which the United States timely responded and objected. Attilio did not file a motion to compel at that time. Attilio served his second and third sets of interrogatories and requests for production on May 7 and May 8, 2018, respectively. The United States responded on June 7, 2018. Attilio filed the motion to compel now under consideration on June 26, 2018, more than two

weeks after the close of discovery, and more than a year since the United States filed its objections and answers to Attilio's first set of discovery requests.

Attilio's motion to compel sets forth nothing more than generalized complaints about the Defendant's discovery responses. For example, Attilio claims the United States refused "to produce documents, communications, facts and information regarding the incident that is the subject matter of the Complaint," and that the United States refused "to produce documents, communications, facts and information regarding the administrative claim submitted to the U.S. Department of Veterans Affairs." (Docket Entry No. 35 at 3.) Attilio does not provide the court with any information about which discovery response is deficient, what documents he did receive, what documents he expects to have received but did not, or any other information from which the court could begin to analyze his complaint.

In another part of his motion Attilio makes a long list of the objections the United States lodged and complains that the objections are "boilerplate" and "inappropriate." (Docket Entry No. 35 at 5.) Attilio does not discuss any of the objections or explain why the objections are inappropriate. It appears that Attilio's motion to compel includes a complaint relating to nearly every discovery request he served on the United States.

The United States provided the court with its responses to Attilio's discovery requests. While the United States made a number of objections it also provided answers and documents. The United States has represented to the court that it provided Attilio with 3,684 pages of documents. In many of its answers the United States specified Bates number ranges for the responsive documents.

From the parties' filings the court cannot discern what precise documents the United States provided or what precise documents Attilio thinks he is missing. "[T]he onus is on Plaintiffs in this case to detail why Defendant's responses are deficient and to direct the Court's attention to the discovery requests at issue." *Ocanas v. State Farm Lloyds,* No. 7-14-CV-350, 2015 WL 12777220 at \*8 (S.D. Tex. 2015).

**\*2** It is not surprising that the issues have not been narrowed down in any meaningful way, because there is no certificate of conference attached to the motion, and the United States represents that Attilio did not provide notice of the motion or confer with the United States before filing it. Federal

Rule of Civil Procedure 37(a)(1) requires that a motion to compel discovery responses "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Several courts have denied motions to compel when the parties failed to first confer in an effort to narrow the issues. *See Ocanas*, 2015 WL 12777220 at *8 (stating "the Court will not expend its own time and resources evaluating every response and determining what argument Plaintiffs should have made when Plaintiffs did not take the time to fully evaluate the objections themselves"); *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012) (explaining that "[t]he Court expects each item to have been discussed in good faith in an effort to resolve it as required by Rule 37," and noting that "it seems logical that the parties will have spent an equal or greater amount of time [than they expect the court to expend] attempting to resolve the issue").

Attilio's motion to compel is also late. Any complaint that Attilio had with respect to the first round of discovery responses could have been raised many months ago. Having served its last round of discovery only a month before the close of discovery, Attilio ran the risk that discovery would be closed before it could litigate any motions to compel. *See* 🚩 *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 661 (S.D. Tex. 2009); *Citro-Rey S. de R.L. de C.V. v. L&M Companies, Inc.*, No. 7-07-CV-154, 2009 WL 1227821 at *2 (S.D. Tex. 2009) (holding that a motion to compel must be filed sufficiently in advance for the court to hear the motion, and for the parties to exchange any ordered discovery before the deadline).

Attilio's imprecise motion, raising issues about nearly every discovery request in the case, is essentially a request to reopen the discovery period. The parties have had plenty of time to exchange discovery and litigate any issues. Attilio was on notice over a year ago that the United States had objections to his discovery requests. Attilio has offered no explanation as to why he has filed his motion at this late date.

For all of these reasons, the Motion to Compel (Docket Entry No. 35) is denied.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 7253958

2009 WL 1227821
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
McAllen Division.

CITRO–REY S. DE R.L. DE C.V., Plaintiff,
v.
L & M COMPANIES, INC., Defendant.

Civil Action No. 7:07–154.
|
May 5, 2009.

**Attorneys and Law Firms**

James Patrick Grissom, McAllen, TX, Juan R. Zamora, Tijerina and Zamora PC, Edinburg, TX, for Plaintiff.

Oscar Carl Hamilton, Jr., Dan K. Worthington, Atlas & Hall LLP, McAllen, TX, for Defendant.

### ORDER DENYING MOTION TO COMPEL

MICAELA ALVAREZ, District Judge.

**\*1** Pending before the Court is Defendant L & M Companies, Inc. Motion to Compel Discovery Responses, filed on February 23, 2009. [Dkt. No. 48].[1] On April 8, 2009, Plaintiff Citro–Rey S. de R.L. de C.V. filed an untimely Response. [Dkt. No. 53]. The Court **DENIES** Defendant's Motion to Compel Discovery Responses.

### I. BACKGROUND

This cause of action concerns alleged violations of the Perishable Agricultural Commodities Act (PACA), the Deceptive Trade Practices Act, common law fraud, negligent misrepresentation, negligent hiring, and breach of contract in the export of citrus fruits from Mexico. [Dkt. No. 10, 12]. On September 7, 2007, the Court issued a Scheduling Order that set discovery and motion deadlines for the completion of discovery and the filing of motions. [Dkt. No. 9]. The Court later extended these deadlines to February 13, 2009 to complete discovery and February 23, 2009 to file "[a]ll other motions." [Dkt. No. 47].

On February 23, 2009, Defendant filed its Motion to Compel Discovery Responses. [Dkt. No. 48]. In this Motion, Defendant asks the Court to compel Plaintiff to fully respond to its:

(1) First Set of interrogatories, requests for production, and requests for admissions served on October 15, 2007;[2]

(2) Second Set of interrogatories and requests for production served on July 31, 2007(sic).[3]

[*Id.* at ¶¶ 1–32]. Plaintiff responded to Defendant's first discovery request on December 7, 2007 but amended its answers to certain production requests on January 29, 2008 and Feb. 15, 2008. [*Id.* at ¶¶ 2, 20, 23 & Exs. A, B, C, D]. Plaintiff then responded to the second discovery request on October 15, 2008. [*Id.* at ¶ 26, Ex. E].

In its Motion, Defendant also complains that during discovery Plaintiff produced three sets of documents. Defendant received the second set of documents (Bates Stamps 1–254) on February 15, 2008. [*Id.* at ¶ 20]. Defendant, however, does not provide the exact dates it received the first or third sets (Bates Stamps 1–138 & 1–261).[4] Defendant does not give a date when it was provided the first set of documents but it appears to be in early 2008. According to Defendant, the third set of documents contains some of the same documents as the first two sets. Because of this duplication, Defendant contends "Plaintiff should be ordered to eliminate duplicate bates stamped numbers and eliminate documents which are the same documents with two different bates stamped numbers and should be ordered to identify which documents are responsive to which discovery requests." [Dkt. No. 48 at ¶ 32]. Finally, Defendant requests that the Court impose discovery sanctions against Plaintiff. [*Id.* at ¶ 34–35].

### II. DISCUSSION

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. Fed.R.Civ.P. 37. It permits a party to file a motion when a party fails to respond to a request for production, fails to answer an interrogatory, or provides incomplete or evasive answers in response to a discovery request. *Id.* While Rule 37 does not provide a deadline for filing a motion to compel, Rule 16(e) permits the Court to issue a scheduling order that sets deadlines in a case. FED. R. CIV. P. 16(e). Here, in a Rule 16(e) Scheduling Order the Court established a date for the completion of discovery

of November 20, 2007 which the Court later extended to February 13, 2009. [Dkt. No. 9, 47].

**\*2** Defendant's Motion to Compel does not comply with the Court's deadline. It was made on February 23, 2009—the date by which all contested motions were to be filed. In order to have timely obtained the discovery that he seeks, Defendant should have filed his motion to compel sufficiently in advance of the discovery deadline, not the motions deadline.

*Material Supply Int'l Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 992 (D.C.Cir.1998); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.,* Civ. No. H–07–155, 2009 WL 197739 (S.D.Tex. Jan.27, 2009) (noting that most courts look to the discovery deadline and not motion filing deadline to determine if a motion to compel has been timely filed);

*Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395, 397–98 (N.D.Tex.2006). A sufficiently advanced filing would have permitted the Court to hear the motion, and then if granted the non-movant to produce the compelled discovery prior to the deadline. Defendant's motion to compel here was late. *Days Inn Worldwide,* 237 F.R.D. at 397.

To determine whether to consider a motion filed after the discovery deadline, courts have also looked at a number of secondary factors. These factors include: (1) the length of time from the discovery deadline to when the motion to compel was filed; (2) the amount of time the moving party knew about the discovery problems; (3) whether the Court extended the discovery deadline; (4) the explanation for why the motion is tardy; (5) whether the parties have filed dispositive motions; (6) how old the case is; (7) prejudice that may result to the party from whom the late discovery is sought; (8) disruption of the Court's schedule. *Days Inn Worldwide,* 237 F.R.D. at 398 (compiling these eight factors).

While Defendant filed the instant motion only ten days after the completion of the discovery deadline, most of the other factors weigh in favor of the Court not considering the motion. The Court extended the discovery deadline on six separate occasions giving Defendant ample opportunity to file its motion to compel before the final discovery deadline. [Dkt. No. 15, 18, 21, 24, 45, 47]. Second, Defendant should have known of the problems with Plaintiff's responses well in advance of the discovery deadline. Defendant received Plaintiff's amended responses to its first discovery request on January 29, 2008, and February 15, 2008 [5] more than a year before the discovery deadline. [Dkt. No. 48, at ¶¶ 20, 23, Exs.

A–D]. Defendant received Plaintiff's responses to its second discovery request on October 15, 2008, four months before the discovery deadline. [*Id.* at ¶ 26, Ex. E]. Defendant does not state when it received the third set of documents to which it objects as repetitive and unresponsive. [*See id.* at ¶ 32]. Defendant's delay in raising its concerns with the Court over Plaintiff's responses is unacceptable. Some courts have gone so far as to find that a party has waived its objection to a party's discovery when it has failed to enforce its discovery rights in a timely manner. *See e.g., Packman v. Chicago Tribune Co.,* 267 F.3d 628, 647 (7th Cir.2001); *Public Loan Co. v. FDIC,* 803 F.2d 82, 87 (3d Cir.1986) ( "[D]istrict court was [ ] well within its discretion in limiting appellants' untimely discovery requests"); 2 FEDERAL CIVIL PROCEDURE BEFORE TRIAL: FIFTH CIR. ED. at 11: 2353 (Rutter 2008). Third, Defendant has provided no explanation for why its motion to compel was filed after the discovery deadline. Fourth, this case is almost two years old. Indeed, it is the oldest civil case on this Court's docket. The parties have filed the joint pretrial order and the Court is ready to proceed to trial. [Dkt. No. 50]. Granting more time for discovery will disrupt the Court's schedule. After considering all of these factors, the Court concludes that permitting Defendant to proceed with his untimely motion is unjustified.

**\*3** Moreover, this case is very similar to the Fifth Circuit's unpublished decision in *Grey v. Dallas Indep. Sch. Dist.,* 265 Fed.Appx. 342 (5th Cir.2008). In *Grey,* the Fifth Circuit found that the district court did not abuse its discretion in denying a motion to compel discovery when "it was filed on the day of the discovery deadline after an extensive discovery period." *Id.* at 348 (citing *Turnage v. Gen. Elec. Co.,* 953 F.2d 206, 209 (5th Cir.1992)); *see also Material Supply Int'l Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 992 (D.C.Cir.1998) (upholding district court's denial of motion to compel as untimely when it was filed after close of discovery but before motions deadline); *Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395, 397–98 (N.D.Tex.2006) (determining motion to compel untimely when filed two weeks after discovery deadline, even though filed on day of motions deadline); *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 94 (1st Cir.1996) (finding no abuse of discretion where party "waited more than one month after the second extended deadline had elapsed to properly request an order from the district court"). Here, Defendant's motion was not filed on the last day of discovery but ten days after discovery. Defendant also had over a year and a half

Citro-Rey S. de R.L. de C.V. v. L & M Companies, Inc., Not Reported in F.Supp.2d (2009)

to conduct discovery. Defendant's Motion to Compel was untimely.

**III. CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's Motion to Compel Production is untimely, and the motion, therefore, is **DENIED.**

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1227821

---

**Footnotes**

1    "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

2    Defendant complains of Plaintiff's responses to request for production numbers 1, 2, 3, 4, 5, 8, 10, 11, 12, and 13–21 as well as Plaintiff's response to its interrogatories and requests for admissions generally. [*Id.* at ¶¶ 3–24].

3    Specifically, Defendant wants Plaintiff to answer interrogatory numbers 3 and 6 and request for production numbers 1 and 2. [*Id.* at 128–31].

4    It appears that Plaintiff gave Defendant the first set in early 2008. [*See id.* at ¶ 15].

5    Defendant received the original responses on December 7, 2007 but Plaintiff amended its responses on January 29, 2008 and then on Feb. 15, 2008. [Dkt. No. 48 at ¶¶ 20, 23]

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 11350014
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

DAVACO, INC., Plaintiff,

v.

AZ3, INC., et al., Defendants.

CIVIL ACTION NO. 3:07-CV-803-B
|
Signed 04/30/2008

**Attorneys and Law Firms**

Geoffrey S. Harper, Fish & Richardson, Michael T. Hilgers, Gober Hilgers PLLC, Dallas, TX, for Plaintiff.

Jon G. Shepherd, Holland & Knight, Sarah R. Vollbrecht, Texas Instruments, Misty B. Cole, Law Office of Misty B. Cole, PLLC, Todd D. Ogden, Maron Marvel Bradley & Anderson LLC, Sim D. Israeloff, Cowles & Thompson PC, Dallas, TX, for Defendants.

**ORDER**

JANE J. BOYLE, UNITED STATES DISTRICT JUDGE

 **\*1** Before the Court are (1) Defendant 143956 Canada, Inc. d/b/a Groupe MK's Motion and Brief for Protective Order and to Quash Deposition (doc. 50) and (2) Joint Motion to Extend Deadline for Jurisdictional Discovery (doc. 51). For the reasons that follow the Court **GRANTS IN PART and DENIES IN PART** the Motion for Protective Order (doc. 50) and **GRANTS IN PART and DENIES IN PART** the Motion to Extend Deadline for Jurisdictional Discovery (doc. 51).

**I. Background**

On November 9, 2007, the Court filed an Order denying without prejudice Defendants Couvrette Construction Inc. and Couvrette Construction (2005) Inc.'s (collectively the "Couvrette Defendants") Motions Re-Urging their Special Appearances Objecting to Jurisdiction (doc. 42). The Order also permitted Plaintiff Davaco, Inc. ("Davaco") and the Couvrette Defendants to engage in jurisdictional discovery for 45 days and directed them to file supplemental briefing on the issue by January 4, 2008. On November 9, 2007, the Court

also filed a similar Order with regard to Defendants Marc Kakon and 143956 Canada, Inc. d/b/a Groupe MK's ("Groupe MK") (collectively the "Kakon Defendants") Motion to Dismiss (doc. 43). This Order denied without prejudice the Kakon Defendants' motion to dismiss; permitted Davaco and the Kakon Defendants to engage in jurisdictional discovery for 45 days; and directed the parties to file supplemental briefing on personal jurisdiction by January 4, 2008.

On January 3, 2008, ten days after the deadline for completing jurisdictional discovery and one day before the deadline for filing supplemental briefing, Davaco and the Couvrette Defendants filed a joint motion requesting a stay of the deadlines for jurisdictional discovery and supplemental briefing because these parties were engaging in settlement discussions (doc. 44). The Kakon Defendants did not join in this Motion, and the Motion did not mention the deadlines with respect to the Kakon Defendants. On January 4, 2008, the Court granted the joint motion to stay the deadlines and ordered the parties to file a joint report regarding settlement by February 8, 2008 (doc. 45). This Order specifically stated, "The Court notes that this Order does not stay the jurisdictional discovery and supplemental briefing deadlines imposed by the Order of November 9, 2007 (doc. 43) regarding Defendants Mark Kakon and 143956 Canada, Inc." On January 4, in accordance with doc. 43, the Kakon Defendants filed a supplemental brief supporting their motion to dismiss noting that Davaco had not served any discovery on the Kakon Defendants (doc. 46). That same day, Davaco filed a supplemental response to the Kakon Defendant's Motion to Dismiss stating, "If the parties are not able to resolve the dispute, it is expected that the discovery will resume and DAVACO will file additional materials from Couvrette related to all Defendants." (doc. 47). Davaco did not indicate that it would seek discovery from the Kakon Defendants and did not request an extension of the deadline for discovery imposed by doc. 43. On February 8, 2008, Davaco and the Couvrette Defendants filed a joint status report requesting that the Court lift the stay on jurisdictional discovery and supplemental briefing (doc. 48). The Kakon Defendants did not join in this report. Furthermore, this report did not refer to the Kakon Defendants but instead referred to the stay of jurisdictional discovery with respect to the Couvrette Defendants. On February 26, 2008, the Court ordered the parties to complete jurisdictional discovery and submit supplemental briefing by April 11, 2008 (doc. 49).

 **\*2** On April 2, 2008, Groupe MK filed the instant motion for Protective Order and to Quash Deposition stating that

Davaco had served a deposition notice on Groupe MK for a deposition to take place in Dallas, Texas on April 4, 2008 (doc. 50).On April 11, 2008, the same day as the deadline for completing jurisdictional discovery with respect to the Couvrette Defendants and for filing supplemental briefing (imposed by doc. 49), Davaco and the Couvrette Defendants filed a Joint Motion to Extend Deadline for Jurisdictional Discovery (doc. 51). Once again, the Kakon Defendants did not join in this Motion. That same day, the Kakon Defendant filed a Response in Opposition to the Motion for Extension of Time (doc. 52) stating that they had not been consulted regarding the motion. On April 11, 2008, the Couvrette Defendants also filed briefing in support of their motions to dismiss for lack of personal jurisdiction (docs. 53, 54). On April 25, 2008, Davaco filed a response to Groupe MK's Motion for Protective Order (doc. 56).

### II. Motion for Protective Order

As a preliminary matter, the Court points out that Davaco filed a response to Groupe MK's Motion for Protective Order on April 25, 2008. Under Local Rule 7.1(e), Davaco's response was due within 20 days from the date that Groupe MK's Motion was filed, or by April 22. Because Davaco's response was not timely filed, the Court **STRIKES** Davaco's response.

The Court agrees with Groupe MK that the time for Davaco to conduct jurisdictional discovery with respect to the Kakon Defendants expired on December 24, 2007 (45 days after the Court's Order of November 9, 2007). Davaco has never requested and the Court has not granted an extension of the deadline for jurisdictional discovery with respect to the Kakon Defendants imposed by doc. 43. In fact, the Court put Davaco on notice that it was not extending this deadline. Instead of requesting an extension, Davaco stated that it would file materials it obtained from the Couvrette Defendants related to all of the Defendants. The Court's Order dated February 26, 2008 (doc. 49) was in response to a status report filed by Davaco and the Couvrette Defendants, not the Kakon Defendants. Because the deadline for jurisdictional discovery with respect to the Kakon Defendants has expired, the Court finds it appropriate to **GRANT** Defendant 143956 Canada, Inc. d/b/a Groupe MK's Motion for Protective Order and to Quash the Deposition.

Groupe MK has also requested an award of its costs incurred in obtaining this order. Federal Rule of Civil Procedure Rule 26(c)(3) provides, in part, that "Rule 37 (a)(5) applies to the

award of expenses" with respect to Protective Orders. Rule 37(a)(5) provides:

> If the motion is granted ... the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Based on these rules, the Court shall require the party whose conduct necessitated the motion for a protective order to pay the prevailing party's reasonable expenses incurred in obtaining the order unless the opposition to the motion was substantially justified or other circumstances make the award of expenses unjust. *Herron v. E. Indus., Inc.*, 2007 WL 2781211, at *6 (N.D. Fla. 2007); 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE CIV. 2D § 2288 [hereinafter WRIGHT & MILLER]. Opposing a motion is " 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." The jurisdictional discovery in this case has involved multiple defendants and motions and orders that apply to different defendants. While the Court believes that its Orders have made it clear that jurisdictional discovery has closed with respect to the Kakon Defendants, the Court assumes that Davaco's efforts to depose Groupe MK were based on a good faith misunderstanding of whether jurisdictional discovery had closed. Therefore, other circumstances make the award of expenses unjust, and the Court **DENIES** Groupe MK's motion for an award of costs.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

### III. Motion to Extend Deadline

**\*3** In their motion for extension of deadline, Davaco and the Couvrette Defendants request an extension of the deadline for completing jurisdictional discovery and filing supplemental briefing citing three recent problems that have prevented them from meeting this Court's deadlines: (1) the Couvrette Defendants' attorney was medically ordered to reduce her work schedule due to complications with her pregnancy, which has delayed discovery; (2) Counsel for Defendant AZ3, Inc. has indicated that their client cannot be deposed until the last week of April; and (3) Groupe MK has filed a motion for protective order. The second two arguments are without merit. First, as discussed above, the deadline for Davaco to conduct jurisdictional discovery with respect to the Kakon Defendants (including Groupe MK) expired in December. Second, the Court has never granted jurisdictional discovery with respect to AZ3, Inc. As for the first argument, the Court is very sympathetic to Couvrette's attorney's medical problems. However, the Court finds that it has been very generous in granting Davaco's motion for jurisdictional discovery and extensions for this discovery. At some point, Davaco has the responsibility to establish personal jurisdiction and ensure that this case, which was removed to federal court nearly a year ago, does not languish. Accordingly, the Court **GRANTS IN PART and DENIES IN PART** the Motion for Extension of Time. The deadline for completion of jurisdictional discovery with respect to the Couvrette Defendants is **SEVEN DAYS** from the date of this Order. The deadline for completion of jurisdictional discovery with respect to all other Defendants (including Marc Kakon and Groupe MK) has expired. The deadline for filing supplemental briefing on the Motions to Dismiss is **SEVEN DAYS** from the date of this Order. Davaco may file supplemental briefing with respect to the Couvrette Defendants' Motions to Dismiss and the Kakon Defendants' Motions to Dismiss. The Court notes that the Couvrette Defendants and the Kakon Defendants have already filed supplemental briefing. The deadline for them to amend or supplement this briefing is **SEVEN DAYS** from the date of this Order.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Groupe MK's Motion for Protective Order and **GRANTS IN PART and DENIES IN PART** the Motion to Extend Deadline for Jurisdictional Discovery.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2008 WL 11350014

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 11575123
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Laredo Division.

Jesus Ricardo DE HOYOS, Plaintiff,

v.

C.R. ENGLAND, et al, Defendants.

Civil Action No. 5:15-CV-60
|
Signed 04/19/2016

**Attorneys and Law Firms**

Michael Joshua Blanchard, Michael R. Cowen, Cowen Mask Blanchard, San Antonio, TX, for Plaintiff.

Whitney Stephens Broadwater, Naman Howell et al., Austin, TX, Larry Dale Warren, Naman Howell Smith & Lee, PLLC, San Antonio, TX, for Defendants.

## ORDER

DIANA SONG QUIROGA, United States Magistrate Judge

**\*1** Before the Court are Plaintiff's Second Motion to Compel Discovery (Dkt. No. 34) with Defendant C. R. England, Inc.'s ("C. R. England") response (Dkt. No. 36), and Plaintiff's Opposed Motion to Amend his complaint (Dkt. No. 39) with C.R. England's response (Dkt. No. 40). For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for leave to amend (Dkt. No. 39) and **ORDERS** that the Clerk of the Court docket the First Amended Complaint (Dkt. No. 39-1). The Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel (Dkt. No. 34), and further **ORDERS** the parties to confer and submit either additional briefs or a joint advisory by **April 29, 2016**, consistent with the instructions in this Order.

## BACKGROUND

Plaintiff filed his original petition (Dkt. No. 1-1) in state court on January 1, 2015, alleging that on April 8, 2014, Defendant Dwight Graham negligently operated a tractor-trailer, backing into Plaintiff's vehicle and causing Plaintiff's personal injuries. Plaintiff also alleged that C.R. England was vicariously liable under the doctrine of respondeat superior,

as well as potentially negligent itself, in that "Graham may have been fatigued or driving in violation of the hours-of-service regulations[;]" "CR England may have been negligent in its entrustment of a tractor-trailer to Defendant Dwight Graham, and in the qualification, hiring, training, supervision, and retention of [Graham]." (Plaintiff's Original Petition, Dkt. No. 1-1 at 2.) At the time of the accident on April 8, 2014, Defendant Graham was a "driver trainee" operating the vehicle "during a training observation." (Dkt. No. 36 at 7 n.2.)

Defendants removed this case to federal court on March 31, 2015. (*See* Dkt. No.1.) The Court twice extended discovery in this case on motion of the parties, and on January 6, 2016, Plaintiff took the deposition of Gary Thompson as the designated corporate representative for Defendant C. R. England under Federal Rule of Civil Procedure 30(b)(6). (*See* Dkt. No. 27 at 1.) Defendant Graham's deposition remains outstanding at the time of this Order. At a status conference on February 25, 2016, in the face of numerous discovery motions relating to depositions and document discovery, the Court ordered the parties to confer on remaining discovery issues and for Plaintiff to file an amended motion to compel by March 11, 2016. Plaintiff filed his second motion to compel (Dkt. No. 34), and Defendants responded on March 17, 2016 (Dkt. No. 36). On April 4, 2016, Plaintiff also filed an opposed motion (Dkt. No. 39) to amend his complaint, seeking to include a new claim against Defendant C. R. England—that C. R. England negligently failed to install backing cameras on certain vehicles. Defendant responded on April 11, 2016. (Dkt. No. 40.) All discovery deadlines are currently stayed pending the outcome of the pending discovery motions. (*See* Dkt. No. 26.)

This present Order concerns two of Plaintiff's motions, listed below in the sequence in which the Court will consider them:

**\*2** • Plaintiff's motion to amend his complaint adding a negligence claim against C. R. England regarding the failure to install backing cameras (Dkt. No. 39), and C. R. England's response (Dkt. No. 40);

• Plaintiff's motion to compel discovery on prior backing accidents (Dkt. No. 34) and C. R. England's response (Dkt. No. 36).

## ANALYSIS

**A. Plaintiff's Motion to Amend**

In his motion to amend (Dkt. No. 39), Plaintiff seeks to add the claim that C. R. England, Inc. negligently failed to install backing cameras on certain vehicles. Plaintiff bases his request for leave to amend on "additional facts learned in the course of discovery" (*id.* at 1), pointing to a short line of questioning in the January 6, 2016, deposition of C. R. England's corporate representative in which backing cameras were discussed. Plaintiff uses the deposition to argue that C. R. England was on notice of the backing-camera claim at least as of that earlier date. (*See id.* at 2.) Plaintiff notes that discovery in this case is currently stayed, with a party deposition and certain document discovery yet outstanding. (*See id.* at 3.) C. R. England responds that Plaintiff's request prejudices its defense, as Plaintiff "could have amended his complaint months ago and with enough time for Defendants to properly designate experts and defend themselves against these allegations." (Dkt. No. 40 at 2.)

As the deadline to amend pleadings had not yet passed as of the Court's staying of remaining discovery deadlines (*see* Dkt. No. 26), Plaintiff is still within the period to amend. Plaintiff therefore needs only to meet the standard set forth in Rule 15(a)(2), which gives discretion to the district court to grant leave to amend and states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the Court may consider whether (1) "the petitioner unduly delayed raising the claim[;]" (2) "the request for leave to amend resulted from bad faith or a dilatory motive[;]" (3) "the petitioner had been given previous opportunities to cure deficiencies which he had failed to exercise[;]" (4) "the respondent would suffer undue prejudice[;]" and (5) "an amendment would be futile." *Flores v. Stephens*, 794 F.3d 494, 504 (5th Cir. 2015). Short of one of these "substantial reason[s]" to deny leave, the Court's discretion "is not broad enough to permit denial" of leave to amend. *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

Plaintiff's proposed amendment does not cure deficiencies, but rather adds a new claim of negligence against C. R. England, relating to C. R. England's actions relating to its vehicles, as opposed to regarding its hiring and training of drivers, such as Graham. The Court cannot find on the basis of the current record that the claim would be futile. As to whether there exists undue delay, dilatory motive, or undue prejudice, the record does not disclose facts sufficient to overcome the "bias" in favor of granting leave to amend. *See Jamieson*, 772 F.2d at 1208. District courts have

reached divergent outcomes as to whether additional expert discovery required by amended pleadings constitutes undue prejudice. *Compare Bear Ranch, LLC v. HeartBrand Beef, Inc.*, No. CIV.A. 6-12-14, 2013 WL 4520425, at *2 (S.D. Tex. Aug. 26, 2013) ("[B]ecause the Court will give Defendants ample time to retain an expert, any prejudice the amendment may cause will be mitigated.") *and Poly-Am., Inc. v. Serrot Int'l Inc.*, No. CIV. A. 3:00-CV-1457, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) ("[Party opposing amendment] has failed to show undue prejudice because the court *inter alia* can adjust the discovery and expert deadlines to address any legitimate need for additional discovery and can make other scheduling adjustments that are necessary to ensure fairness and equal treatment to both parties.") *with Chamberlain Grp., Inc. v. Lear Corp.*, No. 05 C 3449, 2010 WL 3632471, at *3 (N.D. Ill. Sept. 10, 2010) ("[W]ere Defendant allowed to amend its pleading, expert reports—which have already been exchanged—would have to be redone in light of the new allegations. This task would require a significant amount of time and resources."). At any rate, whether or not the parties will require additional expert discovery is not a foregone conclusion necessarily decided now—the Court will consider any arguments made by the parties regarding additional expert designations to the extent that either party makes the showing of good cause required by Fed. R. Civ. P. 16(b)(4) to modify the scheduling order.

**\*3**  Defendant is correct to point out that discovery began ten months ago in June 2015, giving Plaintiff plenty of time to inquire as to the existence of backing cameras. Plaintiff's original claim specifically described the accident as involving backing. (*See* Dkt. No. 1-1 at 2.) At the same time, due to Plaintiff's ongoing medical treatment, the parties extended the scheduling deadlines in this case on two occasions, and Plaintiff was not able to depose C. R. England's corporate representative until 2016. Plaintiff also has not yet deposed Defendant Graham. Furthermore, discovery is currently stayed and the deadlines to amend pleadings or to complete discovery have not yet passed.

For the reasons discussed, the Court **GRANTS** Plaintiff's motion for leave to amend his complaint.

### B. Plaintiff's Motion to Compel

#### a. Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(b),

De Hoyos v. C.R. England, Not Reported in Fed. Supp. (2016)

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "On motion or own its own, the court must limit the frequency or extent of discovery" in accordance with multiple protections in Rule 26 against, among other things, unreasonable burden or overbreadth in scope. See Fed. R. Civ. P. 26(b)(2)(C). Ultimately, the scope of discovery to be conducted in a particular case rests within the discretion of the trial court. Newby v. Enron Corp., 394 F.3d 296, 305 (5th Cir. 2004).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Id. The party moving to compel discovery bears the initial burden of showing that the information or materials sought are relevant. Martin v. Gilberg, No. V-07-62, 2009 WL 426061, at *2 (S.D. Tex. February 19, 2009) (citing Exp. Worldwide Ltd. v. Knight, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ). The burden then shifts to the party opposing the discovery request to show why the requested discovery should not be permitted. See id. In order to raise a successful objection, the party resisting discovery must show specifically how each discovery request is not relevant or how each question is overly broad, burdensome, or oppressive. See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). If the court grants a motion to compel

discovery or if the requested discovery is provided after the motion is filed, the court must, after an opportunity to be heard, award the movant's reasonable expenses incurred in making the motion, including attorney's fees unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" "the opposing party's nondisclosure, response, or objection was substantially justified;" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). As another court recently noted, notwithstanding the 2015 amendments to the scope of discovery, "the Committee Note on the December 1, 2015 amendments ... suggests that the existing allocation of burdens to show undue burden or lack of proportionality have not fundamentally changed." Carr v. State Farm Mut. Auto. Ins., Co., 312 F.R.D. 459, 466 (N.D. Tex. 2015).

**b. Relevance of Other Similar Incidents**

**\*4** Plaintiff's Second Motion to Compel (Dkt. No. 34) seeks information about "other similar incidents," or accidents involving backing, such as the accident that allegedly occurred in this case. (See Dkt. No. 34 at 1–2.) Plaintiff argues that this information is not only relevant, but necessary, to two theories of his case: first, the original theory that C. R. England was negligent in its training of Graham, and second, the newly added theory that C. R. England negligently failed to install backing cameras on its vehicles. (See Dkt. No. 34 at 3.) Plaintiff cites authority that this information is discoverable, and argues that production of the information is not unduly burdensome because the information is readily available to C. R. England in digital spreadsheets containing summaries of accidents. Plaintiff adds that his present-day cost of expected future medical care is over one million dollars (see Dkt. No. 34 at 3), making production of the information proportional the needs of this litigation for purposes of Fed. R. Civ. P. 26(b)(2)(C)(iii). In response, C. R. England explains that it operates 6,200 drivers who collectively travel over 493 million road miles every year across the United States in multiple types of vehicles of varying size, turning and backing radii, mirror configurations, and other differences pertinent to their operation. (See id. at 1–2.) C. R. England therefore argues that Plaintiff's request for "all information regarding *any* backing incidents *anywhere* in the United States, involving *any* vehicle operated by C. R. England, with *any* tractor/trailer combination, at *any* time analyzed" is overbroad, as "all of the circumstances of the prior incident[s] and the alleged incident in this case must be

considered and compared ... in order to determine whether the two are 'substantially similar.'"" (*See* Dkt. No. 36 at 5–6.)

"Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Davidson Oil Country Supply, Inc. v. Klockner, Inc.*, 908 F.2d 1238, 1245 (5th Cir. 1990), *on reh'g sub nom. Davidson Oil Country Supply Co. v. Klockner, Inc.*, 917 F.2d 185 (5th Cir. 1990) (*citing Ramos v. Liberty Mutual Insurance Co.*, 615 F.2d 334, 338–39 (5th Cir.1980), *cert. denied sub nom. Rucker Co. v. Shell Oil Co., et al.*, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981). Courts generally apply the products liability standard of similar accidents to negligence/accident cases for commercial carriers, and some courts have specifically found similar incidents relevant in trucking negligence cases. *See, e.g., Librado v. M.S. Carriers, Inc.*, No. CIV.A. 3:02-CV-2095D, 2003 WL 22768675, at *4 (N.D. Tex. Mar. 10, 2003) (granting discovery request as to lawsuits filed again defendant involving claims of personal injury arising from motor vehicle accidents involving that defendant); *Leon v. FedEx Ground Package Sys., Inc.*, No. CV 13-1005 JB/SCY, 2016 WL 836999, at *26 (D.N.M. Feb. 1, 2016) (collecting authorities to show that "substantial similarity" rule applies outside of products litigation, and applying it to trucking accident claims); *Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 307 (S.D. Ohio 2010) (granting discovery into trucking company's investigation files regarding similar prior accidents in trucking negligence case).

C. R. England does not dispute that at least *some* of the information within the set of data requested by Plaintiff *may* be relevant. This is so even disregarding Plaintiff's new theory of negligent failure to install backup cameras. Under just the original training theory, evidence of other similar backing incidents may still be relevant to Plaintiff's claim that C. R. England was negligent in training its drivers—including Defendant Graham—on backing in the type of vehicle Graham drove. It is possible that substantially similar backing accidents occurred, and if so, Plaintiff would be entitled to discovery as to those incidents. "[T]he degree of similarity is a question that goes to the weight of the evidence (for the jury), not to admissibility. As long as there are similarities (as there are here), the differences are for the jury to decide." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 426 (5th Cir. 2006). The bulk of C.

R. England's cited authorities relate to the admissibility of prior similar accidents as evidence for trial, which implicates stricter rules than the discovery provisions in Rule 26—evidence must be relevant to be discoverable, but not all discoverable evidence is admissible. Fed. R. Civ. P. 26(b)(1), as amended, states that "[i]nformation within this scope of discovery *need not be admissible* in evidence to be discoverable" (emphasis added). The Court agrees with C. R. England that producing all data regarding backing incidents will, in all probability, capture previous accidents that are not substantially similar to the April 8, 2014, accident involving Defendant Graham. However, the Court finds that at least some of the data requested by Plaintiff regarding prior backing accidents may be relevant to its claims against C. R. England regarding alleged causal factors that link the April 8, 2014 incident to other possible incidents. C. R. England already possesses accident reports readily available in digital spreadsheet format, including by category, such as backing accidents. (*See* Dkt. No. 34-4 at 7–8.) The Court therefore finds that, with some tailoring proposed by C. R. England, the production of this information will not upset the fair allocation of burden required by Rule 26.[1]

### c. C. R. England's Discovery Obligations

**\*5** After considering the potential relevance of the requested information against the proper scope of discovery outlined in Fed. R. Civ. P. 26(b)(1), the Court finds it appropriate to order C. R. England to produce all nonprivileged data in its possession relating to backing incidents within five years prior to April 8, 2014, involving the same type or class and configuration of vehicle, and which resulted in a lawsuit for personal injury or property damages. As detailed below, the parties shall confer on precisely defining the driver, type/class and configuration of vehicle and submit either supplemental briefing or a joint advisory to the Court. The Court heeds Defendant's concern that the information may contain irrelevant data, but through this tailoring, has sought to alleviate that risk in arriving at a "case-specific determination of the appropriate scope of discovery." Advisory Committee Note on 2015 Amendments to Fed. R. Civ. P. 26.

The Court finds such discovery relevant and proportional to the needs of the case, considering the type of accident that occurred, the amount in controversy, Defendants' ease of access to this information and its resources to provide it, the importance of this information in resolving Plaintiff's claims

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 20 of 92

De Hoyos v. C.R. England, Not Reported in Fed. Supp. (2016)

against C. R. England, and the tailoring of the discovery so as not to unduly burden Defendant. *See* Fed. R. Civ. P. 26(b)(1). C. R. England does not contest that the requested information is in its possession, and did not show that producing it (as tailored here by the Court) would be unduly burdensome so as to make the burden or expense outweigh the likely benefit. *See id.* In fact, C. R. England proposed the factors used by the Court to narrow Plaintiff's discovery requests. *See* Dkt. No. 36 at 7 ("... Plaintiff has not limited the incidents requested to (1) the driver (or even type of driver) involved; (2) the type of truck involved; (3) the type of trailer/load involved; (4) incidents with [similar] facts ...; or even (5) incidents in which personal injurie were claimed."). The Court reminds Plaintiff that the admissibility of any such evidence at trial —even if relevant for discovery—will rest on the findings of the Court at that time according to principles of law not the proper subject of this Order.

### d. Costs

Although it has partly granted Plaintiff's motion to compel, the Court shall not assess costs under Rule 37 because it finds that C. R. England's opposition was substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). "Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." WRIGHT & MILLER, 8B FED. PRAC. & PROC. CIV. § 2288 (3d ed.); *see also* 🚩 *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing Advisory Committee's Note on 1970 Amendments to Fed. Rule Civ. P. 37(a)(4) ) ("[T]he test for avoiding the imposition of attorney's fees for resisting discovery in district court .... has never been described as meaning 'justified to a high degree,' but rather has been

said to be satisfied if there is a "genuine dispute[.]"). C. R. England presented a genuine dispute as to the proper scope of Plaintiff's discovery requests and the Court in turn granted those requests in part.

### CONCLUSION

For the reasons discussed, the Court **GRANTS** Plaintiff's motion for leave to amend (Dkt. No. 39) and **ORDERS** that the Clerk of the Court docket the First Amended Complaint (Dkt. No. 39-1). The Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel (Dkt. No. 34). Defendant shall produce all nonprivileged information relating to backing accidents occurring within five years prior to April 8, 2014, that involved the same type or class and configuration of vehicle as in this case, and that resulted in a lawsuit or other type of claim for personal injury. The Court further **ORDERS** the parties to confer as to the appropriate definition of vehicle type and configuration for purposes of providing the discovery granted in this Order, and **ORDERS** that by **April 29, 2016**, the parties shall submit either (a) supplemental briefs on the driver and type/class and configuration of vehicle for purposes of this Order **or** (b) a joint advisory reflecting any agreement the parties may have reached on those issues, **including** an agreed deadline for production. The Court does not assess costs against C. R. England

**\*6** IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2016 WL 11575123

---

### Footnotes

1    As the Advisory Committee's 2015 Note to Fed. R. Civ. P. 26 states, "[s]ome cases involve what often is called 'information asymmetry.' One party—often an individual plaintiff—may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." *See also Carr,* 312 F.R.D. at 467 (citing the same language).

De Hoyos v. C.R. England, Not Reported in Fed. Supp. (2016)

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8164073
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

Alexander DIMITRIJEVIC, Plaintiff,

v.

TV&C GP HOLDING INC., Defendant.

Civil Action H-04-3457
|
Signed 08/24/2005

**Attorneys and Law Firms**

Hak K. Dickenson, H. K. Dickenson Assoc, Carrie Anne
Arnett, Jones McClure Publishing, Houston, TX, for Plaintiff.

Thomas Michael Melo, David J. Comeaux, Ogletree Deakins
et al, Houston, TX, for Defendant.

**MEMORANDUM AND ORDER**

Stephen Wm Smith, United States Magistrate Judge

 **\*1** Before the court is plaintiff Alexander Dimitrijevic's
motion to compel answers to interrogatories (Dkt. 16) in this
employment discrimination case, which has been referred to
this magistrate judge for pre-trial management. The motion is
granted in part and denied in part.

On March 16, 2005, Dimitrijevic served a set of
interrogatories on defendant TV&C GP Holding Inc.
("Tyco") consisting of thirteen numbered questions and 122
separately lettered subparts. Tyco responded on April 25,
answering the first five numbered interrogatories and 47 of
the separately lettered subparts, but declining to answer the
remainder as exceeding the federal limit of 25 interrogatories.
See FED. R. CIV. P. 33(a); S.D. TEX. LOC. R. 33.1.
Dimitrijevic moves to compel Tyco to answer the remaining
interrogatories, contending that the subparts seek information
closely related to the main interrogatory, and therefore are not
separate questions to be counted toward the numerical limit.

Federal Rule of Civil Procedure 33(a) provides that, absent
leave of court or written stipulation, interrogatories are not to
exceed 25 in number, "including all discrete subparts." See
FED. R. CIV. P. 33(a). [1] Dimitrijevic obtained neither written
stipulation nor leave of court, so the applicable limit is 25.

However, counting to 25 is not always easy, as this case
illustrates. The source of the difficulty is ascertaining when
to count a subpart as a separate interrogatory. The rule does
not define the term "discrete subparts." See Krawczyk v. City
of Dallas, No. Civ. 3:030CV-0584D, 2004 WL 614842, at *2
(N.D. Tex. Feb. 27, 2004). The Advisory Committee briefly
addressed the issue in the notes accompanying the text of Rule
33(a):

> Parties cannot evade this presumptive
> limitation through the device of
> joining as "subparts" questions that
> seek information about discrete
> separate subjects. However, a question
> asking about communications of a
> particular type should be treated as
> a single interrogatory even though
> it requests that the time, place,
> persons present, and contents be
> stated separately for each such
> communication.

FED. R. CIV. P. 33(a) advisory committee notes to 1993
Amendment.

Except for interrogatories asking about "communications of
a particular type," the Advisory Committee actually provides
little guidance for distinguishing between "discrete" subparts,
separately countable, from "non-discrete" subparts, which are
not. No general test or formula is offered to assist courts in
determining when a particular subpart is merely a device to
evade the numerical limit. Nor have the courts been very
successful in devising a uniform approach to the problem. See
generally, Safeco of America v. Rawstron, 181 F.R.D. 441,
444-45 (C.D. Cal. 1998) (gathering cases).

 **\*2** Understandably, the parties approach this question from
polar extremes. Dimitrijevic argues that a subpart is not
"discrete" and thus not countable if it shares a "common
theme" with its primary, numbered interrogatory. See 8A
CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
FEDERAL PRACTICE AND PROCEDURE § 2168.1, at
261 (2d ed. 1994) ("It would appear that an interrogatory
containing subparts directed at eliciting details concerning
the common theme should be considered a single question,

although the breadth of an area inquired about may be disputable."). Dimitrijevic alternatively describes this as the "logically and necessarily related" test. *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 33.30[2] (3d ed. 1997) ("The better view is that subparts may be counted as part of one interrogatory if they are logically and necessarily related to the primary question."). Thus, he argues that the eight subparts of Interrogatory No. 6 are logically related and share the common theme of how sales orders are physically processed at the warehouse. [2] Unsurprisingly, Dimitrijevic contends that **each** of his listed subparts share a common theme with the primary question, and therefore **none** should be counted as a separate question.

And that is precisely the problem with the "common theme" test: almost never will it yield a separately countable, discrete subpart. All subparts can be said to share a theme with the primary question; otherwise they would not really be a "subpart." Any mildly creative lawyer can invent a rubric sufficiently elastic to cover the most disparate of topics: Dimitrijevic's first 12 numbered interrogatories could just as easily be redesignated as subparts of a single interrogatory under the common theme of "liability." The "logically and necessarily related" formula has essentially the same flaw because, as the Supreme Court has observed in another context, "everything is related to everything else." *See California Div. of Labor Standards Enf. v. Dillingham,* 519 U.S. 314, 335 (1997) (Scalia, J., concurring) (discussing ERISA preemption of state laws which "relate to" ERISA benefit plans); *New York Conf. of Blue Cross v. Travelers Ins. Co.,* 514 U.S. 645, 655 (1995) ( "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere' .. .." (citation omitted)). In short, neither the common theme nor the logical relationship formulas are particularly useful in drawing the line on the slippery slope between subparts which are 'discrete' and those which are not. Either formula invites evasion of the presumptive limitation on interrogatories under Rule 33(a), thereby defeating the purpose of the 1993 amendments.

Tyco's proposed test is skewed in the opposite direction. Tyco would focus on whether the subpart "introduces a new topic that is in a distinct field of inquiry." *See* Banks v. Office of the Senate Sergeant at Arms, 222 F.R.D. 7, 10 (D.D.C. 2004). Of course, any given topic may encompass distinct fields of inquiry, and yet be intimately related to other topics. In the

communication example given by the Advisory Committee, the four specified aspects of the communication ("time, place, persons present, and contents") could fairly be classified as four distinct "fields of inquiry," yet the Committee would count them as a single interrogatory. Everything depends on how narrowly or broadly the term "distinct field of inquiry" is construed. Tyco would apply the term so narrowly that **all** listed subparts become separate interrogatories. Because Tyco's proposed test merely substitutes one vague phrase ("distinct field of inquiry") for another ("discrete subparts"), it offers little practical guidance here.

However, Tyco points to an alternative test which holds more promise. In Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684 (D. Nev. 1997), the court held that interrogatory subparts are to be counted as discrete subparts unless they are "logically or factually subsumed within and necessarily related to the primary question." Id. at 686. A recent district court decision added a helpful gloss: "*If the first question can be answered fully and completely without answering the second question*, then the second question is totally independent of the first and not 'factually subsumed within [it].' " Krawczyk, 2004 WL 614842, at *2 (emphasis added). This "full and complete answer" standard, although still somewhat imprecise, has two distinct advantages over the other tests discussed. First, it is the same standard already employed by the federal rules to measure the sufficiency of interrogatory answers. *See* FED. R. CIV. P. 33(b) ("Each interrogatory shall be answered separately and fully...") and 37(a)(3) ("[A]n evasive or incomplete disclosure, answer, or response shall be treated as a failure to disclose, answer, or respond.") Enlisting this standard as a guide for counting interrogatory subparts has the virtue of Occam's razor—avoiding needless multiplication of legal standards. Case law delineating the contours of a "complete" interrogatory answer under Rule 37(a)(3) would help define a "countable" subpart under Rule 33(a), and vice versa.

**\*3** The "full and complete answer" standard also has the virtue of common sense. If a full and complete answer to the primary question would necessarily encompass the specific information sought by the subpart, then there is no reason to separately count the subpart. By explicitly listing the subpart, the proponent is not truly seeking additional information but merely giving notice of the type of information that a full and complete answer to the main question should contain. The proponent is already entitled to the information specified in the subpart by virtue of Rule 37(a)(3)'s completeness

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

requirement. It would be unfair to penalize the proponent for simply making explicit his expectation of what should be incorporated within a proper response to the primary question. On the other hand, if the subpart seeks information beyond the scope of the primary question, then there is nothing unfair about separately counting it against the numerical limit. [3]

Although not always yielding bright lines, this "full and complete answer" standard is consistent with available precedent, as well as the views expressed by the Advisory Committee. When an interrogatory asks a party to describe or identify communications of a particular type, it is reasonable to expect a full and complete answer to include the "time, place, persons present, and content" for each such communication. Similarly, when an interrogatory seeks the identity of a witness, a full and complete answer would naturally include the person's name, address, telephone number, and perhaps other identifying information such as job title and employer. *See Bakhico Co. v. Shasta Beverages, Inc.,* No. Civ. 3:94-CV-1780-H, 1998 WL 249209, *3 (N.D. Tex. May 14, 1998)* (giving name and phone number only was "not a very full identification of witnesses"). On the other hand, an interrogatory inquiring about an employer's general hiring practices is separate and distinct from a subpart inquiring about a specific hiring decision, because the former can be answered fully and completely without addressing the latter. 🚩*Banks,* 222 F.R.D. at 11. Similarly, an interrogatory asking the reasons for the elimination of the plaintiff's job can be fully answered without naming the decision-makers, so a subpart seeking their identity should be counted separately. 🚩*Nyfield v. Virgin Islands Tel. Corp.,* 200 F. R. D. 246, 248 (D.V.I. 2001). For the same reason, "a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories." 🚩*Banks,* 222 F.R.D. at 9.

It should be emphasized that the "full and complete answer" standard involves comparison between the primary question and its subpart, not (as Tyco apparently contends) between one subpart and another. Dimitrijevic rightly points out that under such an approach an interrogatory would almost never have legitimate (i.e. uncountable) subparts, because a subpart nearly always seeks specific details fully answerable without reference to other subparts. *Cf.* 🚩*Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684, 686 (D. Nev. 1997) (analyzing "whether the first question is primary and subsequent are secondary to the primary question.").

With this standard in mind, we turn to the interrogatories at hand. A summary review of the 13 numbered questions and 122 separately lettered subparts plainly reveals that Dimitrijevic has exceeded the permissible limit. *See, e.g.,* 🚩*Williams v. Board of County Commissioners,* 192 F.R.D. 698, 701-02 (D. Kan. 2000) (finding, after summary review of interrogatories containing 117 subparts, that numerical limit was exceeded and that plaintiff need not answer interrogatories as propounded). For example, Interrogatory No. 1 contains at least seven different questions; the primary question deals with "all reasons supporting a case for reduction in force at the warehouse," while each of the subparts (except for subpart f) seeks specified information which may or may not have supported a reduction in force. *See, e.g.,* Interrogatory No. 1.d. ("information on increase or decline in business orders"). The primary question could certainly be fully answered without disclosing the information sought by these subparts. Likewise, Interrogatory No. 8 contains 17 discrete subparts, asking not only about the general selection process for warehouse foreman, but also details on the selection of six named individuals. Even assuming the other numbered interrogatories contained no discrete subparts (which is not the case), Dimitrijevic's interrogatories exceed the maximum permitted by Rule 33(a).

**\*4** Having found these interrogatories in violation of Rule 33(a), the next question is the appropriate remedy. The choice is whether to permit resubmission of another set of interrogatories conforming to the numerical limit, or simply to require answers to the first 25 questions (properly counted) of the existing set. [4] "Since service of more than 25 interrogatories is not permitted, the entire set of interrogatories is impermissible. Respondent can either object to the set as a whole or object to the excess." THE HON. DAVID HITTNER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1695 (9th Cir. ed. 2022); *see also* 🚩*Traina v. Blanchard,* No. Civ. A. 97-0348, 1998 WL 483485, *4 (E.D. La. April 15, 1998)* (entire set objectionable). Here, Tyco has responded to the first five numbered interrogatories [5] and objected to the balance on numerosity grounds. For this reason, as well as the fact that the discovery deadline has now passed, it would be inappropriate to permit Dimitrijevic the opportunity to propound a reformulated set of interrogatories. Accordingly, the court will undertake to determine whether Tyco has indeed answered 25 interrogatories, and if not, to determine how many more questions must be answered to reach that limit.

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

What follows is the court's tally of discrete subparts contained in the 5 interrogatories answered by Tyco:

Interrogatory No. 1:
As explained above, this interrogatory consists of seven separate questions. Subpart f ("any other reason(s) for reduction in force") is redundant in light of the main question.

Interrogatory No. 2:
This interrogatory contains four separate questions. The main question asks about training sessions on workplace harassment, and subparts a-f, h, and j-n seek information that a complete answer to the main question would entail: dates, duration, speaker, subject matter, attendees. Subparts g, i, and o deal with the existence of specific documents, and therefore constitute discrete subparts as explained in 📙 *Banks, 222 F.R.D. at 10.*

Interrogatory No. 3:
This interrogatory, seeking information about Dimitrijevic's termination meeting, contains at least two separate questions. Subparts a-c and e-f ask about meeting details which a complete answer would provide: time, duration, location, and what was said. Subpart d concerns documents, which is a separate question. Subparts g and h, asking about "other" conversations, acts, and information, are somewhat vague and arguably countable as separate questions. But it is more fitting to consider these subparts as mere gap-fillers that are subsumed within the main question.

Interrogatory No. 4:
This interrogatory seeks a description of the organizational structure of the human resource office in Houston, and contains four separate questions. Subparts a-f seek the name, title and functions of various persons in that office, all of which information would be contained within a full response to the main question. Subparts g, h, and i each seek discrete information which is not limited to the Houston office, and therefore each counts as a separate question.

Interrogatory No. 5:
This interrogatory, which essentially asks for a detailed map of the warehouse, counts as a single question. Each subpart inquires about the physical location of persons and things within the warehouse, all of which would be included on a complete warehouse diagram.

Properly counting all discrete subparts, therefore, Tyco has answered 18 interrogatories to date. Dimitrijevic is therefore entitled to answers to the next seven interrogatories.

As it happens, the next interrogatory (No. 6) contains at least seven discrete subparts. Subparts a and b would be included in a complete answer to the main question dealing with the "physical process of how sales orders for valves and flow control products at the warehouse are retrieved, assembled, and packaged." Subparts c-h each seek discrete information, such as the names of individual technicians, particular tools, decision-makers, and frequency of job assignments. Tyco will satisfy its obligation under the discovery rules by providing full and complete answers to Interrogatory No. 6 and all of its designated subparts. The remainder of the interrogatories need not be answered.

**\*5** The jurisprudence of interrogatory counting is as imprecise as it is tedious. Reasonable minds may certainly disagree on where the lines should be drawn, but the rule presupposes such lines and gives the court the discretion to draw them. Parties are well advised to avoid risking an unfavorable court count by either seeking leave of court in advance or negotiating a written stipulation from the other side. Neither course was followed here, and so it is

ORDERED that Plaintiff's motion to compel (Dkt. 16) is granted in part and denied in part. Tyco is ordered to provide full and complete answers to Interrogatory No. 6 and all its subparts by close of business on September 1, 2005. All other requested relief is denied.

**APPENDIX A**

INTERROGATORY NO. 1:

1. State all reasons supporting a case for reduction in force at the warehouse in connection with discharge of Dimitrijevic and other employees at the warehouse in May 2003, including:

   a. decline in business or profit for the years of 2001, 2002, 2003 or such projection for 2004;

   b. studies, evaluations, or projections of needs of the workforce for 2001, 2002, 2003, and 2004;

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

c. customer contractions or expansion, including termination or modification of contracts with Tyco;

d. information on increase or decline of business orders;

e. any labor costs study, evaluation, or analysis of workforce at the warehouse;

f. any other reason(s) for the reduction in force; and

g. identify all documents that reflect or support reduction in force in May 2003.

INTERROGATORY NO. 2:

2. Describe any training or instructional setting in which employees at the warehouse attended to discuss or receive information or instruction on work harassment, including what the law is, how to behave, how to avoid problems, or any such similar coaching or teaching, including for each of such meeting:

a. when the meeting was held;

b. who attended the meeting;

c. who gave the instruction;

d. the subject matter of the instruction;

e. how long the instruction lasted;

f. whether the meeting involved discussion;

g. whether there was a sign up sheet for the meeting;

h. whether it was in connection with any other meeting;

i. whether any literature was given out to the attendees;

j. whether Paul Austin attended the meeting;

k. whether Emit Hosford attended the meeting;

l. whether Sean Wolfe attended the meeting;

m. whether Dimitrijevic attended the meeting;

n. whether Rudy Lopez attended the meeting; and

o. whether any notes were taken by the employees.

INTERROGATORY NO. 3:

3. On the day of discharge of Dimitrijevic, explain the facts and circumstances regarding his termination, including:

a. when the meeting was held;

b. what was said to Dimitrijevic at the time of termination and who said it;

c. how long the meeting lasted;

d. whether any documents were given to Dimitrijevic;

e. where the termination meeting took place;

f. what Dimitrijevic said to those present at the meeting;

g. any other conversation or act took place; and

h. any other information provided by Tyco or received by Tyco not discussed from subparts a-g.

INTERROGATORY NO. 4:

4. Describe the organizational structure and functions of human resource office in Houston, which is responsible for providing personnel-related services to employees at the warehouse, including:

a. the person who is head of the human resource office in Houston;

b. the name, title and functions of the person(s) to whom the head human resource person in Houston reports;

c. the name, title and functions of another human resource personnel to whom the head of the human resource office in Houston reports;

**\*6** d. the location of the person to whom the head of the Houston human resource office reports;

e. the names, titles, and descriptions of all managers and supervisors reporting to the person who is the head of the Houston human resource office;

f. all functions performed by the head of the Houston human resource office;

g. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the function of identifying employees who are subject to reduction in cost;

Appendix of Authorities: 23 of 89

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

h. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the persons who handle work harassment and related issues; and

i. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the toll free 1-800-number that handles employee complaints.

INTERROGATORY NO. 5:

5. Describe the physical locations or various parts of the warehouse as of May 1, 2003, including the locations of the offices, lockers, the break room, valve automated center, and whether the inventories are kept, including:

a. where Paul Austin's office/desk was located;

b. where Emit Hosford's office/desk was located;

c. where Sean Wolfe's office/desk was located;

d. where Dimitrijevic's desk was located on January 1, 2003;

e. where Dimitrijevic's desk was located as of May 1, 2003;

f. where valve automated center is located in relationship to the offices of the supervisor/foreman;

g. where the break room is located; and

h. where the inventories are kept at the warehouse relative to the employees' offices.

INTERROGATORY NO. 6:

6. Explain the physical process of how sales orders for valves and flow control products at the warehouse are retrieved, assembled, and packaged in connection with the valve automated center as of May 1, 2003, including:

a. describe types of sales order to be filled daily by Tyco from end users and distributors;

b. explain the general types of sales orders or equipment that requires assembly;

c. names of individual technicians who were capable of assembling the sales orders referred to in subpart b.;

d. name the types of tools and machinery used and required by technicians for assembly as referred to in subpart b.;

e. describe who pulls the parts from the warehouse, whether technician, laborer, or temporary worker;

f. state whether a walkie-talkie is assigned to each technician;

g. describe who decides which technician fill which purchase order; and

h. describe whether the job assignment occurs daily.

INTERROGATORY NO. 7:

7. Describe and explain the assignment of various brand names of inventories kept by Tyco at the warehouse and how the brand names would be assigned to technicians, including:

a. names of top fifteen (15) primary products (determined by brand names and quantity of annual sales for past four years) held at the warehouse as of May 1, 2003;

b. identify the names of technicians assigned to each of the brand names as of May 1, 2003;

c. identify all of the brand names of inventory or products that Dimitrijevic was responsible to handle while he was an employee;

d. the brands of valves that Dimitrijevic assembled as of January 1, 2003;

**\*7** e. the brands of valves that Dimitrijevic assembled as of May 1, 2003;

f. explain and describe whether Sean Wolfe, Eddie Key, and Mark Gullet were cross-trained on any KTM products during April and May of 2003;

g. explain whether any other technicians other than those named in subpart f. were cross-trained for KTM, Decote, and MCF brands in April-May of 2003; and

h. explain if Dimitrijevic was cross-trained to assemble and/or handle any new or different brand names with which he did not have experience prior to January 1, 2003.

Appendix of Authorities: 24 of 89

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

---

INTERROGATORY NO. 8:

8. Describe how the supervisors, foremen, and/or lead persons for the Tyco warehouse were selected or appointed, including:

a. what factors were considered in selecting Paul Austin as the supervisor;

b. what factors were considered in appointing Emit Hosford as the foreman;

c. what factors were considered in selecting Sean Wolfe as the lead person;

d. persons involved in selecting Austin as the manager of the warehouse;

e. persons involved in selecting Hosford as a foreman;

f. persons involved in selecting Wolfe as a lead person;

g. whether a meeting was held to decided on either Austin, Wolfe, or Hosford would receive an appointment or selection and if so who attended the meeting;

h. name all persons who gave approval for the appointment of Austin and Hosford as a supervisor and foreman, respectively;

i. whether any memo or letter was written in connection with the appointment of Austin, Wolfe, or Hosford;

j. describe what factors were involved in appointment of Raymond Cooper as a lead person (or however his title or position is described);

k. describe Raymond Cooper's background;

l. describe factors involved in the appointment of Jeff Lacomb as a lead person (or however his position was described);

m. describe Lacomb's experience and background, including previous employment experience at Tyco;

n. name and describe any other person who was named as a lead person during the same period of time Dimitrijevic worked at the warehouse;

o. describe factors involved in transfer of Dana Evan Leach to the warehouse; and

p. describe Mr. Leach's previous experience and background, including his experience at Tyco.

INTERROGATORY NO. 9:

9. Describe the reduction in workforce process of May 2003 in which Dimitrijevic was terminated, including:

a. the names and titles of person involved in the decision making;

b. the name and title of the ultimate decision maker;

c. when the decision was made;

d. whether any decisions made through a meeting and if so, who was at the meeting;

e. describe or state all considerations and factors involved in deciding the cause or need for a workforce reduction at the warehouse;

f. whether any memo was generated in connection with the reduction in force before or after the event of reduction in force;

g. whether any replacement workers were hired subsequent to the reduction in force;

h. how any replacement workers were selected;

i. the persons involved in the decision making of hiring replacement workers; and

j. persons involved in hiring of employees at the warehouse to replace Dimitrijevic after he was terminated, including the final decision maker.

INTERROGATORY NO. 10:

**\*8** 10. Describe Tyco's business operation in Houston area, including:

a. names of all Tyco's and its subsidiaries operating in Harris county and other counties in which Tyco and its subsidiaries are subject to jurisdiction of the U.S. District Court, Southern District;

b. describe the nature or type of business in sufficient detail with respect to the operations in Houston area for the companies named in subpart a.;

---

Appendix of Authorities: 25 of 89

c. describe and explain in sufficient detail the revenues earned from each company's business operations in Houston area for the companies named in subpart a.;

d. describe the number of employees, contract workers, and other extent of manpower in the Houston area for the companies named in subpart a.; and

e. describe by cost or fair market value the assets and real and personal property located in the Houston area for the companies named in subpart a.

INTERROGATORY NO. 11:

11. Describe and explain the history of Dimitrijevic's salary, bonus, and other employee benefits he had accrued or experienced with Tyco, and including:

a. his salary per annum at the time of his termination;

b. his salary for each year of the four years preceding his termination;

c. his annual pay increases of the five years preceding his termination;

d. his bonuses received for the termination year and four years preceding his termination;

e. his 401K annual contributions for the five years preceding his termination;

f. his 401K annual contributions matched by the company for the five years preceding his termination;

g. his health insurance premiums paid by the company for the five years preceding his termination;

h. his other insurance premiums, including health and accident premiums, paid by Tyco for the five years preceding his termination;

i. his vacation and holidays benefits paid by Tyco for the five years preceding his termination; and

j. all other benefits, including fringe benefits, paid by Tyco for the five years preceding the termination.

INTERROGATORY NO. 12:

12. Explain and describe how Hispanic employees' complaints lodged in connection with toll free concern line, 1-800-714-1994, were investigated and handled,

as referred in Plaintiffs Original Petition, ¶ 31 and including:

a. name and title of all persons involved in the investigation;

b. describe all meetings held in connection with the complaint;

c. describe who attended each meeting, the substances of the discussions, when the meetings occurred, and whether any memos were generated;

d. name all persons who were interviewed in connection with the complaint;

e. state or describe whether any statement was obtained from any individual employee, including any supervisor or manager;

f. state whether any meetings were held by human resource department in connection with the complaint and describe for such meetings, who attended, when and where it was held, and the substance of the discussions;

g. state whether any particular company procedure was followed with regard to 1-800-714-1994 concern complaint;

h. state whether any voice recording was made in connection with 1-800-714-1994 complaint and identify the location of the recordings;

**\*9** i. state and describe whether any assistance was sought from corporate headquarters with regard to the complaint and description of the assistance;

j. name and title of all person involved in the decision making process of the conclusion involved in subpart j.;

k. state and describe any evaluation or analysis of the complaint filed;

l. describe whether any conclusion was reached with regard to the complaint filed;

m. whether any letter or memo was written in connection with the resolution of the event regarding the complaint filed;

n. provide a brief description of any memo/letter in connection with item discussed in subpart m. and identify any person copied in the memo; and

o. identify all documents generated in connection with the concern line complaint.

INTERROGATORY NO. 13:

13. State Tyco's total wealth or its worth of all assets owned as of December 31, 2003 and including:

a. its total value of all assets, whether tangible, intangible, personal property, and real property as

shown on its audited, consolidated financial balance sheet reported to its shareholders on its annual report;

b. its annual gross income for fiscal year 2003 as shown on its audited income statement to its shareholders; and

c. the total value of its net worth (total assets less all liabilities as shown on its balance sheet and reported to its shareholders) as of December 31, 2003.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8164073

---

**Footnotes**

1    Local Rule 33.1 largely mirrors the federal rule, although it omits the modifier "discrete." S.D. TEX. LOC. R. 33.1 ("No more than twenty-five interrogatories (counting sub-parts) may be served without leave of court."). Whether intentional or not, this difference in phrasing cannot be construed to impose a greater restriction on interrogatories than Rule 33(a), because local rules cannot alter the federal discovery rules in this respect.

*See* FED. R. CIV. P. 26(b)(2) advisory committee notes to 2000 Amendment, at ¶ 29-30; *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass. 2003).

2    The Interrogatories are set forth in Appendix A.

3    This test does not provide useful guidance when the interrogatory contains implicit subparts "imbedded" within an overbroad main question. *See* *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (interrogatory asking for factual basis for denial of any of 50 requests for admission treated as discrete subparts). The interrogatories at issue here do not present this problem.

4    One authority has suggested that the responding party might be allowed to pick and choose which 25 interrogatories to answer, but no reported case has adopted this approach. THE HON. DAVID HITTNER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1695 (5th Cir. ed. 2005).

5    Dimitrijevic has not challenged the sufficiency of these answers by Tyco.

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 10677442

Only the Westlaw citation is currently available.

**NOT FOR PRINTED PUBLICATION**

United States District Court, E.D. Texas, Lufkin Division.

EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION, Plaintiff,

and

Michelle Pritchard, Intervenor,

v.

BIG LOTS STORES, INC., Defendant.

Civil Action No. 9:08-CV-177

|

Signed 10/20/2009

|

Filed 10/21/2009

**Attorneys and Law Firms**

Rodolfo L. Sustaita, Kathy D. Boutchee, Equal Employment Opportunity Commission, Houston, TX, Charles R. Dendy, Attorney at Law, Lufkin, TX, for Plaintiff and Intervenor.

Amanda Leslie Wicklen, James Edward Davidson, Schottenstein Zox & Dunn, Columbus, OH, J. Thad

Heartfield, M. Dru Montgomery, The Heartfield Law Firm, Beaumont, TX, for Defendant.

**ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL DISCOVERY**

Ron Clark, United States District Judge

**\*1** Plaintiff Equal Employment Opportunity Commission ("EEOC") filed suit against Defendant Big Lots Stores, Inc., claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq, namely sexual harassment and constructive discharge. The alleged victim, Michelle Pritchard, subsequently intervened.[1] More than one month after discovery closed and less than four weeks before trial, the EEOC now moves to compel production of certain documents and information the EEOC sought during discovery. Because the EEOC's request is untimely, the court will deny the motion.

**I. Background**

A timeline of events is instructive:

| September 29, 2008 | Case is filed. |
| March 30, 2009 | Scheduling Order entered, setting discovery deadline as September 11, 2009. |
| August 5, 2009 | EEOC serves Big Lots with discovery requests. |
| July 24, 2009 | Dispositive motions deadline. EEOC does not file a motion for summary judgment. |
| September 9, 2009 | Big Lots responds to EEOC's discovery requests. |
| September 11, 2009 | Discovery closes. |
| October 13, 2009 | EEOC files its motion to compel. This is also the deadline for motions in limine and the parties' Joint Final Pre-Trial Order. |

The Final Pre-Trial Conference in this case is set for November 2, 2009, with jury selection and trial to follow on November 9.

**II. Applicable Law**

Fed. R Civ. P. 37 does not provide a deadline for the filing of motions to compel. However, Fed. R. Civ. P. 16(b) allows the court to "enter a scheduling order that limits the time ... to

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 32 of 92

Equal Employment Opportunity Commission v. Big Lots..., Not Reported in Fed....

file motions[ ] and ... to complete discovery." In this case, the March 30, 2009 Scheduling Order set the discovery deadline as September 11, 2009 [Doc. # 24].

A court has the discretion to deny as untimely a motion to compel filed outside the discovery period. *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 209 (5th Cir. 1992) (finding that the district court did not abuse its discretion when it denied a request to conduct discovery "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [Plaintiff's] failure to request an inspection earlier."); *Grey v. Dallas Indep. Sch. Dist.*, 265 Fed.Appx. 342, 348 (5th Cir. 2008) (finding no abuse of discretion in denying a motion to compel discovery "filed on the day of the discovery deadline after an extensive discovery period."); *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395 (N.D. Tex. 2006); *Citro-Rey S. de R.L. de C.V. v. L&M Cos., Inc.*, 2009 WL 1227821 at *3 (S.D. Tex. May 5, 2009) (denying motion to compel as untimely where motion was filed ten days after discovery ended and discovery period had lasted for more than eighteen months); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2009 WL 197739 at *28 (S.D. Tex. Jan. 27, 2009) (denying motion to compel filed two weeks after discovery deadline as untimely under *Days Inn* analysis); *Blackboard, Inc. v. Desire2Learn, Inc.*, 2007 WL 3389968 at *3 (E.D. Tex. Nov. 14, 2007); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001); *Material Supply Int'l, Inc. v. Sunmatch Indus., Ltd.*, 146 F.3d 983, 992 (D.C. Cir. 1998).

**\*2** The *Days Inn* court compiled a number of secondary factors to be considered when deciding whether a motion to compel was untimely:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (6) the age of the case, (7) the age of the case, (8) any prejudice to the party from whom late discovery was

sought, and (9) disruption of the court's schedule.

*Days Inn*, 237 F.R.D. at 398. Even though the Plaintiff in *Days Inn* argued a "strong need for the documents," the court noted that "this factor has generally not been considered by courts, and the alleged importance of the documents appear[ed] inconsistent with the delay in seeking the documents." *Id.* at 399.

## III. Analysis

In this case, consideration of the *Days Inn* factors strongly favors denying the EEOC's motion to compel as untimely. Discovery closed on September 11, but the EEOC did not file its motion to compel until nearly five weeks after this deadline. The EEOC has known that the information it seeks [2] was likely to be in dispute for much of this case. As the EEOC itself points out, the financial data and attorney's fees information sought concerns allegations for recovery of certain types of damages found in the parties' pleadings. [3] The issue of whether Ms. Pritchard and Mr. Marquez had a consensual sexual relationship has been a subject of much disagreement between the parties since the beginning.

While the discovery deadline has not been extended in this case, the EEOC offers no explanation for the delay in filing its motion to compel other than mentioning in passing that the parties have been attempting to work out their differences without court intervention. At the same time, the EEOC also admits that "as of late last week" the parties had determined that certain matters would require a motion to compel. The EEOC nevertheless failed to file this motion until Tuesday October 13.

**\*3** Dispositive motions have long since been filed and ruled upon by the court. This case has been pending for more than a year, and the parties had nearly six months to conduct discovery. The fact that the EEOC chose to serve its discovery requests on Big Lots little more than a month before the discovery period closed no doubt contributes to the untimeliness of this motion. However, this problem is entirely of the EEOC's own making. As trial is less than four weeks away and the parties have already submitted their Joint Final Pre-Trial Order to this court—which contains all exhibits and witnesses they will be presenting at trial—it is difficult to

see how the EEOC's request for more discovery at this very late date would *not* prejudice Big Lots and disrupt the court's schedule. Under these facts, the court is left with little choice but to deny the EEOC's motion to compel as untimely.

IT IS THEREFORE ORDERED that Plaintiff Equal Employment Opportunity Commission's Motion to Compel [Doc. # 74] is DENIED.

So **ORDERED** and **SIGNED** this **20** day of **October, 2009.**

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10677442

---

## Footnotes

1    The court granted in part Big Lots's Motion for Summary Judgment on October 6, 2009, dismissing the EEOC's retaliation claims and Ms. Pritchard's state law claims for intentional infliction of emotional distress and assault. Doc. # 64.

2    The information which is the subject of the EEOC's motion includes what the EEOC alleges are insufficient responses to the following: (1) requests for Big Lots to admit it cannot produce any evidence showing Ms. Pritchard had a consensual sexual relationship with Mr. Marquez, (2) interrogatories concerning Big Lots's net worth and what evidence Big Lots has concerning any consensual relationship between Ms. Pritchard and Mr. Marquez; and (3) requests for production concerning Ms. Pritchard's sexual harassment allegations, financial data for Big Lots, and attorney's fees/costs incurred by Big Lots in defending this case. Although the court does not reach the merits of the EEOC's motion to compel, it does note that requests for admission which are not denied within thirty days are generally deemed admitted. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 191 (5th Cir. 1989).

3    The court makes no determination at this time regarding the merits of any punitive damages or attorney's fees claims. Big Lots has filed a motion in limine to preclude any evidence of punitive damages unless the evidence at trial has established malice, and that motion remains pending.

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4932532

Only the Westlaw citation is currently available.

United States District Court, W.D. Texas, Austin Division.

Thomas GRAY, Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., Defendant.

1:23-CV-545-RP

|

Signed July 25, 2024

**Attorneys and Law Firms**

Thomas Gray, Austin, TX, Pro Se.

Piper Replogle, Jones Day, Houston, TX, for Defendant.

**ORDER**

ROBERT PITMAN, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is pro se Plaintiff Thomas Gray's ("Plaintiff") motion to compel. (Dkt. 22). Plaintiff asks the Court to compel Defendant Experian Information Solutions, Inc. ("Defendant") "to disclose complete responses" and "properly respond" to Plaintiff's discovery requests because "[Defendant's] objections were improper." (Id.). Plaintiff simply argues that "[t]his information is relevant to [his] claims and defense[s] and proportional to the needs of the case." (Id.). Defendant filed a response in opposition. (Dkt. 24). Defendant argues that the Court should deny Plaintiff's motion to compel because it is untimely and because Plaintiff has not specified the deficiencies in Defendant's discovery responses. (Id.).

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. It permits a party to file a motion when a party fails to respond to a request for production, fails to answer an interrogatory, or provides incomplete or evasive answers in response to a discovery request. Id. While Rule 37 does not provide a deadline for

filing a motion to compel, Rule 16(e) permits the Court to issue a scheduling order that sets deadlines in a case. Fed. R. Civ. P. 16(e). Here, by stipulation of the parties, the Court issued a scheduling order that set the discovery deadline as July 8, 2024—the same day that Plaintiff filed his motion to compel. (See Dkts. 21, 22). "In order to have timely obtained the discovery that he seeks, [Plaintiff] should have filed his motion to compel sufficiently in advance of the discovery deadline." Citro-Rey S. de R.L. de C.V. v. L & M Cos., Inc., No. CIV. A. 7:07-154, 2009 WL 1227821, at *2 (S.D. Tex. May 5, 2009). A sufficiently advanced filing would have permitted the Court to hear the motion, and then if granted, to allow the compelled discovery to be produced prior to the discovery deadline. However, because it was filed on the discovery deadline, Plaintiff's motion is untimely. Id.; see also 📁 Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 398 (N.D. Tex. 2006) (collecting cases).

Plaintiff's motion to compel must also be denied for lack of specificity. Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b) (1). Here, Defendant states that it has produced nearly two hundred documents to Plaintiff in response to Plaintiff's twenty Requests for Admission and twenty-four Requests for Admission. The Court cannot provide Plaintiff relief if it does not know which of Defendant's responses were deficient, how they were deficient, and why the compelled responses would be important to Plaintiff's case.

**\*2** Accordingly, **IT IS ORDERED** that Defendants' motion to compel, (Dkt. 22), is **DENIED.**

**All Citations**

Slip Copy, 2024 WL 4932532

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1150682
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

HF SINCLAIR REFINING &
MARKETING, LLC, Plaintiff,

v.

NEXTERA ENERGY MARKETING, LLC, Defendant.

Civil Action No. 3:23-CV-1798-X
|
Signed April 17, 2025

**Attorneys and Law Firms**

Andres Correa, Jared D. Eisenberg, Leo Daesu Park, Lynn
Pinker Hurst & Schwegmann, LLP, Dallas, TX, Braden
Lee Dotson, Hunton Andrews Kurth LLP, Dallas, TX, for
Plaintiff.

Christopher D. Porter, Melanie A. Guzman, Quinn Emanuel
Urquhart & Sullivan, LLP, Houston, TX, Sascha N. Rand,
Pro Hac Vice, K. McKenzie Anderson, Pro Hac Vice, Luke
H. Phillips, Pro Hac Vice, Nathan Goralnik, Pro Hac Vice,
Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY,
David Mark Graham, Quinn Emanuel Urquhart & Sullivan,
LLP, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

BRANTLEY STARR, UNITED STATES DISTRICT
JUDGE

**\*1** Before the Court is Defendant NextEra Energy
Marketing, LLC's (NextEra) motion to compel (Doc. 84)
and HF Sinclair Refining & Marketing, LLC's (Sinclair)
motion to exclude certain opinions of Bob Broxson (Doc. 94).
The Court has reviewed the parties' briefs and the law and
**GRANTS IN PART** and **DENIES IN PART** the motion to
compel (Doc. 84) and **DENIES** the motion to exclude (Doc.
94).

### I. Factual Background

This is a natural gas contract dispute arising from Winter
Storm Uri. The parties had a contract under which NextEra
would provide Sinclair with natural gas at the OGT Pool, a
pipeline system in Oklahoma. When Uri hit, NextEra declared
a force majeure and did not fulfill its delivery obligation to
Sinclair for three days.

NextEra seeks the following information from Sinclair: "(1)
additional sources of gas supply that [Sinclair] had available
to it during Winter Storm Uri, (2) how much that gas
cost [Sinclair], and (3) how much gas [Sinclair] reasonably
required during Uri, that all goes to the heart of its claimed
damages in this case." [1] In addition, NextEra wants testimony
from an adequately prepared Sinclair representative who can
speak to the topics above.

### II. Legal Standards

"[U]nder Fifth Circuit law, the party resisting discovery
must show specifically how each discovery request is not
relevant or otherwise objectionable." [2] Federal Rule of
Civil Procedure 26 defines to scope of discovery as "any
nonprivileged matter that is relevant to any party's claim or
defense and proportional to the needs of the case." [3]

### III. Analysis

There are three issues in this discovery dispute: (1) whether
NextEra's discovery requests untimeliness is excusable, (2)
whether the discovery is relevant, and (3) whether Sinclair's
corporate representative was prepared at the deposition.

#### A. Timeliness

This motion to compel came after the deadline for
discovery. [4] Courts consider different factors when deciding
whether a late motion to compel should nevertheless be
permitted. Those are:

> (1) the length of time since the
> expiration of the deadline, (2) the
> length of time that the moving party
> has known about the discovery, (3)
> whether the discovery deadline has
> been extended, (4) the explanation
> for the tardiness or delay, (5)

whether dispositive motions have been scheduled or filed, [6] the age of the case, [7] any prejudice to the party from whom late discovery was sought, and [8] disruption of the court's schedule. [5]

NextEra did not file this motion to compel until nearly a month after the document discovery deadline, which is longer than the two-week delay in *Days Inn*. [6] NextEra has known since at least August 7, 2024, that Sinclair could have used other sources of fuel at the Tulsa Refinery [7]; has known since at least May 2, 2024, about pool imbalances [8]; and has known since at least August of 2024 that Sinclair "ramped down" the Tulsa Refinery. [9]

**\*2** The parties extended their deposition deadline to September 30, 2024, [10] and then again the parties extended the deadline for expert depositions to October 17, 2024. [11] NextEra sought this discovery eleven days before dispositive motions were due. [12] This case is not exceedingly old, just middle-aged; the information sought does not appear unjustifiably prejudicial to Sinclair; and the Court's schedule will be disrupted as it waits for discovery, supplemental briefing, and likely further motions to seal on top of that. Given that these other factors are a mixed bag, NextEra's explanation becomes very important.

As for NextEra's explanation for the delay, it only provides one for the long imbalance issues, not the "ramped down" issue. NextEra did not learn of the long imbalance's presence on the spreadsheet until September 30, 2024, and discovered on that day (the day NextEra deposed Sinclair's corporate representative) that Sinclair had drawn roughly half of the gas needed at the Tulsa Refinery from the long imbalance. [13] Sinclair provided NextEra a less-redacted version of the spreadsheet—in the middle of the deposition. [14]

Therefore, the Court finds that the late motion to compel is excused as to the first two categories of information—the ones dealing with the long imbalance—but not with respect to documents relating to the "ramped down" state of the Tulsa Refineries.

## B. Relevance

As for relevance, one part of the contractual damages remedy is key: the Cover Standard, which is used to determine a component of the damages calculation. Crucially, the "Cover Standard" means "that if there is an unexcused failure to take or deliver any quantity of Gas pursuant to this Contract, then the performing party shall use commercially reasonable efforts to ... obtain Gas ... at a price reasonable for the delivery or production area ...." [15] The Cover Standard also contemplates the "immediacy of the Buyer's Gas consumption needs." [16]

Here, it is possible that information concerning replacement gas would factor into the damages calculation, because it could reveal the prices Sinclair paid for gas obtained, which goes directly to the Cover Standard. For its part, Sinclair says this information is irrelevant because the contractual obligation is to provide gas to the OGT Pool, not Sinclair's downstream refineries. Therefore, Sinclair argues, information concerning gas obtained at the refineries is irrelevant to show replacement gas. At this preliminary stage, it is inappropriate to conduct a full and binding contractual interpretation. Here, it is enough that obtaining gas under the contract possibly refers to downstream replacement.

NextEra argues that the extent to which Sinclair "ramped down" the Tulsa Refineries reveals that Sinclair could have operated the Tulsa Refineries on the non-NextEra gas alone. NextEra connects this with the contractual term in the Cover Standard that considers "the immediacy of the Buyer's Gas consumption needs." [17] But Sinclair never addresses this contractual term or shows that it is disconnected from the present dispute such that it renders the information irrelevant to the damages calculation.

## C. Corporate Representative Preparedness

NextEra does not defend its position that Sinclair's corporate representative (Aaron Smedley) was unprepared as to the "ramped down" state in its reply brief. Even if it did, it could not succeed in arguing it is entitled to another deposition of a corporate representative on that point. NextEra seeks a corporate representative to testify to the "ramped down" state of the Tulsa Refineries. The corporate representative did testify to the ramped down state—and it appears NextEra

simply did not like the answer Smedley gave. Far from being unprepared, Smedley explained that the precise quantity needed in a ramped down state is not just unknown to him—but is an unknown quantity altogether. [18] Just because a party doesn't like the answer they get in a deposition, it doesn't get to keep playing witness Whac-A-Mole until it gets one it does like.

**\*3** NextEra also argues that Sinclair's corporate representative was unprepared to answer questions relating to the long imbalance. Sinclair argues that NextEra's topics were too broad or vague, but because NextEra did not know for a fact that the long imbalance was used (although it may have suspected it) until the deposition, springing that information on NextEra at the very end of discovery, midway through the deposition, could be a reason NextEra's notices lacked precision in their language. In short, rewarding Sinclair's mid-deposition document dump would offend basic notions of fairness. Accordingly, NextEra may depose another corporate representative from Sinclair on the topic of long imbalances.

### IV. Motion to Exclude Certain Opinions of Broxson

Because this is a bench trial, "there is no risk of tainting the trial by exposing a jury to unreliable evidence." [19] "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." [20] Additionally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." [21]

Accordingly, because this is a bench trial, the Court will give Broxson's opinion whatever weight it deserves. Sinclair also seeks to exclude Broxson's Opinion 1 on the theory that it is just legal conclusions. As above, the Court will assign to that information the weight which it is due—if he states a legal conclusion, the Court will not rely on it. And if it is merely context, then it is allowable. Accordingly, the Court **DENIES** Sinclair's motion to exclude.

### V. Conclusion

The Court **ORDERS** Sinclair to produce the discovery material above within twenty-one days of the date of this order. In particular, the Court **ORDERS** Sinclair to produce documents sufficient to show:

(1) The sources of gas (including from the long imbalance on ONG) Sinclair had available to power the Tulsa Refineries during Winter Storm Uri, including the volume of gas available to Sinclair on each day on which Sinclair has alleged damages, and the relevant terms of any agreements between Sinclair and ONG regarding the long imbalance; and

(2) the price Sinclair paid or would have been charged for the gas on the ONG long imbalance, including but not limited to producing the relevant terms of any agreements between Sinclair and ONG regarding pricing of that gas, and a fully unredacted version of the spreadsheet previously produced as HFS_0000651, HFS_0002015, and HFS_0002016.

The Court **FURTHER ORDERS** that Sinclair prepare a corporate representative to testify regarding the foregoing topics. The deposition shall occur within twenty-eight days of the date of this order and shall not last longer than three hours. Lastly, the Court **FURTHER ORDERS** NextEra to file briefing—not to exceed eight pages—covering the impact of any new information regarding damages on the motions for summary judgment within thirty-five days of the filing of this order and Sinclair to file responsive briefing of no more than eight pages within seven days of NextEra's briefing.

**IT IS SO ORDERED** this 17th day of April, 2025.

**All Citations**

Slip Copy, 2025 WL 1150682

---

**Footnotes**

1    Doc. 84 at 1.

2    *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 593 (N.D. Tex. 2017) (Horan, M.J.) (citing 🚩 *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

3    Fed. R. Civ. P. 26(b)(1).

4    Even though discovery was open for depositions, it was no longer open for documents. Doc. 57 at 1; Doc. 69 at 1.

5    🚩 *Days Inn Worldwide Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (Ramirez, M.J.).

6    *Id.*

7    Doc. 150 at App. 67.

8    Doc. 129 at 37.

9    Doc. 150 at App. 176, 178.

10    Doc. 69 at 1.

11    Doc. 78 at 1.

12    Doc. 84 at 17.

13    Doc. 84 at 9–10.

14    Doc. 84 at 9.

15    Doc. 84-1 at App. 22.

16    Doc. 84-1 at App. 22.

17    Doc. 84-1 at App. 22.

18    Doc. 150 at App. 43.

19    🚩 *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010).

20    🚩 *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

21    🚩 *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3614012
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Sherman Division.

Christopher MOSER as Plan Trustee of
the Trust Under the Amended Joint Plan of
Liquidation of Tango Transport, LLC, et al.,
v.
NAVISTAR INTERNATIONAL CORPORATION, et al.

Civil Action No. 4:17-CV-00598
|
Signed 07/27/2018

**Attorneys and Law Firms**

Angela J. Somers, Yonah Jaffe, Reid Collins & Tsai LLP, New York, NY, David Benjamin Thomas, J. Benjamin King, Reid Collins & Tsai, LLP, Dallas, TX, for Christopher Moser as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al.

James Jay Lee, Rebecca Lynn Petereit, Vinson & Elkins LLP, Dallas, TX, Lance Blake Williams, Quincy T. Crochet, McCranie Sistrunk Anzelmo Hardy McDaniel & Welch, LLC, Covington, LA, Angela Nicole Offerman, Michael P. Ridulfo, Kane Russell Coleman & Logan PC, Houston, TX, for Navistar International Corporation, et al.

**MEMORANDUM OPINION AND ORDER**

AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE

**\*1** Pending before the Court is Defendants' Navistar, Inc. and Navistar International Corporation Motion to Compel Discovery Responses (Dkt. #58). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted in part.

**BACKGROUND**

In 2014, Tango Transport, LLC, Tango Logistx, LLC, Gorman Group, Inc., Tango Truck Services, LLC, Tango Enterprises, Inc., and GMGO, LLC (collectively "Tango") filed suit in the United States District Court for the Western District of Louisiana. Specifically, Tango filed suit

against Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation (collectively "Navistar"). The basis of the lawsuit involved alleged defects in over 450 International MaxxForce engines in trucks purchased or leased by Tango from Navistar between 2011 and 2013. Tango later voluntarily dismissed the case.

Later in 2014, Tango refiled its suit in Louisiana state court. Although the basis and allegations of the lawsuit resembled the previous federal action, Tango added ITA Truck Sales & Services, LLC as a defendant (collectively, with Navistar, "Defendants"). In August of 2015, Tango and Defendants reached a settlement agreement that resulted in the state court dismissing all claims with prejudice.

In April of 2016, Tango filed for bankruptcy. In November of 2016, Tango commenced this action as an adversary proceeding in the Bankruptcy Court by filing an amended Complaint against Defendants. Specifically, Tango sought avoidance of the settlement agreement alleging they did not receive reasonably equivalent value for the release of their claims. In December of 2016, the Bankruptcy Court confirmed the Plan and appointed Christopher Moser ("Moser") as the Trustee of the Plan Trust, which succeeded Tango in this action. In April of 2017, Moser filed an amended complaint adding recovery of the value of the defective engine claims, or in the alternative, the return of the releases.

On June 2, 2017, Defendants, in Bankruptcy Court, filed a Motion to Withdraw the Reference. On August 25, 2017, the Bankruptcy Court issued a Report and Recommendation, recommending the Court withdraw reference. On December 19, 2017, United States District Judge Ron Clark adopted the recommendation and transferred the matter to the undersigned. On February 5, 2018, Moser produced, in pertinent part, the following to Navistar: (1) electronic copies of emails of six former Tango employees (the "Employee Documents"), (2) emails received from Tango's former counsel, Bryan Cave, and Tango's former CRO, Morris Anderson, ("Third-Party Documents"), (3) access to hard copy documents in boxes contained in two warehouses: Dallas ("Dallas Boxes"), with an index created by Tango, and Shreveport ("Shreveport Boxes"), for which no index currently exists, and (4) remote access to Tango's operational systems (collectively, "Initial Disclosures").

On April 6, 2018, Navistar served Moser with its Requests for Production ("RFP") and Interrogatories (Dkt. #58, Exhibits

Moser v. Navistar International Corporation, Not Reported in Fed. Supp. (2018)

5–6). On May 7, 2018, Moser provided his response (Dkt. #58, Exhibits 7–8). On June 18, 2018, Navistar filed a Motion to Compel (Dkt. #58). On July 2, 2018, Moser filed his response (Dkt. #67). On July 9, 2018, Navistar filed a reply (Dkt. #71). On July 13, 2018, the Court held a hearing on Navistar's motion to compel.

## LEGAL STANDARD

**\*2** Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense...." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b) (1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b) (1); ⚐ *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.' " (Dkt. #25 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; ... (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense...." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." ⚐ *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting ⚐ *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987) ).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. ⚐ *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2) (B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2) (C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

**\*3** Navistar alleges that Moser's Initial Disclosures and discovery responses are insufficient because (1) they are not limited to relevant information and fail to satisfy the requirements under Rule 34, (2) Moser incorrectly invokes his role as trustee to avoid providing meaningful discovery responses, and (3) Moser puts forth spurious objections to Navistar's interrogatories and fails to provide any substantive responses. The Court addresses each argument in turn.

Moser v. Navistar International Corporation, Not Reported in Fed. Supp. (2018)

**I. Moser's Production of Documents**

Navistar avers that Moser's Initial Disclosures constitute an overproduction "of information vastly comprised of irrelevant and/or disorganized electronic information." (Dkt. #58 at p. 4). Based on such production, Navistar contends that Moser failed to expend any effort culling irrelevant and immaterial information or identifying and producing relevant documents as required by federal and local discovery rules. [1] As a result, Navistar requests that the Court order Moser to re-review his production and eliminate irrelevant documents and to specifically identify the information that is relevant to its discovery requests.

Moser responds that Navistar fails to provide any evidence that the information produced contains excessive irrelevant documents. Moreover, Moser argues that Navistar's RFPs, which broadly seek information regarding all aspects of Tango's operations, contradict Navistar's now restricted concept of relevant information. Finally, Moser contends that Navistar's request should be denied because Moser produced all electronically stored documents in fully searchable and sortable form and hard copy information in the manner for which it was kept during the usual course of business.

A party responding to discovery requests must either produce documents "as they are kept in the usual course of business" or "must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i). "This rule is intended to prevent parties from hiding 'a needle in a haystack' and to minimize the costs associated with discovery." United States v. Bollinger Shipyards, Inc., No. 12-920, 2015 WL 13529512, at *3 (E.D. La. Apr. 13, 2015) (quoting Hagemeyer N. Am., Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594, 598 (E.D. Wisc. 2004) ). A party asserting that documents are produced as kept in the usual course of business "must provide testimony, or some other evidence, to support their position." Brown v. Bridges, No. 3:12-cv-4947-P, 2014 WL 2210510, at *6 (N.D. Tex. May 27, 2014). Ideally, such evidence includes "the identity of the custodian or person from whom the documents were obtained, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered." Bollinger, 2015 WL 13529512, at *4 (citations omitted). Failure to meet this burden results in the responding party complying with the second option and properly organizing and labeling the documents. Brown, 2014 WL 2210510, at *3.

**\*4** Regarding electronically stored information produced by Moser, the Court orders Moser, to the extent he has not already done so, to narrow the information produced to what is pertinent to Navistar's discovery requests. See Orchestratehr, Inc. v. Trombetta, 178 F. Supp. 3d 476, 510 (N.D. Tex. 2016) (holding that a responding party has the responsibility to provide a meaningful response and review voluminous documents to identify those that are responsive to specific requests). Because Moser represents that such information is in searchable and sortable form, the Court finds that complying with such an order is not unduly burdensome.

Concerning the Dallas and Shreveport Boxes, Navistar contends that Moser making such boxes available for inspection rather than identifying the relevant contents and boxes is improper. Moser responds that he produced such boxes as they were kept in the usual course of business and that to require him to review every box to determine the relevancy of the information contained therein would be overly burdensome. Aside from stating that the boxes were kept by Tango in the manner that Moser produced them, Moser fails to provide any evidence to support the proposition that the boxes were produced as kept in the usual course of business. Consequently, Moser fails to satisfy his initial burden. See Oceaneering Int'l, Inc. v. GRI Simulations, Inc., No. 05-0258, 2008 WL 11399724, at *2 (W.D. La. Jan. 23, 2008) ("simply producing documents in boxes does not conform to [Rule 34(b)(2)(E)(i) ]"); Brown, 2014 WL 2210510, at *6 (the producing party has the burden of demonstrating that documents, albeit in storage, are produced in the ordinary course of business ... that is, "Plaintiffs cannot simply open a warehouse door to a storage pile of unorganized documents"). As such, Moser must either satisfy this burden or organize and label the documents appropriately. If Moser satisfies his burden, he must also provide, to the extent he has not already, a general description of the filing system and indexes for the documents.

As trustee, Moser argues that requiring him to review every box would be unduly burdensome. The Court disagrees. Assuming Moser meets his burden of establishing that the boxes were produced as kept in the usual course of business, an index already exists for the Dallas Boxes, and Moser is currently creating an index for the Shreveport Boxes. As such, requiring Moser to provide a general description of the organization of the boxes and completed indexes is not unduly burdensome.

**II. Responding to Discovery as the Trustee**

Appendix of Authorities: 38 of 89

Navistar alleges that Moser avoids adequately responding to Navistar's discovery by claiming that he as trustee lacks "direct information" of Tango's business operations (Dkt. #58 at p. 5). Navistar avers that Moser's argument is untenable since Moser "has both the power and obligation to call upon Tango's knowledge to pursue his claims and to respond to discovery." (Dkt. #58 at p. 5). In other words, Navistar contends that Moser should have sought Tango's assistance in attempting to fully comply with his discovery obligations (Dkt. #58 at p. 7).

Moser responds that his objections based on his position as trustee are appropriate. Specifically, Moser asserts that he responded to Navistar's discovery to the best of his ability given his relative access to the relevant information and limited resources. For example, Moser represents that although Tango ceased operations prior to his appointment as trustee, he has nevertheless contacted former employees and counsel to try and obtain relevant and responsive information. Despite such efforts, Moser contends that his ability to draw upon Tango's institutional knowledge is limited.

**\*5** Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering ... the parties' relative access to relevant information" and "the parties' resources." FED. R. CIV. P. 26(b)(1). Although Navistar argues that Tango has an affirmative duty to cooperate with Moser for discovery purposes, the cases Navistar relies on are distinguishable from the case at hand since they involve Chapter 7, not Chapter 11 bankruptcy. Moreover, neither party cites to case law, and the Court finds none, where a court enforces such an obligation on the debtor in the context of a Chapter 11 bankruptcy. As such, the Court finds that Moser is only obligated to respond to Navistar's discovery to the extent that he has access to such information and in a manner that does not overly diminish the limited resources of the trust. Moser represents that he contacted Tango's former employees and counsel in an effort to adequately respond to Navistar's counsel. The Court finds that such effort complies with Rule 26 and the circumstances of this case. However, the Court notes that Moser maintains the duty to supplement his discovery responses if he comes across new and relevant information.

### III. Moser's Responses to Navistar's Interrogatories

Navistar alleges that rather than respond substantively to its interrogatories, Moser "answered" with vague references to documents "previously produced" or claimed to lack direct

knowledge to provide more responsive answers (Dkt. #58 at p. 12). Additionally, Navistar complains that Moser refused to respond to interrogatories 13 through 24 based on improper objections as to the number of interrogatories based on his calculation of subparts. As such, Navistar requests that the Court order Moser to specify which documents and/ or information relate to each interrogatory and to provide responses to all interrogatories. Conversely, Moser claims that he adequately responded to Navistar's interrogatories by either "referring to the particular location of the information, or, where [he did] not have access to the information, stating so and referring Navistar to particular Tango employees who would likely have the information." (Dkt. #67 at pp. 13–14). Furthermore, Moser avers that he properly objected to and refused to respond to Navistar's excess interrogatories. The Court first addresses Moser's responses followed by the existence, if any, of excess interrogatories.

"Typically, responses to interrogatories must be complete in themselves." *F.T.C. v. Think All Pub., L.L.C.,* No. 4:07-cv-011, 2008 WL 687456, at *3 (E.D. Tex. Mar. 11, 2008) (citation omitted). However, Rule 33(d) provides that when a party serves an interrogatory "to another party which can be answered by examination of the responding party's business records, and the burden of deriving the answer would be the same for both parties, it is sufficient to answer the interrogatory by specifying the business records from which the answer may be derived or ascertained." *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC,* No. SA-05-CV-750-XR, 2006 WL 8434013, at *1 (W.D. Tex. May 9, 2006) (citing FED. R. CIV. P. 33(d); 🚩*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 357 (1978) ). When this happens, "the responding party must specify the documents from which the answer may be derived in 'sufficient detail to [enable] the interrogating party to locate and to identify' them" as the responding party could. *Id.* (quoting FED. R. CIV. P. 33(d) ).

In response to numerous interrogatories, Moser refers to various modules, sub-modules, and/or files located within Tango's operational system, which Moser contends Navistar has remote access to. *See* (Dkt. #58, Exhibit 8). Without determining the sufficiency of Moser's responses, the Court cautions Moser that the specified modules and files provided as answers to Navistar's interrogatories should provide a clear and easily traceable answer. Navistar "should not have to search and surmise from the specified documents the answers it seeks." *Spectrum,* 2006 WL 8434013, at *2. As such, Moser is ordered to review his responses and provide

supplementation if such responses do not provide clear and straightforward direction to the answers sought.

**\*6**  The Court next addresses whether Navistar's interrogatories exceed the limitation imposed by Rule 33. Federal Rule of Civil Procedure 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." "Calculating the number of interrogatories ... is not an exact science." *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016). In expounding on the 25-interrogatory limit, the Advisory Committee Note provided, in pertinent part, that

> [p]arties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

146 F.R.D. 401, 675–76 (1993). "When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes 'discrete separate subject.'" *Erfindergemeinschaft*, 315 F.R.D. at 194. Although there is no precise test for determining "discreteness" under a Rule 33(a)(1) inquiry, most courts follow the "related question" approach. *Id.* at 196. The test applied under the "related question" approach is "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Id.* Stated differently, "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it]." *Id.* (alteration in original) (citation omitted). Notably, "the issue of 'discreteness' cannot reliably be captured by a verbal formula," but instead "the issue turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary

question in the interrogatory, as opposed to being separate and distinct." *Id.* at 197.

As discussed below, the Court finds that each of the complained-of interrogatories contain multiple parts and should be treated as separate interrogatories.

### a. Interrogatory No. 1

> Concerning the allegations in the Tango Petition and the Amended Complaint relating to representations about the Subject Vehicles, please identify the person(s) who made said representations, detail the representation made, identify to whom the representation was directed, identify who relied on the representation, and detail when the representation was made. Also identify all materials that Tango reviewed concerning the Subject Vehicles that you allege Tango relied upon in deciding to purchase the Subject Vehicles, including a brief description of the contents of the material, location of the material, when the material was reviewed and by whom.

(Dkt. #58, Exhibit 6 at p. 4). This interrogatory contains two subparts: first, details surrounding representations relating to the subject vehicles, and second, materials Tango reviewed when considering whether to purchase the subject vehicles. The latter is neither subsumed nor dependent upon the former. As such, this interrogatory constitutes two interrogatories.

### b. Interrogatory No. 3

> Please describe the [disposition] of each Subject Vehicle, including the manner in which you or Tango parted with the Subject [Vehicle], the date of disposition, the amount or value received in the trade-in or sale (if

applicable), the last known mileage at the time it left your or Tango's possession, the identity and [ ] location of the subsequent owner or possessor, and if known, the current status and location of the vehicle.

**\*7**  (Dkt. #58, Exhibit 6 at p. 4). This interrogatory contains two subparts: first, a description of the disposition of the subject vehicles, and second, the current status and location of the subject vehicles. Although each subpart relates to the subject vehicles, each can be answered independent of one another. As such, this interrogatory constitutes two interrogatories.

### c. Interrogatory No. 5

Please describe any and all maintenance, servicing, and/or repairs performed by anyone (at Tango or elsewhere) on the Subject Vehicles at any time. This request calls, in part, for the identity of the individual/entity that performed the work, the approximate date or time period of the work, the identity of the vehicle at issue (by VIN or other identifier), the nature of the work performed, the cost of the work, and the identity of each person having any information or Material (including receipts, invoices, statements, records, memoranda) relating to the work.

(Dkt. #58, Exhibit 6 at p. 5). This interrogatory contains two subparts: first, a description of the maintenance, servicing, and/or repairs of the subject vehicles, and second, the identify of persons with information relating to such work. Although each are related, neither is dependent nor subsumed by the other. As such, this interrogatory constitutes two interrogatories.

### d. Interrogatory No. 6

Please describe any and all maintenance, servicing, and/or repairs performed at any time by anyone (at Tango or elsewhere) on vehicles owned or leased by Tango other than the Subject Vehicles. This request calls, in part, for the identity of the individual/entity that performed the work, the approximate date or time period of the work, the identity of the vehicle at issue (by VIN or other identifier), the nature of the work performed, the cost of the work, and the identity of each person having any information or Material (including receipts, invoices, statements, records, memoranda) relating to the work.

(Dkt. #58, Exhibit 6 at p. 5) (emphasis in original). This interrogatory constitutes two interrogatories for the same reasoning applied to Interrogatory No. 5.

### e. Interrogatory No. 7

Please describe Tango's internal policies, procedures, guidelines or practices related to the use, operation, maintenance, or servicing of any vehicle leased or owned by Tango, including Tango vehicles other than the Subject Vehicles. To the extent such information is memorialized, please identify the relevant Material.

(Dkt. #58, Exhibit 6 at p. 5). This interrogatory contains two subparts: first, a description of various materials related to numerous topics, and second, a request for any memorialized material concerning such information. The latter is neither subsumed nor dependent upon the former. As such, this interrogatory constitutes two interrogatories.

### f. Interrogatory No. 8

Please describe any and all inspections or tests performed on each of the Subject Vehicles, including any component part thereof, whether prior to or after the purchase or lease of the Subject Vehicle, known to you or Tango or to persons acting on your or Tango's behalf, providing the identity of the person who performed the inspection/test, the approximate date each inspection/test was performed, the location of each inspection/test, the component parts that were inspected/tested, the conclusions reached, if any, at each inspection/testing, and a description of any Material created in connection with the inspection/testing.

 **\*8**  (Dkt. #58, Exhibit 6 at pp. 5–6). This interrogatory contains two subparts: first, details concerning all inspections or tests performed on the subject vehicles, and second, a request for any memorialized material concerning such information. Because each subpart is distinct and independent of one another, this interrogatory constitutes two interrogatories.

### g. Interrogatory No. 9

Please describe all advertising performed by Tango or on Tango's behalf related to the hiring or retention of truck drivers from January 1, 2005, to the present. Your response should include a description of each advertisement, the duration (if applicable) of the advertisement, the cost of the advertisement, and the identity of any individuals/agencies involved in handling Tango's advertisements.

(Dkt. #58, Exhibit 6 at p. 6). This interrogatory contains two distinct and separate subparts. First, a request for a

description of all advertising related to hiring or retention of truck drivers, and second, the identify of those involved with such advertisements. Because each subpart can be answered independent of one another, this interrogatory constitutes two interrogatories.

### h. Interrogatory No. 10

Please list by name, address, phone number, and dates of employment all drivers employed by Tango from January 1, 2005, to the present. Please indicate the drivers who at any time operated any of the Subject Vehicles made the basis of this lawsuit and time period in which the driver identified operated each of the Subject Vehicles.

(Dkt. #58, Exhibit 6 at p. 6). This interrogatory contains two subparts: first, information relating to drivers employed by Tango during a specific time period, and second, the identities of drivers who operated the subject vehicles. Because each subpart is distinct and independent of one another, this interrogatory constitutes two interrogatories.

### i. Interrogatory No. 11

For Tango's entire fleet of vehicles operated by Tango from January 1, 2005, until Tango ceased operations, describe the following:

(a) the average percentage of vehicles in service at any given time;

(b) the average maximum load (in pounds) that each vehicle was required to carry per day;

(c) the average number of days per week that each vehicle was used by Tango or in service to Tango in business or otherwise;

(d) the average number of miles per day that each vehicle traveled (or was required to travel);

(e) the average number of hours per day that each vehicle was used (or was required for use);

(f) the average number of vehicles that experienced down time at any given time;

(g) the average number of days each vehicle experienced downtime;

(h) the average number of repairs performed on each vehicle per year for the life of the vehicle;

(i) the number of drivers assigned to each vehicle;

(j) the number of vehicles down at any given time due to lack of drivers, lack of orders, and/or not required or needed by Tango in the ordinary course of business; and

(k) a description of any and all documents that were used or relied upon Plaintiff to answer this interrogatory.

(Dkt. #58, Exhibit 6 at pp. 6–7). This interrogatory contains four subparts: first, details relating to overall truck usage; second, information concerning the usage of specific trucks; third, data relating to the downtime of specific trucks; and fourth, a description of all materials relied upon to answer the aforementioned subparts. Because all subparts are distinct and independent of one another, this interrogatory constitutes four interrogatories.

**j. Interrogatory No. 12**

 **\*9** Itemize with particularity, by date, amount and explanation, all "Break Down Expenses" as that term is used in Paragraphs 41-44 of the Amended Complaint. To the extent these expenses are supported by documentary evidence, please identify those documents by Bates Number.

(Dkt. #58, Exhibit 6 at p. 7). This interrogatory contains two subparts which are neither subsumed nor dependent upon one another. First, information relating to "Break Down Expenses," and second, documentary evidence supporting such information. Although related, each is independent of the other. As such, this interrogatory constitutes two interrogatories.

**k. Interrogatory No. 13**

Please identify all customers and/or business you or Tango allege Tango lost based on alleged breakdowns or repairs to the Subject Vehicles, as alleged in Paragraph 45 of the Amended Complaint, and describe any valuation of the associated alleged economic loss. To the extent these claims of lost customers or business and any associated valuation are supported by documentary evidence, please identify those documents by Bates Number.

(Dkt. #58, Exhibit 6 at p. 7). This interrogatory contains four subparts: first, identification of customers and/or businesses lost based on alleged breakdowns or repairs; second, evidence supporting such response; third, the valuation of the associated alleged economic loss; and fourth, evidence supporting such economic loss. Although the subparts are related, neither is dependent nor subsumed by the other. As such, this interrogatory constitutes four interrogatories.

Taking into consideration the analysis above, Interrogatories No. 1 through the first subpart of No. 13 constitute twenty-five separate interrogatories. Moser only provided responses to interrogatories No. 1 through 12. Because a Navistar is entitled to twenty-five interrogatories, Moser must additionally provide a response to the first interrogatory/ subpart within No. 13. However, Navistar's request that Moser respond to all of Navistar's originally classified twenty-four interrogatories is declined.

**CONCLUSION**

It is therefore **ORDERED** that Navistar's Motion to Compel (Dkt. #58) is hereby **GRANTED in part**. As such, Moser is **ORDERED** to comply with the requirements as described herein no later than 5:00 p.m. on Friday, August 10, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3614012

**Moser v. Navistar International Corporation, Not Reported in Fed. Supp. (2018)**

---

### Footnotes

1    Navistar also complains that Moser improperly refused to produce documents possessed by Tango's third-party custodians. Moser responds that he provided information that he has access to, but certain information is no longer available to him since the third-party vendors no longer maintain a relationship with Tango. Because the information sought by Navistar is no longer in Moser's possession, custody, or control, by virtue of Tango's estranged relationships with third-party vendors, the Court finds that Moser lacks the ability to produce such information. *See Villarreal v. First Presidio Bank,* No. EP-15-CV-88-KC, 2017 WL 5505383, at *1 (W.D. Tex. June 9, 2017).

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 48 of 92

Nexus Display Technologies LLC v. Dell Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13544186
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Marshall Division.

NEXUS DISPLAY TECHNOLOGIES LLC, Plaintiff

v.

DELL INC., et al., Defendants.

Civil Action No. 2:14–CV–762
|
Signed 11/02/2015

**Attorneys and Law Firms**

Alisa Anne Lipski, Amir H. Alavi, Brian Ervin Simmons, Jamie Alan Aycock, Justin Yee–Jin Chen, Megan L. Bibb, Michael Dean McBride, Scott W. Clark, Steven John Mitby, George Walton Webb, III, Demetrios Anaipakos, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., Houston, TX, Claire Abernathy Henry, Jack Wesley Hill, Thomas John Ward, Jr., Ward, Smith & Hill, PLLC, Longview, TX, for Plaintiff.

Deron R. Dacus, Shannon Marie Dacus, The Dacus Firm, PC, Tyler, TX, Kimball R. Anderson, Anthony DeMarco Pesce, Kathleen B. Barry, Sarah Joyce Kalemeris, Winston & Strawn, Chicago, IL, Howard I. Shin, Winston & Strawn LLP, New York, NY, Jude James Andre, Winston & Strawn LLP, Houston, TX, for Defendants.

### ORDER

ROBERT W. SCHROEDER III, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are the following motions:

- Plaintiff Nexus Display Technologies LLC's ("NDT") Emergency Sealed Opposed Motion to Enforce [the] Docket Control Order (Docket No. 253) and

- Defendant Dell Inc.'s ("Dell") Opposed Motion for Leave to File Motion to Compel Production of Documents from Plaintiff Nexus Display (Docket No. 257).

For the reasons set forth below, NDT's emergency motion (Docket No. 253) is **DENIED WITHOUT PREJUDICE** and Dell's motion for leave (Docket No. 257) is **DENIED**.

### NDT'S EMERGENCY MOTION TO ENFORCE THE DOCKET CONTROL ORDER

On October 9, 2015, NDT filed an emergency motion requesting that the Court: (1) enforce this case's Docket Control Order ("DCO"); (2) order Dell to withdraw a motion to compel pending in the Northern District of California; [1] and (3) award NDT attorneys' fees for filing this motion. Docket No. 253.

Dell's motion to compel stems from a Rule 30(b)(6) notice of deposition and a subpoena *duces tecum* from July 2015 served on third-party Silicon Image. Docket No. 262 at 5. In essence, NDT's motion to enforce the DCO is a motion to quash enforcement of that July 2015 subpoena. Rule 45 requires that matters relating to the enforcement of a subpoena are to be directed to "the court for the district where compliance is required." FED. R. CIV. P. 45(d). The parties do not identify where production—in other words, compliance—pursuant to the July 2015 subpoena was to occur. Silicon Image accepted a previous subpoena identifying Sunnyvale, California in the Northern District of California as the place for production. *See* Docket No. 262 at 5 (citing Docket No. 262–10, Ex. 12). Assuming production was to occur in the Northern District of California, compliance and enforcement of the July 2015 subpoena must occur there. See FED. R. CIV. P. 45(d)(2)(B), 45(d)(3) and 45(e)(2)(B).

Although the Northern District of California has discretion to transfer the motion to this Court under Rule 45(f), it has not done so. Until the Court in the Northern District of California resolves the motion or transfers it here for resolution, a request to enforce the DCO is premature. Accordingly, NDT's motion is **DENIED WITHOUT PREJUDICE**.

### DELL'S MOTION FOR LEAVE TO FILE A MOTION TO COMPEL

On October 15, 2015, Dell filed an opposed motion for leave to file a motion to compel NDT to produce "non-privileged, business communications between Acacia and Silicon Image as well as internal business communications of Acacia employees." Docket No. 257 at 12.

Discovery closed on September 7, 2015. The original discovery deadline was August 10, 2015. Pursuant to the parties' request, the discovery deadline was moved twice.

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 49 of 92

Nexus Display Technologies LLC v. Dell Inc., Not Reported in Fed. Supp. (2015)

Courts consider a number of factors when deciding whether a motion to compel is untimely:

>  *2  (1) the length of time since the expiration of the deadline; (2) the length of time that the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom late discovery was sought; and (8) disruption of the court's schedule.

*Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006), *see also Taylor v. Turner Industries Group, LLC*, No. 2:11–cv–57, 2012 WL 4092492, *1 (E.D. Tex. Sept. 17, 2012).

Despite discovery being closed, Dell argues that its motion should be considered timely because it was diligent in bringing the motion and the requested documents would not cause prejudice to NDT or disrupt the Court's schedule. *See* Docket No. 257. On August 31, 2015, NDT "served a substantial amount of discovery." *Id.* at 2. Dell contends it was unaware that NDT "intended to claim privilege to such a large volume of documents...." *Id.* Dell asserts that the majority of documents sought "are internal business communications at Acacia where no lawyer is identified on the privilege log." Docket No. 273 at 3.

NDT responds that Dell's motion is untimely because Dell filed its motion six weeks after the Court's discovery and motion to compel deadline. Docket No. 268 at 1. NDT contends that Dell was aware of the parties' privilege disagreements since April 2015. *Id.* NDT argues that even if the discovery served on August 31, 2015 delayed Dell filing a motion to compel, a delay of six weeks does not indicate diligence. *Id.* at 2. NDT further argues that it will be prejudiced by such late discovery and additional discovery would be needed to rebut any information Dell obtains, which could cause a need for a continuance of the trial date. *Id.* at 10.

Currently, dispositive motions are due in this case by November 6, 2015 and a pretrial conference is set for December 3, 2015. As noted above, the deadline to complete discovery and file any necessary motions to compel was September 7, 2015. At a minimum, Dell would have been aware of the parties' privilege disputes since at least August 27, 2015. *See* Docket No. 268–5, Ex. C, Brown Depo. at 110:7–24. With the discovery period set to close within 10 days from that point, Dell would have had ample time to file a motion to compel. Dell, instead, waited six weeks, and a motion to compel at this point would be untimely. Accordingly, Dell's motion is **DENIED**.

**SIGNED** this 2nd day of November, 2015.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13544186

---

## Footnotes

1   On September 24, 2015, Dell filed a motion to compel further testimony from third-party Silicon Image, Inc. in the Northern District of California. *See* Civil Action No. 4:15–mc–80241, Docket No. 1 (N.D. Cal.). That motion is currently set for a hearing on November 19, 2015.

---

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  2

Appendix of Authorities: 46 of 89

2015 WL 11598710
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, El Paso Division.

Carol REEVES, Plaintiff,

v.

WELLS FARGO BANK, NA;
and John Does, 1-25., Defendants.

EP-14-CV-00187-DCG
|
Signed 06/26/2015

**Attorneys and Law Firms**

Carol Reeves, El Paso, TX, pro se.

Andrea Cortinas, Scott Hulse Marshall Feuilli Finger & Thurmond PC, El Paso, TX, Justin Edward Allen, Richard A. Illmer, Husch Blackwell, LLP, Dallas, TX, for Defendants.

**ORDER DENYING MOTION TO COMPEL
AND FOR LEAVE TO PROPOUND
ADDITIONAL INTERROGATORY**

DAVID C. GUADERRAMA, UNITED STATES DISTRICT JUDGE

**\*1** Presently before the Court is Plaintiff Carol Reeves' ("Plaintiff") "Motion to Compel Wells Fargo to Allow [Plaintiff] to Inspect the Note in this Action and for Permission to File an Additional Interrogatory" ("Motion") (ECF No. 87), filed on June 22, 2015. Defendant Wells Fargo Bank, N.A. ("Defendant") filed a Response (ECF No. 93) on June 25, 2015. Plaintiff seeks to compel Defendant "to allow her to examine the original of [a] promissory note in this action." *See* Mot. 1. Plaintiff also seeks leave of court to propound an additional interrogatory on Defendant, because "[she] already used ... [her] allowable quota of interrogatories." *See id.* at 7. After due consideration of the Motion, the Response, and the applicable law, the Court denies Plaintiff's Motion.

**I. MOTION TO COMPEL**

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling the inspection of documents requested

pursuant to Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). Rule 34, in turn, limits the inspection documents to materials "within the scope of [Federal Rule of Civil Procedure] 26(b)." *See* Fed. R. Civ. P. 34(a). The scope of discovery provided by Rule 26(b) is as follows: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Mindful of this scope, the Court reviews Plaintiff's Motion.

Plaintiff's sole cause of action in this case is for wrongful foreclosure. "The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMACMortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist] 1989, writ denied)). Plaintiff is thus entitled to inspect documents that are relevant to that claim, assuming the request for such inspection has been properly made. [1]

Yet Plaintiff seeks to inspect the original promissory note that her mother, Fern Gillespie, signed to obtain a loan secured by a deed of trust on the property located at 2500 Penwood Drive, El Paso, Texas (the "Property"). *See* Mot. 1-2; First Am. Compl. 2, 4, ECF No. 7. In support of her request, Plaintiff argues that inspecting the original promissory note is reasonably calculated to lead to the discovery of admissible evidence regarding the second element of her cause of action: the alleged grossly inadequate price at which the Property was sold in July, 2013. *See* Mot. 2-3; First Am. Compl. 2, 10. The Court disagrees. The original promissory note Plaintiff seeks to inspect is outside the reach of Rule 26(b)(1), and Plaintiff's Motion is denied for that reason.

**\*2** The Property at issue here was sold on July 2, 2013, at a non-judicial foreclosure sale. *See* First. Am. Compl. 2. This sale is the predicate of Plaintiff's sole cause of action. Plaintiff appears to argue that the original promissory note falls within the scope of Rule 26(b) because it may show that the reported selling price for the Property is not the real selling price. *See* Mot. 3. But the original promissory note would show no such thing. The price at which the Property was sold during the July 2, 2013, non-judicial foreclosure sale is in

Case 4:23-cv-03560     Document 272-6     Filed on 06/20/25 in TXSD     Page 51 of 92

Reeves v. Wells Fargo Bank, NA, Not Reported in Fed. Supp. (2015)

the public record. The substitute trustee deed referenced in Plaintiff's First Amended Complaint, filed and recorded with the County Clerk in the Official Records of El Paso County, reports a selling price of $74,700.00. *See* Def.'s Mot. Dismiss, Ex. O. Plaintiff acknowledges as much in her First Amended Complaint. *See* First Am. Compl. 7. Indeed, Defendant even provided Plaintiff with a copy of the substitute trustee deed showing this price in the course of this litigation. *See* Mot. 2. Plaintiff's cause of action requires her to establish that *this* selling price, recorded in El Paso County's Public Records, was "grossly inadequate." *See* 🔖 *Sauceda*, 268 S.W.3d at 139 (citation omitted). Accordingly, the original promissory note is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to Plaintiff's claim, and the Motion is therefore denied. [2]

## II. LEAVE TO PROPOUND ADDITIONAL INTERROGATORY

Federal Rule of Civil Procedure 33 allows a party to "serve on any other party no more than 25 written interrogatories .... Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 33(a)(1). This means the Court should consider whether the additional interrogatory would advance the goals of proportional and nonduplicative discovery. *See* Fed. R. Civ. P. 26(b)(2). Here, Plaintiff represents that she has exhausted her "allowable quota of interrogatories," and seeks leave to file an additional interrogatory because she believes the discovery conducted thus far reveals conflicting information. *See* Mot. 7. Plaintiff wishes to propound an additional interrogatory to clarify from whom she should seek further discovery regarding the conflicting information she identifies. *See id.*

These reasons do not justify granting leave to file an additional interrogatory one week before the close of discovery. The information at issue concerns the identity of the individual or entity who sent certain notices pursuant to Texas Property Code § 51.002 in the process of

foreclosing on the Property. *See id.* Plaintiff believes she received conflicting information regarding this issue. *See id.* However, that Plaintiff believes she has received conflicting information in the discovery process is not a reason to grant additional discovery. The discovery process is only meant to provide whatever information is in the possession, custody, knowledge, or control of the person or party on whom discovery has been propounded—the parties may use that information, conflicting or not, as they see fit. Plaintiff has failed to show why extending the limits of discovery set out in the Rules is warranted. Thus, further discovery on this issue is cumulative and unnecessary under the circumstances. *See* Fed. R. Civ. P. 26(b)(2). The request for leave to file an additional interrogatory is therefore denied.

## III. DISCOVERY DEADLINE

Finally, the Court notes that the deadline to conduct all discovery in this case is June 29, 2015. *See* Order 4, ECF No. 77. This deadline was already extended once, as was the deadline to file dispositive motions. *See id.* Further extensions will not be granted for either deadline except for extraordinary circumstances.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Carol Reeves' "Motion to Compel Wells Fargo to Allow [Plaintiff] to Inspect the Note in this Action and for Permission to File an Additional Interrogatory" (ECF No. 87) is **DENIED**.

So ORDERED and SIGNED this 26th day of June, 2015.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 11598710

---

**Footnotes**

**Reeves v. Wells Fargo Bank, NA, Not Reported in Fed. Supp. (2015)**

---

1    Plaintiff is also entitled to discovery relevant to Defendant's defense, *see* Fed. R. Civ. P. 26(b)(1), but Defendant did not assert any affirmative defenses in its responsive pleading, *see* Def.'s Mot. Dismiss, ECF No. 10.

2    Defendant did not request that Plaintiff pay its reasonable expenses incurred in opposing the Motion, and the Court finds that an award of expenses is not justified under the circumstances. *See* Fed. R. Civ. P. 37(a)(5)(B).

---

**End of Document**                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 53 of 92

Simon v. State Farm Lloyds, Not Reported in Fed. Supp. (2015)

2015 WL 12777219
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, McAllen Division.

John SIMON, Plaintiff,
v.
STATE FARM LLOYDS, Defendant.

CIVIL ACTION NO. 7:14-CV-251
|
Signed 04/09/2015

**Attorneys and Law Firms**

Bill Lee Voss, Scott G. Hunziker, The Voss Law Firm PC, The Woodlands, TX, Michael Shane Thompson, Sr., Of Counsel, Manuel Gonzales, P.C., Houston, TX, for Plaintiff.

Mark A. Lindow, Lindow Stephens Treat LLP, San Antonio, TX, Lauren Leigh Burgess, Segal McCambridge Singer & Mahoney, Austin, TX, for Defendant.

### <u>ORDER</u>

Micaela Alvarez, UNITED STATES DISTRICT JUDGE

**\*1** The Court now considers the "Motion to Compel Plaintiff to Respond to Defendant's Discovery Requests"[1] filed by State Farm Lloyds ("Defendant"). John Simon ("Plaintiff") has filed a response,[2] and Defendant has replied.[3] After considering the motion, responses, record, and relevant authorities, the Court **GRANTS** the motion.

### I. Background

Plaintiff's claims arise from the 2012 wind and hail storms that struck the Rio Grande Valley, causing damage to their property, and a plumbing claim Plaintiff made in September 2012.[4] On March 27, 2014 Plaintiff filed a lawsuit in state court alleging causes of action for breach of contract, several violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing, among various other claims.[5] The case was removed by Defendant on May 8, 2014,[6] and on November 21, 2014 this Court entered a Rule 26 Scheduling Order[7] setting a discovery deadline of April 20, 2015.

The motion informs the Court that, since this case involves two separate insurance claims, the parties entered into an agreement pursuant to Federal Rule of Civil Procedure 29 agreeing to expand the number of interrogatories from twenty-five to fifty.[8] Indeed, Defendant provided the letter signed by Lauren Burgess for Defendant and Jesse Corona for Plaintiff "confirm[ing] [the] agreement to increase the number of written interrogatories permitted per party from twenty-five (25) interrogatories to fifty (50) interrogatories."[9] On August 5, 2014, Defendant served its First Set of Interrogatories and Requests for Production on Plaintiff.[10] However, pursuant to agreement by Defendant, Plaintiff did not respond until October 3, 2014.[11] On October 1, 2014, Defendant served its Second Set of Interrogatories and Requests for Production on Plaintiff.[12] Defendant waited until ten days after the deadline to inquire as to the delinquent response, and then agreed to extend the response time until November 25, 2014.[13]

However, Plaintiff's responses were vague and filled with boilerplate objections. After attempting to address Plaintiff's non-responsiveness out of court, Defendant filed the instant motion requesting that the Court compel Plaintiff to remove his objections and provide responses to the interrogatories and requests for production pursuant to Rule 37.[14] Plaintiff's counsel requested an extension of time to respond, presenting to the Court that the attorney representing Plaintiff during the response periods was no longer part of the law firm. Counsel assured the Court: "Plaintiff's new attorney is attempting to remedy the activities complained of in Defendant's motion ... [C]ounsel for Plaintiff is not only attempting to make arguments as to any points in Defendant's motion in which he disagrees, but also to supplement discovery as to the areas with which he does agree ... At day's end, new counsel for the Plaintiff simply wishes to alleviate all issues involving the discovery dispute presently between the parties."[15] In hopes that the parties could resolve this matter without the Court's involvement and based on the averment by Plaintiff, the Court granted the extension of time.[16] However, it appears that Plaintiff did not actually wish to alleviate the issues involved in the discovery dispute because Plaintiff did not make any attempts to work with Defendant regarding the problems identified in the motion and never amended or supplemented his responses.[17] Instead, Plaintiff filed a response to the motion fully supporting his responses to Defendant's requests.

Simon v. State Farm Lloyds, Not Reported in Fed. Supp. (2015)

## II. Law Applicable to a Motion to Compel Discovery

**\*2** Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." [18] A movant's motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." [19] If the responding party provides only an evasive or incomplete response, it must be treated as a failure to answer or respond. [20] The rule not only authorizes the Court to compel disclosures and cooperation in discovery, but even empowers the Court to impose monetary sanctions for "the movant's reasonable expenses incurred in making the motion, including attorney's fees." [21]

Specific to this case, a motion may be made if a party fails to answer an interrogatory submitted under Rule 33 [22] or fails to appropriately respond regarding a request for production under Rule 34. [23] Rule 33 allows a party to serve interrogatories on the other party that "may relate to any matter that may be inquired into under Rule 26(b)." [24] The responding party must answer each interrogatory separately and fully in writing. [25] However, if the responding party decides to make an objection, "[t]he grounds for objecting to an interrogatory must be stated with *specificity*." [26] Similarly, Rule 34 allows a party to request production of a document, electronically stored information, or other tangible items within the scope of Rule 26(b). [27] Requests must describe each item requested, specify how the item will be inspected, and may specify the form in which electronically stored information is to be produced. [28] For each item, the responding party "must either state that inspection and related activities will be permitted as requested or state an objection to the request, *including the reasons*." [29]

To properly evaluation the motion, the Court must look to Federal Rule of Civil Procedure 26(b), which governs the permissible scope of discovery. The Rule's phrasing is deliberately broad, [30] providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials," [31] but courts must also firmly limit discovery to relevant material to avoid unnecessary expense. Rule 26(b)(2)(C) provides that the Court must limit the extent of discovery if the discovery sought is unreasonably cumulative or duplicative or can be obtained from a more convenient or less burdensome source; if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or if the burden or expense of the proposed discovery outweighs its likely benefit. Ultimately, "[d]istrict courts have wide discretion in determining the scope and effect of discovery." [32]

## III. Defendant's Interrogatories and Plaintiffs' Objections

**\*3** Plaintiff asserted eighteen vague and general objections at the beginning of each response, both to the first set of interrogatories and the first set of requests for production. Such objections included:

5. Plaintiff objects to the Interrogatories [33] generally, and to each Interrogatory contained therein specifically, to the extent that they were overly broad, seek information that is not relevant to the subject matter of this action, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

6. Plaintiff objects to the Interrogatories generally, and to each Interrogatory contained therein specifically, to the extent that they are unreasonably burdensome, oppressive and harassing.

8. Plaintiff objects to the Interrogatories generally, and to each Interrogatory contained therein specifically, to the extent that they are vague, ambiguous and unintelligible.

13. Plaintiff objects to the Interrogatories generally, and to each Interrogatory contained therein specifically, to the extent that they seek information and/or the identity of documents which are overbroad.

18. Plaintiff objects to the Interrogatories generally, and to each Interrogatory contained therein specifically, to the extent that they seek the legal reasoning and theories of Plaintiff's contentions. Plaintiff is not required to prepare the Propounding Party's case. [34]

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appendix of Authorities: 51 of 89

In the first set of interrogatories, Plaintiff does not provided more specific answers. To interrogatories 1-8, 17-20, and 23-27, Plaintiff answered: "Please see Plaintiff's response and production in response to Defendant's Request for Production. Subject to and without waiving these objections, Plaintiff reserves the right to supplement this response during the course of discovery." [35] However, Plaintiff's responses to the requests for production were similarly non-responsive.

In response to interrogatories numbers 9-16 and 21-22, Plaintiff answered:

> Plaintiff objects to this Interrogatory as it calls for Plaintiff to provide legal reasoning and/or legal theories in response thereto.
>
> Plaintiff objects to this Interrogatory as it is overly broad, seeks information that is not relevant to the subject matter of this action, and/or in [sic] not reasonably calculated to lead to the discovery of admissible evidence.
>
> Plaintiff objects to this Interrogatory as it prematurely seeks expert discovery. Plaintiff objects tot his [sic] Interrogatory as it is vague, ambiguous and unintelligible.
>
> Subject to and without waiving these objections, Plaintiff reserves the right to supplement this response during the course of discovery. [36]

Plaintiff's only argument defending these answers is that the objections "were appropriate due to the nature and numerical quantity of Defendant's Interrogatories as they could not possibly be consistent with the law or spirit of discovery." [37] The Court is baffled by this argument because Plaintiff clearly agreed to increase the number of interrogatories from twenty-five to fifty, and Defendant only served a total of twenty-eight interrogatories on Plaintiff. As to the subparts of the interrogatories, they are not discrete questions, as Plaintiff presents, but are an effort to guide Plaintiff's answers to an appropriate level of thoroughness and specificity by asking where the water damage was within the house, how Plaintiff became aware of such conditions, and if the condition ever dissipated. [38] Plaintiff then has the audacity to call Defendant's exercise of the Rule 29 agreement "flagrant abuse" of the discovery process. [39]

**\*4** To the contrary, it is Plaintiff that is "flagrantly abusing" the discovery process by indiscriminately levying general objections and the exact same vague responses against all

but the last interrogatory. Plaintiff's objections are devoid of any facts explaining why an individual interrogatory is overly broad or burdensome, why the materials sought are irrelevant, or how production would exceed the scope of discovery. Based on these boilerplate objections it is impossible for the Court to rule on the validity of the underlying request and whether the interrogatories can actually be considered overly burdensome, irrelevant, overly broad or requiring "legal reasoning." Plaintiff completely fails to meet the Rule 33(b)(4) requirement of objecting to each interrogatory with specificity.

The only interrogatory in Defendant's second set, interrogatory number 28, requested extensive information on attorney's fees incurred and the activities performed by Plaintiff's counsel. [40] Plaintiff asserts attorney/client privilege and the core work product privilege, claiming "[w]ho counsel believes is and is not important to interview concerning the underlying accident or any fact investigation performed by counsel falls within counsel's own mental impressions and is thus protected from discovery." [41] Since Plaintiff seeks attorney fees, the information is both relevant and discoverable but subject to redaction to protect privileged matters. Since the request does not actually concern the type of mental impressions protected under either privilege, this objection is also inappropriate. Plaintiff asserts other objections all of which are without merit. [42]

Therefore, the Court **OVERRULES** each of Plaintiff's objections and **ORDERS** Plaintiff to specifically answer each of the interrogatories.

### IV. Defendant's Requests for Production and Plaintiffs' Objections

Plaintiff's responses to the requests for production were not any more specific. After the same litany of general objections, in response to requests 1, and 26-34, Plaintiff states that he cannot find any responsive documents. [43] To the extent that Plaintiff genuinely cannot find documents, such as the verification of the costs of subsequent repairs, remodeling projects, and personal property lost, [44] Plaintiff is excused from responding to these requests. However, Plaintiff is forewarned that he will be prohibited from later use of such documents to support his claims.

However, to requests 8-12, Plaintiff provides the same type of generalized, copy-and-paste responses as found in the

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 56 of 92

Simon v. State Farm Lloyds, Not Reported in Fed. Supp. (2015)

answers to the interrogatories. Once again Plaintiff provides responses and objections completely lacking in substance. For an objection to the requests to be proper, Plaintiff would actually have to explain how the requests exceed an appropriate scope or would not lead to the discovery of admissible evidence. While Rule 34 does not explicitly require specificity in the objections as does Rule 33, it does require *reasons* for the objections. The Court does not consider blanket objections to qualify as appropriate "reasons" under Rule 33 because such cursory dismissal of Defendant's requests does not provide the Court with a basis for evaluating the objection. In fact, the Court finds these copy-and-paste objections to be "overly broad" and an abuse of the discretion afforded to the parties by the Rules. It appears to the Court that Plaintiff did not even attempt to provide good faith answers to these requests for production. Therefore, the Court finds all of these objections to be inadequate. Additionally, the "responses" provided by Plaintiff are completely evasive and non-responsive. Accordingly, under Rule 37(a)(4) the Court finds that Plaintiff failed to respond.

**\*5**  Though, Plaintiff does provide responsive documents to requests 2, 4-7, 13-25, and 35-37, he states: "Please find attached hereto responsive documents in Plaintiff's possession, custody, or control, which have not all ready [*sic*] been exchanged, *if any.*"[45] In "attaching" the responsive documents, Plaintiff did not specify what documents he produced, nor did he label the documents to identify the requests to which they belong;[46] he simply put all of the documents on a CD.[47] The result is a series of receipts, credit card statements, and pictures with absolutely no identification or explanation.[48] Plaintiff claims that this is how his records are kept in the ordinary course of business, as "business records," but the Court finds this argument nonsensical since Plaintiff is an individual, not a business. Federal Rule of Civil Procedure 34(b)(2)(E)(i) states that "[a] party must produce documents as they are kept in the usual course of business or must organize them to correspond to the categories in the request." Thus, the Court instructs Plaintiff to produce the documents in a way that corresponds to the categories in the request.

The only partially reasonable objection Plaintiff makes is in response to request number 3 for all documents relating to his claim for attorney's fees, including the attorney fee agreement, invoices, and checks for payment.[49] Plaintiff claims that the request seeks the contents of

attorney client communications.[50] However, it appears that Plaintiff subsequently provided Plaintiff's contract for legal representation with counsel.[51] Plaintiff also asserts attorney/client privilege, among other objections, to the last set of requests for production involving Plaintiff's contract, billing statements and time records for work performed by the attorneys, and an explanation of activities performed.[52] Since Plaintiff seeks attorney fees, any information regarding billing statements, invoices, or time and expense reports from his attorneys is both relevant and discoverable but subject to redaction to protect privileged matters. Plaintiff shall produce the requested documents, redacted only to protect privileged matters. A copy of unredacted documents shall be filed with the Court under seal.

Therefore, except as noted above, the Court **OVERRULES** each of Plaintiff's objections. The Court **ORDERS** Plaintiff to answer all interrogatories and produce responsive discovery to requests for production in a manner that corresponds to the category of the request.

### V. Note on Rule 37(a)(5)(A)

Pursuant to Rule 37(a)(5)(A), if a motion to compel disclosure or discovery is granted, the Court "must, after giving an opportunity to be heard, require the party [ ] whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Based on the information provided, the Court finds that Defendant attempted in good faith to resolve this matter out of Court. However, Plaintiff's non-responsiveness to Defendant's discovery requests and failure to amend or supplement his responses after representing to the Court an intention to do so is unjustified. Instead of making efforts to remedy his clear failure to adhere to the spirit and letter of the Rules, Plaintiff filed a response attempting to defend his deficient efforts and place blame on Defendant. The Court finds this to be an appropriate situation to warrant the payment of Defendant's reasonable expenses incurred in filing the motion under Rule 37(a)(5)(A) and will consider any requests and documentation Defendant submits to that effect.

### VI. Holding

For the reasons provided above, the Court **ORDERS** Plaintiff to provide answers and documents responsive to the interrogatories and requests for production **by April 15, 2015.**

IT IS SO ORDERED.

Simon v. State Farm Lloyds, Not Reported in Fed. Supp. (2015)

DONE this 9th day of April, 2015, in McAllen, Texas.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 12777219

## Footnotes

| | |
|---|---|
| 1 | Dkt. No. 19 ("Motion"). |
| 2 | Dkt. No. 28 ("Response"). |
| 3 | Dkt. No. 29 ("Reply"). |
| 4 | *See* Dkt. No. 1. |
| 5 | Dkt. No. 1, Exh. A. |
| 6 | Dkt. No. 1. |
| 7 | Dkt. No. 17. |
| 8 | Motion at p. 1. |
| 9 | Dkt. No. 19, Exh. A. |
| 10 | Dkt. No. 19, Exhs. C-D. |
| 11 | Dkt. No. 19, Exhs. E-F. |
| 12 | Dkt. No. 19, Exhs. G-H. |
| 13 | Motion at p. 2; Dkt. No. 19, Exhs. I-J. |
| 14 | Reply at p. 1. |
| 15 | Response at p. 2. |
| 16 | Dkt. No. 24. |
| 17 | Response at p. 4. |
| 18 | Fed.R.Civ.P. 37(a)(1). |
| 19 | Fed.R.Civ.P. 37(a)(1). |
| 20 | Fed.R.Civ.P. 37(a)(4). |
| 21 | Fed.R.Civ.P. 37(a)(5)(A). |
| 22 | Fed.R.Civ.P. 37(a)(3)(B)(iii). |
| 23 | Fed.R.Civ.P. 37(a)(3)(B)(iv). |

Case 4:23-cv-03560    Document 272-6    Filed on 06/20/25 in TXSD    Page 58 of 92

Simon v. State Farm Lloyds, Not Reported in Fed. Supp. (2015)

24    Fed.R.Civ.P. 33(a)(2).

25    Fed.R.Civ.P. 33(b)(3).

26    Fed.R.Civ.P. 33(b)(4)(emphasis added).

27    Fed.R.Civ.P. 34(a).

28    Fed.R.Civ.P. 34(b).

29    Fed.R.Civ.P. 34(b)(2)(B)(emphasis added).

30    ⚑ *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad ...").

31    ⚑ *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

32    ⚠ *Bradley v. Boysville, Inc.*, 240 F.3d 1073 (5th Cir. 2000).

33    The Court notes that the same languages is shared throughout the responses, using "Interrogatories" and "Requests" interchangeably.

34    Dkt. No. 19, Exhs. E-F, I-J.

35    Dkt. No. 19, Exh. E.

36    *Id.*

37    Response at p. 3.

38    Dkt. No. 19, Exh. C.

39    Response at p. 4.

40    Dkt. No. 19, Exh. I.

41    *Id.*

42    Plaintiff did not make the one objection which might have merit—that the request for "[t]he amount of time spend on each of the activities ..." is unduly burdensome.

43    Dkt. No. 19, Exh. F.

44    *Id.*

45    *Id.* emphasis added.

46    Reply at p. 3-4.

47    Response at p. 5.

48    Dkt. No. 19, Exh. F.

49    *Id.* at p. 7.

50    *Id.* at pp. 7-8.

51    Response at p. 6.

52    Dkt. No. 19, Exhs. I-J.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4092492
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Marshall Division.

Nina TAYLOR, et al., Plaintiffs,
v.
TURNER INDUSTRIES GROUP, LLC
and Turner Industries, LLC, Defendants.

No. 2:11–CV–57–JRG.
|
Sept. 17, 2012.

**Attorneys and Law Firms**

Aneeba Rehman, Deborah L. Rubin, James Vagnini, Robert
J. Valli, Jr., Sara Wyn Kane, Pro Hac, Vice, Valli, Kane &
Vagnini, LLP, Garden City, NY, Jay D. Ellwanger, Stefanie
Tina Scott, Dinovo Price Ellwanger & Hardy LLP, Austin,
TX, Ogletree Deakins Nash Smoak & Stewart, Houston, TX,
Thomas John Ward Jr., Ward & Smith Law Firm, Eric Miller
Albritton, Albritton Law Firm, Longview, TX, for Plaintiffs.

Christopher Jon Lowman, Attorney at Law, Houston, TX,
Flyn Flesher, Ogletree Deakins Nash Smoak & Stewart PC,
Chicago, IL, James R. Staley, Stephen Eric Hart, Ogletree
Deakins Nash Smoak & Stewart, Houston, TX, L. Gray
Geddie, Jr., Mark M. Stubley, Matthew K. Johnson, Ogletree,
Deakins, Nash, Smoak & Stewart, PC, Greenville, SC, for
Defendants.

Michael David Mitchell, Martin A. Rodriguez, Ogletree
Deakins Nash & Stewart, Houston, TX, for Plaintiffs
and Defendants.

### *MEMORANDUM OPINION AND ORDER*

RODNEY GILSTRAP, District Judge.

**\*1** Before the Court is Plaintiffs Nina Taylor *et al.*'s
("Plaintiffs") Emergency Motion to Compel Responses to
Discovery Requests (Dkt. No. 133), filed August 12, 2012.
The motion is **DENIED.**

The rules of discovery are accorded a broad and liberal
treatment to affect their purpose of adequately informing

litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153,
176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "A district
court has broad discretion in all discovery matters, and such
discretion will not be disturbed ordinarily unless there are
unusual circumstances showing a clear abuse." *Beattie v.
Madison County Sch. Dist.,* 254 F.3d 595, 606 (5th Cir.2001)
(quoting *Kelly v. Syria Shell Petroleum Dev. B. V.,* 213
F.3d 841, 855 (5th Cir.2000)); *see also Alpine View Co. v.
Atlas Copco AB,* 205 F.3d 208, 220 (5th Cir.2000). The party
requesting discovery may move to compel the disclosure
of any materials requested so long as such discovery is
relevant and otherwise discoverable. *See* Fed.R.Civ.P. 37;
*Export Worldwide, Ltd. v. Knight,* 241 F.R.D. 259, 263
(W.D.Tex.2006) ("Federal Rule of Civil Procedure 37(a)
[ (3)(B)(iii) and (iv) ] empowers the court to compel the
production of documents ... upon motion by the party seeking
discovery."). The moving party bears the burden of showing
that the materials and information sought are "relevant to
any party's claim or defense" or "appear[ ] reasonably
calculated to lead to the discovery of admissible evidence."
*See* Fed.R.Civ.P. 26(b)(1); *Knight,* 241 F.R.D. at 263.

In determining whether a motion to compel has been timely
filed, most courts look to the discovery deadline rather than
the motion-filing deadline. *See, e.g., Suzlon Wind Energy
Corp. v. Shippers Stevedoring Co.,* 662 F.Supp.2d 623, 661
(S.D.Tex.2009); *Days Inn Worldwide, Inc. v. Sonia Invs.,*
237 F.R.D. 395, 396–98 (N.D.Tex.2006) (citing cases). A
motion to compel must be filed sufficiently in advance of
the Court's discovery deadline to permit the Court to hear
the motion and, if granted, for discovery to complete by the
deadline. *See, e.g., Grey v. Dallas I.S.D.,* 265 Fed. Appx.
342, 348 (5th Cir.2008) (finding no abuse of discretion where
district court denied a motion to compel discovery when
"it was filed on the day of the discovery deadline after
an extensive discovery period") Courts have considered a
number of factors when deciding whether a motion to compel
is untimely, including:

(1) the length of time since the
expiration of the deadline, (2) the
length of time that the moving party
has known about the discovery, (3)
whether the discovery deadline has
been extended, (4) the explanation

for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (6) the age of the case, (7) any prejudice to the party from whom late discovery was sought, and (8) disruption of the court's schedule.

See 🚩 *Days Inn Worldwide, Inc.,* 237 F.R.D. at 398; *see also Turnage v. Gen. Elec.,* 953 F.2d 206, 209 (5th Cir.1992) (finding no abuse of discretion where district court denied plaintiff's request to conduct discovery "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [plaintiff's] failure to request [discovery] earlier").

 **\*2** Here, Plaintiffs move to compel the native production of information maintained in Defendants Turner Industries Group, LLC and Turner Industries, LLC's ("Defendants") personnel database system. Plaintiffs admittedly secured an affidavit on September 15, 2010, from a witness who testified to being able to access pay rates and termination information in a database. Nevertheless, Plaintiffs argue that Defendants did not disclose—and thus Plaintiffs did not know—that the database contained information beyond payroll data (such as race, gender, and training records) and could be produced in native format. The availability of such specific information, Plaintiffs further argue, was not discovered until a series of depositions of Defendants' Rule 30(b)(6) representatives held July 26–27, 2012.

Defendants argue, *inter alia,* that Plaintiffs' motion is untimely because Plaintiffs filed their motion more than a week after the Court's August 3, 2012 discovery deadline. Given that this case has been pending for 18 months, that Plaintiffs have had a year to conduct discovery, and given the impending *Daubert* motion deadline and October trial setting, Defendants argue that granting the motion to compel would prejudice the Defendants and disrupt the Court's schedule. The Court agrees.

The Plaintiffs' Motion to Compel does not comply with the Court's discovery deadline. The Court views its deadlines as firm guideposts which all the parties can freely reply upon in the conduct of pending litigation. Even under Plaintiffs' claim that they did not know of the availability of the specific information in Defendants' personnel database until July 26–27, 2012, Plaintiffs had a reasonable time within which to file their motion before the close of discovery. Plaintiffs did not file their motion until August 12, 2012, which was more than two weeks after they assert that they first learned details of the database. Plaintiffs' motion was filed more than one week past the discovery deadline of August 3, 2012. The Court is persuaded that granting this motion at this time would prejudice Defendants, disrupt the Court's schedule, and communicate the unintended message to others that the Court's deadlines are not reliable. For these reasons, the Court **DENIES** Plaintiffs' Motion to Compel.

**So ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4092492

---

End of Document                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

2010 WL 11671745
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Laredo Division.

Mario A. TORRALBA, Plaintiff,
v.
Janet NAPOLITANO, Defendant.

Civil Action No. L-08-83
|
Signed 02/09/2010

**Attorneys and Law Firms**

Murray Edward Malakoff, Attorney at Law, Laredo, TX, for
Plaintiff.

Charles Wendlandt, Jr., US Attorney's, Corpus Christi, TX,
for Defendant.

ORDER

Diana Saldaña, United States Magistrate Judge

 **\*1** Pending before the Court is Plaintiff's Motion to Compel
Answers to Interrogatories, Production of Documents and
Production of Witnesses for Oral Deposition. (Dkt. No. 24.)
In response, Defendant Janet Napolitano, Secretary of the
U.S. Department of Homeland Security argues that Plaintiff's
requested relief should be denied because Plaintiff's motion
was untimely filed. (Dkt. No. 25.) The Court agrees. As
such, Plaintiff's Motion to Compel (Dkt. No. 24) will not be
considered on the merits, and it is hereby DENIED in its
entirety.

Plaintiff has also made a separate request to reopen the
discovery period. (Dkt. No. 28.) Given the disposition on the
Motion to Compel, Plaintiff's request to reopen discovery is
similarly DENIED. [1]

Background

This is an employment discrimination case based on gender.
Plaintiff Mario A. Torralba, who at the time served with
the U.S. Department of Homeland Security, Customs and
Border Protection ("CBP") as a Seized Property Specialist in
the Port of Laredo's Fines, Penalties, and Forfeitures Office,

claims that he was passed up for the position as the Port
of Laredo's Supervisory Seized Property Specialist, and that
a less qualified female applicant was chosen instead. (See
Dkt. No. 1 at ¶¶ 14-15, 27-40, 48-49.) As a basis for CBP's
employment decision, Plaintiff also alleges retaliation for
having lodged a prior complaint of gender discrimination in
2002 with the Equal Employment Opportunity Commission
(the "EEOC"). (See id. at ¶¶ 76-89.)

At the outset, it must be noted that despite the parties
having been allotted a total of seven months for discovery,
any meaningful discovery conducted by Plaintiff has only
occurred within the very last month of this period. Such
consists solely of written discovery: one set of interrogatories,
one set of requests for production, and one set of requests for
admissions. No depositions have been taken. And although
Plaintiff has filed a motion to compel, this motion has been
filed past the discovery deadline set in the Court's Scheduling
Order.

Since its early stages, Plaintiff's Counsel, Murray A.
Malakoff, has been patently dilatory in prosecuting this
matter. The complaint in this case was filed on June 17, 2008.
(Dkt. No. 1.) However, Plaintiff did not take any affirmative
efforts in attempting service upon Defendant until August
28, 2009, more than two months later. (See Dkt. No. 3.)
A telephonic scheduling conference was scheduled for and
held on December 3, 2008. Mr. Malakoff was late. He did
not initiate the conference call as was otherwise ordered.
Nor did he participate in preparing and filing, prior to the
scheduling conference, the joint report required by Rule 26(f)
of the Federal Rules of Civil Procedure. For his actions, Mr.
Malakoff blamed his "cluster migraine headaches." Given
his purported medical condition, the Court expressed doubt
as to Mr. Malakoff's ability to conduct this case. However,
Mr. Malakoff advised that he was "of counsel" with the firm
of Nguyen and DelBarrio. [2] In light thereof, he specifically
assured the Court that, if necessary, his new associates would
make appearances for him or conduct discovery, and that his
many complained-of medical issues would not result in the
need for the extensions of any deadlines in this cause. The
Court went on to issue a Scheduling Order, pursuant to which
discovery was set to close on May 6, 2009. (Dkt. No. 11.)
This would have allotted the parties five months in which
to conduct discovery. Mr. Malakoff did not object to this
discovery timeframe proposed by the Court at the Scheduling
Conference.

Appendix of Authorities: 59 of 89

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

**\*2** However, on January 30, 2009, Mr. Malakoff filed an "Advice to the Court." (Dkt. No. 13.) Therein, he requested a 30-day extension of the deadlines in this action, having been purportedly ordered by his doctor to refrain from all work activities for a period of about three weeks. On March, 10, 2009, the Court denied Mr. Malakoff's requested extension because the "Advice" was not filed in the form of a motion made pursuant to Federal Rule of Civil Procedure 16(b)(4), which governs the modification of scheduling orders. (Dkt. No. 14.) The Court also noted Mr. Malakoff's previous representations made at the Scheduling Conference. Twenty days later, on March 30, 2009, Plaintiff, through Mr. Malakoff, then filed an unopposed motion to extend, re-urging his request that the Court extend its Scheduling Order deadlines by 30 days. (Dkt. No. 15.) The next day, the undersigned entered an order denying once again the requested extension, given that the parties still had more than one month to complete discovery. (Dkt. No. 16.) Subsequently, Plaintiff in essence sought review of the decision before District Judge Kazen (Dkt. No. 17), who on April 13, 2009 affirmed the undersigned's order of denial (Dkt. No. 18.) Judge Kazen directed the parties "to immediately commence or continue discovery in this case, toward the goal of finishing by May 6, 2009," and "to file a joint status report by May 12, 2009, advising what they have accomplished and what remains to be done." (Id.)

Five days after the close of discovery, on May 11, 2009, Plaintiff filed with the Court his first initial disclosures. (Dkt. No. 19.) At the time, it was unclear whether Plaintiff had served these disclosures upon Defendant by the Court's January 5, 2009 deadline (see Dkt. No. 11). However, based on Defense Counsel's representations, it appears that the disclosures were only served upon Defendant the same day they were filed with the Court. (See Dkt. No. 21 at ¶ 5.) If such is indeed the case, Plaintiff was then blatantly violating the Court's Scheduling Order. [3]

Regardless, the parties timely filed their joint status report on their given deadline of May 12th. (Dkt. No. 22.) Through this report, it became apparent that Mr. Malakoff had conducted absolutely no formal discovery whatsoever by the May 6th deadline, despite being directly ordered otherwise by Judge Kazen. Contemporaneously with the report, Plaintiff, through Mr. Malakoff, filed an opposed Motion for Extension of Deadlines and Issuance of a new Scheduling Order (Dkt. No. 20), appealing directly to Judge Kazen. This time, Mr. Malakoff cited the demands of another case and computer problems as the reasons for the requested extension.

Noting such, Judge Kazen granted Mr. Malakoff's requested extension the following day, and July 6, 2009 was set as the deadline for the close of discovery. (Dkt. No. 23.) This amounted to a 54-day extension of the original five months allotted. In his order, Judge Kazen specifically stated that "no further extensions [would] be granted for any reason." (Id.)

Nonetheless, it was not until 19 days later, on June 1, 2009, that Mr. Malakoff actually forwarded to Defense Counsel any written discovery. (Dkt. No. 28 at ¶ 24.) This included the written interrogatories and requests for production at issue in Plaintiff's Motion to Compel. In accordance with Rules 33(b)(2) and 34(b)(2) of the Federal Rules of Civil Procedure, Defendant served responses and objections to the interrogatories and requests for production within 30 days, on July 1, 2009. (Id. at ¶ 27.)

Also on July 1st, Mr. Malakoff unilaterally noticed for Monday, July 6th (the final day of discovery) the depositions of two witnesses: Eugenio "Gene" Garza and Maria Laura Garcia. (Id. at ¶ 28.) Mr. Garza is Director of the CBP's Port of Laredo who is alleged to have selected or to have participated in selecting Ms. Garcia for the supervisory position sought by Plaintiff. (Dkt. No. 1 at ¶¶ 23, 40.) Apparently, the first time Mr. Malakoff ever indicated to Defense Counsel that he intended to take any depositions in this case was on June 5, 2009, via e-mail. (See Dkt. No. 24, Ex. 3 at pg. 2; see also Dkt. No. 28 at ¶ 37.) However, it seems Mr. Malakoff did not specify exactly who he wished to depose until June 23, 2009. (See Dkt. No. 24, Ex. 3 at pg. 3; see also Dkt. No. 28 at ¶ 31.) In light of Mr. Malakoff's late notice, Defense Counsel protested to the depositions, and they were not held. (See Dkt. No. 24, Ex. 3 at pgs. 4-8; see also Dkt. No. 28 at ¶ 29.)

**\*3** Mr. Malakoff waited until July 14, 2009, or eight days after the close of discovery, before filing Plaintiff's Motion to Compel. (Dkt. No. 24.) Therein, Plaintiff seeks to compel 19 (of 25) interrogatories and all 19 production requests. Plaintiff also moves to compel the depositions of Mr. Garza and Ms. Garcia. Defendant filed a response to Plaintiff's motion on July 21, 2009. (Dkt. No. 25.) In accordance with the Court's Scheduling Order deadline for the filing of contested motions, Defendant filed a Motion for Summary Judgment on August 3, 2009. (Compare Dkt. No. 23, with Dkt. No. 27.) Plaintiff filed a reply in the matter of his Motion to Compel on August 19, 2009. (Dkt. No. 28.) He also moved therein to reopen discovery in response to Defendant's summary judgment motion, invoking Federal Rule of Civil Procedure 56(f). [4]

Appendix of Authorities: 60 of 89

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

---

### Discussion

I. Motion to Compel

A. Legal Standard

Federal Rule of Civil Procedure 37 governs the filing of motions to compel discovery. FED.R.CIV.P. 37(a). Rule 37 does not, however, set a timetable by which a motion to compel must be filed. Instead, Rule 16 explicitly authorizes the court to issue a scheduling order setting out specific deadlines by which a case must proceed, such as the deadline for completing discovery. FED.R.CIV.P. 16(b). In considering whether a motion to compel is timely, most courts look to the discovery deadline, rather than the contested motions deadline. 🚩 Days Inn Worldwide, Inc. v. Sonia Investments, 237 F.R.D. 395, 397-98 (N.D. Tex. 2006) (collecting cases). Courts also look to a number of secondary factors in deciding whether to consider a late-filed motion to compel on the merits, including the following: (1) the length of time since the expiration of the discovery deadline to when the motion to compel was filed; (2) the amount of time the moving party has known about the discovery problems; (3) whether the court has previously extended the discovery deadline; (4) the explanation for why the motion is tardy; (5) whether dispositive motions have been scheduled or filed; (6) how old the case is; (7) any prejudice that may result to the party from whom late discovery is sought; (8) disruption of the court's schedule. Citro-Rey v. L&M Companies, Inc., 2009 WL 1227821, at *2 (S.D. Tex. May 5, 2009) (order by Micaela Alvarez, District Judge) (citing 🚩 Days Inn Worldwide, 237 F.R.D. at 398).

B. Analysis

Plaintiff's Motion to Compel was filed eight days past the discovery deadline. As such, it is untimely. And given the balance of the above-referenced factors, the Court will not consider it on the merits.

While eight days past the discovery deadline is not an extensive period of time, this factor does not necessarily weigh in favor of considering the untimely Motion to Compel. See Citro-Rey, 2009 WL 1227821, at *2 (declining consideration of motion to compel filed ten days after the close of discovery). The Fifth Circuit has held it to be within a district court's discretion to decline consideration of a motion to compel discovery even when the motion "was filed on the *day of* the discovery deadline after an extensive

discovery period." Grey v. Dallas Indep. Sch. Dist., 265 Fed.Appx. 342, 348 (5th Cir. 2008) (unpublished) (citing Turnage v. Gen. Elec. Co., 953 F.2d 206, 209 (5th Cir. 1992) ) (emphasis added). Here, Plaintiff's Counsel, Mr. Malakoff, had ample time to conduct discovery under the Court's original scheduling order—five months. [5] Notwithstanding, Mr. Malakoff failed to either formally disclose or collect a single shred of evidence during that period. [6] Regardless, after the extension granted by Judge Kazen, Mr. Malakoff also had almost two additional months in which to conduct any needed discovery. This amounted to nearly seven months allotted for discovery—a decidedly extensive period. As one district court has squarely held, "[a]fter almost seven months of discovery, a motion to compel received after the expiration of the deadline for the *completion* of all discovery is untimely," 🚩 Lillbask v. Sergi, 193 F.Supp.2d 503, 516 (D.Conn. 2002) (emphasis in original), and for this reason need not be considered, see id. The Court notes that Mr. Malakoff offers absolutely no explanation for filing Plaintiff's Motion to Compel past the discovery deadline.

**\*4** Mr. Malakoff should have filed the Motion to Compel sufficiently in advance of the discovery deadline to have permitted the Court to hear the motion and allow Defendant to produce any compelled discovery ahead of the deadline. Citro-Rey, 2009 WL 1227821, at *2. Such was not feasible here, however, given Mr. Malakoff's dilatory conduct. After Judge Kazen extended the discovery period, Mr. Malakoff, again without explanation, waited almost three weeks before propounding to Defense Counsel his written discovery requests. Under the Rules, Defense Counsel then had 30 days to file responses and objections thereto. This left Mr. Malakoff with only five days prior to the close of discovery for reviewing Defense Counsel's responses and objections and for filing a timely motion to compel. However, in delaying at the front-end of the extended discovery period, Mr. Malakoff engineered this unenviable situation for himself. Thus, even if Mr. Malakoff did not know of the asserted discovery problems for very long (at most two weeks), this factor does not weigh in favor of considering Plaintiff's untimely motion. Mr. Malakoff should have been well aware that time was of the essence, especially given Judge Kazen's unequivocal mandate that no further extensions would be granted for any reason.

This case is over a year old. A deadline for the filing of dispositive motions has been set, Defendant has filed such a motion on schedule (see Dkt. No. 27), and the Court's deadlines have already been disrupted by Plaintiff's Motion

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

to Compel. Mr. Malakoff's dilatory conduct is unacceptable, and consideration of the motion would be unjustified.

## II. Request to Reopen Discovery

A. Lack of "Good Cause" for Purposes of Rule 16(b)
Given Mr. Malakoff's dilatory conduct, the Court accordingly holds that there is no "good cause" for purposes of Rule 16 to modify the Scheduling Order and reopen discovery. See FED.R.CIV.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably have been met despite the diligence of the party needing the extension. S&W Enters., L.L.C. v. SouthTrust Bank of Ala. NA, 315 F.3d 533, 535 (5th Cir. 2003).

As discussed above, Mr. Malakoff did not exercise diligence in waiting as long as he did before serving written discovery upon Defendant during the extended discovery period. And this led to his tardiness in attempting to compel Defendant's production of responsive answers and documents. Similarly, Mr. Malakoff was not diligent in setting up and noticing the depositions of Mr. Garza and Ms. Garcia. He waited until more than three weeks into the extended discovery period to even inform Defense Counsel of his intent to take any depositions, before he resorted to unilaterally noticing the depositions only five days in advance of the discovery deadline. Federal Rule of Civil Procedure 30(b)(1) requires reasonable written notice to every other party that any oral depositions are to be taken. The Court notes that the day the notices were sent, July 1st, fell on a Wednesday, and Friday, July 3rd, was a federal holiday in observance of the Fourth of July. A notice served only five days in advance, unilaterally setting a deposition for the final day of a previously extended discovery period, is unreasonable and untimely. See Al-Kidd v. Gonzales, 2008 WL 2788418, at *5 (D. Idaho July 17, 2008). Let alone where, as here, such notice would effectively leave opposing counsel with only one full business day to prepare for two depositions. See Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC, 2008 WL 449972, at *2 (E.D. La. Feb. 14, 2008).

Thus, if diligence is the sole pertinent factor to the good cause analysis, Plaintiff has failed to make the required showing. However, in considering whether to reopen discovery, some district courts also balance the following four factors to determine whether good cause exists: (1) the explanation

for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice. Hernandez v. Mario's Auto Sales, Inc., 617 F.Supp.2d 488, 493 (S.D. Tex. 2009) (memorandum and order by J. Scott Hacker, Magistrate Judge) (collecting cases); STMicroelectronics, Inc. v. Motorola, Inc., 307 F.Supp.2d 845, 850 (E.D. Tex. 2004) (citing S&W Enters., 315 F.3d at 535-36); Rollins v. St. Jude Medical, 2009 WL 2601376, at *3 (W.D. La. Aug. 24, 2009) (citing Hernandez, 617 F.Supp.2d at 493). Even in applying this four-factor test, Plaintiff has failed to meet the good cause standard to reopen discovery. An in-depth analysis of the relevant factors appears below.

## 1. No Explanation for Dilatory Conduct

**\*5** Mr. Malakoff makes little in the way of an explanation for his failure to meet the extended discovery deadline. Nowhere in the record does he cite any reason for his delay in serving written discovery during the extended discovery period. The Court notes that Mr. Malakoff was Plaintiff's counsel throughout the EEOC proceedings below. (See Dkt. No. 25, Ex. A; see also Dkt. No. 20 at ¶ II.) This means that Mr. Malakoff would not have had to spend much time actually becoming acquainted with the facts and issues pertinent to this case. Accordingly, he would not have had to spend much time thinking about and tailoring Plaintiff's discovery requests. Without any explanation as to why he waited so long to serve discovery, the Court is then left with the impression that Mr. Malakoff merely sat on his hands.

With regard to the depositions, Mr. Malakoff "recalls indicating [to Defense Counsel] that, if an agreement could be reached and depositions taken without the necessity of this court's intervention, [he] would be amenable to doing so anytime prior to the rescheduled [contested] motion deadline of August 3, 2009." (Dkt. No. 28 at ¶ 33; see id. at ¶¶ 31-41.) However, according to Mr. Malakoff, if he "made any mistake, it was that of believing in the integrity of the U.S. Attorney's office and its counsel assigned to this case." (Id. at ¶ 30.) For ultimately, Defense Counsel did not agree to take the above-referenced depositions past the discovery deadline. (Id. at ¶ 29.) Regardless, such is unavailing in terms of a would-be excuse for waiting as long as Mr. Malakoff did to express the intent to take the depositions and for noticing them. Mere stipulations between parties do not provide a basis

Appendix of Authorities: 62 of 89

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

for the modification of a scheduling order. Rivera v. County of Willacy, 2007 WL 1655303, *1 (S.D. Tex. June 6, 2007) (citing Chiropractic Alliance of N.J. v. Parisi, 164 F.R.D. 618, 621 (D.N.J. 1996); see Olgyay v. Society for Environmental Graphic Design, Inc., 169 F.R.D. 219, 219 (D.D.C. 1996) ("Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order.") Mr. Malakoff simply should not have relied on the faulty notion that he and Defense Counsel could have stipulated to taking any out-of-time depositions.

Furthermore, based on emails entered into the record, it would seem that the parties were attempting to negotiate a settlement of this matter during the extended discovery period, possibly starting in late May and continuing through early June. (See Dkt. No. 24, Ex. 3 at pg. 2.) This may also account for why Mr. Malakoff waited to discuss the taking of depositions, as settlement would obviate the need for further discovery. Nonetheless, such an excuse is likewise unavailing. "[T]he mere possibility of settlement does not meet the standard of good cause for amending the Court's scheduling order." Rivera, 2007 WL 1655303, at *1.

## 2. No Prejudice to Plaintiff

Regardless, Plaintiff will suffer little, if any, prejudice through the Court's refusal to modify the Scheduling Order by reopening discovery. It seems that Plaintiff already has much of the discovery information and materials needed to respond to Defendant's summary judgment motion. Furthermore, the additional discovery sought by Plaintiff either is non-relevant or would be of marginal importance for purposes of summary judgment.

As part of his first Title VII [7] claim, Plaintiff alleges that in May of 2006, Mr. Garza selected (or participated in selecting) Ms. Garcia over Plaintiff for the position of Supervisory Seized Property Specialist (the "Position") at CBP's Port of Laredo Fines and Penalties and Forfeitures Office, and that Ms. Garcia's selection was unlawfully and discriminatorily motivated by considerations of gender. [8] For his second Title VII claim, Plaintiff alleges that his non-selection for the Position was in retaliation for his prior lodging of an EEOC gender discrimination complaint against CBP's predecessor agency in 2002. [9] Through the Motion for

Summary Judgment, however, Defendant asserts a legitimate reason for the employment decision at issue: essentially that Ms. Garcia was better qualified for the Position than was Plaintiff. (Dkt. No. 27 at pgs. 6-8.) In support of the summary judgment motion is an affidavit by Mr. Garza. (Dkt. No. 27, Ex. C.) Therein, Mr. Garza declares that he recommended Ms. Garcia for the Position because she was "the best qualified applicant," having "a higher level of knowledge and experience within the Seized Property Program than that of the other applicants." (Id. at pgs. 2-3.) Mr. Garza further declares that his recommendation was not based on any discriminatory or retaliatory reason. (Id. at pg. 3.)

**\*6** A plaintiff may attempt to establish a Title VII claim through the use of either direct evidence or circumstantial evidence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (discrimination); Fabela v. Socorro I.S.D., 329 F.3d 409, 415 (5th Cir. 2003) (retaliation). Direct evidence "includes any statement or written document showing a discriminatory motive on its face." Fierros v. Tex. Dep't of Health, 274 F.3d 187, 195 (5th Cir. 2001) (quoting Portis v. First Nat'l Bank, 34 F.3d 325, 329 (5th Cir. 1994). If believed by the trier of fact, direct evidence proves discriminatory animus without inference or presumption. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002).

If Plaintiff is to establish either Title VII claim, it will not be through direct evidence. Indeed, Title VII claims supported by direct evidence are rare. See Portis, 34 F.3d at 328 (discrimination); see also Fabela, 329 F.3d at 415 (retaliation). Here, it is apparent from both parties' filings that no direct evidence of discrimination or retaliation was adduced during the EEOC proceedings below. Furthermore, it appears that in attempting to prove Plaintiff's claims, Mr. Malakoff himself has honed the discovery process towards uncovering circumstantial evidence of pretext, rather than direct evidence. (See generally Dkt. No. 28.)

Under the *McDonnell Douglas* [10] burden-shifting framework, which is applicable to Title VII claims supported solely by circumstantial evidence, Plaintiff would then have the burden of producing sufficient evidence to create a genuine dispute over Defendant's stated reason for selecting Ms. Garcia to fill the Position. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). To create

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

such a genuine dispute, Plaintiff would have to present sufficient evidence showing that Defendant's reason for the employment decision at issue is not true, but instead pretext for discrimination. [11] See Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007).

One way Mr. Malakoff would attempt to show pretext is by comparing Plaintiff's qualifications to those of Ms. Garcia. (See, e.g., Dkt. No. 28 at ¶¶ 46, 49a, 49f, 62d, 75.) To succeed, Plaintiff would have to provide evidence that he was "clearly better qualified" for the Position. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001). However, Plaintiff claims that Defendant is still "in possession and control of documents and knowledge probative of the disparity in credentials," and he seeks to depose Mr. Garza, and Ms. Garcia on this particular issue. (Dkt. No. 28 at ¶ 75.)

However, Mr. Malakoff should already have all that is needed to make a comparative qualifications analysis. Of course, Plaintiff should be familiar with his own qualifications. [12] And there is no reason for the Court to doubt that the resume Plaintiff submitted to CBP as part of the application process for the Position was made part of the EEO Report of Investigation during the proceedings below. [13] (See Dkt. No. 24, Ex. 2 at pg. 7.) In addition, as part of the summary judgment motion, Defendant has attached Ms. Garcia's resume, which appears to be the same one submitted to CBP as part of her own application for the Position. [14] (Dkt. No. 27, Ex. B.) In terms of qualifications, Plaintiff takes particular issue with Ms. Garcia's alleged lack of certification as a Headquarters Contracting Officers' Technical Representative ("COTR certification") (Dkt. No. 1 at ¶¶ 33-40, 47; Dkt. No. 28 at ¶¶ 46, 62d), which Plaintiff further alleges was a requirement for the Position (Dkt. No. 28 at ¶¶ 46-47). [15] But again, there is little doubt that the EEO Investigative Report includes the job posting [16] for the Position. And surely, the job posting would state in plain terms whether actual COTR certification was indeed a requirement for applicants. What additional information Mr. Malakoff needs to compare Plaintiff's qualifications with those of Ms. Garcia is unclear. Also unclear is exactly what information probative of the disparity in credentials could possibly be in Defendant's possession and control. Mr. Malakoff has failed to explain as much with any degree of particularity.

**\*7** Plaintiff would also attempt to show pretext through the posting, withdrawal, and re-posting of the Position's vacancy announcement. In the complaint, Plaintiff claims that on or about August 17, 2005, CBP posted a vacancy for the Position. (Dkt. No. 1 at ¶ 27.) According to Plaintiff, at the time, Ms. Garcia lacked the requisite qualifications because she was not a uniformed CBP employee. (Id. at ¶ 29.) Supposedly, two days after the vacancy for the Position was posted, it was closed without being filled. (Id. at ¶ 30.) A vacancy for the Position was then re-posted on February 23, 2006, more than six months later. (Id. at ¶ 31.) This time around, it is apparent that uniformed service with CBP was not a job qualification requirement. Ms. Garcia was ultimately selected for the Position. Thus, "Plaintiff asserts, in support of his claim of gender discrimination [and retaliation] that the [Position] was announced previously, and withdrawn several days later when Port Director Garza discovered that [Ms.] Garcia, the female selectee in may [sic] of 2006 lacked the credentials for making application for the prior posting." (Dkt. No. 28 at ¶ 49f.)

Plaintiff has geared several interrogatories and requests for production towards discovering evidence pertinent to the posting, withdrawal, and re-posting of the Position. [17] (See, e.g., Dkt. No. 24, Ex. 1 at pg. 4-5, Ex. 2 at pg. 11). And he presumably seeks to depose Mr. Garza as to the same. But in terms of showing pretext, the evidentiary significance of the circumstance alluded to above is minimal, at best, given the sheer lapse of time between the original posting of the Position vacancy and then its re-posting. Furthermore, even if Plaintiff could adduce evidence, as he seeks to do, that Mr. Garza tailored the requirements for the Position such that Ms. Garcia *in particular* could qualify as an applicant (see Dkt. No. 28 at ¶ 49f), such would not constitute evidence of pretext absent nexus to gender. See Odom v. Frank, 3 F.3d 839, 849-50 (5th Cir. 1993) ("Much of the evidence in this case ... gives us the impression that the decisionmakers were merely 'going through the motions' of the required [hiring] procedure while in fact ensuring that [the selectee's ultimate supervisor] would get the person he wanted to fill the new position. But even if that impression is correct, it does not amount to [unlawful] discrimination.").

As a further apparent attempt to prove pretext, Mr. Malakoff has tailored more than a few discovery requests towards obtaining a broad swath of discovery related to other CBP positions for which Plaintiff applied but were otherwise filled by females. [18] (See Dkt. No. 24, Ex. 1 at pgs. 8-10, 12-13,

Appendix of Authorities: 64 of 89

Ex. 2 at pgs. 4-5, 8-9, 13-15.) Having closely reviewed these requests, the Court has determined most of them to be overbroad or non-relevant. Assuming the Court was to reopen discovery, requests similar to these would not be allowed. It seems Mr. Malakoff would manipulate the discovery process as means to conduct a series of mini-Title VII trials. And such would be inappropriate.

**\*8** Plaintiff would also seek to show pretext through historical and statistical evidence. (See Dkt. No. 28 at ¶ 49g.) In the complaint, he alleges that "[f]or the past several years most, if not all of the supervisory positions within [CBP's] [Fines, Penalties, and Forfeitures Office] in the Port of Laredo are and were held by females selected [or recommended] by [Mr.] Garza ...." (Dkt. No. 1 at ¶ 41.) Mr. Malakoff has requested, for the years 2001 to present, "all documents constituting or memorializing the organizational chart of the Fines, Penalties and Forefeitures [sic] Division or Office of the Port of Laredo which specifies the name, sex, age, title, pay grade and step of each person occupying each position set forth on the chart." (Dkt. No. 24, Ex. 2 at pg. 8.) But even if Plaintiff were to introduce anecdotal evidence or statistics indicating that men than men have been promoted to CBP managerial or supervisory positions, such would not, of itself, demonstrate pretext. See ⚑ Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003) (citing ⚑ Sessions v. Rusk State Hosp., 648 F.2d 1066, 1071 (5th Cir. 1981) ). While this kind of statistical evidence would buttress Plaintiff's prima facie case (which Defendant has already conceded for purposes of the discrimination claim), it would not demonstrate that the reason advanced for Plaintiff's non-selection (Ms. Garcia's superior qualifications) lacked either substance or credibility. See ⚑ Sessions, 648 F.2d at 1071.

In attempting to show that CBP had a policy of not hiring or promoting men to supervisory positions, Plaintiff, when presenting any purported statistical evidence, would have to compare a significant sample size of persons hired to CBP supervisory positions, during a relevant period of time, to the pool of qualified applicants. See 🚩 Scott v. Univ. of Miss., 148 F.3d 493, 510 (5th Cir. 1998) (citing ⚑ Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1286-87 (5th Cir. 1994) ("Where plaintiffs use statistical evidence to challenge an employer's hiring practices, that evidence, to be probative of discriminatory intent, must compare the relevant portion of the employer's work force with the qualified population in the

relevant labor market.") ); see also Robinson v. City of Dallas, 514 F.2d 1271, 1273 (5th Cir. 1975). But this would require the aid of experts to collect and analyze any raw statistical data and explain the significance of the results to the Court through reports. See generally ⚑ Anderson, 26 F.3d 1277. Yet here, there is no indication that Plaintiff has designated any experts, and the deadline to do so has lapsed. (See Dkt. No. 23.)

With particular respect to his allegation of retaliation, Plaintiff seeks to adduce additional evidence, such as the 2002 EEO Report of Investigation, to test Mr. Garza's credibility insofar as he claims to have no memory of Plaintiff's 2002 EEOC charge. (Dkt. No. 28 at ¶ 49c; see also Dkt. No. 24, Ex. 1. at pg. 11.) However, in response to Plaintiff's discovery requests, Defendant refers Plaintiff to this same report, claiming it was previously provided to Plaintiff by CBP's predecessor agency. (Dkt. No. 24, Ex. 2 at pg. 4.)

Furthermore, the evidentiary value of Mr. Garza's credibility regarding his claimed lack of memory of Plaintiff's prior EEOC charge is questionable. Here, Defendant has moved for summary judgment on the basis that Plaintiff cannot establish a prima facie showing of retaliation. To establish a prima facie case of retaliation as part of the first step of the *McDonnell Douglas* framework, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. ⚑ Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992). "Temporal proximity of the employer's knowledge of the protected activity and the adverse employment action is sufficient to establish the causal link for the purposes of the prima facie case." Vela v. Chertoff, 2008 WL 724648, at \*3 (S.D. Tex. March 17, 2008) (Memorandum and Order by George P. Kazen, ⚑ District Judge) (citing Clark County Sch. Dist. V. Breeden, 532 U.S. 268 (2001) ). However, the Fifth Circuit has held that evidence of temporal proximity alone cannot sustain an inference of causation when there is as little as a four-month gap between the protected activity and the alleged adverse employment action. ⚑ Ajao v. Bed Bath and Beyond, Inc., 265 Fed.Appx. 258, 265 (5th Cir. 2008) (unpublished) (four months); see also ⚑ Russell v. Univ. of Tex. of Permian Basin, 234 Fed.Appx. 195, 206-07 (5th Cir. 2007) (unpublished) (six months). Defendant argues that Plaintiff cannot meet the "causation" prong, given that the prior protected activity occurred around four years before the

*Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)*

adverse employment action at issue here. [19] (*See* Dkt. No. 27 at pgs. 5-6.) Thus, at least for purposes of summary judgment, Defendant has not specifically raised the argument that Mr. Garza forgot (or had no knowledge) about the prior EEOC activity. Evidence of Mr. Garza's credibility on this point would be useless in terms of making a prima facie showing of retaliation to survive summary judgment.

**\*9** To reiterate, Plaintiff will suffer little, if any, prejudice through the Court's decision to maintain the integrity of the Scheduling Order. [20] As the record stands, Plaintiff will be able to respond to Defendant's Motion for Summary Judgment. In light thereof, if the Court was to reopen discovery, Defendant would be prejudiced by incurring further needless litigation expenses preparing for depositions and the like. If it is the case that Plaintiff has indeed lost the opportunity to access evidence of pretext for purposes of surviving summary judgment, this is the consequence of his counsel's dilatory conduct.

As such, the Court holds that there is no good cause to reopen discovery. Notwithstanding the four-factor test analyzed above, "the court still has the 'inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion.' " Hernandez v. Mario's Auto Sales, Inc., 617 F.Supp.2d 488, 493 (S.D. Tex. 2009) (quoting U.S. v. Waldman, 579 F.2d 649, 653 (1st Cir. 1978) ). To achieve this end, the Court will hereby exercise its broad discretion over the instant pretrial discovery matter and preserve the integrity of the Scheduling Order. See id.

B. Invocation of Rule 56(f) Unavailing

Plaintiff cites Rule 56(f) of the Federal Rules of Civil Procedure as authority for allowing him additional discovery in response to Defendant's pending summary judgment motion. [21] For such relief to be justified, the movant must show: (1) why additional discovery is needed, and (2) how that additional discovery will create a genuine issue of material fact. Beattie v. Madison County Sch. Dist., 254 F.3d 595, 606 (5th Cir. 2001). The movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993).

However, a party cannot perform an end-run around the requirements of Rule 16(b) simply by invoking Rule 56(f). See Culwell v. City of Fort Worth, 468 F.3d 868, 872

(5th Cir. 2006) ("Unlike rule 56(f), rule 16(b) requires a showing of good cause to modify a scheduling order."); see also Forge v. City of Dallas, 2004 WL 1243151, at \*2-3 (N.D. Tex. June 4, 2004) ("In addition to establishing her entitlement to Rule 56(f) relief, plaintiff must demonstrate 'good cause' for modifying the scheduling order to permit additional discovery ...."); McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("Applications to extend the discovery deadline must be made prior to expiration of the deadline .... Rule 56(f) is not intended to circumvent discovery orders."); 4B Charles Alan Wright et al., Federal Practice and Procedure § 1166 (3d ed. 2004) ("A district court may order a continuance of a motion for summary judgment for additional discovery pursuant to Rule 56(f), but only if the court-ordered discovery deadline has not already passed.").

Moreover, even considering Plaintiff's request to reopen discovery under the Rule 56(f) standard itself would be unavailing, again, given Mr. Malakoff's lack of diligence. A movant who has not diligently pursued discovery will not be entitled to relief under Rule 56(f). [22] Beattie, 254 F.3d at 606; see Forge, 2004 WL 1243151, at \*2. "While Rule 56(f) motions are generally favored and liberally granted, the court 'need not aid [Rule 56(f) movants] who have occasioned their own predicament through sloth.' " Caswell v. Federal Express Corp., 2002 WL 31927116, at \*5 (N.D. Tex. Dec. 31, 2002) (quoting Witchita Falls Office Assocs. V. Banc One Corp., 978 F.2d 915, 919 (5th Cir. 1992) ). Regardless, Judge Kazen's previous order extending the discovery deadline was exceedingly clear that no further extensions would be granted.

Conclusion

**\*10** As such, Plaintiff's Motion to Compel (Dkt. No. 24) is hereby DENIED in its entirety. Plaintiff's request to reopen discovery is also hereby DENIED.

At this time, the Court will withhold re-setting any of the deadlines in this case, including Plaintiff's deadline to file a response to Defendant's pending Motion for Summary Judgment, which was previously stayed (Dkt. No. 29). The undersigned fully expects Mr. Malakoff to file objections to this Order before District Judge Kazen. So that they may be considered timely, any objections to this Order must be made within fourteen (14) days. See FED.R.CIV.P. 72(a).

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

In addition, the Clerk of Court is hereby DIRECTED to terminate the pending Motion for Summary Judgment (Docket No. 27). The Court will issue a briefing schedule with regard to the issue of summary judgment once the anticipated objections to this Order are resolved.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11671745

---

## Footnotes

1    Having been rendered MOOT by this Order, the parties' respective Motions to Strike (Dkt. Nos. 30, 31) are also hereby DENIED.

2    It is unclear whether Mr. Malakoff is still associated with this firm.

3    Defendant has not sought sanctions for this conduct.

4    The Court stayed the deadline for Plaintiff to respond to Defendant's Motion for Summary Judgment, pending a ruling on Plaintiff's Motion to Compel. (Dkt. No. 29.)

5    Mr. Malakoff's doctor-ordered respite can account, at most, for only one of those five months (the month of February), leaving at least two full additional months for discovery.

6    It is unclear exactly how much discovery Mr. Malakoff had previously conducted on Plaintiff's behalf during the EEOC administrative proceedings below. According to Mr. Malakoff himself, he "had prepared during the EEOC proceedings herein Interrogatories, Request [sic] for Production, and Request [sic] for Admission that were not allowed to be served upon [CBP] by Administrative Judge Katye Dudenstadt because she calculated the [sic] Counsel had served these two days out of time." (Dkt. No. 20 at ¶ II.)

7    See 42 U.S.C. § 2000e, *et seq.*

8    See 42 U.S.C. § 2000e-2(a)(1).

9    See 42 U.S.C. § 2000e-3(a).

10    McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

11    Based on Mr. Malakoff's arguments before the Court, it does not appear that he intends to raise the mixed-motive alternative in attempting to create a genuine issue of fact, see Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007), but rather pretext. (See generally Dkt. No. 28.)

12    Indeed, the complaint lays out his qualifications in great detail. (Dkt. No. 1 at ¶¶ 6-21.)

13    Mr. Malakoff admits to having reviewed this report for purposes of preparing his discovery requests. (See Dkt. No. 28 at ¶ 48; see also Dkt. No. 20 at ¶ VI.) And Defendant has referred him to this report in responding to several interrogatories and requests for production. (See, e.g., Dkt. No. 24, Ex. 1 at pg. 4, Ex. 2 at pg. 4.)

14    It seems Ms. Garcia's application (including her resume) was included in the EEO Report of Investigation as well (see Dkt. No. 24, Ex. 1 at pg. 2), along with those of all the other applicants for the Position (see id., Ex. 2 at pg. 7).

15    It seems CBP utilizes private contractors to store and dispose of contraband seized by CBP and other federal entities. (Dkt. No. 1 at ¶ 35.) According to Mr. Malakoff, the COTR certification authorizes the holder to inspect these private contractors' facilities and ensure that they are in compliance with CBP's contractual standards. (Dkt. No. 28 at ¶ 47.)

16    This was under job announcement number MHC-106629-TJE. (Dkt. No. 28, Ex. 3 at pgs. 5-6; Dkt. No. 27, Ex. B at pg. 1.)

17    It is unclear whether the February 2005 vacancy posting for the Position would be in the EEO Investigative Report.

18    For example, Plaintiff's Request for Production No. 16 reads as follows:

Produce all documents which memorialize, mention, pertain, refer to or allude to:

(A) The selection of Elida Soliz as a paralegal within the Fines, Penalties and Forefeitures [sic] Office of the Port of Laredo as well as the non-selection of Plaintiff for that position vacancy;

(B) The selection of Leticia Martinez for a paralegal position vacancy within the Fines, Penalties and Forefeitures [sic] Office of the Port of Laredo as well as Plaintiff's non-selection for that Position;

(C) The selection of Isabel Aranda for the position of Supervisory Seized Property Specialist within the Fines, Penalties and Forefeitures [sic] Office of the Port of Laredo and the Plaintiff's corresponding non-selection for that position;

(D) The selection of Antonia "Toni" Hernandez for the position vacancy of Seized Property Specialist in the Fines, Penalties and Forefeitures [sic] Office of the U.S. Customs and Border Protection in Del Rio, Texas and the corresponding non-selection of the Plaintiff for that job vacancy or position;

(E) The selection of Maria Laura Garcia as the Supervisory Seized Property Specialist within the Fines, Penalties and Forfeitures Office of the Port of Laredo in the year 2006 and the Plaintiff's non-selection for that position; [sic]

(Dkt. No. 24, Ex. 2 at pgs. 13-14.)

19    Plaintiff does not allege in the record that Mr. Garza complained to him about the 2002 EEOC charge at any point in time near to when Ms. Garcia was selected to the Position. See 🔖 Russell, 234 Fed.Appx. at 206-07.

20    In terms of the Rule 16(b) good cause analysis, this lack of prejudice renders unimportant the proposed amendment to the Scheduling Order. Furthermore, without prejudice, there is no need for a continuance.

21    This Rule provides: "If a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED.R.CIV.P. 56(f).

22    Whether a party has been "dilatory" for purposes of Rule 56(f), and thus not entitled to additional discovery, depends in part on the following factors: "(1) the length of the pendency of the case prior to the Rule 56(f) request; (2) whether and when plaintiff could have anticipated its need for the requested discovery; (3) the

previous efforts, if any, made by plaintiff to obtain the needed information either through Rule discovery or otherwise; (4) the degree and nature of discovery already undertaken; (5) any limitations placed upon discovery previously by the trial court; (6) any prior solicitations of or provisions for discovery by the trial court; (7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim dismissed; and (8) whether the requested information was inaccessible to plaintiff, e.g. as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone." Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1031 (5th Cir. 1983). The relevant factors have already been discussed above and weigh against Plaintiff. Because he was not diligent, the court notes that it need not address whether Plaintiff has shown why additional discovery is needed to create a genuine issue of material fact. See Beattie, 254 F.3d at 606.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021-1 Trade Cases P 81,651

2021 WL 2492858
United States District Court,
E.D. Texas, Texarkana Division.

TRAVELPASS GROUP, LLC, Partner
Fusion, Inc. and Reservation Counter, LLC
v.

CAESARS ENTERTAINMENT CORPORATION, et al.

Case No. 5:18-cv-153-RWS-CMC,
Case No. 5:21-mc-1-RWS-CMC
|
Signed 05/04/2021

### Attorneys and Law Firms

Christopher W. Patton, Jared Daniel Eisenberg, Samuel Butler Hardy, IV, Christopher John Schwegmann, Cory Courtney Johnson, Lynn Pinker Cox & Hurst, LLP, Rebecca Lynn Adams, Lynn Pinker Hurst & Schwegmann, LLP, Ruben Alan Garcia, Dallas, TX, Jason H. Kim, Todd Schneider, Schneider Wallace Cottrell Konecky Wotkyns LLP, Emeryville, CA, Paul Joseph Stancil, Paul Stancil, Attorney, Orem, UT, for TravelPass Group LLC.

Christopher W. Patton, Jared Daniel Eisenberg, Samuel Butler Hardy, IV, Ruben Alan Garcia, Christopher John Schwegmann, Lynn Pinker Cox & Hurst, LLP, Rebecca Lynn Adams, Lynn Pinker Hurst & Schwegmann, LLP, Dallas, TX, Jason H. Kim, Todd Schneider, Schneider Wallace Cottrell Konecky Wotkyns LLP, Emeryville, CA, Paul Joseph Stancil, Paul Stancil, Attorney, Orem, UT, for Partner Fusion Inc., Reservation Counter LLC.

Maria Wyckoff Boyce, Hogan Lovells US LLP, Houston, TX, Anna Kurian Shaw, Brendan C. Quinn, Justin W. Bernick, Lauren Beth Cury, Hogan Lovells US LLP, Washington, DC, Jennifer Haltom Doan, Haltom & Doan, Texarkana, TX, Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX, Michael E. Jones, Potter Minton, a Professional Corporation, Tyler, TX, for Choice Hotels International Inc.

Diane Siegel Danoff, Thomas J. Miller, Dechert LLP, Philadelphia, PA, Britton Dale Davis, Jeffrey L. Poston, Luke Van Houwelingen, Crowell & Moring LLP, Shari Ross Lahlou, Pro Hac Vice, Dechert LLP, Washington, DC, Jennifer Insley-Pruitt, Dechert LLP, New York, NY, Jordan Lee Ludwig, Crowell & Moring LLP, Los Angeles, CA, Lance Lee, Attorney at Law, Cole Alan Riddell,

Jennifer Haltom Doan, Joshua Reed Thane, Haltom & Doan, Texarkana, TX, Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX, for Marriott International Inc.

Alexander G. Gray, Danielle Chattin, Emily Shoemaker Newton, Jeffrey S. Cashdan, Logan Robert Hobson, Lohr A. Beck-Kemp, Melanie C. Papadopoulos, Russell Edward Blythe, King & Spalding LLP, Atlanta, GA, Deron R. Dacus, Shannon Marie Dacus, The Dacus Firm, PC, Tyler, TX, Jennifer Haltom Doan, Haltom & Doan, Lance Lee, Attorney at Law, Texarkana, TX, Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX, Steven Mark Zager, King & Spalding LLP, Austin, TX, for Six Continents Hotels Inc.

### ORDER

CAROLINE M. CRAVEN, UNITED STATES MAGISTRATE JUDGE

**\*1** The above-referenced causes of action were referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 📑 28 U.S.C. § 636. The following motions are before the Court:

**Plaintiffs' Motion for Protective Order (Cause No. 5:18cv153, Docket Entry # 448); and**

**Marriott International, Inc., Choice Hotels International, Inc., and Six Continents Hotels, Inc.'s Motion to Compel Booking Holdings, Inc.'s Production of Documents (Cause No. 5:21mc1, Docket Entry # 1).**

The Court, having carefully considered the relevant briefing, is of the opinion Plaintiffs' motion for protective order should be **GRANTED** and Moving Defendants' motion to compel should be **DENIED**. [1]

### I. BACKGROUND

Plaintiff TravelPass Group, LLC and its predecessor or related entities, Reservation Counter, LLC, and Partner Fusion, Inc., (collectively, "TravelPass") are downstream online travel agencies that sell hotel rooms from different chains to consumers in the United States. Cause No. 5:18cv153, Docket Entry # 1, ¶ 45. TravelPass originally filed this antitrust case against the following hotel chains: (1) Caesars Entertainment Corporation; (2) Choice Hotels International, Inc.; (3) Hilton Domestic Operating Company, Inc.; (4) Hyatt Corporation;

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,661

(5) Marriott International, Inc.; (6) Red Roof Inns, Inc.; (7) Six Continents Hotels, Inc.; and (8) Wyndham Hotel Group, LLC (collectively, "Hotel Defendants"). TravelPass alleges these hotel chains and others conspired to eliminate interbrand competition on keyword searches. *Id.*, ¶ 1.

The fact discovery deadline (to complete non-party discovery and depositions of identified and agreed-upon party witnesses) was December 30, 2020. Cause No. 5:18cv153, Docket Entry # 382. The expert discovery deadline is May 4, 2021. *Id.*, Docket Entry # 457. The pretrial conference is set for October 5, 2021, with jury selection and trial scheduled October 25, 2021. *Id.*

## II. THE MOTIONS

On February 5, 2021, Defendants Marriott International, Inc., Choice Hotels International, Inc., and Six Continents Hotels, Inc. (collectively, "Moving Defendants")[2] filed, in federal court in Connecticut, a motion to compel directed at non-party Booking Holdings Inc. ("BHI").[3] *See* Cause No. 5:21mc1, Docket Entry # 1. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Moving Defendants request an order compelling BHI to comply with Hotel Defendants' Rule 45 subpoena to produce documents in the underlying action captioned *TravelPass Group, LLC, et al. v. Caesars Entertainment Corp., et al.*, 5:18-cv-00153-RWS-CMC (the "Underlying Litigation").

On February 17, 2021, Moving Defendants filed an emergency motion to transfer their Motion to Compel Booking Holdings, Inc.'s Production of Documents to the Eastern District of Texas, the Court where the Underlying Litigation (Cause No. 5:18cv153) is pending and from which the subpoena in dispute was issued. On March 8, 2021, the court in Connecticut granted Moving Defendants' motion to transfer, finding exceptional circumstances support transfer and BHI had not established it would suffer an undue burden were the motion to be granted.[4] The transferred miscellaneous case, consisting only of the Moving Defendants' motion to compel, was opened in the Eastern District of Texas, Texarkana Division, as miscellaneous Cause No. 5:21-mc-00001-RWS-CMC.

**\*2** Meanwhile, on March 5, 2021, TravelPass filed in the Underlying Litigation a motion for protective order pursuant to Federal Rule of Civil Procedure 26(c), to excuse non-

party BHI from compliance with Moving Defendants' Rule 45 subpoena. *See* Cause No. 5:18cv153, Docket Entry # 448. The Court provides the following timeline of events (and related assertions) as set forth in the briefing related to both motions.

## III. TIMELINE

On February 18, 2020, Red Roof Inns, Inc. ("Red Roof") issued a subpoena (the "Subpoena") to non-party BHI, seeking discovery in the Underlying Litigation. The Subpoena seeks twenty-one categories of documents related to, among other things, BHI's relationship and communications with and about TravelPass and the Hotel Defendants.[5] *See* Cause No. 5:21mc1, Docket Entry #1-5. The Subpoena defines BHI to include all of its subsidiaries (which includes Priceline.com, LLC ("Priceline")). The Subpoena defines "Defendant" or "Defendants" to mean the eight Hotel Defendants in the Underlying Litigation (Caesars Entertainment Corporation, Choice Hotels International, Inc., Hilton Domestic Operating Company, Inc., Hyatt Hotels Corporation, Marriott International, Inc., Red Roof Inns, Inc., Six Continents Hotels, Inc., and Wyndham Hotel Group, LLC), and all of the requests asking for information about a Hotel Defendant ask for information regarding "any Defendant." *Id.* (Requests 6, 7, 9, 14, 20). None of the requests ask for any information specific to Red Roof. *See id.*

According to BHI, the Subpoena was issued to BHI solely by "Red Roof Inns, Inc." *See* Cause No. 5:21mc1, Docket Entry # 24 at p. 4 (noting the first sentence of the cover letter accompanying the Subpoena states "[o]ur firm represents Red Roof Inns, Inc. ('Red Roof') in the above-referenced lawsuit" and makes no mention of any other defendant in the Underlying Litigation). Moving Defendants assert Red Roof served the Subpoena on behalf of all the Hotel Defendants.

According to the Declaration of Jordan L. Ludwig ("Ludwig Decl."), attached in support of Moving Defendants' motion to compel, the Hotel Defendants agreed and intended that Red Roof would have primary responsibility for the BHI Subpoena, would serve the Subpoena on behalf of all of the Hotel Defendants, and would negotiate BHI's compliance with the Subpoena on behalf of the Hotel Defendants. Ludwig Decl., ¶ 4. Mr. Ludwig states drafts of the Subpoena were circulated among the Hotel Defendants, and several provided feedback. *Id.* According to Mr. Ludwig, after service of the Subpoena in mid-February 2020, Red Roof's counsel

Appendix of Authorities: 71 of 89

2021-1 Trade Cases P 81,651

(primarily Christopher Wood from Lewis Brisbois Bisgaard & Smith) began negotiating with BHI's counsel (primarily Ian Clarke-Fisher from Robinson & Cole), discussing, among other things, the initial assessment of burden and the BHI subsidiaries for which BHI would be willing to respond without requiring a separate subpoena. [6] *Id.*, ¶ 7. Throughout this process, Red Roof's counsel kept the other Hotel Defendants' counsel apprised of the negotiations and sought feedback and input about moving forward. *Id.*; *see also* attached Ex. 4 (email chain dated May 19, 2020, in which Red Roof's counsel forwarded information provided by BHI to counsel for certain other of the Hotel Defendants, including Mr. Ludwig).

**\*3** The discussions between Red Roof's counsel and BHI continued through July and August of 2020. *See* Cause No. 5:21mc1, Docket Entry # 1-7 (email chain from July 22, 2020 through October 16, 2020). On July 31, 2020, Mr. Wood emailed Mr. Clarke-Fisher, stating "[w]e very much need to keep moving toward production." *Id.* at p. 17. Regarding email ESI, Mr. Wood noted another week had passed and Red Roof had not received further information "on the loading, review, and production of Priceline email ESI." *Id.* Mr. Wood further noted that "[w]hile Red Rood appreciate[d] the dynamics of the current market, we are now approaching six months since service of the subpoena." *Id.* Mr. Wood pointed out that "Red Roof's willingness to date to coordinate on Priceline email and non-email ESI production [did] not constitute a waiver of any Red Roof right to move to compel production pursuant to Fed. R. Civ. P. 45(d)." *Id.*

By August 24, 2020, Mr. Wood and Mr. Clarke-Fisher had narrowed down the non-email ESI and email ESI. *Id.* at pp. 10-16. On September 8, 2020, Mr. Wood emailed Mr. Clarke-Fisher and asked about scheduling a phone call. *Id.* at p. 8. In that email, Mr. Wood stated as follows: "I'm adding another of the defense counsel in the case (Jordan Ludwig, representing Marriott) because I'd like him to join the discussion." *Id.*

BHI asserts Red Roof's counsel added Mr. Ludwig, Marriott's counsel, to the discussion in September of 2020, "on the premise that Mr. Ludwig had an expertise in ESI and the search parameters being discussed." Cause No. 5:21mc1, Docket Entry # 24 at p. 2. According to BHI, on September 30, 2020, Mr. Ludwig began communicating directly with BHI's counsel about the Subpoena. *See id.*, Docket Entry # 1-7.

According to Mr. Ludwig, upon learning that Red Roof had resolved its dispute with TravelPass, he became involved in the ongoing negotiations with BHI in early September 2020. Ludwig Decl., ¶ 8. Mr. Ludwig states Mr. Clarke-Fisher never objected to his involvement, and Mr. Wood began copying Mr. Ludwig on emails with Mr. Clarke-Fisher and his colleague. *Id.* (further stating he was also included on phone calls). By the end of September, Mr. Ludwig became the primary point of contact for the Hotel Defendants "and indicated as much to Mr. Clarke-Fisher." *Id.* On September 30, Mr. Ludwig emailed Mr. Clarke-Fisher to indicate he was providing "the position of a broader set of hotel defendants." *Id.*; *see also* attached Ex. 5 (email chain with the last-in-time date of October 16, 2020). In that email, Mr. Ludwig stated as follows:

> Chris [Wood] has asked me for the **position of a broader set of hotel defendants**, so to expedite matters I respond directly with the following:
>
> Unfortunately, we cannot accept a proposal that would limit the document universe in this manner.... Booking/Priceline is a critical third party and is an un-named co-conspirator in this litigation. In view of that fact, and the scope of the party and non-party document productions to date, we do not believe that a request to review 11,000 documents is unreasonable or overly burdensome.
>
> We have a discovery cutoff of November 30, and need to wrap up this process quickly. Accordingly, please let us know by Friday (October 2) whether Booking will review the 11,000 documents based on our last proposal. We very much hope to avoid any litigation over this subpoena, but as we have stated, we believe Booking is a key third party here.

Cause No. 5:21mc1, Docket Entry # 1-7 at p. 5 (emphasis added).

According to BHI, although the communications initially included Red Roof's counsel, by mid-October of 2020, Red Roof's counsel "appears to have disappeared from the discussions." *Id.*, Docket Entry # 24 at p. 2. BHI asserts at no time during these discussions did Mr. Ludwig (or Red Roof's counsel) ever state, or give any indication, that Red Roof was in the process of settling out of the Underlying Litigation. *Id.* at pp. 2-3.

**\*4** On October 12, 2020, unbeknownst to BHI, a "Joint Motion to Dismiss with Prejudice of Plaintiffs and Red Roof

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

Inns, Inc. and RRI Financial, Inc." was filed in the Underlying Litigation. Cause No. 5:18cv153, Docket Entry # 358. That same day, Mr. Ludwig emailed Mr. Clarke-Fisher asking for an update. Cause No. 5:21mc1, Docket Entry # 1-7 at p. 2.

On October 14, 2020, Red Roof was dismissed with prejudice from the Underlying Litigation. Cause No. 5:18cv153, Docket Entry # 360. Moving Defendants note the dismissal was publicly disclosed on the Court's docket. *Id.*, Docket Entry # 451 at p. 2 (citing Docket Entry # 360). According to TravelPass, Defendant Marriott, unbeknownst to TravelPass, took over negotiation of the Red Roof-issued Subpoena in October 2020. *Id.*, Docket Entry # 448 at p. 1.

As noted above, by the end of October, Mr. Ludwig was corresponding directly with Mr. Clarke-Fisher, without the involvement of Red Roof's counsel. Ludwig Decl., ¶ 9. After further meet-and-confer efforts, including telephone conferences that did not include Red Roof's counsel, on October 26, 2020, Mr. Ludwig emailed Mr. Clarke-Fisher to memorialize the Hotel Defendants' proposal. *Id.* Specifically, Mr. Ludwig stated "we will consider Booking's obligations under the subpoena complete upon production of responsive documents from the set of approximately 11,000 documents that resulted from our last search term proposal sent by Chris Wood on September 17, 2020. Please confirm that this is acceptable." Cause No. 5:21mc1, Docket Entry # 1-8 at p. 6.

On October 26, 2020, Hotel Defendants in the Underlying Litigation jointly petitioned the Court for a one-month extension of the fact discovery deadline (from November 30, 2020 to December 30, 2020), stating they were "still pursuing various discovery from several non-party entities...." Cause No. 5:18cv153, Docket Entry # 365 at p. 5. According to TravelPass, Defendants specifically referenced TravelPass's low-volume inventory suppliers that were the subject of former Defendant Hyatt's motion to compel, but failed to mention they were pursuing discovery initiated by any settled Defendants, like the BHI Subpoena.[7] On November 9, 2020, the Court granted and modified Hotel Defendants' requested amendment to the Docket Control Order, extending the fact discovery deadline to December 30, 2020. Cause No. 5:18cv153, Docket Entry # 380.

Unbeknownst to TravelPass, on November 2, 2020, Mr. Clarke-Fisher emailed Mr. Ludwig his agreement to the October 26, 2020 proposal. *See* Ludwig Decl.,¶ 9; *see also* attached Ex. 6 (email chain with the last-in-time date of January 25, 2021). Mr. Clarke-Fisher stated they

expected to produce the set of responsive documents by November 23 and that, once done, "this will satisfy Booking Holdings Inc. and Priceline.com, LLC's subpoena obligations **to Defendants**."[8] Cause No. 5:21mc1, Docket Entry # 1-8 at p. 6 (emphasis added).

**\*5** BHI failed to produce documents as agreed by November 23, 2020. According to Mr. Ludwig, on November 23, Mr. Clarke-Fisher e-mailed Mr. Ludwig to indicate that BHI's document review was ongoing and that BHI would make a production in a few weeks, likely the week of December 14. Ludwig Decl., ¶ 10. That date, too, passed with no production.[9]

On December 23, 2020, Mr. Ludwig e-mailed Mr. Clarke-Fisher to inquire about the status of BHI's production. Ludwig Decl., ¶ 11. Mr. Ludwig states Mr. Clarke-Fisher did not respond to that email. *Id.*

On December 30, 2020, fact discovery closed in the Underlying Litigation pursuant to the operative docket control order. Cause No. 5:18cv153, Docket Entry # 382. In his declaration, Mr. Ludwig further states as follows:

> When I did not hear back, I followed up with Mr. Clarke-Fisher again on January 5 and January 15. He similarly did not respond to those emails. Finally, on January 22, 2021, I e-mailed Mr. Clarke-Fisher to indicate that given all of the time that had elapsed, we would move to compel production if we did not have a production by January 27, 2021. Only then did Mr. Clarke-Fisher respond, indicating his position that the subpoena was no longer enforceable for the first time....

Ludwig Decl., ¶ 11. Specifically, the January 22, 2021 email stated as follows:

> It has now been nearly three months since we reached our agreement on the parameters of the document review

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

and production, which was preceded by several months of negotiations. You first told me that we could expect production by November 23, and then later extended that to the week of December 14. Since then, you have ignored three of my emails. Our time for waiting has expired, and we need these documents to proceed with our litigation. If we do not receive your production by **Wednesday, January 27**, we will seek relief from the Court.

Cause No. 5:21mc1, Docket Entry # 1-8 at p. 4 (emphasis original).

On January 25, 2021, Mr. Clarke-Fisher advised Mr. Ludwig that despite his failure to disclose the fact that Red Roof had been dismissed from the Underlying Litigation with prejudice, BHI had come to learn of Red Roof's dismissal and based on this fact it would not produce documents in the absence of a valid and enforceable subpoena from the Moving Defendants. Cause No. 5:21mc1, Docket Entry # 1-8 at p. 3. According to the BHI's understanding of the applicable rules, following the dismissal of Red Roof from the Underlying Litigation, "there is no pending subpoena against either BHI or Priceline that would obligate Priceline to produce documents to Marriott or otherwise respond to your request." *Id.* Mr. Clarke-Fisher further noted in the email that the last day of discovery in the Underlying Litigation was December 30, 2020; thus, "it would seem that the Court's scheduling order bars further productions from non-parties." *Id.*

 **\*6** According to Mr. Ludwig, after further e-mails on the topic in an attempt to resolve the issue, he had a telephonic meet and confer with Mr. Clarke-Fisher on February 2, 2020, to attempt to resolve the issues or reduce the area of controversy. Ludwig Decl., ¶ 12. Mr. Ludwig provided Mr. Clarke-Fisher with the arguments raised in the accompanying motion. They were unable to reach agreement on the issues raised in the motion. *Id.* Moving Defendants filed their motion to compel in Connecticut on February 5, 2021, seeking to compel BHI to produce documents. Cause No. 5:21mc1, Docket Entry # 1. According to Moving Defendants, the motion was necessitated by BHI's "breach of its agreement to comply with a non-party subpoena by stringing the Hotel Defendants along for months until the discovery

deadline passed and then claiming the subpoena is not enforceable because it was served by a now dismissed party." Memorandum of Law in Support of Motion to Compel at p. 1.

In its response, non-party BHI argues Moving Defendants "are moving to compel a moot subpoena past the discovery deadline, without standing to do so under the plain language of Rule 45 of the Federal Rules of Civil Procedure." Cause No. 5:21mc1, Docket Entry # 24 at p. 1. BHI states at no time did Red Roof explain the Subpoena was on behalf of all Hotel Defendants; nor did Red Roof's attorney correct BHI's statements confirming its understanding that Red Roof was the issuing party. According to BHI, following the initial meet and confer between BHI and Red Roof, on April 6, 2020, Red Roof's counsel sent BHI's counsel an email which indicated the negotiations with BHI were on behalf of Red Roof, not every defendant in the Underlying Litigation. Specifically, Red Roof's counsel noted that certain search terms "will give Priceline **and Red Roof** a general sense of" the quantity of data the parties are discussing. *See* Cause No. 5:21mc1, Docket Entry # 24 at p. 2 (emphasis original); *see also* attached Ex. 1 (email chain). BHI further asserts none of the Moving Defendants provided BHI "with the courtesy of notifying it that Red Roof had been dismissed with prejudice from the Underlying Litigation, and thus it was under the impression the Red Roof Subpoena was valid." *Id.* at p. 10. Finally, BHI states Moving Defendants have not explained how the missing evidence is relevant to Moving Defendants' defenses or claims. *Id.*

The motion to compel was transferred to this Court on March 10, 2021. [10] By that time, TravelPass had filed in the Underlying Litigation its motion for protective order. Cause No. 5:18cv153, Docket Entry # 448. TravelPass primarily argues the motion is untimely. On March 12, 2021, Moving Defendants filed a response in opposition to TravelPass's motion. Cause No. 5:18cv153, Docket Entry # 451. Moving Defendants argue as follows:

TravelPass has aligned itself with the bad-faith gamesmanship of Booking, which agreed to produce documents in response to Defendants' subpoena, represented that the production was forthcoming, and then, only after the discovery deadline passed, indicated it would no longer abide by its agreement. Booking's ploy is the subject of an earlier-filed motion to compel and request for sanctions, which was recently transferred to this Court from the District of Connecticut.... TravelPass now seeks a protective order denying Defendants access

Appendix of Authorities: 74 of 89

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

to highly relevant materials from Booking—a non-party that TravelPass claims is a co-conspirator in the alleged 'secondary conspiracy.' TravelPass's motion should be denied for the following reasons.

*First*, TravelPass's argument that Defendants have not been diligent is wrong. The record establishes that Booking affirmatively led Defendants to believe that a production was forthcoming. The dispute did not ripen until January 25, when Booking breached its agreement. At that point, Defendants promptly filed their motion. Contrary to TravelPass's unsupported contention, a motion prior to the cutoff would therefore have been premature.

**\*7** *Second*, TravelPass also incorrectly claims Defendants' motion is untimely because it was filed after the close of fact discovery. This Court has considerable discretion to consider the circumstances that led to the filing of this motion. Given Booking's egregious conduct, the pertinent factors from *Days Inn Worldwide, Inc. v. Sonia Invs.*, 337 F.R.D. 395 (N.D. Tex. 2006) strongly favor denying TravelPass's motion.

*Id.* at pp. 1-2 (emphasis original).

## IV. APPLICABLE LEGAL STANDARDS GOVERNING DISCOVERY

### A. Rule 45

Under Rule 45 of the Federal Rules of Civil Procedure, a "command in a subpoena to produce documents ... requires the responding person to permit inspection, copying, testing, or sampling of the materials." *Mustang Innovation, L.L.C. v. Sonoco Prod. Co.*, Civil Action No. 4:14-CV-3756-RBH, 2015 WL 4508830, at \*2 (D.S.C. July 24, 2015) (quoting FED. R. CIV. P. 45(a)(1)(D)). Under Federal Rule of Civil Procedure 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *MetroPCS v. Thomas*, 327 F.R.D. 600, 606 (N.D. Tex. 2018) (quoting FED. R. CIV. P. 45(d)(1); also citing *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, L.L.C.*, 313 F.R.D. 39, 57-59 (N.D. Tex. 2015)). And Federal Rule of Civil Procedure 45(d)(2)(B) requires that "[a]

person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested"—and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id.* at 606–07 (quoting FED. R. CIV. P. 45(d)(2)(B)).

Under Rule 45(d)(2)(B), "[if] an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* at 607 (quoting FED. R. CIV. P. 45(d)(2)(B)). Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *Id.* (citing FED. R. CIV. P. 45(d)(2)(B)(ii); also citing *Am. Fed'n*, 313 F.R.D. at 44).

A court may, on timely motion, quash or modify a subpoena that subjects a person to undue burden or requires disclosure of privileged or other protected matter. *Mustang*, 2015 WL 4508830, at \*2 (quoting FED. R. CIV. P. 45(d)(3)(A)). "Ordinarily 'only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena.' " *Id.* (quoting *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 1660386, at \*2 (S.D.W. Va. Apr. 22, 2014) (quoting *Transcor, Inc. v. Furney Charters*, 212 F.R.D. 588, 590 (D. Kan. 2003))). An exception exists, however, when the person objecting to the subpoena has a personal right or privilege in the information sought by the requester. *Id.* (citing *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005) (citations omitted in *Mustang Innovation*)). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Id.* (quoting *HDSherer L.L.C. v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) (citing *Cook v. Howard*, 484 Fed. Appx. 805, 812 (4th Cir. 2012))).

### B. Scope of discovery

Appendix of Authorities: 75 of 89

2021-1 Trade Cases P 81,651

**\*8** Federal Rule of Civil Procedure 26(b) provides that the permissible scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." [11] *Matter of AET, Inc., Ltd.*, Civil Action No. 1:10-CV-51, 2018 WL 4201264, at \*2 (E.D. Tex. June 8, 2018) (quoting FED. R. CIV. P. 26(b)(1)).

In addition to being relevant, discovery must be proportional. Federal Rule of Civil Procedure 26(b) has been amended, effective December 1, 2015. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. June 26, 2017) ("*Samsung II*"). "Under Rule 26(b)(1), [as amended,] discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." [12] *Id.* at 279. The burden is on the party resisting discovery to establish the discovery is not proportional. *KAIST IP US L.L.C. v. Samsung Electronics Co. Ltd.*, No. 2:16-CV-01314-JRG-RSP, 2017 WL 9937760, at \*1(E.D. Tex. Dec. 21, 2017) (citing *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, No. 3:15-CV-4108-D, 2017 WL 896897, at \*11 (N.D. Tex. Mar. 7, 2017) ("*Samsung I*")); *see also Samsung II*, 321 F.R.D. at 284 (explaining the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery).

"[J]ust as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit—and the court must do so even in the absence of a motion." *Samsung II*, 321 F.R.D. at 284 (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Samsung II*, 321 F.R.D. at 284 (quoting FED. R. CIV. P. 26(b) (2)(C)).

**C. Protective orders**

**\*9** The court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *MetroPCS*, 327 F.R.D. at 610 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (footnote omitted in *MetroPCS*)). "Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *Id.* (quoting *Am. Fed'n*, 313 F.R.D. at 45 (internal quotation marks omitted in *MetroPCS*)).

Federal Rule of Civil Procedure 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending —or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." *Id.* (quoting FED. R. CIV. P. 26(c)(1)). Rule 26(c) (1) further provides that the court "may, for good cause," protect a party from "undue burden or expense" by issuing an order forbidding the disclosure or discovery of certain matters, specifying terms for the disclosure or discovery, or limiting the scope of disclosure or discovery. *Matter of AET*, 2018 WL 4201264, at \*2 (quoting FED. R. CIV. P. 26(c)(1) (D)).

In order to prevail on a motion for protective order or successfully resist a motion to compel, a party must specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of discovery, that a discovery request would impose an undue burden or expense, or that a discovery request is otherwise objectionable. *Tijerina v. Guerra*, Civil Action No. 7:19-CV-285, 2020 WL 1663181, at \*5 (S.D. Tex. Apr. 1, 2020) (citing *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469

(N.D. Tex. 2015) (citing 📄 *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))). The party resisting discovery must show specifically how each discovery request is not relevant or how each request is overly broad, burdensome, or oppressive. *Tijerina*, 2020 WL 1663181, at *5 (citing *O'Bryant v. Walgreen Co.*, Civil Action No. 19-60363, 2020 WL 996464, at *5 (5th Cir. 2020) (citing 📄 *McLeod*, 894 F.2d at 1485) ("[T]he party resisting discovery must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." (internal quotations omitted in *Tijerina*))).

### V. DISCUSSION

#### A. Whether the Subpoena is moot

As an initial matter, the Court considers whether the Subpoena is moot. BHI asserts the Subpoena, which was issued by Red Roof, is moot and unenforceable following Red Roof's dismissal from the Underlying Litigation. In their motion to compel, Moving Defendants rely on an unreported case from the District of Kansas, wherein the court rejected that same argument.

In 📄 *Heartland Surgical Specialty Hospital, L.L.C. v. Midwest Division, Inc.*, Civil Action No. 05-2164-MLB-DWB, 2007 WL 1112525 (D. Kan. 2007), the defendants sought an order requiring the physician-founders ("Founders") of the plaintiff hospital ("Heartland") to respond to subpoenas issued by the United defendants. *Id.* at *1. In their joint motion to compel compliance with the subpoenas, the defendants argued the subpoenas were issued on behalf of all the defendants in the case. Founders argued the subpoenas were issued solely by the United defendants who had, subsequent to the issuance of the subpoenas, settled and been dismissed from the litigation. *Id.* Thus, according to Founders, the subpoenas were moot. *Id.*

 **\*10** United's counsel stated in an affidavit supporting the defendants' motion that he "undertook the effort to draft and issue these subpoenas for the benefit of all defendants, and all defendants approved them. Thus, while the subpoenas listed a United attorney as the 'issuing officer,' the subpoenas sought discovery on behalf of all defendants." *Id.* (further noting six of the twenty-three categories related specifically to United, at least in part, and the remaining categories were more broadly phrased). United's counsel stated he had notified the plaintiff's counsel that he had cleared the subpoenas with all the defendants and that all the defendants had approved. *Id.*

After the issuing party (United) settled, another defendant (Humana) then "stepped into the fray over the subpoenas." *Id.* at *2. Believing the subpoenas were issued by all the defendants, Humana urged the Founders to honor the subpoenas despite the United settlement; in subsequent meet and confer sessions, the Founders "initially agreed that they would honor the subpoenas with the exception of the six requests they identified as 'United specific.' " *Id.* That agreement ultimately fell apart after Humana rejected the Founders' proposal that the defendants provide assurance that no additional subpoenas would be directed to Founders. *Id.*

Humana filed the motion to compel on behalf of all the defendants (and then settled with the plaintiff and was also dismissed from the litigation). Just as BHI argues here, the Founders in *Heartland* argued that "once claims are dismissed against a party and that party is dismissed from the case, discovery issued by that party is moot," and that "United never indicated that the subpoenas were being issued on behalf of all Defendants during initial discussions, and that Defendants took this new position only after United had settled." *Id.* at *3. The defendants argued the circumstances surrounding the "multi-party litigation ma[d]e it clear that the subpoenas were, in fact, issued by all Defendants." *Id.*

The court rejected the Founders' arguments, noting, among other things, "United's counsel indicate[d] he had previously cleared the subpoenas through all Defendants and his intent was to serve the subpoenas on behalf of all Defendants, not just United." *Id.* (further noting the majority of the discovery propounded to non-parties in the litigation had been issued by one defendant). According to the court, "[t]he logical presumption ... is that the discovery to these non-parties is on behalf of all Defendants. Otherwise, each Defendant would have presumably propounded its own individual discovery request to these important non-parties by this late stage of fact discovery." *Id.*

The court also found noteworthy the fact that "three-fourths of the document requests ... appear[ed] to be applicable to all Defendants" and "the discovery in th[e] case ha[d] been undertaken as a joint effort." *Id.* (noting the depositions of the Founders were noticed as one deposition, but that each Founder was questioned by each defendant and further noting that when Founders did produce some documents, they produced copies to each defendant, not just to United).

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

After considering all of the arguments of counsel, the court in *Heartland* ultimately concluded the "subpoenas issued by United were issued on behalf of all Defendants and as such [were] still viable notwithstanding the fact that United ha[d].... been dismissed as a party in the case." *Id.* at *4. The court concluded that granting the movant's motion would "further[ ] the Court's endeavor toward a fair trial" and "the purpose of the Federal Rules of Civil Procedure which are to be 'construed and administered to secure the just, speedy and inexpensive determination in every action.' " *Id.* (quoting FED. R. CIV. P. 1) (further noting all "parties, both the Founders and Defendants, would be subject to additional burden and expense if the Court required the subpoena process to be started over again").

 **\*11** According to Moving Defendants, all of the facts that led the *Heartland* court to reach its conclusion are present here. In Marriott's counsel's declaration, filed in support of Moving Defendants' motion to compel, Mr. Ludwig states as follows: "[a]s is common in multi-party cases, rather than having each defendant separately serve its own subpoena on every non-party, the Hotel Defendants agreed to divide primary responsibility for non-party discovery among themselves." Ludwig Decl., ¶ 3 ("Otherwise each non-party would receive multiple, identical subpoenas and would be forced to expend resources to respond to and negotiate each individually."). To the best of Mr. Ludwig's knowledge, all of the subpoenas in the Underlying Litigation have been signed and served by one Hotel Defendant on behalf of the entire group of Hotel Defendants. [13] *Id.* Mr. Ludwig asserts the Hotel Defendants agreed and intended that Red Roof would have primary responsibility for the BHI Subpoena, would serve the Subpoena on behalf of all of the Hotel Defendants, and would negotiate BHI's compliance with the Subpoena on behalf of the Hotel Defendants. *Id.*, ¶ 4.

BHI argues the facts in *Heartland* are "distinct from the present motion in that the 'non-parties' in *Heartland* that were subject to the motion to compel were not 'nonparties' in the true sense of the word, but were the physician-founders of the hospital-plaintiff and were represented by the same counsel as the plaintiff." That is to say, they were intimately involved in the *Heartland* litigation." Cause No. 5:21mc1, Docket Entry # 24 at p. 6 (further pointing out "non-parties" in *Heartland* did not even file an opposition to the motion to compel; rather, the opposition was filed by the plaintiff, which the court considered to have been filed on behalf of the Founders). BHI further asserts it is noteworthy that the court's analysis

in *Heartland* has not been adopted by any other court, despite the decision having been around for over fourteen years. [14]

It is noteworthy to the Court that the Founders of the plaintiff Heartland and Heartland itself were represented by the same counsel in *Heartland*. At one point in the opinion, the court in *Heartland* referred to the Founders as parties. *See* 🚩 *Heartland*, 2007 WL 1112525, at *4 ("There could be no question that *all* parties, both the Founders and Defendants, would be subject to additional burden and expense if the Court required the subpoena process to be started over again.") (emphasis original). Here, BHI is not a party to the Underlying Litigation.

Even so, the Court is not convinced the Subpoena is moot. In the *Heartland* case, counsel for the serving defendant stated in an affidavit that he undertook the effort to draft and issue the subpoena for the benefit of all defendants, and the subpoenas sought discovery on behalf of all defendants. Similarly here, counsel for Marriott, who stepped into negotiations with BHI's counsel, stated in an affidavit that the Hotel Defendants collaborated on drafting the Subpoena to BHI. Ludwig Decl., ¶ 4. Mr. Ludwig states drafts of the Subpoena were circulated among the Hotel Defendants, and several provided feedback. *Id.* Mr. Ludwig further states he was personally involved in this process and provided suggested topics, edits, and comments. *Id.*

 **\*12** Additionally, like in *Heartland*, the general subject matter of the Subpoena's topics seem to clearly relate to all Hotel Defendants. Thus, the Court finds persuasive Moving Defendants' assertion that the Subpoenas were a joint effort. [15] Notwithstanding the fact that Red Roof has now been dismissed as a party in the Underlying Litigation, the Subpoena issued on behalf of all Hotel Defendants is still viable. Even though the Court is not convinced the Subpoena is moot, another issue remains which was not specifically addressed by the *Heartland* court. [16]

**B. Whether Moving Defendants may move to compel a response to the Subpoena**

Even if the Subpoena is not moot, BHI argues "Moving Defendants do not have standing to compel it." Cause No. 5:21mc1, Docket Entry # 24 at p. 4 (citing *Troice v. Proskauer Rose L.L.P.*, Civil Action 3:09-CV-1600-N-BG, 2015 WL 13729620, at *2 (N.D. Tex. Mar. 9, 2015)) (citing FED. R. CIV. P. 45(d)(2)(B)(i)). Focusing on the language of Rule

Appendix of Authorities: 78 of 89

**TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....**

2021-1 Trade Cases P 81,651

45(d), BHI argues that because only Red Roof served the Subpoena, Moving Defendants have no standing to enforce it.

Federal Rule of Civil Procedure 45(d)(2)(b)(i) provides, in pertinent part, as follows:

> (i) At any time, on notice to the commanded person, *the serving party* may move the court for the district where compliance is required for an order compelling production or inspection.

FED. R. CIV. P. 45(d)(2)(B)(i) (emphasis added). BHI asserts Rule 45(d)(2)(B)(i) specifically states that the "serving party" may move the court for an order compelling production or inspection. The serving party must avoid imposing an undue burden or expense, and the court must enforce this duty. *Scalia v. Reliance Tr. Co.*, Civil Action No. 17-CV-4540 (SRN/ECW), 2020 WL 2111368, at *5 (D. Minn. May 4, 2020) (FED. R. CIV. P. Rule 45(d)(1)).

According to BHI, to the extent *Heartland* can be read for the overarching proposition that co-defendants have standing to compel a response to a subpoena that they are not a party to, "this is in direct contravention to Rule 45 and would lead to absurd results." [17] Cause No. 5:21mc1, Docket Entry # 24 at p. 5. As one example, BHI argues that, upon dismissal of the serving party, the subpoenaed non-party would not be able to avail itself of Rule 45(d)(1) protections, which allows for sanctions against "[a] party or attorney responsible for issuing and serving a subpoena." [18] *Id.*

**\*13** The Court is not convinced that Moving Defendants may move to compel the production of information from BHI. The Court finds helpful *Troice v. Proskauer Rose L.L.P.*, Civil Action No. 3:09-CV-1600-N-BG, 2015 WL 13729620 (N.D. Tex. Mar. 9, 2015), the case relied upon by BHI. That case involved a subpoena Chadbourne & Parke LLP served on the receiver requesting the receiver—who was neither a plaintiff nor defendant in the lawsuit—to produce documents related to class certification. *Id.* at *1. The receiver served formal objections to the subpoena on December 19, 2014. *Id.* The defendants, Proskauer Rose LLP (Proskauer) and Chadbourne & Parke LLP (Chadbourne), subsequently

filed a motion to compel the receiver to produce documents responsive to the subpoena on January 13, 2015. *Id.*

At the outset, the court noted only Chadbourne served the subpoena upon the receiver. *Id.* at *2. According to the court, although the Notice of Subpoena stated that "Defendants Chadbourne & Parke, LLP [and] Proskauer Rose, LLP ... intend to serve the attached subpoena to produce documents on Ralph S. Janvey," the subpoena itself listed only Chadbourne as the issuing party of the subpoena. *See id.* After pointing out Rule 45(d)(2)(B)(i) specifically states that the "*serving party* may move the court ... for an order compelling production or inspection," the court held Chadbourne, as the only party that served the receiver with the subpoena, was the sole party with standing to compel the production of information from the receiver. *Id.* (quoting FED. R. CIV. P. 45(d)(2)(B)(i) (emphasis added in *Troice*)). Even though Proskauer joined in the motion to compel, Proskauer's motion was denied for this reason. *Id.* However, even if Proskauer had served the subpoena on the receiver, the court held it would still not be entitled to the discovery it sought to compel in its motion, as discussed later in the opinion. *Id.*

Similarly here, the Court is not persuaded Moving Defendants have standing to move to compel the production of information from BHI when Red Roof was the only party that served the Subpoena. *See also Joint Stock Co. Channel One Russia Worldwide v. Infomir L.L.C.*, Civil Action No. 16-CV-1318(GBD) (BCM), 2018 WL 6712769, at *5 n. 5 (S.D.N.Y. Nov. 30, 2018) ("Defendant Infomir did not serve the Subpoenas, and thus has no standing to enforce them."). However, even if Moving Defendants had served the Subpoena on BHI, Moving Defendants' motion would still fail, as explained below.

Importantly, putting aside the issue of whether Moving Defendants have standing to move to compel, the Court finds, after considering the good cause factors, that Moving Defendants' motion should be denied on this independent ground. [19]

**C. Whether there is good cause to reopen fact discovery**

**1. The issues**

The Court's Sixth Amended Docket Control Order established December 30, 2020 as the fact discovery deadline, which explicitly included the completion of non-party discovery and depositions of identified and agreed-upon party witnesses.

Appendix of Authorities: 79 of 89

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

Cause No. 5:18cv153, Docket Entry # 382. Moving Defendants filed their motion to compel on February 5, 2021, well after the expiration of the deadline for completing all non-expert discovery, including the discovery sought from non-party BHI.

In their motion, Moving Defendants first argue their motion to compel is timely, focusing on the fact the operative docket control order in the Underlying Litigation contains no deadline for motions to compel. The Court addresses this issue in its good cause analysis below. Relatedly, Moving Defendants assert BHI should be estopped from invoking the discovery cutoff. *See* Cause No. 5:21mc1, Docket Entry # 1 at p. 10. Arguing BHI misrepresented to Moving Defendants it intended to produce documents to comply with the Subpoena, an assertion BHI knew Moving Defendants would rely upon, Moving Defendants assert BHI is equitably estopped from arguing the Court's docket control order bars further production from non-parties.

**\*14** The Court finds the equitable estoppel argument unpersuasive. First, as noted by BHI, the Second Circuit case relied upon by Moving Defendants, *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001), does not involve a discovery matter like in this case. Second, BHI argues equitable doctrines do not apply as BHI "itself was misled to believe that it was complying with an enforceable subpoena." Cause No. 5:21mc1, Docket entry # 24 at p. 8, n. 3. Third, in its motion for protective order, TravelPass has also raised the issue of whether the Moving Defendants' motion was timely filed. [20] More significantly, Federal Rule of Civil Procedure 16(b) requires good cause and leave of court for a deviation from the deadlines contained in a docket control order. Thus, independent of BHI's and TravelPass's arguments as to timeliness, the Court considers whether there is good cause to modify the docket control order in order to compel production from BHI. The Court now turns to its good cause analysis.

**2. Applicable law**

Under Federal Rule of Civil Procedure 16(b), federal courts have the clear authority to control and expedite the discovery process through a scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Consistent with the authority vested in the district court by Rule 16, the trial court is granted broad discretion to preserve the integrity and purpose of such pretrial orders. *See id.*

(quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)); *see also Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) (affording district courts a great deal of deference in determining whether to modify scheduling orders especially where the record suggests the movant repeatedly demonstrated a lack of diligence). Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner. *Gauthier v. Union Pac. R.R. Co.*, Civil Action No. 1:07-CV-12 (TH/KFG), 2009 WL 10676647, at \*3 (E.D. Tex. Mar. 10, 2009) (citing *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 495 (S.D. Tex. 2009) (citations omitted)).

Federal Rule of Civil Procedure 16(b)(4) provides that deadlines in a schedule "may be modified only for good cause and with the judge's consent." The Fifth Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant to 'show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.' " *Puig v. Citibank, N.A.*, 2013 WL 657676, at \*5 (5th Cir. Feb. 22, 2013) (quoting *S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

The Fifth Circuit has stated four factors trial courts must consider when determining whether good cause exits to allow a deviation from the court's scheduling order: (1) the explanation for the failure to meet the deadline; (2) the importance of the modification of the deadline; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Reliance Ins. Co. v. The Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997); *Geiserman*, 893 F.2d at 791.

**3. Good cause analysis**

**a. Moving Defendants' diligence**

In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule.

*See Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995); *see also Smith v. BCE, Inc.*, 225 Fed. Appx. 212, 217 (5th Cir. 2007). The party's explanation for seeking relief from the schedule must demonstrate that it could not have met the deadline despite its diligence. The Court finds Moving Defendants' explanation does not demonstrate it could not have met the deadline despite its full diligence.

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

**\*15**  Even though Red Roof's counsel served the Subpoena on BHI on February 18, 2020, Moving Defendants waited until February of 2021, almost one year after the Subpoena was served, to file the instant motion to compel. The timing alone would suggest that Moving Defendants were not diligent in seeking to compel compliance with the BHI Subpoena (putting aside the separate issue of whether they would even be able to do so without issuing a new subpoena served by Moving Defendants). In attempting to show good cause for the delay in filing their motion to compel, Moving Defendants first state the operative docket control order in the Underlying Litigation, while providing a December 30, 2020 fact discovery deadline, "is silent on any deadline for discovery motions." Cause No. 5:21mc1, Docket Entry # 1 at p. 11.

It is unnecessary for the Court's docket control order to have a separate deadline for the filing of discovery motions. In order to timely obtain the fact discovery which Moving Defendants seek in their motion to compel, Moving Defendants' motion had to be filed sufficiently in advance of the discovery deadline in order to allow it to be heard by a court, and if granted, to allow the compelled discovery to be produced prior to the deadline. *See* *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006).[21] As the court in *Wells v. Sears Roebuck and Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001) stated, "if the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril." *Id.* at 399. As explained in further detail below, Moving Defendants should have taken reasonable steps to meet the deadline or to move for its extension.[22]

Moving Defendants next rely on BHI's November 2, 2020 agreement to the Hotel Defendants' October 26, 2020 proposal regarding production of documents. From Moving Defendants' perspective, BHI had an agreement with the Hotel Defendants, and BHI violated that agreement after "intentionally push[ing] back the date promised for production to get as close as it could to the discovery cutoff so it could then run out the clock." Cause No. 5:18cv153, Docket Entry # 451 at p. 4. Moving Defendants assert it was only after the discovery deadline passed that BHI indicated it would no longer abide by its agreement. Specifically, Moving Defendants assert as follows:

This motion is unfortunately necessitated by [BHI's] breach of its agreement to comply with a non-party subpoena by stringing the Hotel Defendants along for months until the discovery deadline passed and then claiming the subpoena is not enforceable because it was served by a now dismissed party. This gamesmanship should be rejected.

**\*16**  Cause No. 5:21mc1, Docket Entry # 1 at p. 1.

As the party seeking to reopen the now-expired fact discovery deadline, it is Moving Defendants' diligence that is at issue here. According to Moving Defendants, the record is clear they sought relief from the court quickly upon learning that BHI would breach its agreement to comply with the Subpoena. The Moving Defendants first learned on January 25, 2020 that BHI would not honor its commitment, and filed this motion shortly thereafter. Moving Defendants argue they would have filed their current motion prior to the discovery deadline if they had not been "lulled ... into believing the production was forthcoming through multiple, affirmative misleading statements, and then subsequently ignored" when Marriott's counsel attempted to follow-up prior to the fact discovery deadline. *Id.* at p. 12.

While an informal agreement between Moving Defendants and BHI could support a finding of good cause under certain circumstances, it does not here. The motion to compel indicates that Red Roof's counsel received BHI's timely objections to the Subpoena, which was served in February of 2020.[23] "Beyond that, [BHI was] not required to do anything." *Herrington v. Babcock L. Firm, L.L.C.*, Civil Action No. 14-MC-31-JJB, 2014 WL 4996182, at \*4 (M.D. La. Oct. 7, 2014). Timely serving written objections suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order.[24] *Traut v. Quantum Servicing, L.L.C.*, Civil Action No. 3:18-MC-14-D-BN, 2018 WL 1035134, at \*6 (N.D. Tex. Feb. 23, 2018) (citing FED. R. CIV. P. 45(d)(2)(B)(ii); also citing *Am. Fed'n*, 313 F.R.D. at 44). "Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45(d) come into play. Then the party seeking

2021-1 Trade Cases P 81,651

court order directing compliance."

*In re Subpoena to Vaughn Perling*, Civil Action No. 2:19MC00083-CAS(Ex), 2019 WL 8012372, at *3 (C.D. Cal. Dec. 2, 2019) (*Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 1339, 494 n.5 (9th Cir. 1983)).

**\*17** Thus, after BHI objected to the Subpoena, Red Roof was required to obtain a court order directing compliance. The Court appreciates the efforts counsel for Red Roof and then Marriott put into meeting and conferring regarding whether BHI would comply with the Subpoena without the need for litigation. However, full diligence requires that at some point negotiations must end, especially as Court-imposed deadlines are approaching and the non-party missed the production dates as initially stated. [25]

Counsel for Red Roof and then Marriott were aware of, and made BHI aware of, the time sensitive nature and Red Roof's right to move to compel production. By the end of July 2020, Red Roof's counsel, Mr. Wood, had emailed Mr. Clarke-Fisher with BHI, stating "[w]e very much need to keep moving toward production." *See* Cause No. 5:21mc1, Docket Entry # 1-7 at p. 17. Mr. Wood further noted that "[w]hile Red Rood appreciate[d] the dynamics of the current market, we are now approaching six months since service of the subpoena." *Id.* Mr. Wood pointed out that "Red Roof's willingness to date to coordinate on Priceline email and non-email ESI production [did] not constitute a waiver of any Red Roof right to move to compel production pursuant to Fed. R. Civ. P. 45(d)." *Id.*

By the end of September 2020, when Marriott's counsel, Mr. Ludwig, had already become the primary point of contact for the Hotel Defendants, it is clear from an email to BHI that Mr. Ludwig was aware of the approaching date of November 30 – a date that was then the fact discovery cutoff – and the need to "wrap up [the] process quickly." [26] *See* Cause No. 5:21mc1, Docket Entry # 1-7 at p. 5; *see also* Ludwig Decl., ¶ 8. Mr. Ludwig also mentioned the possibility of litigation over the Subpoena, while expressing hope to avoid such litigation. *Id.*

Moving Defendants have not shown they exercised diligence for purposes of Rule 16(b) with regard to the Subpoena. The Court finds this factor weighs against modifying the docket control order to re-open fact discovery as to the third-party discovery now sought by Moving Defendants. The remaining factors also weigh against modification.

**b. Importance of the requested modification**

Moving Defendants have not convinced the Court of the importance of a modification. Non-party BHI has not been asked to sit for any depositions. According to BHI, the suggestion that Priceline's documents are essential to the Underlying Litigation is undermined by the simple fact that prior to the close of fact discovery, no one sought to compel a production.

Having failed to demonstrate the requested information would provide unique or non-cumulative information not already addressed through other fact discovery, the Court finds this factor weighs against modification of the fact discovery deadline.

**c. Prejudice and availability of any continuance to cure prejudice**

TravelPass asserts it would be prejudiced if fact discovery is re-opened at this late stage "for the potential production of thousands of documents." Cause No. 5:18cv153, Docket Entry # 448 at p. 2. According to TravelPass, "allowing additional discovery could jeopardize the case schedule." *Id.* TravelPass points out this case was originally scheduled for trial in October 2020 and has already been continued twice from its original setting. [27] Because the parties have "shifted into expert discovery and dispositive motions," *id.* at p. 7, TravelPass argues re-opening fact discovery "while the parties are preparing expert rebuttal reports, taking expert depositions, and preparing for dispositive motion practice could lead to further unnecessary derivations from the schedule." *Id.* at p. 2.

**\*18** The Court recently denied TravelPass's request for one additional fact witness deposition under similar circumstances, finding no good cause to permit the discovery, and the same reasoning applies here. *See* Cause No. 5:18cv153, Docket Entry # 440 (finding that "Marriott would be prejudiced if fact discovery is re-opened at this late stage for an additional deposition").

**d. Conclusion**

The Court, having considered the four factors, does not find good cause to allow a deviation from the Court's Sixth Amended Docket Control Order. Specifically, Moving Defendants have not established good cause to reopen non-expert discovery months after that deadline expired.

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....
2021-1 Trade Cases P 81,651

Accordingly, the Court will deny Moving Defendants' motion to compel.

In light of the foregoing, the Court will grant TravelPass's motion for protective order under Rule 26(c) on the basis that the discovery sought pursuant to the Subpoena is untimely.

**D. Sanctions**

Moving Defendants further request the Court order sanctions and the payment of Moving Defendants' attorneys' fees. According to BHI, although Moving Defendants only cite to Local Rule 37(c), sanctions under Rule 45 are not warranted either. Cause No. 5:21mc1, Docket Entry # 24 at p. 8, n. 4.

Under Rule 45(g) the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." For the reasons stated herein, BHI has provided an "adequate excuse." Furthermore, "[a]lthough the Rule's plain text authorizes a court to hold a party in contempt simply for failing to comply with a subpoena, 'courts in the Second Circuit have often

held that ... a court should first issue an order compelling compliance with the subpoena.' " *In re Dunne*, 3:17-CV-1399 (MPS), 2018 WL 4654698, at *6 (D. Conn. Sept. 27, 2018) (citations omitted).

The Court declines to award sanctions. Based on the foregoing, it is

**ORDERED** that Plaintiffs' Motion for Protective Order (Cause No. 5:18cv153, Docket Entry # 448) is **GRANTED**. It is further

**ORDERED** that Marriott International, Inc., Choice Hotels International, Inc., and Six Continents Hotels, Inc.'s Motion to Compel Booking Holdings, Inc.'s Production of Documents (Cause No. 5:21mc1, Docket Entry # 1) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2492858, 2021-1 Trade Cases P 81,651

---

**Footnotes**

1    Moving Defendants' request for oral argument is denied.

2    All other Hotel Defendants (Caesars Entertainment Corporation, Hilton Domestic Operating Company, Inc., Hyatt Corporation, Red Roof Inns, Inc., and Wyndham Hotel Group, LLC) have been dismissed from the Underlying Litigation.

3    BHI's principal place of business is in Connecticut.

4    Federal Rule of Civil Procedure 45(f) provides "[wh]en the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The Notes of the Advisory Committee to the 2013 amendments further provide that "[i]n some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing courts management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."

5    The term "Hotel Defendants" as used in the motion to compel and herein refers to all of the defendants, regardless of whether they have been dismissed.

6    Following receipt of the Subpoena and service of BHI's timely objections, Red Roof's counsel was advised that BHI, as a non-operating holding company, would not have any responsive documents but that, as a courtesy, Priceline, a BHI subsidiary, was willing to respond to the Subpoena as if it were served on Priceline.

2021-1 Trade Cases P 81,651

In an effort of cooperation, Priceline did not require a standalone subpoena to be served on Priceline. Priceline confirmed this in an email to Red Roof's counsel on May 18, 2020.

To limit the issues before this Court, Priceline is treating Moving Defendants' current motion to compel as if it is addressed against it. However, BHI reserves all its objections asserted in response to the Subpoena and, as a non-operating holding company, states it does not have any control over the documents at issue in the Moving Defendants' motion to compel.

7    According to TravelPass, Hotel Defendants further stated they only needed a "modest extension" of the fact discovery deadline to "facilitate completing the collection of documents and depositions of these important non-parties." Cause No. 5:18cv153, Docket Entry # 365 at p. 6. Unlike prior versions of the Docket Control Order, Defendants' "[Proposed] Sixth Amended Docket Control Order" expressly stated that the fact discovery deadline included "non-party discovery." Cause No. 5:18cv153, Docket Entry # 365-1 at p. 5.

8    Asserting it is undisputed that the Moving Defendants never informed BHI that Red Roof had been dismissed from the Underlying Litigation, BHI states it agreed, on November 2, 2020, to make productions to comply with the Subp oena. Cause No. 5:21mc1, Docket Entry # 1-8 at p. 6. BHI asserts it did not, however, agree to respond to an unenforceable subpoena.

9    TravelPass states it was not copied on any of this correspondence and was not invited to participate in any of these negotiations, all of which occurred without TravelPass's knowledge.

According to TravelPass, the parties in the Underlying Litigation were in regular communication towards the end of December 2020 to ensure that the fact discovery deadline was met. The parties agreed to handle several specific matters beyond the fact discovery period, if necessary, including production of certain Plaintiff financial documents, Defendants' corporate representative depositions, and non-party Expedia's deposition. TravelPass states Hotel Defendants never mentioned they were still pursuing document production from BHI, that they expected to receive a batch of documents from BHI, or even that compliance with the BHI subpoena remained an open issue; nor did Hotel Defendants ask Plaintiffs for consent to litigate that issue after the discovery deadline, as they did for certain other specific issues.

10   TravelPass states Defendants did not even serve TravelPass with that motion to compel. TravelPass further states it discovered that motion only after counsel for BHI informed counsel for TravelPass that the motion had been filed.

11   In the Eastern District of Texas, Local Rule CV-26 also provides guidance in considering whether information is relevant for discovery. The rule provides information is relevant if:

    (1) it includes information that would not support the disclosing parties' contentions;

    (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

    (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;

    (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

    (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

*Matter of AET, Inc., Ltd.*, Civil Action No. 1:10-CV-51, 2018 WL 4201264, at *2 (E.D. Tex. June 8, 2018) (quoting E.D. Tex. Civ. R. CV-26(d)). Relevance "has been construed broadly to encompass any matter that

Appendix of Authorities: 84 of 89

TravelPass Group, LLC v. Caesars Entertainment Corporation, Not Reported in Fed....

2021-1 Trade Cases P 81,651

bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* (quoting 📁 *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citing 📁 *Hickman v. Taylor,* 329 U.S. 495, 501 (1947))).

12   The 2015 amendments to Rule 26 deleted "from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.' " *Robroy Indus.-Tex., L.L.C. v. Thomas & Betts Corp.,* Civil Action No. 2:15-CV-512-WCB, 2017 WL 319064, at *4 (E.D. Tex. Jan. 23, 2017) (quoting FED. R. CIV. P. 26, 2015 comm. note).

13   Mr. Ludwig further represents as follows:

> Before any subpoena was served, the responsible Hotel Defendant solicited feedback from the other Hotel Defendants, often received comments, and the subpoena was served on behalf of all the Hotel Defendants. Apart from non-party discovery, discovery in this case has generally been collaborative wherever possible. For example, the Hotel Defendants have negotiated collectively with the Plaintiff TravelPass regarding certain of TravelPass's requested discovery, including over search terms for TravelPass's document productions; rather than engaging in wasteful, duplicative individual negotiations.

> Ludwig Decl., ¶ 3.

14   In a case from within the Fifth Circuit that distinguishes *Heartland,* the court noted the situation in *Heartland* was not the same as that of the case before the court, "in which it was clear that the discovery propounded by Moss Motors was not also propounded on behalf of [Mercedes-Benz] even though MB now seeks to compel the plaintiffs to respond." *Dugas v. Mercedes-Benz USA, L.L.C.,* Civil Action No. 6:12-CV-02885, 2014 WL 458083, at *1 (W.D. La. Feb. 3, 2014) (further stating "only the party that propounded the discovery may seek to compel a response" and finding "MB fail[ed] to explain how it ha[d] standing to seek to compel response to discovery propounded by another party, especially now that the propounding party ha[d] been dismissed from the suit").

15   Moving Defendants persuasively argue BHI's counsel's current contention that he believed the Subpoena was served only by Red Roof is belied by the record, noting BHI's counsel expressly stated the understanding that producing documents would satisfy Booking and Priceline's "***subpoena*** April 26, 2021 ***obligations to Defendants.***" Cause No. 5:21mc1, Docket Entry # 1 at pp. 9-10 (quoting Ludwig Decl. ¶ 9, Ex. 6) (emphasis added by Moving Defendants).

16   The court in *Heartland* only referenced the argument advanced by BHI here, noting that the defendants did not respond to that argument in a reply. 📁 *Heartland,* 2007 WL 1112525, at *2.

17   And, as noted above, BHI argues that unlike the "non-parties" in *Heartland* who were involved in (if not integral to) the *Heartland* litigation, here Priceline is not a party to the Underlying Litigation and outside of the present motion to compel has no involvement with the Underlying Litigation. Cause No. 5:21mc1, Docket Entry # 24 at p. 6.

18   Federal Rule of Civil Procedure 45(d)(1) directs that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." If the party or attorney serving the subpoena fails to do so, the court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees[.]" *Hall CA-NV, L.L.C. v. Ladera Dev., L.L.C.,* Civil Action No. 3:18CV00124-RCJ-WGC, 2019 WL 5448458, at *14

2021-1 Trade Cases P 81,651

(D. Nev. Oct. 24, 2019), *aff'd*, No. 3:18CV00124-RCJ-WGC, 2020 WL 1033560 (D. Nev. Mar. 2, 2020) (citing FED. R. CIV. P. 45(d)(1)).

19    The Court notes that there is no indication in the *Heartland* case that the discovery deadline had already

passed. 🔖 *Heartland*, 2007 WL 1112525, at *4 (noting the burden and expense of requiring the subpoena process to be started over again was not "justified this late in the discovery process").

20    The Court sees no need to address TravelPass's standing to raise objections to the Subpoena against non-party BHI via a motion for protective order. While standing to challenge the Subpoena would generally be the Court's first inquiry, the parties do not take issue with TravelPass's standing. *See Dean v. Akal Sec., Inc.*, Civil Action No. 1:18-MC-00033, 2019 WL 1549017, at *2 n. 6 (W.D. La. Apr. 8, 2019). Moreover, the Subpoena directed to BHI arguably concerns TravelPass's interests because the discovery requests seek documents related to TravelPass.

21    The *Days Inn* court considered the various factors courts consider in determining whether a motion to compel filed after the discovery deadline is untimely: "(1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed," (6) the age of the case, (7) any prejudice to the party from whom late discovery was sought, and (8) disruption of the court's schedule. *Alexam, Inc. v. J.C. Penney Co.*, Civil Action No. 2:13CV5, 2013 WL 12138891, at *4 (E.D. Tex. Sept. 25, 2013) (citing 🔖 *Days Inn*, 237 F.R.D. at 398). After considering the factors, the court "found no basis for permitting [the] untimely motion." *Id.* (citing 🔖 *Days Inn*, 237 F.R.D. at 398-99).

The *Days Inn* factors resemble those the Court considers when determining whether good cause has been shown for modifying a scheduling order deadline. *Id.*

22    The Court disagrees with Moving Defendants' argument that, prior to the discovery deadline, "any motion would have been precautionary and potentially a complete waste." *See* Cause No. 5:18cv153, Docket Entry # 451 at pg. 5.

23    As pointed out by BHI, its objections to the Subpoena were not included as an exhibit in support of the Moving Defendants' motion to compel. Cause No. 5:21mc1, Docket Entry # 24 at p. 4, n. 1. According to BHI, "[w]hile not directly material to the pending motion to compel, it raises the question of whether the Moving Defendants even have a copy, as they were only provided to Red Roof's counsel. This only further highlights the attenuated relationship that the Moving Defendants have to the Red Roof Subpoena." *Id.*

24    Under Federal Rule of Civil Procedure 45(d), "[e]ither in lieu of or in addition to serving objections on the party seeking discovery, a person can 'timely' file a motion to quash or modify the subpoena" under Federal Rule of Civil Procedure 45(d)(3)(A). *Traut v. Quantum Servicing, L.L.C.*, Civil Action No. 3:18-MC-14-D-BN, 2018 WL 1035134, at *6 (N.D. Tex. Feb. 23, 2018) (quoting *In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, Civil Action No. 3:14-mc-73-G, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016); *accord Monitronics Int'l, Inc. v. iControl Networks, Inc.*, Civil Action No. 3:13-mc-134-L-BN, 2013 WL 6120540, at *1 (N.D. Tex. Nov. 21, 2013) ("Rule 45 does not define a 'timely motion' but does provide that, if the subpoenaed party chooses to serve objections instead of moving to quash, '[t]he objection must be served before the earlier of the time specified for compliance or 14 days

after the subpoena is served." FED. R. CIV. P. 45(c)(2)(B)."); cf. 🔖 *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 451 (N.D. Tex. 2015)). Thus, "[i]n the majority of cases, a person—whether a traditional party (i.e., a plaintiff or defendant) or a non-party—waives objections if he/she/it fails either to serve timely

Appendix of Authorities: 86 of 89

objections on the party seeking discovery or to file a timely motion with the court." *Id.* (quoting *Grupo Mexico, 2015 WL 12916415, at \*3*).

25    BHI failed to produce documents as agreed by November 23, 2020. According to Mr. Ludwig, on November 23, Mr. Clarke-Fisher e-mailed Mr. Ludwig to indicate that BHI's document review was ongoing and that BHI would make a production in a few weeks, likely the week of December 14. Ludwig Decl., ¶ 10. That date, too, passed with no production.

26    On November 9, 2020, the Court extended the fact discovery deadline to December 30, 2020. Cause No. 5:18cv153, Docket Entry # 380.

27    This case is pending before District Judge Schroeder with a final pretrial conference set for October 5, 2021. Cause No. 5:18cv153, Docket Entry # 382.

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    18

2018 WL 11471473
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

Derrick WHITE, Plaintiff,

v.

DIAMOND OFFSHORE DRILLING INC. & Diamond
Offshore Management Company, Defendants.

CIVIL ACTION NO. 4:16-CV-3634
|
Signed March 5, 2018

**Attorneys and Law Firms**

David Michael Noll, Stephanie Ahrens Waller, Hagan Noll &
Boyle LLC, Houston, TX, Joshua Allen Redelman, Stibbs &
Co., P.C., Spring, TX, for Plaintiff.

Lizzette Marie Palmer, Palmer Law PLLC, Houston, TX,
Amy Lynne Vazquez, Joshua Alexander Norris, Jones Walker
Waechter Poitevent Carrre Dengre LLP, Houston, TX, for
Defendants.

**ORDER**

Stephen Wm Smith, United States Magistrate Judge

 **\*1** Before the court is defendants' motion to compel plaintiff
to respond to interrogatory responses. Dkt. 17. This motion is
granted in part and denied in part.

**Numerosity Objections**

Federal Rule of Civil Procedure 33(a) provides that, absent
leave of court or written stipulation, interrogatories are not
to exceed 25 in number, "including all discrete subparts."
See Fed. R. Civ. P. 33(a). Interrogatory subparts are to be
counted as discrete subparts unless they are "logically or
factually subsumed within and necessarily related to the
primary question." Dimitrijevic v. TV & C GP Holding Inc.,
2005 U.S. Dist. LEXIS 41399, at *8 (S.D. Tex. Aug. 24,
2005) (quoting Krawczyk v. City of Dallas, 2004 U.S. Dist.
LEXIS 30011, No. Civ. 3:030CV-0584D, 2004 WL 614842,
at * 2 (N.D. Tex. Feb. 27, 2004)). If the main question can be
answered fully and completely without answering the subpart
question, then the second question is totally independent of
the first and not factually subsumed within it. Krawczyk, 2004
WL 614842, at *2.

With this standard in mind, we turn to the interrogatories at
hand. As explained in detail below, review of the 22 numbered
interrogatories at issue here plainly reveals that defendants
have exceeded the permissible limit. "Since service of more
than 25 interrogatories is not permitted, the entire set of
interrogatories is impermissible. Respondent can either object
to the set as a whole or object to the excess." THE HON.
DAVID HITTNER, ET AL., RUTTER GROUP PRACTICE
GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL

§ 11:1695 (5th Cir. ed. 2005); see also Traina v. Blanchard,
1998 WL 483485, * 4, 1998 U.S. Dist. LEXIS 5634,
No. Civ. A. 97-0348 (E.D. La. April 15, 1998) (entire
set objectionable). Here, plaintiff responded to the first
12 interrogatories, and objected to the remaining 10 on
numerosity grounds, amongst other things.

Because the discovery deadline has now passed, it would
be inappropriate to permit defendants the opportunity to
propound a new set of interrogatories. See Dimitrijevic,
2005 U.S. Dist. LEXIS 41399, at *13-14. Accordingly,
the court will determine whether plaintiff has answered
25 interrogatories, and if not, determine how many more
interrogatories must be answered to reach that limit.

The court finds that Interrogatory Nos. 1, 2, 5-7, 10-13 contain
no discrete subparts, and so each of these interrogatories will
be counted as a single question. The other interrogatories do
contain discrete subparts, as tallied below:

Interrogatory No. 3
This interrogatory consists of 5 separate questions. The main
question (1) asks about plaintiff's other employers since July
2013. This question encompasses dates of employment and
nature of the jobs. The discrete subparts inquire about (2)
supervisors; (3) rates of pay; (4) gross income and benefits
received; and (5) reasons for termination. These subparts seek
information beyond the scope of the primary question, and
therefore are separate questions.

Interrogatory No. 4
This interrogatory consists of 4 separate questions. The main
question (1) asks about offer of work plaintiff has declined
since July 15, 2015. This question encompasses the names
and addresses of the offerors, and the title of the positions
offered. The discrete subparts inquire about (2) the wages or
salaries offered, and bonuses and commissions offered; (3) the

White v. Diamond Offshore Drilling Inc., Not Reported in Fed. Supp. (2018)

fringe benefits offered; and (4) the specific reasons plaintiff declined the offers. These subparts seek information beyond the scope of the primary question, and therefore are separate questions.

Interrogatory No. 8

**\*2** This interrogatory consists of 4 separate questions. The main question (1) inquires about work plaintiff has sought, or applied for, since July 15, 2015. This question encompasses the name of the employers, dates of communications and/or applications, positions sought, the nature of the duties of the positions, and the addresses and phone numbers of the employers. The discrete subparts inquire about (2) the rates of pay and benefits of the positions applied for; (3) whether plaintiff had interviews, the date of the interviews, and the names of the interviewers; and (4) the outcomes of applying for employment at the employers. These subparts seek information beyond the scope of the primary question, and therefore are separate questions.

Interrogatory No. 9

This interrogatory has 3 separate questions. The main question (1) asks about each healthcare provider which have treated plaintiff since April 19, 2015. This question encompasses the dates of treatment. The discrete subparts inquire about (2) the reasons for treatment; and (3) whether and what medicines, physical therapy, or occupational therapy were prescribed. These subparts seek information beyond the scope of the primary question, and therefore are separate questions.

Properly counting all discrete subparts, the court finds that all interrogatories beyond Interrogatory No. 13 exceed Rule 33(a)'s permissible limit of 25, and therefore need not be answered.

**Boilerplate Objections to Interrogatory Nos. 1–13**

Aside from the numerosity objections, plaintiff's objections are baseless and boilerplate. The court finds that plaintiff incorrectly asserts attorney-client and work-product privilege in response to several interrogatories. [1] The court also finds that plaintiff incorrectly contends that defendants' interrogatories are vague, overbroad and/or unduly burdensome. Further, discovery closed on December 15, 2017, thus plaintiff cannot object on the basis that defendants' requests are premature. [2] Therefore, plaintiff must adequately specify her objections, or otherwise sufficiently respond to defendants' requests.

For these reasons it is

ORDERED that defendants' motion to compel is granted in part and denied in part. Plaintiff is ordered to provide full and complete answers to Interrogatory Nos. 1-13 and all their subparts on or before March 20, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11471473

---

### Footnotes

1    *See* Interrogatory Nos. 1, 10-13. Dkt. 20-2.

2    *See* Interrogatory Nos. 10-13. *Id.*

---

End of Document                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.