**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No.: 4:23-CV-03560-KH |
| U.S. ANESTHESIA PARTNERS, INC., *et al.*, | |
| Defendants. | |

**APPENDIX TO DEFENDANT U.S. ANESTHESIA PARTNERS, INC.'S
REPLY IN SUPPORT OF MOTION TO COMPEL INTERROGATORY RESPONSES**

# TABLE OF CONTENTS

Page

**CASES**

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    2007 WL 3389968 (E.D. Tex. Nov. 14, 2007) ...................................................... USAP0144

*Brown v. Performing Energy Servs., LLC*,
    2009 WL 10679001 (E.D. La. Jan. 28, 2009) ...................................................... USAP0148

*Citro-Rey S. De R.L. De C.V. v. L&M Cos.*,
    2009 WL 1227821 (S.D. Tex. May 5, 2009) ...................................................... USAP0150

*DaVita, Inc. v. Scot Indus., Inc.*,
    2018 WL 11443618 (E.D. Tex. Dec. 3, 2018) ...................................................... USAP0153

*Dexon Comp., Inc. v. Cisco Sys., Inc.*,
    2023 WL 9645458 (E.D. Tex. Sept. 5, 2023) ...................................................... USAP0159

*Dimitrijevic v. TV&C GP Holding Inc.*,
    2005 WL 8164073 (S.D. Tex. Aug. 24, 2005) ...................................................... USAP0167

*EEOC v. Big Lots Stores, Inc.*,
    2009 WL 10677442 (E.D. Tex. Oct. 21, 2009) ...................................................... USAP0176

*Express One Int'l, Inc. v. Sochata*,
    2001 WL 461285 (N.D. Tex. Apr. 30, 2001) ...................................................... USAP0179

*FTC v. Meta Platforms, Inc.*,
    No. 20-3590 (D.D.C. Aug. 1, 2022), Dkt. No. 165 ...................................................... USAP0181

*Gray v. Experian Info. Sols., Inc.*,
    2024 WL 4932539 (W.D. Tex. July 25, 2024) ...................................................... USAP0183

*Krawczyk v. City of Dallas*,
    2004 WL 614842 (N.D. Tex. Feb. 27, 2004) ...................................................... USAP0184

*Ledbetter v. United States*,
    1996 WL 739036 (N.D. Tex. Dec. 18, 1996) ...................................................... USAP0190

*Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*,
    2021 WL 1940801 (E.D. La. May 14, 2021) ...................................................... USAP0192

*Miller v. St. Tammany Par. Sch. Bd.*,
    2019 WL 13275397 (E.D. La. Feb. 1, 2019) ...................................................... USAP0197

*Nexus Display Techs. LLC v. Dell Inc.*,
    2015 WL 13544186 (E.D. Tex. Nov. 2, 2015) ...................................................... USAP0199

i

*Ningde Amperex Tech., Ltd. v. Zhuhai CosMX Battery Co.*,
        2025 WL 1660378 (N.D. Tex. June 11, 2025) ....................................................... USAP0201

*Ruiz v. U.S. Protect*,
        2008 WL 11395490 (S.D. Tex. Aug. 29, 2008) ....................................................... USAP0204

*RYH Props., LLC v. West*,
        2010 WL 11527428 (E.D. Tex. Oct. 14, 2010) ....................................................... USAP0209

*SEC v. Blackwell*,
        2004 WL 6829614 (S.D. Ohio Jan. 15, 2004) ....................................................... USAP0214

*Semcon IP Inc. v. MediaTek Inc.*,
        2018 WL 4501871 (E.D. Tex. Feb. 28, 2018) ....................................................... USAP0218

*Taylor v. Turner Indus. Grp., LLC*,
        2012 WL 4092492 (E.D. Tex. Sept. 17, 2012) ....................................................... USAP0223

*Torralba v. Napolitano*,
        2010 WL 11671745 (S.D. Tex. Feb. 9, 2010) ....................................................... USAP0225

*United States ex rel. Dougherty v. Guild Mortg. Co.*,
        2020 WL 3542391 (S.D. Cal. June 30, 2020)....................................................... USAP0235

*United States ex rel. Gudar v. Texas Dep't of Health*,
        2005 WL 8179552 (S.D. Tex. June 10, 2005) ....................................................... USAP0242

2007 WL 3389968
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Lufkin Division.

BLACKBOARD, INC., Plaintiff,

v.

DESIRE2LEARN, INC., Defendant.

Civil Action No. 9:06-CV-00155-RHC.
|
Nov. 14, 2007.

**Attorneys and Law Firms**

J. Thad Heartfield, The Heartfield Law Firm, Beaumont, TX, Christopher D. Bright, Daniel R. Foster, Fay E. Morisseau, McDermott Will & Emery, Irvine, CA, Claudia R. S. Schwartz, Evan A. Parke, James G. Rizzo, Michael S. Nadel, Rebecca A.H. Watson, McDermott Will & Emery, Washington, DC, Clayton Edward Dark, Jr., Attorney at Law, Lufkin, TX, for Plaintiffs.

Gregory S. Norrod, Jason J. Keener, Jonathan R. Spivey, Michael S. Kramer, Sharon R. Barner, Foley & Lardner, Chicago, IL, James J. Zeleskey, James J. Zeleskey, Attorney at Law, Lufkin, TX, Jo Ben Whittenburg, Orgain Bell & Tucker, Beaumont, TX, for Defendant.

**MEMORANDUM RE PLAINTIFF'S MOTION TO COMPEL**

EARL S. HINES, United States Magistrate Judge.

**\*1** Blackboard's Motion to Compel Defendant Desire2Learn To Produce Relevant Documents Relating to Desire2Learn's Services **[Doc. # 140]**, is referred to the undersigned *ad hoc* for determination under a blanket referral order entered on September 23, 2006 **[Doc. # 22].**

**I. Nature of Suit; Procedural Background**

Plaintiff Blackboard filed suit against Defendant Desire2Learn on July 6, 2006, alleging infringement of United States Patent No. 6,988,138 ("the '138 Patent"). The '138 patent relates to systems and methods for implementing education by providing institutions with the means for allowing the creation of courses to be taken by students online. The court issued its Claim Construction Order construing terms of the '138 Patent on August 3, 2007 **[Doc. # 110].** Blackboard's Motion For Reconsideration was denied on October 15, 2007 **[Doc. # 123].**

During pendency of this action, the parties have indulged themselves in a long and well-documented history of discovery disputes. In a recent Order Granting Plaintiff's Motion to Strike, the court noted that over the past fourteen months, the parties have, between them, *"filed 48 motions, responses and replies ... which, including attachments and exhibits, comprise no fewer than eleven thousand pages."* **[Doc. # 148,** November 5, 2007]. Within a scant three days thereafter, eight additional motions, responses, a reply, and a sur-reply were filed **[Docs. # 145-47, 149-53],** and these new filings, together with attachments, consume over three thousand additional pages. As part of this relentless paper war over the past eight months, no fewer than four motions to compel discovery **[Docs. # 46, 47, 49, 140],** plus two motions to strike on discovery-related issues, have been filed. **[Docs. # 137, 146].**

**II. BLACKBOARD'S MOTION TO COMPEL; DESIRE2LEARN'S RESPONSE**

Under the court's Scheduling Order **[Doc. # 43],** discovery concluded on October 17, 2007. Blackboard filed the Motion to Compel now under consideration on October 30, 2007. Blackboard seeks to compel Desire2Learn to produce all documents not yet produced relating to the services Desire2Learn provides for each of its United States clients, including hosting, training, help desk, implementation, customization, and content. Alternatively, Blackboard requests that the court compel Desire2Learn to certify, individually for each client, that such service documents do not exist.

Desire2Learn responds that Blackboard's motion is untimely, as the discovery period closed on October 17, 2007, and also because the documents Blackboard seeks to compel are not relevant or are cumulative or duplicative of documents already produced.

**III. DISCUSSION**

## A. Relevancy

In federal practice, pretrial discovery is a "broad regime." *See O2 Micro Int'l v. Monolithic Power Sys.,* 467 F.3d 1355, 1366 (5th Cir.2006). Rule 26(b), Federal Rules of Civil Procedure, authorizes discovery of information *"relevant to the claim or defense of any party."* That phrase is defined expansively in Local Rule CV-26(d). [1]

[1]    Under Local Rule CV-26(d), something is relevant if:

> (1) It includes information that would not support the disclosing parties' contentions;
>
> (2) It includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
>
> (3) It is information that is likely to have an influence on or affect the outcome of a claim or defense;
>
> (4) It is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and
>
> (5) It is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

**\*2** It is virtually self-evident that the requested information is relevant to a claim or defense. Blackboard's July 26, 2006, Complaint alleged that Desire2Learn's *"services supporting these D2L products, such as hosting services, training services, help desk support services, implementation and customization professional services, and content services"* infringe the ʹ138 Patent. Pl. Comp. ¶ 10 **[Doc. # 1].** Blackboard's initial Disclosure of Asserted Claims and Preliminary Infringement Contentions, served on December 22, 2006, identified as Accused Instrumentalities:

> *all versions of all D2L products based on the D2L learning system or platform ... such as the D2L eLearning Technology Suite, which includes the D2L Learning Environment, Learning Repository and LiveRoom ... and all services supporting these D2L products, such as hosting services, training services, help desk support services, implementation and customization professional services, and content services.*

Pl. Mot. to Compel, Ex. 1 at 2 **[Doc. # 140].** Blackboard later amended its Infringement Contentions on April 11,

2007, and stated that Desire2Learn's *"Service Spectrum,"* which included *"hosting services, training services, help desk support services, implementation and customization professional services, and content services,"* infringed the ʹ138 Patent by performing the steps of method claims 36-44. *Id.,* Ex. 6, at 3.

Blackboard has repeatedly identified Desire2Learn's services as infringing instrumentalities. Thus, documents related to how those services are implemented and administered for Desire2Learn's clients are relevant to Blackboard's infringement allegations. At a minimum, these documents read on Blackboard's claim that Desire2Learn has induced and contributed to direct infringement of method claims 36-44 by encouraging and enabling Desire2Learn's clients to infringe.

Desire2Learn disputes relevancy because in its eyes Blackboard has failed to identify with specificity *how* Desire2Learn's implementation services infringe the ʹ138 Patent. Standing alone, this alleged deficiency is an insufficient basis for the court to conclude that the documents are not discoverable. Several cases in this district hold that *"relevant discovery in a patent infringement suit includes discovery relating to the technical operation of the accused products, as well as the identity of and technical operation of any products reasonably similar to any accused product." EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.,* 2007 U.S. Dist. LEXIS 69784 at \* 11, 2007 WL 2580969 (E.D.Tex. Aug. 27, 2007); *see also Microunity Sys. Eng'g, Inc. v. Advanced Micro Devices, Inc.,* 2-06-cv-486 [Doc. # 38] at 3 (E.D.Tex. May 23, 2007).

Desire2Learn also argues that Blackboard's motion lacks merit because reasonable and competent counsel would not consider the information necessary to prepare, evaluate, or try a claim or defense. However, Desire2Learn offers no plausible explanation for this conclusory assertion. Desire2Learn speculates only that Blackboard acknowledged by inference that the documents are not needed by competent counsel because (a) they were not included in two letters defining documents Blackboard thought to be encompassed by Desire2Learn's Mandatory Disclosure obligations (Def. Resp. to Pl .'s Mot. to Compel, Exs. U, V **[Doc. # 153]**), and (b) Blackboard filed a summary judgement motion on infringement prior to filing the Motion to Compel.

**\*3** Desire2Learn's arguments both miss the mark. Blackboard's referenced letters only sought to "define

certain categories of documents that Blackboard expects Desire2Learn to produce as part of its Mandatory Disclosures." All relevant and *discoverable* documents are not included within a party's mandatory *disclosure* obligations. Second, Blackboard's motion for summary judgment was filed on the dispositive motion deadline- while the parties still were discussing the possibility of disclosure without court intervention. Blackboard had little or no choice but to file its summary judgment motion without assistance of the requested documents. Blackboard has, however, consistently maintained that Desire2Learn's *services* are an accused infringing instrumentality, and that the requested documents relating to those services are relevant to Blackboard's infringement claims.

### B. Timeliness

Desire2Learn's stronger argument is that Blackboard's motion-filed after the close of discovery-is too late. Rule 37, Federal Rules of Civil Procedure, does not establish any deadline for filing a motion to compel. However, the court's Scheduling Order (establishing an October 17, 2007, deadline for filing any *"motions that may require a hearing"* [Doc. # 43]) arguably does. If so, the court surely has discretion to deny as untimely a motion to compel filed outside the discovery period.

Exercise of *sound* discretion, however, requires that a court not enforce its scheduling order deadline rigidly and without regard to underlying facts and circumstances. *Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395 (N.D.Tex.2006), after surveying a number of cases from other circuits (in which a district court's denial of a motion to compel filed after the discovery period had closed was found not to be an abuse of discretion), compiled a number of secondary factors courts should consider when deciding whether a motion to compel filed after the close of discovery is untimely:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) the age of

the case, (8) any prejudice to the party from whom late discovery was sought, and (9) disruption of the court's schedule.

*Days Inn,* 237 F.R.D. at 398. The *Days Inn* analysis recently was applied in this district. *See Visto Corp. v. Microsoft,* 2007 U.S. Dist. LEXIS 68226 at *7-11 (E.D.Tex. Aug. 31, 2007).

Desire2Learn advocates that application of the *Days Inn* factors will result in denying Blackboard's motion as untimely. The court's analysis, however, does not produce the same conclusion. Blackboard's Motion to Compel was filed October 30, less than two weeks after the discovery period closed on October 17. Desire2Learn was on notice by October 11 (before the close of discovery) that Blackboard planned to file a Motion to Compel in the event the requested documents were not produced. The parties were conferring on the discovery issue throughout October. Blackboard courteously provided Desire2Learn additional time to produce the requested documents before seeking court intervention. This commendable attempt to reach an agreement seems to be the only reason this motion was not filed before October 17. *See, e.g.,* Pl. Mot. to Compel, Ex. 22 at 2 [2]; Ex. 23 at 2; Ex. 28 at 3; Ex. 29 at 2; Ex. 30 [3] **[Doc. # 140].** Therefore, the court will not penalize Blackboard for attempting to first resolve discovery disputes without resorting to court intervention.

[2]
> In an October 12, 2007, letter, Mr. Spivey responded to Blackboard's representation that it would file a motion to compel on October 17 if the documentation was not produced by stating that *"Desire2Learn questions Blackboard's motives given that it has agreed to address each of the concerns raised in your October 11, 2007 letter and provide Blackboard with a response,"* and that Desire2Learn was *"diligently working"* to address Blackboard's concerns.

[3]
> In an October 26, 2007, letter, Mr. Spivey responded to Blackboard's counsel's letters of October 24 and 25, both of which pertained to prior conversations between the parties wherein Mr. Spivey asked for time to discuss the discovery issues with his client. Mr. Spivey stated that he will address *"every issue raised in* [Plaintiff's letter of October 25]," but noted that all of Defendant's key

USAP0146

staff were at a conference and *"are unable to attend to your request [for discovery documents] on the shortened deadline set forth during the meet and confer [of October 25]."* Mr. Spivey further stated that Defendant will *"investigate and make sure that it has provided Blackboard with all of the project plans it has in its possession, custody, and control for all of its U.S. clients after January 26, 2006."*

## C. Cumulative Nature of Documents

**\*4** Desire2Learn also argues that the motion lacks merit because it seeks to compel cumulative or duplicative information. Rule 26(b) (2)(C)(i) states that discovery shall be limited by the court when the discovery sought is unreasonably cumulative or duplicative.

Undoubtedly, the parties are in a better position than the court to ascertain whether further production will be duplicative. Certainly, it appears that Desire2Learn previously has produced *some* documentation on the subject at issue. During several depositions of Desire2Learn's employees taken in August, 2007, witnesses stated that Desire2Learn kept workbooks which contained information about implementation, configuration, and the set-up of Desire2Learn's system for all clients. *See, e.g., id.* at Ex. 13, 87:14-89:8; Ex. 16 at 82:8-83:10, 86:1-87:2, 95:11-96:13. Defense counsel represented at the deposition of Jeremy Auger, that the workbooks, or *"what is used by the implementation services team in order to deploy a product,"* had been previously been produced to Plaintiff. *Id.* at Ex. 13, 234:15-235:6. However, Desire2Learn later produced more client workbooks on October 8, 2007. *Id.* at Ex. 8. By letter of October 11, Blackboard requested documents relating to implementation services that had not previously been produced. *Id.* at Ex. 21. On October 15, Desire2Learns produced even more additional documents in response to this request. *Id.* at Ex. 24.

Given this history, the court suspects that if *all* documentation at issue were previously produced, neither party would have found it necessary to devote over 3000 pages to advocate their opposing views on the subject. Moreover, Desire2Learn has, on at least one other occasion, played word games while characterizing as cumulative or substantially redundant relevant documents that had not been previously produced. [4] For these reasons, the court declines Desire2Learn's invitation to declare the requested documentation as being unreasonably cumulative or duplicative.

[4]    Desire2Learn produced documents relating to Vol030 on May 25, 2007, with an accompanying letter stating that the documents were *"cumulative and substantially redundant"* of its previous production. In a follow-up letter on May 29, Desire2Learn stated that it was *"not aware of any additional documents relating to its services and is not intentionally withholding documents relating to the Accused Services."* On June 12, Blackboard informed Desire2Learn that many of the Vol030 documents were not previously produced. Desire2Learn responded coyly on June 20, that *"[w]hile some of these documents may not have been previously produced, they do not contain substantive information regarding the claims and defenses relevant to this case that was not previously produced."* Pl. Mot. to Compel, Exs. 8-12 **[Doc. # 140].**

## IV. CONCLUSION

Having determined that the requested documentation is relevant and not unreasonably cumulative or duplicative, and having further concluded that Blackboard's motion is timely, the court will grant the motion by separate order.

## All Citations

Not Reported in F.Supp.2d, 2007 WL 3389968

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 10679001
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

Jonathan BROWN

v.

PERFORMING ENERGY SERVICES, LLC et al.

CIVIL ACTION NO. 08-852
|
Filed 01/28/2009

**Attorneys and Law Firms**

Caleb H. Didriksen, III, Didriksen, Saucier, Woods &
Pichon PLC, Amanda Wingfield Goldman, Coats Rose, New
Orleans, LA, Loyd J. Bourgeois, Jr., Loyd J. Bourgeois,
Attorney at Law, Luling, LA, Richard J. Garvey, Jr., Hailey,
McNamara, Hall, Larmann & Papale, Metairie, LA, for
Jonathan Brown.

Christopher H. Riviere, Eric Louis Trosclair, Riviere Law
Firm, Thibodaux, LA, for Performing Energy Services, LLC
et al.


SECTION "I" (2)


**ORDER ON MOTION**

JOSEPH C. WILKINSON, JR., UNITED STATES
MAGISTRATE JUDGE

MOTION: Plaintiff's Motion to Compel, Record Doc. No.
116

ORDERED:

**\*1** XXX: GRANTED IN PART, DENIED IN PART and
DISMISSED AS MOOT IN PART. The motion is denied
insofar as it relates to Interrogatories Nos. 1, 3, 8 and 12. The
current answers are sufficient. The motion is granted as to
Interrogatories Nos. 6 and 11. No objection was asserted as to
these interrogatories, and the current answers are incomplete.
The motion is granted as to Interrogatory No. 13, which is
nothing more than a proper contention interrogatory. Fed.
R. Civ. P. 33(a)(2). The discovery deadline is almost here,
and the time to answer this simple contention interrogatory
has come. All objections to this interrogatory are overruled,

and defendant must provide full and complete answers to
Interrogatories Nos. 6, 11 and 13.

In addition, the copy of interrogatory answers provided to
me in connection with this motion does not include the
verification of interrogatory answers required by Fed. R. Civ.
P. 33(b)(1), (3) and (5). The required verification must be
provided.

As to plaintiff's Requests for Production, the motion is
granted as to Requests for Production Nos. 2, 3 and 4. The
objections are overruled. Defendant must provide plaintiff
with new written responses to these requests, pursuant to
Fed. R. Civ. P. 34(b), clearly stating, without objection, that
all non-privileged materials responsive to these requests are
being made available for inspection and attaching a log, as
required by Fed. R. Civ. P. 26(b)(5), as to any responsive
privileged materials that are being withheld from discovery
on privilege or work product grounds. The motion is granted
in part and denied in part as to Request for Production No.
5. The written response is mostly sufficient, except that it
fails adequately to identify the single document that defendant
asserts is responsive. As to "the log" vaguely identified in
this response, defendant must "label them to correspond to
the categories in the request," Fed. R. Civ. P. 34(b)(2)(E)
(i); i.e., specifically identify to plaintiff the materials it is
producing that are responsive to this particular request. The
motion is granted as to Requests for Production Nos. 12, 13
and 25. The objections are overruled. No written response to
No. 25 has been provided. The current written responses to
Nos. 12 and 13 are insufficient because they fail to comply
with Fed. R. Civ. P. 34(b)(2)(B) in that they assure neither
plaintiff nor the court that all responsive materials are being
produced. Defendant must provide new written responses to
these requests, without objection, clearly stating that all non-
privileged materials responsive to these requests are being
made available for inspection and attaching a log, as required
by Fed. R. Civ. P. 26(b)(5), as to any responsive privileged
materials that are being withheld from discovery.

As to Request for Production No. 29, no Rule 34(b) written
response has ever been provided. Defendant has now limited
this request to "the records of Captain Simpson for only
the prior five years." Record Doc. No. 116-5 (Exhibit C to
plaintiff's Memorandum in Support of Motion to Compel,
plaintiff's counsel's letter dated December 12, 2008 at p.
4). Discovery of the personnel files of non-party individual
employees presents special concerns about the privacy rights
of the individuals involved. This does not mean that a party is
never entitled to discover the personnel files of an opponent's

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 9 of 103

Brown v. Performing Energy Services, LLC, Not Reported in Fed. Supp. (2009)

employees or that everything contained in them is irrelevant. The court must balance the interests of the parties in obtaining relevant discovery against the privacy interests of individual non-parties. Thus, "a district court has discretion to determine whether discovery of such files is warranted." Davis v. Precoat Metals, No. 01 C 5689, 2002 WL 1759828 (N.D. Ill. July 29, 2002) (citing Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994)); Knoll v. American Tel. & Tel. Co., 176 F.3d 359, 365 (6th Cir. 1999); Atkinson v. Denton Publ'g Co., 84 F.3d 144, 148 (5th Cir. 1996).

 *2  Accordingly, the motion is granted in part and denied in part as to Request for Production No. 29. Defendant must produce only that portion of Captain Simpson's personnel file relating to his job qualifications, training, experience and performance during the preceding five years. Any other contents of his personnel file must not be produced. Before producing any portion of Captain Simpson's personnel file, defendant must redact all personal data identifiers, including Social Security numbers, names of minor children, dates of birth, financial account numbers and any other personal information of the type addressed in this court's "Notice Concerning Personal Data Identifiers" dated April 9, 2003, in compliance with the policy of the Judicial Conference of the United States and the E-Government Act of 2002. Defendant must also remove from the personnel file and not produce any medical records or medical information of the sort that may be protected by HIPPA. In addition, all materials produced by defendant in response to Request for Production No. 29 is subject to the following protective order: All information produced in response to Request for Production No. 29 in accordance with this order must be marked and kept confidential and used only for purposes of this litigation and must not be disclosed to any one except parties to this litigation, the parties' counsel of record and experts retained in connection with this litigation. All persons to whom such information is disclosed must sign an affidavit that must be filed into the record, agreeing to the terms of the protective order and submitting to the jurisdiction of this court for enforcement of those terms. If any party seeks to add other terms to this protective order, counsel must confer

immediately and submit by motion any proposed protective order.

The motion is dismissed as moot insofar as it seeks an order compelling responses to plaintiff's fourth and fifth sets of interrogatories and requests for production. The sole basis of this part of the motion was defendant's failure to provide responses to this written discovery. Defendant has now provided responses, albeit in an untimely fashion. By letter separately filed in the record, plaintiff's counsel has advised that this portion of the motion, except as it relates to the request for an award of fees and costs, is moot. Plaintiff may pursue further relief in connection with these responses, if he contends hereafter that any part of these untimely responses is deficient in some way.

**IT IS ORDERED** that all additional interrogatory answers and written responses to requests for production ordered herein, together with actual production of all responsive documents or other materials that have not already been provided, if any, and the required verification of interrogatory answers, must be provided by defendant Elevating Boats to plaintiff no later than **February 11, 2009**.

The motion is also granted insofar as it seeks an award of fees and costs incurred in connection with the motion. Defendant Elevating Boats provided responses to plaintiff's fourth and fifth sets of written discovery only after this motion was filed. An award is appropriate in these circumstances. Fed. R. Civ. P. 37(a)(5)(A). The remainder of the motion has been granted in part and denied in part. Under these circumstances, the court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Applying these standards, **IT IS ORDERED** that defendant Elevating Boats must pay plaintiff $500 in reasonable fees and costs incurred in connection with this motion.

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10679001

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1227821

Only the Westlaw citation is currently available.

United States District Court,

S.D. Texas,

McAllen Division.

CITRO–REY S. DE R.L. DE C.V., Plaintiff,

v.

L & M COMPANIES, INC., Defendant.

Civil Action No. 7:07–154.

|

May 5, 2009.

**Attorneys and Law Firms**

James Patrick Grissom, McAllen, TX, Juan R. Zamora, Tijerina and Zamora PC, Edinburg, TX, for Plaintiff.

Oscar Carl Hamilton, Jr., Dan K. Worthington, Atlas & Hall LLP, McAllen, TX, for Defendant.

### *ORDER DENYING MOTION TO COMPEL*

MICAELA ALVAREZ, District Judge.

**\*1** Pending before the Court is Defendant L & M Companies, Inc. Motion to Compel Discovery Responses, filed on February 23, 2009. [Dkt. No. 48].[1] On April 8, 2009, Plaintiff Citro–Rey S. de R.L. de C.V. filed an untimely Response. [Dkt. No. 53]. The Court **DENIES** Defendant's Motion to Compel Discovery Responses.

[1]    "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

### I. BACKGROUND

This cause of action concerns alleged violations of the Perishable Agricultural Commodities Act (PACA), the Deceptive Trade Practices Act, common law fraud, negligent misrepresentation, negligent hiring, and breach of contract in the export of citrus fruits from Mexico. [Dkt. No. 10, 12]. On September 7, 2007, the Court issued a Scheduling Order that set discovery and motion deadlines for the completion of discovery and the filing of motions. [Dkt. No. 9]. The Court later extended these deadlines to February 13, 2009 to complete discovery and February 23, 2009 to file "[a]ll other motions." [Dkt. No. 47].

On February 23, 2009, Defendant filed its Motion to Compel Discovery Responses. [Dkt. No. 48]. In this Motion, Defendant asks the Court to compel Plaintiff to fully respond to its:

(1) First Set of interrogatories, requests for production, and requests for admissions served on October 15, 2007;[2]

[2]    Defendant complains of Plaintiff's responses to request for production numbers 1, 2, 3, 4, 5, 8, 10, 11, 12, and 13–21 as well as Plaintiff's response to its interrogatories and requests for admissions generally. [*Id.* at ¶¶ 3–24].

(2) Second Set of interrogatories and requests for production served on July 31, 2007(sic).[3]

[3]    Specifically, Defendant wants Plaintiff to answer interrogatory numbers 3 and 6 and request for production numbers 1 and 2. [*Id.* at 128–31].

[*Id.* at ¶¶ 1–32]. Plaintiff responded to Defendant's first discovery request on December 7, 2007 but amended its answers to certain production requests on January 29, 2008 and Feb. 15, 2008. [*Id.* at ¶¶ 2, 20, 23 & Exs. A, B, C, D]. Plaintiff then responded to the second discovery request on October 15, 2008. [*Id.* at ¶ 26, Ex. E].

In its Motion, Defendant also complains that during discovery Plaintiff produced three sets of documents. Defendant received the second set of documents (Bates Stamps 1–254) on February 15, 2008. [*Id.* at ¶ 20]. Defendant, however, does not provide the exact dates it received the first or third sets (Bates Stamps 1–138 & 1–261).[4] Defendant does not give a date when it was provided the first set of documents but it appears to be in early 2008. According to Defendant, the third set of documents contains some of the same documents as the first two sets. Because of this duplication, Defendant contends "Plaintiff should be ordered to eliminate duplicate bates stamped numbers and eliminate documents which are the same documents with two different bates stamped numbers and should be ordered to identify which documents are responsive to which discovery requests." [Dkt. No. 48 at ¶ 32]. Finally, Defendant requests that the Court impose discovery sanctions against Plaintiff. [*Id.* at ¶ 34–35].

USAP0150

4      It appears that Plaintiff gave Defendant the first set in early 2008. [*See id.* at ¶ 15].

## II. DISCUSSION

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. Fed.R.Civ.P. 37. It permits a party to file a motion when a party fails to respond to a request for production, fails to answer an interrogatory, or provides incomplete or evasive answers in response to a discovery request. *Id.* While Rule 37 does not provide a deadline for filing a motion to compel, Rule 16(e) permits the Court to issue a scheduling order that sets deadlines in a case. FED. R. CIV. P. 16(e). Here, in a Rule 16(e) Scheduling Order the Court established a date for the completion of discovery of November 20, 2007 which the Court later extended to February 13, 2009. [Dkt. No. 9, 47].

**\*2** Defendant's Motion to Compel does not comply with the Court's deadline. It was made on February 23, 2009—the date by which all contested motions were to be filed. In order to have truly obtained the discovery that he seeks, Defendant should have filed his motion to compel sufficiently in advance of the discovery deadline, not the motions deadline. *Material Supply Int'l Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 992 (D.C.Cir.1998); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.,* Civ. No. H–07–155, 2009 WL 197739 (S.D.Tex. Jan.27, 2009) (noting that most courts look to the discovery deadline and not motion filing deadline to determine if a motion to compel has been timely filed); *Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395, 397–98 (N.D.Tex.2006). A sufficiently advanced filing would have permitted the Court to hear the motion, and then if granted the non-movant to produce the compelled discovery prior to the deadline. Defendant's motion to compel here was late. *Days Inn Worldwide,* 237 F.R.D. at 397.

To determine whether to consider a motion filed after the discovery deadline, courts have also looked at a number of secondary factors. These factors include: (1) the length of time from the discovery deadline to when the motion to compel was filed; (2) the amount of time the moving party knew about the discovery problems; (3) whether the Court extended the discovery deadline; (4) the explanation for why the motion is tardy; (5) whether the parties have filed dispositive motions; (6) how old the case is; (7) prejudice that may result to the party from whom the late discovery is sought; (8) disruption of the Court's schedule. *Days Inn Worldwide,* 237 F.R.D. at 398 (compiling these eight factors).

While Defendant filed the instant motion only ten days after the completion of the discovery deadline, most of the other factors weigh in favor of the Court not considering the motion. The Court extended the discovery deadline on six separate occasions giving Defendant ample opportunity to file its motion to compel before the final discovery deadline. [Dkt. No. 15, 18, 21, 24, 45, 47]. Second, Defendant should have known of the problems with Plaintiff's responses well in advance of the discovery deadline. Defendant received Plaintiff's amended responses to its first discovery request on January 29, 2008, and February 15, 2008 [5] more than a year before the discovery deadline. [Dkt. No. 48, at ¶¶ 20, 23, Exs. A–D]. Defendant received Plaintiff's responses to its second discovery request on October 15, 2008, four months before the discovery deadline. [*Id.* at ¶ 26, Ex. E]. Defendant does not state when it received the third set of documents to which it objects as repetitive and unresponsive. [*See id.* at ¶ 32]. Defendant's delay in raising its concerns with the Court over Plaintiff's responses is unacceptable. Some courts have gone so far as to find that a party has waived its objection to a party's discovery when it has failed to enforce its discovery rights in a timely manner. *See e.g., Packman v. Chicago Tribune Co.,* 267 F.3d 628, 647 (7th Cir.2001); *Public Loan Co. v. FDIC,* 803 F.2d 82, 87 (3d Cir.1986) ( "[D]istrict court was [ ] well within its discretion in limiting appellants' untimely discovery requests"); 2 FEDERAL CIVIL PROCEDURE BEFORE TRIAL: FIFTH CIR. ED. at 11: 2353 (Rutter 2008). Third, Defendant has provided no explanation for why its motion to compel was filed after the discovery deadline. Fourth, this case is almost two years old. Indeed, it is the oldest civil case on this Court's docket. The parties have filed the joint pretrial order and the Court is ready to proceed to trial. [Dkt. No. 50]. Granting more time for discovery will disrupt the Court's schedule. After considering all of these factors, the Court concludes that permitting Defendant to proceed with his untimely motion is unjustified.

5      Defendant received the original responses on December 7, 2007 but Plaintiff amended its responses on January 29, 2008 and then on Feb. 15, 2008. [Dkt. No. 48 at ¶¶ 20, 23]

**\*3** Moreover, this case is very similar to the Fifth Circuit's unpublished decision in *Grey v. Dallas Indep. Sch. Dist.,* 265 Fed.Appx. 342 (5th Cir.2008). In *Grey,* the Fifth Circuit found that the district court did not abuse its discretion in denying a motion to compel discovery when "it was filed on the day of the discovery deadline after an extensive discovery period." *Id.* at 348 (citing *Turnage v. Gen. Elec.*

*Co.,* 953 F.2d 206, 209 (5th Cir.1992)); *see also Material Supply Int'l Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 992 (D.C.Cir.1998) (upholding district court's denial of motion to compel as untimely when it was filed after close of discovery but before motions deadline); *Days Inn Worldwide, Inc. v. Sonia Investments,* 237 F.R.D. 395, 397– 98 (N.D.Tex.2006) (determining motion to compel untimely when filed two weeks after discovery deadline, even though filed on day of motions deadline); *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 94 (1st Cir.1996) (finding no abuse of discretion where party "waited more than one month after the second extended deadline had elapsed to properly request an order from the district court"). Here, Defendant's motion was not filed on the last day of discovery but ten days after discovery. Defendant also had over a year and a half to conduct discovery. Defendant's Motion to Compel was untimely.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion to Compel Production is untimely, and the motion, therefore, is **DENIED.**

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2009 WL 1227821

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**USAP0152**

DaVita, Inc. v. Scot Industries, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 11443618
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas.

DAVITA, INC., et al.
v.
SCOT INDUSTRIES, INC., et al.

CIVIL ACTION NO. 17-480
|
Signed December 3, 2018

**Attorneys and Law Firms**

Claudia Veronica Rivas, Amy Kathleen Anderson, Joseph E. Bain, Jones Walker LLP, Houston, TX, for DaVita Inc.

Claudia Veronica Rivas, Amy Kathleen Anderson, Joseph E. Bain, Jones Walker LLP, Houston, TX, David E. Dunham, Taylor Dunham and Rodriguez, LLP, Austin, TX, for Renal Treatment Centers Southeast LP.

Samuel W. Butler, Christin Jeffrey Jones, Kilpatrick Townsend & Stockton LLP, Dallas, TX, Bruce Alan Smith, Ward, Smith & Hill, PLLC, Longview, TX, for Scot Industries, Inc., et al.

SECTION "H" (3)

ORDER

DANIEL E. KNOWLES, III, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court are Plaintiffs' Motion to Compel [Doc. #34] and Defendants' Motion to Quash or, Alternatively, Motion for Protection from Plaintiffs' Subpoena to Testify at a Deposition to Third-Party MultiPlan, Inc. [Doc. #36]. The motions are opposed. [Doc. ##44 & 45]. Having reviewed the pleadings and the case law, the Court rules as follows.

**I. Background**

This ERISA case arises from the denial of benefits covering dialysis services provided by plaintiffs. DaVita Inc. ("DaVita" and/or "plaintiffs") provides dialysis treatments at various facilities, including one operated by plaintiff Renal Treatment Centers Southeast LP d/b/a Longview Dialysis Center. An employee (the "Employee") of defendant Scot Industries, Inc. ("Scot" and/or "defendants") received care at plaintiffs' facility from June 22, 2016 to January 31, 2017 pursuant to Scot's Medical Benefit Plan, an ERISA plan sponsored and administered by Scot. As part of that treatment, the employee assigned his entire interest in any benefits due from the plan to plaintiffs, who then submitted claims for the employee's treatment to defendants. Plaintiffs allege that defendants paid plaintiffs' claims until August 2015, when defendants began to demand itemized statements before making a payment. Plaintiffs allege that they provided the requested documentation but were still not paid for the services that they delivered. Additionally, plaintiffs allege that they were not given a denial notice with specific reasons for denial and that defendants did not hear their appeal. Plaintiffs now sue to recover benefits due under the plan.

**II. The Motion to Compel**

Federal Rule of Civil Procedure 26(b)(1) states in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.... Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. Rule 26(b)(1). Limitations on discovery include those set out in Rule 26(b)(2)(C), including that the court must limit the frequency or extent of discovery otherwise allowed by the rules if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

With respect to ERISA actions brought under 29 U.S.C. § 1132(a), courts are charged with monitoring discovery "closely" because review "is essentially analogous to a review of an administrative agency decision." *Crosby v. La. Health Serv. & Indem. Co.,* 647 F.3d 258, 264 (5th Cir. 2011). As such, discovery is disallowed where it would constitute reconsideration of the administrative record and whether coverage should have ultimately been afforded. *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 299-300 (5th Cir. 1999), *abrogated on other grounds by* Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). However, this prohibition does not extend to other questions that may arise in an ERISA action, such as: (1) the completeness of the administrative record; (2) the plan administrator's compliance with ERISA's procedural regulations; and (3) the existence and extent of a conflict of

USAP0153

interest created by a plan administrator's dual role in making benefits determinations and funding the plan. *Crosby*, 647 F.3d at 263. In addition, evidence is irrelevant to the validity of the decision regarding coverage under the plan unless it "is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Id.*

**\*2** In its motion to compel, plaintiffs seek four sets of discovery: (1) defendants' contract with MultiPlan, Inc. ("MultiPlan"); (2) the documents and evidence that defendants will use in connection with their affirmative defenses; (3) the depositions of Steven Wilmeth, President of Scot Industries, Inc., and David Jacks, the Plan Administrator; and (4) defendants' expert discovery. The Court will address each seriatim.

### A. The Multiplan Contract

There is no dispute that the Employee's dialysis treatments are covered by the Plan. Defendants dispute only the propriety of the rates charged by plaintiffs for said treatments. However, plaintiffs argue that defendants agreed to the discounted rates charged by plaintiffs by contracting with MultiPlan and subscribing to the MultiPlan PPO network, for which plaintiffs are preferred providers. Plaintiffs maintain that defendants' contract with MultiPlan is thus a central subject of this motion.

Defendants contracted with MultiPlan to provide their Plan members with access to MultiPlan's network of providers and to receive the benefits of the discounted rates that MultiPlan negotiated with its preferred providers, such as plaintiffs. Plaintiffs' contract with Multiplan provides Multiplan's subscribers with an agreed-upon discounted rate off plaintiffs' billed charges (the "Contract Rate"), a discount from which defendants have allegedly benefited. Plaintiffs maintain that the Plan incorporates defendants' MultiPlan PPO contract. Plaintiffs contend that pursuant to defendants' MultiPlan PPO contract and the Plan, defendants agreed to pay Multiplan network providers like plaintiffs the discounted rates that MultiPlan negotiated with the providers, minus the patient's copayments, coinsurance, and deductibles.

Plaintiffs maintain that defendants' MultiPlan contract is clearly relevant to this dispute. They argue that defendants' MultiPlan PPO contract is expressly referenced and incorporated into the Plan. It thus informs how the Plan should be interpreted. Plaintiffs maintain that it is evidence of defendants' agreement to pay the Contract Rate to MultiPlan

PPO preferred providers like plaintiffs as benefits owed under the Plan. Defendants' MultiPlan PPO directly speaks to the appropriate rate to be paid, which plaintiffs argue is the central dispute in this case. They also argue that the MultiPlan PPO contract is relevant because it demonstrates how the Plan was interpreted in the past, and they may have contractual third-party beneficiary rights under defendants' contract with MultiPlan. Plaintiffs are willing to enter a protective order to address any of defendants' confidentiality concerns.

Defendants argue that the MultiPlan contract is not part of the Plan and is not part of the Administrative Record. Defendants maintain that it is undisputed that plaintiffs' claims for benefits under the Plan were denied because they refused to provide detailed billing information to substantiate the alleged services provided. They argue that it is also undisputed that the Plan Administrator had the right to request, and plaintiffs had the obligation to provide, "such evidence as the Plan Administrator shall reasonably require to substantiate the nature, the amount, and the timeliness of any Eligible Charges incurred...." While plaintiffs argue that the rate under the MultiPlan is the central issue of this dispute, defendants contend that this is not a valid basis to compel discovery because evidence relating to the merits or basis of the coverage determination is not admissible or discoverable. Defendants argue that plaintiffs seek the MultiPlan PPO contract because they are on a fishing expedition to investigate potential state-law breach-of-contract claims against defendants. Defendants note that plaintiffs never raised in their complaint that defendants erroneously interpreted the terms of the Plan, and plaintiffs' argument to the contrary is a red herring.

**\*3** This Court has reviewed plaintiffs' complaint and finds that plaintiffs fail to ever mention that defendants misinterpreted the terms of the Plan in the past. Moreover, the MultiPlan is not part of the administrative record, and whether it should be is a merits-based argument more properly pressed before the District Court. In their complaint, plaintiffs allege only that defendants ceased payments in August 2015 after requesting itemized statements from plaintiffs, that plaintiffs ultimately provided said statements, and that defendants still refused to pay them.

The MultiPlan PPO contract is not part of the administrative record, and the District Court has already denied its inclusion therein given that plaintiffs have wholly failed to allege that the Contract was before the Plan Administrator at the time he made his decision as to benefits. [Doc. #29]. While plaintiffs

*DaVita, Inc. v. Scot Industries, Inc., Not Reported in Fed. Supp. (2018)*

have moved the District Court for reconsideration of this issue – so as to include the Multiplan PPO Contract in the administrative record [Doc. #33] – the District Court has yet to rule on said motion. Given the limited nature of discovery in an ERISA case, and the failure of plaintiffs to allege that defendants misinterpreted the Contract in the past, this Court denies the motion as to this request. The district Court may resolve this issue in plaintiffs' favor on the motion for reconsideration, but that has yet to be seen.

### B. Request for Production ("RFP") No. 22

This RFP seeks "any documents or communications identifying any material information which Defendants contend they were ignorant when the[y] paid the Claims that are the subject of Defendants' offset defense." Defendants first referred plaintiffs to the administrative record. They then "further referred" plaintiffs to the pleadings from five specific lawsuits in which plaintiffs are being sued and intimated that they may use any pleadings or filings from said lawsuits. They also made reference to Plaintiffs' annual reports and SEC filings, which they produced with their response. Plaintiffs argue that defendants must specifically point to the documents on which they will rely.

The Court's review of the record and defendants' responses satisfy it that defendants have adequately responded to this RFP at this time. They have pointed plaintiffs to the record and the lawsuits/investigations on which they may rely to prove this affirmative defense, and – given the District Court's briefing schedule – most likely do not know the specific documents on which they will rely until plaintiffs file their opening brief and/or any relevant discovery period ends.

The Court notes that while neither party raised it, this is a contention interrogatory. Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2); *see also United States v. State*, Civ. A. No. 11-470, 2015 WL 9165910, at *4 (M.D. La. Dec. 16, 2015) ("An interrogatory may reasonably ask for the material or principal facts which support a contention. Rule 33 contemplates that a responding party may not object merely because a contention interrogatory requires the application of opinion to fact."). As explained by one court, a contention interrogatory is "an interrogatory that asks a party to state what it contends, state whether it makes a

specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention." *InternetAd Systems, L.L.C. v. ESPN, Inc.*, No. Civ. A. 3:03CV2787, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004); *see also Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. 2007) (explaining that contention interrogatories " 'may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts.' ") (quoting *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996)).

**\*4**  It is within the court's discretion to determine the appropriate time for responding to a contention interrogatory. *In re Katrina Canal Breaches*, Civ. A. No. 05-4182, 2007 WL 1852184, at * 3 (E.D. La. June 27, 2007) ("As to contention interrogatories of this sort, Rule 33(c) provides that 'the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.' This Rule is purely permissive. The court may – but is certainly not required to – delay a response."); *InternetAd Systems*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004) ("Although it is not necessarily objectionable and may even be advisable, the language of Rule 33(c) and the Advisory Committee note support the conclusion that it is within a court's discretion to decide when an otherwise-proper interrogatory must be answered.").

Some courts considering this issue have required a party to answer contention interrogatories tracking the language of their complaint early in the discovery process. *See Strauss*, 242 F.R.D. at 235 ("Requiring plaintiffs in this case to answer subparts (ii) and (iii) at this early stage in discovery would not be futile or burdensome because the interrogatories track the allegations in the complaint, upon which plaintiffs presumably have sufficient facts to plead. In any event, plaintiffs are under an ongoing obligation to supplement their discovery responses. See Fed. R. Civ. P. 26(e). Although Credit Lyonnais has not yet produced any documents to plaintiffs and only one deposition has occurred, the plaintiffs are ordered to disclose the facts and documents that support the allegations in their complaint, as requested in Interrogatory 4, by June 25, 2007."); *Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 650 (D. Kan. 2011) ("Here, the Court finds no persuasive reason for Defendants to defer their answers to Interrogatory Nos. 26-28. Defendants should answer these interrogatories as fully as they can, keeping

in mind their continuing obligation to supplement their discovery responses as additional or different information becomes available. Although Defendants have not yet deposed Plaintiff's expert witness, Plaintiff has already provided Defendants with her expert's report."). Others "tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery is almost complete." *In re eBay Seller Antitrust Litiga.*, No. C 07-1882, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008); *see also InternetAd Sys.*, 2004 WL 5181346, at *2 ("Many courts exercise [their] discretion ... and conclude that contention interrogatories need not be answered until later in the discovery process."). As explained by one court,

> [M]ost courts agree that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – typically at the end of the discovery period." Premature contention interrogatories are discouraged for several reasons. First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.

*Sigman v. CSX Corp.*, Case No. 3:15-cv-13328, 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016) (internal citations omitted) (denying motion to compel responses to contention interrogatories without prejudice where discovery was not nearing its end and no expert reports had yet been exchanged).

**\*5** This Court dislikes contention interrogatories, and, in the past, has only ordered compliance with them toward the close of discovery. Accordingly, even were the Court to find that defendants had insufficiently responded to this RFP, it would deny the motion at this time on the ground that it is a contention interrogatory. Should circumstances so warrant, plaintiffs may re-propound this interrogatory at a later date.

### C. The Depositions of Wilmeth and Jacks

Plaintiffs seek to take the deposition of David Jacks, the Plan Administrator, and Steven Wilmeth, the President of Scot Industries, Inc. Plaintiffs contend that the purpose of

the depositions is to determine whether a conflict of interest existed when Jacks rendered his ultimate decision to deny coverage. Plaintiffs maintain that Jacks is not an independent party, that he is beholden to Scot, his employer, and that correspondence reveals that Wilmeth controlled and directed the denials here.

First, this Court's review of the complaint reveals that plaintiffs never alleged that Jacks operated under a conflict of interest when he denied coverage here. Discovery is allowed only when it relates to a party's claim or defense as alleged in the complaint. Fed. R. Civ. P. 26(b)(1). There is no alleged conflict of interest in the complaint here.

Moreover, in *Crawford v. Hartford Life & Accident Insurance Co.*, the court noted the following:

> Under the circumstances of this case, the Court finds that a deposition is unduly burdensome and expensive, and the information sought could just as effectively be provided in response to written discovery. The cost of a live deposition is prohibitive and would undermine ERISA's goal of resolving claims efficiently and inexpensively. *Id.* at 264, citing *Semien v. Life Ins. Co. of No. Am.*, 436 F.3d 805, 814-15 (7th Cir. 2006). As a general rule, *unless very specific circumstances are set forth by a claimant which show that certain information involving one of the three areas of appropriate discovery can only be discovered via a deposition*, then depositions will be not be approved in ERISA cases by the undersigned. This is the standing practice in ERISA cases.

No. 4:10CV141-HTW-LRA, 2011 WL 5237826, at *2 (S.D. Miss. Nov. 1, 2011) (emphasis added). Apart from the letter that may demonstrate that Wilmeth allegedly controlled Jacks' decision – a letter that this Court does not appear to have before it – plaintiffs fail to set forth specific circumstances that may demonstrate that a conflict of interest exists here. As the *Crawford* court noted, plaintiffs could have easily propounded narrowly-tailored interrogatories on Jacks and

Wilmeth, a practice which would have obviated the need for any expensive depositions here. *See id.* In other words, given the limited extent of discovery in ERISA cases, there are other, less intrusive methods through which plaintiffs may obtain the information that they need. Accordingly, this request is denied. This Order reserves the right to plaintiffs, however, to propound narrowly-tailored interrogatories on Wilmeth and Jacks, should circumstances so warrant.

### D. Expert Discovery

This issue appears to be moot. In their opposition, defendants maintain that they do not have any testifying expert witnesses, and there are no experts to disclose at this time and thus none to depose. In its reply, plaintiffs fail to raise this issue, implying that it is moot. In any event, even were it not moot, this Court cannot order defendants to produce what they do not have or what they do not intend to use. The motion is denied as to this request.

### III. The Motion to Quash and/or for Protective Order

**\*6** Plaintiffs served a subpoena to a third party to this action, MultiPlan, in which they seek a deposition on written questions and requests for production (the "Subpoena"). The deadline for MultiPlan to comply with the Subpoena was October 11, 2018. Scot argues that the Subpoena seeks information clearly outside the Administrative Record that cannot be considered in an ERISA action. Additionally, they contend, the documents sought by the Subpoena, the contract between defendants and MultiPlan and correspondence related thereto, are confidential. Plaintiffs' arguments are reminiscent of those outlined above, *i.e.*, that the responses and the contract will reveal how MultiPlan has interpreted it in the past and will also demonstrate a conflict of interest.

Subpoenas duces tecum " 'are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26.' " *Garvin v. S. States Ins. Exchg. Co.*, No. 1:04cv73, 2007 WL 2463282, at \*5 n.3 (N.D. W. Va. Aug. 28, 2007) (quoting *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at \*7 (E.D. La. Oct. 6, 1999)); *see Nicholas v. Wyndham Int'l, Inc.*, No. 2001/147-M/R, 2003 WL 23198847, at \*1-2 (D.V.I. Oct. 1, 2003) (finding that the "clear majority position [is] that use of Rule 45 subpoenas constitutes discovery"); *Mortg. Info. Servs. v. Kitchens*, 210 F.R.D. 562, 566–67 (W.D.N.C. 2002) ("a Rule 45 subpoena does in fact constitute discovery"); *accord Martin v. Oakland Cnty.*, No. 2:06-CV-12602, 2008 WL 4647863, at \*1 (E.D. Mich. Oct. 21, 2008); *Fabery v.*

*Mid-S. Ob-GYN*, No. 06-2136, 2000 WL 35641544, at \*1 (W.D. Tenn. May 15, 2000). Thus, both Rules 45 and 26(b) apply to the instant motion.

Rule 45(d)(1) requires that the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply ... or (iv) subjects a person to undue burden." *Sines v. Kessler*, 325 F.R.D. 563, 565 (E.D. La. 2018).

A party who receives a subpoena and moves to quash or to modify it "has the burden of proof to demonstrate that compliance would impose undue burden or expense. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (emphasis added). Proof that actually establishes the extent of the alleged undue burden is required to obtain relief, not mere unsupported generalizations, conclusory statements or assertions. *See Sines*, 325 F.R.D. at 565-66. "Generally, modification of a subpoena is preferable to quashing it outright." *Id.* In determining whether a particular subpoena presents an undue burden, the court must consider "(1) relevance of the information requested; (2) the need of the party for the [subpoenaed materials]; (3) the breadth of the ... request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested [materials]; and (6) the burden imposed. Further, if the person to whom the ... request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

The information that plaintiffs request here address the MultiPlan contract that this Court addressed above. The Court finds that it is no more than an attempt to circumvent the possibility that this Court will deny plaintiffs' motion to compel as to the contract, as this Court has done. For all of the reasons stated above, then, this subpoena seeks information not discoverable at this time in this lawsuit.

Moreover, this Court finds that the subpoena is unduly burdensome. "If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, *however slight*, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?" *AF Holdings, L.L.C. v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) (emphasis added). Because this Court has already found this information non-discoverable, the

USAP0157

subpoena on its face imposes an undue burden on defendants, and the Court quashes it.

 **\*7** In addition, Rule 45 provides that "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires ... disclosing a trade secret or other confidential research, development, or commercial information...." Fed. R. Civ. P. 45(d)(3)(B)(i). The contract between defendants and Multiplan is confidential, and defendants and MultiPlan have strived to maintain this confidentiality. [Doc. #36-3 at ¶¶ 2-3]. There is no indication from the record or the evidence before it that either Multiplan or defendants has waived confidentiality. [*See id.*]. The Court thus quashes the subpoena on this ground as well.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Compel [Doc. #34] id. DENIED.

**IT IS FURTHER ORDERED that** Defendants' Motion to Quash or, Alternatively, Motion for Protection from Plaintiffs' Subpoena to Testify at a Deposition to Third-Party MultiPlan, Inc. [Doc. #36] is GRANTED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 11443618

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2023 WL 9645458

Only the Westlaw citation is currently available.

United States District Court,

E.D. Texas, Texarkana Division.

DEXON COMPUTER, INC.

v.

CISCO SYSTEMS, INC. and CDW Corporation

Case No. 5:22-cv-53-RWS-JBB

|

Signed September 5, 2023

**Attorneys and Law Firms**

David Reichenberg, Matthew F. Bruno, Pro Hac Vice, Matthew Killan Hayden, Pro Hac Vice, Tina Lapsia, Manatt, Phelps & Phillips, LLP, New York, NY, Christian J. Hurt, Ty William Wilson, William Ellsworth Davis, III, Rudolph Fink, IV, The Davis Firm, PC, Longview, TX, for Dexon Computer, Inc.

Aaron M. Panner, Alex Atticus Parkinson, Andrew Goldsmith, Caroline Schechinger, Chiseul Kylie Kim, Hilary Weaver, Pro Hac Vice, Leslie V. Pope, Pro Hac Vice, Ryan M. Folio, Daniel V. Dorris, Pro Hac Vice, Donald Chanslor Gallenstein, Geoffrey Block, Pro Hac Vice, Jonathan Liebman, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC, Deron R. Dacus, The Dacus Firm, PC, Tyler, TX, Gregg Costa, Gibson Dunn & Crutcher, Houston, TX, Jennifer Haltom Doan, Mariah Leigh Hornok, Haltom & Doan, Texarkana, TX, Louis Feuchtbaum, Lyndsey C. Heaton, Pro Hac Vice, Richard J. Nelson, Sideman & Bancroft LLP, San Francisco, CA, for Cisco Systems, Inc.

James Arthur Reeder, Jr., John Bruce McDonald, Pro Hac Vice, Jones Day, Houston, TX, Cole Alan Riddell, Jennifer Haltom Doan, Mariah Leigh Hornok, Haltom & Doan, Texarkana, TX, Danielle Leneck, Pro Hac Vice, Jones Day, Los Angeles, CA, Thomas York, Jones Day, Dallas, TX, for CDW Corporation.

## ORDER

J. Boone Baxter, UNITED STATES MAGISTRATE JUDGE

**\*1** The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial

purposes in accordance with 28 U.S.C. § 636. The following pending motion is before the Court:

> **Cisco System, Inc.'s Motion to Compel Interrogatory Responses (Dkt. No. 251).**

Cisco requests the Court order Dexon to provide complete responses to Cisco's Interrogatory Nos. 31-35. After considering the relevant briefing, Cisco's motion is **GRANTED, as modified**. As explained below, Cisco has served one too many interrogatories and therefore must select four of the unanswered Interrogatory Nos. 31-35 for Dexon to object and/or respond to.

### I. BACKGROUND

On June 5, 2023, Dexon served its responses to Cisco's Fifth Set of Interrogatories (Interrogatory Nos. 26-30), objecting to each interrogatory on the basis that it exceeded the 35-interrogatory limit set forth in the Court's Discovery Order [Dkt. No. 65, ¶ 4]. However, during the parties' meet-and-confer the next day, Dexon agreed to provide amended responses to Interrogatory Nos. 26-30—despite its objections—in exchange for an update from Cisco on data that Dexon requested on May 3, 2023.

Meanwhile, on May 22, 2023, Cisco served its Sixth Set of Interrogatories (Interrogatory Nos. 31-35), which are the subject of the above motion. On June 20, 2023, Dexon returned its responses and objections to the five interrogatories, refusing to answer each on a single ground: "Dexon objects [to each interrogatory] as Cisco has already served more than 40 interrogatories, including subparts, on Dexon in violation of the 35 interrogatory limit set forth in the Court's Discovery Order (Dkt. No. 65)." Cisco filed its motion to compel on June 27, 2023, six days after the expiration of the fact discovery deadline.

### II. APPLICABLE LAW

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. FED. R. CIV. P. 37 ("[A] party seeking discovery may move for an order compelling

an answer, designation, production, or inspection."). Rule 37 allows such a motion when a party fails to answer an interrogatory under Federal Rule 33 or respond to a request for production under Federal Rule 34, provided such discovery requests are within the scope of Federal Rule of Civil Procedure 26(b). *Tijerina-Salazar v. Venegas*, No. 19-CV-00074-DC-DF, 2022 WL 1085620, at *1 (W.D. Tex. Apr. 11, 2022) (citing FED. R. CIV. P. 37(a)(3); also citing *Crosswhite v. Lexington Ins. Co.*, 321 Fed. Appx. 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received.")).

### III. DISCUSSION

#### A. Cisco's motion was not untimely

Relying on *Nexus Display Techs. L.L.C. v. Dell Inc.*, No. 2:14-CV-762, 2015 WL 13544186 (E.D. Tex. Nov. 2, 2015), Dexon asserts Cisco's motion should be denied as untimely because it was "filed after the close of fact discovery [without first seeking leave of court] and despite the fact that Cisco was already placed on notice that the number of interrogatories propounded upon Dexon already exceeded the number permitted." Dkt. No. 301 at 1, 3. Courts consider a number of factors when deciding whether a motion to compel is untimely:

> **\*2** (1) the length of time since the expiration of the deadline; (2) the length of time that the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom late discovery was sought; and (8) disruption of the court's schedule.

*Nexus*, 2015 WL 13544186 at *1-*2 (quoting *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006), also citing *Taylor v. Turner Industries Group, L.L.C.*, No. 2:11–cv–57, 2012 WL 4092492, *1 (E.D. Tex. Sept. 17, 2012)).

In *Nexus*, the Docket Control Order had a deadline to complete fact discovery and to file motions to compel discovery. District Judge Schroeder held Dell's motion to compel was untimely, because it was filed six weeks after the Court's discovery and motion to compel deadline. *Id.* at *2 (further noting that Dell would have been aware of the parties' dispute by at least ten days prior to the end of the discovery period, giving Dell "ample time to file a motion to compel" prior to the deadline).

Here, there is no deadline for the filing of motions to compel. The fact discovery deadline was June 21, 2023. Dkt. No. 254. Although Dexon states Cisco has been on notice since at least June 14, 2023 of Dexon's position regarding Cisco's Sixth Set of Interrogatories, Cisco has sufficiently explained why it filed its motion on June 27. On June 20, one day before the close of fact discovery, Dexon propounded its responses and objections to Interrogatory Nos. 31-35. The next day, Cisco asked to meet and confer on June 22 or 23. According to Cisco's reply, after "Dexon delayed conferring until June 27," Cisco filed its motion immediately thereafter. Dkt. No. 265 at 1. Considering Cisco's explanation and the short length of time since the expiration of the discovery deadline, and further considering the remaining factors, the Court does not find Cisco's motion untimely.

#### B. Cisco's motion should not be granted based solely on Dexon's failure to file a motion to strike or for protective order

According to Cisco, Dexon's refusal to answer the interrogatories on the ground that previous interrogatories included discrete subparts – without filing a motion to strike or for protective order – was improper, and on that basis alone, Cisco's motion to compel should be granted. Dkt. No. 251 at 3.

Even though some courts consider the issue in the context of a motion to strike or for protective order, courts routinely consider this type of dispute in the context of a motion to compel. *See, e.g., Hambly v. ABB, Inc.*, No. 5:05CV189, 2006 WL 8441049 (E.D. Tex. Sept. 25, 2006); *Moser v. Navistar Int'l Corp.*, No. 4:17-CV-00598, 2018 WL 3614012, at *5 (E.D. Tex. July 27, 2018); *see also* FED. R. CIV. P. 37(3)(B). That is the better course here, where a party claims the opposing party served more interrogatories than the Discovery Order allowed. It would be more efficient for the serving party to re-evaluate prior to motion practice and move to compel on any interrogatories that remain in dispute.

## C. Cisco's interrogatories exceed the 35-interrogatory limit by one

### 1. Applicable law

In expounding on the interrogatory limit, the Advisory Committee Note provided that

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

**\*3** *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016) (quoting 146 F.R.D. 401, 675–76 (1993)). "When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes 'discrete separate subject.'" *Moser v. Navistar Int'l Corp.*, No. 4:17-CV-00598, 2018 WL 3614012, at \*6 (E.D. Tex. July 27, 2018) (quoting *Eli Lilly*, 315 F.R.D. at 194). Although there is no precise test for determining "discreteness" under a Rule 33(a)(1) inquiry, most courts follow the "related question" approach. *Id.* (citing *Eli Lilly*, 315 F.R.D. at 196); *see also Eli Lilly*, 315 F.R.D. at 194 ("Calculating the number of interrogatories, in a case in which the interrogatories are not extremely straightforward, is not an exact science.").

In that approach, "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Moser*, 2018 WL 3614012, at \*6 (quoting *Eli Lilly*, 315 F.R.D. at 196). Stated differently, "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it]." *Id.* (alteration in original) (citation omitted in *Moser*). In *Eli Lilly*, the court held the "related question" approach, combined with an eye toward the pragmatic considerations, provides the best vehicle for remaining faithful to the policies intended to be served by the numerical limitation in Rule 33(a)(1). *Eli Lilly*, 315 F.R.D. at 197. The court further noted that the issue of "discreteness" cannot reliably be captured by a verbal formula, and that ultimately the issue turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory, as opposed to being separate and distinct. *Id.*

As an example of how the court in *Eli Lilly* applied these standards, one challenged interrogatory requested (1) a description of "the ability of Cialis to inhibit PDE V relative to the ability of Cialis to inhibit each of the following: PDE I, PDE II, PDE III, PDE IV, PDE VI, PDE VII, PDE IIX [sic], PDE IX, PDE X, PDE XI, and PDE XII" and (2) information about the "design of all testing, either in vivo, in vitro, clinically or non-clinically," asking for the identity of all persons involved in the design and testing as well as documents concerning the difference in the inhibiting potency of Cialis. *Id.* at 198. Lilly argued the interrogatory had at least two subparts and arguably as many as 22 because it called "for experimental results and other information regarding 11 different compounds." *Id.* The court held the interrogatory had two discrete subparts because the part of the interrogatory relating to "the design of all testing" did not relate to the information that would be a necessary part of an answer to the first part of the interrogatory and would not legally or factually subsumed within the first portion. *Id.* In so ruling, the court rejected "Lilly's suggestion that the reference to the 11 different compounds in the PDE family of enzymes converts the interrogatory into two sets of 11 different questions." *Id.* (noting the inquiry related to a family of compounds that could have been described more generically and further noting that UroPep's decision to describe those compounds with specificity for purposes of precision does not convert one question into 11).

**\*4** As another example, the court held an interrogatory "request for a breakdown of the sales and profits for Cialis according to the three different purposes for which Cialis can be prescribed d[id] not convert the inquiry into three separate questions, because the primary question ha[d] to do with the overall revenues, costs, and expenses relating to the sales of Cialis that is prescribed for those three purposes." *Id.* at 199 (further stating the request for information about how Lilly's

sales or profits are recorded was clearly subsumed within the primary question, as that information may be necessary to an understanding the responses to the primary question). Thus, that interrogatory did not contain discrete subparts and was counted as one interrogatory. *Id.*

Regarding another challenged interrogatory regarding the pricing structure relating to Cialis, including information such as rebates, discounts, and transfer pricing, the court counted it as one interrogatory, explaining that a "request for documents supporting or refuting the answer is also not a discrete subpart of the interrogatory. While the documentary request is broad, it relates specifically to the primary question in the interrogatory regarding the pricing structure for Cialis and therefore is fairly subsumed within the primary question." *Id.* at 200.

**2. Parties' assertions**

In its motion to compel, Cisco asserts it did not exceed the 35-interrogatory limit. Cisco requests the Court order Dexon to answer Interrogatory Nos. 31-35, finding that any specific objections Dexon might have raised to those interrogatories (including that they contain subparts) are waived. Dkt. No. 251 at 3 & n. 3; *see also* Dkt. No. 265 at 4. In its response, Dexon focuses on nine of Cisco's 35 interrogatories, asserting they contain various discrete subparts; thus, according to Dexon's calculation, Cisco has propounded 55 interrogatories instead of 35. Should the Court disagree and grant Cisco's motion, Dexon requests the Court allow it to assert additional specific objections to Interrogatories 31-35, where appropriate. Dkt. No. 261 at 7.

**3. Analysis**

Dexon has answered Cisco's Interrogatory Nos. 1-30 but has not answered Cisco's Interrogatory Nos. 31-35. In a chart attached to its response, Dexon specifically addresses nine Cisco interrogatories (Nos. 1, 2, 9-12, 20, 32, and 34), asserting they have various discrete subparts:

| Interrogatory | Number of Subparts | Dexon's "Explanation of Subparts" |
|---|---|---|
| 1. Identify each sale of any Product(s) in the Relevant Markets that You claim to have lost because of Cisco's allegedly anticompetitive conduct, including: (a) the potential customer; (b) the Product(s) that You attempted to sell; (c) the manufacturer(s) of the Product(s) that You attempted to sell; (d) the date on which the customer informed You that it would not purchase the Product(s) from You; and (e) the revenue and profit that You claim to have lost as a result of losing the potential transaction. | 5 | This interrogatory can be answered "fully and completely" without referencing the subparts; thus, each subpart should count as a separate interrogatory, for a total of five interrogatories. |
| 2. Identify each actual or potential Dexon customer that informed You it would not purchase Product(s) from Dexon because Cisco would not provide contracted-for service on Product(s) the customer had previously purchased in the Relevant Markets, including: (a) the date of any such | 3 | This interrogatory can be answered "fully and completely" without referencing the subparts; thus, each subpart should count as a separate interrogatory, for a total of three interrogatories. |

Dexon Computer, Inc. v. Cisco Systems, Inc., Not Reported in Fed. Supp. (2023)

| communication; (b) the parties to any such communication; and (c) Documents reflecting or relating to any such communication | | |
|---|---|---|
| 9. For each purported Cisco Ethernet router, Ethernet switch, or IP phone that You have sold from January 1, 2011 to the present, identify (a) the source from which You obtained it, (b) the price You paid for it, (c) the customer to which You sold it, (d) the price at which You sold it, and (e) its serial number. | 5 | This interrogatory seeks five related but distinct categories of information regarding Dexon's sales of Cisco routers, switches, and IP phones and therefore should count as five interrogatories. |
| 10. Identify the "Texas-based bank" referred to in paragraph 3 of the Complaint and the "Maryland customer" referred to in paragraph 68 of the Complaint. | 2 | This interrogatory asks about two distinct and unrelated facts contained in the Complaint. |
| 11. For each year in which You allege Cisco acted anticompetitively as alleged in the Complaint, identify the percentage – by revenue and unit-sales volume of Your total sales – of Ethernet switches and Ethernet routers that you sold that were manufactured by the following firms You identified in response to Cisco's Interrogatory No. 3: (a) "Huawei," (b) "Arista," (c) "HPE," (d) "Juniper," and (e) "others" (identifying the percentage attributable to each separately). | 5 | This interrogatory contains five subparts, each of which seeks discovery regarding distinct, independent, and unrelated manufacturers of Ethernet switches and routers. |
| 12. For each year in which You allege Cisco acted anticompetitively as alleged in the Complaint, identify the percentage – by revenue and unit-sales volume of Your total sales – of IP phones that you sold that were manufactured by "Avaya" as identified in response to Cisco's Interrogatory No. 3, as well as by any other firm You allege to be in the relevant antitrust market (identifying | 2 | This interrogatory contains two distinct subparts, one asking about Avaya IP phones and the other asking about sales of IP phones manufactured by "any other firm." |

USAP0163

| | | |
|---|---|---|
| the percentage attributable to each separately). | | |
| 20. Identify business records or other Documents that identify each entity that sought to purchase from Dexon any Cisco-manufactured Ethernet switches, Ethernet routers, or IP phones to which Dexon subsequently sold non-Cisco-manufactured Ethernet switches, Ethernet routers, or IP phones. | 3 | This interrogatory asks about three distinct categories of sales: routers, IP phones, and switches and therefore should count as three interrogatories. |
| 32. Identify each transaction in DEXON_0476847-50 in which You resold networking equipment that You obtained from a Cisco authorized reseller (as You used that term in interrogatories You propounded on May 16, 2023) to an end user at a price You claim to be lower than the end user could have obtained from the Cisco authorized reseller, as well as any Documents supporting that claim. | 2 | This interrogatory has two distinct subparts, 1) details regarding the transaction(s) and 2) documentation supporting the transaction(s), and therefore should count as two interrogatories. |
| 34. Describe each fact – and identify each Document, if any – supporting Your claim (Amended Complaint ¶ 27) that end users or customers are "effectively compelled" to purchase SMARTNet. | 2 | This interrogatory has two distinct subparts: 1) facts supporting Dexon's claim and 2) documents supporting the facts, and therefore should count as two interrogatories. |

***Interrogatory No. 1** (counts as two interrogatories)*

**\*5** Cisco asserts Interrogatory No. 1 seeks a single piece of information related to sales supposedly lost specifying what would constitute a complete response to that single inquiry. Dkt. No. 265 at 3.

Parts (a)-(d) of Interrogatory No. 1 (customers, products, and dates) are "subsumed" within Cisco's primary request for Dexon to identify each alleged lost sale. However, part (e) is a discrete issue: Dexon can completely identify the sales at issue without the need to state how it values those sales *in this case*. Therefore, Interrogatory No. 1 contains two "discrete subparts" that should be counted as two separate interrogatories.

***Interrogatory No. 2** (counts as one interrogatory)*

Interrogatory No. 2 seeks the information related to each actual or potential Dexon customer that informed Dexon it would not purchase Product(s) from Dexon due to Cisco's behavior. Parts (a)-(e), which simply state the level of specificity necessary for a full and complete response, are not discrete subparts. *See Eli Lilly*, 315 F.R.D. at 199–200 (counting Interrogatory No. 15 as a single interrogatory, even though it requested financial information related to distribution channels of *Cialis and* the identity of "each entity involved in each channel of sales [of] Cialis," because a "description of the entities involved in the channels of sales for Cialis is factually subsumed within and necessarily related to the primary question regarding a breakdown of the sales of Cialis"). Therefore, this interrogatory is counted as one interrogatory.

***Interrogatory No. 9*** **(counts as one interrogatory)**
Interrogatory No. 9 requests, for each purported Cisco Ethernet router, Ethernet switch, or IP phone that Dexon sold from January 1, 2011 to the present, (a) the source from which Dexon obtained it, (b) the price Dexon paid for it, (c) the customer to which Dexon sold it, (d) the price at which Dexon sold it, and (e) its serial number. According to Dexon, this interrogatory seeks five related but distinct categories of information regarding Dexon's sales of Cisco routers, switches, and IP phones and therefore should count as five interrogatories. The Court disagrees.

The specific information sought in (a)-(e) is subsumed within the primary question regarding sales of Cisco Ethernet routers, Ethernet switches, and IP phones. The information is "designed to obtain additional details concerning the general theme presented in the primary interrogatory question." *Hambly v. ABB, Inc.*, No. 5:05CV189, 2006 WL 8441049, at *11 (E.D. Tex. Sept. 25, 2006); *see also Eli Lilly*, 315 F.R.D. at 199 (counting an interrogatory seeking Lilly's "revenues, costs, and expenses incurred with respect to actual and projected sales of Cialis," broken down by treatment for ED alone, by treatment for ED together with BPH, and by treatment for BPH alone as one interrogatory, "because the primary question ha[d] to do with the overall revenues, costs, and expenses relating to the sales of Cialis that is prescribed for those three purposes"). Accordingly, Interrogatory No. 9 is counted as one interrogatory.

***Interrogatory No. 10*** **(counts as one interrogatory)**
The Court disagrees with Dexon that the identification of the "Texas-based bank" and "Maryland customer" referenced in different paragraphs of the complaint should be considered two discrete subparts. Although the bank and Maryland customer are unrelated, the interrogatory seeks the specific identification of two unnamed customers/potential customers referenced in Dexon's complaint. The identify of unnamed customers in the complaint is the primary question, and the description of the entities ("Texas-based bank" and "Maryland customer") is factually subsumed within the necessarily related primary question regarding such identification. *See Eli Lilly*, 315 F.R.D. at 200. As such, this interrogatory does not contain discrete subparts and counts as one interrogatory.

***Interrogatory No. 11*** **(counts as one interrogatory)**

**\*6** Interrogatory No. 11 seeks, for each year in which Dexon alleges Cisco acted anticompetitively as alleged in the complaint, the percentage – by revenue and unit-sales volume of Dexon's total sales – of Ethernet switches and Ethernet routers that Dexon sold that were manufactured by the following firms Dexon identified in response to Cisco's Interrogatory No. 3: (a) "Huawei," (b) "Arista," (c) "HPE," (d) "Juniper," and (e) "others" (identifying the percentage attributable to each separately). Dexon argues this interrogatory contains five subparts, each of which seeks discovery regarding distinct, independent, and unrelated manufacturers of Ethernet switches and routers. Cisco relies on *Eli Lilly*, wherein the court rejected Lilly's suggestion that the reference to the 11 different compounds in the PDE family of enzymes converted the interrogatory into two sets of 11 different questions. *See Eli Lilly*, 315 F.R.D. at 198.

The interrogatory seeks sales information of Ethernet switches and routers that Dexon sold that were manufactured by the firms Dexon identified in response to Interrogatory No. 3. Thus, the inquiry relates to the manufacturers that could have been described only generically (in relation to Interrogatory No. 3). Cisco's decision to describe those manufacturers with specificity for purposes of Interrogatory No. 11 does not convert one interrogatory into five. *See id.* ("The inquiry relates to a family of compounds that could have been described more generically; UroPep's decision to describe those compounds with specificity for purposes of precision does not convert one question into 11."). As such, this interrogatory does not contain discrete subparts and counts as one interrogatory.

***Interrogatory No. 12*** **(counts as one interrogatory)**
Interrogatory No. 12 seeks, for each year in which Dexon alleges Cisco acted anticompetitively as alleged in the complaint, the percentage – by revenue and unit-sales volume of Dexon's total sales – of IP phones that Dexon sold that were manufactured by "Avaya" as identified in response to Cisco's Interrogatory No. 3, as well as by any other firm Dexon alleges to be in the relevant antitrust market (identifying the percentage attributable to each separately).

This interrogatory seeks information about sales data to *any firm* Dexon alleges to be in the relevant antitrust market. That Cisco identifies by name one firm, Avaya IP, does not transform this into two interrogatories; as such, Interrogatory No. 12 is counted as a single interrogatory.

USAP0165

Dexon Computer, Inc. v. Cisco Systems, Inc., Not Reported in Fed. Supp. (2023)

*Interrogatory No. 20* (counts as one interrogatory)

Interrogatory No. 20 asks Dexon to identify business records or other documents that identify each entity that sought to purchase from Dexon any Cisco-manufactured Ethernet switches, Ethernet routers, or IP phones to which Dexon subsequently sold non-Cisco-manufactured Ethernet switches, Ethernet routers, or IP phones. Dexon asserts this interrogatory asks about three distinct categories of sales – routers, IP phones, and switches – and therefore should count as three interrogatories.

The primary request is for records relating to customers who purchased specific types of equipment. The interrogatory specifies the three categories of equipment sales for clarity, to better understand the question and the response, not because they are discrete requests to get around the interrogatory limit. *See, e.g., Eli Lilly,* 315 F.R.D. at 198 (rejecting Lilly's suggestion that the reference to the 11 different compounds in the PDE family of enzymes in an interrogatory transformed it into two sets of 11 different questions). Thus, this interrogatory counts as one interrogatory.

*Interrogatory Nos. 32, 34* (counts as one interrogatory each)

Dexon asserts Interrogatory Nos. 32 and 34 (neither of which have been answered) each contain two subparts: (1) details about the transaction(s) and (2) documentation supporting the transaction(s). Dkt. No. 301 at 3. Cisco asserts Dexon has never propounded this specific objection to Interrogatory Nos. 32 and 34, thereby waiving it. The Court does not find the objection waived.

 *7 "As a general rule, Plaintiff's requests seeking facts (such as the markup languages used), documents, *and* identification of persons with information do not automatically amount to three separate interrogatories." *EMG Tech., L.L.C. v. TheVanguard Grp., Inc.,* No. 6:12-CV-543, 2014 WL 12597425, at *2 (E.D. Tex. Apr. 17, 2014) (emphasis original) (citing *Stamps.Com, Inc. v. Endicia, Inc.,* No. CV 06-7499-ODW, 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) ("[R]equests for facts, persons with knowledge of those facts and documents containing those facts should be considered one interrogatory because they are subsumed within the primary question of facts supporting Defendants'

infringement and validity contentions.")). This is consistent with *Eli Lilly,* wherein the court stated a "request for documents supporting or refuting the answer is also not a discrete subpart of the interrogatory." *Eli Lilly,* 315 F.R.D. at 200. Accordingly, these interrogatories do not contain any discrete subparts and count as one interrogatory each.

### D. Conclusion

Counting the unanswered Interrogatories Nos. 31-35, Cisco has served one Interrogatory over the limit. Within seven days, Cisco must identify which of the four unanswered interrogatories Dexon should respond to.

Dexon requests the Court allow it to assert additional specific objections to Interrogatories 31-35, where appropriate. Dkt. No. 261 at 7. In responding to an interrogatory, Rule 33(b) (4) provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4). "Courts have the discretion to determine whether good cause exists to preclude a finding of waiver." *Ferguson v. Sw. Reg'l PCR, L.L.C.,* No. 5:22-CV-182-H, 2023 WL 4938091, at *4 (N.D. Tex. June 22, 2023) (citation omitted). The Court, in its discretion, finds good cause exists to preclude a finding of waiver as to Interrogatories Nos. 31-35. Dexon may assert additional specific objections to the four interrogatories that Cisco selects. To be clear, this order addresses the specific subpart issue; it is not an order compelling a response nor does it address any other objection Dexon may raise.

Accordingly, it is

**ORDERED** that Cisco System, Inc.'s Motion to Compel Interrogatory Responses (Dkt. No. 251) is **GRANTED, as modified**. It is further

**ORDERED** that within seven days, Cisco is ordered to select the four interrogatories contained in Interrogatories 31-35 that it intends Dexon to answer. Within fourteen (14) days after receiving Cisco's selection, Dexon shall respond, asserting any specific objections or responses as warranted.

### All Citations

Not Reported in Fed. Supp., 2023 WL 9645458

USAP0166

Dimitrijevic v. TV&C GP Holding Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8164073
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

Alexander DIMITRIJEVIC, Plaintiff,
v.
TV&C GP HOLDING INC., Defendant.

Civil Action H-04-3457
|
Signed 08/24/2005

**Attorneys and Law Firms**

Hak K. Dickenson, H. K. Dickenson Assoc, Carrie Anne
Arnett, Jones McClure Publishing, Houston, TX, for Plaintiff.

Thomas Michael Melo, David J. Comeaux, Ogletree Deakins
et al, Houston, TX, for Defendant.

### <u>MEMORANDUM AND ORDER</u>

Stephen Wm Smith, United States Magistrate Judge

**\*1** Before the court is plaintiff Alexander Dimitrijevic's
motion to compel answers to interrogatories (Dkt. 16) in this
employment discrimination case, which has been referred to
this magistrate judge for pre-trial management. The motion is
granted in part and denied in part.

On March 16, 2005, Dimitrijevic served a set of
interrogatories on defendant TV&C GP Holding Inc.
("Tyco") consisting of thirteen numbered questions and 122
separately lettered subparts. Tyco responded on April 25,
answering the first five numbered interrogatories and 47 of
the separately lettered subparts, but declining to answer the
remainder as exceeding the federal limit of 25 interrogatories.
*See* FED. R. CIV. P. 33(a); S.D. TEX. LOC. R. 33.1.
Dimitrijevic moves to compel Tyco to answer the remaining
interrogatories, contending that the subparts seek information
closely related to the main interrogatory, and therefore are not
separate questions to be counted toward the numerical limit.

Federal Rule of Civil Procedure 33(a) provides that, absent
leave of court or written stipulation, interrogatories are not to
exceed 25 in number, "including all discrete subparts." *See*
FED. R. CIV. P. 33(a).[1] Dimitrijevic obtained neither written
stipulation nor leave of court, so the applicable limit is 25.

1

Local Rule 33.1 largely mirrors the federal rule,
although it omits the modifier "discrete." S.D.
TEX. LOC. R. 33.1 ("No more than twenty-five
interrogatories (counting sub-parts) may be served
without leave of court."). Whether intentional or
not, this difference in phrasing cannot be construed
to impose a greater restriction on interrogatories
than Rule 33(a), because local rules cannot alter the
federal discovery rules in this respect. *See* FED. R.
CIV. P. 26(b)(2) advisory committee notes to 2000
Amendment, at ¶ 29-30; *St. Paul Fire & Marine
Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP,*
217 F.R.D. 288, 289 (D. Mass. 2003).

However, counting to 25 is not always easy, as this case
illustrates. The source of the difficulty is ascertaining when
to count a subpart as a separate interrogatory. The rule does
not define the term "discrete subparts." *See Krawczyk v. City
of Dallas*, No. Civ. 3:030CV-0584D, 2004 WL 614842, at *2
(N.D. Tex. Feb. 27, 2004). The Advisory Committee briefly
addressed the issue in the notes accompanying the text of Rule
33(a):

> Parties cannot evade this presumptive
> limitation through the device of
> joining as "subparts" questions that
> seek information about discrete
> separate subjects. However, a question
> asking about communications of a
> particular type should be treated as
> a single interrogatory even though
> it requests that the time, place,
> persons present, and contents be
> stated separately for each such
> communication.

FED. R. CIV. P. 33(a) advisory committee notes to 1993
Amendment.

Except for interrogatories asking about "communications of
a particular type," the Advisory Committee actually provides
little guidance for distinguishing between "discrete" subparts,
separately countable, from "non-discrete" subparts, which are
not. No general test or formula is offered to assist courts in
determining when a particular subpart is merely a device to
evade the numerical limit. Nor have the courts been very

successful in devising a uniform approach to the problem. *See generally, Safeco of America v. Rawstron,* 181 F.R.D. 441, 444-45 (C.D. Cal. 1998) (gathering cases).

**\*2** Understandably, the parties approach this question from polar extremes. Dimitrijevic argues that a subpart is not "discrete" and thus not countable if it shares a "common theme" with its primary, numbered interrogatory. *See* 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2168.1, at 261 (2d ed. 1994) ("It would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable."). Dimitrijevic alternatively describes this as the "logically and necessarily related" test. *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 33.30[2] (3d ed. 1997) ("The better view is that subparts may be counted as part of one interrogatory if they are logically and necessarily related to the primary question."). Thus, he argues that the eight subparts of Interrogatory No. 6 are logically related and share the common theme of how sales orders are physically processed at the warehouse.[2] Unsurprisingly, Dimitrijevic contends that **each** of his listed subparts share a common theme with the primary question, and therefore **none** should be counted as a separate question.

[2]      The Interrogatories are set forth in Appendix A.

And that is precisely the problem with the "common theme" test: almost never will it yield a separately countable, discrete subpart. All subparts can be said to share a theme with the primary question; otherwise they would not really be a "subpart." Any mildly creative lawyer can invent a rubric sufficiently elastic to cover the most disparate of topics: Dimitrijevic's first 12 numbered interrogatories could just as easily be redesignated as subparts of a single interrogatory under the common theme of "liability." The "logically and necessarily related" formula has essentially the same flaw because, as the Supreme Court has observed in another context, "everything is related to everything else." *See California Div. of Labor Standards Enf. v. Dillingham,* 519 U.S. 314, 335 (1997) (Scalia, J., concurring) (discussing ERISA preemption of state laws which "relate to" ERISA benefit plans); *New York Conf. of Blue Cross v. Travelers Ins. Co.,* 514 U.S. 645, 655 (1995) ( "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere' .. .." (citation

omitted)). In short, neither the common theme nor the logical relationship formulas are particularly useful in drawing the line on the slippery slope between subparts which are 'discrete' and those which are not. Either formula invites evasion of the presumptive limitation on interrogatories under Rule 33(a), thereby defeating the purpose of the 1993 amendments.

Tyco's proposed test is skewed in the opposite direction. Tyco would focus on whether the subpart "introduces a new topic that is in a distinct field of inquiry." *See Banks v. Office of the Senate Sergeant at Arms,* 222 F.R.D. 7, 10 (D.D.C. 2004). Of course, any given topic may encompass distinct fields of inquiry, and yet be intimately related to other topics. In the communication example given by the Advisory Committee, the four specified aspects of the communication ("time, place, persons present, and contents") could fairly be classified as four distinct "fields of inquiry," yet the Committee would count them as a single interrogatory. Everything depends on how narrowly or broadly the term "distinct field of inquiry" is construed. Tyco would apply the term so narrowly that **all** listed subparts become separate interrogatories. Because Tyco's proposed test merely substitutes one vague phrase ("distinct field of inquiry") for another ("discrete subparts"), it offers little practical guidance here.

However, Tyco points to an alternative test which holds more promise. In *Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684 (D. Nev. 1997), the court held that interrogatory subparts are to be counted as discrete subparts unless they are "logically or factually subsumed within and necessarily related to the primary question." *Id.* at 686. A recent district court decision added a helpful gloss: "***If the first question can be answered fully and completely without answering the second question,*** then the second question is totally independent of the first and not 'factually subsumed within [it].' " *Krawczyk,* 2004 WL 614842, at \*2 (emphasis added). This "full and complete answer" standard, although still somewhat imprecise, has two distinct advantages over the other tests discussed. First, it is the same standard already employed by the federal rules to measure the sufficiency of interrogatory answers. *See* FED. R. CIV. P. 33(b) ("Each interrogatory shall be answered separately and fully...") and 37(a)(3) ("[A]n evasive or incomplete disclosure, answer, or response shall be treated as a failure to disclose, answer, or respond.") Enlisting this standard as a guide for counting interrogatory subparts has the virtue of Occam's razor—avoiding needless multiplication of legal standards. Case law delineating the contours of a "complete" interrogatory answer

under Rule 37(a)(3) would help define a "countable" subpart under Rule 33(a), and vice versa.

**\*3** The "full and complete answer" standard also has the virtue of common sense. If a full and complete answer to the primary question would necessarily encompass the specific information sought by the subpart, then there is no reason to separately count the subpart. By explicitly listing the subpart, the proponent is not truly seeking additional information but merely giving notice of the type of information that a full and complete answer to the main question should contain. The proponent is already entitled to the information specified in the subpart by virtue of Rule 37(a)(3)'s completeness requirement. It would be unfair to penalize the proponent for simply making explicit his expectation of what should be incorporated within a proper response to the primary question. On the other hand, if the subpart seeks information beyond the scope of the primary question, then there is nothing unfair about separately counting it against the numerical limit. [3]

[3]   This test does not provide useful guidance when the interrogatory contains implicit subparts "imbedded" within an overbroad main question. See *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Cal. 1998) (interrogatory asking for factual basis for denial of any of 50 requests for admission treated as discrete subparts). The interrogatories at issue here do not present this problem.

Although not always yielding bright lines, this "full and complete answer" standard is consistent with available precedent, as well as the views expressed by the Advisory Committee. When an interrogatory asks a party to describe or identify communications of a particular type, it is reasonable to expect a full and complete answer to include the "time, place, persons present, and content" for each such communication. Similarly, when an interrogatory seeks the identity of a witness, a full and complete answer would naturally include the person's name, address, telephone number, and perhaps other identifying information such as job title and employer. See *Bakhico Co. v. Shasta Beverages, Inc.,* No. Civ. 3:94-CV-1780-H, 1998 WL 249209, \*3 (N.D. Tex. May 14, 1998) (giving name and phone number only was "not a very full identification of witnesses"). On the other hand, an interrogatory inquiring about an employer's general hiring practices is separate and distinct from a subpart inquiring about a specific hiring decision, because the former can be answered fully and completely without addressing the latter. *Banks,* 222 F.R.D. at 11. Similarly, an interrogatory asking the reasons for the elimination of the plaintiff's job can be fully answered without naming the decision-makers, so a subpart seeking their identity should be counted separately. *Nyfield v. Virgin Islands Tel. Corp.,* 200 F. R. D. 246, 248 (D.V.I. 2001). For the same reason, "a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories." *Banks,* 222 F.R.D. at 9.

It should be emphasized that the "full and complete answer" standard involves comparison between the primary question and its subpart, not (as Tyco apparently contends) between one subpart and another. Dimitrijevic rightly points out that under such an approach an interrogatory would almost never have legitimate (i.e. uncountable) subparts, because a subpart nearly always seeks specific details fully answerable without reference to other subparts. *Cf. Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684, 686 (D. Nev. 1997) (analyzing "whether the first question is primary and subsequent are secondary to the primary question.").

With this standard in mind, we turn to the interrogatories at hand. A summary review of the 13 numbered questions and 122 separately lettered subparts plainly reveals that Dimitrijevic has exceeded the permissible limit. *See, e.g., Williams v. Board of County Commissioners,* 192 F.R.D. 698, 701-02 (D. Kan. 2000) (finding, after summary review of interrogatories containing 117 subparts, that numerical limit was exceeded and that plaintiff need not answer interrogatories as propounded). For example, Interrogatory No. 1 contains at least seven different questions; the primary question deals with "all reasons supporting a case for reduction in force at the warehouse," while each of the subparts (except for subpart f) seeks specified information which may or may not have supported a reduction in force. *See, e.g.,* Interrogatory No. 1.d. ("information on increase or decline in business orders"). The primary question could certainly be fully answered without disclosing the information sought by these subparts. Likewise, Interrogatory No. 8 contains 17 discrete subparts, asking not only about the general selection process for warehouse foreman, but also details on the selection of six named individuals. Even assuming the other numbered interrogatories contained no discrete subparts (which is not the case), Dimitrijevic's interrogatories exceed the maximum permitted by Rule 33(a).

**\*4** Having found these interrogatories in violation of Rule 33(a), the next question is the appropriate remedy. The

choice is whether to permit resubmission of another set of interrogatories conforming to the numerical limit, or simply to require answers to the first 25 questions (properly counted) of the existing set.[4] "Since service of more than 25 interrogatories is not permitted, the entire set of interrogatories is impermissible. Respondent can either object to the set as a whole or object to the excess." THE HON. DAVID HITTNER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1695 (9th Cir. ed. 2022); *see also* Traina v. Blanchard, No. Civ. A. 97-0348, 1998 WL 483485, *4 (E.D. La. April 15, 1998) (entire set objectionable). Here, Tyco has responded to the first five numbered interrogatories[5] and objected to the balance on numerosity grounds. For this reason, as well as the fact that the discovery deadline has now passed, it would be inappropriate to permit Dimitrijevic the opportunity to propound a reformulated set of interrogatories. Accordingly, the court will undertake to determine whether Tyco has indeed answered 25 interrogatories, and if not, to determine how many more questions must be answered to reach that limit.

[4]     One authority has suggested that the responding party might be allowed to pick and choose which 25 interrogatories to answer, but no reported case has adopted this approach. THE HON. DAVID HITTNER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1695 (5th Cir. ed. 2005).

[5]     Dimitrijevic has not challenged the sufficiency of these answers by Tyco.

What follows is the court's tally of discrete subparts contained in the 5 interrogatories answered by Tyco:

Interrogatory No. 1:
As explained above, this interrogatory consists of seven separate questions. Subpart f ("any other reason(s) for reduction in force") is redundant in light of the main question.

Interrogatory No. 2:
This interrogatory contains four separate questions. The main question asks about training sessions on workplace harassment, and subparts a-f, h, and j-n seek information that a complete answer to the main question would entail: dates, duration, speaker, subject matter, attendees. Subparts g, i, and o deal with the existence of specific documents, and therefore

constitute discrete subparts as explained in Banks, 222 F.R.D. at 10.

Interrogatory No. 3:
This interrogatory, seeking information about Dimitrijevic's termination meeting, contains at least two separate questions. Subparts a-c and e-f ask about meeting details which a complete answer would provide: time, duration, location, and what was said. Subpart d concerns documents, which is a separate question. Subparts g and h, asking about "other" conversations, acts, and information, are somewhat vague and arguably countable as separate questions. But it is more fitting to consider these subparts as mere gap-fillers that are subsumed within the main question.

Interrogatory No. 4:
This interrogatory seeks a description of the organizational structure of the human resource office in Houston, and contains four separate questions. Subparts a-f seek the name, title and functions of various persons in that office, all of which information would be contained within a full response to the main question. Subparts g, h, and i each seek discrete information which is not limited to the Houston office, and therefore each counts as a separate question.

Interrogatory No. 5:
This interrogatory, which essentially asks for a detailed map of the warehouse, counts as a single question. Each subpart inquires about the physical location of persons and things within the warehouse, all of which would be included on a complete warehouse diagram.

Properly counting all discrete subparts, therefore, Tyco has answered 18 interrogatories to date. Dimitrijevic is therefore entitled to answers to the next seven interrogatories.

As it happens, the next interrogatory (No. 6) contains at least seven discrete subparts. Subparts a and b would be included in a complete answer to the main question dealing with the "physical process of how sales orders for valves and flow control products at the warehouse are retrieved, assembled, and packaged." Subparts c-h each seek discrete information, such as the names of individual technicians, particular tools, decision-makers, and frequency of job assignments. Tyco will satisfy its obligation under the discovery rules by providing full and complete answers to Interrogatory No. 6 and all of

its designated subparts. The remainder of the interrogatories need not be answered.

**\*5** The jurisprudence of interrogatory counting is as imprecise as it is tedious. Reasonable minds may certainly disagree on where the lines should be drawn, but the rule presupposes such lines and gives the court the discretion to draw them. Parties are well advised to avoid risking an unfavorable court count by either seeking leave of court in advance or negotiating a written stipulation from the other side. Neither course was followed here, and so it is

ORDERED that Plaintiff's motion to compel (Dkt. 16) is granted in part and denied in part. Tyco is ordered to provide full and complete answers to Interrogatory No. 6 and all its subparts by close of business on September 1, 2005. All other requested relief is denied.

### APPENDIX A

INTERROGATORY NO. 1:

1. State all reasons supporting a case for reduction in force at the warehouse in connection with discharge of Dimitrijevic and other employees at the warehouse in May 2003, including:

   a. decline in business or profit for the years of 2001, 2002, 2003 or such projection for 2004;

   b. studies, evaluations, or projections of needs of the workforce for 2001, 2002, 2003, and 2004;

   c. customer contractions or expansion, including termination or modification of contracts with Tyco;

   d. information on increase or decline of business orders;

   e. any labor costs study, evaluation, or analysis of workforce at the warehouse;

   f. any other reason(s) for the reduction in force; and

   g. identify all documents that reflect or support reduction in force in May 2003.

INTERROGATORY NO. 2:

2. Describe any training or instructional setting in which employees at the warehouse attended to discuss or receive information or instruction on work harassment, including what the law is, how to behave, how to avoid problems, or any such similar coaching or teaching, including for each of such meeting:

a. when the meeting was held;

b. who attended the meeting;

c. who gave the instruction;

d. the subject matter of the instruction;

e. how long the instruction lasted;

f. whether the meeting involved discussion;

g. whether there was a sign up sheet for the meeting;

h. whether it was in connection with any other meeting;

i. whether any literature was given out to the attendees;

j. whether Paul Austin attended the meeting;

k. whether Emit Hosford attended the meeting;

l. whether Sean Wolfe attended the meeting;

m. whether Dimitrijevic attended the meeting;

n. whether Rudy Lopez attended the meeting; and

o. whether any notes were taken by the employees.

INTERROGATORY NO. 3:

3. On the day of discharge of Dimitrijevic, explain the facts and circumstances regarding his termination, including:

a. when the meeting was held;

b. what was said to Dimitrijevic at the time of termination and who said it;

c. how long the meeting lasted;

d. whether any documents were given to Dimitrijevic;

e. where the termination meeting took place;

f. what Dimitrijevic said to those present at the meeting;

g. any other conversation or act took place; and

h. any other information provided by Tyco or received by Tyco not discussed from subparts a-g.

INTERROGATORY NO. 4:

4. Describe the organizational structure and functions of human resource office in Houston, which is responsible for providing personnel-related services to employees at the warehouse, including:

a. the person who is head of the human resource office in Houston;

b. the name, title and functions of the person(s) to whom the head human resource person in Houston reports;

c. the name, title and functions of another human resource personnel to whom the head of the human resource office in Houston reports;

**6** d. the location of the person to whom the head of the Houston human resource office reports;

e. the names, titles, and descriptions of all managers and supervisors reporting to the person who is the head of the Houston human resource office;

f. all functions performed by the head of the Houston human resource office;

g. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the function of identifying employees who are subject to reduction in cost;

h. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the persons who handle work harassment and related issues; and

i. identify any particular person or persons with the human resource office who ordinarily handles or coordinates the toll free 1-800-number that handles employee complaints.

INTERROGATORY NO. 5:

5. Describe the physical locations or various parts of the warehouse as of May 1, 2003, including the locations of the offices, lockers, the break room, valve automated center, and whether the inventories are kept, including:

a. where Paul Austin's office/desk was located;

b. where Emit Hosford's office/desk was located;

c. where Sean Wolfe's office/desk was located;

d. where Dimitrijevic's desk was located on January 1, 2003;

e. where Dimitrijevic's desk was located as of May 1, 2003;

f. where valve automated center is located in relationship to the offices of the supervisor/foreman;

g. where the break room is located; and

h. where the inventories are kept at the warehouse relative to the employees' offices.

INTERROGATORY NO. 6:

6. Explain the physical process of how sales orders for valves and flow control products at the warehouse are retrieved, assembled, and packaged in connection with the valve automated center as of May 1, 2003, including:

a. describe types of sales order to be filled daily by Tyco from end users and distributors;

b. explain the general types of sales orders or equipment that requires assembly;

c. names of individual technicians who were capable of assembling the sales orders referred to in subpart b.;

d. name the types of tools and machinery used and required by technicians for assembly as referred to in subpart b.;

e. describe who pulls the parts from the warehouse, whether technician, laborer, or temporary worker;

f. state whether a walkie-talkie is assigned to each technician;

g. describe who decides which technician fill which purchase order; and

h. describe whether the job assignment occurs daily.

INTERROGATORY NO. 7:

7. Describe and explain the assignment of various brand names of inventories kept by Tyco at the warehouse and how the brand names would be assigned to technicians, including:

USAP0172

a. names of top fifteen (15) primary products (determined by brand names and quantity of annual sales for past four years) held at the warehouse as of May 1, 2003;

b. identify the names of technicians assigned to each of the brand names as of May 1, 2003;

c. identify all of the brand names of inventory or products that Dimitrijevic was responsible to handle while he was an employee;

d. the brands of valves that Dimitrijevic assembled as of January 1, 2003;

**\*7** e. the brands of valves that Dimitrijevic assembled as of May 1, 2003;

f. explain and describe whether Sean Wolfe, Eddie Key, and Mark Gullet were cross-trained on any KTM products during April and May of 2003;

g. explain whether any other technicians other than those named in subpart f. were cross-trained for KTM, Decote, and MCF brands in April-May of 2003; and

h. explain if Dimitrijevic was cross-trained to assemble and/or handle any new or different brand names with which he did not have experience prior to January 1, 2003.

<u>INTERROGATORY NO. 8:</u>

8. Describe how the supervisors, foremen, and/or lead persons for the Tyco warehouse were selected or appointed, including:

a. what factors were considered in selecting Paul Austin as the supervisor;

b. what factors were considered in appointing Emit Hosford as the foreman;

c. what factors were considered in selecting Sean Wolfe as the lead person;

d. persons involved in selecting Austin as the manager of the warehouse;

e. persons involved in selecting Hosford as a foreman;

f. persons involved in selecting Wolfe as a lead person;

g. whether a meeting was held to decided on either Austin, Wolfe, or Hosford would receive an appointment or selection and if so who attended the meeting;

h. name all persons who gave approval for the appointment of Austin and Hosford as a supervisor and foreman, respectively;

i. whether any memo or letter was written in connection with the appointment of Austin, Wolfe, or Hosford;

j. describe what factors were involved in appointment of Raymond Cooper as a lead person (or however his title or position is described);

k. describe Raymond Cooper's background;

l. describe factors involved in the appointment of Jeff Lacomb as a lead person (or however his position was described);

m. describe Lacomb's experience and background, including previous employment experience at Tyco;

n. name and describe any other person who was named as a lead person during the same period of time Dimitrijevic worked at the warehouse;

o. describe factors involved in transfer of Dana Evan Leach to the warehouse; and

p. describe Mr. Leach's previous experience and background, including his experience at Tyco.

<u>INTERROGATORY NO. 9:</u>

9. Describe the reduction in workforce process of May 2003 in which Dimitrijevic was terminated, including:

a. the names and titles of person involved in the decision making;

b. the name and title of the ultimate decision maker;

c. when the decision was made;

d. whether any decisions made through a meeting and if so, who was at the meeting;

e. describe or state all considerations and factors involved in deciding the cause or need for a workforce reduction at the warehouse;

USAP0173

f. whether any memo was generated in connection with the reduction in force before or after the event of reduction in force;

g. whether any replacement workers were hired subsequent to the reduction in force;

h. how any replacement workers were selected;

i. the persons involved in the decision making of hiring replacement workers; and

j. persons involved in hiring of employees at the warehouse to replace Dimitrijevic after he was terminated, including the final decision maker.

INTERROGATORY NO. 10:

**\*8** 10. Describe Tyco's business operation in Houston area, including:

a. names of all Tyco's and its subsidiaries operating in Harris county and other counties in which Tyco and its subsidiaries are subject to jurisdiction of the U.S. District Court, Southern District;

b. describe the nature or type of business in sufficient detail with respect to the operations in Houston area for the companies named in subpart a.;

c. describe and explain in sufficient detail the revenues earned from each company's business operations in Houston area for the companies named in subpart a.;

d. describe the number of employees, contract workers, and other extent of manpower in the Houston area for the companies named in subpart a.; and

e. describe by cost or fair market value the assets and real and personal property located in the Houston area for the companies named in subpart a.

INTERROGATORY NO. 11:

11. Describe and explain the history of Dimitrijevic's salary, bonus, and other employee benefits he had accrued or experienced with Tyco, and including:

a. his salary per annum at the time of his termination;

b. his salary for each year of the four years preceding his termination;

c. his annual pay increases of the five years preceding his termination;

d. his bonuses received for the termination year and four years preceding his termination;

e. his 401K annual contributions for the five years preceding his termination;

f. his 401K annual contributions matched by the company for the five years preceding his termination;

g. his health insurance premiums paid by the company for the five years preceding his termination;

h. his other insurance premiums, including health and accident premiums, paid by Tyco for the five years preceding his termination;

i. his vacation and holidays benefits paid by Tyco for the five years preceding his termination; and

j. all other benefits, including fringe benefits, paid by Tyco for the five years preceding the termination.

INTERROGATORY NO. 12:

12. Explain and describe how Hispanic employees' complaints lodged in connection with toll free concern line, 1-800-714-1994, were investigated and handled, as referred in Plaintiffs Original Petition, ¶ 31 and including:

a. name and title of all persons involved in the investigation;

b. describe all meetings held in connection with the complaint;

c. describe who attended each meeting, the substances of the discussions, when the meetings occurred, and whether any memos were generated;

d. name all persons who were interviewed in connection with the complaint;

e. state or describe whether any statement was obtained from any individual employee, including any supervisor or manager;

f. state whether any meetings were held by human resource department in connection with the complaint and describe for such meetings, who attended, when

and where it was held, and the substance of the discussions;

g. state whether any particular company procedure was followed with regard to 1-800-714-1994 concern complaint;

h. state whether any voice recording was made in connection with 1-800-714-1994 complaint and identify the location of the recordings;

**\*9** i. state and describe whether any assistance was sought from corporate headquarters with regard to the complaint and description of the assistance;

j. name and title of all person involved in the decision making process of the conclusion involved in subpart j.;

k. state and describe any evaluation or analysis of the complaint filed;

l. describe whether any conclusion was reached with regard to the complaint filed;

m. whether any letter or memo was written in connection with the resolution of the event regarding the complaint filed;

n. provide a brief description of any memo/letter in connection with item discussed in subpart m. and identify any person copied in the memo; and

o. identify all documents generated in connection with the concern line complaint.

INTERROGATORY NO. 13:

13. State Tyco's total wealth or its worth of all assets owned as of December 31, 2003 and including:

a. its total value of all assets, whether tangible, intangible, personal property, and real property as shown on its audited, consolidated financial balance sheet reported to its shareholders on its annual report;

b. its annual gross income for fiscal year 2003 as shown on its audited income statement to its shareholders; and

c. the total value of its net worth (total assets less all liabilities as shown on its balance sheet and reported to its shareholders) as of December 31, 2003.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8164073

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**USAP0175**

2009 WL 10677442
Only the Westlaw citation is currently available.
**NOT FOR PRINTED PUBLICATION**
United States District Court, E.D. Texas, Lufkin Division.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, Plaintiff,
and
Michelle Pritchard, Intervenor,
v.
BIG LOTS STORES, INC., Defendant.

Civil Action No. 9:08-CV-177
|
Signed 10/20/2009
|
Filed 10/21/2009

**Attorneys and Law Firms**

Rodolfo L. Sustaita, Kathy D. Boutchee, Equal Employment
Opportunity Commission, Houston, TX, Charles R. Dendy,
Attorney at Law, Lufkin, TX, for Plaintiff and Intervenor.

Amanda Leslie Wickline, James Edward Davidson,
Schottenstein Zox & Dunn, Columbus, OH, J. Thad
Heartfield, M. Dru Montgomery, The Heartfield Law Firm,
Beaumont, TX, for Defendant.

**ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL DISCOVERY**

Ron Clark, United States District Judge

**\*1** Plaintiff Equal Employment Opportunity Commission
("EEOC") filed suit against Defendant Big Lots Stores,
Inc., claiming violations of Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e-1 *et seq,* namely sexual
harassment and constructive discharge. The alleged victim,
Michelle Pritchard, subsequently intervened. [1] More than
one month after discovery closed and less than four weeks
before trial, the EEOC now moves to compel production of
certain documents and information the EEOC sought during
discovery. Because the EEOC's request is untimely, the court
will deny the motion.

[1]   The court granted in part Big Lots's Motion
for Summary Judgment on October 6, 2009,
dismissing the EEOC's retaliation claims and
Ms. Pritchard's state law claims for intentional
infliction of emotional distress and assault. Doc. #
64.

**I. Background**

A timeline of events is instructive:

| September 29, 2008 | Case is filed. |
| March 30, 2009 | Scheduling Order entered, setting discovery deadline as September 11, 2009. |
| August 5, 2009 | EEOC serves Big Lots with discovery requests. |
| July 24, 2009 | Dispositive motions deadline. EEOC does not file a motion for summary judgment. |
| September 9, 2009 | Big Lots responds to EEOC's discovery requests. |
| September 11, 2009 | Discovery closes. |
| October 13, 2009 | EEOC files its motion to compel. This is also the deadline for motions in limine and the parties' Joint Final Pre-Trial Order. |

USAP0176

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 37 of 103

Equal Employment Opportunity Commission v. Big Lots..., Not Reported in Fed....

The Final Pre-Trial Conference in this case is set for November 2, 2009, with jury selection and trial to follow on November 9.

## II. Applicable Law

Fed. R Civ. P. 37 does not provide a deadline for the filing of motions to compel. However, Fed. R. Civ. P. 16(b) allows the court to "enter a scheduling order that limits the time ... to file motions[ ] and ... to complete discovery." In this case, the March 30, 2009 Scheduling Order set the discovery deadline as September 11, 2009 [Doc. # 24].

A court has the discretion to deny as untimely a motion to compel filed outside the discovery period. *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 209 (5th Cir. 1992) (finding that the district court did not abuse its discretion when it denied a request to conduct discovery "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [Plaintiff's] failure to request an inspection earlier."); *Grey v. Dallas Indep. Sch. Dist.*, 265 Fed.Appx. 342, 348 (5th Cir. 2008) (finding no abuse of discretion in denying a motion to compel discovery "filed on the day of the discovery deadline after an extensive discovery period."); *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395 (N.D. Tex. 2006); *Citro-Rey S. de R.L. de C.V. v. L&M Cos., Inc.*, 2009 WL 1227821 at *3 (S.D. Tex. May 5, 2009) (denying motion to compel as untimely where motion was filed ten days after discovery ended and discovery period had lasted for more than eighteen months); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2009 WL 197739 at *28 (S.D. Tex. Jan. 27, 2009) (denying motion to compel filed two weeks after discovery deadline as untimely under *Days Inn* analysis); *Blackboard, Inc. v. Desire2Learn, Inc.*, 2007 WL 3389968 at *3 (E.D. Tex. Nov. 14, 2007); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001); *Material Supply Int'l, Inc. v. Sunmatch Indus., Ltd.*, 146 F.3d 983, 992 (D.C. Cir. 1998).

**\*2** The *Days Inn* court compiled a number of secondary factors to be considered when deciding whether a motion to compel was untimely:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has

been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) the age of the case, (8) any prejudice to the party from whom late discovery was sought, and (9) disruption of the court's schedule.

*Days Inn*, 237 F.R.D. at 398. Even though the Plaintiff in *Days Inn* argued a "strong need for the documents," the court noted that "this factor has generally not been considered by courts, and the alleged importance of the documents appear[ed] inconsistent with the delay in seeking the documents." *Id.* at 399.

## III. Analysis

In this case, consideration of the *Days Inn* factors strongly favors denying the EEOC's motion to compel as untimely. Discovery closed on September 11, but the EEOC did not file its motion to compel until nearly five weeks after this deadline. The EEOC has known that the information it seeks [2] was likely to be in dispute for much of this case. As the EEOC itself points out, the financial data and attorney's fees information sought concerns allegations for recovery of certain types of damages found in the parties' pleadings. [3] The issue of whether Ms. Pritchard and Mr. Marquez had a consensual sexual relationship has been a subject of much disagreement between the parties since the beginning.

[2]   The information which is the subject of the EEOC's motion includes what the EEOC alleges are insufficient responses to the following: (1) requests for Big Lots to admit it cannot produce any evidence showing Ms. Pritchard had a consensual sexual relationship with Mr. Marquez, (2) interrogatories concerning Big Lots's net worth and what evidence Big Lots has concerning any consensual relationship between Ms. Pritchard and Mr. Marquez; and (3) requests for production concerning Ms. Pritchard's sexual harassment allegations, financial data for Big Lots, and attorney's fees/costs incurred by Big Lots in defending this case. Although the court does not reach the merits of the EEOC's motion to compel,

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 38 of 103

Equal Employment Opportunity Commission v. Big Lots..., Not Reported in Fed....

it does note that requests for admission which are not denied within thirty days are generally deemed admitted. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 191 (5th Cir. 1989).

3      The court makes no determination at this time regarding the merits of any punitive damages or attorney's fees claims. Big Lots has filed a motion in limine to preclude any evidence of punitive damages unless the evidence at trial has established malice, and that motion remains pending.

While the discovery deadline has not been extended in this case, the EEOC offers no explanation for the delay in filing its motion to compel other than mentioning in passing that the parties have been attempting to work out their differences without court intervention. At the same time, the EEOC also admits that "as of late last week" the parties had determined that certain matters would require a motion to compel. The EEOC nevertheless failed to file this motion until Tuesday October 13.

**\*3**  Dispositive motions have long since been filed and ruled upon by the court. This case has been pending for more than a year, and the parties had nearly six months to conduct discovery. The fact that the EEOC chose to serve its discovery requests on Big Lots little more than a month before the discovery period closed no doubt contributes to the untimeliness of this motion. However, this problem is entirely of the EEOC's own making. As trial is less than four weeks away and the parties have already submitted their Joint Final Pre-Trial Order to this court—which contains all exhibits and witnesses they will be presenting at trial—it is difficult to see how the EEOC's request for more discovery at this very late date would *not* prejudice Big Lots and disrupt the court's schedule. Under these facts, the court is left with little choice but to deny the EEOC's motion to compel as untimely.

IT IS THEREFORE ORDERED that Plaintiff Equal Employment Opportunity Commission's Motion to Compel [Doc. # 74] is DENIED.

So **ORDERED** and **SIGNED** this **20** day of **October, 2009.**

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10677442

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

USAP0178

2001 WL 461285
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

EXPRESS ONE INTERNATIONAL, INC. Plaintiff,

v.

SOCHATA, a French Corporation Defendant.

No. 3–97 CV 3121–M.
|
April 30, 2001.

*RECOMMENDATION OF THE SPECIAL MASTER ON
SOCHATA'S FIFTH MOTION TO COMPEL DISCOVERY
AND REQUEST FOR EXPEDITED CONSIDERATION*

NUNNALLY, J.

**\*1** Sochata's Fifth Motion to Compel Discovery concerns the production of the notes taken by a testifying expert retained by Express One International, Inc. ("Express One") which were requested in Sochata's Third Request for Production of Documents. Express One's response to the Third Request for Production of Documents was filed on February 7, 2001, and objected to the specific request which included the notes.

At the deposition of the expert on March 20, 2001, the expert mentioned some notes, but stated he was not sure he had any. [1] During the deposition, counsel for Sochata requested that any such notes be produced. The witness said "Yeah. Right.", and no objection was made to the production of the documents. Subsequently, there was correspondence between counsel concerning the production of the notes; and on April 17, 2001 Express One advised Sochata it would not produce the expert's notes.

[1]    At the hearing on this motion, counsel for Express One stated that the expert has a spiral notebook which contains notes concerning this lawsuit.

Express One had objected to the Request for Production of the notes based, *inter alia,* on the fact that Sochata had not tendered a reasonable fee for the time spent in responding to such discovery. Given the fact that the notes are contained in one spiral notebook which should be easily accessible to the expert, I find that such objection is not well taken. The other grounds stated in Express One's objection to the request for

production of the notes are likewise not valid. The request for the notes is not overly broad, vague, or unlimited in time and scope. The request is limited by virtue of the relationship of the documents to the expert's opinions in this lawsuit. Express One also objected that the request was duplicitous of other discovery which, if true, would have required Express One to produce the notes under the other, duplicitous discovery. I find that Express One's failure to produce these notes is extraordinary given the limited volume, the easy accessibility and the small amount of time and expense required to copy and send them to Sochata.

Express One's defense, in addition to its objection to the Third Request for Production, is the fact that discovery in this matter is closed and was closed prior to the time Sochata filed its Fifth Motion to Compel. There is no cut-off date for filing motions to compel in this lawsuit; and simply because discovery has closed does not logically preclude the filing of a motion to compel. Otherwise, parties could wait until the last day of discovery to file objections to legitimate discovery and claim the discovery cannot be compelled because discovery has ended.

Express One also claims Sochata's delay in seeking a Motion to Compel somehow allows Express One not to produce the notes. Sochata claims it did not know of the possible existence of the notes until it took the expert's deposition on March 20, 2001. In addition to requesting the notes at the deposition, promptly thereafter Sochata wrote Express One requesting the documents be produced. Express One did not refuse to produce the notes until its correspondence of April 16, 2001. Sochata filed this motion the next day. Consequently, Sochata did not inordinately delay its filing of this motion, even if such a delay were a defense.

**\*2** I find Express One's reasons for failing to produce the notes are frivolous. Pursuant to Federal Rule of Civil Procedure 37(a)(4) and after hearing argument by counsel for both parties, I recommend Express One be ordered to pay the reasonable fees and expenses of Sochata in preparing and presenting Sochata's Fifth Motion to Compel, including without limitation the cost of the Special Master to undertake this motion.

I recommend Express One be ordered to produce the notes of Irwin Mendelson ("Mendelson") relating to each opinion to be rendered by Mendelson at the trial of this lawsuit and such notes be produced not later than noon on May 4, 2001.

USAP0179

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 461285

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

FEDERAL TRADE COMMISSION,

    Plaintiff,

        v.

META PLATFORMS, INC.,

    Defendant.

Civil Action No. 20-3590 (JEB)

---

## ORDER

Defendant Meta Platforms, Inc. asks this Court to compel Plaintiff Federal Trade Commission to more fully answer Interrogatory No. 10, which asks, "For each feature or activity available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger, specify whether the feature or activity is or is not within the definition of 'personal social networking.'" ECF No. 151-1 (Def. Motion to Compel) at 6. Meta understandably seeks a clearer definition of what the FTC maintains is the personal-social-networking-services market. The Commission, for its part, contends that it has sufficiently answered the Interrogatory at this point and explains that it will know more once discovery (including experts) has taken place. See ECF No. 157 (FTC Opp.) at 1.

The Court believes that a middle ground here is the wisest approach. Meta is in a much better position than the FTC to list each feature or activity that is available, and the Court will require it to do so; this way the Commission is not tripped up by failing to list one. On the other hand, Meta seems reasonable in asking the FTC to define the relevant market, given that its investigation has long since commenced. As with any discovery response, the FTC shall supplement its answer in the future if its position changes following further discovery.

1

As a result, the Court ORDERS that:

1. By August 22, 2022, Meta shall submit to the FTC a list of each feature or activity available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger that Meta wishes the FTC to categorize as included or excluded from the definition of "personal social networking";

2. By September 12, 2022, the FTC shall inform Meta whether each such feature or activity is or is not within that definition; and

3. If, at any point in the future, the FTC takes a different position on any such feature or activity, the FTC shall so supplement its response.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 1, 2022

2

2024 WL 4932539
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

Thomas GRAY, Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., Defendant.

1:23-CV-545-RP
|
Signed July 25, 2024

**Attorneys and Law Firms**

Thomas Gray, Austin, TX, Pro Se.

Piper Replogle, Jones Day, Houston, TX, for Defendant.

### **ORDER**

ROBERT PITMAN, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is pro se Plaintiff Thomas Gray's ("Plaintiff") motion to compel. (Dkt. 22). Plaintiff asks the Court to compel Defendant Experian Information Solutions, Inc. ("Defendant") "to disclose complete responses" and "properly respond" to Plaintiff's discovery requests because "[Defendant's] objections were improper." (*Id.*). Plaintiff simply argues that "[t]his information is relevant to [his] claims and defense[s] and proportional to the needs of the case." (*Id.*). Defendant filed a response in opposition. (Dkt. 24). Defendant argues that the Court should deny Plaintiff's motion to compel because it is untimely and because Plaintiff has not specified the deficiencies in Defendant's discovery responses. (*Id.*).

Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. It permits a party to file a motion when a party fails to respond to a request for production, fails to answer an interrogatory, or provides incomplete or evasive answers in response to a discovery request. *Id.* While Rule 37 does not provide a deadline for

filing a motion to compel, Rule 16(e) permits the Court to issue a scheduling order that sets deadlines in a case. Fed. R. Civ. P. 16(e). Here, by stipulation of the parties, the Court issued a scheduling order that set the discovery deadline as July 8, 2024—the same day that Plaintiff filed his motion to compel. (*See* Dkts. 21, 22). "In order to have timely obtained the discovery that he seeks, [Plaintiff] should have filed his motion to compel sufficiently in advance of the discovery deadline." *Citro-Rey S. de R.L. de C.V. v. L & M Cos., Inc.*, No. CIV. A. 7:07-154, 2009 WL 1227821, at \*2 (S.D. Tex. May 5, 2009). A sufficiently advanced filing would have permitted the Court to hear the motion, and then if granted, to allow the compelled discovery to be produced prior to the discovery deadline. However, because it was filed on the discovery deadline, Plaintiff's motion is untimely. *Id.*; *see also Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (collecting cases).

Plaintiff's motion to compel must also be denied for lack of specificity. Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Here, Defendant states that it has produced nearly two hundred documents to Plaintiff in response to Plaintiff's twenty Requests for Admission and twenty-four Requests for Admission. The Court cannot provide Plaintiff relief if it does not know which of Defendant's responses were deficient, how they were deficient, and why the compelled responses would be important to Plaintiff's case.

**\*2** Accordingly, **IT IS ORDERED** that Defendants' motion to compel, (Dkt. 22), is **DENIED**.

**All Citations**

Slip Copy, 2024 WL 4932539

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                1

**USAP0183**

2004 WL 614842

Only the Westlaw citation is currently available.

United States District Court,

N.D. Texas, Dallas Division.

John KRAWCZYK, Plaintiff,

v.

THE CITY OF DALLAS, Defendant.

No. Civ.A. 3:03–CV–0584D.

|

Feb. 27, 2004.

**Attorneys and Law Firms**

David K. Watsky, Gillespie Rozen & Watsky, Dallas, TX, for Plaintiff.

Karen J. Tracy, Dallas City Attorney's Office, Dallas, TX, for Defendant.

*ORDER*

RAMIREZ, Magistrate J.

**\*1** Before the Court are *The City's Motion to Compel, Brief in Support of the City's Motion to Compel,* and *Appendix to the City's Motion to Compel,* filed December 9, 2003, and *Plaintiff's Response to Defendant's Motion to Compel,* filed December 31, 2003. The preceding pleadings were referred to the undersigned United States Magistrate Judge for hearing, if necessary, and for determination pursuant to the District Court's *Order of Reference,* filed December 11, 2003. Based on the motion and the evidence submitted therewith, the response, and the applicable law, the Court is of the opinion that the motion should be GRANTED.

I. BACKGROUND

This is an employment case. In April 2000, Plaintiff John Krawczyk ("Plaintiff") worked for the City of Dallas ("Defendant") as a member of the Dallas Police Department in the Internal Affairs Division. In May 2000, Plaintiff was transferred to the Northwest Operations Division. Based on the transfer, Plaintiff sued Defendant in Texas state court for alleged violations of the free speech provision of the Texas Constitution and the Texas Labor Code in

October 2000. While the case was proceeding in state court, Defendant propounded twelve interrogatories to Plaintiff. (App. at 13–31.) Plaintiff served his objections and answers to the interrogatories on February 5, 2001. (App. at 31–43.) Subsequently, Plaintiff amended his state petition to add claims under the First Amendment to the United States Constitution (right of association), 42 U.S.C. § 1983, and additional state-law claims. Defendant removed the case to federal court on March 19, 2003.

On April 8, 2003, the parties filed their Joint Status Report and Proposal with the District Court, wherein they proposed using the state discovery and limiting additional discovery to the new causes of action and defenses. The District Court established April 1, 2004, as the discovery deadline, but did not limit discovery as requested by the parties.

On October 9, 2003, Defendant propounded fourteen interrogatories to Plaintiff related to the new federal and state claims and defenses. The parties agreed to extend the response deadline, and Plaintiff served his answers and objections on December 1, 2003. The answers and objections reflect the signature of Plaintiff's counsel but not Plaintiff's signature, nor do they state that Plaintiff provided the answers under oath. Defendant considered Plaintiff's answers to be deficient based on the objections, Plaintiff's answers, and the lack of verification. By letter dated December 4, 2003, Defendant requested amended answers by December 8, 2003. (App. at 72.) Plaintiff did not provide amended answers, and Defendant filed the instant motion requesting that the Court overrule Plaintiff's objections and order that Plaintiff provide full and complete answers to Interrogatory Nos. 13—26.

Defendant argues that its interrogatories are permissible because they were drafted to elicit precise information relevant to Plaintiff's First Amendment and § 1983 claims. In his response, Plaintiff withdrew his objections to Interrogatory Nos. 20 and 24. Plaintiff argues that the remaining interrogatories exceed the twenty-five interrogatory limit under the federal rules in light of the multiple interrogatories served in the state proceedings, and that they are otherwise overly broad, vague, ambiguous, and contain undefined terms. Plaintiff asserts that, subject to his objections, he fully answered the interrogatories by setting forth the factual basis for this lawsuit.

II. ANALYSIS

USAP0184

**\*2** FED. R. CIV. P.33 provides that a party may serve upon any other party written interrogatories in order to discover any information relevant under Rule 26(b)(1). *See* FED. R. CIV. P .33(a) & (c). Rule 26(b)(1) allows any discovery "reasonably calculated to lead to the discovery of admissible evidence" on "any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). A party's opinions and contentions are discoverable by interrogatory. *See* FED. R. CIV. P. 33(c) & advisory committee note ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."). Interrogatories are not to exceed twenty-five in number including discrete subparts, without first obtaining leave of court. *See* FED. R. CIV. P. 33(a). Rule 37(a)(2)(B) provides that if a party fails to answer an interrogatory, the discovering party may move for an order compelling an answer. *See* FED. R. CIV. P. 37(a)(2)(B). An "evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(3).

A. Objections to Number of Interrogatories

Plaintiff objects that the interrogatories served in the state and federal proceedings exceed the twenty-five interrogatory limit imposed by Rule 33. (App. at 66–70.) In particular, Plaintiff contends that Interrogatory Nos. 3—6, served in the state proceedings, actually contain multiple discrete subparts. Interrogatories served in state proceedings count toward the twenty-five limit. *See McIntyre v. K–Mart Corp.,* 794 F.2d 1023, 1025 (5th Cir.1986) (counting state interrogatories toward the limit).

Under Rule 33(a), interrogatories are not to exceed twenty-five in number including discrete subparts, without first obtaining leave of court. *See* FED. R. CIV. P. 33(a). Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define "discrete subparts." The Advisory Committee addressed this issue and provided some guidance as to when subparts should count as separate interrogatories:

Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot

evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

*Yeager v. Corinthian Colleges, Inc.,* 2002 WL 1976773, at \*3 (E.D.L.a. Aug.23, 2002) (quoting Rule 33 advisory committee note, 146 F .R.D. 401, 675–676 (Fed.1993)). Courts have held that interrogatory subparts are to be counted as discrete subparts if they are not "logically or factually subsumed within and necessarily related to the primary question." *Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684, 686 (D.Nev.1997); *see also Lawrence v. First Kansas Bank & Trust Co.,* 169 F.R.D. 657, 660–61 (D.Kan.1996). If the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not "factually subsumed within and necessarily related to the primary question." *Kendall,* 174 F.R.D. at 686.

**\*3** Defendant served two sets of interrogatories in this case. The first set was served while this case was pending in state court, and numbered 1–12; the second set was served after removal, and numbered 13–26. Plaintiff does not contend that the interrogatories served in the federal proceedings constitute more than one interrogatory each. Rather, Plaintiff now contends that some of the state interrogatories contained discrete subparts that should be counted separately. Plaintiff objects to Interrogatory Nos. 20—26 on the grounds that they exceeded the number allowed. Defendant contends that all portions of each interrogatory served in the state proceedings are related to and subsumed in the first question of each interrogatory.

Interrogatory Nos. 3, 4, 5, and 6 each requests that Plaintiff state his opinion or contention or apply the law to the facts; and each requests that Plaintiff identify any relevant witnesses and their relevant statements. Witnesses and their statements are facts. Requesting an application of the law to the facts usually requires an identification of the relevant facts. Multiple interrelated questions may constitute "a single

USAP0185

interrogatory even though it requests that the time, place, persons present, and contents be stated separately[.]" *Yeager,* 2002 WL 1976773, at *3. Thus, the requests that Plaintiff identify relevant witnesses and their relevant statements are "factually subsumed within and necessarily related to the primary question." *Lawrence,* 169 F.R.D. at 660–61. Accordingly, Interrogatory Nos. 3, 4, 5, and 6 constitute single interrogatories, and Defendant did not exceed the twenty-five interrogatory limit based on these interrogatories.

Defendant exceeded the limit, however, by propounding twenty-six interrogatories without first requesting leave of Court. In the instant motion, Defendant requests leave of Court on grounds that Plaintiff's recently-added federal causes of action require additional discovery. In this case, the Court finds that it is equitable to grant Defendant leave to propound Interrogatory No. 26 in light of the fact that it exceeds the limit by one interrogatory, and is directed to Plaintiff's recently-added claims under § 1983. Consequently, Plaintiff's objections to the number of interrogatories are overruled.

**B. Objections to Contention Interrogatories**
Plaintiff objects to *all* of the interrogatories on grounds that each interrogatory is

> vague, ambiguous, overly-broad, global, multifarious, requests an improper legal analysis, and requests specific information more suited to a deposition.

(App. at 66–70.) The Court address each category of objections separately.

1. Vague, Ambiguous, Over–Broad, Global, & Multifarious [1]

[1]    Multifarious: "improperly joining distinct matters or causes of action, and thereby confounding them." *Black's Law Dictionary* (7th ed.1999). Plaintiff states in his response that he does not contend that the interrogatories served in the federal proceedings constitute more than one interrogatory each. Thus, all objections to

Interrogatory Nos. 13—26 as being "multifarious" are overruled.

A party may object to an interrogatory if it is vague, ambiguous, or over broad. *See Smith v. Sears Roebuck and Co.,* 2002 WL 31203416, at *1 (S.D.Miss. Sept.24, 2002). An interrogatory is sufficiently definite, clear, and concise so long as it "adequately advise[s] the interrogated party of the information requested." *Capacchione v. Charlotte–Mecklenburg Schools,* 182 F.R.D. 486, 491 (W.D.N.C.1998) (citing FED. R. CIV. P. 33).

a. Interrogatories pertaining to § 1983 Claims
**\*4** Plaintiff argues that Interrogatory Nos. 13—17 are vague, ambiguous, global, and over-broad because the terms "each and every policy, practice, custom or usage" are "completely undefined and over-broad" terms. (Resp. at 2.) Interrogatory No. 13 requests that Plaintiff:

> Identify and describe each and every policy, practice, custom or usage of the City of Dallas in existence at the time of the occurrence in question that you contend was the moving force behind any alleged violation of Plaintiff's constitutional or statutory rights.

(Resp. at 2.) Interrogatory Nos. 14—17 incorporate the "policy, practice, custom or usage" that Plaintiff is requested to identify in Interrogatory No. 13.

The long history of § 1983 jurisprudence, under which Plaintiff has sued, has defined the terms "policy, practice, custom or usage" in the context of municipal liability. In order for Plaintiff to prove his case under § 1983, he "must establish that a 'policy or custom' ' of Defendant was the "moving force" behind his alleged violations. *See Austin v. Dallas County,* 2004 WL 258218, at *4 (N.D.Tex. Feb.10, 2004) (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *see also Morris v. Indianapolis Public Schools,* 972 F.2d 352, 1992 WL 175986, at *4 (7th Cir. July 28, 1992) (noting that "[a]t the outset, the plaintiff must establish a prima facie case of policy, practice, custom or usage of discrimination."). "An official policy may be a statement, ordinance, regulation, or decision, or it may be '[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially

**USAP0186**

adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984). In light of this jurisprudence, the phrase "policy, practice, custom or usage" as used in Interrogatory Nos. 13—17 is sufficiently definite, clear, and concise as to "adequately advise the interrogated party of the information requested." *Capacchione,* 182 F.R.D. at 491. Plaintiff's arguments of "vague, ambiguous, over-broad, global" are overruled with regard to phrase "policy, practice, custom or usage" as used in Interrogatory Nos. 13—17. Plaintiff presents no further objections to Interrogatory No. 13.

Plaintiff argues that "Interrogatory Nos. 14—17 contain even more vague, ambiguous, and overbroad terms than No. 13[.]" (Resp. at 3.) Plaintiff does not identify which particular terms in Interrogatory No. 14 that he contends are vague, ambiguous, and over-broad. With respect to Interrogatory Nos. 15—17, Plaintiff argues that specific phrases are vague, ambiguous, global, and over-broad. The Court has reviewed the interrogatories and the particular phrases therein, and it finds that like Interrogatory No. 13, these interrogatories are sufficiently definite, clear, and concise as to "adequately advise the interrogated party of the information requested." *Capacchione,* 182 F.R.D. at 491. Accordingly, Plaintiff's objections of "vague, ambiguous, over-broad, global" are overruled with regard to Interrogatory Nos. 14—17.

**\*5** Interrogatory Nos. 18 and 19 request identification of an "official policy maker" and support for Plaintiff's claims regarding such an individual. In addition to objecting to these interrogatories as being vague, ambiguous, and global, Plaintiff also objects on the grounds that the request that he identify an "official policy maker" requires a "legal conclusion." (Mot. at 7.) Plaintiff argues that "Interrogatory Nos. 18 and 19 are so lacking in specifics that it would completely unfair for the Court to require" answers thereto. (Resp. at 3.) Plaintiff did not respond subject to his objections. (App.64—65.)

The phrase "official policy maker" has a distinct meaning in the context of a § 1983 claim against a municipality, and a plaintiff may be able to prove municipal liability by an official policy maker's actions: "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Thus, Interrogatory Nos. 18 and 19 are sufficiently definite, clear, and concise as to "adequately

advise the interrogated party of the information requested." *Capacchione,* 182 F.R.D. at 491. Accordingly, Plaintiff's objections of "vague, ambiguous, over-broad, global" are overruled with regard to Interrogatory Nos. 18 and 19.

Plaintiff objects to Interrogatory No. 26 on the grounds that it uses "vague and undefined language." The Court has reviewed the interrogatory and determined that it is sufficiently definite, clear, and concise as to "adequately advise the interrogated party of the information requested." *Capacchione,* 182 F.R.D. at 491. Accordingly, Plaintiff's objections of "vague, ambiguous, over-broad, global" are overruled with regard to Interrogatory No. 26.

b. Interrogatories pertaining to First Amendment Claims
Plaintiff objects to Interrogatory Nos. 21—23, and 25 as "vague, ambiguous, over-broad, global". Interrogatory Nos. 20—25 request information regarding Plaintiff's First Amendment claims for violation of his right of association. (App. at 66–70.)

Defendant asserts that Interrogatory Nos. 21—23, and 25 seek to discover the basis for Plaintiff's potential argument that Defendant's legitimate, non-discriminatory reasons were pretextual and retaliation was the true motivating factor. (Br. at 4.) Interrogatory Nos. 21—23, and 25 are sufficiently definite, clear, and concise as to "adequately advise the interrogated party of the information requested." *Capacchione,* 182 F.R.D. at 491. Accordingly, Plaintiff's objections of "vague, ambiguous, over-broad, global" are overruled with regard to Interrogatory Nos. 21—23, and 25.

With regard to Interrogatory Nos. 20 and 24, Plaintiff withdrew his objections to these interrogatories in his Response. (Resp. at 4 .) Thus, Plaintiff must answer them.

2. Requests an Improper Legal Analysis
Plaintiff also argues that *all* of the interrogatories served during the federal proceedings require "an improper legal analysis." To the extent that Plaintiff objects that the interrogatories request Plaintiff's opinions or contentions, the interrogatories are proper. " 'Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." *Starcher v. Correctional Medical Systems, Inc.,* 144 F.3d 418, 421 n. 2 (6th Cir.1998).

USAP0187

Krawczyk v. City of Dallas, Not Reported in F.Supp.2d (2004)

**\*6**  Interrogatory No. 13 seeks to clarify the basis of Plaintiff's claims under § 1983. Accordingly, it is permissible under FED. R. CIV. P. 33(c). *See* FED. R. CIV. P. 33(c) & advisory committee note ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.").

Interrogatory No. 14 is a permissible request for Plaintiff's opinion, contention, or the application of law to fact to identify what "rights" Plaintiff claims that Defendant allegedly violated. *See* FED. R. CIV. P. 33(c) & advisory committee note; *see also* Starcher, 144 F.3d at 421 n. 2.

Interrogatory Nos. 18 and 19 request that Plaintiff identify an official policy maker in relation to Plaintiff reliance on the actions of an official policy maker to prove Defendant's liability. Defendant is entitled to discover that policy maker's identity, even if such discovery requires Plaintiff to provide an opinion, contention, or apply the law to the facts. *See* Starcher, 144 F.3d at 421 n. 2; *see also* FED. R. CIV. P. 33(c) & advisory committee note ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.").

Interrogatory Nos. 21—23, 25 and 26 request discovery in anticipation of Plaintiff's argument that Defendant's proffered reasons are a mere pretext for its retaliation against Plaintiff, or that Defendant had a "policy, practice, or custom of anti-association animus[.]" (App. at 66–70.) Defendant is entitled to discover the basis for Plaintiff's arguments regarding pretext or Defendant's alleged policy of anti-association animus. *See* FED. R. CIV. P. 33(c) & advisory committee note.

Defendant's interrogatories seek to clarify the basis of Plaintiff's legal claims. Thus, they are proper contention interrogatories, and Plaintiff's objections that they "require an improper legal analysis" are overruled. *See* Starcher, 144 F.3d at 421 n. 2; *see also* FED. R. CIV. P. 33(c).

3. Requests Information More Suited to a Deposition
Plaintiff also objects to Interrogatory Nos. 13—26 as requesting information more suitable to being discovered through a deposition. As the party resisting discovery, the burden is on Plaintiff to clarify and explain his objections and to provide support for those objections. *See* Ahern v. Trans Union LLC Zale Corp., 2002 WL 32114492, at \*2

(D.Conn. Oct.23, 2002). "The objecting party may not leave it to the court to 'sift each interrogatory to determine the usefulness of the answer sought.'" *Id.* Plaintiff fails to address this objection in his response or explain any basis for such objection. Thus, Plaintiff has failed to carry his burden to support this objection, and it is overruled.

C. Plaintiff's Factual Narrative
 **\*7**  Plaintiff contends that, subject to his objections, he adequately answered Interrogatory Nos. 13—17 by stating the factual basis for this lawsuit. *See id.* at 2–3. Plaintiff's narrative of the facts is approximately three pages long and discusses specific incidents complained of in this suit from April 2000 to June 2000. (App. at 59–62.) Defendant argues that the factual narrative repeats, word-for-word, the narrative that Plaintiff provided in response to the state interrogatories. The Court agrees that the factual narrative is a verbatim repetition of the narrative that Plaintiff provided in the state proceedings. (App. at 36–38; 59–62.) As Plaintiff had done in response to the state interrogatories, he states the factual basis once and then incorporates it by reference into his answers to Interrogatory Nos. 14—17. *See id.* Defendant argues that Plaintiff's factual recitation and incorporation thereof does not fully answer the interrogatories because it fails to answer Interrogatory No. 13, which is necessary to fully answer Interrogatory No. 14—17.

While Plaintiff's factual narrative goes into detail regarding the incidents complained of, it does specifically identify the "policy, practice, custom or usage of the City of Dallas" requested by Interrogatory No. 13. The identification of a "policy, practice, custom or usage" is a necessary predicate to answering Interrogatory Nos. 14—17, because these interrogatories request the factual support for any alleged "policy, practice, custom or usage." Moreover, Plaintiff's three-page long narrative does not delineate between the factual support for each of the interrogatories. An "evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(3). Accordingly, the Court rejects Plaintiff's argument that he fully answered the Interrogatory Nos. 14—17. Because Plaintiff has failed to answer Interrogatory No. 13, his factual narrative fails to completely answer Interrogatory Nos. 14—17.

III. CONCLUSION

The Court does not find any of the propounded interrogatories to be unreasonably vague or ambiguous or require an improper legal analysis. Therefore, the Court overrules Plaintiff's objections, and the Court also finds that Defendant shall be granted leave to propound Interrogatory No. 26. Accordingly, *The City's Motion to Compel* is hereby GRANTED and it is hereby

ORDERED that Plaintiff's objections are overruled. It is further

ORDERED that Plaintiff is to provide full, complete, and verified answers as required by FED. R. CIV. P. 33(b) to Defendant's Interrogatory Nos. 13—26 no later than ten business days from the date of this Order.

SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 614842

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

1996 WL 739036
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

James R. LEDBETTER, Plaintiff,

v.

UNITED STATES of America, Internal Revenue
Service, Dept. of Treasury, Hugh M. Parker, IRS
Agent, William Beckham, IRS Agent, W.K. Fox,
IRS Agent, Heritage Capital Corp., Bob Merril, and
other unknown and unnamed defendants in both
their official and unofficial capacities, Defendants.

Civ.A. No. 3:96CV-0678X.
|
Dec. 18, 1996.

*MEMORANDUM OPINION AND ORDER*

BOYLE, United States Magistrate Judge.

 **\*1** Pursuant to the District Court's Order of Reference, filed
Nov. 1, 1996, came on to be considered plaintiff's Motion to
Compel IRS to Produce Documents, filed October 21, 1996.
Having read the pertinent pleadings, the court ORDERS that
the motion be DENIED, without prejudice, for the reasons
that follow.

 I. Background

The plaintiff in this action, Jesse Ledbetter, brought suit
against the United States, the Internal Revenue Service, and
several government officials alleging that the defendants
illegally confiscated a rare coin collection belonging to his
children. Specifically, Ledbetter argues that the IRS relied
upon an invalid tax assessment and offer in compromise
to seize the coins and that the confiscation was therefore
unlawful.

In his Motion to Compel IRS to Produce Documents,
Ledbetter states that he has "made numerous requests for
copies of the pertinent documentation to all appropriate IRS
agents and district IRS offices," as well as a Freedom of
Information Act request, all without success. *See* Pl.'s Mot. to
Compel, at p. 2. The plaintiff asserts that the tax assessment,
dated November 23, 1984, and the 1987 offer in compromise
are essential to the IRS' claim that the coins were lawfully

seized. Ledbetter seeks to compel the IRS to produce: (1)
assessment forms 4340, 23-C, 2750, and 872; (2) offer in
compromise forms 656 and 2750; (2) all documents in the
possession of the IRS concerning the 1984 assessment and
the 1987 offer in compromise; (3) a copy of any newspaper
notice published in the county where the coins were seized;
and (4) a copy of any notices of seizure issued on the coins.
The defendants, on the other hand, contend that they have not
been served with a formal discovery request.

 II. Analysis

Federal Rule of Civil Procedure 34 provides for the discovery
of documents and tangible items. A party seeking discovery
must serve a request for production on the party believed to
be in the possession, custody, or control of the documents
or other evidence. Fed.R.Civ.P. 34(a). The request is to be in
writing and must set forth the desired items with "reasonable
particularity." Fed.R.Civ.P. 34(b). A request for production
must be served on the party to whom it is directed, as well as
all other parties to the action, generally through the parties'
attorney of record. Fed.R.Civ.P. 5. The party served with a
request for production must serve a written response within 30
days of service, either agreeing to comply with the request or
raising a specific objection to the request. Fed.R.Civ.P. 34(b).

If necessary, a party may file a motion to compel compliance
with a Rule 34 production request. Fed.R.Civ.P. 37(a)(2)(B).
Federal Rule of Civil Procedure 37 sets forth an enforcement
mechanism whereby the court may order production and,
if appropriate, administer sanctions for noncompliance. *See*
Fed.R.Civ.P. 37.

In the instant case, it would be premature to grant the
plaintiff's Motion to Compel in the absence of a formal
discovery request served upon the proper parties. *See*
*Petrucelli v. Bohringer and Ratzinger, GMBH,* 46 F.3d 1298,
1310-11 (3rd Cir. 1995); *Geir v. Educational Service Unit No.
16,* 144 F.R.D. 680, 689 (D. Neb. 1992). In some instances,
courts treat a motion to compel production in the absence of
a request for production as a request for production. *Simon
v. G.D. Searle & Co.,* 119 F.R.D. 680, 681-82 (D. Minn.
1987)(citing cases).

 **\*2** The undersigned declines to do so, however, for two
reasons. First, a motion to compel pursuant to the enforcement
provisions of a Rule 37 clearly contemplates that the parties
have relied on the formal discovery rules. *See* Fed.R.Civ.P.
37; *Schwartz v. Marketing Publishing Co.,* 153 F.R.D. 16, 21
n.12 (D. Conn. 1994). Second, this court will not compel a

USAP0190

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 51 of 103

**Ledbetter v. U.S., Not Reported in F.Supp. (1996)**

party pursuant to the federal rules until that party has had an opportunity to voluntarily comply with a discovery request and improperly refuses to do so. *Grissom v. N.L.R.B.,* 364 F.Supp. 1151, 1153-54 (M.D. La 1973), *aff'd,* 497 F.2d 43 (5th Cir. 1974); *Hilgenberg v. Neth,* 93 F.R.D. 325, 326 (E.D. Tenn. 1981).

III. Conclusion

For the foregoing reasons, the court ORDERS that plaintiff's Motion to Compel IRS to Produce Documents be DENIED WITHOUT PREJUDICE.

**All Citations**

Not Reported in F.Supp., 1996 WL 739036

---

**End of Document**                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 52 of 103

Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc., Not Reported in Fed....

2021 WL 1940801
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

LOUISIANA NEWPACK SHRIMP, INC.

v.

INDIGO SEAFOOD PARTNERS, INC.

CIVIL ACTION NO. 19-12948 c/w 20-782 and 21-3
|
Signed 05/14/2021

**Attorneys and Law Firms**

Lauren Courtney Mastio for Louisiana Newpack Shrimp, Inc.

Frank Wolland for Indigo Seafood Partners, Inc., Oceana
Seafood Products, LLC, and Jeffrey Martinez-Malo.

SECTION: "D" (4)

**MINUTE ENTRY AND ORDER**

KAREN WELLS ROBY, CHIEF UNITED STATES
MAGISTRATE JUDGE

**\*1** Before the Court is **Louisiana Newpack's Motion to
Compel Discovery Responses and Responsive Materials
from Indigo, Oceana, and Martinez-Malo (R. Doc. 168)**
filed by the Plaintiff seeking adequate answers to its
interrogatories and requests for production. The motion is
opposed. R. Doc. 225. The motion was heard on May 13, 2021
via videoconference.

**I. Background**
On September 24, 2019, Plaintiff Newpack filed this action
against Defendants Ocean Feast of China, Ltd.; Indigo;
Arthur Zeng; and Jeffrey Martinez-Malo in Louisiana state
court. R. Doc. 1-1. On October 3, 2019, this action was
removed to the District court. R. Doc. 1.

Newpack alleges that, on March 15, 2017, Newpack,
Ocean Feast, and Indigo effectively entered into a joint
venture agreement to finance, procure, and sell mutually
agreed seafood products from approved high-volume seafood
manufactures around the globe. R. Doc. 1-1. Newpack,
owned by Lee, was the financer; Ocean Feast, owned by

Zeng, was the procurer and quality assurance; and Indigo,
owned by Martinez-Malo, operated as the sales division. *Id.*
Newpack also alleges that the trio orally agreed to no side
deals, commissions, or kickbacks. *Id.* Historically, Longhai
Desheng Seafood Stuff Co., Ltd. ("Longhai") served as the
joint venture's largest supplier, supplying thee joint venture
with crab meat. *Id.*

Newpack alleges that Ocean Feast and Indigo began to sell
product to the benefit of themselves, generating profit solely
for Ocean Feast and Indigo, without Newpack's knowledge,
and circumventing the joint venture agreement. *Id.* Newpack
alleges that this has hurt the joint venture where it currently
has significant amounts of crab in inventory, and Ocean
Feast's and Indigo's acts have diverted customers from
purchasing from the joint venture product resulting in aging
perishable inventory. *Id.* As such, Newpack seeks damages
for breach of contract, breach of fiduciary duty, unfair
trade practices, tortious interference with contract, unjust
enrichment, conspiracy, and open account. Newpack also
seeks to pierce the corporate veil and hold Zeng liable for
Ocean Feast's acts or omissions and Martinez-Malo liable for
Indigo's acts or omissions. *Id.*

Indigo contends that Newpack actually converted $4.1
million in inventory and sold high end crabmeat for low
quality crab meat prices at less than fair market value. Indigo
also contends that Newpack improperly used the money from
the sales to payback investors, his children's companies,
before paying off other joint venture creditors. Ultimately,
Indigo argues, despite the abundance in inventory quantity,
that Lee was running out of money as financier and stopped
making purchases. Indigo states this prompted Indigo and
Ocean Feast to purchase additional inventory outside the joint
venture so it would not default on its contracts with "program
members".

On March 6, 2020, Longhai sued Newpack for outstanding
payments, in the amount $998,188.03, on purchases placed
for crabmeat that Newpack purchased from Longhai. *See
Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana
Newpack Shrimp, Inc. et al.* (2:20-cv-00782-WBV-KWR) (R.
Doc. 1). That matter has since been consolidated with this
action.

**\*2** In addition, on January 4, 2021, Oceana Seafood
Products, LLC ("Oceana") sued Newpack alleging that
Newpack's actions hurt and damaged its brand. *See Oceana
Seafood Products, LLC v. Louisiana Newpack Shrimp*

USAP0192

*Company et al.* (2:21-cv-00003-WBV-KWR) (R. Doc. 1). Allegedly, Oceana obtained rights by assignment from Indigo to buy and sell seafood products in general and particular crabmeat. *Id.* In addition, Indigo volunteered to let the joint venture sell Oceana branded product. *Id.* Oceana contends that Newpack has damaged its business reputation, has been selling inventory outside the joint venture causing it loss profit, and now has imitated the color and design of Oceana's unique product label. Oceana seeks damages for unfair competition, conspiracy, tortious interference with a business relationship, unpaid royalties, and trademark infringement. *Id.* That matter has since been consolidated with this action.

In connection with this motion, Louisiana Newpack complains that the Defendants' discovery responses generally lack substance. R. Doc. 168-1, pp. 1-5. Louisiana Newpack also complains the Defendants do not respond to each request individually, produce documents responsive to the discovery requests directed to them, or refer to particular bates labeled documents produced by other parties. *Id.* Louisiana Newpack also complains that Indigo intentionally excluded critical and damaging documents, later produced by Ocean Feast, to include communications regarding an audit conducted by Indigo's self-proclaimed largest customer, Bloomin' Brands, Inc. ("Bloomin' Brands"), of Longhai whereby numerous deficiencies were noted. *Id.*

In opposition, Defendants complain that Martinez-Malo is not a defendant in this case, although they admit that Martinez-Malo is a third-party defendant in a consolidated action (21-03) involving the same parties, therefore, he should not need to respond individually to each discovery request. R. Doc. 225. Defendants also state that they are still compiling the certain requested information. *Id.* Defendants also contend that the District Judge in this matter has found that the contract did not contain an exclusivity provision or non-compete clause, and, therefore, found the joint venture agreement non-exclusive and dismissed those claims. *See* R. Doc. 129, pp. 11-12. As such, Defendants contend their sales to others is not relevant. *Id.* Defendants finally contend that their objections of proportionality and overbreadth should be sustained. R. Doc. 225.

Plaintiff contends that even though the District Judge found that the agreement did not contain an exclusivity clause that information pertaining to the sales outside the joint venture are still relevant to its claims that Defendants breach their fiduciary duty to the joint venture. Plaintiff contends that Defendants did not act reasonable by importing product to

circumvent the joint venture and diverting sales from the joint venture. Instead, Defendants chose to act outside the joint venture to further their own interest of selling the crab meat product at a better margin for a better profit.

## II. Standard of Review

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**\*3** Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: ... (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

## III. Analysis

### A. Discovery Requests Propounded to Indigo

#### i. "Committed" Joint Venture Product:

The first set of discovery requests, Interrogatories Nos. 5-7 and Request for Production Nos. 17, 18, and 31, seek information and documents related to the joint venture product commitments where the Defendants maintained certain joint venture crab meat was not sold as it was committed to certain buyers.

In the hearing, Defendants explained that seventy percent (70%) of product was sold through a "program" and thirty percent (30%) of the joint venture product was sold outside the "program". The program consisted of five major customers—Bloomin' Brands, PFG Roma New Jersey, PFG Empire Miami, Royal Caribbean Cruise Lines (RCCL), and Ben E. Keith. Defendants explained that they would allocate seventy percent (70%) of the joint venture product to the program irrespective of how much the program customers actually bought so to always maintain an availability of product for the program customers. Defendants state that while they can give the percentage break down of the amount of product allocated to the program customers, it cannot give a precise poundage break down of product allotted to the program.

Defendants further explained that while there was a contract with quantity commitments with Bloomin' Brands, the remaining program customers were acquired through email exchanges and informal exclusivity agreements. Defendants maintain then that no documents exist that would show the exact commitments beyond the contract with Bloomin' Brands, which has already been produced. Defendants also contends that Louisiana Newpack is in control of the invoices and inventory lists, which include customer purchase orders, and can figure out for themselves how much of the product actually went to the program members.

Here, it is clear to the Court, that even though Defendants complained that the words "committed" and "program" were not defined, that Defendants knew exactly what the Plaintiff's were requesting and could add their own definition. The Court finds that Defendants need to update their interrogatory responses to reflect the explanation given on the record today. The Defendants should also produce the contract and email chains between program members that are responsive to these requests. The interrogatory responses must also be verified. The requests, however, are to be limited temporally to the relevant time period of January 2019 to September 2019. As such, the Court grants Plaintiff's motion with respect to Interrogatories Nos. 5-7 and Requests for Production Nos. 17, 18, and 31.

### ii. Contracts and Agreements with Purchasers of Joint Venture Crabmeat

The next set of discovery requests, Interrogatories Nos. 8-9, seek Defendants identify the contracts and agreements with purchasers of joint venture crabmeat. While here there is much overlap with the documents produced in response to Requests for Production Nos. 17, 18, and 31, these requests also seek contracts for sales outside of the program members as well. The Court finds this information relevant. Defendants shall supplement their written response, as temporally limited to the relevant time period of January 2019 to September 2019. If the same documents are responsive, then Defendants shall specifically refer to the documents produced by Bates Stamp number in the discovery response. Again, the interrogatories must be verified. As such, the Court grants Plaintiff's motion with respect to Interrogatories Nos. 8-9.

### iii. Sale of Crabmeat by Oceana

**\*4** Requests for Production Nos. 9-10 seek information regarding correspondence between Oceana and Indigo relating to the purchase or sale of crabmeat as well as the joint venture.

During the hearing, Defendants clarified that they have produced documents responsive, but Plaintiff appear to be looking for a specific contract. Defendants stated that there is no contract between Oceana and Indigo relating to crabmeat sales or the joint venture. The Court finds that the discovery response should be updated to state that no written contracts between the two on such topics exists. Defendants shall supplement these discovery responses. As such, the Court grants Plaintiff's motion with respect to Requests for Production Nos. 9-10.

### iv. Sale of Crabmeat by Indigo

Requests for Production Nos. 20-23 seek information, communications, and documents related to Indigo's sale of crabmeat both as part of the joint venture and separate from the joint venture. Plaintiff contends these discovery requests are intended to encompass how much Indigo made outside the joint venture and if Indigo sold any non-joint venture product to joint venture customers. Plaintiff also states these requests are intended to elicit information about two 2019 meetings between Indigo and Longhai. Plaintiff specifically states there is some sort of consulting agreement between the two entities

to sell product outside the joint venture. In addition, Plaintiff contends that this could relate to whether Oceana branded product was sold outside the joint venture.

Notwithstanding, after reading the wording of the requests, the Court does not find that the requests seek this information. While Plaintiff's counsel may have sought to craft these requests largely, the Federal Rules of Civil Procedure do not support such overbreadth. The Court, therefore, finds that the requests are overbroad and will not compel further production. As such, the Court denies Plaintiff's motion with respect to Requests for Production Nos. 20-23.

Still, given the proximity to trial, the Court will allow Plaintiff to craft two additional requests for production that more specifically elicit this sort of information. The first discovery request should specifically request information and documentation about sales outside the joint venture made to customers of the joint venture, or common customers. The second discovery request should specifically request information and documentation regarding the 2019 meeting between Indigo and Longhai.

### v. Internal Communications

Plaintiff next requests internal communications as well as documents related to sales by Indigo prior to the formation of the joint venture. After reviewing the requests, the Court finds the requests are overbroad and seek information not relevant to the claims or defenses in this case. As such, the Court denies Plaintiff's motion with respect to Requests for Production Nos. 32 and 35.

### vi. Documents Listed in Defendants' Initial Disclosures

Requests for Production Nos. 37-40 seek the specific documents identified in Defendants' initial disclosures. Defendants argues it listed some settlement documents in their initial disclosures, which should be protected. However, if Defendants wanted to protect those documents, it should have never listed them in their initial disclosures as the purpose of initial disclosures it to identify documents which are beneficial to the case and supportive of the party's position. At the hearing, Defendants' counsel admitted that he had not yet read the initial disclosures, which were drafted by Defendants' previous counsel. The Court urges him to do so now. The Court will compel production of the documents identified in the Defendants' initial disclosures. As such, the Court grants Plaintiff's motion with respect Requests for Production Nos. 37-40.

### vii. Bloomin' Brands' Audit

**\*5** Plaintiff's next request, Request for Production No. 49, seeks information related to customer complaints. Plaintiff complains that Martinez-Malo did not produce any documents or emails related to an audit performed by Bloomin' Brands of Longhai that identified multiple compliance issues, which Plaintiff maintains is the real reason Bloomin' Brands did not purchase the committed products.

Here, the Court has a hard time finding that a request about customer complaints should in anyway indicate to Defendants that they should respond with audit material. During the hearing, the Court asked if there were any customer complaints. Defendants stated they believe that only once in the joint venture's history has there been a single returned product. The Court will order the Defendants to produce the material on the return in response to this request. As such, the Court grants Plaintiff's motion with respect to Request for Production No. 49 as limited to documents concerning the return of product.

However, as Bloomin' Brands is technically a customer of the joint venture, the Court will also order the letter from Bloomin' Brands identifying the problem also be produced. No further documents need to be produced in response to this request.

### viii. Tax Information

Request for Production No. 68 seeks Indigo's tax return information. Defendants contend this is not relevant because the Plaintiffs have the invoices. The Court finds this argument tenuous at best where just last week in hearing Defendants' motion to compel, Defendants asked for Plaintiff's tax return information stating that the invoices were not enough. *See* R. Doc. 221. Here, what is good for the goose is good for the gander. The Court will compel the tax return information as temporally limited to the tax return years 2019 and 2020 as it did in its previous order. As such, the Court will grant Plaintiff's motion with respect to Request for Production No. 68 as temporally limited.

### B. Discovery Requests Propounded to Oceana and Martinez-Malo

Plaintiff next contends that no documents have been produced by Oceana or Martinez-Malo. Instead, Oceana and Martinez-Malo's discovery responses generally refers

USAP0195

Louisiana Newpack to documents produced by its co-defendants. No other written responses were provided, nor additional documents produced.

Here, the Court is confounded. All Defendants, even if they have the same counsel, must craft individual responses to discovery. If documents have already been produced that are responsive to those request, Defendants' counsel will correlate those documents through their Bates Stamp number in the individual discovery responses. As this Court has previously noted, while initially counsel may have had an agreement to produce uncorrelated discovery documents, going forward parties are to categorize, Bates Stamp, and correlate their documents to their discovery responses.

**C. Discovery Deadline**

Finally, the parties complain that they do not have enough time to finish the discovery necessary as the discovery deadline has lapsed as of today. The Court will extend parties' discovery deadline an additional thirty (30) days, until June 14, 2021.

**D. Attorneys' Fees**

Finally, Louisiana Newpack seeks an award attorneys' fees and costs associated with the filing of this motion. Given the mixed disposition of the motion, however, the Court declines to award fees and costs at this time.

**IV. Conclusion**

**\*6** Accordingly,

**IT IS ORDERED** that **Louisiana Newpack's Motion to Compel Discovery Responses and Responsive Materials from Indigo, Oceana, and Martinez-Malo (R. Doc. 168)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** with respect to Interrogatories Nos. 5-7 and Request for Production Nos. 17, 18, and 31 as temporally

limited; Interrogatories Nos. 8-9 as temporally limited; Requests for Production Nos. 9-10; Requests for Production Nos. 37-40; Request for Production No. 49 as limited to documents concerning the return of product and the letter by Bloomin' Brands identifying the compliance problem; and Request for Production No. 68 as temporally limited.

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Requests for Production Nos. 20-23, Requests for Production Nos. 32 and 35, as well as to the extent Louisiana Newpack seeks an award of attorneys' fees.

**IT IS FURTHER ORDERED** that Defendants Indigo, Oceana, and Martinez-Malo shall provide supplemental answers to Louisiana Newpack's Interrogatories and Requests for Production **no later than fourteen (14) days** from the signing of this order.

**IT IS FURTHER ORDERED** that Plaintiff Louisiana Newpack shall craft and propound two discovery requests related to (1) the sale of crabmeat by Indigo outside the joint venture to joint venture customers and (2) the 2019 meetings between Longhai and Indigo **no later than Wednesday, May 19, 2021**. Indigo shall respond **no later than June 9, 2021**.

**IT IS FURTHER ORDERED** that deadlines as set forth in the December 4, 2020 **Scheduling Order (R. Doc. 119)** shall be *amended* as follows:

- Depositions for trial use shall be taken and all discovery shall be completed **no later than Monday, June 14, 2021**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1940801

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

USAP0196

Miller v. St. Tammany Parish School Board, Not Reported in Fed. Supp. (2019)

2019 WL 13275397
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

Quintrelle MILLER

v.

ST. TAMMANY PARISH SCHOOL BOARD, et al.

CIVIL ACTION NO. 18-3920
|
Signed February 1, 2019

**Attorneys and Law Firms**

Fred E. Salley, Salley & Associates, Covington, LA, for Quintrelle Miller.

David S. Pittman, David S. Pittman, Attorney at Law, Covington, LA, Shane A. Jordan, Law Offices of Paul E. Harrison, LLC, Mandeville, LA, for St. Tammany Parish School Board, W. L. Folse, III.

**SECTION "B" (3)**

**ORDER**

DANA M. DOUGLAS, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is the Motion to Compel and for Sanctions [Doc. #22] filed by defendants. The motion is opposed. [Doc. #26]. Having reviewed the pleadings and the case law, the Court rules as follows.

**I. Background**

Q.M., a 12-year old minor, was assigned by the St. Tammany Parish School Board ("the Board") to attend a special school for special-needs children. The Board did so to accelerate Q.M.'s existing adjustment problems and to provide him more assistance to make him feel more self-confident. Instead, Q.M. alleges that he was pushed, shoved, struck, browbeat, and bullied by defendant-school board instructor Jonathon A. Johnson almost every time that Johnson encountered him. This brutalization lasted for an entire semester and only ended after Q.M.'s grandmother heard rumors and filmed Johnson shoving and pushing Q.M. at school. Although Q.M.'s mother informed defendant-Superintendent W.L. Folse, III about

the conduct of Johnson, Folse did nothing, and the battery of Q.M. by Johnson continued. A video taken by Q.M.'s grandmother was sent to Folse, who ultimately fired Johnson and had him arrested. Johnson has already been tried and pleaded guilty but has been in hiding since his arrest.

Plaintiff Quintrelle Miller filed a petition on behalf of Q.M. for damages for violations of civil rights and tort on April 13, 2018. Plaintiffs have asserted claims against the School Board defendants "for tort negligence under Louisiana Law and for violations of their respective legal rights under Louisiana Law, LSA-RS CC Art 2315 et seq.; and for damages for violations of their Civil Rights under 42 U.S.C. 1983 ...".

**II. Law and Analysis**

Defendants propounded interrogatories on plaintiffs on November 16, 2018. Plaintiffs responded on December 5, 2018, generally objecting to the requests on several grounds. Defendants now ask the Court to order plaintiffs to respond to the interrogatories and seek sanctions for plaintiffs' failure to respond. Plaintiffs argue that the majority of the requests seek information protected by the attorney-client and/or work-product privileges.

Apart from Interrogatory No. 1 and Nos. 18-23, the Court finds that Interrogatory Nos. 2-17 are contention interrogatories, which are ordinarily not favored in this district. *Blank v. Tomorrow PCS, L.L.C.*, Civ. A. No. 16-11092, 2018 WL 3136002, at \*5 (E.D. La. June 27, 2018). "[A] contention interrogatory ... [is] an interrogatory that asks a party to state what it contends, state whether it makes a specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention." *InternetAd Systems, LLC v. ESPN, Inc.*, No. 03-2787, 2004 WL 5181346, at \*2 (N.D. Tex. Oct. 8, 2004). Federal Rule of Civil Procedure 33 states, however, that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). As such, when faced with the question of when to require responses to contention interrogatories, "[i]t is within the court's discretion to determine the appropriate time for responding to a contention interrogatory." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, Civ. A. No. 13-373, 2017 WL 2825925, at \*9 (M.D. La. June 30, 2017) (citing *In re Katrina*

*Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, 2007 WL 1852184, at * 3 (E.D. La. June 27, 2007)).

**\*2**  Indeed, "most courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – typically at the end of the discovery period.' " *Sigman v. CSX Corp.*, No. 15-13328, 2016 WL 7444947, at *2 (S.D. W. Va. Dec. 27, 2016) (quoting *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). As the court in *Sigman* explains, there are a number of reasons to discourage the use of early contention interrogatories:

> First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery."

*Sigman*, 2016 WL 7444947, at * 2 (internal citations omitted) (collecting cases); *see also Firefighters' Ret. Sys.*, 2017 WL 2825925, at *9.

At other times, courts have required parties seeking early contention interrogatories to "show that the interrogatories were limited, specifically crafted questions seeking responses that would 'contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule

56.' " *Brassell v. Turner*, No. 05-476, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006) (quoting *In re Convergent Techns. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. Oct. 28, 1985)).

Here, there is no doubt that that the interrogatories are contention interrogatories. Each request cites a paragraph alleged in plaintiffs' complaint and asks plaintiffs to state all of the proof that supports the allegations. While this Court would normally deny a motion to compel contention interrogatories as premature, the discovery deadline in this lawsuit is February 26, 2019, barely three weeks away. At this point in time, the parties should have the information necessary to prosecute their claims and proceed with the lawsuit. Both parties should have filed their witness and exhibit lists in the record by January 28, 2019, the deadline set in the District Court's scheduling order. Given that deadline, the parties should be well aware of the witnesses and exhibits that they plan to use at trial. This discovery is not premature given the fast-approaching discovery deadline, pre-trial conference, and trial dates.

## III. Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the Motion to Compel and for Sanctions [Doc. #22] is GRANTED. Plaintiff shall respond to the interrogatories **no later than fourteen (14) days from the date of this Order**, which reserves the right to defendants to file the appropriate motion with supporting documentation to recover their fees and costs incurred in the filing of this motion.

## All Citations

Not Reported in Fed. Supp., 2019 WL 13275397

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 13544186
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Marshall Division.

NEXUS DISPLAY TECHNOLOGIES LLC, Plaintiff

v.

DELL INC., et al., Defendants.

Civil Action No. 2:14–CV–762
|
Signed 11/02/2015

**Attorneys and Law Firms**

Alisa Anne Lipski, Amir H. Alavi, Brian Ervin Simmons, Jamie Alan Aycock, Justin Yee–Jin Chen, Megan L. Bibb, Michael Dean McBride, Scott W. Clark, Steven John Mitby, George Walton Webb, III, Demetrios Anaipakos, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., Houston, TX, Claire Abernathy Henry, Jack Wesley Hill, Thomas John Ward, Jr., Ward, Smith & Hill, PLLC, Longview, TX, for Plaintiff.

Deron R. Dacus, Shannon Marie Dacus, The Dacus Firm, PC, Tyler, TX, Kimball R. Anderson, Anthony DeMarco Pesce, Kathleen B. Barry, Sarah Joyce Kalemeris, Winston & Strawn, Chicago, IL, Howard I. Shin, Winston & Strawn LLP, New York, NY, Jude James Andre, Winston & Strawn LLP, Houston, TX, for Defendants.

## ORDER

ROBERT W. SCHROEDER III, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are the following motions:

- Plaintiff Nexus Display Technologies LLC's ("NDT") Emergency Sealed Opposed Motion to Enforce [the] Docket Control Order (Docket No. 253) and

- Defendant Dell Inc.'s ("Dell") Opposed Motion for Leave to File Motion to Compel Production of Documents from Plaintiff Nexus Display (Docket No. 257).

For the reasons set forth below, NDT's emergency motion (Docket No. 253) is **DENIED WITHOUT PREJUDICE** and Dell's motion for leave (Docket No. 257) is **DENIED**.

## NDT'S EMERGENCY MOTION TO ENFORCE THE DOCKET CONTROL ORDER

On October 9, 2015, NDT filed an emergency motion requesting that the Court: (1) enforce this case's Docket Control Order ("DCO"); (2) order Dell to withdraw a motion to compel pending in the Northern District of California; [1] and (3) award NDT attorneys' fees for filing this motion. Docket No. 253.

[1]    On September 24, 2015, Dell filed a motion to compel further testimony from third-party Silicon Image, Inc. in the Northern District of California. *See* Civil Action No. 4:15–mc–80241, Docket No. 1 (N.D. Cal.). That motion is currently set for a hearing on November 19, 2015.

Dell's motion to compel stems from a Rule 30(b)(6) notice of deposition and a subpoena *duces tecum* from July 2015 served on third-party Silicon Image. Docket No. 262 at 5. In essence, NDT's motion to enforce the DCO is a motion to quash enforcement of that July 2015 subpoena. Rule 45 requires that matters relating to the enforcement of a subpoena are to be directed to "the court for the district where compliance is required." FED. R. CIV. P. 45(d). The parties do not identify where production—in other words, compliance—pursuant to the July 2015 subpoena was to occur. Silicon Image accepted a previous subpoena identifying Sunnyvale, California in the Northern District of California as the place for production. *See* Docket No. 262 at 5 (citing Docket No. 262–10, Ex. 12). Assuming production was to occur in the Northern District of California, compliance and enforcement of the July 2015 subpoena must occur there. See FED. R. CIV. P. 45(d)(2)(B), 45(d)(3) and 45(e)(2)(B).

Although the Northern District of California has discretion to transfer the motion to this Court under Rule 45(f), it has not done so. Until the Court in the Northern District of California resolves the motion or transfers it here for resolution, a request to enforce the DCO is premature. Accordingly, NDT's motion is **DENIED WITHOUT PREJUDICE**.

## DELL'S MOTION FOR LEAVE TO FILE A MOTION TO COMPEL

On October 15, 2015, Dell filed an opposed motion for leave to file a motion to compel NDT to produce "non-

privileged, business communications between Acacia and Silicon Image as well as internal business communications of Acacia employees." Docket No. 257 at 12.

Discovery closed on September 7, 2015. The original discovery deadline was August 10, 2015. Pursuant to the parties' request, the discovery deadline was moved twice. Courts consider a number of factors when deciding whether a motion to compel is untimely:

> **\*2**  (1) the length of time since the expiration of the deadline; (2) the length of time that the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom late discovery was sought; and (8) disruption of the court's schedule.

*Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006), *see also Taylor v. Turner Industries Group, LLC*, No. 2:11–cv–57, 2012 WL 4092492, *1 (E.D. Tex. Sept. 17, 2012).

Despite discovery being closed, Dell argues that its motion should be considered timely because it was diligent in bringing the motion and the requested documents would not cause prejudice to NDT or disrupt the Court's schedule. *See* Docket No. 257. On August 31, 2015, NDT "served a substantial amount of discovery." *Id.* at 2. Dell contends it was

unaware that NDT "intended to claim privilege to such a large volume of documents...." *Id.* Dell asserts that the majority of documents sought "are internal business communications at Acacia where no lawyer is identified on the privilege log." Docket No. 273 at 3.

NDT responds that Dell's motion is untimely because Dell filed its motion six weeks after the Court's discovery and motion to compel deadline. Docket No. 268 at 1. NDT contends that Dell was aware of the parties' privilege disagreements since April 2015. *Id.* NDT argues that even if the discovery served on August 31, 2015 delayed Dell filing a motion to compel, a delay of six weeks does not indicate diligence. *Id.* at 2. NDT further argues that it will be prejudiced by such late discovery and additional discovery would be needed to rebut any information Dell obtains, which could cause a need for a continuance of the trial date. *Id.* at 10.

Currently, dispositive motions are due in this case by November 6, 2015 and a pretrial conference is set for December 3, 2015. As noted above, the deadline to complete discovery and file any necessary motions to compel was September 7, 2015. At a minimum, Dell would have been aware of the parties' privilege disputes since at least August 27, 2015. *See* Docket No. 268–5, Ex. C, Brown Depo. at 110:7–24. With the discovery period set to close within 10 days from that point, Dell would have had ample time to file a motion to compel. Dell, instead, waited six weeks, and a motion to compel at this point would be untimely. Accordingly, Dell's motion is **DENIED**.

**SIGNED this 2nd day of November, 2015.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13544186

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1660378
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Marshall Division.

NINGDE AMPEREX

TECHNOLOGY, LIMITED, Plaintiff,

v.

ZHUHAI COSMX BATTERY CO., LTD., Defendant.

CIVIL ACTION NO. 2:24-CV-00728-JRG

|

Signed June 11, 2025

**Attorneys and Law Firms**

Abigail Clark, Cohasset, MA, Chunmeng Yang, Quinn Emanuel Urquhart & Sullivan, LLP, Seattle, WA, Gregory Blake Thompson, Mann, Tindel, Thompson, Tyler, TX, Lance Lin Yang, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, Michael Daniel Powell, Quinn Emanuel Urquhart & Sullivan LLP, Redwood Shores, CA, for Plaintiff.

Michael Christopher Hendershot, Jones Day, Palo Alto, CA, Blaney Harper, Jones Day, Dallas, TX, Joseph Franklin Cleveland, Jr., Brackett & Ellis PC, Fort Worth, TX, Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

RODNEY GILSTRAP, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is the Motion to Compel CosMX to Produce Technical Documents for Products Reasonably Similar to the Accused Products and to Supplement its Response to Interrogatory No. 1 (the "Motion to Compel") filed by Plaintiff Ningde Amperex Technology Limited ("ATL"). (Dkt. No. 44.) Having considered the Motion to Compel, the Court finds that it should be **DENIED**.

## I. ANALYSIS

ATL moves to compel Defendant Zhuhai CosMX Battery Co. Ltd. ("CosMX") to (1) produce documents related to reasonably similar products and (2) supplement its interrogatory response regarding the identification of all products that are shipped directly to the U.S. and/or are

qualified for eventual importation into the U.S. (Dkt. No. 44 at 1.)

### A. Document Production

ATL argues that CosMX is improperly limiting discovery to the specific products ATL charted in its infringement contentions. (Dkt. No. 44 at 3-4.) ATL asserts that "[t]o aid CosMX in finding the relevant products, ATL's letter identified with specificity the key features that ATL believed are 'sufficiently determinative of reasonable similarity for the purposes of defining the proper scope of discovery.' " (*Id.* at 3.) ATL asserts that "although CosMX states that it has 'agreed' to provide all of this information, it has failed to provide a date certain for when it intends to fulfill its obligations." (*Id.* at 5.) ATL requests that the Court order CosMX to produce the requested documents within fourteen days of the Court's Order. (*Id.*)

CosMX responds that ATL's complaints are unfounded because "CosMX has produced, and continues to produce, responsive documents." (Dkt. No. 49 at 5-6.) CosMX asserts that despite ATL's contention that it has provided information sufficient to identify what products are reasonably similar, ATL's "table of supposed 'key features' merely parrots the claim language," which is deficient under the Court's Local Rules. (*Id.*) CosMX asserts that it "has produced thousands of technical documents relating to hundreds of products—including, as ATL itself acknowledges (albeit buried in a footnote), a production on May 15 that *ATL had not reviewed even by the time it filed its Motion over a week later*." (*Id.* at 6 (emphasis in original).) CosMX also asserts that it made another substantial document production on June 5. (*Id.* at 4, 6.)

The Court agrees that ATL's Motion to Compel is premature and not ripe for Court intervention. As ATL acknowledges, eight days before filing the Motion to Compel, CosMX produced documents relating to representative products, and ATL had not yet reviewed the document production before filing the Motion to Compel. (Dkt. No. 44 at 1, n.1.) The Local Rules state that "a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve." Local Rule CV-7(h). ATL cannot have reasonably concluded, in good faith, that there was an open issue for the Court to resolve concerning CosMX's document production when it admittedly had not reviewed CosMX's recent document production. Further, the Court

USAP0201

does not believe that the parties engaged in a good faith meet and confer before ATL filed the Motion to Compel.

**\*2** Accordingly, the Court **DENIES WITHOUT PREJUDICE** ATL's request to compel CosMX to produce documents. To the extent ATL believes an issue still exists that requires Court intervention, ATL can seek relief after it reviews CosMX's document productions and meaningfully meets and confers with CosMX in compliance with the Local Rules.

### B. Interrogatory Responses

ATL argues that despite receiving its infringement contentions three months ago, CosMX has not supplemented its responses to ATL's interrogatories. (Dkt. No. 44 at 4-5.) ATL asserts that Interrogatory No. 1 asks CosMX to "identify all LIBs imported directly to the U.S. and/or all LIBs that are capable of being imported into the U.S." [1] (*Id.*) ATL asserts that "[t]his list is critical to ATL's confirmation of whether CosMX's production of technical documents is comprehensive and to test whether CosMX is improperly withholding technical documents for LIBs that are reasonably similar to the charted products." (*Id.* at 5.) ATL requests that the Court order CosMX to supplement its interrogatory response within fourteen days of the Court's Order. (*Id.*)

[1]    "LIB" refers to lithium-ion battery products. (*E.g.*, Dkt. No. 44 at 1.)

CosMX responds that ATL mischaracterizes its Interrogatory No. 1. (Dkt. No. 49 at 7.) CosMX argues that Interrogatory No. 1 is overly broad in seeking the identification of "all LIB Products." (*Id.*) CosMX asserts that "[d]ue to ATL's failure to provide sufficient specificity, CosMX has worked to identify products 'reasonably similar' to the three accused [products], and is diligently working to update its response to Interrogatory No. 1." (*Id.*)

The Court agrees that ATL's Interrogatory No. 1 is overly broad. ATL's Interrogatory No. 1 requests CosMX to:

> Identify (i) *all LIB Products* You have offered for sale, sold, or otherwise delivered to any Person in the United States on or after March 30, 2021, and (ii) *all LIB Products* You have offered for sale, sold, or otherwise delivered to

any Person anywhere in the world on or after March 30, 2021, which, based on Your knowledge, are reasonably capable of being incorporated into an electronic device manufactured, used, offered for sale, sold, imported, or otherwise distributed in the United States, including but not limited to *all LIB Products* made and/ or sold by You for which You or Your customers have certified compliance with U.S. standards and regulations. Your response should identify, separately for each product, the internal and external model or product number, name, trademark, and/or other designation used to refer to the product, and identify any witnesses knowledgeable about the subject matter of the interrogatory and the relevant information known to each such witness.

(Dkt. No. 49-3 (emphasis added).) While ATL is entitled to discovery of products that are reasonably similar to those charted in ATL's infringement contentions, ATL is not entitled to discovery of "all LIB Products." While the parties may disagree regarding the scope of "reasonably similar" products, that issue is not properly before the Court in the Motion to Compel.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** ATL's request to compel CosMX to supplement its response to Interrogatory No. 1. The Court **DIRECTS** the parties to meaningfully meet and confer regarding the scope of "reasonably similar" products.

## II. CONCLUSION

**\*3** For the reasons stated herein, the Court **DENIES WITHOUT PREJUDICE** ATL's Motion to Compel (Dkt. No. 44) as set forth above.

**So ORDERED and SIGNED this 11th day of June, 2025.**

**All Citations**

Slip Copy, 2025 WL 1660378

**Ningde Amperex Technology, Limited v. Zhuhai CosMX Battery Co., Ltd., Slip Copy (2025)**

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**USAP0203**

Ruiz v. U.S. Protect, Not Reported in Fed. Supp. (2008)

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 64 of 103

2008 WL 11395490
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Victoria Division.

Ramundo RUIZ,

v.

U.S. PROTECT, et al.

C.A. NO. 6:07-CV-56
|
Signed 08/29/2008

**Attorneys and Law Firms**

John W. Griffin, Jr., Marek Griffin & Knaupp, Victoria, TX,
Katherine Louise Butler, Butler Harris, Houston, TX, for
Ramundo Ruiz.

Charles Howard Wilson, Cozen O'Connor, Houston, TX, for
U.S. Protect, et al.

**ORDER GRANTING PLAINTIFF'S
MOTION TO COMPEL DISCOVERY**

BRIAN L. OWSLEY, UNITED STATES MAGISTRATE
JUDGE

**\*1** This is a civil action filed pursuant to the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.,
and the Rehabilitation Act, 29 U.S.C. § 701, et seq. Pending
is plaintiff's motion to compel discovery responses. (D.E.
71). For the reasons set forth below, the plaintiff's motion is
GRANTED.

**I. BACKGROUND**

Plaintiff Ramundo Ruiz has sued both U.S. Protect and
Michael Mukasey for unlawful employment discrimination
by the United States Marshals Service ("USMS") pursuant
to the ADA and the Rehabilitation Act.[1] He alleges that
defendants unlawfully terminated his employment by using
a qualification standard that screens out the disabled. (D.E.
40, at ¶ 13). Specifically, he complains that the hearing test
required by defendants is discriminatory because although
court security officers ("CSOs") are allowed to wear hearing
aids on the job, they are not allowed to wear them during the
hearing test. Id. at ¶ 12-13.

[1]    On March 27, 2008, proceedings were stayed as to
defendant U.S. Protect following the institution of
bankruptcy proceedings against U.S. Protect. (D.E.
55).

Plaintiff alleges that defendants violated the ADA by using
qualifications that tend to screen out the disabled. Id. at ¶
16. He asserts that he is an individual with a disability as
defined by the ADA both because he has an actual disability
and because he was regarded as having such a disability
by defendants. Id. He further alleges that the testing criteria
are neither job related nor justified by business necessity.
Id. at ¶ 15. On August 12, 2008, defendant filed a motion
for summary judgment asserting, *inter alia*, that the hearing
standard employed by the USMS is justified by business
necessity. (D.E. 74, at 15).

**II. PLAINTIFF'S MOTION TO COMPEL**

Plaintiff seeks (1) the Federal Occupational Health records
regarding the medical qualification of CSOs from 2004 to
the present; and (2) the Federal Occupational Health records
of CSOs identified as having medical-based performance
issues on the job during the same period. He has sought
these documents through Rule 30(b)(6) document requests,
interrogatories, and requests for production. (D.E. 71; D.E.
83, at 2; D.E. 84). Plaintiff specifically sought these records
in its Second Set of Requests for Production, served on
defendants on June 24, 2008. (D.E. 84, at 13-23). Defendant
Michael Mukasey[2] filed a response challenging the plaintiff's
motion on the grounds (1) that the motion is untimely; (2) that
plaintiff waived the right to compel discovery based on the
Rule 30(b)(6) deposition notice because he agreed to accept
the response in the form of interrogatory answers; (3) that
the records sought is not relevant; and (4) that producing the
records would unduly burden the privacy interests of third
parties.

[2]    Defendant in the singular used throughout this
order references defendant Michael Mukasey.

On April 25, 2008, plaintiff served a notice of deposition
on the defendant pursuant to Rule 30(b)(6) of the Federal
Rules of Civil Procedure. (D.E. 71, at 3). The notice described
several topics for examination. (D.E. 83, Ex. A, at 5). Topic 5
of the notice requested information about "[t]he specific basis
for each medical disqualification of a Court Security Officer

Case 4:23-cv-03560 Document 273-1 Filed on 06/27/25 in TXSD Page 65 of 103

Ruiz v. U.S. Protect, Not Reported in Fed. Supp. (2008)

from 2000 to the present." Id. This topic was accompanied by a request for "[a]ny documents evidencing the specific basis for the medical disqualification." Id. Topic 6 of the notice requested documents about "[a]ny work-related problems caused by medical conditions (such as diabetes, heart disease, hypertension) that have arisen in the course of performing the essential job functions of Court Security Officers from 2000 to the present." Id. This topic was accompanied by a request for "[a]ny documents evidencing work-related problems caused by conditions that have arisen in the course of CSO job performance." Id.

**\*2** On May 8, 2008, defendant notified plaintiff that it objected to these topics on several grounds, including that the requests "require[d] detailed information that is more appropriately the subject of an interrogatory rather than a 30(b)(6) deposition." (D.E. 83, at 2). On May 13, 2008, the plaintiff sent defendant a letter explaining that "we would be happy to receive this information in the form of interrogatory answers—as you propose in your final objection." (D.E. 83, Ex. B, at 2). He also noted in the same letter, however, that "to date, you have not answered our interrogatories that requested this same information." Id. On May 16, 2008, defendant responded that "[w]ithout waiving any objection, Defendant will agree to respond to Topics 5 and 6 by providing the requested information ... in the form of interrogatory answers." (D.E. 83, Ex. C, at 1). Defendant provided interrogatory answers to Topics 5 and 6 at the deposition on June 18, 2008. (D.E. 83, at 2).

On June 24, 2008, plaintiff served a Second Set of Requests for Production pursuant to Rule 34 of the Federal Rules of Civil Procedure, requesting the medical records of disqualified CSOs, including those of several identified CSOs. (D.E. 84, at 17-18). On July 24, 2008, Defendant notified the plaintiff that it objected to the request on privacy and relevancy grounds. Id. On July 25, 2008, plaintiff apparently wrote to defendant in an attempt to resolve the discovery dispute regarding medical files. (D.E. 83, Ex. D, at 1).[3] On August 1, 2008, defendant replied to plaintiff proposing a compromise by which the defendant would provide redacted medical records for persons identified as having any hearing-related problem. (D.E. 83, Ex. D, at 1). On August 11, 2008, plaintiff filed the pending motion to compel discovery. On August 26, 2008, oral argument was held regarding the motion to compel.

---

[3]     This letter, although referenced in defendant's August 1, 2008 letter to plaintiff, was attached

neither to plaintiff's motion nor defendant's response, nor was it filed with the exhibits requested by the Court at the August 26, 2008 hearing.

## III. DISCUSSION

**A. Plaintiff's Motion Is Not Untimely Despite The Discovery Deadline.**

Rule 37 of the Federal Rules of Civil Procedure does not establish any deadline for filing a motion to compel. See Fed. R. Civ. P. 37; see also Days Inn Worldwide, Inc. v. Sonia Investments, 237 F.R.D. 395, 396 (N.D. Tex. 2006). "Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite discovery through a scheduling order." Turnage v. Gen. Elec. Co., 953 F.2d 206, 208 (5th Cir. 1992). This Court has broad discretion in managing discovery matters. Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 220 (5th Cir. 2000). The "[e]xercise of *sound* discretion, however, requires that a court not enforce its scheduling order deadline rigidly and without regard to underlying facts." Blackboard Inc. v. Desire2Learn, Inc., No. 09-CV-155, 2007 WL 3389968, at *3 (E.D. Tex. Nov. 14, 2007) (unpublished) (emphasis in original) (citing Days Inn Worldwide, 237 F.R.D. at 398).

This action is governed by a scheduling order, which set the deadline for completion of discovery as July 27, 2008. (D.E. 46, at 1). The scheduling order in this case permits the parties to continue discovery past the deadline by agreement, but states that "there shall be no intervention by the Court except in extraordinary circumstances." Id. Plaintiff's instant motion was not filed until August 11, 2008, two weeks after the discovery deadline had passed. (D.E. 71).

A number of court have held that it is within a district court's discretion to deny a motion to compel where the discovery deadline has passed. See Days Inn Worldwide, 237 F.R.D. at 397-98 (collecting cases). However, the passing of the discovery deadline does not necessarily render a motion to compel filed after that date untimely. See McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP, 243 F.R.D. 1, 11 (D.D.C. 2007); see also Sequoia Prop. v. United States, 203 F.R.D. 447, 450-51 (E.D. Cal. 2001) (motion to compel filed after discovery deadline passes should be denied *unless* good cause for the delay is established). The Days Inn Worldwide court identified several factors that courts consider in deciding whether to grant or deny a motion filed after the discovery deadline has passed:

**\*3**  (1) [T]he length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) [sic] the age of the case, (8) any prejudice to the party from whom late discovery was sought, (9) disruption of the court's schedule.

Days Inn Worldwide, 237 F.R.D. at 398.

At oral argument, defense counsel relied on Days Inn Worldwide to support its position. In that case, the court had extended the discovery deadline to May 31, 2006 from April 1, 2006, on the parties' unopposed motion. Id. at 396. On June 15, 2007, two weeks after the discovery deadline had passed, a third-party plaintiff filed a motion to compel. Id. The court noted that the motion to compel had been filed "two weeks after the discovery deadline, even though the discovery deadline has been twice extended in this case." Id. at 398. Moreover, "[t]he motion was filed ten months after the responses were filed, nine and a half months after the documents were produced, and six months after the deposition." Id. The court further noted that the movant "present[ed] no explanation for this delay." Id. The court explained that "if the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril." Id. (quoting Wells v. Sears Roebuck & Co., 203 F.R.D. 240, 241 (S.D. Miss. 2001)) (internal quotation marks omitted). The court reasoned that the "[movant] could not reasonably have expected to obtain those documents prior to his summary judgment response, and no argument was presented concerning a need for the documents in order to file a response." Id.

In Blackboard, the court granted a motion to compel discovery that was filed after the discovery deadline, applying a similar analysis to that in Days Inn Worldwide. In that decision, the motion to compel was filed "less than two weeks after the discovery period closed[.]" 2007 WL 2289968, at

\*3. Moreover, the court noted that the opposing party was "on notice by October 11 (before the close of discovery) that Blackboard planned to file a Motion to Compel in the event that the requested documents were not produced." Id. In addition, "[t]he parties were conferring on the discovery issue throughout October. Blackboard courteously provided Desire2Learn additional time to produce the requested documents before seeking court intervention." Id. The court noted that "[t]his commendable attempt to reach an agreement seems to be the only reason this motion was not filed before October 17 [the close of the discovery deadline]." Id. Thus, the court reasoned, it would "not penalize Blackboard for attempting to first resolve discovery disputes without resorting to court intervention." Id.

In McFadden, the court rejected an argument similar to defendant's position, explaining that although the motion to compel came after the discovery deadline, "it seeks to compel answers and documents that were demanded during the discovery period." 243 F.R.D. at 11. "Indeed, if such a motion could not be filed after the discovery period, it would create an incentive to delay responses and then 'run out the clock.' " Id.

Here, the situation presented in this discovery dispute is more analogous to that in McFadden and Blackboard as opposed to Days Inn Worldwide. While this motion was filed two weeks after the discovery deadline, the plaintiff waited only two weeks after receiving inadequate responses from the defendant before filing his motion to compel—far less than the ten-month period during which the movant in Days Inn Worldwide sat on his rights without acting. The records sought by plaintiff was requested by various means beginning as early as April 25, 2008, when the Rule 30(b)(6) notice was served on the defendants; the defendant answered the topics in the form of interrogatory answers, as agreed, but responded with a spreadsheet, which failed to adequately respond to plaintiff's request. [4] Plaintiff then attempted to obtain the documents by means of a request for production served on defendants on June 24, 2008, more than a month before the discovery deadline passed. (D.E. 84, at 23; D.E. 83, at 2). Thus, like the discovery sought in McFadden, the records in this dispute was sought before discovery ended. Defendant objected to plaintiff's requests on the grounds of privacy and relevancy on July 24, 2008, just three days before the discovery deadline passed. (D.E. 84, at 16). Therefore, denying this motion to compel would allow the defendants to "run out the clock" as warned by the McFadden court, and thereby avoid producing relevant documents.

Case 4:23-cv-03560     Document 273-1     Filed on 06/27/25 in TXSD     Page 67 of 103

Ruiz v. U.S. Protect, Not Reported in Fed. Supp. (2008)

4    This spreadsheet was attached neither to plaintiff's motion nor to defendant's response and was not filed with the other exhibits requested by the Court at the August 26, 2008 hearing. Nevertheless, a spreadsheet, which presumably would contain a summary of records, was unresponsive to plaintiff's request for detailed information.

**\*4** Plaintiff also asserted at oral argument that he required the documents requested to respond to defendant's motion for summary judgment. The movant in Days Inn Worldwide made no such argument. 237 F.R.D. at 398. The parties agreed that the documents requested could reach the plaintiff with adequate time to review the material before the plaintiff's response to the motion for summary judgment is due on September 11, 2008. Thus, the material sought would be helpful to the disposition of the case and the requested discovery would not interfere with the court's schedule. Plaintiff is not requesting a continuance to respond to defendant's motion for summary judgment.

Finally, the Court's scheduling order permits the parties to continue discovery past the deadline "by agreement." (D.E. 46, at 1). On August 1, 2008, defendant sent plaintiff a letter in which it thanked plaintiff for "allowing us the opportunity to resolve this matter without involving the Court." (D.E. 83, Ex. D, at 1). In the letter, defendant proposed a compromise by which the documents requested would be produced in a redacted form. It is apparent that the parties attempted to resolve their discovery dispute without involvement of the Court, as allowed by the scheduling order. Because this compromise was never reached, the instant motion was filed. As in Blackboard, this Court will not penalize plaintiff for first attempting to resolve this discovery dispute without the involvement of the court.

**B. Plaintiff Has Not Waived His Right To Compel These Documents From Defendant.**

Defendant also argues in its response that plaintiff has waived his right to compel discovery based on the Rule 30(b)(6) notice because he agreed to accept the response in the form of an interrogatory answer. However, it is clear that plaintiff's motion to compel is based on defendant's inadequate response in its interrogatory answers and on defendant's failure to provide documents requested in plaintiff's Second Request for Production. Plaintiff's agreement to accept the response requested in the Rule 30(b)(6) notice in the form of an interrogatory answer did not waive his right to file a motion

to compel where defendant's responses were inadequate to answer that request.

To the extent that defendant appears to argue that the documents requested in response to the interrogatory answer and the request for production are duplicative, he is correct. Both discovery requests seek the same records. However, defendant has not produced anything in response to either request. Thus, because defendant has failed to adequately respond to either request, it may be compelled to produce the documents.

**C. The Records Requested Are Relevant.**

Discovery has a broad scope: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendant here claims that the records requested by plaintiff "would not help plaintiff prove his claims." (D.E. 83, at 4). He argues that plaintiff seeks the medical records regarding qualification of CSOs and the records of persons identified as having on-the-job problems related to their medical condition "ostensibly in the pursuit of showing that Plaintiff suffered unlawful discrimination because of a hearing impairment." Id. However, Rule 26 provides that a party may discover material relevant to "*any*" party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). In this case, it is clear that plaintiff seeks discovery material relevant to defendant's affirmative defense of business necessity.

The ADA defines "discrimination" to include the use of tests or standards that tend to screen out an individual or class of individuals with a disability, if the screening criteria used "is shown to be job related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6); see also 42 U.S.C. § 12113(a). "[W]here an employer has developed a standard applicable to all employees of a given class," the employer "may defend the standard as a business necessity." EEOC v. Exxon Corp., 203 F.3d 871, 875 (5th Cir. 2000). The employer bears the burden of establishing this defense. Riel v. Data Sys. Corp., 99 F.3d 678, 682-83 (5th Cir. 1996).

**\*5** The Fifth Circuit has held that courts should consider the magnitude of possible harm and the probability of its occurrence in determining whether the defense applies to a safety-related qualification standard. EEOC v. Exxon Corp., 230 F.3d at 875. "The acceptable probability of an incident will vary with the potential hazard posed by the particular position: a probability that might be tolerable in an ordinary

Ruiz v. U.S. Protect, Not Reported in Fed. Supp. (2008)

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 68 of 103

job might be intolerable in a job involving atomic reactors, for example." Id. Thus, "the probability of an occurrence is discounted by the magnitude of its consequences." Id.

Defendant has raised the argument that the hearing standard challenged in this case is justified by business necessity due to the high magnitude of harm that would be caused by a breach of courthouse security. (D.E. 74, at 18). Thus, the burden is on the defendant to prove that its hearing standard is consistent with its beliefs about risk and courthouse security. The documents plaintiff seeks to discover bear on the risk tolerated by defendant both with respect to hearing and other medical conditions, and therefore are relevant to defendant's claim of business necessity.

Defendant has already produced Federal Occupational Health records covering the period from 2001 to 2004, which were produced in Gunnels v. Akal Security, Inc., et al., C-02-CV-132, indicating that defendant knew such records to be relevant. Plaintiff merely asks for updates to those documents with records from 2004 to the present, as it is the current standard and current conditions of defendant's business that are most relevant in this litigation. These documents are clearly relevant to the defendant's claim of business necessity, and therefore discoverable.

### D. The Privacy Interests of Third Parties Can Be Adequately Protected By A Protective Order.

The defendant's concern regarding the privacy interests of third parties is well taken. As the Supreme Court has discussed, "[i]t is clear from experience that pretrial discovery ... has a significant potential for abuse." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." Id. at 34-35. Thus, "[t]he government clearly has a substantial interest in preventing this sort of abuse of its processes." Id. at 35 (citations omitted). Medical records are "well within the ambit of materials entitled to privacy protection." United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980).

In this case, plaintiff's request for medical records is sweeping and involves a number of persons not involved in the litigation of this case. The documents sought are relevant to his claim that the standard imposed by the defendant is not job-related, but plaintiff's interest in discovering relevant information must be balanced against the harm to third parties in disclosing their confidential medical records.

Here, however, the parties agreed at the August 26, 2008 hearing that a protective order similar to the order issued in Gunnels would adequately protect the privacy interests of such third parties. A protective order that prevents the disclosure of confidential or sensitive information adequately protects the interests of a litigant or a third party. See, e.g., United States v. Chevron U.S.A., Inc., 186 F.3d 644, 650-51 (5th Cir. 1999) (upholding a protective order which was interpreted by the parties as preventing the disclosure of confidential information to third parties outside the context of litigation). Accordingly, a protective order will be issued separately. Thus, allowing the plaintiffs to discover the records requested, subject to such a protective order, would adequately balance the interests of the plaintiff in discovering relevant information against the privacy concerns of third parties.

### IV. CONCLUSION

**\*6** For the reasons set forth above, plaintiff's motion to compel discovery, (D.E. 71), is hereby GRANTED. Accordingly, defendant is ORDERED, subject to the Protective Order, to produce (1) the Federal Occupational Health records regarding the medical qualification of CSOs from 2004 to the present; and (2) the Federal Occupational Health records of CSOs identified as having medical-based performance issues on the job during the same period, as requested in plaintiff's June 24, 2008 Second Set of Requests for Production, no later than close of business Friday, September 5, 2008.

ORDERED this 29th day of August 2008.

### All Citations

Not Reported in Fed. Supp., 2008 WL 11395490

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

USAP0208

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 69 of 103

RYH Properties, LLC v. West, Not Reported in Fed. Supp. (2010)

2010 WL 11527428
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas, Texarkana Division.

RYH PROPERTIES, LLC, et al.

v.

Bruce R. WEST, Sr., et al.

No. 5:08CV172
|
Signed 10/13/2010
|
Filed 10/14/2010

**Attorneys and Law Firms**

Rondal Gary Nutter, Dunn Nutter & Morgan, Texarkana, TX, David D. Wilson, Pro Hac Vice, James M. Simpson, Pro Hac Vice, Friday Eldredge & Clark, Robert L. Henry, Pro Hac Vice, Barber McCaskill Jones & Hale PA, Little Rock, AR, for Ryh Properties, LLC, et al.

Searcy L. Simpson, Jr., Julie Kay Baker, Pro Hac Vice, Law Office of Skip Simpson, Frisco, TX, for Bruce R. West, Sr., et al.

D. Aaron Buck, Frisco, TX, pro se.

### ORDER

CAROLINE M. CRAVEN, UNITED STATES MAGISTRATE JUDGE

 **\*1**  The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court: Defendants' Motion to Compel Discovery (Docket Entry # 74). The Court, having reviewed the motion and the response, is of the opinion the motion should be **GRANTED IN PART and DENIED IN PART.**

### I. FACTUAL BACKGROUND

According to Plaintiffs, Greg Henry and RYH Properties, LLC ("Plaintiffs") are investors in securities solicited, offered for sale, and sold by Bruce R. West, Sr.; Bruce R. West, Jr.;

JR Realty Group; D. Aaron Buck; Laura Sinclair Manning, as Executrix of the Estate of W. Ward Manning, Jr., deceased; Manning Companies, LLC; Carolina Jubilee Ltd.; Carolina Lakeview Ltd.; Jubilee Park at Carolina Beach, LLC; and Lakeview at Carolina Beach, LLC ("Defendants"). Plaintiffs allege the securities were in the form of investment contracts and limited partnership interest, and Defendants engaged in false representations regarding the investments with the intent of inducing Plaintiffs to invest in inter-related investment schemes related to condominium developments. (Docket Entry # 28 at pg.1). In their amended complaint, Plaintiffs assert a claim for breach of fiduciary duty, generally alleging that certain Defendants have "fiduciary duties" to Plaintiffs and that these duties were breached.

### II. DEFENDANTS' MOTION

On July 26, 2010, Defendants filed their current motion to compel, asserting Plaintiffs have not tendered their initial disclosures, responses to interrogatories, or documents responsive to Defendants' requests for production. Defendants seek an Order compelling Plaintiffs to produce their initial disclosures; produce all documents responsive to their requests for production; and provide complete responses to their interrogatories. Defendants further seek an Order charging Plaintiffs with all expenses, including reasonable attorneys' fees, that Defendants incurred in drafting and filing this motion.

In response, Plaintiffs explain that they had been precluded from engaging in discovery with Defendants because Defendants filed motions to dismiss pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–5(c) ("PSLRA"). According to Plaintiffs, Defendants refused to respond to Plaintiff's discovery, asserting the existence of an PSLRA "stay." Plaintiffs state Chief Judge Folsom ruled on the last motion to dismiss in May of 2010, and Defendants made an initial production of documents at that time, a few days before the discovery deadline. Plaintiffs' counsel believed the parties would file a joint motion for continuance of the September 8, 2010 trial date, [1] and a new scheduling order would be issued with new dates for discovery. In reliance on this belief, Plaintiffs state they did not make certain filings under the scheduling order.

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 70 of 103

RYH Properties, LLC v. West, Not Reported in Fed. Supp. (2010)

1    The parties were unable to agree on a joint motion, and Plaintiffs filed a motion for continuance on July 27, 2010. On August 19, 2010, Chief Judge Folsom rescheduled the trial setting for June of 2011. According to the Amended Scheduling Order, the current discovery deadline is March 7, 2011.

**\*2**   Plaintiffs further state that, although operating on the assumption that a joint motion for continuance was going to be filed, they have been collecting documents to respond to discovery. On July 26, 2010, Plaintiffs produced to Defendants over 1,700 pages of documentation and Supplemental Responses to Defendants' Requests for Production. Plaintiffs assert they cannot provide more detailed information than that already provided absent meaningful discovery from Defendants.

### III. DISCUSSION

**A. Initial Disclosures**

According to this Court's original scheduling order, the deadline for Plaintiffs to produce their initial disclosures was July 16, 2010. (Docket Entry #36). Plaintiffs state they served their disclosures on July 27, 2010. Even though the disclosures were served eleven days late, this delay does not rise to the level of sanctionable conduct. The trial date has been moved to June of 2011, eliminating any prejudice to Defendants. Considering this and further considering Plaintiffs' representations regarding the history of this case, the Court is of the opinion Defendants' request for sanctions should be denied. In the future, Plaintiffs shall comply with the Court's deadlines or seek relief from the Court.

**B. Requests for Production**

**1. Request for Production No. 9**

This request seeks the production of "all loan documents wherein [Plaintiffs] requested loans ... for the purposes of investing in the defendant's projects made the basis of this lawsuit." Plaintiffs objected that this request seeks information which is not relevant and will not lead to the discovery of admissible evidence. The Court finds the requested information regarding the funding for the investments at issue is relevant to the claims and defenses involved in this lawsuit. Therefore, this part of Defendants' motion is **GRANTED**. To the extent they have not already done so and to the extent responsive documents exist, Plaintiffs shall produce to Defendants, within thirty days from

the date of entry of this Order, documents responsive to Request for Production No. 9.

**2. Requests for Production No. 14**

Request for Production No. 14 seeks "[a]ll documents reflecting or relating to any offsets, credits or payments applied to any amounts allegedly owed by Defendant." Plaintiffs state that they "do not understand this request." Defendants assert they clarified, in the discovery correspondence, that this request seeks documents evidencing compensation or other credit Plaintiffs have received that would decrease the amount allegedly due to Plaintiffs from Defendants.

This part of Defendants' motion is **GRANTED**. To the extent they have not already done so and to the extent responsive documents exist, Plaintiffs shall produce to Defendants, within thirty days from the date of entry of this Order, documents responsive to Request for Production No. 14.

**3. Request for Production No. 45**

This request for production seeks "[a]ll documents, including payroll reflecting the names of the members, affiliates, officers, directors, and/or employees of Plaintiff for the last five (5) years." Plaintiffs objected that the request is overly broad; is not relevant; and is not likely to lead to the discovery of admissible evidence.

The Court disagrees and this part of Defendants' motion is **GRANTED**. To the extent they have not already done so, Plaintiffs shall produce to Defendants, within thirty days from the date of entry of this Order, documents responsive to Request for Production No. 45.

**4. Request for Production No. 49**

**\*3**   Request for Production No. 49 requests "[a]ny and all documents referring or relating to the negotiations and/or execution of any contract, including settlement agreements, Plaintiff claim exists between Defendants and Plaintiff." Plaintiffs objected that they did not understand this request, and that the request is "overly broad, vague, and seeks information that is not relevant and will not lead to the discovery of admissible evidence." Plaintiffs state they have responded to this request, pointing Defendants to the documents supplied to Defendants' counsel in a separate letter. Plaintiffs represent they will continue to seek to collect any other responsive documentation and will supplement

USAP0210

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 71 of 103

RYH Properties, LLC v. West, Not Reported in Fed. Supp. (2010)

accordingly. Based on Plaintiffs' representations, this part of Defendants' motion is **DENIED**.

### 5. Request for Production Nos. 52 & 53

In this request for production, Defendants request "[a]ny and all computer disks or other forms of data storage containing any of the information requested in any Interrogatory served upon Defendant by Plaintiff or any of the documents requested in any Request for Production of Documents and Things served upon Defendant by Plaintiff that is reasonably available to Plaintiff in the normal course of business." Similarly, Request for Production No. 53 seeks the "actual CPUs used and/or operated by former employees of Plaintiff." Plaintiffs object to these requests as being overly broad, irrelevant, and not likely to lead to the discovery of admissible evidence. Plaintiffs further stated the requests seek information not readily available to Plaintiffs, and searching for the information would require expertise and "great expenditures of money."

Federal Rule of Civil Procedure 26(b)(2)(iii) allows the Court to limit discovery if the burden or expense of the proposed discovery outweighs the likely benefits of the discovery, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Here, the Court is not convinced the burden or expense of searching for the requested information outweighs the likely benefit of the discovery. Thus, this part of Defendants' motion is **GRANTED**. To the extent they have not already done so and to the extent responsive documents exist, Plaintiffs shall produce to Defendants, within thirty days from the date of entry of this Order, documents responsive to Request for Production Nos. 52 and 53.

### 6. Request for Production No. 56

In this request for production, Defendants seek "[a]ll business, marketing and sales plans for Plaintiff." Plaintiffs object on the grounds that the request is overly broad, vague, and seeks irrelevant information. Plaintiffs assert this case is about Defendants' actions in marketing securities and selling securities to Plaintiffs. According to Plaintiffs, Richard Y. Henry is an ophthalmologist in private medical practice in North Little Rock Arkansas, and RYH Properties, LLC is an entity solely owned by Richard Y. Henry; Greg Henry is an individual plaintiff, not a business entity.

The Court finds the language of this request is vague. The Court is unable to tell exactly what documents Defendants are seeking. To the extent Defendants seek all of Plaintiffs' "business, marketing and sales plans," the Court finds the information is not relevant. However, to the extent Defendants seek business, marketing, and sales plans prepared by Defendants for Plaintiffs, Defendants may serve an amended request for production more specifically asking for this information. This part of Defendants' motion is **DENIED**.

### C. Interrogatories

Defendants tendered twenty-four numbered interrogatories to Plaintiffs, some of which contained subparts. According to Defendants, Plaintiffs failed to provide adequate responses to Interrogatories 18, 19, and 20. Plaintiffs first object to these interrogatories, asserting Defendants exceeded 25 written interrogatories, including all discrete subparts. Plaintiffs further object on the bases that the interrogatories seek "legal opinions from a non-lawyer plaintiff," are overly broad and vague, and seek irrelevant information.

**\*4** Federal Rule of Civil Procedure 33(a) provides that, without leave of court or written stipulation, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served...." FED. R. CIV. P. 33(a). Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define "discrete subparts." The Advisory Committee addressed this issue and provided some guidance as to when subparts are to be considered separate interrogatories:

> Each party is allowed 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present,

USAP0211

and contents be stated separately for each such communication.

Advisory Committee's Notes to Rule 33(a). "A subpart is discreet when it is logically or factually independent of the question posed by the basic interrogatory." *Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc.*, 2004 WL 784533, *1 (W.D. Tenn. 2004).* "Identifying a person by name, address, phone number and place of employment is necessary to accurately identify a person and does not count as four separate interrogatories." *Id.*

In determining whether a subpart is a "discrete subpart," the Court should consider whether the interrogatory subpart is "logically or factually subsumed within and necessarily related to the primary [interrogatory] question." *Estate of Manship v. U.S.*, 232 F.R.D. 552, 554 (M.D. La. 2005). The Court "should decide whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question?" *Id.* at 554-555. "In other words, '[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not 'factually subsumed within and necessarily related to the primary question.' " *Id.* at 555, *quoting Krawczyk v. City of Dallas*, 2004 WL 614842 (N.D. Tex.2004).

Here, certain interrogatories propounded by Defendants do contain subparts. For example, Interrogatory No. 4 seeks with regard to any witness whom Plaintiff may call as an expert witness through live or deposition testimony (1) the subject matter on which the expert is expected to testify; (2) the substance of the facts and opinions to which the expert is expected to testify; and (3) a summary of the grounds for each and every one of the expert's opinions. Interrogatory No. 6 seeks for each expert used for consultation and not expected to be called as a witness: (1) each expert's name, address (work and home) and telephone number (work and home); (2) the subject matter of testimony or consultation of the expert relating this Lawsuit; (3) all conclusions, mental impressions, facts known by and opinions of the expert; (4) whether any documents, correspondence and tangible things, including all tangible reports, physical models, compilations of data and other material, have been reviewed by, used by, prepared by or prepared for this expert, and if so, please identify each document and tangible thing so it may properly be sought by a request for production; (5) any learned treatise

relied upon by each expert who may testify, showing with respect to each expert, the title of the treatise, the author, the publisher, the date of publication, and any specific portions relied upon by reference to page number and Paragraph; (6) the educational or other qualifications of each expert; and (7) the compensation paid or agreed to be paid by each expert. Interrogatory Nos. 9, 10, 16, and 17 also have subparts.

 **\*5** The Court is of the opinion the majority of the subparts contained in Interrogatory Nos. 4, 6, 9, 10, 16, and 17 should not be considered "discrete subparts" and counted as separate interrogatories. The subparts are secondary to the primary interrogatory question and would not make sense without the primary question. The subparts are simply designed to obtain additional details concerning the general theme presented in the primary interrogatory question and are therefore counted as a single request.

For the interrogatories where the subparts are not necessarily encompassed by the primary question, the Court notes that it may, upon good cause shown, expand the discovery allowed by the Federal Rules of Civil Procedure. Although a few of the interrogatories may contain discrete subparts, the Court finds Defendants have not excessively abused their right to propound interrogatories and good cause exists to allow Defendants leave to exceed the numerical limit of 25 as to this first set of interrogatories already served.

The Court now considers Plaintiffs' substantive objections to Interrogatory Nos. 18, 19, and 20. Plaintiffs assert these interrogatories improperly seek "legal opinions from a non-lawyer plaintiff." Interrogatory 18 provides: "For each alleged breach of fiduciary duty, identify which Defendant owes the alleged duty and the relationship for which the fiduciary duty arises." Interrogatory 19 provides: "For each alleged breach of fiduciary duty, identify the factual and legal basis for the creation of the fiduciary duty and the date the duty came into existence." Interrogatory 20 provides: "For each alleged breach of fiduciary duty, identify the date you believe the claimed fiduciary relationship was breached and the specific conduct that you believe constitutes the breach."

In Count V of their amended complaint, Plaintiffs generally allege certain defendants have "fiduciary duties" to Plaintiffs, and these duties were breached "for reasons set forth herein." (Docket Entry # 50 at pg. 25). Defendants are entitled to discover the factual basis for the allegations contained in Plaintiffs' amended complaint, and the information sought in these interrogatories is proper and clearly relevant to Count V

in the amended complaint. This part of Defendants' motion is **GRANTED**. Plaintiffs' objections to Interrogatory Nos. 18, 19, and 20 are overruled, and Plaintiffs are ordered to answer these interrogatories within thirty days from the date of entry of this Order.

Based on the foregoing, it is

**ORDERED** that Defendants' Motion to Compel Discovery (Docket Entry # 74) is hereby **GRANTED IN PART and DENIED IN PART** as specified in Section III.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11527428

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 6829614
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION, Plaintiff,
v.
Roger D. BLACKWELL, et al., Defendants.

No. 2:03–cv–63.
|
Signed Jan. 14, 2004.
|
Filed Jan. 15, 2004.

**Attorneys and Law Firms**

Mark Thomas D'Alessandro, Columbus, OH, Adolph J. Dean, Jr., Sunil R. Harjani, Chicago, IL, for Plaintiff.

William Chester Wilkinson, Daniel William Costello, O. Judson Scheaf, III, Scott A. Campbell, Columbus, OH, for Defendants.

***OPINION AND ORDER***

ALGENON L. MARBLEY, District Judge.

### I. INTRODUCTION

**\*1** This matter is currently before the Court on Defendant Roger Blackwell's Motion to Compel. For the following reasons, the Court **GRANTS** the Motion to Compel and **ORDERS** the Commission to provide narrative responses to Interrogatory Nos. 1–14.

### II. BACKGROUND [1]

[1]     For additional background information, see this Court's November 19, 2003, Opinion and Order denying Defendants' Motions to Dismiss.

This enforcement action filed by the United States Securities and Exchange Commission (the "SEC" or the "Commission") involves alleged insider trading in the stock of Worthington

Foods, Inc. ("Worthington"). The SEC alleges that Defendant Roger D. Blackwell ("Blackwell"), a director of Worthington, provided illegal tips to close friends and family members prior to the October 1, 1999, announcement that the Kellogg Company ("Kellogg") had entered into an agreement to acquire Worthington. The SEC contends that these tips allowed the other named Defendants to profit in violation of the federal securities laws.

In a Complaint filed January 21, 2003, the Commission alleges that both the tipper, Roger Blackwell, and the tippees, Dale Blackwell, Christian Blackwell, Kelley Hughes, Kevin Stacy, Roger Blackwell and Associates Pension Plan Trust, Arnold Jack, and Black–Jack Enterprises, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. Additionally, the SEC alleges violations of Section 16(a) of the Exchange Act, 15 U.S.C. § 78(p)(a), and Rules 16a–2, 17 C.F.R. § 240.16a–2, 16a–3, 17 C.F.R. § 240.16a–3, and 16a–8, 17 C.F.R. § 240.16a–8, thereunder by Defendant Roger Blackwell.

On May 1, 2003, Defendant Blackwell filed a Motion to Dismiss based on failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure and failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. In an Opinion and Order dated November 19, 2003, the Court denied that Motion.

On July 26, 2003, Defendant Blackwell propounded written discovery. Defendant Roger Blackwell's First Set of Combined Discovery Requests to Plaintiff contains 14 contention interrogatories, designed primarily to elicit the specifics of conversations between Blackwell and the other Defendants in this action, as well as the specifics of how Blackwell benefitted from disclosing material non-public information to the other Defendants. On August 25, 2003, the Commission served its objections and responses to Defendant Blackwell's discovery requests. In responding to the contention interrogatories, the Commission first objected on the ground that they were premature. Subject to that objection, the Commission responded by identifying prior sworn testimony and documents that it had already produced to Defendants. A sample Interrogatory and Response follows:

**INTERROGATORY NO. 1:** With respect to your contention (as set forth in ¶ 25 of the Complaint) that "[d]uring that conversation [which took place on or about September 8, 1999] defendant Roger Blackwell disclosed material non-public information concerning the Kellogg's

USAP0214

acquisition of Worthington to his father," identify, state or describe the "material non-public information" which you contend was disclosed or communicated by Professor Blackwell during that conversation.

**\*2 RESPONSE:** The Commission incorporates its general responses and objections herein. The Commission further objects that this request is premature and calls for a legal conclusion. Subject to and without waiving its general and specific objections, the Commission states in response to this Request that the Commission has produced documents from which the answer to this request can be readily ascertained. Specifically, the Commission refers defendant Roger Blackwell to, *inter alia,* the testimony transcripts and related exhibits of Roger and Dale Blackwell, Dale Twomley and Joan Lieb, as well as the documents produced to the Commission by Roger Blackwell, Dale Blackwell, The Kellogg Company, Worthington Foods, Inc. and the National Association of Securities Dealers during the Commission's investigation.

This matter is before the Court on Blackwell's Motion to Compel under Rule 37 of the Federal Rules of Civil Procedure. In his Motion, Blackwell asks the Court to order the Commission to provide "complete narrative responses" to his interrogatories. Pursuant to Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure and Local Rule 37.2, Blackwell attached to his Motion a declaration of his attorney, William P. McGrath, Jr., that testifies to the efforts made by counsel to resolve this discovery dispute without recourse to the Court. Attached to Blackwell's Reply Memorandum is a Second Declaration of William P. McGrath, Jr., that details the post-Motion contact between Blackwell's counsel and counsel for the SEC as it relates to the discovery dispute.

### III. ANALYSIS

Blackwell contends that the SEC should be compelled to respond to the interrogatories because the interrogatories seek to identify facts critical to the claims asserted against Blackwell, and the Commission's prior answers are not responsive. Blackwell claims that he is entitled to narrative responses that state the requested facts, rather than "references to heaps of documents and transcripts." The Commission asserts that, consistent with Federal Rule of Civil Procedure 33(d), its responses refer Blackwell to specific testimony transcripts and other materials previously produced to Defendants. The Commission contends, in the alternative,

that the contention interrogatories are premature and the Court should enter an order postponing additional responses until the close of discovery.

Rule 33(d) provides a party responding to interrogatories with the option of forgoing a narrative response in favor of a response that specifies the business records of the responding party from which the answer may be derived or ascertained. Fed.R.Civ.P. 33(d). The Commission here has failed to establish one of the prerequisites for use of Rule 33(d): that the documents identified are the Commission's business records. *See Davis v. Fendler,* 650 F.2d 1154, 1158 n. 3 (9th Cir.1981) ("It is apparent that the records of [various state offices] do not qualify as appellant's 'business records.' A party cannot, under the guise of Rule 33(c) [now Rule 33(d) ], resort to such tactics."); *SEC v. Elfindepan, S .A.,* 206 F.R.D. 574, 577–78 (M.D.N.C.2002) (holding that pleadings, depositions, exhibits, and affidavits referenced by SEC in interrogatory response were not business records as required by Rule 33(d)); *Melius v. Nat'l Indian Gaming Comm'n,* No. CIV A 98–2210 (TFH/JMF), 2000 WL 1174994, at \*1, n. 2 (D.D.C. July 21, 2000) (holding that a submission that cross-references pleadings and exhibits is not an adequate interrogatory response and stating, "Plaintiff cannot seriously protest that Fed.R.Civ.P. 33(d), which excuses a party from providing a narrative answer to an interrogatory by producing business records, permits him to answer the interrogatory the way he did. The assertion that pleadings, depositions, or exhibits are 'business records' under this rule has been rejected by every court to consider it.") (citations omitted); *In re Savitt/Adler Litig.,* 176 F.R.D. 44, 49–50 (N.D.N.Y.1997) ("The records referred to by plaintiffs include depositions, answers to interrogatories by other parties and documents produced by defendants during discovery. None of these documents constitute business records of plaintiffs and, therefore, references to those documents and materials by plaintiffs in response to interrogatories was improper.") (citations omitted); *M & L Bus. Mach. Co., Inc. v. Kloepfer (In re M & L Bus. Mach. Co., Inc.),* 184 B.R. 366, 369 (D.Colo.1995) (holding that party's response to interrogatory improperly referred to third-party expert reports which were not business records of that party); *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton,* 136 F.R.D. 682, 687 (D.Kan.1991) (noting that Rule 33(d) "does not mention deposition transcripts, documents or writings that were generated, or discovered, respectively, during the course of prior discovery in the same case") (emphasis removed); *Hoffman v. United Telecomms., Inc.,* 117 F.R.D. 436, 438 (D.Kan.1987) (holding that documents submitted by an employer to the Equal

USAP0215

Employment Opportunity Commission ("EEOC") were not business records of the EEOC for purposes of providing business records in lieu of an answer to an interrogatory); *accord SEC v. Bilzerian (In re Bilzerian),* 190 B.R. 964, 965 (M.D.Fla.1995); *Mahoney v. Kempton,* 142 F.R.D. 32, 33 (D.Mass.1992); *Smith v. Logansport Cmty. School Corp.,* 139 F.R.D. 637, 650 (N.D.Ind.1991).

**\*3** Examination of the case law reveals two shortcomings in the documents relied upon by the Commission to answer the interrogatories. First, as transcripts and other documents obtained during the investigation of this matter, these materials are not business records, but rather are more akin to the "[p]leadings, depositions, exhibits, and affidavits" that have been held not to constitute business records for purposes of Rule 33(d). E.g., *Elfindepan,* 206 F.R.D. at 577–78. Second, these documents are not the business records of the SEC, since the Commission admits that most of the pertinent documents referenced were obtained from Defendants. *See Hoffman,* 117 F.R.D. at 438 ("The court finds unpersuasive plaintiff-intervenor's argument that because the Equal Employment Opportunity Commission's (hereinafter EEOC) business is the investigation of charges of employment discrimination, documents submitted by employers are therefore the business records of the EEOC."). The Commission does not point to, and apparently did not produce, documents such as internal investigative memoranda that arguably might be viewed as business records of the Commission. The Commission therefore may not utilize the Rule 33(d) option and is required to provide narrative responses to Blackwell's interrogatories.

The next question is whether it would be premature to require the Commission to respond to the contention seeking interrogatories at this point. The general policy is to defer contention seeking interrogatories until discovery is near an end in order to promote efficiency and fairness. E.g., *Thomas & Betts Corp. v. Panduit Corp.,* No. 93 C 4017, 1996 WL 169389, at \*2 (N.D.Ill. Apr.9, 1996); *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 3 (D.D.C.1995); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 110–11 (D.N.J.1990). Courts do, however, have discretion to allow use of contention seeking interrogatories before discovery is complete. *E.g., Thomas & Betts Corp.,* 1996 WL 169389, at \*2; *Nestle Foods Corp.,* 135 F.R.D. at 110.

Here, the fact that discovery has just begun would seem to militate in favor of a deferral. Blackwell has not yet answered the Complaint; the Commission only recently sent subpoenas to non-parties; and the Commission has not yet propounded its planned interrogatories, requests for admissions, or document requests. As Blackwell notes, however, the Commission conducted a two-year investigation prior to commencing this action. As part of its investigation, the SEC subpoenaed records from each Defendant and from third-party witnesses and took the testimony of each Defendant and of third-party witnesses. The Commission is thus not in the same position as an ordinary civil litigant that has yet to commence discovery. Rather, it has the benefit of having conducted a lengthy investigation that should have yielded sufficient information to allow it to answer the interrogatories. Federal Rule of Civil Procedure 11 requires no less. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646, 652 (C.D.Cal.1997) ("Requiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint ....") (quoting *In re One Bancorp Sec. Litig.,* 134 F.R.D. 4, 8 (D.Me.1991)). The rationale behind the postponement of contention interrogatories is thus not present here, where the Commission has already conducted significant discovery and should have, in fact is required to have, adequate information to support the contentions in its Complaint.

**\*4** Any concerns the Commission might have about limiting its position are "misplaced in that, among other things, the trial court may permit the withdrawal or amendment of an answer to an interrogatory." *Cable & Computer Tech.,* 175 F.R.D. at 651 (citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil § 2181* (2d ed.1994) and Advisory Committee Notes, 1970 Amendment to Rule 33(c) [now Rule 33(d) ] ). Indeed, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, the Commission will be required to supplement seasonably its interrogatory responses if additional information obtained during discovery provides further support for a contention or results in a change of theory by the Commission. Fed.R.Civ.P. 26(e). The interrogatories here thus are not premature and should be answered forthwith.

## IV. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendant Roger Blackwell's Motion to Compel and

**ORDERS** the Commission to amend its discovery responses to provide narrative responses to Interrogatory Nos. 1–14.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 6829614

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

USAP0217

2018 WL 4501871
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Marshall Division.

SEMCON IP INC., Plaintiff,

v.

MEDIATEK INC., MediaTek USA Inc., Defendants.

Case No. 2:16-cv-00437-JRG-RSP (Lead),
Case No. 2:16-cv-00438-JRG-RSP (Member)
|
Signed 02/28/2018

**Attorneys and Law Firms**

Alfred Ross Fabricant, Lawrence Chester Drucker, Alessandra Carcaterra Messing, Daniel James Shea, Jr., Enrique William Iturralde, John Andrew Rubino, Peter Lambrianakos, Shahar Harel, Vincent J. Rubino, III, Brown Rudnick, LLP, New York, NY, Justin Kurt Truelove, Truelove Law Firm, Marshall, TX, for Plaintiff.

**<u>ORDER</u>**

ROY S. PAYNE, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court are various discovery-related motions. Dkt Nos. 241, 243, 260, 261, and 320. For the reasons explained below, each motion is denied with one exception. MediaTek's motion to strike portions of Dr. Carbonell's rebuttal report related to secondary considerations of obviousness, Dkt. No. 320, is granted.

### 1. Motion to Strike Dr. Kogan's Supplemental Expert Report (Dkt. No. 241)

The scheduling order required that the party with the burden of proof on an issue serve expert disclosures on August 15, 2017, with rebuttal disclosures due on September 22, 2017. *See* Dkt. No. 192 at 2-3. On August 25, 2017, MediaTek served Dr. Kogan's supplemental report, which addresses whether Semcon's predecessor or its licensees complied with the marking statute, 35 U.S.C. § 287(a). Because Dr. Kogan's report was served ten days too late, according to Semcon, Semcon requests that the report be stricken.

At the time Semcon filed its motion, there was some uncertainty regarding whether the patent owner or accused infringer bore the burden of proving compliance with the marking statute. *See, e.g., Godo Kaisha IP Bridge 1 v. Broadcom Ltd.,* No. 2:16-cv-134-JRG-RSP, 2017 WL 2869352, at \*1 (E.D. Tex. Apr. 19, 2017). Semcon took the position in its motion to strike that the accused infringer bore the burden of showing that the patentee failed to mark products. *See* Dkt. No. 241. Any uncertainty regarding the burden of proof has since been resolved by the Federal Circuit. "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.,* 876 F.3d 1350, 1366 (Fed. Cir. 2017).

As a result, MediaTek's supplemental expert report was not late. Semcon bears the burden to prove marking, not MediaTek, and thus Dr. Kogan's report is a rebuttal report. Rebuttal reports were not due until September 22, 2017, and thus the supplemental report was timely. Accordingly, Semcon's motion to strike, Dkt. No. 241, is denied.

### 2. Motion to Strike Dr. Carbonell's Supplemental Report (Dkt. No. 243)

On September 7, 2017, two weeks after the deadline for infringement reports, Semcon served a supplemental report from Dr. Carbonell that included an opinion regarding Amazon Kindle products featuring an "MT8135" chip sold by MediaTek. MediaTek moves to strike the supplemental report primarily because, according to MediaTek, Semcon should have known to include such products in its original report.

Rule 26 requires a party to disclose the opinions of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The court may grant leave to supplement an expert's report after the deadline in the scheduling order for "good cause." Fed. R. Civ. P. 16(b) (4). In the Fifth Circuit, courts consider four factors to determine whether good cause has been established: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *ContentGuard Holdings, Inc. v. Amazon.com, Inc.,* Case No. 2:13-cv-1112-JRG, Dkt. No. 923 at 2 (E.D. Tex. Sep. 9, 2015) (citing *Geiserman v. MacDonald,* 893 F.2d 787, 790-91 (5th Cir. 1990) ); *see also S.W. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir. 2003).

**\*2** Semcon's explanation for failing to include information regarding Kindles with an MT8135 chip in Dr. Carbonell's opening report is unsatisfactory. Semcon knew that the

MT8135 chip was in Kindle products as early as July 14, 2017, when Semcon's counsel sent MediaTek's counsel an email stating that the MT8135V chip is "found in at least the Amazon.com Kindle Fire and Fire HD." *See* Dkt. No. 241-1 at 2. In addition, MediaTek's corporate representative told Semcon's counsel during a deposition on August 7, 2017, that "Yes, there were Kindle Fires that shipped with 8135." Moynihan Dep. at 247:11-12, Dkt. No. 243-1 at 16. Indeed, Semcon could have known that the MT8135 chip was in Kindle products much earlier. After Semcon served Amazon with a third-party subpoena, Amazon confirmed—in part through publicly available sources—that the MT8135 was in Kindle products. *See* Dkt. No. 243 at 5 n.7.

Semcon contends that "MediaTek obfuscated discovery related to, among other things, sales of products in the United States that incorporate MediaTek [chips]." *See* Dkt. No. 266 at 1. Semcon's complaint appears to be based on MediaTek's response to Semcon's interrogatory which asked MediaTek to identify all relevant "MediaTek Product(s)," which Semcon defined as "all products made, use, sold, offered for sale, or ultimately imported into the United States *by Defendants*," i.e., MediaTek. *See* Dkt. No. 293 at 2 (emphasis added). MediaTek has insisted throughout discovery in this case that it provided an adequate response to this question, and that if MediaTek products eventually ended up in the United States through a third party, then Semcon should have sought discovery from those parties. Semcon eventually served third-party subpoenas, including a subpoena to Amazon, in July and August of 2017. *See* Dkt. No. 243 at 2-3. But the Court does not find that MediaTek has obfuscated discovery.

Semcon emphasizes two additional points that allegedly justify the late expert report. First, Semcon points out that MediaTek never produced source code for the MT8135 chip. *See* Dkt. No. 266 at 2. Semcon contends that this excuses the untimeliness because "Semcon based its list of products on the code directories as produced by MediaTek." *Id.* In other words, Semcon appears to be saying that source code directories were used to generate the list of accused products, but it is not clear why Semcon kept such a correlated list, particularly when Semcon was well aware that Kindle products included the MT8135 chip. Semcon should have identified the missing MT8135 source code earlier and filed a timely motion to compel, or resolved the issue with MediaTek's counsel. Second, Semcon contends that Amazon's subpoena response included "for the first time, a correlation between MediaTek [chips] and volumes of U.S. Sales." *Id.* Again, however, Semcon should not have waited

so late to subpoena relevant third parties, particularly when multiple defendants told Semcon throughout discovery that complete records were not kept of all products that ended up in the United States through third parties.

Although the first factor weighs in favor of granting MediaTek's motion to strike, the remaining factors weigh against it. Even MediaTek concedes that Kindle products with MT8135 chips are important to Semcon's case. *See* Dkt. No. 243 at 6. Semcon emphasizes this factor further, explaining that "millions of units" would be excluded from the case if the motion to strike were granted. *See* Dkt. No. 266 at 4. As for prejudice, it is not clear what prejudice to MediaTek resulted from the two-week delay in getting Dr. Carbonell's supplemental report, particularly when MediaTek knew that Semcon was pursuing Kindle products with the MT8135 chip as early as July 2017. *See* Dkt. No. 241-1 at 2. MediaTek does not articulate any specific prejudice, arguing only that allowing the supplemental report is "inherently prejudicial to MediaTek." *See* Dkt. No. 243 at 6.

**\*3** Finally, a continuance has, in effect, already happened. The Court postponed the pretrial conference to March 16, 2018, with trial scheduled to begin April 2, 2018, four months after the original trial date. *See* Dkt. No. 504; *Cf.* Dkt. No. 459. If any inherent prejudice has not already been cured, there remains sufficient time in the schedule to allow MediaTek to prepare for the inclusion of the MT8135 Kindle products in Dr. Carbonell's supplemental report. MediaTek's motion to strike, Dkt. No. 243, is denied.

### 3. Motion for Leave and Motion to Compel (Dkt. Nos. 260 and 261)

Semcon's deadline to complete fact discovery and file motions to compel discovery in the case against MediaTek was August 15, 2017. Dkt. No. 235 at 5. On September 21, 2017, Semcon filed a motion for leave to file a motion to compel MediaTek to provide information on chips Semcon contends were belatedly identified by MediaTek during discovery. Dkt. No. 260 and 261.

Semcon provides two reasons why the untimeliness should be excused. First, Semcon contends that MediaTek supplemented an interrogatory response on the last day of fact discovery to identify 39 MediaTek products that perform dynamic voltage frequency scaling (DVFS). Dkt. No. 260 at 2 n.1. Second, Semcon argues that this discovery issue is related to a previously (and timely) filed motion to extend the

Semcon IP Inc. v. MediaTek Inc., Not Reported in Fed. Supp. (2018)

deadline for obtaining discovery from carrier customers. *Id.* at 2 (citing Dkt. No. 207).

Semcon's explanation for the untimeliness is inadequate. In MediaTek's response to Semcon's motion for leave, MediaTek provides documentation establishing that Semcon knew about each of the 39 products no later than mid-July 2017. *See* Dkt. No. 293 at 3. On April 27, 2017, Semcon requested discovery related to 29 of the 39 allegedly new products. *See* Dkt. No. 293-4 at 1-2. Semcon requested discovery regarding the remaining ten products in mid-July 2017. *See* Dkt. No. 293-5 at 1, 3, 5. Later, on August 9, MediaTek's technical expert told Semcon during deposition that each of the 39 products performs DVFS. *See* Dkt. No. 293 at 4 n.11 (citing portions of deposition transcript). In sum, the record shows that MediaTek knew about the 39 products and knew the products practiced DVFS before the deadline for filing motions to compel had lapsed.

Semcon's argument about MediaTek's supplementation is not persuasive. Semcon's interrogatory asked MediaTek to identify relevant documents by production number. On the last day of fact discovery, MediaTek supplemented its response to include Bates numbers of technical documents. The documents had already been produced. To the extent Semcon is arguing that MediaTek's addition of Bates numbers illuminated which products performed DVFS, Semcon already knew that the 39 products performed DVFS before the discovery period closed. Semcon's prior motion related to the carrier customers does not excuse the untimeliness. As discussed above, Semcon's interrogatory defined relevant MediaTek products in part as products "ultimately imported into the United States by [MediaTek]." Dkt. No. 293 at 2 (quoting Semcon interrogatory). MediaTek explained in the course of other discovery disputes that MediaTek does not track every product it sells overseas to determine whether the product ends up in the United States. MediaTek nevertheless agreed to provide Semcon discovery related to products that Semcon could demonstrate had entered the U.S. On the last day of fact discovery, Semcon requested that MediaTek provide certain information regarding MediaTek products sold to U.S.-based carrier customers. *Id.* at 5. MediaTek produced the information Semcon requested ten days later. Although MediaTek's production came after the close of fact discovery, the production was simply a response to Semcon's late request. Semcon could have made its request regarding the U.S.-based carriers much earlier.

**\*4** Finally, Semcon argues that it would suffer unfair prejudice if MediaTek were allowed to introduce late evidence and if Semcon were unable to address that evidence. As to the 39 allegedly new products, this is not late evidence. As for the certification letters from U.S.-based carriers, both MediaTek and Semcon now have these letters. Additional discovery related to the letters, however, will not be permitted because Semcon's request for this type of information came too late. Accordingly, because Semcon has not shown good cause for failing to meet the discovery deadline, Semcon's motion for leave, Dkt. No. 260, is denied. Semcon's motion to compel, Dkt. No. 261, is denied as untimely.

### 4. Motion to Strike Dr. Carbonell's Nonobviousness Opinions (Dkt. No. 320)

On January 11, 2017, MediaTek served Semcon with an interrogatory asking Semcon to provide, among other things, the factual basis for "any secondary considerations of non-obviousness" that Semcon intends to rely on at trial. Dkt. No. 320-2 at 5-6. A little over a month later, Semcon responded to the interrogatory with objections, including an objection that the interrogatory improperly sought early disclosure of expert opinion. Dkt. No. 320-3 at 8. In addition, Semcon stated that discovery is ongoing and generally that the patents-in-suit are valid. *Id.* at 8-9. Semcon made no mention of any factual basis for secondary considerations, or whether Semcon would rely on secondary considerations at all. *See id.* MediaTek attempted to obtain a more thorough answer over the coming months but was unsuccessful. *See* Dkt. No. 320 at 1-2.

On September 12, 2017, Semcon disclosed Dr. Carbonell's rebuttal expert report. *See* Dkt. No. 320-9. Dr. Carbonell's rebuttal report includes opinions related to several secondary considerations, including copying, commercial success, industry praise, long-felt need, and teaching away. *See id.* MediaTek moves to strike these opinions because Semcon did not adequately respond to MediaTek's interrogatory. Dkt. No. 320.

There is no meaningful dispute that Semcon had an obligation to disclose the factual basis of any secondary considerations that would be relied on at trial. Semcon argues that MediaTek's interrogatory was premature because it asked for expert opinion, *see* Dkt. No. 393 at 8-9, but Semcon was at least obligated to provide the factual basis for any secondary considerations, and include this factual basis in the interrogatory response itself. Semcon emphasizes that it produced the prosecution history among other documents that supported Dr. Carbonell's opinion, *see id.*, but Semcon

USAP0220

did not inform MediaTek that these documents would be relied on to show secondary considerations. The purpose of interrogatories is not only to ascertain facts but also to "determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved." *Baim & Blank, Inc. v. Philco Distributors, Inc.,* 25 F.R.D. 86, 87 (E.D.N.Y. 1957). Discovery and pretrial procedures "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682 (1958).

Semcon also argues that Dr. Carbonell's opinion is based on the deposition testimony of named inventor Andrew Read, which excuses Semcon's interrogatory response because the deposition did not occur until August 15, 2017, the day fact discovery closed. *See* Dkt. No. 393 at 3. It is true that Mr. Read testified about facts related to secondary considerations. *See, e.g.,* Dkt. No. 320-9 ¶ 693 (citing Read testimony concerning copying). But Dr. Carbonell's opinion extends well beyond Mr. Read's deposition and relies on numerous other factual bases for support. *See* Dkt. No. 320-9. Moreover, it is simply not credible that Semcon suddenly decided to rely on secondary considerations during or shortly after Mr. Read's deposition. Accordingly, Mr. Read's late deposition does not excuse Semcon's failure to adequately respond to MediaTek's interrogatory. The important point, in the Court's view, is that Semcon not only failed to disclose the factual basis for any secondary considerations, but failed to even disclose any reliance on secondary considerations at all. The prosecution history includes a discussion of secondary considerations, as Semcon admits, *see* Dkt. No. 393 at 8, yet even this basis for secondary considerations was not included in Semcon's interrogatory response.

**\*5** Semcon therefore had an obligation to disclose the factual basis of any secondary considerations, and they failed to do so. The question is whether that discovery violation is harmless. *See* Fed. R. Civ. P. 37(c)(1) (If a party fails to provide information as required by Rule 26(e), "the party is not allowed to use that information ... to supply evidence ... at a trial, unless the failure was substantially justified or is harmless."); *see also CQ,* 565 F.3d at 280 (considering "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance").

Semcon's explanation, as discussed above, is inadequate. Although secondary considerations may be important, the prejudice to MediaTek is significant, particularly because Semcon did not disclose the facts it already had knowledge of upon which it would rely. Dr. Carbonell's rebuttal opinion regarding secondary considerations therefore left MediaTek without an adequate means to develop a response, including any response that would require discovery. Finally, the case has proceeded toward trial and any continuance would disrupt much of the pretrial work that has already been done. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.,* 315 F.3d 533, 537 (5th Cir. 2003) (affirming district court's refusal to grant continuance when it would "unnecessarily delay the trial"). Accordingly, Semcon's discovery violation is neither justified nor harmless, and MediaTek's motion to strike is granted to the extent that Dr. Carbonell relies upon facts in Semcon's possession before discovery closed.

\* \* \*

For the foregoing reasons, the motions below are resolved as follows:

(1) Semcon's motion to strike, Dkt. No. 241, is denied.

(2) MediaTek's motion to strike, Dkt. No. 243, is denied.

(3) Semcon's motion for leave, Dkt. No. 260, is denied.

(4) Semcon's motion to compel, Dkt. No. 261, is denied as untimely.

(5) MediaTek's motion to strike, Dkt. No. 320, is granted in part. The portions of the following paragraphs are stricken from Dr. Carbonell's rebuttal report, Dkt. No. 320-9: ¶ ¶ 691-704, to the extent that they rely upon facts in Semcon's possession before discovery closed. Plaintiff's counsel is directed to send a red-lined version of these paragraphs redacting the offending references to defense counsel in 7 days, after which counsel are directed to meet and confer on the matter. Any remaining disputes must be raised by counsel at the pretrial conference.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4501871

USAP0221

**Semcon IP Inc. v. MediaTek Inc., Not Reported in Fed. Supp. (2018)**

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**USAP0222**

Taylor v. Turner Industries Group, LLC, Not Reported in F.Supp.2d (2012)

2012 WL 4092492
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Marshall Division.

Nina TAYLOR, et al., Plaintiffs,

v.

TURNER INDUSTRIES GROUP, LLC
and Turner Industries, LLC, Defendants.

No. 2:11–CV–57–JRG.
|
Sept. 17, 2012.

**Attorneys and Law Firms**

Aneeba Rehman, Deborah L. Rubin, James Vagnini, Robert J. Valli, Jr., Sara Wyn Kane, Pro Hac, Vice, Valli, Kane & Vagnini, LLP, Garden City, NY, Jay D. Ellwanger, Stefanie Tina Scott, Dinovo Price Ellwanger & Hardy LLP, Austin, TX, Ogletree Deakins Nash Smoak & Stewart, Houston, TX, Thomas John Ward, Jr., Ward & Smith Law Firm, Eric Miller Albritton, Albritton Law Firm, Longview, TX, for Plaintiffs.

Christopher Jon Lowman, Attorney at Law, Houston, TX, Flyn Flesher, Ogletree Deakins Nash Smoak & Stewart PC, Chicago, IL, James R. Staley, Stephen Eric Hart, Ogletree Deakins Nash Smoak & Stewart, Houston, TX, L. Gray Geddie, Jr., Mark M. Stubley, Matthew K. Johnson, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Greenville, SC, for Defendants.

Michael David Mitchell, Martin A. Rodriguez, Ogletree Deakins Nash Smoak & Stewart, Houston, TX, for Plaintiffs and Defendants.

### *MEMORANDUM OPINION AND ORDER*

RODNEY GILSTRAP, District Judge.

**\*1** Before the Court is Plaintiffs Nina Taylor *et al.*'s ("Plaintiffs") Emergency Motion to Compel Responses to Discovery Requests (Dkt. No. 133), filed August 12, 2012. The motion is **DENIED.**

The rules of discovery are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176,

99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 606 (5th Cir.2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B. V.,* 213 F.3d 841, 855 (5th Cir.2000)); *see also Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 220 (5th Cir.2000). The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed.R.Civ.P. 37; *Export Worldwide, Ltd. v. Knight,* 241 F.R.D. 259, 263 (W.D.Tex.2006) ("Federal Rule of Civil Procedure 37(a) [ (3)(B)(iii) and (iv) ] empowers the court to compel the production of documents ... upon motion by the party seeking discovery."). The moving party bears the burden of showing that the materials and information sought are "relevant to any party's claim or defense" or "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1); *Knight,* 241 F.R.D. at 263.

In determining whether a motion to compel has been timely filed, most courts look to the discovery deadline rather than the motion-filing deadline. *See, e.g., Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.,* 662 F.Supp.2d 623, 661 (S.D.Tex.2009); *Days Inn Worldwide, Inc. v. Sonia Invs.,* 237 F.R.D. 395, 396–98 (N.D.Tex.2006) (citing cases). A motion to compel must be filed sufficiently in advance of the Court's discovery deadline to permit the Court to hear the motion and, if granted, for discovery to complete by the deadline. *See, e.g., Grey v. Dallas I.S.D.,* 265 Fed. Appx. 342, 348 (5th Cir.2008) (finding no abuse of discretion where district court denied a motion to compel discovery when "it was filed on the day of the discovery deadline after an extensive discovery period"). Courts have considered a number of factors when deciding whether a motion to compel is untimely, including:

(1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (6) the age of the case, (7) any prejudice to the party from whom late discovery was

**USAP0223**

Taylor v. Turner Industries Group, LLC, Not Reported in F.Supp.2d (2012)

sought, and (8) disruption of the court's schedule.

See *Days Inn Worldwide, Inc.,* 237 F.R.D. at 398; *see also Turnage v. Gen. Elec.,* 953 F.2d 206, 209 (5th Cir.1992) (finding no abuse of discretion where district court denied plaintiff's request to conduct discovery "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [plaintiff's] failure to request [discovery] earlier").

**\*2** Here, Plaintiffs move to compel the native production of information maintained in Defendants Turner Industries Group, LLC and Turner Industries, LLC's ("Defendants") personnel database system. Plaintiffs admittedly secured an affidavit on September 15, 2010, from a witness who testified to being able to access pay rates and termination information in a database. Nevertheless, Plaintiffs argue that Defendants did not disclose—and thus Plaintiffs did not know—that the database contained information beyond payroll data (such as race, gender, and training records) and could be produced in native format. The availability of such specific information, Plaintiffs further argue, was not discovered until a series of depositions of Defendants' Rule 30(b)(6) representatives held July 26–27, 2012.

Defendants argue, *inter alia,* that Plaintiffs' motion is untimely because Plaintiffs filed their motion more than a week after the Court's August 3, 2012 discovery deadline. Given that this case has been pending for 18 months, that

Plaintiffs have had a year to conduct discovery, and given the impending *Daubert* motion deadline and October trial setting, Defendants argue that granting the motion to compel would prejudice the Defendants and disrupt the Court's schedule. The Court agrees.

The Plaintiffs' Motion to Compel does not comply with the Court's discovery deadline. The Court views its deadlines as firm guideposts which all the parties can freely reply upon in the conduct of pending litigation. Even under Plaintiffs' claim that they did not know of the availability of the specific information in Defendants' personnel database until July 26–27, 2012, Plaintiffs had a reasonable time within which to file their motion before the close of discovery. Plaintiffs did not file their motion until August 12, 2012, which was more than two weeks after they assert that they first learned details of the database. Plaintiffs' motion was filed more than one week past the discovery deadline of August 3, 2012. The Court is persuaded that granting this motion at this time would prejudice Defendants, disrupt the Court's schedule, and communicate the unintended message to others that the Court's deadlines are not reliable. For these reasons, the Court **DENIES** Plaintiffs' Motion to Compel.

**So ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4092492

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

USAP0224

2010 WL 11671745
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Laredo Division.

Mario A. TORRALBA, Plaintiff,
v.
Janet NAPOLITANO, Defendant.

Civil Action No. L-08-83
|
Signed 02/09/2010

**Attorneys and Law Firms**

Murray Edward Malakoff, Attorney at Law, Laredo, TX, for
Plaintiff.

Charles Wendlandt, Jr., US Attorney's, Corpus Christi, TX,
for Defendant.

ORDER

Diana Saldaña, United States Magistrate Judge

 **\*1** Pending before the Court is Plaintiff's Motion to Compel
Answers to Interrogatories, Production of Documents and
Production of Witnesses for Oral Deposition. (Dkt. No. 24.)
In response, Defendant Janet Napolitano, Secretary of the
U.S. Department of Homeland Security argues that Plaintiff's
requested relief should be denied because Plaintiff's motion
was untimely filed. (Dkt. No. 25.) The Court agrees. As
such, Plaintiff's Motion to Compel (Dkt. No. 24) will not be
considered on the merits, and it is hereby DENIED in its
entirety.

Plaintiff has also made a separate request to reopen the
discovery period. (Dkt. No. 28.) Given the disposition on the
Motion to Compel, Plaintiff's request to reopen discovery is
similarly DENIED. [1]

---

[1]    Having been rendered MOOT by this Order, the
       parties' respective Motions to Strike (Dkt. Nos. 30,
       31) are also hereby DENIED.

Background

This is an employment discrimination case based on gender.
Plaintiff Mario A. Torralba, who at the time served with
the U.S. Department of Homeland Security, Customs and
Border Protection ("CBP") as a Seized Property Specialist in
the Port of Laredo's Fines, Penalties, and Forfeitures Office,
claims that he was passed up for the position as the Port
of Laredo's Supervisory Seized Property Specialist, and that
a less qualified female applicant was chosen instead. (See
Dkt. No. 1 at ¶¶ 14-15, 27-40, 48-49.) As a basis for CBP's
employment decision, Plaintiff also alleges retaliation for
having lodged a prior complaint of gender discrimination in
2002 with the Equal Employment Opportunity Commission
(the "EEOC"). (See id. at ¶¶ 76-89.)

At the outset, it must be noted that despite the parties
having been allotted a total of seven months for discovery,
any meaningful discovery conducted by Plaintiff has only
occurred within the very last month of this period. Such
consists solely of written discovery: one set of interrogatories,
one set of requests for production, and one set of requests for
admissions. No depositions have been taken. And although
Plaintiff has filed a motion to compel, this motion has been
filed past the discovery deadline set in the Court's Scheduling
Order.

Since its early stages, Plaintiff's Counsel, Murray A.
Malakoff, has been patently dilatory in prosecuting this
matter. The complaint in this case was filed on June 17, 2008.
(Dkt. No. 1.) However, Plaintiff did not take any affirmative
efforts in attempting service upon Defendant until August
28, 2009, more than two months later. (See Dkt. No. 3.)
A telephonic scheduling conference was scheduled for and
held on December 3, 2008. Mr. Malakoff was late. He did
not initiate the conference call as was otherwise ordered.
Nor did he participate in preparing and filing, prior to the
scheduling conference, the joint report required by Rule 26(f)
of the Federal Rules of Civil Procedure. For his actions, Mr.
Malakoff blamed his "cluster migraine headaches." Given
his purported medical condition, the Court expressed doubt
as to Mr. Malakoff's ability to conduct this case. However,
Mr. Malakoff advised that he was "of counsel" with the firm
of Nguyen and DelBarrio. [2] In light thereof, he specifically
assured the Court that, if necessary, his new associates would
make appearances for him or conduct discovery, and that his
many complained-of medical issues would not result in the
need for the extensions of any deadlines in this cause. The
Court went on to issue a Scheduling Order, pursuant to which
discovery was set to close on May 6, 2009. (Dkt. No. 11.)
This would have allotted the parties five months in which

USAP0225

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 86 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

to conduct discovery. Mr. Malakoff did not object to this discovery timeframe proposed by the Court at the Scheduling Conference.

2     It is unclear whether Mr. Malakoff is still associated with this firm.

**\*2** However, on January 30, 2009, Mr. Malakoff filed an "Advice to the Court." (Dkt. No. 13.) Therein, he requested a 30-day extension of the deadlines in this action, having been purportedly ordered by his doctor to refrain from all work activities for a period of about three weeks. On March 10, 2009, the Court denied Mr. Malakoff's requested extension because the "Advice" was not filed in the form of a motion made pursuant to Federal Rule of Civil Procedure 16(b)(4), which governs the modification of scheduling orders. (Dkt. No. 14.) The Court also noted Mr. Malakoff's previous representations made at the Scheduling Conference. Twenty days later, on March 30, 2009, Plaintiff, through Mr. Malakoff, then filed an unopposed motion to extend, re-urging his request that the Court extend its Scheduling Order deadlines by 30 days. (Dkt. No. 15.) The next day, the undersigned entered an order denying once again the requested extension, given that the parties still had more than one month to complete discovery. (Dkt. No. 16.) Subsequently, Plaintiff in essence sought review of the decision before District Judge Kazen (Dkt. No. 17), who on April 13, 2009 affirmed the undersigned's order of denial (Dkt. No. 18). Judge Kazen directed the parties "to immediately commence or continue discovery in this case, toward the goal of finishing by May 6, 2009," and "to file a joint status report by May 12, 2009, advising what they have accomplished and what remains to be done." (Id.)

Five days after the close of discovery, on May 11, 2009, Plaintiff filed with the Court his first initial disclosures. (Dkt. No. 19.) At the time, it was unclear whether Plaintiff had served these disclosures upon Defendant by the Court's January 5, 2009 deadline (see Dkt. No. 11). However, based on Defense Counsel's representations, it appears that the disclosures were only served upon Defendant the same day they were filed with the Court. (See Dkt. No. 21 at ¶ 5.) If such is indeed the case, Plaintiff was then blatantly violating the Court's Scheduling Order. 3

3     Defendant has not sought sanctions for this conduct.

Regardless, the parties timely filed their joint status report on their given deadline of May 12th. (Dkt. No. 22.) Through this report, it became apparent that Mr. Malakoff had conducted absolutely no formal discovery whatsoever by the May 6th deadline, despite being directly ordered otherwise by Judge Kazen. Contemporaneously with the report, Plaintiff, through Mr. Malakoff, filed an opposed Motion for Extension of Deadlines and Issuance of a new Scheduling Order (Dkt. No. 20), appealing directly to Judge Kazen. This time, Mr. Malakoff cited the demands of another case and computer problems as the reasons for the requested extension. Noting such, Judge Kazen granted Mr. Malakoff's requested extension the following day, and July 6, 2009 was set as the deadline for the close of discovery. (Dkt. No. 23.) This amounted to a 54-day extension of the original five months allotted. In his order, Judge Kazen specifically stated that "no further extensions [would] be granted for any reason." (Id.)

Nonetheless, it was not until 19 days later, on June 1, 2009, that Mr. Malakoff actually forwarded to Defense Counsel any written discovery. (Dkt. No. 28 at ¶ 24.) This included the written interrogatories and requests for production at issue in Plaintiff's Motion to Compel. In accordance with Rules 33(b)(2) and 34(b)(2) of the Federal Rules of Civil Procedure, Defendant served responses and objections to the interrogatories and requests for production within 30 days, on July 1, 2009. (Id. at ¶ 27.)

Also on July 1st, Mr. Malakoff unilaterally noticed for Monday, July 6th (the final day of discovery) the depositions of two witnesses: Eugenio "Gene" Garza and Maria Laura Garcia. (Id. at ¶ 28.) Mr. Garza is Director of the CBP's Port of Laredo who is alleged to have selected or to have participated in selecting Ms. Garcia for the supervisory position sought by Plaintiff. (Dkt. No. 1 at ¶¶ 23, 40.) Apparently, the first time Mr. Malakoff ever indicated to Defense Counsel that he intended to take any depositions in this case was on June 5, 2009, via e-mail. (See Dkt. No. 24, Ex. 3 at pg. 2; see also Dkt. No. 28 at ¶ 37.) However, it seems Mr. Malakoff did not specify exactly who he wished to depose until June 23, 2009. (See Dkt. No. 24, Ex. 3 at pg. 3; see also Dkt. No. 28 at ¶ 31.) In light of Mr. Malakoff's late notice, Defense Counsel protested to the depositions, and they were not held. (See Dkt. No. 24, Ex. 3 at pgs. 4-8; see also Dkt. No. 28 at ¶ 29.)

**\*3** Mr. Malakoff waited until July 14, 2009, or eight days after the close of discovery, before filing Plaintiff's Motion to Compel. (Dkt. No. 24.) Therein, Plaintiff seeks to compel 19 (of 25) interrogatories and all 19 production requests. Plaintiff also moves to compel the depositions of Mr. Garza and Ms. Garcia. Defendant filed a response to Plaintiff's motion on

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 87 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

July 21, 2009. (Dkt. No. 25.) In accordance with the Court's Scheduling Order deadline for the filing of contested motions, Defendant filed a Motion for Summary Judgment on August 3, 2009. (*Compare* Dkt. No. 23, *with* Dkt. No. 27.) Plaintiff filed a reply in the matter of his Motion to Compel on August 19, 2009. (Dkt. No. 28.) He also moved therein to reopen discovery in response to Defendant's summary judgment motion, invoking Federal Rule of Civil Procedure 56(f). [4]

[4]     The Court stayed the deadline for Plaintiff to respond to Defendant's Motion for Summary Judgment, pending a ruling on Plaintiff's Motion to Compel. (Dkt. No. 29.)

Discussion

I. Motion to Compel

    A. Legal Standard

Federal Rule of Civil Procedure 37 governs the filing of motions to compel discovery. FED.R.CIV.P. 37(a). Rule 37 does not, however, set a timetable by which a motion to compel must be filed. Instead, Rule 16 explicitly authorizes the court to issue a scheduling order setting out specific deadlines by which a case must proceed, such as the deadline for completing discovery. FED.R.CIV.P. 16(b). In considering whether a motion to compel is timely, most courts look to the discovery deadline, rather than the contested motions deadline. Days Inn Worldwide, Inc. v. Sonia Investments, 237 F.R.D. 395, 397-98 (N.D. Tex. 2006) (collecting cases). Courts also look to a number of secondary factors in deciding whether to consider a late-filed motion to compel on the merits, including the following: (1) the length of time since the expiration of the discovery deadline to when the motion to compel was filed; (2) the amount of time the moving party has known about the discovery problems; (3) whether the court has previously extended the discovery deadline; (4) the explanation for why the motion is tardy; (5) whether dispositive motions have been scheduled or filed; (6) how old the case is; (7) any prejudice that may result to the party from whom late discovery is sought; (8) disruption of the court's schedule. Citro-Rey v. L&M Companies, Inc., 2009 WL 1227821, at *2 (S.D. Tex. May 5, 2009) (order by Micaela Alvarez, District Judge) (citing Days Inn Worldwide, 237 F.R.D. at 398).

    B. Analysis

Plaintiff's Motion to Compel was filed eight days past the discovery deadline. As such, it is untimely. And given the balance of the above-referenced factors, the Court will not consider it on the merits.

While eight days past the discovery deadline is not an extensive period of time, this factor does not necessarily weigh in favor of considering the untimely Motion to Compel. See Citro-Rey, 2009 WL 1227821, at *2 (declining consideration of motion to compel filed ten days after the close of discovery). The Fifth Circuit has held it to be within a district court's discretion to decline consideration of a motion to compel discovery even when the motion "was filed on the *day of* the discovery deadline after an extensive discovery period." Grey v. Dallas Indep. Sch. Dist., 265 Fed.Appx. 342, 348 (5th Cir. 2008) (unpublished) (citing Turnage v. Gen. Elec. Co., 953 F.2d 206, 209 (5th Cir. 1992) ) (emphasis added). Here, Plaintiff's Counsel, Mr. Malakoff, had ample time to conduct discovery under the Court's original scheduling order—five months. [5] Notwithstanding, Mr. Malakoff failed to either formally disclose or collect a single shred of evidence during that period. [6] Regardless, after the extension granted by Judge Kazen, Mr. Malakoff also had almost two additional months in which to conduct any needed discovery. This amounted to nearly seven months allotted for discovery—a decidedly extensive period. As one district court has squarely held, "[a]fter almost seven months of discovery, a motion to compel received after the expiration of the deadline for the *completion* of all discovery is untimely," Lillbask v. Sergi, 193 F.Supp.2d 503, 516 (D.Conn. 2002) (emphasis in original), and for this reason need not be considered, see id. The Court notes that Mr. Malakoff offers absolutely no explanation for filing Plaintiff's Motion to Compel past the discovery deadline.

[5]     Mr. Malakoff's doctor-ordered respite can account, at most, for only one of those five months (the month of February), leaving at least two full additional months for discovery.

[6]     It is unclear exactly how much discovery Mr. Malakoff had previously conducted on Plaintiff's behalf during the EEOC administrative proceedings below. According to Mr. Malakoff himself, he "had prepared during the EEOC proceedings herein Interrogatories, Request [sic] for Production, and Request [sic] for Admission that were not allowed to be served upon [CBP] by Administrative Judge Katye Dudenstadt because

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 88 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

she calculated the [sic] Counsel had served these two days out of time." (Dkt. No. 20 at ¶ II.)

**\*4** Mr. Malakoff should have filed the Motion to Compel sufficiently in advance of the discovery deadline to have permitted the Court to hear the motion and allow Defendant to produce any compelled discovery ahead of the deadline. Citro-Rey, 2009 WL 1227821, at \*2. Such was not feasible here, however, given Mr. Malakoff's dilatory conduct. After Judge Kazen extended the discovery period, Mr. Malakoff, again without explanation, waited almost three weeks before propounding to Defense Counsel his written discovery requests. Under the Rules, Defense Counsel then had 30 days to file responses and objections thereto. This left Mr. Malakoff with only five days prior to the close of discovery for reviewing Defense Counsel's responses and objections and for filing a timely motion to compel. However, in delaying at the front-end of the extended discovery period, Mr. Malakoff engineered this unenviable situation for himself. Thus, even if Mr. Malakoff did not know of the asserted discovery problems for very long (at most two weeks), this factor does not weigh in favor of considering Plaintiff's untimely motion. Mr. Malakoff should have been well aware that time was of the essence, especially given Judge Kazen's unequivocal mandate that no further extensions would be granted for any reason.

This case is over a year old. A deadline for the filing of dispositive motions has been set, Defendant has filed such a motion on schedule (see Dkt. No. 27), and the Court's deadlines have already been disrupted by Plaintiff's Motion to Compel. Mr. Malakoff's dilatory conduct is unacceptable, and consideration of the motion would be unjustified.

## II. Request to Reopen Discovery

### A. Lack of "Good Cause" for Purposes of Rule 16(b)

Given Mr. Malakoff's dilatory conduct, the Court accordingly holds that there is no "good cause" for purposes of Rule 16 to modify the Scheduling Order and reopen discovery. See FED.R.CIV.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably have been met despite the diligence of the party needing the extension. S&W Enters., L.L.C. v. SouthTrust Bank of Ala. NA, 315 F.3d 533, 535 (5th Cir. 2003).

As discussed above, Mr. Malakoff did not exercise diligence in waiting as long as he did before serving written discovery

upon Defendant during the extended discovery period. And this led to his tardiness in attempting to compel Defendant's production of responsive answers and documents. Similarly, Mr. Malakoff was not diligent in setting up and noticing the depositions of Mr. Garza and Ms. Garcia. He waited until more than three weeks into the extended discovery period to even inform Defense Counsel of his intent to take any depositions, before he resorted to unilaterally noticing the depositions only five days in advance of the discovery deadline. Federal Rule of Civil Procedure 30(b)(1) requires reasonable written notice to every other party that any oral depositions are to be taken. The Court notes that the day the notices were sent, July 1st, fell on a Wednesday, and Friday, July 3rd, was a federal holiday in observance of the Fourth of July. A notice served only five days in advance, unilaterally setting a deposition for the final day of a previously extended discovery period, is unreasonable and untimely. See Al-Kidd v. Gonzales, 2008 WL 2788418, at \*5 (D. Idaho July 17, 2008). Let alone where, as here, such notice would effectively leave opposing counsel with only one full business day to prepare for two depositions. See Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC, 2008 WL 449972, at \*2 (E.D. La. Feb. 14, 2008).

Thus, if diligence is the sole pertinent factor to the good cause analysis, Plaintiff has failed to make the required showing. However, in considering whether to reopen discovery, some district courts also balance the following four factors to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice. Hernandez v. Mario's Auto Sales, Inc., 617 F.Supp.2d 488, 493 (S.D. Tex. 2009) (memorandum and order by J. Scott Hacker, Magistrate Judge) (collecting cases); STMicroelectronics, Inc. v. Motorola, Inc., 307 F.Supp.2d 845, 850 (E.D. Tex. 2004) (citing S&W Enters., 315 F.3d at 535-36); Rollins v. St. Jude Medical, 2009 WL 2601376, at \*3 (W.D. La. Aug. 24, 2009) (citing Hernandez, 617 F.Supp.2d at 493). Even in applying this four-factor test, Plaintiff has failed to meet the good cause standard to reopen discovery. An in-depth analysis of the relevant factors appears below.

### 1. No Explanation for Dilatory Conduct

**\*5** Mr. Malakoff makes little in the way of an explanation for his failure to meet the extended discovery deadline.

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 89 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

Nowhere in the record does he cite any reason for his delay in serving written discovery during the extended discovery period. The Court notes that Mr. Malakoff was Plaintiff's counsel throughout the EEOC proceedings below. (See Dkt. No. 25, Ex. A; see also Dkt. No. 20 at ¶ II.) This means that Mr. Malakoff would not have had to spend much time actually becoming acquainted with the facts and issues pertinent to this case. Accordingly, he would not have had to spend much time thinking about and tailoring Plaintiff's discovery requests. Without any explanation as to why he waited so long to serve discovery, the Court is then left with the impression that Mr. Malakoff merely sat on his hands.

With regard to the depositions, Mr. Malakoff "recalls indicating [to Defense Counsel] that, if an agreement could be reached and depositions taken without the necessity of this court's intervention, [he] would be amenable to doing so anytime prior to the rescheduled [contested] motion deadline of August 3, 2009." (Dkt. No. 28 at ¶ 33; see id. at ¶¶ 31-41.) However, according to Mr. Malakoff, if he "made any mistake, it was that of believing in the integrity of the U.S. Attorney's office and its counsel assigned to this case." (Id. at ¶ 30.) For ultimately, Defense Counsel did not agree to take the above-referenced depositions past the discovery deadline. (Id. at ¶ 29.) Regardless, such is unavailing in terms of a would-be excuse for waiting as long as Mr. Malakoff did to express the intent to take the depositions and for noticing them. Mere stipulations between parties do not provide a basis for the modification of a scheduling order. Rivera v. County of Willacy, 2007 WL 1655303, *1 (S.D. Tex. June 6, 2007) (citing Chiropractic Alliance of N.J. v. Parisi, 164 F.R.D. 618, 621 (D.N.J. 1996); see Olgyay v. Society for Environmental Graphic Design, Inc., 169 F.R.D. 219, 219 (D.D.C. 1996) ("Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order.") Mr. Malakoff simply should not have relied on the faulty notion that he and Defense Counsel could have stipulated to taking any out-of-time depositions.

Furthermore, based on emails entered into the record, it would seem that the parties were attempting to negotiate a settlement of this matter during the extended discovery period, possibly starting in late May and continuing through early June. (See Dkt. No. 24, Ex. 3 at pg. 2.) This may also account for why Mr. Malakoff waited to discuss the taking of depositions, as settlement would obviate the need for further discovery. Nonetheless, such an excuse is likewise unavailing. "[T]he

mere possibility of settlement does not meet the standard of good cause for amending the Court's scheduling order." Rivera, 2007 WL 1655303, at *1.

2. No Prejudice to Plaintiff

Regardless, Plaintiff will suffer little, if any, prejudice through the Court's refusal to modify the Scheduling Order by reopening discovery. It seems that Plaintiff already has much of the discovery information and materials needed to respond to Defendant's summary judgment motion. Furthermore, the additional discovery sought by Plaintiff either is non-relevant or would be of marginal importance for purposes of summary judgment.

As part of his first Title VII [7] claim, Plaintiff alleges that in May of 2006, Mr. Garza selected (or participated in selecting) Ms. Garcia over Plaintiff for the position of Supervisory Seized Property Specialist (the "Position") at CBP's Port of Laredo Fines and Penalties and Forfeitures Office, and that Ms. Garcia's selection was unlawfully and discriminatorily motivated by considerations of gender. [8] For his second Title VII claim, Plaintiff alleges that his non-selection for the Position was in retaliation for his prior lodging of an EEOC gender discrimination complaint against CBP's predecessor agency in 2002. [9] Through the Motion for Summary Judgment, however, Defendant asserts a legitimate reason for the employment decision at issue: essentially that Ms. Garcia was better qualified for the Position than was Plaintiff. (Dkt. No. 27 at pgs. 6-8.) In support of the summary judgment motion is an affidavit by Mr. Garza. (Dkt. No. 27, Ex. C.) Therein, Mr. Garza declares that he recommended Ms. Garcia for the Position because she was "the best qualified applicant," having "a higher level of knowledge and experience within the Seized Property Program than that of the other applicants." (Id. at pgs. 2-3.) Mr. Garza further declares that his recommendation was not based on any discriminatory or retaliatory reason. (Id. at pg. 3.)

[7]   See 42 U.S.C. § 2000e, et seq.

[8]   See 42 U.S.C. § 2000e-2(a)(1).

[9]   See 42 U.S.C. § 2000e-3(a).

*6   A plaintiff may attempt to establish a Title VII claim through the use of either direct evidence or circumstantial evidence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 90 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

Cir. 2003) (discrimination); Fabela v. Socorro I.S.D., 329 F.3d 409, 415 (5th Cir. 2003) (retaliation). Direct evidence "includes any statement or written document showing a discriminatory motive on its face." Fierros v. Tex. Dep't of Health, 274 F.3d 187, 195 (5th Cir. 2001) (quoting Portis v. First Nat'l Bank, 34 F.3d 325, 329 (5th Cir. 1994). If believed by the trier of fact, direct evidence proves discriminatory animus without inference or presumption. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002).

If Plaintiff is to establish either Title VII claim, it will not be through direct evidence. Indeed, Title VII claims supported by direct evidence are rare. See Portis, 34 F.3d at 328 (discrimination); see also Fabela, 329 F.3d at 415 (retaliation). Here, it is apparent from both parties' filings that no direct evidence of discrimination or retaliation was adduced during the EEOC proceedings below. Furthermore, it appears that in attempting to prove Plaintiff's claims, Mr. Malakoff himself has honed the discovery process towards uncovering circumstantial evidence of pretext, rather than direct evidence. (See generally Dkt. No. 28.)

Under the *McDonnell Douglas* [10] burden-shifting framework, which is applicable to Title VII claims supported solely by circumstantial evidence, Plaintiff would then have the burden of producing sufficient evidence to create a genuine dispute over Defendant's stated reason for selecting Ms. Garcia to fill the Position. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). To create such a genuine dispute, Plaintiff would have to present sufficient evidence showing that Defendant's reason for the employment decision at issue is not true, but instead pretext for discrimination. [11] See Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007).

[10]    McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

[11]    Based on Mr. Malakoff's arguments before the Court, it does not appear that he intends to raise the mixed-motive alternative in attempting to create a genuine issue of fact, see Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007), but rather pretext. (See generally Dkt. No. 28.)

One way Mr. Malakoff would attempt to show pretext is by comparing Plaintiff's qualifications to those of Ms. Garcia. (See, e.g., Dkt. No. 28 at ¶¶ 46, 49a, 49f, 62d, 75.) To succeed, Plaintiff would have to provide evidence that he

was "clearly better qualified" for the Position. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001). However, Plaintiff claims that Defendant is still "in possession and control of documents and knowledge probative of the disparity in credentials," and he seeks to depose Mr. Garza, and Ms. Garcia on this particular issue. (Dkt. No. 28 at ¶ 75.)

However, Mr. Malakoff should already have all that is needed to make a comparative qualifications analysis. Of course, Plaintiff should be familiar with his own qualifications. [12] And there is no reason for the Court to doubt that the resume Plaintiff submitted to CBP as part of the application process for the Position was made part of the EEO Report of Investigation during the proceedings below. [13] (See Dkt. No. 24, Ex. 2 at pg. 7.) In addition, as part of the summary judgment motion, Defendant has attached Ms. Garcia's resume, which appears to be the same one submitted to CBP as part of her own application for the Position. [14] (Dkt. No. 27, Ex. B.) In terms of qualifications, Plaintiff takes particular issue with Ms. Garcia's alleged lack of certification as a Headquarters Contracting Officers' Technical Representative ("COTR certification") (Dkt. No. 1 at ¶¶ 33-40, 47; Dkt. No. 28 at ¶¶ 46, 62d), which Plaintiff further alleges was a requirement for the Position (Dkt. No. 28 at ¶¶ 46-47). [15] But again, there is little doubt that the EEO Investigative Report includes the job posting [16] for the Position. And surely, the job posting would state in plain terms whether actual COTR certification was indeed a requirement for applicants. What additional information Mr. Malakoff needs to compare Plaintiff's qualifications with those of Ms. Garcia is unclear. Also unclear is exactly what information probative of the disparity in credentials could possibly be in Defendant's possession and control. Mr. Malakoff has failed to explain as much with any degree of particularity.

[12]    Indeed, the complaint lays out his qualifications in great detail. (Dkt. No. 1 at ¶¶ 6-21.)

[13]    Mr. Malakoff admits to having reviewed this report for purposes of preparing his discovery requests. (See Dkt. No. 28 at ¶ 48; see also Dkt. No. 20 at ¶ VI.) And Defendant has referred him to this report in responding to several interrogatories and requests for production. (See, e.g., Dkt. No. 24, Ex. 1 at pg. 4, Ex. 2 at pg. 4.)

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 91 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

**14**  It seems Ms. Garcia's application (including her resume) was included in the EEO Report of Investigation as well (see Dkt. No. 24, Ex. 1 at pg. 2), along with those of all the other applicants for the Position (see id., Ex. 2 at pg. 7).

**15**  It seems CBP utilizes private contractors to store and dispose of contraband seized by CBP and other federal entities. (Dkt. No. 1 at ¶ 35.) According to Mr. Malakoff, the COTR certification authorizes the holder to inspect these private contractors' facilities and ensure that they are in compliance with CBP's contractual standards. (Dkt. No. 28 at ¶ 47.)

**16**  This was under job announcement number MHC-106629-TJE. (Dkt. No. 28, Ex. 3 at pgs. 5-6; Dkt. No. 27, Ex. B at pg. 1.)

**\*7**  Plaintiff would also attempt to show pretext through the posting, withdrawal, and re-posting of the Position's vacancy announcement. In the complaint, Plaintiff claims that on or about August 17, 2005, CBP posted a vacancy for the Position. (Dkt. No. 1 at ¶ 27.) According to Plaintiff, at the time, Ms. Garcia lacked the requisite qualifications because she was not a uniformed CBP employee. (Id. at ¶ 29.) Supposedly, two days after the vacancy for the Position was posted, it was closed without being filled. (Id. at ¶ 30.) A vacancy for the Position was then re-posted on February 23, 2006, more than six months later. (Id. at ¶ 31.) This time around, it is apparent that uniformed service with CBP was not a job qualification requirement. Ms. Garcia was ultimately selected for the Position. Thus, "Plaintiff asserts, in support of his claim of gender discrimination [and retaliation] that the [Position] was announced previously, and withdrawn several days later when Port Director Garza discovered that [Ms.] Garcia, the female selectee in may [sic] of 2006 lacked the credentials for making application for the prior posting." (Dkt. No. 28 at ¶ 49f.)

Plaintiff has geared several interrogatories and requests for production towards discovering evidence pertinent to the posting, withdrawal, and re-posting of the Position. [17] (See, e.g., Dkt. No. 24, Ex. 1 at pg. 4-5, Ex. 2 at pg. 11). And he presumably seeks to depose Mr. Garza as to the same. But in terms of showing pretext, the evidentiary significance of the circumstance alluded to above is minimal, at best, given the sheer lapse of time between the original posting of the Position vacancy and then its re-posting. Furthermore, even if Plaintiff could adduce evidence, as he seeks to do, that

Mr. Garza tailored the requirements for the Position such that Ms. Garcia *in particular* could qualify as an applicant (see Dkt. No. 28 at ¶ 49f), such would not constitute evidence of pretext absent nexus to gender. See Odom v. Frank, 3 F.3d 839, 849-50 (5th Cir. 1993) ("Much of the evidence in this case ... gives us the impression that the decisionmakers were merely 'going through the motions' of the required [hiring] procedure while in fact ensuring that [the selectee's ultimate supervisor] would get the person he wanted to fill the new position. But even if that impression is correct, it does not amount to [unlawful] discrimination.").

**17**  It is unclear whether the February 2005 vacancy posting for the Position would be in the EEO Investigative Report.

As a further apparent attempt to prove pretext, Mr. Malakoff has tailored more than a few discovery requests towards obtaining a broad swath of discovery related to other CBP positions for which Plaintiff applied but were otherwise filled by females. [18] (See Dkt. No. 24, Ex. 1 at pgs. 8-10, 12-13, Ex. 2 at pgs. 4-5, 8-9, 13-15.) Having closely reviewed these requests, the Court has determined most of them to be overbroad or non-relevant. Assuming the Court was to reopen discovery, requests similar to these would not be allowed. It seems Mr. Malakoff would manipulate the discovery process as means to conduct a series of mini-Title VII trials. And such would be inappropriate.

**18**  For example, Plaintiff's Request for Production No. 16 reads as follows:

Produce all documents which memorialize, mention, pertain, refer to or allude to:

(A) The selection of Elida Soliz as a paralegal within the Fines, Penalties and Forfeitures [sic] Office of the Port of Laredo as well as the non-selection of Plaintiff for that position vacancy;

(B) The selection of Leticia Martinez for a paralegal position vacancy within the Fines, Penalties and Forfeitures [sic] Office of the Port of Laredo as well as Plaintiff's non-selection for that Position;

(C) The selection of Isabel Aranda for the position of Supervisory Seized Property Specialist within the Fines, Penalties and Forfeitures [sic] Office of the Port of Laredo and the Plaintiff's corresponding non-selection for that position;

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 92 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

(D) The selection of Antonia "Toni" Hernandez for the position vacancy of Seized Property Specialist in the Fines, Penalties and Forfeitures [sic] Office of the U.S. Customs and Border Protection in Del Rio, Texas and the corresponding non-selection of the Plaintiff for that job vacancy or position;

(E) The selection of Maria Laura Garcia as the Supervisory Seized Property Specialist within the Fines, Penalties and Forfeitures Office of the Port of Laredo in the year 2006 and the Plaintiff's non-selection for that position; [sic]

(Dkt. No. 24, Ex. 2 at pgs. 13-14.)

**\*8** Plaintiff would also seek to show pretext through historical and statistical evidence. (See Dkt. No. 28 at ¶ 49g.) In the complaint, he alleges that "[f]or the past several years most, if not all of the supervisory positions within [CBP's] [Fines, Penalties, and Forfeitures Office] in the Port of Laredo are and were held by females selected [or recommended] by [Mr.] Garza ...." (Dkt. No. 1 at ¶ 41.) Mr. Malakoff has requested, for the years 2001 to present, "all documents constituting or memorializing the organizational chart of the Fines, Penalties and Forfeitures [sic] Division or Office of the Port of Laredo which specifies the name, sex, age, title, pay grade and step of each person occupying each position set forth on the chart." (Dkt. No. 24, Ex. 2 at pg. 8.) But even if Plaintiff were to introduce anecdotal evidence or statistics indicating that more women than men have been promoted to CBP managerial or supervisory positions, such would not, of itself, demonstrate pretext. See Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003) (citing Sessions v. Rusk State Hosp., 648 F.2d 1066, 1071 (5th Cir. 1981) ). While this kind of statistical evidence would buttress Plaintiff's prima facie case (which Defendant has already conceded for purposes of the discrimination claim), it would not demonstrate that the reason advanced for Plaintiff's non-selection (Ms. Garcia's superior qualifications) lacked either substance or credibility. See Sessions, 648 F.2d at 1071.

In attempting to show that CBP had a policy of not hiring or promoting men to supervisory positions, Plaintiff, when presenting any purported statistical evidence, would have to compare a significant sample size of persons hired to CBP supervisory positions, during a relevant period of time, to the pool of qualified applicants. See Scott v. Univ. of Miss., 148 F.3d 493, 510 (5th Cir. 1998) (citing Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1286-87 (5th Cir. 1994) ("Where plaintiffs use statistical evidence to challenge an employer's hiring practices, that evidence, to be probative of

discriminatory intent, must compare the relevant portion of the employer's work force with the qualified population in the relevant labor market.") ); see also Robinson v. City of Dallas, 514 F.2d 1271, 1273 (5th Cir. 1975). But this would require the aid of experts to collect and analyze any raw statistical data and explain the significance of the results to the Court through reports. See generally Anderson, 26 F.3d 1277. Yet here, there is no indication that Plaintiff has designated any experts, and the deadline to do so has lapsed. (See Dkt. No. 23.)

With particular respect to his allegation of retaliation, Plaintiff seeks to adduce additional evidence, such as the 2002 EEO Report of Investigation, to test Mr. Garza's credibility insofar as he claims to have no memory of Plaintiff's 2002 EEOC charge. (Dkt. No. 28 at ¶ 49c; see also Dkt. No. 24, Ex. 1. at pg. 11.) However, in response to Plaintiff's discovery requests, Defendant refers Plaintiff to this same report, claiming it was previously provided to Plaintiff by CBP's predecessor agency. (Dkt. No. 24, Ex. 2 at pg. 4.)

Furthermore, the evidentiary value of Mr. Garza's credibility regarding his claimed lack of memory of Plaintiff's prior EEOC charge is questionable. Here, Defendant has moved for summary judgment on the basis that Plaintiff cannot establish a prima facie showing of retaliation. To establish a prima facie case of retaliation as part of the first step of the *McDonnell Douglas* framework, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992). "Temporal proximity of the employer's knowledge of the protected activity and the adverse employment action is sufficient to establish the causal link for the purposes of the prima facie case." Vela v. Chertoff, 2008 WL 724648, at \*3 (S.D. Tex. March 17, 2008) (Memorandum and Order by George P. Kazen, District Judge) (citing Clark County Sch. Dist. V. Breeden, 532 U.S. 268 (2001) ). However, the Fifth Circuit has held that evidence of temporal proximity alone cannot sustain an inference of causation when there is as little as a four-month gap between the protected activity and the alleged adverse employment action. Ajao v. Bed Bath and Beyond, Inc., 265 Fed.Appx. 258, 265 (5th Cir. 2008) (unpublished) (four months); see also Russell v. Univ. of Tex. of Permian Basin, 234 Fed.Appx. 195, 206-07 (5th Cir. 2007) (unpublished) (six months). Defendant argues that Plaintiff cannot meet the "causation" prong, given that the prior protected activity occurred around four years

Case 4:23-cv-03560   Document 273-1   Filed on 06/27/25 in TXSD   Page 93 of 103

Torralba v. Napolitano, Not Reported in Fed. Supp. (2010)

before the adverse employment action at issue here. [19] (See Dkt. No. 27 at pgs. 5-6.) Thus, at least for purposes of summary judgment, Defendant has not specifically raised the argument that Mr. Garza forgot (or had no knowledge) about the prior EEOC activity. Evidence of Mr. Garza's credibility on this point would be useless in terms of making a prima facie showing of retaliation to survive summary judgment.

[19]   Plaintiff does not allege in the record that Mr. Garza complained to him about the 2002 EEOC charge at any point in time near to when Ms. Garcia was selected for the Position. See Russell, 234 Fed.Appx. at 206-07.

**\*9** To reiterate, Plaintiff will suffer little, if any, prejudice through the Court's decision to maintain the integrity of the Scheduling Order. [20] As the record stands, Plaintiff will be able to respond to Defendant's Motion for Summary Judgment. In light thereof, if the Court was to reopen discovery, Defendant would be prejudiced by incurring further needless litigation expenses preparing for depositions and the like. If it is the case that Plaintiff has indeed lost the opportunity to access evidence of pretext for purposes of surviving summary judgment, this is the consequence of his counsel's dilatory conduct.

[20]   In terms of the Rule 16(b) good cause analysis, this lack of prejudice renders unimportant the proposed amendment to the Scheduling Order. Furthermore, without prejudice, there is no need for a continuance.

As such, the Court holds that there is no good cause to reopen discovery. Notwithstanding the four-factor test analyzed above, "the court still has the 'inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion.' " Hernandez v. Mario's Auto Sales, Inc., 617 F.Supp.2d 488, 493 (S.D. Tex. 2009) (quoting U.S. v. Waldman, 579 F.2d 649, 653 (1st Cir. 1978) ). To achieve this end, the Court will hereby exercise its broad discretion over the instant pretrial discovery matter and preserve the integrity of the Scheduling Order. See id.

B. Invocation of Rule 56(f) Unavailing
Plaintiff cites Rule 56(f) of the Federal Rules of Civil Procedure as authority for allowing him additional discovery in response to Defendant's pending summary judgment motion. [21] For such relief to be justified, the movant must

show: (1) why additional discovery is needed, and (2) how that additional discovery will create a genuine issue of material fact. Beattie v. Madison County Sch. Dist., 254 F.3d 595, 606 (5th Cir. 2001). The movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993).

[21]   This Rule provides: "If a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED.R.CIV.P. 56(f).

However, a party cannot perform an end-run around the requirements of Rule 16(b) simply by invoking Rule 56(f). See Culwell v. City of Fort Worth, 468 F.3d 868, 872 (5th Cir. 2006) ("Unlike rule 56(f), rule 16(b) requires a showing of good cause to modify a scheduling order."); see also Forge v. City of Dallas, 2004 WL 1243151, at *2-3 (N.D. Tex. June 4, 2004) ("In addition to establishing her entitlement to Rule 56(f) relief, plaintiff also must demonstrate 'good cause' for modifying the scheduling order to permit additional discovery ...."); McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("Applications to extend the discovery deadline must be made prior to expiration of the deadline .... Rule 56(f) is not intended to circumvent discovery orders."); 4B Charles Alan Wright et al., Federal Practice and Procedure § 1166 (3d ed. 2004) ("A district court may order a continuance of a motion for summary judgment for additional discovery pursuant to Rule 56(f), but only if the court-ordered discovery deadline has not already passed.").

Moreover, even considering Plaintiff's request to reopen discovery under the Rule 56(f) standard itself would be unavailing, again, given Mr. Malakoff's lack of diligence. A movant who has not diligently pursued discovery will not be entitled to relief under Rule 56(f). [22] Beattie, 254 F.3d at 606; see Forge, 2004 WL 1243151, at *2. "While Rule 56(f) motions are generally favored and liberally granted, the court 'need not aid [Rule 56(f) movants] who have occasioned their own predicament through sloth.' " Caswell v. Federal Express Corp., 2002 WL 31927116, at *5 (N.D. Tex. Dec. 31, 2002) (quoting Witchita Falls Office Assocs. V. Banc One Corp., 978 F.2d 915, 919 (5th Cir. 1992) ). Regardless, Judge

USAP0233

Kazen's previous order extending the discovery deadline was exceedingly clear that no further extensions would be granted.

22        Whether a party has been "dilatory" for purposes of Rule 56(f), and thus not entitled to additional discovery, depends in part on the following factors: "(1) the length of the pendency of the case prior to the Rule 56(f) request; (2) whether and when plaintiff could have anticipated its need for the requested discovery; (3) the previous efforts, if any, made by plaintiff to obtain the needed information either through Rule discovery or otherwise; (4) the degree and nature of discovery already undertaken; (5) any limitations placed upon discovery previously by the trial court; (6) any prior solicitations of or provisions for discovery by the trial court; (7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim dismissed; and (8) whether the requested information was inaccessible to plaintiff, e.g. as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone." Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1031 (5th Cir. 1983). The relevant factors have already been discussed above and weigh against Plaintiff. Because he was not diligent, the court notes that it need not address whether Plaintiff has shown why additional discovery is needed to create a genuine issue of material fact. See Beattie, 254 F.3d at 606.

## Conclusion

**\*10** As such, Plaintiff's Motion to Compel (Dkt. No. 24) is hereby DENIED in its entirety. Plaintiff's request to reopen discovery is also hereby DENIED.

At this time, the Court will withhold re-setting any of the deadlines in this case, including Plaintiff's deadline to file a response to Defendant's pending Motion for Summary Judgment, which was previously stayed (Dkt. No. 29). The undersigned fully expects Mr. Malakoff to file objections to this Order before District Judge Kazen. So that they may be considered timely, any objections to this Order must be made within fourteen (14) days. See FED.R.CIV.P. 72(a).

In addition, the Clerk of Court is hereby DIRECTED to terminate the pending Motion for Summary Judgment (Docket No. 27). The Court will issue a briefing schedule with regard to the issue of summary judgment once the anticipated objections to this Order are resolved.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2010 WL 11671745

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 95 of 103

United States ex rel. Dougherty v. Guild Mortgage Company, Not Reported in Fed....

2020 WL 3542391
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

UNITED STATES of America, EX
REL. Kevin G. DOUGHERTY, Plaintiff,

v.

GUILD MORTGAGE COMPANY, Defendant.

Case Nos.: 16cv2909-JAH(BLM)
|
Signed 06/30/2020

**Attorneys and Law Firms**

Christopher B. Mead, Pro Hac Vice, Schertler Onorato & Mead, Deborah Bradley Clements, Pro Hac Vice, Lance Alan Robinson, Pro Hac Vice, Mark S. London, Pro Hac Vice, London and Mead, Washington, DC, Erwin Lee Cena, James Joseph Maune, Kilpatrick Townsend & Stockton LLP, San Diego, CA, for Plaintiff.

David M. Souders, Pro Hac Vice, Jason W. McElroy, Pro Hac Vice, Mitchel Howard Kider, Timothy Patrick Ofak, Pro Hac Vice, Weiner Brodsky Kider PC, Washington, DC, George Ehrich Lenz, Incorvaia & Associates, Del Mar, CA, Joel L. Incorvaia, Incorvaia and Associates, Carlsbad, CA, for Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL**

**[ECF No. 145]**

Barbara L. Major, United States Magistrate Judge

**\*1** Currently before the Court is Defendant's May 15, 2020 Motion to Compel Discovery Responses from the Government [ECF No. 145-1 ("MTC")] [1], Plaintiff-Intervenor United States of America's ("the Government's") May 29, 2020 opposition to the motion [ECF No. 146 ("Oppo.")], Defendant's June 3, 2020 reply [ECF No. 147 ("Reply")], the Government's June 10, 2020 Notice regarding Defendant's motion [ECF No. 148 ("Not.")], and Defendant's June 12, 2020 Response to the Government's Notice [ECF No. 149 ("Resp.")]. For the reasons set forth below, Defendant's motion is **GRANTED**.

[1]    Defendant's motion was initially filed on the docket as ECF No. 144. On May 15, 2020, the same day that the initial motion was filed, Defendant filed an Amended Motion to Compel Discovery Reponses from the Government to include additional pages to its Exhibit 3. ECF No. 145.

**DISCOVERY-RELATED BACKGROUND**

On November 12, 2019, the parties filed a Joint Discovery Plan [ECF No. 130] and a Proposed Stipulated Protective Order [ECF No. 130-3]. In the Joint Discovery Plan, the parties proposed that fact discovery should conclude before expert discovery begins, and the Court granted that request. Oppo. at 5; ECF No. 137 at ¶¶ 4,5; see also ECF No. 130 at ¶ 3.

On December 16, 2019, Defendant served its first set of requests for the production of documents ("RFPs") on the Government. MTC at 6; see also ECF No. 145-2, Amended Declaration of Jason W. McElroy in Support of Defendant Guild Mortgage Company's Motion to Compel Discovery Responses from the Government ("McElroy Decl.") at ¶ 2. The Government objected to Defendant's RFP No. 24 on the grounds that requiring the Government to produce documents in this action concerning information it produced in a prior action [2] with a different lender and different wrongful conduct would be irrelevant, unduly burdensome, and highly disproportionate to the needs of the case. ECF No. 146-13, United States' Responses to Guild's First Set of Requests for the Production of Documents ("US Exhibit M") at 46-48; see also Oppo. at 8-9. During a February 13, 2020 meet and confer, the Government agreed to supplement its responses with certain materials. Oppo. at 9.

[2]    The Government is referring to two separate cases where Quicken Loans, Inc. ("Quicken") and Wells Fargo Bank, N.A. ("Wells Fargo") took depositions of Department of Housing and Urban Development ("HUD") fact witnesses in unrelated actions that the Government brought against those lenders. Oppo. at 4.

On January 29, 2020, Defendant served its first set of interrogatories on the Government. MTC at 6; see also McElroy Decl. at ¶ 2. The Government objected to Defendant's interrogatories 1 and 3 on numerous grounds, including that they required a response that ran contrary to the parties' Joint Discovery Plan and this Court's Scheduling

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 96 of 103

United States ex rel. Dougherty v. Guild Mortgage Company, Not Reported in Fed....

Order [ECF No. 137]. Oppo. at 6-7; see also ECF No. 146-8, United States' Responses to Guild's First Set of Interrogatories to the United States ("US Exhibit H") at 8, 14. On March 11, 2020, the parties met and conferred in person and the Government agreed to supplement its responses with additional information. McElroy Decl. at ¶ 5; see also Oppo. at 7.

**\*2** On May 1, 2020, the parties held a telephonic meet and confer to discuss the Government's supplemental responses to interrogatories 1 and 3 and its initial responses to Defendant's RFP number 24. MTC at 7; see also ECF No. 146-11, Email Chain 5/4/2020 ("US Exhibit K") at 3-5. The parties could not come to an agreement and on May 6, 2020, counsel for the Government, Mr. Lance Alan Robinson, Mr. Brian P. Hudak, and Mr. Christopher R. B. Reimer, and counsel for Defendant, Mr. Jason M. McElroy and Mr. Timothy Patrick Ofak, jointly contacted the Court regarding a discovery dispute. ECF No. 143. In regard to the dispute, the Court issued a briefing schedule. Id. In accordance with that schedule, the parties timely filed their motion, opposition, and reply. Id.; see also MTC, Oppo., and Reply.

After Defendant filed its motion, the Government provided counsel for Quicken and Wells Fargo a copy of the motion and requested consent to produce the deposition exhibits pursuant to Defendant's RFPs. ECF No. 146-15, Declaration of Brian P. Hudak, Esq. Submitted in Opposition to Guild's Motion to Compel ("Hudak Decl.") at ¶ 7. On June 8, 2020, counsel for Quicken informed the Government that it consents to the production of HUD-produced exhibits, used as fact depositions of HUD officials in the Quicken action, to Defendant provided that the Government produce them under the "Attorneys Eyes Only" provision of the Stipulated Protective Order in this case. Not. at 2.

### LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(3). In answering interrogatories propounded

**USAP0236**

to a corporation, partnership, association or governmental agency, the officer or agent responding on its behalf "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B).

**\*3** Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto, 162 F.R.D. at 610. Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

### DISCUSSION

Defendant seeks an order from the Court compelling the Government to provide the information requested in Defendant's interrogatories Nos. 1(f) and 3(c) as well as the exhibits related to the deposition transcripts requested in Defendant's RFP No. 24. MTC at 7; see also McElroy Decl. at ¶ 4.

### A. Interrogatories

#### 1. Interrogatory No. 1(f)

Interrogatory No. 1(f) asks the Government to:

> Identify all claims which you purport to be false or fraudulent covered by this lawsuit, including ... [t]he specific reason or reasons you purport the claims were false.

US Exhibit H at 8. Initially, the Government responded by broadly stating its intention to identify loans that it will use in this action as those that materially violate HUD and the Federal Housing Administration's ("FHA's") origination and underwriting requirements and resulted in claims that are false or fraudulent. Id. at 8-9. In its supplemental response, the Government identifies the universe of claims and reiterates

its belief that there are materiality and underwriting violations within that universe. ECF No. 146-10, United States' First Amended Responses to Guild's First Set of Interrogatories to the United States ("US Exhibit J") at 9. The Government's response references a large set of Bates-stamped documents that either define the underwriting requirements or state the materiality criteria. Id. at 9-10. However, the Government's responses do not identify, even in general terms, the precise types of materiality and underwriting violations it is alleging. Rather, the Government suggests that Defendant should review all of its own loan files to determine the false loans in the At-Issue Claim Universe. Id. at 11.

#### 2. Interrogatory No. 3(c)

Interrogatory No. 3(c) asks the Government to:

> Identify all contracts you purport were violated in support of your breach of contract action, including ... [t]he provision of the contract you allege was violated.

US Exhibit H at 14. The Government initially responded by stating that "[t]he creation and terms of mortgage insurance contracts between HUD and lenders" like Defendant "are governed by statutes, regulations, and agency promulgated [sic] rules and requirements." Id. at 15. The Government continues by summarizing the rules and regulations, as well as the requirements for FHA loans. See id. at 15-17. The Government then states that Defendant "breached its mortgage insurance contracts with HUD because it originated and underwrote loans in a manner that materially violated FHA origination and underwriting requirements." Id. at 17. In its supplemental response, the Government again identified the at-issue contracts and the terms of those contracts by referencing its response to Interrogatory No. 1. US Exhibit J at 16-17. The Government cites additional sections of the Code of Federal Regulations but fails to identify precisely what Defendant did wrong. Id. at 17-18. Instead, the Government merely states that Defendant "breached its mortgage insurance contracts with HUD because it originated and underwrote the At-Issue False Loans in a manner that violated material FHA origination and underwriting requirements[.]" Id. at 19.

USAP0237

3. <u>Discussion</u>

**\*4** Defendant argues that the information requested in "its interrogatories is relevant because it goes to the elements the Government must prove in the FCA claims and its breach of contract claims[.]" MTC at 13. Defendant notes that it cannot defend itself or "test the Government's allegations without knowing which specific statutory, regulatory, and contractual provisions are at issue[.]" <u>Id.</u> Furthermore, Defendant argues that the Government failed to meet its burden under Rule 33(d), asserting that it is not possible for Defendant "to ascertain the Government's contentions from thousands of pages of documents (and hundreds of program requirements) the Government has referenced." <u>Id.</u> at 13-14. Defendant argues that the Government's reliance on Rule 33(d)[3] "violates Rule 11, which requires the Government to have a colorable basis for its claims[ ]" and indicates that the Government either "cannot identify the requirements at play because it does not know them" or that it is attempting "to gain an improper trial advantage[.]" Reply at 7-8. Additionally, Defendant contends that even though it agreed to a discovery schedule that included expert discovery after the close of fact discovery, it "did not agree to forego discovery on the most basic elements of the [G]overnment's claims, which are also key issues to Guild's defense." MTC at 16. Finally, Defendant argues that the "original qui tam complaint was filed in 2013," during which "the Government performed a statutory investigation for more than two years into its allegations." <u>Id.</u> Therefore, Defendant contends "the Government should at this point be able to identify the requirements it alleges Guild routinely violated." <u>Id.</u> at 17.

[3]     Defendant spends 3.5 pages citing to case law throughout multiple districts in various states and asserts that "the overwhelming majority of authority from district courts around the country lines up decidedly against the Government's position here, rejecting the ploy of referring your opponent to documents and telling them to figure out your contentions." <u>See</u> Reply at 8-12.

The Government responds that it has provided Defendant with all information regarding the underwriting requirements, materiality standards, and the at-issue claims universe that it currently has in its possession and that it is waiting for its own experts to "identify violations from the loan files that Guild continues to produce[.]" Oppo. at 12. Therefore, the Government contends that Defendant, "an

FHA-approved lender that employs underwriters whose job it is to review loan files and determine their compliance with HUD underwriting requirements," is capable of reviewing "its own loan files under Rule 33(d) to determine which specific requirements are at issue." <u>Id.</u> Furthermore, the Government argues that its responses go "beyond what the Rules require in responses to contention interrogatories at this stage of the litigation." <u>Id.</u> at 13. In support of its position, the Government cites to Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489 (W.D.N.C. 1998) which states that "[d]ue to the nature of contention interrogatories [4], they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period."

[4]     The court in <u>Capacchione</u> stated that "[e]xamples of proper contention interrogatories include asking a party to (1) state its contentions or clarify whether it is making a contention, (2) articulate the facts underlying a contention, (3) assert a position or explain that position in relation to how the law applies to the facts, and (4) explain the legal or theoretical basis behind a contention." Capacchione, 182 F.R.D. at 489 (citing 7 Moore's Federal Practice § 33.02[2][b] (3d ed.1998)).

The Federal Rules of Civil Procedure authorize a party to respond to interrogatories by producing responsive business records and making those records available to the interrogating party under certain circumstances. See Fed. R. Civ. P. 33(d). As Rule 33(d) explains:

[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in enough detail to enable the interrogating party to locate and identify them as readily as the responding party could...

<u>Id.</u> An interrogatory response that references the entire document production does not specify records in sufficient detail. See Mancini v. Ins.Corp. of New York, 2009 WL 1765295, at \*2 (S.D. Cal. June 18, 2009) (citation omitted). However, if the burden of deriving or ascertaining the answer will be substantially the same for either party, a response that identifies specific business records is sufficient. See

USAP0238

Fed. R. Civ. P. 33(d); see also McKie v. Sears Prot. Co., 2011 WL 1670910, at *1 (D. Or. May 3, 2011) (stating that " 'the rationale behind Rule 33(d) is to shift the burden of compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party.... Thus, where one of the parties must undertake the task of compiling the information and the records presented are not voluminous or indecipherable, the interrogating party should bear the responsibility of compiling the information.") (quoting Sadofsky v. Fiesta Prod., LLC, 252 F.R.D. 143, 148 (E.D.N.Y. 2008)); Probuilders Specialty Ins. Co. v. Valley Corp., 2012 WL 6045753, at *3 n.3 (N.D. Cal. Nov. 28, 2012) ("[W]hen a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for both sides, the production of these records sufficiently answers the interrogatory.").

**5** For both of its responses to Defendant's interrogatories, the Government suggests that, pursuant to Rule 33(d), Defendant should look at the loan files and figure out what it did wrong. This is an improper use of Rule 33(d). If a party wishes to rely on Rule 33(d), "the burden of deriving or ascertaining the answer must be substantially the same for the party serving the interrogatory as for the party served and the party responding must specify in sufficient detail where the answers can be found." Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 650 (N.D. Cal. 2004). Merely directing Defendant to hundreds of loan records and citing to the general HUD underwriting and origination requirements does not suffice to alert Defendant to what the Government's allegations are or what evidence it has to support its claims. See, e.g., In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig. This Report Relates Only v. Ford, No. 2:18-ML-02814 AB (FFM), 2019 U.S. Dist. LEXIS 211117, at *16-17, 2019 WL 6486048 (C.D. Cal. Oct. 17, 2019) ("Simply listing Ford's records provides not a clue to plaintiffs' contentions or what evidence supports certain claims of plaintiffs."); see also U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576-77 and n. 5 (M.D. N.C. 2002) ("[D]ocuments themselves rarely, if ever, reveal contentions of fact or law ... Only plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants ... [and] a mixture of contention interrogatories and requests for statements of fact ... do not lend themselves to answer by use of Rule 33(d)."). Furthermore, given the Government's two-year statutory investigation into this matter, the burden

of determining the Government's contentions or allegations is not equal and the use of Rule 33(d) is inappropriate. See Mancini, 2009 WL 1765295, at *3.

The Government also argues that it shouldn't have to answer these contention interrogatories until after fact discovery ends and expert discovery begins. This also is incorrect. Defendant's interrogatories seek to determine the factual and legal basis for the Government's allegations so that Defendant may evaluate the evidence and determine its defenses. Generally, "interrogatories directing a plaintiff to state facts supporting contentions in his complaint are 'entirely appropriate.' " Subramani v. Wells Fargo Bank, N.A., No. 13-CV-01605-SC, 2014 WL 7206888, at *2 (N.D. Cal. Dec. 18, 2014) (quoting In re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997)); see also Tennison v. City & Cnty. of San Francisco, 226 F.R.D. 615, 618 (N.D. Cal. 2005) (granting motion to compel answers to interrogatories asking plaintiff to state all facts supporting a claim). Here, the Government's two-year statutory investigation should have enabled it to identify the specific allegations of wrongdoing as soon as discovery commenced. In addition, discovery in this case has been open since November 2019 so the Government has had plenty of time to gather the information necessary to provide substantive answers to Defendant's interrogatories. While the Government may not yet be able to identify the precise violation in each claim file, it must supplement its interrogatory responses by describing the precise types of underwriting, origination, or endorsement violations— or any other type of violation—allegedly committed by Defendant. As interrogatory 1(f) requests, the Government must state the "specific reason or reasons [it] purport[s] the claims were false." US Exhibit H at 8. Similarly, the Government must describe the specific types of conduct that violated the terms of the HUD and FHA contracts and which specific provisions were violated. [5] In reaching this decision, the Court notes that the Government has brought similar HUD and FHA violation allegations against other lenders and therefore is familiar with various types of false or fraudulent claims. See, e.g., United States v. Dolphin Mortg. Corp., No. 06-CV-499, 2009 WL 153190 (N.D. Ill. Jan. 22, 2009) (finding that the lender did not perform the underwriting process and falsified or knowingly accepted falsified financial information pertaining to the borrowers to make them appear eligible for HUD-insured loans); United States v. Heck, No. CIV. A. 86-0875(SSB), 1987 WL 49253, at *1 (D.N.J. Mar. 26, 1987) (finding that lenders "obtained HUD mortgage insurance through the submission of applications and supporting documentation

USAP0239

that contained false and fraudulent information concerning, inter alia, their employment, income, assets and liabilities"); United States v. TXL Mortg. Corp., No. CV 15-1658 (JEB), 2016 WL 5108019, at *2 (D.D.C. Sept. 20, 2016) (finding the lender "provided facially inaccurate facts or violated key FHA underwriting requirements"); United States v. Americus Mortg. Corp., No. 4:12-CV-2676, 2017 WL 4083589, at *2 (S.D. Tex. Sept. 14, 2017) (finding that the Government adequately proved that the defendant skirted HUD requirements by allowing its unregistered branches to provide the FHA identification numbers of its registered branches for each loan and forged its branch managers' signatures). Accordingly, Defendant's motion to compel further response to interrogatories Nos. 1(f) and 3(c) is **GRANTED**.

5    The Government is required to supplement its interrogatory responses as set forth in this order. The Government also is reminded of its ongoing obligation to supplement its interrogatory responses. See Fed. R. Civ. P. 26(e).

**B. Request for Production No. 24**

**\*6** RFP No. 24 asks the Government for:

All transcripts of depositions taken of current and former HUD employees, officials, and FRCP 30(b)(6) designees in the proceeding titled United States v. Quicken Loans, Inc., No.16-cv-14050, in the United States District Court for the Eastern District of Michigan.

ECF No. 146-12, Guild's First Set of Requests for Production of Documents to Plaintiff United States of America ("US Exhibit L") at 13. Defendant also requested [6] "document request responses," "interrogatory responses produced by HUD," "responses to requests for admission produced by HUD," and "transcripts of depositions taken of current and former HUD employees, officials, and FRCP 30(b)(6) designees" in United States v. Wells Fargo Bank, N.A., No. 12-cv-7527 (S.D.N.Y. 2013). Id. at 10-11. In regard to RFP No. 24, the Government responded, stating that it objected to producing documents from an action that "concerned a different lender and its liability for a largely different wrongful conduct" and that doing so would be

"irrelevant, unduly burdensome, and highly disproportionate to the needs of the case." US Exhibit M at 46-47. Additionally, the Government stated that Defendant should specify which categories of documents it is requesting so that the Government and Court can determine their relevance to the instant case. Id. The Government eventually produced 49 deposition transcripts without their corresponding exhibits from the Quicken matter in response to RFP No. 24. MTC at 7. Neither party clearly states whether the Government produced deposition transcripts from the Wells Fargo matter, but it appears from the Government's briefing that it produced deposition transcripts from the Wells Fargo case without exhibits [7].

6    Defendant does not address this case or its requests for transcripts specifically in its motion, but the Government alerts the Court to this issue in its opposition and states that it objected to the relevant RFPs regarding the Wells Fargo matter. Oppo. at 8-9.

7    The Government states that, as an initial response to Defendant's request for transcripts from the Wells Fargo matter, it sought consent from Wells Fargo's counsel to produce those documents. Hudak Decl. at ¶ 2. Wells Fargo's counsel replied that it would consent to the production of transcripts if the Government complied with the protective order obligations in the Wells Fargo matter and if the " 'materials are properly marked and treated under the protective order in the Guild litigation.' " Id. at ¶ 5. At that time, the Government indicated that Defendant was not requesting the exhibits to the transcripts. Id. at ¶ 4. After Defendant filed its motion, the Government provided counsel for Wells Fargo with a copy of that motion. Id. at ¶ 7. Wells Fargo's counsel responded that he would be unable to indicate Wells Fargo's position on disclosure of the transcript exhibits without a listing of exhibits by Bates stamps, which the Government states in the Hudak Declaration it does not have and would take hours to create through manual review of the exhibits. Id.

**\*7** Defendant argues that "[n]o reasonable reading of a request for deposition transcripts excludes exhibits incorporated therein, relied upon by the witness, and questioned about within that transcript." MTC at 17. Defendant further contends it has "offered for the Government to withhold confidential information produced

United States ex rel. Dougherty v. Guild Mortgage Company, Not Reported in Fed....

by other parties," pursuant to the protective order in place in this matter, "subject to a log and Guild's ability to seek production based on it," thereby assuaging "the Government's apprehension's about confidentiality and burden." Id. at 19. Finally, Defendant argues that "the deposition transcripts produced by the Government are rendered confusing or difficult to use because Guild is unable to refer to exhibits being testified about, or to understand the topics which HUD employees had been proffered under" Rule 30(b)(6). Id. at 20.

The Government contends that it did not agree to produce exhibits to deposition transcripts and that Defendant only requested the Government to produce "transcripts." Oppo. at 16. The Government also argues that Defendant's request is a "broad blanket demand for documents it agreed it would not pursue," including documents produced by HUD pursuant to Quicken-specific custodial ESI parameters, "additional copies of documents it already has," including HUD handbooks, and "irrelevant records[ ]," including a Quicken-issued subpoena to secure witness attendance. Id. at 17-18; see also Hudak Decl. at ¶¶ 8-9. Finally, the Government argues that simply because "a document originated with HUD does not mean Quicken or Wells [Fargo] has no interest in it[ ]" or in protecting confidential business information, and that this Court should not void the protective orders in those respective suits. Id. at 18.

Exhibits are an integral part of a deposition and generally must be produced with the transcript. See Intellectual Ventures I LLC v. Symantec Corp., No. CV 13-440-LPS, 2019 WL 4751536, at *4 (D. Del. Sept. 30, 2019) (stating that exhibits are "necessary to make the deposition transcripts useable and understandable"). Here, the Government has not established why each of the exhibits should not be produced as it merely provides general objections that some exhibits are irrelevant, some may contain privileged or confidential information, and some may already have been produced to Defendant in discovery [8]. See DIRECTV, Inc., 209 F.R.D. at 458 (stating that the party opposing discovery has the burden of showing that the discovery should be prohibited for reasons of privilege or irrelevance). Because the Government does not provide specific arguments regarding each exhibit or groups of exhibits and because the Government did not produce a privilege log, Defendant was unable to address the Government's arguments and the Court is unable to rule on

them. Furthermore, the Government does not explain why the protective order in the instant case would not adequately guard privileged information contained in the Quicken or Wells Fargo exhibits. This shortfall is more pronounced in light of Quicken's response to Defendant's motion in which Quicken consents to the production of exhibits under the "Attorneys' Eyes Only" provision of the protective order in this case. See Not. at 2.

[8]    Specifically, the Government only provides minimal details about exhibits related to two of the 49 deposition transcripts in the Quicken matter, stating brief reasons for why it should not be required to produce each exhibit. See Hudak Decl. at ¶¶ 8-9. However, even these descriptions do not offer the Court enough information to enable it determine whether the exhibits should or should not be produced.

Because exhibits are an integral part of a deposition, Defendant's motion to compel the production of the deposition exhibits is **GRANTED**. The Government must produce all exhibits incorporated in the deposition transcripts it already has produced to Defendant in this action. The Quicken documents described in the Government's Notice must be produced as "Attorneys' Eyes Only" under the protective order in this case. If the Government believes any other documents, including Wells Fargo documents, require protection, the Government may produce them pursuant to the appropriate provision of the Court's protective order.

## CONCLUSION

**\*8**   Defendant's motion to compel further response to interrogatories Nos. 1(f) and 3(c) and to compel response to RFP No. 24 is **GRANTED**. The Government must provide the required supplemented responses and documents by **July 21, 2020**.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3542391

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

USAP0241

Case 4:23-cv-03560    Document 273-1    Filed on 06/27/25 in TXSD    Page 102 of 103

United States v. Texas Department of Health, Not Reported in Fed. Supp. (2005)

2005 WL 8179552
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

UNITED STATES of America,
ex. rel. Ramesh Gudar, Plaintiff,
v.
TEXAS DEPARTMENT OF
HEALTH, et al., Defendants.

Civil Action No. H-00-1169
|
Signed 06/10/2005

**Attorneys and Law Firms**

Carol Lynn Wallack, United States Department of Justice, Washington, DC, Clyde Tab Turner, Turner & Associates, North Little Rock, AR, Jay Philip Nelkin, Stuart M. Nelkin, Nelkin & Nelkin, Michael William Kerensky, Williamson, Sear & Rusnak, LLP, Patrick Andrew Zummo, Attorney at Law, Houston, TX, for Plaintiff.

F. Joseph Warin, Gibson Dunn Crutcher LLP, Washington, DC, Joseph R. Knight, Ewell Brown Blanke & Knight LLP, Gavin R. Villareal, Baker Botts LLP, Austin, TX, Robert C. Blume, Gibson Dunn and Crutcher LLP, Denver, CO, for Defendants.

## ORDER

FRANCES H. STACY, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Magistrate Judge upon referral from the District Judge is Defendant Deloitte & Touche L.L.P.'s Motion to Compel Responsive Answers to Interrogatories (Document No. 561). In that motion, Defendant complains that Plaintiff Ramesh Gudar did not provide complete responses to interrogatory nos. 2-7, and did not provide a response at all to interrogatory nos. 8-23. Defendant seeks an Order compelling Plaintiff to provide specific, detailed responses to interrogatory nos. 2-23. In response to the motion, Plaintiff maintains that he has provided sufficiently complete responses to interrogatory nos. 2-7. With respect to the interrogatories he did not answer, Plaintiff maintains that interrogatory nos. 2-7, when their discrete subparts are

counted, exceed the 25 interrogatories that are allowed under Fed. R. Civ. P. 33.

With respect to the interrogatories in dispute that were answered by Plaintiff, interrogatory nos. 2-7, a review of the interrogatories and Plaintiff's responses thereto reveals that Plaintiff, while relying on many of the factual allegations in Plaintiff's current pleading, sufficiently responded to interrogatory nos. 2, 3, 4, and 7. With respect to interrogatory nos. 5 and 6, Plaintiff did not identify or provide any specific information regarding the individuals involved in the "cost study data collection" or the "time study data collection". Additional information should be provided in response to interrogatory nos. 5 and 6.

As for the interrogatories that were not answered, the undersigned finds disingenuous Plaintiff's calculation of the number of interrogatories, including subparts, at issue in interrogatory nos. 1-7. Under FED. R. CIV. P. 33(a) each party is allowed to served 25 interrogatories on any other party: "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served". The advisory committee notes to Rule 33(a) provide guidance on how interrogatories and their subparts should be counted:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from opposing counsel) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects, However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication.

Here, each of Defendant's first seven interrogatories, including their purported subparts, seeks information about a single (albeit broad) subject. While any interrogatory that uses terms in the conjunctive or disjunctive can be broken

USAP0242

down into subparts for purposes of counting the number of interrogatories at issue, here, interrogatory nos. 1-7, as worded and when viewed objectively, only seek information about seven broad subjects. *See Krawczyk v. City of Dallas, 2004 WL 614842 at \*2 (N.D. Tex. 2004)* (concluding that "interrogatory subparts are to be counted as discrete subparts if they are not 'logically or factually subsumed within and necessarily related to the primary question.' "). As such, Plaintiff's justification for not answering interrogatory nos. 8-23 is invalid and Plaintiff will be required to answer interrogatory nos. 8-23.

**\*2** Therefore, based on the foregoing, it is

ORDERED that Defendant Deloitte & Touche L.L.P.'s Motion to Compel Responsive Answers to Interrogatories (Document No. 561) is GRANTED IN PART. Within twenty days after the entry of this Order, Plaintiff shall provide Defendant Deloitte & Touch, L.L.P., with complete responses to interrogatory nos. 5, 6, and 8-23.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8179552

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.